**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
Charleston Division

PATRICK K. DONNELLY
8 Church Street
Charleston, South Carolina 29401,

        *Plaintiff,*

v.

PROPHARMA GROUP TOPCO, LLC
  Serve: SC Secretary of State's Office
  1205 Pendleton Street, Suite 525
  Columbia, SC 29201
  Attn: Service of Process,

        *Defendant.*

Case No. **2:20-cv-4110-MBS**

## COMPLAINT

Plaintiff Patrick K. Donnelly ("Plaintiff" or "Mr. Donnelly"), by counsel, hereby files this Complaint against ProPharma Group Topco, LLC ("Defendant" or "ProPharma"), on the following grounds:

## THE PARTIES

1. Plaintiff, Mr. Donnelly, is a citizen and resident of Charleston, South Carolina. Mr. Donnelly currently resides at 8 Church Street, Charleston, South Carolina.

2. Defendant ProPharma is a Delaware limited liability company, with its principal office located in Kansas at 8717 West 110th Street, Suite 300, Overland Park, Kansas.

## JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, as there is complete diversity between Mr. Donnelly and Defendant, and the amount at issue exceeds $75,000.

4.      ProPharma is a limited liability company ("LLC"). The citizenship of an LLC is determined by examining the citizenship of all of its members. *Cent. W. Virginia Energy Co. v. Mountain State Carbon*, LLC, 636 F.3d 101, 103 (4th Cir. 2011).

5.      Upon information and belief, no member of ProPharma is a citizen of the state of South Carolina.

6.      Pursuant to the South Carolina long-arm statute, SC Code § 36-2-803, "[a] court may exercise personal jurisdiction over a person who acts directly or by an agent as to a cause of action arising from the person's … (1) transacting any business in this State."

7.      Personal jurisdiction over Defendant is proper because Defendant transacts business in the State of South Carolina, and a substantial number of the events giving rise to the claims alleged herein took place in South Carolina.

8.      Mr. Donnelly's causes of actions herein against Defendant arise from ProPharma's business transactions within South Carolina.

9.      At all times relevant to the events detailed herein, Mr. Donnelly primarily conducted his duties pursuant to his agreement with Defendant from his home in Charleston, South Carolina.

10.     ProPharma was aware of and accommodated Mr. Donnelly's work from home arrangement in Charleston, South Carolina. ProPharma not only compensated Plaintiff for work he did in South Carolina, but it also reimbursed him for expenses incurred for all of Mr. Donnelly's

expenses, meals and travel to various locations across the United States and meetings during the over three and a half years that Mr. Donnelly worked in this District.

11.     Venue is proper in this Court because Plaintiff resides in this District and a substantial part of the events or omissions giving rise to the claims herein occurred in Charleston County, South Carolina.

## **BACKGROUND**

12.     Mr. Donnelly is an experienced executive who has worked in the medical device and pharmaceutical development field for 30 years.

13.     Throughout his career, Mr. Donnelly has held over 12 positions nationally and internationally in these industries, and has served as a chief executive officer, chief financial officer, chief operating officer, consultant, and board member, among other positions.

14.     To date, Mr. Donnelly currently holds five leadership executive or board membership positons.

15.     Mr. Donnelly has developed an international reputation in the medical device and pharmaceutical development industry for his unique skillset and business acumen, particularly because of his industry experience and business contacts and relationships.

16.     Mr. Donnelly first contemplated his business relationship with ProPharma in 2016.

17.     Mr. Donnelly had known about ProPharma for over 15 years due to its proximity to a company that Mr. Donnelly previously worked for, which was also located in Kansas.

18.     Mr. Donnelly had previously developed a relationship with former ProPharma CEO, Jeff Hargraves, and had helped him create the strategy plan for transition of duties in 2016, which was subsequently presented to the ProPharma Board.

19.     On September 30, 2020, ProPharma was sold to Odyssey Investment Partners Fund VI, LP ("Odyssey Investment Partners") for ███████ .

20.     Mr. Donnelly is not a member of ProPharma.

## FACTUAL ALLEGATIONS

### I.     MR. DONNELLY IS PLACED ON THE PROPHARMA BOARD OF DIRECTORS

21.     The relationship between Mr. Donnelly and Defendant is governed by the ProPharma Offer Letter, dated October 24, 2016 ("ProPharma Offer"), attached as **Exhibit A**.

#### A.     Mr. Donnelly Signs the ProPharma Offer

22.     On October 31, 2016, Mr. Donnelly signed the ProPharma Offer.

23.     The ProPharma Offer was an agreement drafted by ProPharma.

24.     The ProPharma Offer was an agreement for Mr. Donnelly to join ProPharma's Board of Directors on September 30, 2016 for a term of five years, subject to renewal by the Board of Directors.

25.     On or about October 31, 2016, Mr. Donnelly was added to the ProPharma website as part of the ProPharma leadership team.

#### B.     Agreement to Pay Mr. Donnelly's Base Compensation

26.     As consideration for his service to ProPharma, Mr. Donnelly's compensation under the ProPharma Offer consisted of two separate payable components.

27.     Both components of Mr. Donnelly's compensation were equally payable under the ProPharma Offer.

28.     Under the ProPharma Offer, Mr. Donnelly received a payment of ███████ per year ("Donnelly Base Compensation").

29.     ProPharma agreed to pay Plaintiff his Donnelly Base Compensation on a quarterly basis in arrears for services rendered under the ProPharma Offer.

**C.      Agreement to Pay ProPharma Incentive Equity**

30.     Under the ProPharma Offer, Mr. Donnelly was also entitled to incentive equity units in ProPharma ("ProPharma Incentive Equity").

31.     The payment of Mr. Donnelly's ProPharma Incentive Equity is governed by the ProPharma Incentive Equity Agreement ("IEA"), attached as **Exhibit B**.

32.     Mr. Donnelly signed the IEA on or about September 30, 2016.

33.     The ProPharma Offer mandates that " ███████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████."

34.     The IEA provided Mr. Donnelly ███████ ProPharma Incentive Equity units, which could vest according to either time or performance. *See* **Exhibit B**.

35.     Under the IEA, ██████ of the ProPharma Incentive Equity units could vest over time according to a schedule provided in the IEA ("Time Vesting Units").

36.     Under the IEA, ██████ of the ProPharma Incentive Equity units could vest over time only if Mr. Donnelly was " █████████████████████████████

████████████████████████████████████████████████████

████████████████████████ ("Performance Vesting Units").

37.     ProPharma had the option to elect to purchase all or any portion of the vested ProPharma Incentive Equity units by delivery of a written notice at any time within six months after Mr. Donnelly's separation from ProPharma.

38.     Under the IEA, the purchase price for the ProPharma Incentive Equity is the fair market value of the units as of the date Mr. Donnelly separated from ProPharma.

39.     Under the IEA, "fair market value" means ███████████████████████ ████████████████████████████████████████████.

40.     Under the IEA, the definition of "fair market value" expressly states that ██ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████.

## II.     PROPHARMA FAILS TO COMPENSATE MR. DONNELLY UNDER THE PROPHARMA OFFER AND IEA

41.     ProPharma failed to pay Mr. Donnelly his due compensation in the form of both his earned Donnelly Base Compensation and ProPharma Incentive Equity.

### A.     Mr. Donnelly's Base Compensation

42.     Mr. Donnelly last received a portion of his Donnelly Base Compensation on April 18, 2019, in the amount of $██████.

43.     Since April 19, 2019, ProPharma has failed to pay Mr. Donnelly his Donnelly Base Compensation.

44.     Mr. Donnelly remained a ProPharma Board member until September 30, 2020 upon sale of the company. ProPharma never notified Mr. Donnelly that it was removing him from ProPharma's Board prior to the sale of the company.

45.     Despite not being paid his Donnelly Base Compensation, Mr. Donnelly remained on the ProPharma website until at least April 2020. It is not known when Mr. Donnelly was removed from ProPharma's website.

46.     To date, ProPharma refuses to pay Mr. Donnelly his Donnelly Base Compensation.

## B.      Mr. Donnelly's ProPharma Incentive Equity

47.      On or around September 23, 2019, Mr. Donnelly had a telephone discussion with then ProPharma Board Chairman, Mike Farah ("Mr. Farah") regarding the buyback value of his ProPharma Inventive Equity.

48.      Mr. Farah indicated that ProPharma desired to exercise its right to purchase Mr. Donnelly's vested ProPharma Incentive Equity units under the IEA.

49.      During the call, Mr. Farah presented Mr. Donnelly with a single valuation chart, which valued Mr. Donnelly's owed ProPharma Incentive Equity at $█████████ ("September 2019 Offer"), attached as **Exhibit C**.

50.      The September 2019 Offer was based on a valuation calculated as of June 30, 2019.

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████

51.      Upon information and belief, this June 2019 Valuation was never presented to or approved by the ProPharma Board of Directors, as required by the terms of the IEA.

52.      Upon information belief, the ProPharma Board of Directors did not take into account all relevant factors, including, without limitation, any other then-existing determinations of fair market value on or about the valuation date.

███████████████████████████████████████████████████████

████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████



59.    Mr. Donnelly was aware that the September 2019 Offer substantially undervalued ProPharma based on these previously received market valuations, and market comparable data that showed valuations for similar companies at the time closer to  an average ███████████████. An ██████████████ would have resulted in  an implied ████████████ enterprise value for ProPharma at the time.

60.    Mr. Donnelly told Mr. Farah that he did not agree with the June 2019 Valuation because it was based on a "trailing EBITDA" valuation—despite the fact that other comparable companies in the marketplace were being valued on a "forward" EBITDA valuation—and did not include any normal "EBITDA" adjustments.  Mr. Donnelly also knew that the June 2019 Valuation was significantly less than previously received third-party ProPharma valuations.

61.    "Forward" EBITA valuation is the standard and accepted industry practice of valuation for businesses in the marketplace.

62.     Mr. Donnelly told Mr. Farah that he believed the proper value of his Incentive Equity was ███████, which included a 3.0x multiple vesting on his Performance Vesting Units.

63.     Mr. Donnelly rejected ProPharma's September 2019 Offer, based on the June 2019 Valuation.

64.     Based on Mr. Donnelly's disagreement of the valuation of his ProPharma Incentive Equity units, Mr. Farah told Mr. Donnelly that he would get back to Mr. Donnelly regarding the June 2019 Valuation.

65.     Mr. Farah did not come back with a different offer or provide any new valuation.

66.     On October 4, 2019, Mr. Donnelly counter-offered Mr. Farah's September 2019 Offer, stating that ProPharma and Mr. Donnelly should split the difference between Mr. Donnelly's proposed valuation and the June 2019 Valuation, giving any difference between the two amounts to charity.

67.     Mr. Farah declined this counter-offer from Mr. Donnelly. Mr. Farah did not reply with any other counter-offer or new valuation.

68.     Instead, on November 4, 2019, without consulting Mr. Donnelly, ProPharma unilaterally delivered to him a sum of $███████.

69.     On information and belief, this sum of $███████████████ vested Time Vesting Units, at a valuation to which Mr. Donnelly did not agree.

70.     ProPharma sent to Mr. Donnelly's bank the sum of $██████ by direct deposit without prior notification.

71.     ProPharma neither notified Mr. Donnelly ahead of the $██████ direct deposit, nor after the direct deposit to inform him that the sum was for his Incentive Equity.

72.     Mr. Donnelly only discovered that ProPharma had paid him  the $███████ sum after his bank called him on November 4, 2017 to notify him of the payment.

73.     Mr. Donnelly never agreed to the June 2019 Valuation or accepted the $██████ sum of money.

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████

75.     The eventual ProPharma sale on September 30, 2020 to Odyssey Investment Partners was based on a ██████████████████████████.

76.     The sale of ProPharma to Odyssey Investment Partners establishes that the actual MOIC is either ████████, which is higher than the ████ reflected in the June 2019 Valuation identified in the September 2019 Offer. **Exhibit C**.

77.     The MOIC ultimately achieved in the ProPharma sale is reflective of Mr. Donnelly's hard work as a Board member.

78.     Mr. Donnelly's work as a Board member was a significant factor in the growth and success of ProPharma, as well as its ultimate █████ million sale price.

79.     To date, Mr. Donnelly has not received any Performance Vesting Units based on the MOIC that ProPharma achieved in its sale to Odyssey Investment Partners on September 30, 2020.

80.     Mr. Donnelly was ready, willing and able to provide services to ProPharma through September 30, 2020.

81.     Mr. Donnelly demanded the fair market value of his earned ProPharma Incentive Equity on November 6, 2019, and again on September 4, 2020.

82.     ProPharma refused to pay Mr. Donnelly his ProPharma Incentive Equity on November 11, 2019, and again on September 23, 2020.

83.     At no time during these negotiations did ProPharma terminate Mr. Donnelly's position on the Board of Directors.

## III.     MR. DONNELLY WAS NEVER GIVEN NOTICE OF HIS REMOVAL FROM THE PROPHARMA BOARD OF DIRECTORS

84.     Prior to September 23, 2020, the sole communication regarding a potential change in Mr. Donnelly's status as a ProPharma Board member occurred at the end of August 2019. On this date, Anthony Davis ("Mr. Davis") talked to Mr. Donnelly about the potential possibility that Mr. Donnelly may have to leave the ProPharma Board of Directors, but did not tell Mr. Donnelly when he would be removed from the ProPharma Board of Directors.

85.     This discussion was based on a perceived conflict of interest by Mr. Davis caused by Mr. Donnelly's presence on the Board of Directors.

86.     The alleged perceived conflict was based on the fact that Mr. Donnelly occupied leadership positions in entities affiliated with ProPharma.

87.     Mr. Donnelly did not agree that there was a conflict of interest and did not agree to his removal or step down from the board.

88.     Mr. Donnelly role in leadership positions in entities affiliated with ProPharma was no different from other ProPharma Board members, such as Mr. Richard Thomas ("Mr. Thomas"), who remained on the ProPharma Board of Directors.

89.     Mr. Donnelly told Mr. Davis that if he was to be removed from the ProPharma Board of Directors, he expected ProPharma to honor its obligations under the ProPharma Offer and IEA.

90.     Mr. Davis assured Mr. Donnelly that ProPharma and Mr. Farah would work with him regarding the value of his Incentive Equity.

91.     Mr. Donnelly understood that he would not be removed from the ProPharma Board of Directors until he reached an agreement regarding the payment of his Incentive Equity, and resolved any potential issues regarding the valuation of his Incentive Equity.

92.     During Mr. Donnelly's conversations with Mr. Farah in September 2019, parties were unable to come to a resolution on the valuation of his Incentive Equity.

93.     Pursuant to the ProPharma Offer, the term of the ProPharma Offer was for ███

████████████████████████████████████████████████████

94.     Until September 23, 2020, Mr. Donnelly never received any communications from ProPharma regarding his status as a ProPharma Board member.

95.     Prior to September 23, 2020, ProPharma did not ever otherwise indicate to Mr. Donnelly that he was no longer a ProPharma Board member.

96.     Between September 1, 2019 and September 23, 2020, other ProPharma Board members never provided necessary board materials or invitations to board meetings to Mr. Donnelly.

97.     By failing to provide Mr. Donnelly with the materials necessary to carry out his duties as a ProPharma Board member, ProPharma prevented Mr. Donnelly from carrying out his duties under the ProPharma Offer.

98.     In preparation for litigation, on September 23, 2020, counsel for ProPharma sent counsel for Mr. Donnelly a document, dated September 3, 2019, which purported to have removed Mr. Donnelly from the ProPharma Board, effective as of August 31, 2019.

99.     September 23, 2020 was the first time Mr. Donnelly received any communication addressing his status ProPharma Board of Directors.

100.    Before September 23, 2020, Mr. Donnelly had never seen, nor was given any notice of the document dated September 3, 2019 and there is no language in the September 23, 2020 letter indicating that it was sent to Mr. Donnelly in September 2019.

101.    The ProPharma Offer remains a binding agreement on the parties.

102.    The document Mr. Donnelly received on September 23, 2020 did not constitute notice to Pat of his removal from the ProPharma Board.

103.    The document Mr. Donnelly received on September 23, 2020 was sent to him a mere seven days before ProPharma was sold to Odyssey.

104.    The alleged sham "removal" of Mr. Donnelly from the ProPharma Board on September 23, 2020, conducted surreptitiously and without notice, was conducted in bad faith with the sole intention of depriving Mr. Donnelly of the fair market value of his Incentive Equity.

105.    ProPharma was sold on September 30, 2020, a mere seven days after Mr. Donnelly received the alleged sham removal notice.

106.    After September 30, 2020, Mr. Donnelly was no longer a member of ProPharma, and ProPharma owes him a payout of his shares.

107.    Mr. Donnelly remained a ProPharma Board of Directors member through September 30, 2020, but did not receive any payouts from the September 30, 2020 sale to Odyssey Investment Partners.

108.    After September 30, 2020, Mr. Donnelly was no longer a member of the Board of Directors.

## COUNT I
### BREACH OF PROPHARMA OFFER
#### FAILURE TO PAY EARNED DONNELLY BASE COMPENSATION

109.    All prior allegations are incorporated under Count I as if fully set forth herein.

110.    The relationship between Mr. Donnelly and ProPharma is governed by the ProPharma Offer.

111.    On October 31, 2016, Mr. Donnelly signed the ProPharma Offer.

112.    The ProPharma Offer was an agreement drafted by ProPharma.

113.    The ProPharma Offer was an agreement to join ProPharma's Board of Directors on September 30, 2016 ███████████████████████████████████████████████.

114.    Under the ProPharma Offer, ProPharma owed Mr. Donnelly his Donnelly Base Compensation.

115.    ProPharma has not paid Mr. Donnelly his Donnelly Base Compensation since April 18, 2019 in breach of the ProPharma Offer.

116.    Mr. Donnelly remains unpaid on his Donnelly Based Compensation for the period from April 19, 2019 to the present.

117.    Mr. Donnelly demanded his earned Donnelly Base Compensation on September 4, 2020.

118.    ProPharma refused to pay Mr. Donnelly his Donnelly Base Compensation on September 23, 2020.

119.    Mr. Donnelly has suffered damages as a direct and proximate cause of ProPharma's refusal to pay him his Donnelly Base Compensation under the ProPharma Offer.

120.    Mr. Donnelly thus asks this Court to award him damages sufficient to make him whole and compensate him for work he performed pursuant to the ProPharma Offer, consequential damages, and any and all other available remedies.

### COUNT II
**BREACH OF INCENTIVE EQUITY AGREEMENT**
**FAILURE TO PAY FAIR MARKET VALUE OF PROPHARMA INCENTIVE EQUITY**

121.    All prior allegations are incorporated under Count II, as if fully set forth herein.

122.    On November 4, 2019, ProPharma unilaterally paid Mr. Donnelly a sum of ███████████████████████████████ based on the June 2019 Valuation.

123.    Mr. Donnelly never agreed to the June 2019 Valuation, nor that the $ ██████ sum of money satisfied the full value of his owed ProPharma Incentive Equity units.

124.    On information and belief, Mr. Donnelly has never received any payment for his Performance Vesting Units.

125.    Upon information and belief, the June 2019 Valuation, which served as the basis of the $██████ sum of money for Mr. Donnelly's Time Vesting Units, was never in good faith presented to, approved or determined by the ProPharma Board of Directors.

126.    Upon information and belief, in calculating the June 2019 Valuation, the ProPharma Board never took into account all relevant factors determinative of value, including other then-existing determinations of fair market value on or about the valuation date.

127.    Upon information and belief, ProPharma's June 2019 Valuation was substantially undervalued based on market comparable data that shows valuations for similar companies at the time closer to an average ██████████████ in June 2019, which would have resulted in an implied ████████ enterprise value for ProPharma at the time.

128.    ProPharma failed to value Mr. Donnelly's Incentive Equity according to a "forward" EBITA valuation, which represents the standard and accepted industry practice of valuation for businesses in the marketplace.

129.    The June 2019 Valuation was not based on the fair market value, in breach of the terms of the IEA.

130.    Mr. Donnelly also did not receive the fair market value of his owed Performance Vesting Units pursuant to ProPharma's sale to Odyssey Investment Partners on September 30, 2020.

131.    Mr. Donnelly demanded the fair market value of his owed ProPharma Incentive Equity on November 6, 2019, and again on September 4, 2020.

132.    Mr. Donnelly has suffered damages as a direct and proximate cause of ProPharma's refusal to pay him the fair market value of his ProPharma Incentive Equity under the ProPharma Offer.

133.    Mr. Donnelly thus asks this Court to award him damages sufficient to make him whole and compensate him for work he performed pursuant to the ProPharma Offer, consequential damages, and any and all other available remedies.

### COUNT III
**BREACH OF PROPHARMA OFFER**
**BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

134.    All prior allegations are incorporated under Count III, as if fully set forth herein.

135.    Mr. Donnelly became a member of the Board of Directors on September 30, 2016 for a term of five years, subject to renewal by the Board of Directors.

136.    Mr. Donnelly was ready, willing and able to provide services to ProPharma at all relevant times until ProPharma's sale to Odyssey Investment Partners on September 30, 2020.

137.    Between September 1, 2019 and September 23, 2020, other ProPharma Board members never provided necessary board materials or invitations to board meetings to Mr. Donnelly.

138.    Between September 1, 2019 and September 23, 2020, Mr. Donnelly was ready and available to carry out his duties as a ProPharma Board member.

139.    By failing to provide Mr. Donnelly with the materials necessary to carry out his duties as a ProPharma Board member, ProPharma prevented Mr. Donnelly from carrying out his duties under the ProPharma Offer.

140.    ProPharma's actions injured Mr. Donnelly's right to receive the benefits of the ProPharma Offer and IEA.

141.    Mr. Donnelly has suffered damages as a direct and proximate cause of ProPharma's breach of the implied covenant of good faith and fair dealing.

142.    Mr. Donnelly thus asks this Court to award him damages sufficient to make him whole and compensate him for work he performed pursuant to the ProPharma Offer, consequential damages, and any and all other available remedies.

## COUNT IV
### BREACH OF FIDUCIARY DUTY

143.    All prior allegations are incorporated under Count IV, as if fully set forth herein.

144.    As a member of the Board of Directors, Mr. Farah owed fiduciary duties of care, loyalty and good faith to ProPharma shareholders whenever he communicated with shareholders about ProPharma's affairs within the scope of his duties as a Board member.

145.    In September 2019, Mr. Farah and other members of the ProPharma Board knew that ProPharma was soliciting sales.

146.    In discussing the June 2019 Valuation with Mr. Donnelly in the context of the September 2019 Offer, Mr. Farah failed to provide Mr. Donnelly applicable market comparables or recent third party valuations of ProPharma.

147.    Mr. Farah breached his fiduciary duty by omitting material facts in discussions with Mr. Donnelly regarding the fair market valuation of his Incentive Equity, and failing to undertake a good faith effort to determine the fair market valuation of his Incentive Equity.

148.    In failing to address applicable market comparables or recent third party valuations of ProPharma, Mr. Farah further breached his fiduciary duty by failing to attain all the information necessary to make a proper valuation of Mr. Donnelly's Incentive Equity, and providing Mr. Donnelly with inaccurate information regarding the valuation of his Incentive Equity.

149.    As a Board member of ProPharma, Mr. Farah had a conflicting self-interest to provide Mr. Donnelly the lowest valuation of his Incentive Equity, because the lesser Mr. Donnelly's Incentive Equity, the more value available to the other shareholders and Board members after any future sale of ProPharma.

150.    Mr. Farah and the ProPharma Board of Directors attempted to remove Mr. Donnelly from the Board on August 31, 2019 and pay Mr. Donnelly for his Incentive Equity at a valuation that they knew at the time was lower than the fair market value.

151.    By valuing Mr. Donnelly's Incentive Equity at an artificially lower valuation, Mr. Farah and the ProPharma Board of Directors attempted to deprive Mr. Donnelly of the value of his Incentive Equity, which escalated by the time ProPharma sold itself a year later.

152.    This valuation scheme, had Mr. Donnelly accepted it, would have allowed Mr. Farah and the Board of Directors to get the benefit of a higher price at the time of a ProPharma sale, and would have artificially deflated the value of Mr. Donnelly's Incentive Equity.

153.    Mr. Farah and the ProPharma Board of Directors breached their fiduciary duties by failing to calculate the valuation of Mr. Donnelly's Incentive Equity in good faith and by repurchasing Mr. Donnelly's Incentive Equity at a price well below market value.

154.    Mr. Farah and the ProPharma Board also took steps to deprive Mr. Donnelly of the benefit of his work on the Board of Directors.

155.    Since September 1, 2019, Mr. Donnelly was not allowed to participate in board meetings.

156.    The attempt to notify Mr. Donnelly of his removal from the ProPharma Board on September 23, 2020 was a sham and not made in good faith.

157.    Mr. Donnelly and Mr. Thomas both occupied the same positions on the ProPharma Board and ProPharma affiliates.

158.    The reason provided to Mr. Donnelly for his attempted removal from the Board of Directors in August 31, 2019 was a pretext when compared to Mr. Thomas.

159.    Despite being comparators, Mr. Farah and the ProPharma Board treated  Mr. Thomas differently and never required or suggested that his multiple leadership roles posed any conflict of interest that warranted removal from the ProPharma.

160.    Mr. Donnelly has suffered damages as a direct and proximate cause of Mr. Farah's breach of his fiduciary duties of care, loyalty and good faith.

161.    Mr. Donnelly thus asks this Court to award him damages sufficient to make him whole, consequential damages, and any and all other available remedies.

### COUNT V
#### UNJUST ENRICHMENT
#### (PLED IN THE ALTERNATIVE TO COUNTS I AND II)

162.    All prior allegations are incorporated under Count V, as if fully set forth herein.

163.    Mr. Donnelly's work and efforts in connection with his duties as a ProPharma Board member conferred a benefit to ProPharma.

164.    ProPharma realized the value of Mr. Donnelly's contribution in the form of the eventual ██████████ sale price to Odyssey Investment Partners on September 30, 2020.

165.    Mr. Donnelly's work as a ProPharma Board member was a significant factor in the growth, success and eventual sale of ProPharma.

166.    Despite Mr. Donnelly's contributions to Defendant, ProPharma has not paid Mr. Donnelly his Donnelly Base Compensation since April 18, 2019.

167.    Mr. Donnelly remains a ProPharma Board member.

168.    ProPharma has not paid Mr. Donnelly his Donnelly Base Compensation since April 19, 2019.

169.    On November 4, 2019, ProPharma paid Mr. Donnelly for his ProPharma Incentive Equity units at the June 2019 Valuation, a valuation intentionally below the fair market value.

170.    ProPharma's attempts to remove Mr. Donnelly from the Board on September 23, 2020 were in bad faith intended to deprive Mr. Donnelly of his full equity.

171.    Mr. Donnelly has not been compensated for his work and efforts in connection with achieving the eventual ███ million sale price to Odyssey Investment Partners.

172.    ProPharma had an equitable duty to pay Mr. Donnelly for the fair market value of his ProPharma Incentive Equity.

173.    To date, Mr. Donnelly has not received any contributions to his ProPharma Incentive Equity units on the MOIC that ProPharma achieved at the time of Mr. Donnelly's separation, or that are reflected in the sale price to Odyssey Investment Partners.

174.   Mr. Donnelly expected to receive his Donnelly Base Compensation and the fair market value of his ProPharma Incentive Equity units.

175.   ProPharma refuses to pay Mr. Donnelly either his earned Donnelly Base Compensation or the fair market value of his ProPharma Incentive Equity units.

176.   ProPharma has retained monies owed to Mr. Donnelly under the ProPharma Offer in the form of his earned Donnelly Base Compensation and the fair market value of his ProPharma Incentive Equity units.

177.   ProPharma should have reasonably expected to pay Mr. Donnelly his earned Donnelly Base Compensation and the fair market value of his ProPharma Incentive Equity units after completing its sale to Odyssey Investment Partners.

178.   Principles of justice, equity and good conscience demand that ProPharma not be allowed to retain the funds owed to Mr. Donnelly for his earned Donnelly Base Compensation and the fair market value of his ProPharma Incentive Equity units.

179.   Accordingly, ProPharma must disgorge the amounts payable for his Donnelly Base Compensation and the fair market value of his ProPharma Incentive Equity units that it has retained as they are justly owed to Mr. Donnelly.

WHEREFORE, Plaintiff seeks an award of compensatory damages up to $1,500,000, or an amount to be proven at trial, from Defendant, pre- and post-judgment interest at the lawful rate pursuant to S.C. Code § 34-31-20, attorneys' fees pursuant to S.C. Code § 15-37-10, costs pursuant to S.C. Code § 15-37-20, and such further relief as this Court deems appropriate.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all issues which may be tried by jury.

Dated: November 25, 2020

s/s Courtney C. Shytle
Courtney C. Shytle (SCB No. 7148)
Stephen W. Robinson (VSB No. 15337)
(*pro hac vice to be filed*)
 Nicholas D. SanFilippo (VSB No.
79018) (*pro hac vice to be filed*)
Daniel C. Masakayan (VSB No. 93655)
(*pro hac vice to be filed*)

**MCGUIREWOODS LLP**

201 North Tyron Street, Suite 3000
Charlotte, NC 28202
Telephone:    704-343-2110
Facsimile:     704-444-8710

1750 Tysons Boulevard, Suite 1800
Tysons, VA  22102
Telephone:    703-712-5000
Facsimile:     703-712-5050

cshytle@mcguirewoods.com
srobinson@mcguirewoods.com
nsanfilippo@mcguirewoods.com
dmasakayan@mcguirewoods.com

*Counsel for Plaintiff Patrick K. Donnelly*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on November 25, 2020, a true copy of the foregoing document

was sent by electronic and first-class mail to the following:

> Jonathan E. Missner, Esquire
> Robert B. Gilmore, Esquire
> Philip J. O'Beirne, Esquire
> Kevin L. Attridge, Esquire
> STEIN MITCHELL BEATO
> & MISSNER LLP
> 901 15th Street, NW, Suite 700
> Washington, DC 20005
> Telephone: (202) 737-7777
> Facsimile: (202) 296-8312
> jmissner@steinmitchell.com
> rgilmore@steinmitchell.com
> pobeirne@steinmitchell.com
> kattridge@steinmitchell.com
> *Counsel for Defendant ProPharma Group*
> *Topco, LLC*


> s/s Courtney C. Shytle
> Courtney C. Shytle (SCB No. 7148)

136941746_4

23