**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**Charleston Division**

PATRICK K. DONNELLY
8 Church Street
Charleston, South Carolina 29401,

       *Plaintiff,*

v.

PROPHARMA GROUP TOPCO LLC

       *Defendant.*

Case No. 2:20-cv-04110-JD

**DEFENDANT PROPHARMA LLC's MEMORANDUM IN SUPPORT OF ITS**
**MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)**

Defendant ProPharma Group Topco, LLC ("ProPharma"), by and through undersigned counsel, pursuant to 28 U.S.C § 1404(a), requests that this Court transfer the case to the United States District Court for the District of Delaware.

**INTRODUCTION**

Plaintiff Patrick K. Donnelly joined the Board of Directors of ProPharma in October 2016. In connection with his service on the Board, in early 2017 Donnelly signed an agreement to acquire shares of ProPharma, a small percentage of which would vest over time and the majority of which – the performance shares – would only vest upon the sale of the company. ProPharma terminated Donnelly from the Board effective August 31, 2019, for good reasons that are not necessary to explore at the present. At the time of his termination from the Board, only a fraction of Donnelly's shares had vested and – because no sale occurred until more than a year later – his termination from the Board cancelled his unvested performance shares. Even so, during the share buyback negotiation triggered by his termination from the Board, ProPharma offered to pay Donnelly for additional time and performance shares as a gesture of good will. He rejected it.

1

There was no question in 2019 that ProPharma had terminated Donnelly from the Board. The share buyback documents sent to Donnelly (and his counsel) in November 2019 stated: "the Investor's employment with and service to the Company and its Subsidiaries terminated on August 31, 2019."  The very fact of the buyback discussion only made sense given his termination. Donnelly plainly understood that termination of his board service had occurred, as he effectively admits throughout his Complaint.  Despite conceding that he did not receive board invitations or materials, attend board meetings, or perform any other functions consistent with continued board service following August 2019, Donnelly now claims that he was in fact on the ProPharma Board for another year, through September 2020.  Donnelly makes this demonstrably false claim because ProPharma was sold in September 2020 and he is attempting to claim entitlement to performance shares that had been forfeited and cancelled more than a year before.

Regardless, Donnelly *twice* expressly agreed to be bound by the terms of the ProPharma limited liability company (LLC) agreement, including in his agreement with ProPharma for the shares that are the subject of this dispute.  The LLC Agreement contains a mandatory forum selection clause requiring this action be brought in the courts of Delaware.  The Supreme Court has made clear that a valid forum-selection clause "represents the parties' agreement as to the most proper forum" and "should be given controlling weight in all but the most exceptional cases."  *Atl. Marine Constr. Co. v. U.S. Dist. Court for the W. Dist. of Tex.*, 571 U.S. 49, 63 (2013) (citations omitted).

This dispute plainly is subject to the mandatory forum-selection provision to which Donnelly repeatedly agreed.  Accordingly, as more fully explained below, this Court should grant ProPharma's motion and transfer this action to the United States District Court for the District of Delaware.

## FACTUAL BACKGROUND

### A.  The Parties

Defendant ProPharma is a Delaware limited liability company providing regulatory, medical information, pharmacovigilance, and compliance consulting services to customers in the pharmaceutical, biotechnology, and medical device industries.  Compl. ¶ 2.  ProPharma's principal office is located at 8717 West 110th Street, Suite 300, Overland Park, Kansas.  *Id*.  Plaintiff Donnelly is "an experienced executive who has worked in the medical device and pharmaceutical development field for 30 years."  *Id*. ¶ 12.  Donnelly is a citizen and resident of Charleston, South Carolina and he currently resides at 8 Church Street, Charleston, South Carolina. *Id.* ¶ 1, 2.

### B.  The ProPharma LLC Agreement, Which Includes Donnelly as a Party

Donnelly role as a Board Member of ProPharma was reflected in the September 30, 2016 ProPharma Amended and Restated Limited Liability Agreement ("LLC Agreement").  A copy of the LLC Agreement is attached hereto as **Exhibit 1**.  The LLC Agreement specifically named Donnelly as one of three "Managers designated by the Linden Investors" to serve on ProPharma's Board.  Ex. 1 at 30; *see also* Compl. ¶ 135.  In addition to establishing the composition of the Board, and naming Donnelly to it, the LLC Agreement also contains express terms governing board service including procedural provisions relating to board meetings and provisions describing the term of board service and the potential removal of Managers from the Board.  Ex. 1 at 30-31.

The issuance of Management Incentive Units to Managers is also expressly contemplated by the LLC Agreement.  Ex. 1 LLC at 19-20.[1]  Donnelly is listed as an individual holder of Units in the "Schedule of Unitholders" attached to the LLC Agreement dated September 30, 2016.  Ex.

---

[1] "From time to time after the date hereof, the Board shall have the power and discretion to approve the issuance to any employee, officer, Manager, director, consultant or advisor … (each an 'Eligible Service Provider') of authorized but unissued Units … ('Management Incentive Units')." Ex. 1 at 19.

1.  Indeed, the LLC Agreement goes to great lengths to describe the process by which the Board may authorize and grant Management Incentive Units and expressly names Management Incentive Unit Agreements as a vehicle for doing so.  Significantly, the LLC Agreement explicitly mandates that the grantee of such units must agree to be bound by the terms of LLC Agreement, stating:

> In connection with any approved issuance to any Eligible Service Provider of Management Incentive Units hereunder, such Eligible Service Provider shall execute a counterpart to the Agreement, or otherwise be deemed to have become a party to this Agreement by executing a Management Incentive Unit Agreement, accepting and agreeing to be bound by all terms and conditions hereof, and shall enter into such other documents and instruments to effect such purchase (including, without limitation, a Management Incentive Unit Agreement) as are required by the Board.

Exhibit 1, LLC Agreement, p. 19.[2]

Finally, and at issue in the present motion, the LLC agreement also includes a mandatory forum-selection clause, which requires that "any dispute relating hereto ***shall*** be heard in the state of federal courts of Delaware, and the parties agree to jurisdiction and venue therein." Ex. 1 at 52.[3]

The LLC Agreement is dated September 30, 2016 and, contemporaneously with the execution of the LLC Agreement, Donnelly executed a Joinder agreeing to "become a party to, to be bound by, and to comply with the provisions of the LLC Agreement in the same manner as if the undersigned were an original signatory to the LLC Agreement."  Ex. 1.  Thus, for the entire time that the September 30, 2016 LLC Agreement has been in effect, Donnelly has been a party.

### C.  Donnelly Reaffirms That He is Bound by the LLC Agreement

Consistent with the express terms of LLC Agreement naming Donnelly to the Board, in a letter dated October 24, 2016, ProPharma issued an "Offer to Join the Board of Directors" to

---

[2] Contrary to the terms of the LLC Agreement or the express title of Exhibit B, Donnelly's Complaint refers to the "Management Incentive Unit Agreement" as the "Incentive Equity Agreement" or "IEA." For the sake of consistency, and unless otherwise quoting the terms of either agreement, we will also use "IEA."

[3] Emphasis is added throughout unless otherwise indicated.

Donnelly, attached as Exhibit A to the Complaint.  Donnelly executed the Offer letter on October 31, 2016.  Compl. ¶ 22.  Under the terms of the Offer Letter, Donnelly agreed to serve on the ProPharma Board, as contemplated by the LLC Agreement. Compl. ¶ 24.  Specifically, Donnelly agreed to attend four quarterly board meetings and one strategic growth meeting each year he was on the board, which meetings occurred in Chicago, Illinois or Overland Park, Kansas.  Compl. Ex. A.

ProPharma also sent to Donnelly, as contemplated by the LLC Agreement, an IEA for his review and signature.  After receiving the IEA on multiple occasions, Donnelly finally signed this agreement effective January 18, 2017. A copy of the executed IEA is attached hereto as **Exhibit 2**.[4]  Under the IEA, Donnelly could obtain Management Incentive Units as part of Donnelly's compensatory benefit plan referenced in the LLC Agreement, with some units vesting with time and some with the occurrence of certain events.  Compl. ¶ 34.

In the IEA – and as an express condition of receiving the management incentive equity units granted by the IEA – Donnelly repeatedly reaffirmed that he had agreed to be bound by the terms of the LLC Agreement, including the forum-selection clause.  Consistent with the LLC Agreement's express requirements for holders of management incentive units under Section 3.9, Donnelly affirmed in the IEA that "[p]articipant acknowledges and agrees that the Management Incentive Units issued and acquired hereunder shall also be governed by, and have the terms, conditions, rights and obligations contained in, the LLC Agreement, *to which Participant acknowledges and agrees he or she is a party.*"  Ex. 2 at 3.  When he signed the IEA, Donnelly further affirmed that he had "been provided an opportunity to review and ask questions about the LLC Agreement," and that he "had an opportunity to consult with independent legal counsel

---

[4] Donnelly's Complaint attaches as an exhibit an unsigned version of the IEA.

regarding Participant's right and obligations under this Agreement [the IEA] and the LLC

Agreement **and fully understands the terms and conditions contained therein**."  Ex. 2 at 2.

Apart from the text of the IEA containing these plain provisions, the contract required

another Joinder document,[5] akin to the one he already signed in September 2016.  This second

Joinder, which Donnelly signed separately from and in addition to the IEA, reaffirmed his status

as a party to the LLC Agreement:

> By executing and delivering to the Company this Joinder, the undersigned hereby
> agrees to become a party thereto, and shall accept and be subject to, and comply
> with the terms, conditions and provisions of the LLC Agreement as a "Member"
> and a holder of "Units" thereunder, and shall be entitled to the rights and benefits
> and subject to the duties and obligations of a Member and a holder of such Units
> thereunder in the same manner as if the undersigned was an original signatory to
> the LLC Agreement.

Ex. 2 at Ex. A.

### D.  Donnelly's Termination from the Board and Share Buy-back Discussion

Donnelly served on the Board until he was removed, pursuant to Section 5.2(b) of the LLC

Agreement, effective August 31, 2019.  Compl. ¶ 98.  A copy of the Donnelly Board Removal is

attached hereto as **Exhibit 3**.  As he himself acknowledges in his Complaint, as of September 1,

2019, Donnelly no longer performed any board function, including attending board meetings or

reviewing board materials.  Compl. ¶ 96.  Within a month of his removal, Donnelly and then-

Board Chairman, Michael Farah, discussed the value of Donnelly's units that had vested as of the

time of his termination.  Compl. ¶ 33, 47.

At that time, ProPharma sent to Donnelly a valuation chart, attached to the Complaint as

Exhibit C.  Compl. ¶ 49.  By his own admission, Donnelly rejected the September 2019 repurchase

offer from ProPharma not because Donnelly disputed the termination of his Board service, but

---

[5] "Contemporaneously herewith, Participant shall deliver to the Company (i) an executed Joinder
to the LLC Agreement in the form of Exhibit A hereto…"  Ex. 2 at 1.

because Donnelly disputed the valuation ProPharma had provided.  Compl. ¶ 63.  Donnelly and

ProPharma engaged in negotiations in the weeks that followed.  On November 5, 2019, ProPharma

sent Donnelly (and his counsel) another offer, this time in the form of a Repurchase Agreement

for his signature.  A copy of the Email sent from Michael Farah to Donnelly is attached hereto as

**Exhibit 4 (Farah Email).**

There was no question at this juncture that Donnelly had been terminated form the Board

– and his performance shares cancelled – as reflected in the draft Repurchase Agreement:

"WHEREAS, the Investor's employment with and service to the Company and its Subsidiaries

***terminated on August 31, 2019*** (the "Separation Date")."  A copy of the Repurchase Agreement

is attached hereto as **Exhibit 5** (emphasis added).

This Complaint followed a year later, inexplicably claiming that "[p]rior to September 23,

2020, ProPharma did not ever otherwise indicate to Mr. Donnelly that he was no longer a

ProPharma Board member." Compl. ¶ 94.

### E.  Meet and Confer Efforts Regarding This Motion to Transfer

The present issue was raised with opposing counsel by email on December 8, 2020, shortly

after the Complaint was filed.[6]  Opposing counsel responded by claiming that "ProPharma never

furnished a copy of the LLC Agreement.  Rather [Donnelly] was sent several signature pages on

September 26, 2016.".  A copy of this email chain is attached hereto as **Exhibit 6.**  On Monday,

January 11, 2021, the parties met and conferred in an attempt to resolve the parties' dispute

---

[6] *See* Ex. 6 (Email Chain) at  7 ("this action was not filed in the proper venue. Mr. Donnelly
agreed to be bound by the terms and conditions of the ProPharma LLC Agreement, and thus he
agreed that any dispute 'shall be heard in the state or federal courts of Delaware, and the parties
agree to jurisdiction and venue therein." Please confirm that Mr. Donnelly will consent to a joint
motion to transfer this matter to the United States District Court for the District of Delaware.'").

regarding venue.  Donnelly would not consent to a transfer to the United States District Court for the District of Delaware.  This motion follows.

## **LEGAL STANDARD**

This Court has the authority to "transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." *See* 28 U.S.C. § 1404(a).  In interpreting this statutory provision, the United States Supreme Court has made clear that "[w]hen the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause." *Atl. Marine Constr. Co. v. U.S. Dist. Court for the W. Dist. of Tex.*, 571 U.S. 49, 62 (2013).  In *Atlantic Marine*, the Supreme Court emphasized that a valid forum-selection clause "represents the parties' agreement as to the most proper forum[,]" and "should be given controlling weight in all but the most exceptional cases." *Id.* at 63 (citations omitted).  Where a valid forum-selection clause is present, "[o]nly under extraordinary circumstances unrelated to the convenience of the parties should a § 1404(a) motion be denied." *Id.* at 62.

The existence of a valid forum selection clause alters the typical venue transfer analysis under §1404(a) in at least two relevant respects.  *First*, the plaintiff's choice of forum no longer enjoys deference, and the burden shifts to the plaintiff to prove that "extraordinary circumstances" exist, rendering transfer unwarranted.[7]  *Second*, courts cannot consider arguments concerning the party's private interests, such as inconvenience, in determining whether to disregard a valid forum selection clause. *Id.* at 64 ("When parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their

---

[7] *See Atl. Marine Const. Co*, 571 U.S. at 63 ("the plaintiff's choice of forum merits no weight. Rather, as the party defying the forum-selection clause, the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted.").

witnesses, or for their pursuit of the litigation. A court accordingly must deem the private-interest factors to weigh entirely in favor of the preselected forum.").

Consistent with the Supreme Court's decision in *Atlantic Marine*, this Court has considered § 1404(a) motions to transfer in cases involving a forum-selection clause using a two-part analysis. *See Lunn v. Flower*, No. 1:15-CV-04454-JMC, 2016 WL 5073928, at *2 (D.S.C. Sept. 20, 2016). "First, a court must determine whether the forum-selection clause is valid and enforceable." *Id.* (citing *Atl. Marine,* 571 U.S. at 63). "Second, the court must consider whether 'extraordinary circumstances' would hinder the enforcement of the forum-selection clause." *Id.* (citing *Atl. Marine*, 571 U.S. at 62).

"In deciding a § 1404(a) motion based on a forum-selection clause, a district court applies federal law.  It may consider evidence outside the pleadings, provided that it views all facts in the light most favoring the party opposing transfer."  *Young v. PMAC Lending Servs.*, No. 2:15-CV-3865-PMD, 2015 WL 7776932, at *2 (D.S.C. Dec. 2, 2015) (citations omitted).

## ARGUMENT

### I. The Mandatory Forum-Selection Clause in the LLC Agreement is Valid and Enforceable, and Requires that this Dispute Must be Heard by a Delaware Court.

Concurrent with his execution of the IEA—and as a condition of receiving the incentive equity units granted thereunder—Donnelly expressly agreed to be bound by the terms of the LLC Agreement, including its forum-selection clause providing that any dispute shall be heard in Delaware courts, under Delaware law.  Well-settled precedents prevent Donnelly from attempting to escape the forum selection clause that he previously agreed to by now claiming – contrary to his written affirmation at the time – that he did not receive or understand the LLC Agreement.

**A.  The LLC Agreement's Forum-Selection Clause is Mandatory, Applies to this Dispute, and thus Enjoys the Presumption of Enforceability.**

"A mandatory [forum selection] clause requires litigation to occur in a specified forum; a permissive clause permits litigation to occur in a specified forum but does not bar litigation elsewhere." *BAE Sys. Tech. Sol. & Servs., Inc. v. Republic of Korea's Def. Acquisition Program Admin.*, 884 F.3d 463, 470 (4th Cir.), as amended (March 27, 2018).  "[W]here venue is specified with mandatory or obligatory language, the clause will be enforced." *Id* at 472, n. 7.  Here the forum selection clause mandates that "any dispute relating hereto ***shall*** be heard in the state of federal courts of Delaware, and the parties agree to jurisdiction ***and venue*** therein." LLC Agreement, § 14.9, p. 52.

"[W]hen a motion to transfer pursuant § 1404(a) is subject to a valid, mandatory forum-selection clause…the forum-selection clause is given controlling weight in all but the most exceptional cases, and the plaintiff bears the burden of proving why it should not be enforced." *Charleston Advancement Acad. High Sch. v. Acceleration Academies, LLC*, No. 2:20-cv-01676-DCN, 2020 WL 4016256, at *16 (D.S.C. July 16, 2020) (citation omitted).  Enforcement of a mandatory forum-selection clause will occur absent proof that the forum selection clause itself was "induced by fraud or overreaching."  *See Albemarle Corp.*, 628 F.3d at 651.

The court in *Charleston Advancement Academy High School v. Acceleration Academies, LLC* made clear that forum-selection clauses—like the one in the LLC Agreement—that dictate where a dispute ***shall*** be brought are mandatory.  The clause there stated that "[i]f an AAA filing site cannot be agreed upon, the filing site **shall** be in Charlotte, North Carolina."  2020 WL 4016256, at *16.   The court found that clause to be mandatory even though the clause expressly contemplated the potential agreement to arbitration elsewhere.  *Id*.  In the present case, the forum selection clause is even more clearly mandatory, stating without qualification that "any dispute

relating hereto **shall** be heard in the state or federal courts of Delaware, and the parties agree to jurisdiction and venue therein."  LLC Agreement, § 14.9 (emphasis added).  Because the forum-selection clause in the LLC Agreement is mandatory, it is presumptively enforceable.

Donnelly's claims relate to his board service and his alleged ownership of shares, both of which are expressly subject to the LLC Agreement.   Courts routinely hold that a forum selection clause that applies to any dispute "relating to" an agreement is "broad" and  governs "every dispute between the parties having a significant relationship to the contract regardless of the label attached to the dispute."  *Developers Sur. & Indem. Co. v. Carothers Constr., Inc.*, No. CV 9:17-1419-RMG, 2017 WL 3054646, at *3 (D.S.C. July 18, 2017).

Donnelly's claims obviously relate to the LLC Agreement and must be brought in Delaware.

## B.  The Court Should Disregard Any Argument by Donnelly that His Alleged Failure to Apprise Himself of the LLC Agreements Terms Defeats the Agreements Valid Forum Selection Clause.

ProPharma anticipates that Mr. Donnelly will claim that enforcement of the forum-selection clause is unreasonable, and thus the clause invalid, because Donnelly did not review the LLC Agreement and thus supposedly did not know the clause existed.  The Court can easily reject this argument.

Even if Donnelly insists that he never received a copy of the LLC Agreement – a point ProPharma does not concede – it is beyond argument that Donnelly was aware of the LLC Agreement and had every reasonable opportunity to review it.  Donnelly executed a Joinder in September 2016 agreeing to be bound by the LLC Agreement.  The IEA, which Donnelly plainly did receive (and has attached to his Complaint), clearly notified Donnelly that the management incentive units issued pursuant to the IEA were "also governed by, and have the terms, conditions, rights and obligations contained in the LLC Agreement[.]" LLC Agreement § 2(b)(iii).  Indeed,

11

the IEA itself contains 11 references to the LLC Agreement.  *Id.*  Furthermore, Donnelly expressly acknowledged in the IEA that he had "been provided ***an opportunity to review and ask questions about the LLC Agreement***," and that he "had an opportunity to consult with independent legal counsel regarding Participant's right and obligations under this Agreement [the IEA] and the LLC Agreement ***and fully understands the terms and conditions contained therein***."  IEA, p. 2.  It is indisputable that Donnelly had ample notice of the requirement that he sign the LLC agreement and ample opportunity to review the agreement ahead of signing.  Donnelly's (alleged) repeated failure to review the LLC Agreement, which he had every right and opportunity to do, does not free him from the obligations of the LLC Agreement that he repeatedly accepted.

In reversing the lower court's refusal to enforce a plaintiff's valid forum selection clause, the Fourth Circuit reiterated:  "An elementary principle of contract law is that a party signing a written contract has a duty to inform himself of its contents before executing it and in the absence of fraud or overreaching he will not be allowed to impeach the effect of the instrument by showing that he was ignorant of its contents or failed to read it."  *Sydnor v. Conseco Fin. Servicing Corp* 252 F.3d 302, 306 (4th Cir. 2001).  The *Sydnor* court refused to credit Donnelly's argument despite it being made by a plaintiff that had waived the right to a jury trial and consented to arbitration. Here the dispute is merely in which court this matter must proceed.

This Court routinely rejects attempts, like Donnelly's here, to plead ignorance in an effort to escape a valid forum-selection clause:  "Plaintiff's failure to review the employment contract, however, does not convert an otherwise reasonable forum-selection clause into one that was obtained by fraud or overreaching."  *Tetrev v. Pride Int'l, Inc.*, No. 2:04-CV-23161-23, 2006 WL 8445435, at *6 (D.S.C. Feb. 27, 2006).

Although federal law plainly controls the transfer question under § 1404(a)[8], the same result is dictated by South Carolina and Delaware law.  In *Burwell v. South Carolina National Bank*, for example, the South Carolina Supreme Court rejected exactly the argument Mr. Donnelly appears poised to make, on nearly identical facts.  288 S.C. 34, 40, 340 S.E.2d 786, 790 (1986).  There, the court held that a graduate of Wharton Business School with demonstrated business acumen and extensive prior experience in the airline industry could not characterized as "ignorant and unwary" and excused of his obligations under a contract that he signed but failed to read.  As the court reasoned, "[c]learly, he had duty to read the loan guaranty documents before signing them. His failure to do so is inexplicable." *Id.*

Just like the plaintiff in *Burwell*, Mr. Donnelly is a seasoned executive with a self-described "international reputation in the medical device and pharmaceutical development industry for his unique skillset and business acumen, particularly because of his industry experience and business contacts and relationships" who bound himself to the terms of a contract he now claims he repeatedly failed to review before signing documents binding him to it, despite having affirmed otherwise.  Mr. Donnelly had ample opportunity to review the LLC Agreement and should not be excused of his duty to review the agreement before signing the joinder agreement binding himself to its terms.  *See also Regions Bank v. Schmauch*, 354 S.C. 648, 663, 582 S.E.2d 432, 440 (Ct. App. 2003) ("A person signing a document is responsible for reading the document and making sure of its contents. Every contracting party owes a duty to the other party to the contract and to the public to learn of the contents of a document before he signs it.").[9]

---

[8] *See e.g. Young*, 2015 WL 7776932, at *2 ("In deciding a § 1404(a) motion based on a forum-selection clause, a district court applies federal law.").
[9] *See also see also Jenkins v. CitiFinancial, Inc.*, No. CV 2:05-1199-PMD-GCK, 2007 WL 9753133, at *6 (D.S.C. Jan. 16, 2007) ("Under South Carolina law, one entering into a written

Delaware Supreme Court precedent echoes the obvious principle proclaimed by the United States Supreme Court more than 100 years ago.  "That [Plaintiff] did not read the [contract], if such were the fact, was his own fault.  It will not do for a man to enter into a contract, and, when called upon to respond to its obligations, to say that he did not read it when he signed it, or did not know what it contained.  If this were permitted, contracts would not be worth the paper on which they are written…" *Pellaton v. Bank of New York*, 592 A.2d 473, 477 (Del. 1991) (citations omitted).[10]

Apart from being unsupported in the law, Donnelly's effort to distance himself from the LLC Agreement in this case is curious given that his claims depend entirely on his Board service and alleged entitlement to units of ProPharma, both of which only occurred subject to the LLC Agreement.  It is unclear to ProPharma how Donnelly can proceed with his claims if he is not a party to the LLC Agreement.  Regardless, he is a party to the LLC Agreement and expressly agreed to be bound by its terms, including the mandatory forum-selection clause, which enjoys the presumption of enforceability, and transfer, mandated by the Supreme Court in *Atlantic Marine*.[11]

---

contract should read it and avail himself of every reasonable opportunity to understand its contents and meaning.")

[10] *Citing Upton, Assignee v. Tribilcock,* 91 U.S. 45, 50, 23 L.Ed. 203 (1875).  *See also First Baptist Church of Timmonsville v. George A. Creed & Son, Inc.*, 281 S.E.2d 121, 123 (S.C. 1981) ("[A] party to a contract incorporating an arbitration provision cannot escape the obligation of such a provision by simply declaring: 'But I did not read the whole agreement.' This is especially true where … the party seeking to avoid the provision does not dispute the validity of the contract or that it was entered into, and is the party for whom the contract was drafted.").

[11] Under § 1404(a), the court has authority only to transfer the entire civil action, not individual claims." *One Beacon Ins. Co. v. JNB Storage Trailer Rental Corp.*, 312 F. Supp. 2d 824, 828 (E.D. Va. 2004).  Some courts have held that discretion exists to sever a party where, unlike here, there are parties not subject to the forum selection clause; this case obviously does not present such "multi-party litigation".  *Artech Info. Sys., LLC v. ProTek Consulting*, No. CV PX-17-3468, 2018 WL 3575054, at *2 (D. Md. July 25, 2018).

**C. Donnelly Cannot Satisfy his Burden of Proving that the Valid and Enforceable Forum-Selection Clause Should Not be Enforced Due to Unusual Circumstances.**

Only under exceptional circumstances should a § 1404(a) motion involving a valid forum-selection clause be denied. *Atl. Marine Constr. Co.*, 571 U.S. at 62-63 ("The 'enforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system.") (citation omitted). Where there is a valid bargained-for forum selection clause, the plaintiff's choice of forum has no weight and he carries the burden of proving that his is the "exceptional" or "unusual" case in which "extraordinary circumstances" requiring the court to disregard the parties' preselected forum. *Id.* at 63, 64. In considering whether extraordinary circumstances are present to avoid enforcement of a valid forum selection clause, a court may consider "arguments about public-interest factors only." *Id.* at 64 (reasoning that whatever effect transfer to the preselected forum would have on private interests would have been "clearly foreseeable at the time of contracting." (citing *M/S Bremen*, 407 U.S. at 17-18)). Public-interest factors that this Court has considered include "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; and the interest in having the trial of a diversity case in a forum that is at home with the law." *See Lunn v. Flower*, at *5 (citing *Atl. Marine*, 571 U.S. at 62, n. 6). Finally, because public interest factors "will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases." *Atl. Marine*, 571 U.S. at 64.

Consistent with the analysis in *Lunn v. Flower*[12] this Court should little if any weight to any public interest arguments offered by Donnelly. There, claims of court congestion in the preselected forum and the Plaintiff's arguments alleging increased cost of litigation and deprivation of the protection of South Carolina law did "not persuasively demonstrate" that public

---

[12] No. 1:15-CV-04454-JMC, 2016 WL 5073928, at *2 (D.S.C. Sept. 20, 2016).

interest factors weighed in favor of denying transfer. *Id.*, at *3, 5. This Court reasoned that "[f]or as many public interest assertions as Plaintiff provides that this matter should be litigated in South Carolina, Defendant provides just as many public interest contentions as to why the matter is properly litigated in California." *Id.* at *5. This reinforces the holding in *Atlantic Marine* that the party opposing enforcement of a valid forum-selection clause bears the heavy burden of proving truly "unusual circumstances." *See Atl. Marine*, 571 U.S. at 64. Similar to *Lunn v. Flower,* in the present case, Donnelly cannot point to public interest factors that would amount to "unusual circumstances" and thus weigh in favor of denying transfer. As demonstrated below, any public interest argument Donnelly could conceivably offer will not weigh in favor of this Court granting transfer.

First, Mr. Donnelly cannot prove that "the administrative difficulties flowing from court congestion," overwhelmingly favors the District of South Carolina over transferring this case to the District of Delaware. According to caseload statistics issued by the Administrative Office of U.S. Courts, between March 2019 and March 2020, there were more cases filed in the District of South Carolina (5,052) than in the District of Delaware (2,463). *See* United States District Courts—National Judicial Caseload Profile (March 31, 2020).[13] As of March 31, 2020, there were also more than double the number of pending cases in the District of South Carolina (5,213) than in the District of Delaware (2,485). *Id.* Further, between March 2019 and March 2020, the median time from filing to disposition in civil cases – perhaps the most relevant indicator of court

---

[13] The complete report on Judicial Caseload Profiles of the United States District Courts can be accessed at:
https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0331.2020.pdf (last accessed Jan. 8, 2021).

congestion – was much higher in the District of South Carolina (9.7 months) than in the District of Delaware (5.3 months). *Id.*

The second public interest factor, the "local interest in having localized controversies decided at home," is not implicated here because this is not a local dispute. By Donnelly's own admission, only one party to this action is located in South Carolina. *See* Compl. ¶ 4-5. Donnelly's allegation that "a substantial number of the events giving rise to the claims … took place in South Carolina," should be rejected. Compl. ¶ 7. The present action arises from Mr. Donnelly's service on the Board of Directors for ProPharma and centers on whether Donnelly is owed additional compensation for services rendered post-August 2019. While a central disputed fact among the parties is the date of Mr. Donnelly's termination from the Board, even if this Court accepts Donnelly's version of events as true, Mr. Donnelly cannot plausibly claim that his Board service post-August 2019, or ever for that matter, involved substantial business transactions in the state of South Carolina.

For one, ProPharma is a Delaware company, with its principal place of business located in Overland Park, Kansas, as his Complaint admits. Compl. ¶ 2. Second, Donnelly's primary duty as a member of the Board, if not his sole duty, was to attend four quarterly board meetings and one strategic growth meeting each year, all of which required Donnelly to travel outside of South Carolina. Exhibit A to Complaint, Offer Letter, p. 4. This controversy is clearly not local to South Carolina. Finally, it is undisputed among the parties that Donnelly did not provide or offer to provide services to the Board following August 2019. Compl. ¶ 155. He was no longer invited to attend board meetings or provided materials necessary to carry out his board service, or otherwise included in continuing communications concerning activities of the board. Compl. ¶ 96.

Moreover, at the very heart of Donnelly's complaint is the fact that ProPharma did not pay Mr. Donnelly compensation for board service post-August 2019.

The third and final factor, "the interest in having the trial of a diversity case in a forum that is at home with the law," favors transfer to Delaware. The parties agreed that the LLC Agreement "shall be governed by, and construed in accordance with, the laws of the State of Delaware[.]" Ex. 1 at 56. Thus, barring transfer, the District for South Carolina would be asked to apply Delaware law to resolve the dispute arising under the LLC Agreement. Moreover, even if the district court determines that South Carolina substantive law applies, *i.e.*, South Carolina contract law, any impact is nullified. As acknowledged by the Supreme Court, "federal judges routinely apply the law of a State other than the State in which they sit." *Atl. Marine*, 571 U.S. at 67. Moreover, unless Donnelly can prove "any exceptionally arcane features of [South Carolina] contract law that are likely to defy comprehension by a federal judge sitting in [Delaware,]" this factor, too, weighs in favor of granting transfer to Delaware. *Id.* at 68.

## CONCLUSION

For the foregoing reasons, application of the *Atlantic Marine* framework to this case requires this Court to enforce the parties' bargained-for agreement to litigate any dispute in the courts of Delaware. Accordingly, the Court should grant ProPharma's Motion to Transfer Venue pursuant to 28 U.S.C. § 1404(a).

Dated: January 15, 2021                      Respectfully submitted,


                                             By:    /s/ Bill Nettles
                                             Bill Nettles (Federal Bar No. 6586)
                                             **Law Offices of Bill Nettles**
                                             2008 Lincoln St.
                                             Columbia, SC 29201
                                             Telephone: (803) 814-2826
                                             bill@billnettleslaw.com

18

Robert B. Gilmore (pro hac vice)
Philip J. O'Beirne (pro hac vice)
Kevin L. Attridge (pro hac vice)
**Stein Mitchell Beato & Missner LLP**
901 15th Street, N.W.
Washington, DC 20005
Telephone: (202) 737-7777
rgilmore@steinmitchell.com
pobeirne@steinmitchell.com
kattridge@steinmitchell.com

*Attorneys for Defendant ProPharma*
*Group Topco, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on January 15, 2021, a true copy of the foregoing document

was served via ECF to the following:

>Courtney C. Shytle (SCB No. 7148)
>Nicholas D. SanFilippo (VSB No. 79018) (pro hac vice)
>Daniel C. Masakayan (VSB No. 79018) (pro hac vice)
>
>**MCGUIREWOODS LLP**
>201 North Tyron Street, Suite 3000
>Charlotte, NC 28202
>Telephone: 704-343-2110
>Facsimile: 704-444-8710
>
>1750 Tysons Boulevard, Suite 1800
>Tysons, VA 22102
>Telephone: 703-712-5000
>Facsimile: 703-712-5050
>
>cshytle@mcguirewoods.com
>nsanfilippo@mcguirewoods.com
>dmasakayan@mcguirewoods.com

>/s/ Bill Nettles
>(Federal Bar No. 6586)