**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
Charleston Division

| | |
|---|---|
| PATRICK K. DONNELLY, | |
| *Plaintiff,* | |
| v. | Case No. 2:20-cv-4110-JD |
| PROPHARMA GROUP TOPCO, LLC, | |
| *Defendant.* | |

**PLAINTIFF PATRICK K. DONNELLY'S RESPONSE**
**TO DEFENDANT PROPHARMA GROUP TOPCO, LLC'S**
**MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)**

Plaintiff Patrick K. Donnelly ("Mr. Donnelly"), by and through undersigned counsel, hereby files this Response to Defendant ProPharma Group Topco, LLC's ("ProPharma" or "Defendant") Motion to Transfer Venue pursuant to 28 U.S.C. § 1404(a) ("Motion to Transfer"). For the reasons set forth below, this Court should deny ProPharma's Motion to Transfer.

## INTRODUCTION

ProPharma has failed to satisfy its burden to show that transfer to the District of Delaware is proper or warranted. ProPharma's arguments in favor of transfer depend upon two fallacies – first, that that the forum selection clause contained in the ProPharma Limited Liability Agreement ("LLC Agreement") applies to Mr. Donnelly's claims and second, that the forum selection clause is a mandatory clause requiring transfer. Neither of these propositions is true; and the defeat of either requires this Court to deny the instant motion.

First, transfer should be denied because by its own terms the forum selection clause relied upon by ProPharma does not apply to this dispute. Mr. Donnelly was never provided any copy of the LLC Agreement prior to commencing this litigation, and enforcing it against him would be

unjust and unreasonable.  More importantly, it is undisputed that the forum selection clause relied upon by Pro Pharma applies to the LLC Agreement only.  None of Mr. Donnelly's claims, however, are based on the rights and benefits allegedly conferred by the LLC Agreement.  The clause is neither incorporated in nor included in either the ProPharma Offer Agreement ("ProPharma Offer") or the ProPharma Incentive Equity Agreement ("IEA"), the contracts upon which Mr. Donnelly's claims are based.  As discussed more thoroughly herein, Mr. Donnelly's claims solely relate to the IEA and ProPharma Offer.  ProPharma's attempt to re-write Mr. Donnelly's claims to fit within the terms and conditions of the LLC Agreement are based upon a misunderstanding, or mischaracterization, of Mr. Donnelly's claims as set forth in the Complaint, and should be rejected.  The LLC Agreement's forum selection clause does not encompass Mr. Donnelly's claims, and thus, ProPharma's Motion to Transfer should be denied.

Second, even if applicable to this matter (a fact Mr. Donnelly adamantly denies), the LLC Agreement's forum selection clause lacks the exclusivity language required in this Circuit to oust South Carolina of jurisdiction and confer jurisdiction and venue **exclusively** in Delaware.  Rather, the LLC Agreement's forum selection clause is permissive only, and thus the *Atlantic Marine* standard does not apply.  *Atl. Marine Constr. Co. v. U.S. Dist. Court*, 134 S. Ct. 568, 575 (2013).  The Court therefore should undertake "an individualized, case-by-case consideration of convenience and fairness" and "weigh in the balance a number of case-specific factors."  *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (citation omitted).  This analysis clearly indicates Mr. Donnelly's choice of venue in South Carolina should remain undisturbed.

For these reasons, the motion to transfer should be denied.

## PROCEDURAL BACKGROUND

On November 25, 2020, Mr. Donnelly filed suit in this Court, alleging breach of contract, breach of the implied covenant of good faith and fair dealing, breach of fiduciary duty, and unjust enrichment. (Dkt. No. 1). On January 15, 2021, ProPharma filed the instant Motion to Transfer seeking to transfer this case to the District of Delaware. (Dkt. No. 24).

## RELEVANT FACTS

The allegations in Mr. Donnelly's Complaint (Dkt. No. 1) are based solely on the terms of the ProPharma Offer (Dkt. No. 1-1), the IEA (Dkt. No. 1-2), and figures enclosed in the June 2019 Valuation (Dkt. No. 1-3). (*See also*, Compl., ¶¶ 109-179)  Mr. Donnelly does not bring suit under the LLC Agreement, nor does he mention it within his Complaint.  Mr. Donnelly alleges, *inter alia*, that he was not paid certain funds owed to him under the ProPharma Offer and IEA, in breach of the express terms of the two agreements, and was instead paid upon a valuation described in the June 2019 Valuation. (Compl., ¶¶ 109-179).  As described in his Complaint, Mr. Donnelly claims that ProPharma agreed to award him management incentive units in exchange for services, and ProPharma's obligation to deliver those units was created by the IEA. (Compl., ¶¶ 47-83, 122-133).  ProPharma claims that Donnelly was terminated[1] before a majority of the units vested, and therefore he is not entitled to receive those units; the terms upon which an effective termination would be deemed to occur are set forth in the IEA (Section 4(a)). The consequences of a

---

[1]      ProPharma argues that Exhibit 5 to its Motion to Transfer, a draft document entitled "Repurchase Agreement" demonstrates that there is "no question" that Mr. Donnelly "had been terminated form [sic] the Board – and his performance shares cancelled…." (Def. Mem. at 7).  This statement is without factual or legal support.  The unsigned draft document simply reflects the ongoing and failed negotiations between Mr. Donnelly and ProPharma – the negotiations which ultimately led to the instant lawsuit.  Mr. Donnelly objects to the insinuation that this unsigned draft document entitled "Repurchase Agreement," in any way effectively terminated his position with ProPharma.

termination, referred to as forfeiture, are also determined by the IEA (Section 6(b)). Finally, the schedule pursuant to which and the terms upon which the management incentive units would vest is determined by the IEA (Section 4).  On the other hand, the LLC Agreement is a corporate governance document that establishes such things as the organization of the entity, capital contribution, distributions, management of the entity, books and records, tax matters, and dissolution. (*See* Def. Br., Ex. 1 at i-iii).  It does not govern the terms of Mr. Donnelly's employment (the ProPharma Offer does) or the terms of his equity incentives (the IEA does).  None of the claims asserted by Mr. Donnelly relate to an alleged breach of the LLC Agreement.

Neither the ProPharma Offer nor the IEA have forum selection clauses, but instead allow a party to bring an action arising out of those agreements in any competent jurisdiction.  Moreover as discussed below, the LLC Agreement's forum selection clause was not effectively incorporated into nor applicable to the IEA.  No effort was made to incorporate the LLC Agreement's forum selection clause into the ProPharma Offer; that document does not reference the LLC Agreement at all.

Finally, ProPharma never furnished a copy of the LLC Agreement to Mr. Donnelly. Rather, ProPharma gave Mr. Donnelly only the signature pages to the LLC Agreement.  *See* Ex. 1.  The first time Mr. Donnelly (or his counsel) set eyes upon the LLC Agreement, in any form, was December 10, 2020 when ProPharma's counsel sent it to Mr. Donnelly's counsel via email. *See* Ex. 2.

## **LEGAL STANDARD**

28 U.S.C. § 1404(a) ("Section 1404(a)") authorizes a case transfer "for the convenience of parties and witnesses, in the interest of justice."  28 U.S.C. § 1404(a).  "The purpose of this section is to prevent the waste of time, energy and money and to protect litigants, witnesses, and the public

against unnecessary inconvenience and expense." *De Lay & Daniels, Inc. v. Allen M. Campbell Co.*, 71 F.R.D. 368, 371 (D.S.C. 1976) (quotations omitted). The burden is on the moving party to show by a preponderance of the evidence "that transfer to another forum is proper." *State Farm Fire & Cas. Co. v. Blanton*, 2014 WL 7146980, at *2 (D.S.C. Dec. 15, 2014) (citations omitted). Specifically, the defendant "must prove that an alternative forum is available, adequate, and more convenient (in light of the public and private interests involved) than the forum selected by the plaintiff." *BAE Sys. Tech. Sol. & Servs., Inc. v. Republic of Korea's Def. Acquisition Program Admin.*, 884 F.3d 463, 471 (4th Cir. 2018), *as amended* (Mar. 27, 2018).

The decision to transfer a case to another venue is "committed to the discretion of the district court[,]" *In re Ralston Purina Co.*, 726 F.2d 1002, 1005 (4th Cir. 1984) (citations omitted), requiring the court to undertake "an individualized, case-by-case consideration of convenience and fairness" and "to weigh in the balance a number of case-specific factors," *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (citation omitted). "Unless the balance is strongly in favor of the movant, the plaintiff's choice of forum should rarely be disturbed." *Avant v. Travelers Ins. Co.*, 668 F. Supp. 509, 510 (D.S.C. 1987); *Sw. Equip., Inc. v. Stoner & Co.*, C.A. No. 6:10–1765–HMH, 2010 WL 4484012, at *2 (D.S.C. Nov. 1, 2010) ("Generally, a plaintiff's choice of forum will not be disturbed lightly; a defendant has a heavy burden when it moves to transfer a venue properly selected by the plaintiff.").

On a Section 1404(a) motion to transfer, "a district court applies federal law," not state law. *Young v. PMAC Lending Servs.*, No. 2:15-CV-3865-PMD, 2015 WL 7776932, at *2 (D.S.C. Dec. 2, 2015) (citations omitted); *see also Stewart Org., Inc.*, 487 U.S. at 32. While a court "may consider evidence outside the pleadings," it "views all facts in the light most favoring the party opposing transfer." *Young*, No. 2:15-CV-3865-PMD, 2015 WL 7776932 at *2.

## ARGUMENT

This Court should deny ProPharma's Motion to Transfer because the LLC Agreement's forum selection clause is inapplicable to Mr. Donnelly's claims and therefore, cannot provide a basis for transfer.  Even if ProPharma overcomes this hurdle, its motion should be denied because the forum selection clause at issue is permissive, and the Section 1404(a) factors do not strongly favor, but instead weigh heavily against transfer from the District of South Carolina.

**I.     Because Mr. Donnelly's Claims Fall Outside the Scope of the Forum Selection Clause, Transfer Must be Denied.**

In order to hold the clause applicable to the case at bar and to provide a basis for transfer, the Court must determine that Mr. Donnelly's claims are within the scope of the clause.  *See Robinson v. Ladd Furniture*, LLC, 995 F.2d 1064, 1993 WL 211309 at *4 (4th Cir. 1993) ("It is not enough simply to decide that this [forum selection] clause is enforceable in the abstract; we must also determine whether it is enforceable against these particular claims."); *see also Jeffers Handbell Supply, Inc. v. Schulmerich Bells, LLC*, No. 0:16-CV-03918-JMC, 2017 WL 3582235, at *10 (D.S.C. Aug. 18, 2017) (finding that because plaintiff's action fell outside the forum selection clause's scope, the court would not consider the clause, and refused to transfer under Section 1404(a) on the basis of the forum selection clause).  To make this determination, the Court looks "to the language of the parties' contracts to determine which causes of action [if any] are governed by the forum selection clauses." *Jeffers Handbell Supply*, 2017 WL 3582235 at *9 (citing *Marinechance Shipping, Ltd. v. Sebastian*, 143 F.3d 216, 222 (5th Cir. 1998)).  In this case, none of the causes of action are governed by the LLC Agreement forum selection clause.

As a threshold matter, it would be unreasonable and unjust to apply the LLC Agreement forum selection clause to Mr. Donnelly because ProPharma failed to provide him with a copy of the LLC Agreement at the time Mr. Donnelly executed the IEA.  Since the forum selection clause

was not part of the bargained for exchange when he signed the IEA, it should not be enforced to oust his selected forum of jurisdiction. *See* Section I(A), *infra*.

However, even if this Court concludes that Mr. Donnelly is bound by the forum selection clause, ProPharma's motion to transfer must be denied because the plain text of the clause makes it applicable only to the LLC Agreement and disputes related thereto, and Mr. Donnelly's claims are not related to the LLC Agreement. As such, the clause cannot support the motion to transfer, and it must be denied. *See* Section I(B), *infra*.

Finally, to the extent ProPharma raises in its reply to Mr. Donnelly's response to its motion the notion that the LLC Agreement (and its forum selection clause) was incorporated into the IEA such that the forum selection clause applies to claims arising out of the IEA, that argument should be summarily rejected.[2] There is no language in the IEA purporting to incorporate the LLC Agreement by reference and it is not attached to the IEA Agreement; even if it somehow it was, the restriction on the application of the forum selection clause to the terms of the LLC Agreement may not be expanded beyond its original meaning to apply to the IEA. *See* Section I(C), *infra*.

### A.    The Court Should Decline to Enforce the Forum Selection Clause Because It Was Not Bargained For.

Instead of furnishing Mr. Donnelly with a copy of the LLC Agreement prior to the onset of this litigation, ProPharma sent Mr. Donnelly several signature pages, including one for the LLC Agreement, on September 26, 2016. *See* Ex. 1. ProPharma does not expressly dispute that it never

---

[2]    It should be noted that ProPharma makes no such argument in their initial brief. The closest it comes is to allege "under Section 3.9, Donnelly affirmed in the IEA that "[p]articipant acknowledges and agrees that the Management Incentive Units issued and acquired hereunder shall also be governed by, and have the terms, conditions, rights and obligations contained in, the LLC Agreement, to which Participant acknowledges and agrees he or she is a party." (Def. Mem. at 5). For the reasons discussed in Section I(C), to the extent ProPharma is arguing that this constituted incorporation, that argument fails.

sent Mr. Donnelly an actual copy of the LLC Agreement before the instant litigation. Admittedly, neither does it concede the point, although it has proffered no evidence that it in fact did deliver the LLC Agreement to Mr. Donnelly. (Def. Mem. at 11). Thus, at a minimum, there is a factual dispute regarding delivery of the LLC Agreement. Of course, for purposes of this motion, the Court must view all facts in the light most favorable to Mr. Donnelly. *Young*, No. 2:15-CV-3865-PMD, 2015 WL 7776932 at *2.

This Court has refused to enforce a forum selection or arbitration clause against a party if a factual question existed as to whether the party ever "received" or "held" the agreement containing the forum selection clause another party seeks to enforce. *See St. Paul Fire & Marine v. Supertrak, Inc.*, No. 02:09-CV-0320-PMD, 2009 U.S. Dist. LEXIS 152294, at *7 (D.S.C. July 6, 2009); *see also Affinity Internet, Inc. v. Consol. Credit Counseling Servs., Inc.*, 920 So. 2d 1286, 1288–89 (Fla. Dist. Ct. App. 2006) (declining to enforce arbitration agreement because "[n]ot only was the collateral document not attached to the contract [at issue], but [the contesting party] also was never at any time subsequent to the signing of the contract given a copy of the collateral document or the information contained therein"). In *St. Paul Fire & Marine*, the party opposing the application of the forum selection clause raised the issue that it had not signed or "held a copy of any contract containing a forum selection clause." *Id.* at *4. This Court held that "to enforce the forum selection clause against Plaintiff under these circumstances would be unreasonable and unjust." *Id.* at *8; *see also Bank of Am., N.A. v. Hensley Props., LP*, 495 F. Supp.2d 435, 439 (S.D.N.Y. 2007) (denying a request to enforce a forum selection clause when the clause only existed in a Master Agreement not provided to the party to be bound; party could not have reasonably anticipated that by entering into the contract it was consenting to a forum selection clause). In doing so, the Court noted that, in the absence of delivery of the contract, "the court

must assume that [plaintiff] never had notice of the forum selection clause. As such, ***it could not have manifested its assent to that material term***, and the forum selection clause never became a part of the contract." *St. Paul Fire & Marine*, 2009 WL 10713335 at *3 (bracketed text supplied; emphasis added).

Here, Mr. Donnelly was sent only the signature page to the LLC Agreement, and did not have the opportunity to review and consent to the forum selection clause within. Indeed, he never held or received the LLC Agreement until after he commenced this case. As such, he simply could not have reasonably anticipated that by entering into the IEA – which has no forum selection clause – he may later be found to have consented to a forum selection clause potentially governing claims later made under the IEA. Accordingly, it would be unreasonable and unjust to apply the forum selection clause of the LLC Agreement to the instant dispute, and for this independent reason, the Court should find the LLC Agreement's forum selection clause does not encompass Mr. Donnelly's claims.

## B. The Court Should Decline to Enforce the Forum Selection Clause Because It Does Not Govern Mr. Donnelly's Claims.

The LLC Agreement's forum selection clause is inapplicable to claims under the IEA because, on its face, the clause is limited to disputes under the LLC Agreement. ProPharma's assertion that "Donnelly's claims obviously relate to the LLC Agreement…." is incorrect and unsubstantiated. (Def. Brief at 11). As discussed below, ProPharma's argument fails because (1) by its own terms, the language of the forum selection clause governs only claims brought under the LLC Agreement, not any other contract, and (2) Mr. Donnelly sues under the IEA, not under the LLC Agreement.

ProPharma does not dispute that the forum selection clause at issue is in the LLC Agreement only and that the LLC Agreement forum selection clause expressly applies only to

disputes related to the terms and conditions of the LLC Agreement.  It also is undisputed that there is no forum selection clause in the ProPharma Offer or in the IEA.  Likewise, ProPharma has made no argument that either the ProPharma Offer or the IEA properly incorporated the LLC Agreement forum selection clause.  Rather, the *only* basis offered by ProPharma for the invocation of the LLC Agreement's forum selection clause in this case is their allegation that Mr. Donnelly agreed to be bound by the LLC Agreement.  Even if true, that does not get ProPharma across the finish line because Mr. Donnelly is not suing on the terms of the LLC Agreement.  Mr. Donnelly's claims are based on ProPharma's failure to fulfill its promises made to him in the ProPharma Offer and the IEA.  There are no claims, and ProPharma points to none, that arise out of an alleged breach of the LLC Agreement.

1.      ***The LLC Agreement's Forum Selection Clause is Limited to Claims "Related To" the LLC Agreement.***

The LLC Agreement's forum selection clause specifically states that it governs only "any dispute ***relating hereto***;" that is, relating to the ***LLC Agreement***:

> ***This Agreement*** shall be governed by, and construed in accordance with, the laws of the State of Delaware, without giving effect to any choice of law or conflict of law rules or provisions (whether of the State of Delaware or any other jurisdiction) that would cause the application of the laws of any jurisdiction other than the State of Delaware. Subject to Section 14.18, *any dispute **relating hereto** shall be heard in the state or federal courts of Delaware, and the parties agree to jurisdiction and venue therein*.

LLC Agreement, § 14.9 (emphasis added).  The language "this Agreement" has been held to limit the operation of a forum selection clause to only the initial contract and not subsequent contracts that incorporate the initial contract by reference.  *See U.S. Small Bus. Admin. v. Chimicles*, 447 F.3d 207 (3d Cir. 2006) (holding that even though a second contract, at issue in plaintiff's suit, incorporated by reference the terms of the first contract, the Court would not read "this Agreement" beyond the agreement in which the language appeared); *Jayson Co. v. Vertical Mkt. Software*, No.

10

05-CV-3883 (JAG), 2006 WL 1374039, at *5 (D.N.J. May 18, 2006) (finding that because the agreement containing the forum selection clause limited the scope to arising from "this Agreement," the forum selection clause did not apply to the contract underlying plaintiff's claims). Accordingly, the Court should find that, by its very terms, the forum selection clause is limited to disputes "related to" the LLC Agreement.

2.    *Mr. Donnelly's Claims Do Not "Relate to" the LLC Agreement.*

A review of the Complaint demonstrates that Mr. Donnelly's claims have ***no relation*** to the LLC Agreement and exist independent of the LLC Agreement.  The LLC Agreement is a corporate governance document that establishes such things as the organization of the entity, capital contribution, distributions, management of the entity, books and records, tax matters, and dissolution. (*See* Def. Br., Ex. 1 at i-iii).  It does not govern the terms of Mr. Donnelly's employment (the ProPharma Offer does) or the terms of his equity incentives (the IEA does).   Mr. Donnelly's breach of contract claims are based solely on the ProPharma Offer and IEA and his Complaint never mentions the LLC Agreement or implies its existence or effect.  As the LLC Agreement's forum selection clause is limited by its express terms to disputes relating to the LLC Agreement, Mr. Donnelly's claims are not governed by the forum selection clause.

There is no factual or legal support for ProPharma's attempt to invoke a forum selection clause in this case.  Mr. Donnelly's alleged status as a party to the LLC Agreement and a Board member of the company are red herrings.  ProPharma cannot cite a single LLC Agreement provision that gives rise to the rights and benefits that Mr. Donnelly claims were denied him by ProPharma.  Those rights and benefits, the denial of which form the basis of this lawsuit, are all encompassed by the IEA and the ProPharma Offer.  The provisions of the LLC Agreement have nothing to do with the dispute in this case, and ProPharma knows it.

As described in his Complaint, Mr. Donnelly claims that ProPharma agreed to award him management incentive units in exchange for services.  It is undisputed that ProPharma's obligation to deliver those units was created by the IEA.  ProPharma claims that Donnelly was terminated before a majority of the units vested, and therefore he is not entitled to receive those units. It is undisputed that the terms upon which an effective termination would be deemed to occur are set forth in the IEA (Section 4(a)). The consequences of a termination, referred to as forfeiture, are also determined by the IEA (Section 6(b)). Finally, it is undisputed that the schedule pursuant to which and the terms upon which the management incentive units would vest is determined by the IEA (Section 4). In short, Mr. Donnelly's claim – the agreement to deliver management incentive units – as well as the operative claims of ProPharma's defense – termination, forfeiture, and vesting – are all substantively controlled by the IEA.

This is all true regardless of whether or not the Court finds that Mr. Donnelly agreed to become a signatory to the LLC Agreement, or that the joinder agreement purporting to evidence that agreement is enforceable. That joinder agreement provides that Mr. Donnelly's participation was for the purpose of receiving "the rights and benefits and subject to the duties and obligations of a Member and a holder of such units thereunder." (EA, Ex. A).  In other words, the LLC Agreement would govern the relationship between the parties ***once the disputed membership units had been awarded and vested***. This is a commonsense reading of the arrangement – the IEA contains the obligation to deliver the units and the terms upon which that obligation could be suspended or limited.  Only once those units were issued and vested, would Mr. Donnelly's rights thereunder be subject to the LLC Agreement.  In this light, it is nonsensical for ProPharma to seek to invoke a forum selection clause in the LLC Agreement while simultaneously seeking to deny Mr. Donnelly's rights to incentive equity units.

The forum selection clause in the LLC Agreement purports to apply to disputes "related to" that agreement.  The LLC Agreement establishes the relationship between the company and its members, and provides the rights and duties of the company and its respective members.  A claim "related to" the LLC Agreement would therefore necessarily be one asserted by one or more Members seeking to enforce those rights and duties.  For example, Section 4.1 of the LLC Agreement provides for distributions to members.  If ProPharma failed to make a distribution, or if a member disputed the amount of a particular distribution, that dispute would clearly relate to the LLC Agreement – the right sought to be asserted in that claim would depend on its existence and scope as determined in the LLC Agreement.  In this case, however, Mr. Donnelly is ***not asserting rights under the LLC Agreement***.  His claim does ***not*** arise from the LLC Agreement for the simple reason that, with respect to the units in dispute, ***he is not a member***.  Instead his claim is that, under the IEA, ProPharma was obligated to issue units to him on the terms and conditions thereof.  Once those units were issued and vested, and only then, would his rights and duties be determined by reference to the LLC Agreement.

Finally, for the reasons noted above, Mr. Donnelly's status as a Board Member or his ownership of units are irrelevant to the claims made here.  If Mr. Donnelly was asserting the denial of rights based upon those conditions, they may be subject to the forum selection clause, but he is not.  All of the elements of his claims depend upon the IEA and the ProPharma Offer.  Any argument to the contrary is based on an obvious misunderstanding or mischaracterization of the claims made.  In short, the LLC Agreement's forum selection clause does not govern Mr. Donnelly's claims and the Court should find it inapplicable to this Motion.

**C.      Reference to the LLC Agreement in the IEA Does Not Render the LLC Agreement Forum Selection Clause Applicable to the IEA.**

Implicitly conceding that the argument has no merit, ProPharma does not assert in its initial brief that the reference in the IEA to the LLC Agreement effectively incorporates the LLC Agreement or the LLC Agreement forum selection clause into the IEA. However, if they decide to retreat to this position in reply, it should be rejected.

To incorporate the terms of extrinsic material, a contract "must *explicitly*, or at least *precisely*, identify the written material being incorporated and *must clearly communicate that the purpose of the reference is to incorporate the referenced material into the contract*." *Stevens Aviation, Inc. v. Dyncorp Int'l LLC*, 394 S.C. 300, 308 (Ct. App. 2011), *rev'd in part on other grounds by Stevens Aviation, Inc. v. Dyncorp Int'l LLC*, 407 S.C. 407, 756 S.E.2d 148 (2014) (emphasis added; internal quotations omitted) (citing *Northrop Grumman Info. Tech, Inc. v. United States*, 535 F. 3d 1339 (Fed. Cir. 2008)); *see also Wolfson v. Supermarkets Gen. Holdings Corp.*, 2001 WL 85679, at *5 (Del. Ch. Jan. 23, 2001) (allowing incorporation by reference between agreements only if there is an "explicit manifestation of intent" to incorporate one document into another). Here, while the IEA references the LLC Agreement, it fails to expressly or precisely incorporate the LLC Agreement or the LLC Agreement's forum selection clause into the IEA, as required by law. Therefore, it cannot be held to govern Mr. Donnelly's claims under the IEA.

The LLC Agreement and IEA were each drafted by ProPharma or its affiliates, not Mr. Donnelly. Had ProPharma intended to include a forum selection clause in the IEA, or intended to incorporate the forum selection clause in the LLC Agreement, it should have done so expressly. ProPharma failed to make express reference to any forum selection clause in the IEA and did not include one in either the IEA or the ProPharma Offer. Notably, however, ProPharma *did* include a "Governing Law" provision in the IEA, yet chose not to include a forum selection provision.

14

IEA, § 13.  This choice obviates any argument that ProPharma intended to have a forum selection clause govern claims under the IEA.  *See Commercial Coin Laundry Sys. v. Loon Investments, LLC*, 375 Ill. App. 3d 26, 34 (2007) ("Although plaintiff was the party that drafted the contract and filled it with boilerplate language conducive to its business, it chose to include only a choice-of-law clause, not a stronger and enforceable forum-selection clause.").  The IEA's "Governing Law" provision specifies "The validity, construction, interpretation, administration and effect of this Agreement shall be governed by the substantive laws, but not the choice of law rules, of the State of Delaware."  *Id.*  This language is remarkably similar to the first sentence of Section 14.9 of the LLC Agreement.  Thus, it appears that ProPharma considered the issue and chose ***not*** to include a forum selection provision.  This decision serves as convincing evidence of ProPharma's intent ***not*** to include a forum selection clause in the IEA.

Even if deemed enforceable against Mr. Donnelly, the LLC Agreement's forum selection clause is not applicable to the claims asserted in this litigation.  As discussed *supra*, Mr. Donnelly has filed this suit to recover damages from ProPharma's breach of the terms of the ProPharma Offer and IEA.  It is nonsensical for ProPharma to seek to invoke a forum selection clause in the LLC Agreement while simultaneously seeking to deny Mr. Donnelly's rights to be a member in the LLC.  For these reasons, the motion to transfer should be denied.

II.  <u>**Section 1404(a) Does Not Support Transfer of this Matter to Delaware.**</u>

Even if this Court were to find the LLC Agreement's forum selection clause applicable to Mr. Donnelly's claims, Section 1404(a) does not support the pending motion.  As discussed below, the forum selection clause relied upon is permissive and every §1404 factor weighs in favor of the denial transfer.

### A.      The Forum Selection Clause Is Permissive, Not Mandatory.

Before applying a forum selection clause, courts must make a threshold determination as to whether the clause is permissive or mandatory.  *See BAE Sys. Tech. Sol. & Servs., Inc.*, 884 F.3d at 471-72.  The rule to be applied is clear. "[A]n agreement *conferring* jurisdiction in one forum will not be interpreted as *excluding* jurisdiction in another unless the clause expressly sets forth specific language of exclusion." *Id.* (internal quotations omitted); *see also IntraComm, Inc. v. Bajaj*, 492 F.3d 285, 290 (4th Cir.2007) (quoting *John Boutari & Son, Wines & Spirits, S.A. v. Attiki Imp. and Distrib., Inc.*, 22 F.3d 51, 53 (2d Cir. 1994)).  In other words, a forum selection clause is **permissive** unless it contains "specific language of exclusion."  *Albemarle Corp. v. AstraZeneca UK Ltd.*, 628 F.3d 643, 51 (4th Cir. 2010) (quoting *IntraComm, Inc. v. Bajaj*, 492 F.3d 285, 290 (4th Cir. 2007)) (internal quotation marks omitted).  As the *Boutari* case explained: This is because "'[t]he normal construction of the jurisdiction rules includes a presumption that, where jurisdiction exists, it cannot be ousted or waived absent a clear indication of such a purpose[.]'" *John Boutari & Son*, 22 F.3d at 53 (quoting *City of New York v. Pullman, Inc.*, 477 F. Supp. 438, 443 (S.D.N.Y.1979)).

When a forum selection clause is *permissive*, district courts will apply the traditional forum *non conveniens* analysis, evaluating both the convenience of the parties and various public-interest considerations in considering a § 1404(a) motion (or a forum *non conveniens* motion).  *Id*.  As the Fourth Circuit has recognized, a litigant attempting to enforce a permissive forum selection clause "bears a 'heavy burden' in opposing [a plaintiff's] alternative forum."  *BAE Sys. Tech. Sol. & Servs., Inc.*, 884 F.3d at 472.

Only if a forum selection clause is deemed mandatory does *Atlantic Marine* control to modify the forum *non conveniens* framework to consider public interest factors to the exclusion of

16

the parties' private interests.  *Id*. at 471; *Allstate Crane Rental, Inc. v. Paramount Equip., LLC*,

No. 2:17-CV-3124-RMG, 2018 WL 2048361, at *1 (D.S.C. May 2, 2018).  The presumption of

enforcing forum selection clauses "applies ***only if the forum-selection clause is mandatory*** rather

than permissive."  *Charleston Advancement Acad. High Sch. v. Acceleration Acads., LLC*, No.

2:20-CV-01676-DCN, 2020 WL 4016256, at *16 (D.S.C. July 16, 2020) (emphasis added) (citing

*Albemarle Corp. v. AstraZeneca UK Ltd.*, 628 F.3d 643, 650–51 (4th Cir. 2010)); *see also BAE*

*Sys. Tech. Sol. & Servs.*, 884 F.3d 471-72.  As this Court has recognized, "[i]f mandatory venue

language is not employed, the clause need not be enforced."  *Red Light, LLC v. Am. Traffic Sols.,*

*Inc.*, No. 3:05-3103-MBS, 2006 WL 463569, at *2 (D.S.C. Feb. 23, 2006) (internal citation

omitted).

> As noted earlier, the forum selection clause at issue reads:

> "This Agreement shall be governed by, and construed in accordance with, the laws
> of the State of Delaware, without giving effect to any choice of law or conflict of
> law rules or provisions (whether of the State of Delaware or any other jurisdiction)
> that would cause the application of the laws of any jurisdiction other than the State
> of Delaware. Subject to Section 14.18, ***any dispute relating hereto shall be heard***
> ***in the state or federal courts of Delaware, and the parties agree to jurisdiction***
> ***and venue therein.***"

LLC Agreement, § 14.9 (emphasis added). While this clause confers jurisdiction in Delaware, it

cannot be interpreted as ***excluding*** jurisdiction in South Carolina because it fails to expressly set

forth specific language of exclusion.  There is no such specific language of exclusion depriving all

other courts of jurisdiction or excluding venue in all other courts.  Rather, the clause uses classic

permissive language that ***the parties agree to jurisdiction and venue*** in Delaware and provides no

specific exclusionary language to the contrary.

> The Fourth Circuit also looked at similar language in *BAE Sys. Tech. Sol. & Servs., Inc.*,

884 F.3d at 470.  In *BAE*, forum selection clause provided that any dispute arising from or relating

to the agreement at issue "***shall be*** resolved through a litigation and ***the Seoul Central District Court shall hold jurisdiction***." *Id.* (emphasis added).  Plaintiffs argued that the clause was mandatory, requiring that the litigation by brought in Seoul Central District Court.  The Fourth Circuit disagreed and found that the use of "shall" did not render the clause mandatory because did not expressly prohibit jurisdiction in another jurisdiction.  *Id.* at 472. The Court noted that the forum selection clause at issue "differed significantly from forum selection clauses found to be mandatory, which provide that a particular place will be the "***sole***," "***only***," or "***exclusive***" forum." *Id.* (emphasis added); *see also Kachal, Inc. v. Menzie,* 738 F.Supp. 371, 373–74 (D. Nev. 1990) ("Mandatory forum selection clauses contain language such as 'exclusive' or 'only.' The language mandates that the designated courts are the only ones which have jurisdiction.") (citing *Hunt Wesson Foods, Inc. v. Supreme Oil Co.*, 817 F.2d 75, 77–78 (9th Cir.1987)); *Brucker v. Taylor*, No. 1:16-CV-01414-GBL-JFA, 2017 WL 11506333, at *5 (E.D. Va. Mar. 28, 2017) (finding clause which read "[t]he federal and state courts residing in the Commonwealth of Virginia shall be the exclusive forums for resolution of any disputes relating to this agreement" to be permissive because it did not indicate that the Circuit Court for Fairfax County was the exclusive venue. Instead, the clause limited venue to any state or federal court within the state of Virginia); *Halifax Linen Serv., Inc. v. Tidelife, LLC*, No. 19-CV-55-D, 2019 WL 2812412, at *4 (E.D.N.C. July 2, 2019) (declining to enforce forum selection clause despite use of the word "shall" because "the forum-selection clause at issue in this case does not use any terms of exclusion such as 'sole' or 'exclusive,' and a reference to a specific court alone does not convert a permissive forum-selection clause into a mandatory one"); *DLX, Inc. v. Reid Bros.*, No. 5:09-CV-341-FL, 2010 WL 1704472, at *2 (E.D.N.C. Apr. 27, 2010) (finding forum selection clause to be permissive in part because "[t]here is no exclusive language in the clause, which courts interpret to leave open other forums.").

This Court's analysis in *Be Green Packaging, LLC v. Shu Chen*, No. CV 9:19-3273-BHH, 2020 WL 5077963, at *12 (D.S.C. Aug. 27, 2020), is also informative. This Court analyzed a forum selection clause that had similar language to the forum clause within the LLC Agreement. The clause read: "Executive agrees that the state and federal courts located in the State of Illinois ***shall*** have jurisdiction in any action, suit or proceeding against Executive based on or arising out of this Agreement...." *Id.* (emphasis added). Despite the fact that that the forum selection clause used the term "shall," the court still found the clause to be permissive because there was no specific exclusionary language granting Illinois exclusive jurisdiction. *Id.*

Contrary to ProPharma's arguments, the phrase "shall be heard" in Delaware falls woefully short of the required specific language of exclusion required by the Fourth Circuit. Nowhere does the language provide that the District of Delaware constitutes the "sole," "only" or "exclusive" forum. The lack of specific exclusionary language in the forum selection clause specifically excluding jurisdiction in all other states in which jurisdiction is otherwise proper is fatal to ProPharma's arguments.

Finally ProPharma's reliance on *Charleston Advancement Acad. High Sch. v. Acceleration Acads., LLC* is misplaced. No. 2:20-CV-01676-DCN, 2020 WL 4016256, at *16 (D.S.C. July 16, 2020). In *Charleston Advancement*, the forum selection clause at issue read: "[i]f an AAA filing site cannot be agreed upon, the filing site shall be Charlotte, North Carolina." *Id.* at *2 (emphasis in original). While the court ultimately found that clause to be mandatory, it relied heavily on the fact that the forum selection clause dealt with arbitration. *Id.* at 16-17. Specifically, the Court found persuasive that not only was the forum selection clause conferring jurisdiction to an arbitrator, but it only applied if parties disagreed as to the filing site for arbitration. *Id.* at 16. Moreover, there was no language in this clause conferring jurisdiction without limitation as there

is in the LLC Agreement forum selection clause.  *Id.*   As such, *Charleston Advancement* is distinguishable and not controlling.

The absence of the mandatory "specific language of exclusion" within the forum selection clause limiting jurisdiction to Delaware only, especially when the clause is read in its entirety, is dispositive and fatal to ProPharma's argument that the clause is mandatory.  This Court should find that the clause is permissive and reject ProPharma's efforts to deny Mr. Donnelly his choice of forum.

**B.     The Section 1404(a) Factors Weigh Against Transfer from the District of South Carolina.**

Because the forum selection clause is permissive, the *Atlantic Marine* standard is inapplicable. *Charleston Advancement Acad. High Sch. v. Acceleration Acads., LLC*, No. 2:20-CV-01676-DCN, 2020 WL 4016256, at *16 (D.S.C. July 16, 2020) (emphasis added); *BAE Sys. Tech. Sol. & Servs.*, 884 F.3d at 470–71 (finding the modified forum *non conveniens* framework applies only to mandatory forum-selection clauses).  Instead, when a forum selection clause is *permissive*, "district courts must apply the traditional forum *non conveniens* analysis, evaluating both the convenience of the parties and various public-interest considerations in considering a § 1404(a) motion (or a forum *non conveniens* motion)."  *Allstate Crane Rental, Inc. v. Paramount Equip., LLC*, No. 2:17-CV-3124-RMG, 2018 WL 2048361, at *1 (D.S.C. May 2, 2018) (citing *BAE Sys. Tech. Sol. & Servs., Inc.*, 884 F.3d at 471).  If the Court determines that the clause is permissive and governs Plaintiff's claims, it may consider the clause as one factor in its Section 1404(a) analysis. *Orian Rugs, Inc. v. Sears Holdings Corp.*, No. CA 8:13-331-HMH, 2013 WL 1115823, at *5 (D.S.C. Mar. 18, 2013) (recognizing that although "[t]he presence of a forum-selection clause ... will be a significant factor that figures centrally in the district court's calculus," "forum selection clauses 'should receive neither dispositive consideration' nor 'no consideration

... but rather the consideration for which Congress provided in § 1404(a).'" (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 and *Brock v. Entre Computer Ctrs., Inc.*, 933 F.2d 1253, 1258 (4th Cir. 1991)); *Milliken & Co. v. Grupo Antolin Michigan, Inc.*, No. CIV.A. 7:10-2109-HMH, 2010 WL 3938389, at *4 (D.S.C. Oct. 5, 2010) ("A forum selection clause is considered in the § 1404(a) analysis."); *see also McNeill v. Int'l Precious Metals Corp.*, 872 F.2d 418, 1989 WL 27443 at *2 (4th Cir. 1989) (unpublished table decision) ("Prior to Stewart, a valid forum-selection clause would have been presumed enforceable ... Now, however, while the existence of a valid forum-selection clause continues to be a significant factor to consider in resolving a motion to transfer, other factors must also be weighed in the balance."). Rather, an analysis under the traditional forum *non conveniens* and Section 1404(a) applies.

"District courts within this circuit consider four factors when deciding whether to transfer venue: (1) the weight accorded to plaintiff's choice of venue; (2) witness convenience and access; (3) convenience of the parties; and (4) the interest of justice." *Trustees of the Plumbers and Pipefitters Nat. Pension Fund v. Plumbing Servs., Inc.*, 791 F.3d 436, 444 (4th Cir. 2015). Under this analysis, "forum selection clauses should receive neither dispositive consideration nor no consideration ... but rather the consideration for which Congress provided in § 1404(a)." *Brock v. Entre Computer Centers*, Inc., 933 F.2d 1258 (4th Cir.1991). As shown below, here, all the relevant factors weigh in favor of denying transfer in this case.

### 1.    *Weight is Accorded to Plaintiff's Choice of Venue.*

This Court has recognized that unless the balance is strongly in the defendant's favor, the plaintiff's choice of forum should not be disturbed. *Babb v. United States*, No. CV 0:19-487-JFA-PJG, 2019 WL 3731861, at *2 (D.S.C. Aug. 8, 2019) (citing *Collins v. Straight, Inc.*, 748 F.2d 916, 921-22 (4th Cir. 1984)). "As a general rule, a plaintiff's choice of venue is entitled to

substantial weight in determining whether transfer is appropriate." *Trustees of the Plumbers and Pipefitters Nat. Pension Fund v. Plumbing Servs., Inc.*, 791 F.3d 436, 444 (4th Cir. 2015) (internal quotation marks omitted). "[W]hen a plaintiff files a suit in his home forum, a defendant seeking transfer bears the burden of demonstrating that the balance of convenience among the parties and witnesses is strongly in favor of the forum to which the transfer is sought." *JTH Tax, Inc. v. Callahan*, Action No. 2:12cv691, 2013 WL 3035279, at *2 (E.D. Va. June 6, 2013) (unpublished) (citations and internal quotation marks omitted); *United Energy Distributors, Inc. v. Rankin-Patterson Oil Co.*, No. CIV.A. 7:07-3234HMH, 2007 WL 4568997, at *3 (D.S.C. Dec. 20, 2007) (recognizing that "as a resident of South Carolina, [plaintiff] has an interest in resolving the dispute in its home district"); *Milliken & Co. v. Grupo Antolin Michigan, Inc.*, No. CIV.A. 7:10-2109-HMH, 2010 WL 3938389, at *7 (D.S.C. Oct. 5, 2010) (same).

Mr. Donnelly, who lives in Charleston, South Carolina, within a ten minute walk from the federal courthouse, filed in his home forum, the District of South Carolina.

### 2.   *Party and Witness Convenience Weighs Against Transfer.*

*Not once* within its Motion to Transfer does ProPharma contend that the District of South Carolina is an inconvenient forum—the *sine quo non* of a Section 1404(a) transfer motion – or even allude to convenience at all. The realities of this case reveal that a transfer to Delaware—a state to which neither ProPharma nor any witnesses in the instant matter have any practical connection—would significantly inconvenience both parties.

ProPharma does not present any evidence that any of the witnesses are unwilling to testify in South Carolina. *See e.g., United Energy Distribs., Inc. v. Rankin-Patterson Oil Co.*, C.A. No. 7:07-3234-HMH, 2007 WL 4568997, at *3 (D.S.C. Dec. 20, 2007) (unpublished) (finding the convenience of witnesses does not weigh in favor of transfer where defendant did not allege that

22

non-party witnesses would be unwilling to testify in the forum).   Nonetheless, any witnesses that are not within the subpoena power of this Court could be deposed.   *Tool Shed, Inc. v. Mattoon Rural King Supply, Inc*., No. CV 6:17-1660-HMH, 2017 WL 4222885, at *4 (D.S.C. Sept. 22, 2017) (citing *In re Guthrie*, 733 F.2d 634, 637-38 (4th Cir. 1984)).   Ultimately, "[n]o matter which forum is selected, one side or the other will be burdened with bringing themselves and their witnesses from far away."   *Brock v. Entre Computer Ctrs., Inc.*, 933 F.2d 1253, 1258 (4th Cir. 1991); *JEC Consulting & Trading, Inc. v. Diversified Foods, Inc.*, No. C.A.3:05-2295-CMC, 2005 WL 2614903, at *4 (D.S.C. Oct. 13, 2005) (recognizing that if the balance of convenience appears roughly equal, and it is merely "[o]ne party or the other and that party's witnesses will be inconvenienced by litigation in the other party's forum of choice…[t]here is…no reason to override the Plaintiff's choice of forum based on the convenience of the parties or witnesses.").

A transfer of venue is inappropriate if the transfer merely shifts the burdens of litigation from one party to the other.   *DeLay & Daniels, Inc. v. Allen M. Campbell Co., Gen. Contractors, Inc.*, 71 F.R.D. 368, 372 (D.S.C.1976).   A transfer that merely shifts the balance of convenience is especially inappropriate here because South Carolina has a substantial connection to the controversy such that the plaintiff's choice of forum should be given weight.   *Gateway Gaming, L.L.C. v. Custom Game Design, Inc.*, No. CIVA 8:06-01649 HMH, 2006 WL 2781043, at *6 (D.S.C. Sept. 25, 2006) (citing *Milliken & Co. v. Fed. Trade Comm'n*, 565 F.Supp. 511, 517 (D.S.C.1983)).

Mr. Donnelly, who performed under the ProPharma Offer and IEA from his home in Charleston, South Carolina, currently still resides in Charleston.   On the other hand, neither party is currently in Delaware or intends to bring witnesses residing in Delaware.   To the best of Mr. Donnelly's knowledge, no witness in this case resides in Delaware, and no evidence is maintained

23

there.  By transferring the venue to Delaware, this would not merely shift the inconvenience from one party to another—it would lead to inconvenience for *both parties*.  ProPharma simply cannot show that Delaware is a more convenient forum than the District of South Carolina.  Therefore, the weight accorded to plaintiff's choice of venue, witness convenience and access, the convenience of the parties and the interest of justice all weigh in favor of rejecting transfer to Delaware.

### 3.    *Interests of Justice Weigh Against Transfer.*

The interests of justice also weigh heavily in favor of adjudication of Mr. Donnelly's claims in South Carolina.  As courts have stated, "[t]he interest of justice encompasses public interest factors aimed at 'systemic integrity and fairness.'"  *First S. Bank v. Fifth Third Bank, N.A.*, No. 7:10-CV-02097-JMC, 2011 WL 3419451, at *5 (D.S.C. Aug. 3, 2011) (internal citation omitted).

The state of South Carolina has a substantial interest in presiding over the instant controversy because the state "has a local interest in providing a forum for South Carolina residents to seek redress for injuries caused to them by out-of-state defendants."  *McNeil v. Sherman*, Civil Action No. 2:09–CV–00979–PMD, 2009 WL 3255240, at *8 (D.S.C. Oct.7, 2009).  Contrary to ProPharma's depiction, the present action arises from Mr. Donnelly's performance under the ProPharma Offer in South Carolina since 2016.  Mr. Donnelly performed under the ProPharma Offer, negotiated payments under the ProPharma Offer and IEA, and discovered ProPharma's breach of their agreements all while he was doing his work for ProPharma in Charleston, South Carolina.  At all times relevant to this suit, Mr. Donnelly has been a resident of South Carolina. When Mr. Donnelly entered the ProPharma Offer and IEA, he resided here in Charleston, South Carolina.  During all of his years of work with ProPharma, he operated out of South Carolina and primarily conducted his duties pursuant to the ProPharma Offer from his home in Charleston,

South Carolina.  (Compl. at ¶ 9).  Indeed, ProPharma was fully aware of and accommodated Mr. Donnelly's work-from-home arrangement in Charleston, South Carolina.  (*Id.* at ¶ 10).  All of Mr. Donnelly's relevant records of his work and communications with ProPharma during the relevant time period are located in his home in Charleston, South Carolina.  Therefore, Mr. Donnelly has a substantial concern in seeking relief in the state in which he conducted the majority of his work for ProPharma.  *See McNeil v. Sherman*, C.A. No. 2:09–cv–00979–PMD, 2009 WL 3255240, *8 (D.S.C. Oct.7, 2009) (finding the District of South Carolina an appropriate venue for a contract dispute between a resident plaintiff and foreign defendant).

Secondly, South Carolina law applies to the instant dispute and this Court has expressly recognized that "the appropriateness in having a trial of a diversity case in a forum that is at home with the state law that must govern the action" is an aspect of analyzing the interest of justice. *Brumfield v. Kindred Healthcare Inc.*, No. 2:18-CV-00591-DCN, 2018 WL 3222614, at *6 (D.S.C. July 2, 2018).  A federal court exercising diversity jurisdiction is obliged to apply the substantive law of the state in which it sits, including the state's choice-of-law rules."  *Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co.*, Inc., 386 F.3d 581, 599–600 (4th Cir. 2004) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 79 (1938)).

The ProPharma Offer does not have a choice of law provision and the IEA choice of law provision does not apply to Mr. Donnelly's claims.  The IEA's choice of law provision reads:

> The validity, construction, interpretation, administration and effect of this Agreement shall be governed by the substantive laws, but not the choice of law rules, of the State of Delaware.

IEA, § 13.  The "scope of [a] choice-of-law provision[ ], ... being a matter of contract interpretation, must be determined by the law of the state chosen by the parties in the contract."  *Bunker Holdings, Ltd. v. Green Pac. A/S*, 346 F. App'x 969, 973 (4th Cir. 2009) (per curiam) (citations omitted).

Under Delaware law, the Court looks first to the plain language of the contract and objectively considers not "what the parties to the contract intended it to mean, but what a reasonable person in the position of the parties would have thought it meant." *Rhone–Poulenc Basic Chems. Co. v. Am. Motorists Ins. Co.*, 616 A.2d 1192, 1195 (Del.1992). Here, Mr. Donnelly does not challenge the "construction," "interpretation," "administration," nor "effect" of the IEA. Mr. Donnelly's claims under the IEA solely concern the ProPharma's performance under the IEA, and its failure to pay him funds owed to him under the IEA.

 "South Carolina's choice of law rule for contract actions applies the substantive law of the *lex loci contratus* for issues regarding formation, interpretation, or validity, ***and the substantive law of the place of performance for issues regarding performance***." *Hinkle v. Cont'l Motors, Inc.*, 2017 WL 4776992, at *2 (D.S.C. Oct. 20, 2017) (emphasis added). Here, Mr. Donnelly's sole allegation is that ProPharma failed to perform properly under the ProPharma Offer and the IEA, and therefore, it owes Mr. Donnelly certain funds pursuant to the OPA. This is an issue of performance, and thus South Carolina law applies. Because this Court has a greater familiarity with the legal issues surrounding South Carolina law, and more experience applying South Carolina law to the claims and defenses asserted in this action, this Court is better equipped to adjudicate the issues than a court in Delaware. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241, n.6 (1981) (recognizing the public interest in weighing "the local  interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law."); *Ashmore v. Allied Energy, Inc.*, No. 8:14-CV-00227-JMC, 2015 WL 128596, at *4 (D.S.C. Jan. 9, 2015).

Third, ProPharma has failed to present any evidence regarding access to proof, the costs of litigation, or the availability of the compulsory process that would prevent this Court to adjudicate

Mr. Donnelly's local claims. *Tool Shed, Inc. v. Mattoon Rural King Supply, Inc.*, No. CV 6:17-1660-HMH, 2017 WL 4222885, at *4 (D.S.C. Sept. 22, 2017) (citing *Corp. v. Nintendo Co.*, 810 F. Supp. 173, 175 (D.S.C. 1992)).  Instead, it relies on docket statistics that are almost one year old and tallied before a global health pandemic.  It has failed to show that these outdated figures have any relation to the current state of the docket in both courts.

It cannot be seriously disputed that Delaware has no cognizable relationship to the claims in this case.  ProPharma does not even allege that any of the key witnesses reside or work in Delaware.  This is because it cannot – the majority of the key witnesses in this case reside in Charleston, South Carolina or Chicago, Illinois.  Indeed, while ProPharma is registered as a Delaware company, its principal place of business is located in Overland Park, Kansas, as even ProPharma admits, and it appears to have no offices in Delaware.

## CONCLUSION

ProPharma has the burden to prove that "transfer to another forum is proper."  *State Farm Fire & Cas. Co. v. Blanton*, No. 4:13-CV-2508-RBH, 2014 WL 7146980, at *2 (D.S.C. Dec. 15, 2014) (citations omitted).  ProPharma has failed to meet its burden.  Accordingly, this Court should deny ProPharma's Motion to Transfer.

Dated: January 29, 2021

s/s Courtney C. Shytle
Courtney C. Shytle (SCB No. 7148)
Nicholas D. SanFilippo (VSB No. 79018)
(Admitted *Pro Hac Vice*)
Daniel C. Masakayan (VSB No. 93655)
(Admitted *Pro Hac Vice*)

**MCGUIREWOODS LLP**

201 North Tyron Street, Suite 3000
Charlotte, NC 28202
Telephone:      (704) 343-2110
Facsimile:       (704) 444-8710

1750 Tysons Boulevard, Suite 1800
Tysons, VA  22102
Telephone:     (703) 712-5000
Facsimile:     (703) 712-5050

cshytle@mcguirewoods.com
nsanfilippo@mcguirewoods.com
dmasakayan@mcguirewoods.com

*Counsel for Plaintiff Patrick K. Donnelly*