**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

PATRICK K. DONNELLY,

Plaintiff,

v.

PROPHARMA GROUP TOPCO, LLC,

Defendant.

C.A. No. 21-894-CFC

**CONFIDENTIAL FILING**

## DEFENDANT'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S FIRST AMENDED COMPLAINT

Defendant ProPharma Group Topco, LLC ("Defendant" or "ProPharma"), by counsel, hereby submits this Answer and Affirmative Defenses to Plaintiff Patrick K. Donnelly's ("Plaintiff" or "Mr. Donnelly") First Amended Complaint.

The headings and footnotes are from the First Amended Complaint, are inserted only for completeness and do not require response.  If any response is required any allegations therein are denied.

## THE PARTIES

1.      Plaintiff, Mr. Donnelly, is a citizen and resident of Charleston, South Carolina.  Mr. Donnelly currently resides at 8 Church Street, Charleston, South Carolina.

**RESPONSE: Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 1, and therefore denies them.**

2.      Defendant ProPharma is a Delaware limited liability company, with its principal office located in Kansas at 8717 West 110th Street, Suite 300, Overland Park, Kansas.

**RESPONSE: Admitted.**

**THIS DOCUMENT IS A CONFIDENTIAL FILING.**
**ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY COURT ORDER.**

**JURISDICTION AND VENUE**

3.      The U.S. District Court for the District of South Carolina has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, as there is complete diversity between Mr. Donnelly and Defendant, and the amount at issue exceeds $75,000.[1]

**RESPONSE: Paragraph 3 sets forth a legal conclusion to which no response is required. Defendant further states that the allegations in Paragraph 3 have been mooted by virtue of the order transferring this action to the District of Delaware. To the extent a response is required, Defendant admits there is complete diversity between Mr. Donnelly and the Defendant, and the amount at issue exceeds $75,000.**

4.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, as there is complete diversity between Mr. Donnelly and Defendant, and the amount at issue exceeds $75,000.

**RESPONSE: Paragraph 4 sets forth a legal conclusion to which no response is required. To the extent a response is required, admitted.**

5.      ProPharma is a limited liability company ("LLC"). The citizenship of an LLC is determined by examining the citizenship of all of its members. *Cent. W. Virginia Energy Co. v. Mountain State Carbon*, LLC, 636 F.3d 101, 103 (4th Cir. 2011).

**RESPONSE: Admitted.**

6.      Upon information and belief, no member of ProPharma is a citizen of the state of South Carolina.

**RESPONSE: Admitted.**

---

[1] Mr. Donnelly includes allegations regarding the U.S. District Court for the District of SouthCarolina's subject matter jurisdiction in this matter in order to preserve his arguments raised in his Opposition to ProPharma's Motion to Transfer.  (Dkt. No. 28).

**THIS DOCUMENT IS A CONFIDENTIAL FILING.**
**ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY COURT ORDER**.

7.     Pursuant to the South Carolina long-arm statute, SC Code § 36-2-803, "[a] court may exercise personal jurisdiction over a person who acts directly or by an agent as to a cause of action arising from the person's … (1) transacting any business in this State."

**RESPONSE: Paragraph 7 sets forth a legal conclusion to which no response is required. Defendant further states that the allegations in Paragraph 7 have been mooted by virtue of the order transferring this action to the District of Delaware. To the extent a response is required, Defendant admits that SC Code § 36-2-803 contains the quoted language but denies that this statute applies to this action.**

8.     Personal jurisdiction over Defendant is proper because Defendant transacts business in the State of South Carolina, and a substantial number of the events giving rise to the claims alleged herein took place in South Carolina.

**RESPONSE: Paragraph 8 sets forth a legal conclusion to which no response is required. Defendant further states that the allegations in Paragraph 7 have been mooted by virtue of the order transferring this action to the District of Delaware. To the extent a response is required, denied.**

9.     Mr. Donnelly's causes of actions herein against Defendant arise from ProPharma's business transactions within South Carolina.

**RESPONSE: Denied.**

10.    At all times relevant to the events detailed herein, Mr. Donnelly primarily conducted his duties pursuant to his agreement with Defendant from his home in Charleston, South Carolina.

**RESPONSE: Denied.**

11.    ProPharma was aware of and accommodated Mr. Donnelly's work from home

**THIS DOCUMENT IS A CONFIDENTIAL FILING.**
**ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY COURT ORDER.**

arrangement in Charleston, South Carolina. ProPharma not only compensated Plaintiff for work he did in South Carolina, but it also reimbursed him for expenses incurred for all of Mr. Donnelly's expenses, meals and travel to various locations across the United States and meetings during the over three and a half years that Mr. Donnelly worked in this District.

**RESPONSE: Denied.**

12.     On June 22, 2021, The U.S. District Court for the District of South Carolina entered an Order transferring this case to this District pursuant to 28 U.S.C. § 1404(a) upon motion filed by Defendant ProPharma.[2]

**RESPONSE: Admitted.**

13.     Venue is proper the U.S. District Court for the District of South Carolina because Plaintiff resides in that District and a substantial part of the events or omissions giving rise to the claims herein occurred in Charleston County, South Carolina.

**RESPONSE: Paragraph 13 sets forth a legal conclusion to which no response is required. Defendant further states that the allegations in Paragraph 13 have been mooted by virtue of the order transferring this action to the District of Delaware. To the extent a response is required, denied.**

## BACKGROUND

14.     Mr. Donnelly is an experienced executive who has worked in the medical device and pharmaceutical development field for 30 years.

**RESPONSE: Defendant lacks sufficient knowledge or information to form a belief about the truth of the allegations in Paragraph 14, and therefore denies them.**

---

[2] Mr. Donnelly reserves the right to challenge this Order on appeal.

**THIS DOCUMENT IS A CONFIDENTIAL FILING.
ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY COURT ORDER.**

15.     Throughout his career, Mr. Donnelly has held over 12 positions nationally and internationally in these industries, and has served as a chief executive officer, chief financial officer, chief operating officer, consultant, and board member, among other positions.

**RESPONSE: Defendant lacks sufficient knowledge or information to form a belief about the truth of the allegations in Paragraph 15, and therefore denies them.**

16.     To date, Mr. Donnelly currently holds several leadership, executive or board membership positions.

**RESPONSE: Defendant lacks sufficient knowledge or information to form a belief about the truth of the allegations in Paragraph 16, and therefore denies them.**

17.     Mr. Donnelly has developed an international reputation in the medical device and pharmaceutical development industry for his unique skillset and business acumen, particularly because of his industry experience and business contacts and relationships.

**RESPONSE: Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 17, and therefore denies them.**

18.     Mr. Donnelly first contemplated his business relationship with ProPharma in 2016.

**RESPONSE: Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 18, and therefore denies them.**

19.     Mr. Donnelly had known about ProPharma for over 15 years due to its proximity to a company that Mr. Donnelly previously worked for, which was also located in Kansas.

**RESPONSE: Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 19, and therefore denies them.**

20.     Mr. Donnelly had previously developed a relationship with former ProPharma CEO, Jeff Hargraves, and had helped him create the strategy plan for transition of duties in 2016,

**THIS DOCUMENT IS A CONFIDENTIAL FILING.**
**ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY COURT ORDER.**

which was subsequently presented to the ProPharma Board.

**RESPONSE: Defendant lacks sufficient knowledge or information to form a belief about the truth of the allegations in Paragraph 20, and therefore denies them.**

21.    On September 30, 2020, ProPharma was sold to Odyssey Investment Partners Fund VI, LP ("Odyssey Investment Partners") for $560 million.

**RESPONSE: Admitted.**

22.    Mr. Donnelly is not a member of ProPharma.

**RESPONSE: Admitted.**

## FACTUAL ALLEGATIONS

### I.    MR. DONNELLY IS PLACED ON THE PROPHARMA BOARD OF MANAGERS

23.    The relationship between Mr. Donnelly and Defendant is governed by the ProPharma Offer Letter, dated October 24, 2016 ("ProPharma Offer"), attached as **Exhibit A**.

**RESPONSE: Paragraph 23 sets forth a legal conclusion to which no response is required; the document speaks for itself. To the extent a response is required, Defendant admits that the ProPharma Offer governs the relationship between Mr. Donnelly and ProPharma as to the subject matter of the ProPharma Offer, but denies that such subject matter is the sole extent of the relationship between Mr. Donnelly and ProPharma.**

### A.    Mr. Donnelly Signs the ProPharma Offer

24.    On October 31, 2016, Mr. Donnelly signed the ProPharma Offer.

**RESPONSE: Admitted.**

25.    The ProPharma Offer was an agreement drafted by ProPharma.

**RESPONSE: ProPharma admits that it drafted the Offer Letter but with the review and input of Plaintiff and, upon information and belief, Plaintiff's counsel.**

**THIS DOCUMENT IS A CONFIDENTIAL FILING.
ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY COURT ORDER**.

26.     The ProPharma Offer was an agreement for Mr. Donnelly to join ProPharma's Board of Managers on September 30, 2016 for a term of five years, subject to renewal by the Board of Managers.

**RESPONSE: Paragraph 26 sets forth a legal conclusion to which no response is required; the document speaks for itself. Defendant refers to the ProPharma Offer for its complete and accurate contents. To the extent a response is required, admitted.**

27.     On or about October 31, 2016, Mr. Donnelly was added to the ProPharma website as part of the ProPharma leadership team.

**RESPONSE: Denied.**

### B.     Agreement to Pay Mr. Donnelly's Base Compensation

28.     As consideration for his service to ProPharma, Mr. Donnelly's compensation under the ProPharma Offer consisted of two separate payable components.

**RESPONSE: Paragraph 28 sets forth a legal conclusion to which no response is required; the document speaks for itself. Defendant refers to the ProPharma Offer for its complete and accurate contents. To the extent a response is required, admitted.**

29.     Both components of Mr. Donnelly's compensation were equally payable under the ProPharma Offer.

**RESPONSE: Paragraph 29 sets forth a legal conclusion to which no response is required; the document speaks for itself. Defendant refers to the ProPharma Offer for its complete and accurate contents. To the extent a response is required, denied.**

30.     Under the ProPharma Offer, Mr. Donnelly received a payment of $37,500.00 per year ("Donnelly Base Compensation").

**RESPONSE: Paragraph 30 sets forth a legal conclusion to which no response is**

**THIS DOCUMENT IS A CONFIDENTIAL FILING.
ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY COURT ORDER**.

required; the document speaks for itself. Defendant refers to the ProPharma Offer for its complete and accurate contents. To the extent a response is required, admitted.

31.     ProPharma agreed to pay Plaintiff his Donnelly Base Compensation on a quarterly basis in arrears for services rendered under the ProPharma Offer.

**RESPONSE: Paragraph 29 sets forth a legal conclusion to which no response is required; the document speaks for itself. Defendant refers to the ProPharma Offer for its complete and accurate contents. To the extent a response is required, admitted.**

### C.     Agreement to Pay ProPharma Incentive Equity

32.     Under the ProPharma Offer, Mr. Donnelly was also entitled to incentive equity units in ProPharma ("ProPharma Incentive Equity").

**RESPONSE: Paragraph 30 sets forth a legal conclusion to which no response is required; the document speaks for itself. Defendant refers to the ProPharma Offer for its complete and accurate contents. To the extent a response is required, admitted.**

33.     The payment of Mr. Donnelly's ProPharma Incentive Equity is governed by the ProPharma Incentive Equity Agreement ("IEA"), attached as **Exhibit B**.

**RESPONSE: Paragraph 33 sets forth a legal conclusion to which no response is required; the document speaks for itself. Defendant refers to the IEA for its complete and accurate contents. To the extent a response is required, admitted.**

34.     Mr. Donnelly signed the IEA on or about September 30, 2016.

**RESPONSE: Denied.**

35.     The ProPharma Offer mandates that "if [Mr. Donnelly's] position with the [ProPharma Board of Managers] is terminated for any reason, [his] equity [would] be subject to customary buyback provisions set forth in [his] incentive equity agreement."

**THIS DOCUMENT IS A CONFIDENTIAL FILING.
ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY COURT ORDER**.

**RESPONSE: Defendant admits the Offer Letter contains the quoted text; the document speaks for itself. Defendant refers to the ProPharma Offer for its complete and accurate contents. Otherwise, Paragraph 35 sets forth a legal conclusion to which no response is required. To the extent a response is required, admitted.**

36.     The IEA provided Mr. Donnelly 8,046.365 ProPharma Incentive Equity units, which could vest according to either time or performance. *See* **Exhibit B**.

**RESPONSE: Paragraph 36 sets forth a legal conclusion to which no response is required; the document speaks for itself. Defendant refers to the IEA for its complete and accurate contents. To the extent a response is required, admitted.**

37.     Under the IEA, 25% of the ProPharma Incentive Equity units could vest over time according to a schedule provided in the IEA ("Time Vesting Units").

**RESPONSE: Paragraph 37 sets forth a legal conclusion to which no response is required; the document speaks for itself. Defendant refers to the IEA for its complete and accurate contents. To the extent a response is required, admitted.**

38.     Under the IEA, 75% of the ProPharma Incentive Equity units could vest over time only if Mr. Donnelly was "continuously employed by or providing services to and [was] still employed by or providing services to [ProPharma] or its Subsidiaries from the date hereof through the consummation of a Liquidity Event" ("Performance Vesting Units").

**RESPONSE: Defendant admits the IEA contains the quoted text; the document speaks for itself. Defendant refers to the IEA for its complete and accurate contents. Otherwise, Paragraph 38 sets forth a legal conclusion to which no response is required. To the extent a response is required, admitted.**

39.     ProPharma had the option to elect to purchase all or any portion of the vested

**THIS DOCUMENT IS A CONFIDENTIAL FILING.**
**ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY COURT ORDER**.

ProPharma Incentive Equity units by delivery of a written notice at any time within six months after Mr. Donnelly's separation from ProPharma.

**RESPONSE: Paragraph 39 sets forth a legal conclusion to which no response is required; the document speaks for itself. Defendant refers to the IEA for its complete and accurate contents. To the extent a response is required, admitted.**

40.    Under the IEA, the purchase price for the ProPharma Incentive Equity is the fair market value of the units as of the date Mr. Donnelly separated from ProPharma.

**RESPONSE: Paragraph 40 sets forth a legal conclusion to which no response is required; the document speaks for itself. Defendant refers to the IEA for its complete and accurate contents. To the extent a response is required, admitted.**

41.    Under the IEA, "fair market value" means the fair market value thereof as of the valuation date as determined in good faith by the ProPharma Board of Managers.

**RESPONSE: Paragraph 41 sets forth a legal conclusion to which no response is required; the document speaks for itself. Defendant refers to the IEA for its complete and accurate contents. To the extent a response is required, admitted.**

42.    Under the IEA, the definition of "fair market value" expressly states that the ProPharma Board of Managers shall take into account all relevant factors determinative of value, including, without limitation, any other then-existing determinations of fair market value on or about the valuation date.

**RESPONSE: Paragraph 42 sets forth a legal conclusion to which no response is required; the document speaks for itself. Defendant refers to the IEA for its complete and accurate contents. To the extent a response is required, admitted.**

II.    **PROPHARMA FAILS TO COMPENSATE MR. DONNELLY UNDER THE PROPHARMA OFFER**

**THIS DOCUMENT IS A CONFIDENTIAL FILING.
ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY COURT ORDER**.

AND IEA

43.     ProPharma failed to pay Mr. Donnelly his due compensation in the form of both his earned Donnelly Base Compensation and ProPharma Incentive Equity.

**RESPONSE: Denied.**

### A.     Mr. Donnelly's Base Compensation

44.     Mr. Donnelly last received a portion of his Donnelly Base Compensation on April 18, 2019, in the amount of $9,375.00.

**RESPONSE: Admitted.**

45.     Since April 19, 2019, ProPharma has failed to pay Mr. Donnelly his Donnelly Base Compensation.

**RESPONSE: Defendant admits that it did not pay Plaintiff his Base Compensation after April 18, 2019, but denies that Plaintiff is entitled to any such amounts.**

46.     Mr. Donnelly remained a ProPharma Board member until September 30, 2020 upon sale of the company. ProPharma never notified Mr. Donnelly that it was removing him from ProPharma's Board prior to the sale of the company.

**RESPONSE: Defendant denies that Plaintiff was a Board Director under the Offer Letter from September 1, 2019 through September 30, 2020. Defendant denies that Plaintiff was never notified that he was removed from the Board prior to the sale of the company.**

47.     Despite not being paid his Donnelly Base Compensation, Mr. Donnelly remained on the ProPharma website until at least April 2020. It is not known when Mr. Donnelly was removed from ProPharma's website.

**RESPONSE: Denied.**

48.     To date, ProPharma refuses to pay Mr. Donnelly his Donnelly Base Compensation.

**THIS DOCUMENT IS A CONFIDENTIAL FILING.**
**ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY COURT ORDER.**

**RESPONSE: Defendant admits that it refuses to pay Plaintiff the amounts Plaintiff has demanded, but denies that Plaintiff had earned such demanded amounts and denies that such demanded amounts are payable under the Offer Letter or otherwise.**

### B.    Mr. Donnelly's ProPharma Incentive Equity

49.     On or around September 2019, Mr. Donnelly had a telephone discussion with then ProPharma Board Chairman, Mike Farah ("Mr. Farah") regarding the buyback value of his ProPharma Incentive Equity.

**RESPONSE: Defendant admits that Mr. Farah had a conversation with Plaintiff regarding the buyback value of Plaintiff's Incentive Equity at or around this time. To the extent Paragraph 49 suggests that this was the first or only communication regarding the buyback value of Plaintiff's Incentive Equity, denied.**

50.     Around late August or early September 2019, ProPharma began negotiations with Mr. Donnelly to potentially buy back his ProPharma Incentive Equity.

**RESPONSE: Defendant admits that discussions between Defendant and Plaintiff regarding the buyback of Plaintiff's Incentive Equity occurred around this time. To the extent Paragraph 50 alleges that such a buyback was only "potential," thereby alleging that Defendant and Plaintiff believed that Plaintiff may or may not be departing from the Board of Managers in September 2019, denied.**

51.     At no time during these negotiations did Mr. Donnelly agree to leave his position as a ProPharma Board Member before resolution of the valuation of his ProPharma Incentive Equity.

**RESPONSE: Denied**

52.     During the call with Mr. Farah on or about September 2019, Mr. Farah indicated

**THIS DOCUMENT IS A CONFIDENTIAL FILING.**
**ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY COURT ORDER.**

that ProPharma desired to exercise its right to purchase Mr. Donnelly's vested ProPharmaIncentive Equity units under the IEA.

**RESPONSE: Defendant admits that discussions between Mr. Farah and Plaintiff regarding the buyback of Plaintiff's Incentive Equity occurred around this time. Otherwise, denied.**

53.    During the call, Mr. Farah presented Mr. Donnelly with a single valuation chart, which valued Mr. Donnelly's owed ProPharma Incentive Equity at $684,008.19 ("September 2019 Offer"), attached as **Exhibit C**.

**RESPONSE: Defendant admits that Mr. Farah presented Mr. Donnelly with the referenced valuation chart. Defendant denies that Plaintiff was owed payment for all the Incentive Equity represented in the valuation chart or that Plaintiff was entitled to an amount of $684,008.19 under the Offer Letter, IEA or otherwise.**

54.    The September 2019 Offer was based on a valuation calculated as of June 30, 2019. Pursuant to the June 30, 2019 valuation, ProPharma valued ProPharma Incentive Equity units at $131.78 per unit, based on a 13.9x earnings before interest, taxes, depreciation, and amortization ("EBITDA") multiple and a $472.5 million enterprise value ("June 2019 Valuation").

**RESPONSE: Admitted.**

55.    Upon information and belief, this June 2019 Valuation was never presented to or approved by the ProPharma Board of Managers, as required by the terms of the IEA.

**RESPONSE: Paragraph 55 sets forth a legal conclusion to which no response is required. To the extent a response is required, denied.**

56.    Upon information and belief, the ProPharma Board of Managers did not take into account all relevant factors, including, without limitation, any other then-existing determinations

**THIS DOCUMENT IS A CONFIDENTIAL FILING.
ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY COURT ORDER**.

of fair market value on or about the valuation date.

**RESPONSE: Paragraph 56 sets forth a legal conclusion to which no response is required. To the extent a response is required, denied.**

57.     On or about August 2019, Mr. Donnelly became aware that the ProPharma Board of Managers had plans to solicit offers for ProPharma.

**RESPONSE: Defendant lacks sufficient knowledge or information to form a belief about the truth of the allegations in Paragraph 57, and therefore denies them.**

58.     During this sales process, ProPharma underwent several valuations conducted by third parties, including investment banks.

**RESPONSE: Denied.**

59.     During September and October 2019, ProPharma met with numerous investment bankers in connection with a potential sale of the company.

**RESPONSE: Denied.**

60.     Mr. Farah did not share with Mr. Donnelly these other third-party valuations, and solely based ProPharma's valuation of Mr. Donnelly's shares on the June 2019 Valuation.

**RESPONSE: Defendant admits that it based its valuation of Plaintiff's Incentive Equity Shares on the June 2019 valuation. Otherwise, denied.**

61.     Based on ProPharma's plans to sell, Mr. Donnelly was aware that in or around June 2019, the ProPharma Board of Managers had received other determinations of ProPharma's fair market value.

**RESPONSE: Defendant lacks sufficient knowledge or information to form a belief about the truth of the allegation concerning what purportedly Mr. Donnelly "was aware" and therefore denies it. Defendant denies the remaining allegations in Paragraph 61.**

**THIS DOCUMENT IS A CONFIDENTIAL FILING.**
**ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY COURT ORDER**.

62.     These other determinations of ProPharma's fair market value showed that ProPharma was valued at approximately $550-625 million on or about June 2019.

**RESPONSE: Denied.**

63.     Mr. Donnelly was aware that the September 2019 Offer substantially undervalued ProPharma based on these previously received market valuations, and market comparable data that showed valuations for similar companies at the time closer to an average 18x EBITDA multiple. An 18x EBITDA multiple would have resulted in an implied $610.2 million enterprise value for ProPharma at the time.

**RESPONSE: Defendant lacks sufficient knowledge or information to form a belief about the truth of the allegations in Paragraph 63, and therefore denies them.**

64.     Mr. Donnelly told Mr. Farah that he did not agree with the June 2019 Valuation because it was based on a "trailing EBITDA" valuation—despite the fact that other comparable companies in the marketplace were being valued on a "forward" EBITDA valuation—and did not include any normal "EBITDA" adjustments.  Mr. Donnelly also knew that the June 2019 Valuation was significantly less than previously received third-party ProPharma valuations.

**RESPONSE: Defendant admits that Plaintiff did not agree with the June 2019 Valuation and communicated such. Otherwise, denied.**

65.     "Forward" EBITA valuation is the standard and accepted industry practice of valuation for businesses in the marketplace.

**RESPONSE: Denied.**

66.     Mr. Donnelly told Mr. Farah that he believed the proper value of his Incentive Equity was $199.73 a unit, which included a 3.0x multiple vesting on his Performance Vesting Units.

**THIS DOCUMENT IS A CONFIDENTIAL FILING.**
**ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY COURT ORDER.**

**RESPONSE: Defendant admits that Plaintiff presented a counteroffer concerning the valuation of his Incentive Equity. Otherwise denied.**

67.     Mr. Donnelly rejected ProPharma's September 2019 Offer, based on the June 2019 Valuation.

**RESPONSE: Defendant admits that Plaintiff rejected its September 2019 Offer. Otherwise, denied.**

68.     Based on Mr. Donnelly's disagreement of the valuation of his ProPharma Incentive Equity units, Mr. Farah told Mr. Donnelly that he would get back to Mr. Donnelly regarding the June 2019 Valuation.

**RESPONSE: Denied.**

69.     Mr. Farah did not come back with a different offer or provide any new valuation.

**RESPONSE: Admitted.**

70.     On October 4, 2019, Mr. Donnelly counter-offered Mr. Farah's September 2019 Offer, stating that ProPharma and Mr. Donnelly should split the difference between Mr. Donnelly's proposed valuation and the June 2019 Valuation, giving any difference between the two amounts to charity.

**RESPONSE: Denied.**

71.     Mr. Farah declined this counteroffer from Mr. Donnelly. Mr. Farah did not reply with any other counteroffer or new valuation.

**RESPONSE: Defendant denies that Mr. Donnelly submitted the referenced counter-offer. Defendant admits that Mr. Farah did not reply with any counter-offer or new valuation.**

72.     Instead, on or about November 4, 2019, without consulting Mr. Donnelly,

**THIS DOCUMENT IS A CONFIDENTIAL FILING.
ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY COURT ORDER.**

ProPharma unilaterally delivered to him a sum of $105,227.97.

**RESPONSE: Defendant admits that it sent Plaintiff a sum of $105,227.97, but denies that this payment was sent without consulting Mr. Donnelly.**

73.     On information and belief, this sum of $105,227.97 was for 1,206.955 vested Time Vesting Units, at a valuation to which Mr. Donnelly did not agree.

**RESPONSE: Denied.**

74.     ProPharma sent to Mr. Donnelly's bank the sum of $105,227.97 by direct deposit despite the fact that the parties were still negotiating the valuation of Mr. Donnelly's Incentive Equity Units.

**RESPONSE: Defendant admits that it sent Plaintiff a payment in the sum of $105,227.97, but denies that the parties were still negotiating the valuation of Mr. Donnelly's Incentive Equity Units.**

75.     Mr. Donnelly never agreed to the $105,227.97 sum.

**RESPONSE: Denied.**

76.     Mr. Donnelly only discovered that ProPharma had paid him the $105,227.97 sum after his bank called him to notify him of the payment.

**RESPONSE: Defendant lacks sufficient knowledge or information to form a belief about the truth of the allegations in Paragraph 76, and therefore denies them.**

77.     Mr. Donnelly never agreed to the June 2019 Valuation or accepted the $105,227.97 sum of money.

**RESPONSE: Denied.**

78.     At an 18x EBITA multiple valuation (an implied $610.2 million enterprise value), which was the valuation for similar companies at the time, the implied value for a common unit

**THIS DOCUMENT IS A CONFIDENTIAL FILING.**
**ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY COURT ORDER**.

would have been approximately $199.73/unit. For 1,206.955 vested Time Vested Units, this would have resulted in a total payment of $241,065.12, instead of $105,227.97.

**RESPONSE: Defendant denies that Plaintiff's Incentive Equity were entitled to an 18x EBITDA valuation, or $199.73 per unit. Defendant denies that an 18x EBITDA multiple valuation was the valuation for similar companies at the time. Defendant also denies that Plaintiff was entitled to payment for 1,206.955 Time Vested units. Defendant denies that Plaintiff was entitled to any payment totaling more than $105,227.97.**

79.     The eventual ProPharma sale on September 30, 2020 to Odyssey Investment Partners was based on a 3.1x MOIC, with upside to 3.2x MOIC.

**RESPONSE: Admitted.**

80.     The sale of ProPharma to Odyssey Investment Partners establishes that the actual MOIC is either 3.1x or 3.2x, which is higher than the 2.5x reflected in the June 2019 Valuation identified in the September 2019 Offer.  **Exhibit C**.

**RESPONSE: Defendant admits that, at the time of sale in September 2020, the MOIC was higher than the June 2019 valuation. Otherwise, denied.**

81.     The MOIC ultimately achieved in the ProPharma sale is reflective of Mr. Donnelly's hard work as a Board member.

**RESPONSE: Denied.**

82.     Mr. Donnelly's work as a Board member was a significant factor in the growth and success of ProPharma, as well as its ultimate $560 million sale price.

**RESPONSE: Denied.**

83.     To date, Mr. Donnelly has not received any Performance Vesting Units based on the MOIC that ProPharma achieved in its sale to Odyssey Investment Partners on September 30,

**THIS DOCUMENT IS A CONFIDENTIAL FILING.**
**ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY COURT ORDER.**

2020.

> **RESPONSE: Admitted.**

84.     Mr. Donnelly was ready, willing and able to provide services to ProPharma through September 30, 2020.

> **RESPONSE: Denied.**

85.     Mr. Donnelly demanded the fair market value of his earned ProPharma Incentive Equity on November 6, 2019, and again on September 4, 2020.

> **RESPONSE: Defendant admits that it received two letters from Plaintiff's counsel on November 6, 2019 and September 4, 2020 in which Plaintiff demanded additional sums for his Incentive Equity. Otherwise, denied.**

86.     ProPharma refused to pay Mr. Donnelly his ProPharma Incentive Equity on November 11, 2019, and again on September 23, 2020.

> **RESPONSE: Admitted.**

87.     At no time during these negotiations did ProPharma terminate Mr. Donnelly's position on the Board of Managers.

> **RESPONSE: Denied.**

III.     <u>**MR. DONNELLY WAS NEVER REMOVED FROM THE PROPHARMA BOARD OF MANAGERS**</u>

88.      In August 2019, Anthony Davis ("Mr. Davis") talked to Mr. Donnelly about the potential possibility that Mr. Donnelly may have to leave the ProPharma Board of Managers, but did not tell Mr. Donnelly when he would be removed from the ProPharma Board of Managers.

> **RESPONSE: Defendant admits that Mr. Davis had a conversation with Plaintiff regarding his removal from ProPharma's Board in or around August 2019. Otherwise, denied.**

**THIS DOCUMENT IS A CONFIDENTIAL FILING.**
**ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY COURT ORDER**.

89.     This discussion was based on a perceived conflict of interest by Mr. Davis caused by Mr. Donnelly's presence on the Board of Managers.

**RESPONSE: Defendant admits that a conflict of interest had arisen with Plaintiff's board service. Otherwise, denied.**

90.     The alleged perceived conflict was based on the fact that Mr. Donnelly occupied leadership positions in entities affiliated with ProPharma.

**RESPONSE: Defendant admits that an actual conflict of interest existed based on the fact that Mr. Donnelly occupied leadership positions in entities affiliated with ProPharma.**

91.     Mr. Donnelly did not agree that there was a conflict of interest and did not agree to his removal or step down from the board.

**RESPONSE: Denied.**

92.     Mr. Donnelly told Mr. Davis that any departure would be subject to parties coming to an agreement on the proper valuation of his Incentive Equity.

**RESPONSE: Defendant admits Mr. Davis discussed with Plaintiff Plaintiff's removal from the Board of Managers. Otherwise, denied.**

93.     Mr. Donnelly's role in leadership positions in entities affiliated with ProPharma was no different from other ProPharma Board members, such as Mr. Richard Thomas ("Mr. Thomas"), who remained on the ProPharma Board of Managers.

**RESPONSE: Denied.**

94.     Mr. Donnelly told Mr. Davis that if he was to be removed from the ProPharma Board of Managers, he expected ProPharma to honor its obligations under the ProPharma Offer and IEA.

**RESPONSE: Defendant admits that the conversation concerned Plaintiff's removal**

**THIS DOCUMENT IS A CONFIDENTIAL FILING.**
**ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY COURT ORDER**.

**from the Board of Directors. Otherwise, denied.**

95.     Mr. Davis assured Mr. Donnelly that ProPharma and Mr. Farah would work with him regarding the value of his Incentive Equity.

**RESPONSE: Defendant admits that it told Plaintiff it intended to honor its obligations under the Offer Letter and IEA. Otherwise, denied.**

96.     Mr. Donnelly understood that he would not be removed from the ProPharma Board of Managers until he reached an agreement regarding the payment of his Incentive Equity, and resolved any potential issues regarding the valuation of his Incentive Equity.

**RESPONSE: Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 91, and therefore denies them.**

97.     During Mr. Donnelly's conversations with Mr. Farah in September 2019, the parties were unable to come to a resolution on the valuation of his Incentive Equity.

**RESPONSE: Admitted.**

98.     Pursuant to the ProPharma Offer, the term of the ProPharma Offer was for "[f]ive years from execution of this [ProPharma Offer], subject to renewal by majority vote of the Board."

**RESPONSE: Defendant admits that the Offer Letter contains the quoted provision; the document speaks for itself. Defendant refers to the ProPharma Offer for its complete and accurate contents. Otherwise, Paragraph 93 sets forth a legal conclusion to which no response is required. To the extent a response is required, admitted.**

99.     Until September 23, 2020, Mr. Donnelly never received any communication from ProPharma terminating his status as a ProPharma Board member.

**RESPONSE: Denied.**

100.    Prior to September 23, 2020, ProPharma did not ever otherwise inform Mr.

**THIS DOCUMENT IS A CONFIDENTIAL FILING.
ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY COURT ORDER**.

Donnelly that he was no longer a ProPharma Board member.

 **RESPONSE: Denied.**

 101. Between September 1, 2019 and September 30, 2020, other ProPharma Board members never provided necessary board materials or invitations to board meetings to Mr. Donnelly.

 **RESPONSE: Defendant admits that Plaintiff did not receive board materials or invitations to board meetings beginning September 1, 2019 through September 30, 2020, but denies that Plaintiff continued to serve on the Board of ProPharma as of September 1, 2019 and denies that Plaintiff was entitled to receive such materials and invitations.**

 102. By failing to provide Mr. Donnelly with the materials necessary to carry out his duties as a ProPharma Board member, ProPharma prevented Mr. Donnelly from carrying out his duties under the ProPharma Offer.

 **RESPONSE: Paragraph 102 sets forth a legal conclusion to which no response is required. To the extent a response is required, Defendant admits that as of September 1, 2019 through September 23, 2020 Plaintiff did not receive board materials or invitations to board meetings, but denies that Plaintiff continued to serve on the Board of ProPharma as of September 1, 2019 and denies that Plaintiff was entitled to receive such materials and invitations.**

 103. In preparation for litigation, on September 23, 2020, counsel for Mr. Donnelly requested that counsel for ProPharma send him any record indicating that Mr. Donnelly was properly terminated from ProPharma's Board of Managers.  In response, ProPharma's counsel sent counsel for Mr. Donnelly a document, dated September 3, 2019, which purported to have removed

**THIS DOCUMENT IS A CONFIDENTIAL FILING.**
**ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY COURT ORDER**.

Mr. Donnelly from the ProPharma Board, effective August 31, 2019 ("Purported RemovalLetter"). *See* **Exhibit D**, Purported Removal Letter.

**RESPONSE: Defendant admits that counsel for Defendant sent counsel for Plaintiff a document, dated September 3, 2019, removing Plaintiff from the ProPharma Board effective August 31, 2019; the document speaks for itself. Otherwise, denied.**

104.    September 23, 2020 was the first time Mr. Donnelly received any communication purporting to terminate his status as a Member of the ProPharma Board of Managers.

**RESPONSE: Denied.**

105.    Before September 23, 2020, Mr. Donnelly had never seen, nor was given any notice of the document dated September 3, 2019 and there is no language in the September 23, 2020 letter indicating that it was sent to Mr. Donnelly in September 2019.

**RESPONSE: Denied.**

106.    The Purported Removal Letter is addressed to:

ProPharma Group Topco, LLC
8717 W. 110th Street
Suite 300
Overland Park, KS 66210

c/o Linden Capital Partners III LP
c/o Linden LLC
150 N. Riverside Plaza
Suite 5100
Chicago, IL 60606

*Id.*

**RESPONSE: Admitted.**

107.    The Purported Removal Letter indicates that "[p]ursuant to Section 5.2(b) of the LLC Agreement, the undersigned hereby removes Patrick Donnelley [sic] from the Board and all

**THIS DOCUMENT IS A CONFIDENTIAL FILING.**
**ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY COURT ORDER**.

Sub Boards effective as of August 31, 2019." *Id.* ¶ 2.

> **RESPONSE: Admitted.**

108.    The Purported Removal Letter is signed by Michael Farah in his capacity as "Authorized Signatory" on behalf of "Linden Capital Partners III L.P." and "Linden Capital Partners III-A L.P." *See* **Exhibit D**.

> **RESPONSE: Admitted.**

109.    The relationship of the parties is governed by an Amended and Restated LLC Agreement dated September 30, 2016 ("LLC Agreement"). *See* **Exhibit E**, ProPharma LLC Agreement; *see also Donnelly v. ProPharma Group Topco, LLC*, CA:2:20-cv-4110-JD, Docket No. 36 (D.S.C. June 22, 2021).

> **RESPONSE: Admitted.**

110.    Section 5.2(a)(i) of ProPharma's LLC Agreement provides, in pertinent part, that:

> The Board shall initially consist of up to eight (8) Managers. Thereafter, the number of Managers on the Board shall be established from time to time by the Majority Linden Investors; provided that, for so long as either Linden Capital Partners III, L.P. (the "Linden III VCOC") or Linden Capital Partners III-A, L.P. (the "Linden III-A VCOC" and, together with the Linden III VCOC, the "Linden VCOC Investors") holds a direct or indirect interest in Holdings LLC, ***each*** such Linden VCOC Investor ***shall have the direct independent right to designate <u>one (1)</u> Manager*** pursuant to Section 5.2(a)(i)(B).

*See* **Exhibit E**, LLC Agreement § 5.2(a)(i) (emphasis added).

> **RESPONSE: Paragraph 110 sets forth a legal conclusion to which no response is required; the document speaks for itself. To the extent a response is required, admitted.**

111.    Thus, Linden Capital Partners III, L.P. and Linden Capital Partners III-A, L.P. each had the "direct independent right" to designate one Manager.

> **RESPONSE: Paragraph 111 sets forth a legal conclusion to which no response is**

**THIS DOCUMENT IS A CONFIDENTIAL FILING.**
**ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY COURT ORDER**.

**required; the document speaks for itself. To the extent a response is required, admitted.**

112.    Section 5.2(a)(i)(B) provides:

(B) Three (3) Managers designated by the Linden Investors (each a "Linden Manager"), one (1) of whom ***shall be directly designated by*** the Linden III VCOC (the "Linden III VCOC Manager"), who shall initially be Anthony Davis, one (1) of whom ***shall be directly designated by*** the Linden III-A VCOC (the "Linden III-A VCOC Manager", and collectively with the Linden III VCOC Manager, the "Linden VCOC Managers"), who shall initially be Michael Farah, and one (1) of whom ***shall be designated by the Linden Investors***, who shall initially be Patrick Donnelly;

*See* **Exhibit E**, LLC Agreement § 5.2(a)(i)(B) (emphasis added).

**RESPONSE: Paragraph 112 sets forth a legal conclusion to which no response is required; the document speaks for itself. To the extent a response is required, admitted.**

113.    Thus, Mr. Donnelly was designated to be a Member of the Board of Managers by the "Linden Investors," not by Linden Capital Partners III, L.P. and Linden Capital Partners III-A, L.P., who designated Anthony Davis and Michael Farah, respectively.

**RESPONSE: Paragraph 113 sets forth a legal conclusion to which no response is required. To the extent a response is required, denied.**

114.    Article I ("DEFINITIONS") of the LLC Agreement defines "Linden Investors" as "collectively, Linden Buyer, Linden Splitter and any of their Affiliates and any of their respective Transferees."

**RESPONSE: Paragraph 114 sets forth a legal conclusion to which no response is required; the document speaks for itself. To the extent a response is required, admitted.**

115.    Article I of the LLC Agreement defines "Linden Buyer" as "ProPharma Group Buyer, LLC, a Delaware limited liability company." *See* **Exhibit E** at 6.

**RESPONSE: Paragraph 115 sets forth a legal conclusion to which no response is**

**THIS DOCUMENT IS A CONFIDENTIAL FILING.
ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY COURT ORDER.**

**required; the document speaks for itself. To the extent a response is required, admitted.**

116.    Article I of the LLC Agreement defines "Linden Splitter" as "ProPharma Group Splitter, LP, a Delaware limited partnership."  *See* **Exhibit E** at 6.

**RESPONSE: Paragraph 116 sets forth a legal conclusion to which no response is required; the document speaks for itself. To the extent a response is required, admitted.**

117.    The LLC Agreement does not identify any Affiliates or Transferees of ProPharma Group Buyer, LLC or ProPharma Group Splitter, LP.

**RESPONSE: Paragraph 117 sets forth a legal conclusion to which no response is required; the document speaks for itself. To the extent a response is required, denied.**

118.    Section 5.2(b) of the ProPharma LLC Agreement provides, in pertinent part:

> Any Linden Manager or Independent Manager will be removed from the Board, with or without cause, ***at the written request of the Linden Investors entitled to appoint such Linden Manager*** or Independent Manager pursuant to this Section 5.2.

*See* **Exhibit E**, LLC Agreement § 5.2(b) (emphasis added).

**RESPONSE: Paragraph 118 sets forth a legal conclusion to which no response is required; the document speaks for itself. To the extent a response is required, admitted.**

119.    Thus, Linden Capital Partners III, L.P. and Linden Capital Partners III-A did not have the direct independent right to remove Mr. Donnelly from the Board of Managers.

**RESPONSE: Paragraph 119 sets forth a legal conclusion to which no response is required. To the extent a response is required, denied.**

120.    The definition of the term Linden Investors, using as it does "and," is conjunctive, not disjunctive. *Silver Lake Office Plaza, LLC v. Lanard & Axilbund, Inc.*, 2014 Del. Super. LEXIS 17, at *21-22 (Newcastle Jan. 17, 2014) ("since the parties used the word 'and' . . . they intended

**THIS DOCUMENT IS A CONFIDENTIAL FILING.
ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY COURT ORDER**.

to give the 'conjunctive requirement' the power that its plain meaning suggests."); *accord* **Exhibit E**, LLC Agreement § 14.8 (excluding "and" from a list of words that "shall ***not*** be exclusive.") (emphasis added)).  Accordingly, only ProPharma Group Buyer, LLC and ProPharma Group Splitter, LP, acting in concert with any Affiliates and Transferees they may have, had the power to remove Mr. Donnelly from the ProPharma Board of Managers.

> **RESPONSE: Paragraph 119 sets forth a legal conclusion to which no response is required; the document speaks for itself. To the extent a response is required, denied.**

121.   Texas Franchise Tax Public Information Reports filed by ProPharma Group Holdings LLC dated October 16, 2019 and October 23, 2020 list ProPharma Group Buyer, LLC and ProPharma Group Splitter, LP under Section A, thus indicating, at the very least, their existence as of these dates.  *See* **Exhibit F**, Texas Franchise Tax Public Information Reports.

> **RESPONSE: Paragraph 121 sets forth a legal conclusion to which no response is required; the document speaks for itself. To the extent a response is required, admitted.**

122.   Upon information and belief, ProPharma Group Buyer, LLC and ProPharma Group Splitter, LP were in existence and remained Linden Investors as of September 3, 2019, the date of the Purported Removal Letter.

> **RESPONSE: Paragraph 122 sets forth a legal conclusion to which no response is required. To the extent a response is required, admitted.**

123.   ProPharma Group Buyer, LLC and ProPharma Group Splitter, LP did not sign the Purported Removal Letter.  Accordingly, the Purported Removal Letter did not effectively remove Mr. Donnelly from the ProPharma Board of Managers.

> **RESPONSE: Paragraph 123 sets forth a legal conclusion to which no response is required; the document speaks for itself. To the extent a response is required, denied.**

**THIS DOCUMENT IS A CONFIDENTIAL FILING.**
**ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY COURT ORDER**.

124.    The ProPharma Offer remains a binding agreement on the parties.

**RESPONSE: Paragraph 124 sets forth a legal conclusion to which no response is required. To the extent a response is required, denied.**

125.    ProPharma was sold on September 30, 2020.

**RESPONSE: Admitted.**

126.    After September 30, 2020, as a result of a change in control, Mr. Donnelly was no longer a member of ProPharma's Board of Managers, and ProPharma owes him a payout of his shares.

**RESPONSE: Paragraph 126 sets forth a legal conclusion to which no response is required. To the extent a response is required, denied.**

127.    Mr. Donnelly remained a ProPharma Board of Managers member through September 30, 2020, but did not receive any payouts from the September 30, 2020 sale to Odyssey Investment Partners.

**RESPONSE: Paragraph 127 sets forth a legal conclusion to which no response is required. To the extent a response is required, denied.**

128.    After September 30, 2020, as a result of a change in control, Mr. Donnelly was no longer a member of the Board of Managers.

**RESPONSE: Paragraph 128 sets forth a legal conclusion to which no response is required. To the extent a response is required, denied.**

**COUNT I**
**BREACH OF PROPHARMA OFFER**
**FAILURE TO PAY EARNED DONNELLY BASE COMPENSATION**

129.    All prior allegations are incorporated under Count I as if fully set forth herein.

**RESPONSE: Defendant incorporates by reference its responses to the preceding**

**THIS DOCUMENT IS A CONFIDENTIAL FILING.**
**ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY COURT ORDER**.

**paragraphs.**

130.    The relationship between Mr. Donnelly and ProPharma is governed by the ProPharma Offer.

**RESPONSE: Paragraph 130 sets forth a legal conclusion to which no response is required; the document speaks for itself. To the extent a response is required, Defendant admits that the ProPharma Offer governs the relationship between Mr. Donnelly and ProPharma as to the subject matter of the ProPharma Offer, but denies that such subject matter is the sole extent of the relationship between Mr. Donnelly and ProPharma.**

131.    On October 31, 2016, Mr. Donnelly signed the ProPharma Offer.

**RESPONSE: Admitted.**

132.    The ProPharma Offer was an agreement drafted by ProPharma.

**RESPONSE: ProPharma admits that it drafted the Offer Letter but with the review and input of Plaintiff and, upon information and belief, Plaintiff's counsel.**

133.    The ProPharma Offer was an agreement to join ProPharma's Board of Managers on September 30, 2016 for a term of five years, subject to renewal by the Board of Managers.

**RESPONSE: Paragraph 133 sets forth a legal conclusion to which no response is required the document speaks for itself. Defendant refers to the ProPharma Offer for its complete and accurate contents. To the extent a response is required, admitted.**

134.    Under the ProPharma Offer, ProPharma owed Mr. Donnelly his Donnelly Base Compensation.

**RESPONSE: Paragraph 134 sets forth a legal conclusion to which no response is required; the document speaks for itself. Defendant refers to the ProPharma Offer for its complete and accurate contents. To the extent a response is required, admitted.**

**THIS DOCUMENT IS A CONFIDENTIAL FILING.**
**ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY COURT ORDER.**

135.    ProPharma has not paid Mr. Donnelly his Donnelly Base Compensation since April 18, 2019 in breach of the ProPharma Offer.

**RESPONSE: Paragraph 135 sets forth a legal conclusion to which no response is required. To the extent a response is required, Defendant admits that it has not paid Plaintiff his Base Compensation after April 18, 2019, but denies that Plaintiff has earned such amounts, denies that such demanded amounts were payable under the Offer Letter or otherwise, and denies that Defendant breached the Offer Letter.**

136.    Mr. Donnelly remains unpaid on his Donnelly Based Compensation for the period from April 19, 2019 through September 30, 2020, when the company was sold.

**RESPONSE:  Defendant admits that it has not paid Plaintiff his Base Compensation since April 18, 2019, but denies that Plaintiff has earned such amounts, denies that such demanded amounts were payable under the Offer Letter or otherwise, and denies that Defendant breached the Offer Letter.**

137.    Mr. Donnelly demanded his earned Donnelly Base Compensation on September 4, 2020.

**RESPONSE: Admitted.**

138.    ProPharma refused to pay Mr. Donnelly his Donnelly Base Compensation on September 23, 2020.

**RESPONSE: Admitted.**

139.    Mr. Donnelly has suffered damages as a direct and proximate cause of ProPharma's refusal to pay him his Donnelly Base Compensation from April 19, 2019 through September 30, 2020, pursuant to the ProPharma Offer.

**RESPONSE: Paragraph 139 sets forth a legal conclusion to which no response is**

**THIS DOCUMENT IS A CONFIDENTIAL FILING.**
**ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY COURT ORDER.**

**required. To the extent a response is required, denied.**

140.   Mr. Donnelly thus asks this Court to award him damages sufficient to make him whole and compensate him for work he performed pursuant to the ProPharma Offer, consequentialdamages, and any and all other available remedies.

**RESPONSE: Paragraph 140 sets forth a legal conclusion to which no response is required. To the extent a response is required, Defendant denies that Plaintiff is entitled to any of the damages or other remedies Plaintiff requests.**

<u>COUNT II</u>
BREACH OF INCENTIVE EQUITY AGREEMENT
FAILURE TO PAY FAIR MARKET VALUE OF PROPHARMA INCENTIVE
EQUITY

141.   All prior allegations are incorporated under Count II, as if fully set forth herein.

**RESPONSE:** Defendant incorporates by reference its responses to the preceding paragraphs.

142.   On or about November 4, 2019, ProPharma unilaterally paid Mr. Donnelly a sum of $105,227.97 for 1,206.955 Time Vesting Units based on the June 2019 Valuation.

**RESPONSE: Defendant admits that it sent Plaintiff a payment of $105,227.97 based on the June 2019 Valuation, but Defendant denies that this payment was sent on November 4, 2019 or that this payment was for 1,206.955 Time Vesting Units.**

143.   Mr. Donnelly never agreed to the June 2019 Valuation, nor that the $105,227.97 sum of money satisfied the full value of his owed ProPharma Incentive Equity units.

**RESPONSE: Paragraph 143 sets forth a legal conclusion to which no response is required. To the extent a response is required, denied.**

144.   On information and belief, Mr. Donnelly has never received any payment for his

**THIS DOCUMENT IS A CONFIDENTIAL FILING.
ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY COURT
ORDER.**

Performance Vesting Units.

**RESPONSE: Defendant admits that it has not paid Plaintiff for Performance Vesting Units, but denies that Plaintiff has earned the sums demanded and denies that such amounts were payable under the Offer Letter, IEA, or otherwise.**

145.    Upon information and belief, the June 2019 Valuation, which served as the basis of the $105,227.97 sum of money for Mr. Donnelly's Time Vesting Units, was never in good faith presented to, approved or determined by the ProPharma Board of Managers.

**RESPONSE: Paragraph 145 sets forth a legal conclusion to which no response is required. To the extent a response is required, denied.**

146.    Upon information and belief, in calculating the June 2019 Valuation, the ProPharma Board never took into account all relevant factors determinative of value, including other then-existing determinations of fair market value on or about the valuation date.

**RESPONSE: Paragraph 146 sets forth a legal conclusion to which no response is required; the document speaks for itself. Defendant refers to the IEA for its complete and accurate contents. To the extent a response is required, denied.**

147.    Upon information and belief, ProPharma's June 2019 Valuation was substantially undervalued based on market comparable data that shows valuations for similar companies at the time closer to an average 18x EBITDA multiple in June 2019, which would have resulted in an implied $610.2 million enterprise value for ProPharma at the time.

**RESPONSE: Denied.**

148.    ProPharma failed to value Mr. Donnelly's Incentive Equity according to a "forward" EBITA valuation, which represents the standard and accepted industry practice of

**THIS DOCUMENT IS A CONFIDENTIAL FILING.
ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY COURT
ORDER.**

valuation for businesses in the marketplace.

**RESPONSE: Defendant admits that it did not value Plaintiff's Incentive Equity at a "forward" EBITDA valuation, but denies that Plaintiff was entitled to a "forward" EBITDA valuation for his incentive equity and denies that a "forward" EBITDA valuation represents the standard and accepted industry practice of valuation.**

149.    The June 2019 Valuation was not based on the fair market value, in breach of the terms of the IEA.

**RESPONSE: Paragraph 149 sets forth a legal conclusion to which no response is required. To the extent a response is required, Defendant denies that the June 2019 Valuation did not represent fair market value and denies that Defendant breached the IEA by basing the value of Plaintiff's Incentive Equity on the June 2019 Valuation.**

150.    Mr. Donnelly remained a Member of ProPharma's Board of Managers through September 30, 2020, when the sale of ProPharma to Odyssey Investment Partners was completed.

**RESPONSE: Denied.**

151.    Mr. Donnelly did not receive the fair market value of his owed Performance Vesting Units pursuant to ProPharma's sale to Odyssey Investment Partners on September 30, 2020.

**RESPONSE: Defendant admits that Plaintiff did not receive payment for his Performance Vesting Units, but denies that Plaintiff has earned such payments and denies that such payments were payable under the Offer Letter, IEA, or otherwise.**

152.    Mr. Donnelly demanded the fair market value of his owed ProPharma Incentive

**THIS DOCUMENT IS A CONFIDENTIAL FILING.
ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY COURT ORDER.**

Equity on November 6, 2019, and again on September 4, 2020.

**RESPONSE: Defendant admits that Plaintiff's counsel sent letters demanding additional compensation for Plaintiff's Incentive Equity on November 6, 2019 and again on September 4, 2020, but Defendant denies that the demanded amounts represented the fair market value of his Incentive Equity.**

153.   Mr. Donnelly has suffered damages as a direct and proximate cause of ProPharma'srefusal to pay him the fair market value of his ProPharma Incentive Equity under the ProPharma Offer.

**RESPONSE: Paragraph 153 sets forth a legal conclusion to which no response is required. To the extent a response is required, Defendant admits that it has refused to send Plaintiff additional payments for his Incentive Equity, but denies that Plaintiff is entitled to the demanded additional payments, denies that the demanded sums represent the fair market value of Plaintiff's Incentive Equity, denies that such demanded amounts are payable under the Offer Letter, the IEA, or otherwise, and denies that Defendant caused Plaintiff any damages.**

154.   Mr. Donnelly thus asks this Court to award him damages sufficient to make him whole and compensate him for work he performed pursuant to the ProPharma Offer, consequentialdamages, and any and all other available remedies.

**RESPONSE: Paragraph 154 sets forth a legal conclusion to which no response is required. To the extent a response is required, Defendant denies that Plaintiff is entitled to any of the damages or other remedies Plaintiff requests.**

<u>**COUNT III**</u>

**THIS DOCUMENT IS A CONFIDENTIAL FILING.
ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY COURT
ORDER**.

**BREACH OF PROPHARMA OFFER**
**BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR**
**DEALING**

155.    All prior allegations are incorporated under Count III, as if fully set forth herein.

**RESPONSE: Defendant incorporates by reference its responses to the preceding paragraphs.**

156.    Mr. Donnelly became a member of the Board of Managers on September 30, 2016 for a term of five years, subject to renewal by the Board of Managers.

**RESPONSE: Paragraph 156 sets forth a legal conclusion to which no response is required; the document speaks for itself. Defendant refers to the ProPharma Offer for its complete and accurate contents. To the extent a response is required, admitted.**

157.    Mr. Donnelly was ready, willing and able to provide services to ProPharma at all relevant times until ProPharma's sale to Odyssey Investment Partners on September 30, 2020.

**RESPONSE: Denied.**

158.    Between September 1, 2019 and September 30, 2020, other ProPharma Board members never provided necessary board materials or invitations to board meetings to Mr. Donnelly.

**RESPONSE: Defendant admits that as of September 1, 2019 through September 30, 2020 Plaintiff did not receive Board materials or invitations to Board meetings, but denies that Plaintiff continued to serve on the Board of ProPharma as of September 1, 2019 and denies that Plaintiff was entitled to receive such materials and invitations.**

159.    Between September 1, 2019 and September 30, 2020, Mr. Donnelly was ready and available to carry out his duties as a ProPharma Board member.

**THIS DOCUMENT IS A CONFIDENTIAL FILING.**
**ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY COURT**
**ORDER**.

**RESPONSE: Denied.**

160.    By failing to provide Mr. Donnelly with the materials necessary to carry out his duties as a ProPharma Board member, ProPharma prevented Mr. Donnelly from carrying out his duties under the ProPharma Offer.

**RESPONSE: Paragraph 160 sets forth a legal conclusion to which no response is required. To the extent a response is required, Defendant admits that as of September 1, 2019 through September 23, 2020 Plaintiff did not receive board materials or invitations to board meetings, but denies that Plaintiff continued to serve on the Board of ProPharma as of September 1, 2019 and denies that Plaintiff was entitled to receive such materials and invitations.**

161.    ProPharma's actions injured Mr. Donnelly's right to receive the benefits of the ProPharma Offer and IEA.

**RESPONSE: Paragraph 161 sets forth a legal conclusion to which no response is required. To the extent a response is required, Defendant denies that its actions injured Plaintiff's right to receive the rights and benefits of the Offer Letter and IEA.**

162.    Mr. Donnelly has suffered damages as a direct and proximate cause of ProPharma's breach of the implied covenant of good faith and fair dealing.

**RESPONSE: Paragraph 162 sets forth a legal conclusion to which no response is required. To the extent a response is required, Defendant denies that it breached the covenant of good faith and fair dealing and denies that it caused Plaintiff any damages.**

163.    Mr. Donnelly thus asks this Court to award him damages sufficient to make him whole and compensate him for work he performed pursuant to the ProPharma Offer,

**THIS DOCUMENT IS A CONFIDENTIAL FILING.
ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY COURT ORDER.**

consequentialdamages, and any and all other available remedies.

**RESPONSE: Paragraph 163 sets forth a legal conclusion to which no response is required. To the extent a response is required, Defendant denies that Plaintiff is entitled to any of the damages or other remedies Plaintiff requests.**

### COUNT IV
### BREACH OF FIDUCIARY DUTY

164.    All prior allegations are incorporated under Count IV, as if fully set forth herein.

**RESPONSE: Defendant incorporates by reference its response to the preceding paragraphs.**

165.    As a member of the Board of Managers, Mr. Farah owed fiduciary duties of care, loyalty and good faith to ProPharma shareholders whenever he communicated with shareholders about ProPharma's affairs within the scope of his duties as a Board member.

**RESPONSE: Paragraph 165 sets forth a legal conclusion to which no response is required. To the extent a response is required, admitted.**

166.    In September 2019, Mr. Farah and other members of the ProPharma Board knew that ProPharma was soliciting sales.

**RESPONSE: Denied.**

167.    In discussing the June 2019 Valuation with Mr. Donnelly in the context of the September 2019 Offer, Mr. Farah failed to provide Mr. Donnelly applicable market comparables or recent third party valuations of ProPharma.

**RESPONSE: Defendant admits that it provided Plaintiff with the June 2019 Valuation in connection with its September 2019 Offer. Otherwise, denied.**

### THIS DOCUMENT IS A CONFIDENTIAL FILING.
### ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY COURT ORDER.

168.   Mr. Farah breached his fiduciary duty by omitting material facts in discussions withMr. Donnelly regarding the fair market valuation of his Incentive Equity, and failing to undertakea good faith effort to determine the fair market valuation of his Incentive Equity.

**RESPONSE: Paragraph 168 sets forth a legal conclusion to which no response is required. To the extent a response is required, denied.**

169.   In failing to address applicable market comparables or recent third party valuationsof ProPharma, Mr. Farah further breached his fiduciary duty by failing to attain all the informationnecessary to make a proper valuation of Mr. Donnelly's Incentive Equity, and providing Mr. Donnelly with inaccurate information regarding the valuation of his Incentive Equity.

**RESPONSE: Paragraph 169 sets forth a legal conclusion to which no response is required. To the extent a response is required, denied.**

170.   As a Board member of ProPharma, Mr. Farah had a conflicting self-interest to provide Mr. Donnelly the lowest valuation of his Incentive Equity, because the lesser Mr. Donnelly's Incentive Equity, the more value available to the other shareholders and Board members after any future sale of ProPharma.

**RESPONSE: Paragraph 170 sets forth a legal conclusion to which no response is required. To the extent a response is required, denied.**

171.   Mr. Farah attempted to remove Mr. Donnelly from the Board effective August 31,2019 and pay Mr. Donnelly for his Incentive Equity at a valuation that he knew at the time was lower than the fair market value.

**RESPONSE: Defendant admits that it removed Plaintiff from the ProPharma Board**

**THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY COURT ORDER.**

**of Managers on August 31, 2019. Otherwise, denied.**

172.    By valuing Mr. Donnelly's Incentive Equity at an artificially lower valuation, Mr. Farah and the ProPharma Board of Managers attempted to deprive Mr. Donnelly of the value of his Incentive Equity, which escalated by the time ProPharma sold itself a year later.

**RESPONSE: Paragraph 172 sets forth a legal conclusion to which no response is required. To the extent a response is required, Defendant denies that it valued Plaintiff's Incentive Equity at a lower than appropriate valuation or otherwise deprived Plaintiff of the fair market value of his Incentive Equity.**

173.    This valuation scheme, had Mr. Donnelly accepted it, would have allowed Mr. Farah and the Board of Managers to get the benefit of a higher price at the time of a ProPharma sale, and would have artificially deflated the value of Mr. Donnelly's Incentive Equity.

**RESPONSE: Paragraph 173 sets forth a hypothetical factual contention, or a legal conclusion, to which no response is required. To the extent a response is required, denied.**

174.    Mr. Farah and the ProPharma Board of Managers breached their fiduciary duties by failing to calculate the valuation of Mr. Donnelly's Incentive Equity in good faith and by repurchasing Mr. Donnelly's Incentive Equity at a price well below market value.

**RESPONSE: Denied.**

175.    Mr. Farah and the ProPharma Board also took steps to deprive Mr. Donnelly of the benefit of his work on the Board of Managers.

**RESPONSE: Defendant admits that it removed Plaintiff from the ProPharma Board of Directors. Otherwise, denied.**

**THIS DOCUMENT IS A CONFIDENTIAL FILING.
ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY COURT
ORDER.**

176.    Since September 1, 2019, Mr. Donnelly was not allowed to participate in board meetings.

**RESPONSE: Defendant admits that as of September 1, 2019, Plaintiff no longer participated in meetings of the ProPharma Board. Otherwise, denied.**

177.    The attempt to notify Mr. Donnelly of his removal from the ProPharma Board on September 23, 2020 was a nullity, as Mr. Farah, acting as Authorized Signatory for Linden CapitalPartners III L.P. and Linden Capital Partners III-A L.P. did not have the authority to remove Mr. Donnelly from ProPharma's Board of Managers, as discussed in Paragraphs 102-120, *supra*.

**RESPONSE: Paragraph 177 sets forth a legal conclusion to which no response is required. To the extent a response is required, denied.**

178.    Mr. Donnelly and Mr. Thomas both occupied the same positions on the ProPharmaBoard and ProPharma affiliates.

**RESPONSE: Denied.**

179.    The reason provided to Mr. Donnelly for his attempted removal from the Board ofManagers in August 31, 2019 was a pretext when compared to Mr. Thomas.

**RESPONSE: Paragraph 179 sets forth a legal conclusion to which no response is required. To the extent a response is required, denied.**

180.    Despite being comparators, Mr. Farah and the ProPharma Board treated Mr. Thomas differently and never required or suggested that his multiple leadership roles posed anyconflict of interest that warranted removal from the ProPharma.

**RESPONSE: Denied.**

**THIS DOCUMENT IS A CONFIDENTIAL FILING.
ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY COURT
ORDER.**

181.    Mr. Donnelly has suffered damages as a direct and proximate cause of Mr. Farah's breach of his fiduciary duties of care, loyalty and good faith.

**RESPONSE: Paragraph 181 sets forth a legal conclusion to which no response is required. To the extent a response is required, Defendant denies that it – or Mr. Farah – breached its fiduciary duties of care, loyalty and good faith and denies that it caused Plaintiff any damages.**

182.    Mr. Donnelly thus asks this Court to award him damages sufficient to make himwhole, consequential damages, and any and all other available remedies.

**RESPONSE: Paragraph 182 sets forth a legal conclusion to which no response is required. To the extent a response is required, Defendant denies that Plaintiff is entitled to any of the damages or other remedies Plaintiff requests.**

<u>COUNT V</u>
**UNJUST ENRICHMENT**
**(PLED IN THE ALTERNATIVE TO COUNTS I AND II)**

183.    All prior allegations are incorporated under Count V, as if fully set forth herein.

**RESPONSE: Defendant incorporates by reference its response to the preceding paragraphs.**

184.    Mr. Donnelly's work and efforts in connection with his duties as a ProPharma Board member conferred a benefit to ProPharma.

**RESPONSE: Paragraph 184 sets forth a legal conclusion to which no response is required. To the extent a response is required, denied.**

185.    ProPharma realized the value of Mr. Donnelly's contribution in the form of theeventual $560 million sale price to Odyssey Investment Partners on September 30, 2020.

**THIS DOCUMENT IS A CONFIDENTIAL FILING.**
**ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY COURT**
**ORDER**.

**RESPONSE: Paragraph 185 sets forth a legal conclusion to which no response is required. To the extent a response is required, denied.**

186.   Mr. Donnelly's work as a ProPharma Board member was a significant factor in the growth, success and eventual sale of ProPharma.

**RESPONSE: Denied.**

187.   Despite Mr. Donnelly's contributions to Defendant, ProPharma has not paid Mr. Donnelly his Donnelly Base Compensation since April 18, 2019.

**RESPONSE: Plaintiff admits that it has not paid Plaintiff his Base Compensation since April 18, 2019, but denies that Plaintiff had earned such demanded amounts and denies that such sums are payable under the Offer Letter or otherwise.**

188.   Mr. Donnelly remained a ProPharma Board member until the company was soldon September 30, 2020.

**RESPONSE: Paragraph 188 sets forth a legal conclusion to which no response is required. To the extent a response is required, denied.**

189.   ProPharma has not paid Mr. Donnelly his Donnelly Base Compensation since April19, 2019.

**RESPONSE: Plaintiff admits that it has not paid Plaintiff his Base Compensation since April 18, 2019, but denies that Plaintiff had earned such demanded amounts and denies that such sums are payable under the Offer Letter or otherwise.**

190.   On or about November 4, 2019, ProPharma paid Mr. Donnelly for his ProPharma Incentive Equity units at the June 2019 Valuation, a valuation intentionally below the fair market value.

**THIS DOCUMENT IS A CONFIDENTIAL FILING.
ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY COURT
ORDER**.

**RESPONSE: Defendant admits that it sent Plaintiff a payment for his Incentive Equity based on the June 2019 Valuation, but denies that such payment was made on November 4, 2019 or that such payment was below fair market value.**

191.   ProPharma's attempts to remove Mr. Donnelly from the Board on September 23, 2020 were in bad faith and intended to deprive Mr. Donnelly of his full equity.

**RESPONSE: Paragraph 191 sets forth a legal conclusion to which no response is required. To the extent a response is required, denied.**

192.   Mr. Donnelly has not been compensated for his work and efforts in connection withachieving the eventual $560 million sale price to Odyssey Investment Partners.

**RESPONSE: Defendant admits that it has not paid Plaintiff additional amounts following the eventual sale of ProPharma in September 2020, but denies that Plaintiff is entitled to such compensation under the Offer Letter, the IEA, or otherwise.**

193.   ProPharma had an equitable duty to pay Mr. Donnelly for the fair market value of his ProPharma Incentive Equity.

**RESPONSE: Paragraph 193 sets forth a legal conclusion to which no response is required. To the extent a response is required, denied.**

194.   To date, Mr. Donnelly has not received any contributions to his ProPharma Incentive Equity units on the MOIC that ProPharma achieved at the time of Mr. Donnelly's separation, or that are reflected in the sale price to Odyssey Investment Partners.

**RESPONSE: Defendant admits that it has not paid Plaintiff additional compensation for his Incentive Equity Units, but denies that Plaintiff is entitled to such compensation under the Offer Letter, the IEA, or otherwise.**

**THIS DOCUMENT IS A CONFIDENTIAL FILING.
ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY COURT
ORDER**.

195.    Mr. Donnelly expected to receive his Donnelly Base Compensation and the fair market value of his ProPharma Incentive Equity units.

**RESPONSE: Defendants lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 195, and therefore denies them.**

196.    ProPharma refuses to pay Mr. Donnelly either his earned Donnelly Base Compensation or the fair market value of his ProPharma Incentive Equity units.

**RESPONSE: Defendant admits that it refuses to pay the amounts Plaintiff has demanded, but denies that Plaintiff had earned such amounts and denies that such demanded amounts are payable under the Offer Letter, IEA, or otherwise.**

197.    ProPharma has retained monies owed to Mr. Donnelly under the ProPharma Offerin the form of his earned Donnelly Base Compensation and the fair market value of his ProPharmaIncentive Equity units.

**RESPONSE: Paragraph 197 sets forth a legal conclusion to which no response is required. To the extent a response is required, denied.**

198.    ProPharma should have reasonably expected to pay Mr. Donnelly his earned Donnelly Base Compensation and the fair market value of his ProPharma Incentive Equity units after completing its sale to Odyssey Investment Partners.

**RESPONSE: Paragraph 198 sets forth a legal conclusion to which no response is required. To the extent a response is required, denied.**

199.    Principles of justice, equity and good conscience demand that ProPharma not be allowed to retain the funds owed to Mr. Donnelly for his earned Donnelly Base Compensation andthe fair market value of his ProPharma Incentive Equity units.

**THIS DOCUMENT IS A CONFIDENTIAL FILING.**
**ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY COURT**
**ORDER.**

**RESPONSE: Paragraph 199 sets forth a legal conclusion to which no response is required. To the extent a response is required, denied.**

200.    Accordingly, ProPharma must disgorge the amounts payable for his Donnelly BaseCompensation and the fair market value of his ProPharma Incentive Equity units that it has retainedas they are justly owed to Mr. Donnelly.

**RESPONSE: Paragraph 200 sets forth a legal conclusion to which no response is required. To the extent a response is required, Defendant denies that Plaintiff is entitled to any of the damages or other remedies Plaintiff requests.**

WHEREFORE, Plaintiff seeks an award of compensatory damages up to $1,500,000, or an amount to be proven at trial, from Defendant, pre- and post-judgment interest at the lawful ratepursuant to S.C. Code § 34-31-20, attorneys' fees pursuant to S.C. Code § 15-37-10, costs pursuantto S.C. Code § 15-37-20, and such further relief as this Court deems appropriate.

**RESPONSE: Plaintiff's request for relief sets forth a legal conclusion to which no response is required. To the extent a response is required, Defendant denies that Plaintiff is entitled to any of the damages or other remedies or relief Plaintiff requests.**

<u>**JURY DEMAND**</u>

Plaintiff demands a trial by jury on all issues which may be tried by jury.

**RESPONSE: Plaintiff's jury demand sets forth a legal conclusion to which no response is required. To the extent a response is required, denied**.

<u>**AFFIRMATIVE DEFENSES**</u>

1. Plaintiff's Complaint fails to state claims for which relief may be granted.

2. Plaintiff's claims are barred in whole or in part by laches.

## THIS DOCUMENT IS A CONFIDENTIAL FILING.
## ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY COURT ORDER.

3.  Plaintiff's claims are barred in whole or in part by waiver.

4.  Plaintiff's claims are barred in whole or in part by unclean hands.

5.  Plaintiff's claims are barred in whole or in party by estoppel.

6.  Plaintiff's claims are barred in whole or in part by accord and satisfaction.

7.  Plaintiff's claims are barred in whole or in part by payment.

Dated December 3, 2021

OF COUNSEL:

Jonathan E. Missner                    */s/ Susan Hannigan*
Robert B. Gilmore                      Susan M. Hannigan (#5342)
Philip J. O'Beirne                     Katharine L. Mowery (#5629)
Kevin L. Attridge                      Ryan D. Konstanzer (#6558)
Samantha Christensen                   Richards, Layton & Finger, P.A.
Stein Mitchell Beato & Missner LLP     One Rodney Square
901 15th Street NW                     920 North King Street
Suite 700                              Wilmington, Delaware 19801
Washington, D.C. 20005                 (302) 651-7700
(202) 737-7777                         hannigan@rlf.com
jmissner@steinmitchell.com             mowery@rlf.com
rgilmore@steinmitchell.com             konstanzer@rlf.com
pobeirne@steinmitchell.com
kattridge@steinmitchell.com
schristensen@steinmitchell.com

                                       *Attorneys for Defendant ProPharma*
                                       *Topco, LLC*

Dated: December 3, 2021

**THIS DOCUMENT IS A CONFIDENTIAL FILING.**
**ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY COURT**
**ORDER**.

**THIS DOCUMENT IS A CONFIDENTIAL FILING.**
**ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY COURT**
**ORDER**.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on December 3, 2021, true and correct copies of the

foregoing were caused to be served on the following counsel of record:

**BY ELECTRONIC MAIL**:          **BY ELECTRONIC MAIL**:
John Anderson Sensing            Nicholas D. SanFilippo
Jesse Leon Noa                   Daniel C. Masakayan
Potter, Anderson & Corroon, LLP  McGuireWoods
1313 N. Market Street            1750 Tysons Boulevard
Hercules Plaza, 6th Floor         Suite 1800
Wilmington, Delaware 19899       Tysons, Virginia 22102-4215
jsensing@potteranderson.com      nsanfilippo@mcguirewoods.com
jnoa@potteranderson.com          dmasakayan@mcguirewoods.com


                                 */s/ Susan M. Hannigan*
                                 Susan M. Hannigan (#5342)