**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

PATRICK K. DONNELLY

          *Plaintiff,*

v.

PROPHARMA GROUP TOPCO, LLC,


          *Defendant.*

C.A. No. 21-894-MAK

**DEFENDANT PROPHARMA GROUP TOPCO, LLC'S MEMORANDUM**
**IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................. 1

RELEVANT FACTUAL BACKGROUND ..................................................................... 1

    A.  The Parties ................................................................................................... 1

    B.  Donnelly Joins the ProPharma Board of Managers. ..................................... 2

    C.  Donnelly Becomes CEO of Advarra and Suggests He Leave the ProPharma Board... 4

    D.  Donnelly's Service on the ProPharma Board of Managers Terminates. ..................... 5

    E.  Repurchase Discussions Ensue. .................................................................. 5

LEGAL STANDARD ...................................................................................................... 8

ARGUMENT ................................................................................................................... 8

I.   Because Donnelly's Service on the ProPharma Board of Managers Ended as of August 31, 2019, He is Entitled to No Additional Base Compensation (Count I) or Payments For Unvested Incentive Equity (Count II). ................................................................. 9

    A.  Donnelly's Service on ProPharma's Board Ended By August 31, 2019. ..................... 9

    B.  The Termination of Donnelly's Board Service as of August 31, 2019 Defeats his Contract Claim for Further Base Compensation (Count I). ........................................ 17

    C.  The Termination of Donnelly's Board Service as of August 31, 2019 Defeats his Contract Claim Seeking Payment for Unvested Incentive Equity (Count II). ............. 17

II.  Any Claim in Count II for additional payment for Donnelly's vested shares is Equitably Barred by the Doctrine of Accord and Satisfaction. ......................................................... 18

III. Counts III, IV, and V Fail As a Matter of Law. ................................................................. 20

    A.  Donnelly's Claims of Breach of the Implied Covenant of Good Faith and Fair Dealing and Breach of Fiduciary Duty Are Duplicative of His Breach of Contract Claims. .. 20

    B.  The Parties' Contracts and Donnelly's Own Admissions Foreclose His Unjust Enrichment Claim. .................................................................................................. 23

CONCLUSION .............................................................................................................. 25

## Table of Authorities

**Cases**

*Acierno v. Worthy Bros. Pipeline Corp.*,
　　656 A.2d 1085 (Del. 1995) ................................................................................ 19

*Acierno v. Worthy Bros. Pipeline Corp.*,
　　693 A.2d 1066 (Del. 1997) ................................................................................ 19

*Albert v. Alex. Brown Mgmt. Servs., Inc.*,
　　No. CIV.A. 762-N, 2005 WL 2130607 (Del. Ch. Aug. 26, 2005) .......................... 24

*Anderson v. Liberty Lobby, Inc.*,
　　477 U.S. 242 (1986) ........................................................................................... 8

*Biolase, Inc. v. Oracle Partners, L.P.*,
　　97 A.3d 1029 (Del. 2014) ................................................................................... 14

*Brooks v. Kyler*,
　　204 F.3d 102 (3d Cir. 2000) ................................................................................. 8

*Celotex Corp. v. Catrett*,
　　477 U.S. 317 (1986) ............................................................................................ 8

*DG BF, LLC v. Ray*,
　　No. CV 2020-0459-MTZ, 2021 WL 776742 (Del. Ch. Mar. 1, 2021) ..................... 10

*Dunlap v. State Farm Fire & Cas. Co.*,
　　878 A.2d 434 (Del. 2005) .................................................................................... 21

*Franco v. Avalon Freight Servs. LLC*,
　　No. CV 2020-0608-MTZ, 2020 WL 7230804 (Del. Ch. Dec. 8, 2020) ............... 9, 10

*General Video Corporation v. Kertesz*, 2008 WL 5247120 (Del. Ch. Dec. 17, 2008) ................ 17

*Gorman v. Salamone*,
　　2015 WL 4719681 (Del. Ch. July 31, 2015) .......................................................... 15

*Hirsch v. S. Berger Import & Mfg. Corp.*,
　　67 A.D. 2d 30 (N.Y. App. 1979) .......................................................................... 19

*Hockessin Cmty. Ctr., Inc. v. Swift*,
　　59 A.3d 437 (Del. Ch. 2012) ............................................................................... 15

*Klaassen v. Allegro Dev. Corp.*,
　　82 A.3d 730 (Del. 2013) ...................................................................................... 16

*Klaassen v. Allegro Dev. Corp.*,
106 A.3d 1035 (Del. 2014) ................................................................. 16

*Klaassen v. Allegro Dev. Corp.*,
No. CV 8626-VCL, 2013 WL 5739680 (Del. Ch. Oct. 11, 2013)........................................... 16

*Llamas v. Titus*,
No. CV 2018-0516-JTL, 2019 WL 2505374 (Del. Ch. June 18, 2019) ................................... 14

*Madison Realty Co. v. AG ISA, LLC*,
2001 WL 406268 (Del. Ch. Apr. 17, 2001) ............................................................. 22

*Nemec v. Shrader*, No. CIV.A. 3878-CC,
2009 WL 1204346 (Del. Ch. Apr. 30, 2009) ............................................... 20, 22, 23

*Nemec*,
991 A.2d ............................................................................................................... 23

*Obeid v. Hogan*,
No. CV 11900-VCL, 2016 WL 3356851 (Del. Ch. June 10, 2016) ................................ 10, 14

*Occidental Chem. Corp. v. Env't Liners, Inc.*,
859 F. Supp. 791 (E.D. Pa. 1994) ........................................................................... 19

*Salamone v. Gorman*,
106 A.3d 354 (Del. 2014) ...................................................................................... 10

*Sanders v. USM Corp.*,
No. 11690, 1984 WL 7644 (Ohio Ct. App. Dec. 5, 1984)........................................... 19

*SodexoMAGIC, LLC v. Drexel Univ.*,
24 F.4th 183 (3d Cir. 2022) ..................................................................................... 8

*Superior Vision Services, Inc. v. ReliaStar Life Ins. Co.*,
No. CIV.A. 1668-N, 2006 WL 2521426 (Del. Ch. Aug. 25, 2006) .......................... 21

*Ventures, Inc. v. Res. Mgmt. Int'l, Inc.*,
42 F. Supp. 2d 423 (D. Del. 1999)................................................................... 23, 24

## **Statutes**

6 *Del. C.* § 18-402................................................................................................ 1

## **Rules**

Fed. R. Civ. P. 56(a) .............................................................................................. 8

## INTRODUCTION

The undisputed facts and binding law entitle ProPharma to summary judgment on each of Plaintiff's claims.

- Donnelly alleges that he was never terminated from the ProPharma Board of Managers, but the relevant ProPharma investors signed a Board removal document doing just that. And just four days following his removal, Donnelly himself stated in writing "I am no longer on the ProPharma Board." Donnelly reaffirmed his understanding that his Board service had terminated when, in July 2020 and four months prior to filing this action, he represented to third parties that his tenure on the ProPharma Board ended in 2019.

- Donnelly alleges that ProPharma is required to pay him additional amounts for his incentive equity shares in ProPharma. Yet at his deposition, Donnelly admitted that as of fall 2019 only 40% of his time vesting shares had vested under his IEA and no liquidity event had been consummated which would have triggered the vesting of his performance shares under his IEA.

- In November 2019, ProPharma paid, and Donnelly accepted, the value of his vested shares, fully resolving the parties' dispute. Donnelly comingled that payment with his other funds and retains it to this day. The doctrine of accord and satisfaction thus bars his claims.

- Donnelly alleges unjust enrichment, breach of fiduciary duty, and breach of the implied covenant of good faith and fair dealing claims. Yet as a matter of law, each of these claims are foreclosed by his contracts with ProPharma, which govern the parties' relationship.

## RELEVANT FACTUAL BACKGROUND

### A. The Parties

Donnelly is an experienced healthcare executive who has worked in the medical device and pharmaceutical development fields for more than 30 years.[1] ProPharma is a Delaware limited liability company with its principal office located in Overland Park, KS. Since its founding in 2001, ProPharma has grown to become a leading global provider of regulatory, medical information, and compliance consulting services to customers in the pharmaceutical, biotechnology, and medical device industries.

---

[1] First Amended Complaint, filed October 27, 2021 (D.I. 61), ¶ 14 ("Am. Compl.").

1

**B. Donnelly Joins the ProPharma Board of Managers.**

On September 30, 2016, ProPharma was acquired by Linden Capital Partners ("Linden"), a Chicago-based private equity firm. Donnelly was then serving as a consultant to Linden on potential transactions, including the acquisition of ProPharma. After the acquisition, ProPharma and Linden formally extended an "Offer to Join the Board of Directors" to Donnelly, which he accepted and executed on October 31, 2016 ("Board Offer").[2] In fact, Donnelly entered into a series of three agreements with ProPharma, each of which contemplates terms in the next.

Pursuant to the terms of the first agreement, the Board Offer, Donnelly agreed to attend four quarterly Board meetings and one strategic growth meeting each year for as long as Donnelly remained on the ProPharma Board of Managers (the "Board").[3] In exchange, Donnelly would receive four quarterly payments totaling $37,500 per year ("Base Compensation") and "incentive equity units" (shares) in the company which were "subject to time and performance-based vesting provisions and subject to customary repurchase provisions."[4]

Donnelly's service on the ProPharma Board was governed by the September 30, 2016 ProPharma Amended and Restated Limited Liability Agreement ("LLC Agreement"), the company's central operating agreement. The LLC Agreement established the initial composition of the ProPharma Board, and specifically named Donnelly as one of "Three (3) Managers designated by the Linden Investors" to serve on the ProPharma Board effective September 30, 2016.[5] The LLC Agreement also contemplates the issuance of incentive equity units to Board

---

[2] Ex. 1, Offer to Join the Board of Directors, A000002 ("Board Offer").
[3] Ex. 1, Board Offer, at A000005.
[4] *Id*. at A000002.
[5] Ex. 2, ProPharma Amended & Restated LLC Agreement dated September 30, 2016, at A000040 ("LLC Agreement").

Managers,[6] and includes terms governing Board service, including termination of Managers via removal or resignation.[7] Concerning removal, the LLC Agreement provides:

> "<u>Term</u>. Each Manager appointed shall serve until a successor is appointed in accordance with the terms hereof **or his or her earlier resignation, death or removal**. Any Linden Manager or Independent Manager will be **removed** from the Board, with or without cause, **at the written request of the Linden Investors** entitled to appoint such Linden Manager or Independent Manager pursuant to this <u>Section 5.2</u>."[8]

The "Linden Investors" empowered to remove Donnelly—unilaterally and without cause—are elsewhere enumerated as "ProPharma Group Buyer, LLC" and "ProPharma Group Splitter, LP" and "any of their Affiliates and any of their respective Transferees."[9]

As expressly contemplated by both the Board Offer and the LLC Agreement, Donnelly and ProPharma entered into a third agreement, the Management Incentive Equity Agreement ("IEA") dated January 18, 2017. Under the IEA, Donnelly could obtain as many as 8,046.365 incentive equity units in ProPharma; 2,011.591 incentive units (25%) would automatically vest in equal increments over time, "if (but only if)" Donnelly was "still employed by or providing services to the Company" on each "Anniversary Date" ("Time Vesting Units").[10] The remaining 6,034.774 units (75%) would vest if Donnelly was continuously employed by or providing services "… through the consummation of a Liquidity Event" ("Performance Vesting Units").[11] The IEA also provided that in the event of Donnelly's "Termination for any reason" two things occur: (1) "all or any portion of the **vested** Management Incentive Units … will be subject to repurchase[,]" and

---

[6] Ex. 2, LLC Agreement, at A000029.
[7] *See generally* Ex. 2, LLC Agreement, at A000037–43.
[8] *Id.* at A000040–41. Emphasis is added throughout this brief unless otherwise indicated.*See also* Ex. 1, Board Offer, at A00002 (contemplating termination "for any reason").
[9] "Linden Investors" is technically defined as "Linden Buyer" and "Linden Splitter" terms which are further defined as "ProPharma Group Buyer, LP" and "ProPharma Group Splitter, LP." Ex. 2, LLC Agreement, at A000016–17.
[10] Ex. 3, Management Incentive Unit Agreement dated January 18, 2017, at A000089 ("IEA").
[11] Ex. 3, IEA, at A000089.

(2) "all of the **_unvested_** Management Incentive Units […] shall **_<u>automatically</u>_** be forfeited, effective as of the Termination Date, without any action on the part of [Donnelly] or [ProPharma] and without any consideration payable to [Donnelly][.]"[12]

### C. Donnelly Becomes CEO of Advarra and Suggests He Leave the ProPharma Board.

On November 7, 2017, Donnelly was named Chief Executive Officer of Advarra, another portfolio company owned by Linden.[13] After Donnelly became CEO of Advarra, Donnelly voluntarily recused himself from ProPharma Board discussions on several occasions, citing potential conflicts of interest occasioned by his new role at Advarra. For instance, in an email dated March 9, 2018, Donnelly suggested to Pro-Pharma's then-CEO Jeff Hargroves that "it might not be appropriate for [him] to engage in [ProPharma] M&A conversations going forward with [his] new role at Advarra."[14] Mr. Hargroves agreed, stating "it seems like there is an inappropriate amount of overlap."[15] Similarly, in an email dated January 25, 2019, Donnelly recused himself from participating in ProPharma's acquisition of the Weinberg Group premised on the same concern.[16] At various times, ProPharma CEOs Jeff Hargroves and later Dawn Sherman likewise believed that Donnelly's continued Board role presented problems for the Company should he continue to serve concurrently as Advarra CEO.[17] Indeed, Donnelly repeatedly told Tony Davis (Linden's Managing Partner and a ProPharma Board member) and Michael Farah (Chairman of ProPharma's Board) that Donnelly believed he should leave the ProPharma Board.[18]

---

[12] Ex. 3, IEA, at A000090.
[13] Ex. 11, Transcript of Oct. 21, 2022, Deposition of Patrick K. Donnelly, at A000152–153 ("Donnelly Dep.").
[14] *See* Ex. 4, at A000105.
[15] *Id.*
[16] *See* Ex. 5, at A000108.
[17] *See* Ex. 6, A000110; *see also* Ex. 7, at A000112.
[18] Ex. 8, Transcript of Sept. 12, 2022, Deposition of T. Davis, at A000122–23("Davis Dep."); Ex. 9, Transcript of Sept. 14, 2022, Deposition of M. Farah at A000136–37, A000138("Farah Dep.").

### D.  Donnelly's Service on the ProPharma Board of Managers Terminates.

By June 2019, Linden and ProPharma agreed with Donnelly that he should be removed from ProPharma's Board.[19] Mr. Davis called Donnelly to explain that Donnelly's concurrent roles on the ProPharma Board and CEO of Advarra could lead to potential conflicts of interest, necessitating Donnelly's removal.[20] Donnelly agreed.[21] Following this conversation, Mr. Davis and then-Board Chairman Michael Farah signed a memorandum on June 27, 2019 removing Donnelly from the ProPharma Board.[22] Four days later, on July 1, 2019, Donnelly acknowledged his removal in an email to Mr. Farah and his assistant, Brianna Loverich, stating "I am no longer on the ProPharma Board."[23] On the same day, Donnelly declined the calendar invitation to attend the "2019 Q2 ProPharma Board Dinner."[24] As of September 1, 2019, Donnelly no longer received Board materials or invitations to Board meetings, and Donnelly ceased performing Board duties.[25] Donnelly informed third parties that he was "*previously* on the ProPharma Board" during 2020.[26] For instance, in an email dated July 16, 2020, Donnelly sent an updated *curriculum vitae* to Summit Partners which listed his tenure on the ProPharma Board of Managers as "2016–**2019**."[27]

### E.  Repurchase Discussions Ensue.

As of August 2019, which was months shy of the third anniversary of Donnelly's IEA, only 40% (804.6364) of Donnelly's time-vesting shares had vested.[28] Given that no sale of

---

[19] Ex. 8, Davis Dep., at A000118, A000119, A000121, A000122; Ex. 9, Farah Dep., at A000133.

[20] Ex. 10, at A000147. Ex. 8, Davis Dep., at A000122–123, A000125; Ex. 11, Donnelly Dep., at A000161.

[21] Ex. 11, Donnelly Dep., at A000162.

[22] *See* Ex. 12, at A000198–201.

[23] Ex. 13, at A000203.

[24] Ex. 14, at A000206.

[25] Am. Compl. ¶¶ 101–102; Ex. 11, Donnelly Dep. at A000188.

[26] Ex. 15, at A000208.

[27] Ex. 16, at A000218.

[28] Ex. 3, IEA, at A000089; *see also* Ex. 11, Donnelly Dep., at A000167; *see also id.* at A000173; A000182; *id.* at A000178.

ProPharma had occurred[29]—and would not occur for more than a year[30]—**none** of Donnelly's performance-vesting units had vested under the IEA.[31] As a consequence of his termination, the remainder of the unvested time shares and all the unvested performance shares were forfeited.[32]

Even so, as a gesture of good will, ProPharma offered to vest and then repurchase additional **unvested** time **and** performance shares. On September 4, 2019, Mr. Davis, on behalf of ProPharma, extended an offer to repurchase Donnelly's incentive equity as contemplated by both his Board Offer and the IEA.[33] This offer was memorialized in a draft Repurchase Agreement which reaffirmed (1) Donnelly's termination from the Board and (2) the resulting forfeiture of Donnelly's unvested shares:

> WHEREAS, the Investor's employment with and service to the Company and its Subsidiaries terminated on August 31, 2019 (the "Separation Date");
>
> WHEREAS, on the Separation Date, 804.6364 Management Incentive Units were vested and 7,241.7286 Management Incentive Units were unvested; […]
>
> WHEREAS, pursuant to the terms of the Issuance Agreement, the unvested Management Incentive Units were automatically forfeited and ceased to be outstanding effective as of the Separation Date; […].[34]

In this draft agreement, ProPharma offered to vest (and then repurchase) an additional 402.3182 Time Vesting Units and 4,023.384 Performance Vesting Units from Donnelly—**more than five times** what he was entitled to under the contracts:

> WHEREAS, the Board has determined to accelerate the vesting of an additional 402.3182 Time Vesting Units and 4,023.384 Performance Vesting Units, effective as of the Separation Date (together with the 804.6364 Management Incentive Units that were vested as of the Separation Date…)[35]

---

[29] Ex. 11, Donnelly Dep., at A000168; *see also id.* at A000182; A000180.

[30] *See* Am. Compl. ¶¶ 21, 79, 125.

[31] Ex. 3, IEA, at A000089–90.

[32] Ex. 3, IEA, at A000090.

[33] Ex. 18, at A000227–33; Ex. 1, Board Offer, at A000002; *see also* Am. Compl. ¶ 53.

[34] Ex. 18, at A000227–33.

[35] *Id.*

ProPharma's offered share repurchase price was taken directly from the most recent internal valuation of the company by Linden.[36] In response, Donnelly neither contested his removal from the ProPharma Board, nor the explicit statements that only 804.63.64 of his time-vesting shares had vested and none of his performance shares.[37] Rather, Donnelly merely asked for the data supporting the $130.78 per unit price ProPharma offered for his shares, which Linden provided.[38]

At the time, as described in his Amended Complaint, Donnelly apparently disagreed with the share valuation provided by Linden.[39] Mr. Farah re-sent ProPharma's offer on October 18, 2019[40] and again on November 5, 2019,[41] each time reiterating that although Donnelly was only contractually entitled to approximately 800 shares, ProPharma was willing to vest more than five times that amount.[42] Mr. Farah was clear in the last offer, in November 2019, that if Donnelly did not sign the share repurchase agreement, ProPharma would wire Donnelly $105,227.97 as full payment for the 804.6364 Time Vesting Units, the sole equity that had vested prior to Donnelly's removal from the Board.[43] Donnelly never signed the agreement and thus on November 11, 2019 ProPharma sent a letter (and accompanying wire transfer)[44] reiterating that the payment "fulfill[ed] [ProPharma's] legal obligations to Donnelly's in full."[45] Donnelly received this payment and never responded to ProPharma's letter disputing that the payment satisfied ProPharma's obligations,[46]

---

[36] Ex. 19, at A000235–6.

[37] Ex. 20, at A000239–41; Ex. 11, Donnelly Dep., at A000176.

[38] Ex. 19, at A000235–237. The September 2019 Repurchase Offer was based on an internal quarterly valuation of ProPharma as of June 30, 2019 which valued all incentive equity units at $131.78 per unit. *See* Ex. 21 (Filed Under Seal).

[39] Am. Compl. ¶¶ 62–64, 66–68.

[40] Ex. 22, at A000244–51.

[41] Ex. 23, at A000253–60.

[42] Donnelly concedes that ProPharma offered to repurchase additional incentive equity shares that he was otherwise not entitled to under his IEA.  Ex. 11, Donnelly Dep., at A000182, A000181.

[43] Ex. 23, at A000253–260.

[44] Ex. 24, at A000263.

[45] Ex. 25, at A000266–269.

[46] Ex. 11. Donnelly Dep., at A000187.

and to this day has never attempted to return these funds.[47] Donnelly recently admitted that he received this money into a personal account and comingled it with other funds.[48]

## LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). *See also Brooks v. Kyler*, 204 F.3d 102, 105 n.5 (3d Cir. 2000). The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48 (1986). "[F]or a factual dispute to be material, its resolution must have the potential to affect the outcome of the suit." *SodexoMAGIC, LLC v. Drexel Univ.*, 24 F.4th 183, 203 (3d Cir. 2022) (citing *Anderson*, 477 U.S. at 248). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (internal citations omitted). Finally, where the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to [its] case, and on which [it] will bear the burden of proof at trial[,]" then summary judgment is appropriate. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## ARGUMENT

Donnelly brings two breach of contract claims premised on the argument that he somehow remained on the ProPharma Board through September 30, 2020, when Odyssey Investment Partners purchased ProPharma. Based on this argument, he seeks additional payments of his base compensation under the ProPharma Offer (Count I) and additional compensation for the full amount of time-vesting and incentive equity shares under the IEA (Count II). Donnelly then

---

[47] *Id.* at A000187.
[48] *Id.* at A000195–196.

8

repackages these contract claims as claims for breach of the covenant of good faith and fair dealing (Count III), breach of fiduciary duty (Count IV), and unjust enrichment (Count V).

As detailed herein, ProPharma is entitled to summary judgment on each of Donnelly's claims. First, there is no genuine issue of disputed fact that Donnelly last performed any Board service in June 2019 and was formally terminated from the ProPharma Board effective no later than August 31, 2019, defeating his claim for further base compensation under Count I or payment for unvested incentive equity under Count II. Second, Donnelly accepted payment for all incentive equity shares that had vested as of his Board termination, defeating his claim for additional payments for vested shares under Count II. Third, summary judgment is warranted on Counts III, IV and V because they are foreclosed by Donnelly's contract claims and fail as a matter of law.

I.   **BECAUSE DONNELLY'S SERVICE ON THE PROPHARMA BOARD OF MANAGERS ENDED AS OF AUGUST 31, 2019, HE IS ENTITLED TO NO ADDITIONAL BASE COMPENSATION (COUNT I) OR PAYMENTS FOR UNVESTED INCENTIVE EQUITY (COUNT II).**

   **A.   Donnelly's Service on ProPharma's Board Ended, at the Latest, as of August 31, 2019.**

Donnelly suggested that he come off the ProPharma Board, was removed from the Board, stated in writing he was no longer on the Board, ceased engaging in any Board activities, and told third parties he was no longer on the Board. There is no genuine issue of material fact: Donnelly was no longer on the Board as of August 31, 2019.

   **1.   The ProPharma Board validly removed Donnelly under the ProPharma LLC Agreement.**

In disputes among constituencies in an LLC "the starting (and end) point almost always is the parties' bargained-for operating agreement, and the court's role in these disputes is to interpret the contract and effectuate the parties' intent." *Franco v. Avalon Freight Servs. LLC*, No. CV 2020-0608-MTZ, 2020 WL 7230804, at *2 (Del. Ch. Dec. 8, 2020) (internal quotations and citations omitted). Therefore, "[i]n interpreting LLC agreements, Delaware courts treat them as any other

contract, aiming to 'give priority to the parties' intentions as reflected in the four corners of the agreement, construing the agreement as a whole and giving effect to all its provisions." *Id.* (citing *Salamone v. Gorman*, 106 A.3d 354, 368 (Del. 2014)). "It is frequently observed that LLCs 'are creatures of contract,' which they primarily are. The Delaware Limited Liability Company Act (the "LLC Act") provides that it is the policy of this chapter to give maximum effect to the principle of freedom of contract and to the enforceability of limited liability company agreements." *Obeid v. Hogan*, No. CV 11900-VCL, 2016 WL 3356851, at *5 (Del. Ch. June 10, 2016) (internal quotations and citations removed).

Accordingly, where an LLC agreement expressly provides a process for the removal of board members, courts will not second guess the process or imply additional procedural requirements. *See e.g.*, *DG BF, LLC v. Ray*, No. CV 2020-0459-MTZ, 2021 WL 776742, at *16 (Del. Ch. Mar. 1, 2021) (holding that where an LLC Agreement "already provides for a specific process by which a . . . Manager may be removed[] [t]here is no gap to fill, and an implied term would limit and alter that express process."). Indeed, Delaware's LLC Act unequivocally states: "a manager shall cease to be a manager **as provided in a limited liability company agreement.**" 6 *Del. C.* § 18-402 (emphasis added).

Here, the ProPharma LLC agreement explicitly provides a process for Donnelly's removal and the Court need look no further than the four corners of that agreement. Under the LLC Agreement, the "Linden Investors" (defined as ProPharma Group Buyer, LLC and ProPharma Group Splitter, LP) may remove Donnelly from the Board "with or without cause." Donnelly does not dispute this fact.[49] Indeed, Donnelly's Amended Complaint addresses in detail the right of ***these specific entities*** to remove him from the Board under the LLC Agreement.[50] On June 27,

---

[49] *See* Am. Compl. ¶¶ 114, 118.
[50] *See* Am. Compl. ¶¶ 114–120.

2019, Michael Farah (on behalf of ProPharma Group Buyer, LLC) and Tony Davis (on behalf of ProPharma Group Splitter, LP) signed the Removal Memo by which "Patrick Donnelly [was] removed as a Manager on the Board."[51] The removal confirms that the written consent "will have the same force and effect as if taken at a special meeting of the Linden Investors and Majority Linden Investors duly called and constituted pursuant to the Limited Liability Company Agreement and the laws of the State of Delaware."[52] Under the straightforward application of the removal provision of the LLC Agreement, this document removed Donnelly from the Board of ProPharma.

Donnelly has admitted that (1) he and Mr. Davis discussed Linden's belief that Donnelly needed to be removed from the Board (2) based on potential conflicts Donnelly himself acknowledges existed.[53] Four days following the execution of the Removal Memo, on July 1, 2019, Donnelly confirmed in writing, in an email addressed to then-Board Chairman Michael Farah and Mr. Farah's administrative assistant, Brianna Loverich, Donnelly unequivocally stated "I am no longer on the ProPharma Board so I will not be attending [the next ProPharma Board of Managers meeting]."[54] As Donnelly himself testified, he stopped performing any Board functions[55] and no longer received Board invitations, Board materials, or attended Board meetings.[56] As Donnelly candidly admitted at his deposition: "Isn't it true that your ProPharma Board service terminated in 2019? A. My service and the ability to do that did, as I was instructed by Tony and also Mike Farah."[57]

---

[51] Ex. 12, at A000200–201.
[52] *Id.* at A000200.
[53] Ex. 11, Donnelly Dep., at A000155.
[54] Ex. 13, at A000203.
[55] Ex. 11, Donnelly Dep., at A000188–189, A000192.
[56] Am. Compl. at ¶¶ 101, 102; *see also* Ex. 11, Donnelly Dep., at A000188; *see also id.* at A000174.
[57] Ex. 11, Donnelly Dep., at A000189.

## 2. Donnelly's consent was not required under the LLC Agreement or Delaware law.

Donnelly's sole effort to avoid the consequences of his removal is to argue that he could not be removed from the Board without his consent, either to the removal itself or the valuation of whatever equity had vested as of the time of removal. Donelly alleges:

> 51. At no time during these negotiations did Mr. Donnelly agree to leave his position as a ProPharma Board Member before resolution of the valuation of his ProPharma Incentive Equity. […]

> 91. Mr. Donnelly did not agree that there was a conflict of interest and did not agree to his removal or step down from the Board.

> 92. Mr. Donnelly told Mr. Davis that any departure would be subject to parties coming to an agreement on the proper valuation of his Incentive Equity. […]

> 100. Prior to September 23, 2020, ProPharma did not ever otherwise inform Mr. Donnelly that he was no longer a ProPharma Board member.[58]

As a threshold matter, discovery has shown that these factual allegations are demonstrably false. Donnelly admitted that potential conflicts existed (and even recused himself).[59] And Donnelly further admitted[60] that the repurchase agreements for his equity, sent to Donnelly in September, October and November 2019, each time expressly stated "WHEREAS the investor's employment with and service to the company and its subsidiaries *terminated on August 31st, 2019.*"[61] The allegation in paragraph 100 is especially baseless because, as Donnelly well knows, after being informed of his removal in June 2019, he actually reaffirmed in writing *to ProPharma* "I am no longer on the Board."[62]

---

[58] Am. Compl. ¶¶ 51, 91, 92, 100; *see also* Ex. 11, Donnelly Dep., at A000155, A000160, A000162, A000185.
[59] Ex. 11, Donnelly Dep., at A000158, A000161–162.
[60] *Id*. at A000170.
[61] *See* Ex. 18, at A000227–33, A000228; Ex 22, at A000244–251, A000245; Ex. 23, at A000253–260, A000256.
[62] Ex. 13, at A000203.

Regardless, as already described above, the Linden Investors' authority under the LLC Agreement to remove Donnelly from the Board is unilateral, and Donnelly's contracts with ProPharma do not require his consent to the termination of his Board service. Thus Donnelly's consent to removal is simply irrelevant. Moreover, the IEA makes clear through an express acknowledgement by Donnelly that any potential entitlement to equity does not create any entitlement to Board service:

> (i) As an inducement to the Company to grant the Management Incentive Units to Participant and as a condition thereto, Participant acknowledges and agrees that: (A) **neither the grant of the Management Incentive Units to Participant hereunder nor any provision contained herein shall entitle Participant to remain in the employment of or continue to provide services (whether as a director, manager, consultant, independent contractor or otherwise) to the Company or its Subsidiaries or affect the right of the Company or its Subsidiaries to terminate Participant's employment or service at any time**…[63]

Thus, the sole argument Donnelly advances—that the dispute as to the valuation of his vested shares somehow foreclosed his removal from the Board—is expressly rejected by the contract that is the basis of Donnelly's claims. Donnelly's removal by the Linden Investors in June 2019 was effective and his Board service terminated.

### 3.   Donnelly's conduct constituted resignation from the ProPharma Board.

Even putting aside the June 2019 Removal Memorandum, Donnelly's statements and conduct following the removal discussion with Davis and Farah constituted his resignation from the ProPharma Board. Because a resignation has the same effect under the LLC Agreement as removal, Donnelly's own statements and conduct terminated his Board service.

As discussed above, *see supra* Argument § I(A), Delaware courts decline to impose or infer additional procedural requirements beyond what the language of an LLC Agreement requires. Resignation is no exception. Here, the LLC Agreement sets forth how a Board member may resign:

---

[63] Ex. 3, IEA, at A000085–86.

"Term. Each Manager appointed shall serve until a successor is appointed in accordance with the terms hereof or his or her earlier **resignation**, death or removal." […] [a] Manager may resign **at any time upon written notice to Holdings LLC**. Such resignation shall be effective upon receipt unless it is specified to be effective at some other time or upon the happening of some other event."[64]

Donnelly admits that he and Tony Davis "talk[ed] about [Donnelly] stepping down and what it would entail" in June 2019.[65] Donnelly then elected to do just that. By sending the July 1, 2019 email to Mr. Farah (then ProPharma's Board Chairman), stating unequivocally "**I am no longer on the ProPharma Board[,]**"[66] Mr. Donnelly resigned from the Board. As Donnelly himself recently conceded, such a statement of withdrawal is sufficient to satisfy the resignation procedure set forth in the LLC Agreement.[67]

Delaware law requires no magic language for the resignation to be effective. *Biolase, Inc. v. Oracle Partners, L.P.*, 97 A.3d 1029, 1034 (Del. 2014).[68] In *Biolase*, the Court of Chancery upheld an oral resignation that did not even include the word "resign." *Id.* at 1031. The court found that the employee resigned because he: (1) discussed his resignation with other board members; (2) attended a board meeting knowing that the agenda included his resignation; (3) discussed the effect of his resignation on his stock options; (4) said "I will go with that" at the end of the discussion regarding his resignation at the board meeting; and (5) agreed to his successor replacing him immediately. *Id.* at 1035. Similarly, in *General Video Corporation v. Kertesz*, a director's

---

[64] Ex. 2, LLC Agreement, at A000040–41. Per the LLC Agreement, "Holdings LLC means ProPharma Group Topco, LLC, a Delaware limited liability company." *Id*. at A000015.

[65] Ex. 11, Donnelly Dep., at A000163.

[66] Ex. 13, at A000203.

[67] Ex. 17, Transcript of November 11, 2022, Deposition of Patrick K. Donnelly, at A000224.

[68] This case involves a corporate board director's resignation. While the case at bar concerns an LLC, as opposed to a corporation, Delaware courts have recognized that where "the drafters [of an LLC Agreement] have opted for a manager-managed entity, created a board of directors, and adopted other corporate features, then the parties to the agreement should expect a court to draw on analogies to corporate law." *Llamas v. Titus*, No. CV 2018-0516-JTL, 2019 WL 2505374, at \*17 (Del. Ch. June 18, 2019), *judgment entered*, (Del. Ch. 2019) (block quoting *Obeid v. Hogan*, 2016 WL 3356851, at \*6 (Del. Ch. June 10, 2016)).

statements to the controlling shareholder that he "couldn't do it anymore, ... wanted out, ... was all done" amounted to an effective resignation even though written notice occurred nine days later. No. 1922-VCL, 2008 WL 5247120, at *18 (Del. Ch. Dec. 17, 2008). Donnelly's express affirmation is more direct than either of these statements, and thus sufficient to accomplish his resignation as a matter of law.

Moreover, "[a]ctions taken after an apparent resignation may provide evidence as to whether a director actually intended to step down." *Gorman v. Salamone*, No. 10183-VCN, 2015 WL 4719681, at *7 (Del. Ch. July 31, 2015) (citing *Hockessin Cmty. Ctr., Inc. v. Swift*, 59 A.3d 437, 458 (Del. Ch. 2012)). For instance, if the alleged post-resignation conduct is consistent with "a lack of interest in serving . . . as a [c]ompany director," courts may infer that the challenged resignation in fact occurred. *Id.* Here, Donnelly's conduct is ***only*** consistent with a "lack of interest in serving" as a ProPharma Board Manager. He declined the invitation to the next Board meeting,[69] discussed the effect of his Board termination on his equity in the company—common and preferred—with both Mr. Davis[70] and Mr. Farah,[71] and ceased attending any Board meetings.[72]

### 4. Donnelly acquiesced to his Board termination.

Donnelly's retroactive attempt to challenge his Board termination is further barred by the equitable doctrine of acquiescence. Donnelly should be "deemed to have acquiesced in" his termination from the Board because his own written statements and the parties' subsequent conduct affirm the validity of his termination. The doctrine of acquiescence applies where a claimant such as Donnelly: "ha[d] full knowledge of his rights and the material facts and (1)

---

[69] Ex. 11, Donnelly Dep., at A000165; Ex. 14, at A000206.
[70] Ex. 11, Donnelly Dep., at A000163.
[71] *Id*. at A000173; Ex. 9, Farah Dep., at A000141, A000144 ; *see also* Ex. 18, at A000227–233, A000228; Ex 22, at A000244–251, A000245; Ex. 23, at A000253–260, A000256.
[72] Am. Compl. at ¶¶ 101, 102; *see also* Ex. 11, Donnelly Dep., at A000188; *see also id.* at A000174.

remain[ed] inactive for a considerable time; or (2) freely d[id] what amounts to recognition of the complained of act; or (3) act[ed] in a manner inconsistent with the subsequent repudiation, which lead[] the other party to believe the act has been approved." *Klaassen v. Allegro Dev. Corp.*, 106 A.3d 1035, 1047 (Del. 2014) (citation removed).

Neither Donnelly's "conscious intent to approve [his termination]" nor a "change [in] position or resulting prejudice" is required to establish that Donnelly's "conduct amounted, in the eyes of the law, to recognition and acceptance of his [termination]" from the ProPharma Board. *Id.* In *Klaasen*, the Delaware Supreme Court affirmed the holding that a former CEO's challenge to his termination was barred by acquiescence because the former CEO "took numerous actions that necessarily conceded the validity of his termination," including his own statements referencing a "management change," no longer holding himself out as the CEO, and his approval of drafts of a proposed consulting agreement which specifically identified the new CEO by name. *See Klaassen v. Allegro Dev. Corp.*, No. 8626-VCL, 2013 WL 5739680, at \*21 (Del. Ch. Oct. 11, 2013). In fact, although the *Klaasen* court acknowledged that the former CEO "took some action[] that expressed his displeasure with his removal and replacement," "in the context of [his] actions as whole, his expressions of displeasure were not sufficient to defeat an acquiescence defense."[73]

Donnelly's acquiescence to his Board removal was stronger than that held sufficient in *Klaasen*. Donnelly took numerous actions that objectively signaled his acknowledgment and acceptance of his termination from the Board, including his July 1, 2019 statement that "[he was] no longer on the ProPharma Board," his statement in his CV that his ProPharma Board service ended in 2019,[74] and his repeated admissions that he did not perform (or even attempt to perform)

---

[73] *judgment entered*, (Del. Ch. 2013), *and aff'd*, 82 A.3d 730 (Del. 2013), *and aff'd*, 106 A.3d 1035 (Del. 2014).
[74] Ex. 16, at A000211–218, A0000218.

any Board functions as of September 1, 2019.[75] Further, much of his Amended Complaint concerns

his discussions with ProPharma regarding the repurchase of his incentive equity—an event

**specifically** triggered by the termination of his Board service. Donnelly does not even attempt to

reconcile how he allegedly remained a Board member despite all of these facts, nor could he.

Donnelly stopped acting like a Board member because he knew he no longer was a Board member.

### B. The Termination of Donnelly's Board Service as of August 31, 2019 Defeats his Contract Claim for Further Base Compensation (Count I).

Under the ProPharma Offer Letter, ProPharma was only obligated to pay Donnelly his base

compensation "for services rendered."[76] As explained above, *see supra* Argument § I, Donnelly

was terminated from the ProPharma Board effective August 31, 2019. And as Donnelly himself

acknowledges, *see supra id.*, he rendered no services to the Board after that date. Therefore,

ProPharma is entitled to summary judgment on Count I because, following the end of his Board

service, ProPharma had no contractual obligation to pay, nor was Donnelly entitled to receive, any

additional amounts of his ProPharma base compensation.

### C. The Termination of Donnelly's Board Service as of August 31, 2019 Defeats his Contract Claim Seeking Payment for Unvested Incentive Equity (Count II).

Ms. Donnelly admitted at his deposition that, as of August 31, 2019, no Liquidity Event

(as defined in the IEA) had occurred and only two-fifths of his Time-Vesting Units had vested.

Thus, Donnelly's claim premised on a contractual entitlement to additional time-vesting and

performance units fails as a matter of law.

Under the IEA, ProPharma had the unilateral right to repurchase "all or any portion of the

**vested** Management Incentive Units by delivery of written notice (the 'Purchase Notice') to

[Donnelly] … at any time within six months after the Termination Date (the 'Purchase Notice

---

[75] Am. Compl. ¶¶ 96, 137; *see also* Ex. 11, Donnelly Dep., at A000174.
[76] Ex. 1, Board Offer, at A000002.

17

Period')."[77] Any units that were not vested were automatically forfeited.[78] The IEA is also clear that the prerequisite to Donnelly's performance vesting units vesting was his continued employment "through the consummation of a Liquidity Event" ("Performance Vesting Units").

As Donnelly himself repeatedly admitted during his deposition, only 40% of his Time-Vesting Units or 804.6364 shares had vested under his IEA at any point during the fall of 2019[79] because only two "Anniversary Dates" of his January 18, 2017 IEA had passed by that point in time.[80] Donnelly also admitted that as of the Fall of 2019, no "consummation of a liquidity event" had occurred in connection with ProPharma.[81] In fact, Donnelly repeatedly admitted that ProPharma's repeated offer to vest (and then buy back) an additional 20% of the time-vesting shares and 2/3 of the performance shares were offers to pay Donnelly *more than he was entitled to under the IEA*.[82] Based on these concessions and the plain language of the contract, there is no genuine issue of material fact Donnelly was only entitled to payment for 804.6364 shares under the IEA as of the date of Donnelly's termination. To the extent that Count II seeks payment for any share beyond the 804.6364 shares for which he has been paid, ProPharma is entitled to summary judgment.

## II.   ANY CLAIM IN COUNT II FOR ADDITIONAL PAYMENT FOR DONNELLY'S VESTED SHARES IS EQUITABLY BARRED BY THE DOCTRINE OF ACCORD AND SATISFACTION.

Nor can Donnelly contest the valuation of the vested shares for which he was paid. ProPharma determined the fair market value of Donnelly's incentive equity and, on November 11, 2020 exercised its unilateral repurchase right consistent with the process outlined in the IEA.

---

[77] Ex. 3, IEA, at A000090.
[78] *Id.*
[79] Ex. 11, Donnelly Dep., at A000173; *see also id.* A000182, A000178.
[80] Ex. 11, Donnelly Dep., at A000167, A000178.
[81] *Id.* at A000182; *see also id.* at A000180.
[82] *Id.* at A000182; *see also id.* at A000178, A000181.

Donnelly accepted this payment, commingled it with his other funds, and retains it to this day. Thus, under the doctrine of accord and satisfaction, he has no claim arising from those shares.

Under Delaware law, "when a check is tendered in full payment of an obligation for which there is a bona fide dispute based on mutual good faith, the payee who accepts that check also accepts the condition accompanying it, *i.e.*, that the disputed obligation is paid in full by the check." *Acierno v. Worthy Bros. Pipeline Corp.*, 656 A.2d 1085, 1088 (Del. 1995), *as revised* (Apr. 17, 1995). It is well-settled that "[a]n overt manifestation of assent, **not a subjective intent**, controls the formation of a contract." *Acierno v. Worthy Bros. Pipeline Corp.*, 693 A.2d 1066, 1070 (Del. 1997). *See also Occidental Chem. Corp. v. Env't Liners, Inc.*, 859 F. Supp. 791, 794 (E.D. Pa. 1994) ("An offer may be accepted through the conduct of the offeree."). "There is no requirement of an actual subjective meeting of the minds whether an accord and satisfaction is intended because a creditor's assent is imputed as a matter of law based on its objective conduct." *Acierno v. Worthy Bros. Pipeline Corp.*, 693 A.2d at 1070. "The unexpressed subjective intention of a party is … not relevant." *Id.*[83]

It is undisputed that in September 2019 the parties had a genuine dispute concerning the value of Donnelly's incentive equity shares.[84] It is similarly undisputed that Donnelly understood ProPharma's offer payment of $105,227.97 on November 11, 2019 was an offer to satisfy ProPharma's legal obligations to him in full. The letter sent to Donnelly on that date expressly

---

[83] Assent by objective conduct is not unique to Delaware courts. *See Occidental*, 859 F. Supp. at 794 (holding that there was an accord and satisfaction where a check, accompanied by a letter from the debtor indicating that "[t]his payment is tendered as payment in full and represents all outstanding monies," was signed and deposited by the creditor and notwithstanding the fact that the creditor sent a letter back to the debtor indicating that debtor had an outstanding balance); *see also Sanders v. USM Corp.*, No. 11690, 1984 WL 7644, at *3 (Ohio Ct. App. Dec. 5, 1984) ("[W]here a check is offered in settlement of an unliquidated or disputed claim, the law permits but two alternatives, either reject, or accept in accordance with the condition.") (quoting *Hirsch v. S. Berger Import & Mfg. Corp.*, 67 A.D. 2d 30, 35 (N.Y. App. 1979));.

[84] Ex. 11, Donnelly Dep., at A000183–184.

reiterated this fact and Donnelly admitted at his deposition that the payment was an offer to satisfy "[ProPharma's] legal obligations to Mr. Donnelly in full."[85] Donnelly accepted ProPharma's accord when he received and retained the payment of $105,227.97 as full satisfaction of ProPharma's debt. In fact, when Donnelly received the November 11, 2019 payment of $105,227.97 to his personal UBS account,[86] he had two choices: (1) he could return the sum paid, and demand the full amount that he believed ProPharma owed; or (2) retain the monies paid as full payment for his vested incentive equity. Donnelly chose option two. In fact, he not only retained the payment sent by ProPharma,[87] he commingled the payment with other personal funds.[88] By accepting the payment, Donnelly accepted the accord offered by ProPharma and his claim for any additional payment for these same shares fails.

## III.   COUNTS III, IV, AND V FAIL AS A MATTER OF LAW.

### A.   Donnelly's Claims of Breach of the Implied Covenant of Good Faith and Fair Dealing and Breach of Fiduciary Duty Are Duplicative of His Breach of Contract Claims.

Donnelly's claims for breach of the implied covenant of good faith and fair dealing (Count III) and breach of fiduciary duty (Count IV) are no more than an attempt to alter the terms of the LLC Agreement and IEA to limit ProPharma's negotiated rights under the contracts. These types of claims are routinely dismissed in breach of contract actions where the complained of conduct is covered by parties' valid agreements.

Where, as here, the claim for breach of the implied covenant is based on "conduct authorized by the terms of the agreement[,]" Delaware courts dismiss the claim as superfluous. *Nemec v. Shrader*, No. 3878-CC, 2009 WL 1204346, at *5 (Del. Ch. Apr. 30, 2009), *aff'd*, 991

---

[85] Ex. 25, at A000266; Ex. 11, Donnelly Dep., at A000186–187; *see also* Ex. 23, at A000253–260, A000253..
[86] Ex. 11, Donnelly Dep., at A000196.
[87] *Id.*, at A000187.
[88] *Id.*, at A000195, A000196–197.

A.2d 1120 (Del. 2010) (quoting *Dunlap v. State Farm Fire & Cas. Co.,* 878 A.2d 434, 441 (Del. 2005)). Courts similarly refuse to impose additional obligations or requirements under the guise of breach of the implied covenant where it cannot be inferred "that the parties . . . would have agreed to proscribe the act later complained of as a breach of their agreement had they thought to negotiate with respect to that matter." *Superior Vision Servs, Inc. v. ReliaStar Life Ins. Co.*, No. 1668-N, 2006 WL 2521426, at *6 (Del. Ch. Aug. 25, 2006) (declining to "read a reasonableness requirement into a contract entered by two sophisticated parties" under the guise of a claim for breach of the implied covenant).

Here, the ProPharma Offer together with the LLC Agreement specifically grant ProPharma the right to remove Donnelly from the ProPharma Board unilaterally "for any reason,"[89] "with or without cause, at the written request of the Linden Investors."[90] Donnelly's attempt to recast ProPharma's exercise of this contractual right as "ProPharma prevent[ing] Donnelly from carrying out his duties under the ProPharma Offer"[91] is illogical and unavailing. In fact, upon review of the LLC Agreement it is evident that the parties *could have* but *chose not to* guarantee Donnelly a full term of five years thereby insulating Donnelly from removal. This is because the LLC Agreement does just that for Jeff Hargroves. Specifically, Mr. Hargroves is designated as the "Founder Manager,"[92] and the **<u>only</u>** Manager on the ProPharma Board who cannot be removed by any individual or entity.[93] The Court should decline Donnelly's invitation to negate ProPharma's

---

[89] Ex. 1, Board Offer, at A000002.

[90] Ex. 2, LLC Agreement, at A000040.

[91] Am. Compl. ¶ 160; *see also id.* ¶¶ 156–159.

[92] *See* Ex. 2, LLC Agreement, at A000040.

[93] Section 5(b) of the LLC Agreement specifies:

      "[T]he Founder Manager shall automatically be removed from the Board, the Sub Board and each committee thereof, upon the earlier of (i) such time as Hargroves and his Permitted Transferees collectively cease to hold directly or indirectly at least 50% or more of the Equity Securities directly or indirectly held by Hargroves as of the date hereof, (ii) the consummation of an Approved Sale, (iii) the consummation of a Public Offering, (iv)

bargained for right to remove Donnelly through a meritless appeal to an implied covenant that would rewrite the contract.

ProPharma is likewise entitled to summary judgment as a matter of law on Donnelly's breach of fiduciary duty claim against ProPharma. Similar to Donnelly's claim for breach of the implied covenant, Donnelly's breach of fiduciary duty claim is foreclosed by the existence of governing contracts. In Delaware, where "the 'fiduciary claims relate to obligations that are expressly treated' by contract then [] Court[s] will review those claims as breach of contract claims and any fiduciary claims will be dismissed." *Nemec*, 2009 WL 1204346, at *4 (quoting *Madison Realty Co. v. AG ISA, LLC*, 2001 WL 406268, at *6 (Del. Ch. Apr. 17, 2001)). Here, the conduct which forms the basis of Donnelly's breach of fiduciary duty claim is expressly covered by the IEA. For instance, Donnelly alleges "Mr. Farah failed to provide Donnelly applicable market comparables or recent third party valuations of ProPharma"[94] and "fail[ed] to undertake a good faith effort to determine the fair market valuation of [Donnelly's] Incentive Equity."[95] However, both of these alleged "failures" are expressly covered by the IEA which specifically (i) disclaims any obligation or duty to provide Donnelly the valuation information he claims entitlement to,[96] and (ii) sets forth how the fair market value of Donnelly's shares is determined.[97]

---

the date on which Hargroves no longer serves as a Manager due to his resignation, death or disability and (v) such time as Hargroves engages in any activity prohibited by Section 7 of the Hargroves Employment Agreement without regard to any applicable restrictive periods set forth therein[.]"

*Id.* at A000040–41.

[94] Am. Compl. ¶ 167

[95] Am. Compl. ¶ 168.

[96] Section 2(b) of Donnelly's IEA states:

"[T]he Company shall have no duty or obligation to disclose to Participant , and Participant shall have no right to be advised of, any material information regarding the Company and its Subsidiaries at any time prior to, upon or in connection with the purchase of the Management Incentive Units upon the termination of Participant's employment with the Company or otherwise[.]"

Ex. 3, IEA, at A000086.

[97] *See* Ex. 3, IEA, at A0000478, A000092–93.

Setting aside the fact that Donnelly could not point to specific conduct or omissions by Mr. Farah that he believed amounted to "bad faith," Delaware courts are extremely reluctant to find that a party acted in bad faith where it followed "contract[ual] provisions for which that party bargained." *Nemec*, 991 A.2d at 1128.

Donnelly's Count II expressly alleges that ProPharma breached its obligation to provide Donnelly the fair market value for his vested shares and Donnelly cannot twist this same allegation into a non-existent claim for breach of fiduciary duty.

## B. The Parties' Contracts and Donnelly's Own Admissions Foreclose His Unjust Enrichment Claim.

In support of his claim for Unjust Enrichment (Count V), Donnelly alleges "[his] work as a ProPharma Board member was a significant factor in the growth, success and eventual sale of ProPharma" and, as a result, seeks additional payments of his base compensation and additional sums for his incentive equity.[98] Because Donnelly concedes that valid contracts exist that govern his Board service, including any entitlement to incentive equity, ProPharma is entitled to summary judgment on Count V both as a matter of law and as a matter of undisputed fact.

***First***, as a matter of law, Donnelly's Board Offer and his IEA preclude any claims for additional base compensation or additional payment for his incentive equity premised on a theory of unjust enrichment. This is because "[u]njust enrichment is a quasi-contract theory of recovery to remedy the ***absence*** of a formal contract." *Res. Ventures, Inc. v. Res. Mgmt. Int'l, Inc.*, 42 F. Supp. 2d 423, 439 (D. Del. 1999) (emphasis added). Thus where, as here, it is undisputed that a valid contract exists, Delaware courts routinely dismiss claims for unjust enrichment when the alleged wrong arises from a relationship governed by that contract. *See Nemec*, 2009 WL 1204346, at *6 ("Plaintiffs cannot now maintain an unjust enrichment claim in the face of a valid and

---

[98] Am. Compl. ¶ 186.

23

enforceable contract."); *see also Albert v. Alex. Brown Mgmt. Servs., Inc.*, No. 762-N, 2005 WL 2130607, at *8 (Del. Ch. Aug. 26, 2005) ("Courts generally dismiss claims for *quantum meruit* **on the pleadings** when it is clear from the face of the complaint that there exists an express contract that controls."); *Res. Ventures*, 42 F. Supp. 2d at 440 ("Because a contract exists, the Plaintiff may not pursue an unjust enrichment theory of recovery, and therefore, the Court will dismiss the Plaintiff's unjust enrichment claim."). Donnelly concedes the validity of his Board Offer and IEA—and indeed seeks additional compensation under each—and therefore his unjust enrichment claims, addressing the same subjects as these two contracts, fail as a matter of law.

Nor can Donnelly claim that his unjust enrichment claim is viable in the event the Court finds that he was terminated from the Board effective August 2019. This is because both his Board Offer and his IEA, by their own terms, (1) contemplate the parties' post-termination relationship and (2) foreclose the exact compensation Donnelly seeks. His Board Offer not only contemplates Donnelly's "terminat[ion] for any reason" but also makes clear that his base compensation is paid "**in arrears for services rendered**."[99] It necessarily follows that once Donnelly is terminated and ceases to perform services under the Board Offer, he is no longer entitled to base compensation. Similarly, his IEA specifies what occurs in the event of Donnelly's termination: "**repurchase**" of the "vested Management Incentive Units" while the "unvested Management Incentive Units **shall automatically be forfeited**."[100]

***Second***, as a matter of undisputed fact, in his deposition Donnelly disclaimed performing ***any*** services to ProPharma from September 1, 2019 on, including any services in connection with the sale to Odyssey Investment Partners.[101] Donnelly's recent admissions were foreshadowed by

_____

[99] Ex. 1, Board Offer, at A000002.
[100] Ex. 3, IEA, at A000090.
[101] Ex. 11, Donnelly Dep., at A000192.

his Amended Complaint where he implicitly acknowledges that he ceased attending Board meetings, reviewing Board materials, or providing any other services consistent with his Board role beginning September 1, 2019.[102] Because Donnelly cannot point to *any* efforts or work he performed from fall 2019 through the ProPharma sale, ProPharma is entitled to Summary Judgment on Count V for this independent reason as well.

## CONCLUSION

For all these reasons, the Court should grant Defendant's motion for summary judgment on all of Donnelly's claims.

| | |
|---|---|
| OF COUNSEL: | */s/ Susan Hannigan Cohen* |
| | Susan Hannigan Cohen (#5342) |
| Jonathan E. Missner | Katharine L. Mowery (#5629) |
| Robert B. Gilmore | John M. O'Toole (#6448) |
| Philip J. O'Beirne | Richards, Layton & Finger, P.A. |
| Kevin L. Attridge | 920 North King Street |
| Samantha Christensen | Wilmington, DE 19801 |
| Stein Mitchell Beato & Missner LLP | (302) 651-7700 |
| 901 15th Street NW, Suite 700 | Hannigan@rlf.com |
| Washington, D.C. 20005 | Mowery@rlf.com |
| (202) 737-7777 | OToole@rlf.com |
| | |
| Dated: November 14, 2022 | *Attorneys for Defendant ProPharma* |
| | *Group Topco, LLC* |

---

[102] Am. Compl. ¶¶ 101, 158, and 176.

25