# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PATRICK K. DONNELLY, | ) )  ) |
| Plaintiff, | ) ) C.A. No. 21-cv-00894-MAK |
| v. | ) ) |
| PROPHARMA GROUP TOPCO, LLC, | ) ) **Public Version Dated: November 21, 2022** |
| Defendant. | ) ) ) |

## PLAINTIFF'S BRIEF IN SUPPORT OF HIS MOTION TO EXCLUDE THE OPINIONS AND TESTIMONY OF NEIL J. BEATON

OF COUNSEL:

Nicholas D. SanFilippo
Keith J. Minson
Michael A. Brody
Daniel C. Masakayan
McGuireWoods LLP
1750 Tysons Boulevard, Suite 1800
Tysons, VA 22102-4215
(703) 712-5000 – Telephone
(703) 712-5220 – Facsimile
nsanfilippo@mcguirewoods.com
kminson@mcguirewoods.com
mbrody@mcguirewoods.com
dmasakayan@mcguirewoods.com

Dated: November 14, 2022

John A. Sensing (#5232)
Jesse L. Noa (#5973)
POTTER ANDERSON & CORROON LLP
1313 North Market Street
Hercules Plaza, 6th Floor
Wilmington, DE 19801
(302) 984-6000 – Telephone
(302) 658-1192 – Facsimile
jsensing@potteranderson.com
jnoa@potteranderson.com

*Attorneys for Plaintiff Patrick K. Donnelly*

# **TABLE OF CONTENTS**

INTRODUCTION AND SUMMARY OF ARGUMENT ..............................................................1

RELEVANT BACKGROUND .........................................................................................................2

ANALYSIS............................................................................................................................................7

I.     Beaton's Testimony about the propriety of Linden's valuation should be excluded as unreliable and too speculative .................................................................................8

II.    Beaton's testimony providing an alternate valuation method than the one described in his report makes clear that his opinions are not linked to the facts of this case and therefore must be excluded as unreliable ......................................................11

CONCLUSION..................................................................................................................................12

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Allscripts Healthcare, LLC v. Andor Health, LLC*,
   No. CV 21-704-MAK, 2022 WL 3021560 (D. Del. July 29, 2022) (Kearney, J.) ................... 9

*Daubert v. Merrell Dow Pharm., Inc.*,
   509 U.S. 579 (1993) ............................................................................................................. 11

*Elder v. Tanner*,
   205 F.R.D. 190 (E.D. Tex. 2001) ......................................................................................... 11

*In re Paoli R.R. Yard PCB Litig.*,
   35 F.3d 717 (3d Cir. 1994) ............................................................................................. 8, 11

*In re TMI Litig. Cases Consol. II*,
   911 F. Supp. 775 (M.D. Pa. 1996) ........................................................................................ 8

*Kannankeril v. Terminix Int'l, Inc.*,
   128 F.3d 802 (3d Cir. 1997), as amended (Dec. 12, 1997) .................................................. 8

*Kumho Tire Co. v. Carmichael*,
   526 U.S. 137 (1999) ......................................................................................................... 7-10

*UGI Sunbury LLC v. A Permanent Easement for 1.7575 Acres*,
   949 F.3d 825 (3d Cir. 2020) .................................................................................................. 7

**OTHER AUTHORITIES**

L.R. 7.1.2 ........................................................................................................................................ 1

FED. R. EVID. 702 ...................................................................................................................... 1, 7

Plaintiff Patrick K. Donnelly ("Plaintiff" or "Mr. Donnelly"), pursuant to L. Civ. R. 7.1.2 and Fed. R. Evid. 702, submits this Brief in Support of his Motion to Exclude the Opinions and Testimony of Neil J. Beaton ("Motion").

## **INTRODUCTION AND SUMMARY OF ARGUMENT**

Defendant ProPharma Group TopCo, LLC ("Defendant" or "ProPharma") intends to argue that valuation created by Linden Partners ("Linden") used to determine the value of Mr. Donnelly's incentive equity shares was accurate. To bolster that position, it has designated and engaged Neil J. Beaton ("Beaton"), an expert in performing business valuations. While Plaintiff does not contest Beaton's expertise, Beaton's opinions and testimony are wholly unreliable, and they should be excluded by the Court.

Though Beaton's expertise would have allowed him to use raw data and confirm that Linden's valuation was correct, Defendant specifically limited his engagement to avoid that calculation being made. Instead, and seemingly without relying on any of the underlying data, Beaton's report appears to be nothing more than a rubber stamp of Linden's desired valuation. Despite his testimony that business valuations contain several discretionary variables, Beaton sought no independent confirmation of Linden's estimates, the propriety of comparables Linden had selected, or even Linden's method of calculation.

Beaton's report essentially states that, because it appears that Linden performed its valuation a certain way, then it therefore must be correct. Despite his admission that the investment bank valuations relied upon by Mr. Donnelly's expert used the same process he endorsed, he opines that they are clearly wrong without calculation or explanation. Most shocking, when confronted with the tool that Linden actually used to perform its valuations, Beaton explained that Linden must have performed an entirely different calculation than the one he previously described

1

to arrive at its determined multiple of invested capital ("MOIC") figure. For these reasons, the Court should exclude Beaton from testifying at trial and prohibit his completely unfounded opinions from being introduced in any way.

## RELEVANT BACKGROUND

Mr. Donnelly was formerly a member of the board of managers of ProPharma. First Am. Compl. ¶ 128 (D.I. 59). Mr. Donnelly alleges that ProPharma violated its contractual obligations to him by not fully compensating him for shares of incentive equity that he earned while working on the board of the company. *Id.* at ¶¶ 141-154. More specifically, Mr. Donnelly has alleged that the breaches were two-fold. Not only did ProPharma (through Linden) use an improper valuation date, but it used an improper valuation to determine the value of shares on that date and intentionally undervalued the company. *Id*. at ¶¶ 146-147. Therefore, the centerpiece issue of this case is whether Linden performed a proper valuation of ProPharma to determine the value of Mr. Donnelly's incentive equity shares. The alleged improper calculation of Mr. Donnelly's incentive equity value based on Linden's valuation is Exhibit C to the First Amended Complaint and hereto attached as **Exhibit 1.** Predictably, ProPharma has intentionally limited the engagement of its expert in a way that prohibited him from analyzing its valuation for accuracy. On this issue, Beaton testified to the following:

> Q: Okay. And so your expertise includes your ability to independently take financial records and provide a valuation for a company?
> A: That is one of my core competencies, yes.
> Q: Okay. And did you do that in this case?
> A: I did not.

Beaton Dep. 8:12-18.[1]  *See* **Exhibit 2.**

---

[1] Beaton later went into detail, explaining "[m]y engagement was to review the Linden valuations and provide an opinion as to their appropriateness…." Beaton Dep. 25:3-5 (**Exhibit 2**).

2

Beaton's report does very little to validate Linden's valuation of ProPharma other than offering a conclusory affirmation that Linden was generally correct in its valuation process. Lacking in any independent analysis or calculations in support of its conclusions, Beaton's report contains three mainly subjective opinions:

1. Linden performed its valuations of ProPharma consistently and in accordance with generally accepted valuation principles;

2. Linden's valuation was done using a reasonable methodology and its selection of valuation multiples ranging from 13.6x to 13.9x during 2019 were appropriate in estimating ProPharma's overall enterprise value; and

3. ProPharma's valuation was well within the parameters of real-world valuations and arguably very generous to a minority incentive unit holder such as Mr. Donnelly, since a minority interest discount, which would apply under a GCT methodology, was not applied.

Beaton Expert Report, ¶¶ 4 – 6, attached hereto as **Exhibit 3**.

First, Beaton made the intentional decision not to empirically question any of the facts or data included in Linden's valuation.[2] Additionally, Beaton failed to question or analyze any of the discretionary choices of comparable companies that Linden used to support its valuation.[3] Lastly, Beaton's report clearly describes the proper procedure for performing a valuation of a business, using the market approach. Beaton explains that "[t]he market approach consists of three primary

---

[2] Those exchanges went as follows:

> Q. But you never re-created their valuation using raw data?
> A: I did not question the inputs into their valuation model. That's correct.

Beaton Dep. 78:14-21 (**Exhibit 2**).

> Q: And did you describe any of that individual or independent knowledge in your report based on what the companies did and why you thought that they were comparable?
> A: *I didn't do it in my report and I didn't make an independent analysis to decide whether or not they were comparable. I had discussions with [Linden Executives] who performed the analyses.*
> ….
> *I would rather trust whatever Linden put together than any investment bank out there in the marketplace."*

Beaton Dep. 85:11-22; 87:1-3 (emphasis added) (**Exhibit 2**).

3

methodologies: the guideline public company ("GPC") method; the guideline company transaction method ("GCT"); and the subject company transaction method." *Id.* at ¶ 23. Without questioning any decisions Linden actually made, Beaton goes on to explain that "Linden was able to identify highly comparable guideline companies to utilize in the GPC and GCT methodologies, and therefore, full reliance on these two methodologies was sound and reasonable." *Id.* at ¶ 24. Beaton then explains that after selecting comparable companies, Linden used (or should have used) either the guideline public company method or the guideline company transactions to determine an EBITDA (earnings before interest, taxes, depreciation, and amortization) multiple and enterprise value that was then used to calculate the MOIC and therefore value of Mr. Donnelly's incentive equity shares. *Id.* at ¶ 37. Nowhere in his report does Beaton opine that Linden actually used comparables to determine the appropriate MOIC[4] first and then determine what the associated EBIDTA multiple for its valuation should be.

In discovery, however, Linden provided excel spreadsheets including formulas used to value ProPharma for the purpose of determining the value of Mr. Donnelly's incentive equity (the "Calculation Tool"). *See* Linden Second Quarter Valuation Tool, attached hereto as **Exhibit 4.** The calculation column from the Calculation Tool was imported directly to the incentive equity valuation sheet provided to Mr. Donnelly during negotiations. *See* **Exhibit 1**. The only variable input in the Calculation Tool that Linden could change to drive its valuation was the suggested MOIC. Every other cell, including the EBIDTA multiple cell, contained a formula that changed based on the MOIC number that Linden selected. This impropriety was discovered by Mr. Donnelly's expert and examined further in his rebuttal expert report.

---

[4] The MOIC number is significant because under Mr. Donnelly's Incentive Equity Agreement, it is directly tied to his level of compensation. Therefore, starting with that number would allow Linden to arbitrarily select Mr. Donnelly's compensation level as long as it fell within a wide range of those associated with comparable companies.

When confronted with the improper Calculation Tool in his deposition, Beaton developed an entirely different scheme of valuation that he believed, but was unsure Linden used. Initially in his deposition, Beaton explained the proper calculation performed by Linden as follows:

> Q: Okay. All right. And so that calculation starts at the 13.9 -- starts at the 13.9 multiple, right? That's where you would start the calculation? You figure out the multiple from the companies?
> A: Yeah. We saw that on page, I think, 19 of my report where the average of the transaction comps was 13.85, rounded up to 13.9. Starting there and then running that calculation down, you would come up with 2.5 MOIC.

Beaton Dep. 48:12-21 (**Exhibit 2**).

When confronted with Linden's Calculation Tool, Beaton later changed that process to explain that Linden's valuation tools were effectively designed to ensure that it would receive the valuation that it wanted:

> Q: They can choose how much they want to make [by determining MOIC] and then generate an EBITDA value divorced from any public comparables, divorced from any transactions, and that would be a proper valuation?
> A: No, it wouldn't be a proper valuation, but they could --
> No one would do that in their right mind because that's -- I'll use the term "idiotic" because no one says, hey, I'm going to make X and then I'll back into my value. What they do is exactly what Linden did here, is they take the multiples in the four columns that you see to the left of the conclusion based on market value. I think that's market value. I can't read that. Let me see that, Mr. Minson. Concluded value. And they determined based upon the yellow highlighted section in there that the multiples ranged from 2.6, 3.0, 2.0, and 2.9. From there they said, oh, guess what? These public companies are traded at an MOIC of between 2.6 and 3.0, and on the transaction side at 2.0 and 2.9. We believe -- Linden believes that the public comparables are not pricing right, but the M&A transactions are. We're going to use the mid point of the low and the high. That's going to be 2.5

Beaton Dep. 142:1-143:6 (objection omitted) (**Exhibit 2**).

Beaton offered no explanation as to why the process he explained in his deposition was not in his report, nor could he because he failed to actually perform any independent calculations.

5

Instead, he makes an assumption to answer the question.  Likewise, his report contains an opinion wholly based on his assumption of how Linden's calculations appear without any application of his expertise.  And that adds only further fuel to the fire suggesting that Linden's calculations were little more than an exercise designed to achieve a pre-arranged result, as confirmed by the following exchange:

> Q: So they selected -- so you're saying they selected the multiple first before figuring out the EBITDA?
> A: They did.

Beaton Dep. 153:2-5 (**Exhibit 2**).  Beaton's rebuttal expert report contains the same deficiencies as his expert report.  Mr. Donnelly's expert relied upon several different valuation estimates from investment banks that Linden hired to perform a valuation of ProPharma.  Mr. Donnelly's expert utilized five independent sources and performed mathematical calculations using those sources.  Beaton agreed that the majority of the investment banks utilized the same method for performing a valuation that he endorsed in his report, as noted in the following exchange:

> Q: Reports. Is it true that he and at least two of the investment banks used the same valuation methodology that you're talking about, the market analysis using public companies and company transaction valuations?
> A: I believe all four did. The only one that didn't was Perrella Weinstein.

Beaton Dep. 28:1-7 (**Exhibit 2**).

   With no independent analysis of the calculations, however, he could not explain why the investment banks' valuations were improper.  When asked, Beaton explained:

> Q:  Okay. I just want to know. So it seems like they are focused on EBITDA and using the multiples and also determining the value, like you said, that the market method employs. So is it – so what was different about their determination?
> A: It's wrong. It's clear

Beaton Dep. 123:21-124:1 (**Exhibit 2**).

6

Beaton argues that the pitchbooks that informed the value of ProPharma determined by Mr. Donnelly's expert were improper to use but provides no basis for this opinion in his report. *See* Beaton Rebuttal Report, ¶6 attached hereto as **Exhibit 5**. Without performing any calculations himself, he opines that Linden's valuation was correct and the five independent valuations examined by Mr. Donnelly's expert were incorrect. *Id.* at ¶¶ 20-22. Because of Beaton's lack of independent analysis or use of his expertise to question any of the data provided by Linden, despite having several other data sets available, his opinions are unreliable and inappropriately use his credentials to rubber-stamp a valuation that Linden does not want examined or questioned.[5]

## ANALYSIS

While qualified, Beaton's testimony should be excluded because he did not actually perform any analysis using his expertise and simply affirmed Linden's valuation based on its appearance and blind faith in Linden's representations. Additionally, Beaton's testimony indicates that because of that lack of analysis, he is uncertain of how Linden actually reached its final valuation number. Therefore, his opinion is not truly tied to the facts of the case. As a gatekeeper to determine admissibility of expert testimony under Federal Rule of Evidence 702, "a trial judge has three duties: (1) confirm the witness is a qualified expert**;** (2) check the proposed testimony is reliable and relates to matters requiring scientific, technical, or specialized knowledge; and (3) ensure the expert's testimony is 'sufficiently tied to the facts of the case,' so that it 'fits' the dispute and will assist the trier of fact." *UGI Sunbury LLC v. A Permanent Easement for 1.7575 Acres*, 949 F.3d 825, 832 (3d Cir. 2020). Further, requirement of relevance applies to the opinions of all experts, including non-scientific experts. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999).

---

[5] This is most likely because of the impropriety of its true "valuation" method of determining its desired MOIC earning and structuring the valuation based on that number.

7

### I. Beaton's Testimony about the propriety of Linden's valuation should be excluded as unreliable and too speculative.

Beaton's expertise is not in question, but the method he used to determine that Linden's valuation was appropriate is completely unreliable and should be excluded. The Third Circuit has held that "an expert's testimony is admissible so long as the process or technique the expert used in formulating the opinion is reliable." *Kannankeril v. Terminix Int'l, Inc.*, 128 F.3d 802, 806 (3d Cir. 1997), *as amended* (Dec. 12, 1997). "Specifically, the court must consider the following factors: (1) whether the method consists of a testable hypothesis; (2) whether the method has been subject to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the expert witness testifying based on the methodology; (8) the non-judicial uses to which the method has been put." *In re TMI Litig. Cases Consol. II*, 911 F. Supp. 775, 787 (M.D. Pa. 1996), *aff'd sub nom. In re TMI Litig.*, 193 F.3d 613 (3d Cir. 1999), *amended,* 199 F.3d 158 (3d Cir. 2000) (citing *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 742 (3d Cir. 1994)).

By his own admission, Beaton performed no independent analysis of Linden's valuation, he did not question which comparable companies it chose, and he did not question any of Linden's inputs. Beaton Dep. 8:12-18 (**Exhibit 2**); *see also* n.1-3. As such, the only hypothesis one could glean from Beaton's report is that, if a valuation appears to use his prescribed method, then it must be correct. This hypothesis is neither generally accepted nor is it accepted by Beaton himself. Indeed, Beaton acknowledges that the investment banks whose valuations he deems improper utilized his method to arrive at their valuation numbers.

Other than his opinion that Linden's calculations look correct and used his prescribed methodology, Beaton's report and testimony does nothing to assist the trier of fact in determining

8

whether Linden performed a fair and accurate valuation of ProPharma to determine Mr. Donnelly's incentive equity share value. Although the underlying valuations performed *by Linden* might have had a degree of complexity, "[t]here [we]re no complicated extrapolations" from Beaton himself, whose contribution here as an expert amounts to little more than "reciting the contents of documents." *Allscripts Healthcare, LLC v. Andor Health, LLC*, No. CV 21-704-MAK, 2022 WL 3021560, at *5 (D. Del. July 29, 2022) (Kearney, J.).

In upholding the exclusion of an expert opinion for lacking any empirical foundation, the Supreme Court examined an opinion similar to that of Beaton's in *Kumho Tire Co. v. Carmichael* and held that:

> The District Court did not doubt [the expert's] qualifications … Rather, it excluded the testimony because, despite those qualifications, it initially doubted, and then found unreliable, the methodology employed by the expert in analyzing the data obtained in the visual inspection, and the scientific basis, if any, for such an analysis.

*Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 153 (1999).

In *Kumho Tire Co. v. Carmichael*, the Supreme Court upheld the district court's exclusion of a tire expert with an engineering degree and industry experience. The case concerned the likelihood that a defect caused the tread on a tire to separate from its carcass. The tire company's expert, by a visual and tactile examination, explained that the tire "bore some of the very marks that the expert said indicated, not a defect, but abuse through overdeflection." *Id.* at 154. Despite his testimony that the tire was driven past the point of where it should have been replaced, the expert "could not say whether the tire had traveled more than 10, or 20, or 30, or 40, or 50 thousand miles." *Id.* at 154–55. Additionally, despite referencing a specific sign of abuse rather than a defect (bead grooving), the expert "seemed to deny the sufficiency of his own simple visual-inspection methodology." *Id.* at 155. "He testified that most tires have some bead groove

9

pattern…" *Id.* Lastly, the Court found "no indication in the record that other experts in the industry use [the expert's] two-factor test or that tire experts such as Carlson normally make the very fine distinctions about, say, the symmetry of comparatively greater shoulder tread wear that were necessary, on [the expert's] own theory, to support his conclusions." *Id*. at 157.

Similarly, Beaton has examined the method in which Linden appears to have performed its valuation and based on the appearance of that valuation, opined that it was appropriate. Like the expert in *Kumho*, Beaton was unable to opine on the accuracy of Linden's final number. As the Kumho expert could not opine whether the tire in question had ten or fifty thousand miles on it, Beaton could not opine on whether Linden reached the right conclusion. When asked Beaton responded, "Is it a proper estimate? Yes. Is it a correct estimate? Yes. But is it a correct number? I can't say that." Beaton Dep. 27:6 – 27:8. **(Exhibit 2).** Similar to the *Kumho* expert, Beaton's testimony seems to undercut his methodology in that he agrees that the investment banks used the same method as Linden but arrived at the wrong result. *See* Beaton Dep. 28:1-7; 123:21-124:1 (**Exhibit 2**). Also, like the expert in Kumho, there is no indication in his report that the proper way to confirm a business valuation's accuracy is simply to examine the method the evaluator appears to have used without engaging in any calculations. The Supreme Court upheld the *Kumho* court's exclusion of the tire expert after finding that his opinions failed "to satisfy either *Daubert's* factors *or any other* set of reasonable reliability criteria." *Kumho Tire Co.*, 526 U.S. at 158. Here, the Court should find the same result. Beaton has all the technical expertise and credentials to properly examine Linden's valuation for accuracy, but he simply chose not to based on his engagement. He did what amounted to a "visual inspection." Not only did he fail to do the calculations, but he did not question any of Linden's inputs because he would "rather trust whatever Linden put together than any investment bank out there in the marketplace." *See* n.3.

"The ultimate touchstone is helpfulness to the trier of fact, and with regard to reliability, helpfulness turns on whether the expert's 'technique or principle [is] sufficiently reliable so that it will aid the jury in reaching accurate results." *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 744 (3d Cir. 1994). Beaton's quick-look methodology in which he declined to question or recreate any of the valuation findings made by Linden does nothing to clarify whether Linden's figures and calculations were accurate. As a result, his opinions and testimony would not be helpful to the jury and should be excluded and deemed inadmissible, unreliable, and speculative. *See Elder v. Tanner*, 205 F.R.D. 190, 194 (E.D. Tex. 2001) (excluding experts reports as "conclusory" where "[t]hey state[d] the experts' ultimate opinion" but that it was "not sufficient simply to list the resources they utilized and then state an ultimate opinion without some discussion of their thought process.").

## II. Beaton's testimony providing an alternate valuation method than the one described in his report makes clear that his opinions are not linked to the facts of this case and therefore must be excluded as unreliable.

The main issue in dispute in this litigation is whether or not Linden performed a proper valuation of ProPharma to value Mr. Donnelly's incentive equity shares. Beaton's report does not shed light on the accuracy of Linden's valuation at all and therefore should be excluded. Beaton's report sets forth a detailed method of determining the valuation of ProPharma and, based on that method, he opines that Linden properly performed its valuation. *See* **Exhibit 3**, ¶ 5. In his deposition when asked to explain why Linden's Calculation Tool does not work in a way that would allow Linden to follow Beaton's method, he created an entirely different scheme on the fly. *See* Beaton Dep. 142:1-143:6 (**Exhibit 2**). "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 591 (1993). Because Beaton has not consistently described the valuation method employed

11

by Linden and did not analyze any numbers used or decisions made, his opinion of Linden's valuation as "appropriate" is not linked to the facts and therefore not helpful for trier of fact. From his report and testimony, it is unclear whether he would testify that Linden derived its MOIC from first selecting a EBIDTA multiple in proper range (as his report says) or whether Linden selected an MOIC in the proper range and entered that number into its Calculation Tool to determine the EBIDTA multiple[6] (as he testified). Beaton's opinion is completely speculative and therefore should be excluded.

## CONCLUSION

For the foregoing reasons, the Court should grant Plaintiff's Motion and exclude Beaton's proffered opinions and testimony.

| | |
|---|---|
| OF COUNSEL: | POTTER ANDERSON & CORROON LLP |
| Nicholas D. SanFilippo<br>Keith J. Minson<br>Michael A. Brody<br>Daniel C. Masakayan<br>McGuireWoods LLP<br>1750 Tysons Boulevard, #1800<br>Tysons, VA  22102-4215<br>(703) 712-5000 – Telephone<br>(703) 712-5220 – Facsimile<br>nsanfilippo@mcguirewoods.com<br>kminson@mcguirewoods.com<br>mbrody@mcguirewoods.com<br>dmasakayan@mcguirewoods.com<br><br>Dated:  November 14, 2022 | By: */s/ Jesse L. Noa*<br>    John A. Sensing (#5232)<br>    Jesse L. Noa (#5973)<br>    1313 North Market Street<br>    Hercules Plaza, 6th Floor<br>    Wilmington, DE  19801<br>    (302) 984-6000 – Telephone<br>    (302) 658-1192 – Facsimile<br>    jsensing@potteranderson.com<br>    jnoa@potteranderson.com<br><br>*Attorneys for Plaintiff Patrick K. Donnelly* |

---

[6] Whether MOIC or EBIDTA multiple was determined first is an important distinction because of Linden's incentive to select a lower MOIC to underpay Mr. Donnelly.

## CERTIFICATE OF COMPLIANCE

I certify that the word-processing program used to prepare the foregoing brief calculated the word count of the brief, excluding the caption, tables, and signature block, to be 3,822 words, and that the brief complies with the Court's font, type, and word limitation requirements.

POTTER ANDERSON & CORROON LLP

By: */s/ Jesse L. Noa*
John A. Sensing (#5232)
Jesse L. Noa (#5973)
1313 North Market Street
Hercules Plaza, 6th Floor
Wilmington, DE  19801
(302) 984-6000 – Telephone
(302) 658-1192 – Facsimile
jsensing@potteranderson.com
jnoa@potteranderson.com

*Attorneys for Plaintiff Patrick K. Donnelly*

Dated:  November 14, 2022

13