IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **PATRICK K DONNELLY** | : | **CIVIL ACTION** |
| | : | |
| v. | : | NO. 21-894-MAK |
| | : | |
| **PROPHARMA GROUP TOPCO LLC** | : | |

# ORDER-MEMORANDUM

**AND NOW**, this 30th day of December 2022, upon considering Defendant's Motion for summary judgment (D.I. 146), Plaintiff's Response (D.I. 168), Defendant's Reply (D.I. 170), and finding genuine issues of material fact preclude summary judgment on the Plaintiff's breach of contract claims but summary judgment is warranted dismissing his remaining claims, it is **ORDERED we GRANT in part** and **DENY in part** Defendant's Motion for summary judgment (D.I. 146):

1. We **DENY** Defendant's Motion as to the breach of contract claims (Counts I and II) finding genuine issues of material fact including when Defendant purported to remove Plaintiff from the Board; whether Defendant validly removed Plaintiff from the Board; whether Plaintiff resigned or acquiesced to a removal from the Board; and whether Plaintiff accepted payment for all of his vested incentive equity shares; and,

2. We **GRANT** Defendant's Motion and dismiss Plaintiff's claims for breach of the implied covenant of good faith and fair dealing, breach of fiduciary duty, and unjust enrichment (Counts III, IV, and V) as a matter of law.

## *Analysis*

Patrick Donnelly signed ProPharma Group Topco LLC's Offer Letter to join ProPharma's Board of Directors on October 31, 2016 with a starting date of September 30, 2016 for a term of

five years.[1] ProPharma agreed to pay Mr. Donnelly four quarterly payments totaling $37,500.00 per year for his "services rendered" on the Board.[2] ProPharma also agreed to pay Mr. Donnelly "incentive equity units" in ProPharma for his service on the Board subject to "time and performance-based vesting provisions."[3]

The parties' January 18, 2017 Management Incentive Equity Agreement governs Mr. Donnelly's incentive equity units and gave him 8,046.365 incentive equity units (shares) in ProPharma.[4] Twenty-five percent of the incentive units would vest in equal increments over time (the time vesting units) "if (but only if) as of such date [Mr. Donnelly] has been continuously employed by or providing services to and is still employed by or providing services to [ProPharma]" on each "Anniversary Date."[5] The remaining seventy-five percent of the incentive units would vest "if (but only if) [Mr. Donnelly] has been continuously employed by or providing services to and is still employed by or providing services to [ProPharma] . . . from the date hereof through the consummation of a Liquidity Event[.]"[6]

ProPharma's Amended and Restated Limited Liability Agreement governs Mr. Donnelly's service on the Board.[7] The LLC Agreement confirms the members agreed the Board "shall initially

---

[1] D.I. 148 ¶ 1; see also D.I. 149-1, 149-2, 169-1 (collectively, the Appendix, referred to as "App'x") at 2–5.

[2] D.I. 148 ¶ 3; App'x at 2.

[3] D.I. 148 ¶¶ 15–16.

[4] Id. ¶¶ 18–19; App'x at 84–103.

[5] D.I. 148 ¶ 20; App'x at 89.

[6] App'x at 89.

[7] D.I. 148 ¶ 6.

consist of up to eight (8) Managers" with Mr. Donnelly as one of the "[t]hree (3) Managers designated by the Linden Investors" to serve on ProPharma's Board.[8] The members agreed, under Section 5.2(b) of the LLC Agreement, Mr. Donnelly can be removed from the Board "with or without cause, at the written request of the Linden Investors entitled to appoint" Mr. Donnelly to the Board.[9] The members further defined the "Linden Investors" as "collectively, Linden Buyer, Linden Splitter and any of their Affiliates and any of their respective Transferees."[10] They defined "Linden Buyer" as ProPharma Group Buyer, LLC and "Linden Splitter" is defined as ProPharma Group Splitter, LP."[11] The members also agreed Mr. Donnelly could "resign at any time upon written notice to [ProPharma]" with his resignation "effective upon receipt unless it is specified to be effective at some other time or upon the happening of some other event."[12]

      The relationship changed over time and by June 2019, Tony Davis, Linden's Managing Partner and a ProPharma Board member, called Mr. Donnelly to discuss Mr. Donnelly's removal from the Board.[13] Michael Farah (on behalf of ProPharma Group Buyer, LLC) and Mr. Davis (on behalf of ProPharma Group Splitter, LP) – the two entities needed to remove Mr. Donnelly from ProPharma's Board under the LLC Agreement – allegedly signed an undated document removing Mr. Donnelly from the Board "effective as of the date hereof[.]"[14] ProPharma emailed this undated

---

[8] *Id*. ¶ 7; App'x at 40.

[9] D.I. 148 ¶ 8; App'x at 16.

[10] App'x at 16.

[11] *Id*.

[12] *Id*. at 41.

[13] *Id*. at 163.

[14] *Id*. at 200–01, 133

removal document to their outside counsel on June 27, 2019.[15] Mr. Donnelly claims ProPharma did not send him a copy of the undated removal document until discovery in this case.[16] But on July 1, 2019, Mr. Donnelly emailed Mr. Farah and his assistant Brianna Loverich in response to the "2019 Q2 ProPharma Board of Directors Meeting" stating "I am no longer on the ProPharma Board so I will not be attending."[17] Mr. Donnelly swears he wrote this email not as an acknowledgment of his removal from the Board but because he did not need travel arrangements for the upcoming Board meeting since he anticipated being off the Board before the meeting.[18]

ProPharma then sent Mr. Donnelly a different document "evidencing . . . his removal from the board" dated September 3, 2019, which Mr. Donnelly claims he did not receive until more than a year later on September 23, 2020.[19] This second removal document – different from the undated removal document attached to a June 27, 2019 email– states "the undersigned hereby removes Patrick Donnelly from the Board and all Sub Boards effective as of August 31, 2019."[20] Mr. Farah (on behalf of Linden Capital Partners III LP and Linden Capital Partners III-A LP) signed the September 3, 2019 removal document.[21]

ProPharma sent Mr. Donnelly a series of letters offering to repurchase his incentive equity units from September 2019 through November 2019. ProPharma identified the

---

[15] *Id*. at 198–99.

[16] D.I. 167 at 11.

[17] App'x at 203.

[18] D.I. 167 ¶ 36.

[19] App'x at 826–28; D.I. 167 at 11–12.

[20] App'x at 828.

[21] *Id*.

separation/termination date on the letters as August 31, 2019.[22] None of the letters reference an earlier removal date consistent with ProPharma's present argument of a valid removal based on an undated document attached to an internal June 27, 2019 email. ProPharma eventually wired Mr. Donnelly $105,228.00 for the repurchase of Mr. Donnelly's incentive equity units on November 11, 2019 and represented it had "now fulfilled their legal obligations to Mr. Donnelly in full[.]"[23] The wired money remains in Mr. Donnelly's bank account.[24]

Odyssey Investment Partners Fund VI, LP purchased ProPharma for $560 million on September 30, 2020.[25]

### *We deny summary judgment on the breach of contract claims.*

Mr. Donnelly sued for breach of two written contracts: the October 14, 2016 Offer and the January 18, 2017 Management Incentive Equity Agreement. We find genuine issues of material fact precludes judgment as a matter of law on these two contract claims.

Mr. Donnelly's first contract claim is ProPharma breached the October 24, 2016 Offer to join the Board by failing to pay him his earned base compensation from April 18, 2019 through September 30, 2020, when Odyssey Investment Partners purchased ProPharma.[26] ProPharma argues Mr. Donnelly is not entitled to additional base compensation or payment for unvested incentive equity because his service on the ProPharma Board ended as of August 31, 2019.[27]

---

[22] *Id*. at 228, 245, 254.

[23] *Id*. at 266.

[24] D.I. 167 ¶ 67.

[25] D.I. 61 ¶ 21.

[26] *Id*. ¶¶ 129–140.

[27] D.I. 147 at 13–15.

ProPharma concedes, for purposes of today's analysis, a removal date of August 31, 2019 not an earlier effective date consistent with the undated removal document attached to a June 27, 2019 internal email not shared with Mr. Donnelly.

Genuine disputes of material fact exist as to whether ProPharma ever validly removed Mr. Donnelly from the Board consistent with ProPharma's obligation under the LLC Agreement or whether Mr. Donnelly ever resigned and/or acquiesced to his removal. Several disputed issues mandate a credibility determination, including: ProPharma allegedly signed an undated document sometime in June 2019 removing Mr. Donnelly from the Board "effective as of the date hereof" consistent with its obligations under the LLC Agreement; ProPharma then signed a second removal document three months later (without the necessary signatures to validly remove Mr. Donnelly from the Board) with an effective date of August 31, 2019 undermining the credibility of its June 2019 removal document; and, ProPharma reiterated the separation date of August 31, 2019, not of June 2019 in its offers to repurchase Mr. Donnelly's incentive equity units in the Fall of 2019.

Although ProPharma characterizes the second removal document as a "clerical mistake" and an "unnecessary" "redundant document" which is "irrelevant[,]" its existence and the fact it does not identify a June 2019 removal date – but instead identifies an August 31, 2019 removal date – raises questions as to the credibility of the first undated removal document (possibly from June 2019) signed by the right persons but not dated nor shared until discovery.[28] The undated removal document is the only one signed by those with the authority to remove Mr. Donnelly from the Board. Both parties now try to walk back from admissions made in 2019 through curious

---

[28] D.I. 170 at 6–7.

dismissals of their admissions. We cannot credit one over another. We deny summary judgment because we cannot make credibility determination at this stage.[29]

Mr. Donnelly also sued ProPharma for breach of the January 18, 2017 Management Incentive Equity Agreement by failing to pay him the fair market value of his ProPharma incentive equity.[30] ProPharma argues Mr. Donnelly's breach of contract claim seeking additional payment for his vested shares is equitably barred by the doctrine of accord and satisfaction because ProPharma exercised its unilateral repurchase rights and Mr. Donnelly accepted the payment, commingled it with his other funds and never returned the payment.[31] But genuine disputes of material fact preclude summary judgment on this claim.

The burden to prove all the elements necessary for an accord and satisfaction defense is on ProPharma – the party alleging the accord and satisfaction took place.[32] ProPharma must show: "(1) [ ] a bona fide dispute existed as to the amount owed that was based on mutual good faith; (2) [ProPharma] tendered an amount to [Mr. Donnelly] with the intent that payment would be in total satisfaction of the debt; and (3) [Mr. Donnelly] agreed to accept the payment in full satisfaction of

---

[29] *Peroza-Benitez v. Smith*, 994 F.3d 157, 164 (3d Cir. 2021) (quoting *Baloga v. Pittston Area Sch. Dist.*, 927 F.3d 742, 752 (3d Cir. 2019)).

[30] D.I. 61 ¶¶ 141–154.

[31] D.I. 147 at 22–24.

[32] *Acierno v. Worthy Bros. Pipeline Corp.*, 693 A.2d 1066, 1068–69 (Del. 1997).

the debt.[33] "An overt manifestation of assent, not a subjective intent, controls the formation of a contract."[34] So "[t]he unexpressed subjective intention of a party" is not relevant.[35]

In *Acierno v. Worthy Brothers Pipeline Corp.*, the Delaware Supreme Court recognized "[i]f a creditor cashes a check that has been clearly designated as payment in full, the creditor is deemed to have assented to the terms of the accord and is bound by the acceptance if the other two essential elements for an accord and satisfaction exist."[36] But we are faced with facts distinct from those in *Acierno.* Unlike in *Acierno,* Mr. Donnelly did not cash a check. ProPharma instead unilaterally wired the money directly to Mr. Donnelly's account. Mr. Donnelly claims he "never signed any agreement" regarding the amount deposited and "never acknowledged it."[37] Without analyzing the first and second elements necessary for an accord and satisfaction, we find genuine disputes of material fact as to the third element precluding summary judgment – whether Mr. Donnelly agreed to accept the payment in full satisfaction of the debt.

### *We grant summary judgment on the remaining claims.*

Mr. Donnelly also sues ProPharma for breach of the implied covenant of good faith and fair dealing. He alleges ProPharma prevented him from carrying out his duties under the October 24, 2016 Offer to join the Board by failing to provide him with materials necessary to carry out

---

[33] *Id*.

[34] *Id*. at 1070.

[35] *Id*.

[36] *Id*.

[37] D.I. 167 ¶ 68.

8

his duties as a Board member.[38] "[T]he covenant is a limited and extraordinary legal remedy."[39] "To maintain an implied covenant claim, the factual allegations underlying the implied covenant claim must differ from those underlying an accompanying breach-of-contract claim."[40]

Since ProPharma could remove Mr. Donnelly from the Board "for any reason," "with or without cause" – which ProPharma attempted to do (although it is disputed whether ProPharma did so validly under the terms of the LCC Agreement) – Mr. Donnelly's implied covenant claim fails as a matter of law because the express terms of the Offer to join the Board and the LLC Agreement control such a claim.[41]

Mr. Donnelly's claim for breach of fiduciary duty also fails as a matter of law. Mr. Donnelly contends ProPharma, through Mr. Farah, breached its fiduciary duty by omitting material facts in discussions with Mr. Donnelly regarding the fair market valuation of his incentive equity units and failing to calculate the valuation in good faith by purchasing the units below market value.[42] "It is a well-settled principle that where a dispute arises from obligations that are expressly addressed by contract, that dispute will be treated as a breach of contract claim . . . any fiduciary claims arising out of the same facts that underlie the contract obligations would be foreclosed as

---

[38] D.I. 61 ¶¶ 155–163.

[39] *Nemec v. Shrader*, 991 A.2d 1120, 1128 (Del. 2010); *see also Kuroda v. SPJS Holdings, L.L.C.*, 971 A.2d 872, 888 (Del. Ch. 2009) ("Consistent with its narrow purpose, the implied covenant is only rarely invoked successfully.").

[40] *Sarraf 2018 Fam. Tr. v. RP Holdco, LLC*, 2022 WL 10093538, at *12 (Del. Super. Ct. Oct. 17, 2022) (internal citations omitted).

[41] *See Nemec*, 991 A.2d at 1125–26 ("[O]ne generally cannot base a claim for breach of the implied covenant on conduct authorized by the agreement.").

[42] D.I. 61 ¶¶ 164–182.

9

superfluous."[43] Mr. Donnelly's breach of fiduciary duty claim fails as a matter of law because it seeks to enforce obligations expressly addressed in the Management Incentive Equity Agreement – whether to provide valuation materials and how to calculate the fair market value of the units.[44]

Mr. Donnelly sues for unjust enrichment claim pled in the alternative to his breach of contract claims alleging ProPharma failed to pay Mr. Donnelly his base compensation since April 18, 2019 despite him remaining a Board member until September 30, 2020.[45] Since Mr. Donnelly's unjust enrichment claim is premised on the Offer to join the Board and the Management Incentive Equity Agreement – which together set forth his base compensation and his right to receive incentive equity units – his unjust enrichment claim fails as a matter of law.[46]

                                                              **KEARNEY, J.**

---

[43] *Nemec*, 991 A.2d at 1129 (internal citations omitted).

[44] *See* App'x at 86 (The Management Incentive Equity Agreement states: "other than as expressly set forth in the LLC Agreement" ProPharma has "no duty or obligation to disclose to [Mr. Donnelly]" . . . any material information . . . at any time prior to, upon or in connection with the purchase of the Management Incentive Units[.]"); *see also* App'x at 88 ("Fair Market Value" means "the fair market value thereof as of the valuation date as determined in good faith by the Board (with it being understood that the Board shall take into account all relevant factors determinative of value, including, without limitation, any other then-existing determinations of fair market value on or about the valuation date)).")

[45] D.I. 61 ¶¶ 183–200.

[46] *Intermec IP Corp. v. TransCore, LP*, 2021 WL 3620435, at *16 (Del. Super. Ct. Aug. 16, 2021) ("Unjust enrichment is available only in 'the absence of a formal contract.'").