IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PATRICK K. DONNELLY<br><br>*Plaintiff,*<br><br>v.<br><br>PROPHARMA GROUP TOPCO, LLC<br><br>*Defendant.* | C.A. No. 21-894-MAK |

**DEFENDANT'S OPENING BRIEF IN SUPPORT OF
ITS MOTION FOR LEAVE TO AMEND
ITS ANSWER TO THE AMENDED COMPLAINT**

Plaintiff Patrick K. Donnelly's ("Donnelly") central contention is that he remained a ProPharma Board member until the sale of the company in September 2020, and therefore (i) ProPharma breached his Offer Letter by not paying him his Board member fees, and (ii) ProPharma breached his Incentive Equity Purchase Agreement by not paying him for all of his incentive equity upon the company's September 2020 sale.[1] ProPharma maintains—and will prove at trial—that Donnelly's Board service terminated no later than August 31, 2019, negating these claims. The Court recently ruled at the Summary Judgment stage that there are genuine issues of material fact regarding Donnelly's removal from the Board. D.I. 174. ProPharma now seeks to add an affirmative defense of prior material breach, so that should the trier of fact find that Donnelly remained an active ProPharma Board member into 2020, ProPharma can show that his breaches

---

[1] In compliance with D. Del. Local Rule 15.1, clean and redlined versions of ProPharma's proposed amendment are attached to the Opening Brief as **Exhibit A** (clean version) and **Exhibit B** (redline version). The Offer Letter and Incentive Equity Unity Agreement are attached as **Exhibits C and D**, respectively.

1

of his restrictive covenants and his failure to perform his Board duties preclude his recovery for the breaches he asserts.

The critical evidence supporting ProPharma's proposed affirmative defense was adduced long after the deadline to amend pleadings. Donnelly's late-produced documents revealed that he was acting as an advisor to Summit Partners in the summer of 2020, which meant that he was working for a potential acquiror of ProPharma that eventually submitted a bid in connection with ProPharma's sale process. The trier of fact may determine that Donnelly simultaneously held a board seat for the selling company (ProPharma) and a consulting role for a bidding company (Summit Partners)—a clear material breach of the non-compete and non-disclosure provisions in the Management Incentive Unit Agreement (the "Agreement").

In addition, in his deposition (again, taken after the deadline to amend pleadings), Donnelly made multiple admissions establishing that he had discontinued his Board duties as of September 2019. These admissions establish that if he remained on the Board up until September 2020, Donnelly breached his obligations under the parties' October 2016 Offer Letter Agreement ("Offer Letter").

Finally, separate from its proposed affirmative defense, ProPharma requests leave to amend its Answer to account for a $9,375.00 quarterly payment from July 2019 that Donnelly received as compensation for his service on the ProPharma Board of Managers (hereinafter "certain payment information").

ProPharma, accordingly, requests the Court for leave to amend its answer to account for Donnelly's prior material breach and certain payment information. [2]

---

[2] Pursuant to D. Del. Local Rule 7.1.1, counsel represents that a reasonable effort was made to reach agreement with the opposing party on the matters set forth in the motion. Plaintiff opposes

## RELEVANT BACKGROUND

During the discovery phase of this litigation, ProPharma diligently (and timely) sought evidence to disprove Donnelly's contention that he remained on the ProPharma Board after August 2019. ProPharma served Donnelly with Requests for the Production of Documents on January 12, 2022. *See* D.I. 66. Because of Donnelly's own discovery deficiencies, however, the documents revealing that Plaintiff was acting as an advisor to Summit Partners were not produced until August 26, 2022, which was not only subsequent to the July 30, 2022 discovery cutoff date, but months after the June 30, 2022 deadline to amend pleadings. *See* D.I. 50. ProPharma promptly requested that the Court extend discovery deadlines to permit further discovery on the issue, D.I. 97, which the Court granted, D.I. 107. Thereafter, Donnelly made a supplemental document production on October 10, 2022, and ProPharma conducted third-party discovery, including a deposition of Summit Partners' Darren Black on November 1, 2022.

**Breach of Donnelly's Restrictive Covenants.** The information produced by Donnelly and third parties during the extended discovery period confirmed that Donnelly was heavily involved in Summit Partners' assessment of ProPharma—conduct that was undisclosed to ProPharma. The impropriety of the relationship was evident from the beginning: in the same email in which Donnelly requested that he and Summit Partners enter a non-disclosure agreement, Donnelly admitted to Summit Partners that he had "a hand full [sic] of conflicts both real and emotional" with ProPharma and deliberated that "[they] can chat and get around it." D.I. 149 at A000208. Later, Darren Black of Summit Partners explicitly asked Donnelly, "how publicly involved you

---

ProPharma's requested amendments, except to the extent Paragraph 44 has been revised to account for ProPharma's July 3, 2019 payment of $9,375.00 to Plaintiff for his Board services for the second quarter of 2019.

3

[Donnelly] can/should be in this process", to which Donnelly responded by asking to discuss his involvement by phone, "just the two of [them]." D.I. 101–1. At another juncture, Donnelly disclosed to Summit Partners that "Linden also does not want me involved and told the bankers to tell summit." DONNELLY00001370, attached hereto as **Exhibit E**. Nonetheless, Donnelly continued to advise Summit Partners; and Summit Partners took advantage of Donnelly's knowledge of ProPharma (even explicitly acknowledging Donnelly's value as a former Board member) by sending him bid updates to solicit his reaction and forwarding him documents material to the bidding process: market studies, quality of earning analyses, financing support letters from potential lenders, and even Summit's draft Letter of Intent for ProPharma. *See* D.I. 101–3; D.I. 101–4; VA000013, attached hereto as **Exhibit F**; VA000008, attached hereto as **Exhibit G**. The emails also revealed that Donnelly took part in phone calls and in-person meetings with Summit Partners to discuss "Project Jayhawk", which was a codename adopted by Linden Partners to discuss the ProPharma sale. DONNELLY00000974, attached hereto as **Exhibit H**; DONNELLY00001369, attached hereto as **Exhibit I** Ultimately, Summit Partners dropped out before final bids were due on August 12, 2020. D. Black Deposition Tr. at 104:3–10, attached hereto as **Exhibit J**. Donnelly later forwarded to Summit Partners the internal Linden email announcing the "ProPharma exit"; Darren Black responded to Donnelly, telling him that the Price came way down as *we* thought it would . . . ." VA000024–26, attached hereto as **Exhibit K** (emphasis added).

If the trier of fact finds that Donnelly remained on the ProPharma Board through the company's sale in October 2020, Donnelly's advisory role with Summit Partners undoubtedly breached the non-competition and confidentiality provisions found in the Agreement. Moreover, the Agreement expressly forbids Donnelly to "engage in any business activity … which is directly

4

or indirectly detrimental to the Business or business plans of the Company or its affiliates;" Ex. D § 8(a)(i), or "utilize any of the Company's or any of its respective affiliates' intellectual property, including without limitation, marketing concepts, office layouts, software and systems configurations, business plans or advertising schemes;" *id.* § 8(a)(ii). Violations of these provisions trigger forfeiture of Donnelly's vested and unvested incentive units.[3]

**Breach of his board duties.** Defendant's counsel deposed Donnelly on October 21, 2022 date. In his deposition, Donnelly admitted that on or around September 4, 2019, Donnelly ceased performing Board duties. D.I. 149–1 at A000188, A000174. Specifically, Donnelly admitted in deposition and in his emails that he: declined a board meeting invite because he said he was no longer on the board; never asked for or reviewed board materials after September 2019; did not attend board meetings; and took no actions to assert and serve in his claimed position on the board. *Id*; *id.* at A000165, A000206.  Donnelly, accordingly, breached the Offer Letter that Donnelly signed on October 31, 2016, in which he agreed to become a Board member and attend four quarterly Board meetings and one strategic growth meeting each year for as long as Donnelly remained on the Board. *See* Ex. C.

## LEGAL STANDARD

"When a party moves to amend past the date set by the scheduling order, Federal Rule of Civil Procedure 16(b) [] applies." *Bos. Sci. Corp. v. Nevro Corp.*, No. CV 16-1163-CFC, 2020 WL 5531561, at *1 (D. Del. Sept. 15, 2020) (citing Fed. R. Civ. P. 16(b)(4); *E. Minerals & Chems. Co. v. Mohan*, 225 F.3d 330, 340 (3d Cir. 2000)). In pertinent part, Rule 16(b) provides: "A

---

[3] "Participant's vested and unvested Management Incentive Units are forfeited if … Participant breaches the terms of any agreement with the Company … in respect of non-competition, non-solicitation, confidentiality or the like." *Id.* § 6(b).

5

schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "Good cause is present when the schedule cannot be met despite the moving party's diligence." *Nevro*, 2020 WL 5531561, at *1 (quoting *Meda Pharm. Inc. v. Teva Pharm. USA, Inc.*, 2016 WL 6693113, at *1 (D. Del. Nov. 14, 2016)).

"If a movant meets its burden under Rule 16(b)(4) to show that good cause exists, the court may then consider whether it should grant leave to amend under Rule 15(a)(2)." *Id.* (citing *Intellectual Ventures I LLC v. Toshiba Corp.*, 2016 WL 4690384, at *1 (D. Del. Sept. 7, 2016)). Federal Rule of Civil Procedure 15(a) provides that the court's leave to amend should be "freely given." The Third Circuit has adopted a liberal standard to "ensure[] that a particular claim will be decided on the merits rather than on technicalities." *Dole v. Arco Chem. Co.*, 921 F.2d 484, 487 (3d. Cir. 1990). Courts should generally permit leave to amend under Rule 15 "absent a showing of undue delay, bad faith, or dilatory motive on the part of the movant, undue prejudice to the opposing party, or futility of the amendment." *Id.*

## ARGUMENT

### I. Good Cause Exists for ProPharma to Amend Its Answer

Because the deadline for amending pleadings in this case has passed, the good cause standard of Fed. R. Civ. P. 16(b) applies here. *Nevro*, 2020 WL 5531561, at *1. The Rule 16(b) good cause standard "hinges on the diligence of the movant, and not on prejudice to the non-moving party" and "requires the movant to demonstrate that, despite diligence, the proposed claims could not have been reasonably sought in a timely manner." *Venetec Int'l v. Nexus Med.*, 541 F. Supp. 2d 612, 618 (D. Del. 2010). Stated alternatively, "[g]ood cause is present when the schedule cannot be met despite the moving party's diligence." *Nevro*, 2020 WL 5531561, at *1 (quoting *Meda Pharm. Inc. v. Teva Pharm. USA, Inc.*, 2016 WL 6693113, at *1 (D. Del. Nov. 14, 2016)).

6

Here, good cause exists because Donnelly failed to disclose the evidence giving rise to the proposed affirmative defense until months *after* the pleading deadline. ProPharma served written discovery requests seeking the same information months *before* the deadline. Thus, while ProPharma was diligent (and timely) in its pursuit of relevant documents, the grounds for the proposed affirmative defense only became known to ProPharma after Donnelly produced documents well after the deadline to amend pleadings. As such, it would have been impossible for ProPharma to request leave to amend before the pleading deadline; therefore, ProPharma has good cause to request its proposed amendment. *See Nevro*, 2020 WL 5531561, at *1 (finding good cause where proposed amendment to answer was based on evidence that movant discovered after the deadline).

## II. The Court Should Permit Defendant's Amendment Under Rule 15

Once a party establishes good cause under Rule 16(b), the inquiry shifts to Rule 15(a), which gives the Court broad discretion to permit pleading amendments unless there is undue delay, bad faith, or dilatory motives on the part of the moving party, or if it is futile or unfairly prejudicial to the non-moving party. *See In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997). Here, there has been no undue delay, bad faith, or dilatory motive. And as also explained below, ProPharma's prior material breach satisfies the Rule 12(b)(6) standard and thus is not futile; nor will Donnelly endure any unfair prejudice should ProPharma receive leave from the Court.

### A. There is no Undue Delay, Bad Faith or Dilatory Motive.

"In evaluating whether a party's delay is undue, the Court must focus on the movant's reasons for not amending its pleading earlier." *Le v. City of Wilmington*, No. CIV 08-615-LPS, 2010 WL 2754253, at *3 (D. Del. July 12, 2010). "The Third Circuit also stresses the importance

7

of a movant articulating a 'colorable excuse' for the delay." *Id.* (quoting *Arthur v. Maersk*, 434 F.3d 196, 205 n. 11 (3d Cir.2006)).

The reason for the timing of ProPharma's current request is simple: Donnelly concededly ran an improper document search in response to ProPharma's January 2022 discovery requests which delayed completion of discovery. When Donnelly finally produced responsive documents on August 26, 2022, ProPharma first discovered information that now supports its proposed affirmative defense. But because the Court found additional discovery on Donnelly's involvement with Summit Partners was warranted, *see* D.I. 107, discovery on this issue did not conclude until shortly before the Court's November deadline for summary judgment and *Daubert* motions. At that point, filing for leave would have likely only served to inundate the Court with an excessive motion. This is because (1) there was a high probability that raising a material breach defense would have no bearing on ProPharma's motion for summary judgment,[4] and (2) waiting until after the Court ruled on summary judgment would allow the Court to avoid ruling on a moot motion had the Court ruled in ProPharma's favor on Counts I and II. Now that the Court has issued its summary judgment opinion and the parties are still months from trial,[5] ProPharma is promptly moving for leave to amend. Thus, not only has ProPharma acted reasonably, but it (at the very least) provides a "colorable excuse" for the timing of its request.

---

[4] Material breach is not typically a claim decided upon at summary judgment. *See Matthew v. Laudamiel*, 2014 WL 5499989, at *2 (Del. Ch. Oct. 30, 2014) ("Whether a breach is material is a question of fact that cannot readily be resolved under the summary judgment standard"); *see also Est. of Buller v. Montague*, 2020 WL 996883, at *5 (Del. Super. Ct. Mar. 2, 2020) ("Materiality is, of course, a question of great specificity. It is a question of fact and one that is ordinarily not suited for summary judgment.") (quoting *Pac. Ins. Co. v. Higgins*, 1992 WL 212601, at *6 (Del. Ch. Sept. 2, 1992)).
[5] Moving for leave to amend an answer after summary judgment is not prohibited. *See*, *e.g.*, *United States v. Margolis*, No. CIV.A. 07-4313SRCMAS, 2009 WL 2255336, at *3 (D.N.J. July 28, 2009) (granting post-summary judgment motion for leave to amend answer).

The Court's analysis of undue delay should also necessarily factor in the burden imposed on the Court. *Le*, 2010 WL 2754253, at *2 ("Delay alone is an insufficient reason to deny leave to amend, but there is grounds to deny amendment if the delay is coupled with either an unwarranted burden on the court or undue prejudice to the non-moving party (as a result of the amendment).") (citing *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir.2001)). As set forth above, filing for amendment at this juncture (following the Court's summary judgment opinion) had the potential to *reduce* the Court's burden. More specifically, had the Court fully granted ProPharma's summary judgment motion, ProPharma obviously would have had no need to add an affirmative defense. Regardless, allowing ProPharma to file an amended answer does not require any Court action aside from its grant of permission. Further, the proposed amended answer would not affect any current deadlines or require a response from Donnelly.

Finally, ProPharma's amendment is proposed in good faith without any dilatory motives. Indeed, by simply adding an affirmative defense and correcting several facts, nothing in this case is altered, including the schedule. *See*, *e.g.*, *id.* ("[I]t is difficult to see how dilatory motives could underlie the Motion as Defendants do not seek any change in the governing Scheduling Order.").

**B.  ProPharma's Request does not Prejudice Donnelly.**

ProPharma's proposed amendments impose no prejudice on Donnelly. "To establish unfair prejudice sufficient to justify denial of the Motion, [the opposing party] 'must show that he was unfairly disadvantaged or deprived of the opportunity to present facts or evidence which he would have offered had the . . . amendments been timely.'" *Id.* at *4 (quoting *Bechtel v. Robinson*, 886 F.2d 644, 652 (3d Cir.1989)). Here, ProPharma's proposed amendment is simply a new legal theory using existing evidence, therefore not requiring additional discovery or a response from Donnelly. *See Adams v. Gould, Inc.*, 739 F.2d 858, 869 (3d Cir. 1984) (finding proposed amended pleading lacked prejudice when no "new concepts and theories that would require extensive

9

additional discovery" existed) (internal quotations and citations omitted). The Court already allotted additional time specifically for discovery on Donnelly's Summit Partners involvement, *see* D.I. 107, therefore there is no need to provide any more discovery on the issue. Likewise, regarding Donnelly's breach of the Offer Letter, the parties already took discovery on the facts underlying this prior material breach. Both sides requested documents concerning the timeframe of Donnelly's performing Board duties. ProPharma's counsel questioned Donnelly at his deposition on this subject, during which he admitted that he no longer provided services as a Board member as of September of 2019. D.I. 149–1 at A000188, A000174. Donnelly's counsel likewise questioned ProPharma's witnesses during their depositions regarding such conduct. Therefore, as an undisputed fact, no additional discovery is necessary. Finally, prejudice is also lacking because Donnelly was fully aware that ProPharma asserted he was in breach of these contractual terms when it first asked permission from the Court to extend discovery for this evidence.[6] *See, e.g.*, *IMS Health, Inc. v. Vality Tech., Inc.*, No. 99-1500, 2000 WL 804436, at *2 (E.D. Pa. June 22, 2000).

### C. ProPharma's Amendment is not Futile.

Through the insider advantage he was providing Summit Partners during the ProPharma bidding process, Donnelly not only breached express Agreement provisions, but also defeated the essential purpose of the Agreement. In addition, Donnelly literally stopped performing his Board duties that he was obligated to perform under the Offer Letter. Consequently, ProPharma's proposed prior material breach defense is not futile. In determining the futility of a proposed amendment, the Court must apply the same standard of legal sufficiency as under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410,

---

[6] In its September 2, 2022, motion to extend discovery deadlines, ProPharma stated, "ProPharma also may seek to amend its pleadings to add counterclaims against Mr. Donnelly, as well as possibly to file claims against Summit Partners and others." D.I. 97.

10

1434 (3d Cir. 1997). If the proposed amendment "is frivolous or advances a claim or defense that is legally insufficient on its face, the court may deny leave to amend." *Harrison Beverage Co. v. Dribeck Imp., Inc.*, 133 F.R.D. 463, 468–69 (D.N.J.1990) (citing 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1487 (2d ed.1990)). ProPharma easily meets this burden, as reflected in the proposed added paragraphs in the Amended Answer found in Exhibit A.

Donnelly was in breach of the Agreement because (1) he was subject to express non-compete, non-disclosure, and service provisions as set forth in the Relevant Background section, *infra*; (2) he breached the non-compete and non-disclosure provisions by providing consultation to Summit Partners, a potential buyer of ProPharma *and* breached the Board service provision by ceasing his Board duties; and (3) ProPharma was injured because Donnelly's consultation resulted in Summit Partners dropping its bid for ProPharma and ProPharma was deprived of the benefit that would have been provided by Donnelly's Board service.[7] Donnelly's breach was material because it was "a failure to do something that is so fundamental to a contract that the failure to perform that obligation defeats the essential purpose of the contract or makes it impossible for the other party to perform under the contract." *Shore Invs., Inc. v. Bhole, Inc.*, 2011 WL 5967253, at *5 (Del. Super. Ct. Nov. 28, 2011)); *see also BioLife Solutions, Inc. v. Endocare, Inc.*, 838 A.2d 268, 278 (Del. Ch.2003) (noting that one of several factors to consider when determining whether a failure to render performance is material is whether a party was "deprived of the benefit which

---

[7] The Agreement is governed by Delaware law. "Under Delaware law, the elements of a breach of contract claim are: 1) a contractual obligation; 2) a breach of that obligation by the defendant; and 3) a resulting a material breach is damage to the plaintiff." *H–M Wexford LLC v. Encorp, Inc.*, 832 A.2d 129, 140 (Del. Ch. 2003) (citing *Moore Bus. Forms, Inc. v. Cordant Holdings Corp.*, 1995 WL 662685, at *7 (Del. Ch. Nov. 2, 1995)).

[it] reasonably expected"). Indeed, if (as Donnelly claims) he remained a ProPharma Board member through September 2020, providing an advantage to a potential ProPharma buyer would directly violate the Agreement's express provisions. ProPharma was deprived of the benefit of Donnelly's non-compete obligations under the Agreement—obligations that ProPharma reasonably expected Donnelly to abide by and especially in the months leading up to the eventual sale of a portfolio company such as ProPharma. If proven at trial, this defense will render unenforceable his right to vested and unvested shares. In addition, by no longer providing Board services, Donnelly failed to perform (and ProPharma was deprived of) his primary obligations as a Board member. Accordingly, the proposed affirmative defense is not futile.

## CONCLUSION

For the reasons set forth above, ProPharma respectfully requests the Court grant leave to amend and direct the Clerk to file the proposed amended Answer attached as Exhibit A.

| | |
|---|---|
| Dated: February 3, 2023 | */s/ Katharine L. Mowery*<br>Susan M. Hannigan (#5342)<br>Katharine L. Mowery (#5629)<br>John M. O'Toole ($6448)<br>Richards, Layton & Finger, P.A.<br>920 North King Street<br>Wilmington, DE 19801<br>(302) 651-7700<br>Hannigan@rlf.com<br>Mowery@rlf.com<br>OToole@rlf.com<br><br>OF COUNSEL:<br><br>Jonathan E. Missner<br>Robert B. Gilmore<br>Philip J. O'Beirne<br>Kevin L. Attridge<br>Samantha P. Christensen |

Stein Mitchell Beato & Missner, LLP
901 15th Street NW, Suite 700
Washington, DC 20005
(202) 737-7777
jmissner@steinmitchell.com
rgilmore@steinmitchell.com
pobeirne@steinmitchell.com
kattridge@steinmitchell.com
schristensen@steinmitchell.com

*Attorneys for Defendant ProPharma Group Topco, LLC*