# EXHIBIT A



Planet Depos
We Make It *Happen*

# Transcript of Neil J. Beaton

**Date:** September 22, 2022
**Case:** Donnelly -v- ProPharma Group TopCo., LLC

**Planet Depos**
**Phone:** 888.433.3767
**Email:** transcripts@planetdepos.com
**www.planetdepos.com**

WORLDWIDE COURT REPORTING & LITIGATION TECHNOLOGY

1          IN THE UNITED STATES DISTRICT COURT

2            FOR THE DISTRICT OF DELAWARE

3     ------------------------------x

4     PATRICK K. DONNELLY,           :

5                      Plaintiff,   : Civil Action No.:

6        v.                         : 21-cv-00894-MAK

7     PROPHARMA GROUP TOPCO, LLC,    :

8                      Defendant.    :

9     ------------------------------x

10

11

12

13              Videotaped Deposition of

14        NEIL J. BEATON, CPA/ABV/CFF, CFA, ASA

15              Tysons Corner, Virginia

16            Thursday, September 22, 2022

17                  9:59 a.m. EST

18

19

20

21

22

23    Job No:  464090

24    Pages:  1 - 157

25    Reported by:  Kelly Carnegie, CSR, RPR

Transcript of Neil J. Beaton
September 22, 2022                                        2

1       Videotaped Deposition of NEIL J. BEATON,

2    CPA/ABV/CFF, CFA, ASA, held at the offices of:

3

4

5

6

7

8

9            McGuireWoods, LLP

10           1750 Tysons Boulevard

11           Suite 1800

12           Tysons Corner, Virginia 22102

13

14

15

16

17

18

19

20       Pursuant to Notice, before Kelly Carnegie,

21   Certified Shorthand Reporter, Registered

22   Professional Reporter, and Electronic Notary

23   Public in and for the Commonwealth of Virginia.

24

25

Transcript of Neil J. Beaton
September 22, 2022                                                3

```
 1          A P P E A R A N C E S
 2   ON BEHALF OF THE PLAINTIFF:
 3        KEITH J. MINSON, ESQUIRE
 4        McGuireWoods, LLP
 5        1750 Tysons Boulevard
 6        Suite 1800
 7        Tysons Corner, Virginia 22102
 8        (703) 712-5000
 9
10
11
12   ON BEHALF OF THE DEFENDANT:
13        SAMANTHA CHRISTENSEN, ESQUIRE
14        Stein Mitchell Beato & Missner, LLP
15        901 15th Street, NW
16        Suite 700
17        Washington, D.C. 20005
18        (202) 737-7777
19
20
21
22   ALSO PRESENT:  Diamante Parrish, Videographer
23
24
25
```

Transcript of Neil J. Beaton
September 22, 2022                                    4

```
1              C O N T E N T S

2    EXAMINATION OF                        PAGE

3    NEIL J. BEATON, CPA/ABV/CFF, CFA, ASA

4         By Mr. Minson                     6

5

6

7

8              E X H I B I T S

9         (Exhibits attached to the transcript.)

10   BEATON DEPOSITION EXHIBITS            PAGE

11   Exhibit 1   August 19, 2022 Report     20

12   Exhibit 2   First Amended Complaint    30

13   Exhibit 3   September 4, 2020 Demand Letter

14               DONNELLY00001292 - 00001300   57

15   Exhibit 4   Linden Capital Partners III LP

16               2019 Valuation

17               LINDEN0000461 - LINDEN0000466   155

18   Exhibit 5   September 12, 2022 Report   112

19   Exhibit 6   Excel Spreadsheet

20               LINDEN0000458              155

21

22

23

24

25
```

Transcript of Neil J. Beaton
September 22, 2022                          5

| | | |
|---|---|---|
| 1 | P R O C E E D I N G S | |
| 2 | THE VIDEOGRAPHER:  Here begins media one | 09:58:58 |
| 3 | in the videotaped deposition of Neil J. Beaton in | 09:59:03 |
| 4 | the matter of Donnelly v. ProPharma Group Topco, | 09:59:07 |
| 5 | LLC in the United States District Court for the | 09:59:13 |
| 6 | District of Delaware, Case No. 21-cv-00894-MAK. | 09:59:16 |
| 7 | Today's date is September 22, 2022.  The | 09:59:28 |
| 8 | time on the video monitor is 9:59 a.m. Eastern. | 09:59:32 |
| 9 | The videographer today is Diamante Parrish | 09:59:38 |
| 10 | representing Planet Depos.  This video deposition | 09:59:40 |
| 11 | is taking place at 1750 Tysons Boulevard, Suite | 09:59:44 |
| 12 | 1800, McLean, Virginia, 22102. | 09:59:50 |
| 13 | Would counsel please voice identify | 09:59:55 |
| 14 | themselves and state whom they represent. | 09:59:57 |
| 15 | MR. MINSON:  Keith Minson from | 09:59:59 |
| 16 | McGuireWoods on behalf of the plaintiff, Patrick | 10:00:01 |
| 17 | K. Donnelly. | 10:00:04 |
| 18 | MS. CHRISTENSEN:  Samantha Christensen | 10:00:06 |
| 19 | of Stein Mitchell Beato & Missner on behalf of | 10:00:08 |
| 20 | defendant, ProPharma Group Topco, LLC. | 10:00:10 |
| 21 | THE VIDEOGRAPHER:  The court reporter | 10:00:15 |
| 22 | today is Kelly Carnegie representing Planet Depos. | 10:00:16 |
| 23 | Would the reporter please swear in the | 10:00:18 |
| 24 | witness. | 10:00:20 |
| 25 | Whereupon, | 10:00:34 |

Transcript of Neil J. Beaton
September 22, 2022                                   6

| | | |
|---|---|---|
| 1 | NEIL J. BEATON, CPA/ABV/CFF, CFA, ASA | 10:00:34 |
| 2 | being first duly sworn or affirmed to testify to | 10:00:34 |
| 3 | the truth, the whole truth, and nothing but the | 10:00:34 |
| 4 | truth, was examined and testified as follows: | 10:00:34 |
| 5 | EXAMINATION BY COUNSEL FOR THE PLAINTIFF | 10:00:34 |
| 6 | BY MR. MINSON: | 10:00:34 |
| 7 | Q   Okay.  Good morning, Mr. Beaton.  As I | 10:00:34 |
| 8 | said, my name is Keith Minson and I'm here on | 10:00:40 |
| 9 | behalf of Mr. Donnelly to discuss your opinions in | 10:00:42 |
| 10 | the report that you presented for the case of | 10:00:48 |
| 11 | Donnelly v. ProPharma Group Topco, LLC.  I know | 10:00:51 |
| 12 | you've been deposed several times before and | 10:00:56 |
| 13 | you've been -- you've testified several times | 10:00:59 |
| 14 | before, so -- but I just want to go over the rules | 10:01:02 |
| 15 | per the usual. | 10:01:06 |
| 16 | I'm going to ask you questions.  If | 10:01:07 |
| 17 | there's anything that I ask that you don't | 10:01:09 |
| 18 | understand or you need clarification on, I'm more | 10:01:11 |
| 19 | than happy to clarify so you can provide the most | 10:01:13 |
| 20 | accurate answer possible. | 10:01:16 |
| 21 | And when you are answering the | 10:01:19 |
| 22 | questions, it's a human tendency to nod and to use | 10:01:20 |
| 23 | body language, but because we are on the record, I | 10:01:26 |
| 24 | will ask that you give verbal responses for all my | 10:01:28 |
| 25 | questions today. | 10:01:32 |

| | | |
|---|---|---|
| 1 | If you need a restroom break or if, you | 10:01:33 |
| 2 | know, you come to a point where you just need to | 10:01:37 |
| 3 | stop, just let me know and I will let the court | 10:01:40 |
| 4 | reporter know and the videographer know and we can | 10:01:44 |
| 5 | take a break.  At that point none of your | 10:01:47 |
| 6 | statements after the court reporter informs you | 10:01:51 |
| 7 | will be transcribed or recorded under oath. | 10:01:54 |
| 8 | I mean, that's it.  The videographer | 10:02:02 |
| 9 | already said all your statements are under oath | 10:02:05 |
| 10 | today and I'll just ask you to provide the most | 10:02:07 |
| 11 | accurate answers possible. | 10:02:11 |
| 12 | First I'd like to ask you about your | 10:02:16 |
| 13 | employment history.  Where do you currently | 10:02:17 |
| 14 | work? | 10:02:19 |
| 15 | A   Alvarez & Marsal Valuation Services, | 10:02:20 |
| 16 | LLC. | 10:02:24 |
| 17 | Q   Okay.  And how long have you been | 10:02:25 |
| 18 | employed there? | 10:02:28 |
| 19 | A   Approximately ten years. | 10:02:29 |
| 20 | Q   Okay.  And what did you do before you | 10:02:31 |
| 21 | worked there? | 10:02:33 |
| 22 | A   Basically the same thing for another | 10:02:35 |
| 23 | firm known as Grant Thornton, LLC.  And that's | 10:02:37 |
| 24 | T-h-o-r-n-t-o-n for Kelly. | 10:02:41 |
| 25 | Q   Okay.  And what licenses or | 10:02:43 |

Transcript of Neil J. Beaton
September 22, 2022                                    8

| | | |
|---|---|---|
| 1 | certifications do you possess? | 10:02:47 |
| 2 | A There's two different things. Licenses, | 10:02:49 |
| 3 | I'm licensed as a CPA in the state of Washington, | 10:02:52 |
| 4 | and then I have five designations, CPA/ABV/CFF, | 10:02:57 |
| 5 | CFA, and ASA. | 10:03:03 |
| 6 | Q Can you tell me what those stand for. | 10:03:05 |
| 7 | I'm sorry. | 10:03:07 |
| 8 | A Certainly. Certified public account, | 10:03:09 |
| 9 | accredited in business valuations, certified | 10:03:11 |
| 10 | financial forensics, chartered financial analyst, | 10:03:14 |
| 11 | and accredited senior appraiser. | 10:03:18 |
| 12 | Q Okay. And so your expertise includes | 10:03:21 |
| 13 | your ability to independently take financial | 10:03:22 |
| 14 | records and provide a valuation for a company? | 10:03:27 |
| 15 | A That is one of my core competencies, | 10:03:31 |
| 16 | yes. | 10:03:34 |
| 17 | Q Okay. And did you do that in this case? | 10:03:36 |
| 18 | A I did not. | 10:03:39 |
| 19 | Q Okay. But did you validate Linden's | 10:03:42 |
| 20 | valuation in this case? | 10:03:46 |
| 21 | A I did. | 10:03:47 |
| 22 | Q Okay. Have you ever been investigated | 10:03:48 |
| 23 | by a licensing board in relation to any of your | 10:03:49 |
| 24 | professional work? | 10:03:54 |
| 25 | A Yes. | 10:03:55 |

Transcript of Neil J. Beaton
September 22, 2022                                9

| | | |
|---|---|---|
| 1 | Q   And when was that? | 10:03:56 |
| 2 | A   Ten, 12 years ago perhaps. | 10:04:00 |
| 3 | Q   And can you tell me what that was in | 10:04:03 |
| 4 | reference to. | 10:04:05 |
| 5 | A   Certainly.  An individual who had | 10:04:06 |
| 6 | referred some work to me assumed that I was going | 10:04:10 |
| 7 | to pay him a referral fee, which was inappropriate | 10:04:14 |
| 8 | under the circumstances.  He reported me to the | 10:04:19 |
| 9 | state board of accountancy in Washington state. | 10:04:22 |
| 10 | They investigated and found all his claims false | 10:04:25 |
| 11 | and no other action was taken. | 10:04:28 |
| 12 | Q   And have you ever been disciplined by a | 10:04:31 |
| 13 | state licensing -- | 10:04:33 |
| 14 | A   No. | 10:04:35 |
| 15 | Q   Are there any other investigations | 10:04:36 |
| 16 | besides that? | 10:04:37 |
| 17 | A   Sorry for overspeaking you.  No, I have | 10:04:38 |
| 18 | not. | 10:04:41 |
| 19 | Q   Okay.  And how much of your work today | 10:04:42 |
| 20 | is litigation-related? | 10:04:44 |
| 21 | A   Today, just this, a hundred percent. | 10:04:48 |
| 22 | Q   And at your current employment, how much | 10:04:53 |
| 23 | -- what percentage of your work is focused on | 10:04:55 |
| 24 | being a professional expert? | 10:04:59 |
| 25 | A   I would estimate 40 percent of my | 10:05:04 |

Transcript of Neil J. Beaton
September 22, 2022                                    10

| | | |
|---|---|---|
| 1 | engagements are litigated-related.  The others | 10:05:06 |
| 2 | would be non-litigation-related. | 10:05:09 |
| 3 | Q   Okay.  And has your testimony as an | 10:05:12 |
| 4 | expert ever been excluded by a court? | 10:05:14 |
| 5 | A   Yes. | 10:05:19 |
| 6 | Q   And can you tell me about those cases. | 10:05:19 |
| 7 | A   The first one was December 2000.  It | 10:05:21 |
| 8 | involved a case in the Eastern District of | 10:05:25 |
| 9 | Pennsylvania.  The case name was MCN, Medical | 10:05:28 |
| 10 | Consultants Network, v. Cantor Johnston, which is | 10:05:34 |
| 11 | a CPA firm.  I did a valuation and a damage | 10:05:38 |
| 12 | analysis, and the judge ruled that the date upon | 10:05:44 |
| 13 | which I gave my opinions was improper and excluded | 10:05:49 |
| 14 | my testimony related to the improper date of | 10:05:53 |
| 15 | measurement. | 10:05:57 |
| 16 | Q   And what was that case about? | 10:05:58 |
| 17 | A   It was an acquisition gone bad.  There | 10:06:00 |
| 18 | were allegations by the plaintiff that the | 10:06:04 |
| 19 | defendant misstated the financial statements, | 10:06:07 |
| 20 | which turned out to be true, and then it was just | 10:06:10 |
| 21 | a matter of damages and measurement. | 10:06:14 |
| 22 | Q   Okay.  And who did you represent for | 10:06:16 |
| 23 | that? | 10:06:17 |
| 24 | A   MCN. | 10:06:19 |
| 25 | Q   Okay.  And the other one? | 10:06:22 |

Transcript of Neil J. Beaton
September 22, 2022                                    11

| | | |
|---|---|---|
| 1 | A    Yeah.   Then I have partials.   That was a | 10:06:23 |
| 2 | complete one.   But partial exclusions related I | 10:06:27 |
| 3 | believe for others, is my recollection, anywhere | 10:06:31 |
| 4 | over the past five to ten years mainly involving | 10:06:35 |
| 5 | components of an intellectual property claim under | 10:06:40 |
| 6 | patent law where sections of my testimony were | 10:06:43 |
| 7 | excluded whereas I was able to testify in other | 10:06:48 |
| 8 | areas. | 10:06:52 |
| 9 | Q    Okay.   And was one of those cases | 10:06:53 |
| 10 | AlphaProTech, Inc. versus VWR International? | 10:06:54 |
| 11 | A    Correct. | 10:06:58 |
| 12 | Q    And what was that case about? | 10:06:59 |
| 13 | A    So that was a patent infringement and I | 10:07:00 |
| 14 | did a damage analysis, but I incorporated | 10:07:06 |
| 15 | international sales, which apparently under the | 10:07:10 |
| 16 | U.S. patent law are not allowed, and that was the | 10:07:12 |
| 17 | portion of my testimony that was excluded. | 10:07:15 |
| 18 | Q    Okay.   And who was your client in that | 10:07:20 |
| 19 | case? | 10:07:22 |
| 20 | A    AlphaProTech. | 10:07:23 |
| 21 | Q    Okay. | 10:07:27 |
| 22 | A    And for Kelly again, it's Alpha, | 10:07:27 |
| 23 | A-l-p-h-a, Pro, P-r-o, and then Tech, T-e-c-h. | 10:07:30 |
| 24 | Q    And who is your client in this case? | 10:07:36 |
| 25 | A    ProPharma Topco -- ProPharma Group | 10:07:44 |

Transcript of Neil J. Beaton
September 22, 2022                                          12

| | | |
|---|---|---|
| 1 | Topco, LLC. | 10:07:48 |
| 2 | Q   Okay.  And when did your client first | 10:07:49 |
| 3 | contact you about being an expert in this case? | 10:07:51 |
| 4 | A   Well, the attorneys for the client | 10:07:53 |
| 5 | contacted me sometime I believe in either late May | 10:07:55 |
| 6 | or early June. | 10:07:58 |
| 7 | Q   Okay.  And how are you being compensated | 10:08:01 |
| 8 | for your work in this case? | 10:08:04 |
| 9 | A   My firm gets paid an hourly rate for my | 10:08:05 |
| 10 | services and the services of my staff. | 10:08:08 |
| 11 | Q   Okay.  And have you already received | 10:08:11 |
| 12 | payment? | 10:08:14 |
| 13 | A   I don't even believe I've billed yet. | 10:08:16 |
| 14 | Q   Okay. | 10:08:19 |
| 15 | A   I may have, but I don't recall. | 10:08:19 |
| 16 | Q   And regarding your report, does your | 10:08:23 |
| 17 | report contain all the facts or data that you | 10:08:25 |
| 18 | considered in forming your opinions? | 10:08:29 |
| 19 | A   I have two reports, so I don't know | 10:08:32 |
| 20 | which one you're referring to. | 10:08:33 |
| 21 | Q   Both reports, both your rebuttal and | 10:08:35 |
| 22 | your initial report in this case. | 10:08:37 |
| 23 | A   They contain all the opinions that | 10:08:38 |
| 24 | existed at the time I wrote those reports, yes. | 10:08:41 |
| 25 | Q   Okay.  And does your report contain the | 10:08:43 |

Transcript of Neil J. Beaton
September 22, 2022                                          13

| | | |
|---|---|---|
| 1 | exhibits that will be used to summarize the | 10:08:47 |
| 2 | opinions or support your opinions at trial? | 10:08:50 |
| 3 | A   If asked to prepare demonstratives, the | 10:08:55 |
| 4 | information contained in my reports will be | 10:09:01 |
| 5 | utilized for those demonstratives. | 10:09:04 |
| 6 | Q   Okay. | 10:09:10 |
| 7 | A   I should add there may be other | 10:09:10 |
| 8 | information that are not contained in my report -- | 10:09:12 |
| 9 | for example, Mr. Estabrook's report -- that may | 10:09:14 |
| 10 | also be included in demonstratives, so I'm not | 10:09:17 |
| 11 | limiting my demonstratives to my two reports. | 10:09:21 |
| 12 | Q   Okay.  And if you reach any new | 10:09:26 |
| 13 | conclusions, do you plan to supplement your | 10:09:29 |
| 14 | report? | 10:09:31 |
| 15 | A   If asked by counsel, I will certainly | 10:09:31 |
| 16 | supplement my report with new opinions, yes. | 10:09:34 |
| 17 | Q   Okay.  Did your client provide you any | 10:09:44 |
| 18 | facts or data or assumptions to include in your | 10:09:45 |
| 19 | report? | 10:09:49 |
| 20 | A   Well, they provided me with documents | 10:09:51 |
| 21 | that contained facts and data that I've included | 10:09:53 |
| 22 | in my report, yes. | 10:09:57 |
| 23 | Q   Okay.  And -- | 10:09:59 |
| 24 | A   And, Mr. Minson, let me add, I did have | 10:10:10 |
| 25 | a discussion that is contained in my first report | 10:10:13 |

Transcript of Neil J. Beaton
September 22, 2022                                    14

| | | |
|---|---|---|
| 1 | wherein I identified the individuals I spoke with | 10:10:16 |
| 2 | regarding a particular issue set forth in my first | 10:10:18 |
| 3 | report that were not contained in documents. | 10:10:21 |
| 4 | Q   Those individuals were identified by | 10:10:25 |
| 5 | name? | 10:10:27 |
| 6 | A   Correct. | 10:10:28 |
| 7 | Q   Okay.  And was the information that you | 10:10:28 |
| 8 | obtained through those conversations also | 10:10:40 |
| 9 | identified in your report as being ascribed to | 10:10:45 |
| 10 | those individuals? | 10:10:49 |
| 11 | A   Correct. | 10:10:50 |
| 12 | Q   Okay.  And did you attempt to -- in your | 10:11:03 |
| 13 | rebuttal report, did you attempt to validate any | 10:11:08 |
| 14 | investment bank reports that were used by Joe | 10:11:11 |
| 15 | Estabrook in this matter? | 10:11:13 |
| 16 | A   There weren't any reports prepared by | 10:11:16 |
| 17 | investment banks.  They were pitch decks. | 10:11:19 |
| 18 | Q   Okay. | 10:11:22 |
| 19 | A   And they're not validateable because | 10:11:22 |
| 20 | they were simply pitches for work that one of them | 10:11:25 |
| 21 | ultimately received. | 10:11:29 |
| 22 | Q   Did you -- did you validate the math, | 10:11:29 |
| 23 | the numbers used? | 10:11:32 |
| 24 | A   I did not do an independent calculation | 10:11:33 |
| 25 | of the math contained in the five reports, no. | 10:11:35 |

Transcript of Neil J. Beaton
September 22, 2022                              15

| | | |
|---|---|---|
| 1 | Q   Okay.  And -- okay.  Does your initial | 10:11:44 |
| 2 | report include any details about Mr. Estabrook's | 10:11:56 |
| 3 | appraisal? | 10:11:59 |
| 4 | A   I'm sorry.  The question again? | 10:12:00 |
| 5 | Q   Did your initial report include any | 10:12:01 |
| 6 | details about Mr. Estabrook's appraisal? | 10:12:03 |
| 7 | A   It could not have.  It was impossible. | 10:12:06 |
| 8 | Q   Okay. | 10:12:07 |
| 9 | A   I didn't have it.  So no I guess would | 10:12:08 |
| 10 | be the better answer. | 10:12:13 |
| 11 | Q   All right.  And through your work with | 10:12:14 |
| 12 | Alvarez & Marsal, can you access the confidential | 10:12:17 |
| 13 | and proprietary financial data of all your | 10:12:23 |
| 14 | business clients? | 10:12:27 |
| 15 | A   No. | 10:12:28 |
| 16 | Q   Okay.  And so when you're working for | 10:12:28 |
| 17 | Alvarez & Marsal and you're not working as an | 10:12:33 |
| 18 | expert, what type of work do you do? | 10:12:36 |
| 19 | A   My focused work is valuing early stage | 10:12:40 |
| 20 | venture backed companies for a variety of | 10:12:45 |
| 21 | purposes. | 10:12:47 |
| 22 | Q   Okay.  And how do you go about doing | 10:12:50 |
| 23 | that? | 10:12:52 |
| 24 | A   I get called by the client.  I get data | 10:12:54 |
| 25 | that I request.  I give it to my staff.  They | 10:12:58 |

Transcript of Neil J. Beaton
September 22, 2022                                          16

| | | |
|---|---|---|
| 1 | crunch the numbers.  I review, talk to the client, | 10:13:03 |
| 2 | draft a report, issue. | 10:13:06 |
| 3 | Q   And the data that you receive from | 10:13:11 |
| 4 | clients when you do this work, is it normally | 10:13:13 |
| 5 | confidential data? | 10:13:16 |
| 6 | MS. CHRISTENSEN:  Counsel, do you mean | 10:13:18 |
| 7 | his non-litigation work? | 10:13:19 |
| 8 | MR. MINSON:  Non-litigation work. | 10:13:22 |
| 9 | MS. CHRISTENSEN:  Okay. | 10:13:23 |
| 10 | A   Some of it is, yes. | 10:13:26 |
| 11 | BY MR. MINSON: | 10:13:28 |
| 12 | Q   Okay.  And through your work with | 10:13:28 |
| 13 | Alvarez & Marsal, did you have any preexisting | 10:13:31 |
| 14 | knowledge of Mr. Donnelly or his financial | 10:13:34 |
| 15 | information or any companies that he is involved | 10:13:38 |
| 16 | in? | 10:13:43 |
| 17 | A   Not me, no. | 10:13:45 |
| 18 | Q   Okay.  And have you ever performed any | 10:13:46 |
| 19 | work on behalf of Alvarez & Marsal Valuation | 10:13:53 |
| 20 | Services, LLC for Veranex? | 10:13:57 |
| 21 | A   No, not that I'm aware of. | 10:14:00 |
| 22 | Q   Okay.  And are you currently -- have you | 10:14:03 |
| 23 | ever been walled off or had your access limited to | 10:14:08 |
| 24 | Veranex's data? | 10:14:12 |
| 25 | A   I've never heard of Veranex. | 10:14:14 |

Transcript of Neil J. Beaton
September 22, 2022                                    17

| | | |
|---|---|---|
| 1 | Q   Okay. | 10:14:16 |
| 2 | A   So I would not have to have a wall. | 10:14:16 |
| 3 | Q   Can you indicate your familiarity with | 10:14:19 |
| 4 | the advice given by -- I'm going to call Alvarez & | 10:14:23 |
| 5 | Marsal A&M.  It's a little easier to say. | 10:14:27 |
| 6 | A   Sounds good. | 10:14:30 |
| 7 | Q   By A&M for the following transactions: | 10:14:31 |
| 8 | The first one is going to be Devicia Medidee. | 10:14:34 |
| 9 | This is a medical company from Europe and it was | 10:14:39 |
| 10 | an acquisition by Veranex. | 10:14:45 |
| 11 | A   You'll have to tell me who the | 10:14:48 |
| 12 | individuals were and what division within A&M it | 10:14:49 |
| 13 | was so I can give you that -- | 10:14:53 |
| 14 | Q   Okay. | 10:14:54 |
| 15 | A   -- full answer -- | 10:14:54 |
| 16 | Q   So this is -- | 10:14:55 |
| 17 | A   -- because I don't know those names. | 10:14:55 |
| 18 | Q   Okay.  So this is from Donatien Chenu, | 10:14:57 |
| 19 | managing director in the UK for the A&M | 10:14:58 |
| 20 | Transaction Advisory Group. | 10:15:06 |
| 21 | MS. CHRISTENSEN:  Objection, form, lack | 10:15:07 |
| 22 | of foundation. | 10:15:11 |
| 23 | A   So the TAG group is a completely | 10:15:11 |
| 24 | different LLC and unit with a completely different | 10:15:13 |
| 25 | set of communications protocol to which I have no | 10:15:16 |

Transcript of Neil J. Beaton
September 22, 2022                                      18

| | | |
|---|---|---|
| 1 | access. | 10:15:19 |
| 2 | BY MR. MINSON: | 10:15:20 |
| 3 | Q   Okay.  And as far as Mr. Donnelly's | 10:15:20 |
| 4 | company Veranex, have you ever -- for the same | 10:15:23 |
| 5 | transaction, have you ever done business or | 10:15:27 |
| 6 | interacted with Parm Dhillon, senior director in | 10:15:29 |
| 7 | London? | 10:15:34 |
| 8 | A   What group? | 10:15:36 |
| 9 | Q   Alvarez & Marsal, Parkhouse. | 10:15:39 |
| 10 | MS. CHRISTENSEN:  Objection to form, | 10:15:42 |
| 11 | lack of foundation. | 10:15:43 |
| 12 | A   Same.  Completely different group.  As a | 10:15:44 |
| 13 | matter of fact, the London operations are | 10:15:46 |
| 14 | completely different, a separate distinct | 10:15:47 |
| 15 | entity -- | 10:15:50 |
| 16 | BY MR. MINSON: | 10:15:52 |
| 17 | Q   Okay. | 10:15:52 |
| 18 | A   -- from the U.S. operations.  So I would | 10:15:52 |
| 19 | have no ability to access any electronic data or | 10:15:54 |
| 20 | information in London unless I was in London | 10:15:57 |
| 21 | working with those two groups. | 10:16:00 |
| 22 | Q   And how about for Simon Joyeux from | 10:16:02 |
| 23 | Fusion Biotec? | 10:16:06 |
| 24 | A   Question? | 10:16:10 |
| 25 | Q   My question is have you ever interacted | 10:16:11 |

Transcript of Neil J. Beaton
September 22, 2022                              19

| | | |
|---|---|---|
| 1 | with Mr. Joyeux or heard of the acquisition of | 10:16:13 |
| 2 | Fusion Biotec by Veranex or potential acquisition | 10:16:21 |
| 3 | of Fusion Biotec by Veranex? | 10:16:24 |
| 4 | MS. CHRISTENSEN:  Objection, form, lack | 10:16:28 |
| 5 | of foundation. | 10:16:29 |
| 6 | A   I've never heard of the individual and | 10:16:29 |
| 7 | would never have had contact with him or her. | 10:16:31 |
| 8 | BY MR. MINSON: | 10:16:35 |
| 9 | Q   Okay.  And how about Brendon Emery, | 10:16:35 |
| 10 | Global Transaction Advisory Group, also based in | 10:16:43 |
| 11 | the United States, on behalf of A&M to advise on | 10:16:45 |
| 12 | the acquisition of Fusion Biotec? | 10:16:53 |
| 13 | MS. CHRISTENSEN:  Objection, form, lack | 10:16:55 |
| 14 | of foundation. | 10:16:58 |
| 15 | A   I do not know Mr. Emery and would not | 10:16:59 |
| 16 | have had access to any electronic data contained | 10:17:01 |
| 17 | or utilized in that advisory role. | 10:17:05 |
| 18 | BY MR. MINSON: | 10:17:11 |
| 19 | Q   Okay.  And so I've asked you all these | 10:17:11 |
| 20 | questions because it's my understanding -- do you | 10:17:15 |
| 21 | ever do any work or are you -- or are you involved | 10:17:16 |
| 22 | with any of the transaction advisory groups at | 10:17:20 |
| 23 | A&M? | 10:17:24 |
| 24 | A   I am not, no. | 10:17:25 |
| 25 | Q   Okay.  All right.  So, Mr. Beaton, I'm | 10:17:33 |

Transcript of Neil J. Beaton
September 22, 2022                                    20

| | | |
|---|---|---|
| 1 | handing you a copy of your report and I'd like to | 10:17:41 |
| 2 | mark this as Exhibit 1. | 10:17:43 |
| 3 | (Beaton Deposition Exhibit No. 1 was | 10:17:55 |
| 4 | marked for identification and was attached to the | 10:17:55 |
| 5 | deposition transcript.) | 10:17:55 |
| 6 | THE WITNESS:  Thank you, Kelly. | 10:17:56 |
| 7 | MS. CHRISTENSEN:  Thank you. | 10:17:57 |
| 8 | BY MR. MINSON: | 10:18:09 |
| 9 | Q   And this is your expert report dated | 10:18:09 |
| 10 | August 19 in this case.  Looking at your report, | 10:18:11 |
| 11 | do you believe that to be a true and accurate copy | 10:18:18 |
| 12 | of the report that you presented to us? | 10:18:20 |
| 13 | A   Yes. | 10:19:27 |
| 14 | Q   Okay.  And how much time did you spend | 10:19:29 |
| 15 | on writing this report? | 10:19:32 |
| 16 | A   I don't recall. | 10:19:35 |
| 17 | Q   Okay.  And who asked you to draft this | 10:19:38 |
| 18 | report? | 10:19:39 |
| 19 | A   I believe I state counsel in the first | 10:19:43 |
| 20 | paragraph. | 10:19:48 |
| 21 | Q   Okay.  And are all the documents that | 10:19:49 |
| 22 | you reviewed in rendering your report listed in | 10:19:51 |
| 23 | the report? | 10:19:54 |
| 24 | A   The documents I reviewed should be | 10:19:56 |
| 25 | listed in Exhibit 4, and if they are not listed in | 10:19:59 |

Transcript of Neil J. Beaton
September 22, 2022                                    21

| | | |
|---|---|---|
| 1 | Exhibit 4, they should be footnoted. | 10:20:04 |
| 2 | Q   Okay.  And are there documents that you | 10:20:11 |
| 3 | considered to support your opinions that are not | 10:20:12 |
| 4 | cited? | 10:20:16 |
| 5 | A   No.  If I've utilized a document in my | 10:20:18 |
| 6 | report, it's either in a footnote or it's | 10:20:21 |
| 7 | contained in Exhibit 4 to my deposition, which is | 10:20:24 |
| 8 | Exhibit 1 for confusion purposes.  That's great, | 10:20:28 |
| 9 | isn't it? | 10:20:33 |
| 10 | Q   Okay.  And so -- okay.  And what facts | 10:20:34 |
| 11 | or data about ProPharma did you consider in | 10:21:03 |
| 12 | forming your opinion in this case? | 10:21:07 |
| 13 | A   Everything listed in my two reports, as | 10:21:11 |
| 14 | well as the information I reviewed in Mr. | 10:21:13 |
| 15 | Estabrook's reports. | 10:21:17 |
| 16 | Q   And so outside of the valuations that | 10:21:19 |
| 17 | ProPharma completed and that you validated, did | 10:21:24 |
| 18 | you independently review ProPharma's financials? | 10:21:29 |
| 19 | A   No. | 10:21:34 |
| 20 | Q   And were any of the facts or data you | 10:21:37 |
| 21 | considered in forming your opinion on this case | 10:21:46 |
| 22 | provided by ProPharma or their attorneys? | 10:21:48 |
| 23 | MS. CHRISTENSEN:  I'm going to object on | 10:21:55 |
| 24 | the basis of privilege and instruct the witness. | 10:21:56 |
| 25 | You're free to answer the question as | 10:22:00 |

Transcript of Neil J. Beaton
September 22, 2022                                    22

| | | |
|---|---|---|
| 1 | phrased, but do not get into attorney-client | 10:22:01 |
| 2 | communications or communications with counsel for | 10:22:05 |
| 3 | ProPharma. | 10:22:07 |
| 4 | MR. MINSON:  And I'm -- just in | 10:22:08 |
| 5 | answering that objection, for the record, I'm | 10:22:10 |
| 6 | asking that question pursuant to Federal Rule of | 10:22:12 |
| 7 | Civil Procedure 26(b)(4)(C)(i) through -- (i) | 10:22:16 |
| 8 | through -- (i) through (iii). | 10:22:25 |
| 9 | A   I've already responded to the first part | 10:22:29 |
| 10 | of that question, and no to the second part of the | 10:22:31 |
| 11 | question. | 10:22:34 |
| 12 | BY MR. MINSON: | 10:22:34 |
| 13 | Q   Okay.  And as part of the assumptions | 10:22:34 |
| 14 | that you used in creating your report, is one of | 10:22:51 |
| 15 | the assumptions that Linden used the market | 10:22:53 |
| 16 | analysis in order to perform their valuation? | 10:23:00 |
| 17 | A   It wasn't an assumption.  It was a fact. | 10:23:03 |
| 18 | Q   And so it's your belief that Linden | 10:23:05 |
| 19 | started by finding comparable companies and then | 10:23:12 |
| 20 | selecting ones that were appropriate, and then | 10:23:18 |
| 21 | determined an EBITDA multiple to create their | 10:23:22 |
| 22 | valuation? | 10:23:28 |
| 23 | MS. CHRISTENSEN:  Objection, form to the | 10:23:29 |
| 24 | extent his question misstates the document. | 10:23:30 |
| 25 | A   I described the process in my report, | 10:23:36 |

Transcript of Neil J. Beaton
September 22, 2022                                    23

| | | |
|---|---|---|
| 1 | which is very similar to what you stated. | 10:23:41 |
| 2 | BY MR. MINSON: | 10:23:45 |
| 3 |    Q   Okay.  And what specific characteristics | 10:23:45 |
| 4 | of ProPharma did you evaluate in drawing your | 10:23:50 |
| 5 | conclusions to Linden's valuation?  Or in other | 10:23:55 |
| 6 | words, why were there -- did you evaluate any | 10:24:01 |
| 7 | characteristics of ProPharma that led you to | 10:24:08 |
| 8 | believe that the comparables were proper? | 10:24:10 |
| 9 |    MS. CHRISTENSEN:  Objection, form. | 10:24:13 |
| 10 |    A   The answer to your question is yes, I | 10:24:21 |
| 11 | did. | 10:24:23 |
| 12 | BY MR. MINSON: | 10:24:23 |
| 13 |    Q   Okay.  And what were those? | 10:24:23 |
| 14 |    A   Size, growth, line of business, stage of | 10:24:27 |
| 15 | development, other acquisitions. | 10:24:34 |
| 16 |    Q   Okay. | 10:24:51 |
| 17 |    A   There may be others, but those are the | 10:24:51 |
| 18 | ones I can think of as I sit here. | 10:24:53 |
| 19 |    Q   Okay.  What generally accepted business | 10:24:56 |
| 20 | valuation standards apply in your report? | 10:24:58 |
| 21 |    A   Standards don't apply in my report. | 10:25:01 |
| 22 | There's a jurisdictional exception in SSVS 1, and | 10:25:03 |
| 23 | ASA provides an exception for oral testimony which | 10:25:08 |
| 24 | we're giving now.  So neither USPAP nor SSVS 1 | 10:25:10 |
| 25 | applies to my report. | 10:25:17 |

Transcript of Neil J. Beaton
September 22, 2022                                    24

| | | |
|---|---|---|
| 1 | Q   Okay.  Did you decline to use generally | 10:25:18 |
| 2 | accepted accounting principles? | 10:25:20 |
| 3 | A   I didn't perform a valuation, so not | 10:25:23 |
| 4 | subject to the standards set forth in USPAP and/or | 10:25:25 |
| 5 | SSVS 1. | 10:25:27 |
| 6 | Q   Okay.  All right.  Let's go to page 3, | 10:25:30 |
| 7 | paragraph two of your report.  I think we've | 10:25:33 |
| 8 | already been over this, but I just want to be | 10:25:45 |
| 9 | sure.  In your -- in paragraph two toward the | 10:25:48 |
| 10 | bottom, you said that your opinions are on the | 10:25:52 |
| 11 | integrity and the validity of Linden's valuation | 10:25:54 |
| 12 | process and the valuation conclusions for Mr. | 10:25:57 |
| 13 | Donnelly that -- Mr. Donnelly's vested units in | 10:26:00 |
| 14 | ProPharma.  So to me, is that stating that you | 10:26:04 |
| 15 | only tested validity and did not reach an | 10:26:06 |
| 16 | independent conclusion? | 10:26:09 |
| 17 | A   I've already told you -- | 10:26:11 |
| 18 | Q   I know. | 10:26:13 |
| 19 | A   -- I think now this is my third time -- | 10:26:13 |
| 20 | that I did not perform an independent valuation. | 10:26:16 |
| 21 | Q   I understand.  I'm just trying to | 10:26:19 |
| 22 | understand what you mean here.  Is that what | 10:26:21 |
| 23 | you're saying in that paragraph, is why I'm asking | 10:26:23 |
| 24 | that? | 10:26:25 |
| 25 | A   When you ask the question again, then I | 10:26:25 |

Transcript of Neil J. Beaton
September 22, 2022                              25

| | | |
|---|---|---|
| 1 | have to answer the question. | 10:26:27 |
| 2 |     Q   Right. | 10:26:28 |
| 3 |     A   And I have.  My engagement was to review | 10:26:29 |
| 4 | the Linden valuations and provide an opinion as to | 10:26:33 |
| 5 | their appropriateness, which I have done. | 10:26:37 |
| 6 |     Q   But you did say that you evaluated | 10:26:39 |
| 7 | growth, size, and I think -- what else did you | 10:26:42 |
| 8 | say? -- line of business and stage of development, | 10:26:47 |
| 9 | right? | 10:26:51 |
| 10 |     A   Correct statement. | 10:26:51 |
| 11 |     Q   And so were those -- those are | 10:26:52 |
| 12 | independent characteristics that you examined, | 10:26:55 |
| 13 | correct? | 10:26:58 |
| 14 |     A   I don't know what you mean by | 10:27:00 |
| 15 | independent characteristics.  They -- | 10:27:01 |
| 16 |     Q   Did you independently look at those -- | 10:27:03 |
| 17 |     A   You have to let -- you have to let me | 10:27:05 |
| 18 | finish -- | 10:27:06 |
| 19 |     Q   Sorry. | 10:27:06 |
| 20 |     A   -- my response, please, especially for | 10:27:06 |
| 21 | Kelly. | 10:27:08 |
| 22 |     So those characteristics are not | 10:27:09 |
| 23 | valuation characteristics for a valuation.  They | 10:27:11 |
| 24 | are characteristics to obtain information and the | 10:27:16 |
| 25 | question you asked me regarding comparability to | 10:27:17 |

Transcript of Neil J. Beaton
September 22, 2022                                        26

| | | |
|---|---|---|
| 1 | public companies and to the transactions, which I | 10:27:20 |
| 2 | did review because that's what Linden used, but I | 10:27:23 |
| 3 | did not do that independently for my own | 10:27:25 |
| 4 | valuation. | 10:27:28 |
| 5 |     Q   Okay. | 10:27:29 |
| 6 |     A   Thank you. | 10:27:29 |
| 7 |     Q   Was that your decision not to do that | 10:27:33 |
| 8 | independent valuation, or is that your engagement? | 10:27:49 |
| 9 |     A   I'm not sure I can separate the two.  My | 10:27:54 |
| 10 | engagement was to review and I didn't incorporate | 10:27:57 |
| 11 | a valuation, so I did not have to make a decision | 10:27:59 |
| 12 | to do a valuation or not.  That wasn't my | 10:28:03 |
| 13 | engagement. | 10:28:06 |
| 14 |     Q   Okay.  And is your opinion as an expert | 10:28:11 |
| 15 | that the valuation performed by Linden was | 10:28:15 |
| 16 | correct? | 10:28:18 |
| 17 |     A   What do you mean by correct? | 10:28:20 |
| 18 |     Q   Well, you've -- your report pretty much | 10:28:21 |
| 19 | says that they performed the valuations in the | 10:28:24 |
| 20 | right manner, but it doesn't actually speak to the | 10:28:30 |
| 21 | number that they reached at the end.  So is it | 10:28:34 |
| 22 | your opinion that end result is correct? | 10:28:36 |
| 23 |     MS. CHRISTENSEN:  Objection, form to the | 10:28:40 |
| 24 | extent that the question misstates the document. | 10:28:42 |
| 25 |     A   I don't know what you mean by correct. | 10:28:46 |

Transcript of Neil J. Beaton
September 22, 2022                                    27

| | | |
|---|---|---|
| 1 | There's a number that resulted from a proper | 10:28:47 |
| 2 | analysis and application of proper valuation | 10:28:52 |
| 3 | principles that resulted in a number.  Correct is | 10:28:55 |
| 4 | an adjective that doesn't really fit in valuation | 10:28:59 |
| 5 | because it's an estimate of value at a point in | 10:29:04 |
| 6 | time based upon numerous inputs.  Is it a proper | 10:29:07 |
| 7 | estimate?  Yes.  Is it a correct estimate?  Yes. | 10:29:12 |
| 8 | But is it a correct number?  I can't say that. | 10:29:16 |
| 9 | BY MR. MINSON: | 10:29:20 |
| 10 | Q   Okay.  On page 4, paragraph five of your | 10:29:20 |
| 11 | report, you discuss guideline public companies and | 10:29:24 |
| 12 | guideline company transactions and those two | 10:29:36 |
| 13 | methodologies under the market approach, and the | 10:29:39 |
| 14 | fourth line down you opine that those | 10:29:54 |
| 15 | methodologies are customary and reasonable | 10:30:01 |
| 16 | valuation methodologies that result in | 10:30:03 |
| 17 | transparent, verifiable, and reliable valuations | 10:30:07 |
| 18 | of ProPharma.  The selection of companies, | 10:30:09 |
| 19 | however, is that -- that's discretionary, is it | 10:30:14 |
| 20 | not? | 10:30:19 |
| 21 | A   Yes. | 10:30:23 |
| 22 | Q   Okay.  And so I guess have you -- have | 10:30:24 |
| 23 | you reviewed Mr. Estabrook's report in this | 10:30:32 |
| 24 | matter?  You said you did obviously. | 10:30:34 |
| 25 | A   Reports. | 10:30:37 |

Transcript of Neil J. Beaton
September 22, 2022                                   28

| | | |
|---|---|---|
| 1 | Q   Reports.  Is it true that he and at | 10:30:38 |
| 2 | least two of the investment banks used the same | 10:30:49 |
| 3 | valuation methodology that you're talking about, | 10:30:53 |
| 4 | the market analysis using public companies and | 10:30:57 |
| 5 | company transaction valuations? | 10:31:03 |
| 6 | A   I believe all four did.  The only one | 10:31:05 |
| 7 | that didn't was Perrella Weinstein. | 10:31:07 |
| 8 | Q   Okay. | 10:31:12 |
| 9 | A   Didn't perform a valuation, but the | 10:31:12 |
| 10 | other four utilized GPC, GCT, and I believe there | 10:31:14 |
| 11 | were some DCFs since we're on acronyms. | 10:31:20 |
| 12 | MS. CHRISTENSEN:  I believe the witness | 10:31:25 |
| 13 | meant Perrella Weinberg. | 10:31:26 |
| 14 | Is that right? | 10:31:27 |
| 15 | THE WITNESS:  Perrella Weinberg.  Thank | 10:31:29 |
| 16 | you. | 10:31:29 |
| 17 | MS. CHRISTENSEN:  For Kelly's sake. | 10:31:30 |
| 18 | BY MR. MINSON: | 10:31:34 |
| 19 | Q   Okay.  And so using those methods, | 10:31:34 |
| 20 | wouldn't it be true that their results would be | 10:31:38 |
| 21 | verifiable as well? | 10:31:41 |
| 22 | A   You can verify the results, sure. | 10:31:43 |
| 23 | Q   Okay.  But they're different results, | 10:31:48 |
| 24 | correct? | 10:31:50 |
| 25 | A   Very different.  And that's wrong, by | 10:31:51 |

Transcript of Neil J. Beaton
September 22, 2022                                    29

| | | |
|---|---|---|
| 1 | the way. | 10:31:55 |
| 2 | Q   Is that because, you know, the process | 10:31:56 |
| 3 | itself is discretionary, like you said? | 10:31:58 |
| 4 | A   That's not the reason why.  These are | 10:32:00 |
| 5 | sales documents.  They are trying to come up with | 10:32:02 |
| 6 | a big number so they can sell it to the ProPharma | 10:32:04 |
| 7 | and Linden boards so that they get hired.  That's | 10:32:07 |
| 8 | what they do. | 10:32:11 |
| 9 | Q   Okay.  And in this case -- let me go | 10:32:23 |
| 10 | back to -- you describe guideline public company | 10:32:30 |
| 11 | transaction -- or guideline public company | 10:32:47 |
| 12 | valuations using comparables as well as guideline | 10:32:49 |
| 13 | company transactions.  Did Linden use any numbers | 10:32:52 |
| 14 | or incorporate any numbers from the guideline | 10:32:58 |
| 15 | public company valuations? | 10:33:02 |
| 16 | A   In what? | 10:33:06 |
| 17 | Q   In their June 30 valuation that was | 10:33:07 |
| 18 | presented to Mr. Donnelly. | 10:33:11 |
| 19 | A   I don't know what they presented to Mr. | 10:33:13 |
| 20 | Donnelly except for the one where they provided | 10:33:15 |
| 21 | him the 634,000 and some change document that was | 10:33:18 |
| 22 | based upon the June 30, 2019 valuation which | 10:33:22 |
| 23 | incorporated both GPC and GCT multiples, and my | 10:33:27 |
| 24 | understanding is Mr. Donnelly had access to those | 10:33:34 |
| 25 | valuations.  He was on the board and approved them | 10:33:37 |

Transcript of Neil J. Beaton
September 22, 2022                                           30

```
 1   as they came through starting in December '16 when      10:33:39
 2   he was a board manager all the way through the          10:33:44
 3   time he was removed from the board in June 2019 or      10:33:47
 4   August 2019 depending on which date you want to         10:33:51
 5   use.                                                    10:33:54
 6        Q   All right.  Briefly, if you could flip         10:33:59
 7   to page 19 of your report.                              10:34:02
 8        A   Yes.                                           10:34:12
 9        Q   So the EBITDA multiple that was                10:34:13
10   presented to Mr. Donnelly was 13.9, correct?           10:34:17
11        A   If you have a document you want to show        10:34:23
12   me what was presented to him, maybe --                  10:34:25
13        Q   I will.                                        10:34:27
14        A   -- I can be more precise in my response.      10:34:27
15        Q   Sure.                                          10:34:31
16        MR. MINSON:  I'd like to mark as Exhibit          10:34:41
17   2 a copy of the first amended complaint in this         10:34:42
18   matter with all exhibits attached.                      10:34:44
19        MS. CHRISTENSEN:  Thank you.                      10:34:54
20        THE WITNESS:  A lot of trees.                     10:34:55
21        MR. MINSON:  I know.                               10:34:56
22        (Beaton Deposition Exhibit No. 2 was              10:35:09
23   marked for identification and was attached to the       10:35:09
24   deposition transcript.)                                 10:35:09
25   BY MR. MINSON:                                          10:35:09
```

Transcript of Neil J. Beaton
September 22, 2022                                      31

| | | |
|---|---|---|
| 1 | Q   So if you look to what's now Exhibit 2, | 10:35:09 |
| 2 | the First Amended Complaint, and if you look at | 10:35:13 |
| 3 | Exhibit C of Exhibit 2, I think it's about halfway | 10:35:21 |
| 4 | through. | 10:35:54 |
| 5 | A   I'm there. | 10:36:01 |
| 6 | Q   Okay.  You'll see the multiple on | 10:36:01 |
| 7 | invested capital valuation that was provided to | 10:36:04 |
| 8 | Mr. Donnelly alleged in the complaint and that is | 10:36:07 |
| 9 | the basis for this claim, the EBITDA multiple that | 10:36:10 |
| 10 | appears in that MOIC valuation is 13.9, correct? | 10:36:16 |
| 11 | A   Correct. | 10:36:21 |
| 12 | Q   And in your report on page 19, your | 10:36:21 |
| 13 | selected multiple for June 30, 2019 that you list | 10:36:33 |
| 14 | is 13.9, correct? | 10:36:38 |
| 15 | A   It is. | 10:36:43 |
| 16 | Q   Now, the public comparables, the average | 10:36:44 |
| 17 | of the low and high is 17.4 according to your | 10:36:51 |
| 18 | report, and the average of the transaction comps | 10:36:56 |
| 19 | is 14 according to your report, correct? | 10:36:58 |
| 20 | A   Of all of them, but not for June. | 10:37:03 |
| 21 | Q   Right. | 10:37:05 |
| 22 | A   If you just did June for the publics, | 10:37:05 |
| 23 | 16.7. | 10:37:16 |
| 24 | Q   Right. | 10:37:19 |
| 25 | A   Not 17.4.  It's actually way lower than | 10:37:19 |

Transcript of Neil J. Beaton
September 22, 2022                                         32

| | | |
|---|---|---|
| 1 | the average because it wasn't until after the | 10:37:22 |
| 2 | valuation date that those public multiples went | 10:37:26 |
| 3 | up. | 10:37:31 |
| 4 | Q   Right.  But if you look at the average | 10:37:32 |
| 5 | for transaction comparables on the same date, June | 10:37:33 |
| 6 | 30, 2019 in your report, just for those dates, | 10:37:37 |
| 7 | what do you reach? | 10:37:41 |
| 8 | A   13.85, which is 13.9 is the average | 10:37:45 |
| 9 | between those two. | 10:37:49 |
| 10 | Q   So given that in Exhibit C the multiple | 10:37:52 |
| 11 | selected was 13.9 and the average of those | 10:38:00 |
| 12 | transaction comparables as you just calculated was | 10:38:04 |
| 13 | 13.85, would you agree that almost no -- that the | 10:38:08 |
| 14 | public comparables played almost no -- had almost | 10:38:17 |
| 15 | no effect on the multiple that Linden selected? | 10:38:21 |
| 16 | A   Mathematically that would be true. | 10:38:25 |
| 17 | Q   Okay.  And is that common in performing | 10:38:43 |
| 18 | valuations in your experience? | 10:38:47 |
| 19 | A   Yes. | 10:38:48 |
| 20 | Q   So there's -- valuations don't normally | 10:38:50 |
| 21 | involve a blend of the public company number as | 10:38:54 |
| 22 | well as the transaction number? | 10:38:57 |
| 23 | A   First off, there is no normal in | 10:39:00 |
| 24 | valuation. | 10:39:02 |
| 25 | Q   Okay. | 10:39:04 |

Transcript of Neil J. Beaton
September 22, 2022                                      33

| | | |
|---|---|---|
| 1 | A   And the response specifically to your | 10:39:05 |
| 2 | question, what the analyst does is reviews those | 10:39:07 |
| 3 | transactions and takes what he or she believes is | 10:39:10 |
| 4 | the most appropriate multiples given the size, | 10:39:13 |
| 5 | growth prospects, and other comparisons which I | 10:39:18 |
| 6 | did in my second report. | 10:39:21 |
| 7 | If you recall from there, I indicated | 10:39:24 |
| 8 | that ProPharma was the smallest of the six | 10:39:25 |
| 9 | guideline public companies by far and was in the | 10:39:29 |
| 10 | middle of the 23 transactions that we had data for | 10:39:32 |
| 11 | for the GTCs, which would drive me to make the | 10:39:36 |
| 12 | exact same selection that Linden did taking the | 10:39:39 |
| 13 | middle of the transaction comps at 13.85, which is | 10:39:43 |
| 14 | very reasonable. | 10:39:47 |
| 15 | Q   And when you say GTC, you know mean GCT? | 10:39:49 |
| 16 | Is that the guideline company transactions? | 10:39:54 |
| 17 | A   That's correct, yeah.  The transaction | 10:39:56 |
| 18 | comps, yes. | 10:40:00 |
| 19 | Q   And just for the record moving forward | 10:40:01 |
| 20 | because I'm going to talk about this a lot, when I | 10:40:02 |
| 21 | refer to GPCs, I'm referring to guideline public | 10:40:05 |
| 22 | companies, and when I refer to GCTs, like you do | 10:40:07 |
| 23 | in your report, I'll be referring to guideline | 10:40:11 |
| 24 | company transactions. | 10:40:13 |
| 25 | A   That's perfect.  Thank you. | 10:40:15 |

Transcript of Neil J. Beaton
September 22, 2022                                    34

| 1 | Q   So would it be possible for Linden to | 10:40:35 |
|---|---|---|
| 2 | make a discretionary call and select lower valued | 10:40:41 |
| 3 | companies to reach the multiple that they choose? | 10:40:44 |
| 4 | MS. CHRISTENSEN:  Objection, form. | 10:40:47 |
| 5 | A   It's possible.  Linden can do what they | 10:40:49 |
| 6 | want.  It's their discretion as it's stated in the | 10:40:53 |
| 7 | operating agreement. | 10:40:58 |
| 8 | BY MR. MINSON: | 10:40:59 |
| 9 | Q   Okay.  And I think you already answered | 10:40:59 |
| 10 | that you did independently review the Linden and | 10:41:00 |
| 11 | ProPharma selection of companies to determine | 10:41:03 |
| 12 | whether the selections were appropriate, right? | 10:41:06 |
| 13 | MS. CHRISTENSEN:  Objection, form to the | 10:41:10 |
| 14 | extent it misstates prior testimony. | 10:41:11 |
| 15 | A   Yeah.  I was just going to say I did not | 10:41:14 |
| 16 | state that. | 10:41:16 |
| 17 | BY MR. MINSON: | 10:41:17 |
| 18 | Q   Okay. | 10:41:17 |
| 19 | A   I said I reviewed ProPharma's growth, | 10:41:17 |
| 20 | size, and other items for those that were | 10:41:20 |
| 21 | selected, but I did not go back and try to second | 10:41:23 |
| 22 | guess Linden or the investment banks for the | 10:41:28 |
| 23 | selection of the GPCs or the GTCs. | 10:41:31 |
| 24 | Q   Okay.  All right.  I want to go to page | 10:41:37 |
| 25 | 4, paragraph six.  At the very bottom, your | 10:41:43 |

Transcript of Neil J. Beaton
September 22, 2022                                35

| | | |
|---|---|---|
| 1 | opinion says that "The valuation that Mr. Donnelly | 10:41:49 |
| 2 | received from ProPharma and Linden was" -- and I'm | 10:41:55 |
| 3 | going to quote -- "arguably very generous to a | 10:41:59 |
| 4 | minority incentive unit holder such as Mr. | 10:42:04 |
| 5 | Donnelly since the minority interest discount | 10:42:08 |
| 6 | which would apply under the GCT methodology was | 10:42:11 |
| 7 | not applied."  What is your basis for that | 10:42:16 |
| 8 | statement? | 10:42:25 |
| 9 | A   Generally accepted valuation principles. | 10:42:27 |
| 10 | Q   Okay.  And so if you look at the Exhibit | 10:42:30 |
| 11 | 2, the First Amended Complaint, I'd like you to go | 10:42:35 |
| 12 | to Exhibit B, page 9.  It will take me some time | 10:42:39 |
| 13 | to get there, too.  There we go. | 10:42:58 |
| 14 | A   I'm at page 9 that has a number of | 10:43:09 |
| 15 | definitions. | 10:43:12 |
| 16 | Q   That's correct.  All right.  Sorry.  I | 10:43:16 |
| 17 | have to find it myself.  I'm sorry.  I don't want | 10:43:45 |
| 18 | you to go to page 9.  I need you to go to page 4. | 10:44:24 |
| 19 | That's my mistake. | 10:44:28 |
| 20 | MS. CHRISTENSEN:  Of the same document? | 10:44:29 |
| 21 | MR. MINSON:  Same document. | 10:44:32 |
| 22 | A   I'm there. | 10:44:33 |
| 23 | BY MR. MINSON: | 10:44:56 |
| 24 | Q   So do you see the definition for fair | 10:44:56 |
| 25 | market value on this page? | 10:45:03 |

Transcript of Neil J. Beaton
September 22, 2022                                            36

| | | |
|---|---|---|
| 1 | A    I do. | 10:45:05 |
| 2 | Q    And that definition says the | 10:45:05 |
| 3 | determination of fair market value of any | 10:45:08 |
| 4 | management incentive units shall not include any | 10:45:12 |
| 5 | lack of liquidity or minority interest discount, | 10:45:16 |
| 6 | correct? | 10:45:21 |
| 7 | A    Well, it doesn't state that on page 4 | 10:45:22 |
| 8 | because it refers to Article VIII.  Excuse me, | 10:45:24 |
| 9 | Article XIII, which we should probably go to. | 10:45:26 |
| 10 | Q    Okay. | 10:45:32 |
| 11 | A    And I cite that in my rebuttal report as | 10:45:32 |
| 12 | well. | 10:45:35 |
| 13 | Q    This doesn't show it. | 10:45:45 |
| 14 | A    That looks like page 50. | 10:45:48 |
| 15 | Q    50 of the -- | 10:45:52 |
| 16 | A    Of Exhibit 2 to my deposition -- | 10:45:54 |
| 17 | Q    Okay. | 10:45:56 |
| 18 | A    -- which has that language. | 10:45:56 |
| 19 | Q    Okay.  So that is the definition of fair | 10:45:58 |
| 20 | market value under Mr. Donnelly's incentive equity | 10:46:01 |
| 21 | agreement, correct? | 10:46:05 |
| 22 | A    It is. | 10:46:06 |
| 23 | Q    And so -- | 10:46:07 |
| 24 | MS. CHRISTENSEN:  Hold on.  I think we | 10:46:10 |
| 25 | need to clarify the record.  Are we looking at | 10:46:11 |

Transcript of Neil J. Beaton
September 22, 2022                                      37

| | | |
|---|---|---|
| 1 | Exhibit B to the Amended Complaint which is the | 10:46:13 |
| 2 | incentive unit agreement? | 10:46:17 |
| 3 | MR. MINSON:  Yeah, yeah. | 10:46:18 |
| 4 | MS. CHRISTENSEN:  Or are we looking at | 10:46:19 |
| 5 | Exhibit, I think, C, which is the LLC agreement? | 10:46:20 |
| 6 | MR. MINSON:  Okay.  We should be looking | 10:46:24 |
| 7 | at the incentive equity agreement, which is | 10:46:25 |
| 8 | Exhibit B. | 10:46:28 |
| 9 | MS. CHRISTENSEN:  And I believe the | 10:46:29 |
| 10 | witness is looking at the LLC agreement, which | 10:46:29 |
| 11 | might be Exhibit C. | 10:46:32 |
| 12 | MR. MINSON:  I see. | 10:46:34 |
| 13 | MS. CHRISTENSEN:  I think that's the | 10:46:35 |
| 14 | confusion. | 10:46:35 |
| 15 | MR. MINSON:  That's the confusion. | 10:46:36 |
| 16 | That's why I'm looking back and forth and not | 10:46:37 |
| 17 | seeing it. | 10:46:40 |
| 18 | MS. CHRISTENSEN:  Page 50.  I have the | 10:46:40 |
| 19 | same. | 10:46:41 |
| 20 | MR. MINSON:  Yeah. | 10:46:42 |
| 21 | MS. CHRISTENSEN:  Yeah. | 10:46:44 |
| 22 | MR. MINSON:  And that's actually Exhibit | 10:46:44 |
| 23 | B, and it's actually page 5. | 10:46:45 |
| 24 | MS. CHRISTENSEN:  So, counsel, do you | 10:46:54 |
| 25 | want to re-ask your question? | 10:46:55 |

Transcript of Neil J. Beaton
September 22, 2022                                           38

| | | |
|---|---|---|
| 1 | MR. MINSON:  Yeah. | 10:46:57 |
| 2 | BY MR. MINSON: | 10:46:57 |
| 3 | Q   So Exhibit B, the incentive equity | 10:46:57 |
| 4 | agreement signed by Mr. Donnelly and ProPharma, | 10:47:00 |
| 5 | the definition of fair market value on page 5 | 10:47:06 |
| 6 | reads, as I previously stated, that "The | 10:47:11 |
| 7 | determination of fair market value of any | 10:47:16 |
| 8 | management incentive unit shall not include any | 10:47:18 |
| 9 | lack of liquidity or minority interest discount," | 10:47:21 |
| 10 | and you stated that in your rebuttal report.  And | 10:47:28 |
| 11 | so based on that, your opinion in paragraph six, | 10:47:31 |
| 12 | does that -- is it accurate to say that that | 10:47:39 |
| 13 | opinion does not directly relate to the definition | 10:47:42 |
| 14 | of fair market value in Mr. Donnelly's incentive | 10:47:47 |
| 15 | equity agreement? | 10:47:52 |
| 16 | MS. CHRISTENSEN:  Objection, form, | 10:47:55 |
| 17 | argumentative. | 10:47:56 |
| 18 | A   No.  The definition or at least my | 10:48:01 |
| 19 | statement in paragraph six of Exhibit 1, which is | 10:48:03 |
| 20 | my initial report, is a generalized analysis of | 10:48:05 |
| 21 | what Mr. Donnelly was going to receive because | 10:48:10 |
| 22 | Linden was in fact generous.  They were generous | 10:48:13 |
| 23 | in the original offer of 684,000, and they were | 10:48:17 |
| 24 | generous in the fact of not applying discounts | 10:48:20 |
| 25 | which would normally apply under generally | 10:48:23 |

Transcript of Neil J. Beaton
September 22, 2022                                39

| | | |
|---|---|---|
| 1 | accepted valuation principles under the GCT | 10:48:25 |
| 2 | method. | 10:48:30 |
| 3 | BY MR. MINSON: | 10:48:30 |
| 4 | Q   Right.  But my question really is that | 10:48:30 |
| 5 | is it -- are you opining that it's generous to do | 10:48:32 |
| 6 | what is contractually required under this | 10:48:36 |
| 7 | agreement? | 10:48:38 |
| 8 | A   The contractual arrangements were | 10:48:39 |
| 9 | generous. | 10:48:43 |
| 10 | Q   Okay. | 10:48:44 |
| 11 | A   The opinion holds.  It's generous. | 10:48:45 |
| 12 | Anybody that is doing a GCT valuation for minority | 10:48:47 |
| 13 | interest other than a statement as set forth on | 10:48:51 |
| 14 | page 5 of Exhibit B to Exhibit 2 of my deposition | 10:48:56 |
| 15 | would take a discount for lack of control and for | 10:49:01 |
| 16 | minority interest, including lack of liquidity. | 10:49:04 |
| 17 | Because the agreement says don't do it, that's | 10:49:08 |
| 18 | arguably generous. | 10:49:11 |
| 19 | Q   So then just to understand your opinion, | 10:49:15 |
| 20 | so your opinion is not that the actual valuation | 10:49:17 |
| 21 | is generous, but the agreement that they agreed to | 10:49:21 |
| 22 | is generous? | 10:49:25 |
| 23 | A   Correct statement, but the actual | 10:49:25 |
| 24 | valuation stems from and results from a generous | 10:49:28 |
| 25 | contract to the benefit of Mr. Donnelly. | 10:49:32 |

Transcript of Neil J. Beaton
September 22, 2022                                    40

| | | |
|---|---|---|
| 1 | Q   Okay.  Okay.  And now I want to turn | 10:49:36 |
| 2 | your attention to page 6 of your report, paragraph | 10:50:00 |
| 3 | 11.  Your opinion states in paragraph 11 that | 10:50:03 |
| 4 | unvested units would vest upon the consummation of | 10:50:22 |
| 5 | a liquidity event, and you quote -- let me see if | 10:50:27 |
| 6 | I can find that, exactly where it says that. | 10:50:37 |
| 7 |       MS. CHRISTENSEN:  Objection, misstates | 10:50:40 |
| 8 | the document. | 10:50:43 |
| 9 | BY MR. MINSON: | 10:50:45 |
| 10 | Q   Okay.  Well, your report says Mr. | 10:50:45 |
| 11 | Donnelly was continuously employed by or providing | 10:50:47 |
| 12 | services to -- okay.  I'm going to go back a | 10:50:51 |
| 13 | little bit.  I'm sorry.  You can strike that. | 10:50:55 |
| 14 |       I'll just read from the beginning:  It | 10:51:02 |
| 15 | says, "Pursuant to his management incentive unit | 10:51:04 |
| 16 | agreement, incentive equity or IEA, ProPharma | 10:51:07 |
| 17 | issued to Mr. Donnelly a total of 8,046.365 | 10:51:11 |
| 18 | management incentive units, some of which would | 10:51:18 |
| 19 | vest over time, while the remainder would vest | 10:51:20 |
| 20 | only if Mr. Donnelly was continually" -- | 10:51:22 |
| 21 | "continuously employed by or providing services to | 10:51:24 |
| 22 | and is still employed by or providing services to | 10:51:28 |
| 23 | ProPharma through the consummation of a liquidity | 10:51:31 |
| 24 | event," and then you cite to the IEA, paragraph | 10:51:37 |
| 25 | four -- or Section 4(c).  And I just want to ask | 10:51:40 |

Transcript of Neil J. Beaton
September 22, 2022                                    41

| | | |
|---|---|---|
| 1 | you if you could -- did you read Section 4(c)(iii) | 10:51:47 |
| 2 | of that same agreement? | 10:51:57 |
| 3 |     A   I may have.  I'll read it right now. | 10:51:59 |
| 4 |     Q   That's going to be Exhibit 2.  I think | 10:52:04 |
| 5 | (b) is what we were on before. | 10:52:08 |
| 6 |     A   Page 7. | 10:52:11 |
| 7 |     Q   Page 7. | 10:52:12 |
| 8 |     A   And I did read that and that's where | 10:52:13 |
| 9 | this is referring to. | 10:52:16 |
| 10 |     Q   So Section (iii) says, "33 percent of | 10:52:16 |
| 11 | ProPharma's vesting units will vest upon the | 10:52:33 |
| 12 | Linden investors' achievement of a 3X qualified | 10:52:36 |
| 13 | sale in connection with a liquidity event." | 10:52:43 |
| 14 |         MS. CHRISTENSEN:  Objection. | 10:52:46 |
| 15 | BY MR. MINSON: | 10:52:47 |
| 16 |     Q   Correct? | 10:52:47 |
| 17 |         MR. MINSON:  I'm just reading the | 10:52:47 |
| 18 | document. | 10:52:48 |
| 19 |         MS. CHRISTENSEN:  I think you misstated | 10:52:48 |
| 20 | this section.  Misstates the document.  (iii)? | 10:52:49 |
| 21 |         MR. MINSON:  I'm sorry.  Four, and then | 10:52:56 |
| 22 | three.  I don't know how to state three little | 10:52:58 |
| 23 | i's. | 10:53:03 |
| 24 |         MS. CHRISTENSEN:  4(c). | 10:53:04 |
| 25 |         MR. MINSON:  Yeah, 4(c), and there's | 10:53:05 |

Transcript of Neil J. Beaton
September 22, 2022                                    42

| | | |
|---|---|---|
| 1 | three little i's. | 10:53:07 |
| 2 | MS. CHRISTENSEN:  Got it. | 10:53:09 |
| 3 | A   4(c) says, "Consummation of a liquidity | 10:53:09 |
| 4 | event," colon, and then it has three sections. | 10:53:12 |
| 5 | One-third each will vest upon a liquidity event. | 10:53:16 |
| 6 | That's -- there's no ambiguity and no | 10:53:20 |
| 7 | inconsistency there.  I'm not sure what the | 10:53:25 |
| 8 | question is. | 10:53:27 |
| 9 | BY MR. MINSON: | 10:53:34 |
| 10 | Q   So isn't the connection of a liquidity | 10:53:34 |
| 11 | event different than the consummation of a | 10:53:38 |
| 12 | liquidity event? | 10:53:41 |
| 13 | A   That might be, but that's the overriding | 10:53:41 |
| 14 | requirement, is the consummation of a liquidity | 10:53:44 |
| 15 | event.  Then one-third will vest in connection | 10:53:47 |
| 16 | with that liquidity event.  But you have to have | 10:53:50 |
| 17 | that liquidity event before (i), (ii), and (iii) | 10:53:52 |
| 18 | will be connected to a liquidity event. | 10:53:57 |
| 19 | Q   But the specific vesting provision that | 10:53:59 |
| 20 | is linked to that percentage, it does say in | 10:54:02 |
| 21 | connection with a liquidity event.  It doesn't say | 10:54:06 |
| 22 | the consummation.  Is that correct? | 10:54:09 |
| 23 | MS. CHRISTENSEN:  I'm going to object | 10:54:10 |
| 24 | based on form to the extent this line of | 10:54:12 |
| 25 | questioning calls for a legal conclusion. | 10:54:14 |

Transcript of Neil J. Beaton
September 22, 2022                                    43

| | | |
|---|---|---|
| 1 | A    Again, from my experience, and I do a | 10:54:18 |
| 2 | lot of private equity work, (c) rules | 10:54:21 |
| 3 | consummation.  You have to have a liquidity event. | 10:54:26 |
| 4 | Then if you have a liquidity event, then one-third | 10:54:29 |
| 5 | will vest if you have a 2X MOIC multiple of | 10:54:33 |
| 6 | invested capital; 2.5, you get another third; or | 10:54:39 |
| 7 | three, you get another third.  But you have to | 10:54:43 |
| 8 | have a liquidity event before any of those will be | 10:54:45 |
| 9 | triggered. | 10:54:49 |
| 10 | BY MR. MINSON: | 10:54:50 |
| 11 | Q    Okay. | 10:54:50 |
| 12 | A    It's pretty standard. | 10:54:50 |
| 13 | Q    And so you relied on the general clause | 10:55:03 |
| 14 | in 4(c) in your determination that Mr. Donnelly's | 10:55:06 |
| 15 | shares had not vested.  Is that -- is that | 10:55:13 |
| 16 | accurate? | 10:55:14 |
| 17 | A    I'm not relying on this because that's a | 10:55:15 |
| 18 | legal contractual agreement.  I'm basically | 10:55:17 |
| 19 | following what the wording is.  A liquidity event | 10:55:21 |
| 20 | did not occur as of June 2019 or August of 2019, | 10:55:25 |
| 21 | or even September of 2019 if you want to take Mr. | 10:55:28 |
| 22 | Estabrook's last valuation.  Therefore, none of | 10:55:32 |
| 23 | the performance units would have vested at that | 10:55:34 |
| 24 | point in time.  That's the point I'm making in my | 10:55:39 |
| 25 | report because it hadn't occurred.  When I say it | 10:55:41 |

Transcript of Neil J. Beaton
September 22, 2022                                        44

```
 1   hadn't occurred, a liquidity event hadn't occurred        10:55:45

 2   just for a clear record.                                  10:55:48

 3        Q   Okay.  And under Section 4 of that same          10:55:56

 4   agreement, the IEA, when you go through those             10:56:01

 5   sections that refer to performance vested shares,         10:56:06

 6   is it accurate that the EBITDA multiple is                10:56:16

 7   irrelevant in determining whether they vested or          10:56:19

 8   not?                                                      10:56:23

 9        MS. CHRISTENSEN:  Objection, form and to             10:56:24

10   the extent it calls for a legal conclusion.               10:56:26

11        A   And I don't know what you mean.  I               10:56:29

12   don't -- I don't see an EBITDA multiple referred          10:56:31

13   to in Section 4.  If you can point that to me             10:56:33

14   perhaps so I can answer the question.                     10:56:36

15   BY MR. MINSON:                                            10:56:38

16        Q   So I'm asking you in Section 4, those            10:56:38

17   numbers, those multiples listed in Section 4, they        10:56:40

18   refer to multiples on invested capital, correct?          10:56:43

19   Is that -- is that accurate?                              10:56:48

20        A   That's what my read of it, yes.                  10:56:49

21        Q   Okay.  And so it would not matter, is my         10:56:51

22   question, what the EBITDA multiple was as long as         10:56:54

23   the multiple -- as long as they hit the multiple          10:56:59

24   on invested capital to make those shares vested?          10:56:59

25        A   Yeah.  A multiple of EBITDA will result          10:57:03
```

Transcript of Neil J. Beaton
September 22, 2022                                    45

| | | |
|---|---|---|
| 1 | from the sale of the company.  So once the sale of | 10:57:06 |
| 2 | the company occurred -- in this case we know it | 10:57:08 |
| 3 | happened in September 2020 -- we know there was a | 10:57:10 |
| 4 | multiple of approximately 16X EBITDA that resulted | 10:57:13 |
| 5 | in a multiple of MOIC that then triggered payments | 10:57:17 |
| 6 | on the performance vesting units. | 10:57:21 |
| 7 | So relevant or not, you get an EBITDA | 10:57:25 |
| 8 | multiple from a sale and you also get a multiple | 10:57:28 |
| 9 | of MOIC from a sale.  It's the sale that's | 10:57:32 |
| 10 | important.  That's the triggering event under | 10:57:36 |
| 11 | Section 4, which would then trigger whether or not | 10:57:38 |
| 12 | (i), (ii), or (iii) would apply. | 10:57:42 |
| 13 | Q   But based on that -- so I want to give | 10:57:47 |
| 14 | you kind of a hypothetical, but the enterprise | 10:57:52 |
| 15 | value of a business, regardless of the EBITDA | 10:57:55 |
| 16 | multiple, would also have a large impact on what | 10:58:01 |
| 17 | the MOIC ended up being at the end, correct?  So | 10:58:05 |
| 18 | if you had, for instance, a ten EBITDA multiple | 10:58:09 |
| 19 | but you had an enterprise value of like 500 | 10:58:15 |
| 20 | million, then your multiple on invested capital | 10:58:17 |
| 21 | would be much larger even though the EBITDA was | 10:58:24 |
| 22 | smaller? | 10:58:28 |
| 23 | MS. CHRISTENSEN:  Objection, form, lack | 10:58:28 |
| 24 | of foundation. | 10:58:30 |
| 25 | A   That makes no sense to me whatsoever. | 10:58:30 |

Transcript of Neil J. Beaton
September 22, 2022                                    46

| | | |
|---|---|---|
| 1 | BY MR. MINSON: | 10:58:33 |
| 2 | Q   Okay. | 10:58:33 |
| 3 | A   So I would ask if you could rephrase | 10:58:33 |
| 4 | that. | 10:58:35 |
| 5 | Q   So can you please -- so I want to ask -- | 10:58:35 |
| 6 | you're the expert, so I want to ask you if you | 10:58:35 |
| 7 | could go through what is Exhibit -- I think it's | 10:58:38 |
| 8 | Exhibit C, which is -- | 10:58:44 |
| 9 | A   That we looked at previously? | 10:58:47 |
| 10 | Q   Yeah.  It's Mr. Donnelly's MOIC | 10:58:49 |
| 11 | valuation, and that's Exhibit C of the First | 10:58:51 |
| 12 | Amended Complaint, which is Exhibit 2 for this | 10:58:53 |
| 13 | deposition. | 10:58:57 |
| 14 | A   I need to find it again.  It's hidden in | 10:59:03 |
| 15 | the middle. | 10:59:09 |
| 16 | Q   Yes.  It's a one-page thing.  It's | 10:59:09 |
| 17 | hidden among a bunch of pages. | 10:59:12 |
| 18 | A   Okay.  I found it. | 10:59:17 |
| 19 | Q   Okay.  So can you -- can you explain to | 10:59:19 |
| 20 | me how we work down in this valuation based on | 10:59:21 |
| 21 | your expertise to get to that multiple. | 10:59:24 |
| 22 | MS. CHRISTENSEN:  Counsel, are you | 10:59:31 |
| 23 | referring to MOIC, or EBITDA? | 10:59:32 |
| 24 | BY MR. MINSON: | 10:59:36 |
| 25 | Q   I'm referring -- how do we get from the | 10:59:36 |

Transcript of Neil J. Beaton
September 22, 2022                                47

| 1 | last 12 months EBITDA number using the EBITDA | 10:59:40 |
| 2 | multiple and then get all the way down to the | 10:59:44 |
| 3 | MOIC?  It's clearly not, you know, just addition | 10:59:47 |
| 4 | and subtraction, so I just want to know how that | 10:59:51 |
| 5 | works. | 10:59:56 |
| 6 | A   I'll do my best.  I'll validate as I go. | 10:59:59 |
| 7 | So I'm taking 33.9, which is the last 12 | 11:00:06 |
| 8 | months EBITDA.  And for Kelly, EBITDA is | 11:00:11 |
| 9 | E-B-I-T-D-A.  You probably already know that, but | 11:00:18 |
| 10 | for the record.  I multiply that by 13.9, and | 11:00:21 |
| 11 | because of rounding errors I got a slightly | 11:00:24 |
| 12 | different number, but that results in an | 11:00:28 |
| 13 | enterprise value $472.5 million. | 11:00:29 |
| 14 | Q   Okay. | 11:00:33 |
| 15 | A   That's first calc. | 11:00:33 |
| 16 | Q   And that's just multiplication? | 11:00:36 |
| 17 | A   That's multiplication. | 11:00:39 |
| 18 | Q   All right. | 11:00:39 |
| 19 | A   Then that debt is subtracted because | 11:00:39 |
| 20 | Linden is only providing their invested capital, | 11:00:42 |
| 21 | not their debt.  So you subtract out 189.5 million | 11:00:44 |
| 22 | of debt, and again because of rounding, that | 11:00:49 |
| 23 | results in an equity value of 283.1 million. | 11:00:51 |
| 24 | Q   Okay. | 11:00:56 |
| 25 | A   Then we're looking at common equity | 11:00:56 |

Transcript of Neil J. Beaton
September 22, 2022                                    48

| | | |
|---|---|---|
| 1 | because that's what Linden itself owns.  That's | 11:00:59 |
| 2 | their invested capital, not their LPs.  Subtract | 11:01:02 |
| 3 | out the preferred equity, and that gets you 153.9 | 11:01:06 |
| 4 | million by subtracting 129.2 million of preferred | 11:01:08 |
| 5 | equity.  The ownership percentage is 73.2 percent. | 11:01:16 |
| 6 | That results in 112.7 million.  That is for | 11:01:21 |
| 7 | Linden.  Then you add back Linden's preferred | 11:01:24 |
| 8 | equity and realize returns of 104 million.  That | 11:01:28 |
| 9 | gets you to 217.4 million, and I believe once you | 11:01:31 |
| 10 | get there, you divide that by 87 million, which is | 11:01:36 |
| 11 | the invested capital, and that's 2.5 million MOIC. | 11:01:40 |
| 12 |      Q   Okay.  All right.  And so that | 11:01:49 |
| 13 | calculation starts at the 13.9 -- starts at the | 11:01:52 |
| 14 | 13.9 multiple, right?  That's where you would | 11:01:54 |
| 15 | start the calculation?  You figure out the | 11:01:57 |
| 16 | multiple from the companies? | 11:02:00 |
| 17 |      A   Yeah.  We saw that on page, I think, 19 | 11:02:01 |
| 18 | of my report where the average of the transaction | 11:02:06 |
| 19 | comps was 13.85, rounded up to 13.9.  Starting | 11:02:11 |
| 20 | there and then running that calculation down, you | 11:02:16 |
| 21 | would come up with 2.5 MOIC. | 11:02:18 |
| 22 |      Q   Okay. | 11:02:29 |
| 23 |      THE WITNESS:  We're about an hour right | 11:02:29 |
| 24 | now, Mr. Minson.  I think it would be a good time | 11:02:31 |
| 25 | for Kelly to take a little rest and myself to take | 11:02:34 |

Transcript of Neil J. Beaton
September 22, 2022                                          49

| | | |
|---|---|---|
| 1 | a bio break. | 11:02:37 |
| 2 | MR. MINSON:  Okay.  Sounds good. | 11:02:39 |
| 3 | THE VIDEOGRAPHER:  Please stand by. | 11:02:41 |
| 4 | We are going off the record.  The time | 11:02:43 |
| 5 | is 11:02. | 11:02:44 |
| 6 | (A brief recess was had from 11:02 a.m. | 11:10:46 |
| 7 | to 11:09 a.m.) | 11:10:46 |
| 8 | THE VIDEOGRAPHER:  We are back on the | 11:10:50 |
| 9 | record.  The time is 11:09. | 11:10:51 |
| 10 | MS. CHRISTENSEN:  Before we get started, | 11:10:56 |
| 11 | counsel for defendant would just like to note a | 11:10:57 |
| 12 | standing objection to the use of Deposition | 11:11:00 |
| 13 | Exhibit 2, Exhibit B, as the management incentive | 11:11:05 |
| 14 | unit agreement because it is an unexecuted copy of | 11:11:08 |
| 15 | the agreement. | 11:11:12 |
| 16 | MR. MINSON:  Okay.  Noted. | 11:11:16 |
| 17 | BY MR. MINSON: | 11:11:26 |
| 18 | Q   All right.  Okay.  Mr. Beaton, I'd like | 11:11:26 |
| 19 | you to turn to your initial expert report, page 7, | 11:11:32 |
| 20 | paragraph 14 when your opinion states "Mr. | 11:11:36 |
| 21 | Donnelly was on the ProPharma board of managers | 11:11:43 |
| 22 | from September 30, 2016 until he was removed | 11:11:46 |
| 23 | effective August 31, 2019."  I just want to know | 11:11:52 |
| 24 | what document did you rely on to base your | 11:11:57 |
| 25 | assumption of Mr. Donnelly's effective removal | 11:12:02 |

Transcript of Neil J. Beaton
September 22, 2022                                       50

| | | |
|---|---|---|
| 1 | date? | 11:12:05 |
| 2 | A   It would be an e-mail with that date in | 11:12:07 |
| 3 | it.  I don't -- I should have cited it.  I don't | 11:12:12 |
| 4 | have it memorized.  And I believe the paragraph 13 | 11:12:15 |
| 5 | also provides a timeline.  I'm just trying to | 11:12:21 |
| 6 | recall if there was an actual timeline in my | 11:12:27 |
| 7 | documents.  Let me take a quick look, if you don't | 11:12:29 |
| 8 | mind.  I list a lot of e-mails.  Unfortunately, | 11:12:32 |
| 9 | they're all by Bates number that I haven't | 11:13:08 |
| 10 | memorized, nor will I. | 11:13:13 |
| 11 | But again, it was my read of the | 11:13:16 |
| 12 | documents.  The fact that there was even a | 11:13:19 |
| 13 | discussion regarding the buyback of the units | 11:13:22 |
| 14 | indicated that the provisions within the incentive | 11:13:25 |
| 15 | equity unit document had been triggered, meaning | 11:13:33 |
| 16 | he was off the board, and those discussions | 11:13:35 |
| 17 | occurred I believe starting in June and ultimately | 11:13:39 |
| 18 | consummated as of August 1, and therefore the | 11:13:43 |
| 19 | offer is being made for the buybacks. | 11:13:46 |
| 20 | BY MR. MINSON: | 11:13:50 |
| 21 | Q   I'm sorry.  I just want to clarify your | 11:13:50 |
| 22 | testimony.  You said August 1, or August 31? | 11:13:53 |
| 23 | A   August 31.  Thank you. | 11:13:55 |
| 24 | Q   Okay. | 11:13:58 |
| 25 | A   Yes. | 11:13:58 |

Transcript of Neil J. Beaton
September 22, 2022                                        51

| | | |
|---|---|---|
| 1 | Q   And other than those e-mails, were you | 11:14:02 |
| 2 | provided any facts or information to support that | 11:14:05 |
| 3 | removal date? | 11:14:08 |
| 4 | A   Not that I recall as I sit here.  Again, | 11:14:11 |
| 5 | there was a tremendous amount of communication by | 11:14:15 |
| 6 | e-mail and documentation.  And my experience again | 11:14:18 |
| 7 | when I have board of directors or directors that | 11:14:24 |
| 8 | leave and trigger provisions within their | 11:14:28 |
| 9 | incentive units, this would be an event that would | 11:14:33 |
| 10 | cause the buy back of their units at that point in | 11:14:38 |
| 11 | time, meaning they are in fact off the board. | 11:14:42 |
| 12 | That would be more my experience than it is a | 11:14:44 |
| 13 | document or a discussion. | 11:14:47 |
| 14 | Q   And do you remember what the date of the | 11:14:50 |
| 15 | e-mails or the correspondence that you reviewed | 11:14:52 |
| 16 | was?  I know you said you only list the Bates | 11:14:54 |
| 17 | numbers, so... | 11:15:00 |
| 18 | A   I list one from a Brianna.  I believe | 11:15:01 |
| 19 | that was July 1.  But I should have had that -- | 11:15:07 |
| 20 | that should be in here someplace.  If not in this | 11:15:10 |
| 21 | document, it would be in my rebuttal report.  I | 11:15:13 |
| 22 | just don't have a recollection of the actual | 11:15:18 |
| 23 | e-mail date.  I do believe I identified that in my | 11:15:20 |
| 24 | rebuttal report. | 11:15:30 |
| 25 | Q   Okay.  Sorry.  I'm actually -- I'm | 11:15:57 |

Transcript of Neil J. Beaton
September 22, 2022                                    52

| | | |
|---|---|---|
| 1 | trying to find the document to see if it would jog | 11:15:58 |
| 2 | your memory. | 11:16:01 |
| 3 | MS. CHRISTENSEN:  Which document, | 11:16:03 |
| 4 | counsel?  The Brianna Loverich? | 11:16:04 |
| 5 | MR. MINSON:  No.  You know what -- okay. | 11:16:11 |
| 6 | BY MR. MINSON: | 11:17:06 |
| 7 | Q   For Exhibit 2 for this deposition, if | 11:17:06 |
| 8 | you'll look at the First Amended Complaint and | 11:17:08 |
| 9 | turn to Exhibit D. | 11:17:10 |
| 10 | A   E as in Edward? | 11:17:15 |
| 11 | Q   D as in dog. | 11:17:17 |
| 12 | A   D as in dog.  Okay.  I found D as in | 11:17:18 |
| 13 | dog. | 11:17:24 |
| 14 | Q   This is a removal notice that we -- that | 11:17:25 |
| 15 | Mr. Donnelly was provided after sometime in 2020, | 11:17:30 |
| 16 | I believe, for the first time and it shows -- | 11:17:38 |
| 17 | actually, you know, I'll scratch that.  I think he | 11:17:45 |
| 18 | was provided this in November of 2019 for the | 11:17:49 |
| 19 | first time, and it shows a date of August 31, | 11:17:53 |
| 20 | 2019.  Is that the document that you relied on? | 11:17:59 |
| 21 | A   I'm not sure I saw this particular | 11:18:05 |
| 22 | document.  It may have been referenced in another | 11:18:08 |
| 23 | document, but this looks like -- this looks like a | 11:18:11 |
| 24 | legal document. | 11:18:14 |
| 25 | Q   Yeah.  It's part of the First Amended | 11:18:15 |

Transcript of Neil J. Beaton
September 22, 2022                                    53

| 1 | Complaint, so... | 11:18:17 |
| 2 |     A   Okay.  So then I would have probably | 11:18:19 |
| 3 | seen it and it does certainly provide the date.  I | 11:18:21 |
| 4 | just don't have a recollection specifically that | 11:18:25 |
| 5 | it was this document. | 11:18:27 |
| 6 |     Q   Okay. | 11:18:29 |
| 7 |     A   But it certainly does support | 11:18:29 |
| 8 | numerically and chronologically that statement in | 11:18:34 |
| 9 | paragraph 14 of Exhibit 1 to my deposition. | 11:18:37 |
| 10 |     Q   Okay.  All right.  I'm going to turn | 11:18:49 |
| 11 | your attention to page 8, paragraph 14 of your | 11:18:50 |
| 12 | report. | 11:18:55 |
| 13 |     A   Fourteen starts on 7.  Are we looking at | 11:19:00 |
| 14 | the second part of -- | 11:19:02 |
| 15 |     Q   Yeah.  Actually, you know what, I think | 11:19:05 |
| 16 | it -- let's see.  I believe the quote actually | 11:19:07 |
| 17 | starts on page 7.  Let me make sure.  Yeah, it's | 11:19:11 |
| 18 | your -- your report says -- oh, no.  It's | 11:19:31 |
| 19 | actually -- the quote starts on page 8, so if you | 11:19:45 |
| 20 | could just look at page 8.  It says, "As of | 11:19:49 |
| 21 | September 1, 2019, only 804.6364 of Mr. Donnelly's | 11:19:52 |
| 22 | time vesting units had vested and none of Mr. | 11:19:59 |
| 23 | Donnelly's performance vesting units had vested," | 11:20:02 |
| 24 | and is that opinion based on your -- the | 11:20:09 |
| 25 | definition provided in Section 4(c), or the | 11:20:17 |

Transcript of Neil J. Beaton
September 22, 2022                                    54

| | | |
|---|---|---|
| 1 | definition provided in 4(c)(i) of Mr. Donnelly's | 11:20:20 |
| 2 | incentive equity agreement? | 11:20:23 |
| 3 | MS. CHRISTENSEN:  Objection, form, | 11:20:25 |
| 4 | misstates the document. | 11:20:26 |
| 5 | A   Yeah, they're both the same because | 11:20:28 |
| 6 | 4(c)(i) stems from 4(c), 4(c) being the | 11:20:30 |
| 7 | consummation of a liquidity event, and 4(c)(i) in | 11:20:34 |
| 8 | connection with a liquidity event which hadn't | 11:20:37 |
| 9 | occurred. | 11:20:40 |
| 10 | BY MR. MINSON: | 11:20:41 |
| 11 | Q   Okay.  So is your opinion in paragraph | 11:20:41 |
| 12 | 14, is it dependent on the assumption that no | 11:21:11 |
| 13 | liquidity event occurred? | 11:21:15 |
| 14 | A   Is my opinion dependent upon that?  Is | 11:21:17 |
| 15 | that the question? | 11:21:21 |
| 16 | Q   Yeah, your opinion on the vesting. | 11:21:22 |
| 17 | A   My opinion is dependent upon the | 11:21:26 |
| 18 | adjudication of the time where Mr. Donnelly was | 11:21:29 |
| 19 | removed.  That will be decided by the trier of | 11:21:32 |
| 20 | fact.  If the trier of fact states that as of | 11:21:36 |
| 21 | August 31, 2019, then the agreement, the IEA, says | 11:21:38 |
| 22 | no performance vesting because a liquidity event | 11:21:44 |
| 23 | hadn't occurred.  That would be the basis of | 11:21:48 |
| 24 | paragraph 14. | 11:21:51 |
| 25 | Q   Okay.  And paragraph 15, same page, your | 11:22:00 |

| | | |
|---|---|---|
| 1 | opinion states "Mr. Donnelly did not contest his | 11:22:04 |
| 2 | removal from the ProPharma board," and what is the | 11:22:07 |
| 3 | basis for your statement there? | 11:22:12 |
| 4 | MS. CHRISTENSEN:  I'm going to object to | 11:22:14 |
| 5 | form.  All of your questions, counsel, relate to | 11:22:15 |
| 6 | the background section and not -- | 11:22:21 |
| 7 | MR. MINSON:  Yeah. | 11:22:23 |
| 8 | MS. CHRISTENSEN:  -- opinions stated -- | 11:22:24 |
| 9 | MR. MINSON:  Okay. | 11:22:25 |
| 10 | MS. CHRISTENSEN:  -- as enumerated in | 11:22:26 |
| 11 | Mr. Beaton's report.  So to the extent you want to | 11:22:31 |
| 12 | ask about what these statements rely on in the | 11:22:38 |
| 13 | background section, that's fine, but to the extent | 11:22:41 |
| 14 | your question wants to ask about his opinions, I | 11:22:43 |
| 15 | would direct you to the portion of his report | 11:22:43 |
| 16 | where he talks about his opinions and not the | 11:22:45 |
| 17 | factual background. | 11:22:49 |
| 18 | MR. MINSON:  All right.  I take your | 11:22:50 |
| 19 | objection, but I think his opinion is dependent on | 11:22:51 |
| 20 | his understanding of the facts, and so I want to | 11:22:54 |
| 21 | find the basis for his understanding of the facts | 11:22:57 |
| 22 | in order to -- and what he used to inform those | 11:23:00 |
| 23 | opinions, so I do think it's relevant. | 11:23:03 |
| 24 | BY MR. MINSON: | 11:23:05 |
| 25 | Q   And so I'll ask the question again: | 11:23:05 |

Transcript of Neil J. Beaton
September 22, 2022                                   56

| | | |
|---|---|---|
| 1 | Your understanding was that Mr. Donnelly did not | 11:23:07 |
| 2 | contest his removal from the ProPharma board, and | 11:23:09 |
| 3 | I just want to know what was the basis for that | 11:23:12 |
| 4 | statement? | 11:23:14 |
| 5 | A   I wrote that in paragraph 15 followed | 11:23:16 |
| 6 | by, rather, Mr. Donnelly asked for the data | 11:23:19 |
| 7 | supporting the buyback indicating he did believe | 11:23:22 |
| 8 | he was off the board, because otherwise his | 11:23:26 |
| 9 | buyback provision wouldn't have been triggered of | 11:23:29 |
| 10 | his incentive equity units, and I cite to | 11:23:31 |
| 11 | LINDEN0000056 to 58. | 11:23:35 |
| 12 | Q   Did you review any e-mails regarding the | 11:23:49 |
| 13 | negotiation of the incentive equity units? | 11:23:52 |
| 14 | A   The question again? | 11:23:58 |
| 15 | Q   Did you review any e-mails between Mr. | 11:23:59 |
| 16 | Donnelly and ProPharma regarding the negotiation | 11:24:01 |
| 17 | of incentive equity units? | 11:24:03 |
| 18 | A   On the value, yes.  Mr. Donnelly stated | 11:24:06 |
| 19 | that he believed that they were worth I believe | 11:24:09 |
| 20 | $1.99 per share -- excuse me, $199 per share and | 11:24:12 |
| 21 | some change, but there's a number of e-mails that | 11:24:17 |
| 22 | went back and forth between he and I believe Mr. | 11:24:20 |
| 23 | Farah, and it may have been Mr. Davis at some | 11:24:23 |
| 24 | point, but there were a number of e-mails between | 11:24:26 |
| 25 | them.  I cite those in my report. | 11:24:30 |

Transcript of Neil J. Beaton
September 22, 2022                                          57

| | | |
|---|---|---|
| 1 | Q    All right. | 11:24:41 |
| 2 | MR. MINSON:  Mark this as Exhibit 3. | 11:24:42 |
| 3 | (Beaton Deposition Exhibit No. 3 was | 11:24:55 |
| 4 | marked for identification and was attached to the | 11:24:55 |
| 5 | deposition transcript.) | 11:24:55 |
| 6 | BY MR. MINSON: | 11:25:01 |
| 7 | Q    This is a letter, a demand letter in | 11:25:01 |
| 8 | September -- from September 4, 2020 from counsel | 11:25:05 |
| 9 | here at McGuireWoods to then counsel for ProPharma | 11:25:10 |
| 10 | Kirkland & Ellis, Attorney Michael Slade, and I'd | 11:25:16 |
| 11 | like to draw your attention to what's Bates | 11:25:25 |
| 12 | stamped as DONNELLY00001297.  I'm sorry.  It would | 11:25:30 |
| 13 | be 129 -- sorry.  It should be 1295.  My mistake. | 11:25:41 |
| 14 | The second paragraph from the bottom | 11:26:23 |
| 15 | reads, "In a letter dated September 4, 2020, | 11:26:25 |
| 16 | additionally, as your clients are aware Mr. | 11:26:32 |
| 17 | Donnelly has not been paid his base compensation | 11:26:34 |
| 18 | under the ProPharma offer dated October 24, 2016 | 11:26:37 |
| 19 | since the inception of the agreement.  Mr. | 11:26:41 |
| 20 | Donnelly expected to be paid that sum on a | 11:26:46 |
| 21 | quarterly basis as provided.  However, to date the | 11:26:47 |
| 22 | unpaid fees owed to Mr. Donnelly total in excess | 11:26:50 |
| 23 | of $93,750."  To you, if he is claiming that he's | 11:26:53 |
| 24 | owed that money to date in this letter, wouldn't | 11:27:04 |
| 25 | that imply that he believes himself to still be on | 11:27:08 |

Transcript of Neil J. Beaton
September 22, 2022                                    58

| | | |
|---|---|---|
| 1 | the board? | 11:27:12 |
| 2 | MS. CHRISTENSEN:  Objection, calls for | 11:27:14 |
| 3 | speculation. | 11:27:15 |
| 4 | A   Let me read the document because there's | 11:27:16 |
| 5 | a -- | 11:27:19 |
| 6 | BY MR. MINSON: | 11:27:22 |
| 7 | Q   That's one of several paragraphs. | 11:27:22 |
| 8 | A   Yeah.  And out of context, I couldn't | 11:27:24 |
| 9 | answer the question with any specificity. | 11:27:26 |
| 10 | Q   Okay.  I'll preface the reading of this | 11:27:33 |
| 11 | document with the fact that the majority of the | 11:27:36 |
| 12 | letter refers to a separate litigation matter from | 11:27:38 |
| 13 | this one. | 11:27:41 |
| 14 | A   (Reading).  I see.  That's Advarra, | 11:27:57 |
| 15 | A-d-v-a-r-r-a for Kelly.  I see.  So your | 11:28:06 |
| 16 | reference to additionally was the start of the | 11:28:21 |
| 17 | second component of the letter. | 11:28:24 |
| 18 | Q   Correct. | 11:28:26 |
| 19 | A   If I may read that -- it's a very short | 11:28:27 |
| 20 | section -- I'll try to respond more completely. | 11:28:29 |
| 21 | (Reading). | 11:28:32 |
| 22 | So there appears to have been prior | 11:28:38 |
| 23 | correspondence as stated in the ultimate | 11:28:40 |
| 24 | paragraph, and I've seen a lot of back-and-forth | 11:28:44 |
| 25 | that Mr. Donnelly claimed an 18X.  This says EBITA | 11:28:57 |

Transcript of Neil J. Beaton
September 22, 2022                              59

| 1 | multiple.  I guess it's the same thing.  I see. | 11:29:05 |
| 2 | This was -- okay.  This is a look-back.  I'm now | 11:29:28 |
| 3 | with you.  And no, it doesn't imply that he was | 11:29:32 |
| 4 | still on the board to me, but I'm not an attorney | 11:29:35 |
| 5 | and I'm not providing legal opinions as to the | 11:29:39 |
| 6 | validity of a particular employment period. | 11:29:44 |
| 7 |     Q    Did you review his board agreement? | 11:29:47 |
| 8 |     A    Board agreement? | 11:29:52 |
| 9 |     Q    Did you review Mr. Donnelly's board | 11:29:53 |
| 10 | agreement which is Exhibit -- I think it's A to | 11:29:55 |
| 11 | this complaint -- as part of your engagement here? | 11:29:58 |
| 12 |     A    Is that the one where he was actually | 11:30:01 |
| 13 | offered -- | 11:30:03 |
| 14 |     Q    Right. | 11:30:04 |
| 15 |     A    Yes, I did read that. | 11:30:05 |
| 16 |     Q    And he was only entitled to those fees | 11:30:06 |
| 17 | if he was on the board, correct? | 11:30:09 |
| 18 |     A    I don't know about the comp, the | 11:30:12 |
| 19 | compensation component.  I don't know.  I wasn't | 11:30:15 |
| 20 | focused on that because that's not my -- I wasn't | 11:30:18 |
| 21 | asked to review anything on compensation. | 11:30:21 |
| 22 |     But I was asked to review the valuation, | 11:30:23 |
| 23 | and the valuation only got triggered if he was off | 11:30:25 |
| 24 | the board.  So therefore, again it goes back to my | 11:30:27 |
| 25 | original point that I make in my original report | 11:30:30 |

Transcript of Neil J. Beaton
September 22, 2022                                    60

| | | |
|---|---|---|
| 1 | and my rebuttal report.  The very fact that Mr. | 11:30:32 |
| 2 | Donnelly was discussing the buyout of his units | 11:30:36 |
| 3 | indicated that he knew he was off the board | 11:30:40 |
| 4 | because that's the only time they would be | 11:30:43 |
| 5 | triggered for a buyback according to his own | 11:30:44 |
| 6 | agreement. | 11:30:47 |
| 7 | Q   But at the same time, he's requesting | 11:30:48 |
| 8 | his salary in this letter, correct? | 11:30:51 |
| 9 | A   Yeah, but salary issues I have found -- | 11:30:54 |
| 10 | again, even in my work with private equity firms | 11:30:56 |
| 11 | and portfolio companies -- are often very | 11:30:58 |
| 12 | different than the incentive equity units that | 11:31:01 |
| 13 | apply, and my focus is on incentive equity units. | 11:31:04 |
| 14 | I don't do a whole lot of compensation work for | 11:31:07 |
| 15 | private equity firms. | 11:31:09 |
| 16 | So again, I didn't look at this.  I will | 11:31:12 |
| 17 | not have any opinions as to compensation issues. | 11:31:13 |
| 18 | It's not my engagement and that's not what I'll be | 11:31:16 |
| 19 | opining on should we go to trial. | 11:31:20 |
| 20 | Q   So does the statement that he did not | 11:31:22 |
| 21 | contest his removal in paragraph 15 of your | 11:31:24 |
| 22 | report, does that inform any of your opinions? | 11:31:26 |
| 23 | A   It is my assumption within the report | 11:31:32 |
| 24 | that based upon the documents I read that Mr. | 11:31:36 |
| 25 | Donnelly did not contest the fact that he was off | 11:31:39 |

Transcript of Neil J. Beaton
September 22, 2022                                    61

| | | |
|---|---|---|
| 1 | the board.  He contested the fact that the payment | 11:31:43 |
| 2 | for his incentive equity units were too low, and | 11:31:46 |
| 3 | in order to make an opinion and a contention that | 11:31:52 |
| 4 | the value is too low means he knew he was off the | 11:31:55 |
| 5 | board because that's what triggers the buyback. | 11:31:58 |
| 6 | Therefore, as an economic expert, I then calculate | 11:32:01 |
| 7 | out what that value would be based upon how long | 11:32:06 |
| 8 | he was there and according to the agreement did | 11:32:09 |
| 9 | not include any performance units because as of | 11:32:12 |
| 10 | the date, August 31, 2019, a liquidity event had | 11:32:14 |
| 11 | not occurred. | 11:32:20 |
| 12 | But that's who I am and that's what I | 11:32:21 |
| 13 | will be testifying on irrespective of what I state | 11:32:23 |
| 14 | in my report regarding what Mr. Donnelly felt or | 11:32:27 |
| 15 | didn't feel.  The fact is we have documentation | 11:32:30 |
| 16 | and we have actions that indicate he knew he was | 11:32:33 |
| 17 | off the board, and therefore I'm calculating it in | 11:32:35 |
| 18 | that regard. | 11:32:38 |
| 19 | Q   But doesn't the request of his salary | 11:32:38 |
| 20 | constitute -- | 11:32:43 |
| 21 | MS. CHRISTENSEN:  Objection, asked and | 11:32:45 |
| 22 | answered. | 11:32:46 |
| 23 | A   Again, I was just going to say you just | 11:32:46 |
| 24 | asked me that, and I'm not here to opine as to the | 11:32:49 |
| 25 | validity or invalidity of his compensation claims. | 11:32:51 |

Transcript of Neil J. Beaton
September 22, 2022                                          62

| | | |
|---|---|---|
| 1 | I haven't been asked to review that and I don't | 11:32:55 |
| 2 | have any opinions on that matter. | 11:32:58 |
| 3 | BY MR. MINSON: | 11:33:00 |
| 4 | Q   Okay.  All right.  Let's go to the | 11:33:00 |
| 5 | important part, your valuation.  Okay.  I want you | 11:33:03 |
| 6 | to turn to in your report page 11, paragraph 23a. | 11:33:11 |
| 7 | Okay.  Paragraph 23a in the valuation portion of | 11:33:37 |
| 8 | your report, you explain that the object of the | 11:33:41 |
| 9 | GPC method is to derive multiples from | 11:33:51 |
| 10 | sufficiently comparable companies to apply the | 11:33:54 |
| 11 | fundamental financial variables of the subject | 11:33:59 |
| 12 | company.  So I just want you to specify what | 11:34:02 |
| 13 | constitutes in your opinion a sufficiently | 11:34:08 |
| 14 | comparable company. | 11:34:11 |
| 15 | A   If I could define that, I would write a | 11:34:15 |
| 16 | book and I could retire and go drink cold ones, | 11:34:17 |
| 17 | you know, in the Caribbean.  It's -- beauty and | 11:34:21 |
| 18 | comparability is in the eyes of the beholder, but | 11:34:29 |
| 19 | typically there are measures and they're set forth | 11:34:32 |
| 20 | in a multiple of business valuation textbooks by | 11:34:35 |
| 21 | Dr. Shannon Pratt, by James H. Hitchner, by | 11:34:38 |
| 22 | Professor Aswath, A-s-w-a-t-h, Damodaren, | 11:34:43 |
| 23 | D-a-m-o-d-a-r-e-n, that state one looks at size, | 11:34:48 |
| 24 | growth, industry, geographic reach, and there are | 11:34:55 |
| 25 | other measures as well when you get into some of | 11:35:06 |

Transcript of Neil J. Beaton
September 22, 2022                                    63

| | | |
|---|---|---|
| 1 | the technology that I get involved with. | 11:35:09 |
| 2 | But ultimately it gets down to a | 11:35:12 |
| 3 | selection process that is typically done by SIC | 11:35:14 |
| 4 | code, Standard Industrial Classification code. | 11:35:17 |
| 5 | Oftentimes I use keywords.  That selection process | 11:35:22 |
| 6 | again, as you mentioned earlier and as you look | 11:35:27 |
| 7 | through both Linden's and the five investment | 11:35:29 |
| 8 | banks' documents, sometimes they have the same | 11:35:34 |
| 9 | ones, sometimes they add different ones.  So it | 11:35:37 |
| 10 | just depends on how wide the net is cast and what | 11:35:40 |
| 11 | the basis is of the ultimate selection process. | 11:35:44 |
| 12 | Q   And for the exercise that was completed | 11:35:50 |
| 13 | in ProPharma's valuation to value Mr. Donnelly's | 11:35:53 |
| 14 | incentive equity, who was responsible for | 11:35:59 |
| 15 | determining what a sufficiently comparable company | 11:36:02 |
| 16 | was? | 11:36:05 |
| 17 | A   My understanding, initially it was | 11:36:07 |
| 18 | Anthony Davis when he was the lead of the buyout | 11:36:09 |
| 19 | team when they acquired ProPharma in 2016.  I | 11:36:14 |
| 20 | believe that shifted to Mr. Farah.  And I believe | 11:36:19 |
| 21 | he had another assistant with him, Joshua Reilly. | 11:36:25 |
| 22 | And ultimately I believe those valuations and | 11:36:30 |
| 23 | selections came from those two and then were | 11:36:33 |
| 24 | vetted by the CFO of Linden in the review process, | 11:36:36 |
| 25 | ultimately vetted by the outside accounting firm | 11:36:45 |

Transcript of Neil J. Beaton
September 22, 2022                                        64

| | | |
|---|---|---|
| 1 | RSM McGladrey -- I guess they changed their name | 11:36:47 |
| 2 | just to RSM now -- in their annual audits of the | 11:36:53 |
| 3 | various funds and the selection process. | 11:36:58 |
| 4 | Q   Do you know what those audits entailed? | 11:37:00 |
| 5 | A   I'm sorry.  Again? | 11:37:02 |
| 6 | Q   Do you know what those audits entailed? | 11:37:03 |
| 7 | A   I don't know what you mean.  I mean, I | 11:37:07 |
| 8 | do know what audits entail.  Do I know what RSM's | 11:37:08 |
| 9 | audit entailed in regards to the selection | 11:37:13 |
| 10 | process? | 11:37:15 |
| 11 | Q   Yeah.  I mean, in your report, you rely | 11:37:16 |
| 12 | on the fact that, you know, RSM completed these | 11:37:18 |
| 13 | audits and they were -- the valuations that were | 11:37:22 |
| 14 | regularly completed by ProPharma or for ProPharma | 11:37:24 |
| 15 | were vetted with these audits. | 11:37:27 |
| 16 | A   Correct. | 11:37:30 |
| 17 | Q   And so I just want to know if you know | 11:37:31 |
| 18 | what the audits consisted of. | 11:37:32 |
| 19 | A   I don't know RSM's analysis because I | 11:37:35 |
| 20 | don't deal a lot with them.  I regularly get | 11:37:38 |
| 21 | involved with Deloitte, EY, PWC, which is | 11:37:41 |
| 22 | PriceWaterhouseCooper, KPMG, and I was in the | 11:37:49 |
| 23 | audit -- I was in the valuation group that | 11:37:51 |
| 24 | performed audits at Grant Thornton for nine years | 11:37:53 |
| 25 | and we reviewed and audited financial statements. | 11:37:58 |

Transcript of Neil J. Beaton
September 22, 2022                              65

| | | |
|---|---|---|
| 1 | So I know those processes by those | 11:38:01 |
| 2 | international accounting firms and would assume, | 11:38:03 |
| 3 | because I don't know RSM's as well, that they | 11:38:07 |
| 4 | would have performed the same types of reviews | 11:38:12 |
| 5 | that I would have performed at Grant Thornton and | 11:38:14 |
| 6 | that my work is reviewed by the big four | 11:38:17 |
| 7 | accounting firms. | 11:38:20 |
| 8 | Q    Same paragraph -- | 11:38:41 |
| 9 | MS. CHRISTENSEN:  Is that paragraph 23, | 11:38:44 |
| 10 | counsel? | 11:38:45 |
| 11 | MR. MINSON:  23a. | 11:38:47 |
| 12 | MS. CHRISTENSEN:  Okay. | 11:38:48 |
| 13 | BY MR. MINSON: | 11:38:49 |
| 14 | Q    On page 11 of your initial report, you | 11:38:49 |
| 15 | state that "Linden was able to identify a pool of | 11:38:51 |
| 16 | sufficiently comparable guideline public | 11:38:54 |
| 17 | companies, and therefore the GPC method as an | 11:38:56 |
| 18 | appropriate valuation" -- "and therefore employed | 11:39:03 |
| 19 | the GPC method as an appropriate valuation | 11:39:05 |
| 20 | methodology to value ProPharma as of June 30, | 11:39:09 |
| 21 | 2019." | 11:39:15 |
| 22 | First, I think you earlier testified | 11:39:23 |
| 23 | that the GPC valuation that Linden completed | 11:39:25 |
| 24 | wasn't really a factor in their overall -- or you | 11:39:33 |
| 25 | said -- I could read it back.  I don't remember | 11:39:37 |

Transcript of Neil J. Beaton
September 22, 2022                                    66

| | | |
|---|---|---|
| 1 | how you said it, but you said that it was -- | 11:39:40 |
| 2 | A   I didn't say it that way, but go ahead | 11:39:43 |
| 3 | and ask the question. | 11:39:48 |
| 4 | MS. CHRISTENSEN:  Yeah. | 11:39:48 |
| 5 | BY MS. MINSON: | 11:39:48 |
| 6 | Q   You said it had a small impact. | 11:39:48 |
| 7 | Basically I could -- | 11:39:50 |
| 8 | MS. CHRISTENSEN:  I'm going to object to | 11:39:51 |
| 9 | the form -- | 11:39:52 |
| 10 | MR. MINSON:  Would you like me to -- | 11:39:53 |
| 11 | MS. CHRISTENSEN:  -- to the extent that | 11:39:53 |
| 12 | it -- | 11:39:53 |
| 13 | MR. MINSON:  That was really far back. | 11:39:56 |
| 14 | MS. CHRISTENSEN:  That counsel has | 11:39:56 |
| 15 | missed the prior testimony.  If counsel wants to | 11:39:56 |
| 16 | read the prior testimony, please go ahead. | 11:39:58 |
| 17 | A   Perhaps the question could be re-asked, | 11:40:03 |
| 18 | and now we know what the objection is and we now | 11:40:05 |
| 19 | know that I didn't state it as was started. | 11:40:07 |
| 20 | Perhaps you can rephrase the question. | 11:40:11 |
| 21 | BY MR. MINSON: | 11:40:15 |
| 22 | Q   Yeah.  I don't remember your exact | 11:40:15 |
| 23 | phrasing, but you state that the GPC method -- | 11:40:17 |
| 24 | that Linden employed the GPC or the public company | 11:40:21 |
| 25 | method was appropriate to value ProPharma as of | 11:40:26 |

Transcript of Neil J. Beaton
September 22, 2022                                    67

| | | |
|---|---|---|
| 1 | June 30, 2019, but previously you said the -- I | 11:40:28 |
| 2 | believe that you implied that the overall impact | 11:40:34 |
| 3 | of the GPC method as opposed to the GCT method was | 11:40:39 |
| 4 | slight when they derived their final EBITDA | 11:40:44 |
| 5 | multiple.  I think you did the math and came up | 11:40:51 |
| 6 | with the GTC average of 13.85 and the GPC average | 11:40:54 |
| 7 | being somewhere in the 16s. | 11:41:01 |
| 8 | MS. CHRISTENSEN:  I'm going to object. | 11:41:04 |
| 9 | Same objection to the extent he misstates prior | 11:41:06 |
| 10 | testimony.  I'm also going to object to the | 11:41:09 |
| 11 | question as argumentative. | 11:41:12 |
| 12 | A   I still don't know what the question is. | 11:41:17 |
| 13 | Are you -- | 11:41:19 |
| 14 | BY MR. MINSON: | 11:41:20 |
| 15 | Q   I would like you to square your previous | 11:41:20 |
| 16 | statement with the fact that you did opine here | 11:41:23 |
| 17 | that they made use of that valuation method. | 11:41:25 |
| 18 | A   Yeah.  I mean, I can show you on page 19 | 11:41:29 |
| 19 | where they did.  They actually came up with that | 11:41:34 |
| 20 | and there are four documents that I list in the | 11:41:36 |
| 21 | back of my report in Exhibit 4 where valuations | 11:41:38 |
| 22 | were conducted using a low and high of the GPCs | 11:41:43 |
| 23 | and using the low and high of the GTCs.  That's | 11:41:47 |
| 24 | appropriate. | 11:41:55 |
| 25 | Now, the ultimate multiple that came out | 11:41:56 |

Transcript of Neil J. Beaton
September 22, 2022                                    68

| | | |
|---|---|---|
| 1 | of it was different than all of those numbers, and | 11:41:59 |
| 2 | it just happened to be mathematically in the | 11:42:04 |
| 3 | middle of the GCTs, but that doesn't mean that the | 11:42:06 |
| 4 | GPCs weren't considered, because they were.  We | 11:42:11 |
| 5 | had valuations, just Linden Management didn't | 11:42:14 |
| 6 | believe that ProPharma was on a scale that the | 11:42:17 |
| 7 | public companies were and therefore de-emphasized | 11:42:22 |
| 8 | those multiples in the selection process based | 11:42:25 |
| 9 | upon the pure math that came out.  I don't know | 11:42:28 |
| 10 | exactly what their process was in that, but I can | 11:42:31 |
| 11 | review that. | 11:42:36 |
| 12 | It doesn't change the statement I made | 11:42:38 |
| 13 | in 23a of Exhibit 1 to my deposition because it is | 11:42:39 |
| 14 | appropriate to look at public companies.  I do | 11:42:43 |
| 15 | that all the time.  Oftentimes the public company | 11:42:47 |
| 16 | valuations are significantly higher than the | 11:42:50 |
| 17 | ultimate selection that I make for the subjective | 11:42:53 |
| 18 | reasons that I review and make that selection | 11:42:57 |
| 19 | process on. | 11:43:01 |
| 20 | Q   Okay.  And, now, so what -- so I think | 11:43:02 |
| 21 | you said you analyze -- let's see -- size, growth, | 11:43:05 |
| 22 | industry, geographic reach.  Are those factors | 11:43:14 |
| 23 | that you used to determine whether the companies | 11:43:17 |
| 24 | were sufficiently comparable? | 11:43:21 |
| 25 | A   You asked me that earlier and I already | 11:43:23 |

Transcript of Neil J. Beaton
September 22, 2022                                              69

| | | |
|---|---|---|
| 1 | told you I did not do an analysis where I assessed | 11:43:25 |
| 2 | their comparability.  I accepted the fact that | 11:43:29 |
| 3 | Linden chose those, as well as the investment | 11:43:32 |
| 4 | banks.  I wasn't questioning their selection of | 11:43:37 |
| 5 | GPCs or GTCs. | 11:43:41 |
| 6 | Q   Okay.  And the second part of that | 11:43:49 |
| 7 | statement that we're referring to, it says that in | 11:43:51 |
| 8 | paragraph -- not that statement, but a previous | 11:44:07 |
| 9 | statement, it refers to fundamental financial | 11:44:09 |
| 10 | variables.  Are those the factors that I just | 11:44:12 |
| 11 | stated, the size, growth, industry, and geographic | 11:44:14 |
| 12 | reach, or are there other fundamental financial | 11:44:18 |
| 13 | variables?  This is page 11, paragraph 23a of your | 11:44:24 |
| 14 | report.  You say that they apply fundamental | 11:44:28 |
| 15 | financial variables. | 11:44:34 |
| 16 | A   No.  Those are -- those are not the | 11:44:36 |
| 17 | variables I was referring to in that paragraph. | 11:44:39 |
| 18 | Q   Okay.  And so what are the fundamental | 11:44:41 |
| 19 | financial variables that you're referring to in | 11:44:43 |
| 20 | that paragraph? | 11:44:46 |
| 21 | A   You can use invested capital.  You can | 11:44:47 |
| 22 | use book value.  You can use debt.  I often use | 11:44:52 |
| 23 | debt when I'm looking at a leveraged buyout. | 11:44:57 |
| 24 | Those are balance sheet items that I mention in | 11:45:00 |
| 25 | the next paragraph.  Then you can also use | 11:45:04 |

Transcript of Neil J. Beaton
September 22, 2022                                    70

| | | |
|---|---|---|
| 1 | revenue, gross profit.  You can use EBIT, earnings | 11:45:06 |
| 2 | before interest and taxes.  You can use EBITDA, | 11:45:11 |
| 3 | earnings before interest, taxes, depreciation, and | 11:45:14 |
| 4 | amortization.  You can use FCF, which is free cash | 11:45:18 |
| 5 | flow, and then any combination whatsoever. | 11:45:22 |
| 6 | Oftentimes I will use non-financial | 11:45:27 |
| 7 | variables with my early stage companies because | 11:45:30 |
| 8 | they don't have any financial variables, and I | 11:45:32 |
| 9 | will use doors past if I'm valuing a cable company | 11:45:35 |
| 10 | that's just starting out.  I will use investment, | 11:45:41 |
| 11 | not MOIC, but investment when I'm valuing a | 11:45:44 |
| 12 | company that is just receiving investment and has | 11:45:47 |
| 13 | no revenue or product. | 11:45:49 |
| 14 | So there's a vast number of financial | 11:45:52 |
| 15 | variables, and I was referring to those vast | 11:45:55 |
| 16 | number in paragraph 23a of my report. | 11:46:00 |
| 17 | Q   Okay.  And who determines or -- yeah, | 11:46:04 |
| 18 | who determines -- for Linden's valuation purposes, | 11:46:11 |
| 19 | who determines which fundamental financial | 11:46:17 |
| 20 | variables are employed to come up with the | 11:46:20 |
| 21 | valuation? | 11:46:23 |
| 22 | A   My understanding was Mr. Farah and Mr. | 11:46:25 |
| 23 | Reilly were the primary individuals responsible | 11:46:28 |
| 24 | for those selections. | 11:46:31 |
| 25 | Q   And do you know for them what | 11:46:33 |

Transcript of Neil J. Beaton
September 22, 2022                                        71

| | | |
|---|---|---|
| 1 | financial -- what fundamental financial variables | 11:46:35 |
| 2 | were applied or what they relied on? | 11:46:39 |
| 3 | A    Yes. | 11:46:42 |
| 4 | Q    And what were they? | 11:46:43 |
| 5 | A    EBITDA. | 11:46:44 |
| 6 | Q    And that was it? | 11:46:45 |
| 7 | A    That's my understanding. | 11:46:46 |
| 8 | Q    So when a valuator, whether it's | 11:47:28 |
| 9 | yourself or Linden, is determining a pool of -- | 11:47:35 |
| 10 | which companies in a pool of companies they want | 11:47:43 |
| 11 | to use, is it possible for them to choose a pool | 11:47:45 |
| 12 | of less valuable companies to lower the value of | 11:48:01 |
| 13 | their company? | 11:48:04 |
| 14 | A    I'll give you my pat response:  Anything | 11:48:07 |
| 15 | is possible. | 11:48:09 |
| 16 | Q    Okay. | 11:48:18 |
| 17 | A    Not probable, but it's possible. | 11:48:18 |
| 18 | Q    Okay.  And if they wanted to do that -- | 11:48:34 |
| 19 | strike that. | 11:48:41 |
| 20 | Okay.  I may have asked this question | 11:49:07 |
| 21 | generally, so bear with me, and I apologize if you | 11:49:09 |
| 22 | feel like you're re-answering the same question. | 11:49:12 |
| 23 | I want it to apply to the specific portion of your | 11:49:15 |
| 24 | report, though. | 11:49:18 |
| 25 | A    I will certainly let you know. | 11:49:19 |

Transcript of Neil J. Beaton
September 22, 2022                                    72

| | | |
|---|---|---|
| 1 | Q   I know.  Page 11, 23b, it notes that | 11:49:20 |
| 2 | "The GCT method relies on the same basic | 11:49:24 |
| 3 | principles as the GPC method, but instead involves | 11:49:29 |
| 4 | determining valuation multiples from sales of | 11:49:32 |
| 5 | companies with similar financial and operating | 11:49:36 |
| 6 | characteristics and applying the valuation | 11:49:39 |
| 7 | multiples derived."  And my question is the | 11:49:42 |
| 8 | specific statement of sales of companies with | 11:49:49 |
| 9 | similar financial and operating characteristics, | 11:49:52 |
| 10 | that selection is completely discretionary, | 11:49:58 |
| 11 | correct? | 11:50:01 |
| 12 | A   When you say completely discretionary, I | 11:50:03 |
| 13 | disagree. | 11:50:08 |
| 14 | Q   There's discretion involved? | 11:50:10 |
| 15 | A   There's definitely discretion, but not | 11:50:12 |
| 16 | completely discretionary, because if I wanted to | 11:50:14 |
| 17 | use SAP or Microsoft to value ProPharma, that | 11:50:17 |
| 18 | would be completely discretionary, but it would be | 11:50:21 |
| 19 | completely wrong as well. | 11:50:24 |
| 20 | Q   So are there -- I guess I have a | 11:50:26 |
| 21 | follow-up question I haven't asked before:  Are | 11:50:29 |
| 22 | the companies selected based on any hard criteria? | 11:50:31 |
| 23 | A   I don't know what Linden does.  I don't | 11:50:36 |
| 24 | have hard criteria because every engagement is | 11:50:38 |
| 25 | typically different.  So I'm very fluid in my | 11:50:42 |

Transcript of Neil J. Beaton
September 22, 2022                                              73

| | | |
|---|---|---|
| 1 | analyses.  I don't know what Linden's policy is in | 11:50:45 |
| 2 | that regard. | 11:50:51 |
| 3 | Q   I want to go to page 12, also 23b.  You | 11:51:01 |
| 4 | then talk about the GCT method as being | 11:51:08 |
| 5 | appropriate as a valuation methodology used by | 11:51:10 |
| 6 | Linden.  Is it your opinion that that was the more | 11:51:14 |
| 7 | appropriate methodology in this case? | 11:51:19 |
| 8 | A   Yes. | 11:51:24 |
| 9 | Q   Why? | 11:51:27 |
| 10 | A   There were 30 transactions under the | 11:51:29 |
| 11 | GTC.  Those transactions were more in line with | 11:51:31 |
| 12 | the size, characteristics of ProPharma.  Those | 11:51:35 |
| 13 | would be the two main reasons. | 11:51:40 |
| 14 | Q   And isn't it true that one of those | 11:51:44 |
| 15 | transactions was Advarra which Linden sold earlier | 11:51:47 |
| 16 | that year? | 11:51:51 |
| 17 | A   Correct.  Advarra was about twice the | 11:51:51 |
| 18 | size of ProPharma, but well below the value and | 11:51:54 |
| 19 | size of the GPCs. | 11:51:58 |
| 20 | Q   But it was a -- was it a similar | 11:52:01 |
| 21 | company? | 11:52:03 |
| 22 | A   Only in its small portion of -- I'll | 11:52:04 |
| 23 | call it CRO work, contract research organization | 11:52:10 |
| 24 | work.  My understanding is Advarra was more tech | 11:52:14 |
| 25 | enabled than ProPharma, which was more focused on | 11:52:19 |

Transcript of Neil J. Beaton
September 22, 2022                                    74

| | | |
|---|---|---|
| 1 | consulting and people, and therefore its growth | 11:52:24 |
| 2 | prospects were higher, but it was one of -- like I | 11:52:28 |
| 3 | said, one of 30 utilized. | 11:52:34 |
| 4 | Q   Okay.  I just want to make sure I ask | 11:52:45 |
| 5 | this, and I haven't asked this before, but as far | 11:52:49 |
| 6 | as looking at each one of those companies, you | 11:52:52 |
| 7 | didn't do that, correct? | 11:52:54 |
| 8 | A   What do you mean, I didn't -- | 11:52:56 |
| 9 | Q   As far as looking at the characteristics | 11:52:59 |
| 10 | and how each one of those companies was comparable | 11:53:01 |
| 11 | to ProPharma.  Did you do that? | 11:53:05 |
| 12 | MS. CHRISTENSEN:  Each one of what | 11:53:06 |
| 13 | companies? | 11:53:08 |
| 14 | MR. MINSON:  I'm sorry.  Obviously. | 11:53:09 |
| 15 | BY MR. MINSON: | 11:53:10 |
| 16 | Q   Each one of the companies that were used | 11:53:10 |
| 17 | in the GCT method that you say used 30 companies, | 11:53:13 |
| 18 | did you evaluate how each one of those 30 or 23 or | 11:53:18 |
| 19 | whatever amount of companies that you said were | 11:53:23 |
| 20 | similar? | 11:53:25 |
| 21 | A   Only by size and by industry. | 11:53:26 |
| 22 | Q   Okay.  And when you say size, do you | 11:53:34 |
| 23 | mean amount of employees?  Do you mean financial? | 11:53:38 |
| 24 | A   Value. | 11:53:42 |
| 25 | Q   Value?  Okay.  And is that -- is that | 11:53:42 |

Transcript of Neil J. Beaton
September 22, 2022                               75

| | | |
|---|---|---|
| 1 | evaluation made part of your report? | 11:53:59 |
| 2 | A   Yes.  Well, in my rebuttal report, | 11:54:02 |
| 3 | you'll see that in the last chart after the other | 11:54:06 |
| 4 | five charts on the GPCs.  I believe on the third | 11:54:11 |
| 5 | to last page of that rebuttal report, but maybe | 11:54:17 |
| 6 | the second to last page. | 11:54:21 |
| 7 | Q   But I just want to focus on your initial | 11:54:24 |
| 8 | report, though, here.  When you say it was an | 11:54:29 |
| 9 | appropriate valuation methodology, I just want to | 11:54:32 |
| 10 | know if your analysis of the size and the value of | 11:54:35 |
| 11 | the companies that Linden chose under the GCT | 11:54:39 |
| 12 | method is listed and is notated in your initial | 11:54:43 |
| 13 | report. | 11:54:52 |
| 14 | A   My initial report, paragraph 38, which | 11:54:53 |
| 15 | is on page 19, and I talk about the number of | 11:54:56 |
| 16 | transactions, but I do not provide an analysis of | 11:55:04 |
| 17 | size of those transactions.  That followed once I | 11:55:09 |
| 18 | read Mr. Estabrook's initial report wherein he was | 11:55:13 |
| 19 | using and focusing on GPCs, which I felt was | 11:55:18 |
| 20 | inappropriate because of the number of | 11:55:23 |
| 21 | transactions that I indicated in my first report. | 11:55:25 |
| 22 | I expanded on that in my rebuttal report. | 11:55:27 |
| 23 | Q   Okay.  And just to be clear, the word | 11:55:32 |
| 24 | "appropriate" is not supported by an evaluation of | 11:55:34 |
| 25 | the size and value of companies within that method | 11:55:36 |

Transcript of Neil J. Beaton
September 22, 2022                                              76

| | | |
|---|---|---|
| 1 | in your initial report, correct? | 11:55:40 |
| 2 | MS. CHRISTENSEN:  Objection, form, | 11:55:42 |
| 3 | argumentative. | 11:55:44 |
| 4 | A   And I'm not sure exactly what you asked | 11:55:46 |
| 5 | about appropriate or inappropriate.  Could you | 11:55:48 |
| 6 | please repeat the question. | 11:55:50 |
| 7 | BY MR. MINSON: | 11:55:52 |
| 8 | Q   So you opine the GCT method was an | 11:55:52 |
| 9 | appropriate valuation methodology used by Linden, | 11:55:56 |
| 10 | and I asked you why that was appropriate, and you | 11:56:01 |
| 11 | explained -- first I mentioned Advarra, and then | 11:56:05 |
| 12 | you explained that the companies were -- it was -- | 11:56:10 |
| 13 | you evaluated the size and value of the companies | 11:56:17 |
| 14 | to deem it was appropriate, but my question is | 11:56:20 |
| 15 | that evaluation of that size and value that | 11:56:26 |
| 16 | supports that language is not in your report? | 11:56:31 |
| 17 | MS. CHRISTENSEN:  Objection, form.  Also | 11:56:34 |
| 18 | to the extent that the question misstates prior | 11:56:37 |
| 19 | testimony. | 11:56:39 |
| 20 | A   The fact that I don't mention size in my | 11:56:42 |
| 21 | report does not invalidate my opinion that the GCT | 11:56:45 |
| 22 | is appropriate.  The GCT can be appropriate even | 11:56:49 |
| 23 | if size is not even considered ever because it's | 11:56:51 |
| 24 | an appropriate methodology.  Linden performed that | 11:56:55 |
| 25 | methodology consistently for four years, three | 11:56:58 |

Transcript of Neil J. Beaton
September 22, 2022                                77

| | | |
|---|---|---|
| 1 | years, up until the time of that valuation. | 11:57:02 |
| 2 | BY MR. MINSON: | 11:57:08 |
| 3 | Q   But you -- | 11:57:08 |
| 4 | A   I don't see how that can be appropriate | 11:57:08 |
| 5 | in any -- | 11:57:10 |
| 6 | Q   But your -- | 11:57:11 |
| 7 | A   -- stretch of the imagination. | 11:57:11 |
| 8 | Q   Okay.  I'll let you finish.  Your report | 11:57:13 |
| 9 | says that it was appropriately used by Linden as | 11:57:16 |
| 10 | of June 30, 2019 to support that.  You said that | 11:57:18 |
| 11 | you reviewed the size and value of those | 11:57:23 |
| 12 | companies, correct? | 11:57:26 |
| 13 | A   In my rebuttal report after I read Mr. | 11:57:27 |
| 14 | Estabrook's initial report.  I did not review for | 11:57:31 |
| 15 | size because all I had in my mind at the point in | 11:57:34 |
| 16 | time was is the GCT an appropriate methodology and | 11:57:38 |
| 17 | did Linden apply it so, and was the information | 11:57:42 |
| 18 | contained in their valuations adequate for me to | 11:57:45 |
| 19 | replicate what they did and come up with the same | 11:57:49 |
| 20 | answers that they came up with as a validation | 11:57:52 |
| 21 | point, which gets to transparency that I mention | 11:57:55 |
| 22 | in my first report and validity. | 11:57:57 |
| 23 | And the fact that there were 30 | 11:58:01 |
| 24 | transactions compared to six under the GPC | 11:58:03 |
| 25 | methodology also gave me comfort that both -- as I | 11:58:06 |

Transcript of Neil J. Beaton
September 22, 2022                                    78

| | | |
|---|---|---|
| 1 | say, both -- the GPC and the GCT were appropriate | 11:58:13 |
| 2 | methodologies because they were and they still are | 11:58:13 |
| 3 | and they will continue to be because those are | 11:58:16 |
| 4 | basic valuation techniques that are employed by | 11:58:19 |
| 5 | valuation professionals around the world. | 11:58:22 |
| 6 | Q   So they were validateable, but is it | 11:58:26 |
| 7 | correct you did not validate them? | 11:58:31 |
| 8 | A   I did.  I was able to look at the -- | 11:58:34 |
| 9 | I'll give you a cite to it.  Rather than give you | 11:58:40 |
| 10 | a cite, I was able to see the actual companies and | 11:58:48 |
| 11 | the actual multiples that were derived from those | 11:58:51 |
| 12 | companies.  That's a validation.  It wasn't made | 11:58:54 |
| 13 | up out of whole cloth.  It wasn't a black box.  It | 11:58:57 |
| 14 | was set forth in a document that allowed anyone | 11:59:04 |
| 15 | that was considering a review of that to validate | 11:59:08 |
| 16 | it, which I did, and therefore it's validateable, | 11:59:10 |
| 17 | to borrow a word. | 11:59:14 |
| 18 | Q   But you never re-created their valuation | 11:59:20 |
| 19 | using raw data? | 11:59:23 |
| 20 | A   I did not question the inputs into their | 11:59:29 |
| 21 | valuation model.  That's correct. | 11:59:36 |
| 22 | Q   And in paragraph 23b also, there's a | 12:00:00 |
| 23 | statement about valuation derived from a GTC | 12:00:03 |
| 24 | valuation is at a control marketable level and | 12:00:08 |
| 25 | therefore would require a minority interest | 12:00:12 |

Transcript of Neil J. Beaton
September 22, 2022                                    79

| | | |
|---|---|---|
| 1 | discount to arrive at the fair market value of a | 12:00:12 |
| 2 | minority interest such as that owned by Mr. | 12:00:16 |
| 3 | Donnelly.  Is that a general statement about GTC | 12:00:19 |
| 4 | valuation, or is that an opinion on what you | 12:00:24 |
| 5 | believe Mr. Donnelly -- how the GTC should have | 12:00:27 |
| 6 | been applied to Mr. Donnelly? | 12:00:33 |
| 7 | A    The former. | 12:00:34 |
| 8 | Q    So it was a general opinion? | 12:00:39 |
| 9 | A    Correct. | 12:00:41 |
| 10 | Q    Okay. | 12:01:10 |
| 11 | MS. CHRISTENSEN:  Counsel? | 12:01:10 |
| 12 | MR. MINSON:  Yeah. | 12:01:11 |
| 13 | MS. CHRISTENSEN:  We're coming up on an | 12:01:11 |
| 14 | hour. | 12:01:13 |
| 15 | MR. MINSON:  Another hour.  Do you want | 12:01:15 |
| 16 | to take a break? | 12:01:15 |
| 17 | MS. CHRISTENSEN:  It's up to you. | 12:01:15 |
| 18 | MR. MINSON:  That's fine. | 12:01:16 |
| 19 | MS. CHRISTENSEN:  I just wanted to flag | 12:01:16 |
| 20 | that.  I didn't know how much more you had. | 12:01:16 |
| 21 | MR. MINSON:  No, I can pick it up. | 12:01:18 |
| 22 | MS. CHRISTENSEN:  If you wanted to take | 12:01:20 |
| 23 | a break. | 12:01:21 |
| 24 | MR. MINSON:  I can pick it up.  Do you | 12:01:22 |
| 25 | want to take a break?  We'll take a break. | 12:01:22 |

Transcript of Neil J. Beaton
September 22, 2022                                    80

```
 1              THE VIDEOGRAPHER:  Okay.  Please stand        12:01:24
 2   by.                                                      12:01:25
 3              We are going off the record.  The time        12:01:26
 4   is 12:00 p.m.                                            12:01:27
 5              (A lunch recess was had from 12:00 p.m.       12:49:36
 6   to 12:48 p.m.)                                           12:49:36
 7              THE VIDEOGRAPHER:  We are back on the         12:49:38
 8   record.  The time is 12:48.                             12:49:39
 9   BY MR. MINSON:                                           12:49:43
10       Q   All right.  Good afternoon, Mr. Beaton.         12:49:43
11   I hope you had a good lunch.                             12:49:46
12       A   Good afternoon.                                 12:49:49
13       Q   Okay.  So we're going to go back to your        12:49:50
14   valuation portion of your initial report, and I'm       12:49:53
15   going to direct your attention, if you have it in       12:49:56
16   front of you, to page 13, paragraph 24 where you        12:50:01
17   talk about -- well, I'll just -- at the expense of      12:50:07
18   not misstating it, you say, "Linden was able to         12:50:11
19   identify highly comparable guideline companies to       12:50:15
20   utilize the GPC and GCT methodologies, and              12:50:19
21   therefore full reliance on these two methodologies      12:50:24
22   was sound and reasonable," and my question relates      12:50:24
23   to the guideline companies that were used.  Would       12:50:35
24   it be possible for you to go through those              12:50:39
25   companies and explain how they're highly               12:50:42
```

Transcript of Neil J. Beaton
September 22, 2022                                    81

| | | |
|---|---|---|
| 1 | comparable and why reliance on the methodology | 12:50:48 |
| 2 | using those companies was sound. | 12:50:53 |
| 3 | A   Give me the names or show me a list and | 12:50:57 |
| 4 | I can go through them. | 12:50:59 |
| 5 | Q   Okay.  Was there -- did you analyze that | 12:51:03 |
| 6 | for your report, or is it -- | 12:51:05 |
| 7 | MS. CHRISTENSEN:  Objection, asked and | 12:51:08 |
| 8 | answered. | 12:51:09 |
| 9 | BY MR. MINSON: | 12:51:12 |
| 10 | Q   So the list -- the company used, all the | 12:51:12 |
| 11 | companies are not listed in your report, correct? | 12:51:14 |
| 12 | A   They are contained in documents that are | 12:51:16 |
| 13 | contained in Exhibit 4 because those documents | 12:51:18 |
| 14 | contain a list of all of those companies that were | 12:51:21 |
| 15 | utilized by Linden in its analysis. | 12:51:25 |
| 16 | Q   Okay.  Exhibit 4 of your report? | 12:51:29 |
| 17 | A   Would you like me to identify? | 12:51:51 |
| 18 | Q   Yeah.  Could you identify which | 12:51:53 |
| 19 | documents contain the companies. | 12:51:55 |
| 20 | A   Yeah.  I'll give you a broad swath | 12:51:57 |
| 21 | because I don't know exactly which ones, but on | 12:52:00 |
| 22 | page 1 of 4, you've got financials, starting the | 12:52:03 |
| 23 | term financials 3/31/19.  Then you have multiples | 12:52:10 |
| 24 | for each of those quarters, Q1 through 4.  I have | 12:52:15 |
| 25 | a return analysis dated 2019.  Again, you have | 12:52:20 |

Transcript of Neil J. Beaton
September 22, 2022                                    82

| | | |
|---|---|---|
| 1 | exit returns dated 3/18/2019.  You have | 12:52:27 |
| 2 | financials, and those are dated March 31, 2020, | 12:52:33 |
| 3 | 6/30/2019, 6/30/2020, and 9/30/2019.  You have the | 12:52:38 |
| 4 | valuations, 12/20/18 and 12/31/2019.  You have | 12:52:50 |
| 5 | rollover equity analysis, equity returns. | 12:53:01 |
| 6 | Q   And these are all -- are these all | 12:53:08 |
| 7 | documents that contain those characteristics of -- | 12:53:10 |
| 8 | A   I don't know.  Again, if I had that kind | 12:53:15 |
| 9 | of memory, I'd be down in Las Vegas right now and | 12:53:17 |
| 10 | I'd probably be retired in about a week if I could | 12:53:20 |
| 11 | remember those kinds of details.  I'm just giving | 12:53:23 |
| 12 | you a swath of potential documents that have | 12:53:26 |
| 13 | equity values that would have been derived from | 12:53:30 |
| 14 | those.  I don't know which one.  I picture it in | 12:53:32 |
| 15 | my mind, but I don't have that kind of recall. | 12:53:36 |
| 16 | Q   Okay. | 12:53:40 |
| 17 | A   Wish I did. | 12:53:41 |
| 18 | MR. MINSON:  That doesn't really help. | 12:54:49 |
| 19 | It's too far.  All right. | 12:54:53 |
| 20 | BY MR. MINSON: | 12:54:56 |
| 21 | Q   Can you see this document?  This is what | 12:54:56 |
| 22 | you described as financials and it's dated | 12:54:58 |
| 23 | 6/30/2019.  That's LINDEN000408.  And you | 12:55:01 |
| 24 | described this as part of your valuation that you | 12:55:10 |
| 25 | used to determine that these were comparable | 12:55:13 |

Transcript of Neil J. Beaton
September 22, 2022                                   83

| | | |
|---|---|---|
| 1 | companies? | 12:55:19 |
| 2 | MS. CHRISTENSEN:  Objection, form, | 12:55:20 |
| 3 | misstates prior testimony. | 12:55:22 |
| 4 | BY MR. MINSON: | 12:55:26 |
| 5 | Q   Okay.  Can you just -- can you explain | 12:55:26 |
| 6 | what this document is. | 12:55:27 |
| 7 | A   I can.  It doesn't describe what you | 12:55:29 |
| 8 | just said it described because it's not what I | 12:55:31 |
| 9 | said.  I said I identified a number of documents | 12:55:35 |
| 10 | that have valuation information.  This is a | 12:55:38 |
| 11 | summary of all of the fund portfolio companies.  I | 12:55:40 |
| 12 | think there are five in this document, one of | 12:55:46 |
| 13 | which is ProPharma and one of which has the MOIC | 12:55:49 |
| 14 | multiples, but not the actual companies itself. | 12:55:54 |
| 15 | There is another document, and I believe I | 12:55:59 |
| 16 | identify that on paragraph 38 of my report of | 12:56:02 |
| 17 | LINDEN461 to 466 which would have the names, the | 12:56:06 |
| 18 | actual names of the companies. | 12:56:11 |
| 19 | Q   Okay.  Is this the document you're | 12:56:46 |
| 20 | referring to? | 12:56:47 |
| 21 | A   I can't read that from here. | 12:56:48 |
| 22 | Q   Here you go. | 12:56:59 |
| 23 | MR. MINSON:  Would you mark that as | 12:57:05 |
| 24 | Exhibit 4 and I'll send you the file. | 12:57:14 |
| 25 | A   Yes, this is it. | 12:57:16 |

Transcript of Neil J. Beaton
September 22, 2022                                    84

| | | |
|---|---|---|
| 1 | BY MR. MINSON: | 12:57:17 |
| 2 |     Q   Okay.  Now, can you explain your | 12:57:17 |
| 3 | analysis in regards to this document and how you | 12:57:18 |
| 4 | determined that these were adequate comparables. | 12:57:22 |
| 5 |     A   So this is a list of all of the | 12:57:31 |
| 6 | companies for the GCT.  It gives you the name of | 12:57:34 |
| 7 | the company.  Of course, Advarra is at the top. | 12:57:39 |
| 8 | It gives you their enterprise value, gives their | 12:57:42 |
| 9 | sale, and EBITDA multiples, some of which have, | 12:57:45 |
| 10 | some of which don't.  You can see on the EBITDA | 12:57:51 |
| 11 | component I believe all of them have numbers, but | 12:57:54 |
| 12 | not for necessarily valuations.  You can see NA | 12:58:01 |
| 13 | for the valuations.  So apparently there was | 12:58:05 |
| 14 | ability to get the multiples. | 12:58:09 |
| 15 |       So when you go over to MPI, go to these | 12:58:12 |
| 16 | other names over here -- let me make it bigger. | 12:58:18 |
| 17 | Like Pharm Invent, PrimeVigilance, I looked at | 12:58:24 |
| 18 | what they did and who bought them.  Quintus is one | 12:58:28 |
| 19 | of my clients.  I know what they do, and they're | 12:58:32 |
| 20 | buying a lot of orphan drug companies.  LabCorp, | 12:58:35 |
| 21 | another of my clients.  Genstar is a client.  Of | 12:58:47 |
| 22 | course, they acquired Advarra and I know what they | 12:58:51 |
| 23 | buy, so I'm familiar with their acquisitions in | 12:58:54 |
| 24 | the health care space. | 12:58:57 |
| 25 |       So all of these made sense to me that | 12:59:00 |

Transcript of Neil J. Beaton
September 22, 2022                                        85

| | | |
|---|---|---|
| 1 | again the selection of these particular multiples | 12:59:02 |
| 2 | by Linden -- excuse me, these particular companies | 12:59:05 |
| 3 | by Linden were in the same industry.  Vista | 12:59:07 |
| 4 | Capital is also a client.  So I knew by my own | 12:59:12 |
| 5 | experience and knowledge that many of the | 12:59:17 |
| 6 | companies that were the targets and the companies | 12:59:20 |
| 7 | that were buying were in the same industry as | 12:59:24 |
| 8 | ProPharma. | 12:59:28 |
| 9 | And thank you for allowing me to look at | 12:59:29 |
| 10 | that. | 12:59:31 |
| 11 | Q   Oh, yeah.  No, thank you for explaining | 12:59:32 |
| 12 | that.  And so -- okay.  And did you describe any | 12:59:36 |
| 13 | of that individual or independent knowledge in | 12:59:48 |
| 14 | your report based on what the companies did and | 12:59:50 |
| 15 | why you thought that they were comparable? | 12:59:54 |
| 16 | A   I didn't do it in my report and I didn't | 12:59:59 |
| 17 | make an independent analysis to decide whether or | 13:00:02 |
| 18 | not they were comparable.  I had discussions with | 13:00:06 |
| 19 | Mr. Farah and Mr. Reilly who performed the | 13:00:09 |
| 20 | analyses.  They identified those as the selection | 13:00:13 |
| 21 | process throughout the entire period that they | 13:00:16 |
| 22 | owned ProPharma. | 13:00:20 |
| 23 | Q   Okay.  So you didn't use any of that | 13:00:22 |
| 24 | independent knowledge on those companies to | 13:00:24 |
| 25 | validate their selections.  Is that correct? | 13:00:26 |

Transcript of Neil J. Beaton
September 22, 2022                                    86

| | | |
|---|---|---|
| 1 | A   Correct statement.  Not independent | 13:00:28 |
| 2 | knowledge of that.  As I stated earlier when you | 13:00:29 |
| 3 | asked me a question this morning, I did not | 13:00:32 |
| 4 | perform an independent analysis of their selection | 13:00:36 |
| 5 | process of their comps.  Even Mr. Estabrook did | 13:00:40 |
| 6 | not.  He just wholesale accepted what the | 13:00:46 |
| 7 | investment banks used, didn't do his own analysis | 13:00:48 |
| 8 | either.  I didn't think it was necessary. | 13:00:52 |
| 9 | Q   Okay.  But you would agree that taking | 13:00:58 |
| 10 | five different sources is different from taking | 13:01:01 |
| 11 | one source that is also the defendant? | 13:01:04 |
| 12 | A   I disagree with that. | 13:01:08 |
| 13 | Q   Okay. | 13:01:10 |
| 14 | A   As Mr. Estabrook pointed out, there was | 13:01:10 |
| 15 | five sources overlapped on the majority of them, | 13:01:15 |
| 16 | so there was really no benefit of using five or | 13:01:18 |
| 17 | one.  Plus, those are investment banks.  They're | 13:01:20 |
| 18 | not in the business. | 13:01:25 |
| 19 | Q   Okay. | 13:01:26 |
| 20 | A   Linden is in the business.  They're | 13:01:26 |
| 21 | talking to these buyers all the time and they're | 13:01:28 |
| 22 | talking to these selling companies all the time. | 13:01:30 |
| 23 | They acquired two companies themselves during this | 13:01:30 |
| 24 | period of time, and they were more on the list | 13:01:33 |
| 25 | even that Mr. Donnelly recused himself from.  So | 13:01:36 |

Transcript of Neil J. Beaton
September 22, 2022                                    87

| | | |
|---|---|---|
| 1 | they're in the business.  I would rather trust | 13:01:41 |
| 2 | whatever Linden put together than any investment | 13:01:45 |
| 3 | bank out there in the marketplace. | 13:01:48 |
| 4 | Q   Okay.  And for page 13, paragraph 27, | 13:01:53 |
| 5 | there's a statement that says, "Linden values its | 13:02:15 |
| 6 | investments on a quarterly basis in accordance | 13:02:18 |
| 7 | with both the relevant funds limited partnership | 13:02:22 |
| 8 | agreement and the methodology determined by Linden | 13:02:24 |
| 9 | to be the best measure of fair value."  In your | 13:02:27 |
| 10 | assessment of the valuations done on a quarterly | 13:02:35 |
| 11 | basis and completed by Linden, were they all | 13:02:39 |
| 12 | performed in the same way? | 13:02:42 |
| 13 | A   All the ones I reviewed were. | 13:02:44 |
| 14 | Q   Okay.  And were they all performed using | 13:02:47 |
| 15 | the GPC and GCT method? | 13:02:50 |
| 16 | A   Yes.  They were all identical in their | 13:02:55 |
| 17 | application of those two methodologies. | 13:02:57 |
| 18 | Q   Okay.  And as for fair value, you say | 13:03:00 |
| 19 | it's the best measure of fair value.  Is that the | 13:03:07 |
| 20 | same as fair market value, or is there a | 13:03:09 |
| 21 | difference? | 13:03:13 |
| 22 | A   In this particular instance, there's no | 13:03:13 |
| 23 | difference between fair value and fair market | 13:03:15 |
| 24 | value. | 13:03:19 |
| 25 | Q   Okay.  And does your opinion here | 13:03:21 |

Transcript of Neil J. Beaton
September 22, 2022                                   88

| | | |
|---|---|---|
| 1 | regarding fair value, does it relate to the fair | 13:03:23 |
| 2 | market value as defined as we discussed before in | 13:03:31 |
| 3 | Mr. Donnelly's incentive equity agreement? | 13:03:33 |
| 4 | MS. CHRISTENSEN:  Object to the form to | 13:03:36 |
| 5 | the extent it calls for a legal conclusion. | 13:03:38 |
| 6 | You may answer. | 13:03:41 |
| 7 | A    Yeah.  From an economic and valuation | 13:03:42 |
| 8 | scenario, fair value for fund reporting is | 13:03:45 |
| 9 | identical to the definition in the agreement | 13:03:48 |
| 10 | wherein no discounts for lack of control or lack | 13:03:52 |
| 11 | of marketability are applied because it's an exit | 13:03:55 |
| 12 | multiple. | 13:03:59 |
| 13 | BY MR MINSON: | 13:03:59 |
| 14 | Q    Okay. | 13:03:59 |
| 15 | A    Fair value, and it's an exit multiple | 13:04:00 |
| 16 | for Mr. Donnelly's incentive units. | 13:04:04 |
| 17 | Q    Okay.  That's exactly what I wanted to | 13:04:07 |
| 18 | know.  I just didn't know if it was as you | 13:04:08 |
| 19 | described before with GCT and fair market value | 13:04:11 |
| 20 | including those discounts. | 13:04:15 |
| 21 | A    In general there's a difference.  The | 13:04:17 |
| 22 | public companies are traded on a minority basis. | 13:04:19 |
| 23 | GCTs are traded on a controlled basis.  There's | 13:04:23 |
| 24 | apples and oranges. | 13:04:28 |
| 25 | Q    Okay. | 13:04:29 |

Transcript of Neil J. Beaton
September 22, 2022                                    89

| | | |
|---|---|---|
| 1 | A   You would typically see higher multiples | 13:04:29 |
| 2 | for an acquisition of a hundred percent, all other | 13:04:32 |
| 3 | things being equal, than a minority interest. | 13:04:36 |
| 4 | However, because the GCTs were smaller companies | 13:04:37 |
| 5 | compared to the six large public companies as we | 13:04:41 |
| 6 | saw in my rebuttal report, then those multiples | 13:04:44 |
| 7 | are going to be decidedly lower no matter what, | 13:04:48 |
| 8 | but more in line with the size that ProPharma was | 13:04:53 |
| 9 | and therefore more indicative of ProPharma's fair | 13:04:55 |
| 10 | value and fair market value according to the | 13:04:59 |
| 11 | incentive equity agreement. | 13:05:01 |
| 12 | Q   Okay.  And for -- in paragraph -- if you | 13:05:15 |
| 13 | go to your report, your initial report, expert | 13:05:18 |
| 14 | report, page 14, paragraph 27.  Yeah, still on | 13:05:21 |
| 15 | paragraph 27, page 14.  You opine that "Valuations | 13:05:27 |
| 16 | performed by Linden are derived by multiplying a | 13:05:34 |
| 17 | key performance metric of the investee company's | 13:05:38 |
| 18 | performance by the relevant valuation multiple | 13:05:42 |
| 19 | observed for comparable companies as identified by | 13:05:45 |
| 20 | Linden from data provided by third-party sources | 13:05:48 |
| 21 | from transactions or from the present value of the | 13:05:51 |
| 22 | investment's projected cash flow as adjusted by | 13:05:57 |
| 23 | Linden for differences between the investment and | 13:06:01 |
| 24 | the referenced comparable or other market | 13:06:03 |
| 25 | conditions."  I know we talked about the majority | 13:06:07 |

Transcript of Neil J. Beaton
September 22, 2022                                    90

| | | |
|---|---|---|
| 1 | of this already, but I just wanted to know what | 13:06:10 |
| 2 | were the third-party sources that Linden was | 13:06:13 |
| 3 | provided data by? | 13:06:17 |
| 4 | A   I don't recall their data source as I | 13:06:21 |
| 5 | sit here. | 13:06:26 |
| 6 | Q   Okay. | 13:06:27 |
| 7 | A   Typically it's Capital IQ, S&P.  There | 13:06:28 |
| 8 | are other data sources, but they're basically | 13:06:34 |
| 9 | sources for information as we see up on the | 13:06:38 |
| 10 | screen.  Maybe no one else can see it, but I can | 13:06:41 |
| 11 | see it. | 13:06:45 |
| 12 | Q   Did you -- when you drafted your report, | 13:06:45 |
| 13 | was there a time that you saw those data sources? | 13:06:47 |
| 14 | A   I'm not recalling or my synapses are not | 13:06:55 |
| 15 | firing on a document or a word that's in the | 13:06:59 |
| 16 | business.  I know where this information comes | 13:07:08 |
| 17 | from. | 13:07:11 |
| 18 | Q   Okay.  So you don't remember them | 13:07:11 |
| 19 | providing you data sources, you just assume that | 13:07:13 |
| 20 | their information came from data sources, from | 13:07:17 |
| 21 | third-party data sources? | 13:07:20 |
| 22 | A   Correct.  They were -- they provided the | 13:07:22 |
| 23 | information they derived from those data sources. | 13:07:24 |
| 24 | I can't name those data sources as I sit here, but | 13:07:27 |
| 25 | it's information that I typically see in my work. | 13:07:32 |

Transcript of Neil J. Beaton
September 22, 2022                                    91

```
1    Therefore, no red flags were raised or alarm bells        13:07:35
2    did not go off.                                            13:07:39
3        Q   I just want to follow up on that.  What            13:07:42
4    do you mean by information you usually see in your         13:07:44
5    work when you're talking about the data sources?           13:07:46
6    You just -- that's normally where this comes from.         13:07:49
7    Is that what you're saying?                                13:07:51
8        A   The information that's on the screen               13:07:54
9    from the GCTs and the public company information           13:07:55
10   that is provided by both investment banks, which          13:07:57
11   did name their data sources, is standard operating        13:08:00
12   procedure.  I get this data pretty much every             13:08:05
13   single day.  I'm looking at a download from               13:08:08
14   Capital IQ, from what's called Pratt's Stats,             13:08:13
15   P-r-a-t-t apostrophe S for Kelly.  There are other        13:08:17
16   data sources that exist out there, but they               13:08:23
17   basically all provide similar information as we're        13:08:26
18   seeing on the screen and what's contained in the          13:08:30
19   various document sources that were provided to me         13:08:32
20   from Linden.                                              13:08:35
21       Q   Okay.  All right.  I kind of want to              13:08:48
22   understand.  In paragraph 28 on page 14, you cite         13:08:51
23   PriceWaterhouseCooper's fair value measurements           13:08:58
24   guide or FV guide to opine that the fair value is         13:09:01
25   measured based on an exit price, not the                  13:09:07
```

Transcript of Neil J. Beaton
September 22, 2022                              92

| | | |
|---|---|---|
| 1 | transaction price or entry price determined by | 13:09:09 |
| 2 | using several key concepts. | 13:09:13 |
| 3 | So under this guide, I want to ask you | 13:09:18 |
| 4 | the same question I asked you previously about the | 13:09:20 |
| 5 | last thing that referenced fair value:  Is fair | 13:09:23 |
| 6 | value in this PriceWaterhouseCooper document, is | 13:09:28 |
| 7 | that the same concept as fair market value under | 13:09:36 |
| 8 | Mr. Donnelly's incentive equity agreement? | 13:09:39 |
| 9 | MS. CHRISTENSEN:  Objection, form to the | 13:09:43 |
| 10 | extent it calls for a legal conclusion. | 13:09:44 |
| 11 | A   Based upon my economic analysis of the | 13:09:47 |
| 12 | definition contained in the equity incentive | 13:09:50 |
| 13 | agreement, they're identical. | 13:09:53 |
| 14 | BY MR. MINSON: | 13:09:56 |
| 15 | Q   Okay.  And as far as being exit price, | 13:09:56 |
| 16 | can you explain what you mean by exit price. | 13:10:09 |
| 17 | A   Sales price. | 13:10:13 |
| 18 | Q   Okay.  So it's a forward looking | 13:10:13 |
| 19 | concept.  Is that based on what it will sell for? | 13:10:15 |
| 20 | A   No. | 13:10:19 |
| 21 | Q   Okay. | 13:10:20 |
| 22 | A   Because that's not a forward concept. | 13:10:20 |
| 23 | It's the concept at the time of the transaction. | 13:10:22 |
| 24 | It's an exit multiple when the company sells, not | 13:10:24 |
| 25 | some forward concept as you stated in your | 13:10:28 |

Transcript of Neil J. Beaton
September 22, 2022                              93

| | | |
|---|---|---|
| 1 | question. | 13:10:32 |
| 2 | Q   Okay.  So when you say exit price, this | 13:10:33 |
| 3 | is a price that a company already has sold for. | 13:10:35 |
| 4 | Is that correct? | 13:10:38 |
| 5 | A   Incorrect. | 13:10:39 |
| 6 | Q   So can you explain what delineates an | 13:10:40 |
| 7 | exit price as you cite it here. | 13:10:44 |
| 8 | A   Certainly.  It's the price that the | 13:10:46 |
| 9 | company would sell for at the time of measurement, | 13:10:48 |
| 10 | not some forward, not some past, at the time of | 13:10:50 |
| 11 | measurement. | 13:10:53 |
| 12 | Q   Okay. | 13:10:54 |
| 13 | A   In this case, June 30, 2019, what would | 13:10:55 |
| 14 | ProPharma sell for, not what it's going to sell | 13:10:57 |
| 15 | for in 2020 based on some hypothetical -- | 13:11:00 |
| 16 | Q   I see. | 13:11:04 |
| 17 | A   -- investment banking pitch books. | 13:11:04 |
| 18 | Q   How is the data that an exit price is | 13:11:06 |
| 19 | composed of different from the data that, you | 13:11:14 |
| 20 | know, those pitch books are composed of? | 13:11:18 |
| 21 | A   Pitch books are forward looking.  If you | 13:11:21 |
| 22 | recall, Centerview had a DCF valuation of $1.160 | 13:11:24 |
| 23 | billion because they had this tremendous amount of | 13:11:28 |
| 24 | growth.  That growth was being driven by | 13:11:34 |
| 25 | acquisitions that did not -- had not occurred or | 13:11:39 |

Transcript of Neil J. Beaton
September 22, 2022                                    94

| | | |
|---|---|---|
| 1 | will not occur as of the measurement date of June | 13:11:40 |
| 2 | or September. | 13:11:42 |
| 3 | So when you are doing a valuation as of | 13:11:43 |
| 4 | a particular point in time, one looks at the | 13:11:45 |
| 5 | information available at that point in time.  For | 13:11:48 |
| 6 | example, all the transactions that we're looking | 13:11:51 |
| 7 | at here occurred prior to the valuation date.  If | 13:11:52 |
| 8 | you wanted to scroll up, Mr. Minson, you can see | 13:11:56 |
| 9 | that the most -- the earliest date I think is -- | 13:11:59 |
| 10 | one date is just past it, the top one, but all the | 13:12:02 |
| 11 | others are well below 2019.  So one -- no, all of | 13:12:05 |
| 12 | them were prior to August 31, 2019.  So that's why | 13:12:13 |
| 13 | it's an appropriate measure of value. | 13:12:17 |
| 14 | And if you look at the public companies, | 13:12:21 |
| 15 | those public company pricing multiples are being | 13:12:23 |
| 16 | derived from data that was taken as of June 30 or | 13:12:27 |
| 17 | as of September 30, depending on which one we're | 13:12:30 |
| 18 | looking at. | 13:12:32 |
| 19 | But that's why you don't look forward | 13:12:34 |
| 20 | and that's why the investment banks are looking at | 13:12:36 |
| 21 | forward multiples.  They're looking at forward | 13:12:39 |
| 22 | EBITDA.  That's not what Linden did, and they were | 13:12:42 |
| 23 | very consistent in their measurements. | 13:12:45 |
| 24 | Q   Okay.  And the first transaction here is | 13:12:48 |
| 25 | dated 7/9/19.  That's on Exhibit 4, which is this | 13:12:51 |

Transcript of Neil J. Beaton
September 22, 2022                                    95

| | | |
|---|---|---|
| 1 | Linden Capital Partners 2019 valuation sheet.  And | 13:12:56 |
| 2 | the first transaction is Advarra, and it was | 13:13:02 |
| 3 | acquired by Genstar.  Was that a private company, | 13:13:07 |
| 4 | or public company? | 13:13:11 |
| 5 | A   Genstar is a hedge fund.  Advarra was | 13:13:13 |
| 6 | private. | 13:13:17 |
| 7 | Q   Okay.  And in your analysis of what | 13:13:18 |
| 8 | ProPharma did with regard to the Advarra | 13:13:22 |
| 9 | transaction that's listed here, was it given | 13:13:26 |
| 10 | credit, or discounted? | 13:13:29 |
| 11 | MS. CHRISTENSEN:  Objection, form. | 13:13:31 |
| 12 | A   Yeah.  I don't think ProPharma did.  I | 13:13:33 |
| 13 | think Linden did the valuation.  Is that -- | 13:13:36 |
| 14 | BY MR. MINSON: | 13:13:39 |
| 15 | Q   I'm sorry.  Yeah.  What Linden did, did | 13:13:39 |
| 16 | they discount the Advarra sale? | 13:13:41 |
| 17 | A   I don't see a discount on here.  There | 13:13:43 |
| 18 | are discounts taken in the summary reports on the | 13:13:45 |
| 19 | public companies by 15 percent, but the actual | 13:13:48 |
| 20 | multiples for the GCTs were not discounted. | 13:13:52 |
| 21 | Q   Okay.  And so the 17.9X EBITDA multiple | 13:13:55 |
| 22 | for the Advarra sale was incorporated in | 13:13:59 |
| 23 | ProPharma's valuation? | 13:14:02 |
| 24 | A   It was. | 13:14:04 |
| 25 | Q   Okay.  Okay.  And if we move forward to | 13:14:25 |

Transcript of Neil J. Beaton
September 22, 2022                                    96

| 1 | page 16 of your initial report, you're discussing | 13:14:27 |
| 2 | observable versus unobservable inputs, and it says | 13:14:32 |
| 3 | on page 16, paragraph 31, "Practitioner should use | 13:14:36 |
| 4 | observable rather than unobservable inputs when | 13:14:40 |
| 5 | available."  Can you define, explain observable | 13:14:43 |
| 6 | versus unobservable input. | 13:14:48 |
| 7 | A   Observable would be an actual | 13:14:51 |
| 8 | transaction as we were looking at on the prior | 13:14:52 |
| 9 | exhibit on the screen as they happened and you can | 13:14:56 |
| 10 | see them.  GPC data which is public and can be | 13:14:57 |
| 11 | identified through public sources versus a | 13:15:01 |
| 12 | forecast that someone can just make up as the | 13:15:04 |
| 13 | investment banks did, which is unobservable, you | 13:15:09 |
| 14 | can't really observe that publicly.  There's no | 13:15:13 |
| 15 | public access to forecasts.  And that's what | 13:15:15 |
| 16 | observable versus unobservable relates to. | 13:15:20 |
| 17 | Q   So you said GPC was observable versus | 13:15:23 |
| 18 | unobservable.  Is GCT also observable? | 13:15:26 |
| 19 | A   Both observable data points for inputs | 13:15:32 |
| 20 | into a valuation model.  The one that is not | 13:15:35 |
| 21 | observable is the DCF typically because most | 13:15:40 |
| 22 | companies do not publicly report their forecasts | 13:15:43 |
| 23 | in their SEC filings, nor do they report them in | 13:15:46 |
| 24 | these data sources that we're looking at here | 13:15:52 |
| 25 | typically.  There are some that do, but typically | 13:15:55 |

Transcript of Neil J. Beaton
September 22, 2022                                    97

| | | |
|---|---|---|
| 1 | you don't see that. | 13:15:57 |
| 2 | Q    And did Linden rely on all observable | 13:15:58 |
| 3 | data? | 13:16:02 |
| 4 | A    Yes. | 13:16:02 |
| 5 | Q    Okay.  And also in paragraph 31, you say | 13:16:08 |
| 6 | -- talking about the steps for valuation, you say, | 13:16:14 |
| 7 | "In step two, the significance of a particular | 13:16:16 |
| 8 | input should be assessed which will determine the | 13:16:19 |
| 9 | level classification in the valuation."  So when | 13:16:22 |
| 10 | you say the significance of a particular input, | 13:16:28 |
| 11 | what does that mean? | 13:16:31 |
| 12 | A    Is it going to drive the value | 13:16:33 |
| 13 | difference?  Is it very sensitive to it?  I'll | 13:16:36 |
| 14 | give you an example:  On a discounted cash flow | 13:16:39 |
| 15 | model, growth rate will be very sensitive | 13:16:42 |
| 16 | impacting the valuation.  So that would be -- is | 13:16:45 |
| 17 | it a significant input, or is it an insignificant | 13:16:48 |
| 18 | input? | 13:16:52 |
| 19 | Q    Okay.  And is that a subjective or | 13:16:54 |
| 20 | objective measure? | 13:16:57 |
| 21 | A    It's both. | 13:16:58 |
| 22 | Q    Can you explain that. | 13:17:00 |
| 23 | A    It's objectively created.  It's | 13:17:01 |
| 24 | subjectively applied. | 13:17:03 |
| 25 | Q    So subjectively determined or created? | 13:17:05 |

Transcript of Neil J. Beaton
September 22, 2022                                    98

| | | |
|---|---|---|
| 1 | A    Correct.  For example, we have multiples | 13:17:08 |
| 2 | ranging -- if you go down to the bottom of that, | 13:17:11 |
| 3 | you'll see that there's a high and low I believe | 13:17:14 |
| 4 | from eight to 19 or close to that, eight to 22. | 13:17:16 |
| 5 | So those are all objective inputs.  The | 13:17:21 |
| 6 | subjectivity is which are you going to select, the | 13:17:25 |
| 7 | median at 13.6, the mean at 14.1, the low at | 13:17:28 |
| 8 | eight, or the high at 22?  That's the | 13:17:32 |
| 9 | subjectivity. | 13:17:37 |
| 10 | Q    Okay. | 13:17:37 |
| 11 | A    But those are important inputs and that | 13:17:37 |
| 12 | would be significant inputs according to the PWC | 13:17:40 |
| 13 | chart on page 16 of my report. | 13:17:43 |
| 14 | Q    So I actually just want to kind of | 13:17:48 |
| 15 | understand this document a little bit.  So the | 13:17:55 |
| 16 | median here has a 2. -- and this is -- I believe | 13:17:58 |
| 17 | this is a June 30 document, right?  No, it can't | 13:18:03 |
| 18 | be because it shows a July sale.  So the median | 13:18:05 |
| 19 | shows a 2.5X multiple? | 13:18:10 |
| 20 | A    It's a revenue multiple. | 13:18:15 |
| 21 | Q    Revenue multiple, MOIC, with a 13.6X -- | 13:18:19 |
| 22 | A    EBITDA multiple. | 13:18:23 |
| 23 | Q    -- EBITDA multiple.  I guess I'm trying | 13:18:24 |
| 24 | to figure out if this is related to the 13.9 and | 13:18:28 |
| 25 | 2.5 in Mr. Donnelly's valuation. | 13:18:32 |

Transcript of Neil J. Beaton
September 22, 2022                                    99

| | | |
|---|---|---|
| 1 | A    Sure.  This is where those are derived | 13:18:35 |
| 2 | from, not the 2.5 because they didn't use a | 13:18:37 |
| 3 | revenue multiple, but the 13.6 is even lower for | 13:18:41 |
| 4 | all of these transactions than what was actually | 13:18:44 |
| 5 | selected in June, 13.9. | 13:18:48 |
| 6 |     Q    And so what did you mean by they didn't | 13:18:50 |
| 7 | use a revenue multiple? | 13:18:52 |
| 8 |     A    They didn't use a revenue multiple to | 13:18:54 |
| 9 | value ProPharma.  They only use an EBITDA | 13:18:56 |
| 10 | multiple. | 13:18:59 |
| 11 |     Q    Okay. | 13:19:01 |
| 12 |     A    You can derive a revenue multiple from | 13:19:02 |
| 13 | it, but that's not what they did. | 13:19:04 |
| 14 |         MS. CHRISTENSEN:  Counsel, I think you | 13:19:19 |
| 15 | might -- we might be confused between revenue | 13:19:20 |
| 16 | multiple and MOIC, and I know that they tend to | 13:19:23 |
| 17 | align here, but -- | 13:19:28 |
| 18 |         THE WITNESS:  Go to the top. | 13:19:30 |
| 19 |         MS. CHRISTENSEN:  -- maybe it would be | 13:19:31 |
| 20 | helpful if he distinguishes from it. | 13:19:31 |
| 21 |         MR. MINSON:  Okay. | 13:19:37 |
| 22 |         THE WITNESS:  It's a revenue multiple. | 13:19:37 |
| 23 | BY MR. MINSON: | 13:19:39 |
| 24 |     Q    So what is a revenue multiple as opposed | 13:19:39 |
| 25 | to a multiple on invested capital?  Is it the | 13:19:41 |

Transcript of Neil J. Beaton
September 22, 2022                                    100

| 1 | same? | 13:19:45 |
|---|---|---|

1    same?                                                13:19:45

2         A    You wouldn't have any idea what these      13:19:45

3    company had invested in them.                        13:19:47

4         Q    Right.                                     13:19:49

5         A    It's not public knowledge.  But you do     13:19:50

6    know what their sales are and you do know what       13:19:52

7    their EBITDA is and you know what they sold for.     13:19:55

8    So you could not derive an MOIC multiple unless      13:19:58

9    you knew and had access to, for example, Nordic      13:20:01

10   Capital's acquisition of E-Search Technology.  Or    13:20:06

11   E-Research Technologies, sorry.                      13:20:09

12        Q    Okay.                                      13:20:11

13        A    If we knew that, let's say, you know,      13:20:11

14   Neil's hedge fund had -- I'll make it easy -- had    13:20:17

15   a million dollars into or a billion dollars, I       13:20:22

16   guess it is, into E-Research, a multiple of MOIC     13:20:25

17   would be 1.775, but you don't know that.  You        13:20:30

18   don't know how much money I had invested in that     13:20:33

19   when Nordic Capital bought, so you have to go to a   13:20:37

20   revenue multiple.  And you can even see on that      13:20:39

21   particular one I selected, there isn't a revenue     13:20:42

22   multiple, there's only an EBITDA multiple.           13:20:44

23        Q    Right.  And so I just want to understand   13:20:46

24   what a revenue multiple is.                          13:20:50

25        A    Take the revenue and divide it by the      13:20:53

Transcript of Neil J. Beaton
September 22, 2022                                        101

| | | |
|---|---|---|
| 1 | sales price, the enterprise value. | 13:20:56 |
| 2 | Q   Okay. | 13:21:00 |
| 3 | A   So, for example, if you take WIL | 13:21:01 |
| 4 | Research, their revenue is going to be 2.7 times | 13:21:03 |
| 5 | 585 million. | 13:21:09 |
| 6 | Q   I see.  Okay.  Moving forward, I want to | 13:21:18 |
| 7 | go to paragraph 31 on page 16.  Let's see.  In | 13:21:27 |
| 8 | your discussion of step four, it says, "Step four | 13:21:36 |
| 9 | requires judgement, but certain characteristics | 13:21:39 |
| 10 | tend to support observable market data including | 13:21:44 |
| 11 | actual market transactions, not proprietary, | 13:21:46 |
| 12 | readily available, regularly distributed, | 13:21:49 |
| 13 | transparent, verifiable, reliable, based on | 13:21:52 |
| 14 | consensus and provided by sources actively | 13:21:58 |
| 15 | available in the relevant market."  Did Linden go | 13:22:01 |
| 16 | through this step in determining their value that | 13:22:13 |
| 17 | they presented to Mr. Donnelly? | 13:22:16 |
| 18 | A    Well, I don't know if they sat down and | 13:22:23 |
| 19 | said, hey, our inputs, do they match these?  I | 13:22:25 |
| 20 | have no idea if they did that or not.  They did, | 13:22:31 |
| 21 | but I don't know if they had that thought process. | 13:22:34 |
| 22 | Q   Okay.  And the next one, the next page, | 13:22:49 |
| 23 | page 17, also on paragraph 31, you -- after | 13:22:52 |
| 24 | saying -- I think you said that Linden went | 13:22:58 |
| 25 | through step four.  I'm going to make sure it says | 13:23:01 |

Transcript of Neil J. Beaton
September 22, 2022                                            102

| | | |
|---|---|---|
| 1 | that.  Yeah.  It says, "Linden's valuations of | 13:23:04 |
| 2 | ProPharma conform to these characteristics," | 13:23:13 |
| 3 | referring back to step four that you described, | 13:23:16 |
| 4 | "resulting in an assessment of disclosure | 13:23:19 |
| 5 | requirements in step five and conclusions in step | 13:23:22 |
| 6 | six."  Can you explain steps five and six as far | 13:23:24 |
| 7 | as disclosure requirements.  What is -- what do | 13:23:28 |
| 8 | you mean by that? | 13:23:30 |
| 9 |         MS. CHRISTENSEN:  Objection, form, | 13:23:31 |
| 10 | misstates the document. | 13:23:32 |
| 11 |     A    They have a valuation policy that they | 13:23:42 |
| 12 | followed and they have disclosure requirements | 13:23:46 |
| 13 | within their LP agreements that they also follow | 13:23:51 |
| 14 | and provided, which resulted ultimately in the | 13:23:55 |
| 15 | conclusions in step six, which are contained on | 13:24:00 |
| 16 | the very document we're looking at here. | 13:24:03 |
| 17 | BY MR. MINSON: | 13:24:06 |
| 18 |     Q    Okay. | 13:24:06 |
| 19 |     A    And you can see -- for your prior | 13:24:10 |
| 20 | question, it says source Wall Street and industry | 13:24:13 |
| 21 | research and estimates as the source for those | 13:24:15 |
| 22 | multiples that I mentioned earlier that I thought | 13:24:19 |
| 23 | had triggered a synapse at someplace in the -- | 13:24:22 |
| 24 |     Q    Okay. | 13:24:27 |
| 25 |     A    -- medulla oblongata. | 13:24:27 |

Transcript of Neil J. Beaton
September 22, 2022                                        103

| | | |
|---|---|---|
| 1 | Q   Is that -- is that a company, or is that | 13:24:32 |
| 2 | just a general statement where they got these | 13:24:33 |
| 3 | numbers from? | 13:24:35 |
| 4 | A   Well, Wall Street Prep is a company and | 13:24:36 |
| 5 | they've got quite a bit of data, public data. | 13:24:40 |
| 6 | Industry research could be Cap IQ, and that's | 13:24:44 |
| 7 | C-a-p, capital I, capital Q.  And the estimates | 13:24:50 |
| 8 | would be their own because they are in this | 13:24:52 |
| 9 | particular business and can make estimates of | 13:24:53 |
| 10 | their own. | 13:24:55 |
| 11 | Q   So I'm wondering based on what you just | 13:25:10 |
| 12 | said whether the source is actually a third-party | 13:25:13 |
| 13 | source because it says Wall Street and industry | 13:25:15 |
| 14 | research and estimates, but it doesn't really | 13:25:21 |
| 15 | reference a third party.  So I'm -- could you -- | 13:25:25 |
| 16 | is it possible to determine whether this came from | 13:25:29 |
| 17 | a third party? | 13:25:32 |
| 18 | A   It's possible.  Just ask them.  It's | 13:25:34 |
| 19 | real easy to do.  I didn't, because again, we had | 13:25:36 |
| 20 | the data.  There's no need for me to say show me | 13:25:38 |
| 21 | the money, as Jerry McGuire would ask, but I'm | 13:25:42 |
| 22 | sure that they came from reputable sources because | 13:25:48 |
| 23 | that's what I do myself. | 13:25:53 |
| 24 |      Now, the estimates would not be third | 13:25:54 |
| 25 | party.  Those would be estimates made by the | 13:25:57 |

Transcript of Neil J. Beaton
September 22, 2022                                    104

1   Linden folks based upon their own experience, but        13:26:00
2   clearly the Wall Street information and the              13:26:04
3   industry research would come either from an             13:26:06
4   external source.  Perhaps it was from articles.         13:26:10
5   It could be from wirehouses.  There's lots of           13:26:13
6   information out there on companies.                     13:26:21
7        Q   All right.  And, now, we go to in your         13:26:24
8   report on paragraph 33 where you're discussing the      13:26:28
9   Weinberg Group and Southwood Research, and you          13:26:33
10  opine that -- you discuss the -- well, you state        13:26:38
11  that you discuss the acquisition of Weinberg            13:26:43
12  Group, Southwood Research, as well as other             13:26:45
13  acquisitions with two Linden principals and             13:26:48
14  Linden's chief financial and chief compliance           13:26:53
15  officers in order to ascertain the process by           13:26:56
16  which these companies were acquired, and is that        13:26:58
17  just -- you talked to them about what they did          13:27:05
18  when they bought Southwood Research and the             13:27:08
19  Weinberg Group.  Is that what that signifies or is      13:27:12
20  that what you're trying to say there?                   13:27:15
21        A   I'm trying to say exactly what I said         13:27:16
22  here.  I don't know if you need me to explain.  I       13:27:19
23  don't know -- I don't know the confusion.               13:27:22
24        Q   So what did you ask them regarding            13:27:24
25  their -- regarding those acquisitions?  What did        13:27:26

| | | |
|---|---|---|
| 1 | you talk to them about? | 13:27:30 |
| 2 | A   Ascertain the process by which these | 13:27:31 |
| 3 | companies were acquired.  So did they -- did they | 13:27:33 |
| 4 | have a competitive process?  Was it just, hey, a | 13:27:38 |
| 5 | phone call to a friend, hey, we want to buy you, | 13:27:41 |
| 6 | sure, great, buy me, no one else was able to bid | 13:27:44 |
| 7 | on it?  What was the process by which these two | 13:27:47 |
| 8 | companies were acquired?  And I discuss that, | 13:27:51 |
| 9 | because as I state further on in that paragraph, | 13:27:53 |
| 10 | that's important in an overall valuation when | 13:27:57 |
| 11 | you're looking at the acquisition of an entire | 13:28:00 |
| 12 | company. | 13:28:02 |
| 13 | Q   Did you inquire into what the process | 13:28:03 |
| 14 | looked like and who was involved in the process? | 13:28:07 |
| 15 | A   Well, yeah.  That's just what I wrote, | 13:28:12 |
| 16 | and those individuals were the ones that were | 13:28:15 |
| 17 | involved in the process, so -- | 13:28:17 |
| 18 | Q   Well, no.  I mean -- | 13:28:22 |
| 19 | A   I answered your same question. | 13:28:22 |
| 20 | Q   I'm sorry.  I want to be a little bit | 13:28:24 |
| 21 | more clear when I ask that question.  You said it | 13:28:24 |
| 22 | was a competitive auction process.  Did you | 13:28:27 |
| 23 | inquire as to what companies were bidding in that | 13:28:30 |
| 24 | auction process? | 13:28:33 |
| 25 | A   I did not.  If that's the question, no, | 13:28:36 |

Transcript of Neil J. Beaton
September 22, 2022                                    106

| | | |
|---|---|---|
| 1 | I did not.  I didn't care who was bidding or not | 13:28:38 |
| 2 | bidding. | 13:28:40 |
| 3 | Q    Okay.  So you just relied on Linden or | 13:28:44 |
| 4 | ProPharma's representation that there was an | 13:28:47 |
| 5 | auction and there was a bidding process? | 13:28:50 |
| 6 | A    I did. | 13:28:52 |
| 7 | Q    Okay. | 13:28:54 |
| 8 | A    And my own experience as well. | 13:28:54 |
| 9 | Q    And in addition to the Weinberg and | 13:28:57 |
| 10 | Southwood Research, you mentioned other | 13:29:02 |
| 11 | acquisitions.  Can you elaborate on what those | 13:29:07 |
| 12 | other acquisitions were, all of these. | 13:29:10 |
| 13 | A    I think you go up.  And the quarterly | 13:29:13 |
| 14 | reports identify that, but I think this may be the | 13:29:17 |
| 15 | annual report.  It's pretty far up the page when | 13:29:19 |
| 16 | it's talking about the progress that ProPharma has | 13:29:25 |
| 17 | made over time, and they identify acquisitions | 13:29:27 |
| 18 | that occurred or going to occur. | 13:29:35 |
| 19 | Q    Further? | 13:29:38 |
| 20 | A    There it is right there. | 13:29:39 |
| 21 | Q    Okay. | 13:29:40 |
| 22 | A    So second bullet point. | 13:29:40 |
| 23 | Q    It's the second bullet point on Exhibit | 13:29:42 |
| 24 | 4? | 13:29:46 |
| 25 | A    Correct.  And if you go just over a | 13:29:46 |

Transcript of Neil J. Beaton
September 22, 2022                                    107

| | | |
|---|---|---|
| 1 | little to the right of the page, you can see the | 13:29:49 |
| 2 | entire paragraph. | 13:29:51 |
| 3 |     Q   Let's just find the page for the record. | 13:29:53 |
| 4 | Second bullet point on the page -- sorry.  I'm | 13:29:55 |
| 5 | just finding the page.  LINDEN463, second bullet | 13:29:58 |
| 6 | point. | 13:30:10 |
| 7 |     A   Basically the company has continued to | 13:30:11 |
| 8 | execute on its value creation plan, as well as | 13:30:13 |
| 9 | execute on acquisition opportunities that have | 13:30:17 |
| 10 | further positioned ProPharma as a leading global | 13:30:20 |
| 11 | player in the space.  So that was my assessment. | 13:30:24 |
| 12 | That's what they were doing.  Their strategy was | 13:30:28 |
| 13 | acquisition opportunities, expanding in the | 13:30:33 |
| 14 | markets that they didn't serve, and that's what | 13:30:36 |
| 15 | they were doing. | 13:30:39 |
| 16 |     Q   So I was just -- I just want to go back. | 13:30:50 |
| 17 | Can you identify -- do you know which acquisitions | 13:30:52 |
| 18 | you're specifically referring to when you say | 13:30:55 |
| 19 | other acquisitions, though? | 13:30:57 |
| 20 |     A   Not as I sit here. | 13:30:58 |
| 21 |     Q   Okay. | 13:31:01 |
| 22 |     A   Again, like I said, you and I would both | 13:31:01 |
| 23 | be in Las Vegas if I could do that.  But there are | 13:31:04 |
| 24 | -- if you go back, there are quarterly and/or | 13:31:06 |
| 25 | annual assessments that cover all of their | 13:31:10 |

Transcript of Neil J. Beaton
September 22, 2022                                          108

| | | |
|---|---|---|
| 1 | companies from time to time and in each of those | 13:31:16 |
| 2 | provides an update as to acquisitions.  If you go | 13:31:18 |
| 3 | down just a little bit. | 13:31:21 |
| 4 | Q    Okay. | 13:31:24 |
| 5 | A    Right -- let me see. | 13:31:25 |
| 6 | Q    Further? | 13:31:31 |
| 7 | A    Then go down to the next.  Okay.  So the | 13:31:33 |
| 8 | footnotes will tell you that there are | 13:31:38 |
| 9 | acquisitions.  So Drug Safety Solutions, Xendo, | 13:31:39 |
| 10 | which is X-e-n-d-o, and SIH, and then Weinberg | 13:31:45 |
| 11 | Group and Southwood Research.  So those are the | 13:31:50 |
| 12 | other ones -- | 13:31:53 |
| 13 | Q    I see.  Okay. | 13:31:55 |
| 14 | A    -- we recall seeing. | 13:31:57 |
| 15 | Q    And from your speaking to individuals at | 13:32:01 |
| 16 | Linden, were all of the other transactions based | 13:32:06 |
| 17 | on a competitive auction process? | 13:32:08 |
| 18 | A    I didn't ask about the two prior ones, | 13:32:11 |
| 19 | no.  I don't -- no. | 13:32:13 |
| 20 | Q    And in paragraph 33, when you say "The | 13:32:35 |
| 21 | value criteria used for negotiation was based on | 13:32:39 |
| 22 | an EBITDA analysis that would be accretive to | 13:32:44 |
| 23 | ProPharma," are you referring to those auction | 13:32:53 |
| 24 | processes, or what are you referring to as how | 13:32:57 |
| 25 | those negotiation criteria would be accretive of | 13:33:00 |

Transcript of Neil J. Beaton
September 22, 2022                                        109

| | | |
|---|---|---|
| 1 | ProPharma or to ProPharma? | 13:33:07 |
| 2 | A   When you acquire an entity, an EBITDA | 13:33:10 |
| 3 | multiple that is lower than expected to trade at, | 13:33:13 |
| 4 | it's accretive. | 13:33:20 |
| 5 | Q   Okay. | 13:33:21 |
| 6 | A   In other words, it increases your value | 13:33:21 |
| 7 | because you're buying an inexpensive asset that | 13:33:21 |
| 8 | you can then place within your ecosystem and take | 13:33:21 |
| 9 | the 8.3 or the 10.5 and create a 14.1 or a 13.9 or | 13:33:26 |
| 10 | 13.6, depending upon which you pick. | 13:33:33 |
| 11 | Q   Okay.  And were the two Linden | 13:33:48 |
| 12 | principals you discussed these acquisitions with, | 13:33:50 |
| 13 | they were -- were they Michael Farah and Tony | 13:33:52 |
| 14 | Davis? | 13:33:55 |
| 15 | A   No.  In note 39 I provide the names of | 13:33:56 |
| 16 | the individuals that I spoke with. | 13:33:59 |
| 17 | Q   Okay.  Michael Farah. | 13:34:04 |
| 18 | A   And I should say footnote 39 of my | 13:34:06 |
| 19 | report so that the record is clear. | 13:34:09 |
| 20 | Q   Go forward to page 18, paragraph 35.  So | 13:34:34 |
| 21 | this goes back to the fair market value definition | 13:34:59 |
| 22 | where you're talking about Mr. Donnelly's minority | 13:35:02 |
| 23 | or non-marketable ownership interest in ProPharma, | 13:35:05 |
| 24 | and it says, "The fair market value of minority | 13:35:08 |
| 25 | non-marketable ownership interest in ProPharma | 13:35:14 |

Transcript of Neil J. Beaton
September 22, 2022                                   110

| 1 | would probably" -- "would more probably than not | 13:35:16 |
|---|---|---|
| 2 | be lower than a pro rata share in ProPharma on a | 13:35:20 |
| 3 | controlling interest basis."  And can you -- I | 13:35:25 |
| 4 | just want you to explain why that is and how the | 13:35:26 |
| 5 | financial principles apply to that based on your | 13:35:30 |
| 6 | expertise. | 13:35:34 |
| 7 |     A   If you are selling a minority interest | 13:35:34 |
| 8 | to an investor who has no control over the timing | 13:35:36 |
| 9 | of cash flows, that investor is not going to pay | 13:35:39 |
| 10 | the same pro rata value as if they had control | 13:35:43 |
| 11 | over those cash flows on a controlling interest | 13:35:47 |
| 12 | basis.  Therefore, they typically discount the | 13:35:50 |
| 13 | minority non-marketable interest because they have | 13:35:53 |
| 14 | no control over cash flows. | 13:35:57 |
| 15 |     Q   Okay.  So is it your opinion that the | 13:35:59 |
| 16 | fair market value definition that's within Mr. | 13:36:02 |
| 17 | Donnelly's incentive equity agreement is, you | 13:36:07 |
| 18 | know, out of the ordinary for a normal | 13:36:12 |
| 19 | determination of fair market value? | 13:36:17 |
| 20 |     MS. CHRISTENSEN:  Objection, form, calls | 13:36:19 |
| 21 | for a legal conclusion. | 13:36:21 |
| 22 |     A   It doesn't comport with the standard | 13:36:24 |
| 23 | definition of fair market value, which is | 13:36:27 |
| 24 | explained in a number of different books by the | 13:36:28 |
| 25 | Internal Revenue Code in a wide variety of areas. | 13:36:32 |

Transcript of Neil J. Beaton
September 22, 2022                                          111

| | | |
|---|---|---|
| 1 | However, I've seen provisions from time | 13:36:37 |
| 2 | to time in shareholder agreements, in incentive | 13:36:40 |
| 3 | equity units where it is particularly and | 13:36:44 |
| 4 | specifically stated that discounts for lack of | 13:36:47 |
| 5 | control or lack of marketability are not to be | 13:36:50 |
| 6 | applied for whatever reason.  That's a generous -- | 13:36:54 |
| 7 | that's a generous provision that if the company | 13:36:59 |
| 8 | had left out that provision and just said fair | 13:37:04 |
| 9 | market value, then discounts would apply under | 13:37:07 |
| 10 | normal business valuation principles. | 13:37:10 |
| 11 | BY MR. MINSON: | 13:37:32 |
| 12 | Q   So is the statement that you made in | 13:37:32 |
| 13 | paragraph 35 about how his interest would be | 13:37:34 |
| 14 | lower, is that discounting the language of his | 13:37:39 |
| 15 | agreement, or is that including the language of | 13:37:47 |
| 16 | his agreement? | 13:37:49 |
| 17 | A   I was making a general statement on fair | 13:37:50 |
| 18 | market value.  I was not opining into the legality | 13:37:53 |
| 19 | of the agreement -- | 13:37:58 |
| 20 | Q   Okay. | 13:37:59 |
| 21 | A   -- Mr. Donnelly had with ProPharma. | 13:37:59 |
| 22 | Q   Page 19, paragraph 37 of your initial | 13:38:06 |
| 23 | report, you opine that "Linden selected EBITDA | 13:38:09 |
| 24 | multiples that were approximately 15 percent lower | 13:38:19 |
| 25 | than the median average of all multiples, but | 13:38:21 |

Transcript of Neil J. Beaton
September 22, 2022                                    112

| | | |
|---|---|---|
| 1 | fairly close to the average of the low and high | 13:38:25 |
| 2 | multiples of the transaction comparables."  Is | 13:38:27 |
| 3 | there any explanation from Linden as to why, you | 13:38:37 |
| 4 | know, their multiple wasn't influenced by the | 13:38:44 |
| 5 | public companies? | 13:38:48 |
| 6 | A   Yes. | 13:38:49 |
| 7 | Q   And did you -- did they tell you that | 13:38:51 |
| 8 | directly, or did you figure that out based on your | 13:38:54 |
| 9 | own? | 13:38:57 |
| 10 | A   I read it in that document. | 13:38:57 |
| 11 | Q   Okay.  So you read it in Exhibit 4 and | 13:39:08 |
| 12 | that's how you determined that? | 13:39:10 |
| 13 | A   Correct. | 13:39:11 |
| 14 | Q   Okay.  All right.  Okay.  I want to turn | 13:39:49 |
| 15 | to your rebuttal report. | 13:39:58 |
| 16 | MR. MINSON:  And if you could, I'd like | 13:40:10 |
| 17 | to mark Mr. Beaton's expert rebuttal report as | 13:40:12 |
| 18 | Exhibit 5. | 13:40:17 |
| 19 | (Beaton Deposition Exhibit No. 5 was | 13:40:28 |
| 20 | marked for identification and was attached to the | 13:40:28 |
| 21 | deposition transcript.) | 13:40:28 |
| 22 | MR. MINSON:  Right.  This is for you. | 13:40:29 |
| 23 | MS. CHRISTENSEN:  Thank you. | 13:40:31 |
| 24 | THE WITNESS:  Thanks, Kelly. | 13:40:32 |
| 25 | BY MR. MINSON: | 13:41:02 |

Transcript of Neil J. Beaton
September 22, 2022                                     113

| | | |
|---|---|---|
| 1 | Q   Is this a fair and accurate | 13:41:02 |
| 2 | representation of your rebuttal report as you | 13:41:04 |
| 3 | review it? | 13:41:08 |
| 4 | A   Yes. | 13:41:10 |
| 5 | Q   Okay.  All right.  And for Exhibit 5, if | 13:41:14 |
| 6 | you turn to page 3, paragraph three, this is, you | 13:41:19 |
| 7 | know, something we talked about already in your | 13:41:26 |
| 8 | initial report.  You state that all -- actually, | 13:41:29 |
| 9 | I'm sorry.  Strike that.  We didn't talk about | 13:41:31 |
| 10 | this. | 13:41:34 |
| 11 | You say, "Although Mr. Estabrook did not | 13:41:35 |
| 12 | perform an independent valuation, he concluded | 13:41:38 |
| 13 | that the fair market value of Mr. Donnelly's | 13:41:40 |
| 14 | incentive equity units ranged from a low of | 13:41:45 |
| 15 | $1,396,889 to a high of $2,197,357 rather than the | 13:41:46 |
| 16 | $684,008 Mr. Donnelly was offered by ProPharma in | 13:41:56 |
| 17 | September of 2019 or the $105,227.97 he was paid | 13:42:02 |
| 18 | in November 2019."  You say that Mr. Estabrook | 13:42:14 |
| 19 | didn't perform an independent evaluation, but | 13:42:19 |
| 20 | isn't it true that he synthesized the financial | 13:42:23 |
| 21 | information from five independent sources? | 13:42:26 |
| 22 | A   I'm not going to argue that.  He did, | 13:42:30 |
| 23 | but that's not an independent valuation. | 13:42:32 |
| 24 | Q   Okay.  And you say it wasn't a | 13:42:35 |
| 25 | valuation.  Did those sources use the market | 13:42:41 |

Transcript of Neil J. Beaton
September 22, 2022                                    114

| | | |
|---|---|---|
| 1 | methodology to determine the value that they | 13:42:45 |
| 2 | presented to ProPharma and Linden? | 13:42:48 |
| 3 | A   You misrepresent what I said.  I didn't | 13:42:52 |
| 4 | say it wasn't an valuation, I said it wasn't an | 13:42:54 |
| 5 | independent valuation.  He didn't perform his own | 13:42:57 |
| 6 | valuation by going to the market, identifying | 13:43:01 |
| 7 | comps, running calculations.  He simply took the | 13:43:03 |
| 8 | numbers that existed on five reports and put those | 13:43:06 |
| 9 | together and adopted them as his own, but that's | 13:43:10 |
| 10 | not independent. | 13:43:14 |
| 11 | Q   But Mr. Estabrook did review Linden | 13:43:15 |
| 12 | financial documents, didn't he, in his report? | 13:43:20 |
| 13 | A   I didn't see any analysis of Linden's | 13:43:23 |
| 14 | financial condition.  He simply reviewed -- I | 13:43:27 |
| 15 | think the vast majority of his analysis in his | 13:43:31 |
| 16 | first report was covering the pitch books, and | 13:43:34 |
| 17 | then there was a short two-paragraph section | 13:43:39 |
| 18 | covering the sale.  I did not see a financial | 13:43:42 |
| 19 | statement analysis whatsoever in his report, his | 13:43:45 |
| 20 | first report, nor in his second for that matter. | 13:43:48 |
| 21 | Q   And how many sources did you examine to | 13:43:54 |
| 22 | determine -- to complete your report? | 13:44:00 |
| 23 | A   I didn't examine any of those pitch | 13:44:03 |
| 24 | books.  They're just that.  They're sales | 13:44:06 |
| 25 | documents.  They're irrelevant for purposes of my | 13:44:13 |

Transcript of Neil J. Beaton
September 22, 2022                                115

| | | |
|---|---|---|
| 1 | valuation and my review. | 13:44:17 |
| 2 | Q    But how many valuation sources did you | 13:44:18 |
| 3 | examine? | 13:44:20 |
| 4 | A    For which opinion?  In my rebuttal, or | 13:44:20 |
| 5 | my first report? | 13:44:23 |
| 6 | Q    For your initial and for your rebuttal. | 13:44:24 |
| 7 | A    There were -- I believe I had four | 13:44:26 |
| 8 | quarterly and one annual valuation performed by | 13:44:31 |
| 9 | Linden.  There may have been others.  As a matter | 13:44:34 |
| 10 | of fact, there were others.  There were -- I | 13:44:37 |
| 11 | believe we already went over that, Mr. Minson. | 13:44:39 |
| 12 | Remember I kind of identified in Exhibit 4 all | 13:44:42 |
| 13 | those documents? | 13:44:44 |
| 14 | Q    Right. | 13:44:46 |
| 15 | A    Each of those has a number of multiples | 13:44:47 |
| 16 | and a number of valuation analyses containing | 13:44:50 |
| 17 | information on ProPharma. | 13:44:55 |
| 18 | Q    But they only came from Linden, correct? | 13:44:56 |
| 19 | A    The valuation -- the information that I | 13:45:01 |
| 20 | reviewed only came from Linden, correct. | 13:45:03 |
| 21 | Q    Okay.  And paragraph -- page 4 of your | 13:45:24 |
| 22 | rebuttal report, paragraph five, you opine that as | 13:45:28 |
| 23 | of 6/30 and 9/30, you know, the dates of Mr. | 13:45:33 |
| 24 | Estabrook's evaluations, only 804.637 time vesting | 13:45:40 |
| 25 | units had vested, not like the 5,230.339 to | 13:45:45 |

Transcript of Neil J. Beaton
September 22, 2022                                    116

| | | |
|---|---|---|
| 1 | 8,046.365 units used by Mr. Estabrook to calculate | 13:45:50 |
| 2 | the fair market value of Mr. Donnelly's incentive | 13:45:56 |
| 3 | equity units.  And does this opinion assume that | 13:46:00 |
| 4 | ProPharma had not achieved a 3. MOIC in connection | 13:46:07 |
| 5 | with a liquidity event? | 13:46:15 |
| 6 |     A   Well, yeah.  I mean, the first part of | 13:46:19 |
| 7 | it is irrelevant.  The 3X MOIC multiple is | 13:46:21 |
| 8 | irrelevant because there hadn't been a | 13:46:26 |
| 9 | transaction.  So based on the fact that there was | 13:46:29 |
| 10 | no transaction, you don't get performance vesting | 13:46:31 |
| 11 | units. | 13:46:35 |
| 12 |     Q   Okay.  Is it your opinion that at that | 13:46:41 |
| 13 | time, if ProPharma had achieved a 3.0 MOIC in | 13:46:42 |
| 14 | connection with a liquidity event that Mr. | 13:46:48 |
| 15 | Donnelly's performance vesting shares would have | 13:46:51 |
| 16 | vested? | 13:46:53 |
| 17 |     A   If the hypothetical you've given me is | 13:46:55 |
| 18 | that they did sell in September or August of 2019 | 13:46:57 |
| 19 | and that they had achieved a 3X, then Mr. Donnelly | 13:47:02 |
| 20 | would get his performance units, sure, at least | 13:47:07 |
| 21 | that's my read of the agreement.  Now, there may | 13:47:11 |
| 22 | be some legal arguments for that based on other | 13:47:13 |
| 23 | issues.  But just the pure read of it on an | 13:47:17 |
| 24 | economic basis, if the liquidity event occurred | 13:47:22 |
| 25 | and they had met the performance criteria, then | 13:47:24 |

Transcript of Neil J. Beaton
September 22, 2022                          117

| | | |
|---|---|---|
| 1 | the performance units would vest. | 13:47:27 |
| 2 | Q   Okay.  So would you also agree that the | 13:47:29 |
| 3 | investment banks that Linden engaged to complete | 13:47:32 |
| 4 | their valuations or their pitch books were engaged | 13:47:38 |
| 5 | to assess what ProPharma could sell for? | 13:47:44 |
| 6 | MS. CHRISTENSEN:  Objection, form, lack | 13:47:47 |
| 7 | of foundation. | 13:47:51 |
| 8 | A   They weren't engaged.  Only one | 13:47:51 |
| 9 | ultimately was engaged.  None of the other four | 13:47:53 |
| 10 | were engaged.  They were trying to pitch their | 13:47:56 |
| 11 | wares to see if they could get hired, and four of | 13:47:59 |
| 12 | them failed at that. | 13:48:02 |
| 13 | BY MR. MINSON: | 13:48:04 |
| 14 | Q   But Linden cooperated with them creating | 13:48:04 |
| 15 | their pitch books.  Isn't that -- isn't that true? | 13:48:08 |
| 16 | A   They asked the investment banks to | 13:48:11 |
| 17 | prepare pitches to them to see if they would | 13:48:14 |
| 18 | partner with one of them based upon -- again, this | 13:48:18 |
| 19 | is my experience, I don't know what Linden's | 13:48:23 |
| 20 | selection was, but they're trying to find the | 13:48:25 |
| 21 | investment bank that would get the highest value | 13:48:28 |
| 22 | for them.  I believe Centerview Partners was | 13:48:30 |
| 23 | selected.  They had the highest value overall, and | 13:48:33 |
| 24 | they still failed miserably to achieve even on | 13:48:35 |
| 25 | their lowest number ultimately. | 13:48:39 |

Transcript of Neil J. Beaton
September 22, 2022                                          118

| | | |
|---|---|---|
| 1 | So ultimately the market is going to | 13:48:43 |
| 2 | dictate what the company is worth, not what some | 13:48:45 |
| 3 | investment bank say it's worth a year before the | 13:48:48 |
| 4 | actual transaction. | 13:48:52 |
| 5 | Q   Wouldn't it be true for Linden's | 13:48:53 |
| 6 | valuation as well? | 13:48:56 |
| 7 | A   No.  Linden wasn't based on some future | 13:48:58 |
| 8 | event occurring with ten or 15 percent growth as | 13:49:00 |
| 9 | the investment bank said.  They were valuing it on | 13:49:04 |
| 10 | a trailing 12 EBITDA on 33.9 or 34.6, I think.  It | 13:49:09 |
| 11 | went up a little bit in September.  So it was all | 13:49:16 |
| 12 | transactional data that occurred and existed at a | 13:49:20 |
| 13 | point in time, not aspirational sales, documents | 13:49:24 |
| 14 | provided in the pitch books. | 13:49:28 |
| 15 | Q   But you said the market determines what | 13:49:29 |
| 16 | it's ultimately going to be valued at, correct? | 13:49:31 |
| 17 | A   In a sale. | 13:49:34 |
| 18 | Q   And so the market -- so if Linden's | 13:49:39 |
| 19 | valuation was 472 million as is displayed on Mr. | 13:49:42 |
| 20 | Donnelly's MOIC calculation, Exhibit -- I forgot | 13:49:52 |
| 21 | if this is Exhibit B or Exhibit -- let me look. | 13:49:59 |
| 22 | MS. CHRISTENSEN:  C. | 13:50:07 |
| 23 | MR. MINSON:  Is that mine? | 13:50:08 |
| 24 | MS. CHRISTENSEN:  No. | 13:50:09 |
| 25 | MR. MINSON:  Did I bring mine | 13:50:10 |

Transcript of Neil J. Beaton
September 22, 2022                                    119

| | | |
|---|---|---|
| 1 | downstairs? | 13:50:11 |
| 2 | THE WITNESS:  Exhibit C? | 13:50:12 |
| 3 | MR. MINSON:  I think it's Exhibit C. | 13:50:14 |
| 4 | A    472.5 million. | 13:50:19 |
| 5 | BY MR. MINSON: | 13:50:23 |
| 6 | Q    Yeah.  So isn't it true that even though | 13:50:23 |
| 7 | they had that valuation, another company might | 13:50:25 |
| 8 | want to buy the company for more than it's worth | 13:50:28 |
| 9 | or more than that valuation displays? | 13:50:30 |
| 10 | A    I mean, because in June of 2019, it was | 13:50:34 |
| 11 | a much smaller company than it was in September of | 13:50:36 |
| 12 | 2019, one would expect to see an increase in value | 13:50:39 |
| 13 | and one did see an increase in value over that | 13:50:44 |
| 14 | period of time, but you can't take value that's | 13:50:47 |
| 15 | determined in September of 2020 and then make it | 13:50:49 |
| 16 | bigger in June of 2019 or September of 2019 as Mr. | 13:50:52 |
| 17 | Estabrook as done.  That doesn't make any economic | 13:50:57 |
| 18 | sense at all given the growth of ProPharma during | 13:51:00 |
| 19 | that period of time. | 13:51:02 |
| 20 | Q    But my question was wouldn't the actual | 13:51:08 |
| 21 | value, if a company were to want to acquire | 13:51:10 |
| 22 | ProPharma in June of -- June 30 of 2019, wouldn't | 13:51:13 |
| 23 | the actual value be the price the company was | 13:51:18 |
| 24 | willing to pay for ProPharma? | 13:51:20 |
| 25 | A    We had all kinds of transactions that | 13:51:22 |

Transcript of Neil J. Beaton
September 22, 2022                                  120

| | | |
|---|---|---|
| 1 | occurred and they occurred right around 14X as we | 13:51:24 |
| 2 | saw in those transactions, and as is stated in the | 13:51:28 |
| 3 | document that's up on the screen, even though the | 13:51:31 |
| 4 | public companies were traded at higher multiples | 13:51:34 |
| 5 | during that same period of time, the M&A multiples | 13:51:38 |
| 6 | were lower.  So M&A was not hot in June or | 13:51:42 |
| 7 | September compared to the publics, and again that | 13:51:45 |
| 8 | reared its ugly head in September of 2020 when the | 13:51:49 |
| 9 | company actually sold well below what all the | 13:51:53 |
| 10 | investment banks thought they could sell it for. | 13:51:56 |
| 11 | MS. CHRISTENSEN:  Just so the record is | 13:52:00 |
| 12 | clear, he referred to the document that's up on | 13:52:00 |
| 13 | the screen, and we'd like the record to reflect | 13:52:03 |
| 14 | that I believe that's Exhibit 4. | 13:52:05 |
| 15 | MR. MINSON:  It's Exhibit 4. | 13:52:07 |
| 16 | MS. CHRISTENSEN:  Is that correct? | 13:52:07 |
| 17 | MR. MINSON:  Yeah. | 13:52:12 |
| 18 | MS. CHRISTENSEN:  Yeah. | 13:52:13 |
| 19 | THE WITNESS:  Thank you.  I guess the | 13:52:13 |
| 20 | transcript can't see the screen, so... | 13:52:14 |
| 21 | MR. MINSON:  Well, yeah. | 13:52:17 |
| 22 | BY MR. MINSON: | 13:52:19 |
| 23 | Q   All right.  So did you review the pitch | 13:52:19 |
| 24 | books that were examined by Mr. Estabrook, all of | 13:52:22 |
| 25 | them? | 13:52:28 |

Transcript of Neil J. Beaton
September 22, 2022                                    121

| | | |
|---|---|---|
| 1 | A    What about them? | 13:52:28 |
| 2 | Q    Did you review each individual one? | 13:52:29 |
| 3 | A    I'm sorry.  Yes, I did, yeah. | 13:52:31 |
| 4 | Q    And those pitch books, did they use the | 13:52:35 |
| 5 | market method of valuation? | 13:52:43 |
| 6 | A    They used both the income approach and | 13:52:45 |
| 7 | the market approach, yes.  Well, some of them did. | 13:52:47 |
| 8 | Not all of them, but some did. | 13:52:51 |
| 9 | Q    Okay.  And so in the ones that did, is | 13:52:54 |
| 10 | the only real difference in the result the | 13:52:56 |
| 11 | comparables that they chose to use? | 13:53:00 |
| 12 | A    No.  There were a tremendous number of | 13:53:05 |
| 13 | differences between all five of them, a tremendous | 13:53:09 |
| 14 | number. | 13:53:12 |
| 15 | Q    Okay.  So what are the major differences | 13:53:12 |
| 16 | in the results? | 13:53:14 |
| 17 | A    They're all really different.  They all | 13:53:16 |
| 18 | had a different pitch.  Some had their own DCFs, | 13:53:18 |
| 19 | their discounted cash flows.  They targeted | 13:53:22 |
| 20 | financial buyers, industry. | 13:53:26 |
| 21 | MS. CHRISTENSEN:  I'm going to register | 13:53:29 |
| 22 | an objection, lack of foundation.  If counsel | 13:53:30 |
| 23 | would like to put the pitch books in front of the | 13:53:33 |
| 24 | witness, then the witness might be able to better | 13:53:36 |
| 25 | answer his questions about the pitch books. | 13:53:39 |

Transcript of Neil J. Beaton
September 22, 2022                                    122

| | | |
|---|---|---|
| 1 | A   It would certainly be better, but I know | 13:53:43 |
| 2 | just from my memory that they're really different | 13:53:45 |
| 3 | animals.  But yes, I agree with counsel that | 13:53:48 |
| 4 | actually reviewing them will provide me with a | 13:53:54 |
| 5 | much better sense of differences, although it's | 13:53:56 |
| 6 | going to be very difficult to look on a screen | 13:53:58 |
| 7 | unless you can put them side by side. | 13:54:01 |
| 8 | BY MR. MINSON: | 13:54:16 |
| 9 | Q   Okay.  This is the Harris Williams pitch | 13:54:16 |
| 10 | book.  That's LINDEN574 for a Bates stamp number. | 13:54:18 |
| 11 | And on this screen where it says Representative | 13:54:42 |
| 12 | Recent Transactions, can you tell me if that's the | 13:54:45 |
| 13 | kind of analysis that is similar to the GCT | 13:54:50 |
| 14 | analysis? | 13:54:54 |
| 15 | A   Well, what's on the screen is not a GCT | 13:54:55 |
| 16 | analysis.  It's a sales pitch.  Hey, look at us, | 13:54:58 |
| 17 | we represented all these great people. | 13:55:02 |
| 18 | Q   Okay.  Let's see if we can find the | 13:55:04 |
| 19 | right page.  There we go.  So these show precedent | 13:55:06 |
| 20 | transactions.  Is this the analysis that you're | 13:55:48 |
| 21 | talking about? | 13:55:51 |
| 22 | A   That's the GCT. | 13:55:52 |
| 23 | Q   Right.  And so they did perform the GCT | 13:55:53 |
| 24 | analysis in this pitch book, correct? | 13:55:56 |
| 25 | A   That's correct. | 13:55:58 |

Transcript of Neil J. Beaton
September 22, 2022                                    123

| | | |
|---|---|---|
| 1 | Q   Okay. | 13:55:59 |
| 2 | A   I recall, I can't see the number, but | 13:55:59 |
| 3 | it's not very high when you look at that median | 13:56:01 |
| 4 | number in the little box on the right.  It's too | 13:56:04 |
| 5 | small for me to read. | 13:56:05 |
| 6 | Q   It's up here.  It's 14.6. | 13:56:06 |
| 7 | A   Yeah.  So again, right within target | 13:56:09 |
| 8 | practice, if you will. | 13:56:12 |
| 9 | Q   Okay. | 13:56:14 |
| 10 | A   Certainly not 18 that Mr. Donnelly was | 13:56:15 |
| 11 | alleging should have been used. | 13:56:18 |
| 12 | Q   But Advarra was at 17.9, correct? | 13:56:21 |
| 13 | A   Advarra is a different animal. | 13:56:26 |
| 14 | Q   And here where they're talking about the | 13:56:27 |
| 15 | value range in the Harris Williams pitch book, | 13:56:31 |
| 16 | LINDEN574, it shows a value of 605 to 645 and | 13:56:36 |
| 17 | multiples of 15 to 16 adjusted EBITDA.  Is that | 13:56:43 |
| 18 | correct? | 13:56:48 |
| 19 | A   Those are the words on the page, | 13:56:49 |
| 20 | correct. | 13:56:51 |
| 21 | Q   Okay.  I just want to know.  So it seems | 13:56:54 |
| 22 | like they are focused on EBITDA and using the | 13:56:58 |
| 23 | multiples and also determining the value, like you | 13:57:01 |
| 24 | said, that the market method employs.  So is it -- | 13:57:06 |
| 25 | so what was different about their determination? | 13:57:12 |

Transcript of Neil J. Beaton
September 22, 2022                                    124

| | | |
|---|---|---|
| 1 | A    It's wrong.  It's clear. | 13:57:16 |
| 2 | Q    Okay. | 13:57:26 |
| 3 | A    I should add it's also forward looking. | 13:57:26 |
| 4 | They were anticipating the sale in 2020.  If you | 13:57:29 |
| 5 | go back up there, you'll see that there's a | 13:57:32 |
| 6 | timeline they have listed, and they're not even | 13:57:34 |
| 7 | expecting a sale for another year, and another | 13:57:36 |
| 8 | year of growth is going to be substantial for | 13:57:40 |
| 9 | ProPharma at least in their mind.  It didn't | 13:57:43 |
| 10 | actually happen. | 13:57:45 |
| 11 | Q    Okay. | 13:57:50 |
| 12 | MR. MINSON:  I'm going to need to look | 13:57:50 |
| 13 | at all the pitch books unless you'd prefer to -- I | 13:57:52 |
| 14 | think I just want to -- | 13:57:55 |
| 15 | MS. CHRISTENSEN:  It's your deposition. | 13:57:55 |
| 16 | MR. MINSON:  Yeah.  I just wanted to, | 13:57:56 |
| 17 | you know, get an example. | 13:57:58 |
| 18 | BY MR. MINSON: | 13:58:34 |
| 19 | Q    So page 5, paragraph seven of your | 13:58:34 |
| 20 | rebuttal report, it's actually -- I think it | 13:58:37 |
| 21 | starts on -- seven starts on page 4, but I think | 13:58:49 |
| 22 | the portion I'm looking at is on page 5.  You say | 13:58:54 |
| 23 | that "Linden's selection of valuation multiples | 13:59:01 |
| 24 | ranging from 13.6 to 13.9 during 2019 were | 13:59:06 |
| 25 | appropriate in estimating ProPharma's overall | 13:59:10 |

Transcript of Neil J. Beaton
September 22, 2022                                      125

| | | |
|---|---|---|
| 1 | enterprise value contrary to the 17 to 19X | 13:59:13 |
| 2 | multiples selected by Mr. Estabrook to value | 13:59:18 |
| 3 | ProPharma which are in opposite." | 13:59:21 |
| 4 | And then in paragraph eight, in | 13:59:25 |
| 5 | explaining that, you say, paragraph eight, | 13:59:30 |
| 6 | "Estabrook reports overreliance on the higher | 13:59:42 |
| 7 | multiples generated by the GPC method results in | 13:59:46 |
| 8 | an overvaluation of Mr. Donnelly's incentive | 13:59:47 |
| 9 | equity units since the guideline public companies | 13:59:51 |
| 10 | are significantly larger than ProPharma and | 13:59:54 |
| 11 | therefore less reliable than the multiples derived | 13:59:56 |
| 12 | under the GCT method." And we talked about this | 14:00:00 |
| 13 | before. You mentioned that they were larger. But | 14:00:03 |
| 14 | is that the only basis that you're relying on for | 14:00:05 |
| 15 | you report as to why Mr. Estabrook's multiples are | 14:00:08 |
| 16 | inappropriate? | 14:00:13 |
| 17 | A No. | 14:00:14 |
| 18 | Q And what other basis are you relying on | 14:00:15 |
| 19 | besides the company size? | 14:00:19 |
| 20 | A Everything in both my original report | 14:00:21 |
| 21 | and in my rebuttal report. There's quite a bit of | 14:00:23 |
| 22 | an opinion and analysis that went into ultimately | 14:00:27 |
| 23 | the conclusion that you just shared with me. So | 14:00:30 |
| 24 | it's not the only thing, it's just one of many | 14:00:32 |
| 25 | things. | 14:00:34 |

Transcript of Neil J. Beaton
September 22, 2022                                        126

| | | |
|---|---|---|
| 1 | Q   Okay.  But that's the only thing you | 14:00:35 |
| 2 | cited right there in this rebuttal, though? | 14:00:37 |
| 3 | A   In that paragraph. | 14:00:40 |
| 4 | Q   Okay. | 14:00:41 |
| 5 | A   Let's go on.  Let's read.  I know we're | 14:00:42 |
| 6 | going to.  You're really getting -- you're very | 14:00:44 |
| 7 | detailed.  I appreciate that. | 14:00:47 |
| 8 | Q   Okay. | 14:00:52 |
| 9 | MS. CHRISTENSEN:  Keith, I don't want to | 14:00:53 |
| 10 | interrupt, but it has been an hour and ten | 14:00:54 |
| 11 | minutes. | 14:00:56 |
| 12 | MR. MINSON:  Okay.  We can take a break. | 14:00:57 |
| 13 | Do you want to take a break? | 14:00:58 |
| 14 | MS. CHRISTENSEN:  Just for Kelly. | 14:01:00 |
| 15 | MR. MINSON:  Yeah.  I know it's a lot of | 14:01:01 |
| 16 | typing and cramping.  Yeah, let's take a break. | 14:01:02 |
| 17 | THE VIDEOGRAPHER:  Please stand by. | 14:01:09 |
| 18 | We are going off the record.  The time | 14:01:10 |
| 19 | is 2:00 p.m. | 14:01:12 |
| 20 | (A brief recess was had from 2:00 to | 14:06:04 |
| 21 | 2:05 p.m.) | 14:06:04 |
| 22 | THE VIDEOGRAPHER:  We are back on the | 14:06:20 |
| 23 | record.  The time is 2:05. | 14:06:21 |
| 24 | BY MR. MINSON: | 14:06:25 |
| 25 | Q   All right.  Okay.  Mr. Beaton, in | 14:06:25 |

Transcript of Neil J. Beaton
September 22, 2022                                        127

| | | |
|---|---|---|
| 1 | paragraph seven -- I'm sorry.  In paragraph 13 on | 14:06:30 |
| 2 | page 7 of your report, I think you've mentioned | 14:06:34 |
| 3 | this outside of this statement in your rebuttal | 14:06:38 |
| 4 | report a number of times, but you refer to the | 14:06:42 |
| 5 | review of aspirational investment banking analyses | 14:06:48 |
| 6 | in your opinion and you say that based on that, | 14:06:54 |
| 7 | Mr. Estabrook's approach is unreliable and | 14:07:00 |
| 8 | improper.  So I just want to know the basis for | 14:07:03 |
| 9 | your characterization of the banking analysis as | 14:07:06 |
| 10 | aspirational. | 14:07:12 |
| 11 | A   They're pitch books.  They are sales | 14:07:15 |
| 12 | documents.  They're not formalized valuations. | 14:07:17 |
| 13 | And I've seen formalized evaluations many, many | 14:07:20 |
| 14 | times.  If you read through, some of them have | 14:07:23 |
| 15 | caveats in their disclaimers saying they're just | 14:07:27 |
| 16 | that.  Hey, these are things we just put together. | 14:07:30 |
| 17 | You can't rely upon it because they're sales | 14:07:33 |
| 18 | documents.  It's not a formal basis for valuation | 14:07:38 |
| 19 | that I've ever used. | 14:07:42 |
| 20 | Q   Do the pitch books that you say are | 14:07:44 |
| 21 | aspirational, did they use ProPharma's actual | 14:07:47 |
| 22 | financial data? | 14:07:52 |
| 23 | A   Some of it.  They made up a bunch of it, | 14:07:54 |
| 24 | but some of it. | 14:07:57 |
| 25 | Q   But when you reviewed them, did you see | 14:07:58 |

Transcript of Neil J. Beaton
September 22, 2022                                    128

| | | |
|---|---|---|
| 1 | that ProPharma actually gave them or provided for | 14:08:01 |
| 2 | them numbers or estimates as to their performance | 14:08:04 |
| 3 | or ProPharma's performance? | 14:08:12 |
| 4 | A   They provided historical data from my | 14:08:16 |
| 5 | recollection.  They did not provide a forecast, | 14:08:18 |
| 6 | which I think two of three of the investment banks | 14:08:21 |
| 7 | created themselves.  Both, or at least the two I'm | 14:08:24 |
| 8 | thinking of, were completely different animals | 14:08:28 |
| 9 | which resulted in completely different values, | 14:08:32 |
| 10 | which again lends credence to my statement of | 14:08:35 |
| 11 | aspirationalism, if that's even a word. | 14:08:37 |
| 12 | Q   Okay.  All right.  Also in your report, | 14:08:41 |
| 13 | you state that the value for the sale of ProPharma | 14:08:59 |
| 14 | to Odyssey Partners was 560 million, was the | 14:09:03 |
| 15 | value. | 14:09:10 |
| 16 | A   Mr. Estabrook states that himself in his | 14:09:12 |
| 17 | report, but I did reiterate that in my report, | 14:09:16 |
| 18 | yes. | 14:09:16 |
| 19 | Q   But you mention that 573 by Mr. | 14:09:16 |
| 20 | Estabrook is inappropriate.  Were you aware of the | 14:09:20 |
| 21 | $13 million incentive payout provision of the | 14:09:30 |
| 22 | sale? | 14:09:33 |
| 23 | A   Contingency, correct. | 14:09:37 |
| 24 | Q   Okay.  And so are you aware if that was | 14:09:39 |
| 25 | actually earned by ProPharma? | 14:09:41 |

Transcript of Neil J. Beaton
September 22, 2022                                    129

| | | |
|---|---|---|
| 1 | A   I haven't seen any documentation that it | 14:09:43 |
| 2 | has and I didn't see any support or documentation | 14:09:46 |
| 3 | in Mr. Estabrook's report that it had as well. | 14:09:49 |
| 4 | Q   Okay.  If it was earned, would that | 14:10:14 |
| 5 | change your opinion on the sale value? | 14:10:16 |
| 6 | A   I'd have to read through the incentive | 14:10:19 |
| 7 | agreement to see whether or not contingent | 14:10:22 |
| 8 | payments for subsequent activity would be in fact | 14:10:24 |
| 9 | paid out or not.  I just don't know as I sit here. | 14:10:27 |
| 10 | Q   Okay.  So I just want to -- okay.  On | 14:10:30 |
| 11 | the screen is deposition -- is a deposition | 14:11:31 |
| 12 | transcript that was taken in this matter for | 14:11:34 |
| 13 | Michael Farah, and on page 195 starting at line | 14:11:39 |
| 14 | eight, I say: | 14:11:49 |
| 15 | "Okay.  What was the actual?  You said | 14:11:55 |
| 16 | the actual sales price of ProPharma to Odyssey | 14:11:57 |
| 17 | was, I think you said, 560 to 573 million for -- | 14:12:01 |
| 18 | what was the differential in price?" | 14:12:05 |
| 19 | And Mr. Farah says, "So it was -- yeah, | 14:12:08 |
| 20 | so it was a 560 million upfront payment.  So | 14:12:12 |
| 21 | that's the enterprise value.  And then the | 14:12:16 |
| 22 | opportunity to earn another or be paid -- or for | 14:12:18 |
| 23 | us to be paid another -- us being Linden and | 14:12:22 |
| 24 | ProPharma shareholders -- another 13 million in | 14:12:25 |
| 25 | the form of earnout if the company hit its | 14:12:28 |

Transcript of Neil J. Beaton
September 22, 2022                                    130

| | | |
|---|---|---|
| 1 | projected EBITDA or projected EBITDA target.  So | 14:12:32 |
| 2 | that's what we call earnout." | 14:12:33 |
| 3 | "So did you" -- | 14:12:35 |
| 4 | "So it's contingent." | 14:12:35 |
| 5 | "Did that happen?" | 14:12:36 |
| 6 | He said, "We earned a portion of the | 14:12:37 |
| 7 | earnout, not the full earnout." | 14:12:39 |
| 8 | Okay.  So is the value of ProPharma, | 14:12:51 |
| 9 | would that be increased by whatever portion of | 14:12:53 |
| 10 | that earnout they -- | 14:12:56 |
| 11 | A   Same response I gave you.  I don't know | 14:12:59 |
| 12 | what the agreement is between individuals who | 14:13:00 |
| 13 | stayed on or not.  I don't know.  Apparently they | 14:13:05 |
| 14 | didn't earn the full 573, so that renders Mr. | 14:13:09 |
| 15 | Estabrook's opinion inaccurate anyway.  It could | 14:13:14 |
| 16 | have been a dollar more.  It could have been -- | 14:13:17 |
| 17 | Q   So if they didn't -- if they didn't -- | 14:13:20 |
| 18 | A   -- 12 million. | 14:13:20 |
| 19 | Q   Okay. | 14:13:21 |
| 20 | A   I don't know based on what you just | 14:13:21 |
| 21 | showed me what that would be, and I don't know | 14:13:23 |
| 22 | what the agreement says or states that who will | 14:13:25 |
| 23 | participate in that or not as well. | 14:13:30 |
| 24 | Q   Okay.  So based on the fact that they | 14:13:32 |
| 25 | earned a portion of the earnout, isn't it possible | 14:13:38 |

Transcript of Neil J. Beaton
September 22, 2022

| 1 | that your value could be improper as well? | 14:13:41 |
| 2 | A   I didn't have a value, so mine would | 14:13:44 |
| 3 | never be improper because I didn't have a value. | 14:13:47 |
| 4 | Q   You stated that it was $560 million in | 14:13:50 |
| 5 | your rebuttal report. | 14:13:53 |
| 6 | A   That's what they sold for as Mr. Farah | 14:13:56 |
| 7 | stated right there on the document. | 14:13:58 |
| 8 | Q   Right.  Well, if the earnout, if they | 14:14:00 |
| 9 | made more, wouldn't your value not be accurate? | 14:14:02 |
| 10 | A   No.  My value is very accurate.  I said | 14:14:06 |
| 11 | exactly what Mr. Estabrook said in his report.  I | 14:14:09 |
| 12 | said it in my report.  It's very accurate. | 14:14:13 |
| 13 | Q   So if the full $13 million earnout was | 14:14:15 |
| 14 | achieved, because we don't have a number, do you | 14:14:19 |
| 15 | still think Mr. Estabrook's number of 573 million | 14:14:22 |
| 16 | would be wrong? | 14:14:26 |
| 17 | MS. CHRISTENSEN:  Objection, lack of | 14:14:27 |
| 18 | foundation. | 14:14:28 |
| 19 | A   Well, we know that's a false statement | 14:14:28 |
| 20 | because Mr. Farah said it wasn't earned, only a | 14:14:30 |
| 21 | portion of it was earned.  So it can't have been | 14:14:33 |
| 22 | true, and therefore it is false in their report. | 14:14:37 |
| 23 | It is inaccurate and unreliable. | 14:14:38 |
| 24 | BY MR. MINSON: | 14:14:42 |
| 25 | Q   But I guess my question is wouldn't the | 14:14:42 |

Transcript of Neil J. Beaton
September 22, 2022                                    132

| | | |
|---|---|---|
| 1 | same apply to your value of 560? | 14:14:43 |
| 2 | A   It's not my value.  It's what the | 14:14:45 |
| 3 | company sold for. | 14:14:46 |
| 4 | Q   Okay.  To clarify, in Mr. Estabrook's | 14:14:56 |
| 5 | report, isn't he also saying that's what the | 14:15:00 |
| 6 | company sold for, it's not his value? | 14:15:03 |
| 7 | A   I said twice already, yeah.  I even | 14:15:05 |
| 8 | quote his report in my rebuttal report stating | 14:15:08 |
| 9 | 560.  He doesn't say 573, nor does he say that | 14:15:12 |
| 10 | it's based upon an earnout, nor does he say that | 14:15:16 |
| 11 | only a portion of the earnout was earned, and | 14:15:19 |
| 12 | therefore I'm going to reduce my 573.  That's not | 14:15:22 |
| 13 | what he does. | 14:15:25 |
| 14 | Q   But you don't account for the earnout | 14:15:26 |
| 15 | either when you say that the sales price was 560? | 14:15:28 |
| 16 | A   So the sales price was 560 with a | 14:15:32 |
| 17 | contingency on it.  At the time of the deal, no | 14:15:35 |
| 18 | one knows if the contingency is going to be | 14:15:37 |
| 19 | earned.  Therefore, it's 560 was the sales price. | 14:15:40 |
| 20 | Q   Okay.  Page 8, paragraph 15 of your | 14:16:06 |
| 21 | report, you state that "Mr. Estabrook's June and | 14:16:08 |
| 22 | September 2019 valuation is based on the not yet | 14:16:15 |
| 23 | received pitch books are higher than ProPharma's | 14:16:19 |
| 24 | actual sale to Odyssey in September of 2020," and | 14:16:22 |
| 25 | you write, "This makes no economic sense given | 14:16:27 |

Transcript of Neil J. Beaton
September 22, 2022                                    133

| | | |
|---|---|---|
| 1 | ProPharma's annual growth would indicate a higher | 14:16:29 |
| 2 | value in 2020 compared to 2019." | 14:16:30 |
| 3 | So my question for you is, is the sales | 14:16:36 |
| 4 | price of the company sometimes based on who is | 14:16:41 |
| 5 | marketing that company for sale and the | 14:16:52 |
| 6 | relationships between the buyer and seller? | 14:16:54 |
| 7 | A   Sometimes. | 14:16:57 |
| 8 | Q   And would you agree that Mr. Donnelly | 14:16:59 |
| 9 | did not participate in the sale of ProPharma in | 14:17:02 |
| 10 | 2020? | 14:17:07 |
| 11 | MS. CHRISTENSEN:  Objection, lack of | 14:17:10 |
| 12 | foundation. | 14:17:13 |
| 13 | A   I have no idea what he did or did not | 14:17:13 |
| 14 | do.  I know he was complaining at the time, but I | 14:17:15 |
| 15 | don't know if he was assisting or not. | 14:17:16 |
| 16 | BY MR. MINSON: | 14:17:20 |
| 17 | Q   Okay.  And given Mr. Donnelly's | 14:17:20 |
| 18 | long-standing history in the industry, is it | 14:17:28 |
| 19 | possible that he could have participated and | 14:17:31 |
| 20 | achieved a higher sale price for ProPharma than it | 14:17:34 |
| 21 | achieved without him participating? | 14:17:39 |
| 22 | MS. CHRISTENSEN:  Objection, calls for | 14:17:41 |
| 23 | speculation. | 14:17:42 |
| 24 | A   I have no idea what Mr. Donnelly could | 14:17:47 |
| 25 | do or not do.  If he wanted to go into investment | 14:17:50 |

Transcript of Neil J. Beaton
September 22, 2022                                    134

| | | |
|---|---|---|
| 1 | banking and do that, he could have.  Apparently he | 14:17:57 |
| 2 | didn't. | 14:17:59 |
| 3 | BY MR. MINSON: | 14:18:01 |
| 4 | Q   Okay.  I'll move on to page 9, paragraph | 14:18:01 |
| 5 | 17.  Okay.  So on page 17 -- I'm sorry, paragraph | 14:18:11 |
| 6 | 17, you opine that "Based on the data that was" -- | 14:18:53 |
| 7 | "I was able to derive from 23 of the companies | 14:18:57 |
| 8 | used as transaction comparators by Linden, | 14:19:00 |
| 9 | ProPharma was approximately in the middle | 14:19:04 |
| 10 | indicating a much better fit with private | 14:19:06 |
| 11 | transactions than the large public companies." | 14:19:09 |
| 12 | And so is that opinion shown on the data that are | 14:19:11 |
| 13 | on the following pages 10 through 12 of your | 14:19:20 |
| 14 | report? | 14:19:25 |
| 15 | A   Well, that particular sentence that you | 14:19:27 |
| 16 | just read would only apply to the last chart on | 14:19:29 |
| 17 | page 12. | 14:19:32 |
| 18 | Q   Okay. | 14:19:34 |
| 19 | A   Because the rest of them are the public | 14:19:35 |
| 20 | company comparators. | 14:19:37 |
| 21 | Q   Okay.  And was the only data that you | 14:19:40 |
| 22 | relied on as a basis for that statement the | 14:19:42 |
| 23 | analysis shown here on page 12 on the chart? | 14:19:47 |
| 24 | MS. CHRISTENSEN:  Objection, form. | 14:19:52 |
| 25 | A   Was that the only information?  I mean, | 14:19:55 |

Transcript of Neil J. Beaton
September 22, 2022                                    135

| | | |
|---|---|---|
| 1 | that's the only data I had. | 14:19:57 |
| 2 | BY MR. MINSON: | 14:20:01 |
| 3 | Q   Okay. | 14:20:01 |
| 4 | A   I gave you other reasons in paragraph 17 | 14:20:05 |
| 5 | why that holds, but the only data I had to support | 14:20:07 |
| 6 | the opinions I make is 12 of 15, the last chart. | 14:20:12 |
| 7 | Q   Okay.  And where did you receive that | 14:20:21 |
| 8 | data? | 14:20:23 |
| 9 | A   LINDEN0000465. | 14:20:25 |
| 10 | Q   Okay.  So as part of discovery in this | 14:20:57 |
| 11 | matter, Linden has provided native versions of the | 14:21:00 |
| 12 | financial valuation modeling tool that was used to | 14:21:06 |
| 13 | determine the value of Mr. Donnelly's incentive | 14:21:10 |
| 14 | equity.  The specific one for the June 30, 2019 | 14:21:14 |
| 15 | valuation date is shown on the screen, and that is | 14:21:24 |
| 16 | LINDEN0000458.  Have you reviewed this tool? | 14:21:29 |
| 17 | A   I think that's what was referenced in | 14:21:39 |
| 18 | Mr. Estabrook's report. | 14:21:43 |
| 19 | Q   That's correct, right.  And did you -- | 14:21:45 |
| 20 | were you able to input data and see how the tool | 14:21:48 |
| 21 | works? | 14:21:52 |
| 22 | A   Yeah. | 14:21:53 |
| 23 | Q   Okay.  So -- | 14:22:04 |
| 24 | MS. CHRISTENSEN:  Mr. Beaton, can you | 14:22:05 |
| 25 | see the screen and the document? | 14:22:06 |

Transcript of Neil J. Beaton
September 22, 2022                                    136

| 1  | THE WITNESS:  I can't see it. | 14:22:08 |
| 2  | MR. MINSON:  I'll move it closer. | 14:22:10 |
| 3  | THE WITNESS:  I just remember them from | 14:22:12 |
| 4  | what I had. | 14:22:13 |
| 5  | MR. MINSON:  Okay.  I'm actually going | 14:22:14 |
| 6  | to walk over. | 14:22:14 |
| 7  | THE WITNESS:  If he's going to ask me | 14:22:14 |
| 8  | questions about particular numbers, then I'll have | 14:22:16 |
| 9  | to get the hands dirty. | 14:22:18 |
| 10 | MR. MINSON:  I wish I brought my mouse | 14:22:21 |
| 11 | up here, right?  This little track ball thing. | 14:22:23 |
| 12 | Where did it go?  There we go. | 14:22:32 |
| 13 | BY MR. MINSON: | 14:22:45 |
| 14 | Q   Okay.  So this is the tool that Linden | 14:22:45 |
| 15 | provided in discovery, and on that tool it is | 14:22:48 |
| 16 | impossible if you see -- God, I hate this -- to | 14:23:00 |
| 17 | input data in the EBITDA multiple without, you | 14:23:13 |
| 18 | know, causing some type of an error.  It's a | 14:23:20 |
| 19 | formula that's an EBITDA multiple.  However, if | 14:23:22 |
| 20 | you go down to suggested MOI and you, for | 14:23:26 |
| 21 | instance, type in 3.0, everything changes based on | 14:23:33 |
| 22 | that input.  Do you see how it works? | 14:23:44 |
| 23 | A   Okay. | 14:23:48 |
| 24 | Q   And so if Linden were to input a | 14:23:49 |
| 25 | multiple to determine the EBITDA and determine | 14:23:57 |

Transcript of Neil J. Beaton
September 22, 2022                                        137

| | | |
|---|---|---|
| 1 | the -- and to change the EBITDA, because that's | 14:24:01 |
| 2 | what happens when you change the multiples down | 14:24:06 |
| 3 | here, would that be considered a proper valuation? | 14:24:09 |
| 4 | A    Absolutely. | 14:24:12 |
| 5 | Q    If they chose their multiple? | 14:24:14 |
| 6 | A    Yeah. | 14:24:15 |
| 7 | Q    Rather than choosing their EBITDA? | 14:24:16 |
| 8 | A    Yeah, because their multiple is actually | 14:24:18 |
| 9 | driven by Columns E, F, G, and H.  You can see | 14:24:21 |
| 10 | that, but that's an input that came from 2.6 -- | 14:24:25 |
| 11 | oops. | 14:24:28 |
| 12 | Q    Sorry.  It's a touch screen. | 14:24:29 |
| 13 | A    Yeah, that's a touch screen.  That's a | 14:24:31 |
| 14 | nice deal. | 14:24:33 |
| 15 | So let's do this.  I'm going to -- I'm | 14:24:34 |
| 16 | going to do something fun here.  I'm going to do a | 14:24:35 |
| 17 | formula which I do because I use a similar tool | 14:24:40 |
| 18 | and I'm going to add that plus that.  When I say | 14:24:44 |
| 19 | that plus that, I'm adding the Column H and the | 14:24:53 |
| 20 | Column I which are the two transaction | 14:24:56 |
| 21 | comparables.  I'm going to divide that by two. | 14:24:58 |
| 22 | Enter.  I get 13.9 because that's -- if you recall | 14:25:03 |
| 23 | earlier what I did is when I discussed their | 14:25:09 |
| 24 | valuation, their multiple selection, they were | 14:25:13 |
| 25 | looking at the transaction multiples as they | 14:25:15 |

Transcript of Neil J. Beaton
September 22, 2022                                      138

| 1 | identified in the other account that we were | 14:25:18 |
| 2 | looking at previously. | 14:25:21 |
| 3 | And so although the formula itself will | 14:25:24 |
| 4 | drive the last column, the actual valuation work | 14:25:27 |
| 5 | is done in the first four columns when you have | 14:25:30 |
| 6 | the two columns for the public comparables and the | 14:25:33 |
| 7 | two columns for the transaction comparables | 14:25:38 |
| 8 | driving the MOIC, but all based upon the | 14:25:38 |
| 9 | transaction multiples and the EBITDA.  That's how | 14:25:41 |
| 10 | they did it. | 14:25:44 |
| 11 | You can't back into the multiple of | 14:25:45 |
| 12 | investment from a public comp by going from 2.6 or | 14:25:48 |
| 13 | 3.0 up.  Can't do that.  You have to come down | 14:25:52 |
| 14 | from 15X and 17.5 and 12.2 and 15.5.  You cannot | 14:25:56 |
| 15 | go up and start down there. | 14:26:07 |
| 16 | Q   But this does go up, doesn't it?  If I | 14:26:09 |
| 17 | put in a multiple first, for the formula table to | 14:26:12 |
| 18 | determine my EBITDA, it does go backwards? | 14:26:16 |
| 19 | A   Let's change that 2.9 multiple there. | 14:26:19 |
| 20 | Can I just -- | 14:26:23 |
| 21 | Q   That one doesn't change.  That's a | 14:26:23 |
| 22 | formula because it's the suggested multiple, which | 14:26:25 |
| 23 | is the multiple that they provided for Mr. | 14:26:26 |
| 24 | Donnelly.  The suggested multiple of 2.5, when it | 14:26:29 |
| 25 | was put in there, it changes the EBITDA multiple | 14:26:32 |

Transcript of Neil J. Beaton
September 22, 2022
139

| | | |
|---|---|---|
| 1 | to 13.9. | 14:26:38 |
| 2 | A   I understand and I agree what that cell | 14:26:39 |
| 3 | does, but the cell is not being driven -- they're | 14:26:43 |
| 4 | not just saying -- Linden is not saying we're just | 14:26:46 |
| 5 | going to pick a number out of the air and it's | 14:26:49 |
| 6 | going to be 2.5.  That's not what they do.  They | 14:26:51 |
| 7 | look at all the multiples that occurred from the | 14:26:53 |
| 8 | actual transactions for the public companies and | 14:26:56 |
| 9 | the actual transaction multiples, and they're all | 14:26:59 |
| 10 | based on that -- I can't see it up there -- 2.6, | 14:27:03 |
| 11 | 3.0, 2.0, and 2.9.  And as I indicated earlier, | 14:27:08 |
| 12 | when you take the mean of 12.2 and 15.5, you get | 14:27:13 |
| 13 | 13.85, which is really 13.9. | 14:27:18 |
| 14 | Q   Okay. | 14:27:21 |
| 15 | A   The 13.85 multiple is the same as taking | 14:27:22 |
| 16 | the average of 2.0 and 2.9, which I just did and | 14:27:24 |
| 17 | showed you.  When you put that average in there | 14:27:28 |
| 18 | from those two, it drives the same multiple. | 14:27:31 |
| 19 | Q   If you put the average in there, that's | 14:27:36 |
| 20 | true, correct?  But this is Linden's -- this is | 14:27:38 |
| 21 | Linden's tool, right? | 14:27:42 |
| 22 | A   It is. | 14:27:43 |
| 23 | Q   Can you change -- can you change -- and | 14:27:46 |
| 24 | you said generally accepted valuation principles | 14:27:48 |
| 25 | and generally accepted accounting principles would | 14:27:52 |

Transcript of Neil J. Beaton
September 22, 2022                                    140

| | | |
|---|---|---|
| 1 | require you to use comparable companies, select an | 14:27:55 |
| 2 | EBITDA multiple, and then determine the multiple | 14:28:03 |
| 3 | invested capital based on that EBITDA multiple, | 14:28:09 |
| 4 | correct? | 14:28:13 |
| 5 | MS. CHRISTENSEN:  Objection, form, | 14:28:14 |
| 6 | misstates prior testimony. | 14:28:14 |
| 7 | A    Yes.  There is nothing -- this has | 14:28:16 |
| 8 | nothing to do with generally accepted accounting | 14:28:16 |
| 9 | principles. | 14:28:19 |
| 10 | BY MR. MINSON: | 14:28:20 |
| 11 | Q    How about -- | 14:28:20 |
| 12 | A    I already stated that. | 14:28:20 |
| 13 | Q    How about financial accounting standards | 14:28:21 |
| 14 | for -- Accounting Standards Codification Topic | 14:28:23 |
| 15 | 820? | 14:28:26 |
| 16 | A    820 is fair value codification. | 14:28:27 |
| 17 | Q    Right. | 14:28:30 |
| 18 | A    It doesn't dictate that you use public | 14:28:31 |
| 19 | companies or other transactions.  It dictates it's | 14:28:33 |
| 20 | fair value.  It's an input model. | 14:28:38 |
| 21 | Q    Okay. | 14:28:43 |
| 22 | A    It's not an indication of value or | 14:28:43 |
| 23 | standard. | 14:28:43 |
| 24 | Q    So the market method of determining | 14:28:43 |
| 25 | valuation using general GCT and GCP, correct? | 14:28:45 |

Transcript of Neil J. Beaton
September 22, 2022                                              141

| | | |
|---|---|---|
| 1 | A    GPC. | 14:28:56 |
| 2 | Q    GPC. | 14:28:57 |
| 3 | A    Those are methodologies under the market | 14:28:59 |
| 4 | approach. | 14:29:01 |
| 5 | Q    And in your testimony, you stated that | 14:29:01 |
| 6 | Linden selected comparable companies? | 14:29:03 |
| 7 | A    Yes. | 14:29:05 |
| 8 | Q    Selected a multiple? | 14:29:06 |
| 9 | A    Yes. | 14:29:08 |
| 10 | Q    That was appropriate, correct? | 14:29:10 |
| 11 | A    I did. | 14:29:12 |
| 12 | Q    And then used that multiple to determine | 14:29:14 |
| 13 | what that multiple of invested capital was, right? | 14:29:18 |
| 14 | A    Yeah.  The MOIC falls out from the | 14:29:23 |
| 15 | selection of the EBITDA multiple that they | 14:29:27 |
| 16 | selected from the four types of transactions that | 14:29:31 |
| 17 | occurred there. | 14:29:34 |
| 18 | Q    Okay.  But if they were not to do that, | 14:29:35 |
| 19 | if they were to choose what they wanted their | 14:29:38 |
| 20 | multiple of invested capital to be, would that | 14:29:43 |
| 21 | comply with the market method of valuating a | 14:29:46 |
| 22 | company? | 14:29:50 |
| 23 | A    Sure, if they wanted to do it that way. | 14:29:51 |
| 24 | It's not what they did, but they can do it that | 14:29:55 |
| 25 | way, sure. | 14:29:56 |

Transcript of Neil J. Beaton
September 22, 2022                                    142

1        Q    They can choose how much they want to        14:29:56

2    make and then generate an EBITDA value divorced       14:29:58

3    from any public comparables, divorced from any        14:30:03

4    transactions, and that would be a proper             14:30:07

5    valuation?                                            14:30:13

6        A    No, it wouldn't be a proper valuation,       14:30:14

7    but they could --                                     14:30:17

8            MS. CHRISTENSEN:  Objection,                   14:30:18

9    argumentative.                                        14:30:19

10           Now you may answer.                            14:30:19

11       A    No one would do that in their right mind      14:30:20

12   because that's -- I'll use the term "idiotic"         14:30:24

13   because no one says, hey, I'm going to make X and     14:30:26

14   then I'll back into my value.                         14:30:30

15           What they do is exactly what Linden did       14:30:31

16   here, is they take the multiples in the four          14:30:33

17   columns that you see to the left of the conclusion    14:30:36

18   based on market value.  I think that's market         14:30:38

19   value.  I can't read that.  Let me see that, Mr.      14:30:42

20   Minson.  Concluded value.  And they determined        14:30:46

21   based upon the yellow highlighted section in there    14:30:50

22   that the multiples ranged from 2.6, 3.0, 2.0, and     14:30:53

23   2.9.                                                  14:30:59

24           From there they said, oh, guess what?         14:31:00

25   These public companies are traded at an MOIC of       14:31:03

Transcript of Neil J. Beaton
September 22, 2022                                   143

| | | |
|---|---|---|
| 1 | between 2.6 and 3.0, and on the transaction side | 14:31:07 |
| 2 | at 2.0 and 2.9.  We believe -- Linden believes | 14:31:11 |
| 3 | that the public comparables are not pricing right, | 14:31:15 |
| 4 | but the M&A transactions are.  We're going to use | 14:31:20 |
| 5 | the mid point of the low and the high.  That's | 14:31:23 |
| 6 | going to be 2.5. | 14:31:26 |
| 7 | That's going to result in an EBITDA | 14:31:27 |
| 8 | multiple of 13.9, or they could have said we're | 14:31:28 |
| 9 | going to use the two EBITDA multiples at the top | 14:31:32 |
| 10 | like I showed you earlier of 12.2 and 15.5, and | 14:31:34 |
| 11 | you divide those by two and you get the same exact | 14:31:38 |
| 12 | answer.  Same exact answer. | 14:31:42 |
| 13 | Q   You get the same exact answer. | 14:31:44 |
| 14 | A   Yeah, you get the same answer. | 14:31:46 |
| 15 | Q   But you arrive at it a different way, | 14:31:48 |
| 16 | right? | 14:31:50 |
| 17 | A   I do not believe they did it a different | 14:31:51 |
| 18 | way.  I know Mr. Estabrook states that, oh, the | 14:31:53 |
| 19 | only way they could have done this is by backing | 14:31:58 |
| 20 | into it, and you can't.  I challenge Mr. Estabrook | 14:32:01 |
| 21 | to give me -- how do I come up with an MOIC of 2.6 | 14:32:04 |
| 22 | for the publicly traded companies?  How do you do | 14:32:08 |
| 23 | that?  Show me how. | 14:32:11 |
| 24 | Q   Well, in this tool, the only thing that | 14:32:14 |
| 25 | you can change, the only variable is the MOIC, | 14:32:15 |

Transcript of Neil J. Beaton
September 22, 2022                                    144

| | | |
|---|---|---|
| 1 | correct? | 14:32:19 |
| 2 | A   No.  The only the tool you can change is | 14:32:20 |
| 3 | the multiple, change the multiples up top. | 14:32:21 |
| 4 | Q   Everything else is derived about a | 14:32:26 |
| 5 | formula in this tool? | 14:32:28 |
| 6 | A   On the right-hand column that's true, | 14:32:30 |
| 7 | but the valuation data is everything on the left | 14:32:32 |
| 8 | of that.  So they have actual -- you can't change | 14:32:35 |
| 9 | that.  You can change the multiple.  Click on | 14:32:38 |
| 10 | that, the multiple there. | 14:32:40 |
| 11 | Q   This one? | 14:32:43 |
| 12 | A   Yeah, right there where your cursor is. | 14:32:44 |
| 13 | So that's going to the M&A comps.  It's driven | 14:32:47 |
| 14 | directly from the comps. | 14:32:51 |
| 15 | Q   All right. | 14:32:51 |
| 16 | A   That one, same thing.  Look at the next | 14:32:51 |
| 17 | one. | 14:32:52 |
| 18 | Q   All right. | 14:32:55 |
| 19 | A   GPCs.  The next one. | 14:32:56 |
| 20 | Q   Yeah. | 14:32:57 |
| 21 | A   All of those are being driven by market | 14:32:57 |
| 22 | data.  You change those, boom, everything else | 14:33:00 |
| 23 | will change, and then you would have to make a | 14:33:03 |
| 24 | decision whether or not you want to use the mid | 14:33:05 |
| 25 | point of the transaction multiples, or the mid | 14:33:08 |

Transcript of Neil J. Beaton
September 22, 2022                                    145

| | | |
|---|---|---|
| 1 | point of the public company multiples in the | 14:33:11 |
| 2 | concluded value, not the other way around.  You | 14:33:14 |
| 3 | don't go backwards. | 14:33:16 |
| 4 | Q   You don't go backwards is what you said, | 14:33:17 |
| 5 | but this column is only affected as far -- the | 14:33:20 |
| 6 | EBITDA in this column, isn't it true that the | 14:33:28 |
| 7 | EBITDA in this column is only affected by changing | 14:33:30 |
| 8 | this column specifically, not this other column | 14:33:33 |
| 9 | that shows the public comparables, but the EBITDA | 14:33:35 |
| 10 | in this column is specifically only affected by | 14:33:37 |
| 11 | this box of MOIC.  Isn't that right?  Isn't that | 14:33:40 |
| 12 | true? | 14:33:43 |
| 13 | A   Mathematically and from an Excel | 14:33:44 |
| 14 | standpoint, that is true, but that's not how they | 14:33:45 |
| 15 | did it.  You cannot do it.  It's impossible.  You | 14:33:48 |
| 16 | cannot do it that way.  You can't come up with an | 14:33:52 |
| 17 | MOIC on the transactions.  I told you that | 14:33:54 |
| 18 | earlier.  We don't know what those are.  Again, if | 14:33:57 |
| 19 | I was taking Mr. Estabrook's dep -- maybe I'm | 14:34:00 |
| 20 | giving this a little too far.  I won't say that. | 14:34:04 |
| 21 | No, I disagree with the way that it was | 14:34:07 |
| 22 | set forth in his report.  The way that Linden did | 14:34:09 |
| 23 | it was to look at the actual EBITDA multiples on | 14:34:12 |
| 24 | the four columns.  Then they selected an EBITDA | 14:34:16 |
| 25 | multiple in the middle of the transactions.  That | 14:34:19 |

Transcript of Neil J. Beaton
September 22, 2022                                      146

| | | |
|---|---|---|
| 1 | was 13.9, and that was a suggested MOI of 2.5. | 14:34:22 |
| 2 | When he puts it in that little box, boom, you get | 14:34:26 |
| 3 | the numbers.  That's how they did it, not the | 14:34:30 |
| 4 | other way around. | 14:34:30 |
| 5 | Q   Okay.  So the only way that I can | 14:34:31 |
| 6 | control that 13.9 EBITDA in this chart is by | 14:34:33 |
| 7 | changing the MOIC on the far column that | 14:34:37 |
| 8 | calculated his equity, correct? | 14:34:39 |
| 9 | A   No.  I already showed you.  I gave you | 14:34:41 |
| 10 | -- I gave you an example. | 14:34:43 |
| 11 | Q   But you changed -- you put something | 14:34:43 |
| 12 | different in that box.  You put something | 14:34:45 |
| 13 | different in the MOIC box.  You did -- you put a | 14:34:46 |
| 14 | formula in the box.  Isn't that true? | 14:34:48 |
| 15 | A   I could run -- I could run 25 different | 14:34:50 |
| 16 | analyses that would come up with the same number | 14:34:53 |
| 17 | all based on market data because that's how Linden | 14:34:55 |
| 18 | did it.  You can't get away from the market data. | 14:34:58 |
| 19 | Impossible.  Can't do it. | 14:35:02 |
| 20 | Q   I just did. | 14:35:04 |
| 21 | A   You can't do that.  It makes no sense. | 14:35:09 |
| 22 | Why would you do that? | 14:35:12 |
| 23 | Q   Because I wanted to -- I want a 127.9X | 14:35:14 |
| 24 | EBITDA multiple. | 14:35:18 |
| 25 | A   So how is that based on market data | 14:35:19 |

Transcript of Neil J. Beaton
September 22, 2022                                    147

| | | |
|---|---|---|
| 1 | above?  It's so far out of that range.  Then it's | 14:35:22 |
| 2 | just -- now it's just an Excel exercise. | 14:35:25 |
| 3 | Q   However -- | 14:35:27 |
| 4 | A   And it's idiotic.  You have to tie it to | 14:35:28 |
| 5 | market data as Linden did, and the market data | 14:35:31 |
| 6 | proves and it shows directly that the 2.5 is the | 14:35:34 |
| 7 | mid point of the transaction comparables.  It's | 14:35:37 |
| 8 | very clear. | 14:35:40 |
| 9 | Q   I think over and over again in this | 14:35:42 |
| 10 | deposition you testified that this company | 14:35:44 |
| 11 | selected to validate the market data are | 14:35:46 |
| 12 | discretionary.  And so if I were to select, say, | 14:35:51 |
| 13 | four for MOIC, you know, I could -- couldn't I | 14:35:58 |
| 14 | just rely on the public comparables? | 14:36:03 |
| 15 | A   No, because the highest is three.  You | 14:36:06 |
| 16 | would be 75 percent above.  I mean 25 percent. | 14:36:11 |
| 17 | Q   Okay.  So if I put in three MOIC, | 14:36:15 |
| 18 | couldn't I then rely on the public comparables? | 14:36:17 |
| 19 | A   Sure, if you thought that ProPharma was | 14:36:20 |
| 20 | in line with the public comps, and I just showed | 14:36:22 |
| 21 | you on multiple pages that they are tiny.  They're | 14:36:25 |
| 22 | not even on the proverbial horse's rear compared | 14:36:29 |
| 23 | as to the public comp.  So why would you use data | 14:36:36 |
| 24 | from an incomparable set of public companies and | 14:36:39 |
| 25 | use the highest multiple?  That makes no sense. | 14:36:42 |

Transcript of Neil J. Beaton
September 22, 2022                                    148

1          Q    But if I wanted my multiple --                    14:36:47

2          A    You interrupted me again.                         14:36:47

3          Q    Sorry.                                            14:36:48

4          A    That's why Linden utilized the                    14:36:49

5     transactions, and that's what they stated in their          14:36:51

6     contemporaneous document.  When they were                   14:36:54

7     providing the valuation in 2019, they made the              14:36:55

8     statement that the M&A comp -- the GPCs, the                14:36:57

9     public companies, were getting out of line, but            14:37:01

10    the M&A comps were in line and they selected               14:37:03

11    those.  That's a contemporaneous document.  So you         14:37:06

12    can't go making up stuff by putting in, well, I'm          14:37:09

13    just going to pick three, Neil.                            14:37:13

14             You can do that, the tool will allow you          14:37:16

15    to do that, but it makes no sense and it doesn't           14:37:18

16    follow the actual process by which Linden created         14:37:20

17    their valuations and set it forth for their               14:37:22

18    investors.                                                  14:37:26

19         Q    And you say that you can do that, it             14:37:27

20    makes no sense, but if I wanted to validate those         14:37:30

21    numbers, couldn't I select higher public                   14:37:32

22    comparables or higher transactions?                        14:37:35

23         A    You could -- you could do anything you           14:37:37

24    want, but we're not here talking about what you           14:37:39

25    can do.  We're here to talk about what Linden did,        14:37:43

Transcript of Neil J. Beaton
September 22, 2022                                           149

| | | |
|---|---|---|
| 1 | and Linden performed an analysis and they provided | 14:37:46 |
| 2 | all the inputs.  Mr. Donnelly reviewed those | 14:37:49 |
| 3 | inputs while he was a board manager the entire | 14:37:52 |
| 4 | time and never complained about the multiples.  At | 14:37:54 |
| 5 | least I didn't see any minutes about what he did. | 14:37:58 |
| 6 | He did finally ultimately say, hey, I should be | 14:38:01 |
| 7 | trading at Advarra.  But that's not what happened | 14:38:03 |
| 8 | here.  We're looking at a contemporaneous | 14:38:06 |
| 9 | valuation that was performed by the company on a | 14:38:08 |
| 10 | consistent basis, and that's what we have. | 14:38:10 |
| 11 | Q   Okay.  I'm going to go to -- hopefully | 14:38:12 |
| 12 | it's not going to freeze my computer.  This is | 14:38:19 |
| 13 | third quarter -- no, it did freeze my computer. | 14:38:33 |
| 14 | But you said they were performed on a consistent | 14:38:39 |
| 15 | basis, but weren't they all performed using this | 14:38:42 |
| 16 | same tool that Linden provided in discovery? | 14:38:45 |
| 17 | A   Not the same tool because we have | 14:38:48 |
| 18 | different numbers, but the same format of tool, | 14:38:49 |
| 19 | yes. | 14:38:57 |
| 20 | Q   And you also testified that it would | 14:39:00 |
| 21 | make no sense and they couldn't have done that, | 14:39:02 |
| 22 | but if Linden did do that, if they did back in to | 14:39:05 |
| 23 | the EBITDA multiple by using their suggested MOIC | 14:39:09 |
| 24 | or their desired MOIC, would they -- would that be | 14:39:13 |
| 25 | a proper valuation? | 14:39:17 |

Transcript of Neil J. Beaton
September 22, 2022                                    150

```
 1        A    Sure.                                    14:39:18
 2             MS. CHRISTENSEN:   Objection, calls for  14:39:19
 3    speculation.                                      14:39:19
 4        A    You can use MOIC.  I mean, private       14:39:21
 5    equity companies use MOIC all the time, but that's 14:39:23
 6    not how they did it.  But if they wanted to do    14:39:26
 7    that and it was in their investment policy and    14:39:29
 8    they provided that to their investors, which they 14:39:32
 9    did, most of their investment transmissions were  14:39:36
10    on an MOIC basis, but they came up with that MOIC 14:39:39
11    not based on MOIC but based on EBITDA multiples   14:39:44
12    very consistently.                                14:39:48
13    BY MR. MINSON:                                     14:39:49
14        Q    Okay.  So you said investment companies  14:39:49
15    use MOIC all the time, and I just want to know    14:39:55
16    would using MOIC and working up to determine the  14:39:58
17    EBITDA multiple, would that comport with the      14:40:03
18    market analysis of valuation that you testified   14:40:06
19    was proper using GCT and GPC in this deposition?  14:40:11
20    Would that -- backing in from the MOIC into the   14:40:18
21    EBITDA multiple, would that be in line with the   14:40:23
22    market analysis that you just described?          14:40:25
23        A    I thought I had stated and maybe I       14:40:29
24    didn't.  I'll be very clear this time.  You       14:40:31
25    cannot -- you cannot.  It is impossible to create 14:40:34
```

Transcript of Neil J. Beaton
September 22, 2022                                        151

1    an MOIC from transaction data because you don't            14:40:37

2    know what MOI -- you don't know what the IC is.            14:40:40

3    So you can't do it.  You have to go from EBITDA to         14:40:43

4    MOI, to the invested capital.  So you can't do it.         14:40:48

5           So given that, when you say could I do              14:40:53

6    it, yeah.  You have a model.  I can create an              14:40:55

7    Excel sheet that I can put together.  I've got            14:41:00

8    some young people that can run circles around me          14:41:02

9    with Excel models.  You can create one.  But              14:41:06

10   that's not what they did, and it would be --              14:41:09

11   again, like I had said, it would be impossible to         14:41:11

12   come up with those multiples and have you click on        14:41:13

13   those and you saw that those MOIC multiples are           14:41:16

14   being driven by the EBITDA multiples that are             14:41:19

15   taken from the market data.                               14:41:22

16       Q   When you went through this chart and you          14:41:24

17   analyzed this model, did you change the EBITDA            14:41:27

18   multiples and did you adjust anything in the              14:41:31

19   transactional data from the public comparables to         14:41:34

20   see how it would affect the MOIC calculation on           14:41:37

21   the right-hand column?                                    14:41:40

22       A   No.  Why would I do that?  This is                14:41:40

23   historically based valuations.  They exist.  My           14:41:43

24   changing it would only be because I like to play          14:41:48

25   in Excel.                                                 14:41:50

Transcript of Neil J. Beaton
September 22, 2022                              152

| | | |
|---|---|---|
| 1 | Q   I mean, it would validate the fact that | 14:41:51 |
| 2 | the EBITDA multiple is actually connected to those | 14:41:54 |
| 3 | multiples, right? | 14:41:58 |
| 4 | A   I saw that.  That's very clear.  When | 14:41:59 |
| 5 | you click on the line 12, it comes out.  You can | 14:42:00 |
| 6 | see it.  That's where it goes to. | 14:42:07 |
| 7 | Q   Line 12? | 14:42:08 |
| 8 | A   Excel doesn't lie.  Right there, M&A | 14:42:10 |
| 9 | comps. | 14:42:15 |
| 10 | Q   G42? | 14:42:15 |
| 11 | A   G42.  So if you go to the M&A comp tab | 14:42:17 |
| 12 | down below, kind of like right there, you'll find | 14:42:21 |
| 13 | that number. | 14:42:23 |
| 14 | Q   Right, but it's not connected to -- my | 14:42:25 |
| 15 | point is it's not connected to the I column in | 14:42:28 |
| 16 | Linden's valuation model? | 14:42:32 |
| 17 | A   So?  It's driving the I column.  It's | 14:42:34 |
| 18 | not connected to it.  It's driving it.  That's | 14:42:37 |
| 19 | where they get all those multiples at the bottom. | 14:42:39 |
| 20 | Q   How is it driving it if it's not | 14:42:42 |
| 21 | connected to it? | 14:42:44 |
| 22 | A   Because if you look down below, you'll | 14:42:45 |
| 23 | see 2.6, 3.0, 2.0, and 2.9, and they said we're | 14:42:47 |
| 24 | going to be between 2.0 and 2.9.  That's 2.5.  You | 14:42:50 |
| 25 | stick that in there, and boom, we get the | 14:42:54 |

Transcript of Neil J. Beaton
September 22, 2022                                     153

| | | |
|---|---|---|
| 1 | multiple.  You do the same thing where you -- | 14:42:56 |
| 2 | Q   So they selected -- so you're saying | 14:43:00 |
| 3 | they selected the multiple first before figuring | 14:43:02 |
| 4 | out the EBITDA? | 14:43:03 |
| 5 | A   They did.  As I showed you before, click | 14:43:05 |
| 6 | on -- if you go -- click on line H12 and I12 and | 14:43:08 |
| 7 | do a little connect on them, H12 and I12. | 14:43:13 |
| 8 | Q   H12 and I12. | 14:43:17 |
| 9 | A   Which are the two multiples. | 14:43:17 |
| 10 | Q   Okay. | 14:43:18 |
| 11 | A   Right there.  Now look down below there. | 14:43:19 |
| 12 | You'll see an average.  What's the average on the | 14:43:21 |
| 13 | very bottom of your gray column there?  No, just | 14:43:23 |
| 14 | right there on your screen. | 14:43:26 |
| 15 | Q   Average? | 14:43:31 |
| 16 | A   Let me see if I can see it. | 14:43:33 |
| 17 | Q   Average is right in there.  I can't | 14:43:35 |
| 18 | quite see it.  What's the average? | 14:43:36 |
| 19 | A   13.9. | 14:43:42 |
| 20 | Q   Yeah, 13.9. | 14:43:43 |
| 21 | A   Yeah.  That's the multiple.  That's | 14:43:45 |
| 22 | where you're getting it.  When you put in 2.5, it | 14:43:46 |
| 23 | drives 13.9 because that's where they're getting | 14:43:48 |
| 24 | it from. | 14:43:51 |
| 25 | Q   Okay.  But you're saying they entered | 14:43:59 |

Transcript of Neil J. Beaton
September 22, 2022                                    154

| | | |
|---|---|---|
| 1 | the MOIC based -- first based on their valuation | 14:44:00 |
| 2 | of these two columns? | 14:44:04 |
| 3 | A   Correct. | 14:44:05 |
| 4 | Q   So they started on MOIC -- | 14:44:05 |
| 5 | A   Actually, look at all four.  I apologize | 14:44:08 |
| 6 | for interrupting you. | 14:44:08 |
| 7 | Q   Okay. | 14:44:10 |
| 8 | A   Look at all four.  Then they select what | 14:44:11 |
| 9 | they believe is the most appropriate EBITDA | 14:44:14 |
| 10 | multiples.  That results in a multiple of invested | 14:44:18 |
| 11 | capital based upon their invested capital.  Then | 14:44:21 |
| 12 | they say, oh, we're right in the middle.  And if | 14:44:24 |
| 13 | you -- again, if you click on 2.0 and 2.9 the same | 14:44:27 |
| 14 | way we just did -- so go ahead and highlight. | 14:44:31 |
| 15 | Q   2.9? | 14:44:34 |
| 16 | A   Go all the way down to the yellow, 2.0 | 14:44:35 |
| 17 | and 2.9 highlighted.  Look at that average number | 14:44:37 |
| 18 | again.  You get the same thing.  So they just put | 14:44:40 |
| 19 | that number in there.  Boom, it drives up the | 14:44:43 |
| 20 | values up there. | 14:44:45 |
| 21 | But that's how they do it.  It's not -- | 14:44:46 |
| 22 | they're not looking at -- let's just put in 2.5 | 14:44:48 |
| 23 | and that will drive our EBITDA multiple.  They're | 14:44:50 |
| 24 | looking at the MOIC multiples that are driven by | 14:44:54 |
| 25 | the transactions, and that's what's driving Column | 14:44:56 |

Transcript of Neil J. Beaton
September 22, 2022                                          155

| | | |
|---|---|---|
| 1 | K, I think it is. | 14:45:02 |
| 2 |     Q   So these two columns are not connected | 14:45:05 |
| 3 | to Column K, but this box is, correct? | 14:45:08 |
| 4 |     A   Correct. | 14:45:11 |
| 5 |     Q   Okay.  All right. | 14:45:15 |
| 6 |         MR. MINSON:  That's all I've got. | 14:45:26 |
| 7 |         MS. CHRISTENSEN:  There are no questions | 14:45:29 |
| 8 | for me. | 14:45:29 |
| 9 |         THE VIDEOGRAPHER:  Please stand by. | 14:45:36 |
| 10 |         This marks the end of the videotaped | 14:45:37 |
| 11 | deposition of Neil J. Beaton.  We are going off | 14:45:39 |
| 12 | the record.  The time is 2:44 p.m. | 14:45:43 |
| 13 |         (Beaton Deposition Exhibit Nos. 4 and 6 | 14:49:25 |
| 14 | were marked for identification and after the | 14:49:25 |
| 15 | conclusion of the deposition and were attached to | 14:49:25 |
| 16 | the deposition transcript.) | 14:49:25 |
| 17 |         (Off the record at 2:44 P.M. EST) | |
| 18 | | |
| 19 | | |
| 20 | | |
| 21 | | |
| 22 | | |
| 23 | | |
| 24 | | |
| 25 | | |

Transcript of Neil J. Beaton
September 22, 2022                                      156

```
 1            ACKNOWLEDGEMENT OF DEPONENT

 2                 I, NEIL J. BEATON, CPA/ABV/CFF,

 3      CFA, ASA, do hereby acknowledge that I have read

 4      and examined the foregoing testimony, and the same

 5      is a true, correct and complete transcription of

 6      the testimony given by me and any corrections

 7      appear on the attached Errata sheet signed by me.

 8

 9

10      _____    _____

11           (DATE)                     (SIGNATURE)

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1              CERTIFICATE OF SHORTHAND REPORTER

 2                 ELECTRONIC NOTARY PUBLIC

 3         I, Kelly Carnegie, Certified Shorthand

 4    Reporter, Registered Professional Reporter, the

 5    officer before whom the foregoing proceedings were

 6    taken, do hereby certify that the foregoing

 7    transcript is a true and correct record of the

 8    proceedings; that said proceedings were taken by

 9    me stenographically and thereafter reduced to

10    typewriting under my direction; that reading and

11    signing was not requested; and that I am neither

12    counsel for, related to, nor employed by any of

13    the parties to this case and have no interest,

14    financial or otherwise, in its outcome.

15              IN WITNESS WHEREOF, I have hereunto

16    electronically set my hand and affixed my notarial

17    seal this 28th day of September, 2022.

18

19    My commission expires:
      July 31, 2026
20

21    Kelly Carnegie

22    _____

23    NOTARY PUBLIC IN AND FOR THE
      COMMONWEALTH OF VIRGINIA - PRINCE WILLIAM COUNTY
      Notary Registration Number: 7060756
24

25
```

**A**

**a&m**
17:5, 17:7,
17:12, 17:19,
19:11, 19:23
**a-d-v-a-r-r-a**
58:15
**a-l-p-h-a**
11:23
**a-s-w-a-t-h**
62:22
**ability**
8:13, 18:19,
84:14
**able**
11:7, 65:15,
78:8, 78:10,
80:18, 105:6,
121:24, 134:7,
135:20
**about**
7:12, 10:6,
10:16, 11:12,
12:3, 15:2,
15:6, 15:22,
18:22, 19:9,
21:11, 28:3,
31:3, 33:20,
48:23, 55:12,
55:14, 55:16,
59:18, 73:4,
73:17, 75:15,
76:5, 78:23,
79:3, 80:17,
82:10, 89:25,
91:5, 92:4,
97:6, 104:17,
105:1, 106:16,
108:18, 109:22,
111:13, 113:7,
113:9, 121:1,
121:25, 122:21,
123:14, 123:25,
125:12, 136:8,
140:11, 140:13,
144:4, 148:24,
148:25, 149:4,

149:5
**above**
147:1, 147:16
**absolutely**
137:4
**abv**
1:14, 2:2, 4:3,
6:1, 8:4, 156:2
**accepted**
23:19, 24:2,
35:9, 39:1,
69:2, 86:6,
139:24, 139:25,
140:8
**access**
15:12, 16:23,
18:1, 18:19,
19:16, 29:24,
96:15, 100:9
**accordance**
87:6
**according**
31:17, 31:19,
60:5, 61:8,
89:10, 98:12
**account**
8:8, 132:14,
138:1
**accountancy**
9:9
**accounting**
24:2, 63:25,
65:2, 65:7,
139:25, 140:8,
140:13, 140:14
**accredited**
8:9, 8:11
**accretive**
108:22, 108:25,
109:4
**accurate**
6:20, 7:11,
20:11, 38:12,
43:16, 44:6,
44:19, 113:1,
131:9, 131:10,
131:12
**achieve**
117:24

**achieved**
116:4, 116:13,
116:19, 131:14,
133:20, 133:21
**achievement**
41:12
**acknowledge**
156:3
**acknowledgement**
156:1
**acquire**
109:2, 119:21
**acquired**
63:19, 84:22,
86:23, 95:3,
104:16, 105:3,
105:8
**acquisition**
10:17, 17:10,
19:1, 19:2,
19:12, 89:2,
100:10, 104:11,
105:11, 107:9,
107:13
**acquisitions**
23:15, 84:23,
93:25, 104:13,
104:25, 106:11,
106:12, 106:17,
107:17, 107:19,
108:2, 108:9,
109:12
**acronyms**
28:11
**action**
1:5, 9:11
**actions**
61:16
**actively**
101:14
**activity**
129:8
**actual**
39:20, 39:23,
50:6, 51:22,
78:10, 78:11,
83:14, 83:18,
95:19, 96:7,

101:11, 118:4,
119:20, 119:23,
127:21, 129:15,
129:16, 132:24,
138:4, 139:8,
139:9, 144:8,
145:23, 148:16
**actually**
26:20, 31:25,
37:22, 37:23,
51:25, 52:17,
53:15, 53:16,
53:19, 59:12,
67:19, 98:14,
99:4, 103:12,
113:8, 120:9,
122:4, 124:10,
124:20, 128:1,
128:25, 136:5,
137:8, 152:2,
154:5
**add**
13:7, 13:24,
48:7, 63:9,
124:3, 137:18
**adding**
137:19
**addition**
47:3, 106:9
**additionally**
57:16, 58:16
**adequate**
77:18, 84:4
**adjective**
27:4
**adjudication**
54:18
**adjust**
151:18
**adjusted**
89:22, 123:17
**adopted**
114:9
**advarra**
58:14, 73:15,
73:17, 73:24,
76:11, 84:7,
84:22, 95:2,

95:5, 95:8,
95:16, 95:22,
123:12, 123:13,
149:7
**advice**
17:4
**advise**
19:11
**advisory**
17:20, 19:10,
19:17, 19:22
**affect**
151:20
**affected**
145:5, 145:7,
145:10
**affirmed**
6:2
**affixed**
157:16
**after**
7:6, 32:1,
52:15, 75:3,
77:13, 101:23,
155:14
**afternoon**
80:10, 80:12
**again**
11:22, 15:4,
24:25, 43:1,
46:14, 47:22,
50:11, 51:4,
51:6, 55:25,
56:14, 59:24,
60:10, 60:16,
61:23, 63:6,
64:5, 81:25,
82:8, 85:1,
103:19, 107:22,
117:18, 120:7,
123:7, 128:10,
145:18, 147:9,
148:2, 151:11,
154:13, 154:18
**ago**
9:2
**agree**
32:13, 86:9,

117:2, 122:3,
133:8, 139:2
**agreed**
39:21
**agreement**
34:7, 36:21,
37:2, 37:5,
37:7, 37:10,
38:4, 38:15,
39:7, 39:17,
39:21, 40:16,
41:2, 43:18,
44:4, 49:14,
49:15, 54:2,
54:21, 57:19,
59:7, 59:8,
59:10, 60:6,
61:8, 87:8,
88:3, 88:9,
89:11, 92:8,
92:13, 110:17,
111:15, 111:16,
111:19, 116:21,
129:7, 130:12,
130:22
**agreements**
102:13, 111:2
**ahead**
66:2, 66:16,
154:14
**air**
139:5
**alarm**
91:1
**align**
99:17
**all**
6:24, 7:9,
9:10, 12:17,
12:23, 15:11,
15:13, 19:19,
19:25, 20:21,
24:6, 28:6,
30:2, 30:6,
30:18, 31:20,
34:24, 35:16,
47:2, 47:18,
48:12, 49:18,

50:9, 53:10,
55:5, 55:18,
57:1, 62:4,
68:1, 68:15,
77:15, 80:10,
81:10, 81:14,
82:6, 82:19,
83:11, 84:5,
84:11, 84:25,
86:21, 86:22,
87:11, 87:13,
87:14, 87:16,
89:2, 91:17,
91:21, 94:6,
94:10, 94:11,
97:2, 98:5,
99:4, 104:7,
106:12, 107:25,
108:16, 111:25,
112:14, 113:5,
113:8, 115:12,
118:11, 119:18,
119:25, 120:9,
120:23, 120:24,
121:8, 121:13,
121:17, 122:17,
124:13, 126:25,
128:12, 138:8,
139:7, 139:9,
144:15, 144:18,
144:21, 146:17,
149:2, 149:15,
150:5, 150:15,
152:19, 154:5,
154:8, 154:16,
155:5, 155:6
**allegations**
10:18
**alleged**
31:8
**alleging**
123:11
**allow**
148:14
**allowed**
11:16, 78:14
**allowing**
85:9

**almost**
32:13, 32:14
**alpha**
11:22
**alphaprotech**
11:10, 11:20
**already**
7:9, 12:11,
22:9, 24:8,
24:17, 34:9,
47:9, 68:25,
90:1, 93:3,
113:7, 115:11,
132:7, 140:12,
146:9
**also**
3:22, 13:10,
14:8, 19:10,
45:8, 45:16,
50:5, 67:10,
69:25, 73:3,
76:17, 77:25,
78:22, 85:4,
86:11, 96:18,
97:5, 101:23,
102:13, 117:2,
123:23, 124:3,
128:12, 132:5,
149:20
**although**
113:11, 122:5,
138:3
**alvarez**
7:15, 15:12,
15:17, 16:13,
16:19, 17:4,
18:9
**ambiguity**
42:6
**amended**
4:12, 30:17,
31:2, 35:11,
37:1, 46:12,
52:8, 52:25
**among**
46:17
**amortization**
70:4

Transcript of Neil J. Beaton
September 22, 2022

160

| | | | |
|---|---|---|---|
| **amount** | 17:15, 21:25, | 71:14, 148:23, | 34:12, 65:18, |
| 51:5, 74:19, | 23:10, 25:1, | 151:18 | 65:19, 66:25, |
| 74:23, 93:23 | 44:14, 58:9, | **anyway** | 67:24, 68:14, |
| **analyses** | 88:6, 121:25, | 130:15 | 73:5, 73:7, |
| 73:1, 85:20, | 142:10, 143:12, | **anywhere** | 75:9, 75:24, |
| 115:16, 127:5, | 143:13, 143:14 | 11:3 | 76:5, 76:9, |
| 146:16 | **answered** | **apologize** | 76:10, 76:14, |
| **analysis** | 34:9, 61:22, | 71:21, 154:5 | 76:22, 76:24, |
| 10:12, 11:14, | 81:8, 105:19 | **apostrophe** | 77:4, 77:16, |
| 22:16, 27:2, | **answering** | 91:15 | 78:1, 94:13, |
| 28:4, 38:20, | 6:21, 22:5 | **apparently** | 124:25, 141:10, |
| 64:19, 69:1, | **answers** | 11:15, 84:13, | 154:9 |
| 75:10, 75:16, | 7:11, 77:20 | 130:13, 134:1 | **appropriately** |
| 81:15, 81:25, | **anthony** | **appear** | 77:9 |
| 82:5, 84:3, | 63:18 | 156:7 | **appropriateness** |
| 85:17, 86:4, | **anticipating** | **appears** | 25:5 |
| 86:7, 92:11, | 124:4 | 31:10, 58:22 | **approved** |
| 95:7, 108:22, | **any** | **apples** | 29:25 |
| 114:13, 114:15, | 8:23, 9:15, | 88:24 | **approximately** |
| 114:19, 122:13, | 13:12, 13:17, | **application** | 7:19, 45:4, |
| 122:14, 122:16, | 14:13, 14:16, | 27:2, 87:17 | 111:24, 134:9 |
| 122:20, 122:24, | 15:2, 15:5, | **applied** | **areas** |
| 125:22, 127:9, | 16:13, 16:15, | 35:7, 71:2, | 11:8, 110:25 |
| 134:23, 149:1, | 16:18, 18:19, | 79:6, 88:11, | **arguably** |
| 150:18, 150:22 | 19:16, 19:21, | 97:24, 111:6 | 35:3, 39:18 |
| **analyst** | 19:22, 21:20, | **applies** | **argue** |
| 8:10, 33:2 | 23:6, 29:13, | 23:25 | 113:22 |
| **analyze** | 29:14, 36:3, | **apply** | **argumentative** |
| 68:21, 81:5 | 36:4, 38:7, | 23:20, 23:21, | 38:17, 67:11, |
| **analyzed** | 38:8, 43:8, | 35:6, 38:25, | 76:3, 142:9 |
| 151:17 | 51:2, 56:12, | 45:12, 60:13, | **arguments** |
| **animal** | 56:15, 58:9, | 62:10, 69:14, | 116:22 |
| 123:13 | 60:17, 60:22, | 71:23, 77:17, | **around** |
| **animals** | 61:9, 62:2, | 110:5, 111:9, | 78:5, 120:1, |
| 122:3, 128:8 | 70:5, 70:8, | 132:1, 134:16 | 145:2, 146:4, |
| **annual** | 72:22, 77:5, | **applying** | 151:8 |
| 64:2, 106:15, | 85:12, 85:23, | 38:24, 72:6 | **arrangements** |
| 107:25, 115:8, | 87:2, 100:2, | **appraisal** | 39:8 |
| 133:1 | 112:3, 114:13, | 15:3, 15:6 | **arrive** |
| **another** | 114:23, 119:17, | **appraiser** | 79:1, 143:15 |
| 7:22, 43:6, | 129:1, 129:2, | 8:11 | **article** |
| 43:7, 52:22, | 142:3, 149:5, | **appreciate** | 36:8, 36:9 |
| 63:21, 79:15, | 156:6, 157:12 | 126:7 | **articles** |
| 83:15, 84:21, | **anybody** | **approach** | 104:4 |
| 119:7, 124:7, | 39:12 | 27:13, 121:6, | **asa** |
| 129:22, 129:23, | **anyone** | 121:7, 127:7, | 1:14, 2:2, 4:3, |
| 129:24 | 78:14 | 141:4 | 6:1, 8:5, 23:23, |
| **answer** | **anything** | **appropriate** | 156:3 |
| 6:20, 15:10, | 6:17, 59:21, | 22:20, 33:4, | |

ascertain
104:15, 105:2
ascribed
14:9
asked
13:3, 13:15,
19:19, 20:17,
25:25, 56:6,
59:21, 59:22,
61:21, 61:24,
62:1, 68:25,
71:20, 72:21,
74:5, 76:4,
76:10, 81:7,
86:3, 92:4,
117:16
asking
22:6, 24:23,
44:16
aspirational
118:13, 127:5,
127:10, 127:21
aspirationalism
128:11
assess
117:5
assessed
69:1, 97:8
assessment
87:10, 102:4,
107:11
assessments
107:25
asset
109:7
assistant
63:21
assisting
133:15
assume
65:2, 90:19,
116:3
assumed
9:6
assumption
22:17, 49:25,
54:12, 60:23
assumptions
13:18, 22:13,

22:15
aswath
62:22
attached
4:9, 20:4,
30:18, 30:23,
57:4, 112:20,
155:15, 156:7
attempt
14:12, 14:13
attention
40:2, 53:11,
57:11, 80:15
attorney
57:10, 59:4
attorney-client
22:1
attorneys
12:4, 21:22
auction
105:22, 105:24,
106:5, 108:17,
108:23
audit
64:9, 64:23
audited
64:25
audits
64:2, 64:4,
64:6, 64:8,
64:13, 64:15,
64:18, 64:24
august
4:11, 20:10,
30:4, 43:20,
49:23, 50:18,
50:22, 50:23,
52:19, 54:21,
61:10, 94:12,
116:18
available
94:5, 96:5,
101:12, 101:15
average
31:16, 31:18,
32:1, 32:4,
32:8, 32:11,
48:18, 67:6,

111:25, 112:1,
139:16, 139:17,
139:19, 153:12,
153:15, 153:17,
153:18, 154:17
aware
16:21, 57:16,
128:20, 128:24
away
146:18

**B**

b
41:5
b) (4) (c) (i
22:7
back
29:10, 34:21,
37:16, 40:12,
48:7, 49:8,
51:10, 56:22,
59:24, 65:25,
66:13, 67:21,
80:7, 80:13,
102:3, 107:16,
107:24, 109:21,
124:5, 126:22,
138:11, 142:14,
149:22
back-and-forth
58:24
backed
15:20
background
55:6, 55:13,
55:17
backing
143:19, 150:20
backwards
138:18, 145:3,
145:4
bad
10:17
balance
69:24
ball
136:11
bank
14:14, 87:3,

117:21, 118:3,
118:9
banking
93:17, 127:5,
127:9, 134:1
banks
14:17, 28:2,
34:22, 63:8,
69:4, 86:7,
86:17, 91:10,
94:20, 96:13,
117:3, 117:16,
120:10, 128:6
base
49:24, 57:17
based
19:10, 27:6,
29:22, 38:11,
42:24, 45:13,
46:20, 53:24,
60:24, 61:7,
68:8, 72:22,
85:14, 91:25,
92:11, 92:19,
93:15, 101:13,
103:11, 104:1,
108:16, 108:21,
110:5, 112:8,
116:9, 116:22,
117:18, 118:7,
127:6, 130:20,
130:24, 132:10,
132:22, 133:4,
134:6, 136:21,
138:8, 139:10,
140:3, 142:18,
142:21, 146:17,
146:25, 150:11,
151:23, 154:1,
154:11
basic
72:2, 78:4
basically
7:22, 43:18,
66:7, 90:8,
91:17, 107:7
basis
21:24, 31:9,

35:7, 54:23,
55:3, 55:21,
56:3, 57:21,
63:11, 87:6,
87:11, 88:22,
88:23, 110:3,
110:12, 116:24,
125:14, 125:18,
127:8, 127:18,
134:22, 149:10,
149:15, 150:10
**bates**
50:9, 51:16,
57:11, 122:10
**bear**
71:21
**beato**
3:14, 5:19
**beaton**
1:14, 2:1, 4:3,
4:10, 5:3, 6:1,
6:7, 19:25,
20:3, 30:22,
49:18, 57:3,
80:10, 112:19,
126:25, 135:24,
155:11, 155:13,
156:2
**beaton's**
55:11, 112:17
**beauty**
62:17
**because**
6:23, 14:19,
17:17, 19:20,
26:2, 27:5,
29:2, 32:1,
33:20, 36:8,
38:21, 39:17,
43:17, 43:25,
47:11, 47:19,
47:22, 48:1,
49:14, 54:5,
54:22, 56:8,
58:4, 59:20,
60:4, 61:5,
61:9, 64:19,
65:3, 68:4,

68:13, 70:7,
72:16, 72:24,
75:20, 76:23,
77:15, 78:2,
78:3, 81:13,
81:21, 83:8,
88:11, 89:4,
92:22, 93:23,
96:21, 98:18,
99:2, 103:8,
103:13, 103:19,
103:22, 105:9,
109:7, 110:13,
116:8, 119:10,
127:17, 131:3,
131:14, 131:20,
134:19, 137:1,
137:8, 137:17,
137:22, 138:22,
142:12, 142:13,
146:17, 146:23,
147:15, 149:17,
151:1, 151:24,
152:22, 153:23
**been**
6:12, 6:13,
7:17, 8:22,
9:12, 10:4,
16:23, 24:8,
50:15, 52:22,
56:9, 56:23,
57:17, 58:22,
62:1, 79:6,
82:13, 115:9,
116:8, 123:11,
126:10, 130:16,
131:21
**before**
2:20, 6:12,
6:14, 7:20,
41:5, 42:17,
43:8, 49:10,
70:2, 70:3,
72:21, 74:5,
88:2, 88:19,
118:3, 125:13,
153:3, 153:5,
157:5

**beginning**
40:14
**begins**
5:2
**behalf**
3:2, 3:12,
5:16, 5:19, 6:9,
16:19, 19:11
**beholder**
62:18
**being**
6:2, 9:24,
12:3, 12:7,
14:9, 45:17,
50:19, 54:6,
67:7, 73:4,
89:3, 92:15,
93:24, 94:15,
129:23, 139:3,
144:21, 151:14
**belief**
22:18
**believe**
11:3, 12:5,
12:13, 20:11,
20:19, 23:8,
28:6, 28:10,
28:12, 37:9,
48:9, 50:4,
50:17, 51:18,
51:23, 52:16,
53:16, 56:7,
56:19, 56:22,
63:20, 63:22,
67:2, 68:6,
75:4, 79:5,
83:15, 84:11,
98:3, 98:16,
115:7, 115:11,
117:22, 120:14,
143:2, 143:17,
154:9
**believed**
56:19
**believes**
33:3, 57:25,
143:2
**bells**
91:1

**below**
73:18, 94:11,
120:9, 152:12,
152:22, 153:11
**benefit**
39:25, 86:16
**besides**
9:16, 125:19
**best**
47:6, 87:9,
87:19
**better**
15:10, 121:24,
122:1, 122:5,
134:10
**between**
32:9, 56:15,
56:22, 56:24,
87:23, 89:23,
99:15, 121:13,
130:12, 133:6,
143:1, 152:24
**bid**
105:6
**bidding**
105:23, 106:1,
106:2, 106:5
**big**
29:6, 65:6
**bigger**
84:16, 119:16
**billed**
12:13
**billion**
93:23, 100:15
**bio**
49:1
**biotec**
18:23, 19:2,
19:3, 19:12
**bit**
40:13, 98:15,
103:5, 105:20,
108:3, 118:11,
125:21
**black**
78:13
**blend**
32:21

Transcript of Neil J. Beaton
September 22, 2022

163

**board**
8:23, 9:9,
29:25, 30:2,
30:3, 49:21,
50:16, 51:7,
51:11, 55:2,
56:2, 56:8,
58:1, 59:4,
59:7, 59:8,
59:9, 59:17,
59:24, 60:3,
61:1, 61:5,
61:17, 149:3
**boards**
29:7
**body**
6:23
**book**
62:16, 69:22,
122:10, 122:24,
123:15
**books**
93:17, 93:20,
93:21, 110:24,
114:16, 114:24,
117:4, 117:15,
118:14, 120:24,
121:4, 121:23,
121:25, 124:13,
127:11, 127:20,
132:23
**boom**
144:22, 146:2,
152:25, 154:19
**borrow**
78:17
**both**
12:21, 29:23,
54:5, 63:7,
77:25, 78:1,
87:7, 91:10,
96:19, 97:21,
107:22, 121:6,
125:20, 128:7
**bottom**
24:10, 34:25,
57:14, 98:2,
152:19, 153:13

**bought**
84:18, 100:19,
104:18
**boulevard**
2:10, 3:5, 5:11
**box**
78:13, 123:4,
145:11, 146:2,
146:12, 146:13,
146:14, 155:3
**break**
7:1, 7:5, 49:1,
79:16, 79:23,
79:25, 126:12,
126:13, 126:16
**brendon**
19:9
**brianna**
51:18, 52:4
**brief**
49:6, 126:20
**briefly**
30:6
**bring**
118:25
**broad**
81:20
**brought**
136:10
**bullet**
106:22, 106:23,
107:4, 107:5
**bunch**
46:17, 127:23
**business**
8:9, 15:14,
18:5, 23:14,
23:19, 25:8,
45:15, 62:20,
86:18, 86:20,
87:1, 90:16,
103:9, 111:10
**buy**
51:10, 84:23,
105:5, 105:6,
119:8
**buyback**
50:13, 56:7,

56:9, 60:5, 61:5
**buybacks**
50:19
**buyer**
133:6
**buyers**
86:21, 121:20
**buying**
84:20, 85:7,
109:7
**buyout**
60:2, 63:18,
69:23

| C |
| --- |

**c**
43:2
**c-a-p**
103:7
**cable**
70:9
**calc**
47:15
**calculate**
61:6, 116:1
**calculated**
32:12, 146:8
**calculating**
61:17
**calculation**
14:24, 48:13,
48:15, 48:20,
118:20, 151:20
**calculations**
114:7
**call**
17:4, 34:2,
73:23, 105:5,
130:2
**called**
15:24, 91:14
**calls**
42:25, 44:10,
58:2, 88:5,
92:10, 110:20,
133:22, 150:2
**came**
30:1, 63:23,

67:5, 67:19,
67:25, 68:9,
77:20, 90:20,
103:16, 103:22,
115:18, 115:20,
137:10, 150:10
**can't**
27:8, 83:21,
90:24, 96:14,
98:17, 119:14,
120:20, 123:2,
127:17, 131:21,
136:1, 138:11,
138:13, 139:10,
142:19, 143:20,
144:8, 145:16,
146:18, 146:19,
146:21, 148:12,
151:3, 151:4,
153:17
**cannot**
138:14, 145:15,
145:16, 150:25
**cantor**
10:10
**cap**
103:6
**capital**
4:15, 31:7,
43:6, 44:18,
44:24, 45:20,
47:20, 48:2,
48:11, 69:21,
85:4, 90:7,
91:14, 95:1,
99:25, 100:19,
103:7, 140:3,
141:13, 141:20,
151:4, 154:11
**capital's**
100:10
**care**
84:24, 106:1
**caribbean**
62:17
**carnegie**
1:25, 2:20,
5:22, 157:3

**case**
5:6, 6:10,
8:17, 8:20,
10:8, 10:9,
10:16, 11:12,
11:19, 11:24,
12:3, 12:8,
12:22, 20:10,
21:12, 21:21,
29:9, 45:2,
73:7, 93:13,
157:13
**cases**
10:6, 11:9
**cash**
70:4, 89:22,
97:14, 110:9,
110:11, 110:14,
121:19
**cast**
63:10
**cause**
51:10
**causing**
136:18
**caveats**
127:15
**cell**
139:2, 139:3
**centerview**
93:22, 117:22
**certain**
101:9
**certainly**
8:8, 9:5,
13:15, 53:3,
53:7, 71:25,
93:8, 122:1,
123:10
**certificate**
157:1
**certifications**
8:1
**certified**
2:21, 8:8, 8:9,
157:3
**certify**
157:6

**cfa**
1:14, 2:2, 4:3,
6:1, 8:5, 156:3
**cff**
1:14, 2:2, 4:3,
6:1, 8:4, 156:2
**cfo**
63:24
**challenge**
143:20
**change**
29:21, 56:21,
68:12, 129:5,
137:1, 137:2,
138:19, 138:21,
139:23, 143:25,
144:2, 144:3,
144:8, 144:9,
144:22, 144:23,
151:17
**changed**
64:1, 146:11
**changes**
136:21, 138:25
**changing**
145:7, 146:7,
151:24
**characteristics**
23:3, 23:7,
25:12, 25:15,
25:22, 25:23,
25:24, 72:6,
72:9, 73:12,
74:9, 82:7,
101:9, 102:2
**characterization**
127:9
**chart**
75:3, 98:13,
134:16, 134:23,
135:6, 146:6,
151:16
**chartered**
8:10
**charts**
75:4
**chenu**
17:18

**chief**
104:14
**choose**
34:3, 71:11,
141:19, 142:1
**choosing**
137:7
**chose**
69:3, 75:11,
121:11, 137:5
**christensen**
3:13, 5:18,
16:6, 16:9,
17:21, 18:10,
19:4, 19:13,
20:7, 21:23,
22:23, 23:9,
26:23, 28:12,
28:17, 30:19,
34:4, 34:13,
35:20, 36:24,
37:4, 37:9,
37:13, 37:18,
37:21, 37:24,
38:16, 40:7,
41:14, 41:19,
41:24, 42:2,
42:23, 44:9,
45:23, 46:22,
49:10, 52:3,
54:3, 55:4,
55:8, 55:10,
58:2, 61:21,
65:9, 65:12,
66:4, 66:8,
66:11, 66:14,
67:8, 74:12,
76:2, 76:17,
79:11, 79:13,
79:17, 79:19,
79:22, 81:7,
83:2, 88:4,
92:9, 95:11,
99:14, 99:19,
102:9, 110:20,
112:23, 117:6,
118:22, 118:24,
120:11, 120:16,

120:18, 121:21,
124:15, 126:9,
126:14, 131:17,
133:11, 133:22,
134:24, 135:24,
140:5, 142:8,
150:2, 155:7
**chronologically**
53:8
**circles**
151:8
**circumstances**
9:8
**cite**
36:11, 40:24,
56:10, 56:25,
78:9, 78:10,
91:22, 93:7
**cited**
21:4, 50:3,
126:2
**civil**
1:5, 22:7
**claim**
11:5, 31:9
**claimed**
58:25
**claiming**
57:23
**claims**
9:10, 61:25
**clarification**
6:18
**clarify**
6:19, 36:25,
50:21, 132:4
**classification**
63:4, 97:9
**clause**
43:13
**clear**
44:2, 75:23,
105:21, 109:19,
120:12, 124:1,
147:8, 150:24,
152:4
**clearly**
47:3, 104:2

Transcript of Neil J. Beaton
September 22, 2022

165

click
144:9, 151:12,
152:5, 153:5,
153:6, 154:13
client
11:18, 11:24,
12:2, 12:4,
13:17, 15:24,
16:1, 84:21,
85:4
clients
15:14, 16:4,
57:16, 84:19,
84:21
close
98:4, 112:1
closer
136:2
cloth
78:13
code
63:4, 110:25
codification
140:14, 140:16
cold
62:16
colon
42:4
column
137:19, 137:20,
138:4, 144:6,
145:5, 145:6,
145:7, 145:8,
145:10, 146:7,
151:21, 152:15,
152:17, 153:13,
154:25, 155:3
columns
137:9, 138:5,
138:6, 138:7,
142:17, 145:24,
154:2, 155:2
combination
70:5
come
7:2, 29:5,
48:21, 70:20,
77:19, 104:3,

138:13, 143:21,
145:16, 146:16,
151:12
comes
90:16, 91:6,
152:5
comfort
77:25
coming
79:13
commission
157:19
common
32:17, 47:25
commonwealth
2:23, 157:25
communication
51:5
communications
17:25, 22:2
comp
59:18, 138:12,
147:23, 148:8,
152:11
companies
15:20, 16:15,
22:19, 26:1,
27:11, 27:18,
28:4, 33:9,
33:22, 34:3,
34:11, 48:16,
60:11, 62:10,
65:17, 68:7,
68:14, 68:23,
70:7, 71:10,
71:12, 72:5,
72:8, 72:22,
74:6, 74:10,
74:13, 74:16,
74:17, 74:19,
75:11, 75:25,
76:12, 76:13,
77:12, 78:10,
78:12, 80:19,
80:23, 80:25,
81:2, 81:11,
81:14, 81:19,
83:1, 83:11,

83:14, 83:18,
84:6, 84:20,
85:2, 85:6,
85:14, 85:24,
86:22, 86:23,
88:22, 89:4,
89:5, 89:19,
94:14, 95:19,
96:22, 104:6,
104:16, 105:3,
105:8, 105:23,
108:1, 112:5,
120:4, 125:9,
134:7, 134:11,
139:8, 140:1,
140:19, 141:6,
142:25, 143:22,
147:24, 148:9,
150:5, 150:14
company
8:14, 17:9,
18:4, 27:12,
28:5, 29:10,
29:11, 29:13,
29:15, 32:21,
33:16, 33:24,
45:1, 45:2,
62:12, 62:14,
63:15, 66:24,
68:15, 70:9,
70:12, 71:13,
73:21, 81:10,
84:7, 91:9,
92:24, 93:3,
93:9, 94:15,
95:3, 95:4,
100:3, 103:1,
103:4, 105:12,
107:7, 111:7,
118:2, 119:7,
119:8, 119:11,
119:21, 119:23,
120:9, 125:19,
129:25, 132:3,
132:6, 133:4,
133:5, 134:20,
141:22, 145:1,
147:10, 149:9

company's
89:17
comparability
25:25, 62:18,
69:2
comparable
22:19, 62:10,
62:14, 63:15,
65:16, 68:24,
74:10, 80:19,
81:1, 82:25,
85:15, 85:18,
89:19, 89:24,
140:1, 141:6
comparables
23:8, 29:12,
31:16, 32:5,
32:12, 32:14,
84:4, 112:2,
121:11, 137:21,
138:6, 138:7,
142:3, 143:3,
145:9, 147:7,
147:14, 147:18,
148:22, 151:19
comparators
134:8, 134:20
compared
77:24, 89:5,
120:7, 133:2,
147:22
comparisons
33:5
compensated
12:7
compensation
57:17, 59:19,
59:21, 60:14,
60:17, 61:25
competencies
8:15
competitive
105:4, 105:22,
108:17
complained
149:4
complaining
133:14

Transcript of Neil J. Beaton
September 22, 2022

166

complaint
4:12, 30:17,
31:2, 31:8,
35:11, 37:1,
46:12, 52:8,
53:1, 59:11
complete
11:2, 114:22,
117:3, 156:5
completed
21:17, 63:12,
64:12, 64:14,
65:23, 87:11
completely
17:23, 17:24,
18:12, 18:14,
58:20, 72:10,
72:12, 72:16,
72:18, 72:19,
128:8, 128:9
compliance
104:14
comply
141:21
component
58:17, 59:19,
84:11
components
11:5
comport
110:22, 150:17
composed
93:19, 93:20
comps
31:18, 33:13,
33:18, 48:19,
86:5, 114:7,
144:13, 144:14,
147:20, 148:10,
152:9
computer
149:12, 149:13
concept
92:7, 92:19,
92:22, 92:23,
92:25
concepts
92:2

concluded
113:12, 142:20,
145:2
conclusion
24:16, 42:25,
44:10, 88:5,
92:10, 110:21,
125:23, 142:17,
155:15
conclusions
13:13, 23:5,
24:12, 102:5,
102:15
condition
114:14
conditions
89:25
conducted
67:22
confidential
15:12, 16:5
conform
102:2
confused
99:15
confusion
21:8, 37:14,
37:15, 104:23
connect
153:7
connected
42:18, 152:2,
152:14, 152:15,
152:18, 152:21,
155:2
connection
41:13, 42:10,
42:15, 42:21,
54:8, 116:4,
116:14
consensus
101:14
consider
21:11
considered
12:18, 21:3,
21:21, 68:4,
76:23, 137:3

considering
78:15
consisted
64:18
consistent
94:23, 149:10,
149:14
consistently
76:25, 150:12
constitute
61:20
constitutes
62:13
consultants
10:10
consulting
74:1
consummated
50:18
consummation
40:4, 40:23,
42:3, 42:11,
42:14, 42:22,
43:3, 54:7
contact
12:3, 19:7
contacted
12:5
contain
12:17, 12:23,
12:25, 81:14,
81:19, 82:7
contained
13:4, 13:8,
13:21, 13:25,
14:3, 14:25,
19:16, 21:7,
77:18, 81:12,
81:13, 91:18,
92:12, 102:15
containing
115:16
contemporaneous
148:6, 148:11,
149:8
contention
61:3
contest
55:1, 56:2,

60:21, 60:25
contested
61:1
context
58:8
contingency
128:23, 132:17,
132:18
contingent
129:7, 130:4
continually
40:20
continue
78:3
continued
107:7
continuously
40:11, 40:21
contract
39:25, 73:23
contractual
39:8, 43:18
contractually
39:6
contrary
125:1
control
39:15, 78:24,
88:10, 110:8,
110:10, 110:14,
111:5, 146:6
controlled
88:23
controlling
110:3, 110:11
conversations
14:8
cooperated
117:14
copy
20:1, 20:11,
30:17, 49:14
core
8:15
corner
1:15, 2:12, 3:7
correct
11:11, 14:6,

Transcript of Neil J. Beaton
September 22, 2022

167

14:11, 25:10,
25:13, 26:16,
26:17, 26:22,
26:25, 27:3,
27:7, 27:8,
28:24, 30:10,
31:10, 31:11,
31:14, 31:19,
33:17, 35:16,
36:6, 36:21,
39:23, 41:16,
42:22, 44:18,
45:17, 58:18,
59:17, 60:8,
64:16, 72:11,
73:17, 74:7,
76:1, 77:12,
78:7, 78:21,
79:9, 81:11,
85:25, 86:1,
90:22, 93:4,
98:1, 106:25,
112:13, 115:18,
115:20, 118:16,
120:16, 122:24,
122:25, 123:12,
123:18, 123:20,
128:23, 135:19,
139:20, 140:4,
140:25, 141:10,
144:1, 146:8,
154:3, 155:3,
155:4, 156:5,
157:7
**corrections**
156:6
**correspondence**
51:15, 58:23
**could**
15:7, 30:6,
41:1, 46:3,
46:7, 53:20,
62:15, 62:16,
65:25, 66:7,
66:17, 76:5,
81:18, 82:10,
100:8, 103:6,
103:15, 104:5,

107:23, 112:16,
117:5, 117:11,
120:10, 130:15,
130:16, 131:1,
133:19, 133:24,
134:1, 142:7,
143:8, 143:19,
146:15, 147:13,
148:23, 151:5
**couldn't**
58:8, 147:13,
147:18, 148:21,
149:21
**counsel**
5:13, 6:5,
13:15, 16:6,
20:19, 22:2,
37:24, 46:22,
49:11, 52:4,
55:5, 57:8,
57:9, 65:10,
66:14, 66:15,
79:11, 99:14,
121:22, 122:3,
157:12
**county**
157:25
**course**
84:7, 84:22
**court**
1:1, 5:5, 5:21,
7:3, 7:6, 10:4
**cover**
107:25
**covering**
114:16, 114:18
**cpa**
1:14, 2:2, 4:3,
6:1, 8:3, 8:4,
10:11, 156:2
**cramping**
126:16
**create**
22:21, 109:9,
150:25, 151:6,
151:9
**created**
97:23, 97:25,

128:7, 148:16
**creating**
22:14, 117:14
**creation**
107:8
**credence**
128:10
**credit**
95:10
**criteria**
72:22, 72:24,
108:21, 108:25,
116:25
**cro**
73:23
**crunch**
16:1
**csr**
1:25
**current**
9:22
**currently**
7:13, 16:22
**cursor**
144:12
**customary**
27:15
**cv--mak**
1:6, 5:6

**D**

**d-a-m-o-d-a-r-e-n**
62:23
**damage**
10:11, 11:14
**damages**
10:21
**damodaren**
62:22
**data**
12:17, 13:18,
13:21, 15:13,
15:24, 16:3,
16:5, 16:24,
18:19, 19:16,
21:11, 21:20,
33:10, 56:6,
78:19, 89:20,

90:3, 90:4,
90:8, 90:13,
90:19, 90:20,
90:21, 90:23,
90:24, 91:5,
91:11, 91:12,
91:16, 93:18,
93:19, 94:16,
96:10, 96:19,
96:24, 97:3,
101:10, 103:5,
103:20, 118:12,
127:22, 128:4,
134:6, 134:12,
134:21, 135:1,
135:5, 135:8,
135:20, 136:17,
144:7, 144:22,
146:17, 146:18,
146:25, 147:5,
147:11, 147:23,
151:1, 151:15,
151:19
**date**
5:7, 10:12,
10:14, 30:4,
32:2, 32:5,
50:1, 50:2,
51:3, 51:14,
51:23, 52:19,
53:3, 57:21,
57:24, 61:10,
94:1, 94:7,
94:9, 94:10,
135:15, 156:11
**dated**
20:9, 57:15,
57:18, 81:25,
82:1, 82:2,
82:22, 94:25
**dates**
32:6, 115:23
**davis**
56:23, 63:18,
109:14
**day**
91:13, 157:17
**dcf**
93:22, 96:21

Transcript of Neil J. Beaton
September 22, 2022

168

| | | | |
|---|---|---|---|
| **dcfs** | **delaware** | 78:11, 78:23, | **devicia** |
| 28:11, 121:18 | 1:2, 5:6 | 82:13, 89:16, | 17:8 |
| **de-emphasized** | **delineates** | 90:23, 94:16, | **dhillon** |
| 68:7 | 93:6 | 99:1, 125:11, | 18:6 |
| **deal** | **deloitte** | 144:4 | **diamante** |
| 64:20, 132:17, | 64:21 | **describe** | 3:22, 5:9 |
| 137:14 | **demand** | 29:10, 83:7, | **dictate** |
| **debt** | 4:13, 57:7 | 85:12 | 118:2, 140:18 |
| 47:19, 47:21, | **demonstratives** | **described** | **dictates** |
| 47:22, 69:22, | 13:3, 13:5, | 22:25, 82:22, | 140:19 |
| 69:23 | 13:10, 13:11 | 82:24, 83:8, | **difference** |
| **december** | **dep** | 88:19, 102:3, | 87:21, 87:23, |
| 10:7, 30:1 | 145:19 | 150:22 | 88:21, 97:13, |
| **decide** | **dependent** | **designations** | 121:10 |
| 85:17 | 54:12, 54:14, | 8:4 | **differences** |
| **decided** | 54:17, 55:19 | **desired** | 89:23, 121:13, |
| 54:19 | **depending** | 149:24 | 121:15, 122:5 |
| **decidedly** | 30:4, 94:17, | **detailed** | **different** |
| 89:7 | 109:10 | 126:7 | 8:2, 17:24, |
| **decision** | **depends** | **details** | 18:12, 18:14, |
| 26:7, 26:11, | 63:10 | 15:2, 15:6, | 28:23, 28:25, |
| 144:24 | **deponent** | 82:11 | 42:11, 47:12, |
| **decks** | 156:1 | **determination** | 60:12, 63:9, |
| 14:17 | **depos** | 36:3, 38:7, | 68:1, 72:25, |
| **decline** | 5:10, 5:22 | 43:14, 110:19, | 86:10, 93:19, |
| 24:1 | **deposed** | 123:25 | 110:24, 121:17, |
| **deem** | 6:12 | **determine** | 121:18, 122:2, |
| 76:14 | **deposition** | 34:11, 68:23, | 123:13, 123:25, |
| **defendant** | 1:13, 2:1, | 82:25, 97:8, | 128:8, 128:9, |
| 1:8, 3:12, | 4:10, 5:3, 5:10, | 103:16, 114:1, | 143:15, 143:17, |
| 5:20, 10:19, | 20:3, 20:5, | 114:22, 135:13, | 146:12, 146:13, |
| 49:11, 86:11 | 21:7, 30:22, | 136:25, 138:18, | 146:15, 149:18 |
| **define** | 30:24, 36:16, | 140:2, 141:12, | **differential** |
| 62:15, 96:5 | 39:14, 46:13, | 150:16 | 129:18 |
| **defined** | 49:12, 52:7, | **determined** | **difficult** |
| 88:2 | 53:9, 57:3, | 22:21, 84:4, | 122:6 |
| **definitely** | 57:5, 68:13, | 87:8, 92:1, | **direct** |
| 72:15 | 112:19, 112:21, | 97:25, 112:12, | 55:15, 80:15 |
| **definition** | 124:15, 129:11, | 119:15, 142:20 | **direction** |
| 35:24, 36:2, | 147:10, 150:19, | **determines** | 157:10 |
| 36:19, 38:5, | 155:11, 155:13, | 70:17, 70:18, | **directly** |
| 38:13, 38:18, | 155:15, 155:16 | 70:19, 118:15 | 38:13, 112:8, |
| 53:25, 54:1, | **depreciation** | **determining** | 144:14, 147:6 |
| 88:9, 92:12, | 70:3 | 44:7, 63:15, | **director** |
| 109:21, 110:16, | **derive** | 71:9, 72:4, | 17:19, 18:6 |
| 110:23 | 62:9, 99:12, | 101:16, 123:23, | **directors** |
| **definitions** | 100:8, 134:7 | 140:24 | 51:7 |
| 35:15 | **derived** | **development** | **dirty** |
| | 67:4, 72:7, | 23:15, 25:8 | 136:9 |

Transcript of Neil J. Beaton
September 22, 2022

169

| | | | |
|---|---|---|---|
| **disagree** | **discussions** | 129:1, 129:2 | 57:22, 58:25, |
| 72:13, 86:12, | 50:16, 85:18 | **documents** | 60:2, 60:25, |
| 145:21 | **displayed** | 13:20, 14:3, | 61:14, 79:3, |
| **disciplined** | 118:19 | 20:21, 20:24, | 79:5, 79:6, |
| 9:12 | **displays** | 21:2, 29:5, | 86:25, 101:17, |
| **disclaimers** | 119:9 | 50:7, 50:12, | 111:21, 113:16, |
| 127:15 | **distinct** | 60:24, 63:8, | 116:19, 123:10, |
| **disclosure** | 18:14 | 67:20, 81:12, | 133:8, 133:24, |
| 102:4, 102:7, | **distinguishes** | 81:13, 81:19, | 138:24, 149:2 |
| 102:12 | 99:20 | 82:7, 82:12, | **donnelly's** |
| **discount** | **distributed** | 83:9, 114:12, | 18:3, 24:13, |
| 35:5, 36:5, | 101:12 | 114:25, 115:13, | 36:20, 38:14, |
| 38:9, 39:15, | **district** | 118:13, 127:12, | 43:14, 46:10, |
| 79:1, 95:16, | 1:1, 1:2, 5:5, | 127:18 | 49:25, 53:21, |
| 95:17, 110:12 | 5:6, 10:8 | **dog** | 53:23, 54:1, |
| **discounted** | **divide** | 52:11, 52:12, | 59:9, 63:13, |
| 95:10, 95:20, | 48:10, 100:25, | 52:13 | 88:3, 88:16, |
| 97:14, 121:19 | 137:21, 143:11 | **doing** | 92:8, 98:25, |
| **discounting** | **division** | 15:22, 39:12, | 109:22, 110:17, |
| 111:14 | 17:12 | 94:3, 107:12, | 113:13, 116:2, |
| **discounts** | **divorced** | 107:15 | 116:15, 118:20, |
| 38:24, 88:10, | 142:2, 142:3 | **dollar** | 125:8, 133:17, |
| 88:20, 95:18, | **document** | 130:16 | 135:13 |
| 111:4, 111:9 | 21:5, 22:24, | **dollars** | **doors** |
| **discovery** | 26:24, 29:21, | 100:15 | 70:9 |
| 135:10, 136:15, | 30:11, 35:20, | **donatien** | **down** |
| 149:16 | 35:21, 40:8, | 17:18 | 27:14, 46:20, |
| **discretion** | 41:18, 41:20, | **done** | 47:2, 48:20, |
| 34:6, 72:14, | 49:24, 50:15, | 18:5, 25:5, | 63:2, 82:9, |
| 72:15 | 51:13, 51:21, | 63:3, 87:10, | 98:2, 101:18, |
| **discretionary** | 52:1, 52:3, | 119:17, 138:5, | 108:3, 108:7, |
| 27:19, 29:3, | 52:20, 52:22, | 143:19, 149:21 | 136:20, 137:2, |
| 34:2, 72:10, | 52:23, 52:24, | **donnelly** | 138:13, 138:15, |
| 72:12, 72:16, | 53:5, 54:4, | 1:4, 4:14, 5:4, | 152:12, 152:22, |
| 72:18, 147:12 | 58:4, 58:11, | 5:17, 6:9, 6:11, | 153:11, 154:16 |
| **discuss** | 78:14, 82:21, | 16:14, 24:13, | **download** |
| 6:9, 27:11, | 83:6, 83:12, | 29:18, 29:20, | 91:13 |
| 104:10, 104:11, | 83:15, 83:19, | 29:24, 30:10, | **downstairs** |
| 105:8 | 84:3, 90:15, | 31:8, 35:1, | 119:1 |
| **discussed** | 91:19, 92:6, | 35:5, 38:4, | **dr** |
| 88:2, 109:12, | 98:15, 98:17, | 38:21, 39:25, | 62:21 |
| 137:23 | 102:10, 102:16, | 40:11, 40:17, | **draft** |
| **discussing** | 112:10, 120:3, | 40:20, 49:21, | 16:2, 20:17 |
| 60:2, 96:1, | 120:12, 131:7, | 52:15, 54:18, | **drafted** |
| 104:8 | 135:25, 148:6, | 55:1, 56:1, | 90:12 |
| **discussion** | 148:11 | 56:6, 56:16, | **draw** |
| 13:25, 50:13, | **documentation** | 56:18, 57:12, | 57:11 |
| 51:13, 101:8 | 51:6, 61:15, | 57:17, 57:20, | **drawing** |
| | | | 23:4 |

Transcript of Neil J. Beaton
September 22, 2022

170

drink
62:16
drive
33:11, 97:12,
138:4, 154:23
driven
93:24, 137:9,
139:3, 144:13,
144:21, 151:14,
154:24
drives
139:18, 153:23,
154:19
driving
138:8, 152:17,
152:18, 152:20,
154:25
drug
84:20, 108:9
duly
6:2
during
86:23, 119:18,
120:5, 124:24

**E**

e-b-i-t-d-a
47:9
e-mail
50:2, 51:6,
51:23
e-mails
50:8, 51:1,
51:15, 56:12,
56:15, 56:21,
56:24
e-research
100:11, 100:16
e-search
100:10
each
42:5, 74:6,
74:10, 74:12,
74:16, 74:18,
81:24, 108:1,
115:15, 121:2
earlier
63:6, 65:22,

68:25, 73:15,
86:2, 102:22,
137:23, 139:11,
143:10, 145:18
earliest
94:9
early
12:6, 15:19,
70:7
earn
129:22, 130:14
earned
128:25, 129:4,
130:6, 130:25,
131:20, 131:21,
132:11, 132:19
earnings
70:1, 70:3
earnout
129:25, 130:2,
130:7, 130:10,
130:25, 131:8,
131:13, 132:10,
132:11, 132:14
easier
17:5
eastern
5:8, 10:8
easy
100:14, 103:19
ebit
70:1
ebita
58:25
ebitda
22:21, 30:9,
31:9, 44:6,
44:12, 44:22,
44:25, 45:4,
45:7, 45:15,
45:18, 45:21,
46:23, 47:1,
47:8, 67:4,
70:2, 71:5,
84:9, 84:10,
94:22, 95:21,
98:22, 98:23,
99:9, 100:7,

100:22, 108:22,
109:2, 111:23,
118:10, 123:17,
123:22, 130:1,
136:17, 136:19,
136:25, 137:1,
137:7, 138:9,
138:18, 138:25,
140:2, 140:3,
141:15, 142:2,
143:7, 143:9,
145:6, 145:7,
145:9, 145:23,
145:24, 146:6,
146:24, 149:23,
150:11, 150:17,
150:21, 151:3,
151:14, 151:17,
152:2, 153:4,
154:9, 154:23
economic
61:6, 88:7,
92:11, 116:24,
119:17, 132:25
ecosystem
109:8
edward
52:10
effect
32:15
effective
49:23, 49:25
eight
98:4, 98:8,
125:4, 125:5,
129:14
either
12:5, 21:6,
86:8, 104:3,
132:15
elaborate
106:11
electronic
2:22, 18:19,
19:16, 157:2
electronically
157:16
ellis
57:10

else
25:7, 90:10,
105:6, 144:4,
144:22
emery
19:9, 19:15
employed
7:18, 40:11,
40:21, 40:22,
65:18, 66:24,
70:20, 78:4,
157:12
employees
74:23
employment
7:13, 9:22,
59:6
employs
123:24
enabled
73:25
end
26:21, 26:22,
45:17, 155:10
ended
45:17
engaged
117:3, 117:4,
117:8, 117:9,
117:10
engagement
25:3, 26:8,
26:10, 26:13,
59:11, 60:18,
72:24
engagements
10:1
entail
64:8
entailed
64:4, 64:6,
64:9
enter
137:22
entered
153:25
enterprise
45:14, 45:19,

47:13, 84:8,
101:1, 125:1,
129:21
**entire**
85:21, 105:11,
107:2, 149:3
**entitled**
59:16
**entity**
18:15, 109:2
**entry**
92:1
**enumerated**
55:10
**equal**
89:3
**equity**
36:20, 37:7,
38:3, 38:15,
40:16, 43:2,
47:23, 47:25,
48:3, 48:5,
48:8, 50:15,
54:2, 56:10,
56:13, 56:17,
60:10, 60:12,
60:13, 60:15,
61:2, 63:14,
82:5, 82:13,
88:3, 89:11,
92:8, 92:12,
110:17, 111:3,
113:14, 116:3,
125:9, 135:14,
146:8, 150:5
**errata**
156:7
**error**
136:18
**errors**
47:11
**especially**
25:20
**esquire**
3:3, 3:13
**est**
1:17, 155:17
**estabrook**
14:15, 86:5,

86:14, 113:11,
113:18, 114:11,
116:1, 119:17,
120:24, 125:2,
125:6, 128:16,
128:20, 131:11,
143:18, 143:20
**estabrook's**
13:9, 15:2,
15:6, 21:15,
27:23, 43:22,
75:18, 77:14,
115:24, 125:15,
127:7, 129:3,
130:15, 131:15,
132:4, 132:21,
135:18, 145:19
**estimate**
9:25, 27:5,
27:7
**estimates**
102:21, 103:7,
103:9, 103:14,
103:24, 103:25,
128:2
**estimating**
124:25
**europe**
17:9
**evaluate**
23:4, 23:6,
74:18
**evaluated**
25:6, 76:13
**evaluation**
75:1, 75:24,
76:15, 113:19
**evaluations**
115:24, 127:13
**even**
12:13, 43:21,
45:21, 50:12,
60:10, 76:22,
76:23, 86:5,
86:25, 99:3,
100:20, 117:24,
119:6, 120:3,
124:6, 128:11,

132:7, 147:22
**event**
40:5, 40:24,
41:13, 42:4,
42:5, 42:11,
42:12, 42:15,
42:16, 42:17,
42:18, 42:21,
43:3, 43:4,
43:8, 43:19,
44:1, 45:10,
51:9, 54:7,
54:8, 54:13,
54:22, 61:10,
116:5, 116:14,
116:24, 118:8
**ever**
8:22, 9:12,
10:4, 16:18,
16:23, 18:4,
18:5, 18:25,
19:21, 76:23,
127:19
**every**
72:24, 91:12
**everything**
21:13, 125:20,
136:21, 144:4,
144:7, 144:22
**exact**
33:12, 66:22,
143:11, 143:12,
143:13
**exactly**
40:6, 68:10,
76:4, 81:21,
88:17, 104:21,
131:11, 142:15
**examination**
4:2, 6:5
**examine**
114:21, 114:23,
115:3
**examined**
6:4, 25:12,
120:24, 156:4
**example**
13:9, 94:6,

97:14, 98:1,
100:9, 101:3,
124:17, 146:10
**excel**
4:19, 145:13,
147:2, 151:7,
151:9, 151:25,
152:8
**except**
29:20
**exception**
23:22, 23:23
**excess**
57:22
**excluded**
10:4, 10:13,
11:7, 11:17
**exclusions**
11:2
**excuse**
36:8, 56:20,
85:2
**execute**
107:8, 107:9
**exercise**
63:12, 147:2
**exhibit**
4:11, 4:12,
4:13, 4:15,
4:18, 4:19,
20:2, 20:3,
20:25, 21:1,
21:7, 21:8,
30:16, 30:22,
31:1, 31:3,
32:10, 35:10,
35:12, 36:16,
37:1, 37:5,
37:8, 37:11,
37:22, 38:3,
38:19, 39:14,
41:4, 46:7,
46:8, 46:11,
46:12, 49:13,
52:7, 52:9,
53:9, 57:2,
57:3, 59:10,
67:21, 68:13,

81:13, 81:16,
83:24, 94:25,
96:9, 106:23,
112:11, 112:18,
112:19, 113:5,
115:12, 118:20,
118:21, 119:2,
119:3, 120:14,
120:15, 155:13
**exhibits**
4:9, 4:10,
13:1, 30:18
**exist**
91:16, 151:23
**existed**
12:24, 114:8,
118:12
**exit**
82:1, 88:11,
88:15, 91:25,
92:15, 92:16,
92:24, 93:2,
93:7, 93:18
**expanded**
75:22
**expanding**
107:13
**expect**
119:12
**expected**
57:20, 109:3
**expecting**
124:7
**expense**
80:17
**experience**
32:18, 43:1,
51:6, 51:12,
85:5, 104:1,
106:8, 117:19
**expert**
9:24, 10:4,
12:3, 15:18,
20:9, 26:14,
46:6, 49:19,
61:6, 89:13,
112:17
**expertise**
8:12, 46:21,

110:6
**expires**
157:19
**explain**
46:19, 62:8,
80:25, 83:5,
84:2, 92:16,
93:6, 96:5,
97:22, 102:6,
104:22, 110:4
**explained**
76:11, 76:12,
110:24
**explaining**
85:11, 125:5
**explanation**
112:3
**extent**
22:24, 26:24,
34:14, 42:24,
44:10, 55:11,
55:13, 66:11,
67:9, 76:18,
88:5, 92:10
**external**
104:4
**ey**
64:21
**eyes**
62:18

---

**F**

**fact**
18:13, 22:17,
38:22, 38:24,
50:12, 51:11,
54:20, 58:11,
60:1, 60:25,
61:1, 61:15,
64:12, 67:16,
69:2, 76:20,
77:23, 115:10,
116:9, 129:8,
130:24, 152:1
**factor**
65:24
**factors**
68:22, 69:10

**facts**
12:17, 13:18,
13:21, 21:10,
21:20, 51:2,
55:20, 55:21
**factual**
55:17
**failed**
117:12, 117:24
**fair**
35:24, 36:3,
36:19, 38:5,
38:7, 38:14,
79:1, 87:9,
87:18, 87:19,
87:20, 87:23,
88:1, 88:8,
88:15, 88:19,
89:9, 89:10,
91:23, 91:24,
92:5, 92:7,
109:21, 109:24,
110:16, 110:19,
110:23, 111:8,
111:17, 113:1,
113:13, 116:2,
140:16, 140:20
**fairly**
112:1
**falls**
141:14
**false**
9:10, 131:19,
131:22
**familiar**
84:23
**familiarity**
17:3
**far**
18:3, 33:9,
66:13, 74:5,
74:9, 82:19,
92:15, 102:6,
106:15, 145:5,
145:20, 146:7,
147:1
**farah**
56:23, 63:20,

70:22, 85:19,
109:13, 109:17,
129:13, 129:19,
131:6, 131:20
**fcf**
70:4
**federal**
22:6
**fee**
9:7
**feel**
61:15, 71:22
**fees**
57:22, 59:16
**felt**
61:14, 75:19
**figure**
48:15, 98:24,
112:8
**figuring**
153:3
**file**
83:24
**filings**
96:23
**final**
67:4
**finally**
149:6
**financial**
8:10, 8:13,
10:19, 15:13,
16:14, 62:11,
64:25, 69:9,
69:12, 69:15,
69:19, 70:8,
70:14, 70:19,
71:1, 72:5,
72:9, 74:23,
104:14, 110:5,
113:20, 114:12,
114:14, 114:18,
121:20, 127:22,
135:12, 140:13,
157:14
**financials**
21:18, 81:22,
81:23, 82:2,

82:22
**find**
35:17, 40:6,
46:14, 52:1,
55:21, 107:3,
117:20, 122:18,
152:12
**finding**
22:19, 107:5
**fine**
55:13, 79:18
**finish**
25:18, 77:8
**firing**
90:15
**firm**
7:23, 10:11,
12:9, 63:25
**firms**
60:10, 60:15,
65:2, 65:7
**first**
4:12, 6:2,
7:12, 10:7,
12:2, 13:25,
14:2, 17:8,
20:19, 22:9,
30:17, 31:2,
32:23, 35:11,
46:11, 47:15,
52:8, 52:16,
52:19, 52:25,
65:22, 75:21,
76:11, 77:22,
94:24, 95:2,
114:16, 114:20,
115:5, 116:6,
138:5, 138:17,
153:3, 154:1
**fit**
27:4, 134:10
**five**
8:4, 11:4,
14:25, 27:10,
63:7, 75:4,
83:12, 86:10,
86:15, 86:16,
102:5, 102:6,

113:21, 114:8,
115:22, 121:13
**flag**
79:19
**flags**
91:1
**flip**
30:6
**flow**
70:5, 89:22,
97:14
**flows**
110:9, 110:11,
110:14, 121:19
**fluid**
72:25
**focus**
60:13, 75:7
**focused**
9:23, 15:19,
59:20, 73:25,
123:22
**focusing**
75:19
**folks**
104:1
**follow**
91:3, 102:13,
148:16
**follow-up**
72:21
**followed**
56:5, 75:17,
102:12
**following**
17:7, 43:19,
134:13
**follows**
6:4
**footnote**
21:6, 109:18
**footnoted**
21:1
**footnotes**
108:8
**forecast**
96:12, 128:5
**forecasts**
96:15, 96:22

**foregoing**
156:4, 157:5,
157:6
**forensics**
8:10
**forgot**
118:20
**form**
17:21, 18:10,
19:4, 19:13,
22:23, 23:9,
26:23, 34:4,
34:13, 38:16,
42:24, 44:9,
45:23, 54:3,
55:5, 66:9,
76:2, 76:17,
83:2, 88:4,
92:9, 95:11,
102:9, 110:20,
117:6, 129:25,
134:24, 140:5
**formal**
127:18
**formalized**
127:12, 127:13
**format**
149:18
**former**
79:7
**forming**
12:18, 21:12,
21:21
**formula**
136:19, 137:17,
138:3, 138:17,
138:22, 144:5,
146:14
**forth**
14:2, 24:4,
37:16, 39:13,
56:22, 62:19,
78:14, 145:22,
148:17
**forward**
33:19, 92:18,
92:22, 92:25,
93:10, 93:21,

94:19, 94:21,
95:25, 101:6,
109:20, 124:3
**found**
9:10, 46:18,
52:12, 60:9
**foundation**
17:22, 18:11,
19:5, 19:14,
45:24, 117:7,
121:22, 131:18,
133:12
**four**
28:6, 28:10,
40:25, 41:21,
65:6, 67:20,
76:25, 101:8,
101:25, 102:3,
115:7, 117:9,
117:11, 138:5,
141:16, 142:16,
145:24, 147:13,
154:5, 154:8
**fourteen**
53:13
**fourth**
27:14
**free**
21:25, 70:4
**freeze**
149:12, 149:13
**friend**
105:5
**front**
80:16, 121:23
**full**
17:15, 80:21,
130:7, 130:14,
131:13
**fun**
137:16
**fund**
83:11, 88:8,
95:5, 100:14
**fundamental**
62:11, 69:9,
69:12, 69:14,
69:18, 70:19,

71:1
**funds**
64:3, 87:7
**further**
105:9, 106:19,
107:10, 108:6
**fusion**
18:23, 19:2,
19:3, 19:12
**future**
118:7
**fv**
91:24

**G**

**gave**
10:13, 77:25,
128:1, 130:11,
135:4, 146:9,
146:10
**gcp**
140:25
**gct**
28:10, 29:23,
33:15, 35:6,
39:1, 39:12,
67:3, 72:2,
73:4, 74:17,
75:11, 76:8,
76:21, 76:22,
77:16, 78:1,
80:20, 84:6,
87:15, 88:19,
96:18, 122:13,
122:15, 122:22,
122:23, 125:12,
140:25, 150:19
**gcts**
33:22, 68:3,
88:23, 89:4,
91:9, 95:20
**general**
43:13, 79:3,
79:8, 88:21,
103:2, 111:17,
140:25
**generalized**
38:20

**generally**
23:19, 24:1,
35:9, 38:25,
71:21, 139:24,
139:25, 140:8
**generate**
142:2
**generated**
125:7
**generous**
35:3, 38:22,
38:24, 39:5,
39:9, 39:11,
39:18, 39:21,
39:22, 39:24,
111:6, 111:7
**genstar**
84:21, 95:3,
95:5
**geographic**
62:24, 68:22,
69:11
**getting**
126:6, 148:9,
153:22, 153:23
**give**
6:24, 15:25,
17:13, 45:13,
71:14, 78:9,
81:3, 81:20,
97:14, 143:21
**given**
17:4, 32:10,
33:4, 95:9,
116:17, 119:18,
132:25, 133:17,
151:5, 156:6
**gives**
84:6, 84:8
**giving**
23:24, 82:11,
145:20
**global**
19:10, 107:10
**go**
6:14, 15:22,
24:6, 29:9,
34:21, 34:24,

35:11, 35:13,
35:18, 36:9,
40:12, 44:4,
46:7, 47:6,
60:19, 62:4,
62:16, 66:2,
66:16, 73:3,
80:13, 80:24,
81:4, 83:22,
84:15, 89:13,
91:2, 98:2,
99:18, 100:19,
101:7, 101:15,
104:7, 106:13,
106:25, 107:16,
107:24, 108:2,
108:7, 109:20,
122:19, 124:5,
126:5, 133:25,
136:12, 136:20,
138:15, 138:16,
138:18, 145:3,
145:4, 148:12,
149:11, 151:3,
152:11, 153:6,
154:14, 154:16
**god**
136:16
**goes**
59:24, 109:21,
152:6
**going**
6:16, 9:6,
17:4, 17:8,
21:23, 33:20,
34:15, 35:3,
38:21, 40:12,
41:4, 42:23,
49:4, 53:10,
55:4, 61:23,
66:8, 67:8,
67:10, 80:3,
80:13, 80:15,
89:7, 93:14,
97:12, 98:6,
101:4, 101:25,
106:18, 110:9,
113:22, 114:6,

118:1, 118:16,
121:21, 122:6,
124:8, 124:12,
126:6, 126:18,
132:12, 132:18,
136:5, 136:7,
137:15, 137:16,
137:18, 137:21,
138:12, 139:5,
139:6, 142:13,
143:4, 143:6,
143:7, 143:9,
144:13, 148:13,
149:11, 149:12,
152:24, 155:11
**gone**
10:17
**good**
6:7, 17:6,
48:24, 49:2,
80:10, 80:11,
80:12
**gpc**
28:10, 29:23,
62:9, 65:17,
65:19, 65:23,
66:23, 66:24,
67:3, 67:6,
72:3, 77:24,
78:1, 80:20,
87:15, 96:10,
96:17, 125:7,
141:1, 141:2,
150:19
**gpcs**
33:21, 34:23,
67:22, 68:4,
69:5, 73:19,
75:4, 75:19,
144:19, 148:8
**grant**
7:23, 64:24,
65:5
**gray**
153:13
**great**
21:8, 105:6,
122:17

gross
70:1
group
1:7, 5:4, 5:20,
6:11, 11:25,
17:20, 17:23,
18:8, 18:12,
19:10, 64:23,
104:9, 104:12,
104:19, 108:11
groups
18:21, 19:22
growth
23:14, 25:7,
33:5, 34:19,
62:24, 68:21,
69:11, 74:1,
93:24, 97:15,
118:8, 119:18,
124:8, 133:1
gtc
33:15, 67:6,
73:11, 78:23,
79:3, 79:5
gtcs
33:11, 34:23,
67:23, 69:5
guess
15:9, 27:22,
34:22, 59:1,
64:1, 72:20,
98:23, 100:16,
120:19, 131:25,
142:24
guide
91:24, 92:3
guideline
27:11, 27:12,
29:10, 29:11,
29:12, 29:14,
33:9, 33:16,
33:21, 33:23,
65:16, 80:19,
80:23, 125:9

**H**

halfway
31:3

hand
157:16
handing
20:1
hands
136:9
happen
124:10, 130:5
happened
45:3, 68:2,
96:9, 149:7
happens
137:2
happy
6:19
hard
72:22, 72:24
harris
122:9, 123:15
hate
136:16
head
120:8
health
84:24
heard
16:25, 19:1,
19:6
hedge
95:5, 100:14
held
2:2
help
82:18
helpful
99:20
here
5:2, 6:8,
23:18, 24:22,
51:4, 51:20,
57:9, 59:11,
61:24, 67:16,
75:8, 83:21,
83:22, 84:16,
87:25, 90:5,
90:24, 93:7,
94:7, 94:24,
95:9, 95:17,

96:24, 98:16,
99:17, 102:16,
104:22, 107:20,
123:6, 123:14,
129:9, 134:23,
136:11, 137:3,
137:16, 142:16,
148:24, 148:25,
149:8
hereby
156:3, 157:6
hereunto
157:15
hey
101:19, 105:4,
105:5, 122:16,
127:16, 142:13,
149:6
hidden
46:14, 46:17
high
31:17, 67:22,
67:23, 98:3,
98:8, 112:1,
113:15, 123:3,
143:5
higher
68:16, 74:2,
89:1, 120:4,
125:6, 132:23,
133:1, 133:20,
148:21, 148:22
highest
117:21, 117:23,
147:15, 147:25
highlight
154:14
highlighted
142:21, 154:17
highly
80:19, 80:25
himself
57:25, 86:25,
128:16
hired
29:7, 117:11
historical
128:4

historically
151:23
history
7:13, 133:18
hit
44:23, 129:25
hitchner
62:21
hold
36:24
holder
35:4
holds
39:11, 135:5
hope
80:11
hopefully
149:11
horse's
147:22
hot
120:6
hour
48:23, 79:14,
79:15, 126:10
hourly
12:9
however
27:19, 57:21,
89:4, 111:1,
136:19, 147:3
human
6:22
hundred
9:21, 89:2
hypothetical
45:14, 93:15,
116:17

**I**

i's
41:23, 42:1
ic
151:2
idea
100:2, 101:20,
133:13, 133:24
identical
87:16, 88:9,

92:13
**identification**
20:4, 30:23,
57:4, 112:20,
155:14
**identified**
14:1, 14:4,
14:9, 51:23,
83:9, 85:20,
89:19, 96:11,
115:12, 138:1
**identify**
5:13, 65:15,
80:19, 81:17,
81:18, 83:16,
106:14, 106:17,
107:17
**identifying**
114:6
**idiotic**
142:12, 147:4
**iea**
40:16, 40:24,
44:4, 54:21
**ii**
42:17, 45:12
**iii**
4:15, 22:8,
41:10, 41:20,
42:17, 45:12
**imagination**
77:7
**impact**
45:16, 66:6,
67:2
**impacting**
97:16
**implied**
67:2
**imply**
57:25, 59:3
**important**
45:10, 62:5,
98:11, 105:10
**impossible**
15:7, 136:16,
145:15, 146:19,
150:25, 151:11

**improper**
10:13, 10:14,
127:8, 131:1,
131:3
**inaccurate**
130:15, 131:23
**inappropriate**
9:7, 75:20,
76:5, 125:16,
128:20
**inc**
11:10
**incentive**
35:4, 36:4,
36:20, 37:2,
37:7, 38:3,
38:8, 38:14,
40:15, 40:16,
40:18, 49:13,
50:14, 51:9,
54:2, 56:10,
56:13, 56:17,
60:12, 60:13,
61:2, 63:14,
88:3, 88:16,
89:11, 92:8,
92:12, 110:17,
111:2, 113:14,
116:2, 125:8,
128:21, 129:6,
135:13
**inception**
57:19
**include**
13:18, 15:2,
15:5, 36:4,
38:8, 61:9
**included**
13:10, 13:21
**includes**
8:12
**including**
39:16, 88:20,
101:10, 111:15
**income**
121:6
**incomparable**
147:24

**inconsistency**
42:7
**incorporate**
26:10, 29:14
**incorporated**
11:14, 29:23,
95:22
**incorrect**
93:5
**increase**
119:12, 119:13
**increased**
130:9
**increases**
109:6
**independent**
14:24, 24:16,
24:20, 25:12,
25:15, 26:8,
85:13, 85:17,
85:24, 86:1,
86:4, 113:12,
113:19, 113:21,
113:23, 114:5,
114:10
**independently**
8:13, 21:18,
25:16, 26:3,
34:10
**indicate**
17:3, 61:16,
133:1
**indicated**
33:7, 50:14,
60:3, 75:21,
139:11
**indicating**
56:7, 134:10
**indication**
140:22
**indicative**
89:9
**individual**
9:5, 19:6,
85:13, 121:2
**individuals**
14:1, 14:4,
14:10, 17:12,

70:23, 105:16,
108:15, 109:16,
130:12
**industrial**
63:4
**industry**
62:24, 68:22,
69:11, 74:21,
85:3, 85:7,
102:20, 103:6,
103:13, 104:3,
121:20, 133:18
**inexpensive**
109:7
**influenced**
112:4
**inform**
55:22, 60:22
**information**
13:4, 13:8,
14:7, 16:15,
18:20, 21:14,
25:24, 51:2,
77:17, 83:10,
90:9, 90:16,
90:20, 90:23,
90:25, 91:4,
91:8, 91:9,
91:17, 94:5,
104:2, 104:6,
113:21, 115:17,
115:19, 134:25
**informs**
7:6
**infringement**
11:13
**initial**
12:22, 15:1,
15:5, 38:20,
49:19, 65:14,
75:7, 75:12,
75:14, 75:18,
76:1, 77:14,
80:14, 89:13,
96:1, 111:22,
113:8, 115:6
**initially**
63:17

Transcript of Neil J. Beaton
September 22, 2022

177

input
96:6, 97:8,
97:10, 97:17,
97:18, 135:20,
136:17, 136:22,
136:24, 137:10,
140:20
inputs
27:6, 78:20,
96:2, 96:4,
96:19, 98:5,
98:11, 98:12,
101:19, 149:2,
149:3
inquire
105:13, 105:23
insignificant
97:17
instance
45:18, 87:22,
136:21
instead
72:3
instruct
21:24
integrity
24:11
intellectual
11:5
interacted
18:6, 18:25
interest
35:5, 36:5,
38:9, 39:13,
39:16, 70:2,
70:3, 78:25,
79:2, 89:3,
109:23, 109:25,
110:3, 110:7,
110:11, 110:13,
111:13, 157:13
internal
110:25
international
11:10, 11:15,
65:2
interrupt
126:10

interrupted
148:2
interrupting
154:6
invalidate
76:21
invalidity
61:25
invent
84:17
invested
31:7, 43:6,
44:18, 44:24,
45:20, 47:20,
48:2, 48:11,
69:21, 99:25,
100:3, 100:18,
140:3, 141:13,
141:20, 151:4,
154:10, 154:11
investee
89:17
investigated
8:22, 9:10
investigations
9:15
investment
14:14, 14:17,
28:2, 34:22,
63:7, 69:3,
70:10, 70:11,
70:12, 86:7,
86:17, 87:2,
89:23, 91:10,
93:17, 94:20,
96:13, 117:3,
117:16, 117:21,
118:3, 118:9,
120:10, 127:5,
128:6, 133:25,
138:12, 150:7,
150:9, 150:14
investment's
89:22
investments
87:6
investor
110:8, 110:9

investors
41:12, 148:18,
150:8
involve
32:21
involved
10:8, 16:15,
19:21, 63:1,
64:21, 72:14,
105:14, 105:17
involves
72:3
involving
11:4
iq
90:7, 91:14,
103:6
irrelevant
44:7, 114:25,
116:7, 116:8
irrespective
61:13
issue
14:2, 16:2
issued
40:17
issues
60:9, 60:17,
116:23
items
34:20, 69:24
itself
29:3, 48:1,
83:14, 138:3

**J**

james
62:21
jerry
103:21
job
1:23
joe
14:14
jog
52:1
johnston
10:10

joshua
63:21
joyeux
18:22, 19:1
judge
10:12
judgement
101:9
july
51:19, 98:18,
157:20
june
12:6, 29:17,
29:22, 30:3,
31:13, 31:20,
31:22, 32:5,
43:20, 50:17,
65:20, 67:1,
77:10, 93:13,
94:1, 94:16,
98:17, 99:5,
119:10, 119:16,
119:22, 120:6,
132:21, 135:14
jurisdictional
23:22

**K**

keith
3:3, 5:15, 6:8,
126:9
kelly
1:25, 2:20,
5:22, 7:24,
11:22, 20:6,
25:21, 47:8,
48:25, 58:15,
91:15, 112:24,
126:14, 157:3
kelly's
28:17
key
89:17, 92:2
keywords
63:5
kind
45:14, 82:8,
82:15, 91:21,

Transcript of Neil J. Beaton
September 22, 2022

178

98:14, 115:12,
122:13, 152:12
**kinds**
82:11, 119:25
**kirkland**
57:10
**knew**
60:3, 61:4,
61:16, 85:4,
100:9, 100:13
**know**
6:11, 7:2, 7:3,
7:4, 12:19,
17:17, 19:15,
24:18, 25:14,
26:25, 29:2,
29:19, 30:21,
33:15, 41:22,
44:11, 45:2,
45:3, 47:3,
47:4, 47:9,
49:23, 51:16,
52:5, 52:17,
53:15, 56:3,
59:18, 59:19,
62:17, 64:4,
64:6, 64:7,
64:8, 64:12,
64:17, 64:19,
65:1, 65:3,
66:18, 66:19,
67:12, 68:9,
70:25, 71:25,
72:1, 72:23,
73:1, 75:10,
79:20, 81:21,
82:8, 82:14,
84:19, 84:22,
88:18, 89:25,
90:1, 90:16,
93:20, 99:16,
100:6, 100:7,
100:13, 100:17,
100:18, 101:18,
101:21, 104:22,
104:23, 107:17,
110:18, 112:4,
113:7, 115:23,

117:19, 122:1,
123:21, 124:17,
126:5, 126:15,
127:8, 129:9,
130:11, 130:13,
130:20, 130:21,
131:19, 133:14,
133:15, 136:18,
143:18, 145:18,
147:13, 150:15,
151:2
**knowledge**
16:14, 85:5,
85:13, 85:24,
86:2, 100:5
**known**
7:23
**knows**
132:18
**kpmg**
64:22

**L**

**labcorp**
84:20
**lack**
17:21, 18:11,
19:4, 19:13,
36:5, 38:9,
39:15, 39:16,
45:23, 88:10,
111:4, 111:5,
117:6, 121:22,
131:17, 133:11
**language**
6:23, 36:18,
76:16, 111:14,
111:15
**large**
45:16, 89:5,
134:11
**larger**
45:21, 125:10,
125:13
**las**
82:9, 107:23
**last**
43:22, 47:1,

47:7, 75:3,
75:5, 75:6,
92:5, 134:16,
135:6, 138:4
**late**
12:5
**law**
11:6, 11:16
**lead**
63:18
**leading**
107:10
**least**
28:2, 38:18,
116:20, 124:9,
128:7, 149:5
**leave**
51:8
**led**
23:7
**left**
111:8, 142:17,
144:7
**legal**
42:25, 43:18,
44:10, 52:24,
59:5, 88:5,
92:10, 110:21,
116:22
**legality**
111:18
**lends**
128:10
**less**
71:12, 125:11
**let's**
24:6, 53:16,
62:4, 68:21,
100:13, 101:7,
107:3, 122:18,
126:5, 126:16,
137:15, 138:19,
154:22
**letter**
4:13, 57:7,
57:15, 57:24,
58:12, 58:17,
60:8

**level**
78:24, 97:9
**leveraged**
69:23
**licensed**
8:3
**licenses**
7:25, 8:2
**licensing**
8:23, 9:13
**lie**
152:8
**limited**
16:23, 87:7
**limiting**
13:11
**linden**
4:15, 4:17,
4:20, 22:15,
22:18, 25:4,
26:2, 26:15,
29:7, 29:13,
32:15, 33:12,
34:1, 34:5,
34:10, 34:22,
35:2, 38:22,
41:12, 47:20,
48:1, 48:7,
56:11, 63:24,
65:15, 65:23,
66:24, 68:5,
69:3, 71:9,
72:23, 73:6,
73:15, 75:11,
76:9, 76:24,
77:9, 77:17,
80:18, 81:15,
82:23, 83:17,
85:2, 85:3,
86:20, 87:2,
87:5, 87:8,
87:11, 89:16,
89:20, 89:23,
90:2, 91:20,
94:22, 95:1,
95:13, 95:15,
97:2, 101:15,
101:24, 104:1,

104:13, 106:3,
107:5, 108:16,
109:11, 111:23,
112:3, 114:2,
114:11, 115:9,
115:18, 115:20,
117:3, 117:14,
118:7, 122:10,
123:16, 129:23,
134:8, 135:9,
135:11, 135:16,
136:14, 136:24,
139:4, 141:6,
142:15, 143:2,
145:22, 146:17,
147:5, 148:4,
148:16, 148:25,
149:1, 149:16,
149:22

**linden's**
8:19, 23:5,
24:11, 48:7,
63:7, 70:18,
73:1, 102:1,
104:14, 114:13,
117:19, 118:5,
118:18, 124:23,
139:20, 139:21,
152:16

**line**
23:14, 25:8,
27:14, 42:24,
73:11, 89:8,
129:13, 147:20,
148:9, 148:10,
150:21, 152:5,
152:7, 153:6

**linked**
42:20

**liquidity**
36:5, 38:9,
39:16, 40:5,
40:23, 41:13,
42:3, 42:5,
42:10, 42:12,
42:14, 42:16,
42:17, 42:18,
42:21, 43:3,

43:4, 43:8,
43:19, 44:1,
54:7, 54:8,
54:13, 54:22,
61:10, 116:5,
116:14, 116:24

**list**
31:13, 50:8,
51:16, 51:18,
67:20, 81:3,
81:10, 81:14,
84:5, 86:24

**listed**
20:22, 20:25,
21:13, 44:17,
75:12, 81:11,
95:9, 124:6

**litigated-related**
10:1

**litigation**
58:12

**litigation-relat-
ed**
9:20

**little**
17:5, 40:13,
41:22, 42:1,
48:25, 98:15,
105:20, 107:1,
108:3, 118:11,
123:4, 136:11,
145:20, 146:2,
153:7

**llc**
1:7, 5:5, 5:20,
6:11, 7:16,
7:23, 12:1,
16:20, 17:24,
37:5, 37:10

**llp**
2:9, 3:4, 3:14

**london**
18:7, 18:13,
18:20

**long**
7:17, 44:22,
44:23, 61:7

**long-standing**
133:18

**look**
25:16, 31:1,
31:2, 32:4,
35:10, 50:7,
52:8, 53:20,
60:16, 63:6,
68:14, 78:8,
85:9, 94:14,
94:19, 118:21,
122:6, 122:16,
123:3, 124:12,
139:7, 144:16,
145:23, 152:22,
153:11, 154:5,
154:8, 154:17

**look-back**
59:2

**looked**
46:9, 84:17,
105:14

**looking**
20:10, 36:25,
37:4, 37:6,
37:10, 37:16,
47:25, 53:13,
69:23, 74:6,
74:9, 91:13,
92:18, 93:21,
94:6, 94:18,
94:20, 94:21,
96:8, 96:24,
102:16, 105:11,
124:3, 124:22,
137:25, 138:2,
149:8, 154:22,
154:24

**looks**
36:14, 52:23,
62:23, 94:4

**lot**
30:20, 33:20,
43:2, 50:8,
58:24, 60:14,
64:20, 84:20,
126:15

**lots**
104:5

**loverich**
52:4

**low**
31:17, 61:2,
61:4, 67:22,
67:23, 98:3,
98:7, 112:1,
113:14, 143:5

**lower**
31:25, 34:2,
71:12, 89:7,
99:3, 109:3,
110:2, 111:14,
111:24, 120:6

**lowest**
117:25

**lp**
4:15, 102:13

**lps**
48:2

**lunch**
80:5, 80:11

**M**

**m&a**
120:5, 120:6,
143:4, 144:13,
148:8, 148:10,
152:8, 152:11

**made**
50:19, 67:17,
68:12, 75:1,
78:12, 84:25,
103:25, 106:17,
111:12, 127:23,
131:9, 148:7

**main**
73:13

**mainly**
11:4

**major**
121:15

**majority**
58:11, 86:15,
89:25, 114:15

**make**
26:11, 33:11,
34:2, 44:24,
53:17, 59:25,
61:3, 68:17,

68:18, 74:4,
84:16, 85:17,
96:12, 100:14,
101:25, 103:9,
119:15, 119:17,
135:6, 142:2,
142:13, 144:23,
149:21
**makes**
45:25, 132:25,
146:21, 147:25,
148:15, 148:20
**making**
43:24, 111:17,
148:12
**management**
36:4, 38:8,
40:15, 40:18,
49:13, 68:5
**manager**
30:2, 149:3
**managers**
49:21
**managing**
17:19
**manner**
26:20
**many**
85:5, 114:21,
115:2, 125:24,
127:13
**march**
82:2
**mark**
20:2, 30:16,
57:2, 83:23,
112:17
**marked**
20:4, 30:23,
57:4, 112:20,
155:14
**market**
22:15, 27:13,
28:4, 35:25,
36:3, 36:20,
38:5, 38:7,
38:14, 79:1,
87:20, 87:23,

88:2, 88:19,
89:10, 89:24,
92:7, 101:10,
101:11, 101:15,
109:21, 109:24,
110:16, 110:19,
110:23, 111:9,
111:18, 113:13,
113:25, 114:6,
116:2, 118:1,
118:15, 118:18,
121:5, 121:7,
123:24, 140:24,
141:3, 141:21,
142:18, 144:21,
146:17, 146:18,
146:25, 147:5,
147:11, 150:18,
150:22, 151:15
**marketability**
88:11, 111:5
**marketable**
78:24
**marketing**
133:5
**marketplace**
87:3
**markets**
107:14
**marks**
155:10
**marsal**
7:15, 15:12,
15:17, 16:13,
16:19, 17:5,
18:9
**match**
101:19
**math**
14:22, 14:25,
67:5, 68:9
**mathematically**
32:16, 68:2,
145:13
**matter**
5:4, 10:21,
14:15, 18:13,
27:24, 30:18,

44:21, 58:12,
62:2, 89:7,
114:20, 115:9,
129:12, 135:11
**maybe**
30:12, 75:5,
90:10, 99:19,
145:19, 150:23
**mcgladrey**
64:1
**mcguire**
103:21
**mcguirewoods**
2:9, 3:4, 5:16,
57:9
**mclean**
5:12
**mcn**
10:9, 10:24
**mean**
7:8, 16:6,
24:22, 25:14,
26:17, 26:25,
33:15, 44:11,
64:7, 64:11,
67:18, 68:3,
74:8, 74:23,
91:4, 92:16,
97:11, 98:7,
99:6, 102:8,
105:18, 116:6,
119:10, 134:25,
139:12, 147:16,
150:4, 152:1
**meaning**
50:15, 51:11
**means**
61:4
**meant**
28:13
**measure**
87:9, 87:19,
94:13, 97:20
**measured**
91:25
**measurement**
10:15, 10:21,
93:9, 93:11,

94:1
**measurements**
91:23, 94:23
**measures**
62:19, 62:25
**media**
5:2
**median**
98:7, 98:16,
98:18, 111:25,
123:3
**medical**
10:9, 17:9
**medidee**
17:8
**medulla**
102:25
**memorized**
50:4, 50:10
**memory**
52:2, 82:9,
122:2
**mention**
69:24, 76:20,
77:21, 128:19
**mentioned**
63:6, 76:11,
102:22, 106:10,
125:13, 127:2
**met**
116:25
**method**
39:2, 62:9,
65:17, 65:19,
66:23, 66:25,
67:3, 67:17,
72:2, 72:3,
73:4, 74:17,
75:12, 75:25,
76:8, 87:15,
121:5, 123:24,
125:7, 125:12,
140:24, 141:21
**methodologies**
27:13, 27:15,
27:16, 78:2,
80:20, 80:21,
87:17, 141:3

Transcript of Neil J. Beaton
September 22, 2022

181

methodology
28:3, 35:6,
65:20, 73:5,
73:7, 75:9,
76:9, 76:24,
76:25, 77:16,
77:25, 81:1,
87:8, 114:1
methods
28:19
metric
89:17
michael
57:10, 109:13,
109:17, 129:13
microsoft
72:17
mid
143:5, 144:24,
144:25, 147:7
middle
33:10, 33:13,
46:15, 68:3,
134:9, 145:25,
154:12
might
37:11, 42:13,
99:15, 119:7,
121:24
million
45:20, 47:13,
47:21, 47:23,
48:4, 48:6,
48:8, 48:9,
48:10, 48:11,
100:15, 101:5,
118:19, 119:4,
128:14, 128:21,
129:17, 129:20,
129:24, 130:18,
131:4, 131:13,
131:15
mind
50:8, 77:15,
82:15, 124:9,
142:11
mine
118:23, 118:25,

131:2
minority
35:4, 35:5,
36:5, 38:9,
39:12, 39:16,
78:25, 79:2,
88:22, 89:3,
109:22, 109:24,
110:7, 110:13
minutes
126:11, 149:5
miserably
117:24
misrepresent
114:3
missed
66:15
missner
3:14, 5:19
misstated
10:19, 41:19
misstates
22:24, 26:24,
34:14, 40:7,
41:20, 54:4,
67:9, 76:18,
83:3, 102:10,
140:6
misstating
80:18
mistake
35:19, 57:13
mitchell
3:14, 5:19
model
78:21, 96:20,
97:15, 140:20,
151:6, 151:17,
152:16
modeling
135:12
models
151:9
moi
136:20, 146:1,
151:2, 151:4
moic
31:10, 43:5,

45:5, 45:9,
45:17, 46:10,
46:23, 47:3,
48:11, 48:21,
70:11, 83:13,
98:21, 99:16,
100:8, 100:16,
116:4, 116:7,
116:13, 118:20,
138:8, 141:14,
142:25, 143:21,
143:25, 145:11,
145:17, 146:7,
146:13, 147:13,
147:17, 149:23,
149:24, 150:4,
150:5, 150:10,
150:11, 150:15,
150:16, 150:20,
151:1, 151:13,
151:20, 154:1,
154:4, 154:24
money
57:24, 100:18,
103:21
monitor
5:8
months
47:1, 47:8
more
6:18, 30:14,
51:12, 58:20,
73:6, 73:11,
73:24, 73:25,
79:20, 86:24,
89:8, 89:9,
105:21, 110:1,
119:8, 119:9,
130:16, 131:9
morning
6:7, 86:3
most
6:19, 7:10,
33:4, 94:9,
96:21, 150:9,
154:9
mouse
136:10

move
95:25, 134:4,
136:2
moving
33:19, 101:6
mpi
84:15
much
9:19, 9:22,
20:14, 26:18,
45:21, 79:20,
91:12, 100:18,
119:11, 122:5,
134:10, 142:1
multiple
22:21, 30:9,
31:6, 31:9,
31:13, 32:10,
32:15, 34:3,
43:5, 44:6,
44:12, 44:22,
44:23, 44:25,
45:4, 45:5,
45:8, 45:16,
45:18, 45:20,
46:21, 47:2,
48:14, 48:16,
59:1, 62:20,
67:5, 67:25,
88:12, 88:15,
89:18, 92:24,
95:21, 98:19,
98:20, 98:21,
98:22, 98:23,
99:3, 99:7,
99:8, 99:10,
99:12, 99:16,
99:22, 99:24,
99:25, 100:8,
100:16, 100:20,
100:22, 100:24,
109:3, 112:4,
116:7, 136:17,
136:19, 136:25,
137:5, 137:8,
137:24, 138:11,
138:17, 138:19,
138:22, 138:23,

138:24, 138:25,
139:15, 139:18,
140:2, 140:3,
141:8, 141:12,
141:13, 141:15,
141:20, 143:8,
144:3, 144:9,
144:10, 145:25,
146:24, 147:21,
147:25, 148:1,
149:23, 150:17,
150:21, 152:2,
153:1, 153:3,
153:21, 154:10,
154:23
**multiples**
29:23, 32:2,
33:4, 44:17,
44:18, 62:9,
68:8, 72:4,
72:7, 78:11,
81:23, 83:14,
84:9, 84:14,
85:1, 89:1,
89:6, 94:15,
94:21, 95:20,
98:1, 102:22,
111:24, 111:25,
112:2, 115:15,
120:4, 120:5,
123:17, 123:23,
124:23, 125:2,
125:7, 125:11,
125:15, 137:2,
137:25, 138:9,
139:7, 139:9,
142:16, 142:22,
143:9, 144:3,
144:25, 145:1,
145:23, 149:4,
150:11, 151:12,
151:13, 151:14,
151:18, 152:3,
152:19, 153:9,
154:10, 154:24
**multiplication**
47:16, 47:17
**multiply**
47:10

**multiplying**
89:16
**myself**
35:17, 48:25,
103:23

---
**N**

**na**
84:12
**name**
6:8, 10:9,
14:5, 64:1,
84:6, 90:24,
91:11
**names**
17:17, 81:3,
83:17, 83:18,
84:16, 109:15
**native**
135:11
**necessarily**
84:12
**necessary**
86:8
**need**
6:18, 7:1, 7:2,
35:18, 36:25,
46:14, 103:20,
104:22, 124:12
**negotiation**
56:13, 56:16,
108:21, 108:25
**neil**
1:14, 2:1, 4:3,
5:3, 6:1,
148:13, 155:11,
156:2
**neil's**
100:14
**neither**
23:24, 157:11
**net**
63:10
**network**
10:10
**never**
16:25, 19:6,
19:7, 78:18,

131:3, 149:4
**new**
13:12, 13:16
**next**
69:25, 101:22,
108:7, 144:16,
144:19
**nice**
137:14
**nine**
64:24
**nod**
6:22
**non-financial**
70:6
**non-litigation**
16:7, 16:8
**non-litigation-r-
elated**
10:2
**non-marketable**
109:23, 109:25,
110:13
**none**
7:5, 43:22,
53:22, 117:9
**nordic**
100:9, 100:19
**normal**
32:23, 110:18,
111:10
**normally**
16:4, 32:20,
38:25, 91:6
**nos**
155:13
**notarial**
157:16
**notary**
2:22, 157:2,
157:24, 157:26
**notated**
75:12
**note**
49:11, 109:15
**noted**
49:16
**notes**
72:1

**nothing**
6:3, 140:7,
140:8
**notice**
2:20, 52:14
**november**
52:18, 113:18
**number**
26:21, 27:1,
27:3, 27:8,
29:6, 32:21,
32:22, 35:14,
47:1, 47:12,
50:9, 56:21,
56:24, 70:14,
70:16, 75:15,
75:20, 83:9,
110:24, 115:15,
115:16, 117:25,
121:12, 121:14,
122:10, 123:2,
123:4, 127:4,
131:14, 131:15,
139:5, 146:16,
152:13, 154:17,
154:19, 157:26
**numbers**
14:23, 16:1,
29:13, 29:14,
44:17, 51:17,
68:1, 84:11,
103:3, 114:8,
128:2, 136:8,
146:3, 148:21,
149:18
**numerically**
53:8
**numerous**
27:6
**nw**
3:15

---
**O**

**oath**
7:7, 7:9
**object**
21:23, 42:23,
55:4, 62:8,

66:8, 67:8,
67:10, 88:4
**objection**
17:21, 18:10,
19:4, 19:13,
22:5, 22:23,
23:9, 26:23,
34:4, 34:13,
38:16, 40:7,
41:14, 44:9,
45:23, 49:12,
54:3, 55:19,
58:2, 61:21,
66:18, 67:9,
76:2, 76:17,
81:7, 83:2,
92:9, 95:11,
102:9, 110:20,
117:6, 121:22,
131:17, 133:11,
133:22, 134:24,
140:5, 142:8,
150:2
**objective**
97:20, 98:5
**objectively**
97:23
**oblongata**
102:25
**observable**
96:2, 96:4,
96:5, 96:7,
96:16, 96:17,
96:18, 96:19,
96:21, 97:2,
101:10
**observe**
96:14
**observed**
89:19
**obtain**
25:24
**obtained**
14:8
**obviously**
27:24, 74:14
**occur**
43:20, 94:1,

106:18
**occurred**
43:25, 44:1,
45:2, 50:17,
54:9, 54:13,
54:23, 61:11,
93:25, 94:7,
106:18, 116:24,
118:12, 120:1,
139:7, 141:17
**occurring**
118:8
**october**
57:18
**odyssey**
128:14, 129:16,
132:24
**offer**
38:23, 50:19,
57:18
**offered**
59:13, 113:16
**officer**
157:5
**officers**
104:15
**offices**
2:2
**often**
60:11, 69:22
**oftentimes**
63:5, 68:15,
70:6
**oh**
53:18, 85:11,
142:24, 143:18,
154:12
**once**
45:1, 48:9,
75:17
**one**
5:2, 8:15,
10:7, 10:25,
11:2, 11:9,
12:20, 14:20,
17:8, 22:14,
28:6, 29:20,
51:18, 58:7,

58:13, 59:12,
62:23, 73:14,
74:2, 74:3,
74:6, 74:10,
74:12, 74:16,
74:18, 82:14,
83:12, 83:13,
84:18, 86:11,
86:17, 90:10,
94:4, 94:10,
94:11, 94:17,
96:20, 100:21,
101:22, 105:6,
115:8, 117:8,
117:18, 119:12,
119:13, 121:2,
125:24, 132:18,
135:14, 138:21,
142:11, 142:13,
144:11, 144:16,
144:17, 144:19,
151:9
**one-page**
46:16
**one-third**
42:5, 42:15,
43:4
**ones**
22:20, 23:18,
62:16, 63:9,
81:21, 87:13,
105:16, 108:12,
108:18, 121:9
**only**
24:15, 28:6,
40:20, 47:20,
51:16, 53:21,
59:16, 59:23,
60:4, 73:22,
74:21, 99:9,
100:22, 115:18,
115:20, 115:24,
117:8, 121:10,
125:14, 125:24,
126:1, 131:20,
132:11, 134:16,
134:21, 134:25,
135:1, 135:5,

143:19, 143:24,
143:25, 144:2,
145:5, 145:7,
145:10, 146:5,
151:24
**oops**
137:11
**operating**
34:7, 72:5,
72:9, 91:11
**operations**
18:13, 18:18
**opine**
27:14, 61:24,
67:16, 76:8,
89:15, 91:24,
104:10, 111:23,
115:22, 134:6
**opining**
39:5, 60:19,
111:18
**opinion**
21:12, 21:21,
25:4, 26:14,
26:22, 35:1,
38:11, 38:13,
39:11, 39:19,
39:20, 40:3,
49:20, 53:24,
54:11, 54:14,
54:16, 54:17,
55:1, 55:19,
61:3, 62:13,
73:6, 76:21,
79:4, 79:8,
87:25, 110:15,
115:4, 116:3,
116:12, 125:22,
127:6, 129:5,
130:15, 134:12
**opinions**
6:9, 10:13,
12:18, 12:23,
13:2, 13:16,
21:3, 24:10,
55:8, 55:14,
55:16, 55:23,
59:5, 60:17,

60:22, 62:2,
135:6
**opportunities**
107:9, 107:13
**opportunity**
129:22
**opposed**
67:3, 99:24
**opposite**
125:3
**oral**
23:23
**oranges**
88:24
**order**
22:16, 55:22,
61:3, 104:15
**ordinary**
110:18
**organization**
73:23
**original**
38:23, 59:25,
125:20
**orphan**
84:20
**other**
9:11, 9:15,
10:25, 11:7,
13:7, 23:5,
23:15, 28:10,
33:5, 34:20,
39:13, 51:1,
62:25, 69:12,
75:3, 84:16,
89:2, 89:24,
90:8, 91:15,
104:12, 106:10,
106:12, 107:19,
108:12, 108:16,
109:6, 116:22,
117:9, 125:18,
135:4, 138:1,
140:19, 145:2,
145:8, 146:4
**others**
10:1, 11:3,
23:17, 94:11,

115:9, 115:10
**otherwise**
56:8, 157:14
**out**
10:20, 47:21,
48:3, 48:15,
58:8, 61:7,
67:25, 68:9,
70:10, 78:13,
86:14, 87:3,
91:16, 98:24,
104:6, 110:18,
111:8, 112:8,
129:9, 139:5,
141:14, 147:1,
148:9, 152:5,
153:4
**outcome**
157:14
**outside**
21:16, 63:25,
127:3
**over**
6:14, 11:4,
24:8, 40:19,
84:15, 84:16,
106:17, 106:25,
110:8, 110:11,
110:14, 115:11,
119:13, 136:6,
147:9
**overall**
65:24, 67:2,
105:10, 117:23,
124:25
**overlapped**
86:15
**overreliance**
125:6
**overriding**
42:13
**overspeaking**
9:17
**overvaluation**
125:8
**owed**
57:22, 57:24
**own**
26:3, 60:5,

85:4, 86:7,
103:8, 103:10,
104:1, 106:8,
112:9, 114:5,
114:9, 121:18
**owned**
79:2, 85:22
**ownership**
48:5, 109:23,
109:25
**owns**
48:1

---

**P**

---

**p-r-a-t-t**
91:15
**p-r-o**
11:23
**page**
4:2, 4:10,
24:6, 27:10,
30:7, 31:12,
34:24, 35:12,
35:14, 35:18,
35:25, 36:7,
36:14, 37:18,
37:23, 38:5,
39:14, 40:2,
41:6, 41:7,
48:17, 49:19,
53:11, 53:17,
53:19, 53:20,
54:25, 62:6,
65:14, 67:18,
69:13, 72:1,
73:3, 75:5,
75:6, 75:15,
80:16, 81:22,
87:4, 89:14,
89:15, 91:22,
96:1, 96:3,
98:13, 101:7,
101:22, 101:23,
106:15, 107:1,
107:3, 107:4,
107:5, 109:20,
111:22, 113:6,
115:21, 122:19,

123:19, 124:19,
124:21, 124:22,
127:2, 129:13,
132:20, 134:4,
134:5, 134:17,
134:23
**pages**
1:24, 46:17,
134:13, 147:21
**paid**
12:9, 57:17,
57:20, 113:17,
129:9, 129:22,
129:23
**paragraph**
20:20, 24:7,
24:9, 24:23,
27:10, 34:25,
38:11, 38:19,
40:2, 40:3,
40:24, 49:20,
50:4, 53:9,
53:11, 54:11,
54:24, 54:25,
56:5, 57:14,
58:24, 60:21,
62:6, 62:7,
65:8, 65:9,
69:8, 69:13,
69:17, 69:20,
69:25, 70:16,
75:14, 78:22,
80:16, 83:16,
87:4, 89:12,
89:14, 89:15,
91:22, 96:3,
97:5, 101:7,
101:23, 104:8,
105:9, 107:2,
108:20, 109:20,
111:13, 111:22,
113:6, 115:21,
115:22, 124:19,
125:4, 125:5,
126:3, 127:1,
132:20, 134:4,
134:5, 135:4
**paragraphs**
58:7

parkhouse
18:9
parm
18:6
parrish
3:22, 5:9
part
22:9, 22:10,
22:13, 52:25,
53:14, 59:11,
62:5, 69:6,
75:1, 82:24,
116:6, 135:10
partial
11:2
partials
11:1
participate
130:23, 133:9
participated
133:19
participating
133:21
particular
14:2, 52:21,
59:6, 85:1,
85:2, 87:22,
94:4, 97:7,
97:10, 100:21,
103:9, 134:15,
136:8
particularly
111:3
parties
157:13
partner
117:18
partners
4:15, 95:1,
117:22, 128:14
partnership
87:7
party
103:15, 103:17,
103:25
past
11:4, 70:9,
93:10, 94:10

pat
71:14
patent
11:6, 11:13,
11:16
patrick
1:4, 5:16
pay
9:7, 110:9,
119:24
payment
12:12, 61:1,
129:20
payments
45:5, 129:8
payout
128:21
pennsylvania
10:9
people
74:1, 122:17,
151:8
percent
9:21, 9:25,
41:10, 48:5,
89:2, 95:19,
111:24, 118:8,
147:16
percentage
9:23, 42:20,
48:5
perfect
33:25
perform
22:16, 24:3,
24:20, 28:9,
86:4, 113:12,
113:19, 114:5,
122:23
performance
43:23, 44:5,
45:6, 53:23,
54:22, 61:9,
89:17, 89:18,
116:10, 116:15,
116:20, 116:25,
117:1, 128:2,
128:3

performed
16:18, 26:15,
26:19, 64:24,
65:4, 65:5,
76:24, 85:19,
87:12, 87:14,
89:16, 115:8,
149:1, 149:9,
149:14, 149:15
performing
32:17
perhaps
9:2, 44:14,
66:17, 66:20,
104:4
period
59:6, 85:21,
86:24, 119:14,
119:19, 120:5
perrella
28:7, 28:13,
28:15
pharm
84:17
phone
105:5
phrased
22:1
phrasing
66:23
pick
79:21, 79:24,
109:10, 139:5,
148:13
picture
82:14
pitch
14:17, 93:17,
93:20, 93:21,
114:16, 114:23,
117:4, 117:10,
117:15, 118:14,
120:23, 121:4,
121:18, 121:23,
121:25, 122:9,
122:16, 122:24,
123:15, 124:13,
127:11, 127:20,

132:23
pitches
14:20, 117:17
place
5:11, 109:8
plaintiff
1:5, 3:2, 5:16,
6:5, 10:18
plan
13:13, 107:8
planet
5:10, 5:22
play
151:24
played
32:14
player
107:11
please
5:13, 5:23,
25:20, 46:5,
49:3, 66:16,
76:6, 80:1,
126:17, 155:9
plus
86:17, 137:18,
137:19
point
7:2, 7:5, 27:5,
43:24, 44:13,
51:10, 56:24,
59:25, 77:15,
77:21, 94:4,
94:5, 106:22,
106:23, 107:4,
107:6, 118:13,
143:5, 144:25,
145:1, 147:7,
152:15
pointed
86:14
points
96:19
policy
73:1, 102:11,
150:7
pool
65:15, 71:9,

Transcript of Neil J. Beaton
September 22, 2022

186

71:10, 71:11
**portfolio**
60:11, 83:11
**portion**
11:17, 55:15,
62:7, 71:23,
73:22, 80:14,
124:22, 130:6,
130:9, 130:25,
131:21, 132:11
**positioned**
107:10
**possess**
8:1
**possible**
6:20, 7:11,
34:1, 34:5,
71:11, 71:15,
71:17, 80:24,
103:16, 103:18,
130:25, 133:19
**potential**
19:2, 82:12
**practice**
123:8
**practitioner**
96:3
**pratt**
62:21
**pratt's**
91:14
**precedent**
122:19
**precise**
30:14
**preexisting**
16:13
**preface**
58:10
**prefer**
124:13
**preferred**
48:3, 48:4,
48:7
**prep**
103:4
**prepare**
13:3, 117:17

**prepared**
14:16
**present**
3:22, 89:21
**presented**
6:10, 20:12,
29:18, 29:19,
30:10, 30:12,
101:17, 114:2
**pretty**
26:18, 43:12,
91:12, 106:15
**previous**
67:15, 69:8
**previously**
38:6, 46:9,
67:1, 92:4,
138:2
**price**
91:25, 92:1,
92:15, 92:16,
92:17, 93:2,
93:3, 93:7,
93:8, 93:18,
101:1, 119:23,
129:16, 129:18,
132:15, 132:16,
132:19, 133:4,
133:20
**pricewaterhouse-
ooper**
64:22, 92:6
**pricewaterhouse-
ooper's**
91:23
**pricing**
94:15, 143:3
**primary**
70:23
**primevigilance**
84:17
**prince**
157:25
**principals**
104:13, 109:12
**principles**
24:2, 27:3,
35:9, 39:1,

72:3, 110:5,
111:10, 139:24,
139:25, 140:9
**prior**
34:14, 58:22,
66:15, 66:16,
67:9, 76:18,
83:3, 94:7,
94:12, 96:8,
102:19, 108:18,
140:6
**private**
43:2, 60:10,
60:15, 95:3,
95:6, 134:10,
150:4
**privilege**
21:24
**pro**
11:23, 110:2,
110:10
**probable**
71:17
**probably**
36:9, 47:9,
53:2, 82:10,
110:1
**procedure**
22:7, 91:12
**proceedings**
157:5, 157:8
**process**
22:25, 24:12,
29:2, 63:3,
63:5, 63:11,
63:24, 64:3,
64:10, 68:8,
68:10, 68:19,
85:21, 86:5,
101:21, 104:15,
105:2, 105:4,
105:7, 105:13,
105:14, 105:17,
105:22, 105:24,
106:5, 108:17,
148:16
**processes**
65:1, 108:24

**product**
70:13
**professional**
2:22, 8:24,
9:24, 157:4
**professionals**
78:5
**professor**
62:22
**profit**
70:1
**progress**
106:16
**projected**
89:22, 130:1
**proper**
23:8, 27:1,
27:2, 27:6,
137:3, 142:4,
142:6, 149:25,
150:19
**property**
11:5
**propharma**
1:7, 5:4, 5:20,
6:11, 11:25,
21:11, 21:17,
21:22, 22:3,
23:4, 23:7,
24:14, 27:18,
29:6, 33:8,
34:11, 35:2,
38:4, 40:16,
40:23, 49:21,
55:2, 56:2,
56:16, 57:9,
57:18, 63:19,
64:14, 65:20,
66:25, 68:6,
72:17, 73:12,
73:18, 73:25,
74:11, 83:13,
85:8, 85:22,
89:8, 93:14,
95:8, 95:12,
99:9, 102:2,
106:16, 107:10,
108:23, 109:1,

109:23, 109:25,
110:2, 111:21,
113:16, 114:2,
115:17, 116:4,
116:13, 117:5,
119:18, 119:22,
119:24, 124:9,
125:3, 125:10,
128:1, 128:13,
128:25, 129:16,
129:24, 130:8,
133:9, 133:20,
134:9, 147:19
**propharma's**
21:18, 34:19,
41:11, 63:13,
89:9, 95:23,
106:4, 124:25,
127:21, 128:3,
132:23, 133:1
**proprietary**
15:13, 101:11
**prospects**
33:5, 74:2
**protocol**
17:25
**proverbial**
147:22
**proves**
147:6
**provide**
6:19, 7:10,
8:14, 13:17,
25:4, 53:3,
75:16, 91:17,
109:15, 122:4,
128:5
**provided**
13:20, 21:22,
29:20, 31:7,
51:2, 52:15,
52:18, 53:25,
54:1, 57:21,
89:20, 90:3,
90:22, 91:10,
91:19, 101:14,
102:14, 118:14,
128:1, 128:4,

135:11, 136:15,
138:23, 149:1,
149:16, 150:8
**provides**
23:23, 50:5,
108:2
**providing**
40:11, 40:21,
40:22, 47:20,
59:5, 90:19,
148:7
**provision**
42:19, 56:9,
111:7, 111:8,
128:21
**provisions**
50:14, 51:8,
111:1
**public**
2:23, 8:8,
26:1, 27:11,
28:4, 29:10,
29:11, 29:15,
31:16, 32:2,
32:14, 32:21,
33:9, 33:21,
65:16, 66:24,
68:7, 68:14,
68:15, 88:22,
89:5, 91:9,
94:14, 94:15,
95:4, 95:19,
96:10, 96:11,
96:15, 100:5,
103:5, 112:5,
120:4, 125:9,
134:11, 134:19,
138:6, 138:12,
139:8, 140:18,
142:3, 142:25,
143:3, 145:1,
145:9, 147:14,
147:18, 147:20,
147:23, 147:24,
148:9, 148:21,
151:19, 157:2,
157:24
**publicly**
96:14, 96:22,

143:22
**publics**
31:22, 120:7
**pure**
68:9, 116:23
**purposes**
15:21, 21:8,
70:18, 114:25
**pursuant**
2:20, 22:6,
40:15
**put**
87:2, 114:8,
121:23, 122:7,
127:16, 138:17,
138:25, 139:17,
139:19, 146:11,
146:12, 146:13,
147:17, 151:7,
153:22, 154:18,
154:22
**puts**
146:2
**putting**
148:12
**pwc**
64:21, 98:12

### Q

**q1**
81:24
**qualified**
41:12
**quarter**
149:13
**quarterly**
57:21, 87:6,
87:10, 106:13,
107:24, 115:8
**quarters**
81:24
**question**
15:4, 18:24,
18:25, 21:25,
22:6, 22:10,
22:11, 22:24,
23:10, 24:25,
25:1, 25:25,

26:24, 33:2,
37:25, 39:4,
42:8, 44:14,
44:22, 54:15,
55:14, 55:25,
56:14, 58:9,
66:3, 66:17,
66:20, 67:11,
67:12, 71:20,
71:22, 72:7,
72:21, 76:6,
76:14, 76:18,
78:20, 80:22,
86:3, 92:4,
93:1, 102:20,
105:19, 105:21,
105:25, 119:20,
131:25, 133:3
**questioning**
42:25, 69:4
**questions**
6:16, 6:22,
6:25, 19:20,
55:5, 121:25,
136:8, 155:7
**quick**
50:7
**quintus**
84:18
**quite**
103:5, 125:21,
153:18
**quote**
35:3, 40:5,
53:16, 53:19,
132:8

### R

**raised**
91:1
**range**
123:15, 147:1
**ranged**
113:14, 142:22
**ranging**
98:2, 124:24
**rata**
110:2, 110:10

rate
12:9, 97:15
rather
56:6, 78:9,
87:1, 96:4,
113:15, 137:7
raw
78:19
re-answering
71:22
re-ask
37:25
re-asked
66:17
re-created
78:18
reach
13:12, 24:15,
32:7, 34:3,
62:24, 68:22,
69:12
reached
26:21
read
40:14, 41:1,
41:3, 41:8,
44:20, 50:11,
58:4, 58:19,
59:15, 60:24,
65:25, 66:16,
75:18, 77:13,
83:21, 112:10,
112:11, 116:21,
116:23, 123:5,
126:5, 127:14,
129:6, 134:16,
142:19, 156:3
readily
101:12
reading
41:17, 58:10,
58:14, 58:21,
157:10
reads
38:6, 57:15
real
103:19, 121:10
realize
48:8

really
27:4, 39:4,
65:24, 66:13,
82:18, 86:16,
96:14, 103:14,
121:17, 122:2,
126:6, 139:13
rear
147:22
reared
120:8
reason
29:4, 111:6
reasonable
27:15, 33:14,
80:22
reasons
68:18, 73:13,
135:4
rebuttal
12:21, 14:13,
36:11, 38:10,
51:21, 51:24,
60:1, 75:2,
75:5, 75:22,
77:13, 89:6,
112:15, 112:17,
113:2, 115:4,
115:6, 115:22,
124:20, 125:21,
126:2, 127:3,
131:5, 132:8
recall
12:15, 20:16,
33:7, 50:6,
51:4, 82:15,
90:4, 93:22,
108:14, 123:2,
137:22
recalling
90:14
receive
16:3, 38:21,
135:7
received
12:11, 14:21,
35:2, 132:23
receiving
70:12

recent
122:12
recess
49:6, 80:5,
126:20
recollection
11:3, 51:22,
53:4, 128:5
record
6:23, 22:5,
33:19, 36:25,
44:2, 47:10,
49:4, 49:9,
80:3, 80:8,
107:3, 109:19,
120:11, 120:13,
126:18, 126:23,
155:12, 155:17,
157:7
recorded
7:7
records
8:14
recused
86:25
red
91:1
reduce
132:12
reduced
157:9
refer
33:21, 33:22,
44:5, 44:18,
127:4
reference
9:4, 58:16,
103:15
referenced
52:22, 89:24,
92:5, 135:17
referral
9:7
referred
9:6, 44:12,
120:12
referring
12:20, 33:21,

33:23, 41:9,
46:23, 46:25,
69:7, 69:17,
69:19, 70:15,
83:20, 102:3,
107:18, 108:23,
108:24
refers
36:8, 58:12,
69:9
reflect
120:13
regard
61:18, 73:2,
95:8
regarding
12:16, 14:2,
25:25, 50:13,
56:12, 56:16,
61:14, 88:1,
104:24, 104:25
regardless
45:15
regards
64:9, 84:3
register
121:21
registered
2:21, 157:4
registration
157:26
regularly
64:14, 64:20,
101:12
reilly
63:21, 70:23,
85:19
reiterate
128:17
relate
38:13, 55:5,
88:1
related
10:14, 11:2,
98:24, 157:12
relates
80:22, 96:16
relation
8:23

Transcript of Neil J. Beaton
September 22, 2022

189

| | | | |
|---|---|---|---|
| **relationships**<br>133:6<br>**relevant**<br>45:7, 55:23,<br>87:7, 89:18,<br>101:15<br>**reliable**<br>27:17, 101:13,<br>125:11<br>**reliance**<br>80:21, 81:1<br>**relied**<br>43:13, 52:20,<br>71:2, 106:3,<br>134:22<br>**relies**<br>72:2<br>**rely**<br>49:24, 55:12,<br>64:11, 97:2,<br>127:17, 147:14,<br>147:18<br>**relying**<br>43:17, 125:14,<br>125:18<br>**remainder**<br>40:19<br>**remember**<br>51:14, 65:25,<br>66:22, 82:11,<br>90:18, 115:12,<br>136:3<br>**removal**<br>49:25, 51:3,<br>52:14, 55:2,<br>56:2, 60:21<br>**removed**<br>30:3, 49:22,<br>54:19<br>**rendering**<br>20:22<br>**renders**<br>130:14<br>**repeat**<br>76:6<br>**rephrase**<br>46:3, 66:20<br>**replicate**<br>77:19 | **reported**<br>1:25, 9:8<br>**reporter**<br>2:21, 2:22,<br>5:21, 5:23, 7:4,<br>7:6, 157:1,<br>157:4<br>**reporting**<br>88:8<br>**reports**<br>12:19, 12:21,<br>12:24, 13:4,<br>13:11, 14:14,<br>14:16, 14:25,<br>21:13, 21:15,<br>27:25, 28:1,<br>95:18, 106:14,<br>114:8, 125:6<br>**represent**<br>5:14, 10:22<br>**representation**<br>106:4, 113:2<br>**representative**<br>122:11<br>**represented**<br>122:17<br>**representing**<br>5:10, 5:22<br>**reputable**<br>103:22<br>**request**<br>15:25, 61:19<br>**requested**<br>157:11<br>**requesting**<br>60:7<br>**require**<br>78:25, 140:1<br>**required**<br>39:6<br>**requirement**<br>42:14<br>**requirements**<br>102:5, 102:7,<br>102:12<br>**requires**<br>101:9<br>**research**<br>73:23, 101:4, | 102:21, 103:6,<br>103:14, 104:3,<br>104:9, 104:12,<br>104:18, 106:10,<br>108:11<br>**respond**<br>58:20<br>**responded**<br>22:9<br>**response**<br>25:20, 30:14,<br>33:1, 71:14,<br>130:11<br>**responses**<br>6:24<br>**responsible**<br>63:14, 70:23<br>**rest**<br>48:25, 134:19<br>**restroom**<br>7:1<br>**result**<br>26:22, 27:16,<br>44:25, 121:10,<br>143:7<br>**resulted**<br>27:1, 27:3,<br>45:4, 102:14,<br>128:9<br>**resulting**<br>102:4<br>**results**<br>28:20, 28:22,<br>28:23, 39:24,<br>47:12, 47:23,<br>48:6, 121:16,<br>125:7, 154:10<br>**retire**<br>62:16<br>**retired**<br>82:10<br>**return**<br>81:25<br>**returns**<br>48:8, 82:1,<br>82:5<br>**revenue**<br>70:1, 70:13, | 98:20, 98:21,<br>99:3, 99:7,<br>99:8, 99:12,<br>99:15, 99:22,<br>99:24, 100:20,<br>100:21, 100:24,<br>100:25, 101:4,<br>110:25<br>**review**<br>16:1, 21:18,<br>25:3, 26:2,<br>26:10, 34:10,<br>56:12, 56:15,<br>59:7, 59:9,<br>59:21, 59:22,<br>62:1, 63:24,<br>68:11, 68:18,<br>77:14, 78:15,<br>113:3, 114:11,<br>115:1, 120:23,<br>121:2, 127:5<br>**reviewed**<br>20:22, 20:24,<br>21:14, 27:23,<br>34:19, 51:15,<br>64:25, 65:6,<br>77:11, 87:13,<br>114:14, 115:20,<br>127:25, 135:16,<br>149:2<br>**reviewing**<br>122:4<br>**reviews**<br>33:2, 65:4<br>**right**<br>15:11, 19:25,<br>24:6, 25:2,<br>25:9, 26:20,<br>28:14, 30:6,<br>31:21, 31:24,<br>32:4, 34:12,<br>34:24, 35:16,<br>39:4, 41:3,<br>47:18, 48:12,<br>48:14, 48:23,<br>49:18, 53:10,<br>55:18, 57:1,<br>59:14, 62:4, |

Transcript of Neil J. Beaton
September 22, 2022

190

80:10, 82:9,
82:19, 91:21,
98:17, 100:4,
100:23, 104:7,
106:20, 107:1,
108:5, 112:14,
112:22, 113:5,
115:14, 120:1,
120:23, 122:19,
122:23, 123:4,
123:7, 126:2,
126:25, 128:12,
131:7, 131:8,
135:19, 136:11,
139:21, 140:17,
141:13, 142:11,
143:3, 143:16,
144:12, 144:15,
144:18, 145:11,
152:3, 152:8,
152:12, 152:14,
153:11, 153:14,
153:17, 154:12,
155:5
**right-hand**
144:6, 151:21
**role**
19:17
**rollover**
82:5
**rounded**
48:19
**rounding**
47:11, 47:22
**rpr**
1:25
**rsm**
64:1, 64:2,
64:12
**rsm's**
64:8, 64:19,
65:3
**rule**
22:6
**ruled**
10:12
**rules**
6:14, 43:2

**run**
146:15, 151:8
**running**
48:20, 114:7

**S**

**s&p**
90:7
**safety**
108:9
**said**
6:8, 7:9,
24:10, 27:24,
29:3, 34:19,
50:22, 51:16,
65:25, 66:1,
66:6, 67:1,
68:21, 74:3,
74:19, 77:10,
83:8, 83:9,
96:17, 101:19,
101:24, 103:12,
104:21, 105:21,
107:22, 111:8,
114:3, 114:4,
118:9, 118:15,
123:24, 129:15,
129:17, 130:6,
131:10, 131:11,
131:12, 131:20,
132:7, 139:24,
142:24, 143:8,
145:4, 149:14,
150:14, 151:11,
152:23, 157:8
**sake**
28:17
**salary**
60:8, 60:9,
61:19
**sale**
41:13, 45:1,
45:8, 45:9,
84:9, 95:16,
95:22, 98:18,
114:18, 118:17,
124:4, 124:7,
128:13, 128:22,

129:5, 132:24,
133:5, 133:9,
133:20
**sales**
11:15, 29:5,
72:4, 72:8,
92:17, 100:6,
101:1, 114:24,
118:13, 122:16,
127:11, 127:17,
129:16, 132:15,
132:16, 132:19,
133:3
**samantha**
3:13, 5:18
**same**
7:22, 18:4,
18:12, 28:2,
32:5, 33:12,
35:20, 35:21,
37:19, 41:2,
44:3, 54:5,
54:25, 59:1,
60:7, 63:8,
65:4, 65:8,
67:9, 71:22,
72:2, 77:19,
85:3, 85:7,
87:12, 87:20,
92:4, 92:7,
100:1, 105:19,
110:10, 120:5,
130:11, 132:1,
139:15, 139:18,
143:11, 143:12,
143:13, 143:14,
144:16, 146:16,
149:16, 149:17,
149:18, 153:1,
154:13, 154:18,
156:4
**sap**
72:17
**sat**
101:18
**saw**
48:17, 52:21,
89:6, 90:13,

120:2, 151:13,
152:4
**say**
17:5, 25:6,
25:8, 27:8,
33:15, 34:15,
38:12, 42:20,
42:21, 43:25,
61:23, 66:2,
69:14, 72:12,
74:17, 74:22,
75:8, 78:1,
80:18, 87:18,
93:2, 97:5,
97:6, 97:10,
100:13, 103:20,
104:20, 104:21,
107:18, 108:20,
109:18, 113:11,
113:18, 113:24,
114:4, 118:3,
124:22, 125:5,
127:6, 127:20,
129:14, 132:9,
132:10, 132:15,
137:18, 145:20,
147:12, 148:19,
149:6, 151:5,
154:12
**saying**
24:23, 91:7,
101:24, 127:15,
132:5, 139:4,
153:2, 153:25
**says**
26:19, 35:1,
36:2, 39:17,
40:6, 40:10,
40:15, 41:10,
42:3, 53:18,
53:20, 54:21,
58:25, 69:7,
77:9, 87:5,
96:2, 101:8,
101:25, 102:1,
102:20, 103:13,
109:24, 122:11,
129:19, 130:22,

142:13
**scale**
68:6
**scenario**
88:8
**scratch**
52:17
**screen**
90:10, 91:8,
91:18, 96:9,
120:3, 120:13,
120:20, 122:6,
122:11, 122:15,
129:11, 135:15,
135:25, 137:12,
137:13, 153:14
**scroll**
94:8
**seal**
157:17
**sec**
96:23
**second**
22:10, 33:6,
34:21, 53:14,
57:14, 58:17,
69:6, 75:6,
106:22, 106:23,
107:4, 107:5,
114:20
**section**
40:25, 41:1,
41:10, 41:20,
44:3, 44:13,
44:16, 44:17,
45:11, 53:25,
55:6, 55:13,
58:20, 114:17,
142:21
**sections**
11:6, 42:4,
44:5
**see**
31:6, 35:24,
37:12, 40:5,
44:12, 52:1,
53:16, 58:14,
58:15, 59:1,

68:21, 75:3,
77:4, 78:10,
82:21, 84:10,
84:12, 89:1,
90:9, 90:10,
90:11, 90:25,
91:4, 93:16,
94:8, 95:17,
96:10, 97:1,
98:3, 100:20,
101:6, 101:7,
102:19, 107:1,
108:5, 108:13,
114:13, 114:18,
117:11, 117:17,
119:12, 119:13,
120:20, 122:18,
123:2, 124:5,
127:25, 129:2,
129:7, 135:20,
135:25, 136:1,
136:16, 136:22,
137:9, 139:10,
142:17, 142:19,
149:5, 151:20,
152:6, 152:23,
153:12, 153:16,
153:18
**seeing**
37:17, 91:18,
108:14
**seems**
123:21
**seen**
53:3, 58:24,
111:1, 127:13,
129:1
**select**
34:2, 98:6,
140:1, 147:12,
148:21, 154:8
**selected**
31:13, 32:11,
32:15, 34:21,
72:22, 99:5,
100:21, 111:23,
117:23, 125:2,
141:6, 141:8,

141:16, 145:24,
147:11, 148:10,
153:2, 153:3
**selecting**
22:20
**selection**
27:18, 33:12,
34:11, 34:23,
63:3, 63:5,
63:11, 64:3,
64:9, 68:8,
68:17, 68:18,
69:4, 72:10,
85:1, 85:20,
86:4, 117:20,
124:23, 137:24,
141:15
**selections**
34:12, 63:23,
70:24, 85:25
**sell**
29:6, 92:19,
93:9, 93:14,
116:18, 117:5,
120:10
**seller**
133:6
**selling**
86:22, 110:7
**sells**
92:24
**send**
83:24
**senior**
8:11, 18:6
**sense**
45:25, 84:25,
119:18, 122:5,
132:25, 146:21,
147:25, 148:15,
148:20, 149:21
**sensitive**
97:13, 97:15
**sentence**
134:15
**separate**
18:14, 26:9,
58:12

**september**
1:16, 4:13,
4:18, 5:7,
43:21, 45:3,
49:22, 53:21,
57:8, 57:15,
94:2, 94:17,
113:17, 116:18,
118:11, 119:11,
119:15, 119:16,
120:7, 120:8,
132:22, 132:24,
157:17
**serve**
107:14
**services**
7:15, 12:10,
16:20, 40:12,
40:21, 40:22
**set**
14:2, 17:25,
24:4, 39:13,
62:19, 78:14,
145:22, 147:24,
148:17, 157:16
**seven**
124:19, 124:21,
127:1
**several**
6:12, 6:13,
58:7, 92:2
**shall**
36:4, 38:8
**shannon**
62:21
**share**
56:20, 110:2
**shared**
125:23
**shareholder**
111:2
**shareholders**
129:24
**shares**
43:15, 44:5,
44:24, 116:15
**sheet**
69:24, 95:1,

Transcript of Neil J. Beaton
September 22, 2022

192

151:7, 156:7
**shifted**
63:20
**short**
58:19, 114:17
**shorthand**
2:21, 157:1,
157:3
**should**
13:7, 20:24,
21:1, 36:9,
37:6, 50:3,
51:19, 51:20,
57:13, 60:19,
79:5, 96:3,
97:8, 109:18,
123:11, 124:3,
149:6
**show**
30:11, 36:13,
67:18, 81:3,
103:20, 122:19,
143:23
**showed**
130:21, 139:17,
143:10, 146:9,
147:20, 153:5
**shown**
134:12, 134:23,
135:15
**shows**
52:16, 52:19,
98:18, 98:19,
123:16, 145:9,
147:6
**sic**
63:3
**side**
122:7, 143:1
**signature**
156:11
**signature-1apgj**
157:21
**signed**
38:4, 156:7
**significance**
97:7, 97:10
**significant**
97:17, 98:12

**significantly**
68:16, 125:10
**signifies**
104:19
**signing**
157:11
**sih**
108:10
**similar**
23:1, 72:5,
72:9, 73:20,
74:20, 91:17,
122:13, 137:17
**simon**
18:22
**simply**
14:20, 114:7,
114:14
**since**
28:11, 35:5,
57:19, 125:9
**single**
91:13
**sit**
23:18, 51:4,
90:5, 90:24,
107:20, 129:9
**six**
33:8, 34:25,
38:11, 38:19,
77:24, 89:5,
102:6, 102:15
**size**
23:14, 25:7,
33:4, 34:20,
62:23, 68:21,
69:11, 73:12,
73:18, 73:19,
74:21, 74:22,
75:10, 75:17,
75:25, 76:13,
76:15, 76:20,
76:23, 77:11,
77:15, 89:8,
125:19
**slade**
57:10
**slight**
67:4

**slightly**
47:11
**small**
66:6, 73:22,
123:5
**smaller**
45:22, 89:4,
119:11
**smallest**
33:8
**sold**
73:15, 93:3,
100:7, 120:9,
131:6, 132:3,
132:6
**solutions**
108:9
**some**
9:6, 16:10,
28:11, 29:21,
35:12, 40:18,
56:21, 56:23,
62:25, 84:9,
84:10, 92:25,
93:10, 93:15,
96:25, 116:22,
118:2, 118:7,
121:7, 121:8,
121:18, 127:14,
127:23, 127:24,
136:18, 151:8
**someone**
96:12
**someplace**
51:20, 102:23
**something**
113:7, 137:16,
146:11, 146:12
**sometime**
12:5, 52:15
**sometimes**
63:8, 63:9,
133:4, 133:7
**somewhere**
67:7
**sorry**
8:7, 9:17,
15:4, 25:19,

35:16, 35:17,
40:13, 41:21,
50:21, 51:25,
57:12, 57:13,
64:5, 74:14,
95:15, 100:11,
105:20, 107:4,
113:9, 121:3,
127:1, 134:5,
137:12, 148:3
**sound**
80:22, 81:2
**sounds**
17:6, 49:2
**source**
86:11, 90:4,
102:20, 102:21,
103:12, 103:13,
104:4
**sources**
86:10, 86:15,
89:20, 90:2,
90:8, 90:9,
90:13, 90:19,
90:20, 90:21,
90:23, 90:24,
91:5, 91:11,
91:16, 91:19,
96:11, 96:24,
101:14, 103:22,
113:21, 113:25,
114:21, 115:2
**southwood**
104:9, 104:12,
104:18, 106:10,
108:11
**space**
84:24, 107:11
**speak**
26:20
**speaking**
108:15
**specific**
23:3, 42:19,
71:23, 72:8,
135:14
**specifically**
33:1, 53:4,

Transcript of Neil J. Beaton
September 22, 2022

193

107:18, 111:4,
145:8, 145:10
**specificity**
58:9
**specify**
62:12
**speculation**
58:3, 133:23,
150:3
**spend**
20:14
**spoke**
14:1, 109:16
**spreadsheet**
4:19
**square**
67:15
**ssvs**
23:22, 23:24,
24:5
**staff**
12:10, 15:25
**stage**
15:19, 23:14,
25:8, 70:7
**stamp**
122:10
**stamped**
57:12
**stand**
8:6, 49:3,
80:1, 126:17,
155:9
**standard**
43:12, 63:4,
91:11, 110:22,
140:23
**standards**
23:20, 23:21,
24:4, 140:13,
140:14
**standing**
49:12
**standpoint**
145:14
**start**
48:15, 58:16,
138:15

**started**
22:19, 49:10,
66:19, 154:4
**starting**
30:1, 48:19,
50:17, 70:10,
81:22, 129:13
**starts**
48:13, 53:13,
53:17, 53:19,
124:21
**state**
5:14, 8:3, 9:9,
9:13, 20:19,
34:16, 36:7,
41:22, 61:13,
62:23, 65:15,
66:19, 66:23,
104:10, 105:9,
113:8, 128:13,
132:21
**stated**
23:1, 34:6,
38:6, 38:10,
55:8, 56:18,
58:23, 69:11,
86:2, 92:25,
111:4, 120:2,
131:4, 131:7,
140:12, 141:5,
148:5, 150:23
**statement**
25:10, 35:8,
38:19, 39:13,
39:23, 53:8,
55:3, 56:4,
60:20, 67:16,
68:12, 69:7,
69:8, 69:9,
72:8, 78:23,
79:3, 86:1,
87:5, 103:2,
111:12, 111:17,
114:19, 127:3,
128:10, 131:19,
134:22, 148:8
**statements**
7:6, 7:9,

10:19, 55:12,
64:25
**states**
1:1, 5:5,
19:11, 40:3,
49:20, 54:20,
55:1, 128:16,
130:22, 143:18
**stating**
24:14, 132:8
**stats**
91:14
**stayed**
130:13
**stein**
3:14, 5:19
**stems**
39:24, 54:6
**stenographically**
157:9
**step**
97:7, 101:8,
101:16, 101:25,
102:3, 102:5,
102:15
**steps**
97:6, 102:6
**stick**
152:25
**still**
40:22, 57:25,
59:4, 67:12,
78:2, 89:14,
117:24, 131:15
**stop**
7:3
**strategy**
107:12
**street**
3:15, 102:20,
103:4, 103:13,
104:2
**stretch**
77:7
**strike**
40:13, 71:19,
113:9
**stuff**
148:12

**subject**
24:4, 62:11
**subjective**
68:17, 97:19
**subjectively**
97:24, 97:25
**subjectivity**
98:6, 98:9
**subsequent**
129:8
**substantial**
124:8
**subtract**
47:21, 48:2
**subtracted**
47:19
**subtracting**
48:4
**subtraction**
47:4
**sufficiently**
62:10, 62:13,
63:15, 65:16,
68:24
**suggested**
136:20, 138:22,
138:24, 146:1,
149:23
**suite**
2:11, 3:6,
3:16, 5:11
**sum**
57:20
**summarize**
13:1
**summary**
83:11, 95:18
**supplement**
13:13, 13:16
**support**
13:2, 21:3,
51:2, 53:7,
77:10, 101:10,
129:2, 135:5
**supported**
75:24
**supporting**
56:7

supports
76:16
sure
24:9, 26:9,
28:22, 30:15,
42:7, 52:21,
53:17, 74:4,
76:4, 99:1,
101:25, 103:22,
105:6, 116:20,
141:23, 141:25,
147:19, 150:1
swath
81:20, 82:12
swear
5:23
sworn
6:2
synapse
102:23
synapses
90:14
synthesized
113:20

**T**

t-e-c-h
11:23
t-h-o-r-n-t-o-n
7:24
tab
152:11
table
138:17
tag
17:23
take
7:5, 8:13,
35:12, 39:15,
43:21, 48:25,
50:7, 55:18,
79:16, 79:22,
79:25, 100:25,
101:3, 109:8,
119:14, 126:12,
126:13, 126:16,
139:12, 142:16
taken
9:11, 94:16,

95:18, 129:12,
151:15, 157:6,
157:8
takes
33:3
taking
5:11, 33:12,
47:7, 86:9,
86:10, 139:15,
145:19
talk
16:1, 33:20,
73:4, 75:15,
80:17, 105:1,
113:9, 148:25
talked
89:25, 104:17,
113:7, 125:12
talking
28:3, 86:21,
86:22, 91:5,
97:6, 106:16,
109:22, 122:21,
123:14, 148:24
talks
55:16
target
123:7, 130:1
targeted
121:19
targets
85:6
taxes
70:2, 70:3
team
63:19
tech
11:23, 73:24
techniques
78:4
technologies
100:11
technology
63:1, 100:10
tell
8:6, 9:3, 10:6,
17:11, 108:8,
112:7, 122:12

ten
7:19, 9:2,
11:4, 45:18,
118:8, 126:10
tend
99:16, 101:10
tendency
6:22
term
81:23, 142:12
tested
24:15
testified
6:4, 6:13,
65:22, 147:10,
149:20, 150:18
testify
6:2, 11:7
testifying
61:13
testimony
10:3, 10:14,
11:6, 11:17,
23:23, 34:14,
50:22, 66:15,
66:16, 67:10,
76:19, 83:3,
140:6, 141:5,
156:4, 156:6
textbooks
62:20
th
3:15, 157:17
thank
20:6, 20:7,
26:6, 28:15,
30:19, 33:25,
50:23, 85:9,
85:11, 112:23,
120:19
thanks
112:24
themselves
5:14, 86:23,
128:7
thereafter
157:9
therefore
43:22, 50:18,

59:24, 61:6,
61:17, 65:17,
65:18, 68:7,
74:1, 78:16,
78:25, 80:21,
89:9, 91:1,
110:12, 125:11,
131:22, 132:12,
132:19
thing
7:22, 46:16,
59:1, 92:5,
125:24, 126:1,
136:11, 143:24,
144:16, 153:1,
154:18
things
8:2, 89:3,
125:25, 127:16
think
23:18, 24:7,
24:19, 25:7,
31:3, 34:9,
36:24, 37:5,
37:13, 41:4,
41:19, 46:7,
48:17, 48:24,
52:17, 53:15,
55:19, 55:23,
59:10, 65:22,
67:5, 68:20,
83:12, 86:8,
94:9, 95:12,
95:13, 99:14,
101:24, 106:13,
106:14, 114:15,
118:10, 119:3,
124:14, 124:20,
124:21, 127:2,
128:6, 129:17,
131:15, 135:17,
142:18, 147:9,
155:1
thinking
128:8
third
24:19, 43:6,
43:7, 75:4,

Transcript of Neil J. Beaton
September 22, 2022

195

103:15, 103:17,
103:24, 149:13
**third-party**
89:20, 90:2,
90:21, 103:12
**thornton**
7:23, 64:24,
65:5
**thought**
85:15, 101:21,
102:22, 120:10,
147:19, 150:23
**three**
41:22, 42:1,
42:4, 43:7,
76:25, 113:6,
128:6, 147:15,
147:17, 148:13
**through**
14:8, 15:11,
16:12, 22:7,
22:8, 30:1,
30:2, 31:4,
40:23, 44:4,
46:7, 63:7,
80:24, 81:4,
81:24, 96:11,
101:16, 101:25,
127:14, 129:6,
134:13, 151:16
**throughout**
85:21
**thursday**
1:16
**tie**
147:4
**time**
5:8, 12:24,
20:14, 24:19,
27:6, 30:3,
35:12, 40:19,
43:24, 48:24,
49:4, 49:9,
51:11, 52:16,
52:19, 53:22,
54:18, 60:4,
60:7, 68:15,
77:1, 77:16,

80:3, 80:8,
86:21, 86:22,
86:24, 90:13,
92:23, 93:9,
93:10, 94:4,
94:5, 106:17,
108:1, 111:1,
111:2, 115:24,
116:13, 118:13,
119:14, 119:19,
120:5, 126:18,
126:23, 132:17,
133:14, 149:4,
150:5, 150:15,
150:24, 155:12
**timeline**
50:5, 50:6,
124:6
**times**
6:12, 6:13,
101:4, 127:4,
127:14
**timing**
110:8
**tiny**
147:21
**today**
5:9, 5:22,
6:25, 7:10,
9:19, 9:21
**today's**
5:7
**together**
87:2, 114:9,
127:16, 151:7
**told**
24:17, 69:1,
145:17
**tony**
109:13
**took**
114:7
**tool**
135:12, 135:16,
135:20, 136:14,
136:15, 137:17,
139:21, 143:24,
144:2, 144:5,

148:14, 149:16,
149:17, 149:18
**top**
84:7, 94:10,
99:18, 143:9,
144:3
**topco**
1:7, 5:4, 5:20,
6:11, 11:25,
12:1
**topic**
140:14
**total**
40:17, 57:22
**touch**
137:12, 137:13
**toward**
24:9
**track**
136:11
**trade**
109:3
**traded**
88:22, 88:23,
120:4, 142:25,
143:22
**trading**
149:7
**trailing**
118:10
**transaction**
17:20, 18:5,
19:10, 19:22,
28:5, 29:11,
31:18, 32:5,
32:12, 32:22,
33:13, 33:17,
48:18, 92:1,
92:23, 94:24,
95:2, 95:9,
96:8, 112:2,
116:9, 116:10,
118:4, 134:8,
137:20, 137:25,
138:7, 138:9,
139:9, 143:1,
144:25, 147:7,
151:1

**transactional**
118:12, 151:19
**transactions**
17:7, 26:1,
27:12, 29:13,
33:3, 33:10,
33:16, 33:24,
73:10, 73:11,
73:15, 75:16,
75:17, 75:21,
77:24, 89:21,
94:6, 99:4,
101:11, 108:16,
119:25, 120:2,
122:12, 122:20,
134:11, 139:8,
140:19, 141:16,
142:4, 143:4,
145:17, 145:25,
148:5, 148:22,
154:25
**transcribed**
7:7
**transcript**
4:9, 20:5,
30:24, 57:5,
112:21, 120:20,
129:12, 155:16,
157:7
**transcription**
156:5
**transmissions**
150:9
**transparency**
77:21
**transparent**
27:17, 101:13
**trees**
30:20
**tremendous**
51:5, 93:23,
121:12, 121:13
**trial**
13:2, 60:19
**trier**
54:19, 54:20
**trigger**
45:11, 51:8

**triggered**
43:9, 45:5,
50:15, 56:9,
59:23, 60:5,
102:23
**triggering**
45:10
**triggers**
61:5
**true**
10:20, 20:11,
28:1, 28:20,
32:16, 73:14,
113:20, 117:15,
118:5, 119:6,
131:22, 139:20,
144:6, 145:6,
145:12, 145:14,
146:14, 156:5,
157:7
**trust**
87:1
**truth**
6:3, 6:4
**try**
34:21, 58:20
**trying**
24:21, 29:5,
50:5, 52:1,
98:23, 104:20,
104:21, 117:10,
117:20
**turn**
40:1, 49:19,
52:9, 53:10,
62:6, 112:14,
113:6
**turned**
10:20
**twice**
73:17, 132:7
**two**
8:2, 12:19,
13:11, 18:21,
21:13, 24:7,
24:9, 26:9,
27:12, 28:2,
32:9, 63:23,

73:13, 80:21,
86:23, 87:17,
97:7, 104:13,
105:7, 108:18,
109:11, 128:6,
128:7, 137:20,
137:21, 138:6,
138:7, 139:18,
143:9, 143:11,
153:9, 154:2,
155:2
**two-paragraph**
114:17
**type**
15:18, 136:18,
136:21
**types**
65:4, 141:16
**typewriting**
157:10
**typically**
62:19, 63:3,
72:25, 89:1,
90:7, 90:25,
96:21, 96:25,
110:12
**typing**
126:16
**tysons**
1:15, 2:10,
2:12, 3:5, 3:7,
5:11

---
**U**
---

**ugly**
120:8
**uk**
17:19
**ultimate**
58:23, 63:11,
67:25, 68:17
**ultimately**
14:21, 50:17,
63:2, 63:22,
63:25, 102:14,
117:9, 117:25,
118:1, 118:16,
125:22, 149:6

**under**
7:7, 7:9, 9:8,
11:5, 11:15,
27:13, 35:6,
36:20, 38:25,
39:1, 39:6,
44:3, 45:10,
57:18, 73:10,
75:11, 77:24,
92:3, 92:7,
111:9, 125:12,
141:3, 157:10
**understand**
6:18, 24:21,
24:22, 39:19,
91:22, 98:15,
100:23, 139:2
**understanding**
19:20, 29:24,
55:20, 55:21,
56:1, 63:17,
70:22, 71:7,
73:24
**unexecuted**
49:14
**unfortunately**
50:8
**unit**
17:24, 35:4,
37:2, 38:8,
40:15, 49:14,
50:15
**united**
1:1, 5:5, 19:11
**units**
24:13, 36:4,
40:4, 40:18,
41:11, 43:23,
45:6, 50:13,
51:9, 51:10,
53:22, 53:23,
56:10, 56:13,
56:17, 60:2,
60:12, 60:13,
61:2, 61:9,
88:16, 111:3,
113:14, 115:25,
116:1, 116:3,

116:11, 116:20,
117:1, 125:9
**unless**
18:20, 100:8,
122:7, 124:13
**unobservable**
96:2, 96:4,
96:6, 96:13,
96:16, 96:18
**unpaid**
57:22
**unreliable**
127:7, 131:23
**until**
32:1, 49:22,
77:1
**unvested**
40:4
**update**
108:2
**upfront**
129:20
**use**
6:22, 24:1,
29:13, 30:5,
49:12, 63:5,
67:17, 69:21,
69:22, 69:25,
70:1, 70:2,
70:4, 70:6,
70:9, 70:10,
71:11, 72:17,
85:23, 96:3,
99:2, 99:7,
99:8, 99:9,
113:25, 121:4,
121:11, 127:21,
137:17, 140:1,
140:18, 142:12,
143:4, 143:9,
144:24, 147:23,
147:25, 150:4,
150:5, 150:15
**using**
28:4, 28:19,
29:12, 47:1,
67:22, 67:23,
75:19, 78:19,

Transcript of Neil J. Beaton
September 22, 2022

197

81:2, 86:16,
87:14, 92:2,
123:22, 140:25,
149:15, 149:23,
150:16, 150:19
**uspap**
23:24, 24:4
**usual**
6:15
**usually**
91:4
**utilize**
80:20
**utilized**
13:5, 19:17,
21:5, 28:10,
74:3, 81:15,
148:4

**V**

**validate**
8:19, 14:13,
14:22, 47:6,
78:7, 78:15,
85:25, 147:11,
148:20, 152:1
**validateable**
14:19, 78:6,
78:16
**validated**
21:17
**validation**
77:20, 78:12
**validity**
24:11, 24:15,
59:6, 61:25,
77:22
**valuable**
71:12
**valuating**
141:21
**valuations**
8:9, 21:16,
25:4, 26:19,
27:17, 28:5,
29:12, 29:15,
29:25, 32:18,
32:20, 63:22,

64:13, 67:21,
68:5, 68:16,
77:18, 82:4,
84:12, 84:13,
87:10, 89:15,
102:1, 117:4,
127:12, 148:17,
151:23
**valuator**
71:8
**valued**
34:2, 118:16
**values**
82:13, 87:5,
128:9, 154:20
**valuing**
15:19, 70:9,
70:11, 118:9
**variable**
143:25
**variables**
62:11, 69:10,
69:13, 69:15,
69:17, 69:19,
70:7, 70:8,
70:15, 70:20,
71:1
**variety**
15:20, 110:25
**various**
64:3, 91:19
**vast**
70:14, 70:15,
114:15
**vegas**
82:9, 107:23
**venture**
15:20
**veranex**
16:20, 16:25,
17:10, 18:4,
19:2, 19:3
**veranex's**
16:24
**verbal**
6:24
**verifiable**
27:17, 28:21,

101:13
**verify**
28:22
**versions**
135:11
**versus**
11:10, 96:2,
96:6, 96:11,
96:16, 96:17
**vest**
40:4, 40:19,
41:11, 42:5,
42:15, 43:5,
117:1
**vested**
24:13, 43:15,
43:23, 44:5,
44:7, 44:24,
53:22, 53:23,
115:25, 116:16
**vesting**
41:11, 42:19,
45:6, 53:22,
53:23, 54:16,
54:22, 115:24,
116:10, 116:15
**vetted**
63:24, 63:25,
64:15
**video**
5:8, 5:10
**videographer**
3:22, 5:2, 5:9,
5:21, 7:4, 7:8,
49:3, 49:8,
80:1, 80:7,
126:17, 126:22,
155:9
**videotaped**
1:13, 2:1, 5:3,
155:10
**viii**
36:8
**virginia**
1:15, 2:12,
2:23, 3:7, 5:12,
157:25
**vista**
85:3

**voice**
5:13
**vwr**
11:10

**W**

**walk**
136:6
**wall**
17:2, 102:20,
103:4, 103:13,
104:2
**walled**
16:23
**want**
6:14, 24:8,
30:4, 30:11,
34:6, 34:24,
35:17, 37:25,
40:1, 40:25,
43:21, 45:13,
46:5, 46:6,
47:4, 49:23,
50:21, 55:11,
55:20, 56:3,
62:5, 62:12,
64:17, 71:10,
71:23, 73:3,
74:4, 75:7,
75:9, 79:15,
79:25, 91:3,
91:21, 92:3,
98:14, 100:23,
101:6, 105:5,
105:20, 107:16,
110:4, 112:14,
119:8, 119:21,
123:21, 124:14,
126:9, 126:13,
127:8, 129:10,
142:1, 144:24,
146:23, 148:24,
150:15
**wanted**
71:18, 72:16,
79:19, 79:22,
88:17, 90:1,
94:8, 124:16,

Transcript of Neil J. Beaton
September 22, 2022

198

| | | | |
|---|---|---|---|
| 133:25, 141:19, 141:23, 146:23, 148:1, 148:20, 150:6 | 101:24, 115:11, 118:11, 125:22, 151:16 | 51:8, 60:23, 75:25, 102:13, 109:8, 110:16, 123:7 | **world** 78:5 |

133:25, 141:19,
141:23, 146:23,
148:1, 148:20,
150:6
**wants**
55:14, 66:15
**wares**
117:11
**washington**
3:17, 8:3, 9:9
**way**
29:1, 30:2,
31:25, 47:2,
66:2, 87:12,
141:23, 141:25,
143:15, 143:18,
143:19, 145:2,
145:16, 145:21,
145:22, 146:4,
146:5, 154:14,
154:16
**we'll**
79:25
**we're**
23:24, 28:11,
47:25, 48:23,
69:7, 79:13,
80:13, 91:17,
94:6, 94:17,
96:24, 102:16,
126:5, 139:4,
143:4, 143:8,
148:24, 148:25,
149:8, 152:23,
154:12
**we've**
24:7
**week**
82:10
**weinberg**
28:13, 28:15,
104:9, 104:11,
104:19, 106:9,
108:10
**weinstein**
28:7
**went**
32:2, 56:22,

101:24, 115:11,
118:11, 125:22,
151:16
**weren't**
14:16, 68:4,
117:8, 149:15
**whatever**
74:19, 87:2,
111:6, 130:9
**whatsoever**
45:25, 70:5,
114:19
**whereas**
11:7
**wherein**
14:1, 75:18,
88:10
**whereof**
157:15
**whereupon**
5:25
**whether**
34:12, 44:7,
45:11, 68:23,
71:8, 85:17,
103:12, 103:16,
129:7, 144:24
**whole**
6:3, 60:14,
78:13
**wholesale**
86:6
**wide**
63:10, 110:25
**wil**
101:3
**william**
157:25
**williams**
122:9, 123:15
**willing**
119:24
**wirehouses**
104:5
**wish**
82:17, 136:10
**within**
17:12, 50:14,

51:8, 60:23,
75:25, 102:13,
109:8, 110:16,
123:7
**without**
133:21, 136:17
**witness**
5:24, 20:6,
21:24, 28:12,
28:15, 30:20,
37:10, 48:23,
99:18, 99:22,
112:24, 119:2,
120:19, 121:24,
136:1, 136:3,
136:7, 157:15
**wondering**
103:11
**word**
75:23, 78:17,
90:15, 128:11
**wording**
43:19
**words**
23:6, 109:6,
123:19
**work**
7:14, 8:24,
9:6, 9:19, 9:23,
12:8, 14:20,
15:11, 15:18,
15:19, 16:4,
16:7, 16:8,
16:12, 16:19,
19:21, 43:2,
46:20, 60:10,
60:14, 65:6,
73:23, 73:24,
90:25, 91:5,
138:4
**worked**
7:21
**working**
15:16, 15:17,
18:21, 150:16
**works**
47:5, 135:21,
136:22

**world**
78:5
**worth**
56:19, 118:2,
118:3, 119:8
**wouldn't**
28:20, 56:9,
57:24, 100:2,
118:5, 119:20,
119:22, 131:9,
131:25, 142:6
**write**
62:15, 132:25
**writing**
20:15
**wrong**
28:25, 72:19,
124:1, 131:16
**wrote**
12:24, 56:5,
105:15

**X**

**x-e-n-d-o**
108:10
**xendo**
108:9
**xiii**
36:9

**Y**

**yeah**
11:1, 33:17,
34:15, 37:3,
37:20, 37:21,
38:1, 41:25,
44:25, 46:10,
48:17, 52:25,
53:15, 53:17,
54:5, 54:16,
55:7, 58:8,
60:9, 64:11,
66:4, 66:22,
67:18, 70:17,
79:12, 81:18,
81:20, 85:11,
88:7, 89:14,
95:12, 95:15,

102:1, 105:15,
116:6, 119:6,
120:17, 120:18,
120:21, 121:3,
123:7, 124:16,
126:15, 126:16,
129:19, 132:7,
135:22, 137:6,
137:8, 137:13,
141:14, 143:14,
144:12, 144:20,
151:6, 153:20,
153:21
**year**
73:16, 118:3,
124:7, 124:8
**years**
7:19, 9:2,
11:4, 64:24,
76:25, 77:1
**yellow**
142:21, 154:16
**young**
151:8
**yourself**
71:9

**$**

**$1,396,889**
113:15
**$1.160**
93:22
**$1.99**
56:20
**$105,227.97**
113:17
**$13**
128:21, 131:13
**$199**
56:20
**$2,197,357**
113:15
**$472.5**
47:13
**$560**
131:4
**$684,008**
113:16

**$93,750**
57:23

**0**

**00**
80:4, 80:5,
126:19, 126:20
**0000056**
56:11
**00001292**
4:14
**00001297**
57:12
**00001300**
4:14
**0000458**
4:20, 135:16
**0000461**
4:17
**0000465**
135:9
**0000466**
4:17
**000408**
82:23
**00894**
1:6, 5:6
**02**
49:5, 49:6
**05**
126:21, 126:23
**09**
49:7, 49:9

**1**

**1.775**
100:17
**10**
134:13
**10.5**
109:9
**104**
48:8
**11**
40:3, 49:5,
49:6, 49:7,
49:9, 62:6,
65:14, 69:13,

**72:1**
**112**
4:18
**112.7**
48:6
**12**
4:18, 9:2,
47:1, 47:7,
73:3, 80:4,
80:5, 80:6,
80:8, 82:4,
118:10, 130:18,
134:13, 134:17,
134:23, 135:6,
152:5, 152:7,
153:6, 153:7,
153:8
**12.2**
138:14, 139:12,
143:10
**127.9**
146:23
**129**
57:13
**129.2**
48:4
**1295**
57:13
**13**
50:4, 80:16,
87:4, 127:1,
129:24
**13.6**
98:7, 98:21,
99:3, 109:10,
124:24
**13.85**
32:8, 32:13,
33:13, 48:19,
67:6, 139:13,
139:15
**13.9**
30:10, 31:10,
31:14, 32:8,
32:11, 47:10,
48:13, 48:14,
48:19, 98:24,
99:5, 109:9,

124:24, 137:22,
139:1, 139:13,
143:8, 146:1,
146:6, 153:19,
153:20, 153:23
**14**
31:19, 49:20,
53:9, 53:11,
54:12, 54:24,
89:14, 89:15,
91:22, 120:1
**14.1**
98:7, 109:9
**14.6**
123:6
**15**
3:15, 54:25,
56:5, 60:21,
95:19, 111:24,
118:8, 123:17,
132:20, 135:6,
138:14
**15.5**
138:14, 139:12,
143:10
**153.9**
48:3
**155**
4:17, 4:20
**157**
1:24
**16**
30:1, 45:4,
67:7, 96:1,
96:3, 98:13,
101:7, 123:17
**16.7**
31:23
**17**
101:23, 125:1,
134:5, 134:6,
135:4
**17.4**
31:17, 31:25
**17.5**
138:14
**17.9**
95:21, 123:12

Transcript of Neil J. Beaton
September 22, 2022

**1750**
2:10, 3:5, 5:11
**18**
58:25, 82:1,
82:4, 109:20,
123:10
**1800**
2:11, 3:6, 5:12
**189.5**
47:21
**19**
4:11, 20:10,
30:7, 31:12,
48:17, 67:18,
75:15, 81:23,
82:4, 98:4,
111:22, 125:1
**195**
129:13

**2**

**2**
126:19, 126:20,
126:21, 126:23,
155:12, 155:17
**2.0**
139:11, 139:16,
142:22, 143:2,
152:23, 152:24,
154:13, 154:16
**2.5**
43:6, 48:11,
48:21, 98:19,
98:25, 99:2,
138:24, 139:6,
143:6, 146:1,
147:6, 152:24,
153:22, 154:22
**2.6**
137:10, 138:12,
139:10, 142:22,
143:1, 143:21,
152:23
**2.7**
101:4
**2.9**
138:19, 139:11,
139:16, 142:23,

143:2, 152:23,
152:24, 154:13,
154:15, 154:17
**20**
1:16, 4:11,
5:7, 82:4
**2000**
10:7
**20005**
3:17
**2016**
49:22, 57:18,
63:19
**2019**
4:16, 29:22,
30:3, 30:4,
31:13, 32:6,
43:20, 43:21,
49:23, 52:18,
52:20, 53:21,
54:21, 61:10,
65:21, 67:1,
77:10, 81:25,
82:1, 82:3,
82:4, 82:23,
93:13, 94:11,
94:12, 95:1,
113:17, 113:18,
116:18, 119:10,
119:12, 119:16,
119:22, 124:24,
132:22, 133:2,
135:14, 148:7
**202**
3:18
**2020**
4:13, 45:3,
52:15, 57:8,
57:15, 82:2,
82:3, 93:15,
119:15, 120:8,
124:4, 132:24,
133:2, 133:10
**2022**
1:16, 4:11,
4:18, 5:7,
157:17
**2026**
157:20

**21**
1:6, 5:6
**217.4**
48:9
**22**
1:16, 5:7,
98:4, 98:8
**22102**
2:12, 3:7, 5:12
**23**
33:10, 62:6,
62:7, 65:9,
65:11, 68:13,
69:13, 70:16,
72:1, 73:3,
74:18, 78:22,
134:7
**24**
57:18, 80:16
**25**
146:15, 147:16
**26**
22:7
**27**
87:4, 89:14,
89:15
**28**
91:22, 157:17
**283.1**
47:23
**2x**
43:5

**3**

**3.0**
116:13, 136:21,
138:13, 139:11,
142:22, 143:1,
152:23
**30**
4:12, 29:17,
29:22, 31:13,
32:6, 49:22,
65:20, 67:1,
73:10, 74:3,
74:17, 74:18,
77:10, 77:23,
82:3, 82:23,

**93**:13, 94:16,
94:17, 98:17,
115:23, 119:22,
135:14
**31**
49:23, 50:22,
50:23, 52:19,
54:21, 61:10,
81:23, 82:2,
82:4, 94:12,
96:3, 97:5,
101:7, 101:23,
157:20
**33**
41:10, 104:8,
108:20
**33.9**
47:7, 118:10
**34.6**
118:10
**35**
109:20, 111:13
**37**
111:22
**38**
75:14, 83:16
**39**
109:15, 109:18
**3x**
41:12, 116:7,
116:19

**4**

**4 (c**
40:25, 41:24,
41:25, 42:3,
43:14, 53:25,
54:6
**4 (c) (i**
54:1, 54:6,
54:7
**4 (c) (iii**
41:1
**40**
9:25
**42**
152:10, 152:11
**44**
155:12, 155:17

**461**
83:17
**463**
107:5
**464090**
1:23
**466**
83:17
**472**
118:19
**472.5**
119:4
**48**
80:6, 80:8

**5**

**5,230.339**
115:25
**50**
36:14, 36:15,
37:18
**500**
45:19
**5000**
3:8
**560**
128:14, 129:17,
129:20, 132:1,
132:9, 132:15,
132:16, 132:19
**57**
4:14
**573**
128:19, 129:17,
130:14, 131:15,
132:9, 132:12
**574**
122:10, 123:16
**58**
56:11
**585**
101:5
**59**
1:17, 5:8

**6**

**605**
123:16

**634,000**
29:21
**645**
123:16
**684,000**
38:23

**7**

**7/9/19**
94:25
**700**
3:16
**703**
3:8
**7060756**
157:26
**712**
3:8
**73.2**
48:5
**737**
3:18
**75**
147:16
**7777**
3:18

**8**

**8,046.365**
40:17, 116:1
**8.3**
109:9
**804.6364**
53:21
**804.637**
115:24
**820**
140:15, 140:16
**87**
48:10

**9**

**9**
1:17, 5:8
**901**
3:15



# Transcript of Anthony Davis, Designated Representative

**Date:** September 12, 2022
**Case:** Donnelly -v- ProPharma Group TopCo., LLC

**Planet Depos**
**Phone:** 888.433.3767
**Email:** transcripts@planetdepos.com
**www.planetdepos.com**

WORLDWIDE COURT REPORTING & LITIGATION TECHNOLOGY

1              IN THE UNITED STATES DISTRICT COURT

2                 FOR THE DISTRICT OF DELAWARE

3      - - - - - - - - - - - x

4    PATRICK K. DONNELLY,      :

5           Plaintiff,         :

6      v.                      : C.A. 21-cv-000894-MAK

7    PROPHARMA GROUP           :

8    TOPCO, LLC,               :

9           Defendant.         :

10     - - - - - - - - - - - x

11

12

13              VIDEOTAPED Deposition of

14           ProPharma Group Topco, LLC, by

15                 ANTHONY DAVIS

16           Monday, September 12, 2022

17                 12:18 p.m. CST

18

19

20

21

22

23    Job No.: 459098

24    Pages: 1 - 167

25    Reported By:  Michelle M. Yohler, CSR, RMR, CRR

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                        2

1        Videotaped deposition of ANTHONY DAVIS, held at

2    McGuireWoods, LLP, 77 West Wacker Drive, 44th

3    Floor, Chicago, Illinois 60601 pursuant to notice

4    before Michelle M. Yohler, CSR, RMR, CRR, a

5    certified shorthand reporter, CSR No. 84-4531.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                    3

```
 1              A P P E A R A N C E S

 2

 3   ON BEHALF OF THE PLAINTIFF:

 4       MR. KEITH JOSEPH MINSON

 5       McGUIRE WOODS LLP

 6       1750 Tysons Boulevard, Suite 1800

 7       Tysons, Virginia 22102-4215

 8       703.712.5000

 9

10

11   ON BEHALF OF THE DEFENDANT:

12       MR. ROBERT B. GILMORE

13       STEIN MITCHELL BEATO & MISSNER LLP

14       901 15th Street NW, Suite 700

15       Washington, D.C. 20005

16       202.737.7777

17

18

19

20   ALSO PRESENT:

21         Mr. Austin Olijar, Videographer

22

23

24

25
```

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                    4

```
1                E X A M I N A T I O N S

2

3     WITNESS                                      PAGE

4     ANTHONY DAVIS

5         By Mr. Minson..........................    9

6

7                    E X H I B I T S

8     EXHIBITS                                     PAGE

9     No. 1    First Amended Complaint.............   17

10    No. 2    09/04/202 McGuireWoods Letter.......   22

11    No. 3    09/23/2020 Email Chain - Subject:

12             "Redacted"..........................   29

13    No. 4    09/03/2019 Letter...................   30

14    No. 5    ProPharma Group Topco, LLC -

15             Consent of the Majority Linden

16             Investors...........................   34

17    No. 6    10/07/2019 Email - Subject:  Pat

18             Donnelly............................   40

19    No. 7    05/14/2019 Email Chain - Subject:

20             Repurchase Agreement for Pat

21             Donnelly............................   42

22    No. 8    05/12/2020 Email Chain - Subject:

23             Repurchase Agreement for Pat

24             Donnelly............................   48

25                    (Continued)
```

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                    5

```
 1                  E X H I B I T S

 2   EXHIBITS                                    PAGE

 3   No. 9    09/04/2019 Email Chain - Subject:

 4            Pat Donnelly Documents..............    50

 5   No. 10   Offer to Join the Board of

 6            Directors..........................    55

 7   No. 11   ProPharma Group Topco, LLC

 8            Management Incentive Unit

 9            Agreement..........................    58

10   No. 12   01/22/2019 Email Chain - Subject:

11            Pat Donnelly.......................    62

12   No. 13   Defendant's Answer and

13            Affirmative Defenses to

14            Plaintiff's First Amended

15            Complaint..........................    65

16   No. 14   08/22/2019 Email Chain - Subject:

17            Mm-mm..............................    67

18   No. 15   07/01/2019 Email Chain - Subject:

19            2019 Q2 ProPharma Board of

20            Directors Meeting..................    71

21   No. 16   10/14/2018 Email Chain - Subject:

22            CDMO PharmaBlock Purchases

23            Chinese Facility...................    75

24

25                  (Continued)
```

PLANET DEPOS
888.433.3767 | WWW.PLANETDEPOS.COM

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                          6

```
 1                    E X H I B I T S

 2    EXHIBITS                                        PAGE

 3    No. 17   01/25/2019 Email Chain - Subject:

 4             The Weinberg Group.................    80

 5    No. 18   03/17/2018 Email Chain - Subject:...   82

 6    No. 19   04/22/2019 Email Chain - Subject:

 7             Advarra...........................      85

 8    No. 20   04/29/2019 Email Chain - Subject:

 9             Advarra...........................      89

10    No. 21   9/18/2020 Email - Subject:

11             ProPharma.........................      92

12    No. 22   Appendix B - Valuation Policy -

13             Linden Manager LLC................      96

14    No. 23   "ProPharma Group - Incentive

15             Equity - Pat Donnelly".............     99

16    No. 24   06/25/2019 Email Chain..............   107

17    No. 25   09/09/2019 Email Chain - Subject:

18             Valuation Data.....................    112

19    No. 26   Purchase Agreement.................    118

20    No. 27   Cantor Pitch Deck..................    125

21    No. 28   Centerview Pitch Deck..............    125

22    No. 29   Harris Williams Pitch Deck.........    125

23    No. 30   Perella Weinberg Pitch Deck........    125

24    No. 31   William Blair Pitch Deck...........    125

25                  (Continued)
```

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                        7

```
1                    E X H I B I T S

2    EXHIBITS                                    PAGE

3    No. 32   Linden/ProPharma Preliminary

4             Questions and Topics for

5             Discussion........................    152

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                    8

|   |                                                        |          |
|---|--------------------------------------------------------|----------|
| 1 | P R O C E E D I N G S                                  | 12:18:09 |
| 2 | THE VIDEOGRAPHER:  Here begins Disk                    | 12:18:09 |
| 3 | Number 1 in the media-taped deposition of Anthony      | 12:18:11 |
| 4 | Davis, corporate designee for ProPharma Group          | 12:18:13 |
| 5 | Topco, LLC, in the matter of Patrick K. Donnelly       | 12:18:18 |
| 6 | versus ProPharma Group Topco, LLC, in the              | 12:18:20 |
| 7 | United States District Court for the District of       | 12:18:25 |
| 8 | Delaware, case number CA 21-CV-000894-M.A.K.           | 12:18:26 |
| 9 | Today's date is September 12th, 2022.  The             | 12:18:34 |
| 10 | time on the video monitor is 12:18 Central            | 12:18:39 |
| 11 | Standard Time, 12:18 p.m.                             | 12:18:44 |
| 12 | The videographer today is Austin Olijar,              | 12:18:45 |
| 13 | representing Planet Depos.                             | 12:18:48 |
| 14 | This videotaped deposition is taking place            | 12:18:49 |
| 15 | at McGuireWoods LLP Chicago, Illinois 60601.          | 12:18:52 |
| 16 | Would counsel please voice-identify                   | 12:18:57 |
| 17 | themselves and state whom they represent.             | 12:19:00 |
| 18 | MR. MINSON:  Keith Minson from                        | 12:19:02 |
| 19 | McGuireWoods on behalf of the plaintiff,              | 12:19:03 |
| 20 | Patrick K. Donnelly.                                  | 12:19:05 |
| 21 | MR. GILMORE:  Robert Gilmore with Stein               | 12:19:06 |
| 22 | Mitchell on behalf of ProPharma Group Topco, LLC.     | 12:19:08 |
| 23 | THE VIDEOGRAPHER:  The court reporter                 | 12:19:13 |
| 24 | today is Michelle Yohler, representing Planet         | 12:19:13 |
| 25 | Depos.  Would the reporter please swear in the        | 12:19:15 |

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                    9

| | | |
|---|---|---|
| 1 | witness. | 12:19:26 |
| 2 | (WHEREUPON, the witness was duly sworn.) | 12:19:27 |
| 3 | ANTHONY DAVIS, | 12:19:27 |
| 4 | called as a witness herein, having been first duly | 12:19:27 |
| 5 | sworn, was examined and testified as follows: | 12:19:27 |
| 6 | EXAMINATION | 12:19:27 |
| 7 | BY MR. MINSON: | 12:19:27 |
| 8 | Q  All right.  Mr. Davis, first, I just want | 12:19:28 |
| 9 | to make sure you -- explain that everything that | 12:19:30 |
| 10 | you say today obviously will be recorded.  And | 12:19:32 |
| 11 | unless either one of the parties, yourself and | 12:19:39 |
| 12 | your attorney or me, ask the court reporter to | 12:19:42 |
| 13 | stop recording, or if you need to take a break, | 12:19:45 |
| 14 | then we'll stop recording.  But otherwise, all of | 12:19:47 |
| 15 | your answers will be sworn under oath and recorded | 12:19:50 |
| 16 | for the record. | 12:19:52 |
| 17 | If you do end up needing to take a break, | 12:19:53 |
| 18 | just let me know.  I don't have any problem, like | 12:19:56 |
| 19 | you said, if you need to go to the bathroom. | 12:19:58 |
| 20 | I just want you to know that during the | 12:20:00 |
| 21 | deposition, I may use colloquial terms such as Pat | 12:20:02 |
| 22 | or Mr. Donnelly.  I just want to make sure you | 12:20:07 |
| 23 | understand that I'm referring to the plaintiff, | 12:20:10 |
| 24 | Patrick K. Donnelly when I use those words. | 12:20:13 |
| 25 | A  I do. | 12:20:15 |

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                    10

| | | |
|---|---|---|
| 1 | Q   Okay.  And I also may use ProPharma or PPG | 12:20:18 |
| 2 | to represent ProPharma Group Topco, LLC, or the | 12:20:23 |
| 3 | defendant in this case.  And I want to make sure | 12:20:26 |
| 4 | that you understand that when I say those terms, | 12:20:28 |
| 5 | that's who I'm referring to. | 12:20:30 |
| 6 | A  I do. | 12:20:31 |
| 7 | Q  As well as the firm that you're currently | 12:20:32 |
| 8 | with, Linden Capital Partners, if I say Linden, | 12:20:36 |
| 9 | I'm referring to Linden Capital Partners, the firm | 12:20:40 |
| 10 | that you're currently an operating partner of. | 12:20:44 |
| 11 | Do you understand that? | 12:20:46 |
| 12 | A  There are many different entities of | 12:20:47 |
| 13 | Linden, so if you're referring to -- that's fine, | 12:20:49 |
| 14 | as long as we're talking about the business Linden | 12:20:51 |
| 15 | Capital Partners.  If you just mean a specific | 12:20:55 |
| 16 | entity, please specify it. | 12:20:58 |
| 17 | Q  Okay.  I understand. | 12:21:06 |
| 18 | First, with regard to ProPharma, can you | 12:21:07 |
| 19 | tell me what your title was between | 12:21:09 |
| 20 | September 30th, 2016, and October 15th, 2020? | 12:21:13 |
| 21 | A  As I recall, I was -- at one point -- I | 12:21:16 |
| 22 | don't remember the exact time.  At one point, I | 12:21:23 |
| 23 | was chairmen of the board, and then later on I was | 12:21:25 |
| 24 | a board member, as I recall. | 12:21:27 |
| 25 | Q  Okay.  And what other positions did you | 12:21:29 |

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                      11

| | | |
|---|---|---|
| 1 | hold during that time? | 12:21:31 |
| 2 | A  I believe those were my positions. | 12:21:32 |
| 3 | Q  What about with other entities? | 12:21:34 |
| 4 | A  For ProPharma or? | 12:21:35 |
| 5 | Q  No, in your individual capacity. | 12:21:40 |
| 6 | A  At Linden? | 12:21:42 |
| 7 | Q  As you, as Mr. Anthony Davis. | 12:21:43 |
| 8 | MR. GILMORE:  Objection, form. | 12:21:46 |
| 9 | BY THE WITNESS: | 12:21:52 |
| 10 | A  I'm confused by the -- sorry, I apologize. | 12:21:52 |
| 11 | I'm confused by the position. | 12:21:54 |
| 12 | BY MR. MINSON: | 12:21:56 |
| 13 | Q  What other employment positions did you | 12:21:56 |
| 14 | hold while you were at ProPharma? | 12:21:58 |
| 15 | A  I don't think I was technically employed | 12:22:00 |
| 16 | by ProPharma as a director, although that's a | 12:22:02 |
| 17 | legal question, but I'm employed by the management | 12:22:05 |
| 18 | company of Linden Capital Partners. | 12:22:08 |
| 19 | Q  And when did you begin at Linden Capital | 12:22:14 |
| 20 | Partners? | 12:22:17 |
| 21 | A  2004. | 12:22:17 |
| 22 | Q  Okay.  And how did you meet Patrick | 12:22:17 |
| 23 | Donnelly? | 12:22:25 |
| 24 | A  We met through some mutual industry | 12:22:26 |
| 25 | connections in the general health care investing | 12:22:29 |

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                          12

| | | |
|---|---|---|
| 1 | area. | 12:22:38 |
| 2 | Q   And what is the -- what was the | 12:22:38 |
| 3 | relationship between Linden Capital Partners and | 12:22:40 |
| 4 | ProPharma? | 12:22:47 |
| 5 | A   Linden owned a majority interest in | 12:22:52 |
| 6 | ProPharma. | 12:22:55 |
| 7 | Q   And would it be accurate to say that | 12:22:55 |
| 8 | Linden acquired ProPharma beginning on that date, | 12:22:59 |
| 9 | that September 30th, 2016? | 12:23:02 |
| 10 | A   I don't remember the specific date, but | 12:23:04 |
| 11 | that is approximately when it occurred, as I | 12:23:06 |
| 12 | recall. | 12:23:14 |
| 13 | Q   And Jeff Hargroves was the founder of | 12:23:14 |
| 14 | ProPharma; is that correct? | 12:23:18 |
| 15 | A   Yes. | 12:23:19 |
| 16 | Q   And prior to Linden acquiring ProPharma, | 12:23:19 |
| 17 | did Patrick Donnelly and Jeff Hargroves have any | 12:23:27 |
| 18 | communications with regard to that acquisition? | 12:23:30 |
| 19 | A   I don't recall. | 12:23:32 |
| 20 | (WHEREUPON, discussion was had off the | 12:23:41 |
| 21 | record.) | 12:24:02 |
| 22 | BY MR. MINSON: | 12:24:02 |
| 23 | Q   So do you know if Patrick Donnelly had any | 12:24:03 |
| 24 | role in Linden acquiring ProPharma? | 12:24:11 |
| 25 | A   I don't recall a specific role at this | 12:24:13 |

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                    13

| | | |
|---|---|---|
| 1 | time.  It was six years ago. | 12:24:15 |
| 2 | Q   And can you describe your specific | 12:24:23 |
| 3 | responsibilities at ProPharma from when it was | 12:24:25 |
| 4 | initially acquired? | 12:24:31 |
| 5 | A   Initially, I was head of the deal team, so | 12:24:32 |
| 6 | I would have worked with the investment banker | 12:24:37 |
| 7 | selling the company and then interacted with the | 12:24:40 |
| 8 | management team and performed the duties normally | 12:24:42 |
| 9 | done by a deal partner at a private equity firm to | 12:24:52 |
| 10 | acquire a company. | 12:24:56 |
| 11 | Q   And were you directly involved in | 12:24:56 |
| 12 | acquisitions while you were there, then?  Was | 12:24:58 |
| 13 | that -- | 12:25:00 |
| 14 | A   Mm-hm. | 12:25:01 |
| 15 | Q   -- fair to say? | 12:25:01 |
| 16 | Do you remember how many? | 12:25:03 |
| 17 | A   I don't recall.  We often looked at | 12:25:04 |
| 18 | acquisitions, so there was quite a many -- a | 12:25:06 |
| 19 | number of acquisitions over time. | 12:25:08 |
| 20 | I'd also say Michael Farah over time | 12:25:10 |
| 21 | became the primary director from Linden, and so he | 12:25:15 |
| 22 | would have had more exact memories about precise | 12:25:17 |
| 23 | numbers. | 12:25:21 |
| 24 | Q   Okay.  And does Linden specialize in | 12:25:21 |
| 25 | health care companies? | 12:25:37 |

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                      14

| | | |
|---|---|---|
| 1 | A   We do. | 12:25:38 |
| 2 | Q   And it's true that Pat Donnelly was also | 12:25:39 |
| 3 | an operating partner of Linden; is that correct? | 12:25:49 |
| 4 | A   That question is a complicated question. | 12:25:51 |
| 5 | He was -- at one time had a signed operating | 12:25:58 |
| 6 | partner agreement with us that was subsequently | 12:26:03 |
| 7 | then terminated.  But at one time, he was -- had | 12:26:05 |
| 8 | an operating partner agreement with us, prior to | 12:26:11 |
| 9 | it being terminated. | 12:26:13 |
| 10 | Q   But during the ProPharma acquisition, he | 12:26:14 |
| 11 | was an operating partner?  He served as an | 12:26:17 |
| 12 | operating partner? | 12:26:20 |
| 13 | A   He was -- as my recollection, is he was an | 12:26:21 |
| 14 | operating partner at the time.  And the | 12:26:24 |
| 15 | termination of his operating partner agreement was | 12:26:27 |
| 16 | about the same time as his termination from the | 12:26:30 |
| 17 | board. | 12:26:33 |
| 18 | It actually was -- I'm sorry.  That's | 12:26:34 |
| 19 | mistaken.  The operating partner agreement | 12:26:36 |
| 20 | terminated earlier than that because he had been a | 12:26:38 |
| 21 | CEO (inaudible). | 12:26:41 |
| 22 | (Reporter clarification.) | 12:26:47 |
| 23 | BY THE WITNESS: | 12:26:47 |
| 24 | A   His operating partner agreement terminated | 12:26:48 |
| 25 | when he became CEO of Advarra, and he was -- no | 12:26:51 |

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                    15

| 1 | longer had an operating partner agreement with us. | 12:26:52 |
| 2 | But he remained on the board of ProPharma. | 12:26:54 |
| 3 | MR. GILMORE:  Advarra is A-d-v-a-r-r-a. | 12:26:59 |
| 4 | BY MR. MINSON: | 12:27:10 |
| 5 | Q  How was Linden involved in transactions | 12:27:11 |
| 6 | relating to ProPharma, including, for example, the | 12:27:13 |
| 7 | payment of incentive equity?  What role did Linden | 12:27:18 |
| 8 | have in those transactions? | 12:27:23 |
| 9 | MR. GILMORE:  Objection, form, foundation. | 12:27:25 |
| 10 | BY THE WITNESS: | 12:27:27 |
| 11 | A  Help me understand the question better, if | 12:27:30 |
| 12 | you would. | 12:27:32 |
| 13 | BY MR. MINSON: | 12:27:32 |
| 14 | Q  So ProPharma hands out incentive equity | 12:27:34 |
| 15 | units to its board members, correct? | 12:27:39 |
| 16 | A  Yes. | 12:27:41 |
| 17 | Q  And when determining the value of those | 12:27:41 |
| 18 | incentive equity units, is it ProPharma as an | 12:27:47 |
| 19 | entity that makes that determination, or does | 12:27:50 |
| 20 | Linden have a role? | 12:27:52 |
| 21 | A  In terms of the valuation of those units? | 12:27:53 |
| 22 | Q  Mm-hm. | 12:27:55 |
| 23 | A  We have a consistent process for all of | 12:27:56 |
| 24 | our portfolio companies performing quarterly | 12:28:03 |
| 25 | valuations, consistent over 18 years now, on how | 12:28:09 |

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                      16

| | | |
|---|---|---|
| 1 | to perform valuations. | 12:28:11 |
| 2 | Q  Okay.  So who has the ultimate decision of | 12:28:13 |
| 3 | as to what those incentive equity units are worth? | 12:28:17 |
| 4 | Is it ProPharma as an entity, or is it Linden? | 12:28:21 |
| 5 | A  I don't know that I can answer that in the | 12:28:24 |
| 6 | ultimate -- there are -- you know, the ultimate | 12:28:26 |
| 7 | authority, I don't know that I can answer that | 12:28:30 |
| 8 | question. | 12:28:32 |
| 9 | MR. GILMORE:  And I'll just object to the | 12:28:33 |
| 10 | last question as calling for a legal conclusion. | 12:28:34 |
| 11 | BY MR. MINSON: | 12:28:45 |
| 12 | Q  So I guess my question is really, is it | 12:28:49 |
| 13 | the CEO of ProPharma that -- does the CEO of | 12:28:52 |
| 14 | ProPharma or ProPharma's board have, like, veto | 12:29:00 |
| 15 | power if there's a determination that is not in | 12:29:04 |
| 16 | line with what they think the valuation of any | 12:29:06 |
| 17 | kind of incentive equity or any kind of company | 12:29:09 |
| 18 | share should be? | 12:29:14 |
| 19 | MR. GILMORE:  Objection, form, compound | 12:29:14 |
| 20 | question. | 12:29:16 |
| 21 | BY THE WITNESS: | 12:29:17 |
| 22 | A  I don't have the legal documents in front | 12:29:18 |
| 23 | of me, so I can't answer that question.  It is | 12:29:20 |
| 24 | effectively a legal question, of whether the CEO | 12:29:22 |
| 25 | has a veto or not. | 12:29:24 |

Transcript of Anthony Davis, Designated Representative
September 12, 2022                               17

| | | |
|---|---|---|
| 1 | BY MR. MINSON: | 12:29:29 |
| 2 | Q  And what role does Linden have in hiring | 12:29:29 |
| 3 | executive staff at ProPharma -- or did Linden have | 12:29:34 |
| 4 | in hiring executive staff at ProPharma during the | 12:29:37 |
| 5 | time of this lawsuit, or the relevant time of this | 12:29:40 |
| 6 | lawsuit? | 12:29:42 |
| 7 | A  What do you mean by "executive staff"? | 12:29:42 |
| 8 | Q  Board members.  Did Linden have the right | 12:29:44 |
| 9 | to terminate board members? | 12:29:49 |
| 10 | A  Linden had a designated -- designated | 12:29:51 |
| 11 | number of board members that we had free right to | 12:29:56 |
| 12 | hire and fire. | 12:30:00 |
| 13 | Q  Okay.  And what about staff, you know, | 12:30:01 |
| 14 | secretaries or just support staff at ProPharma? | 12:30:03 |
| 15 | A  From a legal perspective, I don't know | 12:30:07 |
| 16 | what a right was or was not.  On a practical | 12:30:10 |
| 17 | basis, it's not the role of Linden to be involved | 12:30:13 |
| 18 | in secretaries or staff. | 12:30:16 |
| 19 | MR. MINSON:  I'd like to mark this as | 12:30:42 |
| 20 | Exhibit 1. | 12:30:44 |
| 21 | (WHEREUPON, a certain document was marked | 12:30:44 |
| 22 | Davis Deposition Exhibit No. 1, for | 12:30:44 |
| 23 | identification.) | 12:30:45 |
| 24 | BY MR. MINSON: | 12:30:45 |
| 25 | Q  It's a copy of the first amended complaint | 12:30:45 |

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                          18

| | | |
|---|---|---|
| 1 | in this matter.  Have you reviewed this document? | 12:30:49 |
| 2 | A  Yes. | 12:30:51 |
| 3 | Q  And I'd like you to switch -- flip to | 12:30:51 |
| 4 | Exhibit E.  And on Exhibit E, it will be Page 6 -- | 12:30:57 |
| 5 | I'm sorry, Exhibit E.  It will be Page 30, not 6. | 12:31:03 |
| 6 | MR. GILMORE:  Counsel, what document is | 12:31:13 |
| 7 | Exhibit E, just so I can help find it here? | 12:31:14 |
| 8 | MR. MINSON:  I'm sorry. | 12:31:17 |
| 9 | MR. GILMORE:  That's fine. | 12:31:18 |
| 10 | MR. MINSON:  Exhibit E is the ProPharma | 12:31:20 |
| 11 | Group Topco amended and restated limited liability | 12:31:24 |
| 12 | company agreement dated as of September 30th, | 12:31:27 |
| 13 | 2016.  And this is the fully executed version. | 12:31:31 |
| 14 | BY MR. MINSON: | 12:31:44 |
| 15 | Q  And it's Page 30. | 12:31:44 |
| 16 | A  Mm-hm. | 12:31:45 |
| 17 | Q  If you look on Section 5.2 -- | 12:31:46 |
| 18 | A  Mm-hm. | 12:31:50 |
| 19 | Q  B.  I'm sorry, 5.2 small AI, large B. | 12:31:51 |
| 20 | A  Yep. | 12:32:01 |
| 21 | Q  You'll see that three managers were | 12:32:01 |
| 22 | designated by the Linden -- are designated by | 12:32:05 |
| 23 | Linden Investors, each a Linden Manager.  And one | 12:32:08 |
| 24 | of those is you, correct? | 12:32:10 |
| 25 | A  Yes. | 12:32:11 |

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                      19

| | | |
|---|---|---|
| 1 | Q   And you were designated by Linden III VOC | 12:32:12 |
| 2 | [sic], correct? | 12:32:18 |
| 3 | A   That is what the document states. | 12:32:19 |
| 4 | Q   Okay.  And Michael Farah is another one. | 12:32:22 |
| 5 | And it shows that Michael Farah was designated by | 12:32:25 |
| 6 | Linden VCOC managers, correct? | 12:32:29 |
| 7 | A   That's what the document states. | 12:32:33 |
| 8 | Q   Okay.  And then it shows Pat Donnelly.  He | 12:32:35 |
| 9 | was designated by the Linden Investors, correct? | 12:32:37 |
| 10 | A   That is what it says. | 12:32:42 |
| 11 | Q   And if you flip to Page 6 of that same | 12:32:43 |
| 12 | document, it identifies the Linden Investors as | 12:32:52 |
| 13 | Linden Buyer -- | 12:33:02 |
| 14 | A   Wait.  Hold on.  I'm just finding it. | 12:33:04 |
| 15 | Okay. | 12:33:06 |
| 16 | Q   So it defines the Linden Investors as, | 12:33:06 |
| 17 | collectively, Linden Buyer, Linden Splitter and | 12:33:09 |
| 18 | any of their affiliates and any of their | 12:33:14 |
| 19 | respective transferees. | 12:33:17 |
| 20 | Would you agree with that? | 12:33:18 |
| 21 | A   That's what it states. | 12:33:19 |
| 22 | Q   Okay.  Now, if you go back to Page 30. | 12:33:22 |
| 23 | A   Mm-hm. | 12:33:30 |
| 24 | Q   If you look at same section, except small | 12:33:30 |
| 25 | B, under "Term." | 12:33:36 |

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                          20

| | | |
|---|---|---|
| 1 | A  So big B, here? | 12:33:42 |
| 2 | Q  No, not big B.  Small B.  If there's a -- | 12:33:44 |
| 3 | A  Terms.  Okay.  I got it. | 12:33:47 |
| 4 | Q  There's a portion of that that says:  Any | 12:33:49 |
| 5 | Linden Manager or independent manager will be | 12:33:52 |
| 6 | removed from the board with or without cause at | 12:33:54 |
| 7 | the written request of the Linden Investors | 12:33:58 |
| 8 | entitled to appoint such Linden Manager. | 12:34:01 |
| 9 | And I guess my question regarding that is | 12:34:04 |
| 10 | do you read that -- since you agreed with me that | 12:34:10 |
| 11 | those two entities appointed you and Michael Farah | 12:34:14 |
| 12 | and the Linden Investors appointed Pat Donnelly, | 12:34:20 |
| 13 | and we defined Linden Investors, do you read that | 12:34:23 |
| 14 | to understand that Linden Buyer, Linden Splitter | 12:34:27 |
| 15 | and any of their affiliated entities would have to | 12:34:31 |
| 16 | remove who -- remove Pat Donnelly from the board? | 12:34:34 |
| 17 | MR. GILMORE:  Objection, form, foundation | 12:34:42 |
| 18 | and calls for a legal conclusion. | 12:34:47 |
| 19 | BY THE WITNESS: | 12:34:49 |
| 20 | A  I was about to say, that's a legal matter, | 12:34:49 |
| 21 | and I'm not a -- I'm not an attorney. | 12:34:51 |
| 22 | BY MR. MINSON: | 12:34:53 |
| 23 | Q  I didn't ask you for the legal answer.  I | 12:34:54 |
| 24 | asked you for how you read that question, read | 12:34:56 |
| 25 | that. | 12:35:00 |

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                    21

| | | |
|---|---|---|
| 1 | MR. GILMORE:  Same objections. | 12:35:01 |
| 2 | BY THE WITNESS: | 12:35:08 |
| 3 | A   Again, I'd have to -- there's other | 12:35:08 |
| 4 | definitions here I'd have to crawl through. | 12:35:10 |
| 5 | That's also Linden Manager.  There's other | 12:35:15 |
| 6 | entities listed here. | 12:35:18 |
| 7 | From a business standpoint, I think us and | 12:35:18 |
| 8 | Pat both understood that if Linden didn't want him | 12:35:22 |
| 9 | on the board, he wouldn't be on the board. | 12:35:24 |
| 10 | MR. MINSON:  Objection.  That's | 12:35:26 |
| 11 | nonresponsive.  I'd like you to strike that from | 12:35:27 |
| 12 | the record. | 12:35:35 |
| 13 | MR. GILMORE:  We object to that motion to | 12:35:35 |
| 14 | strike. | 12:35:37 |
| 15 | BY MR. MINSON: | 12:35:42 |
| 16 | Q   But you do agree that, on Page 6, Linden | 12:35:42 |
| 17 | Buyer, Linden Splitter are defined as the Linden | 12:35:46 |
| 18 | Investors, correct? | 12:35:49 |
| 19 | A   I agree that, as written, it reads: | 12:35:53 |
| 20 | Linden Investors means, collectively, Linden | 12:35:56 |
| 21 | Buyer, Linden Splitter and any of their affiliates | 12:35:59 |
| 22 | and any of their respective transferees. | 12:36:04 |
| 23 | So it seems to encompass any of our | 12:36:07 |
| 24 | affiliates or transferees. | 12:36:10 |
| 25 | MR. MINSON:  Would you mark this as | 12:36:31 |

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                        22

| | | |
|---|---|---|
| 1 | Exhibit 2. | 12:36:32 |
| 2 | BY MR. MINSON: | 12:36:32 |
| 3 | Q  This is a demand on behalf of Patrick K. | 12:36:37 |
| 4 | Donnelly.  It's a letter from Steve Robinson, a | 12:36:40 |
| 5 | former attorney at McGuireWoods, to Michael B. | 12:36:45 |
| 6 | Slade at Kirkland & Ellis, dated September 4th, | 12:36:49 |
| 7 | 2020, prior to this lawsuit being filed. | 12:36:53 |
| 8 | (WHEREUPON, a certain document was marked | 12:36:55 |
| 9 | Davis Deposition Exhibit No. 2, for | 12:36:55 |
| 10 | identification.) | 12:37:12 |
| 11 | THE WITNESS:  Are we done with this for | 12:37:12 |
| 12 | the moment? | 12:37:14 |
| 13 | MR. MINSON:  Yeah. | 12:37:14 |
| 14 | BY MR. MINSON: | 12:37:20 |
| 15 | Q  In your position at ProPharma and Linden, | 12:37:20 |
| 16 | have you ever seen this letter before? | 12:37:23 |
| 17 | A  Yes. | 12:37:24 |
| 18 | Q  And in the letter, on page identified -- | 12:37:24 |
| 19 | at the bottom, it's Bates number | 12:37:38 |
| 20 | DONNELLY00001294 -- sorry.  Strike that. | 12:38:06 |
| 21 | I'm sorry.  It's Bates-labeled | 12:38:13 |
| 22 | DONNELLY00001295. | 12:38:35 |
| 23 | Second paragraph from the bottom, it | 12:38:40 |
| 24 | reads:  As you are -- as your clients are aware, | 12:38:43 |
| 25 | Mr. Donnelly has not been paid his base | 12:38:47 |

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                      23

| | | |
|---|---|---|
| 1 | compensation of $37,500 under the ProPharma offer | 12:38:49 |
| 2 | dated October 24th, 2016, since the inception -- | 12:38:53 |
| 3 | since the inception of the agreement. | 12:38:59 |
| 4 | Mr. Donnelly expected to be paid that sum on a | 12:39:01 |
| 5 | quarterly basis as provided by the ProPharma | 12:39:04 |
| 6 | offer.  However, to date, the unpaid fees owed to | 12:39:06 |
| 7 | Mr. Donnelly total in excess of $93,750. | 12:39:10 |
| 8 | And it also says, in the next paragraph -- | 12:39:18 |
| 9 | it refers to the undervaluation of Mr. Donnelly's | 12:39:26 |
| 10 | owed ProPharma stock and suggests that | 12:39:30 |
| 11 | inappropriate -- it says:  Mr. Donnelly has | 12:39:34 |
| 12 | significant support for his 18 times EBITDA | 12:39:36 |
| 13 | multiple.  Based on this evidence, the difference | 12:39:40 |
| 14 | in the valuation amounts to approximately | 12:39:43 |
| 15 | $1,140,764.  This figure reflects a 21 percent | 12:39:45 |
| 16 | increase in the ProPharma stock price that | 12:39:54 |
| 17 | ProPharma presented. | 12:39:57 |
| 18 | So would you understand that he was -- | 12:40:02 |
| 19 | that in that letter, Mr. Donnelly was both | 12:40:05 |
| 20 | alleging that he was still a board member entitled | 12:40:10 |
| 21 | to his salary and also alleging that he was | 12:40:12 |
| 22 | under -- that he did not receive the appropriate | 12:40:18 |
| 23 | value for his ProPharma incentive equity shares? | 12:40:21 |
| 24 | A  No. | 12:40:30 |
| 25 | Q  I'm sorry, it was a compound question. | 12:40:33 |

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                                    24

| | | |
|---|---|---|
| 1 | So would you agree that he's arguing that | 12:40:35 |
| 2 | he's still owed money for being on the board? | 12:40:38 |
| 3 | A  Our understanding of that paragraph at the | 12:40:41 |
| 4 | time was that he was talking, in the | 12:40:47 |
| 5 | "additionally, as your clients are aware" | 12:40:53 |
| 6 | paragraph, he is talking about historically not | 12:40:56 |
| 7 | being paid, which my recollection -- now, this is | 12:40:59 |
| 8 | a while ago -- my recollection was he was | 12:41:01 |
| 9 | erroneous, and we provided the ACH transfer | 12:41:04 |
| 10 | records that he had been paid. | 12:41:07 |
| 11 | This was one of the many erroneous things | 12:41:08 |
| 12 | in this letter.  So he alleged we had not paid him | 12:41:11 |
| 13 | historically, when, in fact, as my recollection | 12:41:14 |
| 14 | from when we saw this, he was. | 12:41:16 |
| 15 | Q  And he also alleges -- if you go to the | 12:41:21 |
| 16 | document marked as Donnelly -- | 12:41:25 |
| 17 | A  Let me also say, the only reason he would | 12:41:27 |
| 18 | be talking about the valuation -- the paragraph | 12:41:30 |
| 19 | you mentioned -- the only reason we'd be talking | 12:41:31 |
| 20 | about the valuation of the stock is if he had been | 12:41:33 |
| 21 | terminated.  There's no other reason to discuss | 12:41:35 |
| 22 | it. | 12:41:37 |
| 23 | Q  Okay.  But he was provided with offers for | 12:41:38 |
| 24 | his termination with an agreement for him to sign, | 12:41:45 |
| 25 | correct? | 12:41:48 |

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                        25

| | | |
|---|---|---|
| 1 | A   No.  He had already alerted us by email | 12:41:48 |
| 2 | that he understood he was off the board.  He | 12:41:50 |
| 3 | stated he was off the board to Linden prior to | 12:41:52 |
| 4 | this letter in July of 2019. | 12:41:58 |
| 5 | I had personally told him he was off the | 12:42:01 |
| 6 | board in June.  He acknowledged that in writing to | 12:42:04 |
| 7 | us in July by email.  And then there was -- you | 12:42:07 |
| 8 | know, he disputed how much it was worth.  But the | 12:42:16 |
| 9 | only reason you'd have that discussion is if he's | 12:42:19 |
| 10 | off the board so... | 12:42:22 |
| 11 | Q   Well, I mean -- | 12:42:23 |
| 12 | A   If we want to terminate someone, we can | 12:42:24 |
| 13 | terminate them.  You don't -- it doesn't -- we're | 12:42:28 |
| 14 | not going to wait to terminate someone before the | 12:42:30 |
| 15 | valuation ends. | 12:42:33 |
| 16 | Q   But you'd agree there's a process for | 12:42:34 |
| 17 | termination written into your LLC agreement, | 12:42:36 |
| 18 | correct? | 12:42:38 |
| 19 | A   I would agree that we had followed that | 12:42:38 |
| 20 | process and that we had terminated him legally and | 12:42:40 |
| 21 | communicated to him and that he acknowledged it in | 12:42:45 |
| 22 | writing by email. | 12:42:49 |
| 23 | Q   Okay.  Well, let me just -- let's stay on | 12:42:49 |
| 24 | this letter for right now.  We're going to go to | 12:42:51 |
| 25 | the last page of the letter, which is | 12:42:54 |

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                          26

| | | |
|---|---|---|
| 1 | Bates-labeled DONNELLY00001296. | 12:42:57 |
| 2 | Now, Mr. Donnelly, after arguing that his | 12:43:06 |
| 3 | shares were undervalued, asks:  Should you | 12:43:10 |
| 4 | disagree with this evaluation, please forward any | 12:43:14 |
| 5 | copies of the valuations presented to ProPharma | 12:43:18 |
| 6 | board in the fall of 2019 by investment banking | 12:43:20 |
| 7 | firms considered for the sale transaction that | 12:43:23 |
| 8 | support your argument that Mr. Donnelly's | 12:43:27 |
| 9 | valuation is excessive. | 12:43:29 |
| 10 | Did you at that time provide those | 12:43:31 |
| 11 | valuations to Mr. Donnelly? | 12:43:35 |
| 12 | A  They did not exist at the time we | 12:43:37 |
| 13 | terminated him in June of 2019, and he -- he | 12:43:39 |
| 14 | acknowledged that termination in July of 2019. | 12:43:42 |
| 15 | Q  I didn't ask you that.  I asked you if you | 12:43:45 |
| 16 | provided them to him subject to this request. | 12:43:49 |
| 17 | A  The question, with due respect, doesn't | 12:43:52 |
| 18 | make sense in terms of the timeline, because he | 12:43:55 |
| 19 | was terminated in June and July, prior to ending | 12:43:57 |
| 20 | his valuation -- I'm not trying to be argumentive. | 12:44:02 |
| 21 | I'm just -- | 12:44:05 |
| 22 | Q  I understand, sir.  I understand that your | 12:44:06 |
| 23 | position is that he wasn't entitled, possibly, | 12:44:08 |
| 24 | maybe, to those -- is that what you're saying?  He | 12:44:14 |
| 25 | wasn't entitled to those valuations?  I'm simply | 12:44:16 |

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                    27

| | | |
|---|---|---|
| 1 | asking you if you provided them in response to | 12:44:20 |
| 2 | this request. | 12:44:22 |
| 3 | A  I don't recall when we received those | 12:44:23 |
| 4 | valuations specifically, and I don't recall | 12:44:27 |
| 5 | whether we provided them or not. | 12:44:31 |
| 6 | Q  Okay.  So ProPharma took the position that | 12:44:32 |
| 7 | Pat's multiple and his EBITDA multiple was out of | 12:44:53 |
| 8 | line with what it should have been at the time; is | 12:45:02 |
| 9 | that correct? | 12:45:05 |
| 10 | A  Yes, it is correct.  Pat had a long | 12:45:05 |
| 11 | history with us of arguing for advantageous | 12:45:09 |
| 12 | multiples.  When he became CEO of Advarra, he | 12:45:13 |
| 13 | argued for a much lower multiple, which was to his | 12:45:18 |
| 14 | advantage.  And when he had been fired from the | 12:45:21 |
| 15 | board and a higher EBITDA multiple was his | 12:45:23 |
| 16 | advantage, he argued for whatever was his | 12:45:28 |
| 17 | advantage, which was his right. | 12:45:31 |
| 18 | Q  But at this time, Advarra had already | 12:45:33 |
| 19 | sold; isn't that true? | 12:45:36 |
| 20 | A  I'm talking about when he was hired as CEO | 12:45:38 |
| 21 | for Advarra. | 12:45:41 |
| 22 | Q  Right.  But at the time of this letter, | 12:45:41 |
| 23 | Advarra had already sold? | 12:45:43 |
| 24 | A  Yes. | 12:45:45 |
| 25 | Q  Okay.  And the actual EBITDA multiple for | 12:45:46 |

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                          28

| | | |
|---|---|---|
| 1 | when Advarra sold wasn't out of line with what Pat | 12:45:51 |
| 2 | said, at 18, was it? | 12:45:56 |
| 3 | A  They are totally different businesses that | 12:45:57 |
| 4 | are not comparable.  One has a huge staffing | 12:46:00 |
| 5 | component, and Advarra has a huge tech component. | 12:46:05 |
| 6 | They're valued very differently. | 12:46:08 |
| 7 | And Pat argued, I should note, for -- did | 12:46:10 |
| 8 | not believe an 11 times multiple.  He thought that | 12:46:13 |
| 9 | was too high for Advarra, even though 18 months | 12:46:15 |
| 10 | later, it sold for 18 times. | 12:46:19 |
| 11 | Q  Right.  Now, isn't it true that if you | 12:46:20 |
| 12 | were to have provided those investment bank | 12:46:31 |
| 13 | reports to him, none of the EBITDA multiples would | 12:46:33 |
| 14 | have been anywhere near 13.9? | 12:46:42 |
| 15 | A  No, that's totally incorrect. | 12:46:43 |
| 16 | Q  I mean -- and the valuations of | 12:46:46 |
| 17 | 473 million, isn't it true that none of those | 12:46:49 |
| 18 | investment banks gave you valuations lower than | 12:46:51 |
| 19 | 600 million? | 12:46:55 |
| 20 | A  The EBITDA multiples as presented would -- | 12:46:55 |
| 21 | there's certainly EBITDA multiples that would have | 12:46:59 |
| 22 | supported our valuation.  And the valuations of | 12:47:01 |
| 23 | investment bankers are meant as a selling | 12:47:03 |
| 24 | document.  They're always high.  And, in fact, we | 12:47:06 |
| 25 | did not sell the company for the price you just | 12:47:09 |

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                    29

| | | |
|---|---|---|
| 1 | mentioned, nor do we ever anticipate it. | 12:47:13 |
| 2 | Investment bankers want to have you hire | 12:47:16 |
| 3 | them, so they like to inflate the value of things. | 12:47:20 |
| 4 | It's well-known. | 12:47:23 |
| 5 | Q  Okay.  Now I want to... | 12:47:24 |
| 6 | So that email came from Steve Robinson in | 12:48:58 |
| 7 | September 2020.  There was apparently a little | 12:49:02 |
| 8 | discussion about trying to resolve the problem. | 12:49:07 |
| 9 | And then on September 23rd, 2020, ProPharma sends | 12:49:09 |
| 10 | this email by counsel to Mr. Donnelly in which -- | 12:49:17 |
| 11 | MR. MINSON:  Can you mark this as Exhibit | 12:49:23 |
| 12 | Number 3. | 12:49:25 |
| 13 | (WHEREUPON, a certain document was marked | 12:49:35 |
| 14 | Davis Deposition Exhibit No. 3, for | 12:49:35 |
| 15 | identification.) | 12:49:37 |
| 16 | BY THE WITNESS: | 12:49:37 |
| 17 | A  You're killing me with this stuff.  This | 12:49:37 |
| 18 | is really small. | 12:49:41 |
| 19 | BY MR. MINSON: | 12:49:41 |
| 20 | Q  Sorry.  It is small.  I can barely read | 12:49:42 |
| 21 | it. | 12:49:44 |
| 22 | All right.  So ProPharma sends -- after | 12:49:44 |
| 23 | terminating all discussions, ProPharma sends this | 12:49:48 |
| 24 | email by counsel to Mr. Donnelly.  And attached to | 12:49:53 |
| 25 | it is an arbitration demand, and attached is | 12:49:58 |

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                           30

| | | |
|---|---|---|
| 1 | another document that says -- if you read the | 12:50:05 |
| 2 | email, it will say:  Your email request evidenced | 12:50:10 |
| 3 | demonstrating Mr. Donnelly's receipt of the | 12:50:16 |
| 4 | previously disputed PPG board fees as his removal | 12:50:18 |
| 5 | from the PPG board.  Attached are documents | 12:50:22 |
| 6 | evidencing payments and his removal from the board | 12:50:25 |
| 7 | which he expressly requested and then discussed | 12:50:28 |
| 8 | with Michael Farah of Linden. | 12:50:32 |
| 9 | Do you see where it says that? | 12:50:34 |
| 10 | A  I do. | 12:50:35 |
| 11 | Q  Okay.  And then it says -- underneath, it | 12:50:36 |
| 12 | says:  This obviously resolves any dispute | 12:50:41 |
| 13 | regarding PPG board. | 12:50:44 |
| 14 | Okay?  And attached to that email -- | 12:50:48 |
| 15 | MR. MINSON:  Would you mark this as | 12:51:05 |
| 16 | Exhibit Number 4. | 12:51:06 |
| 17 | (WHEREUPON, a certain document was marked | 12:51:06 |
| 18 | Davis Deposition Exhibit No. 4, for | 12:51:06 |
| 19 | identification.) | 12:51:36 |
| 20 | BY MR. MINSON: | 12:51:36 |
| 21 | Q  Mr. Donnelly received this document, which | 12:51:37 |
| 22 | purports to terminate him from the board as of | 12:51:38 |
| 23 | September 3rd 2019, effective August 31st, 2019. | 12:51:42 |
| 24 | Do you see this document?  Do you | 12:51:53 |
| 25 | recognize it? | 12:51:54 |

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                           31

| | | |
|---|---|---|
| 1 | A  I see the document. | 12:51:55 |
| 2 | Q  And do you recognize it? | 12:51:56 |
| 3 | A  I recognize it. | 12:51:57 |
| 4 | Q  When was this document signed? | 12:51:59 |
| 5 | A  You're going to have to ask Michael Farah | 12:52:03 |
| 6 | when it was signed.  I didn't sign it. | 12:52:13 |
| 7 | Q  Okay.  And from when you -- do you have | 12:52:14 |
| 8 | any idea of when it was signed?  When is the first | 12:52:16 |
| 9 | time you ever saw this document? | 12:52:20 |
| 10 | A  I don't -- in my capacity of running | 12:52:22 |
| 11 | Linden, I don't look at these types of documents | 12:52:27 |
| 12 | on a regular basis. | 12:52:30 |
| 13 | Q  But you discussed termination of Pat | 12:52:40 |
| 14 | Donnelly with him, correct? | 12:52:43 |
| 15 | A  Oh, of course.  But this wasn't the | 12:52:44 |
| 16 | operative document in any case.  I mean, this was | 12:52:46 |
| 17 | a secondary document created by Kirkland.  The | 12:52:48 |
| 18 | operative document was from June, when he was | 12:52:51 |
| 19 | terminated, hence the conversation I had with him | 12:52:54 |
| 20 | in June, hence Pat acknowledging by email in July | 12:52:58 |
| 21 | of 2019 that he'd been terminated.  That's the | 12:53:01 |
| 22 | operative document terminating him. | 12:53:05 |
| 23 | Kirkland is a big firm.  We've got lots of | 12:53:06 |
| 24 | lawyers there.  And he was also being terminated | 12:53:10 |
| 25 | from ERG.  And so they made a second unnecessary | 12:53:12 |

| | | |
|---|---|---|
| 1 | document at that point, which is, I believe, what | 12:53:15 |
| 2 | we're looking at. | 12:53:18 |
| 3 |    Q  So knowing that he was already terminated, | 12:53:19 |
| 4 | is what you're saying this document was made | 12:53:24 |
| 5 | with -- and has no legal effect? | 12:53:26 |
| 6 |    A  Well, whether it has legal effect or not | 12:53:27 |
| 7 | is not -- that's -- I'm not acknowledging that or | 12:53:29 |
| 8 | not. | 12:53:34 |
| 9 |    Q  Well, you did say it was unnecessary, so | 12:53:34 |
| 10 | I'm trying to clarify what you mean by | 12:53:35 |
| 11 | "unnecessary." | 12:53:38 |
| 12 |    MR. GILMORE:  I'll object to the prior | 12:53:38 |
| 13 | question and to this question as to the extent it | 12:53:40 |
| 14 | calls for a legal conclusion. | 12:53:42 |
| 15 |    MR. MINSON:  I'm asking him a question | 12:53:43 |
| 16 | that -- it's based on his own testimony so... | 12:53:45 |
| 17 |    MR. GILMORE:  The question before the last | 12:53:48 |
| 18 | question called for a legal conclusion.  He can | 12:53:52 |
| 19 | answer the most recent question. | 12:53:55 |
| 20 | BY THE WITNESS: | 12:53:58 |
| 21 |    A  What is the most recent question? | 12:53:59 |
| 22 | BY MR. MINSON: | 12:54:00 |
| 23 |    Q  What do you mean by "unnecessary"? | 12:54:01 |
| 24 |    A  The initial document had already removed | 12:54:04 |
| 25 | him from the board from June, and we had | 12:54:06 |

| | | |
|---|---|---|
| 1 | communicated that to him -- I communicated that to | 12:54:11 |
| 2 | him in a phone call, and he acknowledged it. | 12:54:13 |
| 3 | And so no more documents were needed. | 12:54:17 |
| 4 | Kirkland is a large law firm. We have dozens of | 12:54:21 |
| 5 | attorneys working for us. He was also being | 12:54:24 |
| 6 | terminated from ERG, so some other attorney made | 12:54:27 |
| 7 | another one. | 12:54:31 |
| 8 | Q  Okay. And was this document -- was the -- | 12:54:32 |
| 9 | was this document ever delivered to Mr. Donnelly? | 12:54:36 |
| 10 | A  I don't know, but I verbally told him in | 12:54:38 |
| 11 | June that he was terminated from the board, which | 12:54:43 |
| 12 | he acknowledged. | 12:54:45 |
| 13 | MR. GILMORE:  And, Keith, your question | 12:54:46 |
| 14 | was vague. Were you -- when you say "this | 12:54:48 |
| 15 | document," do you mean Exhibit 4 or the June 2019 | 12:54:50 |
| 16 | document? | 12:54:54 |
| 17 | MR. MINSON:  I mean Exhibit 4 for now. | 12:54:54 |
| 18 | BY THE WITNESS: | 12:54:58 |
| 19 | A  I'm not involved in that. I don't know. | 12:54:59 |
| 20 | What I do know is that he was told he was | 12:55:01 |
| 21 | terminated in June. He acknowledged that in my | 12:55:04 |
| 22 | phone conversation with him. He acknowledged it | 12:55:07 |
| 23 | in writing in July. And his attorneys also fully | 12:55:10 |
| 24 | understood that as we were negotiating the | 12:55:14 |
| 25 | valuation. | 12:55:18 |

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                    34

| | | |
|---|---|---|
| 1 | BY MR. MINSON: | 12:55:34 |
| 2 | Q  Do you have any idea why the June document | 12:55:34 |
| 3 | that you're referring to wasn't forwarded along | 12:55:36 |
| 4 | with the arbitration request and this document if | 12:55:41 |
| 5 | you're saying that the June one was operative and | 12:55:45 |
| 6 | this is unnecessary? | 12:55:47 |
| 7 | A  It's two different law firms that | 12:55:48 |
| 8 | weren't -- you're dealing with two different law | 12:55:52 |
| 9 | firms and document production, so you'd have to | 12:55:55 |
| 10 | ask them. | 12:55:59 |
| 11 | MR. MINSON:  Would you mark this as | 12:56:49 |
| 12 | Exhibit Number 5. | 12:56:50 |
| 13 | (WHEREUPON, a certain document was marked | 12:57:08 |
| 14 | Davis Deposition Exhibit No. 5, for | 12:57:08 |
| 15 | identification.) | 12:57:08 |
| 16 | BY MR. MINSON: | 12:57:08 |
| 17 | Q  I previously handed you the first amended | 12:57:08 |
| 18 | complaint.  It's Exhibit Number 1 in your stack | 12:57:11 |
| 19 | there. | 12:57:15 |
| 20 | A  Mm-hm. | 12:57:16 |
| 21 | Q  And if you go to Pages 13 through 15. | 12:57:17 |
| 22 | A  Mm-hm. | 12:57:21 |
| 23 | MR. GILMORE:  I'm going to object to | 12:57:39 |
| 24 | Exhibit 5 as an incomplete document to the extent | 12:57:40 |
| 25 | it doesn't attach the transmittal email. | 12:57:43 |

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                           35

| | | |
|---|---|---|
| 1 | MR. MINSON:  Okay.  I don't have a | 12:57:57 |
| 2 | transmittal email in Exhibit Number 5.  That was | 12:58:00 |
| 3 | part of the discovery production and it's... | 12:58:04 |
| 4 | MR. GILMORE:  I'm pretty sure that the way | 12:58:07 |
| 5 | it was produced in discovery was with an email | 12:58:09 |
| 6 | that was attached that transmitted it. | 12:58:12 |
| 7 | I can check with my team, but I believe | 12:58:16 |
| 8 | that's how it was produced. | 12:58:18 |
| 9 | MR. MINSON:  I can show you right now. | 12:58:20 |
| 10 | MR. GILMORE:  You can continue with your | 12:58:53 |
| 11 | questioning.  I'll just -- I've made my objection. | 12:58:55 |
| 12 | MR. MINSON:  Okay. | 12:58:58 |
| 13 | MR. GILMORE:  I'm checking with my team. | 12:58:58 |
| 14 | Sounds like you want to check with your team, | 12:59:00 |
| 15 | too -- | 12:59:02 |
| 16 | MR. MINSON:  I just looked at our | 12:59:02 |
| 17 | discovery production since I had it up.  It wasn't | 12:59:04 |
| 18 | produced with an email that I can see, but that's | 12:59:07 |
| 19 | besides the point. | 12:59:10 |
| 20 | BY MR. MINSON: | 12:59:10 |
| 21 | Q   Just in Pages 13 through 15, we went over | 12:59:11 |
| 22 | these provisions to the contract before, the | 12:59:14 |
| 23 | ProPharma's LLC agreement. | 12:59:16 |
| 24 | A   Mm-hm. | 12:59:18 |
| 25 | Q   And it outlines -- in the complaint, it | 12:59:18 |

| | | |
|---|---|---|
| 1 | outlines how the Linden Buyer -- or at least the | 12:59:26 |
| 2 | allegation is that Linden Buyer and Splitter were | 12:59:29 |
| 3 | the entities that were legally capable of | 12:59:32 |
| 4 | terminating Mr. Donnelly. | 12:59:37 |
| 5 | I'm not going to ask you to agree or | 12:59:38 |
| 6 | disagree to that, but do you see that that's what | 12:59:41 |
| 7 | it says in the complaint? | 12:59:44 |
| 8 | A  Which paragraph? | 12:59:46 |
| 9 | Q  It's Paragraph -- it starts at 110, and it | 12:59:47 |
| 10 | goes through to Paragraph 119. | 12:59:57 |
| 11 | A  Give me a moment to read it. | 13:00:11 |
| 12 | What's the question? | 13:01:15 |
| 13 | Q  Okay.  So the question is do you | 13:01:16 |
| 14 | understand that the argument is that the two | 13:01:18 |
| 15 | Linden entities that were on the initial Exhibit | 13:01:21 |
| 16 | Number 4 termination didn't have the legal right? | 13:01:26 |
| 17 | Not whether it's true or not, but do you | 13:01:29 |
| 18 | understand that that's what the allegations were? | 13:01:32 |
| 19 | A  I understand that Pat is making those | 13:01:36 |
| 20 | allegations. | 13:01:38 |
| 21 | Q  And after those allegations were made, in | 13:01:44 |
| 22 | discovery we received the document that's now | 13:01:47 |
| 23 | Exhibit Number 5, the one that's in front of you | 13:01:52 |
| 24 | with your signature on it -- | 13:01:54 |
| 25 | A  Yep. | 13:01:55 |

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                    37

| | | |
|---|---|---|
| 1 | Q  -- which is -- it purports to remove Pat | 13:01:55 |
| 2 | Donnelly from the board.  And it has a 2019 date | 13:02:00 |
| 3 | on top, but neither your signature nor Michael | 13:02:04 |
| 4 | Farah's signature nor the top of the document has | 13:02:11 |
| 5 | a specific date on it. | 13:02:12 |
| 6 | Do you agree with that? | 13:02:14 |
| 7 | A  This was transmitted by email, which | 13:02:16 |
| 8 | apparently we can't find right now, that had a | 13:02:19 |
| 9 | date on it from June of 2019. | 13:02:22 |
| 10 | Q  But the document itself doesn't have a | 13:02:24 |
| 11 | date on it.  Because, honestly, I didn't see an | 13:02:25 |
| 12 | email that it was transmitted with. | 13:02:28 |
| 13 | A  I understand.  There's no one -- there's | 13:02:29 |
| 14 | not a date on this document, but it was | 13:02:31 |
| 15 | transmitted in an email of June 2019, which we | 13:02:34 |
| 16 | will make sure you -- | 13:02:37 |
| 17 | Q  Okay. | 13:02:38 |
| 18 | A  -- get. | 13:02:39 |
| 19 | MR. GILMORE:  For the record, my team is | 13:02:40 |
| 20 | telling me that the transmittal email to which | 13:02:41 |
| 21 | this is attached was produced at LINDEN109, which | 13:02:44 |
| 22 | would make sense, given this is LINDEN111. | 13:02:48 |
| 23 | MR. MINSON:  But this email was never | 13:03:12 |
| 24 | transmitted to Mr. Donnelly, correct? | 13:03:14 |
| 25 | We could go over it later and I can print | 13:03:19 |

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                    38

| | | |
|---|---|---|
| 1 | it out and we could make it a different exhibit. | 13:03:21 |
| 2 | BY MR. MINSON: | 13:03:23 |
| 3 | Q  But, to your knowledge, is it -- was it | 13:03:24 |
| 4 | ever transmitted to Mr. Donnelly?  I'm looking at | 13:03:25 |
| 5 | it, and it doesn't seem like it was, so that's why | 13:03:28 |
| 6 | I'm asking.  I'll add it as an exhibit. | 13:03:32 |
| 7 | A  Yeah, I don't know who was on that email | 13:03:32 |
| 8 | four years ago. | 13:03:34 |
| 9 | Q  Okay.  Thanks for the clarification. | 13:03:36 |
| 10 | And do you have any -- and you know you | 13:03:57 |
| 11 | signed it in June of 2019 -- or you say you signed | 13:03:59 |
| 12 | it in June of 2019.  Do you remember exactly when | 13:04:01 |
| 13 | it was created? | 13:04:04 |
| 14 | A  I believe it was in June of 2019.  That's | 13:04:05 |
| 15 | when I had the discussion with Pat.  Before he | 13:04:08 |
| 16 | acknowledged this in writing, he acknowledged to | 13:04:11 |
| 17 | me in that discussion we had in June, the document | 13:04:13 |
| 18 | was done in June and emailed around.  So there is | 13:04:19 |
| 19 | a date on the email from when the document was | 13:04:23 |
| 20 | signed. | 13:04:25 |
| 21 | Q  Okay. | 13:04:26 |
| 22 | MR. MINSON:  I think I would like to take | 13:04:31 |
| 23 | a break and add this as an exhibit, the email. | 13:04:32 |
| 24 | MR. GILMORE:  We've been going for | 13:04:36 |
| 25 | about -- not quite an hour, but, yeah, that's | 13:04:38 |

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                     39

| | | |
|---|---|---|
| 1 | fine.  You want to go off the record now? | 13:04:39 |
| 2 | MR. MINSON:  Yeah. | 13:04:43 |
| 3 | THE VIDEOGRAPHER:  We are going off the | 13:04:44 |
| 4 | record.  The time is 1:04 p.m. | 13:04:45 |
| 5 | (WHEREUPON, a recess was had.) | 13:04:48 |
| 6 | THE VIDEOGRAPHER:  We are back on the | 13:12:24 |
| 7 | record.  The time is 1:12 p.m. | 13:12:25 |
| 8 | MR. MINSON:  Ms. Court Reporter, can you | 13:12:31 |
| 9 | include this with Exhibit 5, subject to his | 13:12:33 |
| 10 | objection.  This is a transmittal email for that | 13:12:38 |
| 11 | document. | 13:12:41 |
| 12 | BY MR. MINSON: | 13:12:52 |
| 13 | Q  Mr. Davis, if you review this email chain | 13:13:00 |
| 14 | regarding what you purport to be the termination | 13:13:02 |
| 15 | of Mr. Donnelly from the board, Exhibit 5, is | 13:13:08 |
| 16 | there anywhere on this email chain where you can | 13:13:12 |
| 17 | see that it was emailed or sent to Mr. Donnelly? | 13:13:14 |
| 18 | A  I do not see Mr. Donnelly's business or | 13:13:21 |
| 19 | personal email accounts on here. | 13:13:28 |
| 20 | Q  And so at the time that you claim that | 13:13:32 |
| 21 | this was signed, there was no notification in | 13:13:39 |
| 22 | writing to Mr. Donnelly of its signing; is that | 13:13:42 |
| 23 | correct? | 13:13:47 |
| 24 | A  I had a conversation with him telling him | 13:13:47 |
| 25 | he was off the board.  And I don't know if there's | 13:13:48 |

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                          40

| | | |
|---|---|---|
| 1 | other written communication or not.  I'll only say | 13:13:51 |
| 2 | I don't see it as a part of this email. | 13:13:54 |
| 3 | Q  Okay. | 13:13:56 |
| 4 | A  And he acknowledged it in writing in July | 13:13:59 |
| 5 | when he told our assistants that he was off the | 13:14:01 |
| 6 | board. | 13:14:04 |
| 7 | Q  We'll discuss that, too. | 13:14:05 |
| 8 | Okay.  So this document -- or, I guess, | 13:14:14 |
| 9 | Exhibits 4 and 5, would that mean that they were | 13:14:26 |
| 10 | both in existence in November -- or late -- in | 13:14:29 |
| 11 | November of 2019? | 13:14:34 |
| 12 | A  I would believe so, yes. | 13:14:40 |
| 13 | Q  Okay. | 13:14:42 |
| 14 | MR. MINSON:  Can you mark this as | 13:14:53 |
| 15 | Exhibit 6. | 13:15:07 |
| 16 | (WHEREUPON, a certain document was marked | 13:15:07 |
| 17 | Davis Deposition Exhibit No. 6, for | 13:15:07 |
| 18 | identification.) | 13:15:08 |
| 19 | BY MR. MINSON: | 13:15:08 |
| 20 | Q  This is an October of 2019 email between | 13:15:08 |
| 21 | Rob Chestnut, who is the chief financial officer | 13:15:15 |
| 22 | of ProPharma -- | 13:15:21 |
| 23 | A  Mm-hm. | 13:15:21 |
| 24 | Q  -- and Michael Connolly at Linden. | 13:15:22 |
| 25 | A  Mm-hm. | 13:15:25 |

Transcript of Anthony Davis, Designated Representative
September 12, 2022                    41

| | | |
|---|---|---|
| 1 | Q  And it says:  Michael, I have been made | 13:15:26 |
| 2 | aware of Pat's separation from Linden.  My | 13:15:28 |
| 3 | understanding is that we need to distribute this | 13:15:30 |
| 4 | investment.  How we should -- how should we | 13:15:33 |
| 5 | proceed to make this calculation?  I have not seen | 13:15:36 |
| 6 | any termination paperwork. | 13:15:38 |
| 7 | Okay.  My question is, regarding that, is | 13:15:40 |
| 8 | Mr. Chestnut somebody who would normally be | 13:15:43 |
| 9 | notified or receive documentation of a board | 13:15:46 |
| 10 | member being terminated from Linden -- I mean from | 13:15:52 |
| 11 | ProPharma? | 13:15:54 |
| 12 | A  No, not necessarily.  He's not on the | 13:15:55 |
| 13 | board. | 13:15:57 |
| 14 | Q  Okay.  But as a chief financial officer, | 13:16:00 |
| 15 | that's not a document that he normally would get? | 13:16:02 |
| 16 | A  No, I don't think so. | 13:16:04 |
| 17 | Q  Okay.  So what happens to those documents | 13:16:05 |
| 18 | after you sign them, the termination documents, | 13:16:18 |
| 19 | normally?  Do they get filed?  Or what do you do | 13:16:20 |
| 20 | with them? | 13:16:25 |
| 21 | A  I don't deal with that stuff.  I'm sorry. | 13:16:25 |
| 22 | I don't know. | 13:16:29 |
| 23 | Q  So you just -- you would sign it and then | 13:16:29 |
| 24 | just walk away and assume that it went to the | 13:16:31 |
| 25 | right parties? | 13:16:33 |

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                    42

| | | |
|---|---|---|
| 1 | A  We have assistants you can see from the | 13:16:34 |
| 2 | emails.  They come to us, we sign them, and then | 13:16:37 |
| 3 | the assistants send them back to Kirkland & Ellis, | 13:16:44 |
| 4 | our attorneys. | 13:16:48 |
| 5 | Q  Okay. | 13:16:49 |
| 6 | MR. MINSON:  So I'd like to mark this as | 13:16:56 |
| 7 | Exhibit Number 7. | 13:16:58 |
| 8 | (WHEREUPON, a certain document was marked | 13:16:58 |
| 9 | Davis Deposition Exhibit No. 7, for | 13:16:58 |
| 10 | identification.) | 13:17:17 |
| 11 | BY MR. MINSON: | 13:17:17 |
| 12 | Q  This is a May 14, 2020, email chain | 13:17:18 |
| 13 | between Rob Chestnut and Skip Hoffman.  Also on | 13:17:22 |
| 14 | the chain is Bennett Yasskin from Linden. | 13:17:29 |
| 15 | A  Okay. | 13:17:32 |
| 16 | Q  And if you look at PROPHARMA0000624, the | 13:17:33 |
| 17 | last -- second-to-last page, Mr. Yasskin says: | 13:17:41 |
| 18 | Can you send me the management unit repurchase | 13:17:48 |
| 19 | agreement executed for Pat Donnelly?  This is an | 13:17:52 |
| 20 | audit request. | 13:17:55 |
| 21 | A  Sorry, what -- | 13:17:57 |
| 22 | Q  That is -- | 13:17:58 |
| 23 | A  Oh, I see it. | 13:17:59 |
| 24 | Q  -- dated March 5th. | 13:18:00 |
| 25 | Okay.  And then Mr. Yasskin from Linden | 13:18:04 |

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                    43

| | | |
|---|---|---|
| 1 | says:  Rob, there's no agreement in place with Pat | 13:18:08 |
| 2 | for the repurchase of incentive equity units.  We | 13:18:12 |
| 3 | did not need to execute -- execute an agreement, | 13:18:17 |
| 4 | as we have a unilateral right to buy them back. | 13:18:17 |
| 5 | Does that -- is that true at the time?  Is | 13:18:20 |
| 6 | that how it works? | 13:18:24 |
| 7 | A  I'd have to review the document. | 13:18:24 |
| 8 | Q  Okay. | 13:18:26 |
| 9 | A  That's -- these documents are quite | 13:18:26 |
| 10 | complex, actually. | 13:18:28 |
| 11 | Q  Okay.  And then Rob Chestnut on | 13:18:29 |
| 12 | PROPHARMA0000623, on an email dated March 5th, | 13:18:35 |
| 13 | 2020, 11:03 a.m., says:  I would assume you have a | 13:18:41 |
| 14 | calculation and some type of separation agreement, | 13:18:44 |
| 15 | what was negotiated. | 13:18:47 |
| 16 | To which Bennett Yasskin replies:  The | 13:18:50 |
| 17 | calculation -- on the same date:  The calculation | 13:18:55 |
| 18 | is based off of fair market value of Pat's vested | 13:18:58 |
| 19 | incentive equity as of 6/30.  This is pursuant to | 13:19:03 |
| 20 | the original incentive agreement unit.  There is | 13:19:07 |
| 21 | no separation agreement. | 13:19:09 |
| 22 | Okay?  And it goes on like that for a | 13:19:12 |
| 23 | little bit. | 13:19:17 |
| 24 | And Rob Chestnut, from -- this is in May | 13:19:17 |
| 25 | of 2020, two months after that audit request -- | 13:19:19 |

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                    44

| | | |
|---|---|---|
| 1 | A   Mm-hm. | 13:19:22 |
| 2 | Q   -- says:  See below.  No formal agreement, | 13:19:23 |
| 3 | but the valuation date was 6/30/19. | 13:19:26 |
| 4 | So in that time, would Rob Chestnut have | 13:19:30 |
| 5 | reached out to Linden or you or another board | 13:19:33 |
| 6 | member in order to get documentation of the | 13:19:41 |
| 7 | termination? | 13:19:44 |
| 8 | MR. GILMORE:  Objection, form, foundation. | 13:19:45 |
| 9 | BY MR. MINSON: | 13:19:48 |
| 10 | Q  Who would Rob Chestnut, normally, in the | 13:19:48 |
| 11 | way that he conducts business, reach out to to get | 13:19:51 |
| 12 | some kind of documentation for a termination? | 13:19:53 |
| 13 | MR. GILMORE:  Same objections, form and | 13:19:59 |
| 14 | foundation. | 13:20:02 |
| 15 | BY THE WITNESS: | 13:20:02 |
| 16 | A  Rob Chestnut was not on the board of | 13:20:10 |
| 17 | directors.  He was the CFO of the company.  And | 13:20:12 |
| 18 | what I see from this is communication between the | 13:20:20 |
| 19 | CFO and a 25- or 26-year-old associate talking | 13:20:24 |
| 20 | back and forth and not looking or understanding | 13:20:29 |
| 21 | what the agreements say. | 13:20:33 |
| 22 | I mean, I don't -- these are -- this is | 13:20:35 |
| 23 | not two attorneys speaking.  This is a 24-, | 13:20:37 |
| 24 | 25-year-old, maybe he's 26.  And Rob, the CFO, is | 13:20:41 |
| 25 | treating Pat as an employee of the company and not | 13:20:45 |

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                          45

| | | |
|---|---|---|
| 1 | a member of the board in the way he speaks about | 13:20:48 |
| 2 | it. | 13:20:51 |
| 3 | BY MR. MINSON: | 13:20:52 |
| 4 | Q  Okay.  So like my question before, this | 13:20:52 |
| 5 | not -- the termination is not a document that | 13:20:57 |
| 6 | would be put in any company records? | 13:20:59 |
| 7 | A  Well -- | 13:21:01 |
| 8 | MR. GILMORE:  Objection, form, lack of | 13:21:03 |
| 9 | foundation, assumes facts not in evidence. | 13:21:05 |
| 10 | BY THE WITNESS: | 13:21:08 |
| 11 | A  The -- from a legal perspective, I don't | 13:21:09 |
| 12 | know what they're doing or not doing.  Again, we | 13:21:11 |
| 13 | had our attorneys create the document.  We send it | 13:21:14 |
| 14 | to them on June 27th, 2019, and, as such, we | 13:21:18 |
| 15 | believe we were acting as we need to from a board | 13:21:22 |
| 16 | perspective. | 13:21:26 |
| 17 | Rob is not on the board so... | 13:21:26 |
| 18 | BY MR. MINSON: | 13:21:28 |
| 19 | Q  I'm sorry, with all due respect, you are | 13:21:29 |
| 20 | here as a representative of ProPharma right now -- | 13:21:31 |
| 21 | A  Mm-hm. | 13:21:33 |
| 22 | Q  -- right? | 13:21:33 |
| 23 | A  Yeah. | 13:21:35 |
| 24 | Q  And I asked you to prepare on the | 13:21:35 |
| 25 | termination of Pat Donnelly. | 13:21:37 |

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                        46

| | | |
|---|---|---|
| 1 | A   Mm-hm. | 13:21:39 |
| 2 | Q   And you said you could prepare on that. | 13:21:40 |
| 3 | And so are you telling me that you don't know what | 13:21:42 |
| 4 | happens in your company -- because you represent | 13:21:46 |
| 5 | the company -- | 13:21:47 |
| 6 | A   Mm-hm. | 13:21:49 |
| 7 | Q   -- as a matter of course when someone is | 13:21:50 |
| 8 | terminated?  You say you don't know what happens | 13:21:54 |
| 9 | to the agreement? | 13:21:57 |
| 10 | MR. GILMORE:  Hold on -- | 13:21:59 |
| 11 | BY THE WITNESS: | 13:22:01 |
| 12 | A   That's not exactly what I said. | 13:22:02 |
| 13 | MR. GILMORE:  Yeah.  Hold on a second, | 13:22:03 |
| 14 | Tony.  First of all, I'll make -- the objection is | 13:22:04 |
| 15 | argumentative. | 13:22:07 |
| 16 | Second, to the extent you're asking a | 13:22:07 |
| 17 | question that is in Mr. Davis' capacity as a | 13:22:09 |
| 18 | 30(b)(6) representative on certain of the topics | 13:22:13 |
| 19 | in your 30(b)(6) deposition notice, I object to | 13:22:15 |
| 20 | that specific question as outside the scope of the | 13:22:20 |
| 21 | deposition topics. | 13:22:23 |
| 22 | I also object on form and foundation | 13:22:24 |
| 23 | grounds. | 13:22:26 |
| 24 | MR. MINSON:  You don't think it relates to | 13:22:27 |
| 25 | the termination? | 13:22:29 |

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                    47

| | | |
|---|---|---|
| 1 | MR. GILMORE:  Which topic -- | 13:22:30 |
| 2 | MR. MINSON:  What happens -- | 13:22:33 |
| 3 | MR. GILMORE:  -- Counsel, do you think -- | 13:22:33 |
| 4 | MR. MINSON:  What happens with the | 13:22:35 |
| 5 | paperwork? | 13:22:36 |
| 6 | MR. GILMORE:  Yeah, which topic in here in | 13:22:37 |
| 7 | the topics for which you've noticed and for which | 13:22:39 |
| 8 | Mr. Davis has been designated you think that your | 13:22:43 |
| 9 | question falls? | 13:22:46 |
| 10 | MR. MINSON:  Donnelly's removal from the | 13:22:56 |
| 11 | board and communications about it, topic number | 13:22:57 |
| 12 | three.  I feel like a -- the filing would be a | 13:23:02 |
| 13 | communication about removal. | 13:23:05 |
| 14 | MR. GILMORE:  Your questions were about | 13:23:07 |
| 15 | what his -- what procedures are, and it was not | 13:23:09 |
| 16 | limited to Mr. Donnelly or even board members.  So | 13:23:11 |
| 17 | outside the scope. | 13:23:14 |
| 18 | Mr. Davis can answer based on his personal | 13:23:15 |
| 19 | knowledge, to the extent he's able to. | 13:23:19 |
| 20 | MR. MINSON:  Okay. | 13:23:21 |
| 21 | BY THE WITNESS: | 13:23:22 |
| 22 | A  I am taking your question as a filing | 13:23:22 |
| 23 | matter, and we rely on counsel as board of | 13:23:24 |
| 24 | directors.  Very good counsel with | 13:23:30 |
| 25 | Kirkland & Ellis.  They created a document.  We | 13:23:32 |

| | | |
|---|---|---|
| 1 | signed it.  We gave it back to them as a consent | 13:23:35 |
| 2 | of the board. | 13:23:42 |
| 3 | And I don't know our CFO's filing system. | 13:23:42 |
| 4 | BY MR. MINSON: | 13:23:49 |
| 5 | Q  So from this email chain, it was clear | 13:23:49 |
| 6 | that in May -- on May 14 -- by May 14th of 2020, | 13:23:51 |
| 7 | Mr. Chestnut did not have access to this document | 13:23:58 |
| 8 | or a separation agreement? | 13:24:02 |
| 9 | A  That's not obvious from this. | 13:24:03 |
| 10 | MR. GILMORE:  Yeah, I would object, lack | 13:24:05 |
| 11 | of foundation. | 13:24:07 |
| 12 | MR. MINSON:  Okay.  I'd like to mark this | 13:24:07 |
| 13 | as Exhibit -- Exhibit Number 8. | 13:24:28 |
| 14 | (WHEREUPON, a certain document was marked | 13:24:28 |
| 15 | Davis Deposition Exhibit No. 8, for | 13:24:28 |
| 16 | identification.) | 13:25:00 |
| 17 | BY MR. MINSON: | 13:25:00 |
| 18 | Q  This is a separate email -- this is a | 13:25:01 |
| 19 | separate email chain coming off of the one we just | 13:25:04 |
| 20 | discussed where Bennett Yasskin says:  See below | 13:25:07 |
| 21 | regarding Pat's incentive equity.  We do not have | 13:25:15 |
| 22 | a repurchase/separation agreement in place. | 13:25:19 |
| 23 | And ProPharma CFO Rob Chestnut, in | 13:25:24 |
| 24 | response, writes:  We have done a repurchase | 13:25:28 |
| 25 | agreement on every other person who has separated | 13:25:32 |

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                          49

| | | |
|---|---|---|
| 1 | from the business. | 13:25:35 |
| 2 | Okay?  I guess my question, following | 13:25:39 |
| 3 | that, is what is your knowledge on whether that | 13:25:45 |
| 4 | assertion is true, that there was a -- there is a | 13:25:47 |
| 5 | separation agreement for every other person who | 13:25:51 |
| 6 | has separated from the business? | 13:25:53 |
| 7 | MR. GILMORE:  Objection as outside the | 13:25:57 |
| 8 | scope of the 30(b)(6) deposition topics. | 13:25:59 |
| 9 | BY MR. MINSON: | 13:26:02 |
| 10 | Q  In your personal capacity. | 13:26:03 |
| 11 | A  There's no way that's true, every person | 13:26:05 |
| 12 | who's separated from the business, every | 13:26:08 |
| 13 | assistant, every staff member.  And those are | 13:26:10 |
| 14 | employees of the business, not a board member. | 13:26:12 |
| 15 | So, one, it's simply not true. | 13:26:15 |
| 16 | And, secondly, he's referring to | 13:26:16 |
| 17 | employees, not a board member, which are totally | 13:26:19 |
| 18 | separate types of people. | 13:26:22 |
| 19 | Q  Now, regarding -- strike that.  I think | 13:26:28 |
| 20 | we're good.  I'm going to move on. | 13:26:52 |
| 21 | Here is a -- here's an email between you | 13:27:12 |
| 22 | and Pat Donnelly with Mike Farah CC'd. | 13:27:22 |
| 23 | MR. MINSON:  Can you mark this as Exhibit | 13:27:25 |
| 24 | Number 10. | 13:27:27 |
| 25 | MS. REPORTER:  9. | 13:27:32 |

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                          50

| | | |
|---|---|---|
| 1 | MR. MINSON:  I'm sorry.  Exhibit Number 9. | 13:27:33 |
| 2 | (WHEREUPON, a certain document was marked | 13:27:44 |
| 3 | Davis Deposition Exhibit No. 9, for | 13:27:44 |
| 4 | identification.) | 13:27:56 |
| 5 | BY MR. MINSON: | 13:27:56 |
| 6 | Q   This is in September 2019 -- | 13:27:57 |
| 7 | A   You're going to have to start giving me | 13:27:58 |
| 8 | longer arms, but I'll try. | 13:28:01 |
| 9 | Q   I'm sorry about that. | 13:28:04 |
| 10 | Basically, it's you -- it's your offer to | 13:28:05 |
| 11 | Pat -- | 13:28:08 |
| 12 | MR. GILMORE:  Do you have a copy for me, | 13:28:09 |
| 13 | Counsel? | 13:28:10 |
| 14 | MR. MINSON:  I'm sorry. | 13:28:11 |
| 15 | MR. GILMORE:  It's all right.  Here you | 13:28:12 |
| 16 | go. | 13:28:14 |
| 17 | BY MR. MINSON: | 13:28:14 |
| 18 | Q   It's produced as DONNELLY000096.  It is | 13:28:16 |
| 19 | your offer to Pat on that date, September 4th, | 13:28:21 |
| 20 | 2019. | 13:28:28 |
| 21 | A   Mm-hm. | 13:28:29 |
| 22 | Q   And it says what you are willing to do. | 13:28:29 |
| 23 | And it shows PPG is currently marked at -- | 13:28:31 |
| 24 | currently marked at 2.5X.  And you say none of the | 13:28:36 |
| 25 | shares are vested.  And you say the net payout is | 13:28:43 |

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                      51

| | | |
|---|---|---|
| 1 | 684K.  And ERG is held at cost right now, so | 13:28:47 |
| 2 | there's nothing to buy back on incentive units, | 13:28:53 |
| 3 | therefore simply forfeited. | 13:28:56 |
| 4 | My question regarding that document is, | 13:28:58 |
| 5 | first, did Mr. Donnelly agree that his shares were | 13:29:01 |
| 6 | forfeited for ERG? | 13:29:06 |
| 7 | MR. GILMORE:  Objection, form, foundation, | 13:29:08 |
| 8 | to the extent it calls for a legal conclusion. | 13:29:10 |
| 9 | I also object to questions about the | 13:29:12 |
| 10 | document -- | 13:29:13 |
| 11 | MR. MINSON:  I'm going to ask you to stop | 13:29:13 |
| 12 | making so many speaking objections.  Can you just | 13:29:18 |
| 13 | object to form or -- the long speaking objections | 13:29:21 |
| 14 | are not proper. | 13:29:23 |
| 15 | MR. GILMORE:  Form, foundation, and calls | 13:29:24 |
| 16 | for a legal conclusion are not speaking | 13:29:27 |
| 17 | objections, are proper.  I wasn't finished, | 13:29:29 |
| 18 | Counsel.  Please don't interrupt. | 13:29:32 |
| 19 | I also object to your use of Exhibit 10 | 13:29:33 |
| 20 | without the attachments. | 13:29:36 |
| 21 | THE WITNESS:  It's Exhibit 9. | 13:29:39 |
| 22 | MR. GILMORE:  It's an incomplete document. | 13:29:40 |
| 23 | MR. MINSON:  Exhibit 9. | 13:29:43 |
| 24 | MR. GILMORE:  I object to your use of | 13:29:44 |
| 25 | Exhibit 9 as an incomplete document because it | 13:29:45 |

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                    52

| | | |
|---|---|---|
| 1 | lacks the attachments. | 13:29:45 |
| 2 | BY MR. MINSON: | 13:29:45 |
| 3 |     Q  Okay.  Well, this is just the email.  It's | 13:29:48 |
| 4 | not the attached document -- documentation.  And | 13:29:52 |
| 5 | I'll ask you about the attached documentation in a | 13:29:54 |
| 6 | different question.  But this is just your | 13:29:56 |
| 7 | statement to Pat.  And I'm asking you is this the | 13:29:59 |
| 8 | offer that you were making Pat at that time? | 13:30:03 |
| 9 |     MR. GILMORE:  Same objections. | 13:30:13 |
| 10 | BY THE WITNESS: | 13:30:14 |
| 11 |     A  The email states that we are making this | 13:30:14 |
| 12 | offer. | 13:30:16 |
| 13 | BY MR. MINSON: | 13:30:16 |
| 14 |     Q  Yeah.  And don't you agree that | 13:30:17 |
| 15 | Exhibit 4 -- | 13:30:30 |
| 16 |     A  It's a good thing I just organized these. | 13:30:31 |
| 17 |     Q  I know. | 13:30:35 |
| 18 |     Exhibit 4, that was signed one day prior | 13:30:38 |
| 19 | to this offer, is not listed as a document that's | 13:30:40 |
| 20 | attached to this email? | 13:30:44 |
| 21 |     A  I have no idea what's attached. | 13:30:47 |
| 22 |     Q  Well, the attachments are -- as he stated | 13:30:49 |
| 23 | before, the attachments are listed under here. | 13:30:51 |
| 24 |     A  It does not appear to be attached.  We had | 13:31:01 |
| 25 | told him in June that he was terminated, and he | 13:31:05 |

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                          53

| | | |
|---|---|---|
| 1 | agreed in July.  There's no -- at that point in | 13:31:08 |
| 2 | any of our conversations, there was absolutely no | 13:31:13 |
| 3 | disagreement about whether he was terminated.  The | 13:31:15 |
| 4 | only disagreement about was what he was going to | 13:31:17 |
| 5 | be paid. | 13:31:21 |
| 6 | It was well understood by all parties at | 13:31:21 |
| 7 | the time, including Pat, in my opinion, that he | 13:31:25 |
| 8 | was terminated. | 13:31:26 |
| 9 | Q  That document was signed one day prior and | 13:31:27 |
| 10 | it wasn't attached; is that correct? | 13:31:29 |
| 11 | A  The operative document -- I don't see that | 13:31:31 |
| 12 | it was attached.  The operative document, however, | 13:31:33 |
| 13 | was from June. | 13:31:35 |
| 14 | Q  And that document from June was also not | 13:31:35 |
| 15 | attached, correct? | 13:31:38 |
| 16 | A  I do not see it attached. | 13:31:38 |
| 17 | Q  And you wrote the email.  Is there a | 13:31:41 |
| 18 | reason why you didn't attach it? | 13:31:43 |
| 19 | A  Because the subject of the email is not | 13:31:48 |
| 20 | his termination, which was already agreed upon and | 13:31:49 |
| 21 | he had acknowledged in writing back in July.  The | 13:31:52 |
| 22 | subject of the email is about the valuation. | 13:31:54 |
| 23 | Q  Okay.  And you managed to send these | 13:31:57 |
| 24 | documents to him via email.  Did you ever send any | 13:32:03 |
| 25 | of those -- Exhibit 4 or 5, the two documents that | 13:32:08 |

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                    54

| | | |
|---|---|---|
| 1 | you refer to as termination documents, did you | 13:32:13 |
| 2 | ever send those to him in email? | 13:32:16 |
| 3 | MR. GILMORE:  "You" being Mr. Davis | 13:32:18 |
| 4 | personally? | 13:32:20 |
| 5 | BY MR. MINSON: | 13:32:20 |
| 6 | Q  "You" being Mr. Davis personally. | 13:32:21 |
| 7 | A  I don't recall. | 13:32:23 |
| 8 | Q  And you as ProPharma, in communication | 13:32:23 |
| 9 | with Pat, did you ever send it -- did ProPharma | 13:32:25 |
| 10 | ever send it to him in email? | 13:32:28 |
| 11 | A  I don't recall.  I don't know what they | 13:32:30 |
| 12 | may or may not have sent him. | 13:32:32 |
| 13 | Q  So you're saying that you're not aware of | 13:32:39 |
| 14 | that important communication between ProPharma and | 13:32:41 |
| 15 | Pat? | 13:32:45 |
| 16 | MR. GILMORE:  Objection, form, lack of | 13:32:47 |
| 17 | foundation. | 13:32:49 |
| 18 | BY THE WITNESS: | 13:32:49 |
| 19 | A  I personally had a conversation with Pat | 13:32:50 |
| 20 | telling him he was removed from the board, and he | 13:32:52 |
| 21 | acknowledged that.  He had been asking to be | 13:32:54 |
| 22 | removed from the board for conflict for a long | 13:32:57 |
| 23 | time.  He acknowledged that in a conversation in | 13:32:59 |
| 24 | June when we spoke, I will add, despite his | 13:33:01 |
| 25 | pleadings to the court to the contrary.  And he | 13:33:06 |

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                    55

| | | |
|---|---|---|
| 1 | acknowledges in writing in July and -- | 13:33:13 |
| 2 | BY MR. MINSON: | 13:33:14 |
| 3 | Q  Okay. | 13:33:15 |
| 4 | A  -- was never involved in any other board | 13:33:15 |
| 5 | matters. | 13:33:19 |
| 6 | Q  But my specific question is that today, as | 13:33:19 |
| 7 | you sit here, you are not aware of whether | 13:33:22 |
| 8 | ProPharma communicated these two documents, these | 13:33:25 |
| 9 | two termination documents that we've discussed, | 13:33:30 |
| 10 | Exhibit 4 and Exhibit 5, you are not aware of | 13:33:33 |
| 11 | whether those two were sent to or communicated to | 13:33:37 |
| 12 | Pat? | 13:33:40 |
| 13 | A  Pat was verbally notified by me | 13:33:41 |
| 14 | personally, but I don't recollect if or know if | 13:33:45 |
| 15 | they were sent to him -- the two documents were | 13:33:50 |
| 16 | referred to, although I certainly verbally | 13:33:53 |
| 17 | notified him, I know that personally. | 13:33:56 |
| 18 | Q  Okay. | 13:33:58 |
| 19 | MR. MINSON:  Mark this as Exhibit | 13:34:49 |
| 20 | Number 10. | 13:34:50 |
| 21 | (WHEREUPON, a certain document was marked | 13:34:50 |
| 22 | Davis Deposition Exhibit No. 10, for | 13:34:50 |
| 23 | identification.) | 13:34:51 |
| 24 | BY MR. MINSON: | 13:34:51 |
| 25 | Q  And do you recognize this document? | 13:34:52 |

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                    56

| | | |
|---|---|---|
| 1 | A  I do. | 13:34:53 |
| 2 | Q  And this is Pat's offer to join the board | 13:34:53 |
| 3 | of ProPharma, correct? | 13:34:56 |
| 4 | A  It is. | 13:34:57 |
| 5 | Q  And why was Pat selected to join the board | 13:35:05 |
| 6 | of ProPharma? | 13:35:08 |
| 7 | A  At the time -- at the time, we believed | 13:35:08 |
| 8 | that he would be additive to the board of | 13:35:12 |
| 9 | directors given his industry experience. | 13:35:16 |
| 10 | Unfortunately, over time, a conflict | 13:35:19 |
| 11 | developed and the CEO had been begging us to have | 13:35:22 |
| 12 | him off the board.  She did not value his input | 13:35:26 |
| 13 | and thought it was out of touch and that he was | 13:35:29 |
| 14 | disruptive to the board proceedings. | 13:35:33 |
| 15 | Q  When did that happen? | 13:35:35 |
| 16 | A  Over time.  I'd say in the previous year | 13:35:36 |
| 17 | prior to his firing. | 13:35:40 |
| 18 | Q  Okay. | 13:35:41 |
| 19 | A  And Pat -- and Pat himself routinely | 13:35:42 |
| 20 | brought up, that he felt -- he told me many times | 13:35:45 |
| 21 | he shouldn't be on the board due to conflicts. | 13:35:47 |
| 22 | Q  We'll discuss that later. | 13:35:50 |
| 23 | So when Pat first joined the board -- this | 13:35:51 |
| 24 | is in 2016 -- what was his reputation in the | 13:35:58 |
| 25 | industry? | 13:36:02 |

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                        57

| | | |
|---|---|---|
| 1 | A   It was mixed.  Some people had a positive | 13:36:02 |
| 2 | impression of Pat; others did not.  They thought | 13:36:07 |
| 3 | he was quite argumentative, that his experience | 13:36:12 |
| 4 | was dated, and that he could be very emotional. | 13:36:16 |
| 5 | Q   And what kind of results did ProPharma | 13:36:20 |
| 6 | have with Pat on the board? | 13:36:25 |
| 7 | A   Results were mixed.  ProPharma had | 13:36:27 |
| 8 | certainly positive attributes, but there was also | 13:36:33 |
| 9 | a lot of issues with the company. | 13:36:37 |
| 10 | Q   Okay.  And during the time Pat was on the | 13:36:38 |
| 11 | board, did ProPharma have any down years where | 13:36:45 |
| 12 | there was no growth or it didn't -- or the value | 13:36:51 |
| 13 | of the company diminished? | 13:36:54 |
| 14 | A   I don't recollect every quarterly | 13:36:57 |
| 15 | valuation.  What I certainly recollect is that | 13:37:00 |
| 16 | there were flat quarters, quarter-to-quarter | 13:37:03 |
| 17 | valuations, and that there were aspects of the | 13:37:08 |
| 18 | business, goals and performance, that were not | 13:37:09 |
| 19 | being met.  Some were being met; some were not. | 13:37:13 |
| 20 | Q   Okay.  But between 2016 and 2019, | 13:37:16 |
| 21 | ProPharma grew, or ProPharma's value increased | 13:37:20 |
| 22 | consistently, if it was on a chart? | 13:37:29 |
| 23 | MR. GILMORE:  Objection, form, foundation. | 13:37:32 |
| 24 | BY THE WITNESS: | 13:37:34 |
| 25 | A   It certainly wasn't consistent.  I think | 13:37:35 |

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                              58

| | | |
|---|---|---|
| 1 | that there was, some quarters, an increase in | 13:37:38 |
| 2 | valuation, and I think some did not. | 13:37:43 |
| 3 | BY MR. MINSON: | 13:37:45 |
| 4 | Q  But from 2019 to 2016, the valuation of | 13:37:45 |
| 5 | ProPharma was much higher than it began, correct? | 13:37:48 |
| 6 | A  It -- from those two points -- | 13:37:51 |
| 7 | Q  Right. | 13:37:54 |
| 8 | A  -- it increased over time. | 13:37:54 |
| 9 | Q  Okay. | 13:37:59 |
| 10 | MR. MINSON:  And I'd also like to mark | 13:38:05 |
| 11 | Exhibit Number 11. | 13:38:09 |
| 12 | (WHEREUPON, a certain document was marked | 13:38:10 |
| 13 | Davis Deposition Exhibit No. 11, for | 13:38:10 |
| 14 | identification.) | 13:38:20 |
| 15 | BY MR. MINSON: | 13:38:20 |
| 16 | Q  This document is produced as | 13:38:21 |
| 17 | PROPHARMA000453, and it is -- it's Pat Donnelly's | 13:38:23 |
| 18 | incentive equity agreement. | 13:38:29 |
| 19 | So the incentive equity agreement, as you | 13:38:34 |
| 20 | understand it, governed how Pat's shares in the | 13:38:38 |
| 21 | company would be paid over time, correct? | 13:38:45 |
| 22 | A  Yes. | 13:38:49 |
| 23 | Q  And there was two components to the | 13:38:50 |
| 24 | incentive equity agreement, one that was just | 13:38:57 |
| 25 | time, and that was 25 percent -- | 13:38:59 |

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                    59

| | | |
|---|---|---|
| 1 | A   Mm-hm. | 13:39:01 |
| 2 | Q   -- and one that was based on how the | 13:39:01 |
| 3 | company performed, correct? | 13:39:04 |
| 4 | A   Yes. | 13:39:08 |
| 5 | Q   And before, you referenced Pat Donnelly -- | 13:39:08 |
| 6 | or talking to Pat Donnelly and having a discussion | 13:39:19 |
| 7 | with him in June, correct, about him moving off | 13:39:21 |
| 8 | the board? | 13:39:27 |
| 9 | A   Mm-hm. | 13:39:29 |
| 10 | Q   Did you discuss the incentive equity units | 13:39:29 |
| 11 | at that time, or was that in later discussions | 13:39:32 |
| 12 | only? | 13:39:34 |
| 13 | MR. GILMORE:  Objection, form, foundation. | 13:39:35 |
| 14 | BY THE WITNESS: | 13:39:37 |
| 15 | A   You're talking about in June? | 13:39:38 |
| 16 | BY MR. MINSON: | 13:39:39 |
| 17 | Q   Yeah. | 13:39:39 |
| 18 | A   In June 2019? | 13:39:39 |
| 19 | Q   Mm-hm. | 13:39:42 |
| 20 | A   My recollection of that conversation is | 13:39:43 |
| 21 | very short.  Pat fully understood that -- he'd | 13:39:44 |
| 22 | become a very disruptive force, both at Linden and | 13:39:49 |
| 23 | with ProPharma.  The CEO had been begging me to | 13:39:53 |
| 24 | get him off the board for a long time.  I'd | 13:39:55 |
| 25 | actually been keeping him on the board. | 13:39:58 |

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                    60

| | | |
|---|---|---|
| 1 | And that conversation, which Pat was | 13:40:00 |
| 2 | expecting, was that he was not going to be on the | 13:40:02 |
| 3 | board -- you know, he was being terminated from | 13:40:06 |
| 4 | the boards of ERG, ProPharma, et cetera, and we | 13:40:08 |
| 5 | were both moving on. | 13:40:11 |
| 6 | Q  So it was not Pat's decision to step down | 13:40:14 |
| 7 | from the board, is what you're saying? | 13:40:17 |
| 8 | A  Pat had been asking and saying to me on | 13:40:18 |
| 9 | multiple occasions that he should not be on the | 13:40:21 |
| 10 | board.  He had said it on many occasions. | 13:40:24 |
| 11 | Q  Okay.  So I'm just confused.  I don't know | 13:40:26 |
| 12 | whether you're telling me that Pat felt conflicted | 13:40:28 |
| 13 | and wanted to leave the board or, as you just | 13:40:34 |
| 14 | said, the CEO wanted -- or had been asking you to | 13:40:37 |
| 15 | remove him. | 13:40:40 |
| 16 | MR. GILMORE:  Objection, form. | 13:40:42 |
| 17 | BY THE WITNESS: | 13:40:43 |
| 18 | A  Both are true. | 13:40:44 |
| 19 | BY MR. MINSON: | 13:40:44 |
| 20 | Q  Okay.  So there was no debate as to | 13:40:44 |
| 21 | whether he should be removed from the board when | 13:40:50 |
| 22 | you spoke to him? | 13:40:52 |
| 23 | A  No.  He fully understood it was coming. | 13:40:53 |
| 24 | Q  Okay.  And when you say you were asked, is | 13:40:56 |
| 25 | that Mike Farah who asked you to remove him from | 13:41:05 |

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                              61

| | | |
|---|---|---|
| 1 | the board? | 13:41:07 |
| 2 | A  It was asked to have the conversation.  He | 13:41:08 |
| 3 | didn't ask me to remove him.  He did ask -- | 13:41:13 |
| 4 | there's emails -- over time, various board | 13:41:16 |
| 5 | members, Mike, our CEO, wanted him removed. | 13:41:22 |
| 6 | I was actually the one who held out.  But | 13:41:25 |
| 7 | he became so disruptive generally over time, and | 13:41:31 |
| 8 | his request to be removed from the board | 13:41:35 |
| 9 | increased.  It became clear he was a negative | 13:41:36 |
| 10 | influence on the board, of both -- you know, from | 13:41:42 |
| 11 | a style perspective and a substance perspective. | 13:41:44 |
| 12 | Q  Do you remember when he actually requested | 13:41:47 |
| 13 | to be removed? | 13:41:49 |
| 14 | A  Many times.  He'd mutter it.  He'd kind of | 13:41:50 |
| 15 | say to us directly.  It was multiple times.  It | 13:41:56 |
| 16 | wasn't just once. | 13:41:59 |
| 17 | Q  And what was the grounds for those | 13:42:00 |
| 18 | requests?  Why did he want to be removed? | 13:42:01 |
| 19 | A  Because ProPharma and Advarra, although | 13:42:03 |
| 20 | two quite separate businesses, they had -- Advarra | 13:42:10 |
| 21 | had one component of the business, a smaller, less | 13:42:12 |
| 22 | valuable component, that could pursue the same | 13:42:17 |
| 23 | acquisitions as ProPharma. | 13:42:21 |
| 24 | And as a result, there could be the same | 13:42:23 |
| 25 | acquisition that both businesses were looking at, | 13:42:26 |

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                              62

| | | |
|---|---|---|
| 1 | even though it was the main business for ProPharma | 13:42:28 |
| 2 | and only a small, lesser valuable part of Advarra. | 13:42:30 |
| 3 | And Pat was, as his reputation had been, | 13:42:34 |
| 4 | became incredibly emotional.  There are some | 13:42:39 |
| 5 | emails that I think are in all of this | 13:42:42 |
| 6 | testimony -- in the discovery where he's very, | 13:42:45 |
| 7 | very emotional about -- and uses the word | 13:42:49 |
| 8 | "conflict."  He does it in emails, about the | 13:42:54 |
| 9 | conflict and about acquisitions. | 13:42:57 |
| 10 | Unusually emotional for an executive or | 13:42:58 |
| 11 | board member in my experience. | 13:43:03 |
| 12 | Q  Okay. | 13:43:04 |
| 13 | A  We actually had discussions about what | 13:43:11 |
| 14 | was -- if there was something wrong with Pat, as | 13:43:13 |
| 15 | such, you know, an unusual set of emotional | 13:43:16 |
| 16 | outbursts, specifically with Weinberg Group. | 13:43:19 |
| 17 | MR. MINSON:  Can you mark this as Exhibit | 13:43:21 |
| 18 | Number 12. | 13:43:24 |
| 19 | (WHEREUPON, a certain document was marked | 13:43:24 |
| 20 | Davis Deposition Exhibit No. 12, for | 13:43:24 |
| 21 | identification.) | 13:43:42 |
| 22 | BY MR. MINSON: | 13:43:42 |
| 23 | Q  So this is an email from Mike Farah to you | 13:43:43 |
| 24 | that's dated January of 2019. | 13:43:46 |
| 25 | A  Mm-hm. | 13:43:50 |

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                     63

| | | |
|---|---|---|
| 1 | Q   And it says -- like you said, it says:  I | 13:43:51 |
| 2 | think it makes sense to ask Pat to step down from | 13:43:55 |
| 3 | the board of PPG.  He feels conflicted because | 13:43:57 |
| 4 | Advarra competes with PPG, and he also feels like | 13:44:01 |
| 5 | Dawn doesn't value his input.  Given his perceived | 13:44:05 |
| 6 | conflict with Advarra, I think it makes sense to | 13:44:09 |
| 7 | ask him to step down.  I believe he should keep | 13:44:12 |
| 8 | his equity, 75 bps -- to be honest, I -- | 13:44:15 |
| 9 |     A   Basis points. | 13:44:21 |
| 10 |     Q   Okay. | 13:44:23 |
| 11 |     A   Point 75 of 1 percent -- | 13:44:23 |
| 12 |     Q   Okay.  I didn't know what that meant -- | 13:44:24 |
| 13 |     A   That's a finance -- | 13:44:24 |
| 14 |     Q   -- I appreciate that. | 13:44:26 |
| 15 |     A   It's a finance term.  There's a hundred | 13:44:26 |
| 16 | basis points in a percent -- | 13:44:26 |
| 17 |     Q   Okay. | 13:44:26 |
| 18 |     A   -- so it's .75 percent. | 13:44:28 |
| 19 |     Q   Okay.  Got it. | 13:44:29 |
| 20 |         (Continuing) -- given his level of | 13:44:31 |
| 21 | involvement up to this point. | 13:44:32 |
| 22 |         So is that involvement, do you think | 13:44:33 |
| 23 | that's positive, or do you think that's a negative | 13:44:35 |
| 24 | comment on, you know, how his performance has been | 13:44:39 |
| 25 | up to this point? | 13:44:43 |

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                   64

| | | |
|---|---|---|
| 1 | A   There were a variety -- there's a wide | 13:44:44 |
| 2 | disparity of comments -- of views of his | 13:44:48 |
| 3 | performance.  And you see them in this email. | 13:44:50 |
| 4 | Dawn does not value his input.  She did not want | 13:44:52 |
| 5 | him to get anything. | 13:44:55 |
| 6 | Michael had a more positive view.  But | 13:44:56 |
| 7 | it's also not relevant.  This is January, we | 13:44:59 |
| 8 | terminated him in June, and so this is six months | 13:45:03 |
| 9 | prior. | 13:45:07 |
| 10 | Q   Okay.  And so when did -- so you say the | 13:45:07 |
| 11 | conversation took place in June -- | 13:45:14 |
| 12 | A   Mm-hm. | 13:45:16 |
| 13 | Q   -- of when you decided to talk to Pat, the | 13:45:16 |
| 14 | one you're talking about.  So it was like five | 13:45:20 |
| 15 | months in between this email -- | 13:45:23 |
| 16 | A   Yeah. | 13:45:24 |
| 17 | Q   -- and this conversation you had? | 13:45:25 |
| 18 | MR. MINSON:  I want to introduce Exhibit | 13:45:36 |
| 19 | Number 13.  Sorry for all the exhibits.  It's a | 13:45:39 |
| 20 | very complicated set of facts. | 13:45:41 |
| 21 | THE WITNESS:  I don't think it's that | 13:45:43 |
| 22 | complicated. | 13:45:44 |
| 23 | MR. MINSON:  Well... | 13:45:44 |
| 24 | THE WITNESS:  He sent an email to us | 13:45:45 |
| 25 | saying he was off the board so... | 13:45:47 |

Transcript of Anthony Davis, Designated Representative
September 12, 2022                              65

| | | |
|---|---|---|
| 1 | MR. MINSON:  Well... | 13:45:49 |
| 2 | (WHEREUPON, a certain document was marked | 13:45:49 |
| 3 | Davis Deposition Exhibit No. 13, for | 13:45:49 |
| 4 | identification.) | 13:46:13 |
| 5 | BY MR. MINSON: | 13:46:13 |
| 6 | Q  This is ProPharma's answers to Pat's first | 13:46:14 |
| 7 | amended complaint.  And I want to turn your | 13:46:17 |
| 8 | attention to Paragraph -- one moment -- | 13:46:20 |
| 9 | Paragraph 88. | 13:46:28 |
| 10 | This is just for reference.  So it says: | 13:46:34 |
| 11 | In August 2019, Anthony Davis talked to | 13:46:50 |
| 12 | Mr. Donnelly about the potential possibility that | 13:46:54 |
| 13 | Pat may have to leave the ProPharma board of | 13:46:56 |
| 14 | managers. | 13:46:59 |
| 15 | And your response is:  Defendant admits | 13:47:00 |
| 16 | that Mr. Davis had a conversation with plaintiff | 13:47:02 |
| 17 | regarding his removal from the ProPharma board in | 13:47:06 |
| 18 | or around August of 2019, otherwise denied. | 13:47:09 |
| 19 | A  Mm-hm. | 13:47:14 |
| 20 | Q  So I guess my question is, if you had a | 13:47:15 |
| 21 | conversation with him regarding removal in August, | 13:47:17 |
| 22 | I'm trying to understand how it was settled by | 13:47:23 |
| 23 | June. | 13:47:26 |
| 24 | MR. GILMORE:  Objection, form, foundation. | 13:47:31 |
| 25 | | |

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                          66

| | | |
|---|---|---|
| 1 | BY THE WITNESS: | 13:47:33 |
| 2 | A  Sorry. | 13:47:33 |
| 3 | BY MR. MINSON: | 13:47:33 |
| 4 | Q  Okay.  So it's -- your answer to this | 13:47:34 |
| 5 | allegation is that you admit that Mr. Davis, you, | 13:47:36 |
| 6 | had a conversation with plaintiff regarding his | 13:47:40 |
| 7 | removal from ProPharma's board in or around | 13:47:43 |
| 8 | August 2019. | 13:47:47 |
| 9 | So what was your conversation with him in | 13:47:49 |
| 10 | or around August 2019? | 13:47:54 |
| 11 | A  There's nothing about this that says this | 13:47:56 |
| 12 | was the only conversation.  The -- your | 13:48:00 |
| 13 | Paragraph 88, meaning the plaintiff's, doesn't say | 13:48:02 |
| 14 | the only conversation; it just says in August, | 13:48:04 |
| 15 | this conversation happened. | 13:48:06 |
| 16 | Q  Right. | 13:48:07 |
| 17 | A  We acknowledged.  Yeah, sure, there's a | 13:48:07 |
| 18 | conversation.  We didn't say it was the only one. | 13:48:10 |
| 19 | Q  It does say regarding removal. | 13:48:13 |
| 20 | A  Because we were discussing the valuation, | 13:48:16 |
| 21 | and he objected to our valuation.  And there had | 13:48:19 |
| 22 | been verbal conversations about the valuation. | 13:48:22 |
| 23 | There's the email you proposed -- sorry, that you | 13:48:24 |
| 24 | showed us.  But there had been conversations. | 13:48:27 |
| 25 | Q  I definitely understand what you're | 13:48:29 |

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                    67

| | | |
|---|---|---|
| 1 | saying, however.  But you've told me, in response | 13:48:31 |
| 2 | to my questions, several times, that there's a | 13:48:35 |
| 3 | difference between payment valuation and removal, | 13:48:38 |
| 4 | correct? | 13:48:42 |
| 5 |     A  Yeah, regarding this -- this says | 13:48:43 |
| 6 | regarding -- "regarding" is a very broad word -- | 13:48:47 |
| 7 |     Q  Okay. | 13:48:50 |
| 8 |     A  -- the valuation.  There was a | 13:48:50 |
| 9 | conversation regarding, regarding his removal, | 13:48:52 |
| 10 | meaning regarding the valuation. | 13:48:55 |
| 11 |     Q  Okay. | 13:48:57 |
| 12 |     A  So "regarding" is a super broad word, and | 13:48:57 |
| 13 | the valuation -- | 13:49:01 |
| 14 |     Q  So it was the valuation.  It wasn't -- it | 13:49:02 |
| 15 | wasn't the removal you were discussing in | 13:49:04 |
| 16 | August 2019? | 13:49:06 |
| 17 |     A  Correct.  And he -- again, I'll keep | 13:49:06 |
| 18 | saying it, he himself acknowledged in July that he | 13:49:08 |
| 19 | was off the board. | 13:49:11 |
| 20 |     MR. MINSON:  Can you mark this Exhibit | 13:49:34 |
| 21 | Number 14. | 13:49:36 |
| 22 |     (WHEREUPON, a certain document was marked | 13:49:37 |
| 23 | Davis Deposition Exhibit No. 14, for | 13:49:37 |
| 24 | identification.) | 13:50:13 |
| 25 | | |

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                    68

| | | |
|---|---|---|
| 1 | BY MR. MINSON: | 13:50:13 |
| 2 | Q  This is produced as LINDEN000186.  It's an | 13:50:14 |
| 3 | email from -- let's see.  It's an email from Lisa | 13:50:21 |
| 4 | Cohen sending MMM materials. | 13:50:31 |
| 5 | And it says it's -- Patrick Donnelly's on | 13:50:40 |
| 6 | the email.  And he says, on July 21st -- and, mind | 13:50:43 |
| 7 | you, this was produced in reference to a request | 13:50:49 |
| 8 | on ProPharma.  He says:  I will not be on the | 13:50:51 |
| 9 | call.  And Michael Farah says he used to give us | 13:51:02 |
| 10 | an excuse as to why. | 13:51:05 |
| 11 | And that's, again, on LINDEN0000185. | 13:51:08 |
| 12 | And then you say, on July 21st:  I should | 13:51:15 |
| 13 | just talk to him next week. | 13:51:19 |
| 14 | Now, based on your answer to the complaint | 13:51:21 |
| 15 | about speaking to him in August of 2019 regarding | 13:51:24 |
| 16 | removal and this email saying:  I should just talk | 13:51:29 |
| 17 | to him next week, was removal what you had | 13:51:35 |
| 18 | discussed with him after this email? | 13:51:39 |
| 19 | A  No -- | 13:51:42 |
| 20 | MR. GILMORE:  Hold on.  Objection, form, | 13:51:43 |
| 21 | foundation, misstates the document. | 13:51:46 |
| 22 | And, for the record, Counsel, this | 13:51:48 |
| 23 | document has a Bates number of LINDEN185, which | 13:51:51 |
| 24 | indicates it was produced by nonparty Linden | 13:51:54 |
| 25 | Capital Partners LP III and IV in response to your | 13:52:00 |

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                    69

| | | |
|---|---|---|
| 1 | document subpoena.  It was not produced by | 13:52:02 |
| 2 | ProPharma Group in response to the document | 13:52:06 |
| 3 | request. | 13:52:07 |
| 4 | MR. MINSON:  No, I wasn't saying that.  I | 13:52:08 |
| 5 | was saying Linden produced it in response to | 13:52:09 |
| 6 | document requests regarding ProPharma. | 13:52:11 |
| 7 | MR. GILMORE:  You may have misspoken, but | 13:52:13 |
| 8 | you said ProPharma. | 13:52:15 |
| 9 | MR. MINSON:  I'm sorry.  I misspoke. | 13:52:16 |
| 10 | MR. GILMORE:  That's why I'm correcting | 13:52:18 |
| 11 | for the record -- | 13:52:19 |
| 12 | MR. MINSON:  Okay. | 13:52:19 |
| 13 | MR. GILMORE:  -- because it clearly says | 13:52:20 |
| 14 | Linden on the Bates number. | 13:52:21 |
| 15 | MR. MINSON:  Yeah, it does. | 13:52:24 |
| 16 | BY MR. MINSON: | 13:52:25 |
| 17 | Q  So, yeah, it says:  I should talk to | 13:52:25 |
| 18 | him -- I should just talk to him next week. | 13:52:28 |
| 19 | And then Mike Farah responds:  Yes, that | 13:52:30 |
| 20 | makes sense.  I will pull some info on PPG and ERG | 13:52:32 |
| 21 | incentive equity. | 13:52:38 |
| 22 | So what did you speak with him about on -- | 13:52:40 |
| 23 | next week from July 22nd, 2019? | 13:52:43 |
| 24 | A  The process of when you terminate someone | 13:52:46 |
| 25 | is you don't go to that -- an executive or board | 13:52:51 |

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                        70

| | | |
|---|---|---|
| 1 | member, you don't go to them and say:  Let's | 13:53:00 |
| 2 | negotiate the valuation of your incentive equity | 13:53:03 |
| 3 | units.  They might reasonably wonder why you want | 13:53:06 |
| 4 | to have that conversation. | 13:53:11 |
| 5 |     What you do is you go to said executive or | 13:53:12 |
| 6 | board member and you say:  You're terminated. | 13:53:15 |
| 7 |     And then there are various agreements, LLC | 13:53:19 |
| 8 | agreements, management equity investments -- | 13:53:22 |
| 9 | incentive equity agreements. | 13:53:26 |
| 10 |     THE WITNESS:  Sorry to you for mumbling. | 13:53:30 |
| 11 | BY THE WITNESS: | 13:53:32 |
| 12 |   A   Then there's a whole set of documents | 13:53:34 |
| 13 | people go read through and determine the | 13:53:36 |
| 14 | appropriate valuation. | 13:53:42 |
| 15 |     What you're seeing is exactly what you | 13:53:44 |
| 16 | would expect to see if I had told him I was | 13:53:46 |
| 17 | terminating him in June and now we have to take | 13:53:49 |
| 18 | the next step and figure out the valuation and | 13:53:53 |
| 19 | what we're going to do. | 13:53:57 |
| 20 |     Because sometimes you repurchase it; | 13:53:58 |
| 21 | sometimes you don't.  There's various -- every | 13:54:01 |
| 22 | document's different, whether you can, you cannot, | 13:54:03 |
| 23 | et cetera. | 13:54:06 |
| 24 |     And so this is precisely what you'd expect | 13:54:08 |
| 25 | to see if, and only if, I'd already told him that | 13:54:11 |

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                      71

| | | |
|---|---|---|
| 1 | he was terminated. | 13:54:13 |
| 2 | I will note the reason I say:  I should | 13:54:14 |
| 3 | just talk to him next week is because, at this | 13:54:18 |
| 4 | point, Pat was very antagonistic, very emotional, | 13:54:22 |
| 5 | and he was difficult to talk to. | 13:54:27 |
| 6 | And so you're seeing me acknowledging that | 13:54:28 |
| 7 | it's going to be a difficult conversation. | 13:54:32 |
| 8 | BY MR. MINSON: | 13:54:36 |
| 9 | Q  Okay.  And I think this is the email you | 13:54:36 |
| 10 | referred to a bunch of times. | 13:54:38 |
| 11 | MR. MINSON:  Can you mark this as Exhibit | 13:54:40 |
| 12 | Number 15. | 13:54:41 |
| 13 | (WHEREUPON, a certain document was marked | 13:54:42 |
| 14 | Davis Deposition Exhibit No. 15, for | 13:54:42 |
| 15 | identification.) | 13:54:59 |
| 16 | BY MR. MINSON: | 13:54:59 |
| 17 | Q  So this is an email request from a Brianna | 13:55:00 |
| 18 | Loverich to Pat Donnelly.  And it says:  Brianna, | 13:55:04 |
| 19 | I'm no longer on the ProPharma board, so I will | 13:55:07 |
| 20 | not be attending.  Thanks for all your assistance | 13:55:10 |
| 21 | to date. | 13:55:13 |
| 22 | Right? | 13:55:14 |
| 23 | A  That is indeed when he acknowledges that | 13:55:15 |
| 24 | he's not on the board and resigns for -- from my | 13:55:18 |
| 25 | view.  Yes, this is why I don't think any of us | 13:55:23 |

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                          72

| | | |
|---|---|---|
| 1 | should be sitting here. | 13:55:25 |
| 2 |    Q  Okay.  But -- | 13:55:26 |
| 3 |    A  Among other -- many, many, many other | 13:55:28 |
| 4 | facts. | 13:55:30 |
| 5 |    Q  However, however, I want to direct your | 13:55:31 |
| 6 | attention back to Exhibit Number 14.  When he | 13:55:33 |
| 7 | says:  I will not be on the call, he obviously | 13:55:36 |
| 8 | feels obligated to inform you that he's not going | 13:55:38 |
| 9 | to be on the call.  And then Michael Farah says he | 13:55:41 |
| 10 | used to -- FYI, he used to give us an excuse as to | 13:55:44 |
| 11 | why. | 13:55:48 |
| 12 |      So I guess my question is, why would | 13:55:49 |
| 13 | Mr. Farah expect an excuse if he had been | 13:55:53 |
| 14 | terminated? | 13:55:56 |
| 15 |    MR. GILMORE:  Objection, form, lack of | 13:55:57 |
| 16 | foundation. | 13:56:01 |
| 17 | BY THE WITNESS: | 13:56:01 |
| 18 |    A  I will nonetheless answer.  This is not | 13:56:01 |
| 19 | about ProPharma; this is Linden Monday morning | 13:56:04 |
| 20 | meeting.  MMM is our monday morning meeting.  And, | 13:56:09 |
| 21 | frankly, if you look at the attachments, the | 13:56:12 |
| 22 | attachments are our Near-Term Deal Pipeline, | 13:56:14 |
| 23 | Linden Pipeline, and Staffing Overview. | 13:56:17 |
| 24 |      And he was -- although did not have an | 13:56:20 |
| 25 | operating partner agreement in place, he was an | 13:56:24 |

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                    73

| | | |
|---|---|---|
| 1 | informal operating partner with us, and all | 13:56:28 |
| 2 | operating -- with Linden, not ProPharma.  All | 13:56:30 |
| 3 | Linden operating partners are expected to | 13:56:35 |
| 4 | participate in the Monday morning meeting, whether | 13:56:37 |
| 5 | or not they have an operating partner agreement in | 13:56:39 |
| 6 | place, which he did not. | 13:56:41 |
| 7 | And so this is not ProPharma; this is | 13:56:42 |
| 8 | Linden. | 13:56:46 |
| 9 | BY MR. MINSON: | 13:56:46 |
| 10 | Q  Okay.  But your response was to that chain | 13:56:46 |
| 11 | to -- or, I guess, Michael Farah's response to | 13:56:49 |
| 12 | you, two e-mails up, directly linked it to | 13:56:53 |
| 13 | ProPharma.  It says:  Yes, that makes sense.  I'll | 13:56:56 |
| 14 | pull some info on PPG and ERG incentive equity. | 13:56:59 |
| 15 | So I'm just trying to figure out.  You | 13:57:03 |
| 16 | said that you'd talk to him next week about | 13:57:05 |
| 17 | ProPharma, previously.  So I'm just wondering why | 13:57:08 |
| 18 | your response to this -- | 13:57:10 |
| 19 | A  What you're reading is a relationship that | 13:57:12 |
| 20 | has deteriorated.  Pat's being -- my opinion is | 13:57:15 |
| 21 | that Pat's being a jerk by just saying:  I will | 13:57:20 |
| 22 | not be on the call for Linden. | 13:57:23 |
| 23 | Michael Farah is making a jerky comment | 13:57:25 |
| 24 | back, but not to Pat, saying he used to give us an | 13:57:30 |
| 25 | excuse as to why he avoided being on Linden calls. | 13:57:34 |

| | | |
|---|---|---|
| 1 | I acknowledge what's going on, which is | 13:57:37 |
| 2 | Pat's upset and being a jerk, Michael's upset and | 13:57:39 |
| 3 | making jerky comments.  I know what's going on. | 13:57:43 |
| 4 | He's no longer on the PPG board or ERG boards, and | 13:57:47 |
| 5 | we need to now negotiate the valuation of that. | 13:57:51 |
| 6 | To me it's -- to me it's very | 13:57:56 |
| 7 | straightforward about what's going on. | 13:57:59 |
| 8 | MR. GILMORE:  We've been going, I think, | 13:58:07 |
| 9 | for about an hour.  If you're done with these | 13:58:09 |
| 10 | documents, maybe we can take a five-minute break? | 13:58:12 |
| 11 | MR. MINSON:  That's fine. | 13:58:13 |
| 12 | THE VIDEOGRAPHER:  Please stand by. | 13:58:15 |
| 13 | We are going off the record.  The time is | 13:58:16 |
| 14 | 1:58 p.m. | 13:58:18 |
| 15 | (WHEREUPON, a recess was had.) | 14:03:39 |
| 16 | THE VIDEOGRAPHER:  We are back on the | 14:03:39 |
| 17 | record.  The time is 2:03 p.m. | 14:03:49 |
| 18 | BY MR. MINSON: | 14:03:51 |
| 19 | Q  So in an earlier exhibit, I believe it was | 14:03:54 |
| 20 | Exhibit Number 12, which was an email between you | 14:03:58 |
| 21 | and Mike Farah about him asking you to remove Pat | 14:04:05 |
| 22 | from the board, you mentioned that Pat perceives a | 14:04:08 |
| 23 | conflict. | 14:04:12 |
| 24 | When was the first time that he discussed | 14:04:13 |
| 25 | that conflict with you? | 14:04:16 |

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                    75

| | | |
|---|---|---|
| 1 | A  I think it started as soon as he was -- | 14:04:17 |
| 2 | became CEO of Advarra. | 14:04:21 |
| 3 | Q  Okay.  And just for the record, when was | 14:04:24 |
| 4 | that? | 14:04:25 |
| 5 | A  I don't recall the exact date. | 14:04:25 |
| 6 | Q  Okay. | 14:04:27 |
| 7 | A  Should have been 2017, 2018.  I don't | 14:04:27 |
| 8 | recall the exact date. | 14:04:33 |
| 9 | Q  So about a year after he came on the board | 14:04:34 |
| 10 | for ProPharma? | 14:04:38 |
| 11 | A  Sounds about right. | 14:04:39 |
| 12 | Q  Okay. | 14:04:41 |
| 13 | A  Year, year and a half, yeah. | 14:04:41 |
| 14 | Q  Sorry, I'm going to give you more | 14:04:43 |
| 15 | exhibits. | 14:04:49 |
| 16 | MR. MINSON:  Mark this as Exhibit | 14:04:51 |
| 17 | Number 16. | 14:04:54 |
| 18 | (WHEREUPON, a certain document was marked | 14:04:54 |
| 19 | Davis Deposition Exhibit No. 16, for | 14:04:54 |
| 20 | identification.) | 14:05:07 |
| 21 | BY MR. MINSON: | 14:05:07 |
| 22 | Q  This is -- I believe this is an instance | 14:05:10 |
| 23 | of a type of conflict that you're referring to. | 14:05:12 |
| 24 | There's a 10/13/18 email from Pat Donnelly in | 14:05:20 |
| 25 | which he's referring to a potential deal with | 14:05:28 |

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                           76

| | | |
|---|---|---|
| 1 | ProPharma. | 14:05:31 |
| 2 | And he says -- I guess this is now, you | 14:05:33 |
| 3 | told me, the Monday morning meeting.  He says: | 14:05:37 |
| 4 | Mike, this article is a bit self-serving in that | 14:05:41 |
| 5 | he says he wants to limit to hands-off but not get | 14:05:43 |
| 6 | any bigger.  He's in a situation where he has no | 14:05:46 |
| 7 | choice.  On the monday morning meeting, how do you | 14:05:47 |
| 8 | want me to address Weinberg?  They're a competitor | 14:05:52 |
| 9 | to Advarra Consulting.  I also bit my tongue on | 14:05:54 |
| 10 | them at the last board meeting, as I've been | 14:05:57 |
| 11 | staying out of M&A with PPG.  For the record, I | 14:06:00 |
| 12 | think the clinical compliance and regulatory | 14:06:05 |
| 13 | should be with Advarra and the manufacturing side | 14:06:07 |
| 14 | of PPG. | 14:06:09 |
| 15 | By the way, the write-up is wrong, and the | 14:06:10 |
| 16 | founder was Matthew's father, not Matthew, back in | 14:06:13 |
| 17 | '83.  I have a perfect call -- excuse to stay off | 14:06:16 |
| 18 | the call Monday, as I will be in Cambodia.  Your | 14:06:19 |
| 19 | call. | 14:06:24 |
| 20 | And you say:  Thanks for the heads-up -- | 14:06:25 |
| 21 | in the next -- I'm sorry, that's not you.  That's | 14:06:29 |
| 22 | Mike Farah. | 14:06:32 |
| 23 | It says:  Thanks for the heads-up.  I have | 14:06:32 |
| 24 | no issues or concerns with you dialing into the | 14:06:34 |
| 25 | Monday meeting as it relates to Weinberg. | 14:06:37 |

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                    77

| | | |
|---|---|---|
| 1 | So previously, you said that Mike Farah | 14:06:39 |
| 2 | expressed a little bit of concern about the | 14:06:43 |
| 3 | conflict, but it doesn't seem so in this response. | 14:06:46 |
| 4 | Did you discuss the conflict with Mike | 14:06:53 |
| 5 | Farah at this point in time?  This was 2018. | 14:06:55 |
| 6 | A  In regards to this specific -- first, can | 14:06:57 |
| 7 | I -- there's an attachment.  Can I spend a | 14:07:01 |
| 8 | second -- | 14:07:03 |
| 9 | Q  Sure, sure, sure. | 14:07:03 |
| 10 | A  -- see what it says? | 14:07:04 |
| 11 | He must be referring to something this is | 14:07:38 |
| 12 | linked to but -- okay.  So I don't actually see | 14:07:41 |
| 13 | the link to The Weinberg Group, but whatever. | 14:07:49 |
| 14 | So the email -- you know, at this time, in | 14:07:52 |
| 15 | 2018, we still had a good relationship with Pat. | 14:07:56 |
| 16 | He had not -- although not directly relevant, | 14:07:58 |
| 17 | the deter- -- the relationship with Pat | 14:08:04 |
| 18 | deteriorated because we ultimately sold Advarra to | 14:08:06 |
| 19 | a company a prior decade from Genstar that had | 14:08:12 |
| 20 | fired Pat a decade earlier, and Pat was still | 14:08:16 |
| 21 | very, very angry about this. | 14:08:19 |
| 22 | And Pat and I actually had a very good | 14:08:20 |
| 23 | relationship through now, through 2018, until | 14:08:24 |
| 24 | January of 2019, when I asked him to meet with | 14:08:26 |
| 25 | Genstar as a potential acquirer of Advarra, | 14:08:29 |

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                    78

| | | |
|---|---|---|
| 1 | fiduciary responsibility that we have to maximize | 14:08:33 |
| 2 | value. | 14:08:37 |
| 3 | And from that moment forward, which was | 14:08:37 |
| 4 | the San Francisco JPMorgan healthcare conference | 14:08:39 |
| 5 | in January of 2019, Pat became antagonistic, and | 14:08:41 |
| 6 | increasingly so. | 14:08:45 |
| 7 | But back in October of 2018, we were still | 14:08:47 |
| 8 | trying to work with Pat and felt that we could | 14:08:50 |
| 9 | manage the conflict. | 14:08:54 |
| 10 | So Pat had been raising them.  And what | 14:08:55 |
| 11 | you see here is us, at this point, having a good | 14:08:57 |
| 12 | relationship with Pat, trying to use him and his | 14:09:04 |
| 13 | knowledge where we could, and try and resolve the | 14:09:06 |
| 14 | conflict, which he had been continually | 14:09:09 |
| 15 | identifying. | 14:09:12 |
| 16 | And so Michael is saying, I have no | 14:09:12 |
| 17 | concerns, but he also says, I understand if you | 14:09:18 |
| 18 | prefer not to dial in and avoid any conflict.  So | 14:09:20 |
| 19 | this is exactly the kind of email you'd expect | 14:09:23 |
| 20 | from Linden trying to be very amenable to Pat and | 14:09:25 |
| 21 | very accommodating and trying to make it work. | 14:09:30 |
| 22 | Because at this time, he had not yet had | 14:09:31 |
| 23 | to meet with -- it's a couple months before he had | 14:09:33 |
| 24 | to meet with Genstar in San Francisco. | 14:09:36 |
| 25 | Q  So based on that, did Linden want Pat off | 14:09:39 |

Transcript of Anthony Davis, Designated Representative
September 12, 2022                              79

| | | |
|---|---|---|
| 1 | of the board based on the conflict?  Or did Linden | 14:09:42 |
| 2 | want Pat off of the board based on other factors? | 14:09:46 |
| 3 | MR. GILMORE:  Objection, form, foundation. | 14:09:51 |
| 4 | BY THE WITNESS: | 14:09:52 |
| 5 | A  I would say that any decision around that | 14:09:53 |
| 6 | becomes a board decision.  I took guidance from | 14:10:02 |
| 7 | all members of the board.  And there were many | 14:10:05 |
| 8 | reasons for him to come off the board.  Part was | 14:10:08 |
| 9 | Pat's request over a long period of time. | 14:10:13 |
| 10 | You also need a board to be well | 14:10:14 |
| 11 | functioning, and Pat was starting, in just a few | 14:10:16 |
| 12 | months from now, becoming very antagonistic and | 14:10:21 |
| 13 | difficult to work with.  And our CEO was getting | 14:10:24 |
| 14 | increasingly strident in her desire to not have | 14:10:28 |
| 15 | him on the board. | 14:10:34 |
| 16 | BY MR. MINSON: | 14:10:36 |
| 17 | Q  So I just want to be clear on your answer. | 14:10:36 |
| 18 | It's not -- the reason that he was -- that you | 14:10:38 |
| 19 | wanted him off of the board was not solely due to | 14:10:42 |
| 20 | a conflict? | 14:10:48 |
| 21 | A  That was certainly a large driver.  And | 14:10:49 |
| 22 | what you're seeing here is the conflict was the | 14:10:52 |
| 23 | largest driver, without question.  And what you | 14:10:55 |
| 24 | see here is when relations are good, we're trying | 14:10:57 |
| 25 | to see if we can mitigate the conflict.  And | 14:11:01 |

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                          80

| | | |
|---|---|---|
| 1 | that's exactly what you see in this email, us | 14:11:03 |
| 2 | trying to mitigate the conflict. | 14:11:06 |
| 3 | When Pat became very antagonistic and | 14:11:07 |
| 4 | angry, it becomes impossible to mitigate the | 14:11:11 |
| 5 | conflict.  You have to have a good relationship to | 14:11:14 |
| 6 | mitigate a conflict.  That relationship began | 14:11:16 |
| 7 | deteriorating significantly in January of 2019, | 14:11:19 |
| 8 | and it got worse and worse and worse and worse. | 14:11:21 |
| 9 | MR. MINSON:  This is going to be | 14:11:37 |
| 10 | Exhibit 17. | 14:11:38 |
| 11 | (WHEREUPON, a certain document was marked | 14:11:38 |
| 12 | Davis Deposition Exhibit No. 17, for | 14:11:38 |
| 13 | identification.) | 14:11:53 |
| 14 | BY MR. MINSON: | 14:11:53 |
| 15 | Q  This is an email from Pat Donnelly to Lisa | 14:11:53 |
| 16 | Cohen.  It's Bates-stamped LINDEN0000108. | 14:11:57 |
| 17 | And it says, in January 2019:  Lisa, I | 14:12:02 |
| 18 | actually think I should recuse from -- myself from | 14:12:09 |
| 19 | this transaction. | 14:12:12 |
| 20 | The email below it, to which it's | 14:12:13 |
| 21 | responding, says:  Pat, I hope your week is going | 14:12:17 |
| 22 | well.  Apologies for last-minute notice on this, | 14:12:20 |
| 23 | but we received the attached from K&E -- I'm | 14:12:22 |
| 24 | assuming is Kirkland & Ellis? | 14:12:26 |
| 25 | A  Yes. | 14:12:27 |

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                      81

| | | |
|---|---|---|
| 1 | Q  -- requesting manual signatures in advance | 14:12:28 |
| 2 | of The Weinberg Group closing tomorrow.  Is this | 14:12:30 |
| 3 | doable on your end? | 14:12:33 |
| 4 | And so his response is to recuse himself. | 14:12:35 |
| 5 | My question regarding that is are there | 14:12:39 |
| 6 | any other instances that you're aware of where he | 14:12:42 |
| 7 | recused himself from a particular transaction? | 14:12:45 |
| 8 | MR. GILMORE:  Hold on one second. | 14:12:51 |
| 9 | Objection.  It's outside -- | 14:12:52 |
| 10 | MR. MINSON:  I know what you're going to | 14:13:03 |
| 11 | say.  It's topic Number 9. | 14:13:05 |
| 12 | MR. GILMORE:  -- the 30(b)(6) topics. | 14:13:10 |
| 13 | MR. MINSON:  Topic Number 9. | 14:13:12 |
| 14 | MR. GILMORE:  Can we go off the record for | 14:13:15 |
| 15 | just one second?  I apologize. | 14:13:17 |
| 16 | THE VIDEOGRAPHER:  We're going off the | 14:13:19 |
| 17 | record.  The time is 2:13 p.m. | 14:13:20 |
| 18 | (WHEREUPON, a recess was had.) | 14:14:37 |
| 19 | THE VIDEOGRAPHER:  We are back on the | 14:14:37 |
| 20 | record.  The time is 2:14 p.m. | 14:14:44 |
| 21 | BY MR. MINSON: | 14:14:49 |
| 22 | Q  Okay.  I don't know, Mr. Davis, if you | 14:14:49 |
| 23 | remember my last question.  It was regarding that | 14:14:53 |
| 24 | recusal. | 14:14:56 |
| 25 | Are these -- is this the only instance | 14:14:58 |

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                    82

| | | |
|---|---|---|
| 1 | where you can think of where Pat recused himself | 14:15:00 |
| 2 | from a particular transaction? | 14:15:03 |
| 3 | A  My recollection is that there were other | 14:15:05 |
| 4 | times he did not want to be involved, whether he | 14:15:07 |
| 5 | used the word "recused" or not, but he did not | 14:15:09 |
| 6 | want to be involved in the discussions. | 14:15:13 |
| 7 | MR. MINSON:  And can you mark this as | 14:15:31 |
| 8 | Exhibit Number 18, ma'am. | 14:15:33 |
| 9 | (WHEREUPON, a certain document was marked | 14:15:33 |
| 10 | Davis Deposition Exhibit No. 18, for | 14:15:33 |
| 11 | identification.) | 14:15:50 |
| 12 | BY MR. MINSON: | 14:15:50 |
| 13 | Q  So this is an email between Mike Farah and | 14:15:50 |
| 14 | Jeff Hargroves, who's the CEO of ProPharma at the | 14:15:54 |
| 15 | time, in March 17th of 2018. | 14:15:57 |
| 16 | It's Bates-stamped -- it's Bates-stamped | 14:16:00 |
| 17 | LINDEN0000960, third-party production. | 14:16:08 |
| 18 | And it says:  Tony -- I'm assuming you, | 14:16:10 |
| 19 | Tony Davis -- spoke with him, and this is probably | 14:16:13 |
| 20 | easier to discuss over the phone when you and I | 14:16:15 |
| 21 | are back.  I'm back -- I'm on the road this week | 14:16:19 |
| 22 | for vacation.  You and I are on the same page, so | 14:16:22 |
| 23 | we'll find a solution.  For now, we'll keep Pat | 14:16:26 |
| 24 | out of any M&A discussions that conflict with PPG. | 14:16:29 |
| 25 | And I think anything PPG has been chasing is | 14:16:33 |

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                          83

| | | |
|---|---|---|
| 1 | off-limits to Advarra.  Tony agrees. | 14:16:36 |
| 2 | So it says you agree.  Is that -- is that | 14:16:39 |
| 3 | accurate of your -- in March of 2018, your | 14:16:41 |
| 4 | assessment of how Pat was going to serve the role | 14:16:46 |
| 5 | of CEO and also a board member? | 14:16:49 |
| 6 | A  I think I'm generally agreeing to, once | 14:16:54 |
| 7 | again, trying to resolve a conflict so that Pat | 14:16:58 |
| 8 | can remain on the board.  And so I'm agreeing with | 14:17:02 |
| 9 | this proposal for now, again, when everyone's | 14:17:06 |
| 10 | getting along.  Hard to resolve a conflict that's | 14:17:11 |
| 11 | being raised by multiple parties. | 14:17:14 |
| 12 | Q  So, I mean, you've answered several times | 14:17:15 |
| 13 | that the conflict is a constant but whether or not | 14:17:20 |
| 14 | you're getting along with Pat changes. | 14:17:25 |
| 15 | A  Yeah -- | 14:17:27 |
| 16 | MR. GILMORE:  Objection, form, foundation. | 14:17:28 |
| 17 | BY THE WITNESS: | 14:17:30 |
| 18 | A  The -- a conflict can arise, and then you | 14:17:31 |
| 19 | have to decide how to mitigate it.  One thing is | 14:17:37 |
| 20 | to, in this case, remove Pat from the board. | 14:17:40 |
| 21 | Another way to do it is to say we're all | 14:17:44 |
| 22 | friends.  Let's have you in some discussion, not | 14:17:49 |
| 23 | others.  Pat's saying, I'll recuse myself, per | 14:17:51 |
| 24 | document 17 -- Exhibit 17. | 14:17:55 |
| 25 | If you have a relationship with a conflict | 14:18:01 |

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                    84

| | | |
|---|---|---|
| 1 | party, you can have good faith discussions about | 14:18:06 |
| 2 | how to resolve that.  If you don't have a good | 14:18:10 |
| 3 | relationship, it's not possible to have good faith | 14:18:14 |
| 4 | discussions on how to resolve a pretty complex | 14:18:19 |
| 5 | conflict. | 14:18:22 |
| 6 | BY MR. MINSON: | 14:18:23 |
| 7 | Q  Okay.  So at that point in time, you | 14:18:23 |
| 8 | believe that ProPharma would be able to mitigate | 14:18:34 |
| 9 | any conflict that arose with Pat based on his CEO | 14:18:36 |
| 10 | status of Advarra? | 14:18:41 |
| 11 | A  I believed that we, collectively.  It | 14:18:42 |
| 12 | wasn't just ProPharma.  It's -- | 14:18:47 |
| 13 | Q  Okay. | 14:18:49 |
| 14 | A  -- we, collectively, could work to resolve | 14:18:50 |
| 15 | a conflict. | 14:18:54 |
| 16 | Q  Okay.  And -- | 14:18:55 |
| 17 | A  And I was in the minority on this.  I wish | 14:18:56 |
| 18 | I had agreed with everyone, including Pat, in 2018 | 14:18:59 |
| 19 | and we wouldn't be sitting here.  I got myself in | 14:19:02 |
| 20 | trouble by being nice to Pat.  Not the only time. | 14:19:05 |
| 21 | Q  All right.  Let's see. | 14:19:10 |
| 22 | MR. MINSON:  Let's mark this as | 14:19:13 |
| 23 | Exhibit 19. | 14:19:14 |
| 24 | | |
| 25 | | |

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                    85

| | | |
|---|---|---|
| 1 | (WHEREUPON, a certain document was marked | 14:19:15 |
| 2 | Davis Deposition Exhibit No. 19, for | 14:19:15 |
| 3 | identification.) | 14:19:35 |
| 4 | BY MR. MINSON: | 14:19:35 |
| 5 | Q  So, basically, I'm going to ask you a | 14:19:36 |
| 6 | question about this email.  Because in Pat's view, | 14:19:37 |
| 7 | as a board member of both Advarra and ProPharma, | 14:19:42 |
| 8 | Richard Thomas had a similar, if not greater, | 14:19:47 |
| 9 | conflict than Pat. | 14:19:52 |
| 10 | And so this is an email where Richard | 14:19:56 |
| 11 | Thomas brings up to Michael Farah and identifies | 14:20:00 |
| 12 | that he does have a conflict. | 14:20:06 |
| 13 | He says:  On the one hand, I haven't had | 14:20:07 |
| 14 | any involvement with Advarra beyond casual | 14:20:15 |
| 15 | discussions, but as it's right in my pharma | 14:20:18 |
| 16 | services sweet spot, I could help acquire quite a | 14:20:21 |
| 17 | bit, thinking about where the business fits | 14:20:25 |
| 18 | strategically, where it could go.  If we formalize | 14:20:27 |
| 19 | and widen our relationship, then I can see | 14:20:31 |
| 20 | potential conflicts.  But I can also simply recuse | 14:20:34 |
| 21 | myself from any discussions on Advarra until it is | 14:20:37 |
| 22 | sold. | 14:20:40 |
| 23 | So here he is -- he is recognizing an | 14:20:41 |
| 24 | Advarra/PPG conflict.  And Michael Farah responds: | 14:20:44 |
| 25 | Tony will reach out to you to discuss shortly.  I | 14:20:52 |

| | | |
|---|---|---|
| 1 | think concern was more around conflict with PPG. | 14:20:55 |
| 2 | Pat is -- I'm assuming that's a typo -- means on | 14:20:59 |
| 3 | board of both.  But between you and I, he doesn't | 14:21:04 |
| 4 | want to be because of conflict around M&A that's | 14:21:06 |
| 5 | in April of 2019.  He'll discuss with you.  Sorry | 14:21:11 |
| 6 | this just happened without anybody speaking to you | 14:21:15 |
| 7 | first. | 14:21:17 |
| 8 | So my question to you about this | 14:21:17 |
| 9 | particular correspondence is, was the difference | 14:21:19 |
| 10 | between your resolution of the conflict with | 14:21:22 |
| 11 | Mr. Thomas solely based on your better | 14:21:26 |
| 12 | relationship with him? | 14:21:30 |
| 13 | MR. GILMORE:  Before you answer that | 14:21:31 |
| 14 | question, I'm just going to object, form, | 14:21:32 |
| 15 | foundation. | 14:21:35 |
| 16 | Counsel, I'd also object to the commentary | 14:21:35 |
| 17 | about the evidence and your view of the facts. | 14:21:38 |
| 18 | It's one thing to just ask questions about | 14:21:40 |
| 19 | documents or just ask questions about things that | 14:21:43 |
| 20 | happen -- | 14:21:45 |
| 21 | MR. MINSON:  I understand, Counsel.  Can I | 14:21:46 |
| 22 | continue? | 14:21:49 |
| 23 | MR. GILMORE:  I'd just ask, going | 14:21:50 |
| 24 | forward -- because you've done it several times | 14:21:51 |
| 25 | now -- to refrain from just making statements | 14:21:53 |

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                    87

| | | |
|---|---|---|
| 1 | about what the facts are. | 14:21:55 |
| 2 | MR. MINSON:  Okay. | 14:21:57 |
| 3 | MR. GILMORE:  And just object to form and | 14:21:57 |
| 4 | foundation of the question. | 14:21:59 |
| 5 | BY MR. MINSON: | 14:22:01 |
| 6 | Q  All right.  So what did you -- first, what | 14:22:01 |
| 7 | did you discuss with Mr. Thomas?  It says that you | 14:22:04 |
| 8 | discussed with him shortly.  It's April of 2019. | 14:22:08 |
| 9 | Did that conversation ever happen? | 14:22:10 |
| 10 | A  Let me first state, Richard Thomas isn't | 14:22:12 |
| 11 | referring to PPG, unless I'm missing something. | 14:22:16 |
| 12 | Michael Farah mentions PPG, but Richard Thomas | 14:22:20 |
| 13 | does not.  I mean, I'm reading it all, but I | 14:22:24 |
| 14 | don't -- | 14:22:28 |
| 15 | Q  Okay. | 14:22:28 |
| 16 | A  I believe the conflict Richard is | 14:22:29 |
| 17 | referring to is not PPG.  He's actually referring | 14:22:32 |
| 18 | to the fact that we owned Genstar -- sorry, we did | 14:22:36 |
| 19 | not own Genstar.  We owned Advarra, and Genstar | 14:22:39 |
| 20 | wanted to buy it.  So as I -- | 14:22:43 |
| 21 | Q  Oh, I see. | 14:22:45 |
| 22 | A  -- read this email, that's the conflict | 14:22:46 |
| 23 | he's actually raising. | 14:22:49 |
| 24 | Q  Okay. | 14:22:50 |
| 25 | A  Michael Farah says, I think, you know, the | 14:22:52 |

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                    88

| | | |
|---|---|---|
| 1 | conflict is more on PPG, but that's not actually | 14:23:00 |
| 2 | what Richard says. | 14:23:04 |
| 3 |     Q  Okay.  So your answer is that you didn't | 14:23:05 |
| 4 | discuss a PPG/Advarra conflict with Richard | 14:23:10 |
| 5 | Thomas? | 14:23:15 |
| 6 |     A  No, I'm sure we did.  My recollection of | 14:23:15 |
| 7 | that conversation, though, it was more about the | 14:23:18 |
| 8 | fact that he had the relationship with the firm | 14:23:22 |
| 9 | Linden, the owner of Advarra, and on the buy side, | 14:23:25 |
| 10 | Genstar buying it. | 14:23:30 |
| 11 |     And my recollection and my advice at that | 14:23:31 |
| 12 | time -- again, trying to make conflicts work -- | 14:23:33 |
| 13 | was that we believed Richard was additive to | 14:23:36 |
| 14 | Genstar buying Advarra because he thought highly | 14:23:41 |
| 15 | of the company. | 14:23:43 |
| 16 |     And so to the extent that Genstar wanted | 14:23:48 |
| 17 | to use an advisor who we knew, liked our company, | 14:23:50 |
| 18 | my answer was sure, go for it.  That's good for | 14:23:54 |
| 19 | us. | 14:23:58 |
| 20 |     Q  Okay. | 14:23:58 |
| 21 |     A  So... | 14:23:58 |
| 22 |     Q  And would you say that -- | 14:23:59 |
| 23 |     MR. MINSON:  Can you mark this as | 14:24:35 |
| 24 | Exhibit 20. | 14:24:36 |
| 25 | | |

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                      89

| | | |
|---|---|---|
| 1 | (WHEREUPON, a certain document was marked | 14:24:36 |
| 2 | Davis Deposition Exhibit No. 20, for | 14:24:36 |
| 3 | identification.) | 14:24:58 |
| 4 | BY MR. MINSON: | 14:24:58 |
| 5 | Q  And I just want to direct your attention | 14:24:58 |
| 6 | to Exhibit 20, Bates-stamp labeled LINDEN0000968. | 14:25:00 |
| 7 | It's another email from Richard Thomas that says: | 14:25:05 |
| 8 | Kam and Michael, closing loop with you.  I had a | 14:25:08 |
| 9 | good call with Tony yesterday, and we ran through | 14:25:11 |
| 10 | perspectives on potential conflicts between PPG | 14:25:14 |
| 11 | and Advarra as voiced by Pat, Dawn, Jeff in the | 14:25:17 |
| 12 | past around consult- -- the consulting business. | 14:25:22 |
| 13 | So I guess my question is, what -- what | 14:25:25 |
| 14 | were your discussions with regard to that | 14:25:27 |
| 15 | conflict? | 14:25:29 |
| 16 | A  Let me read through the email. | 14:25:32 |
| 17 | Yeah, the -- what you can see here is he | 14:26:29 |
| 18 | and I have discussed, as I just talked about to | 14:26:31 |
| 19 | your last question -- we're clearly talking about | 14:26:37 |
| 20 | the Genstar/Linden conflict.  And that's -- you | 14:26:39 |
| 21 | know, it talks about the broader Linden/Genstar | 14:26:43 |
| 22 | discussion. | 14:26:47 |
| 23 | Because he had a role at both firms, and | 14:26:50 |
| 24 | so he was trying to figure out that conflict, was | 14:26:51 |
| 25 | the Genstar/Linden, separate, which we discussed, | 14:26:55 |

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                              90

| | | |
|---|---|---|
| 1 | as this email says. | 14:26:59 |
| 2 | What it also looks like there was a | 14:27:01 |
| 3 | discussion on was then, separately, potential | 14:27:04 |
| 4 | conflicts between PPG and Advarra.  And a similar | 14:27:08 |
| 5 | solution was found, which was, to the extent | 14:27:14 |
| 6 | there's pursuit of M&A targets, he'd recuse | 14:27:19 |
| 7 | himself, similar to Pat's. | 14:27:24 |
| 8 | Q   Okay.  And by doing that, by just recusing | 14:27:27 |
| 9 | himself, Richard Thomas, he remained on the board | 14:27:29 |
| 10 | until ProPharma was sold in September of 2020, | 14:27:35 |
| 11 | correct? | 14:27:40 |
| 12 | A   Well, it's a very different position.  Pat | 14:27:40 |
| 13 | was CEO of Advarra.  And Richard was a board | 14:27:42 |
| 14 | member.  Those are simply different roles so, | 14:27:47 |
| 15 | therefore, present different conflicts. | 14:27:49 |
| 16 | Q   Can you explain how they're different? | 14:27:51 |
| 17 | A   The board has a very limited role -- it's | 14:27:53 |
| 18 | an oversight role.  And so there may be board | 14:27:59 |
| 19 | discussions.  You meet quarterly.  You might meet | 14:28:03 |
| 20 | more often, but typically you're meeting | 14:28:08 |
| 21 | quarterly.  So from a time perspective, it's quite | 14:28:11 |
| 22 | limited.  There's formal agendas; you go through | 14:28:13 |
| 23 | those formal agendas.  If there's an M&A aspect to | 14:28:16 |
| 24 | the agenda, it's easy to just not be part of it. | 14:28:20 |
| 25 | And so it's a very limited role in terms | 14:28:22 |

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                    91

| | | |
|---|---|---|
| 1 | of time and substance. | 14:28:24 |
| 2 | The CEO role is all-encompassing, it's not | 14:28:26 |
| 3 | four times a year, one a quarter.  It's -- you | 14:28:29 |
| 4 | know, if you're a good CEO, it's 80 or 100 hours a | 14:28:31 |
| 5 | week, all the time. | 14:28:35 |
| 6 | And so where if someone's on two boards, | 14:28:36 |
| 7 | they could step out of discussions that are on an | 14:28:39 |
| 8 | agenda.  As CEO, you're constantly talking to your | 14:28:44 |
| 9 | team about M&A and everything else.  It's a much | 14:28:48 |
| 10 | harder conflict position, particularly -- | 14:28:53 |
| 11 | particularly the chief executive officer.  I mean, | 14:28:55 |
| 12 | you're literally involved in every aspect of the | 14:28:57 |
| 13 | business 80 hours a week.  They're simply very | 14:29:00 |
| 14 | different roles from a conflict perspective. | 14:29:03 |
| 15 | An operating partner -- sorry.  A board | 14:29:05 |
| 16 | member can do many other things and recuse himself | 14:29:09 |
| 17 | from M&A.  It's fine.  A CEO, M&A is core -- given | 14:29:13 |
| 18 | Advarra's strategy is core to what they're doing. | 14:29:19 |
| 19 | So they're just totally different roles. | 14:29:25 |
| 20 | Q  Okay.  So there was never any discussion | 14:29:30 |
| 21 | of removing Richard Thomas from the board? | 14:29:32 |
| 22 | A  No. | 14:29:34 |
| 23 | Q  And your working relationship was better | 14:29:37 |
| 24 | with Richard Thomas than Pat, would you say? | 14:29:42 |
| 25 | A  Richard Thomas is a delightful, wonderful | 14:29:45 |

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                    92

| | | |
|---|---|---|
| 1 | man; and Pat, on his best days, is difficult to | 14:29:51 |
| 2 | deal with, by long-standing reputation. | 14:29:54 |
| 3 | Q  Okay.  So being on both the board of | 14:29:58 |
| 4 | Advarra and ProPharma, Richard Thomas eventually | 14:29:59 |
| 5 | received the full vested value of his incentive | 14:30:10 |
| 6 | equity units from ProPharma at the sale, correct? | 14:30:14 |
| 7 | A  We followed the document for both | 14:30:16 |
| 8 | gentlemen.  They had different outcomes, given | 14:30:22 |
| 9 | that one was on the board and one was not at the | 14:30:24 |
| 10 | time of the sale. | 14:30:26 |
| 11 | Q  And then to clarify, this is -- | 14:30:27 |
| 12 | MR. MINSON:  I'd like to mark this is this | 14:30:32 |
| 13 | Exhibit 21. | 14:30:34 |
| 14 | (WHEREUPON, a certain document was marked | 14:30:34 |
| 15 | Davis Deposition Exhibit No. 21, for | 14:30:34 |
| 16 | identification.) | 14:30:54 |
| 17 | BY MR. MINSON: | 14:30:54 |
| 18 | Q  So this is a notification that was sent | 14:30:54 |
| 19 | to, I'm assuming, all the -- well, it says all the | 14:31:19 |
| 20 | operating partners of Linden by you.  And this | 14:31:22 |
| 21 | particular one went to Tony -- to Richard Thomas. | 14:31:29 |
| 22 | It's from third-party discovery.  It's | 14:31:33 |
| 23 | Bates-labeled THOMAS0000077. | 14:31:37 |
| 24 | And it says:  Linden, as some of you have | 14:31:42 |
| 25 | heard, we signed an agreement this week with | 14:31:49 |

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                          93

| | | |
|---|---|---|
| 1 | Odyssey to sell ProPharma.  With any luck, it will | 14:31:52 |
| 2 | close before the annual meeting.  We anticipate | 14:31:55 |
| 3 | the return being over 3X cash at closing, with a | 14:31:56 |
| 4 | small earnout potentially increasing the return to | 14:32:01 |
| 5 | about 3.15 MOIC. | 14:32:04 |
| 6 | And if you look on the date, this | 14:32:08 |
| 7 | particular notification predates the cessation of | 14:32:13 |
| 8 | settlement discussions that's in exhibit -- I hate | 14:32:21 |
| 9 | to make you do this -- | 14:32:24 |
| 10 | A  Got them very organized. | 14:32:29 |
| 11 | MR. GILMORE:  Are you talking about | 14:33:01 |
| 12 | Exhibit 3? | 14:33:02 |
| 13 | MR. MINSON:  It's the letter from -- | 14:33:03 |
| 14 | MR. GILMORE:  The email? | 14:33:04 |
| 15 | MR. MINSON:  Yeah, that's right, | 14:33:05 |
| 16 | Exhibit 3. | 14:33:06 |
| 17 | BY MR. MINSON: | 14:33:07 |
| 18 | Q  Exhibit 3 is dated September 23rd, 2020, | 14:33:07 |
| 19 | and this email here is dated September 18th, 2020. | 14:33:15 |
| 20 | Would you agree that the position you're | 14:33:24 |
| 21 | taking in the September 18th email is different | 14:33:27 |
| 22 | than the position you're taking in the | 14:33:30 |
| 23 | September 23rd email? | 14:33:33 |
| 24 | A  No. | 14:33:34 |
| 25 | Q  The September 23rd email, you say that -- | 14:33:34 |

| | | |
|---|---|---|
| 1 | in trying to negotiate with Pat, you say that -- | 14:33:48 |
| 2 | let me look. | 14:33:51 |
| 3 | THE WITNESS:  Am I allowed to ask for | 14:34:31 |
| 4 | documents? | 14:34:34 |
| 5 | MR. MINSON:  Yeah. | 14:34:34 |
| 6 | THE WITNESS:  Do we have the documents | 14:34:36 |
| 7 | where we wired him 500,000 bucks?  How's that? | 14:34:37 |
| 8 | MR. GILMORE:  I don't think you can ask | 14:34:41 |
| 9 | me.  Ask him, and he can -- | 14:34:42 |
| 10 | MR. MINSON:  I mean -- | 14:34:44 |
| 11 | MR. GILMORE:  -- respond if he wants. | 14:34:46 |
| 12 | MR. MINSON:  -- I'll provide it to you. | 14:34:47 |
| 13 | I have the email.  I think this is the | 14:35:11 |
| 14 | email.  It's a summarized version. | 14:35:13 |
| 15 | (Exhibit shared.) | 14:35:24 |
| 16 | BY THE WITNESS: | 14:35:25 |
| 17 | A  No, there was -- I feel like it was | 14:35:25 |
| 18 | November-ish -- | 14:35:28 |
| 19 | BY MR. MINSON: | 14:35:29 |
| 20 | Q  I think I have that document -- | 14:35:30 |
| 21 | A  -- 2019. | 14:35:32 |
| 22 | Q  We'll talk about it. | 14:35:33 |
| 23 | A  Yeah. | 14:35:33 |
| 24 | Q  But, here, on September 18th, you say that | 14:35:36 |
| 25 | the -- you know, it's clearly over 3.15 MOIC exit, | 14:35:38 |

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                    95

| | | |
|---|---|---|
| 1 | correct? | 14:35:45 |
| 2 | A   That's what that states, yes. | 14:35:45 |
| 3 | Q   Okay.  And can you explain why that wasn't | 14:35:49 |
| 4 | the offer that you made Pat? | 14:35:53 |
| 5 | A   There are many reasons that wasn't the | 14:35:58 |
| 6 | offer made to Pat.  One, this was a year later. | 14:36:01 |
| 7 | Q   Okay. | 14:36:06 |
| 8 | A   Your own -- more than a year later, | 14:36:06 |
| 9 | actually.  It was June of 2019 when he was | 14:36:09 |
| 10 | terminated from the board.  And we talked about | 14:36:11 |
| 11 | the valuation being made at the end of June 2019. | 14:36:16 |
| 12 | Your own expert report talks about the | 14:36:19 |
| 13 | valuation increasing over time.  Therefore, it | 14:36:21 |
| 14 | must have been less, a year earlier, in 2019. | 14:36:25 |
| 15 | And, in fact, it was. | 14:36:30 |
| 16 | All of the investment banking reports also | 14:36:30 |
| 17 | show increasing valuations over time.  So you | 14:36:35 |
| 18 | would never take a valuation from one year later | 14:36:37 |
| 19 | and say it's applicable to 2019. | 14:36:40 |
| 20 | And again, your own expert witness | 14:36:46 |
| 21 | talks -- acknowledges that fact. | 14:36:49 |
| 22 | And the company, in fact, was not worth | 14:36:51 |
| 23 | that in 2019.  Our own valuations, which had been | 14:36:53 |
| 24 | audited, had it at, I believe, 2.5 times.  That | 14:36:57 |
| 25 | was the same valuation we had had and methodology | 14:37:00 |

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                    96

| | | |
|---|---|---|
| 1 | that was consistent with all of our portfolio | 14:37:03 |
| 2 | companies. | 14:37:05 |
| 3 |    Q  Okay. | 14:37:12 |
| 4 |      MR. MINSON:  Can we take a break really | 14:37:20 |
| 5 | quick, just go off the record?  Because this is a | 14:37:23 |
| 6 | mess. | 14:37:24 |
| 7 |      THE VIDEOGRAPHER:  We are going off the | 14:37:25 |
| 8 | record.  The time is 2:37 p.m. | 14:37:27 |
| 9 |      (WHEREUPON, a recess was had.) | 14:40:38 |
| 10 |      THE VIDEOGRAPHER:  We are back on the | 14:40:38 |
| 11 | record.  The time is 2:40 p.m. | 14:40:48 |
| 12 |      THE WITNESS:  I'm the only one who races | 14:40:50 |
| 13 | them who doesn't own one.  Everyone else owns one; | 14:40:53 |
| 14 | I do not.  It's kind of funny. | 14:40:53 |
| 15 | BY MR. MINSON: | 14:40:53 |
| 16 |    Q  I want to go -- since we're back on the | 14:40:59 |
| 17 | record, I want to go and switch gears and talk | 14:41:01 |
| 18 | about kind of what we just talked about, the | 14:41:04 |
| 19 | valuation of Pat's shares. | 14:41:08 |
| 20 |      MR. MINSON:  If you can mark this as | 14:41:18 |
| 21 | Exhibit 22. | 14:41:21 |
| 22 |      (WHEREUPON, a certain document was marked | 14:41:22 |
| 23 | Davis Deposition Exhibit No. 22, for | 14:41:22 |
| 24 | identification.) | 14:41:50 |
| 25 | | |

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                    97

| | | |
|---|---|---|
| 1 | BY MR. MINSON: | 14:41:50 |
| 2 | Q  This is entitled -- it's Linden's | 14:41:53 |
| 3 | valuation policy of Linden Manager LLC. | 14:41:58 |
| 4 | So this was produced by Linden, but I was | 14:42:03 |
| 5 | wondering if the policy regarding valuation in | 14:42:06 |
| 6 | this policy is the one that's applied to | 14:42:09 |
| 7 | ProPharma. | 14:42:12 |
| 8 | A  Well, as we had consistently done | 14:42:15 |
| 9 | throughout our entire ownership, not just with | 14:42:21 |
| 10 | ProPharma but all our companies, we apply a | 14:42:24 |
| 11 | consistent valuation policy that's audited on an | 14:42:27 |
| 12 | annual basis.  And our auditors have never | 14:42:30 |
| 13 | disputed our valuation marks, a "mark" being kind | 14:42:32 |
| 14 | of what we say the value is. | 14:42:35 |
| 15 | And so this is a consistently applied | 14:42:37 |
| 16 | policy, and had been, for ProPharma. | 14:42:39 |
| 17 | And will note that when we had issued | 14:42:41 |
| 18 | equity using our valuation and Pat was on the | 14:42:44 |
| 19 | board, he never objected. | 14:42:48 |
| 20 | Q  Okay.  And there are steps, Level 1, | 14:42:53 |
| 21 | Level 2, Level 3.  Did Linden use all those steps | 14:42:57 |
| 22 | in valuing Pat's equity? | 14:43:02 |
| 23 | A  Well, this says the recommended hierarchy. | 14:43:06 |
| 24 | It doesn't say you have to do them. | 14:43:09 |
| 25 | Q  Okay.  And so which one of those did | 14:43:11 |

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                    98

| | | |
|---|---|---|
| 1 | Linden use in evaluating Pat's incentive equity | 14:43:13 |
| 2 | shares? | 14:43:18 |
| 3 | A  We use the -- several methods.  One is to | 14:43:18 |
| 4 | look at public companies.  Another is to look at | 14:43:23 |
| 5 | similarly recent private trades.  And then -- and | 14:43:28 |
| 6 | then you look at discounted cash flows from time | 14:43:34 |
| 7 | to time.  That's less relevant. | 14:43:37 |
| 8 | Q  And when you say the discounted cash flow | 14:43:39 |
| 9 | is less relevant, what do you mean by that? | 14:43:41 |
| 10 | A  People don't really use a discounted cash | 14:43:43 |
| 11 | flow.  It's an academic exercise.  But it's not | 14:43:48 |
| 12 | the preferred method. | 14:43:51 |
| 13 | Q  Okay.  And so you didn't use any | 14:43:53 |
| 14 | discounted cash flow analysis when you valued | 14:43:56 |
| 15 | Pat's incentive equity shares? | 14:44:00 |
| 16 | A  I'd actually have to look at the | 14:44:02 |
| 17 | valuation. | 14:44:04 |
| 18 | Q  Oh, I see. | 14:44:05 |
| 19 | A  Typically, we have a number of different | 14:44:06 |
| 20 | methodologies.  The ones that we focus on most are | 14:44:06 |
| 21 | the publicly traded comparable analyses -- I'm now | 14:44:11 |
| 22 | on Page B2 -- sorry, 0000717. | 14:44:12 |
| 23 | So the valuation methodology, big | 14:44:15 |
| 24 | romanette 2, big A, and then one, two, three, 23, | 14:44:18 |
| 25 | publicly traded comparable company | 14:44:24 |

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                    99

| | | |
|---|---|---|
| 1 | analysis (unintelligible) -- | 14:44:25 |
| 2 | MS. REPORTER:  You have to slow down a | 14:44:31 |
| 3 | little bit if you're reading it. | 14:44:34 |
| 4 | THE WITNESS:  I'm sorry. | 14:44:36 |
| 5 | THE REPORTER:  That's okay. | 14:44:36 |
| 6 | BY THE WITNESS: | 14:44:36 |
| 7 | A  Publicly traded comparable company | 14:44:37 |
| 8 | analysis.  And, three, precedent transaction | 14:44:39 |
| 9 | analysis, to the extent relevant.  These are the | 14:44:42 |
| 10 | most applicable valuation methodologies, as Pat | 14:44:46 |
| 11 | himself, in his objections, used the same | 14:44:52 |
| 12 | methodologies. | 14:44:55 |
| 13 | BY MR. MINSON: | 14:44:55 |
| 14 | Q  Okay.  I think this is the document that I | 14:44:55 |
| 15 | think we were looking for. | 14:45:03 |
| 16 | MR. MINSON:  Can you mark this as | 14:45:06 |
| 17 | Exhibit 23. | 14:45:07 |
| 18 | (WHEREUPON, a certain document was marked | 14:45:08 |
| 19 | Davis Deposition Exhibit No. 23, for | 14:45:08 |
| 20 | identification.) | 14:45:36 |
| 21 | MR. GILMORE:  Counsel, is this a | 14:45:36 |
| 22 | stand-alone document, or does it have -- is it | 14:45:38 |
| 23 | attached to an email? | 14:45:41 |
| 24 | MR. MINSON:  You know, it's -- | 14:45:42 |
| 25 | MR. GILMORE:  Just so we can orient the | 14:45:43 |

| | | |
|---|---|---|
| 1 | witness. | 14:45:44 |
| 2 | MR. MINSON:  This was -- I think it was | 14:45:45 |
| 3 | attached to an email, but also you can refer to it | 14:45:47 |
| 4 | from the complaint.  It's the same document that's | 14:45:49 |
| 5 | in the complaint. | 14:45:52 |
| 6 | MR. GILMORE:  Okay. | 14:45:52 |
| 7 | MR. MINSON:  Or it's one of the exhibits | 14:45:52 |
| 8 | in the complaint.  And this is the math that was | 14:45:54 |
| 9 | provided to Pat regarding his incentive equity | 14:45:57 |
| 10 | shares. | 14:46:01 |
| 11 | BY MR. MINSON: | 14:46:01 |
| 12 | Q  So given these numbers -- because I am not | 14:46:02 |
| 13 | a finance person, obviously -- so how would you | 14:46:08 |
| 14 | arrive at these numbers? | 14:46:11 |
| 15 | A  Okay.  See if I can try to explain this as | 14:46:14 |
| 16 | simply as possible.  I'm going to start on the | 14:46:26 |
| 17 | right, actually.  It's easier to start on the | 14:46:28 |
| 18 | right and move to the left. | 14:46:30 |
| 19 | Q  Okay. | 14:46:32 |
| 20 | A  MOIC is multiple of invested capital | 14:46:32 |
| 21 | valuation. | 14:46:36 |
| 22 | And so we're looking at the LTM, or last | 14:46:36 |
| 23 | 12 months EBITDA.  That's just off our books, | 14:46:41 |
| 24 | $33.9 million.  The EBITDA multiple of 13.9, | 14:46:44 |
| 25 | that's the -- that is the multiple that we come up | 14:46:49 |

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                    101

| | | |
|---|---|---|
| 1 | with in the Linden valuation. | 14:46:52 |
| 2 | So 13.9 had been very consistent.  It had | 14:46:54 |
| 3 | been very consistent throughout Pat's tenure on | 14:46:58 |
| 4 | the board.  It actually had been rising slowly. | 14:47:01 |
| 5 | Pat had never objected before -- | 14:47:04 |
| 6 | Q  If I could just -- if I could just, like, | 14:47:06 |
| 7 | interrupt you just briefly, because I want to know | 14:47:09 |
| 8 | more about that -- | 14:47:12 |
| 9 | A  Sure. | 14:47:12 |
| 10 | Q  -- multiple. | 14:47:13 |
| 11 | So what kind of data or what precedents do | 14:47:16 |
| 12 | you review to get those multiples? | 14:47:20 |
| 13 | A  You look at other transactions that have | 14:47:22 |
| 14 | happened.  To the extent you know that data, you | 14:47:24 |
| 15 | look at what they traded for, and then you have to | 14:47:29 |
| 16 | determine how applicable it is, how similar the | 14:47:31 |
| 17 | company is.  Things like growth rates dramatically | 14:47:36 |
| 18 | change valuations.  So if something is growing | 14:47:41 |
| 19 | dramatically, it's a much higher valuation.  If | 14:47:44 |
| 20 | something is growing slowly, it's less. | 14:47:47 |
| 21 | So ProPharma was kind of growing okay. | 14:47:48 |
| 22 | ProPharma was more people-intensive.  That's less | 14:47:52 |
| 23 | valuable than a tech company, like Advarra is more | 14:47:56 |
| 24 | of a tech company. | 14:47:59 |
| 25 | So you're trying to come up with -- | 14:48:00 |

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                    102

| | | |
|---|---|---|
| 1 | understanding nothing's exact -- | 14:48:02 |
| 2 | Q  Mm-hm. | 14:48:03 |
| 3 | A  -- you're trying to come up with stuff | 14:48:04 |
| 4 | that's similar.  It's like when you sell a house | 14:48:06 |
| 5 | and your real estate agent says:  Here's some | 14:48:08 |
| 6 | comparable houses, and none of them is exactly | 14:48:12 |
| 7 | like your house or apartment or condo or whatever. | 14:48:14 |
| 8 | You try and get as close as you can, and | 14:48:17 |
| 9 | then you get a bunch of them, and you're saying | 14:48:19 |
| 10 | based on a bunch of them, here's our best guess. | 14:48:21 |
| 11 | And you do the same with public companies. | 14:48:24 |
| 12 | Public companies are much tougher because public | 14:48:26 |
| 13 | companies tend to be much, much larger.  And Pat | 14:48:29 |
| 14 | chose enormous companies as his comparables. | 14:48:32 |
| 15 | But this was not an enormous company.  It | 14:48:34 |
| 16 | was a smaller company.  And so for -- really very | 14:48:37 |
| 17 | small company. | 14:48:39 |
| 18 | And so for a very small company, public | 14:48:40 |
| 19 | comparables are way less relevant because it is -- | 14:48:43 |
| 20 | EBITDA is 33.9 million, not 330 million, not | 14:48:48 |
| 21 | 3.3 billion. | 14:48:51 |
| 22 | So it's a small, little company that | 14:48:52 |
| 23 | cannot go public.  And so we're mostly looking at | 14:48:54 |
| 24 | what have similar companies traded for in private | 14:48:59 |
| 25 | hands.  That's the most direct, fair way to value | 14:49:04 |

Transcript of Anthony Davis, Designated Representative
September 12, 2022                    103

| | | |
|---|---|---|
| 1 | a small private company. | 14:49:08 |
| 2 | Q  So there's a fair amount of discretion, | 14:49:09 |
| 3 | then, in selecting which companies are factored in | 14:49:11 |
| 4 | and which companies are not, correct? | 14:49:14 |
| 5 | A  Yes. | 14:49:16 |
| 6 | Q  Okay.  And the enterprise value that's | 14:49:16 |
| 7 | listed of 472.5 million, can you explain that? | 14:49:23 |
| 8 | A  You're just taking the -- | 14:49:29 |
| 9 | Q  Is it just times?  Is that just | 14:49:30 |
| 10 | multiplication there? | 14:49:33 |
| 11 | A  Yeah, it's just multiplication. | 14:49:34 |
| 12 | Q  That's fair. | 14:49:36 |
| 13 | A  I'll keep going.  You take out the debt. | 14:49:37 |
| 14 | So the enterprise value means the value of the | 14:49:40 |
| 15 | whole company, and then the company's value is | 14:49:42 |
| 16 | composed of two components, debt and equity.  And | 14:49:44 |
| 17 | so we're taking the debt off.  That goes back to | 14:49:49 |
| 18 | the banks.  There's remaining equity value of | 14:49:52 |
| 19 | $283 million. | 14:49:57 |
| 20 | To make things slightly more complicated, | 14:49:59 |
| 21 | there's different types of equity you're seeing, | 14:50:01 |
| 22 | preferred and common.  So it takes off the | 14:50:04 |
| 23 | preferred value, 129 million, leaving the common | 14:50:06 |
| 24 | value.  The common value is what goes to | 14:50:09 |
| 25 | shareholders or incentive equity units, | 14:50:14 |

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                    104

| | | |
|---|---|---|
| 1 | management, board members. | 14:50:17 |
| 2 | And so we're saying the common equity | 14:50:19 |
| 3 | value is $112 million plus Linden's preferred | 14:50:22 |
| 4 | equity -- we have two types of equity.  Gives us a | 14:50:28 |
| 5 | total of -- this is just adding the two | 14:50:31 |
| 6 | together -- 200 and -- I think it's adding | 14:50:34 |
| 7 | together.  It should be. | 14:50:37 |
| 8 | Total LCP equity.  And then so it gives | 14:50:42 |
| 9 | you the LCP involvement, MOIC. | 14:50:47 |
| 10 | So we're just saying we have two types of | 14:50:51 |
| 11 | equity, adds them together, divided by how much | 14:50:53 |
| 12 | our investment -- LCP investment was, $87 million. | 14:50:56 |
| 13 | So it's just dividing the 217 by 87, getting you | 14:51:00 |
| 14 | to 2.5. | 14:51:04 |
| 15 | Q  Okay.  And so did you -- when you provided | 14:51:05 |
| 16 | this document to Pat, did you share with him how | 14:51:10 |
| 17 | you arrived at that EBITDA multiple and, I guess, | 14:51:15 |
| 18 | LTM EBITDA number?  Or did you just give him what | 14:51:21 |
| 19 | the number was?  Did you share the comparables or | 14:51:25 |
| 20 | things like that? | 14:51:28 |
| 21 | A  I don't recall if we shared the | 14:51:28 |
| 22 | comparables.  The LTM EBITDA is what it is. | 14:51:34 |
| 23 | There's no discretion on that.  I don't recall if | 14:51:37 |
| 24 | we shared the multiples or not. | 14:51:40 |
| 25 | I will say that -- again, we did this | 14:51:42 |

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                      105

| | | |
|---|---|---|
| 1 | every quarter, and we had to give out equity, you | 14:51:45 |
| 2 | know, throughout time when he was on the board, | 14:51:48 |
| 3 | and he never -- he had to approve that, and he | 14:51:49 |
| 4 | never objected prior to his own payout, when he | 14:51:52 |
| 5 | wanted it to be higher, which is typical of Pat. | 14:51:55 |
| 6 | Q  So is it -- I mean, is it possible for you | 14:51:57 |
| 7 | to select that multiple?  Does the math work in | 14:52:02 |
| 8 | reverse as well?  Or do you have to start up top? | 14:52:05 |
| 9 | A  The multiple -- determining the multiple | 14:52:08 |
| 10 | is the valuation.  This is all just math. | 14:52:12 |
| 11 | Q  Mm-hm. | 14:52:15 |
| 12 | A  This stuff is math.  And the valuation is | 14:52:16 |
| 13 | the multiple.  And that is -- the entire valuation | 14:52:20 |
| 14 | exercise here is to figure out the -- | 14:52:27 |
| 15 | Q  So the multiple is -- when you say | 14:52:29 |
| 16 | "multiple," here it's multiple, one, and invested | 14:52:30 |
| 17 | capital is one -- | 14:52:34 |
| 18 | A  No, no.  Sorry.  That's math. | 14:52:36 |
| 19 | Q  Okay. | 14:52:38 |
| 20 | A  I'm talking about the EBITDA multiple of | 14:52:38 |
| 21 | 13.9. | 14:52:41 |
| 22 | Q  So there's no way for you to select this | 14:52:41 |
| 23 | number in advance -- | 14:52:44 |
| 24 | A  Back up to it? | 14:52:44 |
| 25 | Q  -- and then work back up to it? | 14:52:46 |

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                    106

| | | |
|---|---|---|
| 1 | A  That's not how you do it. | 14:52:47 |
| 2 | Q  Okay.  Is it possible to do it that way? | 14:52:50 |
| 3 | A  I'm sure it's possible. | 14:52:52 |
| 4 | Q  And these numbers were provided to | 14:52:57 |
| 5 | Mr. Donnelly.  I mean, when did you provide these | 14:53:03 |
| 6 | numbers for the first time to Mr. Donnelly? | 14:53:08 |
| 7 | A  I don't recall. | 14:53:10 |
| 8 | Q  Okay.  But they were provided in the | 14:53:11 |
| 9 | September 4th offer of 2019, correct, before | 14:53:20 |
| 10 | things went sideways? | 14:53:24 |
| 11 | A  Yeah.  I will note these were not made for | 14:53:26 |
| 12 | Mr. Donnelly.  These were made for our investors. | 14:53:30 |
| 13 | We -- | 14:53:32 |
| 14 | Q  I see. | 14:53:32 |
| 15 | A  We make fair market value every quarter | 14:53:33 |
| 16 | for all of our very sophisticated, very large | 14:53:36 |
| 17 | institutional investors. | 14:53:39 |
| 18 |     We did not come up with the 13.9 number, | 14:53:40 |
| 19 | nor the 2.5 of yields it turns into, for Pat.  It | 14:53:43 |
| 20 | was done on an extremely consistent basis, as | 14:53:47 |
| 21 | we've done every quarter for our very large, very | 14:53:51 |
| 22 | sophisticated institutional investors. | 14:53:54 |
| 23 |     And so we gave him that same valuation. | 14:53:57 |
| 24 | It was not made specifically for Pat. | 14:54:00 |
| 25 | Q  Okay. | 14:54:02 |

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                        107

| | | |
|---|---|---|
| 1 | MR. MINSON:  Mark this as Exhibit 24. | 14:54:35 |
| 2 | (WHEREUPON, a certain document was marked | 14:54:35 |
| 3 | Davis Deposition Exhibit No. 24, for | 14:54:35 |
| 4 | identification.) | 14:54:37 |
| 5 | BY MR. MINSON: | 14:54:37 |
| 6 | Q  This is an email from June 25th, 2019, | 14:54:37 |
| 7 | from Lisa Cohen.  And it's LINDEN0000275. | 14:54:39 |
| 8 | She is writing Josh Reilly at Linden.  And | 14:54:51 |
| 9 | it says:  PPG math for Donnelly, as the | 14:54:55 |
| 10 | attachment.  And below it shows a variety of | 14:54:58 |
| 11 | numbers, and it shows three different incentive | 14:55:00 |
| 12 | payouts.  And it starts at 3X, or I guess three -- | 14:55:06 |
| 13 | A  3X.  Three times, 3X, you can say either | 14:55:14 |
| 14 | one. | 14:55:18 |
| 15 | Q  And it goes to 4, 4X. | 14:55:18 |
| 16 | A  Yep. | 14:55:20 |
| 17 | Q  This is made specifically by Lisa Cohen at | 14:55:21 |
| 18 | Linden for Pat, and it's made in June 25th, 2019. | 14:55:27 |
| 19 | Why does that not conform with the 2.5 multiple | 14:55:31 |
| 20 | that you offered him? | 14:55:36 |
| 21 | MR. GILMORE:  Objection, form, foundation. | 14:55:37 |
| 22 | BY THE WITNESS: | 14:55:52 |
| 23 | A  Can you restate the question in terms | 14:55:52 |
| 24 | of what -- | 14:55:54 |
| 25 | | |

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                          108

| | | |
|---|---|---|
| 1 | BY MR. MINSON: | 14:55:54 |
| 2 | Q  So why is there no 2.5 multiple listed on | 14:55:55 |
| 3 | this math?  Why is that not an option? | 14:55:58 |
| 4 | A  It's 2.3.  It says Linden's new mark is | 14:56:00 |
| 5 | 2.3, which is lower than 2.5.  It was marked as | 14:56:04 |
| 6 | 2.1 as of Q1. | 14:56:07 |
| 7 | Q  But -- okay.  So it does -- the value to | 14:56:10 |
| 8 | Pat is listed out as 325,501.  And that's not | 14:56:12 |
| 9 | taking into account -- hold on. | 14:56:17 |
| 10 | It says it'll also send out the CO | 14:56:34 |
| 11 | assuming he's a 10 -- assuming he's a 10, his | 14:56:38 |
| 12 | valuation is 325.  His final offer from you, in | 14:56:40 |
| 13 | September and in November, was 105, correct? | 14:56:47 |
| 14 | A  Not -- not as you're asking the question, | 14:56:51 |
| 15 | no.  This is the difference -- bear with me, | 14:56:54 |
| 16 | because I want to really read this but... | 14:56:58 |
| 17 | Okay.  I think I understand what's going | 14:57:19 |
| 18 | on.  Ask your question again, please. | 14:57:31 |
| 19 | Q  Okay.  So the total value to Pat, assuming | 14:57:33 |
| 20 | it's at 10 -- | 14:57:38 |
| 21 | A  Basis points?  Mm-hm. | 14:57:40 |
| 22 | Q  -- it says 325,501.  Why is that different | 14:57:41 |
| 23 | than the $105,000 offer that he received in the | 14:57:46 |
| 24 | previous document? | 14:57:51 |
| 25 | A  There's -- we're mixing up apples and | 14:57:52 |

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                   109

| | | |
|---|---|---|
| 1 | oranges. | 14:57:57 |
| 2 |    Q  Okay. | 14:57:57 |
| 3 |    A  Okay?  So board members will typically | 14:57:57 |
| 4 | invest something, or people who work with us will | 14:58:03 |
| 5 | make an investment.  Separately, they're giving | 14:58:06 |
| 6 | incentive equity.  That's the 10 basis points. | 14:58:11 |
| 7 | So when it's saying issued, issued means | 14:58:14 |
| 8 | he was given it as opposed to he invested it.  So | 14:58:18 |
| 9 | the issued is referring to the incentive payouts. | 14:58:21 |
| 10 | The investment value, below, is separate. | 14:58:26 |
| 11 | That's dollars he invested.  He owns that.  And so | 14:58:29 |
| 12 | it's saying -- and that's why it's preferred. | 14:58:33 |
| 13 | Incentive equity is only on the common. | 14:58:37 |
| 14 | And so when it says Pat Donnelly investment | 14:58:39 |
| 15 | value -- that's why I wanted a minute to read | 14:58:43 |
| 16 | through it -- what that means is what he invested. | 14:58:45 |
| 17 | And that's further -- in my reading of this -- you | 14:58:48 |
| 18 | know, my -- in my reading of this, that's further | 14:58:53 |
| 19 | reinforced by, it says, "preferred." | 14:58:55 |
| 20 | And then the preferred is attached to | 14:58:58 |
| 21 | common.  And so he's got his preferred, his | 14:59:02 |
| 22 | common, and so his fair market value. | 14:59:07 |
| 23 | The reality is -- I know you're going to | 14:59:09 |
| 24 | have trouble believing this, but we were trying to | 14:59:12 |
| 25 | be incredibly fair to Pat.  The value here is as | 14:59:15 |

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                      110

| | | |
|---|---|---|
| 1 | of May, the $112.  And so for that -- what he | 14:59:18 |
| 2 | invested, it was worth 325 grand for the | 14:59:23 |
| 3 | investment. | 14:59:26 |
| 4 | For we -- actually -- and the subject of | 14:59:26 |
| 5 | dispute here is not around the investment value. | 14:59:28 |
| 6 | That's not what the lawsuit is about.  The lawsuit | 14:59:30 |
| 7 | is about the incentive payout. | 14:59:32 |
| 8 | The incentive payout, we actually paid him | 14:59:34 |
| 9 | out at 130, so it was above May.  It was above the | 14:59:37 |
| 10 | 112. | 14:59:42 |
| 11 | Because once he was terminated, he only | 14:59:42 |
| 12 | got his -- your documents referred to it -- the | 14:59:48 |
| 13 | time vested.  He wasn't -- if you're terminated, | 14:59:51 |
| 14 | you're not eligible to any of the performance | 14:59:55 |
| 15 | vesting shares. | 14:59:58 |
| 16 | He was only eligible, at our valuation of | 14:59:59 |
| 17 | June 30th, for $105,000.  We offered him 600 and | 15:00:02 |
| 18 | whatever the number is -- 600 and change, and he | 15:00:05 |
| 19 | told us that that was inadequate. | 15:00:10 |
| 20 | That was us being nice.  We owed him 105 | 15:00:14 |
| 21 | by the documents.  And to the extent that we have | 15:00:17 |
| 22 | all these valuation discussions, it's only about | 15:00:19 |
| 23 | what that 105 was worth. | 15:00:21 |
| 24 | Q  Okay.  And so you -- | 15:00:24 |
| 25 | A  Only the -- only the time -- the vested, | 15:00:25 |

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                              111

| | | |
|---|---|---|
| 1 | time vesting.  I mean, all of this valuation | 15:00:28 |
| 2 | discussion almost doesn't matter in the subject of | 15:00:30 |
| 3 | what this lawsuit is about because we terminated | 15:00:33 |
| 4 | him from the board.  The documents are very clear; | 15:00:37 |
| 5 | he only got the time vested. | 15:00:39 |
| 6 | We were trying to be really nice and | 15:00:40 |
| 7 | really accommodating, and said:  You know what? | 15:00:43 |
| 8 | Because we're good guys, we are going to give you | 15:00:45 |
| 9 | an extra 500 and -- almost 600 -- $550,000, or | 15:00:47 |
| 10 | whatever it was -- I'm sorry, I'm doing my math | 15:00:52 |
| 11 | wrong -- around 500,000 -- was it 648 -- around | 15:00:54 |
| 12 | 550,000 -- | 15:00:56 |
| 13 | Q  It says I think it was 684. | 15:00:57 |
| 14 | A  Okay.  So $579,000 that, by the documents, | 15:01:00 |
| 15 | you don't get. | 15:01:03 |
| 16 | And Pat's response was very Pat-like at | 15:01:04 |
| 17 | that response, which was:  Go jump off a bridge. | 15:01:09 |
| 18 | Q  But previously when I asked you if you | 15:01:11 |
| 19 | knew whether either one of those termination | 15:01:14 |
| 20 | documents was ever shared with Pat, you said you | 15:01:16 |
| 21 | didn't know. | 15:01:19 |
| 22 | A  It's not required that we share those with | 15:01:21 |
| 23 | him, from a legal perspective. | 15:01:23 |
| 24 | And I told him he was terminated, and he | 15:01:24 |
| 25 | replied in the email that he was no longer on the | 15:01:31 |

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                      112

| | | |
|---|---|---|
| 1 | board.  We are not required to send him a | 15:01:35 |
| 2 | termination notice. | 15:01:37 |
| 3 | MR. MINSON:  Mark this Exhibit 25. | 15:02:08 |
| 4 | (WHEREUPON, a certain document was marked | 15:02:10 |
| 5 | Davis Deposition Exhibit No. 25, for | 15:02:10 |
| 6 | identification.) | 15:02:21 |
| 7 | BY MR. MINSON: | 15:02:21 |
| 8 | Q  So what's marked as Exhibit 25 is an email | 15:02:22 |
| 9 | chain between Doug VanDegrift and Mike Farah, also | 15:02:27 |
| 10 | Piyush Shukla. | 15:02:34 |
| 11 | And this was from the dates labeled on or | 15:02:37 |
| 12 | around September 9th, 2019.  And it starts on the | 15:02:44 |
| 13 | page with Bates stamp LINDEN0000236. | 15:02:52 |
| 14 | And it says:  Pat Donnelly has asked for | 15:02:57 |
| 15 | supporting valuation data for incentive equity | 15:03:01 |
| 16 | buyout.  Please coordinate with Doug on what we | 15:03:04 |
| 17 | can share, and send me in one email that I can | 15:03:08 |
| 18 | forward to Pat. | 15:03:12 |
| 19 | Can I ask you, when you would do a | 15:03:13 |
| 20 | transaction such as this, what data would you not | 15:03:18 |
| 21 | normally share? | 15:03:23 |
| 22 | A  Where are you referring to in this? | 15:03:25 |
| 23 | Q  The first email from Mike Farah.  It's on | 15:03:29 |
| 24 | the 236 at the bottom.  9:00 a.m. -- or 9:04 a.m. | 15:03:33 |
| 25 | A  I think valuation data that we do for our | 15:03:42 |

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                        113

| | | |
|---|---|---|
| 1 | investors is sensitive information, and so Michael | 15:03:46 |
| 2 | Farah is being -- he's not the managing partner of | 15:03:50 |
| 3 | the firm, and so he's -- doesn't want to share | 15:03:54 |
| 4 | things we don't share externally.  The valuations | 15:03:56 |
| 5 | are not typically shared with anyone except for | 15:03:58 |
| 6 | our largest investors. | 15:04:01 |
| 7 | Q  So is that how you would choose -- how you | 15:04:02 |
| 8 | would arrive at that -- | 15:04:04 |
| 9 | A  The multiple? | 15:04:07 |
| 10 | Q  -- the multiple -- the LTM EBITDA | 15:04:08 |
| 11 | multiple, or EBITDA multiple? | 15:04:11 |
| 12 | A  Yeah.  We go through a valuation every | 15:04:13 |
| 13 | quarter.  It's audited annually, and those are not | 15:04:16 |
| 14 | public documents.  Those are shared only with our | 15:04:20 |
| 15 | very largest investors. | 15:04:23 |
| 16 | And so Michael Farah knows that, so he's | 15:04:24 |
| 17 | just being careful.  He's just saying hey. | 15:04:27 |
| 18 | Q  And if we go up to first page, | 15:04:29 |
| 19 | LINDEN0000235, there's an email that says -- from | 15:04:35 |
| 20 | Josh Reilly to Piyush, and it says:  It just | 15:04:43 |
| 21 | states we're using the June 30th LTM mark but | 15:04:47 |
| 22 | doesn't get into more calculations. | 15:04:51 |
| 23 | So is that what you're talking about with | 15:04:53 |
| 24 | the background data that would be confidential | 15:04:55 |
| 25 | that you wouldn't normally share? | 15:04:57 |

Transcript of Anthony Davis, Designated Representative
September 12, 2022

114

| | | |
|---|---|---|
| 1 | A   Yes. | 15:04:59 |
| 2 | Q   Okay.  And I think this means Doug?  I | 15:04:59 |
| 3 | don't know what that means. | 15:05:10 |
| 4 | A   It definitely means Doug. | 15:05:10 |
| 5 | Q   Okay.  It says -- on September 9th, 2019, | 15:05:12 |
| 6 | 10:51 a.m., it says:  If he's okay with it, we can | 15:05:17 |
| 7 | add the EBITDA figure and abbreviated cap table | 15:05:21 |
| 8 | that shows the 2.5X.  I think we should.  That's | 15:05:25 |
| 9 | what I'd ask if I was him. | 15:05:28 |
| 10 | I don't understand -- I'm trying to | 15:05:32 |
| 11 | understand what he's talking about, the -- | 15:05:34 |
| 12 | A   The cap table is the capitalization table. | 15:05:36 |
| 13 | It's the ownership of the company.  And so the -- | 15:05:40 |
| 14 | referring back to document 23.  On the left, it's | 15:05:44 |
| 15 | going -- this is an abbreviated cap table.  It's | 15:05:51 |
| 16 | saying the fully diluted time units. | 15:05:55 |
| 17 | So it's going through, like, the ownership | 15:05:57 |
| 18 | percentage.  So a cap table means capitalization | 15:06:01 |
| 19 | table.  It's going to show every owner of it.  And | 15:06:05 |
| 20 | then you take the valuation times your ownership | 15:06:10 |
| 21 | percentage; it gives you a dollar amount.  That's | 15:06:14 |
| 22 | what this is. | 15:06:16 |
| 23 | And so we basically give him exactly what | 15:06:17 |
| 24 | this says so... | 15:06:22 |
| 25 | Q   Okay.  Sorry.  I was looking for the cap | 15:06:24 |

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                    115

| | | |
|---|---|---|
| 1 | table. | 15:06:35 |
| 2 | A  It's Exhibit 23. | 15:06:36 |
| 3 | Q  23.  It's abbreviated cap table.  Oh, | 15:06:37 |
| 4 | okay.  Got it. | 15:06:42 |
| 5 | A  It's his. | 15:06:45 |
| 6 | Q  All right.  And do you know any | 15:06:49 |
| 7 | information about the multiples that were used in | 15:07:04 |
| 8 | that particular instance, or is that something | 15:07:06 |
| 9 | that's beyond your -- | 15:07:08 |
| 10 | A  No, I review all our valuations. | 15:07:09 |
| 11 | Q  Okay.  And so why wouldn't Advarra have | 15:07:11 |
| 12 | been a reasonable comparable?  Would you explain | 15:07:16 |
| 13 | that. | 15:07:18 |
| 14 | A  Advarra, one, is larger.  It's growing | 15:07:18 |
| 15 | much faster, which has a huge weighting in | 15:07:22 |
| 16 | valuation.  The faster a company grows, the more | 15:07:29 |
| 17 | it's worth.  It's larger.  The larger, the more | 15:07:32 |
| 18 | it's worth. | 15:07:33 |
| 19 | And it's a tech-enabled company.  Tech | 15:07:34 |
| 20 | companies are worth more than a consulting | 15:07:37 |
| 21 | business.  ProPharma is largely a consulting | 15:07:38 |
| 22 | business. | 15:07:42 |
| 23 | And so for many factors, PPG was not going | 15:07:42 |
| 24 | to get the same multiple.  I'll again say Pat had | 15:07:44 |
| 25 | not objected to this multiple.  It had not changed | 15:07:49 |

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                      116

| | | |
|---|---|---|
| 1 | much over time and had never objected to it for | 15:07:52 |
| 2 | the valuations. | 15:07:55 |
| 3 | And, in fact, we did not get 18 times.  I | 15:07:56 |
| 4 | mean, that's the funny thing about all this, the | 15:08:01 |
| 5 | valuation was -- multiple was very close to what | 15:08:03 |
| 6 | we said it was.  We never got 18 times when we | 15:08:06 |
| 7 | sold the business. | 15:08:09 |
| 8 | We sold the business.  It proved that we | 15:08:10 |
| 9 | were right and Pat wasn't on how to value this | 15:08:13 |
| 10 | business. | 15:08:16 |
| 11 | Q  But, I mean, the value of the company | 15:08:17 |
| 12 | was -- ended up being about $100 million more, | 15:08:19 |
| 13 | correct? | 15:08:23 |
| 14 | A  I would hope so.  It was a year later. | 15:08:23 |
| 15 | Q  Okay. | 15:08:26 |
| 16 | A  If it's not worth more a year later, we're | 15:08:34 |
| 17 | doing something wrong. | 15:08:39 |
| 18 | Q  I thought you said you had some flat -- | 15:08:40 |
| 19 | flat quarters and didn't necessarily -- | 15:08:41 |
| 20 | A  We did something wrong.  I didn't say we | 15:08:43 |
| 21 | were always good so... | 15:08:46 |
| 22 | MR. MINSON:  This as Exhibit 26. | 15:09:03 |
| 23 | I know you're going to object because it | 15:09:10 |
| 24 | doesn't have the attachments -- actually, you know | 15:09:14 |
| 25 | what?  I believe we've already seen this, so you | 15:09:17 |

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                          117

| | | |
|---|---|---|
| 1 | can strike that.  Don't label that. | 15:09:21 |
| 2 | BY MR. MINSON: | 15:09:21 |
| 3 | Q  But it is -- it's the previous email that | 15:09:23 |
| 4 | you saw, from September 4th, 2019, DONNELLY96.  Do | 15:09:28 |
| 5 | you have that one? | 15:09:39 |
| 6 | A  Which number is it? | 15:09:40 |
| 7 | Q  I can make the same -- | 15:09:46 |
| 8 | A  September 96? | 15:09:47 |
| 9 | MR. MINSON:  I can make the same exhibit | 15:09:51 |
| 10 | twice.  That's fine. | 15:09:53 |
| 11 | MR. GILMORE:  Let's not -- I mean, if it's | 15:09:53 |
| 12 | the same document -- | 15:09:55 |
| 13 | MR. MINSON:  It is the same document. | 15:09:56 |
| 14 | BY THE WITNESS: | 15:09:59 |
| 15 | A  Is it September -- | 15:09:59 |
| 16 | BY MR. MINSON: | 15:10:00 |
| 17 | Q  September 4th, 2019. | 15:10:00 |
| 18 | A  Okay.  It's from me to Pat? | 15:10:04 |
| 19 | Q  It is from you to Pat, yeah. | 15:10:06 |
| 20 | A  Number 9. | 15:10:08 |
| 21 | Q  Number 9.  Okay. | 15:10:10 |
| 22 | And then this is Exhibit Number 26 now. | 15:10:19 |
| 23 | It's the repurchase agreement that's attached on | 15:10:39 |
| 24 | that date, the 9 -- well, it's the 9/1/19 | 15:10:42 |
| 25 | repurchase agreement.  It should be with the | 15:10:48 |

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                            118

| | | |
|---|---|---|
| 1 | email.  I can attach the emails if you need me to, | 15:10:51 |
| 2 | but this is it. | 15:10:54 |
| 3 | MR. GILMORE:  It's your deposition, | 15:10:57 |
| 4 | Counsel, so if you want to attach -- if you want | 15:10:58 |
| 5 | to put in a new exhibit that has -- that's the | 15:11:00 |
| 6 | repurchase agreement, I would ask that -- the | 15:11:03 |
| 7 | better approach, I think, is to have complete | 15:11:11 |
| 8 | documents.  So I -- you know, I would make an | 15:11:14 |
| 9 | objection -- | 15:11:17 |
| 10 | MR. MINSON:  I think I tried to save a | 15:11:17 |
| 11 | little bit of paper because it would have been | 15:11:20 |
| 12 | this thick if it was all the documents that were | 15:11:21 |
| 13 | attached as emails so... | 15:11:25 |
| 14 | But it's DONNELLY -- as I said before, | 15:11:27 |
| 15 | that was DONNELLY96.  This is DONNELLY97 | 15:11:31 |
| 16 | through 100, the repurchase agreement that was | 15:11:35 |
| 17 | attached to Exhibit Number 9. | 15:11:39 |
| 18 | MR. GILMORE:  So you're marking that as | 15:11:41 |
| 19 | Exhibit 25? | 15:11:44 |
| 20 | MR. MINSON:  Yeah. | 15:11:46 |
| 21 | MS. REPORTER:  26. | 15:11:47 |
| 22 | (WHEREUPON, a certain document was marked | 15:11:48 |
| 23 | Davis Deposition Exhibit No. 26, for | 15:11:48 |
| 24 | identification.) | 15:12:23 |
| 25 | | |

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                    119

| | | |
|---|---|---|
| 1 | BY MR. MINSON: | 15:12:23 |
| 2 | Q  So in between -- if you look at what is | 15:12:24 |
| 3 | Exhibit 26, in between then and November 4th, | 15:12:26 |
| 4 | 2019 -- | 15:12:36 |
| 5 | A  Sorry, this says September 4th. | 15:12:36 |
| 6 | Q  I know.  In between September 4th and | 15:12:38 |
| 7 | November 4th -- | 15:12:42 |
| 8 | A  Okay. | 15:12:42 |
| 9 | Q  -- 2019, did the offer that ProPharma made | 15:12:43 |
| 10 | ever change for Pat Donnelly? | 15:12:47 |
| 11 | A  Is November 4th when we sent him the | 15:12:50 |
| 12 | 105,000? | 15:12:52 |
| 13 | Q  No.  That was November 11th. | 15:12:53 |
| 14 | November 4th, we had seven days to respond, is | 15:12:56 |
| 15 | what you said. | 15:13:00 |
| 16 | A  Yeah, the -- what you see in Exhibit 9 is | 15:13:00 |
| 17 | us trying to be nice and generous to Pat.  He was, | 15:13:06 |
| 18 | by document, due two-fifths vesting, and I write | 15:13:11 |
| 19 | this out, and zero for performance vesting. | 15:13:16 |
| 20 | Because he had been fired, as he | 15:13:21 |
| 21 | acknowledged, in July of that year, and I had told | 15:13:23 |
| 22 | him in June.  And all we owed him was two-fifths | 15:13:26 |
| 23 | vesting. | 15:13:30 |
| 24 | And while I know it's very important for | 15:13:31 |
| 25 | Mr. Donnelly in life to fashion himself as a | 15:13:35 |

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                    120

| | | |
|---|---|---|
| 1 | victim, what you're seeing here is he's actually | 15:13:37 |
| 2 | the perpetrator, by extensive repetition. | 15:13:40 |
| 3 | We are trying to be -- offer him way more | 15:13:44 |
| 4 | than the documents suggest and allow and | 15:13:46 |
| 5 | specifically call out for. | 15:13:49 |
| 6 | And so we owed him 105. We're saying: | 15:13:50 |
| 7 | We're going to give you an extra fifth vesting. | 15:13:53 |
| 8 | We're going to give you two-thirds credit for | 15:13:57 |
| 9 | performance vesting, although we owed him zero. | 15:13:59 |
| 10 | And so we're being extraordinarily generous | 15:14:02 |
| 11 | offering 684 versus 105. | 15:14:04 |
| 12 | He then comes back, in our opinion very | 15:14:07 |
| 13 | aggressively. Proposes absolutely illogical | 15:14:09 |
| 14 | counts of 18 times, which we did not sell the | 15:14:13 |
| 15 | company for 18 times. | 15:14:15 |
| 16 | And so we said: Enough's enough. Take | 15:14:16 |
| 17 | what we owe you, 105, or take what we're offering, | 15:14:19 |
| 18 | 684, but you are negotiating in extremely bad | 15:14:27 |
| 19 | faith to suggest that this is worth 18 times. | 15:14:30 |
| 20 | And this reminded us of a conversation | 15:14:32 |
| 21 | with Advarra 18 months earlier, before he got | 15:14:34 |
| 22 | 18 times, when he told us it wasn't even worth 11. | 15:14:38 |
| 23 | He always argued belligerently and | 15:14:41 |
| 24 | excessively, for his benefit, whether or not | 15:14:46 |
| 25 | there -- it was legitimate. | 15:14:50 |

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                      121

| | | |
|---|---|---|
| 1 | Q  So in your -- when you made that offer, | 15:14:51 |
| 2 | you felt that his valuation of being over 3 with | 15:14:54 |
| 3 | multiples of invested capital and 18 -- and | 15:14:58 |
| 4 | 18 times with the EBITDA, you felt that that was | 15:15:02 |
| 5 | unreasonable and you felt that that was | 15:15:04 |
| 6 | inappropriate? | 15:15:06 |
| 7 | A  We thought it was totally inappropriate. | 15:15:07 |
| 8 | Keep in mind, we used the valuations, which are | 15:15:11 |
| 9 | audited, that we showed our institutional | 15:15:15 |
| 10 | investors. | 15:15:19 |
| 11 | Our incentive, when we give valuations to | 15:15:19 |
| 12 | our investors, is to have them higher, not lower. | 15:15:23 |
| 13 | Because the higher they are, the better job we're | 15:15:26 |
| 14 | doing.  We want to show our investors the highest | 15:15:28 |
| 15 | credible valuations we can. | 15:15:32 |
| 16 | We have been extremely consistent with how | 15:15:35 |
| 17 | we had valued ProPharma, same as all our other | 15:15:37 |
| 18 | companies.  We're trying to show the highest | 15:15:41 |
| 19 | valuations we can to our investors. | 15:15:44 |
| 20 | And we gave him that precise valuation. | 15:15:47 |
| 21 | And then he comes back with an outrageous | 15:15:50 |
| 22 | valuation, making us, quite frankly, angry. | 15:15:53 |
| 23 | Q  And -- but at the same time, on or around | 15:15:57 |
| 24 | November and -- 2019 -- November of 2019, isn't it | 15:16:01 |
| 25 | true that you were cooperating with investment | 15:16:06 |

Transcript of Anthony Davis, Designated Representative
September 12, 2022                          122

| | | |
|---|---|---|
| 1 | banks to create pitch decks for the company? | 15:16:10 |
| 2 | A  What year are we talking about? | 15:16:15 |
| 3 | Q  2019, November of 2019. | 15:16:17 |
| 4 | A  We were not cooperating with investment | 15:16:18 |
| 5 | banks; we had asked them to potentially value the | 15:16:21 |
| 6 | business for a sale in the next year. | 15:16:24 |
| 7 | Q  Okay.  So those -- those pitch decks were | 15:16:26 |
| 8 | specifically, is kind of the distinction you're | 15:16:34 |
| 9 | making, they were specifically prepared to sell | 15:16:38 |
| 10 | the company.  They weren't just... | 15:16:41 |
| 11 | A  Correct, they were to sell the company. | 15:16:45 |
| 12 | They provided valuations, but we were not asking | 15:16:47 |
| 13 | them -- we aren't asking them:  Tell us what the | 15:16:51 |
| 14 | business is worth today. | 15:16:56 |
| 15 | We're saying -- sale process takes a long | 15:16:57 |
| 16 | time, and so if we sell this company, and the | 15:17:00 |
| 17 | investment banking decks clearly refer to selling | 15:17:02 |
| 18 | it into 2020, if we bring it to market and sell it | 15:17:05 |
| 19 | at some point, you know, sometime in 2020, what | 15:17:10 |
| 20 | would it be worth then? | 15:17:12 |
| 21 | And I will note, all the investment banks, | 15:17:14 |
| 22 | as is expected, overvalued the company based on | 15:17:16 |
| 23 | what we actually got. | 15:17:20 |
| 24 | Q  Okay.  Is there any -- is there any -- | 15:17:22 |
| 25 | | |

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                    123

| | | |
|---|---|---|
| 1 | (WHEREUPON, discussion was had off the | 15:17:22 |
| 2 | stenographic record.) | 15:17:49 |
| 3 | BY MR. MINSON: | 15:17:49 |
| 4 | Q   Okay.  So is there any flexibility in | 15:17:51 |
| 5 | the -- what creates the value that you eventually | 15:17:55 |
| 6 | sell the company for as opposed to the value | 15:17:58 |
| 7 | that's in the pitch decks?  Where does that -- | 15:18:02 |
| 8 | where does that delta come from? | 15:18:06 |
| 9 | A   It's what the buyers ultimately believe | 15:18:10 |
| 10 | the business is worth. | 15:18:15 |
| 11 | For instance, in investment banking pitch | 15:18:19 |
| 12 | decks, when they talk about the higher multiples, | 15:18:21 |
| 13 | they refer to quite explicitly saying these are | 15:18:24 |
| 14 | high-growth companies. | 15:18:28 |
| 15 | ProPharma wasn't growing that quickly.  It | 15:18:29 |
| 16 | was growing relatively slowly.  And so the | 15:18:32 |
| 17 | higher -- there's a reason it didn't get those | 15:18:34 |
| 18 | higher multiples, because it's not tech enabled. | 15:18:38 |
| 19 | It wasn't growing that quickly.  And so buyers | 15:18:41 |
| 20 | weren't willing to pay, particularly on multiples. | 15:18:44 |
| 21 | If it was up the buyers, I mean.  We | 15:18:46 |
| 22 | talked to dozens and dozens of people.  You're | 15:18:49 |
| 23 | trying to get the highest possible price you can. | 15:18:51 |
| 24 | We got the highest possible price we could.  We | 15:18:54 |
| 25 | approached, I don't even know, dozens of buyers. | 15:18:57 |

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                    124

| | | |
|---|---|---|
| 1 | And that was the highest price, you know, that we | 15:18:58 |
| 2 | were offered. | 15:19:01 |
| 3 | Q  Does it -- I mean, does it ever matter | 15:19:01 |
| 4 | who's doing the negotiations? | 15:19:02 |
| 5 | A  Well, of course. | 15:19:03 |
| 6 | Q  So, I mean, like, if -- for instance, who | 15:19:04 |
| 7 | did the negotiations for the sale of ProPharma? | 15:19:07 |
| 8 | A  The investment bank leads them.  And | 15:19:12 |
| 9 | they're -- have an incredible incentive to get the | 15:19:15 |
| 10 | highest price possible because they're paid a | 15:19:18 |
| 11 | percentage of the sale proceeds. | 15:19:22 |
| 12 | Q  Okay.  And the investment bank that you | 15:19:23 |
| 13 | initially settled with was -- | 15:19:26 |
| 14 | A  Centerview. | 15:19:30 |
| 15 | Q  -- William Blair, correct?  Or Centerview? | 15:19:31 |
| 16 | A  Centerview. | 15:19:34 |
| 17 | Q  It was Centerview?  Okay. | 15:19:36 |
| 18 | A  I believe William Blair was, like, the | 15:19:38 |
| 19 | secondary.  So Centerview got -- was the primary | 15:19:40 |
| 20 | investment banker. | 15:19:43 |
| 21 | Q  I see. | 15:19:44 |
| 22 | MR. MINSON:  Bear with me one moment. | 15:20:27 |
| 23 | These are five different investment bank | 15:20:31 |
| 24 | pitch decks.  Can you admit them each as a | 15:20:35 |
| 25 | separate exhibit, and we'll discuss them one at a | 15:20:41 |

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                          125

| | | |
|---|---|---|
| 1 | time together instead of going back and forth. | 15:20:44 |
| 2 | (Exhibit management discussions were had | 15:20:47 |
| 3 | off the stenographic record.) | 15:20:47 |
| 4 | (WHEREUPON, certain documents were marked | 15:20:47 |
| 5 | Davis Deposition Exhibit Nos. 27, 28, 29, 30, and | 15:20:47 |
| 6 | 31 for identification.) | 15:23:42 |
| 7 | BY MR. MINSON: | 15:23:42 |
| 8 | Q  So these are the five investor pitch | 15:23:43 |
| 9 | decks.  They all appear to be dated in between -- | 15:23:48 |
| 10 | well, actually, the Cantor one doesn't actually | 15:23:51 |
| 11 | have a specific date on it.  But I believe they're | 15:23:54 |
| 12 | supposed to be dated November 5th through 7th. | 15:23:56 |
| 13 | A  Okay. | 15:23:59 |
| 14 | Q  The other ones do have specific dates. | 15:23:59 |
| 15 | For the Cantor pitch deck, if you flip to | 15:24:11 |
| 16 | page that's Bates-stamped LINDEN000509. | 15:24:15 |
| 17 | A  Yep. | 15:24:23 |
| 18 | Q  Can you -- the top of it says:  We are | 15:24:23 |
| 19 | confident we can deliver an enterprise value in | 15:24:35 |
| 20 | excess of $625 million. | 15:24:38 |
| 21 | A  Investment banks always are confident. | 15:24:40 |
| 22 | That's why they're bankers. | 15:24:43 |
| 23 | Q  Okay.  And if you look, the EBITDA | 15:24:44 |
| 24 | multiple, at the very minimum amount, is lower; | 15:24:50 |
| 25 | but at 625, it's listed as in between 15.5 and | 15:24:55 |

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                        126

| | | |
|---|---|---|
| 1 | 17.9, correct? | 15:25:04 |
| 2 | A  That's what the page states. | 15:25:06 |
| 3 | Q  Okay.  And you had this information on | 15:25:08 |
| 4 | November 4th when you were discussing, you know, | 15:25:12 |
| 5 | Pat's incentive equity compensation, correct? | 15:25:16 |
| 6 | A  Yeah.  We also had the page before, | 15:25:20 |
| 7 | Bates-stamp LINDEN0000508, and it says platform | 15:25:23 |
| 8 | with multiple upsides.  And it's literally the | 15:25:28 |
| 9 | middle of their valuation curve, and it says 13 to | 15:25:32 |
| 10 | 15 times. | 15:25:36 |
| 11 | So the exact middle of their valuation | 15:25:36 |
| 12 | page would be 14 times, which was -- which is | 15:25:38 |
| 13 | basically the same number as 13.9.  So Cantor is | 15:25:44 |
| 14 | literally saying the absolute middle of their | 15:25:48 |
| 15 | valuation range, totally agrees with us at -- 13.9 | 15:25:51 |
| 16 | is ours; 14 was theirs. | 15:25:59 |
| 17 | And to be clear, we didn't get 625.  We | 15:26:02 |
| 18 | got 560, which on their page -- because it was | 15:26:07 |
| 19 | sold off 2020 -- 2020 numbers is between 13.6 and | 15:26:09 |
| 20 | 14.3. | 15:26:14 |
| 21 | So this, like, exactly agrees with our | 15:26:16 |
| 22 | valuation, what actually ended up happening. | 15:26:18 |
| 23 | Like, the actual outcome exactly matched up with | 15:26:22 |
| 24 | 13.6 to 14.3, in the exact middle of their | 15:26:27 |
| 25 | valuation, is 14 on -- | 15:26:31 |

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                    127

| | | |
|---|---|---|
| 1 | Q   This is one -- I mean, this is one firm, | 15:26:33 |
| 2 | right? | 15:26:36 |
| 3 | A   Yeah. | 15:26:37 |
| 4 | Q   And you said that the number that you | 15:26:37 |
| 5 | would get from actually selling the company was | 15:26:38 |
| 6 | variable, based on, you know, who marketed the | 15:26:43 |
| 7 | company. | 15:26:46 |
| 8 | A   Mm-hm. | 15:26:47 |
| 9 | Q   Is that true? | 15:26:47 |
| 10 | A   Of course. | 15:26:48 |
| 11 | Q   And they didn't market the company.  They | 15:26:49 |
| 12 | didn't end up -- | 15:26:51 |
| 13 | A   No, they didn't.  But this -- these two | 15:26:52 |
| 14 | pages absolutely support our valuation. | 15:26:54 |
| 15 | Q   Okay.  But -- and I'm sorry.  I don't know | 15:26:56 |
| 16 | if you provided this in discovery.  Do you know | 15:27:02 |
| 17 | who circled that number, that dollar amount?  Or | 15:27:05 |
| 18 | is this just -- | 15:27:10 |
| 19 | A   It wasn't me.  It would have been someone | 15:27:10 |
| 20 | on our team, Josh or Farah -- Michael Farah or | 15:27:12 |
| 21 | Josh Reilly, I'm guessing. | 15:27:17 |
| 22 | Q   And for Exhibit Number 28, we have the | 15:27:32 |
| 23 | Centerview investor report, which is -- | 15:27:35 |
| 24 | A   Give me a second.  It's a lot of paper | 15:27:38 |
| 25 | here. | 15:27:44 |

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                          128

| | | |
|---|---|---|
| 1 | Q  I understand. | 15:27:44 |
| 2 | A  Centerview -- wait.  28, okay. | 15:27:45 |
| 3 | Q  Which is the firm that you actually ended | 15:27:49 |
| 4 | up using -- | 15:27:51 |
| 5 | A  Yep. | 15:27:51 |
| 6 | Q  -- and going with. | 15:27:52 |
| 7 | A  Yep. | 15:27:53 |
| 8 | Q  And if you flip to the page that's -- | 15:27:53 |
| 9 | A  I mean, they did say that they're the | 15:27:55 |
| 10 | right firm to represent us, right, on Bates | 15:27:58 |
| 11 | stamp 536 so... | 15:28:02 |
| 12 | Q  I guess they were right.  On Bates | 15:28:02 |
| 13 | stamp 548. | 15:28:02 |
| 14 |     So Centerview, who represented you, gave | 15:28:18 |
| 15 | you a valuation of 630 million at the low end for | 15:28:23 |
| 16 | public comparable companies and 760 on the high | 15:28:27 |
| 17 | end, correct? | 15:28:33 |
| 18 | A  The page Bates stamped LINDEN0000548 does | 15:28:34 |
| 19 | state that for public comparables, it's 630 to | 15:28:42 |
| 20 | 760. | 15:28:48 |
| 21 | Q  And for precedent transactions, it's 710 | 15:28:48 |
| 22 | to 840. | 15:28:53 |
| 23 | A  That's what it states. | 15:28:55 |
| 24 | Q  Okay.  And the EBITDA multiple, it states | 15:28:56 |
| 25 | that it's 15X to 18X, correct? | 15:29:02 |

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                      129

| | | |
|---|---|---|
| 1 | A  For public comparable companies, that's | 15:29:04 |
| 2 | what it states. | 15:29:10 |
| 3 | Q  And when you replied to Pat in response to | 15:29:12 |
| 4 | him rejecting the offer, you had this information, | 15:29:16 |
| 5 | correct? | 15:29:22 |
| 6 | A  The discussions with Pat had been ongoing | 15:29:25 |
| 7 | in the summer and fall, and these are selling | 15:29:29 |
| 8 | documents.  I mean, I refer to Linden -- same | 15:29:32 |
| 9 | document, LINDEN0000550.  And here it says: | 15:29:35 |
| 10 | Sponsors and Strategics Pay Premium Valuations for | 15:29:43 |
| 11 | Growth. | 15:29:47 |
| 12 | And it says average is 15 times.  It does | 15:29:47 |
| 13 | not say low, it says average.  And then high | 15:29:50 |
| 14 | growth is 17 and high is 21.  The company wasn't | 15:29:53 |
| 15 | growing quickly. | 15:29:56 |
| 16 | It was actually growing below plan.  And | 15:29:58 |
| 17 | so while it's great to say it was high growth, we | 15:30:01 |
| 18 | got 17 times, in fact, it wasn't. | 15:30:05 |
| 19 | And so the 15 times is actually listed as | 15:30:07 |
| 20 | an average valuation, and our growth was average | 15:30:10 |
| 21 | to below average. | 15:30:14 |
| 22 | So our job is, when we look at a -- you | 15:30:15 |
| 23 | know, these people are trying to sell us services, | 15:30:21 |
| 24 | so they're going to show us the highest possible | 15:30:24 |
| 25 | valuations, and we have to apply our own judgment | 15:30:27 |

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                    130

| | | |
|---|---|---|
| 1 | to it. | 15:30:30 |
| 2 | I will also note that they're showing | 15:30:31 |
| 3 | EBITDA of $42 million.  And so the $42 million, in | 15:30:34 |
| 4 | fact, we didn't have $42 million.  When we were | 15:30:40 |
| 5 | negotiating with Pat, straight off the books, it | 15:30:43 |
| 6 | was $33.9 million. | 15:30:45 |
| 7 | So you have very different EBITDA numbers. | 15:30:46 |
| 8 | The investment banker has just arbitrarily chosen | 15:30:49 |
| 9 | a very high number that's not what it was.  You'll | 15:30:54 |
| 10 | see the other banks had lower EBITDA numbers. | 15:30:57 |
| 11 | And there are multiples, although they | 15:30:59 |
| 12 | state them in here, the next -- you know, 0000550 | 15:31:03 |
| 13 | clearly shows the average is 15 times. | 15:31:07 |
| 14 | And so -- and we were right.  The company | 15:31:09 |
| 15 | sold for less than any of these banks said and for | 15:31:11 |
| 16 | a multiple between 14 and 15.  It didn't sell for | 15:31:16 |
| 17 | 18 times. | 15:31:20 |
| 18 | Q  But at the time when you were provided | 15:31:20 |
| 19 | with these numbers from these investment bankers, | 15:31:23 |
| 20 | particularly Centerview since you decided to use | 15:31:26 |
| 21 | them to market the company, did you respond to | 15:31:31 |
| 22 | them that any of their numbers were absurd or out | 15:31:32 |
| 23 | of the realm of possibility? | 15:31:36 |
| 24 | A  My recollection was we actually did tease | 15:31:40 |
| 25 | them a little bit about that, boy, would we be | 15:31:42 |

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                                131

| | | |
|---|---|---|
| 1 | glad to get those valuations. | 15:31:49 |
| 2 | We did not believe them.  We thought | 15:31:51 |
| 3 | they -- you select bankers not just from the pitch | 15:31:53 |
| 4 | deck.  With all -- without upsetting all the | 15:31:56 |
| 5 | 24-year-olds who work all night long to produce | 15:32:02 |
| 6 | these things, poor 24-year-olds, you're really | 15:32:06 |
| 7 | buying the relationships of the key banker.  And | 15:32:09 |
| 8 | the top investment banker had a lot of experience. | 15:32:13 |
| 9 | And so that's -- and their relationships.  And | 15:32:18 |
| 10 | that's ultimately what you're buying. | 15:32:22 |
| 11 | The internal discussion of valuations for | 15:32:24 |
| 12 | a private equity firm is this stuff doesn't matter | 15:32:27 |
| 13 | in valuations.  The market will speak.  And so the | 15:32:31 |
| 14 | market will speak about what it's ultimately | 15:32:34 |
| 15 | worth.  And so you're seeing a very wide variety | 15:32:37 |
| 16 | of valuations. | 15:32:42 |
| 17 | Our job is to be extremely good at | 15:32:43 |
| 18 | understanding valuations.  And we were clearly | 15:32:46 |
| 19 | more correct than Centerview.  So we looked at | 15:32:48 |
| 20 | these documents with great skepticism. | 15:32:54 |
| 21 | And what we're really buying, to the point | 15:32:56 |
| 22 | you made a number of times, is you're trying to | 15:32:59 |
| 23 | buy the best salesperson, who can sell the company | 15:33:02 |
| 24 | the best.  And so that's ultimately why we chose | 15:33:04 |
| 25 | Centerview, because the key investment banker was | 15:33:09 |

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                        132

| | | |
|---|---|---|
| 1 | a very well-known banker. | 15:33:12 |
| 2 | Q  Is that part of the reason why you | 15:33:14 |
| 3 | wouldn't -- well, other than confidentiality | 15:33:15 |
| 4 | reasons, was that part of your motivation for not | 15:33:17 |
| 5 | providing these to Pat's counsel in 2020 when he | 15:33:20 |
| 6 | asked? | 15:33:23 |
| 7 | A  There was no reason to provide these. | 15:33:23 |
| 8 | These were for 2020 valuations.  Pat was | 15:33:25 |
| 9 | terminated in June of 2019, and he acknowledged | 15:33:28 |
| 10 | that in July of 2019. | 15:33:32 |
| 11 | The EBITDA was far lower at that time. | 15:33:36 |
| 12 | And valuations that are really for valuations a | 15:33:40 |
| 13 | year to year and a half later are just not | 15:33:45 |
| 14 | relevant. | 15:33:47 |
| 15 | And I don't regard these as valuations; I | 15:33:52 |
| 16 | regard these as a selling document. | 15:33:54 |
| 17 | Q  Okay.  I want -- | 15:33:55 |
| 18 | A  This is not a valuation.  To be very | 15:33:57 |
| 19 | clear, investment bank -- this is not a valuation | 15:33:59 |
| 20 | report.  We produce valuation reports.  These guys | 15:34:01 |
| 21 | are producing a selling document to sell their | 15:34:04 |
| 22 | services. | 15:34:07 |
| 23 | Q  Okay.  Go to Exhibit Number -- we've done | 15:34:07 |
| 24 | it with the other two, so Exhibit Number 29.  This | 15:34:40 |
| 25 | is the November 7th Harris Williams -- | 15:34:48 |

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                    133

| | | |
|---|---|---|
| 1 | A   Yep. | 15:34:52 |
| 2 | Q   -- ProPharma pitch deck.  And if you turn | 15:34:52 |
| 3 | to page number LINDEN618. | 15:35:00 |
| 4 | Oh, I know what I was going to ask you. | 15:35:30 |
| 5 | It was a follow-up on your statement. | 15:35:32 |
| 6 | A   Mm-hm. | 15:35:34 |
| 7 | Q   You said that Pat acknowledged that he was | 15:35:34 |
| 8 | not on the board, at least 20 times today. | 15:35:38 |
| 9 | A   I've got another 20 in me. | 15:35:42 |
| 10 | Q   Did he acknowledge that in writing to | 15:35:45 |
| 11 | anyone besides Brianna Loverich in making travel | 15:35:54 |
| 12 | reservations? | 15:36:01 |
| 13 | A   Why would he?  We had already had these | 15:36:01 |
| 14 | discussions and we all knew it.  Why would he | 15:36:04 |
| 15 | write that email to me?  I'd be like:  Why did you | 15:36:07 |
| 16 | write that email?  We already talked about this. | 15:36:11 |
| 17 | Q   But I'm asking you do you know of any | 15:36:13 |
| 18 | written acknowledgement other than that one? | 15:36:16 |
| 19 | A   And my answer is there would be no reason | 15:36:18 |
| 20 | to because we all knew.  We all knew at that time. | 15:36:20 |
| 21 | Q   I guess I have to get a yes-or-no answer | 15:36:23 |
| 22 | from you. | 15:36:25 |
| 23 | A   My answer is I do not believe that he | 15:36:26 |
| 24 | acknowledged in writing to anyone else that which | 15:36:31 |
| 25 | they already knew, that he was off the board. | 15:36:35 |

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                          134

| | | |
|---|---|---|
| 1 | Q   Good enough. | 15:36:39 |
| 2 | A   And this is -- I'm sorry, which page do | 15:36:56 |
| 3 | you want me to go to? | 15:36:57 |
| 4 | Q   I'm sorry.  It's LINDEN0000618. | 15:37:00 |
| 5 | A   Okay.  Yep. | 15:37:04 |
| 6 | Q   And enterprise value for that particular | 15:37:05 |
| 7 | firm, Harris Williams, shows at -- it's not | 15:37:08 |
| 8 | particularly well organized. | 15:37:19 |
| 9 | Okay.  It shows an EBITDA projection at | 15:37:37 |
| 10 | 40, and then 46 in 2021, which is kind of | 15:37:41 |
| 11 | irrelevant because you sold it in 2020.  And 2019, | 15:37:44 |
| 12 | 35. | 15:37:48 |
| 13 | A   Mm-hm. | 15:37:51 |
| 14 | Q   It shows -- I don't see it.  For the | 15:37:52 |
| 15 | enterprise value, I don't see it. | 15:38:03 |
| 16 | A   Let me try to find. | 15:38:05 |
| 17 | Q   It shows -- the precedent transactions, it | 15:38:13 |
| 18 | shows a multiple of 14.6 on the previous page. | 15:38:16 |
| 19 | A   I was going to point you to that page, | 15:38:19 |
| 20 | yes. | 15:38:21 |
| 21 | Q   Yes.  On 6/17.  So not 18 but definitely | 15:38:21 |
| 22 | higher than 13.9. | 15:38:26 |
| 23 | And using public comparables, it says | 15:38:37 |
| 24 | public comparables are trading at a median of 16X | 15:38:40 |
| 25 | EBITDA.  And, honestly, my question was going to | 15:38:45 |

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                    135

```
1    be the same based off of all of this.                  15:38:54

2        A   Okay.                                          15:38:56

3        Q   Are these documents that you had awareness     15:38:56

4    of at the time when the $105,000 transfer was made     15:39:02

5    to Pat Donnelly on November 11th?                      15:39:09

6        A   And my answer is we should be asking Pat       15:39:15

7    about these documents.  Because on LINDEN0000617,      15:39:19

8    it shows precedent transactions, which is the main     15:39:26

9    way to value this company, at 14.6.                    15:39:30

10           And as we've discussed, valuation is           15:39:34

11   subject to discretion.  14.6 is very close to          15:39:37

12   13.9.  It's not too far off.  It is quite far off      15:39:41

13   from 18 times.                                         15:39:44

14           And so it's actually pretty good at            15:39:45

15   supporting where we are.  And they're using -- and     15:39:47

16   I'll also note that you said 2021 EBITDA is not        15:39:51

17   relevant because we sold in 2020.  But by              15:39:54

18   extension, 2020 EBITDA 40 is not relevant because      15:39:57

19   we were doing the valuation of Pat in 2019.  This      15:40:01

20   is a forward-looking valuation, into the next          15:40:05

21   year, and the EBITDA at that time was 33.9 in June     15:40:08

22   of 2019.                                               15:40:12

23       Q   But don't you sell all companies using         15:40:12

24   forward-looking valuations?                            15:40:15

25       A   It does -- that's a complicated question.      15:40:16
```

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                136

| | | |
|---|---|---|
| 1 | I mean, you try.  But depending on the company, | 15:40:20 |
| 2 | you, generally speaking, have to get to the point | 15:40:23 |
| 3 | where people believe it.  And so depending on the | 15:40:26 |
| 4 | company, it has to be sometimes pretty late in the | 15:40:29 |
| 5 | year, unless it's an extremely easy-to-predict | 15:40:32 |
| 6 | company. | 15:40:39 |
| 7 | Some companies, like, book all earnings -- | 15:40:40 |
| 8 | like, your cell phone carrier, you pay your | 15:40:45 |
| 9 | monthly bill every month.  So if you have a | 15:40:48 |
| 10 | business that's just every month it's like taking | 15:40:50 |
| 11 | money out of your credit card, yes, you can | 15:40:52 |
| 12 | project that forward. | 15:40:55 |
| 13 | For a business like this that's project | 15:40:56 |
| 14 | based, where it's staff -- basically staffing | 15:40:59 |
| 15 | base, consulting business, where they got to sell | 15:41:02 |
| 16 | projects, it's not like a monthly bill just coming | 15:41:04 |
| 17 | in every month.  You typically have to wait | 15:41:08 |
| 18 | towards the end of the year to be able sell off | 15:41:11 |
| 19 | that EBITDA.  They're not going to believe you in | 15:41:13 |
| 20 | February to sell because there's a lot going on. | 15:41:16 |
| 21 | Q  I want to go back to 29 for a minute. | 15:41:35 |
| 22 | There is, on 6/17 -- | 15:41:40 |
| 23 | A  I like Page 617.  That supports this. | 15:41:58 |
| 24 | Q  617, one of the comparables that they use | 15:42:02 |
| 25 | is Advarra.  They're not the only firm to use | 15:42:04 |

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                                137

| | | |
|---|---|---|
| 1 | Advarra for a comparable. | 15:42:09 |
| 2 | You previously explained that you didn't | 15:42:11 |
| 3 | believe Advarra was a reasonable comparable.  Is | 15:42:14 |
| 4 | there any reason why multiple investment banks | 15:42:17 |
| 5 | would have used Advarra? | 15:42:21 |
| 6 | A   The -- as I said previously, there are no | 15:42:24 |
| 7 | perfect comparables.  And so what you typically | 15:42:28 |
| 8 | try to do, just like when you market a house or a | 15:42:30 |
| 9 | condo, is to say:  Let's get a selection of | 15:42:33 |
| 10 | similar condos or similar houses to come up with | 15:42:37 |
| 11 | what we think is right. | 15:42:39 |
| 12 | Some of those condos are going to be a | 15:42:40 |
| 13 | nicer condo; some of them are going to be a | 15:42:43 |
| 14 | less-nice condo.  But you come up with a grouping. | 15:42:46 |
| 15 | And so what you see here -- you can see | 15:42:48 |
| 16 | the numbers.  I mean, there's stuff that trades at | 15:42:51 |
| 17 | 19 times on this page, approximately, from what I | 15:42:53 |
| 18 | look at.  There's stuff that trades at 10 times. | 15:42:55 |
| 19 | And so they've come up with a large group | 15:42:58 |
| 20 | of comparables that some are more relevant and | 15:43:00 |
| 21 | some are, you know, less relevant.  Like Capsugel | 15:43:04 |
| 22 | on here is not relevant, and I'm not sure why it's | 15:43:09 |
| 23 | on the page. | 15:43:13 |
| 24 | So some are more relevant; some are less | 15:43:13 |
| 25 | relevant. | 15:43:16 |

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                    138

| | | |
|---|---|---|
| 1 | Advarra, as we talked about, is a | 15:43:17 |
| 2 | conflict.  So there's a piece of Advarra that is | 15:43:19 |
| 3 | the same business.  So if you're coming up with a | 15:43:21 |
| 4 | broad list, sure, throw Advarra on, because that | 15:43:24 |
| 5 | small piece of the business is comparable.  But | 15:43:27 |
| 6 | the bigger piece of Advarra is not. | 15:43:29 |
| 7 | And, ultimately, that's exactly what was | 15:43:31 |
| 8 | borne out.  Advarra traded for 18 times.  I think | 15:43:33 |
| 9 | that's why that was in Pat's head.  And our | 15:43:36 |
| 10 | business traded for, you know, somewhere right | 15:43:39 |
| 11 | around this multiple. | 15:43:42 |
| 12 | And so Advarra is not a good comp.  We did | 15:43:43 |
| 13 | not trade anywhere close to what Advarra traded | 15:43:49 |
| 14 | for. | 15:43:53 |
| 15 | Q  That's discretionary on the valuator's | 15:43:53 |
| 16 | part, right, to decide whether it's a good comp or | 15:43:56 |
| 17 | bad comp? | 15:43:59 |
| 18 | A  Yes. | 15:44:00 |
| 19 | Q  And so you could choose to exclude | 15:44:00 |
| 20 | Advarra, despite just having done that deal with | 15:44:02 |
| 21 | Genstar, if you -- | 15:44:06 |
| 22 | A  If you're going to include it as a comp -- | 15:44:08 |
| 23 | let's be careful what we're saying.  Are we saying | 15:44:11 |
| 24 | it as, like, a single comp?  No, it's not. | 15:44:13 |
| 25 | Q  No, no, no, no, not a single comp.  I'm | 15:44:17 |

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                    139

| | | |
|---|---|---|
| 1 | saying you could choose to exclude it even if | 15:44:18 |
| 2 | others thought it was comparable.  Clearly, at | 15:44:21 |
| 3 | least Harris Williams and, I believe, Perella -- | 15:44:23 |
| 4 | A  Sure.  You could -- | 15:44:24 |
| 5 | Q  -- Weinberg thought it was comparable. | 15:44:25 |
| 6 | A  You could choose to include it or exclude | 15:44:28 |
| 7 | it as a group -- a broad group of companies. | 15:44:29 |
| 8 | Q  Right.  Okay.  And in your mind, it should | 15:44:32 |
| 9 | have been excluded? | 15:44:34 |
| 10 | A  I think it's okay as part of a broad | 15:44:35 |
| 11 | group.  I think when -- as we talked about | 15:44:41 |
| 12 | earlier, it was kind of brought up as a singular | 15:44:44 |
| 13 | comp.  I think you had mentioned Advarra traded | 15:44:47 |
| 14 | for 18 times earlier today. | 15:44:48 |
| 15 | And my point is, as a singular comp, it's | 15:44:52 |
| 16 | not a good comp, as a singular company, because | 15:44:55 |
| 17 | it's tech enabled; it's growing faster; it's | 15:44:59 |
| 18 | bigger, better.  Advarra is a better company. | 15:45:02 |
| 19 | That's why we bought it in the first place. | 15:45:06 |
| 20 | As a group of comps, you can include it | 15:45:08 |
| 21 | because a piece of it was similar to ProPharma. | 15:45:11 |
| 22 | So I have no objection as a grouping of | 15:45:14 |
| 23 | companies, just not as a singular comp. | 15:45:16 |
| 24 | Q  Okay.  And so -- | 15:45:19 |
| 25 | A  You can look at all these companies and be | 15:45:22 |

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                        140

| | | |
|---|---|---|
| 1 | like -- like, you know, Cold Chain -- we know | 15:45:24 |
| 2 | a lot of these companies, so it's, like, what's | 15:45:30 |
| 3 | that doing there? | 15:45:32 |
| 4 | Q  Yeah. | 15:45:32 |
| 5 | A  And so -- | 15:45:33 |
| 6 | Q  And just -- if I could follow up.  Why did | 15:45:33 |
| 7 | you say Cap Gel [sic], I think it was -- | 15:45:36 |
| 8 | A  Oh, it's on here.  Sorry.  It's Capsugel. | 15:45:39 |
| 9 | It's right here. | 15:45:42 |
| 10 | Q  Yeah, I saw Capsugel on there.  Why is | 15:45:42 |
| 11 | that not -- why shouldn't that be on there? | 15:45:45 |
| 12 | A  That's like a biomedical company.  It's | 15:45:48 |
| 13 | Capsugel Biomedical.  You know, I mean, it's | 15:45:48 |
| 14 | just -- | 15:45:51 |
| 15 | Q  And ProPharma is a diagnostic type? | 15:45:51 |
| 16 | A  It's really consulting and compliance. | 15:45:54 |
| 17 | It's -- they provide consulting services of a | 15:45:57 |
| 18 | variety of kinds to companies involved in drug | 15:46:01 |
| 19 | discovery. | 15:46:08 |
| 20 | And so it's more akin -- it's really | 15:46:09 |
| 21 | more -- it has -- some of the big issues we dealt | 15:46:13 |
| 22 | with at the board were around, like, hiring enough | 15:46:19 |
| 23 | people, retaining enough people.  Like, it's a | 15:46:21 |
| 24 | people business.  And so those are just tougher | 15:46:24 |
| 25 | businesses because it involves people. | 15:46:26 |

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                        141

| | | |
|---|---|---|
| 1 | Q   Right.  And Exhibit Number 30 is the | 15:46:28 |
| 2 | Perella Weinberg investor report. | 15:46:39 |
| 3 | A   Yep. | 15:46:45 |
| 4 | Q   If you flip to LINDEN0000624. | 15:46:46 |
| 5 | A   Can I have a minute to page through this? | 15:47:02 |
| 6 | Q   Yep. | 15:47:04 |
| 7 | Now, it doesn't reference any -- any | 15:47:23 |
| 8 | multiples in the Perella Weinberg report. | 15:47:25 |
| 9 | A   It's -- well, I would say on -- | 15:47:28 |
| 10 | Q   That I can see. | 15:47:30 |
| 11 | A   What's that? | 15:47:31 |
| 12 | Q   That I can see.  Maybe I missed them. | 15:47:32 |
| 13 | A   It's on LINDEN0000632.  It says:  Pharma | 15:47:34 |
| 14 | and outsource services trading near historically | 15:47:41 |
| 15 | high multiples. | 15:47:45 |
| 16 | And then if you look at traditional | 15:47:45 |
| 17 | CROs -- that stands for contract research | 15:47:49 |
| 18 | organization -- they've kind of drawn a line and | 15:47:51 |
| 19 | it says median is 13.4X.  And then consulting | 15:47:54 |
| 20 | outsource services -- again, this is more like | 15:47:57 |
| 21 | ProPharma because it's consulting -- and it's kind | 15:48:00 |
| 22 | of blurry, but I think that's 13.3 times. | 15:48:03 |
| 23 | There's -- it says median up top, and then | 15:48:08 |
| 24 | it's got a bar going across.  It's literally -- | 15:48:11 |
| 25 | it's hard for me to read.  But I think -- | 15:48:15 |

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                                142

| | | |
|---|---|---|
| 1 | Q  Yeah, it looks like 13.3 for median. | 15:48:16 |
| 2 | A  Yeah.  So, again, this is where it's like, | 15:48:19 |
| 3 | to me -- | 15:48:22 |
| 4 | Q  However, on 624, it says -- specific to | 15:48:22 |
| 5 | ProPharma, it says:  PPG can command a premium | 15:48:28 |
| 6 | price in excess of $650 million. | 15:48:36 |
| 7 | A  And we don't believe this because their | 15:48:41 |
| 8 | own valuation says it's worth a little over | 15:48:43 |
| 9 | 13 times.  And they're talking about a value a | 15:48:46 |
| 10 | year from now. | 15:48:49 |
| 11 | So, again, what we keep confusing is we're | 15:48:50 |
| 12 | talking about valuations going forward a year -- | 15:48:54 |
| 13 | Q  Okay. | 15:48:57 |
| 14 | A  -- for something that was based on | 15:48:57 |
| 15 | June 2019.  So it's kind of saying what's going to | 15:48:59 |
| 16 | be -- all of these are effectively saying:  What's | 15:49:03 |
| 17 | it going to be worth about a year after we've | 15:49:05 |
| 18 | terminated Pat from the board, all of these? | 15:49:08 |
| 19 | And -- | 15:49:11 |
| 20 | Q  So assuming -- assuming -- | 15:49:11 |
| 21 | THE WITNESS:  Am I allowed to finish my | 15:49:14 |
| 22 | answer? | 15:49:16 |
| 23 | BY MR. MINSON: | 15:49:17 |
| 24 | Q  I'm so sorry.  Go ahead. | 15:49:18 |
| 25 | A  And the -- | 15:49:20 |

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                      143

| | | |
|---|---|---|
| 1 | THE WITNESS:  Aren't you my counsel? | 15:49:21 |
| 2 | BY THE WITNESS: | 15:49:23 |
| 3 | A  And your valuation expert talks about how | 15:49:23 |
| 4 | the company increased in value over time. | 15:49:26 |
| 5 | So, one, these are all bullshit, turned | 15:49:29 |
| 6 | out to be wrong.  But it should have been -- the | 15:49:33 |
| 7 | company should have been worth more a year after | 15:49:35 |
| 8 | Pat was terminated from the board. | 15:49:38 |
| 9 | So I don't see how that's an issue at all. | 15:49:40 |
| 10 | But when you see a multiple of 13 times -- times | 15:49:44 |
| 11 | the actual EBITDA, this all really supports us. | 15:49:46 |
| 12 | BY MR. MINSON: | 15:49:49 |
| 13 | Q  So, I mean, that supports you assuming he | 15:49:49 |
| 14 | was actually properly terminated.  So if he was | 15:49:51 |
| 15 | not terminated, would you expect the valuation of | 15:49:54 |
| 16 | his incentive equity shares to be more in line | 15:49:57 |
| 17 | with this and what -- and also what was paid to | 15:50:00 |
| 18 | Richard Thomas? | 15:50:04 |
| 19 | A  We did not believe these valuations, as I | 15:50:04 |
| 20 | stated repeatedly.  And, in fact, we were correct. | 15:50:09 |
| 21 | All of these documents overestimated the value of | 15:50:12 |
| 22 | ProPharma, which we expected because they're | 15:50:16 |
| 23 | investment banks trying to sell their services. | 15:50:18 |
| 24 | They're not true valuations; they are selling | 15:50:20 |
| 25 | documents. | 15:50:24 |

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                    144

| | | |
|---|---|---|
| 1 | Q  Okay.  So... | 15:50:24 |
| 2 | (WHEREUPON, discussion was had off the | 15:50:24 |
| 3 | stenographic record.) | 15:51:35 |
| 4 | BY MR. MINSON: | 15:51:35 |
| 5 | Q  So the sole basis of your valuation of | 15:51:35 |
| 6 | Pat's shares is based on the fact that he was | 15:51:39 |
| 7 | terminated and therefore it was correct at that | 15:51:41 |
| 8 | time? | 15:51:43 |
| 9 | MR. GILMORE:  Objection, form and | 15:51:43 |
| 10 | foundation. | 15:51:46 |
| 11 | BY THE WITNESS: | 15:51:46 |
| 12 | A  It's a legal question of whether he was | 15:51:47 |
| 13 | terminated correctly -- | 15:51:49 |
| 14 | BY MR. MINSON: | 15:51:52 |
| 15 | Q  I'm sorry.  I don't want to -- I don't | 15:51:53 |
| 16 | want you to answer the wrong question. | 15:51:54 |
| 17 | A  Okay. | 15:51:56 |
| 18 | Q  I'm not asking whether he was terminated | 15:51:56 |
| 19 | correctly or not.  I'm asking if he was not | 15:51:59 |
| 20 | terminated, would your opinion on the proper value | 15:52:01 |
| 21 | of his shares change at the sale? | 15:52:04 |
| 22 | A  Were he still a member of the board, what | 15:52:08 |
| 23 | is my -- | 15:52:16 |
| 24 | Q  Right. | 15:52:16 |
| 25 | A  -- version of what the valuation is? | 15:52:17 |

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                      145

| | | |
|---|---|---|
| 1 | The valuation, were he still a board | 15:52:26 |
| 2 | member, would be in line of what the value was | 15:52:29 |
| 3 | when it was sold. | 15:52:31 |
| 4 | Q  So 3.1 -- roughly -- Richard Thomas' | 15:52:32 |
| 5 | paperwork said 3.15 multiples on invested capital. | 15:52:36 |
| 6 | That would have been available to Pat had he not | 15:52:41 |
| 7 | been terminated? | 15:52:44 |
| 8 | A  I want to be careful what I'm saying.  If | 15:52:45 |
| 9 | he were still a member of the board, he would have | 15:52:53 |
| 10 | had the same valuation as Richard and every other | 15:52:55 |
| 11 | investor. | 15:53:00 |
| 12 | Q  Okay. | 15:53:01 |
| 13 | A  And not higher. | 15:53:02 |
| 14 | Q  Okay.  And I guess I digressed off of this | 15:53:16 |
| 15 | Perella Weinberg report.  Last one of the | 15:53:19 |
| 16 | investment reports is -- | 15:53:43 |
| 17 | A  Can I just amend my answer slightly to say | 15:53:44 |
| 18 | that -- I want to be very specific.  The valuation | 15:53:47 |
| 19 | when you sell a company is what it is, and then | 15:53:49 |
| 20 | you would apply whatever his agreement is against | 15:53:53 |
| 21 | that valuation.  I don't have Richard Thomas', nor | 15:53:55 |
| 22 | do I know Richard Thomas', so I can't say versus | 15:53:59 |
| 23 | Richard Thomas. | 15:54:03 |
| 24 | I will only say that whatever the | 15:54:04 |
| 25 | valuation was for the company at the time of sale, | 15:54:06 |

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                    146

| | | |
|---|---|---|
| 1 | were he still a member of the board, that same | 15:54:08 |
| 2 | valuation applies to all shareholders. | 15:54:11 |
| 3 | Q  Okay.  And this is Exhibit Number 31. | 15:54:14 |
| 4 | It's the last investor report by William Blair. | 15:54:26 |
| 5 | And if you go to Page -- Page 18 on the | 15:54:48 |
| 6 | report, Bates-stamped LINDEN0000677. | 15:54:52 |
| 7 | A  And can you give me a moment on this one? | 15:55:00 |
| 8 | Q  Sure. | 15:55:02 |
| 9 | A  Okay. | 15:55:40 |
| 10 | Q  So the 2019 adjusted EBITDA on this | 15:55:40 |
| 11 | report, under the valuation it says -- I guess | 15:55:48 |
| 12 | it's a notation that's part of the production from | 15:55:54 |
| 13 | whoever produced this from Linden.  It says 600 to | 15:55:57 |
| 14 | 700M. | 15:56:02 |
| 15 | A  Wait.  600 to -- I'm sorry, I'm not | 15:56:04 |
| 16 | following you.  Where are you on this? | 15:56:06 |
| 17 | Q  It's 677.  If you look up top, there's a | 15:56:09 |
| 18 | notation -- | 15:56:13 |
| 19 | A  Oh, I see -- | 15:56:13 |
| 20 | Q  -- that was added -- | 15:56:15 |
| 21 | A  Yeah, I see that. | 15:56:16 |
| 22 | Q  -- that says 600 to 700M. | 15:56:17 |
| 23 | A  Yep. | 15:56:20 |
| 24 | Q  Would that be someone at Linden who -- | 15:56:21 |
| 25 | because these are confidential reports.  So would | 15:56:23 |

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                         147

| 1  | someone at Linden have to have added that?        | 15:56:26 |
| 2  | A   Yes.                                          | 15:56:28 |
| 3  | Q   Okay.  And it says:  At 600M, the 2019        | 15:56:28 |
| 4  | adjusted EBITDA is 17.1X.                          | 15:56:33 |
| 5  | A   Mm-hm.                                        | 15:56:37 |
| 6  | Q   In 2020, it goes back down -- it goes         | 15:56:38 |
| 7  | down --                                           | 15:56:43 |
| 8  | A   Yep.                                          | 15:56:43 |
| 9  | Q   -- to 14.6.                                   | 15:56:43 |
| 10 | A   Yep.                                          | 15:56:45 |
| 11 | Q   Can you explain that -- those numbers and     | 15:56:46 |
| 12 | why the shift?                                     | 15:56:49 |
| 13 | A   Sure.  So we're talking -- again, if -- a     | 15:56:50 |
| 14 | company takes a long time to sell.  I mean, if    | 15:56:57 |
| 15 | you're at an investment banking presentation, it's | 15:57:02 |
| 16 | going to be nine months, maybe a year before you  | 15:57:04 |
| 17 | sell that company.  And so we're really looking at | 15:57:06 |
| 18 | 2021 numbers.                                      | 15:57:09 |
| 19 |      And so when the person who wrote this        | 15:57:10 |
| 20 | wrote this, 6- to $700 million, they're really    | 15:57:13 |
| 21 | looking at a valuation, you know, like towards the | 15:57:18 |
| 22 | end of 2020.                                       | 15:57:21 |
| 23 |      And so then the investment banker -- and     | 15:57:23 |
| 24 | so that's the 6- to 700 million.  You're not      | 15:57:26 |
| 25 | selling today.  It takes a long time to prep and  | 15:57:31 |

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                    148

| | | |
|---|---|---|
| 1 | sell a company. | 15:57:34 |
| 2 | And so if the EBITDA is going -- same | 15:57:35 |
| 3 | number, $600 million in this case, if your EBITDA | 15:57:37 |
| 4 | is $35 million, it's just math, 600 divided by 35 | 15:57:40 |
| 5 | is 17.1.  But they're not really valuing it today; | 15:57:44 |
| 6 | they're valuing it next year. | 15:57:48 |
| 7 | And so that's why they're providing the | 15:57:49 |
| 8 | 2021 EBITDA of 41.2.  And so it's 600 divided by | 15:57:51 |
| 9 | the 41.2 -- naturally, the EBITDA multiple goes | 15:57:55 |
| 10 | down because EBITDA is up.  It's just math, | 15:57:57 |
| 11 | one -- one times the other, 14.6. | 15:58:00 |
| 12 | And, again, I would say that this -- I | 15:58:01 |
| 13 | mean, we like these -- we love this page for our | 15:58:04 |
| 14 | case, because we sold the company for 560, you | 15:58:06 |
| 15 | know, million bucks ultimately and off 2020 | 15:58:10 |
| 16 | numbers.  And that's a 13.3 multiple on here.  So | 15:58:13 |
| 17 | this -- which is lower than our 13.9.  And if you | 15:58:17 |
| 18 | look above, comparable M&A transactions, CROs, | 15:58:20 |
| 19 | 13.9. | 15:58:24 |
| 20 | So there's tons of evidence here that we | 15:58:25 |
| 21 | were valuing this appropriately. | 15:58:28 |
| 22 | And I'll just say -- you know, in the | 15:58:29 |
| 23 | previous page, Bates stamp LINDEN000676, CROs and | 15:58:31 |
| 24 | Pharma Service Public Comps, 14.7 to 14.5. | 15:58:38 |
| 25 | And so there's just, you know, so much, | 15:58:42 |

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                    149

| | | |
|---|---|---|
| 1 | you know, evidence in here that we have an | 15:58:47 |
| 2 | appropriate valuation. | 15:58:51 |
| 3 | And then if you go back to LINDEN Bates | 15:58:52 |
| 4 | stamp 0000675, it's talking about the growth, | 15:58:57 |
| 5 | selling the growth. All of these investment | 15:58:59 |
| 6 | banking presentations is selling growth because | 15:59:01 |
| 7 | growth is incredibly important. | 15:59:03 |
| 8 | Well, like, here's a little secret, guys, | 15:59:04 |
| 9 | it wasn't growing that well. It wasn't actually | 15:59:08 |
| 10 | doing super great. And so we knew we weren't | 15:59:11 |
| 11 | getting the high side of these valuations. | 15:59:13 |
| 12 | And, again, we were right. I mean, it's | 15:59:15 |
| 13 | our job to value companies. That's kind of, like, | 15:59:18 |
| 14 | should be our core expertise. | 15:59:20 |
| 15 | And we have -- we did a great job. We | 15:59:22 |
| 16 | were much more accurate than Pat or any of the | 15:59:25 |
| 17 | investment banks that were understanding the | 15:59:28 |
| 18 | valuation of the company. | 15:59:30 |
| 19 | These are great documents for us. | 15:59:31 |
| 20 | Q   So five of -- five independent | 15:59:32 |
| 21 | valuations -- but you said that -- | 15:59:36 |
| 22 | A   They were wrong. | 15:59:37 |
| 23 | Q   The person -- the person -- | 15:59:38 |
| 24 | (Unreportable cross-talk.) | |
| 25 | MS. REPORTER:  Hang on.  Hang on.  One at | |

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                        150

| | | |
|---|---|---|
| 1 | a time. | |
| 2 | THE WITNESS:  Sorry. | |
| 3 | MR. GILMORE:  We don't want to drive her | |
| 4 | crazy. | |
| 5 | BY MR. MINSON: | |
| 6 | Q  You did say the person who markets the | 15:59:47 |
| 7 | company or the party who markets the company makes | 15:59:48 |
| 8 | a difference.  And so I have to say, if five | 15:59:50 |
| 9 | different investment banks gave you a higher | 15:59:56 |
| 10 | value, couldn't it be that you were just bad? | 16:00:02 |
| 11 | A  I'm -- me? | 16:00:04 |
| 12 | Q  No, at marketing the company.  You said | 16:00:05 |
| 13 | the person who markets it makes a difference.  So | 16:00:07 |
| 14 | if there was a different person selling the | 16:00:10 |
| 15 | company, don't -- is it possible that they could | 16:00:12 |
| 16 | have got what the five independent investment | 16:00:15 |
| 17 | banks thought that the company was worth? | 16:00:17 |
| 18 | A  No, I disagree. | 16:00:20 |
| 19 | Q  Okay.  And you had all this information, | 16:00:23 |
| 20 | as far as the value of the company, 600 to 17 -- | 16:00:25 |
| 21 | 700 million, you had that at the time when you | 16:00:28 |
| 22 | were in discussions with Pat, obviously, and the | 16:00:31 |
| 23 | time that you transferred that money to his | 16:00:33 |
| 24 | account. | 16:00:36 |
| 25 | A  These valuations were forward-looking for | 16:00:36 |

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                           151

| | | |
|---|---|---|
| 1 | a year after he was terminated. | 16:00:39 |
| 2 |    Q   Okay. | 16:00:40 |
| 3 |       MR. GILMORE:  Should we take a short | 16:00:46 |
| 4 | break? | 16:00:47 |
| 5 |       THE WITNESS:  I would like it. | 16:00:48 |
| 6 |       MR. MINSON:  Sure. | 16:00:49 |
| 7 |       THE VIDEOGRAPHER:  We are going off the | 16:00:49 |
| 8 | record.  The time is 4:00 p.m. | 16:00:50 |
| 9 |       (WHEREUPON, a recess was had.) | 16:13:20 |
| 10 |       THE VIDEOGRAPHER:  We are back on the | 16:13:20 |
| 11 | record.  The time is 4:13 p.m. | 16:13:30 |
| 12 | BY MR. MINSON: | 16:13:44 |
| 13 |    Q   So we previously discussed all the | 16:13:44 |
| 14 | investor bank reports that you had information on | 16:13:48 |
| 15 | during your negotiations with Pat. | 16:13:51 |
| 16 |       Where did the banks get data to prepare | 16:13:54 |
| 17 | these reports from? | 16:14:00 |
| 18 |       MR. GILMORE:  Objection, form, foundation. | 16:14:09 |
| 19 | BY THE WITNESS: | 16:14:10 |
| 20 |    A   What do you mean by "data"? | 16:14:11 |
| 21 | BY MR. MINSON: | 16:14:13 |
| 22 |    Q   So there are -- so I'm assuming -- this | 16:14:14 |
| 23 | might be wrong.  I'm assuming there's some | 16:14:16 |
| 24 | financial information that's ProPharma specific | 16:14:20 |
| 25 | that they would need and information about the | 16:14:25 |

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                              152

| | | |
|---|---|---|
| 1 | company that's ProPharma specific that they would | 16:14:28 |
| 2 | need in order to perform their valuations. | 16:14:30 |
| 3 | A  Yes. | 16:14:36 |
| 4 | Q  Is that true? | 16:14:36 |
| 5 | A  Yes. | 16:14:37 |
| 6 | Q  And does ProPharma provide that | 16:14:37 |
| 7 | information for them before they create those | 16:14:40 |
| 8 | investment decks? | 16:14:43 |
| 9 | A  They provide a limited amount of financial | 16:14:44 |
| 10 | information, such as revenue and EBITDA. | 16:14:47 |
| 11 | Q  Okay. | 16:14:50 |
| 12 | MR. MINSON:  I would like to enter in 32. | 16:15:25 |
| 13 | This is a list of questions from Centerview, I | 16:15:34 |
| 14 | believe.  Let me confirm that. | 16:15:40 |
| 15 | Yeah, ProPharma produced this list.  It is | 16:15:43 |
| 16 | PROPHARMA0000892.  So it's something that you | 16:15:47 |
| 17 | produced in discovery. | 16:15:52 |
| 18 | (WHEREUPON, a certain document was marked | 16:15:56 |
| 19 | Davis Deposition Exhibit No. 32, for | 16:15:56 |
| 20 | identification.) | 16:16:10 |
| 21 | BY MR. MINSON: | 16:16:10 |
| 22 | Q  And you eventually went with Centerview | 16:16:10 |
| 23 | for marketing the company.  And ahead of a | 16:16:14 |
| 24 | meeting, this list of questions was produced by | 16:16:21 |
| 25 | Centerview for ProPharma in order to take part in | 16:16:26 |

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                          153

| | | |
|---|---|---|
| 1 | a conference call. | 16:16:30 |
| 2 | Is any information from that conference | 16:16:33 |
| 3 | call memorialized in writing anywhere, or is that | 16:16:36 |
| 4 | just on the phone? | 16:16:40 |
| 5 | MR. GILMORE:  Objection, form, foundation. | 16:16:40 |
| 6 | BY THE WITNESS: | 16:16:43 |
| 7 | A  Can you ask that -- | 16:16:43 |
| 8 | BY MR. MINSON: | 16:16:44 |
| 9 | Q  So there's a -- I can show you the email. | 16:16:44 |
| 10 | I was trying to avoid too many exhibits, but I'll | 16:16:47 |
| 11 | just attach the email, too. | 16:16:51 |
| 12 | A  Can I just say, I wasn't on the call so... | 16:17:02 |
| 13 | Q  Oh, you weren't on the call.  Well, then, | 16:17:05 |
| 14 | that's that.  I was going to ask you if you could | 16:17:08 |
| 15 | provide the answers to the questions that were | 16:17:11 |
| 16 | asked in this document. | 16:17:13 |
| 17 | So -- but you do do a lot of valuation | 16:17:23 |
| 18 | work, correct?  Or you did do for ProPharma a lot | 16:17:27 |
| 19 | of valuation work? | 16:17:36 |
| 20 | MR. GILMORE:  Objection, form, foundation. | 16:17:37 |
| 21 | You can answer to the extent you're able | 16:17:43 |
| 22 | to. | 16:17:46 |
| 23 | BY THE WITNESS: | 16:17:47 |
| 24 | A  I review all the valuations for all our | 16:17:47 |
| 25 | companies on a quarterly basis of Linden and | 16:17:51 |

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                    154

| | | |
|---|---|---|
| 1 | ultimately must approve all valuations that we do | 16:17:55 |
| 2 | at Linden. | 16:17:59 |
| 3 | BY MR. MINSON: | 16:18:00 |
| 4 | Q  All right.  So can you tell me about | 16:18:00 |
| 5 | adjusted EBITDA?  What is -- what is the | 16:18:02 |
| 6 | distinction between EBITDA and adjusted EBITDA? | 16:18:05 |
| 7 | A  You said we only had an hour left. | 16:18:07 |
| 8 | Reported EBITDA for any company is based on | 16:18:22 |
| 9 | generally accepted accounting principles, or GAAP, | 16:18:24 |
| 10 | G-A-A-P, and that is by the accounting principles | 16:18:29 |
| 11 | of the United States. | 16:18:32 |
| 12 | That does not necessarily measure what | 16:18:33 |
| 13 | sophisticated investors will view as cash flow. | 16:18:39 |
| 14 | So EBITDA or -- it's pronounced many ways.  I say | 16:18:42 |
| 15 | EBITDA, but there are many accepted ways to say | 16:18:48 |
| 16 | it, is a measure of cash flow.  That's what that | 16:18:50 |
| 17 | is. | 16:18:54 |
| 18 | And as an investor, that is the | 16:18:55 |
| 19 | fundamental metric for how we evaluate businesses, | 16:18:57 |
| 20 | how much cash it generates. | 16:19:01 |
| 21 | Unadjusted EBITDA is simply by the laws -- | 16:19:03 |
| 22 | not laws -- by the accounting principles of the | 16:19:07 |
| 23 | United States as codified by some body. | 16:19:10 |
| 24 | Adjusted EBITDA tries to make adjustments | 16:19:13 |
| 25 | to more appropriately represent what an investor | 16:19:18 |

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                    155

| | | |
|---|---|---|
| 1 | would view as actual cash flow.  So I'll give you | 16:19:23 |
| 2 | one example. | 16:19:28 |
| 3 | If you have a hurricane hit your | 16:19:29 |
| 4 | warehouse, not relevant for ProPharma, and it | 16:19:31 |
| 5 | destroys the warehouse, and just for sake of | 16:19:35 |
| 6 | argument let's say it's in Illinois where we don't | 16:19:39 |
| 7 | have hurricanes, so it's a one-time item, you add | 16:19:42 |
| 8 | that back because that's not representative of | 16:19:45 |
| 9 | cash flow. | 16:19:47 |
| 10 | I had to think of an example, so that's an | 16:19:48 |
| 11 | example where you'd add back.  So there's lots of | 16:19:51 |
| 12 | add-backs to come up with an adjusted EBITDA. | 16:19:53 |
| 13 | Q  So did you use an adjusted EBITDA when you | 16:19:58 |
| 14 | valued Pat's shares? | 16:20:01 |
| 15 | A  Yes.  We always use adjusted EBITDA | 16:20:02 |
| 16 | numbers. | 16:20:07 |
| 17 | Q  And what adjustments did you make for | 16:20:07 |
| 18 | add-backs? | 16:20:10 |
| 19 | A  Well, I'd have to go back.  I can't recall | 16:20:10 |
| 20 | those.  But it is -- we would have chosen the | 16:20:13 |
| 21 | numbers reported by the board.  So it would have | 16:20:15 |
| 22 | been report -- not by the board, sorry, by the | 16:20:19 |
| 23 | company.  So we're given the numbers by the | 16:20:22 |
| 24 | company.  The company and the board typically have | 16:20:24 |
| 25 | a perspective on what is appropriate adjusted | 16:20:27 |

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                      156

| | | |
|---|---|---|
| 1 | EBITDA.  Pat would have agreed to that as a board | 16:20:31 |
| 2 | member. | 16:20:33 |
| 3 |      Generally speaking, we'd all have | 16:20:33 |
| 4 | discussions around what is correct adjusted EBITDA | 16:20:36 |
| 5 | over time, and that's what would have been | 16:20:39 |
| 6 | reported to Linden. | 16:20:41 |
| 7 |   Q  All right.  So but he didn't agree with | 16:20:42 |
| 8 | 33 -- was it 33 point -- | 16:20:48 |
| 9 |   A  Nine, I think, whatever. | 16:20:50 |
| 10 |   Q  33.9 EBITDA? | 16:20:52 |
| 11 |   A  Pat, as an accounting background and as a | 16:20:53 |
| 12 | board member, he would have absolutely carefully | 16:20:57 |
| 13 | read financial statements.  As long as he was on | 16:21:00 |
| 14 | the board, he would have absolutely been in | 16:21:02 |
| 15 | agreement with our adjustments, particularly, as I | 16:21:04 |
| 16 | believe his background is an accounting | 16:21:07 |
| 17 | background. | 16:21:08 |
| 18 |   Q  And were any of those adjustments to his | 16:21:09 |
| 19 | valuation communicated to him? | 16:21:13 |
| 20 |   A  They wouldn't have had to be.  He was a | 16:21:14 |
| 21 | board member, so he knew what adjusted EBITDA was. | 16:21:16 |
| 22 | He had the board decks. | 16:21:22 |
| 23 |   Q  What I'm talking about his incentive | 16:21:23 |
| 24 | equity valuation.  Was the background -- | 16:21:27 |
| 25 |   A  But he would have had -- we don't change | 16:21:29 |

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                    157

```
 1   the accepted adjustments.  So the company, to have     16:21:34
 2   financial performance be comparable quarter to         16:21:38
 3   quarter, the CFO, Rob Chestnut, and the board          16:21:43
 4   basically agree over time on what's the                16:21:49
 5   appropriate presentation of EBITDA.                    16:21:52
 6        And Pat, again, because of his background,        16:21:53
 7   would have absolutely been involved in those           16:21:56
 8   discussions.                                           16:21:59
 9      Q  So to answer my question, is it your            16:21:59
10   testimony that there were no different adjustments     16:22:03
11   made for Pat's valuation than already existed          16:22:07
12   prior to doing that valuation for his incentive        16:22:10
13   equity?                                                16:22:14
14        MR. GILMORE:  Objection, form, foundation.       16:22:14
15   BY THE WITNESS:                                        16:22:18
16      A  Yeah, that's asking me to -- I'd have to        16:22:18
17   look at every quarter to answer that question.        16:22:22
18   What I can tell you is that the valuation that we      16:22:25
19   gave him was the same valuation we gave all of our     16:22:28
20   institutional investors, or that...                    16:22:32
21   BY MR. MINSON:                                         16:22:39
22      Q  Despite the fact that you weren't on the        16:22:40
23   call, some of these questions regarding the            16:22:41
24   financial profile do relate to the valuation of       16:22:44
25   the -- both the company and Pat's incentive            16:22:53
```

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                    158

| | | |
|---|---|---|
| 1 | equity.  And so can you answer, under financial | 16:22:57 |
| 2 | profile on this exhibit -- | 16:23:02 |
| 3 | MR. MINSON:  That's Exhibit Number... | 16:23:07 |
| 4 | MS. REPORTER:  32. | 16:23:09 |
| 5 | THE WITNESS:  32. | 16:23:10 |
| 6 | BY MR. MINSON: | 16:23:15 |
| 7 | Q  -- how was the business trending for 2019 | 16:23:15 |
| 8 | versus the budget, and also how much revenue | 16:23:17 |
| 9 | visibility is there in 2020? | 16:23:20 |
| 10 | MR. GILMORE:  Hold on.  Objection, form | 16:23:22 |
| 11 | and foundation.  And, again, Counsel, I'll just | 16:23:25 |
| 12 | note for the record, this is another example of | 16:23:30 |
| 13 | where you're making a statement about what | 16:23:32 |
| 14 | evidence shows.  That is -- | 16:23:36 |
| 15 | MR. MINSON:  I'm -- | 16:23:38 |
| 16 | MR. GILMORE:  -- somewhat lengthy, and | 16:23:39 |
| 17 | then you ask him -- | 16:23:41 |
| 18 | MR. MINSON:  -- asking what's on this | 16:23:42 |
| 19 | document that he produced, that's all. | 16:23:44 |
| 20 | MR. GILMORE:  I think the record will | 16:23:45 |
| 21 | reflect that you said these questions here are | 16:23:46 |
| 22 | relevant for Mr. Donnelly's -- the valuation of | 16:23:48 |
| 23 | Mr. Donnelly's incentive equity, so now I'm going | 16:23:52 |
| 24 | to ask you some questions about it. | 16:23:55 |
| 25 | So I don't want the witness' answering | 16:23:56 |

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                    159

| | | |
|---|---|---|
| 1 | your question as an implicit -- to be read as an | 16:23:59 |
| 2 | implicit agreement with the premise that you state | 16:24:03 |
| 3 | that isn't part of a question. | 16:24:06 |
| 4 | You're just making these statements, and | 16:24:08 |
| 5 | you've done it a number of times throughout the | 16:24:10 |
| 6 | deposition. | 16:24:12 |
| 7 | So I object to the question and -- on form | 16:24:12 |
| 8 | and foundation, on those grounds, and -- | 16:24:16 |
| 9 | MR. MINSON:  I'll ask a different way. | 16:24:18 |
| 10 | MR. GILMORE:  That would be appropriate. | 16:24:20 |
| 11 | BY MR. MINSON: | 16:24:22 |
| 12 | Q  Centerview asked these questions of | 16:24:23 |
| 13 | ProPharma prior to creating their investment -- | 16:24:27 |
| 14 | investor deck for a call scheduled, as the | 16:24:32 |
| 15 | document shows, on October 22nd, 2019. | 16:24:37 |
| 16 | Given your information about ProPharma, | 16:24:41 |
| 17 | can you tell me the answer to question number two? | 16:24:45 |
| 18 | A  No, without -- not without looking at the | 16:24:52 |
| 19 | budget.  I have not memorized the budget for 2019. | 16:24:57 |
| 20 | Q  Okay. | 16:25:01 |
| 21 | MR. GILMORE:  Objection, form, foundation. | 16:25:03 |
| 22 | Just so the record is clear, Counsel, | 16:25:04 |
| 23 | there are four question number twos, so -- | 16:25:07 |
| 24 | MR. MINSON:  I'm sorry, question number | 16:25:10 |
| 25 | two under "Financial Profile," to make the record | 16:25:13 |

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                          160

| | | |
|---|---|---|
| 1 | clear. | 16:25:17 |
| 2 | MR. GILMORE:  Okay. | 16:25:18 |
| 3 | BY MR. MINSON: | 16:25:41 |
| 4 | Q  I think that's the only question I had for | 16:25:41 |
| 5 | that document. | 16:25:44 |
| 6 | I just have some general questions.  Did | 16:25:44 |
| 7 | the data that you would have provided to | 16:25:46 |
| 8 | investment banks match the financial data that you | 16:25:49 |
| 9 | provided in your offer to Pat? | 16:25:53 |
| 10 | A  That's not relevant because anything we've | 16:25:58 |
| 11 | given to the banks is forward-looking numbers to | 16:26:03 |
| 12 | provide a valuation for a year after he was | 16:26:05 |
| 13 | terminated. | 16:26:06 |
| 14 | Q  Right.  So the answer is no, then, it | 16:26:08 |
| 15 | didn't, because you're saying it -- | 16:26:11 |
| 16 | A  No, I'm not -- | 16:26:13 |
| 17 | Q  -- is that what you're saying? | 16:26:14 |
| 18 | A  -- saying they didn't match.  I'm saying | 16:26:16 |
| 19 | they're different bodies of data. | 16:26:19 |
| 20 | Q  Okay.  But it was different data? | 16:26:21 |
| 21 | A  Different time periods. | 16:26:22 |
| 22 | Q  Okay.  And in your experience, have you | 16:26:23 |
| 23 | ever sold a company on trailing numbers for | 16:26:37 |
| 24 | valuation purposes? | 16:26:39 |
| 25 | A  You don't know how the -- ultimately, the | 16:26:42 |

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                          161

| | | |
|---|---|---|
| 1 | buyers are looking at the numbers.  This is a | 16:26:47 |
| 2 | debate that one cannot solve of do you -- does the | 16:26:49 |
| 3 | buyer look at trailing EBITDA?  Are they looking | 16:26:55 |
| 4 | at forward?  Are they looking at run rate? | 16:26:59 |
| 5 | And every time you sell a company, you | 16:27:01 |
| 6 | have this debate with the investment banker, for | 16:27:04 |
| 7 | which there's no answer. | 16:27:06 |
| 8 | Because you'd have to go ask the buyer: | 16:27:07 |
| 9 | Are you trailing or un-trailing or forward?  The | 16:27:11 |
| 10 | bankers always want to sell it on forward.  The | 16:27:14 |
| 11 | buyers always want to buy it on trailing. | 16:27:18 |
| 12 | Q  And when you sold ProPharma, was it sold | 16:27:22 |
| 13 | on a trailing, or was it sold on a forward-looking | 16:27:25 |
| 14 | valuation? | 16:27:28 |
| 15 | A  You'd have to ask the buyer. | 16:27:28 |
| 16 | Q  Okay.  And for Pat's valuation, was that | 16:27:31 |
| 17 | on a trailing or forward-looking valuation? | 16:27:34 |
| 18 | A  That was on a trailing valuation. | 16:27:36 |
| 19 | Q  And a trailing valuation is generally | 16:27:38 |
| 20 | going to be lower, correct? | 16:27:42 |
| 21 | A  Depends on the performance of the company. | 16:27:43 |
| 22 | Q  Well, if the company is doing well. | 16:27:44 |
| 23 | A  Mathematically, if the company's revenue | 16:27:47 |
| 24 | and EBITDA is increasing, then it will increase | 16:27:51 |
| 25 | over time. | 16:27:55 |

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                        162

```
1      Q   Okay.  And regarding the valuation that        16:27:55
2   was provided to Pat -- I believe it was both the      16:29:31
3   $684,000 number and the $105,000 number -- were       16:29:34
4   those numbers ever reviewed by the board of           16:29:43
5   ProPharma?                                            16:29:47
6      A   The -- there was discussions among the         16:29:48
7   board on what Pat should get.  Again, our CEO at      16:29:52
8   the time wanted him to get nothing.  Of course, he    16:29:58
9   was legally owed $105,000, so that was what we        16:30:00
10  legally owed him.  That was his vested shares.        16:30:04
11  Everything else was unvested.  And anything above     16:30:06
12  that was at our sole discretion because it was        16:30:09
13  unvested.  And while we were trying to be very        16:30:15
14  generous with him, he rejected that generosity.       16:30:18
15     Q   Okay.  Was it ever brought to the board as     16:30:22
16  a body?                                               16:30:26
17     A   There were discussions with subsets of the     16:30:27
18  board around valuation and when he was -- around      16:30:31
19  what the valuations were.                             16:30:37
20     Q   Is there a board resolution that approves      16:30:38
21  of that valuation?                                    16:30:45
22     A   I don't believe we're required to have a       16:30:46
23  board resolution.                                     16:30:48
24     Q   Did the board ever meet on his valuation?      16:30:48
25     A   There were discussions on his valuation.       16:30:51
```

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                    163

| | | |
|---|---|---|
| 1 | We're not required to have a specific meeting. | 16:30:55 |
| 2 | Q  So I'm going to ask my question again | 16:30:57 |
| 3 | because you didn't really answer.  You said you're | 16:31:00 |
| 4 | not required. | 16:31:02 |
| 5 | But is there a board resolution regarding | 16:31:03 |
| 6 | the valuation of Pat's incentive equity? | 16:31:06 |
| 7 | A  I do not recall that there's a board | 16:31:08 |
| 8 | resolution. | 16:31:11 |
| 9 | Q  Okay.  And was there a meeting on a | 16:31:11 |
| 10 | board -- among the board? | 16:31:17 |
| 11 | A  I don't recall a specific meeting around | 16:31:20 |
| 12 | his valuation.  We did have board meetings during | 16:31:23 |
| 13 | this process during which I'm sure it was | 16:31:26 |
| 14 | discussed. | 16:31:28 |
| 15 | Q  In preparing for this deposition, did you | 16:31:49 |
| 16 | review board communications and minutes regarding | 16:31:51 |
| 17 | his -- Pat's removal and/or valuation of incentive | 16:31:54 |
| 18 | equity? | 16:32:00 |
| 19 | MR. GILMORE:  Objection, Counsel.  That -- | 16:32:00 |
| 20 | the selection of documents that Mr. Davis reviewed | 16:32:03 |
| 21 | to prepare for today's deposition reflects | 16:32:07 |
| 22 | attorney-client privilege and work product, so I'm | 16:32:11 |
| 23 | instructing the witness not to answer those | 16:32:13 |
| 24 | questions. | 16:32:15 |
| 25 | MR. MINSON:  And -- okay. | 16:32:17 |

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                    164

| | | |
|---|---|---|
| 1 | BY MR. MINSON: | 16:32:19 |
| 2 | Q  Well, as you sit here today, you cannot | 16:32:19 |
| 3 | answer whether or not there was ever a board | 16:32:22 |
| 4 | resolution regarding the valuation of Pat | 16:32:26 |
| 5 | Donnelly's incentive equity? | 16:32:31 |
| 6 | MR. GILMORE:  Objection, asked and | 16:32:32 |
| 7 | answered.  I think he just answered that question. | 16:32:33 |
| 8 | MR. MINSON:  He said he can't recall.  I'm | 16:32:36 |
| 9 | just making sure that's his testimony, that he | 16:32:38 |
| 10 | doesn't remember. | 16:32:40 |
| 11 | MR. GILMORE:  You can answer -- | 16:32:41 |
| 12 | BY MR. MINSON: | 16:32:42 |
| 13 | Q  Is that your -- | 16:32:43 |
| 14 | MR. GILMORE:  -- question again. | 16:32:44 |
| 15 | BY THE WITNESS: | 16:32:45 |
| 16 | A  I don't recall whether there was a | 16:32:45 |
| 17 | resolution or not. | 16:32:46 |
| 18 | MR. MINSON:  Okay.  Fine.  That's all I | 16:32:57 |
| 19 | have. | 16:32:59 |
| 20 | MR. GILMORE:  No questions. | 16:32:59 |
| 21 | THE VIDEOGRAPHER:  This marks the end of | 16:33:00 |
| 22 | the deposition of Anthony Davis.  We are going off | 16:33:04 |
| 23 | the record at 4:33 p.m. | 16:33:08 |
| 24 | (WHEREUPON, the deposition was concluded | 16:33:08 |
| 25 | at 4:33 p.m.) | 16:33:08 |

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                    165

```
1              ACKNOWLEDGMENT OF DEPONENT

2         I, Anthony DAVIS, do hereby acknowledge

3    that I have read and examined the foregoing

4    testimony and the same is a true, correct, and

5    complete transcription of the testimony given by

6    me and any corrections appear on the attached

7    errata sheet signed by me.

8

9    _____    _____

10        (SIGNATURE)                    (DATE)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                    166

```
 1      C E R T I F I C A T E   O F   R E P O R T E R

 2

 3           I, MICHELLE M. YOHLER, a Certified

 4      Shorthand Reporter within and for the County of

 5      Will, State of Illinois, do hereby certify:

 6           That previous to the commencement of the

 7      examination of the witness, the witness was duly

 8      sworn to testify the whole truth concerning the

 9      matters herein;

10           That the foregoing deposition transcript

11      was reported stenographically by me, was

12      thereafter reduced to typewriting under my

13      personal direction and constitutes a true record

14      of the testimony given and the proceedings had;

15           That the said deposition was taken

16      remotely before me at the time and place

17      specified;

18           That I am not a relative or employee or

19      attorney or counsel, nor a relative or employee of

20      such attorney or counsel for any of the parties

21      hereto, nor interested directly or indirectly in

22      the outcome of this action.

23

24

25
```

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                              167

1            IN WITNESS WHEREOF, I do hereunto set my

2       hand and affix my seal of office at Chicago,

3       Illinois, this 15th day of September, 2022.

4

5

6

7

8       _____

9       Michelle M. Yohler, CSR, RMR, CRR

10      Certified Shorthand Reporter

11      CSR No.:  84-4531

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                                   168

**A**

**a-d-v-a-r-r-a**
15:3
**abbreviated**
114:7, 114:15,
115:3
**able**
47:19, 84:8,
136:18, 153:21
**about**
10:14, 11:3,
13:22, 14:16,
17:13, 20:20,
24:6, 24:18,
24:20, 27:20,
29:8, 38:25,
45:1, 47:11,
47:13, 47:14,
50:9, 51:9,
52:5, 53:3,
53:4, 53:22,
59:7, 59:15,
62:7, 62:8,
62:9, 62:13,
64:14, 65:12,
66:11, 66:22,
68:15, 69:22,
72:19, 73:16,
74:7, 74:9,
74:21, 75:9,
75:11, 77:2,
77:21, 84:1,
85:6, 85:17,
86:8, 86:17,
86:18, 86:19,
87:1, 88:7,
89:18, 89:19,
89:21, 91:9,
93:5, 93:11,
94:22, 95:10,
95:12, 96:18,
101:8, 105:20,
110:6, 110:7,
110:22, 111:3,
113:23, 114:11,
115:7, 116:4,
116:12, 122:2,

123:12, 130:25,
131:14, 133:16,
135:7, 138:1,
139:11, 142:9,
142:12, 142:17,
143:3, 149:4,
151:25, 154:4,
156:23, 158:13,
158:24, 159:16
**above**
110:9, 148:18,
162:11
**absolute**
126:14
**absolutely**
53:2, 120:13,
127:14, 156:12,
156:14, 157:7
**absurd**
130:22
**academic**
98:11
**accepted**
154:9, 154:15,
157:1
**access**
48:7
**accommodating**
78:21, 111:7
**account**
108:9, 150:24
**accounting**
154:9, 154:10,
154:22, 156:11,
156:16
**accounts**
39:19
**accurate**
12:7, 83:3,
149:16
**ach**
24:9
**acknowledge**
74:1, 133:10,
165:2
**acknowledged**
25:6, 25:21,
26:14, 33:2,

33:12, 33:21,
33:22, 38:16,
40:4, 53:21,
54:21, 54:23,
66:17, 67:18,
119:21, 132:9,
133:7, 133:24
**acknowledgement**
133:18
**acknowledges**
55:1, 71:23,
95:21
**acknowledging**
31:20, 32:7,
71:6
**acknowledgment**
165:1
**acquire**
13:10, 85:16
**acquired**
12:8, 13:4
**acquirer**
77:25
**acquiring**
12:16, 12:24
**acquisition**
12:18, 14:10,
61:25
**acquisitions**
13:12, 13:18,
13:19, 61:23,
62:9
**across**
141:24
**acting**
45:15
**action**
166:22
**actual**
27:25, 126:23,
143:11, 155:1
**actually**
14:18, 43:10,
59:25, 61:6,
61:12, 62:13,
77:12, 77:22,
80:18, 87:17,
87:23, 88:1,

95:9, 98:16,
100:17, 101:4,
110:4, 110:8,
116:24, 120:1,
122:23, 125:10,
126:22, 127:5,
128:3, 129:16,
129:19, 130:24,
135:14, 143:14,
149:9
**add**
38:6, 38:23,
54:24, 114:7,
155:7, 155:11
**add-backs**
155:12, 155:18
**added**
146:20, 147:1
**adding**
104:5, 104:6
**additionally**
24:5
**additive**
56:8, 88:13
**address**
76:8
**adds**
104:11
**adjusted**
146:10, 147:4,
154:5, 154:6,
154:24, 155:12,
155:13, 155:15,
155:25, 156:4,
156:21
**adjustments**
154:24, 155:17,
156:15, 156:18,
157:1, 157:10
**admit**
66:5, 124:24
**admits**
65:15
**advance**
81:1, 105:23
**advantage**
27:14, 27:16,
27:17

Transcript of Anthony Davis, Designated Representative
September 12, 2022

169

advantageous
27:11
advarra
6:7, 6:9,
14:25, 15:3,
27:12, 27:18,
27:21, 27:23,
28:1, 28:5,
28:9, 61:19,
61:20, 62:2,
63:4, 63:6,
75:2, 76:9,
76:13, 77:18,
77:25, 83:1,
84:10, 85:7,
85:14, 85:21,
85:24, 87:19,
88:4, 88:9,
88:14, 89:11,
90:4, 90:13,
92:4, 101:23,
115:11, 115:14,
120:21, 136:25,
137:1, 137:3,
137:5, 138:1,
138:2, 138:4,
138:6, 138:8,
138:12, 138:13,
138:20, 139:13,
139:18
advarra's
91:18
advice
88:11
advisor
88:17
affiliated
20:15
affiliates
19:18, 21:21,
21:24
affirmative
5:13
affix
167:2
after
26:2, 29:22,
36:21, 41:18,

43:25, 68:18,
75:9, 142:17,
143:7, 151:1,
160:12
again
21:3, 45:12,
67:17, 68:11,
83:7, 83:9,
88:12, 95:20,
104:25, 108:18,
115:24, 141:20,
142:2, 142:11,
147:13, 148:12,
149:12, 157:6,
158:11, 162:7,
163:2, 164:14
against
145:20
agenda
90:24, 91:8
agendas
90:22, 90:23
agent
102:5
aggressively
120:13
ago
13:1, 24:8,
38:8
agree
19:20, 21:16,
21:19, 24:1,
25:16, 25:19,
36:5, 37:6,
51:5, 52:14,
83:2, 93:20,
156:7, 157:4
agreed
20:10, 53:1,
53:20, 84:18,
156:1
agreeing
83:6, 83:8
agreement
4:20, 4:23,
5:9, 6:19, 14:6,
14:8, 14:15,
14:19, 14:24,

15:1, 18:12,
23:3, 24:24,
25:17, 35:23,
42:19, 43:1,
43:3, 43:14,
43:20, 43:21,
44:2, 46:9,
48:8, 48:22,
48:25, 49:5,
58:18, 58:19,
58:24, 72:25,
73:5, 92:25,
117:23, 117:25,
118:6, 118:16,
145:20, 156:15,
159:2
agreements
44:21, 70:7,
70:8, 70:9
agrees
83:1, 126:15,
126:21
ahead
142:24, 152:23
ai
18:19
akin
140:20
alerted
25:1
all
9:8, 9:14,
15:23, 29:22,
29:23, 45:19,
46:14, 50:15,
53:6, 62:5,
64:19, 71:20,
73:1, 73:2,
79:7, 83:21,
84:21, 87:6,
87:13, 91:5,
92:19, 95:16,
96:1, 97:10,
97:21, 105:10,
106:16, 110:22,
111:1, 115:6,
115:10, 116:4,
118:12, 119:22,

121:17, 122:21,
125:9, 131:4,
131:5, 133:14,
133:20, 135:1,
135:23, 136:7,
139:25, 142:16,
142:18, 143:5,
143:9, 143:11,
143:21, 146:2,
149:5, 150:19,
151:13, 153:24,
154:1, 154:4,
156:3, 156:7,
157:19, 158:19,
164:18
all-encompassing
91:2
allegation
36:2, 66:5
allegations
36:18, 36:20,
36:21
alleged
24:12
alleges
24:15
alleging
23:20, 23:21
allow
120:4
allowed
94:3, 142:21
almost
111:2, 111:9
along
34:3, 83:10,
83:14
already
25:1, 27:18,
27:23, 32:3,
32:24, 53:20,
70:25, 116:25,
133:13, 133:16,
133:25, 157:11
also
3:20, 10:1,
13:20, 14:2,
21:5, 23:8,

Transcript of Anthony Davis, Designated Representative
September 12, 2022
170

23:21, 24:15,
24:17, 31:24,
33:5, 33:23,
42:13, 46:22,
51:9, 51:19,
53:14, 57:8,
58:10, 63:4,
64:7, 76:9,
78:17, 79:10,
83:5, 85:20,
86:16, 90:2,
95:16, 100:3,
108:10, 112:9,
126:6, 130:2,
135:16, 143:17,
158:8
**although**
11:16, 55:16,
61:19, 72:24,
77:16, 120:9,
130:11
**always**
28:24, 116:21,
120:23, 125:21,
155:15, 161:10,
161:11
**amenable**
78:20
**amend**
145:17
**amended**
4:9, 5:14,
17:25, 18:11,
34:17, 65:7
**among**
72:3, 162:6,
163:10
**amount**
103:2, 114:21,
125:24, 127:17,
152:9
**amounts**
23:14
**analyses**
98:21
**analysis**
98:14, 99:1,
99:8, 99:9

**angry**
77:21, 80:4,
121:22
**annual**
93:2, 97:12
**annually**
113:13
**another**
19:4, 30:1,
33:7, 44:5,
83:21, 89:7,
98:4, 133:9,
158:12
**answer**
5:12, 16:5,
16:7, 16:23,
20:23, 32:19,
47:18, 66:4,
68:14, 72:18,
79:17, 86:13,
88:3, 88:18,
133:19, 133:21,
133:23, 135:6,
142:22, 144:16,
145:17, 153:21,
157:9, 157:17,
158:1, 159:17,
160:14, 161:7,
163:3, 163:23,
164:3, 164:11
**answered**
83:12, 164:7
**answering**
158:25
**answers**
9:15, 65:6,
153:15
**antagonistic**
71:4, 78:5,
79:12, 80:3
**anthony**
1:15, 2:1, 4:4,
8:3, 9:3, 11:7,
65:11, 164:22,
165:2
**anticipate**
29:1, 93:2
**any**
9:18, 12:17,

12:23, 16:16,
16:17, 19:18,
20:4, 20:15,
21:21, 21:22,
21:23, 26:4,
30:12, 31:8,
31:16, 34:2,
38:10, 41:6,
45:6, 53:2,
53:24, 55:4,
57:11, 71:25,
76:6, 78:18,
79:5, 81:6,
82:24, 84:9,
85:14, 85:21,
91:20, 93:1,
98:13, 110:14,
115:6, 122:24,
123:4, 130:15,
130:22, 133:17,
137:4, 141:7,
149:16, 153:2,
154:8, 156:18,
165:6, 166:20
**anybody**
86:6
**anyone**
113:5, 133:11,
133:24
**anything**
64:5, 82:25,
160:10, 162:11
**anywhere**
28:14, 39:16,
138:13, 153:3
**apartment**
102:7
**apologies**
80:22
**apologize**
11:10, 81:15
**apparently**
29:7, 37:8
**appear**
52:24, 125:9,
165:6
**appendix**
6:12

**apples**
108:25
**applicable**
95:19, 99:10,
101:16
**applied**
97:6, 97:15
**applies**
146:2
**apply**
97:10, 129:25,
145:20
**appoint**
20:8
**appointed**
20:11, 20:12
**appreciate**
63:14
**approach**
118:7
**approached**
123:25
**appropriate**
23:22, 70:14,
149:2, 155:25,
157:5, 159:10
**appropriately**
148:21, 154:25
**approve**
105:3, 154:1
**approves**
162:20
**approximately**
12:11, 23:14,
137:17
**april**
86:5, 87:8
**arbitrarily**
130:8
**arbitration**
29:25, 34:4
**area**
12:1
**aren't**
122:13, 143:1
**argued**
27:13, 27:16,
28:7, 120:23

Transcript of Anthony Davis, Designated Representative
September 12, 2022

171

**arguing**
24:1, 26:2,
27:11
**argument**
26:8, 36:14,
155:6
**argumentative**
46:15, 57:3
**argumentive**
26:20
**arise**
83:18
**arms**
50:8
**arose**
84:9
**around**
38:18, 65:18,
66:7, 66:10,
79:5, 86:1,
86:4, 89:12,
110:5, 111:11,
112:12, 121:23,
138:11, 140:22,
156:4, 162:18,
163:11
**arrive**
100:14, 113:8
**arrived**
104:17
**article**
76:4
**asked**
20:24, 26:15,
45:24, 60:24,
60:25, 61:2,
77:24, 111:18,
112:14, 122:5,
132:6, 153:16,
159:12, 164:6
**asking**
27:1, 32:15,
38:6, 46:16,
52:7, 54:21,
60:8, 60:14,
74:21, 108:14,
122:12, 122:13,
133:17, 135:6,

144:18, 144:19,
157:16, 158:18
**asks**
26:3
**aspect**
90:23, 91:12
**aspects**
57:17
**assertion**
49:4
**assessment**
83:4
**assistance**
71:20
**assistant**
49:13
**assistants**
40:5, 42:1,
42:3
**associate**
44:19
**assume**
41:24, 43:13
**assumes**
45:9
**assuming**
80:24, 82:18,
86:2, 92:19,
108:11, 108:19,
142:20, 143:13,
151:22, 151:23
**attach**
34:25, 53:18,
118:1, 118:4,
153:11
**attached**
29:24, 29:25,
30:5, 30:14,
35:6, 37:21,
52:4, 52:5,
52:20, 52:21,
52:24, 53:10,
53:12, 53:15,
53:16, 80:23,
99:23, 100:3,
109:20, 117:23,
118:13, 118:17,
165:6

**attachment**
77:7, 107:10
**attachments**
51:20, 52:1,
52:22, 52:23,
72:21, 72:22,
116:24
**attending**
71:20
**attention**
65:8, 72:6,
89:5
**attorney**
9:12, 20:21,
22:5, 33:6,
166:19, 166:20
**attorney-client**
163:22
**attorneys**
33:5, 33:23,
42:4, 44:23,
45:13
**attributes**
57:8
**audit**
42:20, 43:25
**audited**
95:24, 97:11,
113:13, 121:9
**auditors**
97:12
**august**
30:23, 65:11,
65:18, 65:21,
66:8, 66:10,
66:14, 67:16,
68:15
**austin**
3:21, 8:12
**authority**
16:7
**available**
145:6
**average**
129:12, 129:13,
129:20, 129:21,
130:13
**avoid**
78:18, 153:10

**avoided**
73:25
**aware**
22:24, 24:5,
41:2, 54:13,
55:7, 55:10,
81:6
**awareness**
135:3
**away**
41:24

---

**B**

**b) (6**
46:18, 46:19,
49:8, 81:12
**b2**
98:22
**back**
19:22, 39:6,
42:3, 43:4,
44:20, 48:1,
51:2, 53:21,
72:6, 73:24,
74:16, 76:16,
78:7, 81:19,
82:21, 96:10,
96:16, 103:17,
105:24, 105:25,
114:14, 120:12,
121:21, 125:1,
136:21, 147:6,
149:3, 151:10,
155:8, 155:11,
155:19
**background**
113:24, 156:11,
156:16, 156:17,
156:24, 157:6
**bad**
120:18, 138:17,
150:10
**bank**
28:12, 124:8,
124:12, 124:23,
132:19, 151:14
**banker**
13:6, 124:20,

Transcript of Anthony Davis, Designated Representative
September 12, 2022

172

130:8, 131:7,
131:8, 131:25,
132:1, 147:23,
161:6
**bankers**
28:23, 29:2,
125:22, 130:19,
131:3, 161:10
**banking**
26:6, 95:16,
122:17, 123:11,
147:15, 149:6
**banks**
28:18, 103:18,
122:1, 122:5,
122:21, 125:21,
130:10, 130:15,
137:4, 143:23,
149:17, 150:9,
150:17, 151:16,
160:8, 160:11
**bar**
141:24
**barely**
29:20
**base**
22:25, 136:15
**based**
23:13, 32:16,
43:18, 47:18,
59:2, 68:14,
78:25, 79:1,
79:2, 84:9,
86:11, 102:10,
122:22, 127:6,
135:1, 136:14,
142:14, 144:6,
154:8
**basically**
50:10, 85:5,
114:23, 126:13,
136:14, 157:4
**basis**
17:17, 23:5,
31:12, 63:9,
63:16, 97:12,
106:20, 108:21,
109:6, 144:5,

153:25
**bates**
22:19, 68:23,
69:14, 112:13,
128:10, 128:12,
128:18, 148:23,
149:3
**bates-labeled**
22:21, 26:1,
92:23
**bates-stamp**
89:6, 126:7
**bates-stamped**
80:16, 82:16,
125:16, 146:6
**bathroom**
9:19
**bear**
108:15, 124:22
**beato**
3:13
**became**
13:21, 14:25,
27:12, 61:7,
61:9, 62:4,
75:2, 78:5, 80:3
**because**
14:20, 26:18,
37:11, 46:4,
51:25, 53:19,
61:19, 63:3,
66:20, 69:13,
70:20, 71:3,
77:18, 78:22,
85:6, 86:4,
86:24, 88:14,
89:23, 96:5,
100:12, 101:7,
102:12, 102:19,
108:16, 110:11,
111:3, 111:8,
116:23, 118:11,
119:20, 121:13,
123:18, 124:10,
126:18, 131:25,
133:20, 134:11,
135:7, 135:17,
135:18, 136:20,

138:4, 139:16,
139:21, 140:25,
141:21, 142:7,
143:22, 146:25,
148:10, 148:14,
149:6, 155:8,
157:6, 160:10,
160:15, 161:8,
162:12, 163:3
**become**
59:22
**becomes**
79:6, 80:4
**becoming**
79:12
**been**
9:4, 14:20,
22:25, 24:10,
24:20, 27:8,
27:14, 28:14,
31:21, 38:24,
41:1, 47:8,
54:21, 56:11,
59:23, 59:25,
60:8, 60:14,
62:3, 63:24,
66:22, 66:24,
72:13, 74:8,
75:7, 76:10,
78:10, 78:14,
82:25, 95:14,
95:23, 97:16,
101:2, 101:3,
101:4, 115:12,
118:11, 119:20,
121:16, 127:19,
129:6, 139:9,
143:6, 143:7,
145:6, 145:7,
155:22, 156:5,
156:14, 157:7
**before**
2:4, 22:16,
25:14, 32:17,
35:22, 38:15,
45:4, 52:23,
59:5, 78:23,
86:13, 93:2,

101:5, 106:9,
118:14, 120:21,
126:6, 147:16,
152:7, 166:16
**began**
58:5, 80:6
**begging**
56:11, 59:23
**begin**
11:19
**beginning**
12:8
**begins**
8:2
**behalf**
3:3, 3:11,
8:19, 8:22, 22:3
**being**
14:9, 22:7,
24:2, 24:7,
31:24, 33:5,
41:10, 54:3,
54:6, 57:19,
60:3, 73:20,
73:21, 73:25,
74:2, 83:11,
84:20, 92:3,
93:3, 95:11,
97:13, 110:20,
113:2, 113:17,
116:12, 120:10,
121:2
**believe**
11:2, 28:8,
32:1, 35:7,
38:14, 40:12,
45:15, 63:7,
74:19, 75:22,
84:8, 87:16,
95:24, 116:25,
123:9, 124:18,
125:11, 131:2,
133:23, 136:3,
136:19, 137:3,
139:3, 142:7,
143:19, 152:14,
156:16, 162:2,
162:22

**believed**
56:7, 84:11, 88:13
**believing**
109:24
**belligerently**
120:23
**below**
44:2, 48:20, 80:20, 107:10, 109:10, 129:16, 129:21
**benefit**
120:24
**bennett**
42:14, 43:16, 48:20
**besides**
35:19, 133:11
**best**
92:1, 102:10, 131:23, 131:24
**better**
15:11, 86:11, 91:23, 118:7, 121:13, 139:18
**between**
10:19, 12:3, 40:20, 42:13, 44:18, 49:21, 54:14, 57:20, 64:15, 67:3, 74:20, 82:13, 86:3, 86:10, 89:10, 90:4, 112:9, 119:2, 119:3, 119:6, 125:9, 125:25, 126:19, 130:16, 154:6
**beyond**
85:14, 115:9
**big**
20:1, 20:2, 31:23, 98:23, 98:24, 140:21
**bigger**
76:6, 138:6,

139:18
**bill**
136:9, 136:16
**billion**
102:21
**biomedical**
140:12, 140:13
**bit**
43:23, 76:4, 76:9, 77:2, 85:17, 99:3, 118:11, 130:25
**blair**
6:24, 124:15, 124:18, 146:4
**blurry**
141:22
**boards**
60:4, 74:4, 91:6
**bodies**
160:19
**body**
154:23, 162:16
**book**
136:7
**books**
100:23, 130:5
**borne**
138:8
**both**
21:8, 23:19, 40:10, 59:22, 60:5, 60:18, 61:10, 61:25, 85:7, 86:3, 89:23, 92:3, 92:7, 157:25, 162:2
**bottom**
22:19, 22:23, 112:24
**bought**
139:19
**boulevard**
3:6
**boy**
130:25

**bps**
63:8
**break**
9:13, 9:17, 38:23, 74:10, 96:4, 151:4
**brianna**
71:17, 71:18, 133:11
**bridge**
111:17
**briefly**
101:7
**bring**
122:18
**brings**
85:11
**broad**
67:6, 67:12, 138:4, 139:7, 139:10
**broader**
89:21
**brought**
56:20, 139:12, 162:15
**bucks**
94:7, 148:15
**budget**
158:8, 159:19
**bullshit**
143:5
**bunch**
71:10, 102:9, 102:10
**business**
10:14, 21:7, 39:18, 44:11, 49:1, 49:6, 49:12, 49:14, 57:18, 61:21, 62:1, 85:17, 89:12, 91:13, 115:21, 115:22, 116:7, 116:8, 116:10, 122:6, 122:14, 123:10, 136:10, 136:13,

136:15, 138:3, 138:5, 138:10, 140:24, 158:7
**businesses**
28:3, 61:20, 61:25, 140:25, 154:19
**buy**
43:4, 51:2, 87:20, 88:9, 131:23, 161:11
**buyer**
19:13, 19:17, 20:14, 21:17, 21:21, 36:1, 36:2, 161:3, 161:8, 161:15
**buyers**
123:9, 123:19, 123:21, 123:25, 161:1, 161:11
**buying**
88:10, 88:14, 131:7, 131:10, 131:21
**buyout**
112:16

**C**

**ca**
8:8
**calculation**
41:5, 43:14, 43:17
**calculations**
113:22
**call**
33:2, 68:9, 72:7, 72:9, 73:22, 76:17, 76:18, 76:19, 89:9, 120:5, 153:1, 153:3, 153:12, 153:13, 157:23, 159:14
**called**
9:4, 32:18
**calling**
16:10

Transcript of Anthony Davis, Designated Representative
September 12, 2022

174

calls
20:18, 32:14,
51:8, 51:15,
73:25
cambodia
76:18
came
29:6, 75:9
can't
16:23, 37:8,
145:22, 155:19,
164:8
cannot
70:22, 102:23,
161:2, 164:2
cantor
6:20, 125:10,
125:15, 126:13
cap
114:7, 114:12,
114:15, 114:18,
114:25, 115:3,
140:7
capable
36:3
capacity
11:5, 31:10,
46:17, 49:10
capital
10:8, 10:9,
10:15, 11:18,
11:19, 12:3,
68:25, 100:20,
105:17, 121:3,
145:5
capitalization
114:12, 114:18
capsugel
137:21, 140:8,
140:10, 140:13
card
136:11
care
11:25, 13:25
careful
113:17, 138:23,
145:8
carefully
156:12

carrier
136:8
case
8:8, 10:3,
31:16, 83:20,
148:3, 148:14
cash
93:3, 98:6,
98:8, 98:10,
98:14, 154:13,
154:16, 154:20,
155:1, 155:9
casual
85:14
cause
20:6
cc'd
49:22
cdmo
5:22
cell
136:8
centerview
6:21, 124:14,
124:15, 124:16,
124:17, 124:19,
127:23, 128:2,
128:14, 130:20,
131:19, 131:25,
152:13, 152:22,
152:25, 159:12
central
8:10
ceo
14:21, 14:25,
16:13, 16:24,
27:12, 27:20,
56:11, 59:23,
60:14, 61:5,
75:2, 79:13,
82:14, 83:5,
84:9, 90:13,
91:2, 91:4,
91:8, 91:17,
162:7
certain
17:21, 22:8,
29:13, 30:17,

34:13, 40:16,
42:8, 46:18,
48:14, 50:2,
55:21, 58:12,
62:19, 65:2,
67:22, 71:13,
75:18, 80:11,
82:9, 85:1,
89:1, 92:14,
96:22, 99:18,
107:2, 112:4,
118:22, 125:4,
152:18
certainly
28:21, 55:16,
57:8, 57:15,
57:25, 79:21
certified
2:5, 166:3,
167:10
certify
166:5
cessation
93:7
cetera
60:4, 70:23
cfo
44:17, 44:19,
44:24, 48:23,
157:3
cfo's
48:3
chain
4:11, 4:19,
4:22, 5:3, 5:10,
5:16, 5:18,
5:21, 6:3, 6:5,
6:6, 6:8, 6:16,
6:17, 39:13,
39:16, 42:12,
42:14, 48:5,
48:19, 73:10,
112:9, 140:1
chairmen
10:23
change
101:18, 110:18,
119:10, 144:21,

156:25
changed
115:25
changes
83:14
chart
57:22
chasing
82:25
check
35:7, 35:14
checking
35:13
chestnut
40:21, 41:8,
42:13, 43:11,
43:24, 44:4,
44:10, 44:16,
48:7, 48:23,
157:3
chicago
2:3, 8:15,
167:2
chief
40:21, 41:14,
91:11
chinese
5:23
choice
76:7
choose
113:7, 138:19,
139:1, 139:6
chose
102:14, 131:24
chosen
130:8, 155:20
circled
127:17
claim
39:20
clarification
14:22, 38:9
clarify
32:10, 92:11
clear
48:5, 61:9,
79:17, 111:4,

Transcript of Anthony Davis, Designated Representative
September 12, 2022

175

126:17, 132:19,
159:22, 160:1
**clearly**
69:13, 89:19,
94:25, 122:17,
130:13, 131:18,
139:2
**clients**
22:24, 24:5
**clinical**
76:12
**close**
93:2, 102:8,
116:5, 135:11,
138:13
**closing**
81:2, 89:8,
93:3
**codified**
154:23
**cohen**
68:4, 80:16,
107:7, 107:17
**cold**
140:1
**collectively**
19:17, 21:20,
84:11, 84:14
**colloquial**
9:21
**come**
42:2, 79:8,
100:25, 101:25,
102:3, 106:18,
123:8, 137:10,
137:14, 137:19,
155:12
**comes**
120:12, 121:21
**coming**
48:19, 60:23,
136:16, 138:3
**command**
142:5
**commencement**
166:6
**comment**
63:24, 73:23

**commentary**
86:16
**comments**
64:2, 74:3
**common**
103:22, 103:23,
103:24, 104:2,
109:13, 109:21,
109:22
**communicated**
25:21, 33:1,
55:8, 55:11,
156:19
**communication**
40:1, 44:18,
47:13, 54:8,
54:14
**communications**
12:18, 47:11,
163:16
**comp**
138:12, 138:16,
138:17, 138:22,
138:24, 138:25,
139:13, 139:15,
139:16, 139:23
**companies**
13:25, 15:24,
96:2, 97:10,
98:4, 102:11,
102:12, 102:13,
102:14, 102:24,
103:3, 103:4,
115:20, 121:18,
123:14, 128:16,
129:1, 135:23,
136:7, 139:7,
139:23, 139:25,
140:2, 140:18,
149:13, 153:25
**company**
11:18, 13:7,
13:10, 16:17,
18:12, 28:25,
44:17, 44:25,
45:6, 46:4,
46:5, 57:9,
57:13, 58:21,

59:3, 77:19,
88:15, 88:17,
95:22, 98:25,
99:7, 101:17,
101:23, 101:24,
102:15, 102:16,
102:17, 102:18,
102:22, 103:1,
103:15, 114:13,
115:16, 115:19,
116:11, 120:15,
122:1, 122:10,
122:11, 122:16,
122:22, 123:6,
127:5, 127:7,
127:11, 129:14,
130:14, 130:21,
131:23, 135:9,
136:1, 136:4,
136:6, 139:16,
139:18, 140:12,
143:4, 143:7,
145:19, 145:25,
147:14, 147:17,
148:1, 148:14,
149:18, 150:7,
150:12, 150:15,
150:17, 150:20,
152:1, 152:23,
154:8, 155:23,
155:24, 157:1,
157:25, 160:23,
161:5, 161:21,
161:22
**company's**
103:15, 161:23
**comparable**
28:4, 98:21,
98:25, 99:7,
102:6, 115:12,
128:16, 129:1,
137:1, 137:3,
138:5, 139:2,
139:5, 148:18,
157:2
**comparables**
102:14, 102:19,
104:19, 104:22,

128:19, 134:23,
134:24, 136:24,
137:7, 137:20
**compensation**
23:1, 126:5
**competes**
63:4
**competitor**
76:8
**complaint**
4:9, 5:15,
17:25, 34:18,
35:25, 36:7,
65:7, 68:14,
100:4, 100:5,
100:8
**complete**
118:7, 165:5
**complex**
43:10, 84:4
**compliance**
76:12, 140:16
**complicated**
14:4, 64:20,
64:22, 103:20,
135:25
**component**
28:5, 61:21,
61:22
**components**
58:23, 103:16
**composed**
103:16
**compound**
16:19, 23:25
**comps**
139:20, 148:24
**concern**
77:2, 86:1
**concerning**
166:8
**concerns**
76:24, 78:17
**concluded**
164:24
**conclusion**
16:10, 20:18,
32:14, 32:18,

Transcript of Anthony Davis, Designated Representative
September 12, 2022

176

51:8, 51:16
**condo**
102:7, 137:9,
137:13, 137:14
**condos**
137:10, 137:12
**conducts**
44:11
**conference**
78:4, 153:1,
153:2
**confident**
125:19, 125:21
**confidential**
113:24, 146:25
**confidentiality**
132:3
**confirm**
152:14
**conflict**
54:22, 56:10,
62:8, 62:9,
63:6, 74:23,
74:25, 75:23,
77:3, 77:4,
78:9, 78:14,
78:18, 79:1,
79:20, 79:22,
79:25, 80:2,
80:5, 80:6,
82:24, 83:7,
83:10, 83:13,
83:18, 83:25,
84:5, 84:9,
84:15, 85:9,
85:12, 85:24,
86:1, 86:4,
86:10, 87:16,
87:22, 88:1,
88:4, 89:15,
89:20, 89:24,
91:10, 91:14,
138:2
**conflicted**
60:12, 63:3
**conflicts**
56:21, 85:20,
88:12, 89:10,

90:4, 90:15
**conform**
107:19
**confused**
11:10, 11:11,
60:11
**confusing**
142:11
**connections**
11:25
**connolly**
40:24
**consent**
4:15, 48:1
**considered**
26:7
**consistent**
15:23, 15:25,
57:25, 96:1,
97:11, 101:2,
101:3, 106:20,
121:16
**consistently**
57:22, 97:8,
97:15
**constant**
83:13
**constantly**
91:8
**constitutes**
166:13
**consult**
89:12
**consulting**
76:9, 89:12,
115:20, 115:21,
136:15, 140:16,
140:17, 141:19,
141:21
**continually**
78:14
**continue**
35:10, 86:22
**continued**
4:25, 5:25,
6:25
**continuing**
63:20

**contract**
35:22, 141:17
**contrary**
54:25
**conversation**
31:19, 33:22,
39:24, 54:19,
54:23, 59:20,
60:1, 61:2,
64:11, 64:17,
65:16, 65:21,
66:6, 66:9,
66:12, 66:14,
66:15, 66:18,
67:9, 70:4,
71:7, 87:9,
88:7, 120:20
**conversations**
53:2, 66:22,
66:24
**cooperating**
121:25, 122:4
**coordinate**
112:16
**copies**
26:5
**copy**
17:25, 50:12
**core**
91:17, 91:18,
149:14
**corporate**
8:4
**correct**
12:14, 14:3,
15:15, 18:24,
19:2, 19:6,
19:9, 21:18,
24:25, 25:18,
27:9, 27:10,
31:14, 37:24,
39:23, 53:10,
53:15, 56:3,
58:5, 58:21,
59:3, 59:7,
67:4, 67:17,
90:11, 92:6,
95:1, 103:4,

106:9, 108:13,
116:13, 122:11,
124:15, 126:1,
126:5, 128:17,
128:25, 129:5,
131:19, 143:20,
144:7, 153:18,
156:4, 161:20,
165:4
**correcting**
69:10
**corrections**
165:6
**correctly**
144:13, 144:19
**correspondence**
86:9
**cost**
51:1
**could**
37:25, 38:1,
46:2, 57:4,
61:22, 61:24,
78:8, 78:13,
84:14, 85:16,
85:18, 91:7,
101:6, 123:24,
138:19, 139:1,
139:4, 139:6,
140:6, 150:15,
153:14
**couldn't**
150:10
**counsel**
8:16, 18:6,
29:10, 29:24,
47:3, 47:23,
47:24, 50:13,
51:18, 68:22,
86:16, 86:21,
99:21, 118:4,
132:5, 143:1,
158:11, 159:22,
163:19, 166:19,
166:20
**counts**
120:14
**county**
166:4

Transcript of Anthony Davis, Designated Representative
September 12, 2022

177

**couple**
78:23
**course**
31:15, 46:7,
124:5, 127:10,
162:8
**court**
1:1, 8:7, 8:23,
9:12, 39:8,
54:25
**crawl**
21:4
**crazy**
150:4
**create**
45:13, 122:1,
152:7
**created**
31:17, 38:13,
47:25
**creates**
123:5
**creating**
159:13
**credible**
121:15
**credit**
120:8, 136:11
**cros**
141:17, 148:18,
148:23
**cross-talk**
149:24
**crr**
1:25, 2:4,
167:9
**csr**
1:25, 2:4, 2:5,
167:9, 167:11
**cst**
1:17
**currently**
10:7, 10:10,
50:23, 50:24
**curve**
126:9
**cv--m**
8:8

**cv--mak**
1:6

**D**

**data**
6:18, 101:11,
101:14, 112:15,
112:20, 112:25,
113:24, 151:16,
151:20, 160:7,
160:8, 160:19,
160:20
**date**
8:9, 12:8,
12:10, 23:6,
37:2, 37:5,
37:9, 37:11,
37:14, 38:19,
43:17, 44:3,
50:19, 71:21,
75:5, 75:8,
93:6, 117:24,
125:11, 165:10
**dated**
18:12, 22:6,
23:2, 42:24,
43:12, 57:4,
62:24, 93:18,
93:19, 125:9,
125:12
**dates**
112:11, 125:14
**davis**
1:15, 2:1, 4:4,
8:4, 9:3, 9:8,
11:7, 17:22,
22:9, 29:14,
30:18, 34:14,
39:13, 40:17,
42:9, 46:17,
47:8, 47:18,
48:15, 50:3,
54:3, 54:6,
55:22, 58:13,
62:20, 65:3,
65:11, 65:16,
66:5, 67:23,
71:14, 75:19,

80:12, 81:22,
82:10, 82:19,
85:2, 89:2,
92:15, 96:23,
99:19, 107:3,
112:5, 118:23,
125:5, 152:19,
163:20, 164:22,
165:2
**dawn**
63:5, 64:4,
89:11
**day**
52:18, 53:9,
167:3
**days**
92:1, 119:14
**deal**
13:5, 13:9,
41:21, 72:22,
75:25, 92:2,
138:20
**dealing**
34:8
**dealt**
140:21
**debate**
60:20, 161:2,
161:6
**debt**
103:13, 103:16,
103:17
**decade**
77:19, 77:20
**decide**
83:19, 138:16
**decided**
64:13, 130:20
**decision**
16:2, 60:6,
79:5, 79:6
**deck**
6:20, 6:21,
6:22, 6:23,
6:24, 125:15,
131:4, 133:2,
159:14
**decks**
122:1, 122:7,

122:17, 123:7,
123:12, 124:24,
125:9, 152:8,
156:22
**defendant**
1:9, 3:11,
10:3, 65:15
**defendant's**
5:12
**defenses**
5:13
**defined**
20:13, 21:17
**defines**
19:16
**definitely**
66:25, 114:4,
134:21
**definitions**
21:4
**delaware**
1:2, 8:8
**delightful**
91:25
**deliver**
125:19
**delivered**
33:9
**delta**
123:8
**demand**
22:3, 29:25
**demonstrating**
30:3
**denied**
65:18
**depending**
136:1, 136:3
**depends**
161:21
**deponent**
165:1
**depos**
8:13, 8:25
**deposition**
1:13, 2:1, 8:3,
8:14, 9:21,
17:22, 22:9,

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                              178

29:14, 30:18,
34:14, 40:17,
42:9, 46:19,
46:21, 48:15,
49:8, 50:3,
55:22, 58:13,
62:20, 65:3,
67:23, 71:14,
75:19, 80:12,
82:10, 85:2,
89:2, 92:15,
96:23, 99:19,
107:3, 112:5,
118:3, 118:23,
125:5, 152:19,
159:6, 163:15,
163:21, 164:22,
164:24, 166:10,
166:15
**describe**
13:2
**designated**
17:10, 18:22,
19:1, 19:5,
19:9, 47:8
**designee**
8:4
**desire**
79:14
**despite**
54:24, 138:20,
157:22
**destroys**
155:5
**deter**
77:17
**deteriorated**
73:20, 77:18
**deteriorating**
80:7
**determination**
15:19, 16:15
**determine**
70:13, 101:16
**determining**
15:17, 105:9
**developed**
56:11

**diagnostic**
140:15
**dial**
78:18
**dialing**
76:24
**difference**
23:13, 67:3,
86:9, 108:15,
150:8, 150:13
**different**
10:12, 28:3,
34:7, 34:8,
38:1, 52:6,
70:22, 90:12,
90:14, 90:15,
90:16, 91:14,
91:19, 92:8,
93:21, 98:19,
103:21, 107:11,
108:22, 124:23,
130:7, 150:9,
150:14, 157:10,
159:9, 160:19,
160:20, 160:21
**differently**
28:6
**difficult**
71:5, 71:7,
79:13, 92:1
**digressed**
145:14
**diluted**
114:16
**diminished**
57:13
**direct**
72:5, 89:5,
102:25
**direction**
166:13
**directly**
13:11, 61:15,
73:12, 77:16,
166:21
**director**
11:16, 13:21
**directors**
5:6, 5:20,

44:17, 47:24,
56:9
**disagree**
26:4, 36:6,
150:18
**disagreement**
53:3, 53:4
**discounted**
98:6, 98:8,
98:10, 98:14
**discovery**
35:3, 35:5,
35:17, 36:22,
62:6, 92:22,
127:16, 140:19,
152:17
**discretion**
103:2, 104:23,
135:11, 162:12
**discretionary**
138:15
**discuss**
24:21, 40:7,
56:22, 59:10,
77:4, 82:20,
85:25, 86:5,
87:7, 88:4,
124:25
**discussed**
30:7, 31:13,
48:20, 55:9,
68:18, 74:24,
87:8, 89:18,
89:25, 135:10,
151:13, 163:14
**discussing**
66:20, 67:15,
126:4
**discussion**
7:5, 12:20,
25:9, 29:8,
38:15, 38:17,
59:6, 83:22,
89:22, 90:3,
91:20, 111:2,
123:1, 131:11,
144:2
**discussions**
29:23, 59:11,

62:13, 82:6,
82:24, 84:1,
84:4, 85:15,
85:21, 89:14,
90:19, 91:7,
93:8, 110:22,
125:2, 129:6,
133:14, 150:22,
156:4, 157:8,
162:6, 162:17,
162:25
**disk**
8:2
**disparity**
64:2
**dispute**
30:12, 110:5
**disputed**
25:8, 30:4,
97:13
**disruptive**
56:14, 59:22,
61:7
**distinction**
122:8, 154:6
**distribute**
41:3
**district**
1:1, 1:2, 8:7
**divided**
104:11, 148:4,
148:8
**dividing**
104:13
**doable**
81:3
**document's**
70:22
**documentation**
41:9, 44:6,
44:12, 52:4,
52:5
**documents**
5:4, 16:22,
30:5, 31:11,
33:3, 41:17,
41:18, 43:9,
53:24, 53:25,

Transcript of Anthony Davis, Designated Representative
September 12, 2022

179

54:1, 55:8,
55:9, 55:15,
70:12, 74:10,
86:19, 94:4,
94:6, 110:12,
110:21, 111:4,
111:14, 111:20,
113:14, 118:8,
118:12, 120:4,
125:4, 129:8,
131:20, 135:3,
135:7, 143:21,
143:25, 149:19,
163:20
**doing**
45:12, 90:8,
91:18, 111:10,
116:17, 121:14,
124:4, 135:19,
140:3, 149:10,
157:12, 161:22
**dollar**
114:21, 127:17
**dollars**
109:11
**done**
13:9, 22:11,
38:18, 48:24,
74:9, 86:24,
97:8, 106:20,
106:21, 132:23,
138:20, 159:5
**donnelly**
1:4, 4:18,
4:21, 4:24, 5:4,
5:11, 6:15, 8:5,
8:20, 9:22,
9:24, 11:23,
12:17, 12:23,
14:2, 19:8,
20:12, 20:16,
22:4, 22:20,
22:22, 22:25,
23:4, 23:7,
23:11, 23:19,
24:16, 26:1,
26:2, 26:11,
29:10, 29:24,

30:21, 31:14,
33:9, 36:4,
37:2, 37:24,
38:4, 39:15,
39:17, 39:22,
42:19, 45:25,
47:16, 49:22,
50:18, 51:5,
59:5, 59:6,
65:12, 71:18,
75:24, 80:15,
106:5, 106:6,
106:12, 107:9,
109:14, 112:14,
117:4, 118:14,
118:15, 119:10,
119:25, 135:5
**donnelly's**
23:9, 26:8,
30:3, 39:18,
47:10, 58:17,
68:5, 158:22,
158:23, 164:5
**doug**
112:9, 112:16,
114:2, 114:4
**down**
57:11, 60:6,
63:2, 63:7,
99:2, 147:6,
147:7, 148:10
**dozens**
33:4, 123:22,
123:25
**dramatically**
101:17, 101:19
**drawn**
141:18
**drive**
2:2, 150:3
**driver**
79:21, 79:23
**drug**
140:18
**due**
26:17, 45:19,
56:21, 79:19,
119:18

**duly**
9:2, 9:4, 166:7
**during**
9:20, 11:1,
14:10, 17:4,
57:10, 151:15,
163:12, 163:13
**duties**
13:8

**E**

**e-mails**
73:12
**each**
18:23, 124:24
**earlier**
14:20, 74:19,
77:20, 95:14,
120:21, 139:12,
139:14
**earnings**
136:7
**earnout**
93:4
**easier**
82:20, 100:17
**easy**
90:24
**easy-to-predict**
136:5
**ebitda**
23:12, 27:7,
27:15, 27:25,
28:13, 28:20,
28:21, 100:23,
100:24, 102:20,
104:17, 104:18,
104:22, 105:20,
113:10, 113:11,
114:7, 121:4,
125:23, 128:24,
130:3, 130:7,
130:10, 132:11,
134:9, 134:25,
135:16, 135:18,
135:21, 136:19,
143:11, 146:10,
147:4, 148:2,

148:3, 148:8,
148:9, 148:10,
152:10, 154:5,
154:6, 154:8,
154:14, 154:15,
154:21, 154:24,
155:12, 155:13,
155:15, 156:1,
156:4, 156:10,
156:21, 157:5,
161:3, 161:24
**effect**
32:5, 32:6
**effective**
30:23
**effectively**
16:24, 142:16
**either**
9:11, 107:13,
111:19
**eligible**
110:14, 110:16
**ellis**
22:6, 42:3,
47:25, 80:24
**else**
91:9, 96:13,
133:24, 162:11
**emailed**
38:18, 39:17
**emails**
42:2, 61:4,
62:5, 62:8,
118:1, 118:13
**emotional**
57:4, 62:4,
62:7, 62:10,
62:15, 71:4
**employed**
11:15, 11:17
**employee**
44:25, 166:18,
166:19
**employees**
49:14, 49:17
**employment**
11:13
**enabled**
123:18, 139:17

Transcript of Anthony Davis, Designated Representative
September 12, 2022

180

encompass
21:23
end
9:17, 81:3,
95:11, 127:12,
128:15, 128:17,
136:18, 147:22,
164:21
ended
116:12, 126:22,
128:3
ending
26:19
ends
25:15
enormous
102:14, 102:15
enough
120:16, 134:1,
140:22, 140:23
enough's
120:16
enter
152:12
enterprise
103:6, 103:14,
125:19, 134:6,
134:15
entire
97:9, 105:13
entities
10:12, 11:3,
20:11, 20:15,
21:6, 36:3,
36:15
entitled
20:8, 23:20,
26:23, 26:25,
97:2
entity
10:16, 15:19,
16:4
equity
6:15, 13:9,
15:7, 15:14,
15:18, 16:3,
16:17, 23:23,
43:2, 43:19,

48:21, 58:18,
58:19, 58:24,
59:10, 63:8,
69:21, 70:2,
70:8, 70:9,
73:14, 92:6,
97:18, 97:22,
98:1, 98:15,
100:9, 103:16,
103:18, 103:21,
103:25, 104:2,
104:4, 104:8,
104:11, 105:1,
109:6, 109:13,
112:15, 126:5,
131:12, 143:16,
156:24, 157:13,
158:1, 158:23,
163:6, 163:18,
164:5
erg
31:25, 33:6,
51:1, 51:6,
60:4, 69:20,
73:14, 74:4
errata
165:7
erroneous
24:9, 24:11
estate
102:5
et
60:4, 70:23
evaluate
154:19
evaluating
98:1
evaluation
26:4
even
28:9, 47:16,
62:1, 120:22,
123:25, 139:1
eventually
92:4, 123:5,
152:22
ever
22:16, 29:1,

31:9, 33:9,
38:4, 53:24,
54:2, 54:9,
54:10, 87:9,
111:20, 119:10,
124:3, 160:23,
162:4, 162:15,
162:24, 164:3
every
48:25, 49:5,
49:11, 49:12,
49:13, 57:14,
70:21, 91:12,
105:1, 106:15,
106:21, 113:12,
114:19, 136:9,
136:10, 136:17,
145:10, 157:17,
161:5
everyone
84:18, 96:13
everyone's
83:9
everything
9:9, 91:9,
162:11
evidence
23:13, 45:9,
86:17, 148:20,
149:1, 158:14
evidenced
30:2
evidencing
30:6
exact
10:22, 13:22,
75:5, 75:8,
102:1, 126:11,
126:24
exactly
38:12, 46:12,
70:15, 78:19,
80:1, 102:6,
114:23, 126:21,
126:23, 138:7
examination
9:6, 166:7
examined
9:5, 165:3

example
15:6, 155:2,
155:10, 155:11,
158:12
except
19:24, 113:5
excess
23:7, 125:20,
142:6
excessive
26:9
excessively
120:24
exclude
138:19, 139:1,
139:6
excluded
139:9
excuse
68:10, 72:10,
72:13, 73:25,
76:17
execute
43:3
executed
18:13, 42:19
executive
17:3, 17:4,
17:7, 62:10,
69:25, 70:5,
91:11
exercise
98:11, 105:14
exhibits
4:8, 5:2, 6:2,
7:2, 40:9,
64:19, 75:15,
100:7, 153:10
exist
26:12
existed
157:11
existence
40:10
exit
94:25
expect
70:16, 70:24,

Transcript of Anthony Davis, Designated Representative
September 12, 2022

181

72:13, 78:19,
143:15
**expected**
23:4, 73:3,
122:22, 143:22
**expecting**
60:2
**experience**
56:9, 57:3,
62:11, 131:8,
160:22
**expert**
95:12, 95:20,
143:3
**expertise**
149:14
**explain**
9:9, 90:16,
95:3, 100:15,
103:7, 115:12,
147:11
**explained**
137:2
**explicitly**
123:13
**expressed**
77:2
**expressly**
30:7
**extension**
135:18
**extensive**
120:2
**extent**
32:13, 34:24,
46:16, 47:19,
51:8, 88:16,
90:5, 99:9,
101:14, 110:21,
153:21
**externally**
113:4
**extra**
111:9, 120:7
**extraordinarily**
120:10
**extremely**
106:20, 120:18,

121:16, 131:17,
136:5
─────────
**F**
─────────
**facility**
5:23
**fact**
24:13, 28:24,
87:18, 88:8,
95:15, 95:21,
95:22, 116:3,
129:18, 130:4,
143:20, 144:6,
157:22
**factored**
103:3
**factors**
79:2, 115:23
**facts**
45:9, 64:20,
72:4, 86:17,
87:1
**fair**
13:15, 43:18,
102:25, 103:2,
103:12, 106:15,
109:22, 109:25
**faith**
84:1, 84:3,
120:19
**fall**
26:6, 129:7
**falls**
47:9
**far**
132:11, 135:12,
150:20
**farah**
13:20, 19:4,
19:5, 20:11,
30:8, 31:5,
49:22, 60:25,
62:23, 68:9,
69:19, 72:9,
72:13, 73:23,
74:21, 76:22,
77:1, 77:5,
82:13, 85:11,

85:24, 87:12,
87:25, 112:9,
112:23, 113:2,
113:16, 127:20
**farah's**
37:4, 73:11
**fashion**
119:25
**faster**
115:15, 115:16,
139:17
**father**
76:16
**february**
136:20
**feel**
47:12, 94:17
**feels**
63:3, 63:4,
72:8
**fees**
23:6, 30:4
**felt**
56:20, 60:12,
78:8, 121:2,
121:4, 121:5
**few**
79:11
**fiduciary**
78:1
**fifth**
120:7
**figure**
23:15, 70:18,
73:15, 89:24,
105:14, 114:7
**filed**
22:7, 41:19
**filing**
47:12, 47:22,
48:3
**final**
108:12
**finance**
63:13, 63:15,
100:13
**financial**
40:21, 41:14,

151:24, 152:9,
156:13, 157:2,
157:24, 158:1,
159:25, 160:8
**find**
18:7, 37:8,
82:23, 134:16
**finding**
19:14
**fine**
10:13, 18:9,
39:1, 74:11,
91:17, 117:10,
164:18
**finish**
142:21
**finished**
51:17
**fire**
17:12
**fired**
27:14, 77:20,
119:20
**firing**
56:17
**firm**
10:7, 10:9,
13:9, 31:23,
33:4, 88:8,
113:3, 127:1,
128:3, 128:10,
131:12, 134:7,
136:25
**firms**
26:7, 34:7,
34:9, 89:23
**first**
4:9, 5:14, 9:4,
9:8, 10:18,
17:25, 31:8,
34:17, 46:14,
51:5, 56:23,
65:6, 74:24,
77:6, 86:7,
87:6, 87:10,
106:6, 112:23,
113:18, 139:19
**fits**
85:17

Transcript of Anthony Davis, Designated Representative
September 12, 2022

182

**five**
64:14, 124:23,
125:8, 149:20,
150:8, 150:16
**five-minute**
74:10
**flat**
57:16, 116:18,
116:19
**flexibility**
123:4
**flip**
18:3, 19:11,
125:15, 128:8,
141:4
**floor**
2:3
**flow**
98:8, 98:11,
98:14, 154:13,
154:16, 155:1,
155:9
**flows**
98:6
**focus**
98:20
**follow**
140:6
**follow-up**
133:5
**followed**
25:19, 92:7
**following**
49:2, 146:16
**follows**
9:5
**force**
59:22
**foregoing**
165:3, 166:10
**forfeited**
51:3, 51:6
**form**
11:8, 15:9,
16:19, 20:17,
44:8, 44:13,
45:8, 46:22,
51:7, 51:13,

51:15, 54:16,
57:23, 59:13,
60:16, 65:24,
68:20, 72:15,
79:3, 83:16,
86:14, 87:3,
107:21, 144:9,
151:18, 153:5,
153:20, 157:14,
158:10, 159:7,
159:21
**formal**
44:2, 90:22,
90:23
**formalize**
85:18
**former**
22:5
**forth**
44:20, 125:1
**forward**
26:4, 78:3,
86:24, 112:18,
136:12, 142:12,
161:4, 161:9,
161:10
**forward-looking**
135:20, 135:24,
150:25, 160:11,
161:13, 161:17
**forwarded**
34:3
**found**
90:5
**foundation**
15:9, 20:17,
44:8, 44:14,
45:9, 46:22,
48:11, 51:7,
51:15, 54:17,
57:23, 59:13,
65:24, 68:21,
72:16, 79:3,
83:16, 86:15,
87:4, 107:21,
144:10, 151:18,
153:5, 153:20,
157:14, 158:11,

159:8, 159:21
**founder**
12:13, 76:16
**four**
38:8, 91:3,
159:23
**francisco**
78:4, 78:24
**frankly**
72:21, 121:22
**free**
17:11
**friends**
83:22
**front**
16:22, 36:23
**full**
92:5
**fully**
18:13, 33:23,
59:21, 60:23,
114:16
**functioning**
79:11
**fundamental**
154:19
**funny**
96:14, 116:4
**further**
109:17, 109:18
**fyi**
72:10

---
**G**
---

**g-a-a-p**
154:10
**gaap**
154:9
**gave**
28:18, 48:1,
106:23, 121:20,
128:14, 150:9,
157:19
**gears**
96:17
**gel**
140:7
**general**
11:25, 160:6

**generally**
61:7, 83:6,
136:2, 154:9,
156:3, 161:19
**generates**
154:20
**generosity**
162:14
**generous**
119:17, 120:10,
162:14
**genstar**
77:19, 77:25,
78:24, 87:18,
87:19, 88:10,
88:14, 88:16,
89:20, 89:21,
89:25, 138:21
**gentlemen**
92:8
**getting**
79:13, 83:10,
83:14, 104:13,
149:11
**gilmore**
3:12, 8:21,
11:8, 15:3,
15:9, 16:9,
16:19, 18:6,
18:9, 20:17,
21:1, 21:13,
32:12, 32:17,
33:13, 34:23,
35:4, 35:10,
35:13, 37:19,
38:24, 44:8,
44:13, 45:8,
46:10, 46:13,
47:1, 47:3,
47:6, 47:14,
48:10, 49:7,
50:12, 50:15,
51:7, 51:15,
51:22, 51:24,
52:9, 54:3,
54:16, 57:23,
59:13, 60:16,
65:24, 68:20,

Transcript of Anthony Davis, Designated Representative
September 12, 2022

183

69:7, 69:10,
69:13, 72:15,
74:8, 79:3,
81:8, 81:12,
81:14, 83:16,
86:13, 86:23,
87:3, 93:11,
93:14, 94:8,
94:11, 99:21,
99:25, 100:6,
107:21, 117:11,
118:3, 118:18,
144:9, 150:3,
151:3, 151:18,
153:5, 153:20,
157:14, 158:10,
158:16, 158:20,
159:10, 159:21,
160:2, 163:19,
164:6, 164:11,
164:14, 164:20
**give**
36:11, 68:9,
72:10, 73:24,
75:14, 104:18,
105:1, 111:8,
114:23, 120:7,
120:8, 121:11,
127:24, 146:7,
155:1
**given**
37:22, 56:9,
63:5, 63:20,
91:17, 92:8,
100:12, 109:8,
155:23, 159:16,
160:11, 165:5,
166:14
**gives**
104:4, 104:8,
114:21
**giving**
50:7, 109:5
**glad**
131:1
**go**
9:19, 19:22,
24:15, 25:24,

34:21, 37:25,
39:1, 50:16,
69:25, 70:1,
70:5, 70:13,
81:14, 85:18,
88:18, 90:22,
96:5, 96:16,
96:17, 102:23,
111:17, 113:12,
113:18, 132:23,
134:3, 136:21,
142:24, 146:5,
149:3, 155:19,
161:8
**goals**
57:18
**goes**
36:10, 43:22,
103:17, 103:24,
107:15, 147:6,
148:9
**going**
25:14, 25:24,
31:5, 34:23,
36:5, 38:24,
39:3, 49:20,
50:7, 51:11,
53:4, 60:2,
70:19, 71:7,
72:8, 74:1,
74:3, 74:7,
74:8, 74:13,
75:14, 80:9,
80:21, 81:10,
81:16, 83:4,
85:5, 86:14,
86:23, 96:7,
100:16, 103:13,
108:17, 109:23,
111:8, 114:15,
114:17, 114:19,
115:23, 116:23,
120:7, 120:8,
125:1, 128:6,
129:24, 133:4,
134:19, 134:25,
136:19, 136:20,
137:12, 137:13,

138:22, 141:24,
142:12, 142:15,
142:17, 147:16,
148:2, 151:7,
153:14, 158:23,
161:20, 163:2,
164:22
**good**
47:24, 49:20,
52:16, 77:15,
77:22, 78:11,
79:24, 80:5,
84:1, 84:2,
84:3, 88:18,
89:9, 91:4,
111:8, 116:21,
131:17, 134:1,
135:14, 138:12,
138:16, 139:16
**governed**
58:20
**grand**
110:2
**great**
129:17, 131:20,
149:10, 149:15,
149:19
**greater**
85:8
**grew**
57:21
**grounds**
46:23, 61:17,
159:8
**group**
1:7, 1:14,
4:14, 5:7, 6:4,
6:14, 8:4, 8:6,
8:22, 10:2,
18:11, 62:16,
69:2, 77:13,
81:2, 137:19,
139:7, 139:11,
139:20
**grouping**
137:14, 139:22
**growing**
101:18, 101:20,

101:21, 115:14,
123:15, 123:16,
123:19, 129:15,
129:16, 139:17,
149:9
**grows**
115:16
**growth**
57:12, 101:17,
129:11, 129:14,
129:17, 129:20,
149:4, 149:5,
149:6, 149:7
**guess**
16:12, 20:9,
40:8, 49:2,
65:20, 72:12,
73:11, 76:2,
89:13, 102:10,
104:17, 107:12,
128:12, 133:21,
145:14, 146:11
**guessing**
127:21
**guidance**
79:6
**guys**
111:8, 132:20,
149:8

**H**

**half**
75:13, 132:13
**hand**
85:13, 167:2
**handed**
34:17
**hands**
15:14, 102:25
**hands-off**
76:5
**hang**
149:25
**happen**
56:15, 86:20,
87:9
**happened**
66:15, 86:6,

Transcript of Anthony Davis, Designated Representative
September 12, 2022

184

101:14
**happening**
126:22
**happens**
41:17, 46:4,
46:8, 47:2, 47:4
**hard**
83:10, 141:25
**harder**
91:10
**hargroves**
12:13, 12:17,
82:14
**harris**
6:22, 132:25,
134:7, 139:3
**hate**
93:8
**he'll**
86:5
**head**
13:5, 138:9
**heads-up**
76:20, 76:23
**health**
11:25, 13:25
**healthcare**
78:4
**heard**
92:25
**held**
2:1, 51:1, 61:6
**help**
15:11, 18:7,
85:16
**hence**
31:19, 31:20
**here**
8:2, 18:7,
20:1, 21:4,
21:6, 39:19,
45:20, 47:6,
49:21, 50:15,
52:23, 55:7,
72:1, 78:11,
79:22, 79:24,
84:19, 85:23,
89:17, 93:19,

94:24, 105:14,
105:16, 109:25,
110:5, 120:1,
127:25, 129:9,
130:12, 137:15,
137:22, 140:8,
140:9, 148:16,
148:20, 149:1,
158:21, 164:2
**here's**
49:21, 102:5,
102:10, 149:8
**hereby**
165:2, 166:5
**herein**
9:4, 166:9
**hereto**
166:21
**hereunto**
167:1
**hey**
113:17
**hierarchy**
97:23
**high**
28:9, 28:24,
128:16, 129:13,
129:14, 129:17,
130:9, 141:15,
149:11
**high-growth**
123:14
**higher**
27:15, 58:5,
101:19, 105:5,
121:12, 121:13,
123:12, 123:17,
123:18, 134:22,
145:13, 150:9
**highest**
121:14, 121:18,
123:23, 123:24,
124:1, 124:10,
129:24
**highly**
88:14
**himself**
56:19, 67:18,

81:4, 81:7,
82:1, 90:7,
90:9, 91:16,
99:11, 119:25
**hire**
17:12, 29:2
**hired**
27:20
**hiring**
17:2, 17:4,
140:22
**historically**
24:6, 24:13,
141:14
**history**
27:11
**hit**
155:3
**hoffman**
42:13
**hold**
11:1, 11:14,
19:14, 46:10,
46:13, 68:20,
81:8, 108:9,
158:10
**honest**
63:8
**honestly**
37:11, 134:25
**hope**
80:21, 116:14
**hour**
38:25, 74:9,
154:7
**hours**
91:4, 91:13
**house**
102:4, 102:7,
137:8
**houses**
102:6, 137:10
**how's**
94:7
**however**
23:6, 53:12,
67:1, 72:5,
142:4

**huge**
28:4, 28:5,
115:15
**hundred**
63:15
**hurricane**
155:3
**hurricanes**
155:7

I

**idea**
31:8, 34:2,
52:21
**identification**
17:23, 22:10,
29:15, 30:19,
34:15, 40:18,
42:10, 48:16,
50:4, 55:23,
58:14, 62:21,
65:4, 67:24,
71:15, 75:20,
80:13, 82:11,
85:3, 89:3,
92:16, 96:24,
99:20, 107:4,
112:6, 118:24,
125:6, 152:20
**identified**
22:18
**identifies**
19:12, 85:11
**identifying**
78:15
**iii**
19:1, 68:25
**illinois**
2:3, 8:15,
155:6, 166:5,
167:3
**illogical**
120:13
**implicit**
159:1, 159:2
**important**
54:14, 119:24,
149:7

Transcript of Anthony Davis, Designated Representative
September 12, 2022

**impossible**
80:4
**impression**
57:2
**inadequate**
110:19
**inappropriate**
23:11, 121:6,
121:7
**incentive**
5:8, 6:14,
15:7, 15:14,
15:18, 16:3,
16:17, 23:23,
43:2, 43:19,
43:20, 48:21,
51:2, 58:18,
58:19, 58:24,
59:10, 69:21,
70:2, 70:9,
73:14, 92:5,
98:1, 98:15,
100:9, 103:25,
107:11, 109:6,
109:9, 109:13,
110:7, 110:8,
112:15, 121:11,
124:9, 126:5,
143:16, 156:23,
157:12, 157:25,
158:23, 163:6,
163:17, 164:5
**inception**
23:2, 23:3
**include**
39:9, 138:22,
139:6, 139:20
**including**
15:6, 53:7,
84:18
**incomplete**
34:24, 51:22,
51:25
**incorrect**
28:15
**increase**
23:16, 58:1,
161:24

**increased**
57:21, 58:8,
61:9, 143:4
**increasing**
93:4, 95:13,
95:17, 161:24
**increasingly**
78:6, 79:14
**incredible**
124:9
**incredibly**
62:4, 109:25,
149:7
**indeed**
71:23
**independent**
20:5, 149:20,
150:16
**indicates**
68:24
**indirectly**
166:21
**individual**
11:5
**industry**
11:24, 56:9,
56:25
**inflate**
29:3
**influence**
61:10
**info**
69:20, 73:14
**inform**
72:8
**informal**
73:1
**information**
113:1, 115:7,
126:3, 129:4,
150:19, 151:14,
151:24, 151:25,
152:7, 152:10,
153:2, 159:16
**initial**
32:24, 36:15
**initially**
13:4, 13:5,

124:13
**input**
56:12, 63:5,
64:4
**instance**
75:22, 81:25,
115:8, 123:11,
124:6
**instances**
81:6
**instead**
125:1
**institutional**
106:17, 106:22,
121:9, 157:20
**instructing**
163:23
**interacted**
13:7
**interest**
12:5
**interested**
166:21
**internal**
131:11
**interrupt**
51:18, 101:7
**introduce**
64:18
**invest**
109:4
**invested**
100:20, 105:16,
109:8, 109:11,
109:16, 110:2,
121:3, 145:5
**investing**
11:25
**investment**
13:6, 26:6,
28:12, 28:18,
28:23, 29:2,
41:4, 95:16,
104:12, 109:5,
109:10, 109:14,
110:3, 110:5,
121:25, 122:4,
122:17, 122:21,

123:11, 124:8,
124:12, 124:20,
124:23, 125:21,
130:8, 130:19,
131:8, 131:25,
132:19, 137:4,
143:23, 145:16,
147:15, 147:23,
149:5, 149:17,
150:9, 150:16,
152:8, 159:13,
160:8, 161:6
**investments**
70:8
**investor**
125:8, 127:23,
141:2, 145:11,
146:4, 151:14,
154:18, 154:25,
159:14
**investors**
4:16, 18:23,
19:9, 19:12,
19:16, 20:7,
20:12, 20:13,
21:18, 21:20,
106:12, 106:17,
106:22, 113:1,
113:6, 113:15,
121:10, 121:12,
121:14, 121:19,
154:13, 157:20
**involved**
13:11, 15:5,
17:17, 33:19,
55:4, 82:4,
82:6, 91:12,
140:18, 157:7
**involvement**
63:21, 63:22,
85:14, 104:9
**involves**
140:25
**irrelevant**
134:11
**issue**
143:9
**issued**
97:17, 109:7,

Transcript of Anthony Davis, Designated Representative
September 12, 2022

186

**109:9**
**issues**
57:9, 76:24,
140:21
**it'll**
108:10
**item**
155:7
**itself**
37:10
**iv**
68:25

**J**

**january**
62:24, 64:7,
77:24, 78:5,
80:7, 80:17
**jeff**
12:13, 12:17,
82:14, 89:11
**jerk**
73:21, 74:2
**jerky**
73:23, 74:3
**job**
1:23, 121:13,
129:22, 131:17,
149:13, 149:15
**join**
5:5, 56:2, 56:5
**joined**
56:23
**joseph**
3:4
**josh**
107:8, 113:20,
127:20, 127:21
**jpmorgan**
78:4
**judgment**
129:25
**july**
25:4, 25:7,
26:14, 26:19,
31:20, 33:23,
40:4, 53:1,
53:21, 55:1,

**67:18, 68:6,**
68:12, 69:23,
119:21, 132:10
**jump**
111:17
**june**
25:6, 26:13,
26:19, 31:18,
31:20, 32:25,
33:11, 33:15,
33:21, 34:2,
34:5, 37:9,
37:15, 38:11,
38:12, 38:14,
38:17, 38:18,
45:14, 52:25,
53:13, 53:14,
54:24, 59:7,
59:15, 59:18,
64:8, 64:11,
65:23, 70:17,
95:9, 95:11,
107:6, 107:18,
110:17, 113:21,
119:22, 132:9,
135:21, 142:15

**K**

**k&e**
80:23
**kam**
89:8
**keep**
63:7, 67:17,
82:23, 103:13,
121:8, 142:11
**keeping**
59:25
**keith**
3:4, 8:18,
33:13
**key**
131:7, 131:25
**killing**
29:17
**kind**
16:17, 44:12,
57:5, 61:14,

**78:19, 96:14,**
96:18, 97:13,
101:11, 101:21,
122:8, 134:10,
139:12, 141:18,
141:21, 142:15,
149:13
**kinds**
140:18
**kirkland**
22:6, 31:17,
31:23, 33:4,
42:3, 47:25,
80:24
**knew**
88:17, 111:19,
133:14, 133:20,
133:25, 149:10,
156:21
**know**
9:18, 9:20,
12:23, 16:5,
16:6, 16:7,
17:13, 17:15,
25:8, 33:10,
33:19, 33:20,
38:7, 38:10,
39:25, 41:22,
45:12, 46:3,
46:8, 48:3,
52:17, 54:11,
55:14, 55:17,
60:3, 60:11,
61:10, 62:15,
63:12, 63:24,
74:3, 77:14,
81:10, 81:22,
87:25, 89:21,
91:4, 94:25,
99:24, 101:7,
101:14, 105:2,
109:18, 109:23,
111:7, 111:21,
114:3, 115:6,
116:23, 116:24,
118:8, 119:6,
119:24, 122:19,
123:25, 124:1,

**126:4, 127:6,**
127:15, 127:16,
129:23, 130:12,
133:4, 133:17,
137:21, 138:10,
140:1, 140:13,
145:22, 147:21,
148:15, 148:22,
148:25, 149:1,
160:25
**knowing**
32:3
**knowledge**
38:3, 47:19,
49:3, 78:13
**knows**
113:16

**L**

**label**
117:1
**labeled**
89:6, 112:11
**lack**
45:8, 48:10,
54:16, 72:15
**lacks**
52:1
**large**
18:19, 33:4,
79:21, 106:16,
106:21, 137:19
**largely**
115:21
**larger**
102:13, 115:14,
115:17
**largest**
79:23, 113:6,
113:15
**last**
16:10, 25:25,
32:17, 42:17,
76:10, 81:23,
89:19, 100:22,
145:15, 146:4
**last-minute**
80:22

Transcript of Anthony Davis, Designated Representative
September 12, 2022

187

**late**
40:10, 136:4
**later**
10:23, 28:10,
37:25, 56:22,
59:11, 95:6,
95:8, 95:18,
116:14, 116:16,
132:13
**law**
33:4, 34:7,
34:8
**laws**
154:21, 154:22
**lawsuit**
17:5, 17:6,
22:7, 110:6,
111:3
**lawyers**
31:24
**lcp**
104:8, 104:9,
104:12
**leads**
124:8
**least**
36:1, 133:8,
139:3
**leave**
60:13, 65:13
**leaving**
103:23
**left**
100:18, 114:14,
154:7
**legal**
11:17, 16:10,
16:22, 16:24,
17:15, 20:18,
20:20, 20:23,
32:5, 32:6,
32:14, 32:18,
36:16, 45:11,
51:8, 51:16,
111:23, 144:12
**legally**
25:20, 36:3,
162:9, 162:10

**legitimate**
120:25
**lengthy**
158:16
**less**
61:21, 95:14,
98:7, 98:9,
101:20, 101:22,
102:19, 130:15,
137:21, 137:24
**less-nice**
137:14
**lesser**
62:2
**let's**
25:23, 68:3,
70:1, 83:22,
84:21, 84:22,
117:11, 137:9,
138:23, 155:6
**letter**
4:10, 4:13,
22:4, 22:16,
22:18, 23:19,
24:12, 25:4,
25:24, 25:25,
27:22, 93:13
**level**
63:20, 97:20,
97:21
**liability**
18:11
**life**
119:25
**liked**
88:17
**limit**
76:5
**limited**
18:11, 47:16,
90:17, 90:22,
90:25, 152:9
**linden's**
97:2, 104:3,
108:4
**line**
16:16, 27:8,
28:1, 141:18,

143:16, 145:2
**link**
77:13
**linked**
73:12, 77:12
**lisa**
68:3, 80:15,
80:17, 107:7,
107:17
**list**
138:4, 152:13,
152:15, 152:24
**listed**
21:6, 52:19,
52:23, 103:7,
108:2, 108:8,
125:25, 129:19
**literally**
91:12, 126:8,
126:14, 141:24
**little**
29:7, 43:23,
77:2, 99:3,
102:22, 118:11,
130:25, 142:8,
149:8
**llc**
1:8, 1:14,
4:14, 5:7, 6:13,
8:5, 8:6, 8:22,
10:2, 25:17,
35:23, 70:7,
97:3
**llp**
2:2, 3:5, 3:13,
8:15
**long**
10:14, 27:10,
51:13, 54:22,
59:24, 79:9,
122:15, 131:5,
147:14, 147:25,
156:13
**long-standing**
92:2
**longer**
15:1, 50:8,
71:19, 74:4,

111:25
**look**
18:17, 19:24,
31:11, 42:16,
72:21, 93:6,
94:2, 98:4,
98:6, 98:16,
101:13, 101:15,
119:2, 125:23,
129:22, 137:18,
139:25, 141:16,
146:17, 148:18,
157:17, 161:3
**looked**
13:17, 35:16,
131:19
**looking**
32:2, 38:4,
44:20, 61:25,
99:15, 100:22,
102:23, 114:25,
147:17, 147:21,
159:18, 161:1,
161:3, 161:4
**looks**
90:2, 142:1
**loop**
89:8
**lot**
57:9, 127:24,
131:8, 136:20,
140:2, 153:17,
153:18
**lots**
31:23, 155:11
**love**
148:13
**loverich**
71:18, 133:11
**low**
128:15, 129:13
**lower**
27:13, 28:18,
108:5, 121:12,
125:24, 130:10,
132:11, 148:17,
161:20
**lp**
68:25

Transcript of Anthony Davis, Designated Representative
September 12, 2022

188

ltm
100:22, 104:18,
104:22, 113:10,
113:21
luck
93:1

**M**

m&a
76:11, 82:24,
86:4, 90:6,
90:23, 91:9,
91:17, 148:18
ma'am
82:8
made
31:25, 32:4,
33:6, 35:11,
36:21, 41:1,
95:4, 95:6,
95:11, 106:11,
106:12, 106:24,
107:17, 107:18,
119:9, 121:1,
131:22, 135:4,
157:11
main
62:1, 135:8
majority
4:15, 12:5
make
9:9, 9:22,
10:3, 26:18,
37:16, 37:22,
38:1, 41:5,
46:14, 78:21,
88:12, 93:9,
103:20, 106:15,
109:5, 117:7,
117:9, 118:8,
154:24, 155:17,
159:25
makes
15:19, 63:2,
63:6, 69:20,
73:13, 150:7,
150:13
making
36:19, 51:12,

52:8, 52:11,
73:23, 74:3,
86:25, 121:22,
122:9, 133:11,
158:13, 159:4,
164:9
man
92:1
manage
78:9
managed
53:23
management
5:8, 11:17,
13:8, 42:18,
70:8, 104:1,
125:2
manager
6:13, 18:23,
20:5, 20:8,
21:5, 97:3
managers
18:21, 19:6,
65:14
managing
113:2
manual
81:1
manufacturing
76:13
many
10:12, 13:16,
13:18, 24:11,
51:12, 56:20,
60:10, 61:14,
72:3, 79:7,
91:16, 95:5,
115:23, 153:10,
154:14, 154:15
march
42:24, 43:12,
82:15, 83:3
mark
17:19, 21:25,
29:11, 30:15,
34:11, 40:14,
42:6, 48:12,
49:23, 55:19,

58:10, 62:17,
67:20, 71:11,
75:16, 82:7,
84:22, 88:23,
92:12, 96:20,
97:13, 99:16,
107:1, 108:4,
112:3, 113:21
marked
17:21, 22:8,
24:16, 29:13,
30:17, 34:13,
40:16, 42:8,
48:14, 50:2,
50:23, 50:24,
55:21, 58:12,
62:19, 65:2,
67:22, 71:13,
75:18, 80:11,
82:9, 85:1,
89:1, 92:14,
96:22, 99:18,
107:2, 108:5,
112:4, 112:8,
118:22, 125:4,
152:18
market
43:18, 106:15,
109:22, 122:18,
127:11, 130:21,
131:13, 131:14,
137:8
marketed
127:6
marketing
150:12, 152:23
markets
150:6, 150:7,
150:13
marking
118:18
marks
97:13, 164:21
match
160:8, 160:18
matched
126:23
materials
68:4

math
100:8, 105:7,
105:10, 105:12,
105:18, 107:9,
108:3, 111:10,
148:4, 148:10
mathematically
161:23
matter
8:5, 18:1,
20:20, 46:7,
47:23, 111:2,
124:3, 131:12
matters
55:5, 166:9
matthew
76:16
matthew's
76:16
maximize
78:1
maybe
26:24, 44:24,
74:10, 141:12,
147:16
mcguire
3:5
mcguirewoods
2:2, 4:10,
8:15, 8:19, 22:5
mean
10:15, 17:7,
25:11, 28:16,
31:16, 32:10,
32:23, 33:15,
33:17, 40:9,
41:10, 44:22,
83:12, 87:13,
91:11, 94:10,
98:9, 105:6,
106:5, 111:1,
116:4, 116:11,
117:11, 123:21,
124:3, 124:6,
127:1, 128:9,
129:8, 136:1,
137:16, 140:13,
143:13, 147:14,

Transcript of Anthony Davis, Designated Representative
September 12, 2022

189

148:13, 149:12,
151:20
**meaning**
66:13, 67:10
**means**
21:20, 86:2,
103:14, 109:7,
109:16, 114:2,
114:3, 114:4,
114:18
**meant**
28:23, 63:12
**measure**
154:12, 154:16
**media-taped**
8:3
**median**
134:24, 141:19,
141:23, 142:1
**meet**
11:22, 77:24,
78:23, 78:24,
90:19, 162:24
**meeting**
5:20, 72:20,
73:4, 76:3,
76:7, 76:10,
76:25, 90:20,
93:2, 152:24,
163:1, 163:9,
163:11
**meetings**
163:12
**member**
10:24, 23:20,
41:10, 44:6,
45:1, 49:13,
49:14, 49:17,
62:11, 70:1,
70:6, 83:5,
85:7, 90:14,
91:16, 144:22,
145:2, 145:9,
146:1, 156:2,
156:12, 156:21
**members**
15:15, 17:8,
17:9, 17:11,

47:16, 61:5,
79:7, 104:1,
109:3
**memorialized**
153:3
**memories**
13:22
**memorized**
159:19
**mentioned**
24:19, 29:1,
74:22, 139:13
**mentions**
87:12
**mess**
96:6
**met**
11:24, 57:19
**method**
98:12
**methodologies**
98:20, 99:10,
99:12
**methodology**
95:25, 98:23
**methods**
98:3
**metric**
154:19
**michael**
13:20, 19:4,
19:5, 20:11,
22:5, 30:8,
31:5, 37:3,
40:24, 41:1,
64:6, 68:9,
72:9, 73:11,
73:23, 78:16,
85:11, 85:24,
87:12, 87:25,
89:8, 113:1,
113:16, 127:20
**michael's**
74:2
**michelle**
1:25, 2:4,
8:24, 166:3,
167:9

**middle**
126:9, 126:11,
126:14, 126:24
**might**
70:3, 90:19,
151:23
**mike**
49:22, 60:25,
61:5, 62:23,
69:19, 74:21,
76:4, 76:22,
77:1, 77:4,
82:13, 112:9,
112:23
**million**
28:17, 28:19,
100:24, 102:20,
103:7, 103:19,
103:23, 104:3,
104:12, 116:12,
125:20, 128:15,
130:3, 130:4,
130:6, 142:6,
147:20, 147:24,
148:3, 148:4,
148:15, 150:21
**mind**
68:6, 121:8,
139:8
**minimum**
125:24
**minority**
84:17
**minute**
109:15, 136:21,
141:5
**minutes**
163:16
**missed**
141:12
**missing**
87:11
**missner**
3:13
**misspoke**
69:9
**misspoken**
69:7

**misstates**
68:21
**mistaken**
14:19
**mitchell**
3:13, 8:22
**mitigate**
79:25, 80:2,
80:4, 80:6,
83:19, 84:8
**mixed**
57:1, 57:7
**mixing**
108:25
**mm-hm**
13:14, 15:22,
18:16, 18:18,
19:23, 34:20,
34:22, 35:24,
40:23, 40:25,
44:1, 45:21,
46:1, 46:6,
50:21, 59:1,
59:9, 59:19,
62:25, 64:12,
65:19, 102:2,
105:11, 108:21,
127:8, 133:6,
134:13, 147:5
**mm-mm**
5:17
**mmm**
68:4, 72:20
**moic**
93:5, 94:25,
100:20, 104:9
**moment**
22:12, 36:11,
65:8, 78:3,
124:22, 146:7
**monday**
1:16, 72:19,
72:20, 73:4,
76:3, 76:7,
76:18, 76:25
**money**
24:2, 136:11,
150:23

Transcript of Anthony Davis, Designated Representative
September 12, 2022

190

monitor
8:10
month
136:9, 136:10,
136:17
monthly
136:9, 136:16
months
28:9, 43:25,
64:8, 64:15,
78:23, 79:12,
100:23, 120:21,
147:16
more
13:22, 33:3,
64:6, 75:14,
86:1, 88:1,
88:7, 90:20,
95:8, 101:8,
101:22, 101:23,
103:20, 113:22,
115:16, 115:17,
115:20, 116:12,
116:16, 120:3,
131:19, 137:20,
137:24, 140:20,
140:21, 141:20,
143:7, 143:16,
149:16, 154:25
morning
72:19, 72:20,
73:4, 76:3, 76:7
most
32:19, 32:21,
98:20, 99:10,
102:25
mostly
102:23
motion
21:13
motivation
132:4
move
49:20, 100:18
moving
59:7, 60:5
much
25:8, 27:13,

58:5, 91:9,
101:19, 102:12,
102:13, 104:11,
115:15, 116:1,
148:25, 149:16,
154:20, 158:8
multiple
23:13, 27:7,
27:13, 27:15,
27:25, 28:8,
60:9, 61:15,
83:11, 100:20,
100:24, 100:25,
101:10, 104:17,
105:7, 105:9,
105:13, 105:15,
105:16, 105:20,
107:19, 108:2,
113:9, 113:10,
113:11, 115:24,
115:25, 116:5,
125:24, 126:8,
128:24, 130:16,
134:18, 137:4,
138:11, 143:10,
148:9, 148:16
multiples
27:12, 28:13,
28:20, 28:21,
101:12, 104:24,
115:7, 121:3,
123:12, 123:18,
123:20, 130:11,
141:8, 141:15,
145:5
multiplication
103:10, 103:11
mumbling
70:10
must
77:11, 95:14,
154:1
mutter
61:14
mutual
11:24
myself
80:18, 83:23,

84:19, 85:21

**N**

naturally
148:9
nd
69:23, 159:15
near
28:14, 141:14
near-term
72:22
necessarily
41:12, 116:19,
154:12
need
9:13, 9:19,
41:3, 43:3,
45:15, 74:5,
79:10, 118:1,
151:25, 152:2
needed
33:3
needing
9:17
negative
61:9, 63:23
negotiate
70:2, 74:5,
94:1
negotiated
43:15
negotiating
33:24, 120:18,
130:5
negotiations
124:4, 124:7,
151:15
neither
37:3
net
50:25
never
37:23, 55:4,
91:20, 95:18,
97:12, 97:19,
101:5, 105:3,
105:4, 116:1,
116:6

new
108:4, 118:5
next
23:8, 68:13,
68:17, 69:18,
69:23, 70:18,
71:3, 73:16,
76:21, 122:6,
130:12, 135:20,
148:6
nice
84:20, 110:20,
111:6, 119:17
nicer
137:13
night
131:5
nine
147:16, 156:9
none
28:13, 28:17,
50:24, 102:6
nonetheless
72:18
nonparty
68:24
nonresponsive
21:11
normally
13:8, 41:8,
41:15, 41:19,
44:10, 112:21,
113:25
nos
125:5
notation
146:12, 146:18
note
28:7, 71:2,
97:17, 106:11,
122:21, 130:2,
135:16, 158:12
nothing
51:2, 66:11,
162:8
nothing's
102:1
notice
2:3, 46:19,

Transcript of Anthony Davis, Designated Representative
September 12, 2022

191

80:22, 112:2
**noticed**
47:7
**notification**
39:21, 92:18,
93:7
**notified**
41:9, 55:13,
55:17
**november**
40:10, 40:11,
108:13, 119:3,
119:7, 119:11,
119:13, 119:14,
121:24, 122:3,
125:12, 126:4,
132:25, 135:5
**november-ish**
94:18
**number**
8:3, 8:8,
13:19, 17:11,
22:19, 29:12,
30:16, 34:12,
34:18, 35:2,
36:16, 36:23,
42:7, 47:11,
48:13, 49:24,
50:1, 55:20,
58:11, 62:18,
64:19, 67:21,
68:23, 69:14,
71:12, 72:6,
74:20, 75:17,
81:11, 81:13,
82:8, 98:19,
104:18, 104:19,
105:23, 106:18,
110:18, 117:6,
117:20, 117:21,
117:22, 118:17,
126:13, 127:4,
127:17, 127:22,
130:9, 131:22,
132:23, 132:24,
133:3, 141:1,
146:3, 148:3,
158:3, 159:5,

159:17, 159:23,
159:24, 162:3
**numbers**
13:23, 100:12,
100:14, 106:4,
106:6, 107:11,
126:19, 130:7,
130:10, 130:19,
130:22, 137:16,
147:11, 147:18,
148:16, 155:16,
155:21, 155:23,
160:11, 160:23,
161:1, 162:4
**nw**
3:14

**O**

**oath**
9:15
**object**
16:9, 21:13,
32:12, 34:23,
46:19, 46:22,
48:10, 51:9,
51:13, 51:19,
51:24, 86:14,
86:16, 87:3,
116:23, 159:7
**objected**
66:21, 97:19,
101:5, 105:4,
115:25, 116:1
**objection**
11:8, 15:9,
16:19, 20:17,
21:10, 35:11,
39:10, 44:8,
45:8, 46:14,
49:7, 51:7,
54:16, 57:23,
59:13, 60:16,
65:24, 68:20,
72:15, 79:3,
81:9, 83:16,
107:21, 118:9,
139:22, 144:9,
151:18, 153:5,

153:20, 157:14,
158:10, 159:21,
163:19, 164:6
**objections**
21:1, 44:13,
51:12, 51:13,
51:17, 52:9,
99:11
**obligated**
72:8
**obvious**
48:9
**obviously**
9:10, 30:12,
72:7, 100:13,
150:22
**occasions**
60:9, 60:10
**occurred**
12:11
**october**
10:20, 23:2,
40:20, 78:7,
159:15
**odyssey**
93:1
**off-limits**
83:1
**offer**
5:5, 23:1,
23:6, 50:10,
50:19, 52:8,
52:12, 52:19,
56:2, 95:4,
95:6, 106:9,
108:12, 108:23,
119:9, 120:3,
121:1, 129:4,
160:9
**offered**
107:20, 110:17,
124:2
**offering**
120:11, 120:17
**offers**
24:23
**office**
167:2

**officer**
40:21, 41:14,
91:11
**often**
13:17, 90:20
**oh**
31:15, 42:23,
87:21, 98:18,
115:3, 133:4,
140:8, 146:19,
153:13
**olijar**
3:21, 8:12
**once**
61:16, 83:6,
110:11
**one**
9:11, 10:21,
10:22, 14:5,
14:7, 18:23,
19:4, 24:11,
28:4, 33:7,
34:5, 36:23,
37:13, 48:19,
49:15, 52:18,
53:9, 58:24,
59:2, 61:6,
61:21, 64:14,
65:8, 66:18,
81:8, 81:15,
83:19, 85:13,
86:18, 91:3,
92:9, 92:21,
95:6, 95:18,
96:12, 96:13,
97:6, 97:25,
98:3, 98:24,
100:7, 105:16,
105:17, 107:14,
111:19, 112:17,
115:14, 117:5,
124:22, 124:25,
125:10, 127:1,
133:18, 136:24,
143:5, 145:15,
146:7, 148:11,
149:25, 155:2,
161:2

Transcript of Anthony Davis, Designated Representative
September 12, 2022

192

| | | | |
|---|---|---|---|
| **one-time** | **organized** | **outrageous** | 114:17, 114:20 |
| 155:7 | 52:16, 93:10, | 121:21 | **owns** |
| **ones** | 134:8 | **outside** | 96:13, 109:11 |
| 98:20, 125:14 | **orient** | 46:20, 47:17, | |
| **ongoing** | 99:25 | 49:7, 81:9 | **P** |
| 129:6 | **original** | **outsource** | **page** |
| **only** | 43:20 | 141:14, 141:20 | 4:3, 4:8, 5:2, |
| 24:17, 24:19, | **other** | **over** | 6:2, 7:2, 18:4, |
| 25:9, 40:1, | 10:25, 11:3, | 13:19, 13:20, | 18:5, 18:15, |
| 53:4, 59:12, | 11:13, 21:3, | 15:25, 35:21, | 19:11, 19:22, |
| 62:2, 66:12, | 21:5, 24:21, | 37:25, 56:10, | 21:16, 22:18, |
| 66:14, 66:18, | 33:6, 40:1, | 56:16, 58:8, | 25:25, 42:17, |
| 70:25, 81:25, | 48:25, 49:5, | 58:21, 61:4, | 82:22, 98:22, |
| 84:20, 96:12, | 55:4, 72:3, | 61:7, 79:9, | 112:13, 113:18, |
| 109:13, 110:11, | 79:2, 81:6, | 82:20, 93:3, | 125:16, 126:2, |
| 110:16, 110:22, | 82:3, 91:16, | 94:25, 95:13, | 126:6, 126:12, |
| 110:25, 111:5, | 101:13, 121:17, | 95:17, 116:1, | 126:18, 128:8, |
| 113:14, 136:25, | 125:14, 130:10, | 121:2, 142:8, | 128:18, 133:3, |
| 145:24, 154:7, | 132:3, 132:24, | 143:4, 156:5, | 134:2, 134:18, |
| 160:4 | 133:18, 145:10, | 157:4, 161:25 | 134:19, 136:23, |
| **operating** | 148:11 | **overestimated** | 137:17, 137:23, |
| 10:10, 14:3, | **others** | 143:21 | 141:5, 146:5, |
| 14:5, 14:8, | 57:2, 83:23, | **oversight** | 148:13, 148:23 |
| 14:11, 14:12, | 139:2 | 90:18 | **pages** |
| 14:14, 14:15, | **otherwise** | **overvalued** | 1:24, 34:21, |
| 14:19, 14:24, | 9:14, 65:18 | 122:22 | 35:21, 127:14 |
| 15:1, 72:25, | **out** | **overview** | **paid** |
| 73:1, 73:2, | 15:14, 27:7, | 72:23 | 22:25, 23:4, |
| 73:3, 73:5, | 28:1, 38:1, | **owe** | 24:7, 24:10, |
| 91:15, 92:20 | 44:5, 44:11, | 120:17 | 24:12, 53:5, |
| **operative** | 56:13, 61:6, | **owed** | 58:21, 110:8, |
| 31:16, 31:18, | 70:18, 73:15, | 23:6, 23:10, | 124:10, 143:17 |
| 31:22, 34:5, | 76:11, 82:24, | 24:2, 110:20, | **paper** |
| 53:11, 53:12 | 85:25, 89:24, | 119:22, 120:6, | 118:11, 127:24 |
| **opinion** | 91:7, 103:13, | 120:9, 162:9, | **paperwork** |
| 53:7, 73:20, | 105:1, 105:14, | 162:10 | 41:6, 47:5, |
| 120:12, 144:20 | 108:8, 108:10, | **own** | 145:5 |
| **opposed** | 110:9, 119:19, | 32:16, 87:19, | **paragraph** |
| 109:8, 123:6 | 120:5, 130:22, | 95:8, 95:12, | 22:23, 23:8, |
| **option** | 136:11, 138:8, | 95:20, 95:23, | 24:3, 24:6, |
| 108:3 | 143:6 | 96:13, 105:4, | 24:18, 36:8, |
| **oranges** | **outbursts** | 129:25, 142:8 | 36:9, 36:10, |
| 109:1 | 62:16 | **owned** | 65:8, 65:9, |
| **order** | **outcome** | 12:5, 87:18, | 66:13 |
| 44:6, 152:2, | 126:23, 166:22 | 87:19 | **part** |
| 152:25 | **outcomes** | **owner** | 35:3, 40:2, |
| **organization** | 92:8 | 88:9, 114:19 | 62:2, 79:8, |
| 141:18 | **outlines** | **ownership** | 90:24, 132:2, |
| | 35:25, 36:1 | 97:9, 114:13, | |

Transcript of Anthony Davis, Designated Representative
September 12, 2022

132:4, 138:16,
139:10, 146:12,
152:25, 159:3
**participate**
73:4
**particular**
81:7, 82:2,
86:9, 92:21,
93:7, 115:8,
134:6
**particularly**
91:10, 91:11,
123:20, 130:20,
134:8, 156:15
**parties**
9:11, 41:25,
53:6, 83:11,
166:20
**partner**
10:10, 13:9,
14:3, 14:6,
14:8, 14:11,
14:12, 14:14,
14:15, 14:19,
14:24, 15:1,
72:25, 73:1,
73:5, 91:15,
113:2
**partners**
10:8, 10:9,
10:15, 11:18,
11:20, 12:3,
68:25, 73:3,
92:20
**party**
84:1, 150:7
**past**
89:12
**pat's**
27:7, 41:2,
43:18, 48:21,
56:2, 58:20,
60:6, 65:6,
73:20, 73:21,
74:2, 79:9,
83:23, 85:6,
90:7, 96:19,
97:22, 98:1,

98:15, 101:3,
111:16, 126:5,
132:5, 138:9,
144:6, 155:14,
157:11, 157:25,
161:16, 163:6,
163:17
**pat-like**
111:16
**patrick**
1:4, 8:5, 8:20,
9:24, 11:22,
12:17, 12:23,
22:3, 68:5
**pay**
123:20, 129:10,
136:8
**payment**
15:7, 67:3
**payments**
30:6
**payout**
50:25, 105:4,
110:7, 110:8
**payouts**
107:12, 109:9
**people**
49:18, 57:1,
70:13, 98:10,
109:4, 123:22,
129:23, 136:3,
140:23, 140:24,
140:25
**people-intensive**
101:22
**perceived**
63:5
**perceives**
74:22
**percent**
23:15, 58:25,
63:11, 63:16,
63:18
**percentage**
114:18, 114:21,
124:11
**perella**
6:23, 139:3,

141:2, 141:8,
145:15
**perfect**
76:17, 137:7
**perform**
16:1, 152:2
**performance**
57:18, 63:24,
64:3, 110:14,
119:19, 120:9,
157:2, 161:21
**performed**
13:8, 59:3
**performing**
15:24
**period**
79:9
**periods**
160:21
**perpetrator**
120:2
**person**
48:25, 49:5,
49:11, 100:13,
147:19, 149:23,
150:6, 150:13,
150:14
**personal**
39:19, 47:18,
49:10, 166:13
**personally**
25:5, 54:4,
54:6, 54:19,
55:14, 55:17
**perspective**
17:15, 45:11,
45:16, 61:11,
90:21, 91:14,
111:23, 155:25
**perspectives**
89:10
**pharma**
85:15, 141:13,
148:24
**pharmablock**
5:22
**phone**
33:2, 33:22,

82:20, 136:8,
153:4
**piece**
138:2, 138:5,
138:6, 139:21
**pipeline**
72:22, 72:23
**pitch**
6:20, 6:21,
6:22, 6:23,
6:24, 122:1,
122:7, 123:7,
123:11, 124:24,
125:8, 125:15,
131:3, 133:2
**piyush**
112:10, 113:20
**place**
8:14, 43:1,
48:22, 64:11,
72:25, 73:6,
139:19, 166:16
**plaintiff**
1:5, 3:3, 8:19,
9:23, 65:16,
66:6
**plaintiff's**
5:14, 66:13
**plan**
129:16
**planet**
8:13, 8:24
**platform**
126:7
**pleadings**
54:25
**please**
8:16, 8:25,
10:16, 26:4,
51:18, 74:12,
108:18, 112:16
**plus**
104:3
**point**
10:21, 10:22,
32:1, 35:19,
53:1, 63:11,
63:21, 63:25,

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                                                194

71:4, 77:5,
78:11, 84:7,
122:19, 131:21,
134:19, 136:2,
139:15, 156:8
**points**
58:6, 63:9,
63:16, 108:21,
109:6
**policy**
6:12, 97:3,
97:5, 97:6,
97:11, 97:16
**poor**
131:6
**portfolio**
15:24, 96:1
**portion**
20:4
**position**
11:11, 22:15,
26:23, 27:6,
90:12, 91:10,
93:20, 93:22
**positions**
10:25, 11:2,
11:13
**positive**
57:1, 57:8,
63:23, 64:6
**possibility**
65:12, 130:23
**possible**
84:3, 100:16,
105:6, 106:2,
106:3, 123:23,
123:24, 124:10,
129:24, 150:15
**possibly**
26:23
**potential**
65:12, 75:25,
77:25, 85:20,
89:10, 90:3
**potentially**
93:4, 122:5
**power**
16:15

**ppg**
10:1, 30:4,
30:5, 30:13,
50:23, 63:3,
63:4, 69:20,
73:14, 74:4,
76:11, 76:14,
82:24, 82:25,
85:24, 86:1,
87:11, 87:12,
87:17, 88:1,
88:4, 89:10,
90:4, 107:9,
115:23, 142:5
**practical**
17:16
**precedent**
99:8, 128:21,
134:17, 135:8
**precedents**
101:11
**precise**
13:22, 121:20
**precisely**
70:24
**predates**
93:7
**prefer**
78:18
**preferred**
98:12, 103:22,
103:23, 104:3,
109:12, 109:19,
109:20, 109:21
**preliminary**
7:3
**premise**
159:2
**premium**
129:10, 142:5
**prep**
147:25
**prepare**
45:24, 46:2,
151:16, 163:21
**prepared**
122:9
**preparing**
163:15

**present**
3:20, 90:15
**presentation**
147:15, 157:5
**presentations**
149:6
**presented**
23:17, 26:5,
28:20
**pretty**
35:4, 84:4,
135:14, 136:4
**previous**
56:16, 108:24,
117:3, 134:18,
148:23, 166:6
**previously**
30:4, 34:17,
73:17, 77:1,
111:18, 137:2,
137:6, 151:13
**price**
23:16, 28:25,
123:23, 123:24,
124:1, 124:10,
142:6
**primary**
13:21, 124:19
**principles**
154:9, 154:10,
154:22
**print**
37:25
**prior**
12:16, 14:8,
22:7, 25:3,
26:19, 32:12,
52:18, 53:9,
56:17, 64:9,
77:19, 105:4,
157:12, 159:13
**private**
13:9, 98:5,
102:24, 103:1,
131:12
**privilege**
163:22
**probably**
82:19

**problem**
9:18, 29:8
**procedures**
47:15
**proceed**
41:5
**proceedings**
56:14, 166:14
**proceeds**
124:11
**process**
15:23, 25:16,
25:20, 69:24,
122:15, 163:13
**produce**
131:5, 132:20
**produced**
35:5, 35:8,
35:18, 37:21,
50:18, 58:16,
68:2, 68:7,
68:24, 69:1,
69:5, 97:4,
146:13, 152:15,
152:17, 152:24,
158:19
**producing**
132:21
**product**
163:22
**production**
34:9, 35:3,
35:17, 82:17,
146:12
**profile**
157:24, 158:2,
159:25
**project**
136:12, 136:13
**projection**
134:9
**projects**
136:16
**pronounced**
154:14
**proper**
51:14, 51:17,
144:20

Transcript of Anthony Davis, Designated Representative
September 12, 2022

195

properly
143:14
propharma's
16:14, 35:23,
57:21, 65:6,
66:7
proposal
83:9
proposed
66:23
proposes
120:13
proved
116:8
provide
26:10, 94:12,
106:5, 132:7,
140:17, 152:6,
152:9, 153:15,
160:12
provided
23:5, 24:9,
24:23, 26:16,
27:1, 27:5,
28:12, 100:9,
104:15, 106:4,
106:8, 122:12,
127:16, 130:18,
160:7, 160:9,
162:2
providing
132:5, 148:7
provisions
35:22
public
98:4, 102:11,
102:12, 102:18,
102:23, 113:14,
128:16, 128:19,
129:1, 134:23,
134:24, 148:24
publicly
98:21, 98:25,
99:7
pull
69:20, 73:14
purchase
6:19

purchases
5:22
purport
39:14
purports
30:22, 37:1
purposes
160:24
pursuant
2:3, 43:19
pursue
61:22
pursuit
90:6
put
45:6, 118:5

**Q**

q1
108:6
q2
5:19
quarter
91:3, 105:1,
106:15, 106:21,
113:13, 157:2,
157:3, 157:17
quarter-to-quart-
er
57:16
quarterly
15:24, 23:5,
57:14, 90:19,
90:21, 153:25
quarters
57:16, 58:1,
116:19
question
11:17, 14:4,
15:11, 16:8,
16:10, 16:12,
16:20, 16:23,
16:24, 20:9,
20:24, 23:25,
26:17, 32:13,
32:15, 32:17,
32:18, 32:19,
32:21, 33:13,

36:12, 36:13,
41:7, 45:4,
46:17, 46:20,
47:9, 47:22,
49:2, 51:4,
52:6, 55:6,
65:20, 72:12,
79:23, 81:5,
81:23, 85:6,
86:8, 86:14,
87:4, 89:13,
89:19, 107:23,
108:14, 108:18,
134:25, 135:25,
144:12, 144:16,
157:9, 157:17,
159:1, 159:3,
159:7, 159:17,
159:23, 159:24,
160:4, 163:2,
164:7, 164:14
questioning
35:11
questions
7:4, 47:14,
51:9, 67:2,
86:18, 86:19,
152:13, 152:24,
153:15, 157:23,
158:21, 158:24,
159:12, 160:6,
163:24, 164:20
quick
96:5
quickly
123:15, 123:19,
129:15
quite
13:18, 38:25,
43:9, 57:3,
61:20, 85:16,
90:21, 121:22,
123:13, 135:12

**R**

races
96:12
raised
83:11

raising
78:10, 87:23
ran
89:9
range
126:15
rate
161:4
rates
101:17
rd
29:9, 93:18,
93:23, 93:25
reach
44:11, 85:25
reached
44:5
read
20:10, 20:13,
20:24, 29:20,
30:1, 36:11,
70:13, 87:22,
89:16, 108:16,
109:15, 141:25,
156:13, 159:1,
165:3
reading
73:19, 87:13,
99:3, 109:17,
109:18
reads
21:19, 22:24
real
102:5
reality
109:23
really
16:12, 29:18,
96:4, 98:10,
102:16, 108:16,
111:6, 111:7,
131:6, 131:21,
132:12, 140:16,
140:20, 143:11,
147:17, 147:20,
148:5, 163:3
realm
130:23

Transcript of Anthony Davis, Designated Representative
September 12, 2022

196

**reason**
24:17, 24:19, 24:21, 25:9, 53:18, 71:2, 79:18, 123:17, 132:2, 132:7, 133:19, 137:4
**reasonable**
115:12, 137:3
**reasonably**
70:3
**reasons**
79:8, 95:5, 132:4
**recall**
10:21, 10:24, 12:12, 12:19, 12:25, 13:17, 27:3, 27:4, 54:7, 54:11, 75:5, 75:8, 104:21, 104:23, 106:7, 155:19, 163:7, 163:11, 164:8, 164:16
**receipt**
30:3
**receive**
23:22, 41:9
**received**
27:3, 30:21, 36:22, 80:23, 92:5, 108:23
**recent**
32:19, 32:21, 98:5
**recess**
39:5, 74:15, 81:18, 96:9, 151:9
**recognize**
30:25, 31:2, 31:3, 55:25
**recognizing**
85:23
**recollect**
55:14, 57:14, 57:15

**recollection**
14:13, 24:7, 24:8, 24:13, 59:20, 82:3, 88:6, 88:11, 130:24
**recommended**
97:23
**record**
9:16, 12:21, 21:12, 37:19, 39:1, 39:4, 39:7, 68:22, 69:11, 74:13, 74:17, 75:3, 76:11, 81:14, 81:17, 81:20, 96:5, 96:8, 96:11, 96:17, 123:2, 125:3, 144:3, 151:8, 151:11, 158:12, 158:20, 159:22, 159:25, 164:23, 166:13
**recorded**
9:10, 9:15
**recording**
9:13, 9:14
**records**
24:10, 45:6
**recusal**
81:24
**recuse**
80:18, 81:4, 83:23, 85:20, 90:6, 91:16
**recused**
81:7, 82:1, 82:5
**recusing**
90:8
**redacted**
4:12
**reduced**
166:12
**refer**
54:1, 100:3,

122:7, 123:13, 129:8
**reference**
65:10, 68:7, 141:7
**referenced**
59:5
**referred**
55:16, 71:10, 110:12
**referring**
9:23, 10:5, 10:9, 10:13, 34:3, 49:16, 75:23, 75:25, 77:11, 87:11, 87:17, 109:9, 112:22, 114:14
**refers**
23:9
**reflect**
158:21
**reflects**
23:15, 163:21
**refrain**
86:25
**regard**
10:18, 12:18, 89:14, 132:15, 132:16
**regarding**
20:9, 30:13, 39:14, 41:7, 48:21, 49:19, 51:4, 65:17, 65:21, 66:6, 66:19, 67:5, 67:6, 67:9, 67:10, 67:12, 68:15, 69:6, 81:5, 81:23, 97:5, 100:9, 157:23, 162:1, 163:5, 163:16, 164:4
**regards**
77:6
**regular**
31:12

**regulatory**
76:12
**reilly**
107:8, 113:20, 127:21
**reinforced**
109:19
**rejected**
162:14
**rejecting**
129:4
**relate**
157:24
**relates**
46:24, 76:25
**relating**
15:6
**relations**
79:24
**relationship**
12:3, 73:19, 77:15, 77:17, 77:23, 78:12, 80:5, 80:6, 83:25, 84:3, 85:19, 86:12, 88:8, 91:23
**relationships**
131:7, 131:9
**relative**
166:18, 166:19
**relatively**
123:16
**relevant**
17:5, 64:7, 77:16, 98:7, 98:9, 99:9, 102:19, 132:14, 135:17, 135:18, 137:20, 137:21, 137:22, 137:24, 137:25, 155:4, 158:22, 160:10
**rely**
47:23
**remain**
83:8
**remained**
15:2, 90:9

Transcript of Anthony Davis, Designated Representative
September 12, 2022

197

remaining
103:18
remember
10:22, 12:10,
13:16, 38:12,
61:12, 81:23,
164:10
reminded
120:20
remotely
166:16
removal
30:4, 30:6,
47:10, 47:13,
65:17, 65:21,
66:7, 66:19,
67:3, 67:9,
67:15, 68:16,
68:17, 163:17
remove
20:16, 37:1,
60:15, 60:25,
61:3, 74:21,
83:20
removed
20:6, 32:24,
54:20, 54:22,
60:21, 61:5,
61:8, 61:13,
61:18
removing
91:21
repeatedly
143:20
repetition
120:2
replied
111:25, 129:3
replies
43:16
report
95:12, 127:23,
132:20, 141:2,
141:8, 145:15,
146:4, 146:6,
146:11, 155:22
reported
1:25, 154:8,

155:21, 156:6,
166:11
reporter
2:5, 8:23,
8:25, 9:12,
14:22, 39:8,
49:25, 99:2,
99:5, 118:21,
149:25, 158:4,
166:4, 167:10
reports
28:13, 95:16,
132:20, 145:16,
146:25, 151:14,
151:17
represent
8:17, 10:2,
46:4, 128:10,
154:25
representative
45:20, 46:18,
155:8
represented
128:14
representing
8:13, 8:24
repurchase
4:20, 4:23,
42:18, 43:2,
48:22, 48:24,
70:20, 117:23,
117:25, 118:6,
118:16
reputation
56:24, 62:3,
92:2
request
20:7, 26:16,
27:2, 30:2,
34:4, 42:20,
43:25, 61:8,
68:7, 69:3,
71:17, 79:9
requested
30:7, 61:12
requesting
81:1
requests
61:18, 69:6

required
111:22, 112:1,
162:22, 163:1,
163:4
research
141:17
reservations
133:12
resigns
71:24
resolution
86:10, 162:20,
162:23, 163:5,
163:8, 164:4,
164:17
resolve
29:8, 78:13,
83:7, 83:10,
84:2, 84:4,
84:14
resolves
30:12
respect
26:17, 45:19
respective
19:19, 21:22
respond
94:11, 119:14,
130:21
responding
80:21
responds
69:19, 85:24
response
27:1, 48:24,
65:15, 67:1,
68:25, 69:2,
69:5, 73:10,
73:11, 73:18,
77:3, 81:4,
111:16, 111:17,
129:3
responsibilities
13:3
responsibility
78:1
restate
107:23

restated
18:11
result
61:24
results
57:5, 57:7
retaining
140:23
return
93:3, 93:4
revenue
152:10, 158:8,
161:23
reverse
105:8
review
39:13, 43:7,
101:12, 115:10,
153:24, 163:16
reviewed
18:1, 162:4,
163:20
richard
85:8, 85:10,
87:10, 87:12,
87:16, 88:2,
88:4, 88:13,
89:7, 90:9,
90:13, 91:21,
91:24, 91:25,
92:4, 92:21,
143:18, 145:4,
145:10, 145:21,
145:22, 145:23
right
9:8, 17:8,
17:11, 17:16,
25:24, 27:17,
27:22, 28:11,
29:22, 35:9,
36:16, 37:8,
41:25, 43:4,
45:20, 45:22,
50:15, 51:1,
58:7, 66:16,
71:22, 75:11,
84:21, 85:15,
87:6, 93:15,

Transcript of Anthony Davis, Designated Representative
September 12, 2022

100:17, 100:18,
115:6, 116:9,
127:2, 128:10,
128:12, 130:14,
137:11, 138:10,
138:16, 139:8,
140:9, 141:1,
144:24, 149:12,
154:4, 156:7,
160:14
**rising**
101:4
**rmr**
1:25, 2:4,
167:9
**road**
82:21
**rob**
40:21, 42:13,
43:1, 43:11,
43:24, 44:4,
44:10, 44:16,
44:24, 45:17,
48:23, 157:3
**robert**
3:12, 8:21
**robinson**
22:4, 29:6
**role**
12:24, 12:25,
15:7, 15:20,
17:2, 17:17,
83:4, 89:23,
90:17, 90:18,
90:25, 91:2
**roles**
90:14, 91:14,
91:19
**romanette**
98:24
**roughly**
145:4
**routinely**
56:19
**run**
161:4
**running**
31:10

**S**

**said**
9:19, 28:2,
46:2, 46:12,
60:10, 60:14,
63:1, 69:8,
70:5, 73:16,
77:1, 111:7,
111:20, 116:6,
116:18, 118:14,
119:15, 120:16,
127:4, 130:15,
133:7, 135:16,
137:6, 145:5,
149:21, 150:12,
154:7, 158:21,
163:3, 164:8,
166:15
**sake**
155:5
**salary**
23:21
**sale**
26:7, 92:6,
92:10, 122:6,
122:15, 124:7,
124:11, 144:21,
145:25
**salesperson**
131:23
**same**
14:16, 19:11,
19:24, 21:1,
43:17, 44:13,
52:9, 61:22,
61:24, 82:22,
95:25, 99:11,
100:4, 102:11,
106:23, 115:24,
117:7, 117:9,
117:12, 117:13,
121:17, 121:23,
126:13, 129:8,
135:1, 138:3,
145:10, 146:1,
148:2, 157:19,
165:4

**san**
78:4, 78:24
**save**
118:10
**saw**
24:14, 31:9,
117:4, 140:10
**say**
9:10, 10:4,
10:8, 12:7,
13:15, 13:20,
20:20, 24:17,
30:2, 32:9,
33:14, 38:11,
40:1, 44:21,
46:8, 50:24,
50:25, 56:16,
60:24, 61:15,
64:10, 66:13,
66:18, 66:19,
68:12, 70:1,
70:6, 71:2,
76:20, 79:5,
81:11, 83:21,
88:22, 91:24,
93:25, 94:1,
94:24, 95:19,
97:14, 97:24,
98:8, 104:25,
105:15, 107:13,
115:24, 116:20,
128:9, 129:13,
129:17, 137:9,
140:7, 141:9,
145:17, 145:22,
145:24, 148:12,
148:22, 150:6,
150:8, 153:12,
154:14, 154:15,
155:6
**saying**
26:24, 32:4,
34:5, 54:13,
60:7, 60:8,
64:25, 67:1,
67:18, 68:16,
69:4, 69:5,
73:21, 73:24,

78:16, 83:23,
102:9, 104:2,
104:10, 109:7,
109:12, 113:17,
114:16, 120:6,
122:15, 123:13,
126:14, 138:23,
139:1, 142:15,
142:16, 145:8,
160:15, 160:17,
160:18
**says**
19:10, 20:4,
23:8, 23:11,
30:1, 30:9,
30:11, 30:12,
36:7, 41:1,
42:17, 43:1,
43:13, 44:2,
48:20, 50:22,
63:1, 65:10,
66:11, 66:14,
67:5, 68:5,
68:6, 68:8,
68:9, 69:13,
69:17, 71:18,
72:7, 72:9,
73:13, 76:2,
76:3, 76:5,
76:23, 77:10,
78:17, 80:17,
80:21, 82:18,
83:2, 85:13,
87:7, 87:25,
88:2, 89:7,
90:1, 92:19,
92:24, 97:23,
102:5, 107:9,
108:4, 108:10,
108:22, 109:14,
109:19, 111:13,
112:14, 113:19,
113:20, 114:5,
114:6, 114:24,
119:5, 125:18,
126:7, 126:9,
129:9, 129:12,
129:13, 134:23,

Transcript of Anthony Davis, Designated Representative
September 12, 2022

199

141:13, 141:19,
141:23, 142:4,
142:5, 142:8,
146:11, 146:13,
146:22, 147:3
**scheduled**
159:14
**scope**
46:20, 47:17,
49:8
**seal**
167:2
**second**
22:23, 31:25,
46:13, 46:16,
77:8, 81:8,
81:15, 127:24
**second-to-last**
42:17
**secondary**
31:17, 124:19
**secondly**
49:16
**secret**
149:8
**secretaries**
17:14, 17:18
**section**
18:17, 19:24
**see**
18:21, 30:9,
30:24, 31:1,
35:18, 36:6,
37:11, 39:17,
39:18, 40:2,
42:1, 42:23,
44:2, 44:18,
48:20, 53:11,
53:16, 64:3,
68:3, 70:16,
70:25, 77:10,
77:12, 78:11,
79:24, 79:25,
80:1, 84:21,
85:19, 87:21,
89:17, 98:18,
100:15, 106:14,
119:16, 124:21,

130:10, 134:14,
134:15, 137:15,
141:10, 141:12,
143:9, 143:10,
146:19, 146:21
**seeing**
70:15, 71:6,
79:22, 103:21,
120:1, 131:15
**seem**
38:5, 77:3
**seems**
21:23
**seen**
22:16, 41:5,
116:25
**select**
105:7, 105:22,
131:3
**selected**
56:5
**selecting**
103:3
**selection**
137:9, 163:20
**self-serving**
76:4
**sell**
28:25, 93:1,
102:4, 120:14,
122:9, 122:11,
122:16, 122:18,
123:6, 129:23,
130:16, 131:23,
132:21, 135:23,
136:15, 136:18,
136:20, 143:23,
145:19, 147:14,
147:17, 148:1,
161:5, 161:10
**selling**
13:7, 28:23,
122:17, 127:5,
129:7, 132:16,
132:21, 143:24,
147:25, 149:5,
149:6, 150:14
**send**
42:3, 42:18,

45:13, 53:23,
53:24, 54:2,
54:9, 54:10,
108:10, 112:1,
112:17
**sending**
68:4
**sends**
29:9, 29:22,
29:23
**sense**
26:18, 37:22,
63:2, 63:6,
69:20, 73:13
**sensitive**
113:1
**sent**
39:17, 54:12,
55:11, 55:15,
64:24, 92:18,
119:11
**separate**
48:18, 48:19,
49:18, 61:20,
89:25, 109:10,
124:25
**separated**
48:25, 49:6,
49:12
**separately**
90:3, 109:5
**separation**
41:2, 43:14,
43:21, 48:8,
48:22, 49:5
**september**
1:16, 8:9,
10:20, 12:9,
18:12, 22:6,
29:7, 29:9,
30:23, 50:6,
50:19, 90:10,
93:18, 93:19,
93:21, 93:23,
93:25, 94:24,
106:9, 108:13,
112:12, 114:5,
117:4, 117:8,

117:15, 117:17,
119:5, 119:6,
167:3
**serve**
83:4
**served**
14:11
**service**
148:24
**services**
85:16, 129:23,
132:22, 140:17,
141:14, 141:20,
143:23
**set**
62:15, 64:20,
70:12, 167:1
**settled**
65:22, 124:13
**settlement**
93:8
**seven**
119:14
**several**
67:2, 83:12,
86:24, 98:3
**share**
16:18, 104:16,
104:19, 111:22,
112:17, 112:21,
113:3, 113:4,
113:25
**shared**
94:15, 104:21,
104:24, 111:20,
113:5, 113:14
**shareholders**
103:25, 146:2
**shares**
23:23, 26:3,
50:25, 51:5,
58:20, 96:19,
98:2, 98:15,
100:10, 110:15,
143:16, 144:6,
144:21, 155:14,
162:10
**sheet**
165:7

Transcript of Anthony Davis, Designated Representative
September 12, 2022

200

**shift**
147:12
**short**
59:21, 151:3
**shorthand**
2:5, 166:4,
167:10
**shortly**
85:25, 87:8
**should**
16:18, 26:3,
27:8, 28:7,
41:4, 60:9,
60:21, 63:7,
68:12, 68:16,
69:17, 69:18,
71:2, 72:1,
75:7, 76:13,
80:18, 104:7,
114:8, 117:25,
135:6, 139:8,
143:6, 143:7,
149:14, 151:3,
162:7
**shouldn't**
56:21, 140:11
**show**
35:9, 95:17,
114:19, 121:14,
121:18, 129:24,
153:9
**showed**
66:24, 121:9
**showing**
130:2
**shows**
19:5, 19:8,
50:23, 107:10,
107:11, 114:8,
130:13, 134:7,
134:9, 134:14,
134:17, 134:18,
135:8, 158:14,
159:15
**shukla**
112:10
**sic**
19:2, 140:7

**side**
76:13, 88:9,
149:11
**sideways**
106:10
**sign**
24:24, 31:6,
41:18, 41:23,
42:2
**signature**
36:24, 37:3,
37:4, 165:10
**signature-bi6ds**
167:7
**signatures**
81:1
**signed**
14:5, 31:4,
31:6, 31:8,
38:11, 38:20,
39:21, 48:1,
52:18, 53:9,
92:25, 165:7
**significant**
23:12
**significantly**
80:7
**signing**
39:22
**similar**
85:8, 90:4,
90:7, 101:16,
102:4, 102:24,
137:10, 139:21
**similarly**
98:5
**simply**
26:25, 49:15,
51:3, 85:20,
90:14, 91:13,
100:16, 154:21
**since**
20:10, 23:2,
23:3, 35:17,
96:16, 130:20
**single**
138:24, 138:25
**singular**
139:12, 139:15,

139:16, 139:23
**sir**
26:22
**sit**
55:7, 164:2
**sitting**
72:1, 84:19
**situation**
76:6
**six**
13:1, 64:8
**skepticism**
131:20
**skip**
42:13
**slade**
22:6
**slightly**
103:20, 145:17
**slow**
99:2
**slowly**
101:4, 101:20,
123:16
**small**
18:19, 19:24,
20:2, 29:18,
29:20, 62:2,
93:4, 102:17,
102:18, 102:22,
103:1, 138:5
**smaller**
61:21, 102:16
**sold**
27:19, 27:23,
28:1, 28:10,
77:18, 85:22,
90:10, 116:7,
116:8, 126:19,
130:15, 134:11,
135:17, 145:3,
148:14, 160:23,
161:12, 161:13
**sole**
144:5, 162:12
**solely**
79:19, 86:11
**solution**
82:23, 90:5

**solve**
161:2
**some**
11:24, 33:6,
43:14, 44:12,
57:1, 57:19,
58:1, 58:2,
62:4, 69:20,
73:14, 83:22,
92:24, 102:5,
116:18, 122:19,
136:7, 137:12,
137:13, 137:20,
137:21, 137:24,
140:21, 151:23,
154:23, 157:23,
158:24, 160:6
**somebody**
41:8
**someone**
25:12, 25:14,
46:7, 69:24,
127:19, 146:24,
147:1
**someone's**
91:6
**something**
62:14, 77:11,
87:11, 101:18,
101:20, 109:4,
115:8, 116:17,
116:20, 142:14,
152:16
**sometime**
122:19
**sometimes**
70:20, 70:21,
136:4
**somewhat**
158:16
**somewhere**
138:10
**soon**
75:1
**sophisticated**
106:16, 106:22,
154:13
**sorry**
11:10, 14:18,

Transcript of Anthony Davis, Designated Representative
September 12, 2022

201

18:5, 18:8,
18:19, 22:20,
22:21, 23:25,
29:20, 41:21,
42:21, 45:19,
50:1, 50:9,
50:14, 64:19,
66:2, 66:23,
69:9, 70:10,
75:14, 76:21,
86:5, 87:18,
91:15, 98:22,
99:4, 105:18,
111:10, 114:25,
119:5, 127:15,
134:2, 134:4,
140:8, 142:24,
144:15, 146:15,
150:2, 155:22,
159:24
**sounds**
35:14, 75:11
**speak**
69:22, 131:13,
131:14
**speaking**
44:23, 51:12,
51:13, 51:16,
68:15, 86:6,
136:2, 156:3
**speaks**
45:1
**specialize**
13:24
**specific**
10:15, 12:10,
12:25, 13:2,
37:5, 46:20,
55:6, 77:6,
125:11, 125:14,
142:4, 145:18,
151:24, 152:1,
163:1, 163:11
**specifically**
27:4, 62:16,
106:24, 107:17,
120:5, 122:8,
122:9

**specified**
166:17
**specify**
10:16
**spend**
77:7
**splitter**
19:17, 20:14,
21:17, 21:21,
36:2
**spoke**
54:24, 60:22,
82:19
**sponsors**
129:10
**spot**
85:16
**st**
30:23, 68:6,
68:12
**stack**
34:18
**staff**
17:3, 17:4,
17:7, 17:13,
17:14, 17:18,
49:13, 136:14
**staffing**
28:4, 72:23,
136:14
**stamp**
112:13, 128:11,
128:13, 148:23,
149:4
**stamped**
128:18
**stand**
74:12
**stand-alone**
99:22
**standard**
8:11
**standpoint**
21:7
**stands**
141:17
**start**
50:7, 100:16,

100:17, 105:8
**started**
75:1
**starting**
79:11
**starts**
36:9, 107:12,
112:12
**state**
8:17, 87:10,
128:19, 130:12,
159:2, 166:5
**stated**
25:3, 52:22,
143:20
**statement**
52:7, 133:5,
158:13
**statements**
86:25, 156:13,
159:4
**states**
1:1, 8:7, 19:3,
19:7, 19:21,
52:11, 95:2,
113:21, 126:2,
128:23, 128:24,
129:2, 154:11,
154:23
**status**
84:10
**stay**
25:23, 76:17
**staying**
76:11
**stein**
3:13, 8:21
**stenographic**
123:2, 125:3,
144:3
**stenographically**
166:11
**step**
60:6, 63:2,
63:7, 70:18,
91:7
**steps**
97:20, 97:21

**steve**
22:4, 29:6
**still**
23:20, 24:2,
77:15, 77:20,
78:7, 144:22,
145:1, 145:9,
146:1
**stock**
23:10, 23:16,
24:20
**stop**
9:13, 9:14,
51:11
**straight**
130:5
**straightforward**
74:7
**strategically**
85:18
**strategics**
129:10
**strategy**
91:18
**street**
3:14
**strident**
79:14
**strike**
21:11, 21:14,
22:20, 49:19,
117:1
**stuff**
29:17, 41:21,
102:3, 105:12,
131:12, 137:16,
137:18
**style**
61:11
**subject**
4:11, 4:17,
4:19, 4:22, 5:3,
5:10, 5:16,
5:18, 5:21, 6:3,
6:5, 6:6, 6:8,
6:10, 6:17,
26:16, 39:9,
53:19, 53:22,

Transcript of Anthony Davis, Designated Representative
September 12, 2022

202

110:4, 111:2,
135:11
**subpoena**
69:1
**subsequently**
14:6
**subsets**
162:17
**substance**
61:11, 91:1
**suggest**
120:4, 120:19
**suggests**
23:10
**suite**
3:6, 3:14
**sum**
23:4
**summarized**
94:14
**summer**
129:7
**super**
67:12, 149:10
**support**
17:14, 23:12,
26:8, 127:14
**supported**
28:22
**supporting**
112:15, 135:15
**supports**
136:23, 143:11,
143:13
**supposed**
125:12
**sure**
9:9, 9:22,
10:3, 35:4,
37:16, 66:17,
77:9, 88:6,
88:18, 101:9,
106:3, 137:22,
138:4, 139:4,
146:8, 147:13,
151:6, 163:13,
164:9
**swear**
8:25

**sweet**
85:16
**switch**
18:3, 96:17
**sworn**
9:2, 9:5, 9:15,
166:8
**system**
48:3

**T**

**table**
114:7, 114:12,
114:15, 114:18,
114:19, 115:1,
115:3
**take**
9:13, 9:17,
38:22, 70:17,
74:10, 95:18,
96:4, 103:13,
114:20, 120:16,
120:17, 151:3,
152:25
**taken**
166:15
**takes**
103:22, 122:15,
147:14, 147:25
**taking**
8:14, 47:22,
93:21, 93:22,
103:8, 103:17,
108:9, 136:10
**talk**
64:13, 68:13,
68:16, 69:17,
69:18, 71:3,
71:5, 73:16,
94:22, 96:17,
123:12
**talked**
65:11, 89:18,
95:10, 96:18,
123:22, 133:16,
138:1, 139:11
**talking**
10:14, 24:4,

24:6, 24:18,
24:19, 27:20,
44:19, 59:6,
59:15, 64:14,
89:19, 91:8,
93:11, 105:20,
113:23, 114:11,
122:2, 142:9,
142:12, 147:13,
149:4, 156:23
**talks**
89:21, 95:12,
95:21, 143:3
**targets**
90:6
**team**
13:5, 13:8,
35:7, 35:13,
35:14, 37:19,
91:9, 127:20
**tease**
130:24
**tech**
28:5, 101:23,
101:24, 115:19,
123:18, 139:17
**tech-enabled**
115:19
**technically**
11:15
**tell**
10:19, 122:13,
154:4, 157:18,
159:17
**telling**
37:20, 39:24,
46:3, 54:20,
60:12
**tend**
102:13
**tenure**
101:3
**term**
19:25, 63:15
**terminate**
17:9, 25:12,
25:13, 25:14,
30:22, 69:24

**terminated**
14:7, 14:9,
14:20, 14:24,
24:21, 25:20,
26:13, 26:19,
31:19, 31:21,
31:24, 32:3,
33:6, 33:11,
33:21, 41:10,
46:8, 52:25,
53:3, 53:8,
60:3, 64:8,
70:6, 71:1,
72:14, 95:10,
110:11, 110:13,
111:3, 111:24,
132:9, 142:18,
143:8, 143:14,
143:15, 144:7,
144:13, 144:18,
144:20, 145:7,
151:1, 160:13
**terminating**
29:23, 31:22,
36:4, 70:17
**termination**
14:15, 14:16,
24:24, 25:17,
26:14, 31:13,
36:16, 39:14,
41:6, 41:18,
44:7, 44:12,
45:5, 45:25,
46:25, 53:20,
54:1, 55:9,
111:19, 112:2
**terms**
9:21, 10:4,
15:21, 20:3,
26:18, 90:25,
107:23
**testified**
9:5
**testify**
166:8
**testimony**
32:16, 62:6,
157:10, 164:9,

Transcript of Anthony Davis, Designated Representative
September 12, 2022

203

165:4, 165:5,
166:14
**th**
2:2, 3:14, 8:9,
10:20, 12:9,
18:12, 23:2,
45:14, 48:6,
82:15, 93:19,
93:21, 94:24,
107:6, 107:18,
110:17, 113:21,
119:13, 135:5,
167:3
**thanks**
38:9, 71:20,
76:20, 76:23
**theirs**
126:16
**themselves**
8:17
**thereafter**
166:12
**therefore**
51:3, 90:15,
95:13, 144:7
**thick**
118:12
**thing**
52:16, 83:19,
86:18, 116:4
**things**
24:11, 29:3,
86:19, 91:16,
101:17, 103:20,
104:20, 106:10,
113:4, 131:6
**think**
11:15, 16:16,
21:7, 38:22,
41:16, 46:24,
47:3, 47:8,
49:19, 57:25,
58:2, 62:5,
63:2, 63:6,
63:22, 63:23,
64:21, 71:9,
71:25, 74:8,
75:1, 76:12,

80:18, 82:1,
82:25, 83:6,
86:1, 87:25,
94:8, 94:13,
94:20, 99:14,
99:15, 100:2,
104:6, 108:17,
111:13, 112:25,
114:2, 114:8,
118:7, 118:10,
137:11, 138:8,
139:10, 139:11,
139:13, 140:7,
141:22, 141:25,
155:10, 156:9,
158:20, 160:4,
164:7
**thinking**
85:17
**third-party**
82:17, 92:22
**thomas**
85:8, 85:11,
86:11, 87:7,
87:10, 87:12,
88:5, 89:7,
90:9, 91:21,
91:24, 91:25,
92:4, 92:21,
92:23, 143:18,
145:4, 145:21,
145:22, 145:23
**thought**
28:8, 56:13,
57:2, 88:14,
116:18, 121:7,
131:2, 139:2,
139:5, 150:17
**three**
18:21, 47:12,
98:24, 99:8,
107:11, 107:12,
107:13
**through**
11:24, 21:4,
34:21, 35:21,
36:10, 70:13,
77:23, 89:9,

89:16, 90:22,
109:16, 113:12,
114:17, 118:16,
125:12, 141:5
**throughout**
97:9, 101:3,
105:2, 159:5
**throw**
138:4
**time**
8:10, 8:11,
10:22, 11:1,
13:1, 13:19,
13:20, 14:5,
14:7, 14:14,
14:16, 17:5,
24:4, 26:10,
26:12, 27:8,
27:18, 27:22,
31:9, 39:4,
39:7, 39:20,
43:5, 44:4,
52:8, 53:7,
54:23, 56:7,
56:10, 56:16,
57:10, 58:8,
58:21, 58:25,
59:11, 59:24,
61:4, 61:7,
74:13, 74:17,
74:24, 77:5,
77:14, 78:22,
79:9, 81:17,
81:20, 82:15,
84:7, 84:20,
88:12, 90:21,
91:1, 91:5,
92:10, 95:13,
95:17, 96:8,
96:11, 98:6,
98:7, 105:2,
106:6, 110:13,
110:25, 111:1,
111:5, 114:16,
116:1, 121:23,
122:16, 125:1,
130:18, 132:11,
133:20, 135:4,

135:21, 143:4,
144:8, 145:25,
147:14, 147:25,
150:1, 150:21,
150:23, 151:8,
151:11, 156:5,
157:4, 160:21,
161:5, 161:25,
162:8, 166:16
**timeline**
26:18
**times**
23:12, 28:8,
28:10, 56:20,
61:14, 61:15,
67:2, 71:10,
82:4, 83:12,
86:24, 91:3,
95:24, 103:9,
107:13, 114:20,
116:3, 116:6,
120:14, 120:15,
120:19, 120:22,
121:4, 126:10,
126:12, 129:12,
129:18, 129:19,
130:13, 130:17,
131:22, 133:8,
135:13, 137:17,
137:18, 138:8,
139:14, 141:22,
142:9, 143:10,
148:11, 159:5
**title**
10:19
**today**
8:12, 8:24,
9:10, 55:6,
122:14, 133:8,
139:14, 147:25,
148:5, 164:2
**today's**
8:9, 163:21
**together**
104:6, 104:7,
104:11, 125:1
**told**
25:5, 33:10,

Transcript of Anthony Davis, Designated Representative
September 12, 2022

204

33:20, 40:5,
52:25, 56:20,
67:1, 70:16,
70:25, 76:3,
110:19, 111:24,
119:21, 120:22
**tomorrow**
81:2
**tongue**
76:9
**tons**
148:20
**tony**
46:14, 82:18,
82:19, 83:1,
85:25, 89:9,
92:21
**took**
27:6, 64:11,
79:6
**top**
37:3, 37:4,
105:8, 125:18,
131:8, 141:23,
146:17
**topco**
1:8, 1:14,
4:14, 5:7, 8:5,
8:6, 8:22, 10:2,
18:11
**topic**
47:1, 47:6,
47:11, 81:11,
81:13
**topics**
7:4, 46:18,
46:21, 47:7,
49:8, 81:12
**total**
23:7, 104:5,
104:8, 108:19
**totally**
28:3, 28:15,
49:17, 91:19,
121:7, 126:15
**touch**
56:13
**tougher**
102:12, 140:24

**towards**
136:18, 147:21
**trade**
138:13
**traded**
98:21, 98:25,
99:7, 101:15,
102:24, 138:8,
138:10, 138:13,
139:13
**trades**
98:5, 137:16,
137:18
**trading**
134:24, 141:14
**traditional**
141:16
**trailing**
160:23, 161:3,
161:9, 161:11,
161:13, 161:17,
161:18, 161:19
**transaction**
26:7, 80:19,
81:7, 82:2,
99:8, 112:20
**transactions**
15:5, 15:8,
101:13, 128:21,
134:17, 135:8,
148:18
**transcript**
166:10
**transcription**
165:5
**transfer**
24:9, 135:4
**transferees**
19:19, 21:22,
21:24
**transferred**
150:23
**transmittal**
34:25, 35:2,
37:20, 39:10
**transmitted**
35:6, 37:7,
37:12, 37:15,

37:24, 38:4
**travel**
133:11
**treating**
44:25
**trending**
158:7
**tried**
118:10
**tries**
154:24
**trouble**
84:20, 109:24
**true**
14:2, 27:19,
28:11, 28:17,
36:17, 43:5,
49:4, 49:11,
49:15, 60:18,
121:25, 127:9,
143:24, 152:4,
165:4, 166:13
**truth**
166:8
**try**
50:8, 78:13,
100:15, 102:8,
134:16, 136:1,
137:8
**trying**
26:20, 29:8,
32:10, 65:22,
73:15, 78:8,
78:12, 78:20,
78:21, 79:24,
80:2, 83:7,
88:12, 89:24,
94:1, 101:25,
102:3, 109:24,
111:6, 114:10,
119:17, 120:3,
121:18, 123:23,
129:23, 131:22,
143:23, 153:10,
162:13
**turn**
65:7, 133:2
**turned**
143:5

**turns**
106:19
**twice**
117:10
**two**
20:11, 34:7,
34:8, 36:14,
43:25, 44:23,
53:25, 55:8,
55:9, 55:11,
55:15, 58:6,
58:23, 61:20,
73:12, 91:6,
98:24, 103:16,
104:4, 104:5,
104:10, 127:13,
132:24, 159:17,
159:25
**two-fifths**
119:18, 119:22
**two-thirds**
120:8
**twos**
159:23
**type**
43:14, 75:23,
140:15
**types**
31:11, 49:18,
103:21, 104:4,
104:10
**typewriting**
166:12
**typical**
105:5
**typically**
90:20, 98:19,
109:3, 113:5,
136:17, 137:7,
155:24
**typo**
86:2
**tysons**
3:6, 3:7

**U**

**ultimate**
16:2, 16:6

Transcript of Anthony Davis, Designated Representative
September 12, 2022

205

ultimately
77:18, 123:9,
131:10, 131:14,
131:24, 138:7,
148:15, 154:1,
160:25
un-trailing
161:9
unadjusted
154:21
under
9:15, 19:25,
23:1, 23:22,
52:23, 146:11,
158:1, 159:25,
166:12
underneath
30:11
understand
9:23, 10:4,
10:11, 10:17,
15:11, 20:14,
23:18, 26:22,
36:14, 36:18,
36:19, 37:13,
58:20, 65:22,
66:25, 78:17,
86:21, 108:17,
114:10, 114:11,
128:1
understanding
24:3, 41:3,
44:20, 102:1,
131:18, 149:17
understood
21:8, 25:2,
33:24, 53:6,
59:21, 60:23
undervaluation
23:9
undervalued
26:3
unfortunately
56:10
unilateral
43:4
unintelligible
99:1

unit
5:8, 42:18,
43:20
united
1:1, 8:7,
154:11, 154:23
units
15:15, 15:18,
15:21, 16:3,
43:2, 51:2,
59:10, 70:3,
92:6, 103:25,
114:16
unless
9:11, 87:11,
136:5
unnecessary
31:25, 32:9,
32:11, 32:23,
34:6
unpaid
23:6
unreasonable
121:5
unreportable
149:24
until
77:23, 85:21,
90:10
unusual
62:15
unusually
62:10
unvested
162:11, 162:13
upset
74:2
upsetting
131:4
upsides
126:8
use
9:21, 9:24,
10:1, 51:19,
51:24, 78:12,
88:17, 97:21,
98:1, 98:3,
98:10, 98:13,

130:20, 136:24,
136:25, 155:13,
155:15
uses
62:7
using
97:18, 113:21,
128:4, 134:23,
135:15, 135:23

**V**

vacation
82:22
vague
33:14
valuable
61:22, 62:2,
101:23
valuations
15:25, 16:1,
26:5, 26:11,
26:25, 27:4,
28:16, 28:18,
28:22, 57:17,
95:17, 95:23,
101:18, 113:4,
115:10, 116:2,
121:8, 121:11,
121:15, 121:19,
122:12, 129:10,
129:25, 131:1,
131:11, 131:13,
131:16, 131:18,
132:8, 132:12,
132:15, 135:24,
142:12, 143:19,
143:24, 149:11,
149:21, 150:25,
152:2, 153:24,
154:1, 162:19
valuator's
138:15
value
15:17, 23:23,
29:3, 43:18,
56:12, 57:12,
57:21, 63:5,
64:4, 78:2,

92:5, 97:14,
102:25, 103:6,
103:14, 103:15,
103:18, 103:23,
103:24, 104:3,
106:15, 108:7,
108:19, 109:10,
109:15, 109:22,
109:25, 110:5,
116:9, 116:11,
122:5, 123:5,
123:6, 125:19,
134:6, 134:15,
135:9, 142:9,
143:4, 143:21,
144:20, 145:2,
149:13, 150:10,
150:20
valued
28:6, 98:14,
121:17, 155:14
valuing
97:22, 148:5,
148:6, 148:21
vandegrift
112:9
variable
127:6
variety
64:1, 107:10,
131:15, 140:18
various
61:4, 70:7,
70:21
vcoc
19:6
verbal
66:22
verbally
33:10, 55:13,
55:16
version
18:13, 94:14,
144:25
versus
8:6, 120:11,
145:22, 158:8
vested
43:18, 50:25,

Transcript of Anthony Davis, Designated Representative
September 12, 2022

206

92:5, 110:13,
110:25, 111:5,
162:10
**vesting**
110:15, 111:1,
119:18, 119:19,
119:23, 120:7,
120:9
**veto**
16:14, 16:25
**via**
53:24
**victim**
120:1
**video**
8:10
**videographer**
3:21, 8:2,
8:12, 8:23,
39:3, 39:6,
74:12, 74:16,
81:16, 81:19,
96:7, 96:10,
151:7, 151:10,
164:21
**videotaped**
1:13, 2:1, 8:14
**view**
64:6, 71:25,
85:6, 86:17,
154:13, 155:1
**views**
64:2
**virginia**
3:7
**visibility**
158:9
**voc**
19:1
**voice-identify**
8:16
**voiced**
89:11

---

**W**

**wacker**
2:2
**wait**
19:14, 25:14,

128:2, 136:17,
146:15
**walk**
41:24
**want**
9:8, 9:20,
9:22, 10:3,
21:8, 25:12,
29:2, 29:5,
35:14, 39:1,
61:18, 64:4,
64:18, 65:7,
70:3, 72:5,
76:8, 78:25,
79:2, 79:17,
82:4, 82:6,
86:4, 89:5,
96:16, 96:17,
101:7, 108:16,
113:3, 118:4,
121:14, 132:17,
134:3, 136:21,
144:15, 144:16,
145:8, 145:18,
150:3, 158:25,
161:10, 161:11
**wanted**
60:13, 60:14,
61:5, 79:19,
87:20, 88:16,
105:5, 109:15,
162:8
**wants**
76:5, 94:11
**warehouse**
155:4, 155:5
**washington**
3:15
**way**
35:4, 44:11,
45:1, 49:11,
76:15, 83:21,
102:19, 102:25,
105:22, 106:2,
120:3, 135:9,
159:9
**ways**
154:14, 154:15

**we'll**
9:14, 40:7,
56:22, 82:23,
94:22, 124:25
**we're**
10:14, 25:13,
25:24, 32:2,
49:20, 70:19,
79:24, 81:16,
83:21, 89:19,
96:16, 100:22,
102:23, 103:17,
104:2, 104:10,
108:25, 111:8,
113:21, 116:16,
120:6, 120:7,
120:8, 120:10,
120:17, 121:13,
121:18, 122:15,
131:21, 138:23,
142:11, 147:13,
147:17, 155:23,
162:22, 163:1
**we've**
31:23, 38:24,
55:9, 74:8,
106:21, 116:25,
132:23, 135:10,
142:17, 160:10
**week**
68:13, 68:17,
69:18, 69:23,
71:3, 73:16,
80:21, 82:21,
91:5, 91:13,
92:25
**weighting**
115:15
**weinberg**
6:4, 6:23,
62:16, 76:8,
76:25, 77:13,
81:2, 139:5,
141:2, 141:8,
145:15
**well-known**
29:4, 132:1
**went**
35:21, 41:24,

92:21, 106:10,
152:22
**weren't**
34:8, 122:10,
123:20, 149:10,
153:13, 157:22
**west**
2:2
**whatever**
27:16, 77:13,
102:7, 110:18,
111:10, 145:20,
145:24, 156:9
**whereof**
167:1
**whereupon**
9:2, 12:20,
17:21, 22:8,
29:13, 30:17,
34:13, 39:5,
40:16, 42:8,
48:14, 50:2,
55:21, 58:12,
62:19, 65:2,
67:22, 71:13,
74:15, 75:18,
80:11, 81:18,
82:9, 85:1,
89:1, 92:14,
96:9, 96:22,
99:18, 107:2,
112:4, 118:22,
123:1, 125:4,
144:2, 151:9,
152:18, 164:24
**whether**
16:24, 27:5,
32:6, 36:17,
49:3, 53:3,
55:7, 55:11,
60:12, 60:21,
70:22, 73:4,
82:4, 83:13,
111:19, 120:24,
138:16, 144:12,
144:18, 164:3,
164:16
**whoever**
146:13

Transcript of Anthony Davis, Designated Representative
September 12, 2022

207

**whole**
70:12, 103:15,
166:8
**wide**
64:1, 131:15
**widen**
85:19
**william**
6:24, 124:15,
124:18, 146:4
**williams**
6:22, 132:25,
134:7, 139:3
**willing**
50:22, 123:20
**wired**
94:7
**wish**
84:17
**within**
166:4
**without**
20:6, 51:20,
79:23, 86:6,
131:4, 159:18
**witness**
4:3, 9:1, 9:2,
9:4, 11:9,
14:23, 15:10,
16:21, 20:19,
21:2, 22:11,
29:16, 32:20,
33:18, 44:15,
45:10, 46:11,
47:21, 51:21,
52:10, 54:18,
57:24, 59:14,
60:17, 64:21,
64:24, 66:1,
70:10, 70:11,
72:17, 79:4,
83:17, 94:3,
94:6, 94:16,
95:20, 96:12,
99:4, 99:6,
100:1, 107:22,
117:14, 142:21,
143:1, 143:2,

144:11, 150:2,
151:5, 151:19,
153:6, 153:23,
157:15, 158:5,
158:25, 163:23,
164:15, 166:7,
167:1
**wonder**
70:3
**wonderful**
91:25
**wondering**
73:17, 97:5
**woods**
3:5
**word**
62:7, 67:6,
67:12, 82:5
**words**
9:24
**work**
78:8, 78:21,
79:13, 84:14,
88:12, 105:7,
105:25, 109:4,
131:5, 153:18,
153:19, 163:22
**worked**
13:6
**working**
33:5, 91:23
**works**
43:6
**worse**
80:8
**worth**
16:3, 25:8,
95:22, 110:2,
110:23, 115:17,
115:18, 115:20,
116:16, 120:19,
120:22, 122:14,
122:20, 123:10,
131:15, 142:8,
142:17, 143:7,
150:17
**wouldn't**
21:9, 84:19,

113:25, 115:11,
132:3, 156:20
**write**
119:18, 133:15,
133:16
**write-up**
76:15
**writes**
48:24
**writing**
25:6, 25:22,
33:23, 38:16,
39:22, 40:4,
53:21, 55:1,
107:8, 133:10,
133:24, 153:3
**written**
20:7, 21:19,
25:17, 40:1,
133:18
**wrong**
62:14, 76:15,
111:16, 116:17,
116:20, 143:6,
144:16, 149:22,
151:23
**wrote**
53:17, 147:19,
147:20

**Y**

**yasskin**
42:14, 42:17,
42:25, 43:16,
48:20
**yeah**
22:13, 38:7,
38:25, 39:2,
45:23, 46:13,
47:6, 48:10,
52:14, 59:17,
64:16, 66:17,
67:5, 69:15,
69:17, 75:13,
83:15, 89:17,
93:15, 94:5,
94:23, 103:11,
106:11, 113:12,

117:19, 118:20,
119:16, 126:6,
127:3, 140:4,
140:10, 142:1,
142:2, 146:21,
152:15, 157:16
**year**
56:16, 75:9,
75:13, 91:3,
95:6, 95:8,
95:14, 95:18,
116:14, 116:16,
119:21, 122:2,
122:6, 132:13,
135:21, 136:5,
136:18, 142:10,
142:12, 142:17,
143:7, 147:16,
148:6, 151:1,
160:12
**year-old**
44:19, 44:24
**year-olds**
131:5, 131:6
**years**
13:1, 15:25,
38:8, 57:11
**yep**
18:20, 36:25,
107:16, 125:17,
128:5, 128:7,
133:1, 134:5,
141:3, 141:6,
146:23, 147:8,
147:10
**yes-or-no**
133:21
**yesterday**
89:9
**yields**
106:19
**yohler**
1:25, 2:4,
8:24, 166:3,
167:9
**yourself**
9:11

**Z**

**zero**
119:19, 120:9

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                                                     208

| $ | 0 | | |
|---|---|---|---|
| **$1,140,764** | **00** | **0000960** | **105** |
| 23:15 | 112:24, 151:8 | 82:17 | 108:13, 110:20, |
| **$100** | **0000077** | **0000968** | 110:23, 120:6, |
| 116:12 | 92:23 | 89:6 | 120:11, 120:17 |
| **$105,000** | **0000108** | **000186** | **105,000** |
| 108:23, 110:17, | 80:16 | 68:2 | 119:12 |
| 135:4, 162:3, | **00001294** | **000453** | **107** |
| 162:9 | 22:20 | 58:17 | 6:16 |
| **$112** | **00001295** | **000509** | **109** |
| 104:3, 110:1 | 22:22 | 125:16 | 37:21 |
| **$283** | **00001296** | **000676** | **11** |
| 103:19 | 26:1 | 148:23 | 5:7, 28:8, |
| **$33.9** | **0000185** | **000894** | 43:13, 58:11, |
| 100:24, 130:6 | 68:11 | 1:6, 8:8 | 58:13, 119:13, |
| **$35** | **0000235** | **01** | 120:22, 135:5 |
| 148:4 | 113:19 | 5:10, 5:18, 6:3 | **110** |
| **$37,500** | **0000236** | **03** | 36:9 |
| 23:1 | 112:13 | 4:13, 6:5, | **111** |
| **$42** | **0000275** | 43:13, 74:17 | 37:22 |
| 130:3, 130:4 | 107:7 | **04** | **112** |
| **$550,000** | **0000508** | 4:10, 5:3, 6:6, | 6:18, 110:10 |
| 111:9 | 126:7 | 6:8, 39:4, | **118** |
| **$579,000** | **0000548** | 112:24 | 6:19 |
| 111:14 | 128:18 | **05** | **119** |
| **$600** | **0000550** | 4:19, 4:22 | 36:10 |
| 148:3 | 129:9, 130:12 | **06** | **12** |
| **$625** | **0000617** | 6:16 | 1:16, 1:17, |
| 125:20 | 135:7 | **07** | 4:22, 5:10, 8:9, |
| **$650** | **0000618** | 4:17, 5:18 | 8:10, 8:11, |
| 142:6 | 134:4 | **08** | 39:7, 62:18, |
| **$684,000** | **0000623** | 5:16 | 62:20, 74:20, |
| 162:3 | 43:12 | **09** | 100:23 |
| **$700** | **0000624** | 4:10, 4:11, | **125** |
| 147:20 | 42:16, 141:4 | 4:13, 5:3, 6:17 | 6:20, 6:21, |
| **$87** | **0000632** | | 6:22, 6:23, 6:24 |
| 104:12 | 141:13 | **1** | **129** |
| **$93,750** | **0000675** | **1** | 103:23 |
| 23:7 | 149:4 | 39:4, 39:7, | **13** |
| | **0000677** | 74:14 | 5:12, 34:21, |
| **.** | 146:6 | **10** | 35:21, 64:19, |
| **.5000** | **0000717** | 4:17, 5:5, | 65:3, 75:24, |
| 3:8 | 98:22 | 5:21, 49:24, | 81:17, 126:9, |
| **.75** | **0000892** | 51:19, 55:20, | 142:9, 143:10, |
| 63:18 | 152:16 | 55:22, 75:24, | 151:11 |
| **.7777** | **000096** | 108:11, 108:20, | **13.3** |
| 3:16 | 50:18 | 109:6, 114:6, | 141:22, 142:1, |
| | | 137:18 | 148:16 |
| | | **100** | **13.4** |
| | | 91:4, 118:16 | 141:19 |

Transcript of Anthony Davis, Designated Representative
September 12, 2022

**13.6**
126:19, 126:24
**13.9**
28:14, 100:24,
101:2, 105:21,
106:18, 126:13,
126:15, 134:22,
135:12, 148:17,
148:19
**130**
110:9
**14**
4:19, 5:16,
5:21, 42:12,
48:6, 67:21,
67:23, 72:6,
81:20, 126:12,
126:16, 126:25,
130:16
**14.3**
126:20, 126:24
**14.5**
148:24
**14.6**
134:18, 135:9,
135:11, 147:9,
148:11
**14.7**
148:24
**15**
3:14, 5:18,
10:20, 34:21,
35:21, 71:12,
71:14, 126:10,
128:25, 129:12,
129:19, 130:13,
130:16, 167:3
**15.5**
125:25
**152**
7:5
**16**
5:21, 75:17,
75:19, 134:24
**167**
1:24
**17**
4:9, 6:3, 6:5,

**80:10, 80:12,**
82:15, 83:24,
129:14, 129:18,
134:21, 136:22,
150:20
**17.1**
147:4, 148:5
**17.9**
126:1
**1750**
3:6
**18**
1:17, 6:5,
6:10, 8:10,
8:11, 15:25,
23:12, 28:2,
28:9, 28:10,
75:24, 82:8,
82:10, 93:19,
93:21, 94:24,
116:3, 116:6,
120:14, 120:15,
120:19, 120:21,
120:22, 121:3,
121:4, 128:25,
130:17, 134:21,
135:13, 138:8,
139:14, 146:5
**1800**
3:6
**185**
68:23
**19**
6:6, 6:8, 44:3,
84:23, 85:2,
137:17

---

**2**

**2**
74:17, 81:17,
81:20, 96:8,
96:11
**2.1**
108:6
**2.3**
108:4, 108:5
**2.5**
50:24, 95:24,

**104:14, 106:19,**
107:19, 108:2,
108:5, 114:8
**20**
6:5, 6:6, 6:8,
88:24, 89:2,
89:6, 133:8,
133:9
**200**
104:6
**20005**
3:15
**2004**
11:21
**2016**
10:20, 12:9,
18:13, 23:2,
56:24, 57:20,
58:4
**2017**
75:7
**2018**
5:21, 6:5,
75:7, 77:5,
77:15, 77:23,
78:7, 82:15,
83:3, 84:18
**2019**
4:13, 4:17,
4:19, 5:3, 5:10,
5:16, 5:18,
5:19, 6:3, 6:6,
6:8, 6:16, 6:17,
25:4, 26:6,
26:13, 26:14,
30:23, 31:21,
33:15, 37:2,
37:9, 37:15,
38:11, 38:12,
38:14, 40:11,
40:20, 45:14,
50:6, 50:20,
57:20, 58:4,
59:18, 62:24,
65:11, 65:18,
66:8, 66:10,
67:16, 68:15,
69:23, 77:24,

**78:5, 80:7,**
80:17, 86:5,
87:8, 94:21,
95:9, 95:11,
95:14, 95:19,
95:23, 106:9,
107:6, 107:18,
112:12, 114:5,
117:4, 117:17,
119:4, 119:9,
121:24, 122:3,
132:9, 132:10,
134:11, 135:19,
135:22, 142:15,
146:10, 147:3,
158:7, 159:15,
159:19
**202**
4:10
**202.737**
3:16
**2020**
4:11, 4:22,
6:10, 10:20,
22:7, 29:7,
29:9, 42:12,
43:13, 43:25,
48:6, 90:10,
93:18, 93:19,
122:18, 122:19,
126:19, 132:5,
132:8, 134:11,
135:17, 135:18,
147:6, 147:22,
148:15, 158:9
**2021**
134:10, 135:16,
147:18, 148:8
**2022**
1:16, 8:9,
167:3
**21**
1:6, 6:10, 8:8,
23:15, 68:6,
68:12, 92:13,
92:15, 129:14
**217**
104:13

Transcript of Anthony Davis, Designated Representative
September 12, 2022

210

**22**
4:10, 5:10,
5:16, 6:6, 6:12,
69:23, 96:21,
96:23, 159:15
**22102**
3:7
**23**
4:11, 6:14,
29:9, 93:18,
93:23, 93:25,
98:24, 99:17,
99:19, 114:14,
115:2, 115:3
**236**
112:24
**24**
6:16, 23:2,
44:23, 107:1,
107:3, 131:5,
131:6
**25**
6:3, 6:16,
6:17, 44:19,
44:24, 58:25,
107:6, 107:18,
112:3, 112:5,
112:8, 118:19
**26**
6:19, 44:19,
44:24, 116:22,
117:22, 118:21,
118:23, 119:3
**27**
6:20, 45:14,
125:5
**28**
6:21, 125:5,
127:22, 128:2
**29**
4:12, 5:10,
5:18, 6:3, 6:8,
6:22, 125:5,
132:24, 136:21

---
**3**
---
**3.1**
145:4

**3.15**
93:5, 94:25,
145:5
**3.3**
102:21
**30**
4:13, 6:23,
10:20, 12:9,
18:5, 18:12,
18:15, 19:22,
43:19, 44:3,
46:18, 46:19,
49:8, 81:12,
110:17, 113:21,
125:5, 141:1
**31**
6:24, 30:23,
125:6, 146:3
**32**
7:3, 152:12,
152:19, 158:4,
158:5
**325**
108:12, 110:2
**325,501**
108:8, 108:22
**33**
156:8, 164:23,
164:25
**33.9**
102:20, 135:21,
156:10
**330**
102:20
**34**
4:16
**35**
134:12, 148:4
**37**
96:8
**3rd**
30:23
**3x**
93:3, 107:12,
107:13

---
**4**
---
**4**
151:8, 151:11,

164:23, 164:25
**40**
4:18, 96:11,
134:10, 135:18
**41.2**
148:8, 148:9
**42**
4:21
**4215**
3:7
**44**
2:2
**4531**
2:5, 167:11
**459098**
1:23
**46**
134:10
**472.5**
103:7
**473**
28:17
**48**
4:24
**4th**
22:6, 50:19,
106:9, 117:4,
117:17, 119:3,
119:5, 119:6,
119:7, 119:11,
119:14, 126:4
**4x**
107:15

---
**5**
---
**5.2**
18:17, 18:19
**50**
5:4
**500**
111:9
**500,000**
94:7, 111:11
**51**
114:6
**536**
128:11
**548**
128:13

**55**
5:6
**550,000**
111:12
**560**
126:18, 148:14
**58**
5:9, 74:14
**5th**
42:24, 43:12,
125:12

---
**6**
---
**6**
147:20, 147:24
**600**
28:19, 110:17,
110:18, 111:9,
146:13, 146:15,
146:22, 147:3,
148:4, 148:8,
150:20
**60601**
2:3, 8:15
**617**
136:23, 136:24
**618**
133:3
**62**
5:11
**624**
142:4
**625**
125:25, 126:17
**630**
128:15, 128:19
**648**
111:11
**65**
5:15
**67**
5:17
**677**
146:17
**684**
51:1, 111:13,
120:11, 120:18

---
**7**
---
**700**
3:14, 146:14,

Transcript of Anthony Davis, Designated Representative
September 12, 2022                                                    211

146:22, 147:24,
150:21
**703.712**
3:8
**71**
5:20
**710**
128:21
**75**
5:23, 63:8,
63:11
**760**
128:16, 128:20
**77**
2:2
**7th**
125:12, 132:25

**8**

**80**
6:4, 91:4,
91:13
**82**
6:5
**83**
76:17
**84**
2:5, 167:11
**840**
128:22
**85**
6:7
**87**
104:13
**88**
65:9, 66:13
**89**
6:9

**9**

**9**
112:24
**9/1/19**
117:24
**901**
3:14
**92**
6:11

**96**
6:13, 117:4,
117:8, 118:15
**97**
118:15
**99**
6:15
**9th**
112:12, 114:5



# Transcript of Michael Farah, Designated Representative

**Date:** September 14, 2022
**Case:** Donnelly -v- ProPharma Group TopCo., LLC

**Planet Depos**
**Phone:** 888.433.3767
**Email:** transcripts@planetdepos.com
**www.planetdepos.com**

1              IN THE UNITED STATES DISTRICT COURT

2                FOR THE DISTRICT OF DELAWARE

3       - - - - - - - - - - - x

4     PATRICK K. DONNELLY,      :

5             Plaintiff,        :

6         v.                    :    C.A. 21-cv-000894-MAK

7     PROPHARMA GROUP           :

8     TOPCO, LLC,               :

9             Defendant.        :

10      - - - - - - - - - - - x

11

12

13              VIDEOTAPED Deposition of

14              ProPharma Group Topco, LLC,

15        by and through its Designated Representative,

16                MICHAEL FARAH

17            Wednesday, September 14, 2022

18                9:10 a.m. CST

19

20

21

22

23    Job No.: 459099

24    Pages: 1 - 209

25    Reported By:  Michelle M. Yohler, CSR, RMR, CRR

Transcript of Michael Farah, Designated Representative
September 14, 2022                                    2

1       Videotaped deposition of MICHAEL FARAH, held at

2   McGuireWoods, LLP, 77 West Wacker Drive,

3   44th Floor, Chicago, Illinois 60601, pursuant to

4   notice before Michelle M. Yohler, CSR, RMR, CRR, a

5   certified shorthand reporter, CSR No. 84-4531.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Transcript of Michael Farah, Designated Representative
September 14, 2022                                    3

```
 1              A P P E A R A N C E S

 2   ON BEHALF OF THE PLAINTIFF:

 3       MR. KEITH JOSEPH MINSON

 4       McGUIRE WOODS LLP

 5       1750 Tysons Boulevard, Suite 1800

 6       Tysons, Virginia 22102-4215

 7       703.712.5000

 8       kminson@mcguirewoods.com

 9

10   ON BEHALF OF THE DEFENDANT:

11       MR. ROBERT B. GILMORE

12       STEIN MITCHELL BEATO & MISSNER LLP

13       901 15th Street NW, Suite 700

14       Washington, D.C. 20005

15       202.737.7777

16       rgilmore@steinmitchell.com

17

18   ALSO PRESENT:

19        Mr. Ben Stanson, Videographer

20

21

22

23

24

25
```

Transcript of Michael Farah, Designated Representative
September 14, 2022                                    4

```
1               E X A M I N A T I O N S

2

3    WITNESS                                    PAGE

4    MICHAEL FARAH

5        By Mr. Minson..........................    9

6

7

8                 E X H I B I T S

9    EXHIBITS                                   PAGE

10   No. 1    9/23/2020 Email Chain - Subject:

11            "Redacted"..........................    17

12   No. 2    9/04/2020 McGuireWoods Letter.......    25

13   No. 3    First Amended Complaint.............    34

14   No. 4    6/28/2019 Email Chain - Subject:....    37

15   No. 5    10/07/2019 Email - Subject:  Pat

16            Donnelly..........................    41

17   No. 6    5/14/2020 Email Chain - Subject:

18            Repurchase Agreement for Pat

19            Donnelly..........................    43

20   No. 7    5/12/2020 Email Chain - Subject:

21            Repurchase Agreement for Pat

22            Donnelly..........................    47

23   No. 8    9/04/2019 Email Chain - Subject:

24            Pat Donnelly Documents.............    51

25                   (Continued)
```

Transcript of Michael Farah, Designated Representative
September 14, 2022                                      5

```
 1                      E X H I B I T S

 2    EXHIBITS                                        PAGE

 3    No. 9     9/03/2020 Email Chain - Subject:

 4              Payout Schedule Sent to Odyssey.....   59

 5    No. 10    Offer to Join the Board of

 6              Directors...........................   70

 7    No. 11    ProPharma Group Topco, LLC

 8              Management Incentive Unit

 9              Agreement...........................   71

10    No. 12    1/22/2019 Email - Subject:  Pat

11              Donnelly............................   72

12    No. 13    10/14/2018 Email Chain - Subject:

13              CDMO Pharma Block Purchases

14              Chinese Facility....................   80

15    No. 14    1/25/2019 Email Chain - Subject:

16              The Weinberg Group..................   87

17    No. 15    3/17/2018 Email Chain - Subject:....   89

18    No. 16    4/22/2019 Email Chain - Subject:

19              Advarra.............................   97

20    No. 17    4/29/2019 Email Chain - Subject:

21              Advarra.............................   97

22    No. 18    9/18/202 Email - Subject:

23              ProPharma...........................  101

24

25                    (Continued)
```

Transcript of Michael Farah, Designated Representative
September 14, 2022                                    6

```
 1              E X H I B I T S

 2   EXHIBITS                                   PAGE

 3   No. 19   Defendant's Answer and

 4            Affirmative Defenses to

 5            Plaintiff's First Amended

 6            Complaint..........................   103

 7   No. 20   9/05/2019 Email - Subject:  Pat

 8            Donnelly...........................   106

 9   No. 21   10/18/2019 Email Chain - Subject:

10            ProPharma and ERG Agreements........   118

11   No. 22   11/04/2019 Email Chain - Subject:

12            Incentive Equity...................   128

13   No. 23   11/06/2019 McGuireWoods Letter......   131

14   No. 24   11/11/2019 Kirkland & Ellis

15            Letter.............................   138

16   No. 25   Appendix B - Valuation Policy -

17            Linden Manager LLC.................   143

18   No. 26   9/11/2019 Email and Attachment -

19            Subject:  Incentive Equity

20            Back-up for PPG and ERG............   147

21   No. 27   9/09/2019 Email Chain - Subject:

22            Valuation Data.....................   152

23   No. 28   9/10/2019 Email Chain - Subject:

24            Valuation Data.....................   162

25                  (Continued)
```

Transcript of Michael Farah, Designated Representative
September 14, 2022                                    7

```
 1                 E X H I B I T S

 2   EXHIBITS                                    PAGE

 3   No. 29   6/15/2019 Email Chain - Subject:....   169

 4   No. 30   Cantor Pitch Deck...................   180

 5   No. 31   Centerview Pitch Deck..............   180

 6   No. 32   Harris Williams Pitch Deck.........   180

 7   No. 33   Perella Weinberg Pitch Deck........   180

 8   No. 34   William Blair Pitch Deck...........   180

 9   No. 35   10/18/2019 Email Chain - Subject:

10            ProPharma..........................   194

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Transcript of Michael Farah, Designated Representative
September 14, 2022                                    8

| | | |
|---|---|---|
| 1 | P R O C E E D I N G S | 09:08:57 |
| 2 | THE VIDEOGRAPHER:  Here begins Media 1 in | 09:08:57 |
| 3 | the videotaped deposition of Nabeel Michael Farah, | 09:09:47 |
| 4 | pending in the matter of Patrick K. Donnelly | 09:09:51 |
| 5 | versus ProPharma Group Topco, LLC, pending in the | 09:09:55 |
| 6 | U.S. District Court for the District of Delaware, | 09:10:01 |
| 7 | Case Number 21-cv-894-MAK. | 09:10:02 |
| 8 | Today's date is September 14th, 2022, and | 09:10:06 |
| 9 | the time on the video monitor is 9:10 a.m. | 09:10:10 |
| 10 | The videographer today is Ben Stanson, | 09:10:13 |
| 11 | representing Planet Depos. | 09:10:16 |
| 12 | This video deposition is taking place at | 09:10:18 |
| 13 | 77 West Wacker Drive in Chicago, Illinois. | 09:10:20 |
| 14 | Will counsel please identify yourselves | 09:10:22 |
| 15 | and state whom you represent. | 09:10:26 |
| 16 | MR. MINSON:  Keith Minson from | 09:10:29 |
| 17 | McGuireWoods on behalf of the plaintiff, | 09:10:31 |
| 18 | Patrick K. Donnelly. | 09:10:33 |
| 19 | MR. GILMORE:  Robert Gilmore with Stein | 09:10:34 |
| 20 | Mitchell on behalf of Defendant ProPharma Group | 09:10:36 |
| 21 | Topco, LLC. | 09:10:40 |
| 22 | THE VIDEOGRAPHER:  Thank you. | 09:10:40 |
| 23 | The court reporter today is Michelle | 09:10:40 |
| 24 | Yohler, also with Planet Depos. | 09:10:41 |
| 25 | Would you please swear in the witness. | 09:10:43 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                    9

| | | |
|---|---|---|
| 1 | And then, Counsel, you may proceed. | 09:10:45 |
| 2 | (WHEREUPON, the witness was duly sworn.) | 09:10:55 |
| 3 | MICHAEL FARAH, | 09:10:55 |
| 4 | called as a witness herein, having been first duly | 09:10:55 |
| 5 | sworn, was examined and testified as follows: | 09:10:55 |
| 6 | EXAMINATION | 09:10:55 |
| 7 | BY MR. MINSON: | 09:10:55 |
| 8 | Q  Good morning.  My name is Keith Minson. | 09:10:57 |
| 9 | I'm -- as I said, I represent Patrick K. Donnelly. | 09:11:02 |
| 10 | Everything you say today will be recorded | 09:11:06 |
| 11 | under oath.  And if you need a break, just let me | 09:11:11 |
| 12 | know.  I'm happy to stop the clock.  And at that | 09:11:17 |
| 13 | time, the court reporter will stop recording, as | 09:11:20 |
| 14 | well as the videographer. | 09:11:24 |
| 15 | Several times during the deposition today, | 09:11:36 |
| 16 | I'll probably use colloquial terms like "Pat" or | 09:11:38 |
| 17 | "Mr. Donnelly."  They refer to the plaintiff.  If | 09:11:41 |
| 18 | I use "ProPharma," of course, the defendant.  Or | 09:11:43 |
| 19 | "Linden" refers to Linden Capital Partners or one | 09:11:47 |
| 20 | of its many entities.  If I'm referring to a | 09:11:51 |
| 21 | specific entity, I'll name that entity. | 09:11:55 |
| 22 | And if you don't understand any of my | 09:12:02 |
| 23 | questions or you need clarification, please just | 09:12:04 |
| 24 | let me know, and I'm happy to rephrase or, you | 09:12:07 |
| 25 | know, to clarify or give you additional | 09:12:11 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                              10

| | | |
|---|---|---|
| 1 | information. | 09:12:14 |
| 2 | And also in that vein, sometimes people | 09:12:16 |
| 3 | tend to nod or give nonverbal answers.  I'll just | 09:12:21 |
| 4 | ask that all your answers -- | 09:12:25 |
| 5 | A  Sure. | 09:12:26 |
| 6 | Q  -- you try to be -- give verbal answers | 09:12:27 |
| 7 | for the record. | 09:12:30 |
| 8 | And, Mr. Farah, can you state what your | 09:12:39 |
| 9 | title is and position was -- title was and | 09:12:42 |
| 10 | position was at ProPharma between September 30th, | 09:12:47 |
| 11 | 2016, and October 15th, 2020? | 09:12:52 |
| 12 | A  Sure.  So I was not an employee of | 09:12:55 |
| 13 | ProPharma but as an employee of Linden.  I served | 09:13:00 |
| 14 | on the board of ProPharma during that time period. | 09:13:05 |
| 15 | I was a director of the boards -- of the board. | 09:13:08 |
| 16 | I was initially a director, a board | 09:13:14 |
| 17 | member, and then I became chairman of the board. | 09:13:16 |
| 18 | I don't remember the exact time that happened. | 09:13:19 |
| 19 | Maybe a year after. | 09:13:23 |
| 20 | Q  Okay.  And in that capacity, you were a | 09:13:24 |
| 21 | director and then you were chairman, you said? | 09:13:29 |
| 22 | A  Mm-hm. | 09:13:31 |
| 23 | Q  And what were your duties in those two | 09:13:31 |
| 24 | roles? | 09:13:35 |
| 25 | A  Fairly similar, but typical board duties, | 09:13:36 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                    11

| | | |
|---|---|---|
| 1 | setting meeting agendas, helping to drive the | 09:13:42 |
| 2 | strategy in collaboration with the rest of the | 09:13:47 |
| 3 | board and management, reviewing financial -- | 09:13:50 |
| 4 | monthly and quarterly financial statements and | 09:13:54 |
| 5 | operating updates, assisting with acquisitions, | 09:13:57 |
| 6 | things of that nature. | 09:14:01 |
| 7 | Q  And during that time, what was your role | 09:14:06 |
| 8 | at Linden Capital Partners? | 09:14:09 |
| 9 | A  I was a, and am, a partner at Linden, and | 09:14:11 |
| 10 | I believe I was for really that whole time period. | 09:14:19 |
| 11 | Maybe the first few months, I was still a | 09:14:21 |
| 12 | principal at Linden. | 09:14:24 |
| 13 | Q  Okay. | 09:14:25 |
| 14 | A  And I think I was promoted to partner very | 09:14:25 |
| 15 | shortly after ProPharma closed. | 09:14:28 |
| 16 | Q  And can you just give me a brief history | 09:14:30 |
| 17 | on, you know, Linden and what it does? | 09:14:32 |
| 18 | A  Sure.  Can you be more specific?  Just | 09:14:35 |
| 19 | anything you're looking for or just... | 09:14:39 |
| 20 | Q  I mean just the type of business that it | 09:14:41 |
| 21 | engages in.  I just don't -- I want to be clear. | 09:14:43 |
| 22 | A  Sure.  So Linden is a health care private | 09:14:46 |
| 23 | equity firm.  We were founded in the early 2000s. | 09:14:49 |
| 24 | We focus on making investments in companies -- in | 09:14:53 |
| 25 | health care companies and in controlling those | 09:14:56 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                          12

| | | |
|---|---|---|
| 1 | investments. | 09:15:00 |
| 2 | Q  Is there a particular type of company that | 09:15:01 |
| 3 | Linden focuses on, or is it all health care | 09:15:03 |
| 4 | companies? | 09:15:06 |
| 5 | A  It's all health care.  We target companies | 09:15:06 |
| 6 | that have north of 10 million of EBITDA and have | 09:15:12 |
| 7 | strong cash flow dynamics and generally good | 09:15:17 |
| 8 | growth characteristics. | 09:15:22 |
| 9 | Q  Just so I understand that, would that | 09:15:26 |
| 10 | include, like, hospitals too or... | 09:15:28 |
| 11 | A  It could be hospitals.  We haven't looked | 09:15:29 |
| 12 | at any hospitals.  But it could be anything from a | 09:15:32 |
| 13 | hospital company to a device -- medical device | 09:15:35 |
| 14 | company to a service provider. | 09:15:40 |
| 15 | Q  Okay.  And when Linden acquires a company, | 09:15:46 |
| 16 | is it Linden who determines, like you said, like | 09:15:50 |
| 17 | you're trying to figure out which companies would | 09:15:56 |
| 18 | be best to sell or purchase -- I mean -- yeah, to | 09:15:58 |
| 19 | sell or purchase? | 09:16:02 |
| 20 | Does Linden evaluate those companies for | 09:16:03 |
| 21 | its own purposes, and does Linden do the | 09:16:07 |
| 22 | valuations for those companies individually, | 09:16:09 |
| 23 | separately, from anyone else? | 09:16:12 |
| 24 | A  Yeah, we take a lot -- a lot of factors go | 09:16:13 |
| 25 | into that, but we develop the -- a thesis within a | 09:16:18 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                          13

| | | |
|---|---|---|
| 1 | particular sector, most often in conjunction with | 09:16:26 |
| 2 | an operating partner or advisor that we work | 09:16:29 |
| 3 | closely with.  And so we evaluate that | 09:16:32 |
| 4 | opportunity.  We develop the financial models. | 09:16:36 |
| 5 | And really the valuation -- and then ultimately | 09:16:40 |
| 6 | the valuation that we pay comes from Linden -- | 09:16:44 |
| 7 | from Linden. | 09:16:48 |
| 8 | Q  And during that time and during your time | 09:16:49 |
| 9 | on Linden, Patrick Donnelly was also an operating | 09:16:53 |
| 10 | partner, correct? | 09:16:57 |
| 11 | A  Pat was an operating partner up until he | 09:16:58 |
| 12 | became the CEO of Advarra. | 09:17:05 |
| 13 | Q  Okay.  And when was that? | 09:17:07 |
| 14 | A  I don't remember the exact date when he | 09:17:09 |
| 15 | became CEO. | 09:17:11 |
| 16 | Q  Okay. | 09:17:12 |
| 17 | A  2018, I think. | 09:17:15 |
| 18 | Q  And was Pat involved with the acquisition | 09:17:16 |
| 19 | of ProPharma? | 09:17:23 |
| 20 | A  Initially, he was involved with the -- | 09:17:24 |
| 21 | with the due diligence of ProPharma, yes. | 09:17:29 |
| 22 | Q  And before Linden acquired ProPharma, Jeff | 09:17:30 |
| 23 | Hargroves was the founder; is that correct? | 09:17:36 |
| 24 | A  Of ProPharma, that's correct, yeah. | 09:17:39 |
| 25 | Q  And did Jeff Hargroves stay on with | 09:17:42 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                    14

| | | |
|---|---|---|
| 1 | ProPharma after it was acquired? | 09:17:45 |
| 2 | A  He did, for a period of time, yes. | 09:17:47 |
| 3 | Q  Okay. | 09:17:49 |
| 4 | A  He stayed on as CEO for a period of time. | 09:17:52 |
| 5 | He was on the board the entire time. | 09:17:55 |
| 6 | Q  And did you have a relationship with | 09:17:57 |
| 7 | Mr. Hargroves prior to it being acquired -- prior | 09:18:00 |
| 8 | to his company being acquired? | 09:18:03 |
| 9 | A  Not other than as I got to know him during | 09:18:04 |
| 10 | the due diligence process.  That was the first | 09:18:10 |
| 11 | time I had met him. | 09:18:12 |
| 12 | Q  And do you know whether Pat had a | 09:18:13 |
| 13 | relationship with Mr. Hargroves prior to ProPharma | 09:18:18 |
| 14 | being acquired? | 09:18:20 |
| 15 | A  I don't believe he did. | 09:18:21 |
| 16 | Q  And did Pat meet with Jeff Hargroves | 09:18:22 |
| 17 | regarding the acquisition during the process? | 09:18:26 |
| 18 | A  You know, this is five years ago or so.  I | 09:18:29 |
| 19 | believe he -- or more, sorry -- yeah, more than | 09:18:34 |
| 20 | that.  I believe he met with Jeff when we met with | 09:18:39 |
| 21 | Jeff.  So there was an initial meeting where Jeff | 09:18:44 |
| 22 | and his management team presented it to us, and I | 09:18:46 |
| 23 | believe Pat was at that meeting. | 09:18:49 |
| 24 | Q  Okay.  So that was the only time he met | 09:18:51 |
| 25 | with him; he didn't individually meet with him at | 09:18:53 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                   15

| | | |
|---|---|---|
| 1 | any time that you know of? | 09:18:56 |
| 2 | A  I don't recall him individually -- | 09:18:57 |
| 3 | Q  Okay. | 09:18:57 |
| 4 | A  -- meeting with Jeff at any time. | 09:18:58 |
| 5 | Q  And once you -- sorry.  You already | 09:19:02 |
| 6 | answered that question.  Strike that. | 09:19:08 |
| 7 | Other than ProPharma and being an | 09:19:18 |
| 8 | operating partner of Linden, were you on the | 09:19:21 |
| 9 | boards of any other companies during your time on | 09:19:26 |
| 10 | the board of ProPharma? | 09:19:29 |
| 11 | A  Sorry, can you rephrase the -- | 09:19:31 |
| 12 | Q  Were you on the board of any other | 09:19:33 |
| 13 | companies while you were also on the board of | 09:19:34 |
| 14 | ProPharma? | 09:19:36 |
| 15 | A  Was I? | 09:19:36 |
| 16 | Q  Yeah. | 09:19:37 |
| 17 | A  Yes. | 09:19:38 |
| 18 | Q  And what companies were those? | 09:19:38 |
| 19 | A  I would have been on the boards of Flexan, | 09:19:40 |
| 20 | Young -- | 09:19:48 |
| 21 | Q  Can you spell that? | 09:19:49 |
| 22 | A  Yeah.  F-l-e-x-a-n. | 09:19:50 |
| 23 | Q  Okay. | 09:19:54 |
| 24 | A  Young Innovations. | 09:19:56 |
| 25 | Q  And what kind of company is that? | 09:20:00 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                    16

| | | |
|---|---|---|
| 1 | A   Flexan is a contract manufacturing | 09:20:01 |
| 2 | company.  Young is a manufacturer of dental | 09:20:05 |
| 3 | equipment. | 09:20:08 |
| 4 | Q   Okay.  So Young Innovations and Flexan are | 09:20:11 |
| 5 | two different companies? | 09:20:14 |
| 6 | A   Mm-hm. | 09:20:15 |
| 7 | Q   Okay. | 09:20:15 |
| 8 | A   Yep.  Should I keep going -- | 09:20:16 |
| 9 | Q   Yeah. | 09:20:19 |
| 10 | A   -- of the boards? | 09:20:20 |
| 11 | Q   Yeah. | 09:20:20 |
| 12 | A   I -- so, again, the question was while I | 09:20:23 |
| 13 | was a board member of ProPharma -- | 09:20:25 |
| 14 | Q   Right. | 09:20:27 |
| 15 | A   -- the entire time? | 09:20:28 |
| 16 | So ERG would have been one as well. | 09:20:32 |
| 17 | That's a clinical research site business.  And | 09:20:35 |
| 18 | then Avalign Technologies.  That's another | 09:20:41 |
| 19 | contract manufacturer. | 09:20:43 |
| 20 | Q   Are these companies that you were on the | 09:20:45 |
| 21 | board of in relation to your position with Linden, | 09:20:49 |
| 22 | or are these separate? | 09:20:52 |
| 23 | A   These are all in my capacity as a partner | 09:20:53 |
| 24 | at Linden. | 09:20:56 |
| 25 | Q   Are any of these medical companies? | 09:20:57 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                    17

| | | |
|---|---|---|
| 1 | A  They're all health care.  So what do you | 09:21:02 |
| 2 | mean by -- | 09:21:05 |
| 3 | Q  I'm sorry. | 09:21:05 |
| 4 | A  -- "medical"? | 09:21:06 |
| 5 | Q  Health care companies? | 09:21:07 |
| 6 | A  Yeah, they're all health care.  Everything | 09:21:09 |
| 7 | Linden invests in is a health care business. | 09:21:12 |
| 8 | Q  Got you.  All right. | 09:21:16 |
| 9 | MR. MINSON:  Can I identify this as | 09:21:39 |
| 10 | Exhibit 1. | 09:21:41 |
| 11 | (WHEREUPON, a certain document was marked | 09:21:41 |
| 12 | Farah Deposition Exhibit No. 1, for | 09:21:41 |
| 13 | identification.) | 09:21:43 |
| 14 | BY MR. MINSON: | 09:21:43 |
| 15 | Q  This is a demand letter prior to this | 09:21:44 |
| 16 | lawsuit commencing on behalf of Patrick K. | 09:21:45 |
| 17 | Donnelly.  It's listed as DONNELLY0001292, for its | 09:21:49 |
| 18 | Bates label. | 09:21:55 |
| 19 | If you were to flip to the Bates-stamp | 09:21:59 |
| 20 | Page DONNELLY0001295 -- | 09:22:02 |
| 21 | A  Okay. | 09:22:10 |
| 22 | Q  -- you'll see the first paragraph at the | 09:22:10 |
| 23 | top.  Pat says -- Pat says:  So do you agree -- | 09:22:12 |
| 24 | I'm sorry.  If you want to flip to the page before | 09:22:20 |
| 25 | that.  It's 1294. | 09:22:22 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                    18

| | | |
|---|---|---|
| 1 | The last sentence says:  This figure | 09:22:27 |
| 2 | reflects a 21 percent increase in ProPharma's | 09:22:29 |
| 3 | stock price that ProPharma had presented, adding | 09:22:33 |
| 4 | Mr. Donnelly's 3X performance options. | 09:22:37 |
| 5 | And it says:  Should you disagree with | 09:22:41 |
| 6 | this valuation, please forward any copies of the | 09:22:44 |
| 7 | valuations presented to ProPharma board -- the | 09:22:46 |
| 8 | ProPharma board in the fall of 2019 by investment | 09:22:49 |
| 9 | banking firms considered for the sale transaction | 09:22:53 |
| 10 | that support your argument that Mr. Donnelly's | 09:22:56 |
| 11 | valuation is excessive. | 09:22:59 |
| 12 | So you -- | 09:23:01 |
| 13 | A  I'm sorry, I lost where you were. | 09:23:01 |
| 14 | Q  Oh, I'm sorry. | 09:23:03 |
| 15 | A  I thought you said the previous page -- | 09:23:04 |
| 16 | Q  The previous page -- | 09:23:05 |
| 17 | A  I think I skipped it. | 09:23:07 |
| 18 | Q  It's the last sentence of the previous | 09:23:08 |
| 19 | page of 94, and then it heads up to the top | 09:23:10 |
| 20 | paragraph of 95. | 09:23:14 |
| 21 | A  Your contention with the first paragraph | 09:23:15 |
| 22 | on Page 3 -- that one? | 09:23:19 |
| 23 | MR. GILMORE:  I think it's the bottom | 09:23:22 |
| 24 | paragraph on Page -- | 09:23:23 |
| 25 | MR. MINSON:  The bottom paragraph -- | 09:23:25 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                          19

| | | |
|---|---|---|
| 1 | MR. GILMORE:  -- 4 -- | 09:23:27 |
| 2 | MR. MINSON:  -- on 94. | 09:23:27 |
| 3 | MR. GILMORE:  It begins:  Finally, the | 09:23:27 |
| 4 | underevaluation of Mr. Donnelly's. | 09:23:29 |
| 5 | BY THE WITNESS: | 09:23:33 |
| 6 | A  On 1294?  That's not -- | 09:23:34 |
| 7 | BY MR. MINSON: | 09:23:34 |
| 8 | Q  Yes. | 09:23:36 |
| 9 | MR. GILMORE:  It's 1295. | 09:23:36 |
| 10 | BY MR. MINSON: | 09:23:36 |
| 11 | Q  It's 1294, and then -- | 09:23:36 |
| 12 | A  That's not what my -- the bottom of | 09:23:39 |
| 13 | Page 1295, that says:  Finally -- | 09:23:39 |
| 14 | Q  No.  The bottom of 1294. | 09:23:41 |
| 15 | MR. GILMORE:  I don't think so. | 09:23:43 |
| 16 | A  THE WITNESS:  Yeah, I have a different -- | 09:23:45 |
| 17 | MR. MINSON:  Do you? | 09:23:47 |
| 18 | A  THE WITNESS:  Sorry. | 09:23:51 |
| 19 | MR. GILMORE:  You just have your page | 09:23:51 |
| 20 | numbers wrong, Keith. | 09:23:53 |
| 21 | MR. MINSON:  I'm sorry. | 09:23:53 |
| 22 | MR. GILMORE:  No, it's fine.  The | 09:23:55 |
| 23 | paragraph you were reading from begins 1295 and | 09:23:55 |
| 24 | carries over to 1296. | 09:23:59 |
| 25 | MR. MINSON:  Oh, I see.  Okay.  So it's | 09:24:02 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                      20

| | | |
|---|---|---|
| 1 | 1295 and 1296. | 09:24:02 |
| 2 | BY THE WITNESS: | 09:24:02 |
| 3 | A  Yeah, I gotcha now.  So you're starting | 09:24:04 |
| 4 | with:  This figure reflects a 21 percent increase. | 09:24:04 |
| 5 | BY MR. MINSON: | 09:24:08 |
| 6 | Q  Yeah. | 09:24:08 |
| 7 | A  Okay. | 09:24:08 |
| 8 | Q  That's right. | 09:24:09 |
| 9 | And it says:  Should you agree -- should | 09:24:10 |
| 10 | you disagree with this valuation, please | 09:24:10 |
| 11 | (unintelligible) -- | 09:24:16 |
| 12 | MS. REPORTER:  Whoa.  That's way too fast. | 09:24:16 |
| 13 | MR. MINSON:  Sorry. | 09:24:17 |
| 14 | BY MR. MINSON: | 09:24:17 |
| 15 | Q  (Continuing) -- to the ProPharma board in | 09:24:18 |
| 16 | the fall of the -- of 2019 by investment banking | 09:24:20 |
| 17 | firms considered for the sale transaction that | 09:24:24 |
| 18 | support your argument that Mr. Donnelly's | 09:24:27 |
| 19 | valuation is excessive. | 09:24:30 |
| 20 | So would you agree that he's asking to see | 09:24:31 |
| 21 | the 2019 investment banking -- investment bank | 09:24:35 |
| 22 | investor reports? | 09:24:41 |
| 23 | A  Can I catch up and read that sentence? | 09:24:42 |
| 24 | Q  Yeah, sure. | 09:24:45 |
| 25 | A  Let me just read that sentence.  If you | 09:24:45 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                    21

| | | |
|---|---|---|
| 1 | give me one second. | 09:24:48 |
| 2 |     Okay.  So your question is? | 09:25:08 |
| 3 |   Q  So would you agree he's asking to see | 09:25:10 |
| 4 | those November 2019 investment bank investor -- | 09:25:13 |
| 5 | I'm sorry -- investor reports from investment | 09:25:17 |
| 6 | banks that were completed? | 09:25:20 |
| 7 |   A  Yeah, in that paragraph, that's what he's | 09:25:21 |
| 8 | requesting. | 09:25:25 |
| 9 |   Q  Okay.  And did you or anyone at ProPharma | 09:25:26 |
| 10 | provide them at that time? | 09:25:29 |
| 11 |   A  At this time, in September -- in | 09:25:30 |
| 12 | response -- | 09:25:35 |
| 13 |   Q  Right. | 09:25:36 |
| 14 |   A  -- to this letter? | 09:25:36 |
| 15 |     I don't recall what was provided after -- | 09:25:39 |
| 16 | in response to this letter. | 09:25:41 |
| 17 |   Q  Okay.  Do you recall ever providing | 09:25:42 |
| 18 | Mr. Donnelly with those reports? | 09:26:18 |
| 19 |   A  Those reports came after -- after Pat | 09:26:20 |
| 20 | was -- so the timeline -- right? -- after he was | 09:26:32 |
| 21 | terminated, he acknowledged his removal from the | 09:26:35 |
| 22 | board June of 2019, we had the discussion around | 09:26:38 |
| 23 | the repurchase of the shares later, in | 09:26:40 |
| 24 | August/September. | 09:26:44 |
| 25 |     And those investment banking reports | 09:26:46 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                            22

| | | |
|---|---|---|
| 1 | happened after all of that.  Those happened in | 09:26:49 |
| 2 | November.  So they happened after the discussions. | 09:26:52 |
| 3 | This letter from 2020, I don't know what | 09:26:56 |
| 4 | was -- that's really more of a legal question, in | 09:27:01 |
| 5 | terms of what did we provide in response in | 09:27:04 |
| 6 | discovery or not, in terms of -- I just don't | 09:27:08 |
| 7 | recall what -- when that was provided. | 09:27:12 |
| 8 | Q  I guess my question is -- it's not about | 09:27:16 |
| 9 | the discovery.  I wouldn't ask -- I will ask you | 09:27:18 |
| 10 | about some discovery.  But -- | 09:27:21 |
| 11 | A  Okay. | 09:27:22 |
| 12 | Q  -- this is prior to the lawsuit being | 09:27:23 |
| 13 | initiated. | 09:27:25 |
| 14 | A  Okay. | 09:27:25 |
| 15 | Q  And I just wanted to know why you didn't | 09:27:26 |
| 16 | provide those reports at that point in time. | 09:27:29 |
| 17 | A  The investment banking -- | 09:27:32 |
| 18 | Q  Right? | 09:27:35 |
| 19 | A  -- reports, the pitch -- | 09:27:35 |
| 20 | Q  The pitch decks. | 09:27:38 |
| 21 | A  Well, they weren't relevant, and they're | 09:27:39 |
| 22 | not relevant.  They're not third-party valuation | 09:27:42 |
| 23 | firms, for one.  They're pitch decks, so they're, | 09:27:44 |
| 24 | by design almost -- the investment banks are | 09:27:48 |
| 25 | trying to win our business, and so they inflate | 09:27:51 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                    23

| | | |
|---|---|---|
| 1 | the value they think they could sell the company | 09:27:54 |
| 2 | for.  So that's one. | 09:27:57 |
| 3 | Number two is they happened after the | 09:28:00 |
| 4 | discussions with Pat, to my recollection. | 09:28:04 |
| 5 | Q  Okay.  And do you -- so are you saying | 09:28:06 |
| 6 | that the financial data that the investment banks | 09:28:08 |
| 7 | use is incorrect? | 09:28:11 |
| 8 | A  I'd have to look at each one of those | 09:28:13 |
| 9 | decks and see what the financials are that they're | 09:28:16 |
| 10 | using. | 09:28:19 |
| 11 | Q  Okay. | 09:28:19 |
| 12 | A  But what I'm saying is they're not | 09:28:22 |
| 13 | valuation reports. | 09:28:25 |
| 14 | Q  So you're saying that the pitch decks are | 09:28:28 |
| 15 | not accurate values? | 09:28:30 |
| 16 | A  They -- | 09:28:35 |
| 17 | MR. GILMORE:  Objection, form, foundation. | 09:28:35 |
| 18 | BY THE WITNESS: | 09:28:37 |
| 19 | A  Can you rephrase the question? | 09:28:37 |
| 20 | BY MR. MINSON: | 09:28:41 |
| 21 | Q  So you said that they're not valuation | 09:28:41 |
| 22 | reports. | 09:28:43 |
| 23 | A  Correct.  They're not third-party fair | 09:28:44 |
| 24 | market valuation firms when they're doing this, | 09:28:47 |
| 25 | the groups that are presenting to us.  So they're | 09:28:51 |

| | | |
|---|---|---|
| 1 | not reliable on that -- from that perspective. | 09:28:53 |
| 2 | Q  Okay.  So in your recollection, were any | 09:28:59 |
| 3 | of those reports -- did any of them show an | 09:29:12 |
| 4 | enterprise value for ProPharma that was under | 09:29:18 |
| 5 | $500 million? | 09:29:20 |
| 6 | I have the reports, but, I mean, I just | 09:29:22 |
| 7 | want to... | 09:29:24 |
| 8 | A  From my recollection -- | 09:29:24 |
| 9 | MR. GILMORE:  Objection, form, foundation. | 09:29:27 |
| 10 | BY THE WITNESS: | 09:29:30 |
| 11 | A  So what I would say is I don't remember | 09:29:30 |
| 12 | the specific dollar ranges.  You also have to keep | 09:29:33 |
| 13 | in mind that they're valuing the business at that | 09:29:37 |
| 14 | time, in November of 2019, off of an assumed sale | 09:29:40 |
| 15 | over a year later. | 09:29:45 |
| 16 | So it's much further -- it's further down | 09:29:47 |
| 17 | the company's path, so it's not the same EBITDA, | 09:29:53 |
| 18 | by any means, that we would use to value the | 09:29:57 |
| 19 | company internally. | 09:30:01 |
| 20 | So I don't -- but my recollection from | 09:30:01 |
| 21 | those reports is that the multiples, the data that | 09:30:04 |
| 22 | supports all the valuation ranges in those | 09:30:07 |
| 23 | reports, is really in line -- is very closely in | 09:30:09 |
| 24 | line with how we were valuing ProPharma | 09:30:14 |
| 25 | internally. | 09:30:18 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                    25

| | | |
|---|---|---|
| 1 | BY MR. MINSON: | 09:30:18 |
| 2 | Q  So the operative -- I'll come back to it | 09:30:19 |
| 3 | later. | 09:30:24 |
| 4 | MR. MINSON:  Can you mark this as | 09:30:58 |
| 5 | Exhibit 2. | 09:30:59 |
| 6 | (WHEREUPON, a certain document was marked | 09:31:00 |
| 7 | Farah Deposition Exhibit No. 2, for | 09:31:00 |
| 8 | identification.) | 09:31:08 |
| 9 | BY MR. MINSON: | 09:31:08 |
| 10 | Q  Around that same time frame, what's in | 09:31:08 |
| 11 | front of you, which is marked as Exhibit 2, is an | 09:31:10 |
| 12 | email on behalf of ProPharma that says -- it's an | 09:31:13 |
| 13 | arbitration demand, and it also has documents that | 09:31:25 |
| 14 | it says resolves -- let's see. | 09:31:31 |
| 15 | It says:  Your email below requests | 09:31:36 |
| 16 | evidence demonstrating Mr. Donnelly's receipt of | 09:31:39 |
| 17 | the previously disputed PPG board fees as well as | 09:31:42 |
| 18 | his removal from the PPG board.  Attached are | 09:31:45 |
| 19 | documents evidencing the payments and his removal | 09:31:49 |
| 20 | from the board, which he expressly requested and | 09:31:52 |
| 21 | then discussed with Michael Farah and Linden. | 09:31:55 |
| 22 | This obviously resolves any dispute regarding the | 09:32:02 |
| 23 | PPG board. | 09:32:05 |
| 24 | And if you look to the document that's | 09:32:05 |
| 25 | Bates-stamped 1303. | 09:32:13 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                          26

| | | |
|---|---|---|
| 1 | A   Mm-hm. | 09:32:15 |
| 2 | Q   There's a document from September 3rd, | 09:32:15 |
| 3 | 2019, or that's the date on it, that the second | 09:32:22 |
| 4 | paragraph says:  Pursuant to Section 5.2B of | 09:32:29 |
| 5 | the LLC agreement, the undersigned hereby removes | 09:32:32 |
| 6 | Patrick Donnelly from the board and all sub boards | 09:32:37 |
| 7 | effective as of August 31st, 2019. | 09:32:41 |
| 8 |     Okay. | 09:32:46 |
| 9 | A   Okay. | 09:32:47 |
| 10 | Q   Your name is signed to this document | 09:32:48 |
| 11 | twice, correct? | 09:32:50 |
| 12 | A   Correct. | 09:32:50 |
| 13 | Q   And so you signed on behalf of each one of | 09:32:51 |
| 14 | those individual entities.  And it says:  This | 09:32:54 |
| 15 | should resolve board membership. | 09:32:59 |
| 16 |     But previously you said that he was off | 09:33:03 |
| 17 | the board in June. | 09:33:05 |
| 18 | A   Correct. | 09:33:09 |
| 19 | Q   So I'm just wondering why this document | 09:33:09 |
| 20 | was created. | 09:33:14 |
| 21 | A   Well, I'm not entirely sure, this | 09:33:16 |
| 22 | particular document here, why this was created.  I | 09:33:23 |
| 23 | know there was a June document that -- or a | 09:33:26 |
| 24 | June 27th document that Tony and I signed that | 09:33:31 |
| 25 | removed him from the board. | 09:33:33 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                    27

```
 1          So the history, for many months prior to      09:33:34
 2   June 2019, Pat had been asking to be removed from    09:33:37
 3   the board because of a perceived, in his view, a     09:33:40
 4   concern around conflicts as CEO of Advarra and a     09:33:45
 5   board member of ProPharma.  So he had asked for      09:33:49
 6   many months and wanted to come off the board.        09:33:52
 7          In June, Tony had a discussion with him.      09:33:53
 8   He agreed that Pat would come off the board.  Pat    09:33:56
 9   later acknowledged in an email a few days later      09:34:01
10   that he was coming off the board and that he was     09:34:04
11   no longer on the board of ProPharma.                 09:34:06
12          And so then there was a document created      09:34:10
13   at that point that memorialized that discussion.     09:34:14
14   And then we also had an email that Pat sent to me    09:34:19
15   and my assistant that said:  I'm off the board.      09:34:22
16          So the -- this document looked like it was    09:34:25
17   created -- I don't know why there's two of them.     09:34:29
18   I think it's just a -- quite honestly, a clerical    09:34:34
19   error on our lawyer's part to do this.               09:34:39
20          I know at the same time this was             09:34:42
21   happening, he was also coming off the ERG board.     09:34:44
22   So I think the discussion happened end of June.      09:34:47
23   He came off the ProPharma board end of June.  He     09:34:49
24   acknowledged it early July.  We asked K&E to make    09:34:54
25   that document; they made that document.              09:34:56
```

Transcript of Michael Farah, Designated Representative
September 14, 2022                                    28

| | | |
|---|---|---|
| 1 | And then a couple months later, we also | 09:34:57 |
| 2 | had the discussion around ERG, and it must have | 09:35:00 |
| 3 | been that, in talking to K&E, they also drafted | 09:35:03 |
| 4 | this document so... | 09:35:07 |
| 5 | From my perspective, the June 1 is the one | 09:35:08 |
| 6 | that is the -- kind of the operating document in | 09:35:12 |
| 7 | this case.  And also Pat's email saying:  I'm off | 09:35:15 |
| 8 | the board. | 09:35:19 |
| 9 | Q  And so what did you do with this document | 09:35:20 |
| 10 | after you signed it? | 09:35:31 |
| 11 | A  I gave it back to my assistant, and she | 09:35:31 |
| 12 | forwarded it along to Kirkland & Ellis.  And after | 09:35:35 |
| 13 | that, I wouldn't know. | 09:35:38 |
| 14 | Q  And did you hand-sign this, or was it | 09:35:39 |
| 15 | electronic signature? | 09:35:43 |
| 16 | A  That's a good question.  I don't recall. | 09:35:44 |
| 17 | Q  Okay.  And was this document ever mailed | 09:35:46 |
| 18 | to Mr. Donnelly? | 09:35:52 |
| 19 | A  I don't believe it was mailed, and it is | 09:35:56 |
| 20 | not required to be mailed.  We don't have to -- | 09:35:58 |
| 21 | we're not -- per the terms of our LLC agreement | 09:36:01 |
| 22 | that Pat signed, we're not required to provide | 09:36:03 |
| 23 | written notice. | 09:36:07 |
| 24 | Q  Was it ever emailed?  I'm just being | 09:36:09 |
| 25 | clear. | 09:36:13 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                    29

| | | |
|---|---|---|
| 1 | A  I don't recall if it was emailed. | 09:36:13 |
| 2 | However -- | 09:36:17 |
| 3 | MR. GILMORE:  To Mr. -- I'm sorry.  To | 09:36:17 |
| 4 | Mr. Donnelly? | 09:36:20 |
| 5 | MR. MINSON:  To Mr. Donnelly. | 09:36:20 |
| 6 | BY THE WITNESS: | 09:36:22 |
| 7 | A  I don't know if this document was ever | 09:36:22 |
| 8 | emailed to Mr. Donnelly.  I don't recall. | 09:36:24 |
| 9 | BY MR. MINSON: | 09:36:25 |
| 10 | Q  And was it ever hand-delivered? | 09:36:26 |
| 11 | A  I don't believe it was ever | 09:36:30 |
| 12 | hand-delivered.  But, again, we're not -- it's not | 09:36:32 |
| 13 | something that we're required to do, particularly | 09:36:34 |
| 14 | when I had a phone conversation with him, after | 09:36:38 |
| 15 | the email that he sent to me saying he was off the | 09:36:40 |
| 16 | board, and then he had a phone conversation with | 09:36:42 |
| 17 | me acknowledging he was off the board. | 09:36:44 |
| 18 | So we had multiple touch points prior to | 09:36:46 |
| 19 | this document where he clearly acknowledged he was | 09:36:48 |
| 20 | no longer on the board. | 09:36:50 |
| 21 | Q  So your assumption that was -- was that | 09:36:51 |
| 22 | Mr. Donnelly understood himself to be off the | 09:36:56 |
| 23 | board when this document was created, correct? | 09:36:58 |
| 24 | MR. GILMORE:  Objection, form, lack of | 09:37:01 |
| 25 | foundation. | 09:37:05 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                    30

```
 1    BY THE WITNESS:                                    09:37:05
 2        A  It's not an assumption.  He told me he was  09:37:05
 3    off the board.  I have it in an email.  So I don't 09:37:08
 4    have to assume it because it's --                  09:37:11
 5    BY MR. MINSON:                                     09:37:12
 6        Q  Was it emailed to -- was that statement     09:37:12
 7    emailed to you?                                    09:37:14
 8        A  To me and my assistant, yes.  I was copied  09:37:15
 9    on the email.                                      09:37:18
10        Q  Okay.  So if Mr. Donnelly didn't know that  09:37:19
11    he was on the board, you said there's no           09:37:30
12    obligation for you under the terms of the          09:37:31
13    agreement to give him any notice, correct?  That's 09:37:34
14    what you just testified to?                        09:37:40
15        MR. GILMORE:  Objection, form, misstates       09:37:42
16    prior testimony.                                   09:37:44
17    BY THE WITNESS:                                    09:37:46
18        A  So it's more of a legal question in terms   09:37:46
19    of exactly what the notification requirements are. 09:37:47
20    But my understanding is that we're not required to 09:37:50
21    give him -- if we wanted to remove him from the    09:37:52
22    board, we wouldn't have to give him written        09:37:54
23    notice.                                            09:37:57
24        MR. MINSON:  I'm sorry --                      09:37:58
25
```

Transcript of Michael Farah, Designated Representative
September 14, 2022                                    31

| | | |
|---|---|---|
| 1 | BY THE WITNESS: | 09:37:59 |
| 2 | A  However, we had the discussion.  He | 09:37:59 |
| 3 | emailed.  We filed the paperwork internally. | 09:38:02 |
| 4 | MR. MINSON:  I'm sorry, can you read back | 09:38:07 |
| 5 | his response. | 09:38:08 |
| 6 | MR. GILMORE:  Keith, if you're trying to | 09:38:23 |
| 7 | understand the basis for my objection, I think you | 09:38:25 |
| 8 | may have misspoken.  I think your question was, as | 09:38:27 |
| 9 | I heard it:  If Mr. Donnelly didn't know he was on | 09:38:30 |
| 10 | the board, you didn't need to give him notice? | 09:38:32 |
| 11 | And -- that's what you just said, and that wasn't | 09:38:35 |
| 12 | what Mr. Farah just said. | 09:38:38 |
| 13 | I think you meant, perhaps, if | 09:38:41 |
| 14 | Mr. Donnelly didn't know he was off the board. | 09:38:43 |
| 15 | So -- | 09:38:48 |
| 16 | MR. MINSON:  I see. | 09:38:48 |
| 17 | MR. GILMORE:  -- I'm not -- | 09:38:50 |
| 18 | MR. MINSON:  Okay. | 09:38:50 |
| 19 | MR. GILMORE:  -- that was the basis for my | 09:38:51 |
| 20 | objection. | 09:38:54 |
| 21 | MR. MINSON:  Okay. | 09:38:54 |
| 22 | MR. GILMORE:  I don't know if you want to | 09:38:54 |
| 23 | maybe reask your last question just -- | 09:38:55 |
| 24 | MR. MINSON:  Yeah, let me -- | 09:38:56 |
| 25 | MR. GILMORE:  -- the record is clear, | 09:38:57 |

| | | |
|---|---|---|
| 1 | but -- | 09:38:57 |
| 2 | MR. MINSON:  Let me reask it. | 09:38:57 |
| 3 | MR. GILMORE:  -- that was the reason why I | 09:38:58 |
| 4 | objected. | 09:38:59 |
| 5 | BY MR. MINSON: | 09:39:00 |
| 6 | Q  Okay.  So you said you weren't obligated | 09:39:00 |
| 7 | to tell Mr. Donnelly that he -- or to give | 09:39:03 |
| 8 | Mr. Donnelly written notice that he was removed | 09:39:05 |
| 9 | from the board, correct? | 09:39:07 |
| 10 | A  My understanding of the LLC -- | 09:39:08 |
| 11 | MR. GILMORE:  Hold on.  Sorry. | 09:39:10 |
| 12 | Objection to the extent it calls for a | 09:39:12 |
| 13 | legal conclusion.  But go ahead. | 09:39:14 |
| 14 | BY THE WITNESS: | 09:39:15 |
| 15 | A  My understanding from the -- my | 09:39:16 |
| 16 | understanding of the LLC agreement, the legal | 09:39:18 |
| 17 | agreement, is that we're not required to send him | 09:39:20 |
| 18 | written notice.  He signed that agreement.  He was | 09:39:22 |
| 19 | aware of that. | 09:39:24 |
| 20 | BY MR. MINSON: | 09:39:25 |
| 21 | Q  Okay.  So if Mr. Donnelly did not know | 09:39:25 |
| 22 | that he was off of the board and you had signed | 09:39:29 |
| 23 | this agreement in January, is it possible that he | 09:39:34 |
| 24 | could continue on for an entire year and not know | 09:39:38 |
| 25 | that he was removed? | 09:39:41 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                          33

| | | |
|---|---|---|
| 1 | A  I'm not -- | 09:39:45 |
| 2 | MR. GILMORE:  Objection, form, foundation. | 09:39:46 |
| 3 | BY THE WITNESS: | 09:39:47 |
| 4 | A  Hard to speak in a hypothetical like that, | 09:39:48 |
| 5 | because that just wouldn't happen.  So, again, | 09:39:50 |
| 6 | we're -- you know, we're colleagues.  We work | 09:39:53 |
| 7 | together.  We've got a business relationship. | 09:39:58 |
| 8 | We're going to talk to somebody about that.  And | 09:40:01 |
| 9 | that's what happened. | 09:40:04 |
| 10 | BY MR. MINSON: | 09:40:09 |
| 11 | Q  So do you have any knowledge of whether | 09:40:22 |
| 12 | the June document that you're referring to was | 09:40:24 |
| 13 | ever delivered to Mr. Donnelly in relation to this | 09:40:28 |
| 14 | arbitration that's discussed here? | 09:40:35 |
| 15 | A  Again, I don't believe it was, but same | 09:40:39 |
| 16 | thing:  Why would we even deliver it -- we're not | 09:40:43 |
| 17 | required to deliver it.  Why would we deliver it | 09:40:49 |
| 18 | when I've got Pat acknowledges in writing that | 09:40:52 |
| 19 | he's off the board, I have a phone conversation | 09:40:55 |
| 20 | with him in July and August that acknowledges he's | 09:40:57 |
| 21 | off the board?  And so there wouldn't be a need to | 09:41:02 |
| 22 | do that.  And it's not required per the agreement. | 09:41:04 |
| 23 | MR. MINSON:  Please mark this as | 09:41:40 |
| 24 | Exhibit 3. | 09:41:42 |
| 25 | | |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                    34

| | | |
|---|---|---|
| 1 | (WHEREUPON, a certain document was marked | 09:41:42 |
| 2 | Farah Deposition Exhibit No. 3, for | 09:41:42 |
| 3 | identification.) | 09:41:55 |
| 4 | BY MR. MINSON: | 09:41:55 |
| 5 | Q   Okay.  This is a copy of the first amended | 09:42:03 |
| 6 | complaint in this matter.  If you want to turn to | 09:42:05 |
| 7 | Pages 13 through 15. | 09:42:17 |
| 8 | I will preface this by saying that the | 09:42:34 |
| 9 | document we just discussed, that was delivered to | 09:42:38 |
| 10 | Mr. Donnelly in September of 2020, so that was | 09:42:42 |
| 11 | prior to this litigation. | 09:42:48 |
| 12 | And in the first amended complaint, if you | 09:42:51 |
| 13 | turn to Pages -- Page 13, it discusses that | 09:42:53 |
| 14 | September 23rd, 2020, document. | 09:43:00 |
| 15 | And it says, as I previously said: | 09:43:05 |
| 16 | Mr. Donnelly had never seen, nor was given any | 09:43:08 |
| 17 | notice of the document dated September 3rd, 2019, | 09:43:11 |
| 18 | and there is no language in the September 23rd, | 09:43:17 |
| 19 | 2020, letter indicating that it was sent to | 09:43:22 |
| 20 | Mr. Donnelly in September 2019. | 09:43:24 |
| 21 | And it says -- it gives the address that | 09:43:27 |
| 22 | the purported removal letter was addressed to. | 09:43:29 |
| 23 | And then if you go to Page 14, | 09:43:32 |
| 24 | Paragraph 109.  I'm sorry, Paragraph 108.  It | 09:43:39 |
| 25 | says:  The board removal letter is signed by Mike | 09:43:45 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                        35

| | | |
|---|---|---|
| 1 | Farah, yourself, in his capacity as authorized | 09:43:45 |
| 2 | signatory on behalf of Linden Capital Partners III | 09:43:49 |
| 3 | LLP -- I mean LP, and Linden Capital | 09:43:53 |
| 4 | Partners III-A LP. | 09:44:00 |
| 5 | And then in 109 it says:  The relationship | 09:44:00 |
| 6 | of the parties is governed by the amended and | 09:44:02 |
| 7 | restated LLC agreement and dated September 30th, | 09:44:04 |
| 8 | 2016. | 09:44:09 |
| 9 | And it says -- it's a clause from the LLC | 09:44:09 |
| 10 | agreement, and it says that:  The board shall | 09:44:15 |
| 11 | initially consist of up to eight managers. | 09:44:22 |
| 12 | Thereafter, the number of managers on the board | 09:44:26 |
| 13 | shall be established from time to time by the | 09:44:28 |
| 14 | majority Linden investors, provided that, for so | 09:44:30 |
| 15 | long as either Linden Capital Partners III LP or | 09:44:34 |
| 16 | Linden Capital Partners III-A LP, the Linden VOC, | 09:44:39 |
| 17 | and together with the Linden III VOC -- or VCOC, | 09:44:44 |
| 18 | holds a direct interest in Holdings LLC. | 09:44:52 |
| 19 | Each such Linden investor shall have the | 09:44:55 |
| 20 | direct and independent right to designate one | 09:45:00 |
| 21 | manager. | 09:45:02 |
| 22 | And so if you go down to the bottom of | 09:45:03 |
| 23 | Page 14, it lists the managers that are designated | 09:45:10 |
| 24 | by which Linden investor.  So it says you -- it | 09:45:13 |
| 25 | has you being designated by Linden III-A VCOC and | 09:45:24 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                    36

| | | |
|---|---|---|
| 1 | collectively with Linden III VOC [sic].  It | 09:45:38 |
| 2 | says -- they designate you.  And the Linden | 09:45:43 |
| 3 | investors designate Patrick Donnelly. | 09:45:46 |
| 4 | And the complaint further explains that | 09:45:52 |
| 5 | Linden investors are actually Linden -- I'm sorry, | 09:45:59 |
| 6 | ProPharma Buyer and ProPharma Splitter.  And so | 09:46:03 |
| 7 | those are the entities that designate | 09:46:12 |
| 8 | Mr. Donnelly. | 09:46:15 |
| 9 | And I know I'm paraphrasing here, but | 09:46:19 |
| 10 | basically it says that in Section 52B -- I'm | 09:46:24 |
| 11 | sorry.  I'm just going to paraphrase the argument | 09:46:55 |
| 12 | rather than read this. | 09:46:57 |
| 13 | So the argument in the complaint is that | 09:46:59 |
| 14 | the only entities with the authority to remove Pat | 09:47:00 |
| 15 | were ProPharma Buyer and Splitter, correct? | 09:47:04 |
| 16 | MR. GILMORE:  Objection, form. | 09:47:08 |
| 17 | MR. MINSON:  I know that's a legal | 09:47:09 |
| 18 | question but -- | 09:47:10 |
| 19 | BY THE WITNESS: | 09:47:11 |
| 20 | A  Yeah. | 09:47:12 |
| 21 | MR. GILMORE:  I'll just make -- | 09:47:13 |
| 22 | MR. MINSON:  I'll just strike -- | 09:47:14 |
| 23 | MR. GILMORE:  Are you withdrawing the | 09:47:15 |
| 24 | question? | 09:47:17 |
| 25 | MR. MINSON:  I'll withdraw that question. | 09:47:17 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                        37

| | | |
|---|---|---|
| 1 | MR. GILMORE:  All right.  Let the record | 09:47:18 |
| 2 | reflect that I think the answer "yeah" that | 09:47:23 |
| 3 | Mr. Farah gave was agreeing with the objection and | 09:47:26 |
| 4 | withdrawal of the question, not in response to | 09:47:30 |
| 5 | that question. | 09:47:32 |
| 6 | MR. MINSON:  Okay. | 09:47:34 |
| 7 | A    THE WITNESS:  Correct.  Yes. | 09:47:34 |
| 8 | BY MR. MINSON: | 09:47:36 |
| 9 | Q  Anyway, that is the argument we alleged in | 09:47:36 |
| 10 | our complaint. | 09:47:42 |
| 11 | And in discovery, for the first time, | 09:47:43 |
| 12 | Mr. Donnelly receives a document that you claim | 09:47:45 |
| 13 | was dated in June.  It's a removal notice. | 09:47:51 |
| 14 | MR. MINSON:  Can you mark this as 4. | 09:47:57 |
| 15 | (WHEREUPON, a certain document was marked | 09:47:57 |
| 16 | Farah Deposition Exhibit No. 4, for | 09:47:57 |
| 17 | identification.) | 09:48:29 |
| 18 | BY MR. MINSON: | 09:48:29 |
| 19 | Q  And this is a June 27 email that was | 09:48:30 |
| 20 | produced to us in discovery, attaching this | 09:48:31 |
| 21 | document behind it, which is Bates-stamped | 09:48:35 |
| 22 | LINDEN000111.  And that's signed by both you and | 09:48:42 |
| 23 | Anthony Davis. | 09:48:52 |
| 24 | Do you recognize the document? | 09:48:54 |
| 25 | A  I do recognize it, yes. | 09:48:55 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                          38

```
 1      Q  And you'd acknowledge that on that          09:48:56

 2  document there is nowhere that's part of that      09:49:00

 3  specific document that contains any date?          09:49:03

 4      A  Sorry, is that a question or --             09:49:07

 5      Q  That's a question.  Would you agree that    09:49:09

 6  there's no date listed on this document other than 09:49:11

 7  2019?                                              09:49:16

 8         MR. GILMORE:  When you say "this            09:49:16

 9  document," you're just --                          09:49:18

10         MR. MINSON:  Only --                        09:49:19

11         MR. GILMORE:  -- you're referring to the    09:49:20

12  attachment, not --                                 09:49:21

13         MR. MINSON:  Only the attachment.           09:49:22

14  BY THE WITNESS:                                    09:49:23

15      A  So, correct, the document that was signed   09:49:24

16  was not dated, other than the 2019.                09:49:25

17         However, the email attachment that's --     09:49:30

18  that's also with this -- with that document        09:49:34

19  clearly shows that it was signed on June 27th of   09:49:36

20  2019.                                              09:49:41

21  BY MR. MINSON:                                     09:49:43

22      Q  But you would agree that the email          09:49:45

23  attachment does not identify this document by      09:49:47

24  name, correct?  It's just numbers?                 09:49:53

25      A  I'm not --                                  09:49:56
```

Transcript of Michael Farah, Designated Representative
September 14, 2022                                    39

| | | |
|---|---|---|
| 1 | Q  First page.  It's LINDEN109. | 09:50:02 |
| 2 | A  I'd have to -- let me read the document to | 09:50:06 |
| 3 | make sure I answer correctly. | 09:50:09 |
| 4 | So ask your question again, please. | 09:50:20 |
| 5 | Q  So under "Attachments," this document is | 09:50:22 |
| 6 | not identified by name, correct?  It's just | 09:50:25 |
| 7 | numbers? | 09:50:28 |
| 8 | A  In the subject -- in the top header of the | 09:50:28 |
| 9 | email, the attachments line, it uses a number to | 09:50:30 |
| 10 | identify the document.  That said, the original, | 09:50:35 |
| 11 | in the email chain, it clearly references:  Pat | 09:50:41 |
| 12 | Donnelly is going to be coming off the board.  Can | 09:50:46 |
| 13 | you work on documentation? | 09:50:49 |
| 14 | So it's clearly the documentation that | 09:50:51 |
| 15 | he's working on. | 09:50:53 |
| 16 | And then I would need to look at -- I | 09:50:55 |
| 17 | would need to see the exact file and the metadata. | 09:50:57 |
| 18 | Because if it's -- that attachment number there is | 09:51:01 |
| 19 | more likely than not, I would think, somewhere in | 09:51:05 |
| 20 | the -- the way these legal files work, somewhere | 09:51:07 |
| 21 | in the metadata of that file, so -- | 09:51:10 |
| 22 | Q  So you do believe that the metadata for | 09:51:12 |
| 23 | this document would link up with the attachment in | 09:51:16 |
| 24 | that email? | 09:51:19 |
| 25 | A  I'm not -- again, I'm not -- I'd want to | 09:51:20 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                        40

| | | |
|---|---|---|
| 1 | check and see.  I'm not a -- | 09:51:23 |
| 2 | Q   Okay.  But you're not sure -- | 09:51:25 |
| 3 | A   -- computer tech.  But I would -- I would | 09:51:26 |
| 4 | want to see that before I make any definitive | 09:51:28 |
| 5 | conclusions that that subject doesn't reference. | 09:51:31 |
| 6 | Q   Okay. | 09:51:37 |
| 7 | MR. GILMORE:  Counsel, I just want to say, | 09:51:37 |
| 8 | obviously, we as questioning attorneys, have to | 09:51:40 |
| 9 | have good faith bases for questions.  And so your | 09:51:43 |
| 10 | question is suggesting that the metadata does not | 09:51:45 |
| 11 | show that the file name of the attachment is | 09:51:47 |
| 12 | what's reflected in this email. | 09:51:51 |
| 13 | I know that we produced metadata and | 09:51:53 |
| 14 | document family relationships, so it -- | 09:51:58 |
| 15 | MR. MINSON:  I actually know for a fact | 09:52:01 |
| 16 | that we don't have metadata for this document. | 09:52:02 |
| 17 | MR. GILMORE:  All right.  Well, we'll look | 09:52:05 |
| 18 | into that. | 09:52:06 |
| 19 | MR. MINSON:  So I do have a good faith | 09:52:07 |
| 20 | basis for that question. | 09:52:09 |
| 21 | BY MR. MINSON: | 09:52:32 |
| 22 | Q   And do you remember when you signed the | 09:52:32 |
| 23 | document that's labeled LINDEN000111? | 09:52:34 |
| 24 | A   Oh, yeah, the signature is on 112. | 09:52:39 |
| 25 | End of June, right in that time period -- | 09:52:48 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                        41

| | | |
|---|---|---|
| 1 | Q   Okay. | 09:52:50 |
| 2 | A   -- of 2019. | 09:52:51 |
| 3 | MR. MINSON:   Can you mark this as 5. | 09:53:52 |
| 4 | (WHEREUPON, a certain document was marked | 09:53:52 |
| 5 | Farah Deposition Exhibit No. 5, for | 09:53:52 |
| 6 | identification.) | 09:54:14 |
| 7 | BY MR. MINSON: | 09:54:14 |
| 8 | Q   This is a ProPharma email from Rob | 09:54:15 |
| 9 | Chestnut, the CFO of ProPharma, in October | 09:54:18 |
| 10 | of 2019.  And the Michael it's to is Connolly. | 09:54:22 |
| 11 | But it says:  Michael, I have been made aware of | 09:54:27 |
| 12 | Pat's separation from Linden in October of 2019. | 09:54:31 |
| 13 | It says -- that's not part of the words in | 09:54:41 |
| 14 | the email.  That's just I'm referencing that he's | 09:54:43 |
| 15 | saying that in October of 2019. | 09:54:47 |
| 16 | It says:  My understanding is that we need | 09:54:48 |
| 17 | to distribute his investment.  How should we | 09:54:50 |
| 18 | proceed to make this calculation?  It says:  I | 09:54:53 |
| 19 | have not seen any termination paperwork. | 09:54:56 |
| 20 | So did you forward -- did you try to | 09:54:58 |
| 21 | distribute the document that you're referencing | 09:55:01 |
| 22 | from June to ProPharma after it -- after you | 09:55:06 |
| 23 | signed it? | 09:55:09 |
| 24 | A   The -- | 09:55:09 |
| 25 | Q   It's the -- | 09:55:12 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                        42

| | | |
|---|---|---|
| 1 | A  Exhibit -- | 09:55:13 |
| 2 | Q  Exhibit 4. | 09:55:14 |
| 3 | A  Exhibit 4? | 09:55:17 |
| 4 | Q  Yeah. | 09:55:18 |
| 5 | A  I don't believe that was sent to | 09:55:18 |
| 6 | ProPharma, nor would it need to be, or would it be | 09:55:20 |
| 7 | customary that we would do that. | 09:55:24 |
| 8 | Q  Okay.  So Rob Chestnut, the CFO of | 09:55:26 |
| 9 | ProPharma, would you have told him that Pat was | 09:55:29 |
| 10 | separated before -- | 09:55:32 |
| 11 | A  At some -- | 09:55:38 |
| 12 | Q  -- October? | 09:55:38 |
| 13 | A  Well, I think I -- I think he was aware | 09:55:39 |
| 14 | before October.  I'm not entirely sure when he | 09:55:42 |
| 15 | became aware. | 09:55:44 |
| 16 | But when we -- you know, Rob, as CFO of | 09:55:45 |
| 17 | the company, and not a board member, you know, | 09:55:52 |
| 18 | when he finds out about something like that, of a | 09:55:54 |
| 19 | removal of a board member, is really just up to | 09:55:57 |
| 20 | the board. | 09:56:00 |
| 21 | Q  So do you know if you forwarded the | 09:56:23 |
| 22 | document to Rob or not? | 09:56:25 |
| 23 | A  Exhibit 4? | 09:56:27 |
| 24 | Q  Yeah, Exhibit 4 or -- | 09:56:28 |
| 25 | A  I don't. | 09:56:30 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                        43

| | | |
|---|---|---|
| 1 | Q  -- or DONNELLY1303, which was the one that | 09:56:32 |
| 2 | you said was signed and didn't -- I'm not going to | 09:56:36 |
| 3 | put words in your mouth, but the one that you said | 09:56:40 |
| 4 | was signed in September. | 09:56:43 |
| 5 | A  In September.  I don't recall.  I don't | 09:56:45 |
| 6 | believe they were.  But, again, we would have | 09:56:47 |
| 7 | not -- there would have been no need to do that. | 09:56:49 |
| 8 | Q  Okay.  So at what point would you have | 09:56:51 |
| 9 | done that? | 09:57:14 |
| 10 | A  Probably around the time when it's coming | 09:57:16 |
| 11 | time to actually consummate the repurchase of the | 09:57:21 |
| 12 | shares, when we would need the company to send the | 09:57:24 |
| 13 | wire out.  So at some point before then -- | 09:57:27 |
| 14 | Q  Okay. | 09:57:30 |
| 15 | A  -- he would have been notified, probably. | 09:57:30 |
| 16 | But -- yeah. | 09:57:32 |
| 17 | MR. MINSON:  Mark this as Exhibit | 09:57:35 |
| 18 | Number 6. | 09:57:37 |
| 19 | (WHEREUPON, a certain document was marked | 09:57:37 |
| 20 | Farah Deposition Exhibit No. 6, for | 09:57:37 |
| 21 | identification.) | 09:57:58 |
| 22 | BY MR. MINSON: | 09:57:58 |
| 23 | Q  This is an email chain between Rob | 09:57:58 |
| 24 | Chestnut and several ProPharma employees.  It | 09:58:01 |
| 25 | appears like it's between the financial group. | 09:58:07 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                    44

| | | |
|---|---|---|
| 1 | If you look at PROPHARMA00024 -- I mean | 09:58:12 |
| 2 | 0000624, which is the second-to-last page, it | 09:58:18 |
| 3 | starts from Rob Chestnut.  And he asks Bennett | 09:58:25 |
| 4 | Yasskin:  Can you send me the management unit | 09:58:30 |
| 5 | repurchase agreement for Donnelly?  This is an | 09:58:35 |
| 6 | audit request. | 09:58:37 |
| 7 | A  Mm-hm. | 09:58:38 |
| 8 | Q  And Yasskin, in March of 2020, says: | 09:58:39 |
| 9 | There's no agreement in place for Pat -- in place | 09:58:43 |
| 10 | with Pat for the repurchase of incentive units. | 09:58:47 |
| 11 | We did not need to execute an agreement, as we | 09:58:50 |
| 12 | have the unilateral right to buy them back. | 09:58:53 |
| 13 | The page prior to that -- because the | 09:58:57 |
| 14 | chain reads in reverse.  Rob, the CFO, says:  I | 09:59:08 |
| 15 | assume you would have had a calculation of -- and | 09:59:16 |
| 16 | some type of separation agreement, what was | 09:59:19 |
| 17 | negotiated. | 09:59:22 |
| 18 | And then on March 5th, Bennett Yasskin, | 09:59:22 |
| 19 | part of his email says:  There is no separation | 09:59:25 |
| 20 | agreement. | 09:59:27 |
| 21 | And then May 11th, 2020, again from | 09:59:33 |
| 22 | Yasskin to Chestnut, it says:  See below regarding | 09:59:38 |
| 23 | Pat's incentive equity.  We do not have a | 09:59:42 |
| 24 | repurchase/separation agreement in place. | 09:59:46 |
| 25 | So ProPharma made the transfer of $105,000 | 09:59:48 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                    45

| | | |
|---|---|---|
| 1 | that it represented -- represented his incentive | 09:59:56 |
| 2 | equity value in November of 2019, correct? | 10:00:04 |
| 3 | MR. GILMORE:  I'll object to the form of | 10:00:11 |
| 4 | the question, particularly given the long reading | 10:00:14 |
| 5 | of excerpts leading up to the question you just | 10:00:16 |
| 6 | asked. | 10:00:19 |
| 7 | BY MR. MINSON: | 10:00:27 |
| 8 | Q  Okay.  Well, I'll just -- at this point, | 10:00:27 |
| 9 | these emails seem to represent that Rob Chestnut | 10:00:28 |
| 10 | and the people at ProPharma in the financial | 10:00:33 |
| 11 | department didn't have any kind of separation or | 10:00:37 |
| 12 | termination agreement at that time.  Would you | 10:00:39 |
| 13 | agree with that? | 10:00:45 |
| 14 | A  I can't draw that conclusion based on | 10:00:45 |
| 15 | this.  But, again, I don't -- there would be no | 10:00:48 |
| 16 | need for them to have an agreement in their | 10:00:52 |
| 17 | records.  It's just not something we would have | 10:00:54 |
| 18 | had to have shared with them.  And I don't know | 10:00:57 |
| 19 | what it would have mattered. | 10:01:00 |
| 20 | Q  I understand.  But the transfer for the -- | 10:01:01 |
| 21 | that you say was for the incentive equity was made | 10:01:05 |
| 22 | in November of 2019 to Pat Donnelly's account.  Is | 10:01:08 |
| 23 | that -- | 10:01:15 |
| 24 | A  The 105,000? | 10:01:15 |
| 25 | Q  Right. | 10:01:16 |

| | | |
|---|---|---|
| 1 | A   Correct. | 10:01:17 |
| 2 | Q   And you previously said that prior to that | 10:01:17 |
| 3 | transfer, that's when you would have shared it | 10:01:19 |
| 4 | with them, right? | 10:01:22 |
| 5 | A   Prior to -- | 10:01:23 |
| 6 | MR. GILMORE:  Objection, form. | 10:01:24 |
| 7 | MR. MINSON:  Can you read back his answer. | 10:01:26 |
| 8 | BY THE WITNESS: | 10:01:29 |
| 9 | A   I can clarify.  Prior to that transfer | 10:01:29 |
| 10 | happening, we would have informed Rob, the | 10:01:33 |
| 11 | company, ProPharma, that Pat is no longer on the | 10:01:35 |
| 12 | board and we're going to be exercising our right | 10:01:39 |
| 13 | per the agreement to buy back his shares.  They | 10:01:42 |
| 14 | would have been made aware because they're | 10:01:44 |
| 15 | actually sending out the wire. | 10:01:47 |
| 16 | BY MR. MINSON: | 10:01:49 |
| 17 | Q   Okay. | 10:01:50 |
| 18 | A   So it could have been up to an hour before | 10:01:50 |
| 19 | the wire needed to go out, but I think it was, you | 10:01:52 |
| 20 | know, before that.  I think we informed him before | 10:01:54 |
| 21 | that.  Because Dawn was on the board, so we | 10:01:57 |
| 22 | informed her, I'm sure, and she probably would | 10:02:00 |
| 23 | have told Rob as well.  So they were aware. | 10:02:02 |
| 24 | Q   I'm pretty sure that you said that you | 10:02:04 |
| 25 | would have sent them those documents prior. | 10:02:06 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                    47

| | | |
|---|---|---|
| 1 | A   Sent them the -- | 10:02:10 |
| 2 | Q   The -- | 10:02:12 |
| 3 | A   -- the ones that we signed? | 10:02:13 |
| 4 | Q   Yeah, the purported termination | 10:02:16 |
| 5 | agreements. | 10:02:18 |
| 6 | A   We'd have to go back and look at my -- I | 10:02:18 |
| 7 | think what I was hopefully clearly saying was that | 10:02:21 |
| 8 | we -- I don't know if we sent it to them.  We | 10:02:23 |
| 9 | don't need to send it to them.  I don't think we | 10:02:26 |
| 10 | sent it to them. | 10:02:29 |
| 11 | Q   Okay. | 10:02:30 |
| 12 | A   But we can review that later and see if | 10:02:30 |
| 13 | there was confusion. | 10:02:35 |
| 14 | MR. MINSON:  Can you make this Exhibit 7. | 10:03:51 |
| 15 | (WHEREUPON, a certain document was marked | 10:03:54 |
| 16 | Farah Deposition Exhibit No. 7, for | 10:03:54 |
| 17 | identification.) | 10:04:06 |
| 18 | BY MR. MINSON: | 10:04:06 |
| 19 | Q   I just want to -- for Exhibit 7, it's | 10:04:06 |
| 20 | PROPHARMA0000610. | 10:04:10 |
| 21 | I just want to clarify.  There's a phrase | 10:04:19 |
| 22 | at the top of that page.  It says -- well, first, | 10:04:21 |
| 23 | it says:  We do not have a repurchase/separation | 10:04:25 |
| 24 | agreement in place on May 11th, 2020. | 10:04:28 |
| 25 | And that's a slash, repurchase or | 10:04:33 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                    48

| | |
|---|---|
| 1 | separation agreement. | 10:04:36 |
| 2 | And it says -- Rob Chestnut replies: | 10:04:38 |
| 3 | Interesting.  We have done a repurchase agreement | 10:04:44 |
| 4 | for every other person who has separated from the | 10:04:46 |
| 5 | business. | 10:04:49 |
| 6 | Is that accurate? | 10:04:49 |
| 7 | A  Is which accurate? | 10:04:50 |
| 8 | Q  Is the fact that you've done a repurchase | 10:04:51 |
| 9 | agreement on every person that's separated from | 10:04:54 |
| 10 | the business accurate? | 10:04:57 |
| 11 | A  Well, I can't -- I can't speak to if | 10:04:57 |
| 12 | that's the case in terms of every other person, | 10:05:00 |
| 13 | because I haven't been involved in that.  I can | 10:05:02 |
| 14 | say that what Rob is speaking to here -- there's a | 10:05:05 |
| 15 | couple things going on here. | 10:05:09 |
| 16 | So one is Rob's talking about in his | 10:05:11 |
| 17 | experience as a CFO and not a board member, I'm | 10:05:16 |
| 18 | assuming, I'm guessing, he's referring to | 10:05:20 |
| 19 | employees and we've done repurchase agreements. | 10:05:23 |
| 20 | And that's generally fairly customary. | 10:05:25 |
| 21 | Because usually when an employee is being | 10:05:28 |
| 22 | terminated or they're leaving, it's somewhat on | 10:05:31 |
| 23 | good terms and you're friendly and, you know, | 10:05:33 |
| 24 | everything is amicable. | 10:05:35 |
| 25 | With Pat, interestingly, we tried to do a | 10:05:36 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                        49

| | | |
|---|---|---|
| 1 | repurchase agreement.  We sent him a repurchase | 10:05:40 |
| 2 | agreement in August or September.  That agreement | 10:05:42 |
| 3 | actually acknowledged his removal from the board. | 10:05:45 |
| 4 | So there, he saw that point, that he was removed | 10:05:47 |
| 5 | from the board.  He didn't object to that. | 10:05:49 |
| 6 | And that agreement was for significantly | 10:05:52 |
| 7 | higher than the 105 that he ultimately received. | 10:05:53 |
| 8 | He rejected that -- and ultimately, that offer was | 10:05:57 |
| 9 | higher than what he was entitled to per the | 10:06:00 |
| 10 | document and what we ultimately ended up paying | 10:06:02 |
| 11 | him out. | 10:06:05 |
| 12 | What we ultimately ended up paying him | 10:06:06 |
| 13 | out, the 105, was exactly what he was entitled to | 10:06:08 |
| 14 | per the document.  We just followed the document. | 10:06:08 |
| 15 | So in that case, we didn't need a repurchase | 10:06:11 |
| 16 | agreement.  We didn't need anything else because | 10:06:12 |
| 17 | we weren't doing anything that was outside the | 10:06:13 |
| 18 | ordinary course of the agreement. | 10:06:16 |
| 19 | Furthermore, Pat's a board member, not an | 10:06:17 |
| 20 | employee.  And, you know, Rob's experience, I'm | 10:06:19 |
| 21 | guessing here, really, is his experience centers | 10:06:21 |
| 22 | around -- | 10:06:24 |
| 23 | Q  So the answer to my -- | 10:06:25 |
| 24 | A  -- employees, not board members. | 10:06:27 |
| 25 | Q  Okay.  So the short answer to my question | 10:06:29 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                    50

| | | |
|---|---|---|
| 1 | is the "every person" only refers to employee, not | 10:06:31 |
| 2 | board member? | 10:06:34 |
| 3 | A  Again, I don't -- | 10:06:34 |
| 4 | MR. GILMORE:  Object -- | 10:06:35 |
| 5 | BY THE WITNESS: | 10:06:37 |
| 6 | A  -- I can't speak to that -- | 10:06:37 |
| 7 | MR. GILMORE:  Hold on.  Hold on. | 10:06:38 |
| 8 | Objection, form, lack of foundation. | 10:06:39 |
| 9 | Also, I don't think you handed me a copy | 10:06:43 |
| 10 | of the exhibit. | 10:06:45 |
| 11 | MR. MINSON:  Oh, I'm sorry. | 10:06:58 |
| 12 | BY MR. MINSON: | 10:06:58 |
| 13 | Q  So you believe that Rob, when he says | 10:07:01 |
| 14 | "every person," his experience is focused on | 10:07:03 |
| 15 | employees, not board members? | 10:07:06 |
| 16 | MR. GILMORE:  Objection, form, foundation. | 10:07:07 |
| 17 | BY THE WITNESS: | 10:07:09 |
| 18 | A  You know, I'm not going to say -- that's | 10:07:10 |
| 19 | my interpretation of it, that perhaps he's | 10:07:12 |
| 20 | referring to employees.  And, again, I don't think | 10:07:14 |
| 21 | that's true.  Because I can think of lots of | 10:07:16 |
| 22 | instances at ProPharma, and otherwise, where they | 10:07:18 |
| 23 | might not have gotten a repurchase agreement. | 10:07:21 |
| 24 | So it's really hard to answer to that. | 10:07:23 |
| 25 | | |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                               51

| | | |
|---|---|---|
| 1 | BY MR. MINSON: | 10:07:26 |
| 2 | Q  Okay. | 10:07:26 |
| 3 | MR. MINSON:  Can you mark this as 8. | 10:07:42 |
| 4 | (WHEREUPON, a certain document was marked | 10:07:42 |
| 5 | Farah Deposition Exhibit No. 8, for | 10:07:42 |
| 6 | identification.) | 10:07:55 |
| 7 | BY MR. MINSON: | 10:07:55 |
| 8 | Q  You just previously testified that, you | 10:07:56 |
| 9 | know, you did send a repurchase agreement to Pat | 10:08:02 |
| 10 | for his signature and he didn't sign it, right? | 10:08:04 |
| 11 | So this is an email from September 4th, | 10:08:08 |
| 12 | 2019, and it includes attachments of a ProPharma | 10:08:16 |
| 13 | repurchase agreement as well as an ERG -- I guess | 10:08:23 |
| 14 | it's called letter agreement regarding incentive | 10:08:34 |
| 15 | equity.  And it explains what your offer is to Pat | 10:08:37 |
| 16 | at that time in the email. | 10:08:40 |
| 17 | It says:  We are doing the following.  And | 10:08:41 |
| 18 | then it says:  Three-fifths credit for time | 10:08:44 |
| 19 | vesting units.  You know, two-thirds credit for | 10:08:48 |
| 20 | performance vesting units.  And all these terms | 10:08:50 |
| 21 | that are probably part of this agreement. | 10:08:53 |
| 22 | Did Pat argue about the validity of your | 10:08:56 |
| 23 | position with regard to the ERG agreement, the | 10:09:10 |
| 24 | letter agreement regarding his incentive equity | 10:09:16 |
| 25 | for ERG Holdco, that's attached? | 10:09:19 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                              52

| | | |
|---|---|---|
| 1 | A  I don't believe he raised any objections | 10:09:23 |
| 2 | to ERG, coming off -- both coming off the board | 10:09:25 |
| 3 | and the value of the incentive equity. | 10:09:29 |
| 4 | Q  Okay. | 10:09:33 |
| 5 | A  Which was the same methodology used to | 10:09:33 |
| 6 | value ProPharma's shares as well, I'd like to add. | 10:09:36 |
| 7 | Q  Okay.  And so there's no complaint for the | 10:09:40 |
| 8 | ERG from -- | 10:09:43 |
| 9 | A  Not to my recollection. | 10:09:44 |
| 10 | Q  Okay.  But he did dispute the ProPharma | 10:09:46 |
| 11 | incentive equity valuation? | 10:09:50 |
| 12 | A  The valuation of it, yeah. | 10:09:52 |
| 13 | Q  Okay. | 10:09:54 |
| 14 | A  He did not dispute that we were giving him | 10:10:00 |
| 15 | more than -- more shares -- vesting more shares | 10:10:02 |
| 16 | for him than he was entitled to per the agreement. | 10:10:06 |
| 17 | Q  Okay.  And so was the timing of this email | 10:10:09 |
| 18 | in any way related to the timing of that | 10:10:17 |
| 19 | September 3rd termination document? | 10:10:22 |
| 20 | MR. GILMORE:  Objection, form, foundation. | 10:10:28 |
| 21 | BY THE WITNESS: | 10:10:33 |
| 22 | A  I'm not sure what you mean by "related." | 10:10:34 |
| 23 | BY MR. MINSON: | 10:10:36 |
| 24 | Q  Well, this email with this offer is sent | 10:10:36 |
| 25 | to Pat Donnelly on September 4th.  That is one day | 10:10:42 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                      53

| | | |
|---|---|---|
| 1 | after the date that's listed on that termination | 10:10:46 |
| 2 | agreement that's dated September 3rd, right? | 10:10:50 |
| 3 | So my question is:  Did the termination | 10:10:56 |
| 4 | agreement lead you to send this email, or was the | 10:11:01 |
| 5 | email already going to be sent and then the | 10:11:07 |
| 6 | termination agreement executed? | 10:11:11 |
| 7 | MR. GILMORE:  Objection, form, foundation. | 10:11:14 |
| 8 | BY THE WITNESS: | 10:11:18 |
| 9 | A  I think I -- well, let me try to answer. | 10:11:18 |
| 10 | I think I understand what you're asking is -- | 10:11:22 |
| 11 | BY MR. MINSON: | 10:11:24 |
| 12 | Q  I guess it's a chicken-and-egg question -- | 10:11:24 |
| 13 | A  The -- | 10:11:24 |
| 14 | Q  -- like, which came first. | 10:11:26 |
| 15 | A  Well, let me answer like this:  That | 10:11:28 |
| 16 | agreement, the September 3rd?  Was it | 10:11:31 |
| 17 | September 3rd, you said? | 10:11:33 |
| 18 | Q  September 3rd, 2019. | 10:11:34 |
| 19 | A  I would guess that Kirkland & Ellis | 10:11:35 |
| 20 | created that agreement once we told them, Hey, | 10:11:38 |
| 21 | here's what we're going to do for Pat on ERG.  We | 10:11:42 |
| 22 | need this board letter, and we need the repurchase | 10:11:46 |
| 23 | agreement. | 10:11:50 |
| 24 | And I think whoever was working on | 10:11:50 |
| 25 | Kirkland & Ellis didn't communicate with the folks | 10:11:52 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                    54

| | | |
|---|---|---|
| 1 | who did the June letter, and so they did two new | 10:11:55 |
| 2 | letters, because they had to do one for ERG.  And | 10:11:58 |
| 3 | so they just did one for ProPharma, not realizing | 10:12:01 |
| 4 | that there was one for ProPharma that was already | 10:12:05 |
| 5 | there from June.  That's my guess how that | 10:12:07 |
| 6 | happened. | 10:12:10 |
| 7 |     That September 3rd letter has nothing to | 10:12:10 |
| 8 | do with this.  Conversations about all this were | 10:12:13 |
| 9 | happening -- to my recollection, they were | 10:12:16 |
| 10 | happening in August.  So this is just kind of the | 10:12:20 |
| 11 | culmination of us developing an offer for Pat. | 10:12:25 |
| 12 |     MR. GILMORE:  I'll just also note for the | 10:12:34 |
| 13 | record again, for clarity's sake, I think, Keith, | 10:12:36 |
| 14 | your question referred to a termination agreement. | 10:12:39 |
| 15 | I think you're referring to the signed resolution, | 10:12:42 |
| 16 | which is not an agreement. | 10:12:46 |
| 17 |     MR. MINSON:  The one that was dated -- | 10:12:47 |
| 18 | there's two.  There's one that's not dated; | 10:12:48 |
| 19 | there's one that's dated September 3rd.  So the | 10:12:51 |
| 20 | one that's dated September 3rd. | 10:12:55 |
| 21 |     MR. GILMORE:  Right.  I'm simply, I guess, | 10:12:57 |
| 22 | objecting to the characterization of that as an | 10:13:00 |
| 23 | agreement.  I don't know if you misspoke or | 10:13:01 |
| 24 | intended, but it -- | 10:13:03 |
| 25 |     MR. MINSON:  Oh, no.  Actually, the ERG | 10:13:05 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                            55

| | | |
|---|---|---|
| 1 | says a letter agreement, and that's what I was | 10:13:09 |
| 2 | referring to when I said "agreement."  I -- as far | 10:13:11 |
| 3 | as the offer letter, not -- I wasn't referring to | 10:13:14 |
| 4 | that. | 10:13:16 |
| 5 | MR. GILMORE:  I thought you were referring | 10:13:17 |
| 6 | to the termination resolution, the one that was | 10:13:18 |
| 7 | signed on September 2019 -- | 10:13:23 |
| 8 | MR. MINSON:  Oh, I -- | 10:13:27 |
| 9 | MR. GILMORE:  -- as a termination | 10:13:28 |
| 10 | agreement.  I thought you may have misspoken, | 10:13:29 |
| 11 | because it's not -- | 10:13:31 |
| 12 | MR. MINSON:  I see.  You know, I probably | 10:13:31 |
| 13 | did. | 10:13:32 |
| 14 | MR. GILMORE:  That's fine.  I'm not trying | 10:13:32 |
| 15 | to make a big deal.  I just want the record clear. | 10:13:34 |
| 16 | Because I think the witness also was using that | 10:13:37 |
| 17 | same phrase, "termination agreement."  And I just | 10:13:40 |
| 18 | want to make sure what you both were referring to | 10:13:43 |
| 19 | there was the signed removal resolution. | 10:13:45 |
| 20 | MR. MINSON:  Yep. | 10:13:47 |
| 21 | MR. GILMORE:  Okay. | 10:13:48 |
| 22 | BY MR. MINSON: | 10:14:07 |
| 23 | Q  And the repurchase agreement with regard | 10:14:08 |
| 24 | to ProPharma that you say references the date that | 10:14:13 |
| 25 | Pat was aware of, that's -- that stated that he | 10:14:22 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                     56

| | | |
|---|---|---|
| 1 | was terminated on August 31st, 2019, correct? | 10:14:26 |
| 2 | A  That's the effective date that's in this | 10:14:33 |
| 3 | repurchase agreement.  It doesn't necessarily | 10:14:37 |
| 4 | mean -- it doesn't, you know, supersede the actual | 10:14:43 |
| 5 | discussion in June. | 10:14:46 |
| 6 | The discussion that happened in June, | 10:14:48 |
| 7 | June 27th, right around there, he acknowledged | 10:14:50 |
| 8 | early July.  It's effective end of August. | 10:14:53 |
| 9 | Q  Okay.  So I'm just trying to understand. | 10:14:58 |
| 10 | Is it your position that he was terminated in June | 10:15:00 |
| 11 | or August? | 10:15:01 |
| 12 | A  My position is he was terminated the end | 10:15:02 |
| 13 | of June.  He acknowledged that termination in | 10:15:06 |
| 14 | early July, through an email.  He acknowledged it | 10:15:10 |
| 15 | again to me over the phone, during July and August | 10:15:14 |
| 16 | time period.  I don't recall exactly when that | 10:15:19 |
| 17 | occurred. | 10:15:21 |
| 18 | And then this -- in this repurchase | 10:15:22 |
| 19 | agreement, this is meant to be the effective date | 10:15:24 |
| 20 | of when that termination -- just like, you know, | 10:15:25 |
| 21 | you could terminate an employee and, you know, | 10:15:27 |
| 22 | they work for another two weeks. | 10:15:31 |
| 23 | Q  But the date of the valuation that you | 10:15:36 |
| 24 | provided was June 30th, correct? | 10:15:38 |
| 25 | MR. GILMORE:  Objection, form, foundation. | 10:15:40 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                    57

| | | |
|---|---|---|
| 1 | BY MR. MINSON: | 10:15:41 |
| 2 | Q  The date of the valuation of his incentive | 10:15:42 |
| 3 | equity shares that you offered him in connection | 10:15:45 |
| 4 | with this offer. | 10:15:47 |
| 5 | A  Was as of June 30th -- | 10:15:51 |
| 6 | Q  Right. | 10:15:54 |
| 7 | A  -- that's correct. | 10:15:54 |
| 8 | We do our valuations quarterly, on a | 10:15:57 |
| 9 | calendar quarter. | 10:16:00 |
| 10 | Q  Okay.  So I'm just wondering -- if it's | 10:16:01 |
| 11 | your position that he was terminated in June and | 10:16:03 |
| 12 | the valuation that you provided was June, I'm just | 10:16:06 |
| 13 | wondering why you chose August 31st as a | 10:16:09 |
| 14 | termination date for this offer. | 10:16:12 |
| 15 | A  I don't think there's any particular | 10:16:17 |
| 16 | reason other than the discussions were ongoing | 10:16:19 |
| 17 | with him around the repurchase, and that's just | 10:16:22 |
| 18 | how it played out. | 10:16:25 |
| 19 | You know, board meeting -- it's almost | 10:16:27 |
| 20 | irrelevant because board meetings happen really | 10:16:29 |
| 21 | quarterly.  And so it just really doesn't -- you | 10:16:33 |
| 22 | have a June meeting and then you've got a | 10:16:35 |
| 23 | September meeting, and so there's really nothing | 10:16:38 |
| 24 | in between.  So other than that, I can't really | 10:16:40 |
| 25 | speak to -- I don't know why the effective date | 10:16:44 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                    58

| | | |
|---|---|---|
| 1 | was as of August. | 10:16:46 |
| 2 | Q  I don't -- | 10:16:47 |
| 3 | A  It's irrelevant -- to me it's irrelevant. | 10:16:48 |
| 4 | Q  Okay.  I don't run a business, personally, | 10:16:52 |
| 5 | but to me it would seem that if you're saying he | 10:16:54 |
| 6 | was terminated in June and the effective date of | 10:16:58 |
| 7 | the -- you know, the valuation that you were | 10:17:01 |
| 8 | providing him was June, wouldn't it be cleaner to | 10:17:03 |
| 9 | make the termination date on this repurchase | 10:17:06 |
| 10 | agreement June? | 10:17:08 |
| 11 | MR. GILMORE:  Objection, form, foundation. | 10:17:08 |
| 12 | BY THE WITNESS: | 10:17:11 |
| 13 | A  I don't know how to answer that.  I'm not | 10:17:12 |
| 14 | sure what the specific question -- | 10:17:14 |
| 15 | BY MR. MINSON: | 10:17:15 |
| 16 | Q  I mean -- | 10:17:16 |
| 17 | A  -- is. | 10:17:16 |
| 18 | Q  -- wouldn't it be cleaner to have the | 10:17:17 |
| 19 | valuation date and the termination date coincide, | 10:17:21 |
| 20 | if that is the true date that you believe he was | 10:17:24 |
| 21 | terminated? | 10:17:27 |
| 22 | MR. GILMORE:  Objection, form, lack of | 10:17:28 |
| 23 | foundation. | 10:17:31 |
| 24 | BY THE WITNESS: | 10:17:31 |
| 25 | A  What do you mean by "cleaner"? | 10:17:32 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                        59

| | | |
|---|---|---|
| 1 | BY MR. MINSON: | 10:17:34 |
| 2 | Q  I mean to match.  I mean, you're saying | 10:17:34 |
| 3 | that all three of these dates should have been the | 10:17:37 |
| 4 | same date -- right? -- so... | 10:17:40 |
| 5 | A  I'm not saying that, no. | 10:17:41 |
| 6 | MR. GILMORE:  Objection, form, foundation. | 10:17:43 |
| 7 | BY MR. MINSON: | 10:17:45 |
| 8 | Q  Okay. | 10:17:46 |
| 9 | A  They don't need to be the same date.  I | 10:17:46 |
| 10 | don't see any reason they need to be.  How | 10:17:46 |
| 11 | it's -- I don't see how it would be cleaner. | 10:17:51 |
| 12 | Q  Okay.  So are you aware of when ProPharma | 10:18:02 |
| 13 | and its management staff knew that Pat was | 10:18:30 |
| 14 | actually no longer a member or manager or when | 10:18:33 |
| 15 | that actual communication was made to them? | 10:18:41 |
| 16 | A  I don't recall when I spoke to the | 10:18:43 |
| 17 | management team about that. | 10:18:48 |
| 18 | Q  Okay. | 10:18:49 |
| 19 | MR. MINSON:  Can you mark this as 9. | 10:18:51 |
| 20 | (WHEREUPON, a certain document was marked | 10:18:51 |
| 21 | Farah Deposition Exhibit No. 9, for | 10:18:51 |
| 22 | identification.) | 10:19:02 |
| 23 | BY MR. MINSON: | 10:19:03 |
| 24 | Q  This is Exhibit Number 9.  This is a | 10:19:13 |
| 25 | document Bates-stamped PROPHARMA000373.  It's an | 10:19:15 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                              60

| | | |
|---|---|---|
| 1 | email from September 3rd, 2020, from Bennett | 10:19:21 |
| 2 | Yasskin to Dawn Sherman. | 10:19:31 |
| 3 | It says:  Dawn, please find an attached | 10:19:33 |
| 4 | updated version with the additional member -- with | 10:19:36 |
| 5 | the additional members of management. | 10:19:39 |
| 6 | Effectively, this sheet includes everyone other | 10:19:41 |
| 7 | than Linden, Monroe, and Jeff.  Please reach out | 10:19:44 |
| 8 | with any questions on this. | 10:19:48 |
| 9 | And the attachment, which is Bates -- it's | 10:19:52 |
| 10 | actually not Bates-labeled for some reason. | 10:19:55 |
| 11 | MR. GILMORE:  It was probably produced in | 10:20:00 |
| 12 | native form.  It's an Excel. | 10:20:02 |
| 13 | MR. MINSON:  Oh, right. | 10:20:04 |
| 14 | BY MR. MINSON: | 10:20:06 |
| 15 | Q  Well, the attachment, which I'm assuming | 10:20:07 |
| 16 | was produced in native form, should be | 10:20:09 |
| 17 | PROPHARMA375 -- actually, no, I'm sorry -- yeah, | 10:20:14 |
| 18 | PROPHARMA375. | 10:20:17 |
| 19 | Is a list that still includes Pat Donnelly | 10:20:23 |
| 20 | on it.  It says he doesn't have any shares, but he | 10:20:25 |
| 21 | is referenced as additional member -- as an | 10:20:28 |
| 22 | additional member of management. | 10:20:31 |
| 23 | So I'm wondering why, as of -- this is | 10:20:35 |
| 24 | three weeks -- or a little bit over three weeks | 10:20:41 |
| 25 | before the sale of ProPharma -- why Pat is listed | 10:20:43 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                    61

| | | |
|---|---|---|
| 1 | on this list as an additional member of | 10:20:50 |
| 2 | management. | 10:20:52 |
| 3 | Did you provide information regarding his | 10:20:53 |
| 4 | termination to ProPharma by that time? | 10:20:55 |
| 5 | A  Yeah, certainly, we did.  Of course we | 10:20:59 |
| 6 | did. | 10:21:02 |
| 7 | I think what this -- and I'd want to spend | 10:21:03 |
| 8 | more time with the emails to make sure I | 10:21:07 |
| 9 | understand why this is being requested.  But our | 10:21:09 |
| 10 | cap tables are almost, like, cumulative.  So over | 10:21:11 |
| 11 | the course of a company's -- our investment, our | 10:21:13 |
| 12 | hold period, we keep track of everybody who comes | 10:21:17 |
| 13 | in and out of the cap table. | 10:21:20 |
| 14 | And the associates typically leave people | 10:21:21 |
| 15 | in even if they're gone.  It's just easier to do | 10:21:24 |
| 16 | it that way.  And it's their -- it's probably out | 10:21:26 |
| 17 | of laziness more than anything else, but it | 10:21:29 |
| 18 | doesn't really -- it doesn't impact anything.  And | 10:21:33 |
| 19 | so it's just a mislabel, effectively. | 10:21:35 |
| 20 | That said, Pat still had his investment. | 10:21:37 |
| 21 | He made a hard-dollar investment when we did the | 10:21:41 |
| 22 | transaction initially, and so he was still in the | 10:21:44 |
| 23 | cap table because of that investment. | 10:21:45 |
| 24 | So he would have been in here.  And I | 10:21:47 |
| 25 | think they just didn't clean it up and pull him | 10:21:49 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                                    62

| | | |
|---|---|---|
| 1 | out and say, you know, former board member. | 10:21:51 |
| 2 | But, you know, when you're working on | 10:21:54 |
| 3 | these deals very long hours -- this is during the | 10:21:56 |
| 4 | exit, the sale process.  Everyone is working | 10:22:02 |
| 5 | around the clock and trying to be -- to respond | 10:22:04 |
| 6 | quickly and get information out.  They're not | 10:22:08 |
| 7 | always cleaning everything up. | 10:22:10 |
| 8 | Q  Okay. | 10:22:12 |
| 9 | A  THE WITNESS:  Could we do a quick break? | 10:22:30 |
| 10 | MR. GILMORE:  Yeah.  We've been going | 10:22:33 |
| 11 | about an hour. | 10:22:34 |
| 12 | THE VIDEOGRAPHER:  We are off the record | 10:22:35 |
| 13 | at 10:22 a.m. | 10:22:37 |
| 14 | (WHEREUPON, a recess was had.) | 10:36:11 |
| 15 | THE VIDEOGRAPHER:  We are back on the | 10:36:11 |
| 16 | record at 10:36 a.m. with the beginning of | 10:36:20 |
| 17 | Media 2. | 10:36:26 |
| 18 | BY MR. MINSON: | 10:36:32 |
| 19 | Q  Mr. Farah, I want to go to Pat's | 10:36:33 |
| 20 | performance while he was a member of the ProPharma | 10:36:36 |
| 21 | board. | 10:36:39 |
| 22 | He joined in 2016, as we talked about. | 10:36:44 |
| 23 | How was his performance during 2016 as a board | 10:36:49 |
| 24 | member? | 10:36:58 |
| 25 | A  During the first year? | 10:36:58 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                      63

| | | |
|---|---|---|
| 1 | Q  Mm-hm. | 10:37:00 |
| 2 | A  I think it was fine.  I'd characterize it | 10:37:02 |
| 3 | as fine. | 10:37:07 |
| 4 | Q  Okay.  And how about 2017? | 10:37:09 |
| 5 | A  It was similar.  He was -- overall, he was | 10:37:13 |
| 6 | an okay board member.  What I found over the | 10:37:18 |
| 7 | years, with both ProPharma and ERG, was that, you | 10:37:20 |
| 8 | know, unfortunately, the management teams of those | 10:37:24 |
| 9 | companies -- CEOs, CFOs, the kind of key | 10:37:27 |
| 10 | executives -- really did not, unfortunately, value | 10:37:31 |
| 11 | him as a board member.  They didn't see value in | 10:37:35 |
| 12 | what he brought to the table. | 10:37:37 |
| 13 | And, you know, I found him at times -- | 10:37:40 |
| 14 | while I supported him a lot during all of this, | 10:37:44 |
| 15 | and particularly defended him to the management | 10:37:47 |
| 16 | teams quite a bit, you know, he just became, over | 10:37:50 |
| 17 | the years, increasingly difficult to work with. | 10:37:53 |
| 18 | Q  Okay.  And what specifically didn't the | 10:37:57 |
| 19 | management teams appreciate about Pat? | 10:38:01 |
| 20 | A  You know, a lot of it had to do with his | 10:38:05 |
| 21 | attitude, his demeanor, his -- a bit of | 10:38:11 |
| 22 | snarkiness, a bit of well, when I was CEO, I did | 10:38:15 |
| 23 | it this way, you know. | 10:38:19 |
| 24 | And, you know, the management teams didn't | 10:38:20 |
| 25 | really perceive that as helpful to them. | 10:38:23 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                    64

| | | |
|---|---|---|
| 1 | Q  And during this time, did ProPharma, from | 10:38:26 |
| 2 | 2016 through 2020, experience growth? | 10:38:35 |
| 3 | A  Certainly, when you look at the bookends, | 10:38:38 |
| 4 | from when we bought the business in 2016 until | 10:38:45 |
| 5 | 2020, the business grew.  A lot of that was | 10:38:49 |
| 6 | acquired.  So we went out and bought that revenue | 10:38:53 |
| 7 | or we bought that EBITDA. | 10:38:56 |
| 8 | And some of it was organic, and some of | 10:38:58 |
| 9 | the growth was stronger earlier on.  There was a | 10:39:00 |
| 10 | period at the end where it was really flat for -- | 10:39:04 |
| 11 | I'd have to go back and look at all the numbers. | 10:39:08 |
| 12 | But even leading up through COVID, it had been | 10:39:11 |
| 13 | flat for a while.  It really hadn't been growing. | 10:39:15 |
| 14 | Q  Okay.  So you said the end was flat.  So | 10:39:17 |
| 15 | let's take it back.  How about up until 2019, from | 10:39:19 |
| 16 | 2016 to 2019? | 10:39:25 |
| 17 | A  Again, the overall direction was growth, | 10:39:27 |
| 18 | but I'd have to go back and look at -- I don't | 10:39:30 |
| 19 | really count acquired growth because you're paying | 10:39:33 |
| 20 | for it.  So what I really care about is what we | 10:39:36 |
| 21 | call "organic growth," which is what is the | 10:39:39 |
| 22 | business doing on its own without the help of | 10:39:43 |
| 23 | acquisitions.  Because you're just -- you're | 10:39:44 |
| 24 | paying for that growth. | 10:39:47 |
| 25 | So I think it was growing, but I -- | 10:39:47 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                    65

| | | |
|---|---|---|
| 1 | there's definitely periods in there where it was | 10:39:51 |
| 2 | not growing or it was flat.  But, overall, it | 10:39:54 |
| 3 | grew, yeah. | 10:39:58 |
| 4 |   Q  So you're saying that you're paying for | 10:39:58 |
| 5 | the growth, so some of the acquisitions account | 10:40:02 |
| 6 | for the growth. | 10:40:04 |
| 7 |     Was -- did Pat suggest or was he part of | 10:40:06 |
| 8 | any of those acquisitions or part of the | 10:40:10 |
| 9 | discussions of any of those acquisitions? | 10:40:12 |
| 10 |   A  He was.  For several of them, he was part | 10:40:14 |
| 11 | of the discussions.  I'm actually trying to think | 10:40:20 |
| 12 | back. | 10:40:26 |
| 13 |     The -- actually, I'd want to correct what | 10:40:28 |
| 14 | I just said.  Most of the acquisitions happened | 10:40:30 |
| 15 | after he became -- to my recollection, most | 10:40:36 |
| 16 | happened after he became CEO of Advarra.  So he | 10:40:44 |
| 17 | was not as involved in those, but there was | 10:40:47 |
| 18 | definitely some that happened before that he was | 10:40:50 |
| 19 | involved in. | 10:40:52 |
| 20 |     Again, I'd have to go back and take a look | 10:40:52 |
| 21 | at it.  I'd want to just kind of get all the | 10:40:52 |
| 22 | detail.  It's been, you know, now six years since | 10:40:55 |
| 23 | we bought the business. | 10:40:57 |
| 24 |   Q  And when was the decision made that Pat | 10:41:02 |
| 25 | would no longer serve on the ProPharma board? | 10:41:06 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                        66

| | | |
|---|---|---|
| 1 | A  Well, can you be more specific? | 10:41:12 |
| 2 | Q  Not when was it relayed to him.  When, to | 10:41:16 |
| 3 | your knowledge, did other board members decide | 10:41:23 |
| 4 | that they didn't want him on the board? | 10:41:25 |
| 5 | A  I see.  So I can't tell you when, like -- | 10:41:27 |
| 6 | I don't recall when, for example, Dawn or Jeff, in | 10:41:34 |
| 7 | their own minds, said -- Jeff Hargroves said, I | 10:41:36 |
| 8 | don't want him on the board anymore. | 10:41:41 |
| 9 | Throughout the preceding -- really, from | 10:41:42 |
| 10 | when he became CEO of Advarra, Pat acknowledged | 10:41:47 |
| 11 | that there was a conflict and he should come off | 10:41:50 |
| 12 | the board.  Jeff Hargroves acknowledged that there | 10:41:53 |
| 13 | was a conflict and he didn't want him on the | 10:41:55 |
| 14 | board.  Dawn Sherman said the same thing.  She | 10:41:57 |
| 15 | didn't value him; there's a conflict; why is he on | 10:42:00 |
| 16 | the board. | 10:42:03 |
| 17 | So there was a general feeling of, from | 10:42:03 |
| 18 | the other board members, really from that 2018 | 10:42:06 |
| 19 | time period, which is the date -- the year that | 10:42:09 |
| 20 | I'm assuming he became CEO of Advarra.  That's | 10:42:11 |
| 21 | what I'm remembering.  So if that's not, I | 10:42:14 |
| 22 | apologize.  But that folks didn't really want him | 10:42:16 |
| 23 | on the board. | 10:42:22 |
| 24 | And, of course, he had been talking to me | 10:42:22 |
| 25 | about coming off the board for months if not -- | 10:42:24 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                               67

| | | |
|---|---|---|
| 1 | Q   Months from what time?  I'm sorry. | 10:42:28 |
| 2 | A   Yeah, I was going to finish.  From months | 10:42:30 |
| 3 | from before it happened, if not over a year before | 10:42:32 |
| 4 | it happened. | 10:42:35 |
| 5 | So he had made it very vocal to me for -- | 10:42:35 |
| 6 | I think there's emails somewhere that could help | 10:42:38 |
| 7 | with the timeline, particularly with Jeff | 10:42:40 |
| 8 | Hargroves, that will help piece that together. | 10:42:43 |
| 9 | But for a long time, he had made it clear | 10:42:44 |
| 10 | that he did not want to be on the board of | 10:42:46 |
| 11 | ProPharma. | 10:42:48 |
| 12 | Q   Did he say that he didn't want to be on | 10:42:49 |
| 13 | the board, or did he just acknowledge conflicts? | 10:42:50 |
| 14 | A   I don't remember his exact words, but it | 10:42:53 |
| 15 | was absolutely to the effect of:  There's | 10:42:58 |
| 16 | conflicts.  I'm not sure I should be on the board. | 10:43:01 |
| 17 | I'm not -- | 10:43:06 |
| 18 | Q   But did he -- | 10:43:07 |
| 19 | A   -- I'm not -- it might be like something | 10:43:08 |
| 20 | to that effect of:  I'm not sure I should be on | 10:43:10 |
| 21 | the board.  I don't want to be on the board. | 10:43:13 |
| 22 | These are conversations in the hallway that -- | 10:43:15 |
| 23 | Q   I understand.  But just for the record and | 10:43:17 |
| 24 | for my purposes, I think there's a difference | 10:43:20 |
| 25 | between saying you shouldn't be on the board and I | 10:43:21 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                    68

| | | |
|---|---|---|
| 1 | don't want to be on the board.  There's a | 10:43:25 |
| 2 | difference between that and asking to be removed | 10:43:30 |
| 3 | from the board. | 10:43:32 |
| 4 | And I'm asking you if he ever asked to be | 10:43:32 |
| 5 | removed from the board. | 10:43:35 |
| 6 | MR. GILMORE:  Objection, form, foundation. | 10:43:36 |
| 7 | BY THE WITNESS: | 10:43:43 |
| 8 | A  Yeah, I think he did.  I think he -- | 10:43:43 |
| 9 | again, I don't remember the exact words, so -- but | 10:43:47 |
| 10 | it was very clear that he did not want to be -- | 10:43:49 |
| 11 | the conversations were such that it was:  Hey, I | 10:43:51 |
| 12 | really shouldn't be on the board, so -- | 10:43:55 |
| 13 | Q  Okay. | 10:43:57 |
| 14 | A  -- I should come off the board.  It was | 10:43:57 |
| 15 | like that nature, like:  Hey, there's a conflict | 10:44:00 |
| 16 | here.  I really shouldn't -- I really shouldn't be | 10:44:02 |
| 17 | on the board. | 10:44:04 |
| 18 | Q  I just want to clarify your answer.  You | 10:44:04 |
| 19 | think he did.  You're not sure that he asked to be | 10:44:06 |
| 20 | removed from the board? | 10:44:08 |
| 21 | MR. GILMORE:  Object -- well, objection, | 10:44:09 |
| 22 | foundation. | 10:44:11 |
| 23 | BY THE WITNESS: | 10:44:12 |
| 24 | A  Yeah, I kind of interpreted it in that way | 10:44:12 |
| 25 | over the years, that he didn't want to be on the | 10:44:14 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                    69

| | | |
|---|---|---|
| 1 | board.  I think I even -- at one point, I wrote to | 10:44:16 |
| 2 | somebody, another board member, you know, he | 10:44:19 |
| 3 | doesn't want to be on the board. | 10:44:21 |
| 4 | So it was like really -- it was very clear | 10:44:22 |
| 5 | just based on the conversations that he didn't | 10:44:25 |
| 6 | want to be on the board.  He didn't think he | 10:44:27 |
| 7 | should be on the board. | 10:44:29 |
| 8 | BY MR. MINSON: | 10:44:30 |
| 9 | Q  Okay.  So that was your interpretation -- | 10:44:30 |
| 10 | A  Yeah. | 10:44:31 |
| 11 | Q  -- not a direct request? | 10:44:32 |
| 12 | MR. GILMORE:  Objection, form, lack of | 10:44:34 |
| 13 | foundation. | 10:44:36 |
| 14 | BY THE WITNESS: | 10:44:36 |
| 15 | A  Again, I don't -- it's tough to answer | 10:44:37 |
| 16 | because I don't -- I didn't write down the | 10:44:42 |
| 17 | conversations so... | 10:44:44 |
| 18 | BY MR. MINSON: | 10:44:50 |
| 19 | Q  Right. | 10:44:50 |
| 20 | A  It felt very clear to me that he was | 10:44:51 |
| 21 | asking to come off the board.  And, in fact, it | 10:44:53 |
| 22 | must have been, because I know at certain points | 10:44:55 |
| 23 | prior to this, I had gone to Tony, and Tony kind | 10:44:57 |
| 24 | of kept him on longer, in the hope that we would | 10:45:00 |
| 25 | be able to work it out. | 10:45:10 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                    70

| | | |
|---|---|---|
| 1 | So there was certainly a point where I | 10:45:11 |
| 2 | think it was very clear that, months before that, | 10:45:13 |
| 3 | he wanted to be off the board so... | 10:45:15 |
| 4 | MR. MINSON:  Can you mark this 10. | 10:46:34 |
| 5 | (WHEREUPON, a certain document was marked | 10:46:34 |
| 6 | Farah Deposition Exhibit No. 10, for | 10:46:34 |
| 7 | identification.) | 10:46:47 |
| 8 | BY MR. MINSON: | 10:46:47 |
| 9 | Q  In front of you is Exhibit Number 10, and | 10:46:49 |
| 10 | it's simply Patrick Donnelly's offer to join the | 10:46:54 |
| 11 | ProPharma board from October 24th, 2016, | 10:47:01 |
| 12 | Bates-labeled PROPHARMA000077. | 10:47:05 |
| 13 | And it shows -- I guess my only question | 10:47:14 |
| 14 | related to this document, Pat Donnelly -- I don't | 10:47:26 |
| 15 | see a signature on this document.  Oh, I do see a | 10:47:32 |
| 16 | signature on this document.  It's on | 10:47:36 |
| 17 | PROPHARMA000078.  And it's signed by Anthony | 10:47:39 |
| 18 | Davis. | 10:47:45 |
| 19 | My only question is did you intend to be | 10:47:45 |
| 20 | bound by this agreement when you sent this to him? | 10:47:50 |
| 21 | A  I don't understand the question. | 10:47:54 |
| 22 | Q  Did you intend this agreement to lay out | 10:47:55 |
| 23 | the terms between your relationship and Pat | 10:47:57 |
| 24 | Donnelly? | 10:48:01 |
| 25 | MR. GILMORE:  Objection, form, foundation, | 10:48:01 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                    71

| 1 | to the extent it calls for a legal conclusion. | 10:48:04 |
| 2 | MR. MINSON:  I asked him about his | 10:48:08 |
| 3 | intention, not his interpretation. | 10:48:10 |
| 4 | MR. GILMORE:  Same objections. | 10:48:12 |
| 5 | BY THE WITNESS: | 10:48:26 |
| 6 | A  Yeah, it's tough for me to answer it from | 10:48:26 |
| 7 | a -- this is kind of, you know, you make an offer | 10:48:28 |
| 8 | for someone to join the board.  You lay out the | 10:48:31 |
| 9 | terms.  That's what's in this letter.  It kind of | 10:48:34 |
| 10 | summarizes that. | 10:48:37 |
| 11 | BY MR. MINSON: | 10:48:37 |
| 12 | Q  But those are the terms that you wanted | 10:48:37 |
| 13 | Pat to join the board under? | 10:48:40 |
| 14 | A  Yeah, I'd have to go back and -- I'd want | 10:48:42 |
| 15 | to read -- the whole thing.  It's not that long. | 10:48:44 |
| 16 | But, yeah -- I don't recall exactly at the time, | 10:48:46 |
| 17 | but I think generally that makes sense. | 10:48:49 |
| 18 | MR. MINSON:  This is 11. | 10:49:28 |
| 19 | (WHEREUPON, a certain document was marked | 10:49:28 |
| 20 | Farah Deposition Exhibit No. 11, for | 10:49:28 |
| 21 | identification.) | 10:49:38 |
| 22 | BY MR. MINSON: | 10:49:38 |
| 23 | Q  And Exhibit Number 11, in front of you | 10:49:38 |
| 24 | now, is the management incentive unit agreement | 10:49:40 |
| 25 | between ProPharma and Pat. | 10:49:43 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                                72

| | | |
|---|---|---|
| 1 | And it's -- honestly, it's basically the | 10:49:50 |
| 2 | same question.  Is this the deal that you wanted, | 10:49:52 |
| 3 | or are these the terms that you wanted to offer | 10:49:55 |
| 4 | Pat as part of his board membership? | 10:49:58 |
| 5 | A  Well, without reading the whole document | 10:50:03 |
| 6 | and knowing everything that's in here, my | 10:50:05 |
| 7 | assumption is that this outlines the terms that we | 10:50:10 |
| 8 | had agreed to with Pat for the incentive equity, | 10:50:15 |
| 9 | and so that this is the agreement, then, that we | 10:50:19 |
| 10 | operate under. | 10:50:21 |
| 11 | Q  Okay. | 10:50:21 |
| 12 | A  When something like -- you know, on the | 10:50:23 |
| 13 | vesting, whatever it is, the separation, whatever | 10:50:25 |
| 14 | it may be. | 10:50:28 |
| 15 | Q  Okay.  You can put that to the side, too. | 10:50:29 |
| 16 | I'll go back to my original line of | 10:50:41 |
| 17 | questioning. | 10:50:44 |
| 18 | MR. MINSON:  Can you mark this as 12. | 10:50:50 |
| 19 | (WHEREUPON, a certain document was marked | 10:50:50 |
| 20 | Farah Deposition Exhibit No. 12, for | 10:50:50 |
| 21 | identification.) | 10:51:08 |
| 22 | BY MR. MINSON: | 10:51:08 |
| 23 | Q  This is an email that you wrote to Tony | 10:51:08 |
| 24 | Davis.  It's Bates Exhibit Number 12, in front of | 10:51:14 |
| 25 | you now.  It's Bates-labeled LINDEN000274. | 10:51:18 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                    73

| | | |
|---|---|---|
| 1 | And it says:  Tony, as discussed, I think | 10:51:23 |
| 2 | it makes sense to ask Pat to step down from the | 10:51:25 |
| 3 | board of PPG.  He feels conflicted because Advarra | 10:51:29 |
| 4 | competes with PPG, and he also feels like Dawn | 10:51:34 |
| 5 | doesn't value his input.  Given his perceived | 10:51:37 |
| 6 | conflict with Advarra, I think it makes sense now | 10:51:40 |
| 7 | to ask him to step down.  I believe he should keep | 10:51:43 |
| 8 | his equity, 75 -- as I learned on Monday -- basis | 10:51:47 |
| 9 | points, given his level of involvement up until | 10:51:52 |
| 10 | this point.  After you speak to Pat, I can let | 10:51:56 |
| 11 | Dawn know, or we can call her together. | 10:52:00 |
| 12 | So before, I think you said that you | 10:52:06 |
| 13 | interpret it as Pat wanting to step down from the | 10:52:16 |
| 14 | board. | 10:52:19 |
| 15 | A  Yeah. | 10:52:19 |
| 16 | Q  Right?  So, I mean, given that, I mean, | 10:52:20 |
| 17 | why -- is it possible for him to resign from the | 10:52:23 |
| 18 | board?  Or was it possible for him to resign from | 10:52:26 |
| 19 | his board? | 10:52:33 |
| 20 | A  Yeah, it would have been.  Yeah, and this | 10:52:34 |
| 21 | is an another good example here, where you can go | 10:52:37 |
| 22 | back and read this, so clearly you can see from -- | 10:52:39 |
| 23 | you were asking me earlier about -- | 10:52:43 |
| 24 | Q  Conflict. | 10:52:44 |
| 25 | A  -- what was he saying?  Did he ask to come | 10:52:45 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                          74

| | | |
|---|---|---|
| 1 | down?  Did he -- it's not like we kept him there | 10:52:47 |
| 2 | against his will, by any -- we couldn't do that. | 10:52:50 |
| 3 | We can't do that.  So -- | 10:52:50 |
| 4 | Q  Right. | 10:52:50 |
| 5 | A  -- it was very clear, and you can see in | 10:52:51 |
| 6 | this email in January.  And so the discussions | 10:52:52 |
| 7 | were probably happening in December with Pat, | 10:52:55 |
| 8 | before, prior to that, where he was making it very | 10:52:57 |
| 9 | clear that he wanted to come off. | 10:52:59 |
| 10 | Especially when he says things like "Dawn | 10:53:01 |
| 11 | doesn't value me."  That's him saying, I want to | 10:53:04 |
| 12 | come off the board.  I think, you know, yeah, he | 10:53:06 |
| 13 | could have resigned. | 10:53:09 |
| 14 | Q  Okay.  So why did you feel the need to ask | 10:53:10 |
| 15 | him at this point in time? | 10:53:15 |
| 16 | A  Ask him to resign?  Why did I feel the | 10:53:16 |
| 17 | need to ask him to resign? | 10:53:19 |
| 18 | Q  Yeah. | 10:53:21 |
| 19 | A  I think -- so this was a few years ago | 10:53:21 |
| 20 | now, so it's jogging my memory here. | 10:53:26 |
| 21 | I think, again, this is like he's asking, | 10:53:30 |
| 22 | he's asking, he's making a lot of noise now that | 10:53:33 |
| 23 | he wants to come down.  I don't know why he didn't | 10:53:36 |
| 24 | just resign on his own, but he didn't. | 10:53:38 |
| 25 | And so now I'm trying to address this in a | 10:53:40 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                          75

| | | |
|---|---|---|
| 1 | way that, you know, okay, let's try to work with | 10:53:43 |
| 2 | Pat.  He's asking to come off.  This is the time. | 10:53:46 |
| 3 | Let's do it.  Is this the right time?  You know. | 10:53:49 |
| 4 | He's made enough noise.  He's upset about | 10:53:52 |
| 5 | it, I guess, or he's -- you know, he perceives the | 10:53:55 |
| 6 | conflict to be enough -- great enough that it's, | 10:53:59 |
| 7 | you know, causing him angst.  And so let's try to | 10:54:03 |
| 8 | work with Pat and let's get -- let's remove him | 10:54:05 |
| 9 | from the board. | 10:54:09 |
| 10 | Q  So it was based on his expression of | 10:54:09 |
| 11 | feeling conflicted that you asked him to step | 10:54:15 |
| 12 | down, is what you're saying? | 10:54:17 |
| 13 | A  Well, that was one of the reasons.  There | 10:54:19 |
| 14 | was a feeling of conflict from him.  There's | 10:54:23 |
| 15 | obviously -- Dawn, in this case, doesn't value | 10:54:25 |
| 16 | him.  Others on the management team didn't value | 10:54:31 |
| 17 | him.  So there's other reasons as well.  But, yes, | 10:54:33 |
| 18 | it's -- a lot had to do with the conflict, for | 10:54:36 |
| 19 | sure. | 10:54:39 |
| 20 | Q  Okay.  And the conflict related to | 10:54:40 |
| 21 | Advarra; is that correct? | 10:54:45 |
| 22 | A  Correct. | 10:54:45 |
| 23 | Q  And Richard Thomas, who was on the board, | 10:54:46 |
| 24 | was also on the board of Advarra at the same time | 10:54:52 |
| 25 | that Pat was on the board; isn't that -- | 10:54:54 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                          76

| | | |
|---|---|---|
| 1 | A   That's correct, yeah. | 10:54:57 |
| 2 | Q   -- correct? | 10:54:59 |
| 3 | And Richard Thomas at times also expressed | 10:55:01 |
| 4 | conflicts to you; is that true? | 10:55:06 |
| 5 | A   Yeah.  So Richard expressed conflicts | 10:55:08 |
| 6 | around a very particular situation when he, as | 10:55:13 |
| 7 | a -- solely as a board member of Advarra and | 10:55:19 |
| 8 | solely as a board member of ProPharma, if we go at | 10:55:21 |
| 9 | some point to sell ProPharma, Advarra could have | 10:55:25 |
| 10 | been a buyer of ProPharma, and so the question was | 10:55:28 |
| 11 | how do we handle that. | 10:55:31 |
| 12 | And we said, oh, it's real easy.  We | 10:55:32 |
| 13 | can -- you know, you just step out of one side of | 10:55:34 |
| 14 | it.  You recuse yourself from one side, and we can | 10:55:35 |
| 15 | handle it.  We had a very good relationship, and | 10:55:38 |
| 16 | we do have a very good relationship with Richard. | 10:55:41 |
| 17 | So that's -- when folks are working together, you | 10:55:43 |
| 18 | can address those types of conflicts. | 10:55:45 |
| 19 | Pat was the CEO of Advarra, also a board | 10:55:47 |
| 20 | member of Advarra, which is very common, that the | 10:55:50 |
| 21 | CEO is also a board member.  And then he was just | 10:55:53 |
| 22 | a board member, solely a board member of | 10:55:55 |
| 23 | ProPharma. | 10:55:58 |
| 24 | And so the conflict there is much greater, | 10:55:59 |
| 25 | because as CEO, he needs to be in the weeds day to | 10:56:01 |

| | | |
|---|---|---|
| 1 | day on, well, everything in the business -- | 10:56:06 |
| 2 | right? -- but M&A in particular.  Particularly -- | 10:56:09 |
| 3 | so you can't really recuse yourself.  Because as a | 10:56:11 |
| 4 | CEO, if you recuse yourself of something to manage | 10:56:13 |
| 5 | that conflict, it's just not going to -- it won't | 10:56:17 |
| 6 | work. | 10:56:20 |
| 7 | So it's a -- it's a bit -- it's a big | 10:56:20 |
| 8 | difference in terms of how you can manage the | 10:56:24 |
| 9 | conflict when somebody is only a board member | 10:56:27 |
| 10 | versus a CEO and a board member. | 10:56:29 |
| 11 | Q  Okay.  And so did you -- so you never | 10:56:30 |
| 12 | asked Richard Thomas to leave the board? | 10:56:33 |
| 13 | A  No. | 10:56:34 |
| 14 | Q  Was there ever -- did you ever have that | 10:56:35 |
| 15 | discussion with him? | 10:56:37 |
| 16 | A  About leaving the board? | 10:56:38 |
| 17 | Q  About leaving the board at all. | 10:56:39 |
| 18 | A  No, I don't think so.  I think the | 10:56:41 |
| 19 | discussion was really just around how do we -- | 10:56:42 |
| 20 | what's the optimal way to manage any -- a | 10:56:44 |
| 21 | potential conflict if it comes up. | 10:56:47 |
| 22 | But I don't recall -- I should say, I | 10:56:50 |
| 23 | don't recall discussing with him leaving the | 10:56:51 |
| 24 | board. | 10:56:53 |
| 25 | Q  Okay.  And before, you said Pat expressed | 10:56:53 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                    78

| | | |
|---|---|---|
| 1 | conflicts pretty early.  Do you remember when the | 10:56:57 |
| 2 | earliest time that you remember hearing Pat | 10:56:59 |
| 3 | express his conflict to you was? | 10:57:01 |
| 4 | A  I think it was around -- so I don't recall | 10:57:03 |
| 5 | the earliest time.  I recall an incident with a | 10:57:10 |
| 6 | company that ProPharma bought called The Weinberg | 10:57:13 |
| 7 | Group that I think Pat had also wanted to buy for | 10:57:16 |
| 8 | Advarra, or at least he claimed he did, which I | 10:57:21 |
| 9 | don't -- but... | 10:57:24 |
| 10 | So it was in that kind of a situation | 10:57:25 |
| 11 | where he's on the board of ProPharma but he wants | 10:57:27 |
| 12 | to buy a company that ProPharma wants to buy under | 10:57:31 |
| 13 | the umbrella of Advarra, if that makes -- | 10:57:36 |
| 14 | hopefully that was clear. | 10:57:39 |
| 15 | Q  Wait, I'm sorry.  He wants to buy a | 10:57:40 |
| 16 | company that ProPharma -- | 10:57:41 |
| 17 | A  So as CEO of Advarra -- | 10:57:43 |
| 18 | Q  Right. | 10:57:45 |
| 19 | A  -- he is running Advarra and wants Advarra | 10:57:45 |
| 20 | to buy a company that ProPharma is also looking at | 10:57:48 |
| 21 | acquiring, so -- and he's on the board of | 10:57:52 |
| 22 | ProPharma at the time; so that's the conflict that | 10:57:56 |
| 23 | he's raising. | 10:57:58 |
| 24 | Q  But, I mean, if -- so Richard Thomas, | 10:58:00 |
| 25 | being on the board, would also have that desire | 10:58:02 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                    79

| | | |
|---|---|---|
| 1 | for Advarra, to purchase that same company and | 10:58:05 |
| 2 | then ProPharma to purchase that same company, too, | 10:58:08 |
| 3 | right, if that was -- to describe what you're -- | 10:58:12 |
| 4 | to elaborate on the conflict that you're | 10:58:16 |
| 5 | describing, wouldn't the same conflict exist with | 10:58:19 |
| 6 | Richard Thomas? | 10:58:22 |
| 7 |     A  Not nearly to the same degree, because | 10:58:22 |
| 8 | Richard is not running Advarra or he's not running | 10:58:26 |
| 9 | ProPharma. | 10:58:32 |
| 10 |     Q  Okay. | 10:58:33 |
| 11 |     A  So there's a very -- yes, there could be a | 10:58:33 |
| 12 | conflict, but then there's an easy solution to | 10:58:35 |
| 13 | that conflict.  We say to Richard:  Okay, Richard, | 10:58:38 |
| 14 | you're not going to be part of this one discussion | 10:58:40 |
| 15 | on M&A with ProPharma, so you're not conflicted. | 10:58:43 |
| 16 | Step out of the room, and you're not going to be | 10:58:47 |
| 17 | part of it. | 10:58:49 |
| 18 |     Q  So -- | 10:58:49 |
| 19 |     A  On either side, whether it's ProPharma or | 10:58:51 |
| 20 | Advarra.  You choose.  We kind of... | 10:58:52 |
| 21 |     Q  So Pat couldn't conflict -- Pat could not | 10:58:52 |
| 22 | recuse himself, is what you're saying, as CEO of | 10:58:56 |
| 23 | Advarra.  But he could recuse himself of -- as a | 10:58:59 |
| 24 | board member of ProPharma; isn't that true? | 10:59:02 |
| 25 |     A  That's correct, and that's how we tried to | 10:59:04 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                    80

| | | |
|---|---|---|
| 1 | solve it.  That's exactly how we tried to solve | 10:59:06 |
| 2 | the conflict. | 10:59:09 |
| 3 | MR. MINSON:  Mark this as 13. | 10:59:33 |
| 4 | (WHEREUPON, a certain document was marked | 10:59:49 |
| 5 | Farah Deposition Exhibit No. 13, for | 10:59:49 |
| 6 | identification.) | 11:00:09 |
| 7 | BY MR. MINSON: | 11:00:09 |
| 8 | Q  This is Exhibit Number 13 you have in | 11:00:10 |
| 9 | front of you.  It's LINDEN00028.  It is -- I | 11:00:12 |
| 10 | believe it's the conflict that you described about | 11:00:18 |
| 11 | The Weinberg Group. | 11:00:21 |
| 12 | A  Mm-hm. | 11:00:22 |
| 13 | Q  And at the bottom of the email, Pat | 11:00:26 |
| 14 | writes:  How do you want me to address Weinberg? | 11:00:36 |
| 15 | They're a competitor to Advarra Consulting.  I | 11:00:38 |
| 16 | also bit my tongue on them at the last board | 11:00:41 |
| 17 | meetings.  I've been staying out of M&A with PPG. | 11:00:44 |
| 18 | For the record, I think clinical compliance and | 11:00:48 |
| 19 | regulatory should be with Advarra and the | 11:00:50 |
| 20 | manufacturing side with PPG. | 11:00:52 |
| 21 | And then he says:  By the way, the | 11:00:54 |
| 22 | write-up is wrong, as the founder was Matthew's | 11:00:56 |
| 23 | father, not Matthew, back in '83. | 11:01:00 |
| 24 | So this email was to you.  First, can you | 11:01:03 |
| 25 | tell me what he's talking about when he's talking | 11:01:08 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                          81

| | | |
|---|---|---|
| 1 | about the write-up and the stuff below and why | 11:01:10 |
| 2 | that's relevant to this email? | 11:01:13 |
| 3 |    A  Oh, I've got to read the stuff below.  I'm | 11:01:14 |
| 4 | not sure -- at first glance -- | 11:01:21 |
| 5 |    Q  It looks like -- | 11:01:22 |
| 6 |    A  -- I'm not sure why it's relevant. | 11:01:23 |
| 7 | Because I sent him -- I said:  Interesting article | 11:01:25 |
| 8 | on -- | 11:01:28 |
| 9 |    Q  I don't see -- | 11:01:28 |
| 10 |      (Unreportable cross-talk.) | 11:01:28 |
| 11 |      MS. REPORTER:  Hang on.  You guys are | 11:01:28 |
| 12 | stepping on each other.  You're cutting him -- | 11:01:28 |
| 13 |      MR. MINSON:  Oh, I'm sorry. | 11:01:28 |
| 14 |      MS. REPORTER:  -- off. | 11:01:40 |
| 15 | BY MR. MINSON: | 11:01:40 |
| 16 |    Q  Okay.  If you don't know, that's fine. | 11:01:40 |
| 17 |    A  Yeah, so I'm not sure why it's... | 11:01:42 |
| 18 |    Q  Okay.  I didn't know either. | 11:01:47 |
| 19 |      MR. GILMORE:  Do I -- | 11:01:49 |
| 20 |      MR. MINSON:  It's the -- | 11:01:50 |
| 21 |      MR. GILMORE:  I'm sorry, I just have a | 11:01:51 |
| 22 | question about exhibit numbering.  So we're saying | 11:01:52 |
| 23 | this is 13?  I thought we were up to 14. | 11:01:54 |
| 24 |      (Exhibit management discussions were had | 11:01:54 |
| 25 | off the stenographic record.) | 11:02:14 |

| | | |
|---|---|---|
| 1 | BY MR. MINSON: | 11:02:14 |
| 2 | Q  So, you know, Pat says, you know, he's | 11:02:15 |
| 3 | kept his -- he held his tongue at the last board | 11:02:17 |
| 4 | meeting (indiscernible) at PPG. | 11:02:20 |
| 5 | And your response to him is:  Thanks for | 11:02:21 |
| 6 | the heads-up. | 11:02:23 |
| 7 | And you say:  I have no concerns -- or I | 11:02:24 |
| 8 | have no issues or concerns at all with you dialing | 11:02:27 |
| 9 | in as it relates to Weinberg. | 11:02:29 |
| 10 | So since that's your email, is that | 11:02:34 |
| 11 | indicating that you don't perceive a conflict | 11:02:36 |
| 12 | there or you don't think that it's a problem? | 11:02:38 |
| 13 | MR. GILMORE:  Objection, form, foundation. | 11:02:41 |
| 14 | It misstates the document. | 11:02:47 |
| 15 | MR. MINSON:  I'm asking him if that's how | 11:02:48 |
| 16 | it was meant to be. | 11:02:51 |
| 17 | MR. GILMORE:  You misread the document | 11:02:52 |
| 18 | so... | 11:02:54 |
| 19 | BY MR. MINSON: | 11:02:54 |
| 20 | Q  Okay.  Maybe I missed a word. | 11:02:55 |
| 21 | It says:  I have no issues or concerns at | 11:02:56 |
| 22 | all with you dialing into the MMM -- or Monday | 11:02:58 |
| 23 | morning meeting -- as it relates to Weinberg. | 11:03:01 |
| 24 | Okay.  So is that an expression of you not | 11:03:05 |
| 25 | seeing a conflict or not thinking that it's a | 11:03:09 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                    83

| | | |
|---|---|---|
| 1 | problem? | 11:03:13 |
| 2 | A   So -- | 11:03:14 |
| 3 | MR. GILMORE:   Objection, form, foundation. | 11:03:14 |
| 4 | BY THE WITNESS: | 11:03:16 |
| 5 | A   The -- Weinberg is -- I have to jog my | 11:03:17 |
| 6 | memory on Weinberg.  So the -- there could have | 11:03:24 |
| 7 | been a conflict but it could be managed.  Pat | 11:03:28 |
| 8 | thinks there's a conflict.  I think, in this | 11:03:30 |
| 9 | email, that we can manage it. | 11:03:32 |
| 10 | The Weinberg Group was actually a company | 11:03:33 |
| 11 | that ProPharma had been looking at for quite some | 11:03:36 |
| 12 | time.  I think Pat then tried to claim he had been | 11:03:39 |
| 13 | looking at it as part of Advarra before ProPharma. | 11:03:42 |
| 14 | And so that created a lot of issues, | 11:03:45 |
| 15 | because it was -- that brought -- that was | 11:03:47 |
| 16 | actually Pat acting in bad faith, because he knew | 11:03:49 |
| 17 | about the deal from his ProPharma board role.  And | 11:03:52 |
| 18 | then as the CEO of Advarra, it was perceived that | 11:03:55 |
| 19 | he was trying to go after it. | 11:03:58 |
| 20 | I don't think he ever did or ever acted on | 11:04:00 |
| 21 | it, but there was a perception from Jeff Hargroves | 11:04:02 |
| 22 | in particular that he had tried to go after it | 11:04:05 |
| 23 | after finding out about it through his involvement | 11:04:08 |
| 24 | with ProPharma. | 11:04:10 |
| 25 | So I didn't perceive a conflict -- | |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                    84

```
 1        Q  Isn't that speculation --
 2           (Unreportable cross-talk)
 3           MS. REPORTER:  Hang on.  You're stepping
 4    on each other again.
 5           MR. MINSON:  I know, but I just wanted to
 6    clarify that statement.
 7           MS. REPORTER:  But I can't get both people
 8    talking at --
 9           MR. MINSON:  I understand.  I'm sorry.        11:04:21
10           MR. GILMORE:  If you could just let the      11:04:21
11    witness finish his answer before you ask your       11:04:22
12    question, and then we'll have a clean record and    11:04:24
13    not drive Michelle crazy.                           11:04:26
14           MS. REPORTER:  Thank you.                    11:04:29
15    BY THE WITNESS:                                     11:04:30
16      A  So it's my recollection that that             11:04:30
17    happened.  And I think there's emails that kind of  11:04:31
18    might lay that out, because I remember it upset     11:04:33
19    Jeff Hargroves in particular.                       11:04:36
20           And so I didn't think there would be a       11:04:42
21    conflict or that it would be one that we would be   11:04:44
22    able to manage -- if there is a conflict, we could  11:04:47
23    manage it.  Because Pat should act in good faith    11:04:50
24    as this deal came to ProPharma first, and so he     11:04:53
25    should have his ProPharma hat on and not try to go  11:04:57
```

| | | |
|---|---|---|
| 1 | after it under Advarra. | 11:05:02 |
| 2 | So there's a little bit of that going on | 11:05:03 |
| 3 | behind all this as well as part of context here. | 11:05:05 |
| 4 | So this is, like, a little bit of now you | 11:05:10 |
| 5 | can see Pat starting to be very problematic and | 11:05:12 |
| 6 | cause issues and not be -- you know, just not be | 11:05:15 |
| 7 | an amicable partner with us.  And this is -- this | 11:05:18 |
| 8 | is kind of the first tip of it. | 11:05:22 |
| 9 | BY MR. MINSON: | 11:05:35 |
| 10 | Q  I'm sorry.  So Pat -- in Pat's email, he | 11:05:35 |
| 11 | says -- obviously, like you said, he wanted the | 11:05:39 |
| 12 | compliance and regulatory should be with Advarra | 11:05:45 |
| 13 | and the manufacturing with PPG. | 11:05:47 |
| 14 | Was Weinberg compliance and regulatory, is | 11:05:49 |
| 15 | that why he said that? | 11:05:53 |
| 16 | A  It's a regulatory firm, yeah. | 11:05:55 |
| 17 | Q  And did he -- did Pat ultimately stay out | 11:06:00 |
| 18 | of that deal or discussions on that deal? | 11:06:04 |
| 19 | A  To my recollection, he stayed out of it. | 11:06:10 |
| 20 | Q  Okay. | 11:06:12 |
| 21 | A  As a ProPharma board member, he stayed out | 11:06:12 |
| 22 | of it.  And I believe he stayed out of it as well | 11:06:18 |
| 23 | as the Advarra CEO. | 11:06:21 |
| 24 | Q  So I'm just trying to understand how is | 11:06:24 |
| 25 | that him being problematic in your view? | 11:06:26 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                    86

| | | |
|---|---|---|
| 1 | A  Because he's making noise.  He's trying to | 11:06:28 |
| 2 | make an issue where there is no issue.  That's | 11:06:32 |
| 3 | one. | 11:06:34 |
| 4 | Number two is if he was actually going | 11:06:35 |
| 5 | after The Weinberg Group, as CEO of Advarra -- | 11:06:37 |
| 6 | going after it means trying to buy The Weinberg | 11:06:40 |
| 7 | Group -- as CEO of Advarra at the same time | 11:06:45 |
| 8 | ProPharma was, that would be really bad. | 11:06:47 |
| 9 | Because he found out about The Weinberg | 11:06:49 |
| 10 | Group, to my understanding, through his board role | 11:06:52 |
| 11 | at ProPharma.  Or at the very least, ProPharma had | 11:06:54 |
| 12 | been exploring the opportunity to buy The Weinberg | 11:06:59 |
| 13 | Group for several years, and Pat was aware of that | 11:07:02 |
| 14 | as a board member of ProPharma. | 11:07:05 |
| 15 | So to then take that information, become | 11:07:08 |
| 16 | CEO of Advarra, and use it, effectively to | 11:07:10 |
| 17 | ProPharma's detriment, that would have been very | 11:07:13 |
| 18 | problematic. | 11:07:15 |
| 19 | I'm not saying that that is what happened. | 11:07:16 |
| 20 | I'm saying that -- there was a perception that | 11:07:18 |
| 21 | that happened, the perception in particular from | 11:07:21 |
| 22 | Jeff Hargroves. | 11:07:23 |
| 23 | Q  Okay.  But to your knowledge, he did stay | 11:07:23 |
| 24 | out of it as CEO of Advarra? | 11:07:25 |
| 25 | A  To my knowledge, he did.  But then there's | 11:07:27 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                    87

| | | |
|---|---|---|
| 1 | certain comments along the way where it seemed | 11:07:30 |
| 2 | like perhaps he wasn't.  So it was never -- I | 11:07:32 |
| 3 | don't -- to my knowledge, he stayed out of it. | 11:07:35 |
| 4 |      MR. MINSON:  Can you mark this 14. | 11:08:04 |
| 5 |      (WHEREUPON, a certain document was marked | 11:08:04 |
| 6 | Farah Deposition Exhibit No. 14, for | 11:08:04 |
| 7 | identification.) | 11:08:21 |
| 8 | BY MR. MINSON: | 11:08:21 |
| 9 |    Q  And this is regarding The Weinberg Group. | 11:08:21 |
| 10 | I believe it illustrates what you said.  It's an | 11:08:24 |
| 11 | email from Pat to Lisa Cohen when she's asking for | 11:08:31 |
| 12 | signatures. | 11:08:35 |
| 13 |      And Pat writes:  Lisa, I actually think I | 11:08:36 |
| 14 | should recuse myself from this transaction since | 11:08:39 |
| 15 | it competes with Advarra. | 11:08:41 |
| 16 |      Is this the type of work-around -- well, | 11:08:45 |
| 17 | is this type of -- is this a way that you, as | 11:08:50 |
| 18 | ProPharma, initially agreed to deal with any | 11:08:54 |
| 19 | conflicts with Pat, him recusing himself, as it | 11:08:58 |
| 20 | says in this email? | 11:09:07 |
| 21 |    A  Yeah, this is an example of how to handle | 11:09:07 |
| 22 | the conflict, exactly.  This is coming at the time | 11:09:09 |
| 23 | of the signature pages, so you'd want to recuse | 11:09:11 |
| 24 | yourself from the start of the transaction. | 11:09:14 |
| 25 |    Q  And I'm just wondering.  So he did do what | 11:09:19 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                    88

| | | |
|---|---|---|
| 1 | you said would be appropriate -- or I guess -- I | 11:09:27 |
| 2 | don't want to misstate your testimony.  He did | 11:09:31 |
| 3 | do -- he did recuse himself.  He stayed out of | 11:09:35 |
| 4 | this. | 11:09:37 |
| 5 | So I'm wondering, based on that, why, on | 11:09:37 |
| 6 | January 22nd, three days prior to this, Exhibit | 11:09:41 |
| 7 | Number 12, you said that you wanted to ask him to | 11:09:48 |
| 8 | leave, if he was effectively managing the | 11:09:52 |
| 9 | conflict. | 11:09:54 |
| 10 | MR. GILMORE:  Objection, form, foundation. | 11:09:56 |
| 11 | BY THE WITNESS: | 11:10:05 |
| 12 | A  So I never said I -- so this recusal from | 11:10:05 |
| 13 | the Weinberg transaction is happening when | 11:10:16 |
| 14 | signatures are due, which is the very end of the | 11:10:21 |
| 15 | transaction. | 11:10:24 |
| 16 | BY MR. MINSON: | 11:10:25 |
| 17 | Q  Okay. | 11:10:25 |
| 18 | A  So that's -- as you can imagine, at that | 11:10:26 |
| 19 | point you're just signing documents and you know | 11:10:28 |
| 20 | everything that you're supposed to know, if he had | 11:10:30 |
| 21 | been involved in diligence up until that point, | 11:10:32 |
| 22 | which to my recollection he hadn't been. | 11:10:36 |
| 23 | His removal from the board was not solely | 11:10:37 |
| 24 | because of the conflict issue.  It was because of | 11:10:42 |
| 25 | the conflict issue, the value, his attitude, his | 11:10:44 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                        89

| | | |
|---|---|---|
| 1 | performance.  It was all of those things. | 11:10:47 |
| 2 | Q  Okay. | 11:10:49 |
| 3 | MR. MINSON:  This is 15. | 11:11:45 |
| 4 | (WHEREUPON, a certain document was marked | 11:11:45 |
| 5 | Farah Deposition Exhibit No. 15, for | 11:11:45 |
| 6 | identification.) | 11:11:46 |
| 7 | BY MR. MINSON: | 11:11:46 |
| 8 | Q  And much earlier than that previous email, | 11:11:47 |
| 9 | this is an email from you to Jeff Hargroves, | 11:11:50 |
| 10 | Exhibit Number 15.  It's Bates-stamped | 11:11:57 |
| 11 | LINDEN0000960. | 11:12:03 |
| 12 | And, basically, you say:  Tony spoke with | 11:12:03 |
| 13 | him, and this is probably easier to discuss over | 11:12:06 |
| 14 | the phone when you and I are back on the road. | 11:12:10 |
| 15 | You and I are on the same page, so we'll find a | 11:12:13 |
| 16 | solution.  For now, we'll keep Pat out of M&A | 11:12:16 |
| 17 | discussions that conflict with PPG.  And I think | 11:12:21 |
| 18 | anything PPG has been chasing is off limits to | 11:12:23 |
| 19 | Advarra.  Tony agrees. | 11:12:26 |
| 20 | Did you have a phone conversation with | 11:12:32 |
| 21 | Jeff Hargroves with regard to this back in 2018 -- | 11:12:35 |
| 22 | or March of 2018, as it indicates? | 11:12:38 |
| 23 | A  I don't recall. | 11:12:43 |
| 24 | Q  Okay.  And this was -- does this email | 11:12:44 |
| 25 | represent, like you said, what the strategy for | 11:12:57 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                          90

| | | |
|---|---|---|
| 1 | dealing with conflicts with Pat was going to be? | 11:12:59 |
| 2 | A  Yes.  This was our -- our approach at that | 11:13:01 |
| 3 | time was kind of exactly what I was talking about | 11:13:03 |
| 4 | before, where he could be conflicted in going | 11:13:05 |
| 5 | after deals. | 11:13:08 |
| 6 | Q  And so -- | 11:13:11 |
| 7 | A  So that's an attempt -- I'm sorry.  That's | 11:13:12 |
| 8 | an attempt -- | 11:13:16 |
| 9 | Q  Go ahead. | 11:13:17 |
| 10 | A  That's an attempt to address that | 11:13:18 |
| 11 | conflict. | 11:13:19 |
| 12 | Q  Okay.  So given the last exhibit, 14, and | 11:13:20 |
| 13 | the recusal, were Pat's actions consistent with | 11:13:23 |
| 14 | how you're saying the conflict should have been | 11:13:29 |
| 15 | managed? | 11:13:32 |
| 16 | MR. GILMORE:  Objection, form, lack of | 11:13:34 |
| 17 | foundation. | 11:13:37 |
| 18 | BY THE WITNESS: | 11:13:37 |
| 19 | A  Can you rephrase it for me? | 11:13:37 |
| 20 | BY MR. MINSON: | 11:13:39 |
| 21 | Q  So was Pat recusing himself in | 11:13:39 |
| 22 | January 2019, about nine months later from when | 11:13:43 |
| 23 | this was written -- was that consistent with the | 11:13:47 |
| 24 | plan that you're laying out in this email? | 11:13:53 |
| 25 | MR. GILMORE:  Objection, form, foundation. | 11:13:58 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                    91

| | | |
|---|---|---|
| 1 | BY THE WITNESS: | 11:13:58 |
| 2 |    A  You know, I don't know.  This is kind of | 11:13:59 |
| 3 | Pat being -- Pat being snarky.  You know, recusing | 11:14:03 |
| 4 | yourself at the -- sending an email to an | 11:14:09 |
| 5 | associate to recuse yourself when signatures are | 11:14:11 |
| 6 | due, it kind of defeats the purpose of, you | 11:14:15 |
| 7 | know -- if that's all that happened -- managing | 11:14:18 |
| 8 | the conflict. | 11:14:22 |
| 9 |     So this is kind of Pat reminding us that | 11:14:23 |
| 10 | he thinks there's a conflict and he's being a | 11:14:25 |
| 11 | little bit snarky and rude about it.  In | 11:14:29 |
| 12 | particular, he's emailing the associate and not | 11:14:30 |
| 13 | emailing me or Tony.  So this is kind of where | 11:14:33 |
| 14 | Pat's head is at at this point. | 11:14:37 |
| 15 |     The -- when you have a good relationship | 11:14:38 |
| 16 | with somebody, you can kind of -- reasonable minds | 11:14:40 |
| 17 | figure out how to work through this stuff, with | 11:14:44 |
| 18 | phone calls, with emails, with handshakes, and | 11:14:49 |
| 19 | say:  That's not going to work.  That's not right. | 11:14:51 |
| 20 | You know, we got to take you out of this | 11:14:53 |
| 21 | conversation.  We got to -- and so that's how we | 11:14:54 |
| 22 | were operating throughout all this time. | 11:14:57 |
| 23 |     We just -- we were being reasonable.  We | 11:14:58 |
| 24 | were working well with Pat.  I enjoyed working | 11:15:01 |
| 25 | with Pat.  I trusted him at that time -- | 11:15:04 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                     92

| | | |
|---|---|---|
| 1 | Q  "At that time" being?  I'm sorry. | 11:15:06 |
| 2 | A  This time, during -- | 11:15:09 |
| 3 | Q  Oh, okay. | 11:15:10 |
| 4 | A  -- this -- | 11:15:12 |
| 5 | Q  I see. | 11:15:13 |
| 6 | A  Yeah.  And so there's -- so we're kind | 11:15:13 |
| 7 | of -- you know, we're all friends.  We're all | 11:15:15 |
| 8 | friends and colleagues and coworkers, and | 11:15:17 |
| 9 | there's -- there's not a need to make things, | 11:15:20 |
| 10 | like, very official.  There wasn't a feeling like, | 11:15:22 |
| 11 | hey, let's develop a plan and have it set in stone | 11:15:24 |
| 12 | and this is how it's going to be.  Because things | 11:15:28 |
| 13 | are fluid and things change so... | 11:15:30 |
| 14 | Q  Okay.  And so between this email and what | 11:15:36 |
| 15 | you just referred to as Pat being snarky, which | 11:15:44 |
| 16 | was on the 25th, I believe, and your email saying | 11:15:48 |
| 17 | that you needed to step -- him to step down from | 11:15:53 |
| 18 | the board -- or you were going to ask him to step | 11:15:56 |
| 19 | down from the board on the 22nd, between those two | 11:15:58 |
| 20 | times, what changed in your relationship with Pat | 11:16:03 |
| 21 | and -- can you walk me through that? | 11:16:08 |
| 22 | A  Yeah, you know, I -- | 11:16:10 |
| 23 | MR. GILMORE:  Just objection, form, | 11:16:11 |
| 24 | foundation.  Just for the record, you're referring | 11:16:14 |
| 25 | to the 2019 -- | 11:16:16 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                        93

| | | |
|---|---|---|
| 1 | MR. MINSON:  Yeah. | 11:16:18 |
| 2 | MR. GILMORE:  -- discussions -- | 11:16:19 |
| 3 | MR. MINSON:  Yeah, 2019 -- | 11:16:20 |
| 4 | MR. GILMORE:  Because the exhibit you've | 11:16:22 |
| 5 | just shown Mr. Farah was from March of 2018, and | 11:16:23 |
| 6 | so -- | 11:16:26 |
| 7 | MR. MINSON:  Right. | 11:16:26 |
| 8 | MR. GILMORE:  -- we're talking almost a | 11:16:28 |
| 9 | year apart -- | 11:16:30 |
| 10 | MR. MINSON:  Right.  Right. | 11:16:30 |
| 11 | MR. GILMORE:  -- in time frame.  So I just | 11:16:32 |
| 12 | want to make sure that the record is clear, in | 11:16:34 |
| 13 | both your questions and Mr. Farah's answers, that | 11:16:35 |
| 14 | we're talking about two separate time frames, not | 11:16:38 |
| 15 | the same time frame. | 11:16:39 |
| 16 | MR. MINSON:  Right.  And you know what? | 11:16:41 |
| 17 | I'll clarify it even more. | 11:16:41 |
| 18 | BY MR. MINSON: | 11:16:41 |
| 19 | Q  I'll say:  What changed in the | 11:16:42 |
| 20 | relationship with Pat between March 17, 2018, to | 11:16:44 |
| 21 | January 25th, 2019? | 11:16:49 |
| 22 | A  So yeah.  So it's several years ago, so | 11:16:53 |
| 23 | it's hard to remember all the specific details. | 11:16:58 |
| 24 | But I can tell you that over the time, we had | 11:17:00 |
| 25 | tried very hard to manage the conflict and work | 11:17:04 |

1    well with Pat and be a good partner.                    11:17:07

2          He increasingly became combative on issues        11:17:09

3    like this, on how to manage the conflict.  On just      11:17:14

4    things like that, he became increasingly combative      11:17:19

5    with us, and I don't know why.                          11:17:24

6       Q   Competitive or combative?                        11:17:26

7       A   Combative.                                        11:17:27

8       Q   Okay.                                             11:17:28

9       A   And then I spent more time with the              11:17:31

10   management team, so -- and they don't value him,        11:17:34

11   and they find him -- his involvement to be              11:17:36

12   detrimental, both ProPharma and ERG.                    11:17:39

13         And so at some point, I just -- you know,         11:17:41

14   I guess -- you know, you reach a point where            11:17:43

15   there's only so much you can work with somebody --      11:17:47

16   right? -- and hope that you can manage the              11:17:50

17   conflict or manage the relationship.                    11:17:52

18         And we just reached that point where -- at        11:17:54

19   least I did, I reached that point where that was        11:17:56

20   the best path forward.                                  11:17:58

21      Q   But in the beginning when we spoke, when         11:18:00

22   you were discussing the growth of ProPharma, you        11:18:04

23   said that toward the end there was some flat            11:18:06

24   periods, around 2020, 2019.  And then in your           11:18:08

25   statement just now, you said that you -- the            11:18:15

Transcript of Michael Farah, Designated Representative
September 14, 2022                                    95

| | | |
|---|---|---|
| 1 | management team thought Pat to be a detriment. | 11:18:21 |
| 2 | So I'm wondering, what is -- what was that | 11:18:28 |
| 3 | belief based on? | 11:18:31 |
| 4 | MR. GILMORE:  Objection, form, foundation. | 11:18:33 |
| 5 | BY THE WITNESS: | 11:18:35 |
| 6 | A  Can you -- | 11:18:35 |
| 7 | BY MR. MINSON: | 11:18:36 |
| 8 | Q  Okay.  So -- | 11:18:36 |
| 9 | A  -- clarify? | 11:18:37 |
| 10 | Q  -- you said that -- you're saying -- so | 11:18:38 |
| 11 | far you've testified that you believe Pat was no | 11:18:41 |
| 12 | longer on the board, effective, what -- what did | 11:18:45 |
| 13 | you say?  June?  June 2019?  And you also said | 11:18:53 |
| 14 | that ProPharma, as far as the company's growth and | 11:18:57 |
| 15 | trajectory, was flat from 2019 through 2020. | 11:19:03 |
| 16 | A  Mm-hm. | 11:19:11 |
| 17 | Q  So I'm wondering what the basis of their | 11:19:11 |
| 18 | belief that he was a detriment to the company | 11:19:14 |
| 19 | while he was on the board, what was that based on, | 11:19:18 |
| 20 | if not numbers. | 11:19:21 |
| 21 | A  Yeah, so you're assuming that those two | 11:19:21 |
| 22 | things are related or they go together, and | 11:19:24 |
| 23 | they're not necessarily. | 11:19:27 |
| 24 | And so as a board member, we've got | 11:19:28 |
| 25 | certain objectives that we're trying to meet, a | 11:19:31 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                         96

| | | |
|---|---|---|
| 1 | certain value-add that we're trying to deliver to | 11:19:34 |
| 2 | the management team.  It's support around | 11:19:37 |
| 3 | acquisitions.  It's support around strategy.  It's | 11:19:39 |
| 4 | guidance.  It's review and oversight. | 11:19:43 |
| 5 | Things like that that don't always | 11:19:45 |
| 6 | necessarily impact the financials, and they might | 11:19:47 |
| 7 | not impact the financials for a while, if they do. | 11:19:50 |
| 8 | And so you can't relate the two together. | 11:19:53 |
| 9 | This is just I'm relaying to you feedback | 11:19:55 |
| 10 | that I received from those management teams, | 11:19:57 |
| 11 | saying:  Look, I'm sorry to say this.  Them | 11:20:00 |
| 12 | saying:  We really don't like Pat.  Why is he on | 11:20:02 |
| 13 | the board? | 11:20:05 |
| 14 | It's just -- and I was defending him for | 11:20:07 |
| 15 | several years, defending him to them, to the | 11:20:10 |
| 16 | management teams. | 11:20:17 |
| 17 | They did not feel like he added value. | 11:20:18 |
| 18 | We're supposed to give guidance, give oversight, | 11:20:23 |
| 19 | and he didn't bring that value to the management | 11:20:24 |
| 20 | team. | 11:20:27 |
| 21 | So you'd have to ask them specifically | 11:20:27 |
| 22 | why -- you know, what -- why they felt that way, | 11:20:30 |
| 23 | but that's the way they felt. | 11:20:31 |
| 24 | MR. MINSON:  Could you mark these 16 and | 11:21:12 |
| 25 | 17. | 11:21:45 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                    97

| | | |
|---|---|---|
| 1 | (WHEREUPON, certain documents were marked | 11:21:45 |
| 2 | Farah Deposition No. 16 and No. 17 for | 11:21:45 |
| 3 | identification.) | 11:21:46 |
| 4 | BY MR. MINSON: | 11:21:46 |
| 5 | Q  In front of you is Exhibit Number 16 | 11:22:15 |
| 6 | that's LINDEN963, and it's an email to you -- or | 11:22:18 |
| 7 | from you to Richard Thomas, who I discussed | 11:22:24 |
| 8 | earlier. | 11:22:26 |
| 9 | And it says:  Tony will reach out to | 11:22:31 |
| 10 | you -- well, first, let's go down to his email. | 11:22:34 |
| 11 | In his email, he is discussing the -- I | 11:22:37 |
| 12 | don't know if you'd call it paragraph.  But the | 11:22:47 |
| 13 | last large paragraph in Richard Thomas' email in | 11:22:50 |
| 14 | which you're copied, it says:  On the one hand, I | 11:22:53 |
| 15 | haven't had any involvement with Advarra beyond | 11:22:55 |
| 16 | casual discussions.  But it's -- but as it's right | 11:22:58 |
| 17 | in my pharma services sweet spot -- sweet spot I | 11:23:02 |
| 18 | could help acquire quite a bit, thinking about | 11:23:05 |
| 19 | where the business fits strategically, where it | 11:23:09 |
| 20 | could go.  If we formalize and widen our | 11:23:12 |
| 21 | relationship, then I could see potential | 11:23:15 |
| 22 | conflicts.  But I can also see that I could simply | 11:23:17 |
| 23 | recuse myself from any discussions on Advarra | 11:23:20 |
| 24 | until it is sold. | 11:23:23 |
| 25 | Okay.  And then in response to this email, | 11:23:24 |

| | | |
|---|---|---|
| 1 | there's an email from you, saying: Tony will | 11:23:35 |
| 2 | reach out to you to discuss shortly. I think the | 11:23:38 |
| 3 | concern was more around conflict with PPG. Pat | 11:23:40 |
| 4 | is -- it says "no," but I'm going to assume it | 11:23:44 |
| 5 | means on board -- | 11:23:48 |
| 6 | A  Yeah. | 11:23:49 |
| 7 | Q  -- of both. Between you and I, he doesn't | 11:23:49 |
| 8 | want to be because of the conflict around M&A. | 11:23:52 |
| 9 | That's in April of 2019. | 11:23:59 |
| 10 | And then it says: He'll discuss with you. | 11:24:00 |
| 11 | Sorry, this just happened without anyone speaking | 11:24:03 |
| 12 | to you first. | 11:24:06 |
| 13 | Can you explain to me what the conflict is | 11:24:07 |
| 14 | in that email and what your -- what your email | 11:24:09 |
| 15 | basically says? | 11:24:16 |
| 16 | A  Yeah. Let me read all of Richard's email, | 11:24:17 |
| 17 | if that's okay. | 11:24:20 |
| 18 | Q  Okay. | 11:24:21 |
| 19 | A  So at this time, Richard is on the board | 11:24:21 |
| 20 | of ProPharma. And it sounds like, from this | 11:25:21 |
| 21 | email, that Genstar is looking -- at this time, | 11:25:25 |
| 22 | Genstar must own Advarra. | 11:25:46 |
| 23 | When did we sell it? I can't remember | 11:25:50 |
| 24 | when we sold it. But I think this is when Genstar | 11:25:53 |
| 25 | owned Advarra. Oh, no, this is -- okay. Let me | 11:25:57 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                              99

| | | |
|---|---|---|
| 1 | take a step back. | 11:26:06 |
| 2 | I wasn't involved in the Advarra | 11:26:07 |
| 3 | transaction, so I don't have the timeline as -- | 11:26:09 |
| 4 | Q  Okay. | 11:26:12 |
| 5 | A  -- the top of my head. | 11:26:13 |
| 6 | So I think this is when we're looking to | 11:26:14 |
| 7 | sell Advarra -- Richard is on the board of | 11:26:17 |
| 8 | ProPharma, and Genstar is looking at potentially | 11:26:21 |
| 9 | buying Advarra.  And they reached out to Richard | 11:26:26 |
| 10 | to ask him if he would advise -- he would advise | 11:26:28 |
| 11 | them on the -- on their diligence of Advarra. | 11:26:32 |
| 12 | And that's why I say, I think the concern | 11:26:39 |
| 13 | was more around the conflict with PPG, with | 11:26:41 |
| 14 | ProPharma, which they're -- -- | 11:26:44 |
| 15 | Q  Okay.  So this is -- | 11:26:49 |
| 16 | A  -- I'm not -- I'm not -- this is -- I | 11:26:50 |
| 17 | don't recall this email, so I'm just trying to | 11:26:53 |
| 18 | piece it together here.  But that's what I | 11:26:55 |
| 19 | think -- | 11:26:57 |
| 20 | Q  So if you -- | 11:26:58 |
| 21 | A  -- happened.  And I could confirm that if | 11:26:59 |
| 22 | I had the -- I'm sorry to speak over you. | 11:27:01 |
| 23 | Q  I'm sorry.  I don't mean to interrupt you. | 11:27:01 |
| 24 | If you look at Exhibit Number 17, will it | 11:27:04 |
| 25 | help you for context? | 11:27:06 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                        100

| | | |
|---|---|---|
| 1 | A   Exhibit -- oh, 17.  Let me see. | 11:27:07 |
| 2 | Yeah, so this is -- this is -- again, I | 11:27:30 |
| 3 | didn't read the whole thing, but this looks to be | 11:27:32 |
| 4 | Genstar is looking to acquire Advarra, and if Pat | 11:27:35 |
| 5 | helped them with Advarra -- sorry.  Strike that. | 11:27:38 |
| 6 | If Richard helped Genstar acquire Advarra | 11:27:41 |
| 7 | and they ultimately did acquire Advarra, then | 11:27:44 |
| 8 | Richard would likely be on the board of Advarra | 11:27:47 |
| 9 | and ProPharma, which is what happened. | 11:27:49 |
| 10 | So he was -- Richard was identifying a | 11:27:52 |
| 11 | potential conflict before it existed and then -- | 11:27:55 |
| 12 | Q   Okay. | 11:27:59 |
| 13 | A   -- kind of saying:  Well, how do I work | 11:27:59 |
| 14 | with you guys on this?  Because I really like | 11:28:02 |
| 15 | working with Linden.  You know, is this something | 11:28:04 |
| 16 | we can work with through?  If not -- Richard is | 11:28:06 |
| 17 | very practical and always comes up with very good | 11:28:09 |
| 18 | solutions on things and collaborative solutions. | 11:28:12 |
| 19 | So that's kind of how we talked through it and | 11:28:14 |
| 20 | worked through it so... | 11:28:17 |
| 21 | But, yeah, that's what's going on. | 11:28:18 |
| 22 | Q   Okay.  And his -- he suggested that he | 11:28:21 |
| 23 | could recuse himself.  So that was his suggestion | 11:28:26 |
| 24 | for a way to manage the conflict as well, right? | 11:28:29 |
| 25 | A   Mm-hm. | 11:28:30 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                           101

| | | |
|---|---|---|
| 1 | Q  And Richard stayed on the board of | 11:28:31 |
| 2 | ProPharma all the way up until the sale of the | 11:28:45 |
| 3 | company in September of 2020, right? | 11:28:47 |
| 4 | A  Correct. | 11:28:50 |
| 5 | Q  Okay. | 11:28:50 |
| 6 | (WHEREUPON, a certain document was marked | 11:29:15 |
| 7 | Farah Deposition Exhibit No. 18, for | 11:29:15 |
| 8 | identification.) | 11:29:16 |
| 9 | BY MR. MINSON: | 11:29:16 |
| 10 | Q  And this is Exhibit 18 in front of you, is | 11:29:23 |
| 11 | a letter from Tony Davis at Linden.  It's | 11:29:25 |
| 12 | addressed to the Chicago office of Linden | 11:29:29 |
| 13 | operating partners, Linden LLC.  It was produced | 11:29:34 |
| 14 | by Richard Thomas in discovery, and it's | 11:29:38 |
| 15 | Bates-labeled THOMAS0000077. | 11:29:42 |
| 16 | And the message from Tony Davis in this | 11:29:49 |
| 17 | letter is:  Some of you heard we signed an | 11:29:51 |
| 18 | agreement this week with Odyssey to sell | 11:29:57 |
| 19 | ProPharma. | 11:30:00 |
| 20 | And it says:  We anticipate the return | 11:30:00 |
| 21 | being over 3X cash at closing, with a small | 11:30:02 |
| 22 | earnout potentially increasing the return to about | 11:30:06 |
| 23 | 3.15 multiple on invested capital/35 percent -- | 11:30:10 |
| 24 | and IRR is -- what does that stand for? | 11:30:19 |
| 25 | A  Internal rate of return. | 11:30:22 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                               102

| | | |
|---|---|---|
| 1 | Q  I see. | 11:30:23 |
| 2 | Okay.  And so because Richard remained on | 11:30:26 |
| 3 | the board, he received a higher-than-3X return at | 11:30:29 |
| 4 | the closing; is that correct? | 11:30:36 |
| 5 | A  Because he remained on the board, he | 11:30:39 |
| 6 | received a high -- well, he got what he -- yeah, | 11:30:41 |
| 7 | he got what he got because he was on the board, | 11:30:44 |
| 8 | and that's what he was entitled to per the | 11:30:46 |
| 9 | document, because -- | 11:30:48 |
| 10 | Q  Okay. | 11:30:49 |
| 11 | A  -- he was still on -- you know, per his | 11:30:49 |
| 12 | incentive equity agreement, because he was still | 11:30:53 |
| 13 | on the board.  Yeah. | 11:30:55 |
| 14 | Q  So that was the fully vested value of all | 11:30:56 |
| 15 | his shares? | 11:31:00 |
| 16 | MR. GILMORE:  Objection, form, foundation. | 11:31:01 |
| 17 | BY THE WITNESS: | 11:31:02 |
| 18 | A  I'd have to look at the exact waterfall | 11:31:03 |
| 19 | and payout, but I believe it likely was. | 11:31:05 |
| 20 | And, sorry, just to clarify on that, when | 11:31:20 |
| 21 | you asked fully vested value, it's what was in the | 11:31:22 |
| 22 | agreement.  Like, per his incentive equity | 11:31:25 |
| 23 | agreement, he got the payout that he was entitled | 11:31:28 |
| 24 | to in the agreement. | 11:31:30 |
| 25 | Q  Okay. | 11:31:31 |

| | | |
|---|---|---|
| 1 | A   Yeah. | 11:31:32 |
| 2 | MR. MINSON:  This is 19. | 11:31:54 |
| 3 | (WHEREUPON, a certain document was marked | 11:31:54 |
| 4 | Farah Deposition Exhibit No. 19, for | 11:31:54 |
| 5 | identification.) | 11:31:56 |
| 6 | BY MR. MINSON: | 11:31:56 |
| 7 | Q   In front of you is Exhibit Number 19. | 11:31:56 |
| 8 | This is ProPharma's answer and affirmative | 11:32:00 |
| 9 | defenses to Mr. Donnelly's first amended | 11:32:05 |
| 10 | complaint. | 11:32:10 |
| 11 | I want to call your attention to | 11:32:11 |
| 12 | Page number 19. | 11:32:14 |
| 13 | MR. GILMORE:  Keith, this might be your | 11:32:31 |
| 14 | version, because there's a markup on Page 19. | 11:32:33 |
| 15 | MR. MINSON:  There's what, no markup? | 11:32:37 |
| 16 | MR. GILMORE:  There's a markup. | 11:32:39 |
| 17 | MR. MINSON:  Oh, I'm sorry.  No, it was a | 11:32:40 |
| 18 | mistake.  You can keep that one. | 11:32:42 |
| 19 | MR. GILMORE:  Okay. | 11:32:47 |
| 20 | BY MR. MINSON: | 11:32:47 |
| 21 | Q   All right.  It's Page Number 19, Paragraph | 11:32:47 |
| 22 | Number 84.  And the allegation is:  Mr. Donnelly | 11:32:51 |
| 23 | was ready and willing -- ready, willing, and able | 11:32:55 |
| 24 | to provide services through ProPharma through | 11:32:59 |
| 25 | September 30th, 2020. | 11:33:03 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                104

| | | |
|---|---|---|
| 1 | And ProPharma's response is: Denied. And | 11:33:07 |
| 2 | so you denied that he was ready and willing to | 11:33:12 |
| 3 | serve on the board. | 11:33:14 |
| 4 | Now, if anything, I would expect that you | 11:33:19 |
| 5 | wouldn't have the information to say that he -- | 11:33:28 |
| 6 | whether he was ready and willing. But did Pat do | 11:33:32 |
| 7 | anything to demonstrate that he was not willing to | 11:33:34 |
| 8 | serve? | 11:33:38 |
| 9 | MR. GILMORE: Objection, misstates the | 11:33:40 |
| 10 | document and the answer. | 11:33:44 |
| 11 | MR. MINSON: Well, no, it says denied, | 11:33:46 |
| 12 | right? So "denied" means it's wrong. He was not | 11:33:48 |
| 13 | ready and willing to serve or able to provide | 11:33:51 |
| 14 | services to ProPharma through September 30th. | 11:33:53 |
| 15 | MR. GILMORE: Now that you've read the | 11:33:56 |
| 16 | through September 30th, 2020, okay, that -- so | 11:33:58 |
| 17 | anyway. You had not stated the full allegation in | 11:34:01 |
| 18 | your -- | 11:34:04 |
| 19 | MR. MINSON: Okay -- | 11:34:05 |
| 20 | MR. GILMORE: -- prior question. | 11:34:06 |
| 21 | BY MR. MINSON: | 11:34:06 |
| 22 | Q Through September 30th, 2020, did -- what | 11:34:07 |
| 23 | did Mr. Donnelly do to indicate that he was not | 11:34:13 |
| 24 | ready, willing, and able to provide services to | 11:34:16 |
| 25 | ProPharma through September 30th, 2020? | 11:34:21 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                              105

| | | |
|---|---|---|
| 1 | A   Well, he didn't really have to do much | 11:34:23 |
| 2 | because he told me he's not on the board.  Take | 11:34:30 |
| 3 | off these calendar invites to all the board | 11:34:34 |
| 4 | meetings.  I don't want to be -- I don't want to | 11:34:37 |
| 5 | attend -- we removed him from the board -- again, | 11:34:39 |
| 6 | sorry if I sound repetitive. | 11:34:42 |
| 7 | We removed him from the board.  He | 11:34:44 |
| 8 | acknowledged his removal.  He said:  Please remove | 11:34:46 |
| 9 | all the board meetings from my future calendar. | 11:34:49 |
| 10 | We took them off his future calendar because he | 11:34:51 |
| 11 | was no longer on the board. | 11:34:55 |
| 12 | So he acknowledged that, hey, I don't want | 11:34:56 |
| 13 | to be involved.  I know you removed me.  I'm not | 11:34:56 |
| 14 | going to be part of anything. | 11:34:59 |
| 15 | Q   Okay.  And when you say he told you to | 11:35:01 |
| 16 | take off all the calendar invites, when did he | 11:35:03 |
| 17 | make that request? | 11:35:06 |
| 18 | A   That was the email he sent to me and | 11:35:07 |
| 19 | Brianna -- Brianna Loverich, my assistant, to -- | 11:35:09 |
| 20 | he responded, saying:  Please remove these from my | 11:35:22 |
| 21 | calendar, or something to that effect.  Please | 11:35:26 |
| 22 | remove these invites.  I'm no longer on the board. | 11:35:29 |
| 23 | Q   And is that the -- is that the request | 11:35:31 |
| 24 | that you were just referring to in your previous | 11:35:33 |
| 25 | answer?  Is that the only request? | 11:35:36 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                      106

| | | |
|---|---|---|
| 1 | A  I don't recall the -- | 11:35:38 |
| 2 | Q  I'm sorry -- | 11:35:41 |
| 3 | A  -- previous answer to -- | 11:35:41 |
| 4 | Q  -- your previous answer, you said -- I'm | 11:35:42 |
| 5 | sorry.  I don't actually recall the actual words | 11:35:45 |
| 6 | either. | 11:35:47 |
| 7 | MR. MINSON:  Can you read it can back. | 11:35:48 |
| 8 | (WHEREUPON, the record was | 11:36:31 |
| 9 | read by the reporter.) | 11:36:33 |
| 10 | BY MR. MINSON: | 11:36:33 |
| 11 | Q  So when did he make the request to remove | 11:36:35 |
| 12 | the calendar invites? | 11:36:37 |
| 13 | A  I believe that was July 2019, early July, | 11:36:39 |
| 14 | couple days after the conversation with Tony. | 11:36:44 |
| 15 | (WHEREUPON, a certain document was marked | 11:36:44 |
| 16 | Farah Deposition Exhibit No. 20, for | 11:36:44 |
| 17 | identification.) | 11:37:20 |
| 18 | BY MR. MINSON: | 11:37:20 |
| 19 | Q  This is a -- Exhibit Number 20, LINDEN232. | 11:37:21 |
| 20 | This is a September 5th, 2019, email from you to | 11:37:25 |
| 21 | Piyush Shukla and Brianna Loverich, Joshua Reilly | 11:37:31 |
| 22 | and Prab Chawla. | 11:37:37 |
| 23 | And it says:  Pat has been removed from | 11:37:42 |
| 24 | both the ERG and PPG boards.  As such, please make | 11:37:45 |
| 25 | sure he is no longer on any board invites, calls, | 11:37:48 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                    107

| 1 | or email distributions.  You may need to reach out | 11:37:50 |
| 2 | directly to CFOs and CEO assistants.  I have | 11:37:53 |
| 3 | notified all -- a-l, I'm assuming it's all CEOs. | 11:37:57 |
| 4 | Thank you. | 11:38:03 |
| 5 | That email is on September 5th of 2019. | 11:38:03 |
| 6 | And your testimony was that he made the request | 11:38:09 |
| 7 | on -- or on July 1st, 2019.  Can you tell me why | 11:38:14 |
| 8 | there was a two-month gap? | 11:38:17 |
| 9 | MR. GILMORE:  Objection, form, foundation. | 11:38:21 |
| 10 | BY THE WITNESS: | 11:38:23 |
| 11 | A  They're not related, so it doesn't matter. | 11:38:24 |
| 12 | Piyush is on the board of ERG.  The July he was -- | 11:38:29 |
| 13 | it was him really referring to ProPharma. | 11:38:33 |
| 14 | BY MR. MINSON: | 11:38:36 |
| 15 | Q  Well, Brianna Loverich is also on this | 11:38:37 |
| 16 | email, and it obviously says ERG and PPG boards. | 11:38:39 |
| 17 | A  Mm-hm. | 11:38:44 |
| 18 | Q  Was there another email prior to this | 11:38:44 |
| 19 | asking him to be removed and for invites to be | 11:38:48 |
| 20 | taken off? | 11:38:51 |
| 21 | A  Was there another email prior to this? | 11:38:56 |
| 22 | Did I send another email?  Or did some- -- | 11:39:00 |
| 23 | Q  Well, I mean, I guess as a representative | 11:39:04 |
| 24 | of ProPharma, I'm asking you if there was another | 11:39:06 |
| 25 | email that -- regarding this, regarding his | 11:39:09 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                    108

| | | |
|---|---|---|
| 1 | removal, regarding, you know, him not being | 11:39:12 |
| 2 | included -- | 11:39:14 |
| 3 |     A   No.  I mean, this -- | 11:39:19 |
| 4 |         MR. GILMORE:  Hold on one second. | 11:39:22 |
| 5 |     A   THE WITNESS:  Yeah. | 11:39:24 |
| 6 |         MR. GILMORE:  So, Counsel, it sounded like | 11:39:24 |
| 7 | you asked him a question pursuant to the 30(b)(6) | 11:39:26 |
| 8 | deposition notice. | 11:39:29 |
| 9 |         MR. MINSON:  Yeah. | 11:39:30 |
| 10 |         MR. GILMORE:  And I don't think -- | 11:39:30 |
| 11 | Mr. Farah was not designated as ProPharma's | 11:39:33 |
| 12 | representative on topic 3, which -- the facts and | 11:39:36 |
| 13 | circumstances regarding Mr. Donnelly's removal. | 11:39:40 |
| 14 | That was Mr. Davis yesterday. | 11:39:42 |
| 15 |     So the witness can answer in his personal | 11:39:44 |
| 16 | capacity, based on his personal knowledge, but | 11:39:47 |
| 17 | he's not speaking -- he's not the witness speaking | 11:39:49 |
| 18 | on that topic -- | 11:39:51 |
| 19 |         MR. MINSON:  Okay. | 11:39:52 |
| 20 |         MR. GILMORE:  -- on behalf of ProPharma. | 11:39:52 |
| 21 |         MR. MINSON:  Okay. | 11:39:54 |
| 22 |         MR. GILMORE:  Go ahead.  You can answer. | 11:39:56 |
| 23 | You don't have to answer on behalf of the company, | 11:39:56 |
| 24 | just whatever you personally know, Mike. | 11:39:58 |
| 25 | | |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                        109

| | | |
|---|---|---|
| 1 | BY THE WITNESS: | 11:40:00 |
| 2 | A   Okay.  So in July, he responded | 11:40:00 |
| 3 | removing -- being requested to be removed from all | 11:40:02 |
| 4 | the calendar invites for ProPharma board meetings. | 11:40:04 |
| 5 | So, clearly, he understood he was no longer on the | 11:40:08 |
| 6 | board. | 11:40:11 |
| 7 | This email is -- the ERG discussion came | 11:40:11 |
| 8 | later, and so this email is just putting all the | 11:40:15 |
| 9 | belts and suspenders around ERG and making sure | 11:40:18 |
| 10 | they're all aware about ProPharma. | 11:40:24 |
| 11 | Josh is on this email, so he's copied for | 11:40:29 |
| 12 | the first time.  Josh was also on the board of -- | 11:40:31 |
| 13 | well, he was -- I'm not sure if he was on the | 11:40:33 |
| 14 | board, but he was on the deal team for ProPharma. | 11:40:36 |
| 15 | So -- but this email is really to Piyush | 11:40:42 |
| 16 | and Brianna, really identifying the ERG piece, | 11:40:45 |
| 17 | which was new information. | 11:40:49 |
| 18 | BY MR. MINSON: | 11:40:51 |
| 19 | Q   All right.  And in your personal capacity, | 11:40:51 |
| 20 | you sent this email.  Did you send an email -- | 11:40:53 |
| 21 | and, actually, you -- strike that. | 11:40:56 |
| 22 | Did you send an email to Brianna, | 11:41:02 |
| 23 | subsequent to June and before this, asking that he | 11:41:05 |
| 24 | no longer be on any board invites and calls? | 11:41:11 |
| 25 | A   I don't recall, but I also didn't need to | 11:41:15 |

| | | |
|---|---|---|
| 1 | because the discussion on ERG hadn't happened yet. | 11:41:17 |
| 2 | So that was not until later.  And then the | 11:41:20 |
| 3 | ProPharma didn't need to happen because he emailed | 11:41:25 |
| 4 | us, saying:  Remove me. | 11:41:29 |
| 5 | And then I'm sure Brianna asked me, and | 11:41:32 |
| 6 | then I informed her of, yes, remove him because of | 11:41:34 |
| 7 | the discussion we had so... | 11:41:37 |
| 8 | Q  Okay.  So would you interpret this email | 11:41:40 |
| 9 | as a redundant removal -- or redundant removal of | 11:41:45 |
| 10 | these invites for PPG's purposes? | 11:41:50 |
| 11 | A  Yeah.  It didn't -- yeah.  I didn't need | 11:41:55 |
| 12 | to -- to the extent that, perhaps, Josh didn't | 11:41:59 |
| 13 | know, then maybe that was worth including him. | 11:42:01 |
| 14 | But overall, in terms of Brianna, yes. | 11:42:06 |
| 15 | Q  And did you verbally -- did you verbally | 11:42:14 |
| 16 | tell Brianna to remove him from these emails and | 11:42:21 |
| 17 | invites and calls? | 11:42:25 |
| 18 | A  I don't recall.  But likely what happened | 11:42:26 |
| 19 | was we both got the email, and then Brianna | 11:42:28 |
| 20 | asked -- probably asked me:  Should I -- just | 11:42:34 |
| 21 | confirming I should remove Pat?  And I would have | 11:42:36 |
| 22 | said yes. | 11:42:39 |
| 23 | Q  And if Pat wanted to participate on the | 11:42:49 |
| 24 | board, not -- now not, according to this | 11:42:53 |
| 25 | direction, being given any invites or any | 11:42:58 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                    111

| | | |
|---|---|---|
| 1 | information or documents, how would he go -- how | 11:43:01 |
| 2 | would he demonstrate that he wanted to | 11:43:06 |
| 3 | participate, in your view? | 11:43:09 |
| 4 | A  How would a non-board member demonstrate | 11:43:12 |
| 5 | they wanted to participate in board meetings?  Is | 11:43:18 |
| 6 | that the question? | 11:43:21 |
| 7 | Q  Yeah.  If he believed himself to be on the | 11:43:22 |
| 8 | board, what would it take for you to believe that | 11:43:25 |
| 9 | he was -- | 11:43:28 |
| 10 | A  Well -- | 11:43:28 |
| 11 | Q  -- ready, willing, and able to provide | 11:43:29 |
| 12 | services? | 11:43:31 |
| 13 | A  If he believed that he was still on the | 11:43:33 |
| 14 | board, then he would have been saying:  Hey, when | 11:43:35 |
| 15 | is the board meeting?  When is the monthly | 11:43:40 |
| 16 | financial calls?  He would have been calling us, | 11:43:43 |
| 17 | saying:  Where is my stipend that I should be | 11:43:45 |
| 18 | paid?  Which he was not paid going forward after | 11:43:47 |
| 19 | he was removed from the board. | 11:43:51 |
| 20 | So he -- that would have been -- they're | 11:43:52 |
| 21 | almost two separate questions.  Because the ready, | 11:43:54 |
| 22 | willing, and able piece is saying -- if you're | 11:43:57 |
| 23 | asking, like, what:  As a non-board member, how | 11:44:00 |
| 24 | would he demonstrate to us that he thought he was | 11:44:03 |
| 25 | on the board?  It would have been those things. | 11:44:07 |

| | | |
|---|---|---|
| 1 | If it's:  Hey, I'm available, he would have called | 11:44:10 |
| 2 | and said:  Hey, I'm still available to be on the | 11:44:14 |
| 3 | board. | 11:44:17 |
| 4 | I don't know how to answer that.  It would | 11:44:17 |
| 5 | have been -- | 11:44:19 |
| 6 | Q  Okay. | 11:44:19 |
| 7 | A  -- that's a -- he didn't make any of those | 11:44:20 |
| 8 | attempts, for sure. | 11:44:22 |
| 9 | MR. GILMORE:  We've been going for about | 11:44:42 |
| 10 | an hour, if you're at a good stopping point. | 11:44:45 |
| 11 | MR. MINSON:  Give me one minute.  I just | 11:44:48 |
| 12 | want to finish -- | 11:44:50 |
| 13 | MR. GILMORE:  If you want to wrap | 11:44:50 |
| 14 | something up, that's fine. | 11:44:52 |
| 15 | BY MR. MINSON: | 11:44:53 |
| 16 | Q  And with regard to the email communicating | 11:44:53 |
| 17 | that to Piyush and Brianna -- I'm going to go back | 11:44:55 |
| 18 | to this point.  Were either one of the removal | 11:44:59 |
| 19 | documents provided to them at that point? | 11:45:04 |
| 20 | A  They wouldn't have needed -- | 11:45:09 |
| 21 | Q  And that's -- just to clarify, that's | 11:45:16 |
| 22 | LINDEN1303, the Bates label from Exhibit 2, and | 11:45:19 |
| 23 | Exhibit 4, which was September 3rd. | 11:45:23 |
| 24 | A  Yeah, you're talking about the June | 11:45:29 |
| 25 | document and the September document. | 11:45:30 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                      113

| | | |
|---|---|---|
| 1 | Neither one of those would have needed to | 11:45:32 |
| 2 | have been -- well, required or needed to be | 11:45:35 |
| 3 | provided with anybody on this email chain here. | 11:45:37 |
| 4 | Piyush, as a board member of ERG, would | 11:45:43 |
| 5 | have likely seen the ERG one as well. | 11:45:47 |
| 6 | Q  And when this email was sent out, were you | 11:45:50 |
| 7 | aware if Pat was still listed as a board member on | 11:46:01 |
| 8 | ProPharma's website? | 11:46:05 |
| 9 | A  I don't recall. | 11:46:07 |
| 10 | Q  Okay. | 11:46:09 |
| 11 | A  And, I'm sorry, just to clarify one other | 11:46:11 |
| 12 | thing further I said, just a small nuance. | 11:46:14 |
| 13 | Brianna might have received the document | 11:46:16 |
| 14 | to the extent that she was helping me execute it | 11:46:18 |
| 15 | or sign it.  And so she might have received it in | 11:46:19 |
| 16 | that way but not officially provided to her. | 11:46:22 |
| 17 | MR. MINSON:  All right.  This is a good | 11:46:31 |
| 18 | place to stop. | 11:46:33 |
| 19 | MR. GILMORE:  Actually, if you want to | 11:46:33 |
| 20 | keep going until lunch, we could then just stop at | 11:46:34 |
| 21 | noon.  It's up to you if you want to stop now, and | 11:46:37 |
| 22 | up to you if you want to stop now and keep going | 11:46:41 |
| 23 | for another 15, 20 minutes and stop for lunch | 11:46:43 |
| 24 | around noon.  What would you prefer? | 11:46:46 |
| 25 | MR. MINSON:  I'll just keep going. | 11:46:48 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                                    114

| | | |
|---|---|---|
| 1 | MR. GILMORE:  Okay.  Is that all right? | 11:46:50 |
| 2 | A   THE WITNESS:  Fine with me. | 11:46:51 |
| 3 | MR. GILMORE:  We'll go to noon. | 11:46:53 |
| 4 | MR. MINSON:  All right. | 11:47:06 |
| 5 | BY MR. MINSON: | 11:47:06 |
| 6 | Q   I want to refer back to Exhibit Number 8, | 11:47:06 |
| 7 | which is the email that included the buyout offers | 11:47:08 |
| 8 | and the letter regarding ERG -- or letter | 11:47:17 |
| 9 | agreement regarding ERG. | 11:47:26 |
| 10 | A   Yep. | 11:47:27 |
| 11 | Q   That is dated September 4th, 2019, | 11:47:28 |
| 12 | correct? | 11:47:35 |
| 13 | A   Yes. | 11:47:37 |
| 14 | Q   And this letter to Piyush is the very next | 11:47:40 |
| 15 | day, September 5th, 2019, correct? | 11:47:47 |
| 16 | A   Correct. | 11:48:00 |
| 17 | Q   So were there any notifications to Piyush, | 11:48:00 |
| 18 | prior to the letter, that Pat was not on the board | 11:48:05 |
| 19 | anymore? | 11:48:09 |
| 20 | A   Can you clarify, please, which board? | 11:48:09 |
| 21 | Q   The board of ProPharma.  I'm sorry.  Or, | 11:48:14 |
| 22 | I'm sorry, ERG -- Piyush is ERG. | 11:48:18 |
| 23 | A   Correct. | 11:48:21 |
| 24 | Q   And who -- what, Brianna, was the | 11:48:21 |
| 25 | ProPharma person or... | 11:48:25 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                              115

| | | |
|---|---|---|
| 1 | A  Brianna is an administrative assistant. | 11:48:26 |
| 2 | So she supports me -- | 11:48:29 |
| 3 | Q  Okay. | 11:48:31 |
| 4 | A  -- as well as other people. | 11:48:31 |
| 5 | So she, as far as documents, calendar | 11:48:33 |
| 6 | invites, that's why. | 11:48:35 |
| 7 | Q  Oh, I see.  Okay. | 11:48:37 |
| 8 | A  So Piyush is on the board of ERG.  Josh is | 11:48:38 |
| 9 | a deal team member -- was a deal team member of | 11:48:41 |
| 10 | ProPharma. | 11:48:46 |
| 11 | Q  Okay.  So this is -- so, I guess, scratch | 11:48:46 |
| 12 | Piyush.  Piyush doesn't matter for our purposes. | 11:48:50 |
| 13 | So was there any other notification prior | 11:48:53 |
| 14 | to that letter that you sent to Piyush and Josh | 11:48:56 |
| 15 | that Pat wasn't on the board of ProPharma? | 11:49:01 |
| 16 | MR. GILMORE:  Objection, form, foundation. | 11:49:10 |
| 17 | BY THE WITNESS: | 11:49:11 |
| 18 | A  Yeah, so Piyush wouldn't -- I don't think | 11:49:14 |
| 19 | I notified -- we would have no reason to notify | 11:49:18 |
| 20 | Piyush about Pat's involvement on ProPharma. | 11:49:22 |
| 21 | BY MR. MINSON: | 11:49:24 |
| 22 | Q  Right.  Scratch Piyush. | 11:49:24 |
| 23 | A  So that -- this email that was sent was | 11:49:26 |
| 24 | really directed towards -- which exhibit? -- | 11:49:28 |
| 25 | Exhibit 20, this is really directed towards -- to | 11:49:35 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                            116

| | | |
|---|---|---|
| 1 | Piyush and Brianna. | 11:49:40 |
| 2 | Prab is also an ERG member.  So this is | 11:49:42 |
| 3 | updating them on everything, and really more belts | 11:49:45 |
| 4 | and suspenders around ERG.  And then just | 11:49:49 |
| 5 | including ProPharma as just, like, you know, | 11:49:52 |
| 6 | making sure everybody knows. | 11:49:56 |
| 7 | Because, again, we're not -- we're not | 11:49:58 |
| 8 | required to tell the associate on the deal team | 11:50:02 |
| 9 | that Pat's been removed. | 11:50:04 |
| 10 | Q  Okay. | 11:50:05 |
| 11 | A  And so it may have been the case that he | 11:50:05 |
| 12 | doesn't know.  So this is just making sure that | 11:50:07 |
| 13 | everybody knows at this point. | 11:50:09 |
| 14 | Q  Okay. | 11:50:11 |
| 15 | A  So I can't speak to -- I just don't know | 11:50:11 |
| 16 | if there would have been any conversations with | 11:50:14 |
| 17 | Piyush about Pat's involvement with ProPharma -- | 11:50:16 |
| 18 | or removal from the board, sorry -- from ProPharma | 11:50:22 |
| 19 | prior to this. | 11:50:26 |
| 20 | Q  All right.  Sticking with that Exhibit | 11:50:27 |
| 21 | Number 8, the offer that you made on September 4th | 11:50:30 |
| 22 | regarding ProPharma, did Pat ever indicate to you | 11:50:33 |
| 23 | that he intended to sign that offer? | 11:50:41 |
| 24 | A  This offer -- sorry, on ProPharma? | 11:50:44 |
| 25 | Q  Yeah, on ProPharma, Exhibit Number 8. | 11:50:52 |

| | | |
|---|---|---|
| 1 | A   Yeah, so in response to this email? | 11:50:56 |
| 2 | Q   Mm-hm. | 11:50:58 |
| 3 | A   His response to me was everything with ERG | 11:50:59 |
| 4 | is fine -- and I can't remember if this was a | 11:51:02 |
| 5 | phone call or email.  He said:  Everything with | 11:51:04 |
| 6 | ERG is fine.  I don't have any issues there, | 11:51:07 |
| 7 | referring to both the valuation and removal from | 11:51:09 |
| 8 | the board. | 11:51:11 |
| 9 | And he said:  But on ProPharma, I think | 11:51:12 |
| 10 | you're valuing my stock too low.  It should be | 11:51:15 |
| 11 | more like Advarra. | 11:51:19 |
| 12 | Q   Okay. | 11:51:21 |
| 13 | A   That was his response -- that was the | 11:51:21 |
| 14 | extent of the response.  There was never any | 11:51:23 |
| 15 | other -- | 11:51:25 |
| 16 | Q   All right. | 11:51:27 |
| 17 | A   -- indication. | 11:51:27 |
| 18 | Q   And did you respond back directly, or did | 11:51:28 |
| 19 | you reissue the same offer? | 11:51:35 |
| 20 | A   I got to go back and look at what -- like | 11:51:36 |
| 21 | all -- | 11:51:40 |
| 22 | Q   I'll just -- | 11:51:40 |
| 23 | A   -- the chronology of events.  Yeah.  I | 11:51:41 |
| 24 | know he asked for additional support. | 11:51:44 |
| 25 | Q   Yeah.  I'll just hand these to you. | 11:51:46 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                    118

| | | |
|---|---|---|
| 1 | MR. MINSON:  This is 21. | 11:51:53 |
| 2 | (WHEREUPON, a certain document was marked | 11:51:54 |
| 3 | Farah Deposition Exhibit No. 21, for | 11:51:54 |
| 4 | identification.) | 11:52:13 |
| 5 | BY MR. MINSON: | 11:52:13 |
| 6 | Q  This is an October 18, 2019, email, so a | 11:52:14 |
| 7 | little over a month after that last offer.  And it | 11:52:16 |
| 8 | says:  We have not heard from you since we last | 11:52:19 |
| 9 | spoke -- and it's from you -- so we are sending | 11:52:23 |
| 10 | again the incentive equity agreements for | 11:52:26 |
| 11 | ProPharma and ERG. | 11:52:28 |
| 12 | And then, as you said:  As you are aware, | 11:52:30 |
| 13 | there is no current value in ERG incentive equity, | 11:52:33 |
| 14 | and so there is nothing to buy back and all | 11:52:37 |
| 15 | incentive equity is forfeited. | 11:52:39 |
| 16 | Regarding ProPharma, your incentive equity | 11:52:40 |
| 17 | agreement entitles you to two-fifths of the time | 11:52:43 |
| 18 | vesting shares only.  But Linden elected in good | 11:52:45 |
| 19 | faith to vest an additional portion of your time, | 11:52:48 |
| 20 | as well as some performance, as outlined in the | 11:52:51 |
| 21 | agreement.  Please sign the agreements.  We will | 11:52:54 |
| 22 | send your wire ASAP so we can process payment.  If | 11:52:57 |
| 23 | we don't hear from you, we'll have to proceed with | 11:53:01 |
| 24 | repurchasing your incentive equity under the terms | 11:53:04 |
| 25 | outlined in your incentive equity agreement. | 11:53:06 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                    119

| | | |
|---|---|---|
| 1 | And so my first question is -- the first | 11:53:09 |
| 2 | statement, it says:  We have not heard from you | 11:53:13 |
| 3 | since we last spoke.  So was when you last spoke, | 11:53:15 |
| 4 | was it the September 4th, 2019, offer to him, or | 11:53:23 |
| 5 | was there another conversation after that? | 11:53:27 |
| 6 | A  I think there were other conversations | 11:53:28 |
| 7 | after that, and I think he asked for backup data. | 11:53:30 |
| 8 | I think that happened after this. | 11:53:34 |
| 9 | Q  Okay. | 11:53:35 |
| 10 | A  So I think there was a little bit of | 11:53:35 |
| 11 | back-and-forth.  Or maybe it could have been that | 11:53:38 |
| 12 | he asked for data -- I'd have to go back again to | 11:53:41 |
| 13 | look at everything.  I think he asked for data. | 11:53:44 |
| 14 | We provided support.  And perhaps that's when we | 11:53:47 |
| 15 | didn't hear from him. | 11:53:49 |
| 16 | So I don't recall -- | 11:53:50 |
| 17 | Q  Okay. | 11:53:51 |
| 18 | A  -- what the -- when exactly the last | 11:53:51 |
| 19 | conversation was. | 11:53:53 |
| 20 | Q  And the agreements attached, are they | 11:53:54 |
| 21 | providing him with the same offer that you made | 11:53:59 |
| 22 | him in the September 4th, 2019, email?  Did the | 11:54:01 |
| 23 | offer change at all? | 11:54:06 |
| 24 | A  I've got to look. | 11:54:08 |
| 25 | They look to be the same.  At quick | 11:54:25 |

| | | |
|---|---|---|
| 1 | glance, they look to be the same. | 11:54:31 |
| 2 | Q  Okay.  And by October 18th, you still had | 11:54:32 |
| 3 | not -- of 2019, ProPharma still had not made any | 11:54:39 |
| 4 | distributions of funds to Mr. Donnelly; is that | 11:54:45 |
| 5 | correct? | 11:54:50 |
| 6 | A  My recollection is that that is correct. | 11:54:50 |
| 7 | Q  Okay.  And at that point in time, | 11:54:52 |
| 8 | ProPharma was already coordinating with investment | 11:54:58 |
| 9 | banks to do their valuations for the sale of the | 11:55:02 |
| 10 | company, right? | 11:55:04 |
| 11 | A  I'm not sure that's true. | 11:55:06 |
| 12 | Q  By October -- by mid-October, was | 11:55:08 |
| 13 | ProPharma coordinating with them? | 11:55:12 |
| 14 | A  I'd have to go back and look at emails to | 11:55:13 |
| 15 | see when we invited them to come present. | 11:55:17 |
| 16 | Q  Okay. | 11:55:20 |
| 17 | A  We had -- by October 18th, we had not met | 11:55:20 |
| 18 | with any investment banks, and we had not received | 11:55:23 |
| 19 | any materials from any investment banks -- | 11:55:26 |
| 20 | Q  I can -- | 11:55:28 |
| 21 | A  -- my recollection. | 11:55:29 |
| 22 | Q  -- tell you the actual decks are dated -- | 11:55:30 |
| 23 | he'll probably object to foundation, but the | 11:55:35 |
| 24 | actual decks are dated November 5th and | 11:55:37 |
| 25 | November 7th. | 11:55:41 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                   121

| | | |
|---|---|---|
| 1 | And so my question is, you know, do you | 11:55:42 |
| 2 | think that there was work up till that point? | 11:55:45 |
| 3 | A  Where -- | 11:55:49 |
| 4 | MR. GILMORE:  Objection, form. | 11:55:50 |
| 5 | BY THE WITNESS: | 11:55:52 |
| 6 | A  Can you clarify -- | 11:55:52 |
| 7 | BY MR. MINSON: | 11:55:53 |
| 8 | Q  I mean -- | 11:55:54 |
| 9 | A  -- by who? | 11:55:54 |
| 10 | Q  -- if you had talked to them or discussed | 11:55:55 |
| 11 | financial data or information up to that point. | 11:55:57 |
| 12 | A  I don't recall.  We certainly would have | 11:56:00 |
| 13 | not done any work on our end.  We may have | 11:56:03 |
| 14 | provided to them a call with management that | 11:56:06 |
| 15 | typically I wouldn't have been on but maybe | 11:56:13 |
| 16 | somebody else would have been on.  So maybe a | 11:56:15 |
| 17 | 30-minute call with management where they speak to | 11:56:18 |
| 18 | management about the business, get to know the | 11:56:19 |
| 19 | business a little bit better. | 11:56:21 |
| 20 | And then we probably would have provided | 11:56:23 |
| 21 | very, very high-level financials. | 11:56:25 |
| 22 | Q  Okay.  Sounds right. | 11:56:27 |
| 23 | And when you sent this October 18th, 2019, | 11:56:30 |
| 24 | offer which rehashed the previous offer, what was | 11:56:35 |
| 25 | Pat's response to you then? | 11:56:40 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                    122

| | | |
|---|---|---|
| 1 | A  When we sent the October 18th, what was | 11:56:41 |
| 2 | his response to this -- | 11:56:43 |
| 3 | Q  Yeah. | 11:56:45 |
| 4 | A  -- Exhibit 21? | 11:56:45 |
| 5 | I don't recall. | 11:56:48 |
| 6 | Q  I mean, did he respond to you by phone | 11:56:49 |
| 7 | calls, or was it all just based on email traffic | 11:56:51 |
| 8 | by that point?  Were you on talking terms? | 11:56:54 |
| 9 | A  I think at this point, it was all emails, | 11:56:56 |
| 10 | and I think through the lawyers.  So I don't -- | 11:56:58 |
| 11 | Q  I see. | 11:57:00 |
| 12 | A  -- I don't recall. | 11:57:02 |
| 13 | Q  And he never agreed to this offer, | 11:57:03 |
| 14 | correct? | 11:57:07 |
| 15 | A  Correct. | 11:57:13 |
| 16 | Q  With regard to ProPharma, not ERG. | 11:57:14 |
| 17 | A  Yeah, correct. | 11:57:18 |
| 18 | Q  Okay. | 11:57:26 |
| 19 | A  But, again, to be clear, this offer was an | 11:57:27 |
| 20 | offer.  It's not what he was entitled to under his | 11:57:29 |
| 21 | agreement.  So what we ended up doing was sending | 11:57:32 |
| 22 | him the amount of money that he was entitled to | 11:57:35 |
| 23 | under the agreement. | 11:57:37 |
| 24 | This offer and the other offer, which are | 11:57:38 |
| 25 | the same, are being very generous and fair, going | 11:57:39 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                    123

| | | |
|---|---|---|
| 1 | above and beyond what he's actually entitled to. | 11:57:43 |
| 2 |    Q  Who is -- | 11:57:47 |
| 3 |    A  So we did not need him to accept an offer | 11:57:48 |
| 4 | to exercise our right under the agreement. | 11:57:50 |
| 5 |    Q  Who's the -- I guess, whose decision was | 11:57:52 |
| 6 | it to, as you say, go above and beyond and not | 11:57:56 |
| 7 | offer him what you say he was entitled to under | 11:57:59 |
| 8 | the agreement? | 11:58:02 |
| 9 |    MR. GILMORE:  Objection, form, lack of | 11:58:04 |
| 10 | foundation. | 11:58:09 |
| 11 | BY MR. MINSON: | 11:58:09 |
| 12 |    Q  You can answer. | 11:58:09 |
| 13 |    A  It's a collective decision, and there was | 11:58:10 |
| 14 | discussions that happened among the board.  And | 11:58:16 |
| 15 | the decision to give him more than he was offered | 11:58:24 |
| 16 | was coming from a very good place.  I felt that | 11:58:27 |
| 17 | Tony was being very generous and very fair in | 11:58:30 |
| 18 | trying to treat somebody in a fair way and offer | 11:58:34 |
| 19 | more than what they're entitled to. | 11:58:37 |
| 20 |      And so it's quite frustrating that we're | 11:58:41 |
| 21 | here, because we can argue about the multiple and | 11:58:44 |
| 22 | the valuation of -- that Pat, if he cherry-picks | 11:58:46 |
| 23 | one good deal that's not even a good comp to | 11:58:50 |
| 24 | ProPharma, just picks the highest multiple.  But | 11:58:53 |
| 25 | if you look at -- you could pick an arbitrary | 11:58:56 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                          124

1    multiple way higher than that.                      11:58:59

2          And if you just give him what he was          11:59:00

3    entitled to, it's still less than what we offered   11:59:02

4    him.  And so it's very frustrating that we're even  11:59:05

5    here having this discussion, because of how we      11:59:08

6    believed we were clearly being fair because we're   11:59:11

7    giving him more than what he's entitled to in an    11:59:14

8    agreement so...                                      11:59:18

9       Q  Okay.  And was any of the -- were any of      11:59:19

10   those offers discussed among the board as a board   11:59:21

11   meeting, an official board meeting?                 11:59:27

12      A  I don't recall if we had an official board    11:59:30

13   meeting about it.                                    11:59:33

14      Q  Okay.  And so there was no -- was there a     11:59:34

15   board resolution about it?                           11:59:38

16      A  I do not recall if there was a resolution.    11:59:42

17   It's not something that we would have needed a      11:59:44

18   resolution, just based on how the documents are     11:59:46

19   set up.  And Linden, as a control investor, we      11:59:48

20   have the right to do that.                           11:59:51

21         So I'm sure we would have kept -- as a        11:59:53

22   good partner, I'm sure we would have had            11:59:55

23   discussions with Dawn and Jeff Hargroves about      11:59:58

24   that offer and doing more.                           12:00:00

25         I know for a fact Dawn didn't want to give    12:00:02

Transcript of Michael Farah, Designated Representative
September 14, 2022                                    125

| | | |
|---|---|---|
| 1 | him anything.  And so there were views from the | 12:00:05 |
| 2 | board that he shouldn't get anything at all.  And | 12:00:07 |
| 3 | so -- but I don't recall if there was a | 12:00:10 |
| 4 | resolution.  But, again, we wouldn't have needed | 12:00:15 |
| 5 | to do one. | 12:00:17 |
| 6 | Q  Okay.  And was there ever a resolution or | 12:00:17 |
| 7 | an official meeting regarding the valuation that | 12:00:19 |
| 8 | composed -- that the offer was composed of? | 12:00:25 |
| 9 | A  There was not a ProPharma resolution -- | 12:00:27 |
| 10 | board resolution or board meeting around the | 12:00:36 |
| 11 | valuation, because we did it consistently with how | 12:00:38 |
| 12 | we treat these things at, to my knowledge, almost | 12:00:41 |
| 13 | every Linden portfolio company, where we base | 12:00:48 |
| 14 | these buyouts, the value of rollover, on our | 12:00:50 |
| 15 | internal valuation. | 12:00:54 |
| 16 | Our internal valuations are -- so we're | 12:00:56 |
| 17 | very consistent.  We try to apply the same | 12:00:59 |
| 18 | principles and standards across everybody and | 12:01:02 |
| 19 | every portfolio company when it comes to valuing | 12:01:04 |
| 20 | the shares. | 12:01:06 |
| 21 | And that method is based on GAAP.  It's | 12:01:07 |
| 22 | audited by Linden's auditors.  It's shared with | 12:01:10 |
| 23 | our investors.  It's never been challenged.  And | 12:01:14 |
| 24 | so it's -- there's not really a need, in our mind, | 12:01:18 |
| 25 | to -- there's not a requirement, and there's | 12:01:21 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                                126

| | | |
|---|---|---|
| 1 | certainly not a need, to have a board meeting or | 12:01:25 |
| 2 | resolution just based on how we approach the fair | 12:01:26 |
| 3 | market value. | 12:01:30 |
| 4 | And it really -- it wasn't really like, | 12:01:30 |
| 5 | hey, let's come up with a fair market value for | 12:01:32 |
| 6 | Pat.  It was:  What's the fair market value for | 12:01:36 |
| 7 | ProPharma?  How do we have it marked on our books | 12:01:38 |
| 8 | today?  How do we derive that fair market value? | 12:01:41 |
| 9 | And that's what we used.  We just supplied | 12:01:44 |
| 10 | the same market value for Pat. | 12:01:47 |
| 11 | And I'll add on that that, as a board | 12:01:49 |
| 12 | member, all the board members have -- they | 12:01:55 |
| 13 | understand when we buy a company -- we bought two | 12:01:57 |
| 14 | companies prior to that -- well, several, but two | 12:01:59 |
| 15 | recently that had a rollover.  That roll- -- so we | 12:02:03 |
| 16 | buy a company, and the owner of that company -- | 12:02:06 |
| 17 | Q  What's a rollover?  I'm sorry. | 12:02:07 |
| 18 | A  Yeah, let me -- so when we buy a company | 12:02:09 |
| 19 | and the shareholder of that company that we're | 12:02:12 |
| 20 | buying rolls over, and invests, some of his | 12:02:14 |
| 21 | proceeds into ProPharma. | 12:02:17 |
| 22 | So they get $100.  We say:  Invest $10 of | 12:02:19 |
| 23 | that in ProPharma.  We'll give you $10 of that | 12:02:23 |
| 24 | hundred in stock, effectively.  And so that's a | 12:02:26 |
| 25 | rollover. | 12:02:29 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                    127

| | | |
|---|---|---|
| 1 | The value of that ProPharma equity that | 12:02:29 |
| 2 | we're giving to that individual is based on the | 12:02:31 |
| 3 | fair market value that we do internally.  So | 12:02:33 |
| 4 | whenever we do a board deck that approves a | 12:02:36 |
| 5 | transaction, all the board members see the | 12:02:39 |
| 6 | methodology that we use to value the stock. | 12:02:41 |
| 7 | And Pat would have certainly have seen | 12:02:42 |
| 8 | that as a board member of ProPharma prior to June | 12:02:44 |
| 9 | of 2019.  He would have seen how we did that, what | 12:02:47 |
| 10 | the methodology was. | 12:02:49 |
| 11 | The same goes for when we issue shares -- | 12:02:50 |
| 12 | incentive equity to a new employee.  There's often | 12:02:58 |
| 13 | a board resolution, how's it's valued, this is how | 12:03:00 |
| 14 | it's valued. | 12:03:04 |
| 15 | So as board members, they see all that. | 12:03:04 |
| 16 | They see -- they're aware of how things are being | 12:03:07 |
| 17 | valued. | 12:03:09 |
| 18 | Q  Was that on a trailing valuation or a | 12:03:09 |
| 19 | forward-looking valuation? | 12:03:14 |
| 20 | A  It's -- to my knowledge, it's always been | 12:03:14 |
| 21 | on a trailing -- | 12:03:17 |
| 22 | Q  Okay. | 12:03:18 |
| 23 | A  -- valuation. | 12:03:19 |
| 24 | MR. MINSON:  Can you mark this as 22. | 12:03:20 |
| 25 | | |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                        128

| | | |
|---|---|---|
| 1 | (WHEREUPON, a certain document was marked | 12:03:20 |
| 2 | Farah Deposition Exhibit No. 22, for | 12:03:20 |
| 3 | identification.) | 12:03:39 |
| 4 | BY MR. MINSON: | 12:03:39 |
| 5 | Q  This is one month later after that | 12:03:41 |
| 6 | October 18th email with the offer.  This is, I | 12:03:42 |
| 7 | guess, a less -- not as warm of an email, from my | 12:03:49 |
| 8 | perspective.  That's my own -- that's my own | 12:03:56 |
| 9 | characterization, I'll admit that. | 12:04:01 |
| 10 | MR. GILMORE:  Can I ask you some questions | 12:04:03 |
| 11 | about that? | 12:04:05 |
| 12 | BY MR. MINSON: | 12:04:06 |
| 13 | Q  And it says:  Pat, we've reached out to | 12:04:13 |
| 14 | your counsel -- this is Exhibit Number 22, | 12:04:15 |
| 15 | DONNELLY133. | 12:04:19 |
| 16 | It says:  Pat, we've reached out to your | 12:04:20 |
| 17 | counsel multiple times regarding the issues raised | 12:04:21 |
| 18 | in your attorney's email to Kirkland & Ellis.  As | 12:04:22 |
| 19 | you know, per the express terms of the ProPharma | 12:04:26 |
| 20 | incentive equity agreement (unintelligible) -- | 12:04:29 |
| 21 | MS. REPORTER:  Hold on.  You're reading | 12:04:29 |
| 22 | way too fast. | 12:04:29 |
| 23 | MR. MINSON:  I'm sorry.  Yeah, it's a long | 12:04:29 |
| 24 | email. | 12:04:41 |
| 25 | | |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                    129

| | | |
|---|---|---|
| 1 | BY MR. MINSON: | 12:04:41 |
| 2 | Q  Okay.  Your time units are vested, and | 12:04:42 |
| 3 | zero percent of performance vesting units are | 12:04:44 |
| 4 | vested.  However, we have offered you, in good | 12:04:48 |
| 5 | faith, to vest an additional 402.3182 time vesting | 12:04:51 |
| 6 | units and 4,023 -- | 12:04:58 |
| 7 | Did I say 4,000 for the first one?  I just | 12:05:04 |
| 8 | want to clarify that.  No.  402.  That's right. | 12:05:08 |
| 9 | And 4,023.384 performance vesting units, | 12:05:11 |
| 10 | which is more than the agreement stipulates.  In | 12:05:15 |
| 11 | fact, it equates to $578,780.23 of additional | 12:05:19 |
| 12 | value that you are not otherwise entitled. | 12:05:26 |
| 13 | And it says -- I'm going to go down so I | 12:05:29 |
| 14 | don't have to read the entire email. | 12:05:36 |
| 15 | It says:  If we have not received such | 12:05:40 |
| 16 | executed document by the date and time, the offer | 12:05:43 |
| 17 | described in the attached repurchase agreement is | 12:05:45 |
| 18 | revoked.  We will excuse our -- exercise our | 12:05:48 |
| 19 | repurchase option only for your ProPharma units | 12:05:52 |
| 20 | that are vested pursuant to the express terms of | 12:05:55 |
| 21 | your incentive unit agreement, which means | 12:05:58 |
| 22 | 804.6364 vested time vesting units will be | 12:06:00 |
| 23 | repurchased for $105,000 -- or $105,227.97 and all | 12:06:08 |
| 24 | unvested units are forfeited, canceled. | 12:06:15 |
| 25 | We will send a wire in an applicable | 12:06:18 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                    130

| | | |
|---|---|---|
| 1 | amount to the account we have on file per the | 12:06:22 |
| 2 | Advarra sale unless you provide different account | 12:06:25 |
| 3 | details. | 12:06:31 |
| 4 | Okay.  So this is your November -- from | 12:06:31 |
| 5 | you, your November 4th, 2019, email.  And it's | 12:06:35 |
| 6 | addressed to Steve Robinson at McGuireWoods, as | 12:06:46 |
| 7 | well as Pat Donnelly, as the recipients. | 12:06:54 |
| 8 | Did you receive a verbal communication | 12:06:58 |
| 9 | from Pat in response to this email?  Or was it -- | 12:07:00 |
| 10 | I'll just -- you can answer that question. | 12:07:05 |
| 11 | MR. GILMORE:  Objection, form, foundation. | 12:07:07 |
| 12 | BY THE WITNESS: | 12:07:07 |
| 13 | A  I don't recall if we received a verbal | 12:07:11 |
| 14 | response.  I find the tone of this actually just | 12:07:13 |
| 15 | kind of matter of fact.  I know it was -- you had | 12:07:18 |
| 16 | a different view, but it's... | 12:07:21 |
| 17 | BY MR. MINSON: | 12:07:27 |
| 18 | Q  And so you don't know if you got a verbal | 12:07:27 |
| 19 | communication. | 12:07:33 |
| 20 | To your knowledge, did he sign this offer? | 12:07:34 |
| 21 | Obviously not.  We wouldn't be here.  But for the | 12:07:39 |
| 22 | record -- | 12:07:41 |
| 23 | A  Yeah.  To my knowledge, he did not -- he | 12:07:41 |
| 24 | did not sign this offer.  Again, this is here we | 12:07:43 |
| 25 | are.  He's not responding.  We're offering him | 12:07:46 |

Transcript of Michael Farah, Designated Representative
September 14, 2022

131

| | | |
|---|---|---|
| 1 | more than what he's entitled to. | 12:07:49 |
| 2 | He's not disputing about the board, by the | 12:07:51 |
| 3 | way, if he's still on the board or not.  He's just | 12:07:54 |
| 4 | arguing over the value of the shares.  And he's | 12:07:58 |
| 5 | ignoring the fact that we're giving him more than | 12:08:00 |
| 6 | what he's entitled to.  So, I mean, this is -- | 12:08:02 |
| 7 | yeah.  This is frustrating. | 12:08:06 |
| 8 | Q   Okay.  And had any money been transferred | 12:08:08 |
| 9 | to Pat that you say is -- was for his incentive | 12:08:14 |
| 10 | equity as of the date of this email, on | 12:08:19 |
| 11 | November 4th? | 12:08:22 |
| 12 | A   I'd have to go back and look.  But my | 12:08:23 |
| 13 | understanding is that the wire of 105,000 came | 12:08:25 |
| 14 | after this. | 12:08:29 |
| 15 | Q   Okay. | 12:08:32 |
| 16 | A   And I don't think anything was transferred | 12:08:32 |
| 17 | before.  So he effectively got what he was | 12:08:34 |
| 18 | entitled to under the agreement. | 12:08:38 |
| 19 | MR. MINSON:  23. | 12:09:04 |
| 20 | (WHEREUPON, a certain document was marked | 12:09:04 |
| 21 | Farah Deposition Exhibit No. 23, for | 12:09:04 |
| 22 | identification.) | 12:09:14 |
| 23 | BY MR. MINSON: | 12:09:14 |
| 24 | Q   So Exhibit Number 23 is a November 6, | 12:09:14 |
| 25 | 2019, response drafted by Steve Robinson, a | 12:09:19 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                          132

| | | |
|---|---|---|
| 1 | McGuireWoods attorney, and sent to | 12:09:25 |
| 2 | Kirkland & Ellis. | 12:09:29 |
| 3 | And it says -- well, most -- a lot of it | 12:09:30 |
| 4 | is with regard to the Linden matter.  But on | 12:09:57 |
| 5 | DONNELLY929, that's where Mr. Robinson addresses | 12:10:07 |
| 6 | the ProPharma incentive equity value. | 12:10:15 |
| 7 | And it says:  Please see the Jefferies | 12:10:18 |
| 8 | report on recent comparable values for | 12:10:20 |
| 9 | transactions closed this year, including Advarra. | 12:10:22 |
| 10 | The overall mean on multiples for pharma services | 12:10:27 |
| 11 | M&A is 18.8 times EBITDA. | 12:10:32 |
| 12 | It says:  As applied to ProPharma, this | 12:10:36 |
| 13 | would translate to a 3.88X return on investment | 12:10:39 |
| 14 | for Linden, which would result in a valuation of | 12:10:44 |
| 15 | $199.73 per unit.  Linden has offered a price of | 12:10:48 |
| 16 | $130.78, representing a 34.52 percent haircut off | 12:10:59 |
| 17 | market. | 12:10:59 |
| 18 | Linden has also offered the vesting | 12:11:06 |
| 19 | units -- vesting of performance units at only | 12:11:10 |
| 20 | 2.5X.  Return on the investment level instead of | 12:11:13 |
| 21 | the 3X level was supported by these comps. | 12:11:16 |
| 22 | The award agreement calls for the board to | 12:11:23 |
| 23 | determine whether [sic] fair market value in good | 12:11:25 |
| 24 | faith and without regard to any minority or | 12:11:27 |
| 25 | marketability discounts, and Pat does not feel | 12:11:32 |

Transcript of Michael Farah, Designated Representative
September 14, 2022

133

| | | |
|---|---|---|
| 1 | like the board has shown good faith with the | 12:11:35 |
| 2 | valuation. | 12:11:38 |
| 3 | He's requesting -- or Pat is requesting | 12:11:39 |
| 4 | vesting of a total of 7,241.7286 units, including | 12:11:43 |
| 5 | that -- including 100 percent of the performance | 12:11:50 |
| 6 | units, at 3X return on investment level and | 12:11:52 |
| 7 | pricing at 199.73 per unit, or an aggregate | 12:11:56 |
| 8 | repurchase price of 1,446,390 -- or $1,446,390.45, | 12:12:04 |
| 9 | in addition to the amounts described above. | 12:12:16 |
| 10 | And so I read all that because this is | 12:12:18 |
| 11 | Pat's position, given this letter, as to what his | 12:12:24 |
| 12 | units would be worth, or should be worth. | 12:12:29 |
| 13 | Did ProPharma agree or disagree with that | 12:12:33 |
| 14 | position? | 12:12:36 |
| 15 | MR. GILMORE:  Objection, form, foundation. | 12:12:39 |
| 16 | BY THE WITNESS: | 12:12:43 |
| 17 | A  Did we agree or disagree with which part? | 12:12:43 |
| 18 | BY MR. MINSON: | 12:12:46 |
| 19 | Q  With any of this, all this valuation | 12:12:46 |
| 20 | that's part of the -- | 12:12:49 |
| 21 | A  In this paragraph? | 12:12:50 |
| 22 | Q  In this paragraph. | 12:12:51 |
| 23 | MR. GILMORE:  Objection, form, foundation. | 12:12:52 |
| 24 | BY THE WITNESS: | 12:12:53 |
| 25 | A  Well, I can tell you my reaction to it. | 12:12:53 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                          134

| | | |
|---|---|---|
| 1 | Obviously, we disagree with it.  I mean, this | 12:12:56 |
| 2 | is -- his notion of good faith is laughable based | 12:12:58 |
| 3 | on the comps he's put forth here, alone. | 12:13:01 |
| 4 | So there's a lot to unpack here, but let | 12:13:04 |
| 5 | me -- let me start.  First of all, he's not | 12:13:06 |
| 6 | entitled, per the agreement, to any performance | 12:13:10 |
| 7 | vesting.  He's not on the board.  That has to be | 12:13:12 |
| 8 | at an exit.  And he knows that. | 12:13:15 |
| 9 | So -- so that argument is just -- it's | 12:13:19 |
| 10 | laughable.  Anything that we do to vest that is | 12:13:24 |
| 11 | good faith from Linden and it's fairness from | 12:13:27 |
| 12 | Linden.  It's not at all what he's entitled to. | 12:13:30 |
| 13 | Number two, this is a Jefferies -- I don't | 12:13:33 |
| 14 | even know where this Jefferies report came from. | 12:13:36 |
| 15 | This is a comp sheet; this is not a valuation | 12:13:39 |
| 16 | report.  These are not -- some of these might be | 12:13:41 |
| 17 | comps on here that you might use for ProPharma, | 12:13:44 |
| 18 | but some of these are just so far off. | 12:13:46 |
| 19 | And if Pat is as astute of a finance | 12:13:48 |
| 20 | investor and operator and executive as he says he | 12:13:52 |
| 21 | is, he would know that.  Anybody would know that, | 12:13:54 |
| 22 | looking at these. | 12:13:57 |
| 23 | There's some comps on here, so it's not a | 12:13:58 |
| 24 | good -- that are just so far off base.  They're | 12:14:01 |
| 25 | tech companies.  They would never be a comp to | 12:14:03 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                       135

| | | |
|---|---|---|
| 1 | ProPharma, which is a people business so... | 12:14:06 |
| 2 | And some of these companies are much | 12:14:08 |
| 3 | larger and growing much faster.  There's a whole | 12:14:10 |
| 4 | bunch of reasons this is not a representative comp | 12:14:13 |
| 5 | universe.  He's effectively cherry-picking the one | 12:14:16 |
| 6 | really high one. | 12:14:19 |
| 7 | I could cherry pick, if you want to play | 12:14:19 |
| 8 | that game, some of the lower ones and do a value | 12:14:21 |
| 9 | less than what we had it marked at. | 12:14:22 |
| 10 | So this is -- I mean, it's -- again, | 12:14:25 |
| 11 | this -- you could see that it's irritating | 12:14:31 |
| 12 | because, you know, his arguments and the logic | 12:14:34 |
| 13 | here are just not sound. | 12:14:39 |
| 14 | Q  So when Pat put forward this position on | 12:14:42 |
| 15 | November 6th, 2019, you had -- had you seen the | 12:14:51 |
| 16 | investment bank reports for the purpose of selling | 12:14:58 |
| 17 | ProPharma? | 12:15:00 |
| 18 | A  I don't recall.  I'd have to go back and | 12:15:02 |
| 19 | look when they came in. | 12:15:04 |
| 20 | Q  Okay. | 12:15:06 |
| 21 | A  We don't see any of the reports in | 12:15:06 |
| 22 | advance; we see them when they show up to present. | 12:15:08 |
| 23 | Q  Okay. | 12:15:11 |
| 24 | A  So I'd have to look at when those meeting | 12:15:12 |
| 25 | dates were and then when we saw them. | 12:15:14 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                        136

| | | |
|---|---|---|
| 1 | Q   And were the reports from those | 12:15:16 |
| 2 | independent investment banks, were they, as you | 12:15:20 |
| 3 | described, irritating -- | 12:15:24 |
| 4 | A   The reports that we received -- | 12:15:27 |
| 5 | Q   Yeah. | 12:15:29 |
| 6 | A   -- from the investment banks? | 12:15:29 |
| 7 | Q   You said that this was irritating.  So | 12:15:30 |
| 8 | were the reports from investment -- | 12:15:33 |
| 9 | A   No, this chart doesn't irritate me.  The | 12:15:34 |
| 10 | conclusions that Pat is drawing -- | 12:15:37 |
| 11 | Q   Right. | 12:15:39 |
| 12 | A   -- from the chart were irritating and not | 12:15:39 |
| 13 | sound.  So -- in my opinion. | 12:15:43 |
| 14 | So the reports that we received from the | 12:15:45 |
| 15 | bank -- actually, no, those were -- actually, if | 12:15:47 |
| 16 | anything, they support where we had it marked. | 12:15:51 |
| 17 | I'm happy to go through all those.  But those | 12:15:53 |
| 18 | actually just give us support of where our mark | 12:15:56 |
| 19 | was. | 12:15:59 |
| 20 | So -- you know.  And, again, those | 12:15:59 |
| 21 | aren't -- none of these are fair market value | 12:16:01 |
| 22 | reports. | 12:16:04 |
| 23 | Q   But the optimal number for Pat's purposes, | 12:16:08 |
| 24 | when it comes to his performance vesting shares, | 12:16:11 |
| 25 | is the multiple on invested capital, right? | 12:16:16 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                    137

| | | |
|---|---|---|
| 1 | Not the EBITDA multiple.  Not, like, the | 12:16:21 |
| 2 | enterprise value -- well, enterprise value | 12:16:27 |
| 3 | matters.  But when it comes to whether he -- those | 12:16:30 |
| 4 | shares are going to vest, it's solely based on the | 12:16:33 |
| 5 | multiple on invested capital; is that correct? | 12:16:39 |
| 6 | MR. GILMORE:  Objection, form, foundation. | 12:16:43 |
| 7 | A   THE WITNESS:  So there's a few things. | 12:16:44 |
| 8 | One, if the shares vest, you've got to be there at | 12:16:45 |
| 9 | exit and you've got to hit a return, the return | 12:16:48 |
| 10 | threshold.  So those return thresholds set out | 12:16:51 |
| 11 | what the vesting is. | 12:16:54 |
| 12 | The EBITDA multiple drives the enterprise | 12:16:55 |
| 13 | value, which drives the return ultimately. | 12:16:57 |
| 14 | And then I'd need to look at -- yeah, | 12:16:59 |
| 15 | Pat's agreement and see where -- yeah, how he did | 12:17:02 |
| 16 | it. | 12:17:02 |
| 17 | But his vesting was standard, so it would | 12:17:05 |
| 18 | have been -- if he was there at exit at a 3X, he | 12:17:07 |
| 19 | would have gotten more than if he was there at | 12:17:11 |
| 20 | exit and we exited at a 2 1/2X. | 12:17:13 |
| 21 | BY MR. MINSON: | 12:17:13 |
| 22 | Q   Okay. | 12:17:17 |
| 23 | A   And to be clear, he was not there at exit. | 12:17:17 |
| 24 | His shares were not there. | 12:17:19 |
| 25 | MR. MINSON:  Last one before lunch, I | 12:17:49 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                    138

| | | |
|---|---|---|
| 1 | promise. | 12:17:51 |
| 2 | MR. GILMORE:  That's fine.  It makes | 12:17:51 |
| 3 | sense.  We'll get a good stopping point.  That's | 12:17:53 |
| 4 | fine. | 12:17:56 |
| 5 | MR. MINSON:  Would you mark this | 12:18:09 |
| 6 | Exhibit 24. | 12:18:10 |
| 7 | (WHEREUPON, a certain document was marked | 12:18:11 |
| 8 | Farah Deposition Exhibit No. 24, for | 12:18:11 |
| 9 | identification.) | 12:18:12 |
| 10 | BY MR. MINSON: | 12:18:12 |
| 11 | Q  And this is a November -- Exhibit | 12:18:12 |
| 12 | Number 24, it's LINDEN181.  This is a letter from | 12:18:15 |
| 13 | Kirkland & Ellis in response to his letter of | 12:18:20 |
| 14 | November 6, if you read the first paragraph.  It's | 12:18:23 |
| 15 | pretty long.  I'm not going to go through reading | 12:18:27 |
| 16 | all this but... | 12:18:31 |
| 17 | The operative part of this says: | 12:18:36 |
| 18 | While Mr. -- in Paragraph 2 of the first page | 12:18:40 |
| 19 | says:  While Mr. Donnelly often openly talked | 12:18:42 |
| 20 | about the many sour prior business relationships | 12:18:46 |
| 21 | throughout his career, my clients had hoped they | 12:18:51 |
| 22 | would be the exception to this pattern in | 12:18:53 |
| 23 | Mr. Donnelly's business life.  This is why my | 12:18:56 |
| 24 | clients were willing to offer far above the | 12:18:59 |
| 25 | $105,228 due to Mr. Donnelly and offered | 12:19:02 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                        139

| | | |
|---|---|---|
| 1 | $578,777.84 of additional value to which he was | 12:19:06 |
| 2 | not entitled.  Concurrent with the transmission of | 12:19:14 |
| 3 | this letter, we have wired $105,228, and my | 12:19:17 |
| 4 | clients now have fulfilled their obligation -- | 12:19:22 |
| 5 | their legal obligations to Mr. Donnelly in full. | 12:19:26 |
| 6 | And I guess my question with regard to | 12:19:29 |
| 7 | this -- so this was November 11th, well after the | 12:19:32 |
| 8 | 6th.  And I know the investment bank reports were | 12:19:48 |
| 9 | on the 5th and the 7th.  And you'll see them | 12:19:52 |
| 10 | later. | 12:19:56 |
| 11 | Did any of the reports display a valuation | 12:20:00 |
| 12 | of Mr. Donnelly's shares that would support | 12:20:06 |
| 13 | $105,000 not based on the -- the investment bank | 12:20:11 |
| 14 | reports -- not based on the multiples but just | 12:20:16 |
| 15 | based on the enterprise value and the EBITDA | 12:20:23 |
| 16 | applied to that limited number of shares? | 12:20:25 |
| 17 | I believe it's 800- -- I think it's 804 | 12:20:31 |
| 18 | shares.  If he was paid -- if he was only paid out | 12:20:34 |
| 19 | for 804 shares, would any of those investment bank | 12:20:37 |
| 20 | reports support that $105,000 value? | 12:20:46 |
| 21 | A  I'd have to look -- | 12:20:52 |
| 22 | MR. GILMORE:  Objection, form. | 12:20:53 |
| 23 | BY THE WITNESS: | 12:20:54 |
| 24 | A  I'd have to look at each of the reports | 12:20:54 |
| 25 | and then look at the value -- | 12:20:56 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                    140

| | | |
|---|---|---|
| 1 | BY MR. MINSON: | 12:20:57 |
| 2 | Q  Okay. | 12:20:57 |
| 3 | A  -- the value of the 105. | 12:20:58 |
| 4 | But I will tell you that those reports | 12:21:00 |
| 5 | actually support our valuation of 14 times, which | 12:21:03 |
| 6 | ultimately drives the enterprise value.  Those | 12:21:08 |
| 7 | reports have a couple issues -- three issues. | 12:21:10 |
| 8 | One is they're not fair market value | 12:21:14 |
| 9 | reports.  These are investment bank.  So they're | 12:21:17 |
| 10 | not providing a fair market value. | 12:21:21 |
| 11 | They're trying to win our business, and so | 12:21:22 |
| 12 | they're often inflating the value, to try to say: | 12:21:24 |
| 13 | Hey, look, if you hire me, we can get you a big | 12:21:27 |
| 14 | price, bigger than some other guy who you could | 12:21:31 |
| 15 | hire. | 12:21:34 |
| 16 | And then, number three, they're putting | 12:21:34 |
| 17 | those values on way in advance.  Because we | 12:21:37 |
| 18 | were -- had those meetings in November of 2019, | 12:21:43 |
| 19 | and they -- and knowing that we wouldn't run a | 12:21:45 |
| 20 | sale process till the middle or end of 2020.  And | 12:21:48 |
| 21 | so the valuation would be based on an EBITDA | 12:21:51 |
| 22 | that's way out in advance. | 12:21:56 |
| 23 | So it's still very hypothetical.  So | 12:21:58 |
| 24 | there's no way it would have -- drive anything | 12:22:01 |
| 25 | that we would look at in terms of a fair market | 12:22:04 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                        141

| | | |
|---|---|---|
| 1 | value. | 12:22:06 |
| 2 | Q  I just want to go really quick -- so your | 12:22:16 |
| 3 | testimony is just that those reports are not fair | 12:22:34 |
| 4 | market value? | 12:22:36 |
| 5 | MR. GILMORE:  Objection, form, lack of | 12:22:37 |
| 6 | foundation. | 12:22:41 |
| 7 | BY THE WITNESS: | 12:22:41 |
| 8 | A  Can you rephrase it? | 12:22:41 |
| 9 | MR. MINSON:  I mean, can you read his | 12:22:44 |
| 10 | response?  I just want to -- | 12:22:47 |
| 11 | BY MR. MINSON: | 12:22:47 |
| 12 | Q  I'm trying to clarify your response. | 12:22:48 |
| 13 | A  Okay. | 12:22:48 |
| 14 | MR. MINSON:  Can you read up to his | 12:22:48 |
| 15 | response to the last question? | 12:22:48 |
| 16 | BY MR. MINSON: | 12:22:48 |
| 17 | Q  So in response to the last question, you | 12:23:08 |
| 18 | say:  Those reports, a couple of things.  I mean, | 12:23:09 |
| 19 | they're not fair market value. | 12:23:11 |
| 20 | So I'm just clarifying that you don't | 12:23:13 |
| 21 | believe that the investor-created -- investment | 12:23:15 |
| 22 | bank-created reports, you don't believe they | 12:23:21 |
| 23 | represent fair market value? | 12:23:23 |
| 24 | A  So that was part of my response, was | 12:23:25 |
| 25 | that -- about the fair market value.  My comment | 12:23:27 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                        142

| | | |
|---|---|---|
| 1 | was really they are not providing a fair market | 12:23:31 |
| 2 | value.  If they get it right -- they could get it | 12:23:34 |
| 3 | right.  But that's not the purpose of those | 12:23:37 |
| 4 | reports, and that's not who they are.  They're not | 12:23:39 |
| 5 | providing a fairness opinion or a view on fair | 12:23:41 |
| 6 | market value. | 12:23:45 |
| 7 | Q  Okay.  And just a couple questions just | 12:23:55 |
| 8 | related to the website.  I have no documents for | 12:23:56 |
| 9 | the website.  I haven't seen any, so I don't have | 12:23:56 |
| 10 | any exhibits.  But do you know who managed the | 12:24:01 |
| 11 | ProPharma website? | 12:24:03 |
| 12 | A  I don't. | 12:24:08 |
| 13 | Q  And do you know, from June 30th of 2019 | 12:24:08 |
| 14 | until November 11th of 2019, was Pat still listed | 12:24:13 |
| 15 | as a board member on the ProPharma website? | 12:24:21 |
| 16 | A  I don't know. | 12:24:25 |
| 17 | Q  Okay.  And do you know if you or anyone | 12:24:25 |
| 18 | else from ProPharma made a request that he be | 12:24:29 |
| 19 | removed from the ProPharma website? | 12:24:34 |
| 20 | A  I don't recall if I did, and I don't know | 12:24:37 |
| 21 | if anybody else did.  I wouldn't really be | 12:24:39 |
| 22 | involved in those kinds of things. | 12:24:42 |
| 23 | Q  Okay. | 12:24:44 |
| 24 | MR. MINSON:  I guess we can take a break. | 12:24:47 |
| 25 | THE VIDEOGRAPHER:  We are off the record | 12:24:51 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                    143

| | | |
|---|---|---|
| 1 | at 12:24 p.m. with the end of Media 2. | 12:24:53 |
| 2 | (WHEREUPON, a recess was had.) | 13:16:58 |
| 3 | THE VIDEOGRAPHER:  We are back on the | 13:16:58 |
| 4 | record at 1:17 p.m. with the beginning of Media 3. | 13:17:08 |
| 5 | BY MR. MINSON: | 13:17:14 |
| 6 | Q  I just want to begin to talk about the | 13:17:21 |
| 7 | valuation that was performed for Pat's incentive | 13:17:25 |
| 8 | equity. | 13:17:30 |
| 9 | MR. MINSON:  25. | 13:17:54 |
| 10 | (WHEREUPON, a certain document was marked | 13:17:54 |
| 11 | Farah Deposition Exhibit No. 25, for | 13:17:54 |
| 12 | identification.) | 13:17:56 |
| 13 | BY MR. MINSON: | 13:17:56 |
| 14 | Q  Exhibit Number 25 is Appendix B to | 13:17:58 |
| 15 | Linden -- it was produced in response to our | 13:18:07 |
| 16 | discovery from Linden.  It's Linden 716.  It | 13:18:09 |
| 17 | includes Linden's valuation policy of Linden | 13:18:15 |
| 18 | Manager LLC. | 13:18:21 |
| 19 | Under Introduction, I, it shows -- under | 13:18:24 |
| 20 | the introductory paragraph, it shows the | 13:18:28 |
| 21 | accounting standard's clarification.  Topic 820's | 13:18:37 |
| 22 | recommended hierarchy evaluation metrics is | 13:18:41 |
| 23 | summarized below in descending order, and it shows | 13:18:45 |
| 24 | several methods of valuation. | 13:18:49 |
| 25 | Can you describe, with regard to the | 13:18:52 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                    144

| | | |
|---|---|---|
| 1 | valuation that you did for Mr. Donnelly's | 13:18:56 |
| 2 | incentive equity, which methods you used and how | 13:19:00 |
| 3 | you went about finding that value? | 13:19:04 |
| 4 | A  Sure.  So I'm not really familiar with | 13:19:07 |
| 5 | this document.  I've not seen this previously. | 13:19:12 |
| 6 | And so -- other than during -- just as part of | 13:19:16 |
| 7 | discovery. | 13:19:22 |
| 8 | So -- but the -- but based on what I know | 13:19:23 |
| 9 | of this, it seems consistent -- it is consistent | 13:19:27 |
| 10 | with how we've been valuing companies at Linden | 13:19:31 |
| 11 | since inception. | 13:19:38 |
| 12 | And, again, I think you're aware, but none | 13:19:41 |
| 13 | of our -- none of our valuations, which are | 13:19:43 |
| 14 | audited each year, have ever been challenged. | 13:19:46 |
| 15 | So we do several different | 13:19:50 |
| 16 | methodologies -- we utilize several different | 13:19:53 |
| 17 | methodologies for each company.  We look at where | 13:19:55 |
| 18 | the public comparable companies are trading. | 13:19:56 |
| 19 | So those are companies that are public, | 13:19:59 |
| 20 | that are traded publicly on the stock market.  And | 13:20:02 |
| 21 | we can see where they're trading at in terms of | 13:20:04 |
| 22 | revenue and EBITDA, as one potential indication of | 13:20:07 |
| 23 | value. | 13:20:12 |
| 24 | And we can also look at, and we do look | 13:20:14 |
| 25 | at, precedent transactions.  So that would be | 13:20:20 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                     145

| | | |
|---|---|---|
| 1 | transactions that occur in a comparable set of | 13:20:23 |
| 2 | companies -- within a comparable set of companies | 13:20:26 |
| 3 | by one company acquiring the other. | 13:20:29 |
| 4 | So it could be a public company buying a | 13:20:33 |
| 5 | private company; it could be a private equity firm | 13:20:36 |
| 6 | buying another founder-owned business, whatever it | 13:20:39 |
| 7 | might be.  But it's a -- that's called a precedent | 13:20:42 |
| 8 | transaction, when one company is acquired in | 13:20:47 |
| 9 | total. | 13:20:49 |
| 10 | And then -- and those are kind of -- | 13:20:50 |
| 11 | they're precedent because they happened.  There is | 13:20:52 |
| 12 | a fixed time when they happen.  The public | 13:20:55 |
| 13 | companies, they'll change day to day. | 13:20:57 |
| 14 | And then we look at -- we often look at | 13:20:59 |
| 15 | discounted cash flows as well, which basically | 13:21:01 |
| 16 | projects the company's cash flows out many years | 13:21:05 |
| 17 | and then applies a discount rate to bring them | 13:21:09 |
| 18 | back into present-value dollars. | 13:21:12 |
| 19 | That one is less relevant for the types of | 13:21:15 |
| 20 | companies and the type of work that we do.  So | 13:21:19 |
| 21 | it's usually weighted more towards the first two | 13:21:21 |
| 22 | methods, and in particular the precedent | 13:21:24 |
| 23 | transactions. | 13:21:26 |
| 24 | But, again, each -- those are the general | 13:21:27 |
| 25 | inputs.  And then each company is a different | 13:21:29 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                      146

| | | |
|---|---|---|
| 1 | situation as well, and we have to take those | 13:21:32 |
| 2 | factors in as well.  So it's not -- there is a bit | 13:21:33 |
| 3 | of subjectivity that goes into it.  It's not an | 13:21:39 |
| 4 | exact science. | 13:21:43 |
| 5 |     Q  Okay.  And for the precedent transactions, | 13:21:43 |
| 6 | there's a lot of -- well, I'm not going to say | 13:21:45 |
| 7 | "a lot."  That's a characterization.  But there's | 13:21:49 |
| 8 | some discretion in which transactions you choose | 13:21:52 |
| 9 | to be relevant to whatever company you're valuing, | 13:21:54 |
| 10 | correct? | 13:22:00 |
| 11 |     A  Correct, yeah.  There -- well, in all the | 13:22:00 |
| 12 | methods, there's discretion.  But, yes, there's -- | 13:22:03 |
| 13 | there is discretion in terms of how you select the | 13:22:07 |
| 14 | comparable universe. | 13:22:11 |
| 15 |     Q  And when ProPharma valued Mr. Donnelly's | 13:22:12 |
| 16 | shares, Advarra you determined to be an | 13:22:17 |
| 17 | inappropriate precedent? | 13:22:26 |
| 18 |     A  I'd want to go back and look at that | 13:22:29 |
| 19 | document.  I think they might have been included | 13:22:33 |
| 20 | in our internal -- I'm not a hundred percent sure | 13:22:36 |
| 21 | they weren't included in our internal list of | 13:22:38 |
| 22 | precedent transactions. | 13:22:41 |
| 23 |     There is no good -- there often is not a | 13:22:42 |
| 24 | perfect comp, whether it's a public company or a | 13:22:45 |
| 25 | precedent transaction, because each company is a | 13:22:48 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                                147

| | | |
|---|---|---|
| 1 | little bit different, whether it's the size, the | 13:22:52 |
| 2 | growth, the margins, that period of time of what's | 13:22:53 |
| 3 | going on in the market. | 13:22:57 |
| 4 | So there's never one -- again, generally | 13:22:58 |
| 5 | speaking, there's never a perfect comp.  So we try | 13:23:01 |
| 6 | to look at a broad range, and we might actually | 13:23:04 |
| 7 | include some things that aren't great comps in | 13:23:06 |
| 8 | there.  And then we'll include some things that | 13:23:09 |
| 9 | are much better comps. | 13:23:11 |
| 10 | So we include that breadth because we're | 13:23:13 |
| 11 | trying to mitigate that dynamic -- we're trying to | 13:23:15 |
| 12 | mute that dynamic where there's not -- there's not | 13:23:18 |
| 13 | a great comp out there. | 13:23:20 |
| 14 | Q  Okay. | 13:23:24 |
| 15 | MR. MINSON:  Can you mark this as | 13:23:43 |
| 16 | Exhibit 26. | 13:23:58 |
| 17 | (WHEREUPON, a certain document was marked | 13:23:58 |
| 18 | Farah Deposition Exhibit No. 26, for | 13:23:58 |
| 19 | identification.) | 13:23:59 |
| 20 | BY MR. MINSON: | 13:23:59 |
| 21 | Q  This is an email from you directly to | 13:23:59 |
| 22 | pat.donnelly@advarra.com. | 13:24:01 |
| 23 | And it says:  Congrats on closing of -- I | 13:24:05 |
| 24 | guess it's Forte.  I don't know how to pronounce | 13:24:13 |
| 25 | that. | 13:24:17 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                    148

| | | |
|---|---|---|
| 1 | A  That's right. | 13:24:18 |
| 2 | Q  Here's the backup data for PPG and ERG. | 13:24:18 |
| 3 | As you know, ERG is down from when we did the | 13:24:21 |
| 4 | deal, but we are still holding at cost, so | 13:24:27 |
| 5 | therefore no value of incentive equity. | 13:24:30 |
| 6 | It says:  This data is taken straight from | 13:24:32 |
| 7 | our quarterly valuation reports.  Happy to | 13:24:34 |
| 8 | discuss. | 13:24:38 |
| 9 | And if you go to LINDEN0000062, it shows | 13:24:39 |
| 10 | ProPharma, and it shows a 2.5-time multiple on | 13:24:51 |
| 11 | vested capital, at the bottom.  And then it shows | 13:24:59 |
| 12 | 33.9 last 12 months EBITDA and an EBITDA multiple | 13:25:04 |
| 13 | of 13.9. | 13:25:12 |
| 14 | And this is the valuation that Linden, at | 13:25:16 |
| 15 | the time of this email, believed to be accurate, | 13:25:22 |
| 16 | correct? | 13:25:24 |
| 17 | A  Yeah.  This is the -- what we calculated | 13:25:29 |
| 18 | for -- as of June, internally, as the fair market | 13:25:31 |
| 19 | valuation.  So this is, again, same valuation, | 13:25:35 |
| 20 | same methodology that is done for internal that -- | 13:25:37 |
| 21 | reporting that is then shared with our auditors | 13:25:41 |
| 22 | and LPs at the end of the year.  So this is | 13:25:43 |
| 23 | consistent with that. | 13:25:47 |
| 24 | Q  And I asked you in my previous question | 13:25:47 |
| 25 | about the precedents or data that you use, and you | 13:25:51 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                    149

| 1 | said you'd need to actually see those in order to | 13:25:53 |
| 2 | know which precedents you use. | 13:25:56 |
| 3 | A  Mm-hm. | 13:25:56 |
| 4 | Q  And what's the average pool size of | 13:25:59 |
| 5 | precedents like that that you would use? | 13:26:02 |
| 6 | A  It really varies from company to company. | 13:26:04 |
| 7 | In some sectors and industries, there's not a wide | 13:26:06 |
| 8 | range of transactions.  And so we try to get a | 13:26:12 |
| 9 | bigger list, if that's relevant, and if they're | 13:26:15 |
| 10 | not. | 13:26:19 |
| 11 | And so, you know, we don't want to rely on | 13:26:22 |
| 12 | one or two because that might not really be | 13:26:25 |
| 13 | indicative.  Because, again, nothing is a great | 13:26:27 |
| 14 | comp. | 13:26:30 |
| 15 | So we try to broaden the list to dilute | 13:26:30 |
| 16 | those differences, and that's why we usually look | 13:26:35 |
| 17 | at averages. | 13:26:39 |
| 18 | So, again, that's a long way of saying | 13:26:39 |
| 19 | that each company is going to have a different | 13:26:42 |
| 20 | amount and there's no defined number. | 13:26:45 |
| 21 | Q  And when this valuation was done, was | 13:26:48 |
| 22 | ProPharma prospectively in the process of | 13:26:57 |
| 23 | considering selling the company within the next | 13:27:01 |
| 24 | year? | 13:27:03 |
| 25 | A  No. | 13:27:04 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                     150

| | | |
|---|---|---|
| 1 | Q  So in -- I guess, what's the date of the | 13:27:04 |
| 2 | email? | 13:27:09 |
| 3 | So in November -- I'm sorry.  In September | 13:27:12 |
| 4 | of 2019, ProPharma was not considering selling? | 13:27:17 |
| 5 | A  So be more clear on what you mean by | 13:27:21 |
| 6 | "considering selling." | 13:27:25 |
| 7 | Q  You were -- there were discussions -- were | 13:27:28 |
| 8 | there discussions on possibly marketing the | 13:27:30 |
| 9 | company for sale by September of 2019, within the | 13:27:32 |
| 10 | company? | 13:27:37 |
| 11 | A  So I don't know for sure when this one was | 13:27:38 |
| 12 | done, if that had happened.  Every private equity | 13:27:42 |
| 13 | is kind of always for sale.  We're always thinking | 13:27:46 |
| 14 | about it, particularly -- at least kind of after | 13:27:49 |
| 15 | the first two years of ownership. | 13:27:51 |
| 16 | Because we tend to look at things as | 13:27:53 |
| 17 | holding them for three to five years, and so after | 13:27:56 |
| 18 | the first two years, you start thinking about, | 13:27:58 |
| 19 | well, what would a sale look like?  What could it | 13:28:01 |
| 20 | look like? | 13:28:04 |
| 21 | So those discussions are always kind of -- | 13:28:04 |
| 22 | those kinds of analyses and that thought process | 13:28:07 |
| 23 | and that internal strategy planning is generally | 13:28:09 |
| 24 | happening after two years.  So that was probably | 13:28:12 |
| 25 | ongoing and happening. | 13:28:16 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                    151

```
1          The big decision to sell doesn't really      13:28:18
2    happen for quite some time.  And so it starts       13:28:21
3    with, well, let's get some investment bankers in    13:28:28
4    here and see what they think about the timing, the  13:28:31
5    market, who the buyers might be, is this the right  13:28:34
6    time.  What are their views on this -- on this      13:28:37
7    opportunity?  So we take that into account.  And    13:28:39
8    then we take into account how the company is        13:28:41
9    doing, what's the outlook.                          13:28:44
10         So that decision to sell doesn't really       13:28:45
11   happen until -- quite frankly, until the very end   13:28:49
12   when you have a price that you're satisfied with,   13:28:53
13   you're happy with.                                  13:28:59
14      Q  So in November of 2019, when ProPharma        13:29:00
15   engaged those investment banks, there was still     13:29:02
16   the potential that you would hold at that point     13:29:06
17   depending on what the reports came back as?         13:29:09
18      A  Well, not just even depending on what the     13:29:12
19   reports came back at, but it's always exploratory.  13:29:16
20   It's one data point.  We're collecting several      13:29:18
21   data points, and that's one data point, is what do  13:29:21
22   the investment bankers think.                       13:29:25
23         And then there's other data points that go    13:29:27
24   into it.  What's the outlook for the company?       13:29:29
25   What are the risks associated with holding it       13:29:31
```

Transcript of Michael Farah, Designated Representative
September 14, 2022                                    152

| | | |
|---|---|---|
| 1 | longer?  What are the potential upside opportunity | 13:29:34 |
| 2 | that we could achieve if we held it longer?  What | 13:29:36 |
| 3 | does the fund look like?  We have to take into | 13:29:39 |
| 4 | account the overall fund. | 13:29:41 |
| 5 | So there's a lot of -- I'm giving you all | 13:29:41 |
| 6 | that background because there's a lot of inputs | 13:29:42 |
| 7 | that go into the decision. | 13:29:45 |
| 8 | Q  The overall fund at Linden is -- | 13:29:45 |
| 9 | A  Yeah. | 13:29:48 |
| 10 | Q  -- what we're talking about? | 13:29:48 |
| 11 | A  Mm-hm. | 13:29:49 |
| 12 | Q  Okay.  Now, this document that was | 13:29:51 |
| 13 | attached to this September 11, 2019, email, isn't | 13:29:54 |
| 14 | it true that this -- that the final calculation | 13:30:05 |
| 15 | sheet that was provided for Mr. Donnelly went | 13:30:07 |
| 16 | through a number of edits before coming up with | 13:30:11 |
| 17 | this form that he eventually received? | 13:30:17 |
| 18 | A  I don't recall.  Could you -- | 13:30:21 |
| 19 | Q  I will -- | 13:30:22 |
| 20 | A  -- share those?  Yeah. | 13:30:23 |
| 21 | (WHEREUPON, a certain document was marked | 13:30:59 |
| 22 | Farah Deposition Exhibit No. 27, for | 13:30:59 |
| 23 | identification.) | 13:30:59 |
| 24 | BY MR. MINSON: | 13:30:59 |
| 25 | Q  This is Exhibit Number 27, Bates-labeled | 13:30:59 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                      153

| | | |
|---|---|---|
| 1 | LINDEN0000235.  And it's an email chain that | 13:31:04 |
| 2 | begins on LINDEN236, with you initiating this | 13:31:10 |
| 3 | chain to both Piyush, Prab, and Josh Reilly, | 13:31:19 |
| 4 | CC'ing Doug VanDegrift. | 13:31:27 |
| 5 | And it says, you know:  Pat's asking for | 13:31:34 |
| 6 | support -- supporting valuation data for incentive | 13:31:37 |
| 7 | equity buyout.  Please coordinate with Doug on | 13:31:44 |
| 8 | what we can share, and send me in one email that I | 13:31:47 |
| 9 | can forward to Pat. | 13:31:50 |
| 10 | That's on September 9th. | 13:31:55 |
| 11 | And then, you know:  Doug says he can see | 13:31:57 |
| 12 | our quarterly financial statements and letters on | 13:32:03 |
| 13 | Intralinks via his personal investment in the | 13:32:07 |
| 14 | fund.  He can see where we've marketed that.  Is | 13:32:12 |
| 15 | that good enough? | 13:32:15 |
| 16 | And I just want to stick on that email for | 13:32:19 |
| 17 | a second.  So when he says he can see all this, is | 13:32:21 |
| 18 | this based on his access that's continuing with | 13:32:26 |
| 19 | Linden?  Or is it his access with his board | 13:32:28 |
| 20 | position of ProPharma where he would be able to | 13:32:33 |
| 21 | see this data on that date? | 13:32:36 |
| 22 | A  No, definitely not ProPharma.  I think | 13:32:37 |
| 23 | this is because he is an investor in Fund 4, I | 13:32:39 |
| 24 | think -- I'd have to confirm with Doug.  But | 13:32:43 |
| 25 | because he is an investor in the fund, Fund 4, not | 13:32:47 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                    154

| | | |
|---|---|---|
| 1 | just the company but the aggregate, the whole | 13:32:51 |
| 2 | fund -- | 13:32:54 |
| 3 |    Q  Okay. | 13:32:56 |
| 4 |    A  -- he gets access to -- remember how I | 13:32:56 |
| 5 | said we share those financials and the marks with | 13:32:58 |
| 6 | our LPs? | 13:33:00 |
| 7 |    Q  Mm-hm. | 13:33:00 |
| 8 |    A  In this case, he's like an LP because he's | 13:33:01 |
| 9 | an investor in the fund, and he would have access | 13:33:06 |
| 10 | to that information. | 13:33:08 |
| 11 |    Q  And it says Intralinks.  Is that -- is | 13:33:09 |
| 12 | that, like, some kind of internal server?  Or what | 13:33:13 |
| 13 | is that? | 13:33:15 |
| 14 |    A  Intralinks is a third party -- I forgot | 13:33:15 |
| 15 | the word -- like a data room. | 13:33:22 |
| 16 |    Q  A data -- | 13:33:25 |
| 17 |    A  A data room, yeah, like where you put | 13:33:26 |
| 18 | documents and, like, a third party hosted.  So | 13:33:28 |
| 19 | it's like a -- you know, an online drive that | 13:33:31 |
| 20 | people can access. | 13:33:35 |
| 21 |    Q  So his access would not be contingent on | 13:33:36 |
| 22 | his board membership at ProPharma? | 13:33:40 |
| 23 |    A  No.  No.  ProPharma was from Fund 3. | 13:33:45 |
| 24 |    Q  And it also -- would it be related to his | 13:33:49 |
| 25 | status as an operating partner with Linden? | 13:33:53 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                    155

| | | |
|---|---|---|
| 1 | A  No.  No, he wasn't an operating partner at | 13:33:56 |
| 2 | this time.  So this -- and it wouldn't be related | 13:33:59 |
| 3 | to that anyways.  It's not that -- it's not an | 13:34:01 |
| 4 | operating -- this is, as an investor in the fund, | 13:34:03 |
| 5 | you get access to it. | 13:34:06 |
| 6 | Q  So are there people with access that are | 13:34:07 |
| 7 | completely unrelated to -- who are just cash | 13:34:10 |
| 8 | investors and don't have any management positions? | 13:34:15 |
| 9 | A  Yes.  I've never seen who -- I don't know | 13:34:19 |
| 10 | who has access, but I assume it's the -- our | 13:34:22 |
| 11 | limited partners, who we raise money from, and | 13:34:25 |
| 12 | they're the -- and then other investors.  And | 13:34:27 |
| 13 | those investors may not be executives at all. | 13:34:30 |
| 14 | Q  Okay. | 13:34:33 |
| 15 | A  But I've never seen actually who -- I | 13:34:33 |
| 16 | don't have firsthand knowledge of who has access. | 13:34:36 |
| 17 | Q  And if you forward to LINDEN235.  It | 13:34:41 |
| 18 | says -- it just states -- for Josh Reilly's email, | 13:34:54 |
| 19 | it says:  This is what I would share for PPG.  It | 13:34:57 |
| 20 | just states that we're using the June 30th LTM | 13:35:00 |
| 21 | mark but doesn't get into the mark calculation. | 13:35:03 |
| 22 | We can include those stats, Doug, if you're | 13:35:05 |
| 23 | comfortable with it. | 13:35:08 |
| 24 | And you write:  This doesn't show how he | 13:35:10 |
| 25 | gets to the 2.5 mark. | 13:35:12 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                          156

| | | |
|---|---|---|
| 1 | And then:  If Doug's okay -- and then it | 13:35:19 |
| 2 | says -- from Josh Reilly, it says:  On | 13:35:24 |
| 3 | September 9th, at 10:51 a.m., it says:  If | 13:35:27 |
| 4 | Dough -- but I'm assuming that means Doug -- is | 13:35:31 |
| 5 | okay with it, we can add the EBITDA figure and | 13:35:35 |
| 6 | abbreviated cap table that shows a 2.5X. | 13:35:38 |
| 7 | And you write:  I think we should.  That's | 13:35:41 |
| 8 | what I'd ask if I was him. | 13:35:44 |
| 9 | And my question is I don't understand what | 13:35:45 |
| 10 | "that's" -- what that is.  So what would you ask | 13:35:51 |
| 11 | if you were him? | 13:35:55 |
| 12 | A  So this -- I think I'm following | 13:35:55 |
| 13 | everything.  This page -- what was initially | 13:36:04 |
| 14 | provided to him? | 13:36:06 |
| 15 | Q  It was -- | 13:36:07 |
| 16 | A  This was internally.  I think we just | 13:36:08 |
| 17 | provided -- yeah, do you have what we originally | 13:36:10 |
| 18 | provided to him? | 13:36:12 |
| 19 | Q  Yeah.  This -- the one that you provided | 13:36:13 |
| 20 | in the email is Exhibit 26. | 13:36:15 |
| 21 | A  This was? | 13:36:18 |
| 22 | Q  And it's 00062. | 13:36:19 |
| 23 | A  Oh, yeah.  Okay.  Yeah, so this was | 13:36:22 |
| 24 | provided. | 13:36:24 |
| 25 | So this is a lot of detail -- | 13:36:24 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                157

```
 1       Q  Okay.                                    13:36:26

 2       A  -- to provide to somebody.               13:36:26

 3          So just trying to do the right thing with 13:36:28

 4   Pat and say:  Okay, let's not be -- we don't got 13:36:33

 5   to be a total jerk about this and just, you know, 13:36:37

 6   completely shut off.  Let me see, like, what more 13:36:40

 7   can we provide him?  What will help him get over  13:36:43

 8   this whatever he might be hung up on or help him  13:36:46

 9   get comfortable?  Like, Pat's being Pat.  Let me  13:36:50

10   see what we can do.                               13:36:53

11          We normally don't provide this stuff      13:36:54

12   outside, but let's see what we can -- let's see   13:36:57

13   what we can do that we're legally allowed to do   13:37:01

14   and that our compliance office or CFO will allow  13:37:04

15   us to do.                                         13:37:07

16          So that's where I'm just saying, like,    13:37:10

17   what more can we provide him?  Can we give him -- 13:37:11

18   you know, that's why I'm a little confused,       13:37:14

19   because we did give him the EBITDA here.  And     13:37:16

20   that's why -- I wonder if this was -- are we sure 13:37:19

21   this was what was shared with him?                13:37:27

22       Q  I mean, in discovery it was attached to   13:37:29

23   the email.  This is -- the email was provided as  13:37:31

24   61, and then this is -- it's LINDEN62.  So I'm     13:37:33

25   assuming that's what was attached.                13:37:38
```

Transcript of Michael Farah, Designated Representative
September 14, 2022                                    158

| | | |
|---|---|---|
| 1 | A  Well, this -- I mean, yeah, this shows the | 13:37:44 |
| 2 | breakdown.  This looks like more responsive to | 13:37:46 |
| 3 | what we're trying to do here.  But -- but I trust | 13:37:48 |
| 4 | that you guys pulled the right emails. | 13:37:53 |
| 5 | But that's what we're saying, let's | 13:37:55 |
| 6 | provide him with the EBITDA, what EBITDA are we | 13:37:57 |
| 7 | using. | 13:37:59 |
| 8 | By the way, he -- as a board member up | 13:38:00 |
| 9 | until June, he had all this information.  So he | 13:38:03 |
| 10 | had the EBITDA.  So -- so, yeah, that's all.  Just | 13:38:04 |
| 11 | trying to give him more data than we normally | 13:38:08 |
| 12 | would share. | 13:38:11 |
| 13 | Q  So "that" refers to -- which part of this | 13:38:11 |
| 14 | calculation, that's what you would ask, when you | 13:38:15 |
| 15 | say:  That's what I would ask if I was him? | 13:38:19 |
| 16 | A  Yeah, the EBITDA and the cap table. | 13:38:21 |
| 17 | Q  Okay. | 13:38:23 |
| 18 | A  "Cap table" being debt equity. | 13:38:24 |
| 19 | Q  Oh, I see. | 13:38:27 |
| 20 | A  That stuff, not the -- sorry, sometimes | 13:38:28 |
| 21 | capitalization table can mean -- it's really | 13:38:31 |
| 22 | everything.  When you say capitalization table, | 13:38:34 |
| 23 | it's the debt and equity and it's all the | 13:38:37 |
| 24 | components. | 13:38:42 |
| 25 | Sometimes we just show the cap table as | 13:38:42 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                          159

| | | |
|---|---|---|
| 1 | the shareholders, the equity shareholders.  But | 13:38:45 |
| 2 | really, if you -- the correct definition of | 13:38:48 |
| 3 | capitalization table, I believe, is -- the | 13:38:50 |
| 4 | comprehensive definition is the debt and equity | 13:38:52 |
| 5 | pieces together. | 13:38:55 |
| 6 | So in this case, we were just referring to | 13:38:56 |
| 7 | the debt -- the debt and the preferred and how do | 13:38:58 |
| 8 | you get down to the common, kind of thing.  Not | 13:39:01 |
| 9 | the detail of every shareholder. | 13:39:02 |
| 10 | Q  Okay.  And the last portion of this | 13:39:04 |
| 11 | exhibit email from Doug VanDegrift to you, it | 13:39:16 |
| 12 | says:  By EBITDA figure, in quotation marks, that | 13:39:22 |
| 13 | EBITDA and the associated multiple to come up with | 13:39:27 |
| 14 | our total enterprise value and then running that | 13:39:30 |
| 15 | through the cap table, is there any concern that | 13:39:33 |
| 16 | he sees the PPG multiple and claims that it should | 13:39:36 |
| 17 | be a lot higher given the Advarra multiple? | 13:39:41 |
| 18 | Advarra -- why wouldn't it be on par with | 13:39:45 |
| 19 | the Advarra multiple? | 13:39:56 |
| 20 | A  Are you asking why our internal valuation | 13:40:01 |
| 21 | of ProPharma wouldn't be the same as the Advarra | 13:40:04 |
| 22 | exit multiple? | 13:40:07 |
| 23 | Q  Yeah.  I'm just trying to understand why | 13:40:08 |
| 24 | he thinks that that's an issue, that Pat thinks it | 13:40:10 |
| 25 | will be higher given the Advarra multiple. | 13:40:14 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                    160

| | | |
|---|---|---|
| 1 | A   Well, Pat has a history of being very | 13:40:16 |
| 2 | self-serving and kind of cherry-picks the things | 13:40:19 |
| 3 | that are best suited for him. | 13:40:24 |
| 4 | So, you know, he just sold Advarra for | 13:40:28 |
| 5 | 18 times, or whatever it is.  And it's, | 13:40:31 |
| 6 | quote/unquote, a pharma services company, albeit a | 13:40:37 |
| 7 | very, very, very different pharma services | 13:40:45 |
| 8 | company, for a number of reasons that I'll | 13:40:46 |
| 9 | elaborate on. | 13:40:48 |
| 10 | But Pat, being difficult, would just | 13:40:48 |
| 11 | cherry-pick the one deal and say:  Well, we just | 13:40:52 |
| 12 | sold this business at 18 times.  Why is ProPharma | 13:40:52 |
| 13 | being valued at 14 times?  Even though that's not | 13:40:55 |
| 14 | a correct or a sound assumption or judgment or | 13:40:58 |
| 15 | call to make at all. | 13:41:03 |
| 16 | So why wouldn't they be the same -- but | 13:41:04 |
| 17 | Pat being Pat would still do it.  He'd still make | 13:41:07 |
| 18 | it -- you know, he'd pick some other number, | 13:41:11 |
| 19 | another company, I'm sure, if he could as well. | 13:41:14 |
| 20 | So Advarra is a -- they have a very big | 13:41:17 |
| 21 | tech component to their business.  So ProPharma is | 13:41:20 |
| 22 | a people-consulting business, which means your | 13:41:23 |
| 23 | revenue and your profits can get up and walk out | 13:41:25 |
| 24 | the door.  There are no long-term contracts that | 13:41:28 |
| 25 | guarantee revenue and profit coming in for years. | 13:41:31 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                        161

| | | |
|---|---|---|
| 1 | And everything is tied to the people.  It's | 13:41:37 |
| 2 | project-based. | 13:41:40 |
| 3 | And so it's a slower -- ProPharma is a | 13:41:43 |
| 4 | slower-growth business.  It's a lower-margin | 13:41:49 |
| 5 | business.  And it's a lower margin, and it | 13:41:54 |
| 6 | operates in a market that is much more competitive | 13:41:56 |
| 7 | and price sensitive. | 13:42:02 |
| 8 | Just naming a few.  There are other | 13:42:03 |
| 9 | reasons why there will be different valuation | 13:42:04 |
| 10 | multiples for these two. | 13:42:08 |
| 11 | Advarra is tech-enabled, so it generates | 13:42:09 |
| 12 | much higher margins, which means much higher cash | 13:42:13 |
| 13 | flow.  It operates in a market that is less | 13:42:17 |
| 14 | competitive.  And so they are a leader in their | 13:42:19 |
| 15 | market, and so -- and they're much larger and | 13:42:23 |
| 16 | they're more diversified. | 13:42:26 |
| 17 | And so they're growing faster and | 13:42:28 |
| 18 | generating more cash, which from a private equity | 13:42:30 |
| 19 | perspective means you can pay more for that | 13:42:33 |
| 20 | business because you're going to get a better | 13:42:37 |
| 21 | return because of the growth and the cash flow | 13:42:39 |
| 22 | than something like ProPharma. | 13:42:45 |
| 23 | So that's why there would be differences | 13:42:47 |
| 24 | in multiples. | 13:42:50 |
| 25 | Q  So I was curious if you understood why he | 13:42:53 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                    162

| | | |
|---|---|---|
| 1 | put quotation marks around the word "EBITDA | 13:43:11 |
| 2 | figure"? | 13:43:16 |
| 3 |     A  I have no idea. | 13:43:16 |
| 4 |     Q  Okay. | 13:43:26 |
| 5 |     A  It looks like he's just quoting me, like | 13:43:26 |
| 6 | literally that's what I said, I think. | 13:43:30 |
| 7 |     Q  Okay. | 13:43:30 |
| 8 |     A  Or Josh said.  I don't know who said it | 13:43:32 |
| 9 | first.  Josh said it first. | 13:43:34 |
| 10 |        MR. MINSON:  You can mark this Exhibit 28. | 13:44:03 |
| 11 |        (WHEREUPON, a certain document was marked | 13:44:03 |
| 12 | Farah Deposition Exhibit No. 28, for | 13:44:03 |
| 13 | identification.) | 13:44:05 |
| 14 | BY MR. MINSON: | 13:44:05 |
| 15 |     Q  It's Exhibit Number 28.  It appears to be | 13:44:05 |
| 16 | a continuation of the discussion on providing Pat | 13:44:07 |
| 17 | with an incentive equity analysis on -- so on | 13:44:12 |
| 18 | LINDEN245, September 9th, that's the email prior | 13:44:30 |
| 19 | where you asked to do -- you know, asked people to | 13:44:37 |
| 20 | put together supporting valuation data. | 13:44:42 |
| 21 |      And then following up on that, if you go | 13:44:46 |
| 22 | to LINDEN244, Piyush copies you on an email and | 13:44:52 |
| 23 | said -- says:  ERG financial performance is below | 13:45:03 |
| 24 | entry and we are holding at cost, so I don't think | 13:45:09 |
| 25 | anything more need to be shared beyond the normal | 13:45:12 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                    163

| | | |
|---|---|---|
| 1 | valuation report. | 13:45:17 |
| 2 | And then from Josh Reilly, at 10:27 a.m., | 13:45:20 |
| 3 | on Monday, September 9th, he writes to Piyush, | 13:45:26 |
| 4 | copying you, Doug VanDegrift, and Prab Chawla. He | 13:45:32 |
| 5 | says: This is what I would share for PPG. | 13:45:36 |
| 6 | You know, it just states: We're using | 13:45:38 |
| 7 | 30 -- last 12 months mark but doesn't get into | 13:45:42 |
| 8 | mark calculation. We can include those stats, | 13:45:46 |
| 9 | Doug, if you're comfortable with it. | 13:45:50 |
| 10 | And you, in response to Josh Reilly, at | 13:45:51 |
| 11 | 4:27 p.m., write: Reilly and Prab, please work | 13:46:00 |
| 12 | together to develop conforming files for ERG and | 13:46:06 |
| 13 | PPG. Need to be the same format. And, Reilly, | 13:46:10 |
| 14 | for you, PPG format, first thing he will ask is | 13:46:15 |
| 15 | how we got to the 2.5 valuation. For this, I | 13:46:18 |
| 16 | don't think we need to show precedents, but I do | 13:46:22 |
| 17 | think we need to show EBITDA, multiple | 13:46:25 |
| 18 | less debt -- less net debt and preferred in | 13:46:29 |
| 19 | summary form. | 13:46:33 |
| 20 | And then so my question was about the | 13:46:34 |
| 21 | precedents. Why wouldn't you want to show | 13:46:36 |
| 22 | precedents? | 13:46:41 |
| 23 | A Because if we showed the precedents -- and | 13:46:42 |
| 24 | we could show them. Typically, we don't share | 13:46:47 |
| 25 | that information out there. But you can imagine | 13:46:49 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                              164

| | | |
|---|---|---|
| 1 | with Pat, if we share with him a group of | 13:46:51 |
| 2 | precedents, he would just argue all the low ones | 13:46:53 |
| 3 | shouldn't be in there and all the high ones should | 13:46:56 |
| 4 | be in there.  That's Pat. | 13:46:59 |
| 5 | So it's not saying we change our -- in no | 13:47:05 |
| 6 | way did we change how we valued ProPharma for the | 13:47:08 |
| 7 | value of his incentive equity versus how we did it | 13:47:12 |
| 8 | internally.  That was the same. | 13:47:16 |
| 9 | This is purely saying if we share all the | 13:47:17 |
| 10 | details with him, he's going to be unreasonable | 13:47:20 |
| 11 | about the universe of comps. | 13:47:26 |
| 12 | Q  So you were anticipating him arguing about | 13:47:30 |
| 13 | the precedents, and that's why you didn't want to | 13:47:34 |
| 14 | share them? | 13:47:36 |
| 15 | A  I was anticipating him behaving like he | 13:47:40 |
| 16 | did -- like he communicated to me in terms of | 13:47:42 |
| 17 | Advarra being the right comp.  And I knew that | 13:47:48 |
| 18 | that wasn't so.  Yes, I was anticipating him | 13:47:51 |
| 19 | looking at the universe and cherry-picking the | 13:47:55 |
| 20 | best ones for himself. | 13:47:58 |
| 21 | Q  And at -- on September 10th, at 6:38 and | 13:48:00 |
| 22 | 39 seconds p.m., Prab Chawla writes to Doug | 13:48:11 |
| 23 | VanDegrift, copies you.  And it says:  Doug, | 13:48:16 |
| 24 | attached is what we intend to share with Pat | 13:48:16 |
| 25 | Donnelly.  Can you affirm -- can you confirm | 13:48:20 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                    165

| | | |
|---|---|---|
| 1 | you're okay? | 13:48:25 |
| 2 | And if you look at LINDEN246 and | 13:48:25 |
| 3 | LINDEN247, you'll see the tables that we've | 13:48:33 |
| 4 | already been over.  It looks like, if you compare | 13:48:40 |
| 5 | them, they're pretty much the same as -- | 13:48:42 |
| 6 | A  That's why -- | 13:48:44 |
| 7 | Q  -- the previous exhibit? | 13:48:45 |
| 8 | A  It might be worth just double-checking, | 13:48:46 |
| 9 | because that's why I'm not totally sure this is | 13:48:48 |
| 10 | the right attachment. | 13:48:51 |
| 11 | Q  Okay.  Let's -- | 13:48:53 |
| 12 | A  Because this looks to be this -- this | 13:48:53 |
| 13 | looks to be the same for ProPharma.  So I'm not | 13:48:56 |
| 14 | sure what we changed.  But in any event... | 13:48:58 |
| 15 | Q  Anyway, it looks to be the same for | 13:49:05 |
| 16 | ProPharma. | 13:49:07 |
| 17 | And there's one for ERG.  And the EBITDA | 13:49:07 |
| 18 | multiple for ERG at -- on June 30th, 2019, is 16X | 13:49:10 |
| 19 | for the EBITDA multiple. | 13:49:19 |
| 20 | And your follow-up email, in response to | 13:49:26 |
| 21 | Prab's email where those tables are attached, is | 13:49:30 |
| 22 | found at LINDEN248.  Because it looks like he sent | 13:49:33 |
| 23 | it to you separately. | 13:49:41 |
| 24 | A  Right. | 13:49:42 |
| 25 | Q  And you write:  I don't like how this | 13:49:43 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                        166

| | | |
|---|---|---|
| 1 | shows ERG at a 16X multiple and PPG at a 14X.  I | 13:49:48 |
| 2 | understand why but need to show another way. | 13:49:53 |
| 3 | First keep two files -- keep as two separate | 13:49:56 |
| 4 | files.  For ERG we can do math at cost without | 13:50:00 |
| 5 | showing the multiple. | 13:50:03 |
| 6 | And my question is twofold.  I'll go with | 13:50:04 |
| 7 | the first one first.  Why didn't you want to show | 13:50:08 |
| 8 | him the ERG multiple? | 13:50:14 |
| 9 | A  Because it's higher -- it's a different | 13:50:16 |
| 10 | company.  Trades differently.  Different -- | 13:50:18 |
| 11 | different set of precedent transactions.  And so | 13:50:21 |
| 12 | it's going to have a different multiple. | 13:50:25 |
| 13 | And just the fact that they're | 13:50:27 |
| 14 | different -- it's different from ProPharma and | 13:50:28 |
| 15 | it's higher means Pat will anchor in on that | 13:50:32 |
| 16 | higher multiple, for no good reason other than | 13:50:37 |
| 17 | it's higher.  So that was why. | 13:50:39 |
| 18 | Q  And ERG was underperforming from what you | 13:50:42 |
| 19 | wanted it to do when you acquired it as ProPharma? | 13:50:46 |
| 20 | A  At that point it had been underperforming, | 13:50:50 |
| 21 | yeah. | 13:50:53 |
| 22 | Q  Okay.  And so the other one, it says:  I | 13:50:53 |
| 23 | understand -- the other part of my question is | 13:50:58 |
| 24 | basically -- it says:  I understand why. | 13:51:01 |
| 25 | Can you explain why the multiple for ERG | 13:51:04 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                    167

| | | |
|---|---|---|
| 1 | is higher than the multiple for ProPharma? | 13:51:07 |
| 2 | A  Yeah.  Different company, different | 13:51:10 |
| 3 | market, different market dynamics, different cash | 13:51:12 |
| 4 | flow profile.  And so different growth | 13:51:15 |
| 5 | opportunities. | 13:51:19 |
| 6 | And they also had a very, very, very large | 13:51:20 |
| 7 | backlog and pipeline.  Because that's a backlog | 13:51:24 |
| 8 | and pipeline business.  They had -- it was | 13:51:29 |
| 9 | underperforming because they had some really, | 13:51:31 |
| 10 | really -- or a really large cancellation, which is | 13:51:33 |
| 11 | kind of extraordinary -- cancellation of one of | 13:51:36 |
| 12 | their clinical trials.  So that's extraordinary. | 13:51:39 |
| 13 | Doesn't usually happen.  It's almost like a | 13:51:42 |
| 14 | pro forma adjustment to EBITDA would be taken. | 13:51:44 |
| 15 | So they get -- without getting too far | 13:51:46 |
| 16 | down a rabbit hole with ERG, that's how one might | 13:51:49 |
| 17 | value ERG, is you actually take the canceled | 13:51:53 |
| 18 | business, you add it back as an EBITDA add-back. | 13:51:56 |
| 19 | And so then -- in this case, we didn't do | 13:52:00 |
| 20 | that, and so we looked at the universe and said: | 13:52:01 |
| 21 | What does the comp universe support, and how do we | 13:52:03 |
| 22 | get there? | 13:52:06 |
| 23 | And that's -- and that's how you -- and | 13:52:06 |
| 24 | based on the growth in the business that was | 13:52:09 |
| 25 | coming at ERG and the backlog -- which ERG has a | 13:52:11 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                        168

| | | |
|---|---|---|
| 1 | backlog; ProPharma does not have a meaningful | 13:52:15 |
| 2 | backlog.  So it's just -- I'm sorry if a backlog's | 13:52:19 |
| 3 | not clear, but a backlog is one business that | 13:52:23 |
| 4 | you're going to execute on over the next -- could | 13:52:27 |
| 5 | be 6 to 24 months. | 13:52:31 |
| 6 | ProPharma's backlog goes out, like, | 13:52:32 |
| 7 | 30 days, something like that.  30 or 40 -- sorry, | 13:52:37 |
| 8 | 30 or 60 days at most.  So it's not a backlog | 13:52:40 |
| 9 | business the way ERG is. | 13:52:44 |
| 10 | Q  So with the 16X multiple at ERG, is that | 13:52:45 |
| 11 | using an add-back or not using an add-back? | 13:52:51 |
| 12 | A  I don't recall, but I don't believe we | 13:52:56 |
| 13 | used -- I don't believe we used an add-back. | 13:52:57 |
| 14 | Q  And would an add-back have lowered or | 13:53:01 |
| 15 | raised that multiple, based on the cancellation of | 13:53:05 |
| 16 | the trial that you just -- | 13:53:09 |
| 17 | A  I don't know.  I'd have to go back at that | 13:53:09 |
| 18 | time we were doing the valuation and look at -- | 13:53:12 |
| 19 | Q  Okay. | 13:53:14 |
| 20 | A  -- all the factors that were going in. | 13:53:14 |
| 21 | The important thing is that ERG is a | 13:53:16 |
| 22 | different business, and they are a backlog | 13:53:22 |
| 23 | business and they're going to -- which means they | 13:53:26 |
| 24 | have more forward visibility.  And it's a | 13:53:29 |
| 25 | higher-margin business. | 13:53:32 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                          169

| | | |
|---|---|---|
| 1 | And so those two factors are going to lend | 13:53:33 |
| 2 | itself towards a different comp universe and a | 13:53:37 |
| 3 | different multiple. | 13:53:42 |
| 4 | Q  So the multiple that you -- at the -- not | 13:53:48 |
| 5 | the EBITDA multiple.  But the multiple that you | 13:54:01 |
| 6 | calculated for Pat at 2.5, that was a -- you said | 13:54:05 |
| 7 | before was a trailing multiple, correct -- | 13:54:12 |
| 8 | A  Correct. | 13:54:17 |
| 9 | Q  -- or was a trailing value? | 13:54:18 |
| 10 | A  Trailing value, yep. | 13:54:19 |
| 11 | Q  Okay. | 13:54:20 |
| 12 | MR. MINSON:  Can you mark this as | 13:54:35 |
| 13 | Exhibit 29. | 13:54:35 |
| 14 | (WHEREUPON, a certain document was marked | 13:54:37 |
| 15 | Farah Deposition Exhibit No. 29, for | 13:54:37 |
| 16 | identification.) | 13:54:53 |
| 17 | BY MR. MINSON: | 13:54:53 |
| 18 | Q  This is a June 25th, 2019, email from Lisa | 13:54:53 |
| 19 | Cohen to Josh Reilly that states:  PPG math for | 13:54:58 |
| 20 | Donnelly. | 13:55:08 |
| 21 | And, now, it shows a May mark -- for | 13:55:10 |
| 22 | Linden's May mark as being low, with a 13.7 | 13:55:16 |
| 23 | multiple versus 13.6 at quarter one. | 13:55:22 |
| 24 | But the June mark, it doesn't show the | 13:55:27 |
| 25 | EBITDA multiple for June, but it does show Pat | 13:55:30 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                    170

| | | |
|---|---|---|
| 1 | Donnelly's incentive payout for the multiples on | 13:55:43 |
| 2 | invested capital.  And it shows -- the payout | 13:55:45 |
| 3 | starts at 3X for the multiple. | 13:55:46 |
| 4 | Can you explain why that is? | 13:55:49 |
| 5 | MR. GILMORE:  Objection, form, foundation. | 13:55:51 |
| 6 | BY THE WITNESS: | 13:56:01 |
| 7 | A  Sorry, repeat the question for me.  I'm | 13:56:01 |
| 8 | sorry. | 13:56:02 |
| 9 | BY MR. MINSON: | 13:56:03 |
| 10 | Q  So it shows 3X.  It says:  Pat Donnelly | 13:56:03 |
| 11 | incentive payout.  There's no 2.5X on that chart | 13:56:08 |
| 12 | listed for what Lisa Cohen, you know, emailed as | 13:56:12 |
| 13 | the math for Donnelly. | 13:56:15 |
| 14 | A  Got it. | 13:56:16 |
| 15 | Q  I'm just wondering, in your mind, why is | 13:56:16 |
| 16 | this at a three point -- a 3X payout on June 25th, | 13:56:21 |
| 17 | higher than your valuation? | 13:56:26 |
| 18 | MR. GILMORE:  Objection, form, foundation. | 13:56:29 |
| 19 | BY THE WITNESS: | 13:56:32 |
| 20 | A  So this -- so this is before the end of | 13:56:32 |
| 21 | June, so we didn't have the June valuation yet. | 13:56:35 |
| 22 | So comparing it to a June valuation, one, is not | 13:56:39 |
| 23 | the right time period.  That's why we're using | 13:56:41 |
| 24 | May. | 13:56:44 |
| 25 | Number two, this is not a valuation.  This | 13:56:44 |

Transcript of Michael Farah, Designated Representative
September 14, 2022

171

| | | |
|---|---|---|
| 1 | is how much could Pat get if all -- the top part. | 13:56:47 |
| 2 | The bottom -- the bottom part's different.  That's | 13:56:56 |
| 3 | his straight dollars that he invested in. | 13:56:59 |
| 4 | So the top part of that table there -- | 13:57:01 |
| 5 | it's really in the middle -- but that top part | 13:57:05 |
| 6 | that's got the three, three and a half, four, | 13:57:08 |
| 7 | that's saying if Linden were to make, | 13:57:11 |
| 8 | hypothetically, at some point in the future -- | 13:57:13 |
| 9 | it's in the future, it's not, you know, today -- | 13:57:15 |
| 10 | if we were to make three, three and a half and | 13:57:18 |
| 11 | four times our money, how much would Pat get? | 13:57:21 |
| 12 | And then the left column has -- I'm pretty | 13:57:23 |
| 13 | sure this is saying 100 percent of his shares are | 13:57:26 |
| 14 | vested, 75, 50, 25 percent. | 13:57:29 |
| 15 | So this is starting to -- this looks like | 13:57:33 |
| 16 | what this is doing is saying -- again, this just | 13:57:37 |
| 17 | goes back to us trying to be fair and offer him -- | 13:57:39 |
| 18 | if we weren't good -- if we were just being -- per | 13:57:43 |
| 19 | the terms of the agreement, we would just say: | 13:57:47 |
| 20 | He's entitled to this.  This is time vesting and | 13:57:50 |
| 21 | at the mark, and that's what it is. | 13:57:51 |
| 22 | But this is kind of saying:  Well, okay, | 13:57:51 |
| 23 | if he was here until the end at some point in the | 13:57:53 |
| 24 | future and we hypothetically sold the business and | 13:57:55 |
| 25 | made three, three and a half, or 4X, how much | 13:57:57 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                    172

| | | |
|---|---|---|
| 1 | would he get based on his incentive equity unit? | 13:58:01 |
| 2 | And we'll try to use that as, you | 13:58:04 |
| 3 | know -- you know, it's just an input, a data | 13:58:06 |
| 4 | point, into what our offer is going to be that | 13:58:08 |
| 5 | goes above and beyond his incentive equity | 13:58:11 |
| 6 | agreement. | 13:58:13 |
| 7 | Q  And then is this valuation a | 13:58:19 |
| 8 | forward-looking valuation? | 13:58:23 |
| 9 | A  It's not a valuation.  So -- | 13:58:24 |
| 10 | Q  It's a calculation -- | 13:58:26 |
| 11 | A  This is a hypothetical "at any point in | 13:58:26 |
| 12 | the future" valuation.  This could be a year, two | 13:58:34 |
| 13 | years, three years.  This is just saying if Linden | 13:58:36 |
| 14 | makes three, three and a half times our money. | 13:58:39 |
| 15 | Q  So this calculation now is looking into | 13:58:47 |
| 16 | the future, so it's a forward-looking calculation? | 13:58:49 |
| 17 | A  Yeah, it's in the -- yeah, it's in the | 13:58:51 |
| 18 | future.  I mean -- yeah.  Yeah. | 13:59:00 |
| 19 | Q  And the investment banker valuations were | 13:59:01 |
| 20 | also forward-looking? | 13:59:08 |
| 21 | A  Yeah, so, again, this is different.  Those | 13:59:09 |
| 22 | are valuations that they provided based on selling | 13:59:12 |
| 23 | the business a year or more from now.  But at that | 13:59:15 |
| 24 | time, those deals -- that transaction would close | 13:59:20 |
| 25 | based on an EBITDA that's really close to | 13:59:25 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                     173

| | | |
|---|---|---|
| 1 | trailing. | 13:59:27 |
| 2 | This isn't looking at EBITDA multiples or | 13:59:28 |
| 3 | fair market valuations.  This is just saying -- so | 13:59:31 |
| 4 | it has no -- it doesn't know what EBITDA is | 13:59:33 |
| 5 | per se.  It doesn't know what the multiple is. | 13:59:38 |
| 6 | It's just saying:  We put $100 in.  If we make | 13:59:40 |
| 7 | 300, how much does Pat make? | 13:59:44 |
| 8 | Do you know what I mean? | 13:59:46 |
| 9 | Q  Mm-hm. | 13:59:48 |
| 10 | A  So there's no -- there's no EBITDA or | 13:59:49 |
| 11 | multiple in this analysis. | 13:59:50 |
| 12 | Q  Okay.  So the only calculation between | 13:59:58 |
| 13 | this and the five that were created by the | 14:00:00 |
| 14 | investment bankers and the one that you actually | 14:00:07 |
| 15 | presented to Pat that's trailing, or looking into | 14:00:12 |
| 16 | the past, would be the one that you presented to | 14:00:16 |
| 17 | Pat, correct? | 14:00:19 |
| 18 | A  I don't understand the question. | 14:00:19 |
| 19 | Q  The only one that tries to determine value | 14:00:21 |
| 20 | in the past rather than the future of those | 14:00:24 |
| 21 | reports, this report from Lisa Cohen and the five | 14:00:27 |
| 22 | reports from those investment banks, the only one | 14:00:32 |
| 23 | that determines value based on past value is the | 14:00:35 |
| 24 | one that you actually presented to Pat for the | 14:00:38 |
| 25 | value of his incentive equity? | 14:00:43 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                           174

| | | |
|---|---|---|
| 1 | MR. GILMORE:  Objection, form, foundation. | 14:00:45 |
| 2 | BY THE WITNESS: | 14:00:46 |
| 3 | A  That one that we presented to Pat is the | 14:00:47 |
| 4 | only fair market value analysis that was done. | 14:00:49 |
| 5 | BY MR. MINSON: | 14:00:56 |
| 6 | Q  And so what was the purpose for Lisa Cohen | 14:00:56 |
| 7 | to produce Exhibit Number 29? | 14:00:58 |
| 8 | A  This was to give us some sense of what Pat | 14:01:03 |
| 9 | would receive if he did stay on the board until we | 14:01:09 |
| 10 | sold and all of his shares were vested.  That's | 14:01:13 |
| 11 | why we looked at over the 3 -- over the 3X, | 14:01:17 |
| 12 | because everything is fully vested at 3X. | 14:01:22 |
| 13 | So that was the purposes of this as a data | 14:01:25 |
| 14 | point, because we wanted to offer him more than | 14:01:34 |
| 15 | what he was entitled to.  But you can imagine, | 14:01:36 |
| 16 | okay, he's entitled to what it turns out is 105. | 14:01:40 |
| 17 | Well, Tony asked the question:  Well, what | 14:01:45 |
| 18 | do you think we should offer him?  I don't want to | 14:01:47 |
| 19 | go and say:  I'm going to make up numbers now.  I | 14:01:49 |
| 20 | don't want to say 5 million.  He would never even | 14:01:53 |
| 21 | get that in any scenario here, so that wouldn't be | 14:01:56 |
| 22 | a logical offer. | 14:01:59 |
| 23 | So -- right?  So that's why we did this | 14:02:00 |
| 24 | exercise, was to say:  Well, what would he get? | 14:02:03 |
| 25 | It's hypothetical, but it gives us some input and | 14:02:05 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                    175

| | | |
|---|---|---|
| 1 | a better sense of what he would get if he stayed | 14:02:07 |
| 2 | on until the end. | 14:02:10 |
| 3 | Q  And so based on his agreement -- the | 14:02:11 |
| 4 | incentive equity agreement, to be specific for the | 14:02:14 |
| 5 | record -- if he's on the board and if, you know, | 14:02:16 |
| 6 | ProPharma sells, what determines how many of his | 14:02:27 |
| 7 | performance vesting shares vesting is strictly | 14:02:33 |
| 8 | that multiple on a vested capital number -- | 14:02:38 |
| 9 | correct? -- for the performance shares only? | 14:02:45 |
| 10 | A  For the vesting of his performance units | 14:02:46 |
| 11 | only -- | 14:02:50 |
| 12 | Q  Right, if he's on board. | 14:02:51 |
| 13 | A  -- is based on him being employed or on | 14:02:53 |
| 14 | the board -- | 14:02:56 |
| 15 | Q  Right. | 14:02:57 |
| 16 | A  -- at exit and Linden's multiple of -- | 14:02:57 |
| 17 | that's the MOI, multiple of invested -- | 14:03:00 |
| 18 | Q  Right. | 14:03:05 |
| 19 | A  -- capital, MOIC -- it being -- and that | 14:03:05 |
| 20 | vests at that two, two and a half, or 3X return. | 14:03:08 |
| 21 | So that's correct. | 14:03:12 |
| 22 | Q  And at 3, that's when it fully vests? | 14:03:12 |
| 23 | A  Correct. | 14:03:15 |
| 24 | Q  Okay.  And when you calculate -- or when | 14:03:16 |
| 25 | you did calculate his incentive equity, how do you | 14:03:22 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                    176

| | | |
|---|---|---|
| 1 | do all of that math?  Is there, like, a | 14:03:29 |
| 2 | spreadsheet where you put it into and you, like, | 14:03:31 |
| 3 | input values and then it tells you what the | 14:03:33 |
| 4 | multiple is?  Or vice -- or vice versa, it puts | 14:03:36 |
| 5 | multiples and tells you what the value is? | 14:03:43 |
| 6 | A   No.  So it starts with -- if we had one in | 14:03:44 |
| 7 | front of me, I could go through it, but I don't | 14:03:48 |
| 8 | get into the weeds of doing it anymore. | 14:03:52 |
| 9 | But the way it works is you start with | 14:03:54 |
| 10 | EBITDA.  You look at the comp universe, the | 14:03:56 |
| 11 | precedent transaction universe.  Come up with a | 14:03:59 |
| 12 | multiple that's reasonable and that you can | 14:04:04 |
| 13 | support and that will withstand the auditors.  And | 14:04:06 |
| 14 | then you multiply that by EBITDA.  And then you | 14:04:08 |
| 15 | look at your debt, how much debt is on the | 14:04:11 |
| 16 | business.  And then so you subtract the debt.  And | 14:04:13 |
| 17 | you look at all the components of debt, and then | 14:04:15 |
| 18 | you look at the equity. | 14:04:18 |
| 19 | And the equity has two components. | 14:04:18 |
| 20 | There's preferred and there's common.  And the | 14:04:21 |
| 21 | preferred has an accrual rate of 8 percent, so | 14:04:23 |
| 22 | that's -- so you got to look at that exact quarter | 14:04:25 |
| 23 | how much preferred has accrued at that time. | 14:04:28 |
| 24 | And then there's a common piece to it. | 14:04:30 |
| 25 | And so the enterprise value, which is EBITDA times | 14:04:32 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                      177

| | | |
|---|---|---|
| 1 | the multiple, less the debt, less the preferred, | 14:04:36 |
| 2 | is equal to the value of the common equity. | 14:04:38 |
| 3 | Then you can look back and say: Okay, | 14:04:41 |
| 4 | what did Linden and everybody invest originally, | 14:04:43 |
| 5 | at the start of the investment, and what value | 14:04:46 |
| 6 | would they get today? And that's your multiple of | 14:04:50 |
| 7 | invested capital. | 14:04:57 |
| 8 | So the multiple of invested capital is an | 14:04:58 |
| 9 | output based on all of that. | 14:05:02 |
| 10 | Q  Okay. I'm going to -- this is an | 14:05:02 |
| 11 | assumption on my part, but, you know, it's 2022. | 14:05:05 |
| 12 | Do you use a spreadsheet for that that has | 14:05:08 |
| 13 | formulas? Or do you actually -- | 14:05:11 |
| 14 | A  Yeah. | 14:05:13 |
| 15 | Q  -- do the math? | 14:05:13 |
| 16 | A  Yeah. | 14:05:14 |
| 17 | Q  Okay. And if you -- in that spreadsheet, | 14:05:15 |
| 18 | if you were to input the multiple first, would | 14:05:17 |
| 19 | that spreadsheet do the math backwards? | 14:05:22 |
| 20 | A  If you were to input the -- | 14:05:24 |
| 21 | Q  If you were -- | 14:05:28 |
| 22 | A  -- EBITDA. | 14:05:29 |
| 23 | Q  -- to input the multiple on invested | 14:05:30 |
| 24 | capital first, would it give you the corresponding | 14:05:33 |
| 25 | EBITDA and EBITDA multiple for that multiple -- | 14:05:36 |

| | | |
|---|---|---|
| 1 | for the MOIC number? | 14:05:42 |
| 2 | A  I guess it certainly could.  You could | 14:05:44 |
| 3 | change the formulas so that you go backwards, | 14:05:46 |
| 4 | yeah. | 14:05:50 |
| 5 | But, ultimately, you've got to support the | 14:05:51 |
| 6 | enterprise value.  That's the valuation.  The | 14:05:56 |
| 7 | share price and the return are all a derivative of | 14:05:59 |
| 8 | how much are you valuing -- so the fair market | 14:06:03 |
| 9 | value is ultimately what you're -- what needs to | 14:06:06 |
| 10 | stand up and be supported. | 14:06:09 |
| 11 | So when we have discussions, you know, | 14:06:11 |
| 12 | they come -- the VPs and associates may come to me | 14:06:13 |
| 13 | and say:  Here's what we're thinking about for | 14:06:18 |
| 14 | ProPharma. | 14:06:20 |
| 15 | And I'll say:  Well, here are a couple | 14:06:21 |
| 16 | deals that got done recently.  Are those included | 14:06:23 |
| 17 | in the comp universe?  We should -- we might want | 14:06:26 |
| 18 | to include those.  Or, you know, this one is no | 14:06:28 |
| 19 | longer a comp in the public universe. | 14:06:30 |
| 20 | So that's what you're -- those are the | 14:06:34 |
| 21 | variables and then the multiple that you're | 14:06:37 |
| 22 | ultimately changing.  You don't make up the -- | 14:06:39 |
| 23 | Q  But you -- | 14:06:40 |
| 24 | A  -- we don't make up what we want the | 14:06:41 |
| 25 | multiple invested capital to be.  Because | 14:06:41 |

1    otherwise we'd just make it really high, because        14:06:43

2    then we would all look like we're doing a really        14:06:45

3    good job.                                               14:06:47

4        Q   Right.  But, I mean, before, you said that      14:06:48

5    the EBITDA multiple -- or, I guess the comps that       14:06:50

6    you use to arrive at the EBITDA multiple are based      14:06:58

7    on precedent transactions and based on public          14:07:00

8    comparables.                                            14:07:03

9         So before, you said that there is --               14:07:05

10   there's some discretion there as to which               14:07:06

11   companies can be included and excluded from the         14:07:09

12   pool of comparables.  And so wouldn't you be able       14:07:10

13   to simply exclude and include --                        14:07:16

14       A   Yeah.                                            14:07:18

15       Q   -- whichever companies you wanted?              14:07:18

16       A   We -- in theory we could, but it's got to       14:07:21

17   withstand -- it's got to hold up to the auditors.       14:07:24

18   And they won't let us make things up or be              14:07:28

19   unreasonable.                                           14:07:31

20        It's got to withstand our LPs, because             14:07:32

21   they don't want to look at us and say, you know:        14:07:35

22   You guys are crazy.  Where's your judgment?  That       14:07:37

23   wouldn't be very good.                                  14:07:40

24        And then -- and if anything, actually, our         14:07:41

25   incentive is, like I said, to make it higher.           14:07:45

Transcript of Michael Farah, Designated Representative
September 14, 2022

180

| | | |
|---|---|---|
| 1 | We'd look better if we -- you know, if we did | 14:07:48 |
| 2 | that.  We have an incentive to make it higher, and | 14:07:54 |
| 3 | we don't do that. | 14:07:57 |
| 4 | Q  Okay. | 14:07:58 |
| 5 | A  I shouldn't say we have an incentive to do | 14:07:58 |
| 6 | it.  We don't have an incentive.  We would look | 14:08:01 |
| 7 | better if we did it -- if we made it higher, and | 14:08:03 |
| 8 | we don't do that because it's got to withstand the | 14:08:06 |
| 9 | audit.  It's got to be reasonable with our LPs. | 14:08:09 |
| 10 | It's got to be reasonable for all these types of | 14:08:11 |
| 11 | transactions that happen. | 14:08:12 |
| 12 | Q  But for the purpose of compensating Pat, | 14:08:18 |
| 13 | is that a publicly disclosed calculation? | 14:08:20 |
| 14 | A  It's -- it's not public, but it's the | 14:08:22 |
| 15 | same -- we didn't do anything special for Pat.  We | 14:08:27 |
| 16 | just used what we do internally, which gets shared | 14:08:32 |
| 17 | with our LPs and auditors.  So it's not public, | 14:08:35 |
| 18 | but it gets shared with those groups. | 14:08:39 |
| 19 | MR. MINSON:  Your attorney is familiar | 14:09:20 |
| 20 | with this exercise. | 14:09:21 |
| 21 | Can you mark these, folder 30, 31, 32 -- I | 14:09:23 |
| 22 | mean Exhibit 30, 31, 32, 33, and 34 respectively. | 14:09:29 |
| 23 | (WHEREUPON, certain documents were marked | 14:09:35 |
| 24 | Farah Deposition Exhibit No. 30, No. 31, No. 32, | 14:09:35 |
| 25 | No. 33, and No. 34 for identification.) | 14:11:56 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                                181

| | | |
|---|---|---|
| 1 | BY MR. MINSON: | 14:11:56 |
| 2 |   Q  Exhibits Number 30 through 34 are the | 14:11:57 |
| 3 | pitch decks that ProPharma had completed in | 14:12:02 |
| 4 | November of 2019 by the five different investment | 14:12:05 |
| 5 | banks that are listed on the front of each pitch | 14:12:10 |
| 6 | deck, the first one, Exhibit Number 30, being | 14:12:13 |
| 7 | Cantor. | 14:12:19 |
| 8 |     And if you look to LINDEN509, this shows | 14:12:28 |
| 9 | a -- and it's circled by someone from Linden, I'm | 14:12:45 |
| 10 | assuming.  I didn't circle it.  It shows:  We're | 14:12:48 |
| 11 | confident we can deliver an enterprise value of | 14:12:53 |
| 12 | $625 million. | 14:12:59 |
| 13 |     And if you look at the corresponding | 14:13:01 |
| 14 | multiples for the EBITDA multiples, under | 14:13:03 |
| 15 | $625 million, you know, they're 15, 16, and 17. | 14:13:08 |
| 16 |     This was done in November of 2019, so you | 14:13:20 |
| 17 | would have had this when you made the last offer | 14:13:26 |
| 18 | that you made to Mr. Donnelly prior to disbursing | 14:13:31 |
| 19 | him $105,000, correct? | 14:13:37 |
| 20 |   A  We would have had this presentation in our | 14:13:47 |
| 21 | hands, that is correct. | 14:13:50 |
| 22 |     It doesn't necessarily mean that we would | 14:13:55 |
| 23 | have gone through everything in detail, just so | 14:13:57 |
| 24 | you're aware.  You spend most of these | 14:13:59 |
| 25 | presentations -- they're usually about an hour | 14:14:01 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                    182

| | | |
|---|---|---|
| 1 | long, and a lot of times you hit on the | 14:14:03 |
| 2 | positioning and those things. | 14:14:07 |
| 3 | Because you spend more time on that | 14:14:09 |
| 4 | initially and often less times on the valuation. | 14:14:12 |
| 5 | Because, again, the valuation is they're trying to | 14:14:16 |
| 6 | win business, so we all know they come in saying: | 14:14:18 |
| 7 | We can get you a big, high number.  It's all | 14:14:22 |
| 8 | aspirational.  It's all over a year in the future. | 14:14:25 |
| 9 | So you actually often spend less time. | 14:14:27 |
| 10 | And the reason I say that is that means that while | 14:14:30 |
| 11 | we have it, it also doesn't mean we necessarily | 14:14:31 |
| 12 | dove into it.  At this time we hadn't really spent | 14:14:34 |
| 13 | a lot of time on it either. | 14:14:37 |
| 14 | Q   Okay. | 14:14:39 |
| 15 | A   And had the opportunity to ask questions, | 14:14:39 |
| 16 | look at the details, and those kinds of things. | 14:14:41 |
| 17 | But, yeah, correct. | 14:14:44 |
| 18 | Q   I'm going to move -- | 14:14:47 |
| 19 | A   Can I... | 14:14:58 |
| 20 | Q   I'm going to move on to -- | 14:15:02 |
| 21 | A   I mean, I would -- I would like to say | 14:15:04 |
| 22 | that on that page, those are the valuations.  But | 14:15:06 |
| 23 | then when you look at the data supporting it, | 14:15:12 |
| 24 | there's plenty of data -- there's -- you know, the | 14:15:14 |
| 25 | next -- Page 34 shows a 14-and-a-half X multiple | 14:15:16 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                    183

| | | |
|---|---|---|
| 1 | for pharma services trading comps. | 14:15:25 |
| 2 | Q  I'm sorry -- | 14:15:30 |
| 3 | A  So I look at this as this is all well | 14:15:30 |
| 4 | within -- | 14:15:33 |
| 5 | MR. MINSON:  I'm sorry.  I -- can you | 14:15:34 |
| 6 | strike that?  I didn't ask a question, so I'd like | 14:15:35 |
| 7 | you to strike that as nonresponsive.  I think he | 14:15:36 |
| 8 | asked -- he answered the question that I asked. | 14:15:39 |
| 9 | MR. GILMORE:  We object to that motion to | 14:15:42 |
| 10 | strike. | 14:15:45 |
| 11 | BY MR. MINSON: | 14:15:59 |
| 12 | Q  I'm going to move on to Exhibit 31, which | 14:16:02 |
| 13 | is with Centerview Partners. | 14:16:05 |
| 14 | And Centerview is the firm that you | 14:16:12 |
| 15 | eventually went with to market ProPharma, correct? | 14:16:15 |
| 16 | A  They were lead, and William Blair was a | 14:16:17 |
| 17 | co-advisor. | 14:16:22 |
| 18 | Q  Okay. | 14:16:24 |
| 19 | A  That's correct. | 14:16:24 |
| 20 | Q  I'm kind of focusing on things that are | 14:16:26 |
| 21 | surprisingly circled by someone at Linden.  I'm | 14:16:46 |
| 22 | assuming.  I don't know that that's the case, but | 14:16:50 |
| 23 | I received the documents from Linden in this | 14:16:54 |
| 24 | condition. | 14:16:56 |
| 25 | If you go to Linden 548. | 14:16:59 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                    184

| | | |
|---|---|---|
| 1 | A   548? | 14:17:02 |
| 2 | Q   Yep. | 14:17:04 |
| 3 | A   Okay. | 14:17:04 |
| 4 | Q   And you look at -- it says -- for public | 14:17:05 |
| 5 | comparables, it says based on 15X to 18X.  And it | 14:17:10 |
| 6 | shows EBITDA of 42 million. | 14:17:15 |
| 7 | And then when you go to precedent | 14:17:19 |
| 8 | transactions, below that, it shows 17X to 20X, | 14:17:21 |
| 9 | also EBITDA of 42 million.  And the enterprise | 14:17:30 |
| 10 | value, respectively, is from 630 to 760 and then | 14:17:34 |
| 11 | from 710 to 840. | 14:17:39 |
| 12 | A   Okay. | 14:17:48 |
| 13 | Q   You would also had this report when you | 14:17:49 |
| 14 | responded -- when you made your final response to | 14:17:55 |
| 15 | Pat's demand, correct? | 14:17:58 |
| 16 | A   Correct.  Yep. | 14:18:03 |
| 17 | Q   Okay. | 14:18:04 |
| 18 | A   But same -- same thing applies.  This | 14:18:12 |
| 19 | isn't a fair market report.  It wouldn't be used | 14:18:14 |
| 20 | to determine fair market value. | 14:18:17 |
| 21 | And, again, when you look at the -- you're | 14:18:18 |
| 22 | focusing on the page that's a summary that's | 14:18:22 |
| 23 | aspirational.  When you actually look -- same as | 14:18:24 |
| 24 | the Cantor.  When you look at the detail behind | 14:18:26 |
| 25 | it, the comps that they're presenting actually | 14:18:29 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                           185

| | | |
|---|---|---|
| 1 | support our valuation. | 14:18:31 |
| 2 | Which just proves my point that they're | 14:18:37 |
| 3 | trying to be aspirational.  If everything goes | 14:18:39 |
| 4 | right, if ProPharma has exceptional growth and | 14:18:41 |
| 5 | this and that, then you could get an outsized | 14:18:44 |
| 6 | return.  It's not a fair market value report. | 14:18:47 |
| 7 | Q  But you actually sold ProPharma for -- I | 14:19:01 |
| 8 | think it was $573 million was the value? | 14:19:05 |
| 9 | A  With an earnout, it was 573.  It was | 14:19:10 |
| 10 | ultimately 560 up front -- | 14:19:13 |
| 11 | Q  Okay. | 14:19:15 |
| 12 | A  -- yeah.  Which was about 14 to 16 times | 14:19:15 |
| 13 | EBITDA, depending on how you look at it. | 14:19:22 |
| 14 | Q  Mm-hm. | 14:19:24 |
| 15 | A  Which is really in line with our comps. | 14:19:25 |
| 16 | I think it's actually interesting that a | 14:19:28 |
| 17 | year -- well, when we were selling ProPharma, Pat, | 14:19:31 |
| 18 | who was claiming to not be on the board -- sorry, | 14:19:36 |
| 19 | was claiming to be on the board of ProPharma still | 14:19:39 |
| 20 | at that point -- this is 2020, June of 2020 -- was | 14:19:43 |
| 21 | advising -- as we learned a couple weeks ago, was | 14:19:48 |
| 22 | advising Summit Partners on their bid to acquire | 14:19:51 |
| 23 | ProPharma. | 14:19:54 |
| 24 | And we know that Summit Partners' bid was | 14:19:55 |
| 25 | well below the 18 times that Pat was saying | 14:19:58 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                        186

| | | |
|---|---|---|
| 1 | ProPharma was worth. | 14:20:01 |
| 2 | So there's two issues there, right?  Your | 14:20:02 |
| 3 | own client is saying it's not worth 18 times and | 14:20:05 |
| 4 | he's saying he's on -- | 14:20:07 |
| 5 | Q  That's -- | 14:20:08 |
| 6 | A  -- advising -- | 14:20:09 |
| 7 | Q  I'm going to object to that being on the | 14:20:09 |
| 8 | record.  That's completely nonresponsive.  I | 14:20:13 |
| 9 | didn't ask you a question that had anything to do | 14:20:14 |
| 10 | with that. | 14:20:18 |
| 11 | MR. GILMORE:  First of all, I'd ask you | 14:20:19 |
| 12 | not to interrupt the witness.  I understand if you | 14:20:20 |
| 13 | don't think -- I disagree that that testimony | 14:20:21 |
| 14 | wasn't responsive to your question.  But I -- | 14:20:22 |
| 15 | MR. MINSON:  He's talking about Summit | 14:20:25 |
| 16 | Partners, Rob.  I mean, where does this have | 14:20:27 |
| 17 | anything to do with Summit Partners or -- | 14:20:29 |
| 18 | BY THE WITNESS: | 14:20:29 |
| 19 | A  It's relevant to me because he's claiming | 14:20:33 |
| 20 | that -- one, Pat Donnelly is claiming that he was | 14:20:35 |
| 21 | still on the board of ProPharma, when he clearly | 14:20:38 |
| 22 | wasn't. | 14:20:38 |
| 23 | And if was on the board and that's true | 14:20:39 |
| 24 | and he was advising Summit Partners, that's a huge | 14:20:40 |
| 25 | conflict and a huge violation.  There's a hole | 14:20:43 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                     187

| | | |
|---|---|---|
| 1 | bunch of issues there.  And -- | 14:20:46 |
| 2 | BY MR. MINSON: | 14:20:46 |
| 3 | Q  I'm sorry -- | 14:20:46 |
| 4 | A  -- number three, his valuation that -- | 14:20:46 |
| 5 | (Unreportable cross-talk.) | 14:20:57 |
| 6 | MS. REPORTER:  Hang on.  We can't talk -- | 14:20:57 |
| 7 | MR. MINSON:  I'm sorry. | 14:20:57 |
| 8 | MS. REPORTER:  -- at the same time. | 14:21:00 |
| 9 | MR. GILMORE:  First of all, I'd ask that | 14:21:00 |
| 10 | you not interrupt the witness while he's talking. | 14:21:00 |
| 11 | If you want to move to strike because you don't | 14:21:00 |
| 12 | think the testimony is responsive, then after he's | 14:21:03 |
| 13 | done, move to strike, and you can continue your | 14:21:05 |
| 14 | questioning. | 14:21:08 |
| 15 | You've got plenty of time.  It's not like | 14:21:08 |
| 16 | you're short on time. | 14:21:11 |
| 17 | So I understand your position.  I | 14:21:13 |
| 18 | disagree.  But make your motion.  I'll make my | 14:21:15 |
| 19 | objection to the motion, and then you can ask your | 14:21:17 |
| 20 | next question, and the witness can ask -- answer | 14:21:18 |
| 21 | to the best of his ability your questions.  I | 14:21:20 |
| 22 | think that's how we should proceed. | 14:21:23 |
| 23 | MR. MINSON:  I'm done with this exhibit. | 14:21:29 |
| 24 | I have no further questions on Exhibit Number 31. | 14:21:31 |
| 25 | And I would like to move to strike any | 14:21:35 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                    188

| | | |
|---|---|---|
| 1 | testimony regarding Summit Partners or anything | 14:21:37 |
| 2 | unrelated to this valuation report on which my | 14:21:39 |
| 3 | question was based. | 14:21:42 |
| 4 | MR. GILMORE:  We object to that motion. | 14:21:48 |
| 5 | BY MR. MINSON: | 14:22:00 |
| 6 | Q  If we go to Exhibit Number 32, that's a | 14:22:00 |
| 7 | valuation from ProPharma Group completed by Harris | 14:22:03 |
| 8 | Williams. | 14:22:06 |
| 9 | And if you go to LINDEN618.  So if you | 14:22:16 |
| 10 | look at LINDEN618, for the EBITDA Harris Williams | 14:22:52 |
| 11 | shows 46.3, at the lower end there. | 14:23:00 |
| 12 | A  Sorry, what page are you on? | 14:23:06 |
| 13 | Q  618.  And for 2021, obviously, based on | 14:23:08 |
| 14 | when you sold.  For 2020, it shows 40.3 for -- or | 14:23:18 |
| 15 | I guess 40.3 million for the enterprise value | 14:23:32 |
| 16 | there.  That's not the enterprise value.  That is | 14:23:37 |
| 17 | the EBITDA.  So 40.3 million for 2020, as opposed | 14:23:41 |
| 18 | to the 33.9, I believe, that shows on Pat's | 14:23:49 |
| 19 | valuation. | 14:23:55 |
| 20 | And when you responded to Pat's demand, | 14:23:59 |
| 21 | you would also have had this report, just like the | 14:24:04 |
| 22 | others, correct? | 14:24:07 |
| 23 | MR. GILMORE:  Objection, form and | 14:24:14 |
| 24 | foundation. | 14:24:16 |
| 25 | | |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                              189

```
1    BY THE WITNESS:                                    14:24:16
2       A  Yeah, we would have had this report.  But   14:24:16
3    same issue.  You're not mentioning the whole      14:24:18
4    report where it shows the comps that support our  14:24:20
5    valuation 15 to 16 times.                          14:24:23
6         So, again, this -- we would add it           14:24:25
7    supports our valuation --                          14:24:29
8    BY MR. MINSON:                                     14:24:30
9       Q  Wait, 15 to 16 times is what you're         14:24:30
10   saying?                                            14:24:32
11      A  This one has got one range back here        14:24:32
12   that's 15 to 16.  It's got one up here that's     14:24:34
13   14 to -- 14 and a half.  This is 10 to 13.        14:24:38
14        So -- all within the same report.  So,       14:24:42
15   again, these are aspirational.  They're a year    14:24:44
16   forward.  We would have had it.  No way would it  14:24:47
17   have changed our view of fair market value.       14:24:51
18      Q  And if you go to 33 -- Exhibit Number 33,   14:24:56
19   which is the Perella Weinberg Partners valuation, 14:25:22
20   or pitch deck.  On LINDEN624, also circled, you'll 14:25:30
21   see, you know:  PPG can command a premium price,  14:25:46
22   in excess of 60 -- or $650 million.  And then     14:25:49
23   written in there is 42 to 43 million for the      14:25:54
24   EBITDA.                                            14:25:58
25        Do you see that?                              14:26:00
```

Transcript of Michael Farah, Designated Representative
September 14, 2022                                    190

| | | |
|---|---|---|
| 1 | A   Sorry, what page are you on? | 14:26:01 |
| 2 | Q   624. | 14:26:03 |
| 3 | A   624.  And you're saying the... | 14:26:17 |
| 4 | Oh, what's been handwritten in?  Yes, I | 14:26:27 |
| 5 | see that. | 14:26:30 |
| 6 | Q   Okay.  And like for the rest of them, you | 14:26:30 |
| 7 | would have had this when you responded to Pat's | 14:26:34 |
| 8 | demand, correct, in November? | 14:26:37 |
| 9 | A   Correct. | 14:26:40 |
| 10 | Q   And if you look on LINDEN636.  Actually, | 14:26:40 |
| 11 | strike that.  That's the wrong note. | 14:27:40 |
| 12 | Oh, here it is.  Actually, 637. | 14:27:52 |
| 13 | So Advarra is listed at the top as a | 14:27:59 |
| 14 | traditional in the counter-party landscape page. | 14:28:07 |
| 15 | Isn't that a deal that you had just closed | 14:28:16 |
| 16 | when you received this earlier that year, the | 14:28:18 |
| 17 | Advarra deal to Genstar? | 14:28:20 |
| 18 | A   Yes, we had sold it.  Yep. | 14:28:23 |
| 19 | Q   Okay. | 14:28:26 |
| 20 | A   Yep. | 14:28:26 |
| 21 | Q   And so it wouldn't be unreasonable to | 14:28:26 |
| 22 | consider Advarra in, you know, the table of | 14:28:42 |
| 23 | comparables? | 14:28:46 |
| 24 | A   Correct.  Like I said, it's not | 14:28:47 |
| 25 | unreasonable because there's no perfect comp, so | 14:28:50 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                    191

| | | |
|---|---|---|
| 1 | it's certainly reasonable to include them. | 14:28:53 |
| 2 | On the previous -- it looks like they did | 14:28:55 |
| 3 | include them.  On the previous page, on 636, you | 14:28:57 |
| 4 | can see that they list the enterprise EBITDA range | 14:29:01 |
| 5 | at about 13.3 times, which is below where we had | 14:29:05 |
| 6 | it marked. | 14:29:11 |
| 7 | Q  But the value of the company at that | 14:29:18 |
| 8 | EBITDA was 650 million, right? | 14:29:21 |
| 9 | A  I think that's how the math would work. | 14:29:25 |
| 10 | That's a year -- over a year into the future, | 14:29:27 |
| 11 | assuming that the company would hit 40-plus of | 14:29:30 |
| 12 | EBITDA.  The company didn't even come close to | 14:29:33 |
| 13 | doing that. | 14:29:36 |
| 14 | Q  And last is Exhibit Number 34, and this is | 14:29:41 |
| 15 | the investment bank report for William Blair. | 14:29:54 |
| 16 | And if you focus in on LINDEN -- on | 14:30:10 |
| 17 | Page LINDEN677, there's a written notation there | 14:30:24 |
| 18 | that indicates 600 to 700 million.  And it also | 14:30:27 |
| 19 | says, I think, up to 20 percent is probably okay. | 14:30:34 |
| 20 | I don't understand the handwriting there. | 14:30:41 |
| 21 | But, in any event, if you look at the | 14:30:43 |
| 22 | EBITDA multiple range, on the low end, at | 14:30:46 |
| 23 | 600 million, it's listed as 14.6 in 2020.  And in | 14:30:54 |
| 24 | 2019, when you claim that Pat was, you know, | 14:30:59 |
| 25 | separated, it's listed as 17.1. | 14:31:04 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                    192

| | | |
|---|---|---|
| 1 | And so my question is why is the 2019 mark | 14:31:09 |
| 2 | higher?  Do you understand that? | 14:31:17 |
| 3 | A  No.  Why is the 2019 -- | 14:31:20 |
| 4 | Q  Yeah. | 14:31:23 |
| 5 | A  Mark?  What do you mean by "mark"? | 14:31:25 |
| 6 | Q  For the EBITDA, the multiple. | 14:31:28 |
| 7 | A  Why it's 17.1 -- | 14:31:30 |
| 8 | Q  Yeah.  It says the multiple for 2020 is | 14:31:32 |
| 9 | 14.6, but 2019, it says it's 17.1. | 14:31:35 |
| 10 | A  Oh, that's just -- you're using the same | 14:31:40 |
| 11 | 600 enterprise value and dividing it by the | 14:31:44 |
| 12 | EBITDA, and the assumption is EBITDA is going from | 14:31:47 |
| 13 | 35 to 41. | 14:31:50 |
| 14 | Q  Okay. | 14:31:51 |
| 15 | A  And so just by math, the multiple goes | 14:31:51 |
| 16 | down. | 14:31:55 |
| 17 | But what they're saying here is if you | 14:32:01 |
| 18 | sell next year, that 600 is 14.6 times that | 14:32:03 |
| 19 | EBITDA, which is roughly trailing.  So, again, | 14:32:07 |
| 20 | this same -- very, very close to the multiples | 14:32:11 |
| 21 | that we used for internal valuation purposes. | 14:32:13 |
| 22 | Because that 600 to 700 that you reference | 14:32:21 |
| 23 | up top, that's -- you're selling over a year from | 14:32:24 |
| 24 | now. | 14:32:26 |
| 25 | Q  I'm going to go to LINDEN708.  And from | 14:32:42 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                    193

| | | |
|---|---|---|
| 1 | Linden 708... | 14:33:16 |
| 2 | You can strike that.  I marked the wrong | 14:34:10 |
| 3 | page. | 14:34:12 |
| 4 | Anyway, having these investment banks | 14:34:12 |
| 5 | prepare these reports, was there any coordination | 14:34:18 |
| 6 | and provision of financial data between ProPharma | 14:34:22 |
| 7 | and these entities? | 14:34:25 |
| 8 | A  So there's no coordination or discussion | 14:34:31 |
| 9 | other than what I mentioned earlier in terms of | 14:34:32 |
| 10 | you -- I believe we gave each one of them, like, a | 14:34:34 |
| 11 | 30-minute call with management, just to understand | 14:34:37 |
| 12 | the business a little bit better.  That's what we | 14:34:39 |
| 13 | often do.  I'm not actually 100 percent certain | 14:34:42 |
| 14 | they did that in this case, but I believe they | 14:34:44 |
| 15 | did. | 14:34:46 |
| 16 | And then we usually share, like, two years | 14:34:46 |
| 17 | of financials.  So in this case, we probably | 14:34:49 |
| 18 | shared 2019 and 2020, just a very, very rough | 14:34:51 |
| 19 | estimate of both. | 14:34:57 |
| 20 | Q  And were you on that call with the banks, | 14:34:57 |
| 21 | with management, to share the data and have their | 14:35:04 |
| 22 | questions answered? | 14:35:07 |
| 23 | A  I do not recall being on that call. | 14:35:07 |
| 24 | Q  Okay. | 14:35:16 |
| 25 | A  We're hesitant to give them a lot of | 14:35:18 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                             194

| | | |
|---|---|---|
| 1 | detail and truly accurate information because | 14:35:21 |
| 2 | oftentimes this stuff leaks out in the market.  So | 14:35:23 |
| 3 | we share very high-level -- | 14:35:25 |
| 4 | Q  Okay. | 14:35:27 |
| 5 | A  -- information. | 14:35:27 |
| 6 | MR. MINSON:  Mark this as 35. | 14:35:34 |
| 7 | (WHEREUPON, a certain document was marked | 14:35:35 |
| 8 | Farah Deposition Exhibit No. 35, for | 14:35:35 |
| 9 | identification.) | 14:35:55 |
| 10 | BY MR. MINSON: | 14:35:55 |
| 11 | Q  This is an email from Jason Zuckerbrod at | 14:35:55 |
| 12 | Centerview to Bennett Yasskin.  And it says: | 14:35:59 |
| 13 | Attached are the questions for our call with Dawn | 14:36:02 |
| 14 | on Tuesday.  We're very much looking forward to | 14:36:05 |
| 15 | learning more. | 14:36:08 |
| 16 | And this email is dated October 18, 2019. | 14:36:09 |
| 17 | And attached is Centerview's list of questions as | 14:36:19 |
| 18 | LINDEN1001. | 14:36:27 |
| 19 | So I -- obviously, you said that there's | 14:36:30 |
| 20 | this call that takes place.  Does this jog your | 14:36:39 |
| 21 | memory at all as to whether you were on this call? | 14:36:42 |
| 22 | A  Yeah.  This is typical for any company | 14:36:45 |
| 23 | when we sell -- | 14:36:47 |
| 24 | Q  Right. | 14:36:47 |
| 25 | A  -- interview investment banks.  This is | 14:36:48 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                          195

| | | |
|---|---|---|
| 1 | very normal, so I'm not surprised to see this. | 14:36:50 |
| 2 | I don't recall being on it.  I'm not even | 14:36:52 |
| 3 | sure I'm copied on the email.  I don't -- I could | 14:36:57 |
| 4 | have been on it and I don't -- but I don't recall. | 14:37:00 |
| 5 | Q  And do you normally contribute or just | 14:37:03 |
| 6 | listen to these calls? | 14:37:05 |
| 7 | A  I would not have contributed. | 14:37:06 |
| 8 | Q  Okay.  And what was the actual -- you said | 14:37:07 |
| 9 | the actual sales price of ProPharma to Odyssey | 14:37:17 |
| 10 | was, I think you said, 560 with 573 -- 573 million | 14:37:21 |
| 11 | for -- what was the differential in the price? | 14:37:26 |
| 12 | A  Yeah, so it was a 560 million up-front | 14:37:29 |
| 13 | payment.  So that's the enterprise value.  And | 14:37:34 |
| 14 | then the opportunity to earn another -- or to be | 14:37:36 |
| 15 | paid, for us to be paid, another -- "us" being | 14:37:39 |
| 16 | Linden and the ProPharma shareholders -- another | 14:37:44 |
| 17 | 13 million in the form of an earnout if the | 14:37:45 |
| 18 | company hit its projected EBITDA -- or a projected | 14:37:48 |
| 19 | EBITDA target. | 14:37:52 |
| 20 | So that's what we call an earnout -- | 14:37:53 |
| 21 | Q  So did you -- | 14:37:55 |
| 22 | A  -- it's contingent. | 14:37:57 |
| 23 | Q  Did that happen? | 14:37:59 |
| 24 | A  We earned a portion of the earnout, not | 14:38:00 |
| 25 | the full earnout. | 14:38:02 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                    196

| | | |
|---|---|---|
| 1 | Q  Okay.  And the final multiple on the | 14:38:03 |
| 2 | invested capital that -- I really only know from | 14:38:10 |
| 3 | that document that Mr. Thomas provided.  It said | 14:38:13 |
| 4 | it's roughly 3.15 multiple on invested capital, | 14:38:16 |
| 5 | correct? | 14:38:19 |
| 6 | A  (No audible response.) | 14:38:20 |
| 7 | Q  Okay. | 14:38:25 |
| 8 | MS. REPORTER:  You have to answer out | 14:38:26 |
| 9 | loud. | 14:38:28 |
| 10 | BY THE WITNESS: | 14:38:28 |
| 11 | A  Yes. | 14:38:28 |
| 12 | BY MR. MINSON: | 14:38:28 |
| 13 | Q  Oh, yeah.  I'm sorry, you do have to. | 14:38:29 |
| 14 | A  I'm sorry. | 14:38:29 |
| 15 | I think the final multiple was lower than | 14:38:38 |
| 16 | that, but 3.1. | 14:38:40 |
| 17 | Q  Okay. | 14:38:40 |
| 18 | A  Something like that, yes.  Close -- it was | 14:38:41 |
| 19 | very close. | 14:38:43 |
| 20 | Q  Okay.  And what was the final LTM EBITDA? | 14:38:44 |
| 21 | A  Oh, I don't recall off the top of my head. | 14:38:50 |
| 22 | I don't recall.  About 35.  24 to 35, something | 14:38:56 |
| 23 | like that. | 14:39:04 |
| 24 | Q  And what about the final multiple? | 14:39:04 |
| 25 | A  EBITDA multiple? | 14:39:10 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                        197

| | | |
|---|---|---|
| 1 | Q  Mm-hm. | 14:39:11 |
| 2 | A  Just divide the two.  I don't have a | 14:39:12 |
| 3 | calculator. | 14:39:14 |
| 4 | Q  Oh, okay. | 14:39:14 |
| 5 | A  Yeah. | 14:39:15 |
| 6 | Q  So with the -- | 14:39:15 |
| 7 | A  And let me -- and then let me caveat that | 14:39:16 |
| 8 | with that's the EBITDA that was -- about 34 to 35. | 14:39:20 |
| 9 | Sometimes buyers look at EBITDA differently. | 14:39:27 |
| 10 | Okay?  And so you'd have to ask Odyssey how -- | 14:39:30 |
| 11 | what did they use as -- | 14:39:35 |
| 12 | Q  Okay. | 14:39:36 |
| 13 | A  -- their EBITDA. | 14:39:37 |
| 14 | It could have been higher -- | 14:39:38 |
| 15 | Q  So -- | 14:39:39 |
| 16 | A  -- in fact a lower multiple.  Because they | 14:39:40 |
| 17 | could have said:  Well, you guys were shut down | 14:39:42 |
| 18 | for a month in April because of COVID, and | 14:39:44 |
| 19 | earnings went way down and then came back up.  And | 14:39:47 |
| 20 | so we're going to add back April as if it had | 14:39:50 |
| 21 | never happened. | 14:39:53 |
| 22 | So, therefore, the EBITDA -- their view of | 14:39:54 |
| 23 | EBITDA would have been higher -- | 14:39:57 |
| 24 | Q  So you -- | 14:39:58 |
| 25 | A  -- and that's very possible.  But I don't | 14:39:58 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                    198

| | | |
|---|---|---|
| 1 | know how they viewed it. | 14:40:00 |
| 2 | Q  So to do the math for the EBITDA multiple, | 14:40:01 |
| 3 | I took 573 million and divided by 35, and that | 14:40:05 |
| 4 | comes to a 16.3714286 times multiple for EBITDA. | 14:40:09 |
| 5 | That was the actual sale EBITDA multiple, | 14:40:22 |
| 6 | right? | 14:40:24 |
| 7 | A  No, because the 573 was not all paid.  So | 14:40:27 |
| 8 | I can't remember the exact amount.  They paid | 14:40:30 |
| 9 | about -- a little bit, like maybe 562, of the | 14:40:33 |
| 10 | earnout, and EBITDA was about 35.  So that might | 14:40:36 |
| 11 | be the more -- the closer way to look at it. | 14:40:39 |
| 12 | Q  Okay.  That's still about a 16.05 -- | 14:40:42 |
| 13 | A  Mm-hm. | 14:40:47 |
| 14 | Q  -- multiple. | 14:40:47 |
| 15 | A  That sounds about right. | 14:40:48 |
| 16 | Q  Okay. | 14:40:50 |
| 17 | A  That's how it looked to us.  Again, it | 14:40:50 |
| 18 | could have looked different to them.  So they | 14:40:52 |
| 19 | might have -- if you ask them, they might say: | 14:40:55 |
| 20 | Yeah, we paid 14 times for it. | 14:40:57 |
| 21 | Q  And are you aware of what add-backs they | 14:40:59 |
| 22 | did make after -- | 14:41:02 |
| 23 | A  I'm not aware, no. | 14:41:03 |
| 24 | Q  Okay. | 14:41:04 |
| 25 | A  That -- sorry.  I want to correct that. | 14:41:23 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                    199

| | | |
|---|---|---|
| 1 | That's not entirely true. | 14:41:25 |
| 2 | I'd have to go back and look, but because | 14:41:31 |
| 3 | we kept an investment in ProPharma through our | 14:41:33 |
| 4 | structured capital fund, different fund, different | 14:41:37 |
| 5 | entity, we continued to receive financials.  And I | 14:41:40 |
| 6 | recall their EBITDA being more like 36, | 14:41:45 |
| 7 | 37 million. | 14:41:53 |
| 8 | I'd want to go back and verify that.  But | 14:41:53 |
| 9 | now thinking through it and talking through it | 14:41:56 |
| 10 | with you, that has jogged my memory that they had | 14:41:58 |
| 11 | internally a higher EBITDA after we closed. | 14:42:01 |
| 12 | And we only knew that because of our -- we | 14:42:04 |
| 13 | typically don't have visibility into that, but | 14:42:07 |
| 14 | because we had an investment through our | 14:42:10 |
| 15 | structured capital fund, I recall that coming up. | 14:42:12 |
| 16 | But that was -- that was a while ago, so I | 14:42:15 |
| 17 | would want to confirm that. | 14:42:17 |
| 18 | Q  And after the transaction was complete and | 14:42:18 |
| 19 | ProPharma was sold, what was the general consensus | 14:42:28 |
| 20 | among Linden with the actual price that it sold | 14:42:32 |
| 21 | for?  Was it positive or negative? | 14:42:37 |
| 22 | MR. GILMORE:  Objection, form, foundation. | 14:42:44 |
| 23 | BY THE WITNESS: | 14:42:45 |
| 24 | A  Can you rephrase it for me? | 14:42:45 |
| 25 | BY MR. MINSON: | 14:42:47 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                    200

| | | |
|---|---|---|
| 1 | Q  Were the partners at Linden happy or upset | 14:42:47 |
| 2 | with the price that ProPharma reached when the | 14:42:50 |
| 3 | profit company was sold? | 14:42:56 |
| 4 | MR. GILMORE:  Objection, form and | 14:42:58 |
| 5 | foundation.  I think it's beyond the scope of the | 14:42:59 |
| 6 | 30(b)(6), so the witness can answer in his | 14:43:01 |
| 7 | personal capacity. | 14:43:04 |
| 8 | BY THE WITNESS: | 14:43:05 |
| 9 | A  I think everybody was pleased with the | 14:43:05 |
| 10 | outcome during that time and given, you know, the | 14:43:07 |
| 11 | financial performance of the company. | 14:43:11 |
| 12 | BY MR. MINSON: | 14:43:27 |
| 13 | Q  Okay.  And we talked about -- over the | 14:43:27 |
| 14 | last few hours about how the investment bank | 14:43:29 |
| 15 | presentations are forward-looking and they're | 14:43:32 |
| 16 | usually, you know, trying to be, I guess, | 14:43:35 |
| 17 | hopeful -- what did you say was the word? | 14:43:40 |
| 18 | A  Aspirational. | 14:43:42 |
| 19 | Q  Aspirational, maybe. | 14:43:43 |
| 20 | So don't you normally sell companies based | 14:43:45 |
| 21 | on forward-looking valuations? | 14:43:51 |
| 22 | A  It really depends.  It's not normal.  And | 14:43:53 |
| 23 | forward can mean different things, depending on | 14:43:59 |
| 24 | the business. | 14:44:02 |
| 25 | So if a business is locked in -- if the | 14:44:02 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                    201

| | | |
|---|---|---|
| 1 | next 12 months of revenue are totally locked in, | 14:44:06 |
| 2 | like a software, SaaS, business where you pay for | 14:44:09 |
| 3 | your subscription upfront for the year, then, in | 14:44:12 |
| 4 | fact, you might pay a full 12 months forward | 14:44:15 |
| 5 | because you have that -- it's locked in.  It's | 14:44:18 |
| 6 | almost guaranteed, right. | 14:44:22 |
| 7 | In a business like ProPharma, nothing is | 14:44:22 |
| 8 | guaranteed, you know, even beyond a month.  And | 14:44:25 |
| 9 | so -- nothing is guaranteed, period.  And so, you | 14:44:30 |
| 10 | know, a business like that might trade on, like, a | 14:44:34 |
| 11 | two- or three-month-forward look. | 14:44:38 |
| 12 | Q  Okay. | 14:44:41 |
| 13 | A  But it's not going to trade on a 12-month | 14:44:41 |
| 14 | forward.  And, typically, the way these deals work | 14:44:44 |
| 15 | is you spend a lot of time doing diligence and you | 14:44:47 |
| 16 | sign and then you might close 30 days later, and | 14:44:50 |
| 17 | so you're kind of looking like -- once you close, | 14:44:53 |
| 18 | you're almost right there at trailing.  So you're | 14:44:55 |
| 19 | very close on top of trailing. | 14:44:57 |
| 20 | That's typically how we look at it for a | 14:44:58 |
| 21 | business like ProPharma.  So it's -- | 14:45:01 |
| 22 | Q  But you -- | 14:45:03 |
| 23 | A  -- it's forward, but by the time you | 14:45:04 |
| 24 | close, it's -- it really becomes trailing.  And | 14:45:07 |
| 25 | it's not forward by that much. | 14:45:08 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                      202

| | | |
|---|---|---|
| 1 | Q  Well, it's -- from the way you described, | 14:45:09 |
| 2 | I would say that by the time you close, it's not | 14:45:11 |
| 3 | trailing.  It's probably at the time of the | 14:45:14 |
| 4 | valuation, right? | 14:45:16 |
| 5 | It's like -- is it -- you do a prospective | 14:45:18 |
| 6 | value; and then by the time you close, you meet | 14:45:22 |
| 7 | that prospective value without having the actual | 14:45:25 |
| 8 | data in front of you.  Or do you sell it on the | 14:45:28 |
| 9 | actual past data? | 14:45:33 |
| 10 | A  So if you're buying the business? | 14:45:35 |
| 11 | Q  Yeah. | 14:45:38 |
| 12 | A  So if you're buying it, you might say: | 14:45:38 |
| 13 | Okay, we're going to value you -- and, again, it | 14:45:40 |
| 14 | depends on the business.  Some people might -- | 14:45:43 |
| 15 | some people looked at ProPharma and didn't value | 14:45:45 |
| 16 | it on a forward basis.  And so they valued it on a | 14:45:48 |
| 17 | trailing basis, which is probably how Pat valued | 14:45:52 |
| 18 | it with ProPharma -- with Summit when he was | 14:45:55 |
| 19 | bidding on ProPharma with them. | 14:45:59 |
| 20 | And so -- but you might look at it and | 14:46:02 |
| 21 | say:  All right.  Well, I've got a lot of | 14:46:05 |
| 22 | confidence that they're going to hit their numbers | 14:46:08 |
| 23 | three months from now.  So if I apply the same | 14:46:10 |
| 24 | multiple and the business is growing, I can pay a | 14:46:13 |
| 25 | little bit more and I might win the auction. | 14:46:15 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                    203

| | | |
|---|---|---|
| 1 | Because by the time I get through diligence, by | 14:46:17 |
| 2 | the time I get through financing and raising debt | 14:46:21 |
| 3 | and all those things, we'll actually own the | 14:46:23 |
| 4 | business three months from now.  And so that | 14:46:25 |
| 5 | forward that we're paying is going to actually be | 14:46:27 |
| 6 | a closing -- or a trailing multiple. | 14:46:30 |
| 7 | Am I making sense? | 14:46:31 |
| 8 | Q  Mm-hm. | 14:46:33 |
| 9 | MR. MINSON:  I'd like to move to strike | 14:46:38 |
| 10 | how Pat valued ProPharma with Summit from the | 14:46:41 |
| 11 | record.  It not only assumes facts that are not in | 14:46:46 |
| 12 | evidence; it's nonresponsive to a question.  And | 14:46:50 |
| 13 | it's also irrelevant to what we're discussing | 14:46:54 |
| 14 | so... | 14:46:57 |
| 15 | MR. GILMORE:  We object to that motion. | 14:46:58 |
| 16 | MR. MINSON:  And I'd also add that it's | 14:47:03 |
| 17 | speculative. | 14:47:07 |
| 18 | BY MR. MINSON: | 14:47:12 |
| 19 | Q  And have you ever sold a business, as a | 14:47:12 |
| 20 | seller, using a trailing valuation? | 14:47:14 |
| 21 | A  Well, we don't -- when you sell a | 14:47:18 |
| 22 | business, you present the financials. | 14:47:20 |
| 23 | Q  Right. | 14:47:22 |
| 24 | A  And it's up to the buyer how they | 14:47:23 |
| 25 | interpret valuation.  So we don't know that.  You | 14:47:26 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                     204

| | | |
|---|---|---|
| 1 | have to ask the buyers in each case.  Did they | 14:47:32 |
| 2 | look at it on a forward basis?  Did they look at | 14:47:34 |
| 3 | it on a trailing basis?  I don't know. | 14:47:36 |
| 4 | Q  But you -- would you market it on a | 14:47:38 |
| 5 | trailing basis? | 14:47:41 |
| 6 | A  Sorry, would we market? | 14:47:43 |
| 7 | Q  Market, when you -- | 14:47:45 |
| 8 | A  Put -- | 14:47:46 |
| 9 | Q  -- put forward a value, would you use a | 14:47:46 |
| 10 | trailing basis?  Have you ever done that? | 14:47:49 |
| 11 | A  We don't put forward -- when we sell a | 14:47:51 |
| 12 | business, we present the financials.  We don't put | 14:47:53 |
| 13 | forward a valuation.  We leave that to the buyers, | 14:47:55 |
| 14 | to tell us what the company might be valued at. | 14:47:58 |
| 15 | But we provide historical and future. | 14:48:02 |
| 16 | Q  But it -- so the pitch decks that we | 14:48:05 |
| 17 | looked at earlier, they're all looking at what the | 14:48:07 |
| 18 | business will be in the future.  And those are the | 14:48:09 |
| 19 | decks that you would use -- or you did use, in | 14:48:12 |
| 20 | some cases -- when you sold ProPharma. | 14:48:15 |
| 21 | So I'm wondering, is that normally how the | 14:48:19 |
| 22 | pitch decks would look?  Is it always | 14:48:21 |
| 23 | forward-looking?  Or have you ever sold the | 14:48:23 |
| 24 | business using a trailing? | 14:48:25 |
| 25 | A  These pitch decks, so the Exhibits 30 | 14:48:27 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                    205

| | | |
|---|---|---|
| 1 | through 34 -- | 14:48:30 |
| 2 | Q  Right. | 14:48:31 |
| 3 | A  -- or 35, are not used and are not shared | 14:48:31 |
| 4 | with prospective buyers.  We create new materials. | 14:48:34 |
| 5 | It's called a confidential information | 14:48:37 |
| 6 | presentation or memorandum. | 14:48:40 |
| 7 | Q  Okay. | 14:48:41 |
| 8 | A  And those presentations have an overview | 14:48:41 |
| 9 | of the business.  And it's got customer | 14:48:46 |
| 10 | information, in terms of what does the customer | 14:48:48 |
| 11 | universe look like, what does the market look | 14:48:52 |
| 12 | like. | 14:48:54 |
| 13 | And then, generally, a financial section, | 14:48:54 |
| 14 | and in the financial section will have historical | 14:48:56 |
| 15 | and projected financials, as is, with no -- there | 14:49:00 |
| 16 | are no comps in that book.  There are no -- | 14:49:03 |
| 17 | there's no EBITDA multiple.  There's no valuation | 14:49:05 |
| 18 | or anything like that. | 14:49:09 |
| 19 | Q  Did you create one of those for ProPharma | 14:49:12 |
| 20 | when it sold to Odyssey? | 14:49:14 |
| 21 | A  Yes.  We created a confidential | 14:49:18 |
| 22 | information memorandum, exactly. | 14:49:20 |
| 23 | Q  Okay.  Was that -- was that produced to | 14:49:21 |
| 24 | us? | 14:49:23 |
| 25 | A  I don't know. | 14:49:24 |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                          206

| | | |
|---|---|---|
| 1 | Q  Okay. | 14:49:25 |
| 2 | MR. MINSON:  I think that's all the | 14:50:12 |
| 3 | questions I have.  Do you have any questions? | 14:50:13 |
| 4 | MR. GILMORE:  I don't have any questions | 14:50:15 |
| 5 | for the witness. | 14:50:16 |
| 6 | I just -- I do want to note for the record | 14:50:17 |
| 7 | earlier today there was a colloquy about whether | 14:50:20 |
| 8 | we had produced the metadata associated with the | 14:50:23 |
| 9 | June 27, 2019, email attaching the signed board | 14:50:28 |
| 10 | resolution removing Mr. Donnelly from the board. | 14:50:32 |
| 11 | As reflected in the correspondence that I | 14:50:35 |
| 12 | sent Counsel earlier today, that metadata was | 14:50:37 |
| 13 | produced.  We also, in that same email that I | 14:50:41 |
| 14 | sent, have provided you with the native email and | 14:50:43 |
| 15 | PDF of the signed document.  So I just wanted that | 14:50:49 |
| 16 | to be reflected on the record. | 14:50:56 |
| 17 | But I don't have any questions for the | 14:50:57 |
| 18 | witness at this time. | 14:50:58 |
| 19 | MR. MINSON:  Okay. | 14:50:59 |
| 20 | THE VIDEOGRAPHER:  We are off the record | 14:51:00 |
| 21 | at 2:50 p.m. with the conclusion of the deposition | 14:51:03 |
| 22 | of Mr. Farah. | 14:51:07 |
| 23 | (WHEREUPON, the deposition was concluded | 14:51:12 |
| 24 | at 2:50 p.m. CST) | 14:51:12 |
| 25 | | |

Transcript of Michael Farah, Designated Representative
September 14, 2022                                                  207

```
 1              ACKNOWLEDGMENT OF DEPONENT

 2         I, MICHAEL FARAH, do hereby acknowledge

 3    that I have read and examined the foregoing

 4    testimony and the same is a true, correct, and

 5    complete transcription of the testimony given by

 6    me and any corrections appear on the attached

 7    errata sheet signed by me.

 8

 9    _____     _____

10         (SIGNATURE)                   (DATE)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Transcript of Michael Farah, Designated Representative
September 14, 2022                                          208

```
 1      C E R T I F I C A T E   O F   R E P O R T E R

 2

 3        I, MICHELLE M. YOHLER, a Certified

 4   Shorthand Reporter within and for the County of

 5   Will, State of Illinois, do hereby certify:

 6        That previous to the commencement of the

 7   examination of the witness, the witness was duly

 8   sworn to testify the whole truth concerning the

 9   matters herein;

10        That the foregoing deposition transcript

11   was reported stenographically by me, was

12   thereafter reduced to typewriting under my

13   personal direction and constitutes a true record

14   of the testimony given and the proceedings had;

15        That the said deposition was taken

16   remotely before me at the time and place

17   specified;

18        That I am not a relative or employee or

19   attorney or counsel, nor a relative or employee of

20   such attorney or counsel for any of the parties

21   hereto, nor interested directly or indirectly in

22   the outcome of this action.

23

24

25
```

Transcript of Michael Farah, Designated Representative
September 14, 2022                                    209

1        IN WITNESS WHEREOF, I do hereunto set my

2    hand and affix my seal of office at Chicago,

3    Illinois, this 19th day of September, 2022.

4

5

6

7

8    _____

9    Michelle M. Yohler, CSR, RMR, CRR

10   Certified Shorthand Reporter

11   CSR No.:  84-4531

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Transcript of Michael Farah, Designated Representative
September 14, 2022

210

**A**

**a-1**
107:3
**abbreviated**
156:6
**ability**
187:21
**able**
69:25, 84:22,
103:23, 104:13,
104:24, 111:11,
111:22, 153:20,
179:12
**about**
22:8, 22:10,
33:8, 42:18,
48:16, 51:22,
54:8, 59:17,
62:11, 62:22,
63:4, 63:19,
64:15, 64:20,
66:25, 71:2,
73:23, 75:4,
77:16, 77:17,
80:10, 80:25,
81:1, 81:22,
83:17, 83:23,
86:9, 90:3,
90:22, 91:11,
93:14, 97:18,
101:22, 109:10,
112:9, 112:24,
115:20, 116:17,
121:18, 123:21,
124:13, 124:15,
124:23, 128:11,
131:2, 138:20,
141:25, 143:6,
144:3, 148:25,
150:14, 150:18,
151:4, 152:10,
157:5, 163:20,
164:11, 164:12,
178:13, 181:25,
185:12, 186:15,
191:5, 196:22,
196:24, 197:8,

198:9, 198:10,
198:12, 198:15,
200:13, 200:14,
206:7
**above**
123:1, 123:6,
133:9, 138:24,
172:5
**absolutely**
67:15
**accept**
123:3
**access**
153:18, 153:19,
154:4, 154:9,
154:20, 154:21,
155:5, 155:6,
155:10, 155:16
**according**
110:24
**account**
45:22, 65:5,
130:1, 130:2,
151:7, 151:8,
152:4
**accounting**
143:21
**accrual**
176:21
**accrued**
176:23
**accurate**
23:15, 48:6,
48:7, 48:10,
148:15, 194:1
**achieve**
152:2
**acknowledge**
38:1, 67:13,
207:2
**acknowledged**
21:21, 27:9,
27:24, 29:19,
49:3, 56:7,
56:13, 56:14,
66:10, 66:12,
105:8, 105:12
**acknowledges**
33:18, 33:20

**acknowledging**
29:17
**acknowledgment**
207:1
**acquire**
97:18, 100:4,
100:6, 100:7,
185:22
**acquired**
13:22, 14:1,
14:7, 14:8,
14:14, 64:6,
64:19, 145:8,
166:19
**acquires**
12:15
**acquiring**
78:21, 145:3
**acquisition**
13:18, 14:17
**acquisitions**
11:5, 64:23,
65:5, 65:8,
65:9, 65:14,
96:3
**across**
125:18
**act**
84:23
**acted**
83:20
**acting**
83:16
**action**
208:22
**actions**
90:13
**actual**
56:4, 59:15,
106:5, 120:22,
120:24, 195:8,
195:9, 198:5,
199:20, 202:7,
202:9
**actually**
36:5, 40:15,
43:11, 46:15,
49:3, 54:25,

59:14, 60:10,
60:17, 65:11,
65:13, 83:10,
83:16, 86:4,
87:13, 106:5,
109:21, 113:19,
123:1, 130:14,
136:15, 136:18,
140:5, 147:6,
149:1, 155:15,
167:17, 173:14,
173:24, 177:13,
179:24, 182:9,
184:23, 184:25,
185:7, 185:16,
190:10, 190:12,
193:13, 203:3,
203:5
**add**
52:6, 126:11,
156:5, 167:18,
189:6, 197:20,
203:16
**add-back**
167:18, 168:11,
168:13, 168:14
**add-backs**
198:21
**added**
96:17
**adding**
18:3
**addition**
133:9
**additional**
9:25, 60:4,
60:5, 60:21,
60:22, 61:1,
117:24, 118:19,
129:5, 129:11,
139:1
**address**
34:21, 74:25,
76:18, 80:14,
90:10
**addressed**
34:22, 101:12,
130:6

Transcript of Michael Farah, Designated Representative
September 14, 2022                                                                211

addresses
132:5
adjustment
167:14
administrative
115:1
admit
128:9
advance
135:22, 140:17,
140:22
advarra
5:19, 5:21,
13:12, 27:4,
65:16, 66:10,
66:20, 73:3,
73:6, 75:21,
75:24, 76:7,
76:9, 76:19,
76:20, 78:8,
78:13, 78:17,
78:19, 79:1,
79:8, 79:20,
79:23, 80:15,
80:19, 83:13,
83:18, 85:1,
85:12, 85:23,
86:5, 86:7,
86:16, 86:24,
87:15, 89:19,
97:15, 97:23,
98:22, 98:25,
99:2, 99:7,
99:9, 99:11,
100:4, 100:5,
100:6, 100:7,
100:8, 117:11,
130:2, 132:9,
146:16, 159:17,
159:18, 159:19,
159:21, 159:25,
160:4, 160:20,
161:11, 164:17,
190:13, 190:17,
190:22
advise
99:10
advising
185:21, 185:22,

186:6, 186:24
advisor
13:2
affirm
164:25
affirmative
6:4, 103:8
affix
209:2
after
10:19, 11:15,
14:1, 21:15,
21:19, 21:20,
22:1, 22:2,
23:3, 28:10,
28:12, 29:14,
41:22, 53:1,
65:15, 65:16,
73:10, 83:19,
83:22, 83:23,
85:1, 86:5,
86:6, 90:5,
106:14, 111:18,
118:7, 119:5,
119:7, 119:8,
128:5, 131:14,
139:7, 150:14,
150:17, 150:24,
187:12, 198:22,
199:11, 199:18
again
16:12, 29:12,
33:5, 33:15,
39:4, 39:25,
43:6, 44:21,
45:15, 50:3,
50:20, 54:13,
56:15, 64:17,
65:20, 68:9,
69:15, 74:21,
84:4, 100:2,
105:5, 116:7,
118:10, 119:12,
122:19, 125:4,
130:24, 135:10,
136:20, 144:12,
145:24, 147:4,
148:19, 149:13,

149:18, 171:16,
172:21, 182:5,
184:21, 189:6,
189:15, 192:19,
198:17, 202:13
against
74:2
agendas
11:1
aggregate
133:7, 154:1
ago
14:18, 74:19,
93:22, 185:21,
199:16
agree
17:23, 20:9,
20:20, 21:3,
38:5, 38:22,
45:13, 133:13,
133:17
agreed
27:8, 72:8,
87:18, 122:13
agreeing
37:3
agreement
4:18, 4:21,
5:9, 26:5,
28:21, 30:13,
32:16, 32:17,
32:18, 32:23,
33:22, 35:7,
35:10, 44:5,
44:9, 44:11,
44:16, 44:20,
44:24, 45:12,
45:16, 46:13,
47:24, 48:1,
48:3, 48:9,
49:1, 49:2,
49:6, 49:16,
49:18, 50:23,
51:9, 51:13,
51:14, 51:21,
51:23, 51:24,
52:16, 53:2,
53:4, 53:6,

53:16, 53:20,
53:23, 54:14,
54:16, 54:23,
55:1, 55:2,
55:10, 55:17,
55:23, 56:3,
56:19, 58:10,
70:20, 70:22,
71:24, 72:9,
101:18, 102:12,
102:22, 102:23,
102:24, 114:9,
118:17, 118:21,
118:25, 122:21,
122:23, 123:4,
123:8, 124:8,
128:20, 129:10,
129:17, 129:21,
131:18, 132:22,
134:6, 137:15,
171:19, 172:6,
175:3, 175:4
agreements
6:10, 47:5,
48:19, 118:10,
118:21, 119:20
agrees
89:19
ahead
32:13, 90:9,
108:22
albeit
160:6
all
10:4, 12:3,
12:5, 16:23,
17:1, 17:6,
17:8, 22:1,
24:22, 26:6,
37:1, 40:17,
51:20, 54:8,
59:3, 63:14,
64:11, 65:21,
77:17, 82:8,
82:22, 85:3,
89:1, 91:7,
91:22, 92:7,
93:23, 98:16,

Transcript of Michael Farah, Designated Representative
September 14, 2022

101:2, 102:14,
103:21, 105:3,
105:9, 105:16,
107:3, 109:3,
109:8, 109:10,
109:19, 113:17,
114:1, 114:4,
116:20, 117:16,
117:21, 118:14,
119:23, 122:7,
122:9, 125:2,
126:12, 127:5,
127:15, 129:23,
133:10, 133:19,
134:5, 134:12,
136:17, 138:16,
146:11, 152:5,
153:17, 155:13,
158:9, 158:10,
158:23, 160:15,
164:2, 164:3,
164:9, 168:20,
171:1, 174:10,
176:1, 176:17,
177:9, 178:7,
179:2, 180:10,
182:6, 182:7,
182:8, 183:3,
186:11, 187:9,
189:14, 194:21,
198:7, 202:21,
203:3, 204:17,
206:2
**allegation**
103:22, 104:17
**alleged**
37:9
**allow**
157:14
**allowed**
157:13
**almost**
22:24, 57:19,
61:10, 93:8,
111:21, 125:12,
167:13, 201:6,
201:18
**alone**
134:3

**along**
28:12, 87:1
**already**
15:5, 53:5,
54:4, 120:8,
165:4
**also**
3:18, 8:24,
10:2, 13:9,
15:13, 24:12,
25:13, 27:14,
27:21, 28:1,
28:3, 28:7,
38:18, 50:9,
54:12, 55:16,
73:4, 75:24,
76:3, 76:19,
76:21, 78:7,
78:20, 78:25,
80:16, 95:13,
97:22, 107:15,
109:12, 109:25,
116:2, 132:18,
144:24, 154:24,
167:6, 172:20,
182:11, 184:9,
184:13, 188:21,
189:20, 191:18,
203:13, 203:16,
206:13
**always**
62:7, 96:5,
100:17, 127:20,
150:13, 150:21,
151:19, 204:22
**amended**
4:13, 6:5,
34:5, 34:12,
35:6, 103:9
**amicable**
48:24, 85:7
**among**
123:14, 124:10,
199:20
**amount**
122:22, 130:1,
149:20, 198:8
**amounts**
133:9

**analyses**
150:22
**analysis**
162:17, 173:11,
174:4
**anchor**
166:15
**and-a-half**
182:25
**angst**
75:7
**another**
16:18, 56:22,
69:2, 73:21,
107:18, 107:21,
107:22, 107:24,
113:23, 119:5,
145:6, 160:19,
166:2, 195:14,
195:15, 195:16
**answer**
6:3, 37:2,
39:3, 46:7,
49:23, 49:25,
50:24, 53:9,
53:15, 58:13,
68:18, 69:15,
71:6, 84:11,
103:8, 104:10,
105:25, 106:3,
106:4, 108:15,
108:22, 108:23,
112:4, 123:12,
130:10, 187:20,
196:8, 200:6
**answered**
15:6, 183:8,
193:22
**answers**
10:3, 10:4,
10:6, 93:13
**anthony**
37:23, 70:17
**anticipate**
101:20
**anticipating**
164:12, 164:15,
164:18

**any**
9:22, 12:12,
15:1, 15:4,
15:9, 15:12,
16:25, 18:6,
24:2, 24:3,
24:18, 25:22,
30:13, 33:11,
34:16, 38:3,
40:4, 41:19,
45:11, 52:1,
52:18, 57:15,
59:10, 60:8,
60:20, 65:8,
65:9, 74:2,
77:20, 87:18,
97:15, 97:23,
106:25, 109:24,
110:25, 112:7,
114:17, 115:13,
116:16, 117:6,
117:14, 120:3,
120:18, 120:19,
121:13, 124:9,
131:8, 132:24,
133:19, 134:6,
135:21, 139:11,
139:19, 142:9,
142:10, 155:8,
159:15, 165:14,
172:11, 174:21,
187:25, 191:21,
193:5, 194:22,
206:3, 206:4,
206:17, 207:6,
208:20
**anybody**
113:3, 134:21,
142:21
**anymore**
66:8, 114:19,
176:8
**anyone**
12:23, 21:9,
98:11, 142:17
**anything**
11:19, 12:12,
49:16, 49:17,

Transcript of Michael Farah, Designated Representative
September 14, 2022

213

61:17, 61:18,
89:18, 104:4,
104:7, 105:14,
125:1, 125:2,
131:16, 134:10,
136:16, 140:24,
162:25, 179:24,
180:15, 186:9,
186:17, 188:1,
205:18
**anyway**
37:9, 104:17,
165:15, 193:4
**anyways**
155:3
**apart**
93:9
**apologize**
66:22
**appear**
207:6
**appears**
43:25, 162:15
**appendix**
6:16, 143:14
**applicable**
129:25
**applied**
132:12, 139:16
**applies**
145:17, 184:18
**apply**
125:17, 202:23
**appreciate**
63:19
**approach**
90:2, 126:2
**appropriate**
88:1
**approves**
127:4
**april**
98:9, 197:18,
197:20
**arbitrary**
123:25
**arbitration**
25:13, 33:14

**aren't**
136:21, 147:7
**argue**
51:22, 123:21,
164:2
**arguing**
131:4, 164:12
**argument**
18:10, 20:18,
36:11, 36:13,
37:9, 134:9
**arguments**
135:12
**around**
21:22, 25:10,
27:4, 28:2,
43:10, 49:22,
56:7, 57:17,
62:5, 76:6,
77:19, 78:4,
94:24, 96:2,
96:3, 98:3,
98:8, 99:13,
109:9, 113:24,
116:4, 125:10,
162:1
**arrive**
179:6
**article**
81:7
**asap**
118:22
**asked**
27:5, 27:24,
45:6, 68:4,
68:19, 71:2,
75:11, 77:12,
102:21, 108:7,
110:5, 110:20,
117:24, 119:7,
119:12, 119:13,
148:24, 162:19,
174:17, 183:8
**asking**
20:20, 21:3,
27:2, 53:10,
68:2, 68:4,
69:21, 73:23,

74:21, 74:22,
75:2, 82:15,
87:11, 107:19,
107:24, 109:23,
111:23, 153:5,
159:20
**asks**
44:3
**aspirational**
182:8, 184:23,
185:3, 189:15,
200:18, 200:19
**assistant**
27:15, 28:11,
30:8, 105:19,
115:1
**assistants**
107:2
**assisting**
11:5
**associate**
91:5, 91:12,
116:8
**associated**
151:25, 159:13,
206:8
**associates**
61:14, 178:12
**assume**
30:4, 44:15,
98:4, 155:10
**assumed**
24:14
**assumes**
203:11
**assuming**
48:18, 60:15,
66:20, 95:21,
107:3, 156:4,
157:25, 181:10,
183:22, 191:11
**assumption**
29:21, 30:2,
72:7, 160:14,
177:11, 192:12
**astute**
134:19
**attached**
25:18, 51:25,

60:3, 119:20,
129:17, 152:13,
157:22, 157:25,
164:24, 165:21,
194:13, 194:17,
207:6
**attaching**
37:20, 206:9
**attachment**
6:18, 38:12,
38:13, 38:17,
38:23, 39:18,
39:23, 40:11,
60:9, 60:15,
165:10
**attachments**
39:5, 39:9,
51:12
**attempt**
90:7, 90:8,
90:10
**attempts**
112:8
**attend**
105:5
**attention**
103:11
**attitude**
63:21, 88:25
**attorney**
132:1, 180:19,
208:19, 208:20
**attorney's**
128:18
**attorneys**
40:8
**auction**
202:25
**audible**
196:6
**audit**
44:6, 180:9
**audited**
125:22, 144:14
**auditors**
125:22, 148:21,
176:13, 179:17,
180:17

august
21:24, 26:7,
33:20, 49:2,
54:10, 56:1,
56:8, 56:11,
56:15, 57:13,
58:1
authority
36:14
authorized
35:1
available
112:1, 112:2
avalign
16:18
average
149:4
averages
149:17
award
132:22
aware
32:19, 41:11,
42:13, 42:15,
46:14, 46:23,
55:25, 59:12,
86:13, 109:10,
113:7, 118:12,
127:16, 144:12,
181:24, 198:21,
198:23

**B**

b) (6
108:7, 200:6
back
25:2, 28:11,
31:4, 44:12,
46:7, 46:13,
47:6, 62:15,
64:11, 64:15,
64:18, 65:12,
65:20, 71:14,
72:16, 73:22,
80:23, 89:14,
89:21, 99:1,
106:7, 112:17,
114:6, 117:18,

117:20, 118:14,
119:12, 120:14,
131:12, 135:18,
143:3, 145:18,
146:18, 151:17,
151:19, 167:18,
168:17, 171:17,
177:3, 189:11,
197:19, 197:20,
199:2, 199:8
back-and-forth
119:11
back-up
6:20
background
152:6
backlog
167:7, 167:25,
168:1, 168:2,
168:3, 168:6,
168:8, 168:22
backlog's
168:2
backup
119:7, 148:2
backwards
177:19, 178:3
bad
83:16, 86:8
bank
20:21, 21:4,
135:16, 136:15,
139:8, 139:13,
139:19, 140:9,
191:15, 200:14
bank-created
141:22
banker
172:19
bankers
151:3, 151:22,
173:14
banking
18:9, 20:16,
20:21, 21:25,
22:17
banks
21:6, 22:24,

23:6, 120:9,
120:18, 120:19,
136:2, 136:6,
151:15, 173:22,
181:5, 193:4,
193:20, 194:25
base
125:13, 134:24
based
45:14, 69:5,
75:10, 88:5,
95:3, 95:19,
108:16, 122:7,
124:18, 125:21,
126:2, 127:2,
134:2, 137:4,
139:13, 139:14,
139:15, 140:21,
144:8, 153:18,
167:24, 168:15,
172:1, 172:22,
172:25, 173:23,
175:3, 175:13,
177:9, 179:6,
179:7, 184:5,
188:3, 188:13,
200:20
bases
40:9
basically
36:10, 72:1,
89:12, 98:15,
145:15, 166:24
basis
31:7, 31:19,
40:20, 73:8,
95:17, 202:16,
202:17, 204:2,
204:3, 204:5,
204:10
bates
17:18, 60:9,
72:24, 112:22
bates-labeled
60:10, 70:12,
72:25, 101:15,
152:25
bates-stamp
17:19

bates-stamped
25:25, 37:21,
59:25, 89:10
beato
3:12
became
10:17, 13:12,
13:15, 42:15,
63:16, 65:15,
65:16, 66:10,
66:20, 94:2,
94:4
because
27:3, 30:4,
33:5, 39:18,
44:13, 46:14,
46:21, 48:13,
48:21, 49:16,
50:21, 54:2,
55:11, 55:16,
57:20, 61:23,
64:19, 64:23,
69:16, 69:22,
73:3, 76:25,
77:3, 79:7,
81:7, 83:15,
83:16, 84:18,
84:23, 86:1,
86:9, 88:24,
92:12, 93:4,
98:8, 100:14,
102:2, 102:5,
102:7, 102:9,
102:12, 103:14,
105:2, 105:10,
110:1, 110:3,
110:6, 111:21,
116:7, 123:21,
124:5, 124:6,
125:11, 133:10,
135:12, 140:17,
145:11, 146:25,
147:10, 149:12,
149:13, 150:16,
152:6, 153:23,
153:25, 154:8,
157:19, 161:20,
161:21, 163:23,

**165:9,** 165:12,
165:22, 166:9,
167:7, 167:9,
174:12, 174:14,
178:25, 179:1,
179:20, 180:8,
182:3, 182:5,
186:19, 187:11,
190:25, 192:22,
194:1, 197:16,
197:18, 198:7,
199:2, 199:12,
199:14, 201:5,
203:1
**become**
86:15
**becomes**
201:24
**been**
9:4, 15:19,
16:16, 27:2,
28:3, 41:11,
43:7, 43:15,
46:14, 46:18,
48:13, 59:3,
61:24, 62:10,
64:12, 64:13,
65:22, 66:24,
69:22, 73:20,
76:10, 80:17,
83:7, 83:11,
83:12, 86:12,
86:17, 88:21,
88:22, 89:18,
90:14, 106:23,
111:14, 111:16,
111:20, 111:25,
112:5, 112:9,
113:2, 116:9,
116:11, 116:16,
119:11, 121:15,
121:16, 125:23,
127:20, 131:8,
137:18, 144:10,
144:14, 146:19,
165:4, 166:20,
190:4, 195:4,
197:14, 197:23

**before**
2:4, 13:22,
17:24, 40:4,
42:10, 42:14,
43:13, 46:18,
46:20, 60:25,
65:18, 67:3,
70:2, 73:12,
74:8, 77:25,
83:13, 84:11,
90:4, 100:11,
109:23, 131:17,
137:25, 152:16,
169:7, 170:20,
179:4, 179:9,
208:16
**begin**
143:6
**beginning**
62:16, 94:21,
143:4
**begins**
8:2, 19:3,
19:23, 153:2
**behalf**
3:2, 3:10,
8:17, 8:20,
17:16, 25:12,
26:13, 35:2,
108:20, 108:23
**behaving**
164:15
**behind**
37:21, 85:3,
184:24
**being**
14:7, 14:8,
14:14, 15:7,
22:12, 28:24,
35:25, 48:21,
61:9, 78:25,
85:25, 91:3,
91:10, 91:23,
92:1, 92:15,
101:21, 108:1,
109:3, 110:25,
122:25, 123:17,
124:6, 127:16,

157:9, 158:18,
160:1, 160:10,
160:13, 160:17,
164:17, 169:22,
171:18, 175:13,
175:19, 181:6,
186:7, 193:23,
195:2, 195:15,
199:6
**belief**
95:3, 95:18
**believe**
11:10, 14:15,
14:19, 14:20,
14:23, 28:19,
29:11, 33:15,
39:22, 42:5,
43:6, 50:13,
52:1, 58:20,
73:7, 80:10,
85:22, 87:10,
92:16, 95:11,
102:19, 106:13,
111:8, 139:17,
141:21, 141:22,
159:3, 168:12,
168:13, 188:18,
193:10, 193:14
**believed**
111:7, 111:13,
124:6, 148:15
**below**
25:15, 44:22,
81:1, 81:3,
143:23, 162:23,
184:8, 185:25,
191:5
**belts**
109:9, 116:3
**ben**
3:19, 8:10
**bennett**
44:3, 44:18,
60:1, 194:12
**best**
12:18, 94:20,
160:3, 164:20,
187:21

**better**
121:19, 147:9,
161:20, 175:1,
180:1, 180:7,
193:12
**between**
10:10, 43:23,
43:25, 57:24,
67:25, 68:2,
70:23, 71:25,
92:14, 92:19,
93:20, 98:7,
173:12, 193:6
**beyond**
97:15, 123:1,
123:6, 162:25,
172:5, 200:5,
201:8
**bid**
185:22, 185:24
**bidding**
202:19
**big**
55:15, 77:7,
140:13, 151:1,
160:20, 182:7
**bigger**
140:14, 149:9
**bit**
60:24, 63:16,
63:21, 63:22,
77:7, 80:16,
85:2, 85:4,
91:11, 97:18,
119:10, 121:19,
146:2, 147:1,
193:12, 198:9,
202:25
**blair**
7:8, 183:16,
191:15
**block**
5:13
**boards**
10:15, 15:9,
15:19, 16:10,
26:6, 106:24,
107:16

Transcript of Michael Farah, Designated Representative
September 14, 2022

216

book
205:16
bookends
64:3
books
126:7
both
37:22, 52:2,
55:18, 63:7,
84:7, 93:13,
94:12, 98:7,
106:24, 110:19,
117:7, 153:3,
193:19
bottom
18:23, 18:25,
19:12, 19:14,
35:22, 80:13,
148:11, 171:2
bought
64:4, 64:6,
64:7, 65:23,
78:6, 126:13
boulevard
3:5
bound
70:20
breadth
147:10
break
9:11, 62:9,
142:24
breakdown
158:2
brianna
105:19, 106:21,
107:15, 109:16,
109:22, 110:5,
110:14, 110:16,
110:19, 112:17,
113:13, 114:24,
115:1, 116:1
brief
11:16
bring
96:19, 145:17
broad
147:6

broaden
149:15
brought
63:12, 83:15
bunch
135:4, 187:1
business
11:20, 16:17,
17:7, 22:25,
24:13, 33:7,
48:5, 48:10,
58:4, 64:4,
64:5, 64:22,
65:23, 77:1,
97:19, 121:18,
121:19, 135:1,
138:20, 138:23,
140:11, 145:6,
160:12, 160:21,
160:22, 161:4,
161:5, 161:20,
167:8, 167:18,
167:24, 168:3,
168:9, 168:22,
168:23, 168:25,
171:24, 172:23,
176:16, 182:6,
193:12, 200:24,
200:25, 201:2,
201:7, 201:10,
201:21, 202:10,
202:14, 202:24,
203:4, 203:19,
203:22, 204:12,
204:18, 204:24,
205:9
buy
44:12, 46:13,
78:7, 78:12,
78:15, 78:20,
86:6, 86:12,
118:14, 126:13,
126:16, 126:18
buyer
36:6, 36:15,
76:10, 203:24
buyers
151:5, 197:9,

204:1, 204:13,
205:4
buying
99:9, 126:20,
145:4, 145:6,
202:10, 202:12
buyout
114:7, 153:7
buyouts
125:14

C

calculate
175:24, 175:25
calculated
148:17, 169:6
calculation
41:18, 44:15,
152:14, 155:21,
158:14, 163:8,
172:10, 172:15,
172:16, 173:12,
180:13
calculator
197:3
calendar
57:9, 105:3,
105:9, 105:10,
105:16, 105:21,
106:12, 109:4,
115:5
call
64:21, 73:11,
97:12, 103:11,
117:5, 121:14,
121:17, 160:15,
193:11, 193:20,
193:23, 194:13,
194:20, 194:21,
195:20
called
9:4, 51:14,
78:6, 112:1,
145:7, 205:5
calling
111:16
calls
32:12, 71:1,

91:18, 106:25,
109:24, 110:17,
111:16, 122:7,
132:22, 195:6
came
21:19, 27:23,
53:14, 84:24,
109:7, 131:13,
134:14, 135:19,
151:17, 151:19,
197:19
can't
45:14, 48:11,
50:6, 57:24,
66:5, 74:3,
77:3, 84:7,
96:8, 98:23,
116:15, 117:4,
187:6, 198:8
canceled
129:24, 167:17
cancellation
167:10, 167:11,
168:15
cantor
7:4, 181:7,
184:24
cap
61:10, 61:13,
61:23, 156:6,
158:16, 158:18,
158:25, 159:15
capacity
10:20, 16:23,
35:1, 108:16,
109:19, 200:7
capital
9:19, 11:8,
35:2, 35:3,
35:15, 35:16,
101:23, 136:25,
137:5, 148:11,
170:2, 175:8,
175:19, 177:7,
177:8, 177:24,
178:25, 196:2,
196:4, 199:4,
199:15

Transcript of Michael Farah, Designated Representative
September 14, 2022

| | | | |
|---|---|---|---|
| **capitalization**<br>158:21, 158:22,<br>159:3<br>**care**<br>11:22, 11:25,<br>12:3, 12:5,<br>17:1, 17:5,<br>17:6, 17:7,<br>64:20<br>**career**<br>138:21<br>**carries**<br>19:24<br>**case**<br>8:7, 28:7,<br>48:12, 49:15,<br>75:15, 116:11,<br>154:8, 159:6,<br>167:19, 183:22,<br>193:14, 193:17,<br>204:1<br>**cases**<br>204:20<br>**cash**<br>12:7, 101:21,<br>145:15, 145:16,<br>155:7, 161:12,<br>161:18, 161:21,<br>167:3<br>**casual**<br>97:16<br>**catch**<br>20:23<br>**cause**<br>85:6<br>**causing**<br>75:7<br>**caveat**<br>197:7<br>**cc'ing**<br>153:4<br>**cdmo**<br>5:13<br>**centers**<br>49:21<br>**centerview**<br>7:5, 183:13,<br>183:14, 194:12 | **centerview's**<br>194:17<br>**ceo**<br>13:12, 13:15,<br>14:4, 27:4,<br>63:22, 65:16,<br>66:10, 66:20,<br>76:19, 76:21,<br>76:25, 77:4,<br>77:10, 78:17,<br>79:22, 83:18,<br>85:23, 86:5,<br>86:7, 86:16,<br>86:24, 107:2<br>**ceos**<br>63:9, 107:3<br>**certain**<br>17:11, 25:6,<br>34:1, 37:15,<br>41:4, 43:19,<br>47:15, 51:4,<br>59:20, 69:22,<br>70:5, 71:19,<br>72:19, 80:4,<br>87:1, 87:5,<br>89:4, 95:25,<br>96:1, 97:1,<br>101:6, 103:3,<br>106:15, 118:2,<br>128:1, 131:20,<br>138:7, 143:10,<br>147:17, 152:21,<br>162:11, 169:14,<br>180:23, 193:13,<br>194:7<br>**certainly**<br>61:5, 64:3,<br>70:1, 121:12,<br>126:1, 127:7,<br>178:2, 191:1<br>**certified**<br>2:5, 208:3,<br>209:10<br>**certify**<br>208:5<br>**cfo**<br>41:9, 42:8,<br>42:16, 44:14, | 48:17, 157:14<br>**cfos**<br>63:9, 107:2<br>**chain**<br>4:10, 4:14,<br>4:17, 4:20,<br>4:23, 5:3, 5:12,<br>5:15, 5:17,<br>5:18, 5:20, 6:9,<br>6:11, 6:21,<br>6:23, 7:3, 7:9,<br>39:11, 43:23,<br>44:14, 113:3,<br>153:1, 153:3<br>**chairman**<br>10:17, 10:21<br>**challenged**<br>125:23, 144:14<br>**change**<br>92:13, 119:23,<br>145:13, 164:5,<br>164:6, 178:3<br>**changed**<br>92:20, 93:19,<br>165:14, 189:17<br>**changing**<br>178:22<br>**characteristics**<br>12:8<br>**characterization**<br>54:22, 128:9,<br>146:7<br>**characterize**<br>63:2<br>**chart**<br>136:9, 136:12,<br>170:11<br>**chasing**<br>89:18<br>**chawla**<br>106:22, 163:4,<br>164:22<br>**check**<br>40:1<br>**cherry**<br>135:7<br>**cherry-pick**<br>160:11 | **cherry-picking**<br>135:5, 164:19<br>**cherry-picks**<br>123:22, 160:2<br>**chestnut**<br>41:9, 42:8,<br>43:24, 44:3,<br>44:22, 45:9,<br>48:2<br>**chicago**<br>2:3, 8:13,<br>101:12, 209:2<br>**chicken-and-egg**<br>53:12<br>**chinese**<br>5:14<br>**choose**<br>79:20, 146:8<br>**chose**<br>57:13<br>**chronology**<br>117:23<br>**circle**<br>181:10<br>**circled**<br>181:9, 183:21,<br>189:20<br>**circumstances**<br>108:13<br>**claim**<br>37:12, 83:12,<br>191:24<br>**claimed**<br>78:8<br>**claiming**<br>185:18, 185:19,<br>186:19, 186:20<br>**claims**<br>159:16<br>**clarification**<br>9:23, 143:21<br>**clarify**<br>9:25, 46:9,<br>47:21, 68:18,<br>84:6, 93:17,<br>95:9, 102:20,<br>112:21, 113:11,<br>114:20, 121:6, |

Transcript of Michael Farah, Designated Representative
September 14, 2022

129:8, 141:12
**clarifying**
141:20
**clarity's**
54:13
**clause**
35:9
**clean**
61:25, 84:12
**cleaner**
58:8, 58:18,
58:25, 59:11
**cleaning**
62:7
**clear**
11:21, 28:25,
31:25, 55:15,
67:9, 68:10,
69:4, 69:20,
70:2, 74:5,
74:9, 78:14,
93:12, 122:19,
137:23, 150:5,
168:3
**clearly**
29:19, 38:19,
39:11, 39:14,
47:7, 73:22,
109:5, 124:6,
186:21
**clerical**
27:18
**client**
186:3
**clients**
138:21, 138:24,
139:4
**clinical**
16:17, 80:18,
167:12
**clock**
9:12, 62:5
**close**
172:24, 172:25,
191:12, 192:20,
196:18, 196:19,
201:16, 201:17,
201:19, 201:24,

202:2, 202:6
**closed**
11:15, 132:9,
190:15, 199:11
**closely**
13:3, 24:23
**closer**
198:11
**closing**
101:21, 102:4,
147:23, 203:6
**co-advisor**
183:17
**cohen**
87:11, 169:19,
170:12, 173:21,
174:6
**coincide**
58:19
**collaboration**
11:2
**collaborative**
100:18
**colleagues**
33:6, 92:8
**collecting**
151:20
**collective**
123:13
**collectively**
36:1
**colloquial**
9:16
**colloquy**
206:7
**column**
171:12
**com**
3:8, 3:16,
147:22
**combative**
94:2, 94:4,
94:6, 94:7
**come**
25:2, 27:6,
27:8, 66:11,
68:14, 69:21,
73:25, 74:9,

74:12, 74:23,
75:2, 120:15,
126:5, 159:13,
176:11, 178:12,
182:6, 191:12
**comes**
13:6, 61:12,
77:21, 100:17,
125:19, 136:24,
137:3, 198:4
**comfortable**
155:23, 157:9,
163:9
**coming**
27:10, 27:21,
39:12, 43:10,
52:2, 66:25,
87:22, 123:16,
152:16, 160:25,
167:25, 199:15
**command**
189:21
**commencement**
208:6
**commencing**
17:16
**comment**
141:25
**comments**
87:1
**common**
76:20, 159:8,
176:20, 176:24,
177:2
**communicate**
53:25
**communicated**
164:16
**communicating**
112:16
**communication**
59:15, 130:8,
130:19
**comp**
123:23, 134:15,
134:25, 135:4,
146:24, 147:5,
147:13, 149:14,

164:17, 167:21,
169:2, 176:10,
178:17, 178:19,
190:25
**companies**
11:24, 11:25,
12:4, 12:5,
12:17, 12:20,
12:22, 15:9,
15:13, 15:18,
16:5, 16:20,
16:25, 17:5,
63:9, 126:14,
134:25, 135:2,
144:10, 144:18,
144:19, 145:2,
145:13, 145:20,
179:11, 179:15,
200:20
**company**
12:2, 12:13,
12:14, 12:15,
14:8, 15:25,
16:2, 23:1,
24:19, 42:17,
43:12, 46:11,
78:6, 78:12,
78:16, 78:20,
79:1, 79:2,
83:10, 95:18,
101:3, 108:23,
120:10, 125:13,
125:19, 126:13,
126:16, 126:18,
126:19, 144:17,
145:3, 145:4,
145:5, 145:8,
145:25, 146:9,
146:24, 146:25,
149:6, 149:19,
149:23, 150:9,
150:10, 151:8,
151:24, 154:1,
160:6, 160:8,
160:19, 166:10,
167:2, 191:7,
191:11, 191:12,
194:22, 195:18,

Transcript of Michael Farah, Designated Representative
September 14, 2022

219

200:3, 200:11,
204:14
**company's**
24:17, 61:11,
95:14, 145:16
**comparable**
132:8, 144:18,
145:1, 145:2,
146:14
**comparables**
179:8, 179:12,
184:5, 190:23
**compare**
165:4
**comparing**
170:22
**compensating**
180:12
**competes**
73:4, 87:15
**competitive**
94:6, 161:6,
161:14
**competitor**
80:15
**complaint**
4:13, 6:6,
34:6, 34:12,
36:4, 36:13,
37:10, 52:7,
103:10
**complete**
199:18, 207:5
**completed**
21:6, 181:3,
188:7
**completely**
155:7, 157:6,
186:8
**compliance**
80:18, 85:12,
85:14, 157:14
**component**
160:21
**components**
158:24, 176:17,
176:19
**composed**
125:8

**comprehensive**
159:4
**comps**
132:21, 134:3,
134:17, 134:23,
147:7, 147:9,
164:11, 179:5,
183:1, 184:25,
185:15, 189:4,
205:16
**computer**
40:3
**concern**
27:4, 98:3,
99:12, 159:15
**concerning**
208:8
**concerns**
82:7, 82:8,
82:21
**concluded**
206:23
**conclusion**
32:13, 45:14,
71:1, 206:21
**conclusions**
40:5, 136:10
**concurrent**
139:2
**condition**
183:24
**confidence**
202:22
**confident**
181:11
**confidential**
205:5, 205:21
**confirm**
99:21, 153:24,
164:25, 199:17
**confirming**
110:21
**conflict**
66:11, 66:13,
66:15, 68:15,
73:6, 73:24,
75:6, 75:14,
75:18, 75:20,

76:24, 77:5,
77:9, 77:21,
78:3, 78:22,
79:4, 79:5,
79:12, 79:13,
79:21, 80:2,
80:10, 82:11,
82:25, 83:7,
83:8, 83:25,
84:21, 84:22,
87:22, 88:9,
88:24, 88:25,
89:17, 90:11,
90:14, 91:8,
91:10, 93:25,
94:3, 94:17,
98:3, 98:8,
98:13, 99:13,
100:11, 100:24,
186:25
**conflicted**
73:3, 75:11,
79:15, 90:4
**conflicts**
27:4, 67:13,
67:16, 76:4,
76:5, 76:18,
78:1, 87:19,
90:1, 97:22
**conforming**
163:12
**confused**
157:18
**confusion**
47:13
**congrats**
147:23
**conjunction**
13:1
**connection**
57:3
**connolly**
41:10
**consensus**
199:19
**consider**
190:22
**considered**
18:9, 20:17

**considering**
149:23, 150:4,
150:6
**consist**
35:11
**consistent**
90:13, 90:23,
125:17, 144:9,
148:23
**consistently**
125:11
**constitutes**
208:13
**consulting**
80:15
**consummate**
43:11
**contains**
38:3
**contention**
18:21
**context**
85:3, 99:25
**contingent**
154:21, 195:22
**continuation**
162:16
**continue**
32:24, 187:13
**continued**
4:25, 5:25,
6:25, 199:5
**continuing**
20:15, 153:18
**contract**
16:1, 16:19
**contracts**
160:24
**contribute**
195:5
**contributed**
195:7
**control**
124:19
**controlling**
11:25
**conversation**
29:14, 29:16,

33:19, 89:20,
91:21, 106:14,
119:5, 119:19
**conversations**
54:8, 67:22,
68:11, 69:5,
69:17, 116:16,
119:6
**coordinate**
153:7
**coordinating**
120:8, 120:13
**coordination**
193:5, 193:8
**copied**
30:8, 97:14,
109:11, 195:3
**copies**
18:6, 162:22,
164:23
**copy**
34:5, 50:9
**copying**
163:4
**correct**
13:10, 13:23,
13:24, 23:23,
26:11, 26:12,
26:18, 29:23,
30:13, 32:9,
36:15, 37:7,
38:15, 38:24,
39:6, 45:2,
46:1, 56:1,
56:24, 57:7,
65:13, 75:21,
75:22, 76:1,
76:2, 79:25,
101:4, 102:4,
114:12, 114:15,
114:16, 114:23,
120:5, 120:6,
122:14, 122:15,
122:17, 137:5,
146:10, 146:11,
148:16, 159:2,
160:14, 169:7,
169:8, 173:17,

175:9, 175:21,
175:23, 181:19,
181:21, 182:17,
183:15, 183:19,
184:15, 184:16,
188:22, 190:8,
190:9, 190:24,
196:5, 198:25,
207:4
**corrections**
207:6
**correctly**
39:3
**correspondence**
206:11
**corresponding**
177:24, 181:13
**cost**
148:4, 162:24,
166:4
**could**
12:11, 12:12,
23:1, 32:24,
46:18, 56:21,
62:9, 67:6,
74:13, 76:9,
79:11, 79:21,
79:23, 83:6,
83:7, 84:10,
84:22, 90:4,
96:24, 97:18,
97:20, 97:21,
97:22, 99:21,
100:23, 113:20,
119:11, 123:25,
135:7, 135:11,
140:14, 142:2,
145:4, 145:5,
150:19, 152:2,
152:18, 160:19,
163:24, 168:4,
171:1, 172:12,
176:7, 178:2,
179:16, 185:5,
195:3, 197:14,
197:17, 198:18
**couldn't**
74:2, 79:21

**counsel**
8:14, 9:1,
40:7, 108:6,
128:14, 128:17,
206:12, 208:19,
208:20
**count**
64:19
**counter-party**
190:14
**county**
208:4
**couple**
28:1, 48:15,
106:14, 140:7,
141:18, 142:7,
178:15, 185:21
**course**
9:18, 49:18,
61:5, 61:11,
66:24
**court**
1:1, 8:6, 8:23,
9:13
**covid**
64:12, 197:18
**coworkers**
92:8
**crazy**
84:13, 179:22
**create**
205:4, 205:19
**created**
26:20, 26:22,
27:12, 27:17,
29:23, 53:20,
83:14, 173:13,
205:21
**credit**
51:18, 51:19
**cross-talk**
81:10, 84:2,
187:5
**crr**
1:25, 2:4,
209:9
**csr**
1:25, 2:4, 2:5,

209:9, 209:11
**cst**
1:18, 206:24
**culmination**
54:11
**cumulative**
61:10
**curious**
161:25
**current**
118:13
**customary**
42:7, 48:20
**customer**
205:9, 205:10
**cutting**
81:12
**cv--mak**
1:6, 8:7

---

**D**

**data**
6:22, 6:24,
23:6, 24:21,
119:7, 119:12,
119:13, 121:11,
148:2, 148:6,
148:25, 151:20,
151:21, 151:23,
153:6, 153:21,
154:15, 154:16,
154:17, 158:11,
162:20, 172:3,
174:13, 182:23,
182:24, 193:6,
193:21, 202:8,
202:9
**date**
8:8, 13:14,
26:3, 38:3,
38:6, 53:1,
55:24, 56:2,
56:19, 56:23,
57:2, 57:14,
57:25, 58:6,
58:9, 58:19,
58:20, 59:4,
59:9, 66:19,

129:16, 131:10,
150:1, 153:21,
207:10
**dated**
34:17, 35:7,
37:13, 38:16,
53:2, 54:17,
54:18, 54:19,
54:20, 114:11,
120:22, 120:24,
194:16
**dates**
59:3, 135:25
**davis**
37:23, 70:18,
72:24, 101:11,
101:16, 108:14
**dawn**
46:21, 60:2,
60:3, 66:6,
66:14, 73:4,
73:11, 74:10,
75:15, 124:23,
124:25, 194:13
**day**
52:25, 76:25,
77:1, 114:15,
145:13, 209:3
**days**
27:9, 88:6,
106:14, 168:7,
168:8, 201:16
**deal**
55:15, 72:2,
83:17, 84:24,
85:18, 87:18,
109:14, 115:9,
116:8, 123:23,
148:4, 160:11,
190:15, 190:17
**dealing**
90:1
**deals**
62:3, 90:5,
172:24, 178:16,
201:14
**debt**
158:18, 158:23,

159:4, 159:7,
163:18, 176:15,
176:16, 176:17,
177:1, 203:2
**december**
74:7
**decide**
66:3
**decision**
65:24, 123:5,
123:13, 123:15,
151:1, 151:10,
152:7
**deck**
7:4, 7:5, 7:6,
7:7, 7:8, 127:4,
181:6, 189:20
**decks**
22:20, 22:23,
23:9, 23:14,
120:22, 120:24,
181:3, 204:16,
204:19, 204:22,
204:25
**defeats**
91:6
**defendant**
1:9, 3:10,
8:20, 9:18
**defendant's**
6:3
**defended**
63:15
**defending**
96:14, 96:15
**defenses**
6:4, 103:9
**defined**
149:20
**definitely**
65:1, 65:18,
153:22
**definition**
159:2, 159:4
**definitive**
40:4
**degree**
79:7

**delaware**
1:2, 8:6
**deliver**
33:16, 33:17,
96:1, 181:11
**delivered**
33:13, 34:9
**demand**
17:15, 25:13,
184:15, 188:20,
190:8
**demeanor**
63:21
**demonstrate**
104:7, 111:2,
111:4, 111:24
**demonstrating**
25:16
**denied**
104:1, 104:2,
104:11, 104:12
**dental**
16:2
**department**
45:11
**depending**
151:17, 151:18,
185:13, 200:23
**depends**
200:22, 202:14
**deponent**
207:1
**depos**
8:11, 8:24
**deposition**
1:13, 2:1, 8:3,
8:12, 9:15,
17:12, 25:7,
34:2, 37:16,
41:5, 43:20,
47:16, 51:5,
59:21, 70:6,
71:20, 72:20,
80:5, 87:6,
89:5, 97:2,
101:7, 103:4,
106:16, 108:8,
118:3, 128:2,

131:21, 138:8,
143:11, 147:18,
152:22, 162:12,
169:15, 180:24,
194:8, 206:21,
206:23, 208:10,
208:15
**derivative**
178:7
**derive**
126:8
**descending**
143:23
**describe**
79:3, 143:25
**described**
80:10, 129:17,
133:9, 136:3,
202:1
**describing**
79:5
**design**
22:24
**designate**
35:20, 36:2,
36:3, 36:7
**designated**
1:15, 35:23,
35:25, 108:11
**desire**
78:25
**detail**
65:22, 156:25,
159:9, 181:23,
184:24, 194:1
**details**
93:23, 130:3,
164:10, 182:16
**determine**
132:23, 173:19,
184:20
**determined**
146:16
**determines**
12:16, 173:23,
175:6
**detriment**
86:17, 95:1,

Transcript of Michael Farah, Designated Representative
September 14, 2022
222

95:18
**detrimental**
94:12
**develop**
12:25, 13:4,
92:11, 163:12
**developing**
54:11
**device**
12:13
**dialing**
82:8, 82:22
**difference**
67:24, 68:2,
77:8
**differences**
149:16, 161:23
**different**
16:5, 19:16,
130:2, 130:16,
144:15, 144:16,
145:25, 147:1,
149:19, 160:7,
161:9, 166:9,
166:10, 166:11,
166:12, 166:14,
167:2, 167:3,
167:4, 168:22,
169:2, 169:3,
171:2, 172:21,
181:4, 198:18,
199:4, 200:23
**differential**
195:11
**differently**
166:10, 197:9
**difficult**
63:17, 160:10
**diligence**
13:21, 14:10,
88:21, 99:11,
201:15, 203:1
**dilute**
149:15
**direct**
35:18, 35:20,
69:11
**directed**
115:24, 115:25

**direction**
64:17, 110:25,
208:13
**directly**
107:2, 117:18,
147:21, 208:21
**director**
10:15, 10:16,
10:21
**directors**
5:6
**disagree**
18:5, 20:10,
133:13, 133:17,
134:1, 186:13,
187:18
**disbursing**
181:18
**disclosed**
180:13
**discount**
145:17
**discounted**
145:15
**discounts**
132:25
**discovery**
22:6, 22:9,
22:10, 37:11,
37:20, 101:14,
143:16, 144:7,
157:22
**discretion**
146:8, 146:12,
146:13, 179:10
**discuss**
89:13, 98:2,
98:10, 148:8
**discussed**
25:21, 33:14,
34:9, 73:1,
97:7, 121:10,
124:10
**discusses**
34:13
**discussing**
77:23, 94:22,
97:11, 203:13

**discussion**
21:22, 27:7,
27:13, 27:22,
28:2, 31:2,
56:5, 56:6,
77:15, 77:19,
79:14, 109:7,
110:1, 110:7,
124:5, 162:16,
193:8
**discussions**
22:2, 23:4,
57:16, 65:9,
65:11, 74:6,
81:24, 85:18,
89:17, 93:2,
97:16, 97:23,
123:14, 124:23,
150:7, 150:8,
150:21, 178:11
**display**
139:11
**dispute**
25:22, 52:10,
52:14
**disputed**
25:17
**disputing**
131:2
**distribute**
41:17, 41:21
**distributions**
107:1, 120:4
**district**
1:1, 1:2, 8:6
**diversified**
161:16
**divide**
197:2
**divided**
198:3
**dividing**
192:11
**document**
17:11, 25:6,
25:24, 26:2,
26:10, 26:19,
26:22, 26:23,

26:24, 27:12,
27:16, 27:25,
28:4, 28:6,
28:9, 28:17,
29:7, 29:19,
29:23, 33:12,
34:1, 34:9,
34:14, 34:17,
37:12, 37:15,
37:21, 37:24,
38:2, 38:3,
38:6, 38:9,
38:15, 38:18,
38:23, 39:2,
39:5, 39:10,
39:23, 40:14,
40:16, 40:23,
41:4, 41:21,
42:22, 43:19,
47:15, 49:10,
49:14, 51:4,
52:19, 59:20,
59:25, 70:5,
70:14, 70:15,
70:16, 71:19,
72:5, 72:19,
80:4, 82:14,
82:17, 87:5,
89:4, 101:6,
102:9, 103:3,
104:10, 106:15,
112:25, 113:13,
118:2, 128:1,
129:16, 131:20,
138:7, 143:10,
144:5, 146:19,
147:17, 152:12,
152:21, 162:11,
169:14, 194:7,
196:3, 206:15
**documentation**
39:13, 39:14
**documents**
4:24, 25:13,
25:19, 46:25,
88:19, 97:1,
111:1, 112:19,
115:5, 124:18,

142:8, 154:18,
180:23, 183:23
**doing**
23:4, 49:17,
51:17, 64:22,
122:21, 124:24,
151:9, 168:18,
171:16, 176:8,
179:2, 191:13,
201:15
**dollar**
24:12
**dollars**
145:18, 171:3
**done**
43:9, 48:3,
48:8, 48:19,
121:13, 148:20,
149:21, 150:12,
174:4, 178:16,
181:16, 187:13,
187:23, 204:10
**donnelly**
1:4, 4:16,
4:19, 4:22,
4:24, 5:11, 6:8,
8:4, 8:18, 9:9,
9:17, 13:9,
17:17, 17:20,
21:18, 26:6,
28:18, 29:4,
29:5, 29:8,
29:22, 30:10,
31:9, 31:14,
32:7, 32:8,
32:21, 33:13,
34:10, 34:16,
34:20, 36:3,
36:8, 37:12,
39:12, 43:1,
44:5, 52:25,
60:19, 70:14,
70:24, 103:22,
104:23, 120:4,
128:15, 130:7,
132:5, 138:19,
138:25, 139:5,
152:15, 164:25,

169:20, 170:10,
170:13, 181:18,
186:20, 206:10
**donnelly's**
18:4, 18:10,
19:4, 20:18,
25:16, 45:22,
70:10, 103:9,
108:13, 138:23,
139:12, 144:1,
146:15, 170:1
**donnelly@advarra**
147:22
**door**
160:24
**double-checking**
165:8
**doug**
153:4, 153:7,
153:11, 153:24,
155:22, 156:4,
159:11, 163:4,
163:9, 164:22,
164:23
**doug's**
156:1
**dough**
156:4
**dove**
182:12
**down**
24:16, 35:22,
69:16, 73:2,
73:7, 73:13,
74:1, 74:23,
75:12, 92:17,
92:19, 97:10,
129:13, 148:3,
159:8, 167:16,
192:16, 197:17,
197:19
**drafted**
28:3, 131:25
**draw**
45:14
**drawing**
136:10
**drive**
2:2, 8:13,

11:1, 84:13,
140:24, 154:19
**drives**
137:12, 137:13,
140:6
**due**
13:21, 14:10,
88:14, 91:6,
138:25
**duly**
9:2, 9:4, 208:7
**during**
9:15, 10:14,
11:7, 13:8,
14:9, 14:17,
15:9, 56:15,
62:3, 62:23,
62:25, 63:14,
64:1, 92:2,
144:6, 200:10
**duties**
10:23, 10:25
**dynamic**
147:11, 147:12
**dynamics**
12:7, 167:3

**E**

**each**
23:8, 26:13,
35:19, 81:12,
84:4, 139:24,
144:14, 144:17,
145:24, 145:25,
146:25, 149:19,
181:5, 193:10,
204:1
**earlier**
64:9, 73:23,
89:8, 97:8,
190:16, 193:9,
204:17, 206:7,
206:12
**earliest**
78:2, 78:5
**early**
11:23, 27:24,
56:8, 56:14,

78:1, 106:13
**earn**
195:14
**earned**
195:24
**earnings**
197:19
**earnout**
101:22, 185:9,
195:17, 195:20,
195:24, 195:25,
198:10
**easier**
61:15, 89:13
**easy**
76:12, 79:12
**ebitda**
12:6, 24:17,
64:7, 132:11,
137:1, 137:12,
139:15, 140:21,
144:22, 148:12,
156:5, 157:19,
158:6, 158:10,
158:16, 159:12,
159:13, 162:1,
163:17, 165:17,
165:19, 167:14,
167:18, 169:5,
169:25, 172:25,
173:2, 173:4,
173:10, 176:10,
176:14, 176:25,
177:22, 177:25,
179:5, 179:6,
181:14, 184:6,
184:9, 185:13,
188:10, 188:17,
189:24, 191:4,
191:8, 191:12,
191:22, 192:6,
192:12, 192:19,
195:18, 195:19,
196:20, 196:25,
197:8, 197:9,
197:13, 197:22,
197:23, 198:2,
198:4, 198:5,

Transcript of Michael Farah, Designated Representative
September 14, 2022

224

198:10, 199:6,
199:11, 205:17
**edits**
152:16
**effect**
67:15, 67:20,
105:21
**effective**
26:7, 56:2,
56:8, 56:19,
57:25, 58:6,
95:12
**effectively**
60:6, 61:19,
86:16, 88:8,
126:24, 131:17,
135:5
**eight**
35:11
**either**
35:15, 79:19,
81:18, 106:6,
112:18, 182:13
**elaborate**
79:4, 160:9
**elected**
118:18
**electronic**
28:15
**ellis**
6:14, 28:12,
53:19, 53:25,
128:18, 132:2,
138:13
**else**
12:23, 49:16,
61:17, 121:16,
142:18, 142:21
**emailed**
28:24, 29:1,
29:8, 30:6,
30:7, 31:3,
110:3, 170:12
**emailing**
91:12, 91:13
**emails**
45:9, 61:8,
67:6, 84:17,

91:18, 110:16,
120:14, 122:9,
158:4
**employed**
175:13
**employee**
10:12, 10:13,
48:21, 49:20,
50:1, 56:21,
127:12, 208:18,
208:19
**employees**
43:24, 48:19,
49:24, 50:15,
50:20
**end**
27:22, 27:23,
40:25, 56:8,
56:12, 64:10,
64:14, 88:14,
94:23, 121:13,
140:20, 143:1,
148:22, 151:11,
170:20, 171:23,
175:2, 188:11,
191:22
**ended**
49:10, 49:12,
122:21
**engaged**
151:15
**engages**
11:21
**enjoyed**
91:24
**enough**
75:4, 75:6,
153:15
**enterprise**
24:4, 137:2,
137:12, 139:15,
140:6, 159:14,
176:25, 178:6,
181:11, 184:9,
188:15, 188:16,
191:4, 192:11,
195:13
**entire**
14:5, 16:15,

32:24, 129:14
**entirely**
26:21, 42:14,
199:1
**entities**
9:20, 26:14,
36:7, 36:14,
193:7
**entitled**
49:9, 49:13,
52:16, 102:8,
102:23, 122:20,
122:22, 123:1,
123:7, 123:19,
124:3, 124:7,
129:12, 131:1,
131:6, 131:18,
134:6, 134:12,
139:2, 171:20,
174:15, 174:16
**entitles**
118:17
**entity**
9:21, 199:5
**entry**
162:24
**equal**
177:2
**equates**
129:11
**equipment**
16:3
**equity**
6:12, 6:19,
11:23, 44:23,
45:2, 45:21,
51:15, 51:24,
52:3, 52:11,
57:3, 72:8,
73:8, 102:12,
102:22, 118:10,
118:13, 118:15,
118:16, 118:24,
118:25, 127:1,
127:12, 128:20,
131:10, 132:6,
143:8, 144:2,
145:5, 148:5,

150:12, 153:7,
158:18, 158:23,
159:1, 159:4,
161:18, 162:17,
164:7, 172:1,
172:5, 173:25,
175:4, 175:25,
176:18, 176:19,
177:2
**erg**
6:10, 6:20,
16:16, 27:21,
28:2, 51:13,
51:23, 51:25,
52:2, 52:8,
53:21, 54:2,
54:25, 63:7,
94:12, 106:24,
107:12, 107:16,
109:7, 109:9,
109:16, 110:1,
113:4, 113:5,
114:8, 114:9,
114:22, 115:8,
116:2, 116:4,
117:3, 117:6,
118:11, 118:13,
122:16, 148:2,
148:3, 162:23,
163:12, 165:17,
165:18, 166:1,
166:4, 166:8,
166:18, 166:25,
167:16, 167:17,
167:25, 168:9,
168:10, 168:21
**errata**
207:7
**error**
27:19
**especially**
74:10
**established**
35:13
**estimate**
193:19
**evaluate**
12:20, 13:3

evaluation
143:22
even
33:16, 61:15,
64:12, 69:1,
93:17, 123:23,
124:4, 134:14,
151:18, 160:13,
174:20, 191:12,
195:2, 201:8
event
165:14, 191:21
events
117:23
eventually
152:17, 183:15
ever
21:17, 28:17,
28:24, 29:7,
29:10, 29:11,
33:13, 68:4,
77:14, 83:20,
116:22, 125:6,
144:14, 203:19,
204:10, 204:23
every
48:4, 48:9,
48:12, 50:1,
50:14, 125:13,
125:19, 150:12,
159:9
everybody
61:12, 116:6,
116:13, 125:18,
177:4, 200:9
everyone
60:6, 62:4
everything
9:10, 17:6,
48:24, 62:7,
72:6, 77:1,
88:20, 116:3,
117:3, 117:5,
119:13, 156:13,
158:22, 161:1,
174:12, 181:23,
185:3
evidence
25:16, 203:12

evidencing
25:19
exact
10:18, 13:14,
39:17, 67:14,
68:9, 102:18,
146:4, 176:22,
198:8
exactly
30:19, 49:13,
56:16, 71:16,
80:1, 87:22,
90:3, 119:18,
205:22
examination
9:6, 208:7
examined
9:5, 207:3
example
66:6, 73:21,
87:21
excel
60:12
exception
138:22
exceptional
185:4
excerpts
45:5
excess
189:22
excessive
18:11, 20:19
exclude
179:13
excluded
179:11
excuse
129:18
execute
44:11, 113:14,
168:4
executed
53:6, 129:16
executive
134:20
executives
63:10, 155:13

exercise
123:4, 129:18,
174:24, 180:20
exercising
46:12
exhibit
17:10, 17:12,
25:5, 25:7,
25:11, 33:24,
34:2, 37:16,
41:5, 42:1,
42:2, 42:3,
42:23, 42:24,
43:17, 43:20,
47:14, 47:16,
47:19, 50:10,
51:5, 59:21,
59:24, 70:6,
70:9, 71:20,
71:23, 72:20,
72:24, 80:5,
80:8, 81:22,
81:24, 87:6,
88:6, 89:5,
89:10, 90:12,
93:4, 97:5,
99:24, 100:1,
101:7, 101:10,
103:4, 103:7,
106:16, 106:19,
112:22, 112:23,
114:6, 115:24,
115:25, 116:20,
116:25, 118:3,
122:4, 128:2,
128:14, 131:21,
131:24, 138:6,
138:8, 138:11,
143:11, 143:14,
147:16, 147:18,
152:22, 152:25,
156:20, 159:11,
162:10, 162:12,
162:15, 165:7,
169:13, 169:15,
174:7, 180:22,
180:24, 181:6,
183:12, 187:23,

187:24, 188:6,
189:18, 191:14,
194:8
exhibits
4:9, 5:2, 6:2,
7:2, 142:10,
181:2, 204:25
exist
79:5
existed
100:11
exit
62:4, 134:8,
137:9, 137:18,
137:20, 137:23,
159:22, 175:16
exited
137:20
expect
104:4
experience
48:17, 49:20,
49:21, 50:14,
64:2
explain
98:13, 166:25,
170:4
explains
36:4, 51:15
exploratory
151:19
exploring
86:12
express
78:3, 128:19,
129:20
expressed
76:3, 76:5,
77:25
expression
75:10, 82:24
expressly
25:20
extent
32:12, 71:1,
110:12, 113:14,
117:14
extraordinary
167:11, 167:12

Transcript of Michael Farah, Designated Representative
September 14, 2022

226

| F | | | |
|---|---|---|---|
| **f-l-e-x-a-n** | **far** | **felt** | **finds** |
| 15:22 | 55:2, 95:11, | 69:20, 96:22, | 42:18 |
| **facility** | 95:14, 115:5, | 96:23, 123:16 | **fine** |
| 5:14 | 134:18, 134:24, | **few** | 19:22, 55:14, |
| **fact** | 138:24, 167:15 | 11:11, 27:9, | 63:2, 63:3, |
| 40:15, 48:8, | **farah** | 74:19, 137:7, | 81:16, 112:14, |
| 69:21, 124:25, | 1:16, 2:1, 4:4, | 161:8, 200:14 | 114:2, 117:4, |
| 129:11, 130:15, | 8:3, 9:3, 10:8, | **figure** | 117:6, 138:2, |
| 131:5, 166:13, | 17:12, 25:7, | 12:17, 18:1, | 138:4 |
| 197:16, 201:4 | 25:21, 31:12, | 20:4, 91:17, | **finish** |
| **factors** | 34:2, 35:1, | 156:5, 159:12, | 67:2, 84:11, |
| 12:24, 146:2, | 37:3, 37:16, | 162:2 | 112:12 |
| 168:20, 169:1 | 41:5, 43:20, | **file** | **firm** |
| **facts** | 47:16, 51:5, | 39:17, 39:21, | 11:23, 85:16, |
| 108:12, 203:11 | 59:21, 62:19, | 40:11, 130:1 | 145:5, 183:14 |
| **fair** | 70:6, 71:20, | **filed** | **firms** |
| 23:23, 122:25, | 72:20, 80:5, | 31:3 | 18:9, 20:17, |
| 123:17, 123:18, | 87:6, 89:5, | **files** | 22:23, 23:24 |
| 124:6, 126:2, | 93:5, 97:2, | 39:20, 163:12, | **first** |
| 126:5, 126:6, | 101:7, 103:4, | 166:3, 166:4 | 4:13, 6:5, 9:4, |
| 126:8, 127:3, | 106:16, 108:11, | **final** | 11:11, 14:10, |
| 132:23, 136:21, | 118:3, 128:2, | 152:14, 184:14, | 17:22, 18:21, |
| 140:8, 140:10, | 131:21, 138:8, | 196:1, 196:15, | 34:5, 34:12, |
| 140:25, 141:3, | 143:11, 147:18, | 196:20, 196:24 | 37:11, 39:1, |
| 141:19, 141:23, | 152:22, 162:12, | **finally** | 47:22, 53:14, |
| 141:25, 142:1, | 169:15, 180:24, | 19:3, 19:13 | 62:25, 80:24, |
| 142:5, 148:18, | 194:8, 206:22, | **finance** | 81:4, 84:24, |
| 171:17, 173:3, | 207:2 | 134:19 | 85:8, 97:10, |
| 174:4, 178:8, | **farah's** | **financial** | 98:12, 103:9, |
| 184:19, 184:20, | 93:13 | 11:3, 11:4, | 109:12, 119:1, |
| 185:6, 189:17 | **fast** | 13:4, 23:6, | 129:7, 134:5, |
| **fairly** | 20:12, 128:22 | 43:25, 45:10, | 138:14, 138:18, |
| 10:25, 48:20 | **faster** | 111:16, 121:11, | 145:21, 150:15, |
| **fairness** | 135:3, 161:17 | 153:12, 162:23, | 150:18, 162:9, |
| 134:11, 142:5 | **father** | 193:6, 200:11, | 163:14, 166:3, |
| **faith** | 80:23 | 205:13, 205:14 | 166:7, 177:18, |
| 40:9, 40:19, | **feedback** | **financials** | 177:24, 181:6, |
| 83:16, 84:23, | 96:9 | 23:9, 96:6, | 186:11, 187:9 |
| 118:19, 129:5, | **feel** | 96:7, 121:21, | **firsthand** |
| 132:24, 133:1, | 74:14, 74:16, | 154:5, 193:17, | 155:16 |
| 134:2, 134:11 | 96:17, 132:25 | 199:5, 203:22, | **fits** |
| **fall** | **feeling** | 204:12, 205:15 | 97:19 |
| 18:8, 20:16 | 66:17, 75:11, | **financing** | **five** |
| **familiar** | 75:14, 92:10 | 203:2 | 14:18, 150:17, |
| 144:4, 180:19 | **feels** | **find** | 173:13, 173:21, |
| **family** | 73:3, 73:4 | 60:3, 89:15, | 181:4 |
| 40:14 | **fees** | 94:11, 130:14 | **fixed** |
| | 25:17 | **finding** | 145:12 |
| | | 83:23, 144:3 | |

Transcript of Michael Farah, Designated Representative
September 14, 2022

227

flat
64:10, 64:13,
64:14, 65:2,
94:23, 95:15
flexan
15:19, 16:1,
16:4
flip
17:19, 17:24
floor
2:3
flow
12:7, 161:13,
161:21, 167:4
flows
145:15, 145:16
fluid
92:13
focus
11:24, 191:16
focused
50:14
focuses
12:3
focusing
183:20, 184:22
folder
180:21
folks
53:25, 66:22,
76:17
follow-up
165:20
followed
49:14
following
51:17, 156:12,
162:21
follows
9:5
foregoing
207:3, 208:10
forfeited
118:15, 129:24
forgot
154:14
form
23:17, 24:9,

29:24, 30:15,
33:2, 36:16,
45:3, 46:6,
50:8, 50:16,
52:20, 53:7,
56:25, 58:11,
58:22, 59:6,
60:12, 60:16,
68:6, 69:12,
70:25, 82:13,
83:3, 88:10,
90:16, 90:25,
92:23, 95:4,
102:16, 107:9,
115:16, 121:4,
123:9, 130:11,
133:15, 133:23,
137:6, 139:22,
141:5, 152:17,
163:19, 170:5,
170:18, 174:1,
188:23, 195:17,
199:22, 200:4
forma
167:14
formalize
97:20
format
163:13, 163:14
former
62:1
formulas
177:13, 178:3
forte
147:24
forth
134:3
forward
18:6, 41:20,
94:20, 111:18,
135:14, 153:9,
155:17, 168:24,
189:16, 194:14,
200:23, 201:4,
201:14, 201:23,
201:25, 202:16,
203:5, 204:2,
204:9, 204:11,

204:13
forward-looking
127:19, 172:8,
172:16, 172:20,
200:15, 200:21,
204:23
forwarded
28:12, 42:21
found
63:6, 63:13,
86:9, 165:22
foundation
23:17, 24:9,
29:25, 33:2,
50:8, 50:16,
52:20, 53:7,
56:25, 58:11,
58:23, 59:6,
68:6, 68:22,
69:13, 70:25,
82:13, 83:3,
88:10, 90:17,
90:25, 92:24,
95:4, 102:16,
107:9, 115:16,
120:23, 123:10,
130:11, 133:15,
133:23, 137:6,
141:6, 170:5,
170:18, 174:1,
188:24, 199:22,
200:5
founded
11:23
founder
13:23, 80:22
founder-owned
145:6
four
171:6, 171:11
frame
25:10, 93:11,
93:15
frames
93:14
frankly
151:11
friendly
48:23

friends
92:7, 92:8
front
25:11, 70:9,
71:23, 72:24,
80:9, 97:5,
101:10, 103:7,
176:7, 181:5,
185:10, 202:8
frustrating
123:20, 124:4,
131:7
fulfilled
139:4
full
104:17, 139:5,
195:25, 201:4
fully
102:14, 102:21,
174:12, 175:22
fund
152:3, 152:4,
152:8, 153:14,
153:23, 153:25,
154:2, 154:9,
154:23, 155:4,
199:4, 199:15
funds
120:4
further
24:16, 36:4,
113:12, 187:24
furthermore
49:19
future
105:9, 105:10,
171:8, 171:9,
171:24, 172:12,
172:16, 172:18,
173:20, 182:8,
191:10, 204:15,
204:18

G

gaap
125:21
game
135:8

**gap**
107:8
**gave**
28:11, 37:3,
193:10
**general**
66:17, 145:24,
199:19
**generally**
12:7, 48:20,
71:17, 147:4,
150:23, 205:13
**generates**
161:11
**generating**
161:18
**generous**
122:25, 123:17
**genstar**
98:21, 98:22,
98:24, 99:8,
100:4, 100:6,
190:17
**getting**
167:15
**give**
9:25, 10:3,
10:6, 11:16,
21:1, 30:13,
30:21, 30:22,
31:10, 32:7,
96:18, 112:11,
123:15, 124:2,
124:25, 126:23,
136:18, 157:17,
157:19, 158:11,
174:8, 177:24,
193:25
**given**
34:16, 45:4,
73:5, 73:9,
73:16, 90:12,
110:25, 133:11,
159:17, 159:25,
200:10, 207:5,
208:14
**gives**
34:21, 174:25

**giving**
52:14, 124:7,
127:2, 131:5,
152:5
**glance**
81:4, 120:1
**go**
12:24, 32:13,
34:23, 35:22,
46:19, 47:6,
62:19, 64:11,
64:18, 65:20,
71:14, 72:16,
73:21, 76:8,
83:19, 83:22,
84:25, 90:9,
95:22, 97:10,
97:20, 108:22,
111:1, 112:17,
114:3, 117:20,
119:12, 120:14,
123:6, 129:13,
131:12, 135:18,
136:17, 138:15,
141:2, 146:18,
148:9, 151:23,
152:7, 162:21,
166:6, 168:17,
174:19, 176:7,
178:3, 183:25,
184:7, 188:6,
188:9, 189:18,
192:25, 199:2,
199:8
**goes**
127:11, 146:3,
168:6, 171:17,
172:5, 185:3,
192:15
**going**
16:8, 33:8,
36:11, 39:12,
43:2, 46:12,
48:15, 50:18,
53:5, 53:21,
62:10, 67:2,
77:5, 79:14,
79:16, 85:2,

86:4, 86:6,
90:1, 90:4,
91:19, 92:12,
92:18, 98:4,
100:21, 105:14,
111:18, 112:9,
112:17, 113:20,
113:22, 113:25,
122:25, 129:13,
137:4, 138:15,
146:6, 147:3,
149:19, 161:20,
164:10, 166:12,
168:4, 168:20,
168:23, 169:1,
172:4, 174:19,
177:10, 182:18,
182:20, 183:12,
186:7, 192:12,
192:25, 197:20,
201:13, 202:13,
202:22, 203:5
**gone**
61:15, 69:23,
181:23
**good**
9:8, 12:7,
28:16, 40:9,
40:19, 48:23,
73:21, 76:15,
76:16, 84:23,
91:15, 94:1,
100:17, 112:10,
113:17, 118:18,
123:16, 123:23,
124:22, 129:4,
132:23, 133:1,
134:2, 134:11,
134:24, 138:3,
146:23, 153:15,
166:16, 171:18,
179:3, 179:23
**gotcha**
20:3
**gotten**
50:23, 137:19
**governed**
35:6

**great**
75:6, 147:7,
147:13, 149:13
**greater**
76:24
**grew**
64:5, 65:3
**group**
1:7, 1:14, 5:7,
5:16, 8:5, 8:20,
43:25, 78:7,
80:11, 83:10,
86:5, 86:7,
86:10, 86:13,
87:9, 164:1,
188:7
**groups**
23:25, 180:18
**growing**
64:13, 64:25,
65:2, 135:3,
161:17, 202:24
**growth**
12:8, 64:2,
64:9, 64:17,
64:19, 64:21,
64:24, 65:5,
65:6, 94:22,
95:14, 147:2,
161:21, 167:4,
167:24, 185:4
**guarantee**
160:25
**guaranteed**
201:6, 201:8,
201:9
**guess**
22:8, 51:13,
53:12, 53:19,
54:5, 54:21,
70:13, 75:5,
88:1, 94:14,
107:23, 115:11,
123:5, 128:7,
139:6, 142:24,
147:24, 150:1,
178:2, 179:5,
188:15, 200:16

Transcript of Michael Farah, Designated Representative
September 14, 2022

**guessing**
48:18, 49:21
**guidance**
96:4, 96:18
**guy**
140:14
**guys**
81:11, 100:14,
158:4, 179:22,
197:17

**H**

**haircut**
132:16
**half**
171:6, 171:10,
171:25, 172:14,
175:20, 189:13
**hallway**
67:22
**hand**
97:14, 117:25,
209:2
**hand-delivered**
29:10, 29:12
**hand-sign**
28:14
**handed**
50:9
**handle**
76:11, 76:15,
87:21
**hands**
181:21
**handshakes**
91:18
**handwriting**
191:20
**handwritten**
190:4
**hang**
81:11, 84:3,
187:6
**happen**
33:5, 57:20,
110:3, 145:12,
151:2, 151:11,
167:13, 180:11,

195:23
**happened**
10:18, 22:1,
22:2, 23:3,
27:22, 33:9,
54:6, 56:6,
65:14, 65:16,
65:18, 67:3,
67:4, 84:17,
86:19, 86:21,
91:7, 98:11,
99:21, 100:9,
110:1, 110:18,
119:8, 123:14,
145:11, 150:12,
197:21
**happening**
27:21, 46:10,
54:9, 54:10,
74:7, 88:13,
150:24, 150:25
**happy**
9:12, 9:24,
136:17, 148:7,
151:13, 200:1
**hard**
33:4, 50:24,
93:23, 93:25
**hard-dollar**
61:21
**hargroves**
13:23, 13:25,
14:7, 14:13,
14:16, 66:7,
66:12, 67:8,
83:21, 84:19,
86:22, 89:9,
89:21, 124:23
**harris**
7:6, 188:7,
188:10
**hat**
84:25
**he'll**
98:10, 120:23
**head**
91:14, 99:5,
196:21

**header**
39:8
**heads**
18:19
**heads-up**
82:6
**health**
11:22, 11:25,
12:3, 12:5,
17:1, 17:5,
17:6, 17:7
**hear**
118:23, 119:15
**heard**
31:9, 101:17,
118:8, 119:2
**hearing**
78:2
**held**
2:1, 82:3,
152:2
**help**
64:22, 67:6,
67:8, 97:18,
99:25, 157:7,
157:8
**helped**
100:5, 100:6
**helpful**
63:25
**helping**
11:1, 113:14
**here**
8:2, 26:22,
33:14, 36:9,
48:14, 48:15,
49:21, 61:24,
68:16, 72:6,
73:21, 74:20,
85:3, 99:18,
113:3, 123:21,
124:5, 130:21,
130:24, 134:3,
134:4, 134:17,
134:23, 135:13,
151:4, 157:19,
158:3, 171:23,
174:21, 178:15,

189:11, 189:12,
190:12, 192:17
**here's**
53:21, 148:2,
178:13
**hereby**
26:5, 207:2,
208:5
**herein**
9:4, 208:9
**hereto**
208:21
**hereunto**
209:1
**hesitant**
193:25
**hey**
53:20, 68:11,
68:15, 92:11,
105:12, 111:14,
112:1, 112:2,
126:5, 140:13
**hierarchy**
143:22
**high**
102:6, 135:6,
164:3, 179:1,
182:7
**high-level**
121:21, 194:3
**higher**
49:7, 49:9,
124:1, 159:17,
159:25, 161:12,
166:9, 166:15,
166:16, 166:17,
167:1, 170:17,
179:25, 180:2,
180:7, 192:2,
197:14, 197:23,
199:11
**higher-margin**
168:25
**higher-than-3x**
102:3
**highest**
123:24
**himself**
29:22, 79:22,

Transcript of Michael Farah, Designated Representative
September 14, 2022

230

79:23, 87:19,
88:3, 90:21,
100:23, 111:7,
164:20
**hire**
140:13, 140:15
**historical**
204:15, 205:14
**history**
11:16, 27:1,
160:1
**hit**
137:9, 182:1,
191:11, 195:18,
202:22
**hold**
32:11, 50:7,
61:12, 108:4,
128:21, 151:16,
179:17
**holdco**
51:25
**holding**
148:4, 150:17,
151:25, 162:24
**holdings**
35:18
**holds**
35:18
**hole**
167:16, 186:25
**honestly**
27:18, 72:1
**hope**
69:24, 94:16
**hoped**
138:21
**hopeful**
200:17
**hopefully**
47:7, 78:14
**hospital**
12:13
**hospitals**
12:10, 12:11,
12:12
**hosted**
154:18

**hour**
46:18, 62:11,
112:10, 181:25
**hours**
62:3, 200:14
**how's**
127:13
**however**
29:2, 31:2,
38:17, 129:4
**huge**
186:24, 186:25
**hundred**
126:24, 146:20
**hung**
157:8
**hypothetical**
33:4, 140:23,
172:11, 174:25
**hypothetically**
171:8, 171:24

---

**I**

**idea**
162:3
**identification**
17:13, 25:8,
34:3, 37:17,
41:6, 43:21,
47:17, 51:6,
59:22, 70:7,
71:21, 72:21,
80:6, 87:7,
89:6, 97:3,
101:8, 103:5,
106:17, 118:4,
128:3, 131:22,
138:9, 143:12,
147:19, 152:23,
162:13, 169:16,
180:25, 194:9
**identified**
39:6
**identify**
8:14, 17:9,
38:23, 39:10
**identifying**
100:10, 109:16

**ignoring**
131:5
**iii**
35:2, 35:15,
35:17, 36:1
**iii-a**
35:4, 35:16,
35:25
**illinois**
2:3, 8:13,
208:5, 209:3
**illustrates**
87:10
**imagine**
88:18, 163:25,
174:15
**impact**
61:18, 96:6,
96:7
**important**
168:21
**inappropriate**
146:17
**incentive**
5:8, 6:12,
6:19, 44:10,
44:23, 45:1,
45:21, 51:14,
51:24, 52:3,
52:11, 57:2,
71:24, 72:8,
102:12, 102:22,
118:10, 118:13,
118:15, 118:16,
118:24, 118:25,
127:12, 128:20,
129:21, 131:9,
132:6, 143:7,
144:2, 148:5,
153:6, 162:17,
164:7, 170:1,
170:11, 172:1,
172:5, 173:25,
175:4, 175:25,
179:25, 180:2,
180:5, 180:6
**inception**
144:11

**incident**
78:5
**include**
12:10, 147:7,
147:8, 147:10,
155:22, 163:8,
178:18, 179:13,
191:1, 191:3
**included**
108:2, 114:7,
146:19, 146:21,
178:16, 179:11
**includes**
51:12, 60:6,
60:19, 143:17
**including**
110:13, 116:5,
132:9, 133:4,
133:5
**incorrect**
23:7
**increase**
18:2, 20:4
**increasing**
101:22
**increasingly**
63:17, 94:2,
94:4
**independent**
35:20, 136:2
**indicate**
104:23, 116:22
**indicates**
89:22, 191:18
**indicating**
34:19, 82:11
**indication**
117:17, 144:22
**indicative**
149:13
**indirectly**
208:21
**individual**
26:14, 127:2
**individually**
12:22, 14:25,
15:2
**industries**
149:7

Transcript of Michael Farah, Designated Representative
September 14, 2022

231

inflate
22:25
inflating
140:12
information
10:1, 61:3,
62:6, 86:15,
104:5, 109:17,
111:1, 121:11,
154:10, 158:9,
163:25, 194:1,
194:5, 205:5,
205:10, 205:22
informed
46:10, 46:20,
46:22, 110:6
initial
14:21
initially
10:16, 13:20,
35:11, 61:22,
87:18, 156:13,
182:4
initiated
22:13
initiating
153:2
innovations
15:24, 16:4
input
73:5, 172:3,
174:25, 176:3,
177:18, 177:20,
177:23
inputs
145:25, 152:6
instances
50:22
instead
132:20
intend
70:19, 70:22,
164:24
intended
54:24, 116:23
intention
71:3
interest
35:18

interested
208:21
interesting
48:3, 81:7,
185:16
interestingly
48:25
internal
101:25, 125:15,
125:16, 146:20,
146:21, 148:20,
150:23, 154:12,
159:20, 192:21
internally
24:19, 24:25,
31:3, 127:3,
148:18, 156:16,
164:8, 180:16,
199:11
interpret
73:13, 110:8,
203:25
interpretation
50:19, 69:9,
71:3
interpreted
68:24
interrupt
99:23, 186:12,
187:10
interview
194:25
intralinks
153:13, 154:11,
154:14
introduction
143:19
introductory
143:20
invest
126:22, 177:4
invested
101:23, 136:25,
137:5, 170:2,
171:3, 175:17,
177:7, 177:8,
177:23, 178:25,
196:2, 196:4

investment
18:8, 20:16,
20:21, 21:4,
21:5, 21:25,
22:17, 22:24,
23:6, 41:17,
61:11, 61:20,
61:21, 61:23,
120:8, 120:18,
120:19, 132:13,
132:20, 133:6,
135:16, 136:2,
136:6, 136:8,
139:8, 139:13,
139:19, 140:9,
141:21, 151:3,
151:15, 151:22,
153:13, 172:19,
173:14, 173:22,
177:5, 181:4,
191:15, 193:4,
194:25, 199:3,
199:14, 200:14
investments
11:24, 12:1
investor
20:22, 21:4,
21:5, 35:19,
35:24, 124:19,
134:20, 153:23,
153:25, 154:9,
155:4
investor-created
141:21
investors
35:14, 36:3,
36:5, 125:23,
155:8, 155:12,
155:13
invests
17:7, 126:20
invited
120:15
invites
105:3, 105:16,
105:22, 106:12,
106:25, 107:19,
109:4, 109:24,

110:10, 110:17,
110:25, 115:6
involved
13:18, 13:20,
48:13, 65:17,
65:19, 88:21,
99:2, 105:13,
142:22
involvement
73:9, 83:23,
94:11, 97:15,
115:20, 116:17
irr
101:24
irrelevant
57:20, 58:3,
203:13
irritate
136:9
irritating
135:11, 136:3,
136:7, 136:12
issue
86:2, 88:24,
88:25, 127:11,
159:24, 189:3
issues
82:8, 82:21,
83:14, 85:6,
94:2, 117:6,
128:17, 140:7,
186:2, 187:1
itself
169:2

**J**

january
32:23, 74:6,
88:6, 90:22,
93:21
jason
194:11
jeff
13:22, 13:25,
14:16, 14:20,
14:21, 15:4,
60:7, 66:6,
66:7, 66:12,

Transcript of Michael Farah, Designated Representative
September 14, 2022

232

67:7, 83:21,
84:19, 86:22,
89:9, 89:21,
124:23
**jefferies**
132:7, 134:13,
134:14
**jerk**
157:5
**job**
1:23, 179:3
**jog**
83:5, 194:20
**jogged**
199:10
**jogging**
74:20
**join**
5:5, 70:10,
71:8, 71:13
**joined**
62:22
**joseph**
3:3
**josh**
109:11, 109:12,
110:12, 115:8,
115:14, 153:3,
155:18, 156:2,
162:8, 162:9,
163:2, 163:10,
169:19
**joshua**
106:21
**judgment**
160:14, 179:22
**july**
27:24, 33:20,
56:8, 56:14,
56:15, 106:13,
107:7, 107:12,
109:2
**june**
21:22, 26:17,
26:23, 26:24,
27:2, 27:7,
27:22, 27:23,
28:5, 33:12,

37:13, 37:19,
38:19, 40:25,
41:22, 54:1,
54:5, 56:5,
56:6, 56:7,
56:10, 56:13,
56:24, 57:5,
57:11, 57:12,
57:22, 58:6,
58:8, 58:10,
95:13, 109:23,
112:24, 127:8,
142:13, 148:18,
155:20, 158:9,
165:18, 169:18,
169:24, 169:25,
170:16, 170:21,
170:22, 185:20,
206:9

**K**

**k&e**
27:24, 28:3
**keep**
16:8, 24:12,
61:12, 73:7,
89:16, 103:18,
113:20, 113:22,
113:25, 166:3
**keith**
3:3, 8:16, 9:8,
19:20, 31:6,
54:13, 103:13
**kept**
69:24, 74:1,
82:3, 124:21,
199:3
**key**
63:9
**kind**
15:25, 28:6,
45:11, 54:10,
63:9, 65:21,
68:24, 69:23,
71:7, 71:9,
78:10, 79:20,
84:17, 85:8,
90:3, 91:2,

91:6, 91:9,
91:13, 91:16,
92:6, 100:13,
100:19, 130:15,
145:10, 150:13,
150:14, 150:21,
154:12, 159:8,
160:2, 167:11,
171:22, 183:20,
201:17
**kinds**
142:22, 150:22,
182:16
**kirkland**
6:14, 28:12,
53:19, 53:25,
128:18, 132:2,
138:13
**kminson@mcguirew-
oods**
3:8
**knew**
59:13, 83:16,
164:17, 199:12
**knowing**
72:6, 140:19
**knowledge**
33:11, 66:3,
86:23, 86:25,
87:3, 108:16,
125:12, 127:20,
130:20, 130:23,
155:16
**knows**
116:6, 116:13,
134:8

**L**

**label**
17:18, 112:22
**labeled**
40:23
**lack**
29:24, 50:8,
58:22, 69:12,
90:16, 123:9,
141:5
**landscape**
190:14

**language**
34:18
**large**
97:13, 167:6,
167:10
**larger**
135:3, 161:15
**last**
18:1, 18:18,
31:23, 80:16,
82:3, 90:12,
97:13, 118:7,
118:8, 119:3,
119:18, 137:25,
141:15, 141:17,
148:12, 159:10,
163:7, 181:17,
191:14, 200:14
**later**
21:23, 24:15,
25:3, 27:9,
28:1, 47:12,
90:22, 109:8,
110:2, 128:5,
139:10, 201:16
**laughable**
134:2, 134:10
**lawsuit**
17:16, 22:12
**lawyer's**
27:19
**lawyers**
122:10
**lay**
70:22, 71:8,
84:18
**laying**
90:24
**laziness**
61:17
**lead**
53:4, 183:16
**leader**
161:14
**leading**
45:5, 64:12
**leaks**
194:2

Transcript of Michael Farah, Designated Representative
September 14, 2022

233

**learned**
73:8, 185:21
**learning**
194:15
**least**
78:8, 86:11,
94:19, 150:14
**leave**
61:14, 77:12,
88:8, 204:13
**leaving**
48:22, 77:16,
77:17, 77:23
**left**
171:12
**legal**
22:4, 30:18,
32:13, 32:16,
36:17, 39:20,
71:1, 139:5
**legally**
157:13
**lend**
169:1
**less**
124:3, 128:7,
135:9, 145:19,
161:13, 163:18,
177:1, 182:4,
182:9
**let's**
25:14, 64:15,
75:1, 75:3,
75:7, 75:8,
92:11, 97:10,
126:5, 151:3,
157:4, 157:12,
158:5, 165:11
**letter**
4:12, 6:13,
6:15, 17:15,
21:14, 21:16,
22:3, 34:19,
34:22, 34:25,
51:14, 51:24,
53:22, 54:1,
54:7, 55:1,
55:3, 71:9,

101:11, 101:17,
114:8, 114:14,
114:18, 115:14,
133:11, 138:12,
138:13, 139:3
**letters**
54:2, 153:12
**level**
73:9, 132:20,
132:21, 133:6
**life**
138:23
**likely**
39:19, 100:8,
102:19, 110:18,
113:5
**limited**
139:16, 155:11
**limits**
89:18
**linden**
6:17, 9:19,
10:13, 11:8,
11:9, 11:12,
11:17, 11:22,
12:3, 12:15,
12:16, 12:20,
12:21, 13:6,
13:7, 13:9,
13:22, 15:8,
16:21, 16:24,
17:7, 25:21,
35:2, 35:3,
35:14, 35:15,
35:16, 35:17,
35:19, 35:24,
35:25, 36:1,
36:2, 36:5,
37:22, 39:1,
40:23, 41:12,
60:7, 72:25,
80:9, 89:11,
97:6, 100:15,
101:11, 101:12,
101:13, 106:19,
112:22, 118:18,
124:19, 125:13,
132:4, 132:14,

132:15, 132:18,
134:11, 134:12,
138:12, 143:15,
143:16, 143:17,
144:10, 148:9,
148:14, 152:8,
153:1, 153:2,
153:19, 154:25,
155:17, 157:24,
162:18, 162:22,
165:2, 165:3,
165:22, 171:7,
172:13, 177:4,
181:8, 181:9,
183:21, 183:23,
183:25, 188:9,
188:10, 189:20,
190:10, 191:16,
191:17, 192:25,
193:1, 194:18,
195:16, 199:20,
200:1
**linden's**
125:22, 143:17,
169:22, 175:16
**line**
24:23, 24:24,
39:9, 72:16,
185:15
**link**
39:23
**lisa**
87:11, 87:13,
169:18, 170:12,
173:21, 174:6
**list**
60:19, 61:1,
146:21, 149:9,
149:15, 191:4,
194:17
**listed**
17:17, 38:6,
53:1, 60:25,
113:7, 142:14,
170:12, 181:5,
190:13, 191:23,
191:25
**listen**
195:6

**lists**
35:23
**literally**
162:6
**litigation**
34:11
**little**
60:24, 85:2,
85:4, 91:11,
118:7, 119:10,
121:19, 147:1,
157:18, 193:12,
198:9, 202:25
**llc**
1:8, 1:14, 5:7,
6:17, 8:5, 8:21,
26:5, 28:21,
32:10, 32:16,
35:7, 35:9,
35:18, 101:13,
143:18
**llp**
2:2, 3:4, 3:12,
35:3
**locked**
200:25, 201:1,
201:5
**logic**
135:12
**logical**
174:22
**long**
35:15, 45:4,
62:3, 67:9,
71:15, 128:23,
138:15, 149:18,
182:1
**long-term**
160:24
**longer**
27:11, 29:20,
46:11, 59:14,
65:25, 69:24,
95:12, 105:11,
105:22, 106:25,
109:5, 109:24,
152:1, 152:2,
178:19

Transcript of Michael Farah, Designated Representative
September 14, 2022

234

**look**
23:8, 25:24,
39:16, 40:17,
44:1, 47:6,
64:3, 64:11,
64:18, 65:20,
96:11, 99:24,
102:18, 117:20,
119:13, 119:24,
119:25, 120:1,
120:14, 123:25,
131:12, 135:19,
135:24, 137:14,
139:21, 139:24,
139:25, 140:13,
140:25, 144:17,
144:24, 145:14,
146:18, 147:6,
149:16, 150:16,
150:19, 150:20,
152:3, 165:2,
168:18, 176:10,
176:15, 176:17,
176:18, 176:22,
177:3, 179:2,
179:21, 180:1,
180:6, 181:8,
181:13, 182:16,
182:23, 183:3,
184:4, 184:21,
184:23, 184:24,
185:13, 188:10,
190:10, 191:21,
197:9, 198:11,
199:2, 201:11,
201:20, 202:20,
204:2, 204:22,
205:11
**looked**
12:11, 27:16,
167:20, 174:11,
198:17, 198:18,
202:15, 204:17
**looking**
11:19, 78:20,
83:11, 83:13,
98:21, 99:6,
99:8, 100:4,

134:22, 164:19,
172:15, 173:2,
173:15, 194:14,
201:17, 204:17
**looks**
81:5, 100:3,
158:2, 162:5,
165:4, 165:12,
165:13, 165:15,
165:22, 171:15,
191:2
**lost**
18:13
**lot**
12:24, 63:14,
63:20, 64:5,
74:22, 75:18,
83:14, 132:3,
134:4, 146:6,
146:7, 152:5,
152:6, 156:25,
159:17, 182:1,
182:13, 193:25,
201:15, 202:21
**lots**
50:21
**loud**
196:9
**loverich**
105:19, 106:21,
107:15
**low**
117:10, 164:2,
169:22, 191:22
**lower**
135:8, 161:5,
188:11, 196:15,
197:16
**lower-margin**
161:4
**lowered**
168:14
**lp**
35:3, 35:4,
35:15, 35:16,
154:8
**lps**
148:22, 154:6,

179:20, 180:9,
180:17
**ltm**
155:20, 196:20
**lunch**
113:20, 113:23,
137:25

**M**

**m&a**
77:2, 79:15,
80:17, 89:16,
98:8, 132:11
**made**
27:25, 41:11,
44:25, 45:21,
46:14, 59:15,
61:21, 65:24,
67:5, 67:9,
75:4, 107:6,
116:21, 119:21,
120:3, 142:18,
171:25, 180:7,
181:17, 181:18,
184:14
**mailed**
28:17, 28:19,
28:20
**majority**
35:14
**make**
27:24, 36:21,
39:3, 40:4,
41:18, 47:14,
55:15, 55:18,
58:9, 61:8,
71:7, 86:2,
92:9, 93:12,
105:17, 106:11,
106:24, 112:7,
160:15, 160:17,
171:7, 171:10,
173:6, 173:7,
174:19, 178:22,
178:24, 179:1,
179:18, 179:25,
180:2, 187:18,
198:22

**makes**
71:17, 73:2,
73:6, 78:13,
138:2, 172:14
**making**
11:24, 74:8,
74:22, 86:1,
109:9, 116:6,
116:12, 203:7
**manage**
77:4, 77:8,
77:20, 83:9,
84:22, 84:23,
93:25, 94:3,
94:16, 94:17,
100:24
**managed**
83:7, 90:15,
142:10
**management**
5:8, 11:3,
14:22, 44:4,
59:13, 59:17,
60:5, 60:22,
61:2, 63:8,
63:15, 63:19,
63:24, 71:24,
75:16, 81:24,
94:10, 95:1,
96:2, 96:10,
96:16, 96:19,
121:14, 121:17,
121:18, 155:8,
193:11, 193:21
**manager**
6:17, 35:21,
59:14, 143:18
**managers**
35:11, 35:12,
35:23
**managing**
88:8, 91:7
**manufacturer**
16:2, 16:19
**manufacturing**
16:1, 80:20,
85:13
**many**
9:20, 27:1,

Transcript of Michael Farah, Designated Representative
September 14, 2022

235

27:6, 138:20,
145:16, 175:6
**march**
44:8, 44:18,
89:22, 93:5,
93:20
**margin**
161:5
**margins**
147:2, 161:12
**mark**
25:4, 33:23,
37:14, 41:3,
43:17, 51:3,
59:19, 70:4,
72:18, 80:3,
87:4, 96:24,
127:24, 136:18,
138:5, 147:15,
155:21, 155:25,
162:10, 163:7,
163:8, 169:12,
169:21, 169:22,
169:24, 171:21,
180:21, 192:1,
192:5, 194:6
**marked**
17:11, 25:6,
25:11, 34:1,
37:15, 41:4,
43:19, 47:15,
51:4, 59:20,
70:5, 71:19,
72:19, 80:4,
87:5, 89:4,
97:1, 101:6,
103:3, 106:15,
118:2, 126:7,
128:1, 131:20,
135:9, 136:16,
138:7, 143:10,
147:17, 152:21,
162:11, 169:14,
180:23, 191:6,
193:2, 194:7
**market**
23:24, 126:3,
126:5, 126:6,

126:8, 126:10,
127:3, 132:17,
132:23, 136:21,
140:8, 140:10,
140:25, 141:4,
141:19, 141:23,
141:25, 142:1,
142:6, 144:20,
147:3, 148:18,
151:5, 161:6,
161:13, 161:15,
167:3, 173:3,
174:4, 178:8,
183:15, 184:19,
184:20, 185:6,
189:17, 194:2,
204:4, 204:6,
204:7, 205:11
**marketability**
132:25
**marketed**
153:14
**marketing**
150:8
**marks**
154:5, 159:12,
162:1
**markup**
103:14, 103:15,
103:16
**match**
59:2
**materials**
120:19, 205:4
**math**
166:4, 169:19,
170:13, 176:1,
177:15, 177:19,
191:9, 192:15,
198:2
**matter**
8:4, 34:6,
107:11, 115:12,
130:15, 132:4
**mattered**
45:19
**matters**
137:3, 208:9

**matthew**
80:23
**matthew's**
80:22
**maybe**
10:19, 11:11,
31:23, 82:20,
110:13, 119:11,
121:15, 121:16,
198:9, 200:19
**mcguire**
3:4
**mcguirewoods**
2:2, 4:12,
6:13, 8:17,
130:6, 132:1
**mean**
11:20, 12:18,
17:2, 24:6,
35:3, 44:1,
52:22, 56:4,
58:16, 58:25,
59:2, 73:16,
78:24, 99:23,
107:23, 108:3,
121:8, 122:6,
131:6, 132:10,
134:1, 135:10,
141:9, 141:18,
150:5, 157:22,
158:1, 158:21,
172:18, 173:8,
179:4, 180:22,
181:22, 182:11,
182:21, 186:16,
192:5, 200:23
**meaningful**
168:1
**means**
24:18, 86:6,
98:5, 104:12,
129:21, 156:4,
160:22, 161:12,
161:19, 166:15,
168:23, 182:10
**meant**
31:13, 56:19,
82:16

**media**
8:2, 62:17,
143:1, 143:4
**medical**
12:13, 16:25,
17:4
**meet**
14:16, 14:25,
95:25, 202:6
**meeting**
11:1, 14:21,
14:23, 15:4,
57:19, 57:22,
57:23, 82:4,
82:23, 111:15,
124:11, 124:13,
125:7, 125:10,
126:1, 135:24
**meetings**
57:20, 80:17,
105:4, 105:9,
109:4, 111:5,
140:18
**member**
10:17, 16:13,
27:5, 42:17,
42:19, 48:17,
49:19, 50:2,
59:14, 60:4,
60:21, 60:22,
61:1, 62:1,
62:20, 62:24,
63:6, 63:11,
69:2, 76:7,
76:8, 76:20,
76:21, 76:22,
77:9, 77:10,
79:24, 85:21,
86:14, 95:24,
111:4, 111:23,
113:4, 113:7,
115:9, 116:2,
126:12, 127:8,
142:15, 158:8
**members**
49:24, 50:15,
60:5, 66:3,
66:18, 126:12,

Transcript of Michael Farah, Designated Representative
September 14, 2022

236

127:5, 127:15
**membership**
26:15, 72:4,
154:22
**memorandum**
205:6, 205:22
**memorialized**
27:13
**memory**
74:20, 83:6,
194:21, 199:10
**mentioned**
193:9
**mentioning**
189:3
**message**
101:16
**met**
14:11, 14:20,
14:24, 120:17
**metadata**
39:17, 39:21,
39:22, 40:10,
40:13, 40:16,
206:8, 206:12
**method**
125:21
**methodologies**
144:16, 144:17
**methodology**
52:5, 127:6,
127:10, 148:20
**methods**
143:24, 144:2,
145:22, 146:12
**metrics**
143:22
**michael**
1:16, 2:1, 4:4,
8:3, 9:3, 25:21,
41:10, 41:11,
207:2
**michelle**
1:25, 2:4,
8:23, 84:13,
208:3, 209:9
**mid-october**
120:12

**middle**
140:20, 171:5
**might**
50:23, 67:19,
84:18, 96:6,
103:13, 113:13,
113:15, 134:16,
134:17, 145:7,
146:19, 147:6,
149:12, 151:5,
157:8, 165:8,
167:16, 178:17,
198:10, 198:19,
201:4, 201:10,
201:16, 202:12,
202:14, 202:20,
202:25, 204:14
**mike**
34:25, 108:24
**million**
12:6, 24:5,
174:20, 181:12,
181:15, 184:6,
184:9, 185:8,
188:15, 188:17,
189:22, 189:23,
191:8, 191:18,
191:23, 195:10,
195:12, 195:17,
198:3, 199:7
**mind**
24:13, 125:24,
170:15
**minds**
66:7, 91:16
**minority**
132:24
**minute**
112:11, 121:17,
193:11
**minutes**
113:23
**mislabel**
61:19
**misread**
82:17
**missed**
82:20

**missner**
3:12
**misspoke**
54:23
**misspoken**
31:8, 55:10
**misstate**
88:2
**misstates**
30:15, 82:14,
104:9
**mistake**
103:18
**mitchell**
3:12, 8:20
**mitigate**
147:11
**mm-hm**
10:22, 16:6,
26:1, 44:7,
63:1, 80:12,
95:16, 100:25,
107:17, 117:2,
149:3, 152:11,
154:7, 173:9,
185:14, 197:1,
198:13, 203:8
**mmm**
82:22
**models**
13:4
**moi**
175:17
**moic**
175:19, 178:1
**monday**
73:8, 82:22,
163:3
**money**
122:22, 131:8,
155:11, 171:11,
172:14
**monitor**
8:9
**monroe**
60:7
**month**
118:7, 128:5,

197:18, 201:8,
201:13
**monthly**
11:4, 111:15
**months**
11:11, 27:1,
27:6, 28:1,
66:25, 67:1,
67:2, 70:2,
90:22, 148:12,
163:7, 168:5,
201:1, 201:4,
202:23, 203:4
**more**
11:18, 14:19,
22:4, 30:18,
39:19, 52:15,
61:8, 61:17,
66:1, 93:17,
94:9, 98:3,
99:13, 116:3,
117:11, 123:15,
123:19, 124:7,
124:24, 129:10,
131:1, 131:5,
137:19, 145:21,
150:5, 157:6,
157:17, 158:2,
158:11, 161:6,
161:16, 161:18,
161:19, 162:25,
168:24, 172:23,
174:14, 182:3,
194:15, 198:11,
199:6, 202:25
**morning**
9:8, 82:23
**most**
13:1, 65:14,
65:15, 132:3,
168:8, 181:24
**motion**
183:9, 187:18,
187:19, 188:4,
203:15
**mouth**
43:3
**move**
182:18, 182:20,

183:12, 187:11,
187:13, 187:25,
203:9
**much**
24:16, 76:24,
89:8, 94:15,
105:1, 135:2,
135:3, 147:9,
161:6, 161:12,
161:15, 165:5,
171:1, 171:11,
171:25, 173:7,
176:15, 176:23,
178:8, 194:14,
201:25
**multiple**
29:18, 101:23,
123:21, 123:24,
124:1, 128:17,
136:25, 137:1,
137:5, 137:12,
148:10, 148:12,
159:13, 159:16,
159:17, 159:19,
159:22, 159:25,
163:17, 165:18,
165:19, 166:1,
166:5, 166:8,
166:12, 166:16,
166:25, 167:1,
168:10, 168:15,
169:3, 169:4,
169:5, 169:7,
169:23, 169:25,
170:3, 173:5,
173:11, 175:8,
175:16, 175:17,
176:4, 176:12,
177:1, 177:6,
177:8, 177:18,
177:23, 177:25,
178:21, 178:25,
179:5, 179:6,
182:25, 191:22,
192:6, 192:8,
192:15, 196:1,
196:4, 196:15,
196:24, 196:25,

197:16, 198:2,
198:4, 198:5,
198:14, 202:24,
203:6, 205:17
**multiples**
24:21, 132:10,
139:14, 161:10,
161:24, 170:1,
173:2, 176:5,
181:14, 192:20
**multiply**
176:14
**must**
28:2, 69:22,
98:22
**mute**
147:12
**myself**
87:14, 97:23

**N**

**nabeel**
8:3
**name**
9:8, 9:21,
26:10, 38:24,
39:6, 40:11
**naming**
161:8
**native**
60:12, 60:16,
206:14
**nature**
11:6, 68:15
**nd**
88:6, 92:19
**nearly**
79:7
**necessarily**
56:3, 95:23,
96:6, 181:22,
182:11
**need**
9:11, 9:23,
31:10, 33:21,
39:16, 39:17,
41:16, 42:6,
43:7, 43:12,

44:11, 45:16,
47:9, 49:15,
49:16, 53:22,
59:9, 59:10,
74:14, 74:17,
92:9, 107:1,
109:25, 110:3,
110:11, 123:3,
125:24, 126:1,
137:14, 149:1,
162:25, 163:13,
163:16, 163:17,
166:2
**needed**
46:19, 92:17,
112:20, 113:1,
113:2, 124:17,
125:4
**needs**
76:25, 178:9
**negative**
199:21
**negotiated**
44:17
**neither**
113:1
**net**
163:18
**never**
34:16, 77:11,
87:2, 88:12,
117:14, 122:13,
125:23, 134:25,
147:4, 147:5,
155:9, 155:15,
174:20, 197:21
**new**
54:1, 109:17,
127:12, 205:4
**next**
114:14, 149:23,
168:4, 182:25,
187:20, 192:18,
201:1
**nine**
90:22
**nod**
10:3

**noise**
74:22, 75:4,
86:1
**non-board**
111:4, 111:23
**none**
136:21, 144:12,
144:13
**nonresponsive**
183:7, 186:8,
203:12
**nonverbal**
10:3
**noon**
113:21, 113:24,
114:3
**normal**
162:25, 195:1,
200:22
**normally**
157:11, 158:11,
195:5, 200:20,
204:21
**north**
12:6
**notation**
191:17
**note**
54:12, 190:11,
206:6
**nothing**
54:7, 57:23,
118:14, 149:13,
201:7, 201:9
**notice**
2:4, 28:23,
30:13, 30:23,
31:10, 32:8,
32:18, 34:17,
37:13, 108:8
**notification**
30:19, 115:13
**notifications**
114:17
**notified**
43:15, 107:3,
115:19
**notify**
115:19

Transcript of Michael Farah, Designated Representative
September 14, 2022

notion
134:2
november
21:4, 22:2,
24:14, 45:2,
45:22, 120:24,
120:25, 130:4,
130:5, 131:11,
131:24, 135:15,
138:11, 138:14,
139:7, 140:18,
142:14, 150:3,
151:14, 181:4,
181:16, 190:8
nowhere
38:2
nuance
113:12
number
8:7, 23:3,
35:12, 39:9,
39:18, 43:18,
59:24, 70:9,
71:23, 72:24,
80:8, 86:4,
88:7, 89:10,
97:5, 99:24,
103:7, 103:12,
103:21, 103:22,
106:19, 114:6,
116:21, 116:25,
128:14, 131:24,
134:13, 136:23,
138:12, 139:16,
140:16, 143:14,
149:20, 152:16,
152:25, 160:8,
160:18, 162:15,
170:25, 174:7,
175:8, 178:1,
181:2, 181:6,
182:7, 187:4,
187:24, 188:6,
189:18, 191:14
numbering
81:22
numbers
19:20, 38:24,

39:7, 64:11,
95:20, 174:19,
202:22
nw
3:13

O

oath
9:11
object
45:3, 49:5,
50:4, 68:21,
120:23, 183:9,
186:7, 188:4,
203:15
objected
32:4
objecting
54:22
objection
23:17, 24:9,
29:24, 30:15,
31:7, 31:20,
32:12, 33:2,
36:16, 37:3,
46:6, 50:8,
50:16, 52:20,
53:7, 56:25,
58:11, 58:22,
59:6, 68:6,
68:21, 69:12,
70:25, 82:13,
83:3, 88:10,
90:16, 90:25,
92:23, 95:4,
102:16, 104:9,
107:9, 115:16,
121:4, 123:9,
130:11, 133:15,
133:23, 137:6,
139:22, 141:5,
170:5, 170:18,
174:1, 187:19,
188:23, 199:22,
200:4
objections
52:1, 71:4
objectives
95:25

obligated
32:6
obligation
30:12, 139:4
obligations
139:5
obviously
25:22, 40:8,
75:15, 85:11,
107:16, 130:21,
134:1, 188:13,
194:19
occur
145:1
occurred
56:17
october
10:11, 41:9,
41:12, 41:15,
42:12, 42:14,
70:11, 118:6,
120:2, 120:12,
120:17, 121:23,
122:1, 128:6,
194:16
odyssey
5:4, 101:18,
195:9, 197:10,
205:20
offer
5:5, 49:8,
51:15, 52:24,
54:11, 55:3,
57:4, 57:14,
70:10, 71:7,
72:3, 116:21,
116:23, 116:24,
117:19, 118:7,
119:4, 119:21,
119:23, 121:24,
122:13, 122:19,
122:20, 122:24,
123:3, 123:7,
123:18, 124:24,
125:8, 128:6,
129:16, 130:20,
130:24, 138:24,
171:17, 172:4,

174:14, 174:18,
174:22, 181:17
offered
57:3, 123:15,
124:3, 129:4,
132:15, 132:18,
138:25
offering
130:25
offers
114:7, 124:10
office
101:12, 157:14,
209:2
official
92:10, 124:11,
124:12, 125:7
officially
113:16
often
13:1, 127:12,
138:19, 140:12,
145:14, 146:23,
182:4, 182:9,
193:13
oftentimes
194:2
oh
18:14, 19:25,
40:24, 50:11,
54:25, 55:8,
60:13, 70:15,
76:12, 81:3,
81:13, 92:3,
98:25, 100:1,
103:17, 115:7,
156:23, 158:19,
190:4, 190:12,
192:10, 196:13,
196:21, 197:4
once
15:5, 53:20,
201:17
one
9:19, 16:16,
18:22, 21:1,
22:23, 23:2,
23:8, 26:13,

Transcript of Michael Farah, Designated Representative
September 14, 2022

28:5, 35:20,
43:1, 43:3,
48:16, 52:25,
54:2, 54:3,
54:4, 54:17,
54:18, 54:19,
54:20, 55:6,
69:1, 75:13,
76:13, 76:14,
79:14, 84:21,
86:3, 97:14,
103:18, 108:4,
112:11, 112:18,
113:1, 113:5,
113:11, 123:23,
125:5, 128:5,
129:7, 135:5,
135:6, 137:8,
137:25, 140:8,
144:22, 145:3,
145:8, 145:19,
147:4, 149:12,
150:11, 151:20,
151:21, 153:8,
156:19, 160:11,
165:17, 166:7,
166:22, 167:11,
167:16, 168:3,
169:23, 170:22,
173:14, 173:16,
173:19, 173:22,
173:24, 174:3,
176:6, 178:18,
181:6, 186:20,
189:11, 189:12,
193:10, 205:19
**ones**
47:3, 135:8,
164:2, 164:3,
164:20
**ongoing**
57:16, 150:25
**online**
154:19
**only**
14:24, 36:14,
38:10, 38:13,
50:1, 70:13,

70:19, 77:9,
94:15, 105:25,
118:18, 129:19,
132:19, 139:18,
173:12, 173:19,
173:22, 174:4,
175:9, 175:11,
196:2, 199:12,
203:11
**openly**
138:19
**operate**
72:10
**operates**
161:6, 161:13
**operating**
11:5, 13:2,
13:9, 13:11,
15:8, 28:6,
91:22, 101:13,
154:25, 155:1,
155:4
**operative**
25:2, 138:17
**operator**
134:20
**opinion**
136:13, 142:5
**opportunities**
167:5
**opportunity**
13:4, 86:12,
151:7, 152:1,
182:15, 195:14
**opposed**
188:17
**optimal**
77:20, 136:23
**option**
129:19
**options**
18:4
**order**
143:23, 149:1
**ordinary**
49:18
**organic**
64:8, 64:21

**original**
39:10, 72:16
**originally**
156:17, 177:4
**other**
14:9, 15:7,
15:9, 15:12,
38:6, 38:16,
48:4, 48:12,
57:16, 57:24,
60:6, 66:3,
66:18, 75:17,
81:12, 84:4,
113:11, 115:4,
115:13, 117:15,
119:6, 122:24,
140:14, 144:6,
145:3, 151:23,
155:12, 160:18,
161:8, 166:16,
166:22, 166:23,
193:9
**others**
75:16, 188:22
**otherwise**
50:22, 129:12,
179:1
**out**
12:17, 42:18,
43:13, 46:15,
46:19, 49:11,
49:13, 57:18,
60:7, 61:13,
61:16, 62:1,
62:6, 64:6,
69:25, 70:22,
71:8, 76:13,
79:16, 80:17,
83:23, 84:18,
85:17, 85:19,
85:21, 85:22,
86:9, 86:24,
87:3, 88:3,
89:16, 90:24,
91:17, 91:20,
97:9, 98:2,
99:9, 107:1,
113:6, 128:13,

128:16, 137:10,
139:18, 140:22,
145:16, 147:13,
160:23, 163:25,
168:6, 174:16,
194:2, 196:8
**outcome**
200:10, 208:22
**outlined**
118:20, 118:25
**outlines**
72:7
**outlook**
151:9, 151:24
**output**
177:9
**outside**
49:17, 157:12
**outsized**
185:5
**over**
19:24, 24:15,
56:15, 60:24,
61:10, 63:6,
63:16, 67:3,
68:25, 89:13,
93:24, 99:22,
101:21, 118:7,
126:20, 131:4,
157:7, 165:4,
168:4, 174:11,
182:8, 191:10,
192:23, 200:13
**overall**
63:5, 64:17,
65:2, 110:14,
132:10, 152:4,
152:8
**oversight**
96:4, 96:18
**overview**
205:8
**own**
12:21, 64:22,
66:7, 74:24,
98:22, 128:8,
186:3, 203:3
**owned**
98:25

Transcript of Michael Farah, Designated Representative
September 14, 2022
240

owner
126:16
ownership
150:15

**P**

page
4:3, 4:9, 5:2,
6:2, 7:2, 17:20,
17:24, 18:15,
18:16, 18:19,
18:22, 18:24,
19:13, 19:19,
34:13, 34:23,
35:23, 39:1,
44:2, 44:13,
47:22, 89:15,
103:12, 103:14,
103:21, 138:18,
156:13, 182:22,
182:25, 184:22,
188:12, 190:1,
190:14, 191:3,
191:17, 193:3
pages
1:24, 34:7,
34:13, 87:23
paid
111:18, 139:18,
195:15, 198:7,
198:8, 198:20
paperwork
31:3, 41:19
par
159:18
paragraph
17:22, 18:20,
18:21, 18:24,
18:25, 19:23,
21:7, 26:4,
34:24, 97:12,
97:13, 103:21,
133:21, 133:22,
138:14, 138:18,
143:20
paraphrase
36:11
paraphrasing
36:9

part
27:19, 38:2,
41:13, 44:19,
51:21, 65:7,
65:8, 65:10,
72:4, 79:14,
79:17, 83:13,
85:3, 105:14,
133:17, 133:20,
138:17, 141:24,
144:6, 158:13,
166:23, 171:1,
171:4, 171:5,
177:11
part's
171:2
participate
110:23, 111:3,
111:5
particular
12:2, 13:1,
26:22, 57:15,
76:6, 77:2,
83:22, 84:19,
86:21, 91:12,
145:22
particularly
29:13, 45:4,
63:15, 67:7,
77:2, 150:14
parties
35:6, 208:20
partner
11:9, 11:14,
13:2, 13:10,
13:11, 15:8,
16:23, 85:7,
94:1, 124:22,
154:25, 155:1
partners
9:19, 11:8,
35:2, 35:4,
35:15, 35:16,
101:13, 155:11,
183:13, 185:22,
185:24, 186:16,
186:17, 186:24,
188:1, 189:19,

200:1
party
154:14, 154:18
past
173:16, 173:20,
173:23, 202:9
pat's
28:7, 41:12,
44:23, 49:19,
62:19, 85:10,
90:13, 91:14,
115:20, 116:9,
116:17, 121:25,
133:11, 136:23,
137:15, 143:7,
153:5, 157:9,
184:15, 188:18,
188:20, 190:7
path
24:17, 94:20
patrick
1:4, 8:4, 8:18,
9:9, 13:9,
17:16, 26:6,
36:3, 70:10
pattern
138:22
pay
13:6, 161:19,
201:2, 201:4,
202:24
paying
49:10, 49:12,
64:19, 64:24,
65:4, 203:5
payment
118:22, 195:13
payments
25:19
payout
5:4, 102:19,
102:23, 170:1,
170:2, 170:11,
170:16
pdf
206:15
pending
8:4, 8:5

people
10:2, 45:10,
61:14, 84:7,
115:4, 135:1,
154:20, 155:6,
161:1, 162:19,
202:14, 202:15
people-consulting
160:22
perceive
63:25, 82:11,
83:25
perceived
27:3, 73:5,
83:18
perceives
75:5
percent
18:2, 20:4,
101:23, 129:3,
132:16, 133:5,
146:20, 171:13,
171:14, 176:21,
191:19, 193:13
perception
83:21, 86:20,
86:21
perella
7:7, 189:19
perfect
146:24, 147:5,
190:25
performance
18:4, 51:20,
62:20, 62:23,
89:1, 118:20,
129:3, 129:9,
132:19, 133:5,
134:6, 136:24,
162:23, 175:7,
175:9, 175:10,
200:11
performed
143:7
perhaps
31:13, 50:19,
87:2, 110:12,
119:14

**period**
10:14, 11:10,
14:2, 14:4,
40:25, 56:16,
61:12, 64:10,
66:19, 147:2,
170:23, 201:9
**periods**
65:1, 94:24
**person**
48:4, 48:9,
48:12, 50:1,
50:14, 114:25
**personal**
108:15, 108:16,
109:19, 153:13,
200:7, 208:13
**personally**
58:4, 108:24
**perspective**
24:1, 28:5,
128:8, 161:19
**pharma**
5:13, 97:17,
132:10, 160:6,
160:7, 183:1
**phone**
29:14, 29:16,
33:19, 56:15,
89:14, 89:20,
91:18, 117:5,
122:6
**phrase**
47:21, 55:17
**pick**
123:25, 135:7,
160:18
**picks**
123:24
**piece**
67:8, 99:18,
109:16, 111:22,
176:24
**pieces**
159:5
**pipeline**
167:7, 167:8
**pitch**
7:4, 7:5, 7:6,

7:7, 7:8, 22:19,
22:20, 22:23,
23:14, 181:3,
181:5, 189:20,
204:16, 204:22,
204:25
**piyush**
106:21, 107:12,
109:15, 112:17,
113:4, 114:14,
114:17, 114:22,
115:8, 115:12,
115:14, 115:18,
115:20, 115:22,
116:1, 116:17,
153:3, 162:22,
163:3
**place**
8:12, 44:9,
44:24, 47:24,
113:18, 123:16,
194:20, 208:16
**plaintiff**
1:5, 3:2, 8:17,
9:17
**plaintiff's**
6:5
**plan**
90:24, 92:11
**planet**
8:11, 8:24
**planning**
150:23
**play**
135:7
**played**
57:18
**please**
8:14, 8:25,
9:23, 18:6,
20:10, 33:23,
39:4, 60:3,
60:7, 105:8,
105:20, 105:21,
106:24, 114:20,
118:21, 132:7,
153:7, 163:11
**pleased**
200:9

**plenty**
182:24, 187:15
**plus**
191:11
**point**
22:16, 27:13,
43:8, 43:13,
45:8, 49:4,
69:1, 70:1,
73:10, 74:15,
76:9, 88:19,
88:21, 91:14,
94:13, 94:14,
94:18, 94:19,
112:10, 112:18,
112:19, 116:13,
120:7, 121:2,
121:11, 122:8,
122:9, 138:3,
151:16, 151:20,
151:21, 166:20,
170:16, 171:8,
171:23, 172:4,
172:11, 174:14,
185:2, 185:20
**points**
29:18, 69:22,
73:9, 151:21,
151:23
**policy**
6:16, 143:17
**pool**
149:4, 179:12
**portfolio**
125:13, 125:19
**portion**
118:19, 159:10,
195:24
**position**
10:9, 10:10,
16:21, 51:23,
56:10, 56:12,
57:11, 133:11,
133:14, 135:14,
153:20, 187:17
**positioning**
182:2
**positions**
155:8

**positive**
199:21
**possible**
32:23, 73:17,
73:18, 197:25
**possibly**
150:8
**potential**
77:21, 97:21,
100:11, 144:22,
151:16, 152:1
**potentially**
99:8, 101:22
**ppg**
6:20, 25:17,
25:18, 25:23,
73:3, 73:4,
80:17, 80:20,
82:4, 85:13,
89:17, 89:18,
98:3, 99:13,
106:24, 107:16,
148:2, 155:19,
159:16, 163:5,
163:13, 163:14,
166:1, 169:19,
189:21
**ppg's**
110:10
**prab**
106:22, 116:2,
153:3, 163:4,
163:11, 164:22
**prab's**
165:21
**practical**
100:17
**precedent**
144:25, 145:7,
145:11, 145:22,
146:5, 146:17,
146:22, 146:25,
166:11, 176:11,
179:7, 184:7
**precedents**
148:25, 149:2,
149:5, 163:16,
163:21, 163:22,

163:23, 164:2,
164:13
**preceding**
66:9
**preface**
34:8
**prefer**
113:24
**preferred**
159:7, 163:18,
176:20, 176:21,
176:23, 177:1
**premium**
189:21
**prepare**
193:5
**present**
3:18, 120:15,
135:22, 203:22,
204:12
**present-value**
145:18
**presentation**
181:20, 205:6
**presentations**
181:25, 200:15,
205:8
**presented**
14:22, 18:3,
18:7, 173:15,
173:16, 173:24,
174:3
**presenting**
23:25, 184:25
**pretty**
46:24, 78:1,
138:15, 165:5,
171:12
**previous**
18:15, 18:16,
18:18, 89:8,
105:24, 106:3,
106:4, 121:24,
148:24, 165:7,
191:2, 191:3,
208:6
**previously**
25:17, 26:16,

34:15, 46:2,
51:8, 144:5
**price**
18:3, 132:15,
133:8, 140:14,
151:12, 161:7,
178:7, 189:21,
195:9, 195:11,
199:20, 200:2
**pricing**
133:7
**principal**
11:12
**principles**
125:18
**prior**
14:7, 14:13,
17:15, 22:12,
27:1, 29:18,
30:16, 34:11,
44:13, 46:2,
46:5, 46:9,
46:25, 69:23,
74:8, 88:6,
104:20, 107:18,
107:21, 114:18,
115:13, 116:19,
126:14, 127:8,
138:20, 162:18,
181:18
**private**
11:22, 145:5,
150:12, 161:18
**pro**
167:14
**probably**
9:16, 43:10,
43:15, 46:22,
51:21, 55:12,
60:11, 61:16,
74:7, 89:13,
110:20, 120:23,
121:20, 150:24,
191:19, 193:17,
202:3, 202:17
**problem**
82:12, 83:1
**problematic**
85:5, 85:25,

86:18
**proceed**
9:1, 41:18,
118:23, 187:22
**proceedings**
208:14
**proceeds**
126:21
**process**
14:10, 14:17,
62:4, 118:22,
140:20, 149:22,
150:22
**produce**
174:7
**produced**
37:20, 40:13,
60:11, 60:16,
101:13, 143:15,
205:23, 206:8,
206:13
**profile**
167:4
**profit**
160:25, 200:3
**profits**
160:23
**project-based**
161:2
**projected**
195:18, 205:15
**projects**
145:16
**promise**
138:1
**promoted**
11:14
**pronounce**
147:24
**propharma's**
18:2, 52:6,
86:17, 103:8,
104:1, 108:11,
113:8, 168:6
**prospective**
202:5, 202:7,
205:4
**prospectively**
149:22

**proves**
185:2
**provide**
21:10, 22:5,
22:16, 28:22,
61:3, 103:24,
104:13, 104:24,
111:11, 130:2,
157:2, 157:7,
157:11, 157:17,
158:6, 204:15
**provided**
21:15, 22:7,
35:14, 56:24,
57:12, 112:19,
113:3, 113:16,
119:14, 121:14,
121:20, 152:15,
156:14, 156:17,
156:18, 156:19,
156:24, 157:23,
172:22, 196:3,
206:14
**provider**
12:14
**providing**
21:17, 58:8,
119:21, 140:10,
142:1, 142:5,
162:16
**provision**
193:6
**public**
144:18, 144:19,
145:4, 145:12,
146:24, 178:19,
179:7, 180:14,
180:17, 184:4
**publicly**
144:20, 180:13
**pull**
61:25
**pulled**
158:4
**purchase**
12:18, 12:19,
79:1, 79:2
**purchases**
5:13

Transcript of Michael Farah, Designated Representative
September 14, 2022

243

purely
164:9
purported
34:22, 47:4
purpose
91:6, 135:16,
142:3, 174:6,
180:12
purposes
12:21, 67:24,
110:10, 115:12,
136:23, 174:13,
192:21
pursuant
2:3, 26:4,
108:7, 129:20
put
43:3, 72:15,
134:3, 135:14,
154:17, 162:1,
162:20, 173:6,
176:2, 204:8,
204:9, 204:11,
204:12
puts
176:4
putting
109:8, 140:16

Q

quarter
57:9, 169:23,
176:22
quarterly
11:4, 57:8,
57:21, 148:7,
153:12
question
15:6, 16:12,
21:2, 22:4,
22:8, 23:19,
28:16, 30:18,
31:8, 31:23,
36:18, 36:24,
36:25, 37:4,
37:5, 38:4,
38:5, 39:4,
40:10, 40:20,

45:4, 45:5,
49:25, 53:3,
53:12, 54:14,
58:14, 70:13,
70:19, 70:21,
72:2, 76:10,
81:22, 84:12,
104:20, 108:7,
111:6, 119:1,
121:1, 130:10,
139:6, 141:15,
141:17, 148:24,
156:9, 163:20,
166:6, 166:23,
170:7, 173:18,
174:17, 183:6,
183:8, 186:9,
186:14, 187:20,
188:3, 192:1,
203:12
questioning
40:8, 72:17,
187:14
questions
9:23, 40:9,
60:8, 93:13,
111:21, 128:10,
142:7, 182:15,
187:21, 187:24,
193:22, 194:13,
194:17, 206:3,
206:4, 206:17
quick
62:9, 119:25,
141:2
quickly
62:6
quite
27:18, 63:16,
83:11, 97:18,
123:20, 151:2,
151:11
quotation
159:12, 162:1
quote
160:6
quoting
162:5

R

rabbit
167:16
raise
155:11
raised
52:1, 128:17,
168:15
raising
78:23, 203:2
range
147:6, 149:8,
189:11, 191:4,
191:22
ranges
24:12, 24:22
rate
101:25, 145:17,
176:21
rather
36:12, 173:20
rd
34:14, 34:18
reach
60:7, 94:14,
97:9, 98:2,
107:1
reached
94:18, 94:19,
99:9, 128:13,
128:16, 200:2
reaction
133:25
read
20:23, 20:25,
31:4, 36:12,
39:2, 46:7,
71:15, 73:22,
81:3, 98:16,
100:3, 104:15,
106:7, 106:9,
129:14, 133:10,
138:14, 141:9,
141:14, 207:3
reading
19:23, 45:4,
72:5, 128:21,

138:15
reads
44:14
ready
103:23, 104:2,
104:6, 104:13,
104:24, 111:11,
111:21
real
76:12
realizing
54:3
really
11:10, 13:5,
22:4, 24:23,
42:19, 49:21,
50:24, 57:20,
57:21, 57:23,
57:24, 61:18,
63:10, 63:25,
64:10, 64:13,
64:19, 64:20,
66:9, 66:18,
66:22, 68:12,
68:16, 69:4,
77:3, 77:19,
86:8, 96:12,
100:14, 105:1,
107:13, 109:15,
109:16, 115:24,
115:25, 116:3,
125:24, 126:4,
135:6, 141:2,
142:1, 142:21,
144:4, 149:6,
149:12, 151:1,
151:10, 158:21,
159:2, 167:9,
167:10, 171:5,
172:25, 179:1,
179:2, 182:12,
185:15, 196:2,
200:22, 201:24
reask
31:23, 32:2
reason
32:3, 57:16,
59:10, 60:10,

Transcript of Michael Farah, Designated Representative
September 14, 2022

244

115:19, 166:16,
182:10
**reasonable**
91:16, 91:23,
176:12, 180:9,
180:10, 191:1
**reasons**
75:13, 75:17,
135:4, 160:8,
161:9
**recall**
15:2, 21:15,
21:17, 22:7,
28:16, 29:1,
29:8, 43:5,
56:16, 59:16,
66:6, 71:16,
77:22, 77:23,
78:4, 78:5,
89:23, 99:17,
106:1, 106:5,
109:25, 110:18,
113:9, 119:16,
121:12, 122:5,
122:12, 124:12,
124:16, 125:3,
130:13, 135:18,
142:20, 152:18,
168:12, 193:23,
195:2, 195:4,
196:21, 196:22,
199:6, 199:15
**receipt**
25:16
**receive**
130:8, 174:9,
199:5
**received**
49:7, 96:10,
102:3, 102:6,
113:13, 113:15,
120:18, 129:15,
130:13, 136:4,
136:14, 152:17,
183:23, 190:16
**receives**
37:12
**recent**
132:8

**recently**
126:15, 178:16
**recess**
62:14, 143:2
**recipients**
130:7
**recognize**
37:24, 37:25
**recollection**
23:4, 24:2,
24:8, 24:20,
52:9, 54:9,
65:15, 84:16,
85:19, 88:22,
120:6, 120:21
**recommended**
143:22
**record**
10:7, 31:25,
37:1, 54:13,
55:15, 62:12,
62:16, 67:23,
80:18, 81:25,
84:12, 92:24,
93:12, 106:8,
130:22, 142:25,
143:4, 175:5,
186:8, 203:11,
206:6, 206:16,
206:20, 208:13
**recorded**
9:10
**recording**
9:13
**records**
45:17
**recusal**
88:12, 90:13
**recuse**
76:14, 77:3,
77:4, 79:22,
79:23, 87:14,
87:23, 88:3,
91:5, 97:23,
100:23
**recusing**
87:19, 90:21,
91:3

**redacted**
4:11
**reduced**
208:12
**redundant**
110:9
**refer**
9:17, 114:6
**reference**
40:5, 192:22
**referenced**
60:21
**references**
39:11, 55:24
**referencing**
41:14, 41:21
**referred**
54:14, 92:15
**referring**
9:20, 33:12,
38:11, 48:18,
50:20, 54:15,
55:2, 55:3,
55:5, 55:18,
92:24, 105:24,
107:13, 117:7,
159:6
**refers**
9:19, 50:1,
158:13
**reflect**
37:2
**reflected**
40:12, 206:11,
206:16
**reflects**
18:2, 20:4
**regard**
51:23, 55:23,
89:21, 112:16,
122:16, 132:4,
132:24, 139:6,
143:25
**regarding**
14:17, 25:22,
44:22, 51:14,
51:24, 61:3,
87:9, 107:25,

108:1, 108:13,
114:8, 114:9,
116:22, 118:16,
125:7, 128:17,
188:1
**regulatory**
80:19, 85:12,
85:14, 85:16
**rehashed**
121:24
**reilly**
106:21, 153:3,
156:2, 163:2,
163:10, 163:11,
163:13, 169:19
**reilly's**
155:18
**reissue**
117:19
**rejected**
49:8
**relate**
96:8
**related**
52:18, 52:22,
70:14, 75:20,
95:22, 107:11,
142:8, 154:24,
155:2
**relates**
82:9, 82:23
**relation**
16:21, 33:13
**relationship**
14:6, 14:13,
33:7, 35:5,
70:23, 76:15,
76:16, 91:15,
92:20, 93:20,
94:17, 97:21
**relationships**
40:14, 138:20
**relative**
208:18, 208:19
**relayed**
66:2
**relaying**
96:9

Transcript of Michael Farah, Designated Representative
September 14, 2022

245

**relevant**
22:21, 22:22,
81:2, 81:6,
145:19, 146:9,
149:9, 186:19
**reliable**
24:1
**rely**
149:11
**remained**
102:2, 102:5
**remember**
10:18, 13:14,
24:11, 40:22,
67:14, 68:9,
78:1, 78:2,
84:18, 93:23,
98:23, 117:4,
154:4, 198:8
**remembering**
66:21
**reminding**
91:9
**remotely**
208:16
**removal**
21:21, 25:18,
25:19, 34:22,
34:25, 37:13,
42:19, 49:3,
55:19, 88:23,
105:8, 108:1,
108:13, 110:9,
112:18, 116:18,
117:7
**remove**
30:21, 36:14,
75:8, 105:8,
105:20, 105:22,
106:11, 110:4,
110:6, 110:16,
110:21
**removed**
26:25, 27:2,
32:8, 32:25,
49:4, 68:2,
68:5, 68:20,
105:5, 105:7,

105:13, 106:23,
107:19, 109:3,
111:19, 116:9,
142:19
**removes**
26:5
**removing**
109:3, 206:10
**repeat**
170:7
**repetitive**
105:6
**rephrase**
9:24, 15:11,
23:19, 90:19,
141:8, 199:24
**replies**
48:2
**report**
132:8, 134:14,
134:16, 163:1,
173:21, 184:13,
184:19, 185:6,
188:2, 188:21,
189:2, 189:4,
189:14, 191:15
**reported**
1:25, 208:11
**reporter**
2:5, 8:23,
9:13, 20:12,
81:11, 81:14,
84:3, 84:7,
84:14, 106:9,
128:21, 187:6,
187:8, 196:8,
208:4, 209:10
**reporting**
148:21
**reports**
20:22, 21:5,
21:18, 21:19,
21:25, 22:16,
22:19, 23:13,
23:22, 24:3,
24:6, 24:21,
24:23, 135:16,
135:21, 136:1,

136:4, 136:8,
136:14, 136:22,
139:8, 139:11,
139:14, 139:20,
139:24, 140:4,
140:7, 140:9,
141:3, 141:18,
141:22, 142:4,
148:7, 151:17,
151:19, 173:21,
173:22, 193:5
**represent**
8:15, 9:9,
45:9, 89:25,
141:23
**representative**
1:15, 107:23,
108:12, 135:4
**represented**
45:1
**representing**
8:11, 132:16
**repurchase**
4:18, 4:21,
21:23, 43:11,
44:5, 44:10,
44:24, 47:23,
47:25, 48:3,
48:8, 48:19,
49:1, 49:15,
50:23, 51:9,
51:13, 53:22,
55:23, 56:3,
56:18, 57:17,
58:9, 129:17,
129:19, 133:8
**repurchased**
129:23
**repurchasing**
118:24
**request**
44:6, 69:11,
105:17, 105:23,
105:25, 106:11,
107:6, 142:18
**requested**
25:20, 61:9,
109:3

**requesting**
21:8, 133:3
**requests**
25:15
**required**
28:20, 28:22,
29:13, 30:20,
32:17, 33:17,
33:22, 113:2,
116:8
**requirement**
125:25
**requirements**
30:19
**research**
16:17
**resign**
73:17, 73:18,
74:16, 74:17,
74:24
**resigned**
74:13
**resolution**
54:15, 55:6,
55:19, 124:15,
124:16, 124:18,
125:4, 125:6,
125:9, 125:10,
126:2, 127:13,
206:10
**resolve**
26:15
**resolves**
25:14, 25:22
**respectively**
180:22, 184:10
**respond**
62:5, 117:18,
122:6
**responded**
105:20, 109:2,
184:14, 188:20,
190:7
**responding**
130:25
**response**
21:12, 21:16,
22:5, 31:5,

Transcript of Michael Farah, Designated Representative
September 14, 2022

246

37:4, 82:5,
97:25, 104:1,
117:1, 117:3,
117:13, 117:14,
121:25, 122:2,
130:9, 130:14,
131:25, 138:13,
141:10, 141:12,
141:15, 141:17,
141:24, 143:15,
163:10, 165:20,
184:14, 196:6
**responsive**
158:2, 186:14,
187:12
**rest**
11:2, 190:6
**restated**
35:7
**result**
132:14
**return**
101:20, 101:22,
101:25, 102:3,
132:13, 132:20,
133:6, 137:9,
137:10, 137:13,
161:21, 175:20,
178:7, 185:6
**revenue**
64:6, 144:22,
160:23, 160:25,
201:1
**reverse**
44:14
**review**
47:12, 96:4
**reviewing**
11:3
**revoked**
129:18
**rgilmore@steinmi-**
**tchell**
3:16
**richard**
75:23, 76:3,
76:5, 76:16,
77:12, 78:24,

79:6, 79:8,
79:13, 97:7,
97:13, 98:19,
99:7, 99:9,
100:6, 100:8,
100:10, 100:16,
101:1, 101:14,
102:2
**richard's**
98:16
**right**
16:14, 17:8,
20:8, 21:13,
21:20, 22:18,
35:20, 37:1,
40:17, 40:25,
44:12, 45:25,
46:4, 46:12,
51:10, 53:2,
54:21, 56:7,
57:6, 59:4,
60:13, 69:19,
73:16, 74:4,
75:3, 77:2,
78:18, 79:3,
91:19, 93:7,
93:10, 93:16,
94:16, 97:16,
100:24, 101:3,
103:21, 104:12,
109:19, 113:17,
114:1, 114:4,
115:22, 116:20,
117:16, 120:10,
121:22, 123:4,
124:20, 129:8,
136:11, 136:25,
142:2, 142:3,
148:1, 151:5,
157:3, 158:4,
164:17, 165:10,
165:24, 170:23,
174:23, 175:12,
175:15, 175:18,
179:4, 185:4,
186:2, 191:8,
194:24, 198:6,
198:15, 201:6,

201:18, 202:4,
202:21, 203:23,
205:2
**risks**
151:25
**rmr**
1:25, 2:4,
209:9
**road**
89:14
**rob**
41:8, 42:8,
42:16, 42:22,
43:23, 44:3,
44:14, 45:9,
46:10, 46:23,
48:2, 48:14,
50:13, 186:16
**rob's**
48:16, 49:20
**robert**
3:11, 8:19
**robinson**
130:6, 131:25,
132:5
**role**
11:7, 83:17,
86:10
**roles**
10:24
**roll**
126:15
**rollover**
125:14, 126:15,
126:17, 126:25
**rolls**
126:20
**room**
79:16, 154:15,
154:17
**rough**
193:18
**roughly**
192:19, 196:4
**rude**
91:11
**run**
58:4, 140:19

**running**
78:19, 79:8,
159:14

---

**S**

---

**s**
143:21
**saas**
201:2
**said**
9:9, 10:21,
12:16, 18:15,
23:21, 26:16,
27:15, 30:11,
31:11, 31:12,
32:6, 34:15,
39:10, 43:2,
43:3, 46:2,
46:24, 53:17,
55:2, 61:20,
64:14, 65:14,
66:7, 66:14,
73:12, 76:12,
77:25, 81:7,
85:11, 85:15,
87:10, 88:1,
88:7, 88:12,
89:25, 94:23,
94:25, 95:10,
95:13, 105:8,
106:4, 110:22,
112:2, 113:12,
117:5, 117:9,
118:12, 136:7,
149:1, 154:5,
162:6, 162:8,
162:9, 162:23,
167:20, 169:6,
179:4, 179:9,
179:25, 190:24,
194:19, 195:8,
195:10, 196:3,
197:17, 208:15
**sake**
54:13
**sale**
18:9, 20:17,
24:14, 60:25,

62:4, 101:2,
120:9, 130:2,
140:20, 150:9,
150:13, 150:19,
198:5
**sales**
195:9
**same**
24:17, 25:10,
27:20, 33:15,
52:5, 55:17,
59:4, 59:9,
66:14, 71:4,
72:2, 75:24,
79:1, 79:2,
79:5, 79:7,
86:7, 89:15,
93:15, 117:19,
119:21, 119:25,
120:1, 122:25,
125:17, 126:10,
127:11, 148:19,
148:20, 159:21,
160:16, 163:13,
164:8, 165:5,
165:13, 165:15,
180:15, 184:18,
184:23, 187:8,
189:3, 189:14,
192:10, 192:20,
202:23, 206:13,
207:4
**satisfied**
151:12
**saw**
49:4, 135:25
**say**
9:10, 24:11,
38:8, 40:7,
45:21, 48:14,
50:18, 55:24,
62:1, 67:12,
77:22, 79:13,
82:7, 89:12,
91:19, 93:19,
95:13, 96:11,
99:12, 104:5,
105:15, 123:6,

123:7, 126:22,
129:7, 131:9,
140:12, 141:18,
146:6, 157:4,
158:15, 158:22,
160:11, 171:19,
174:19, 174:20,
174:24, 177:3,
178:13, 178:15,
179:21, 180:5,
182:10, 182:21,
198:19, 200:17,
202:2, 202:12,
202:21
**saying**
23:5, 23:12,
23:14, 28:7,
29:15, 34:8,
41:15, 47:7,
58:5, 59:2,
59:5, 65:4,
67:25, 73:25,
74:11, 75:12,
79:22, 81:22,
86:19, 86:20,
90:14, 92:16,
95:10, 96:11,
96:12, 98:1,
100:13, 105:20,
110:4, 111:14,
111:17, 111:22,
149:18, 157:16,
158:5, 164:5,
164:9, 171:7,
171:13, 171:16,
171:22, 172:13,
173:3, 173:6,
182:6, 185:25,
186:3, 186:4,
189:10, 190:3,
192:17
**says**
17:23, 18:1,
18:5, 19:13,
20:9, 25:12,
25:14, 25:15,
26:4, 26:14,
34:15, 34:21,

34:25, 35:5,
35:9, 35:10,
35:24, 36:2,
36:10, 41:11,
41:13, 41:16,
41:18, 44:8,
44:14, 44:19,
44:22, 47:22,
47:23, 48:2,
50:13, 51:17,
51:18, 55:1,
60:3, 60:20,
73:1, 74:10,
80:21, 82:2,
82:21, 85:11,
87:20, 97:9,
97:14, 98:4,
98:10, 98:15,
101:20, 104:11,
106:23, 107:16,
118:8, 119:2,
128:13, 128:16,
129:13, 129:15,
132:3, 132:7,
132:12, 134:20,
138:17, 138:19,
147:23, 148:6,
153:5, 153:11,
153:17, 154:11,
155:18, 155:19,
156:2, 156:3,
159:12, 162:23,
163:5, 164:23,
166:22, 166:24,
170:10, 184:4,
184:5, 191:19,
192:8, 192:9,
194:12
**scenario**
174:21
**schedule**
5:4
**science**
146:4
**scope**
200:5
**scratch**
115:11, 115:22

**se**
173:5
**seal**
209:2
**second**
21:1, 26:3,
108:4, 153:17
**second-to-last**
44:2
**seconds**
164:22
**section**
26:4, 36:10,
205:13, 205:14
**sector**
13:1
**sectors**
149:7
**see**
17:22, 19:25,
20:20, 21:3,
23:9, 25:14,
31:16, 39:17,
40:1, 40:4,
44:22, 47:12,
55:12, 59:10,
59:11, 63:11,
66:5, 70:15,
73:22, 74:5,
81:9, 85:5,
92:5, 97:21,
97:22, 100:1,
102:1, 115:7,
120:15, 122:11,
127:5, 127:15,
127:16, 132:7,
135:11, 135:21,
135:22, 137:15,
139:9, 144:21,
149:1, 151:4,
153:11, 153:14,
153:17, 153:21,
157:6, 157:10,
157:12, 158:19,
165:3, 189:21,
189:25, 190:5,
191:4, 195:1
**seeing**
82:25

Transcript of Michael Farah, Designated Representative
September 14, 2022

248

seem
45:9, 58:5
seemed
87:1
seems
144:9
seen
34:16, 41:19,
113:5, 127:7,
127:9, 135:15,
142:9, 144:5,
155:9, 155:15
sees
159:16
select
146:13
self-serving
160:2
sell
12:18, 12:19,
23:1, 76:9,
98:23, 99:7,
101:18, 151:1,
151:10, 192:18,
194:23, 200:20,
202:8, 203:21,
204:11
seller
203:20
selling
135:16, 149:23,
150:4, 150:6,
172:22, 185:17,
192:23
sells
175:6
send
32:17, 43:12,
44:4, 47:9,
51:9, 53:4,
107:22, 109:20,
109:22, 118:22,
129:25, 153:8
sending
46:15, 91:4,
118:9, 122:21
sense
71:17, 73:2,

73:6, 138:3,
174:8, 175:1,
203:7
sensitive
161:7
sent
5:4, 27:14,
29:15, 34:19,
42:5, 46:25,
47:1, 47:8,
47:10, 49:1,
52:24, 53:5,
70:20, 81:7,
105:18, 109:20,
113:6, 115:14,
115:23, 121:23,
122:1, 132:1,
165:22, 206:12,
206:14
sentence
18:1, 18:18,
20:23, 20:25
separate
16:22, 93:14,
111:21, 166:3
separated
42:10, 48:4,
48:9, 191:25
separately
12:23, 165:23
separation
41:12, 44:16,
44:19, 44:24,
45:11, 47:23,
48:1, 72:13
september
1:17, 8:8,
10:10, 21:11,
21:24, 26:2,
34:10, 34:14,
34:17, 34:18,
34:20, 35:7,
43:4, 43:5,
49:2, 51:11,
52:19, 52:25,
53:2, 53:16,
53:17, 53:18,
54:7, 54:19,

54:20, 55:7,
57:23, 60:1,
101:3, 103:25,
104:14, 104:16,
104:22, 104:25,
106:20, 107:5,
112:23, 112:25,
114:11, 114:15,
116:21, 119:4,
119:22, 150:3,
150:9, 152:13,
153:10, 156:3,
162:18, 163:3,
164:21, 209:3
serve
65:25, 104:3,
104:8, 104:13
served
10:13
server
154:12
service
12:14
services
97:17, 103:24,
104:14, 104:24,
111:12, 132:10,
160:6, 160:7,
183:1
set
92:11, 124:19,
137:10, 145:1,
145:2, 166:11,
209:1
setting
11:1
several
9:15, 43:24,
65:10, 86:13,
93:22, 96:15,
126:14, 143:24,
144:15, 144:16,
151:20
shall
35:10, 35:13,
35:19
share
152:20, 153:8,

154:5, 155:19,
158:12, 163:5,
163:24, 164:1,
164:9, 164:14,
164:24, 178:7,
193:16, 193:21,
194:3
shared
45:18, 46:3,
125:22, 148:21,
157:21, 162:25,
180:16, 180:18,
193:18, 205:3
shareholder
126:19, 159:9
shareholders
159:1, 195:16
shares
21:23, 43:12,
46:13, 52:6,
52:15, 57:3,
60:20, 102:15,
118:18, 125:20,
127:11, 131:4,
136:24, 137:4,
137:8, 137:24,
139:12, 139:16,
139:18, 139:19,
146:16, 171:13,
174:10, 175:7,
175:9
sheet
60:6, 134:15,
152:15, 207:7
sherman
60:2, 66:14
short
49:25, 187:16
shorthand
2:5, 208:4,
209:10
shortly
11:15, 98:2
should
16:8, 18:5,
20:9, 26:15,
41:17, 59:3,
60:16, 66:11,

Transcript of Michael Farah, Designated Representative
September 14, 2022

| | | | |
|---|---|---|---|
| 67:16, 67:20, 68:14, 69:7, 73:7, 77:22, 80:19, 84:23, 84:25, 85:12, 87:14, 90:14, 110:20, 110:21, 111:17, 117:10, 133:12, 156:7, 159:16, 164:3, 174:18, 178:17, 187:22 | **side** 72:15, 76:13, 76:14, 79:19, 80:20 | **situation** 76:6, 78:10, 146:1 | 76:9, 83:11, 94:13, 94:23, 101:17, 107:22, 118:20, 126:20, 128:10, 134:16, 134:18, 134:23, 135:2, 135:8, 140:14, 146:8, 147:7, 147:8, 149:7, 151:2, 151:3, 154:12, 160:18, 167:9, 171:8, 171:23, 174:8, 174:25, 179:10, 202:14, 202:15, 204:20 |
| | **sign** 51:10, 113:15, 116:23, 118:21, 130:20, 130:24, 201:16 | **six** 65:22 | |
| | | **size** 147:1, 149:4 | |
| | | **skipped** 18:17 | |
| **shouldn't** 67:25, 68:12, 68:16, 125:2, 164:3, 180:5 | **signatory** 35:2 | **slash** 47:25 | |
| | **signature** 28:15, 40:24, 51:10, 70:15, 70:16, 87:23, 207:10 | **slower** 161:3 | |
| **show** 24:3, 40:11, 135:22, 155:24, 158:25, 163:16, 163:17, 163:21, 163:24, 166:2, 166:7, 169:24, 169:25 | | **slower-growth** 161:4 | |
| | **signature-k9lvk** 209:7 | **small** 101:21, 113:12 | **somebody** 33:8, 69:2, 77:9, 91:16, 94:15, 121:16, 123:18, 157:2 |
| | **signatures** 87:12, 88:14, 91:5 | **snarkiness** 63:22 | |
| | | **snarky** 91:3, 91:11, 92:15 | |
| | **signed** 26:10, 26:13, 26:24, 28:10, 28:22, 32:18, 32:22, 34:25, 37:22, 38:15, 38:19, 40:22, 41:23, 43:2, 43:4, 47:3, 54:15, 55:7, 55:19, 70:17, 101:17, 206:9, 206:15, 207:7 | **software** 201:2 | **someone** 71:8, 181:9, 183:21 |
| **showed** 163:23 | | | |
| **showing** 166:5 | | **sold** 97:24, 98:24, 160:4, 160:12, 171:24, 174:10, 185:7, 188:14, 190:18, 199:19, 199:20, 200:3, 203:19, 204:20, 204:23, 205:20 | **something** 29:13, 42:18, 45:17, 67:19, 72:12, 77:4, 100:15, 105:21, 112:14, 124:17, 161:22, 168:7, 196:18, 196:22 |
| **shown** 93:5, 133:1 | | | |
| **shows** 38:19, 70:13, 143:19, 143:20, 143:23, 148:9, 148:10, 148:11, 156:6, 158:1, 166:1, 169:21, 170:2, 170:10, 181:8, 181:10, 182:25, 184:6, 184:8, 188:11, 188:14, 188:18, 189:4 | | | |
| | **significantly** 49:6 | **solely** 76:7, 76:8, 76:22, 88:23, 137:4 | **sometimes** 10:2, 158:20, 158:25, 197:9 |
| | **signing** 88:19 | | **somewhat** 48:22 |
| | **similar** 10:25, 63:5 | **solution** 79:12, 89:16 | **somewhere** 39:19, 39:20, 67:6 |
| | **simply** 54:21, 70:10, 97:22, 179:13 | **solutions** 100:18 | **sorry** 14:19, 15:5, 15:11, 17:3, 17:24, 18:13, 18:14, 19:18, 19:21, 20:13, 21:5, 29:3, 30:24, 31:4, |
| **shukla** 106:21 | | **solve** 80:1 | |
| **shut** 157:6, 197:17 | **since** 65:22, 82:10, 87:14, 118:8, 119:3, 144:11 | **some** 22:10, 42:11, 43:13, 44:16, 60:10, 64:8, 65:5, 65:18, | |
| **sic** 36:1, 132:23 | **site** 16:17 | | |

Transcript of Michael Farah, Designated Representative
September 14, 2022

32:11, 34:24,
36:5, 36:11,
38:4, 50:11,
60:17, 67:1,
78:15, 81:13,
81:21, 84:9,
85:10, 90:7,
92:1, 96:11,
98:11, 99:22,
99:23, 100:5,
102:20, 103:17,
105:6, 106:2,
106:5, 113:11,
114:21, 114:22,
116:18, 116:24,
126:17, 128:23,
150:3, 158:20,
168:2, 168:7,
170:7, 170:8,
183:2, 183:5,
185:18, 187:3,
187:7, 188:12,
190:1, 196:13,
196:14, 198:25,
204:6
**sound**
105:6, 135:13,
136:13, 160:14
**sounded**
108:6
**sounds**
98:20, 121:22,
198:15
**sour**
138:20
**speak**
33:4, 48:11,
50:6, 57:25,
73:10, 99:22,
116:15, 121:17
**speaking**
48:14, 98:11,
108:17, 147:5
**special**
180:15
**specific**
9:21, 11:18,
24:12, 38:3,

58:14, 66:1,
93:23, 175:4
**specifically**
63:18, 96:21
**specified**
208:17
**speculation**
84:1
**speculative**
203:17
**spell**
15:21
**spend**
61:7, 181:24,
182:3, 182:9,
201:15
**spent**
94:9, 182:12
**splitter**
36:6, 36:15
**spoke**
59:16, 89:12,
94:21, 118:9,
119:3
**spot**
97:17
**spreadsheet**
176:2, 177:12,
177:17, 177:19
**st**
26:7, 56:1,
57:13
**staff**
59:13
**stand**
101:24, 178:10
**standard**
137:17
**standard's**
143:21
**standards**
125:18
**stanson**
3:19, 8:10
**start**
87:24, 134:5,
150:18, 176:9,
177:5

**starting**
20:3, 85:5,
171:15
**starts**
44:3, 151:2,
170:3, 176:6
**state**
8:15, 10:8,
208:5
**stated**
55:25, 104:17
**statement**
30:6, 84:6,
94:25, 119:2
**statements**
11:4, 153:12
**states**
1:1, 155:18,
155:20, 163:6,
169:19
**stats**
155:22, 163:8
**status**
154:25
**stay**
13:25, 85:17,
86:23, 174:9
**stayed**
14:4, 85:19,
85:21, 85:22,
87:3, 88:3,
101:1, 175:1
**staying**
80:17
**stein**
3:12, 8:19
**stenographic**
81:25
**stenographically**
208:11
**step**
73:2, 73:7,
73:13, 75:11,
76:13, 79:16,
92:17, 92:18,
99:1
**stepping**
81:12, 84:3

**steve**
130:6, 131:25
**stick**
153:16
**sticking**
116:20
**still**
11:11, 60:19,
61:20, 61:22,
102:11, 102:12,
111:13, 112:2,
113:7, 120:2,
120:3, 124:3,
131:3, 140:23,
142:14, 148:4,
151:15, 160:17,
185:19, 186:21,
198:12
**stipend**
111:17
**stipulates**
129:10
**stock**
18:3, 117:10,
126:24, 127:6,
144:20
**stone**
92:11
**stop**
9:12, 9:13,
113:18, 113:20,
113:21, 113:22,
113:23
**stopping**
112:10, 138:3
**straight**
148:6, 171:3
**strategically**
97:19
**strategy**
11:2, 89:25,
96:3, 150:23
**street**
3:13
**strictly**
175:7
**strike**
15:6, 36:22,

Transcript of Michael Farah, Designated Representative
September 14, 2022

251

100:5, 109:21,
183:6, 183:7,
183:10, 187:11,
187:13, 187:25,
190:11, 193:2,
203:9
**strong**
12:7
**stronger**
64:9
**structured**
199:4, 199:15
**stuff**
81:1, 81:3,
91:17, 157:11,
158:20, 194:2
**sub**
26:6
**subject**
4:10, 4:14,
4:15, 4:17,
4:20, 4:23, 5:3,
5:10, 5:12,
5:15, 5:17,
5:18, 5:20,
5:22, 6:7, 6:9,
6:11, 6:19,
6:21, 6:23, 7:3,
7:9, 39:8, 40:5
**subjectivity**
146:3
**subscription**
201:3
**subsequent**
109:23
**subtract**
176:16
**suggest**
65:7
**suggested**
100:22
**suggesting**
40:10
**suggestion**
100:23
**suite**
3:5, 3:13
**suited**
160:3

**summarized**
143:23
**summarizes**
71:10
**summary**
163:19, 184:22
**summit**
185:22, 185:24,
186:15, 186:17,
186:24, 188:1,
202:18, 203:10
**supersede**
56:4
**supplied**
126:9
**support**
18:10, 20:18,
96:2, 96:3,
117:24, 119:14,
136:16, 136:18,
139:12, 139:20,
140:5, 153:6,
167:21, 176:13,
178:5, 185:1,
189:4
**supported**
63:14, 132:21,
178:10
**supporting**
153:6, 162:20,
182:23
**supports**
24:22, 115:2,
189:7
**supposed**
88:20, 96:18
**sure**
10:5, 10:12,
11:18, 11:22,
20:24, 26:21,
39:3, 40:2,
42:14, 46:22,
46:24, 52:22,
55:18, 58:14,
61:8, 67:16,
67:20, 68:19,
75:19, 81:4,
81:6, 81:17,

93:12, 106:25,
109:9, 109:13,
110:5, 112:8,
116:6, 116:12,
120:11, 124:21,
124:22, 144:4,
146:20, 150:11,
157:20, 160:19,
165:9, 165:14,
171:13, 195:3
**surprised**
195:1
**surprisingly**
183:21
**suspenders**
109:9, 116:4
**swear**
8:25
**sweet**
97:17
**sworn**
9:2, 9:5, 208:8

**T**

**table**
61:13, 61:23,
63:12, 156:6,
158:16, 158:18,
158:21, 158:22,
158:25, 159:3,
159:15, 171:4,
190:22
**tables**
61:10, 165:3,
165:21
**take**
12:24, 64:15,
65:20, 86:15,
91:20, 99:1,
105:2, 105:16,
111:8, 142:24,
146:1, 151:7,
151:8, 152:3,
167:17
**taken**
107:20, 148:6,
167:14, 208:15
**takes**
194:20

**taking**
8:12
**talk**
33:8, 143:6,
187:6
**talked**
62:22, 100:19,
121:10, 138:19,
200:13
**talking**
28:3, 48:16,
66:24, 80:25,
84:8, 90:3,
93:8, 93:14,
112:24, 122:8,
152:10, 186:15,
187:10, 199:9
**target**
12:5, 195:19
**team**
14:22, 59:17,
75:16, 94:10,
95:1, 96:2,
96:20, 109:14,
115:9, 116:8
**teams**
63:8, 63:16,
63:19, 63:24,
96:10, 96:16
**tech**
40:3, 134:25,
160:21
**tech-enabled**
161:11
**technologies**
16:18
**tell**
32:7, 66:5,
80:25, 93:24,
107:7, 110:16,
116:8, 120:22,
133:25, 140:4,
204:14
**tells**
176:3, 176:5
**tend**
10:3, 150:16
**terminate**
56:21

Transcript of Michael Farah, Designated Representative
September 14, 2022

252

terminated
21:21, 48:22,
56:1, 56:10,
56:12, 57:11,
58:6, 58:21
termination
41:19, 45:12,
47:4, 52:19,
53:1, 53:3,
53:6, 54:14,
55:6, 55:9,
55:17, 56:13,
56:20, 57:14,
58:9, 58:19,
61:4
terms
9:16, 22:5,
22:6, 28:21,
30:12, 30:18,
48:12, 48:23,
51:20, 70:23,
71:9, 71:12,
72:3, 72:7,
77:8, 110:14,
118:24, 122:8,
128:19, 129:20,
140:25, 144:21,
146:13, 164:16,
171:19, 193:9,
205:10
testified
9:5, 30:14,
51:8, 95:11
testify
208:8
testimony
30:16, 88:2,
107:6, 141:3,
186:13, 187:12,
188:1, 207:4,
207:5, 208:14
th
2:3, 3:13, 8:8,
10:10, 10:11,
26:24, 35:7,
38:19, 44:21,
47:24, 56:7,
56:24, 57:5,

70:11, 92:16,
93:21, 103:25,
104:14, 104:16,
104:22, 104:25,
120:2, 120:17,
121:23, 122:1,
128:6, 139:7,
142:13, 142:14,
155:20, 164:21,
165:18, 169:18,
170:16, 209:3
thank
8:22, 84:14,
107:4
thanks
82:5
theory
179:16
thereafter
35:12, 208:12
therefore
148:5, 197:22
thesis
12:25
thing
33:16, 66:14,
71:15, 100:3,
113:12, 157:3,
159:8, 163:14,
168:21, 184:18
things
11:6, 48:15,
74:10, 89:1,
92:9, 92:12,
92:13, 94:4,
95:22, 96:5,
100:18, 111:25,
125:12, 127:16,
137:7, 141:18,
142:22, 147:7,
147:8, 150:16,
160:2, 179:18,
182:2, 182:16,
183:20, 200:23,
203:3
thinking
82:25, 97:18,
150:13, 150:18,

178:13, 199:9
thinks
83:8, 91:10,
159:24
third
154:14, 154:18
third-party
22:22, 23:23
thomas
75:23, 76:3,
77:12, 78:24,
79:6, 97:7,
97:13, 101:14,
101:15, 196:3
thought
18:15, 55:5,
55:10, 81:23,
95:1, 111:24,
150:22
three
59:3, 60:24,
88:6, 140:7,
140:16, 150:17,
170:16, 171:6,
171:10, 171:25,
172:13, 172:14,
187:4, 202:23,
203:4
three-fifths
51:18
three-month-forw-
ard
201:11
threshold
137:10
thresholds
137:10
through
1:15, 34:7,
56:14, 64:2,
64:12, 83:23,
86:10, 91:17,
92:21, 95:15,
100:16, 100:19,
100:20, 103:24,
104:14, 104:16,
104:22, 104:25,
122:10, 136:17,

138:15, 152:16,
159:15, 176:7,
181:2, 181:23,
199:3, 199:9,
199:14, 203:1,
203:2, 205:1
throughout
66:9, 91:22,
138:21
tied
161:1
till
121:2, 140:20
time
8:9, 9:13,
10:14, 10:18,
11:7, 11:10,
13:8, 14:2,
14:4, 14:5,
14:11, 14:24,
15:1, 15:4,
15:9, 16:15,
21:10, 21:11,
22:16, 24:14,
25:10, 27:20,
35:13, 37:11,
40:25, 43:10,
43:11, 45:12,
51:16, 51:18,
56:16, 61:4,
61:8, 64:1,
66:19, 67:1,
67:9, 71:16,
74:15, 75:2,
75:3, 75:24,
78:2, 78:5,
78:22, 83:12,
86:7, 87:22,
90:3, 91:22,
91:25, 92:1,
92:2, 93:11,
93:14, 93:15,
93:24, 94:9,
98:19, 98:21,
109:12, 118:17,
118:19, 120:7,
129:2, 129:5,
129:16, 129:22,

Transcript of Michael Farah, Designated Representative
September 14, 2022

253

145:12, 147:2,
148:10, 148:15,
151:2, 151:6,
155:2, 168:18,
170:23, 171:20,
172:24, 176:23,
182:3, 182:9,
182:12, 182:13,
187:8, 187:15,
187:16, 200:10,
201:15, 201:23,
202:2, 202:3,
202:6, 203:1,
203:2, 206:18,
208:16
**timeline**
21:20, 67:7,
99:3
**times**
9:15, 63:13,
76:3, 92:20,
128:17, 132:11,
140:5, 160:5,
160:12, 160:13,
171:11, 172:14,
176:25, 182:1,
182:4, 185:12,
185:25, 186:3,
189:5, 189:9,
191:5, 192:18,
198:4, 198:20
**timing**
52:17, 52:18,
151:4
**tip**
85:8
**title**
10:9
**today**
8:10, 8:23,
9:10, 9:15,
126:8, 171:9,
177:6, 206:7,
206:12
**today's**
8:8
**together**
33:7, 35:17,

67:8, 73:11,
76:17, 95:22,
96:8, 99:18,
159:5, 162:20,
163:12
**told**
30:2, 42:9,
46:23, 53:20,
105:2, 105:15
**tone**
130:14
**tongue**
80:16, 82:3
**tony**
26:24, 27:7,
69:23, 72:23,
73:1, 89:12,
89:19, 91:13,
97:9, 98:1,
101:11, 101:16,
106:14, 123:17,
174:17
**took**
105:10, 198:3
**top**
17:23, 18:19,
39:8, 47:22,
99:5, 171:1,
171:4, 171:5,
190:13, 192:23,
196:21, 201:19
**topco**
1:8, 1:14, 5:7,
8:5, 8:21
**topic**
108:12, 108:18,
143:21
**total**
133:4, 145:9,
157:5, 159:14
**totally**
165:9, 201:1
**touch**
29:18
**tough**
69:15, 71:6
**toward**
94:23

**towards**
115:24, 115:25,
145:21, 169:2
**track**
61:12
**trade**
201:10, 201:13
**traded**
144:20
**trades**
166:10
**trading**
144:18, 144:21,
183:1
**traditional**
190:14
**traffic**
122:7
**trailing**
127:18, 127:21,
169:7, 169:9,
169:10, 173:1,
173:15, 192:19,
201:18, 201:19,
201:24, 202:3,
202:17, 203:6,
203:20, 204:3,
204:5, 204:10,
204:24
**trajectory**
95:15
**transaction**
18:9, 20:17,
61:22, 87:14,
87:24, 88:13,
88:15, 99:3,
127:5, 145:8,
146:25, 172:24,
176:11, 199:18
**transactions**
132:9, 144:25,
145:1, 145:23,
146:5, 146:8,
146:22, 149:8,
166:11, 179:7,
180:11, 184:8
**transcript**
208:10

**transcription**
207:5
**transfer**
44:25, 45:20,
46:3, 46:9
**transferred**
131:8, 131:16
**translate**
132:13
**transmission**
139:2
**treat**
123:18, 125:12
**trial**
168:16
**trials**
167:12
**tried**
48:25, 79:25,
80:1, 83:12,
83:22, 93:25
**tries**
173:19
**true**
50:21, 58:20,
76:4, 79:24,
120:11, 152:14,
186:23, 199:1,
207:4, 208:13
**truly**
194:1
**trust**
158:3
**trusted**
91:25
**truth**
208:8
**try**
10:6, 41:20,
53:9, 75:1,
75:7, 84:25,
125:17, 140:12,
147:5, 149:8,
149:15, 172:2
**trying**
12:17, 22:25,
31:6, 55:14,
56:9, 62:5,

Transcript of Michael Farah, Designated Representative
September 14, 2022

254

65:11, 74:25,
83:19, 85:24,
86:1, 86:6,
95:25, 96:1,
99:17, 123:18,
140:11, 141:12,
147:11, 157:3,
158:3, 158:11,
159:23, 171:17,
182:5, 185:3,
200:16
**tuesday**
194:14
**turn**
34:6, 34:13
**turns**
174:16
**twice**
26:11
**two**
10:23, 16:5,
23:3, 27:17,
54:1, 54:18,
56:22, 86:4,
92:19, 93:14,
95:21, 96:8,
111:21, 126:13,
126:14, 134:13,
145:21, 149:12,
150:15, 150:18,
150:24, 161:10,
166:3, 169:1,
170:25, 172:12,
175:20, 176:19,
186:2, 193:16,
197:2, 201:11
**two-fifths**
118:17
**two-month**
107:8
**two-thirds**
51:19
**twofold**
166:6
**type**
11:20, 12:2,
44:16, 87:16,
87:17, 145:20

**types**
76:18, 145:19,
180:10
**typewriting**
208:12
**typical**
10:25, 194:22
**typically**
61:14, 121:15,
163:24, 199:13,
201:14, 201:20
**tysons**
3:5, 3:6

**U**

**ultimately**
13:5, 49:7,
49:8, 49:10,
49:12, 85:17,
100:7, 137:13,
140:6, 178:5,
178:9, 178:22,
185:10
**umbrella**
78:13
**under**
9:11, 24:4,
30:12, 39:5,
71:13, 72:10,
78:12, 85:1,
118:24, 122:20,
122:23, 123:4,
123:7, 131:18,
143:19, 181:14,
208:12
**underevaluation**
19:4
**underperforming**
166:18, 166:20,
167:9
**undersigned**
26:5
**understand**
9:22, 12:9,
31:7, 45:20,
53:10, 56:9,
61:9, 67:23,
70:21, 84:9,

85:24, 126:13,
156:9, 159:23,
166:2, 166:23,
166:24, 173:18,
186:12, 187:17,
191:20, 192:2,
193:11
**understanding**
30:20, 32:10,
32:15, 32:16,
41:16, 86:10,
131:13
**understood**
29:22, 109:5,
161:25
**unfortunately**
63:8, 63:10
**unilateral**
44:12
**unintelligible**
20:11, 128:20
**unit**
5:8, 44:4,
71:24, 129:21,
132:15, 133:7,
172:1
**united**
1:1
**units**
44:10, 51:19,
51:20, 129:2,
129:3, 129:6,
129:9, 129:19,
129:22, 129:24,
132:19, 133:4,
133:6, 133:12,
175:10
**universe**
135:5, 146:14,
164:11, 164:19,
167:20, 167:21,
169:2, 176:10,
176:11, 178:17,
178:19, 205:11
**unless**
130:2
**unpack**
134:4

**unquote**
160:6
**unreasonable**
164:10, 179:19,
190:21, 190:25
**unrelated**
155:7, 188:2
**unreportable**
81:10, 84:2,
187:5
**until**
13:11, 64:4,
64:15, 73:9,
88:21, 97:24,
101:2, 110:2,
113:20, 142:14,
151:11, 158:9,
171:23, 174:9,
175:2
**unvested**
129:24
**up-front**
195:12
**updated**
60:4
**updates**
11:5
**updating**
116:3
**upfront**
201:3
**upset**
75:4, 84:18,
200:1
**upside**
152:1
**use**
9:16, 9:18,
23:7, 24:18,
86:16, 127:6,
134:17, 148:25,
149:2, 149:5,
172:2, 177:12,
179:6, 197:11,
204:9, 204:19
**uses**
39:9
**using**
23:10, 55:16,

Transcript of Michael Farah, Designated Representative
September 14, 2022

255

155:20, 158:7,
163:6, 168:11,
170:23, 192:10,
203:20, 204:24
**usually**
48:21, 145:21,
149:16, 167:13,
181:25, 193:16,
200:16
**utilize**
144:16

---
**V**
---

**validity**
51:22
**valuation**
6:16, 6:22,
6:24, 13:5,
13:6, 18:6,
18:11, 20:10,
20:19, 22:22,
23:13, 23:21,
23:24, 24:22,
52:11, 52:12,
56:23, 57:2,
57:12, 58:7,
58:19, 117:7,
123:22, 125:7,
125:11, 125:15,
127:18, 127:19,
127:23, 132:14,
133:2, 133:19,
134:15, 139:11,
140:5, 140:21,
143:7, 143:17,
143:24, 144:1,
148:7, 148:14,
148:19, 149:21,
153:6, 159:20,
161:9, 162:20,
163:1, 163:15,
168:18, 170:17,
170:21, 170:22,
170:25, 172:7,
172:8, 172:9,
172:12, 178:6,
182:4, 182:5,
185:1, 187:4,

188:2, 188:7,
188:19, 189:5,
189:7, 189:19,
192:21, 202:4,
203:20, 203:25,
204:13, 205:17
**valuations**
12:22, 18:7,
57:8, 120:9,
125:16, 144:13,
172:19, 172:22,
173:3, 182:22,
200:21
**value**
23:1, 24:4,
24:18, 45:2,
52:3, 52:6,
63:10, 63:11,
66:15, 73:5,
74:11, 75:15,
75:16, 88:25,
94:10, 96:17,
96:19, 102:14,
102:21, 118:13,
125:14, 126:3,
126:5, 126:6,
126:8, 126:10,
127:1, 127:3,
127:6, 129:12,
131:4, 132:6,
132:23, 135:8,
136:21, 137:2,
137:13, 139:1,
139:15, 139:20,
139:25, 140:3,
140:6, 140:8,
140:10, 140:12,
141:1, 141:4,
141:19, 141:23,
141:25, 142:2,
142:6, 144:3,
144:23, 148:5,
159:14, 164:7,
167:17, 169:9,
169:10, 173:19,
173:23, 173:25,
174:4, 176:5,
176:25, 177:2,

177:5, 178:6,
178:9, 181:11,
184:10, 184:20,
185:6, 185:8,
188:15, 188:16,
189:17, 191:7,
192:11, 195:13,
202:6, 202:7,
202:13, 202:15,
204:9
**value-add**
96:1
**valued**
127:13, 127:14,
127:17, 146:15,
160:13, 164:6,
202:16, 202:17,
203:10, 204:14
**values**
23:15, 132:8,
140:17, 176:3
**valuing**
24:13, 24:24,
117:10, 125:19,
144:10, 146:9,
178:8
**vandegrift**
153:4, 159:11,
163:4, 164:23
**variables**
178:21
**varies**
149:6
**vcoc**
35:17, 35:25
**vein**
10:2
**verbal**
10:6, 130:8,
130:13, 130:18
**verbally**
110:15
**verify**
199:8
**versa**
176:4
**version**
60:4, 103:14

**versus**
8:5, 77:10,
164:7, 169:23
**vest**
118:19, 129:5,
134:10, 137:4,
137:8
**vested**
102:14, 102:21,
129:2, 129:4,
129:20, 129:22,
148:11, 171:14,
174:10, 174:12,
175:8
**vesting**
51:19, 51:20,
52:15, 72:13,
118:18, 129:3,
129:5, 129:9,
129:22, 132:18,
132:19, 133:4,
134:7, 136:24,
137:11, 137:17,
171:20, 175:7,
175:10
**vests**
175:20, 175:22
**via**
153:13
**vice**
176:4
**video**
8:9, 8:12
**videographer**
3:19, 8:2,
8:10, 8:22,
9:14, 62:12,
62:15, 142:25,
143:3, 206:20
**videotaped**
1:13, 2:1, 8:3
**view**
27:3, 85:25,
111:3, 130:16,
142:5, 189:17,
197:22
**viewed**
198:1

Transcript of Michael Farah, Designated Representative
September 14, 2022

256

| | | | |
|---|---|---|---|
| **views**<br>125:1, 151:6<br>**violation**<br>186:25<br>**virginia**<br>3:6<br>**visibility**<br>168:24, 199:13<br>**voc**<br>35:16, 35:17,<br>36:1<br>**vocal**<br>67:5<br>**vps**<br>178:12<br><br>**W**<br><br>**wacker**<br>2:2, 8:13<br>**wait**<br>78:15, 189:9<br>**walk**<br>92:21, 160:23<br>**want**<br>11:21, 17:24,<br>24:7, 31:22,<br>34:6, 39:25,<br>40:4, 40:7,<br>47:19, 47:21,<br>55:15, 55:18,<br>61:7, 62:19,<br>65:13, 65:21,<br>66:4, 66:8,<br>66:13, 66:22,<br>67:10, 67:12,<br>67:21, 68:1,<br>68:10, 68:18,<br>68:25, 69:3,<br>69:6, 71:14,<br>74:11, 80:14,<br>87:23, 88:2,<br>93:12, 98:8,<br>103:11, 105:4,<br>105:12, 112:12,<br>112:13, 113:19,<br>113:21, 113:22,<br>114:6, 124:25,<br>129:8, 135:7, | 141:2, 141:10,<br>143:6, 146:18,<br>149:11, 153:16,<br>163:21, 164:13,<br>166:7, 174:18,<br>174:20, 178:17,<br>178:24, 179:21,<br>187:11, 198:25,<br>199:8, 199:17,<br>206:6<br>**wanted**<br>22:15, 27:6,<br>30:21, 70:3,<br>71:12, 72:2,<br>72:3, 74:9,<br>78:7, 84:5,<br>85:11, 88:7,<br>110:23, 111:2,<br>111:5, 166:19,<br>174:14, 179:15,<br>206:15<br>**wanting**<br>73:13<br>**wants**<br>74:23, 78:11,<br>78:12, 78:15,<br>78:19<br>**warm**<br>128:7<br>**washington**<br>3:14<br>**waterfall**<br>102:18<br>**way**<br>20:12, 39:20,<br>52:18, 61:16,<br>63:23, 68:24,<br>75:1, 77:20,<br>80:21, 87:1,<br>87:17, 96:22,<br>96:23, 100:24,<br>101:2, 113:16,<br>123:18, 124:1,<br>128:22, 131:3,<br>140:17, 140:22,<br>140:24, 149:18,<br>158:8, 164:6,<br>166:2, 168:9, | 176:9, 189:16,<br>197:19, 198:11,<br>201:14, 202:1<br>**we'll**<br>40:17, 84:12,<br>89:15, 89:16,<br>114:3, 118:23,<br>126:23, 138:3,<br>147:8, 172:2,<br>203:3<br>**we're**<br>28:21, 28:22,<br>29:12, 29:13,<br>30:20, 32:17,<br>33:6, 33:8,<br>33:16, 46:12,<br>53:21, 81:22,<br>92:6, 92:7,<br>93:8, 93:14,<br>95:25, 96:1,<br>96:18, 99:6,<br>116:7, 123:20,<br>124:4, 124:6,<br>125:16, 126:19,<br>127:2, 130:25,<br>131:5, 147:10,<br>147:11, 150:13,<br>151:20, 152:10,<br>155:20, 157:13,<br>158:3, 158:5,<br>163:6, 170:23,<br>178:13, 179:2,<br>181:10, 193:25,<br>194:14, 197:20,<br>202:13, 203:5,<br>203:13<br>**we've**<br>33:7, 48:19,<br>62:10, 95:24,<br>112:9, 128:13,<br>128:16, 144:10,<br>153:14, 165:3<br>**website**<br>113:8, 142:8,<br>142:9, 142:11,<br>142:15, 142:19<br>**wednesday**<br>1:17 | **weeds**<br>76:25, 176:8<br>**week**<br>101:18<br>**weeks**<br>56:22, 60:24,<br>185:21<br>**weighted**<br>145:21<br>**weinberg**<br>5:16, 7:7,<br>78:6, 80:11,<br>80:14, 82:9,<br>82:23, 83:5,<br>83:6, 83:10,<br>85:14, 86:5,<br>86:6, 86:9,<br>86:12, 87:9,<br>88:13, 189:19<br>**went**<br>64:6, 144:3,<br>152:15, 183:15,<br>197:19<br>**weren't**<br>22:21, 32:6,<br>49:17, 146:21,<br>171:18<br>**west**<br>2:2, 8:13<br>**whatever**<br>72:13, 108:24,<br>145:6, 146:9,<br>157:8, 160:5<br>**whenever**<br>127:4<br>**whereof**<br>209:1<br>**whereupon**<br>9:2, 17:11,<br>25:6, 34:1,<br>37:15, 41:4,<br>43:19, 47:15,<br>51:4, 59:20,<br>62:14, 70:5,<br>71:19, 72:19,<br>80:4, 87:5,<br>89:4, 97:1,<br>101:6, 103:3, |

Transcript of Michael Farah, Designated Representative
September 14, 2022

106:8, 106:15,
118:2, 128:1,
131:20, 138:7,
143:2, 143:10,
147:17, 152:21,
162:11, 169:14,
180:23, 194:7,
206:23
**whether**
14:12, 33:11,
79:19, 104:6,
132:23, 137:3,
146:24, 147:1,
194:21, 206:7
**whichever**
179:15
**whoa**
20:12
**whoever**
53:24
**whole**
11:10, 71:15,
72:5, 100:3,
135:3, 154:1,
189:3, 208:8
**wide**
149:7
**widen**
97:20
**william**
7:8, 183:16,
191:15
**williams**
7:6, 188:8,
188:10
**willing**
103:23, 104:2,
104:6, 104:7,
104:13, 104:24,
111:11, 111:22,
138:24
**win**
22:25, 140:11,
182:6, 202:25
**wire**
43:13, 46:15,
46:19, 118:22,
129:25, 131:13

**wired**
139:3
**withdraw**
36:25
**withdrawal**
37:4
**withdrawing**
36:23
**within**
12:25, 145:2,
149:23, 150:9,
183:4, 189:14,
208:4
**without**
64:22, 72:5,
98:11, 132:24,
166:4, 167:15,
202:7
**withstand**
176:13, 179:17,
179:20, 180:8
**witness**
4:3, 8:25, 9:2,
9:4, 19:5,
19:16, 19:18,
20:2, 23:18,
24:10, 29:6,
30:1, 30:17,
31:1, 32:14,
33:3, 36:19,
37:7, 38:14,
46:8, 50:5,
50:17, 52:21,
53:8, 55:16,
58:12, 58:24,
62:9, 68:7,
68:23, 69:14,
71:5, 83:4,
84:11, 84:15,
88:11, 90:18,
91:1, 95:5,
102:17, 107:10,
108:5, 108:15,
108:17, 109:1,
114:2, 115:17,
121:5, 130:12,
133:16, 133:24,
137:7, 139:23,

141:7, 170:6,
170:19, 174:2,
186:12, 186:18,
187:10, 187:20,
189:1, 196:10,
199:23, 200:6,
200:8, 206:5,
206:18, 208:7,
209:1
**wonder**
157:20
**wondering**
26:19, 57:10,
57:13, 60:23,
87:25, 88:5,
95:2, 95:17,
170:15, 204:21
**woods**
3:4
**word**
82:20, 154:15,
162:1, 200:17
**words**
41:13, 43:3,
67:14, 68:9,
106:5
**work**
13:2, 33:6,
39:13, 39:20,
56:22, 63:17,
69:25, 75:1,
75:8, 77:6,
91:17, 91:19,
93:25, 94:15,
100:13, 100:16,
121:2, 121:13,
145:20, 163:11,
191:9, 201:14
**work-around**
87:16
**worked**
100:20
**working**
39:15, 53:24,
62:2, 62:4,
76:17, 91:24,
100:15
**works**
176:9

**worth**
110:13, 133:12,
165:8, 186:1,
186:3
**wouldn't**
22:9, 28:13,
30:22, 33:5,
33:21, 58:8,
58:18, 79:5,
104:5, 112:20,
115:18, 121:15,
125:4, 130:21,
140:19, 142:21,
155:2, 159:18,
159:21, 160:16,
163:21, 174:21,
179:12, 179:23,
184:19, 190:21
**wrap**
112:13
**write**
69:16, 155:24,
156:7, 163:11,
165:25
**write-up**
80:22, 81:1
**writes**
80:14, 87:13,
163:3, 164:22
**writing**
33:18
**written**
28:23, 30:22,
32:8, 32:18,
90:23, 189:23,
191:17
**wrong**
19:20, 80:22,
104:12, 190:11,
193:2
**wrote**
69:1, 72:23

**Y**

**yasskin**
44:4, 44:8,
44:18, 44:22,
60:2, 194:12

Transcript of Michael Farah, Designated Representative
September 14, 2022

258

**year**
10:19, 24:15, 32:24, 62:25, 66:19, 67:3, 93:9, 132:9, 144:14, 148:22, 149:24, 172:12, 172:23, 182:8, 185:17, 189:15, 190:16, 191:10, 192:18, 192:23, 201:3

**years**
14:18, 63:7, 63:17, 65:22, 68:25, 74:19, 86:13, 93:22, 96:15, 145:16, 150:15, 150:17, 150:18, 150:24, 160:25, 172:13, 193:16

**yep**
16:8, 55:20, 114:10, 169:10, 184:2, 184:16, 190:18, 190:20

**yesterday**
108:14

**yohler**
1:25, 2:4, 8:24, 208:3, 209:9

**young**
15:20, 15:24, 16:2, 16:4

**yourself**
35:1, 76:14, 77:3, 77:4, 87:24, 91:4, 91:5

**yourselves**
8:14

**Z**

**zero**
129:3

**zuckerbrod**
194:11

**$**

**$1,446,390.45**
133:8

**$10**
126:22, 126:23

**$100**
126:22, 173:6

**$105,000**
44:25, 129:23, 139:13, 139:20, 181:19

**$105,227.97**
129:23

**$105,228**
138:25, 139:3

**$130.78**
132:16

**$199.73**
132:15

**$500**
24:5

**$573**
185:8

**$578,777.84**
139:1

**$578,780.23**
129:11

**$625**
181:12, 181:15

**$650**
189:22

**.**

**.5000**
3:7

**.7777**
3:15

**0**

**0000062**
148:9

**0000077**
101:15

**0000235**
153:1

**0000610**
47:20

**0000624**
44:2

**000077**
70:12

**000078**
70:17

**0000960**
89:11

**000111**
37:22, 40:23

**0001292**
17:17

**0001295**
17:20

**00024**
44:1

**000274**
72:25

**00028**
80:9

**000373**
59:25

**00062**
156:22

**000894**
1:6

**03**
5:3

**04**
4:12, 4:23, 6:11

**05**
6:7

**06**
6:13

**07**
4:15

**09**
6:21

**1**

**1**
143:4

**1,446,390**
133:8

**10**
1:18, 4:15, 5:5, 5:12, 6:9,

6:23, 7:9, 8:9, 12:6, 62:13, 62:16, 70:4, 70:6, 70:9, 156:3, 163:2, 164:21, 189:13

**100**
133:5, 171:13, 193:13

**1001**
194:18

**101**
5:23

**103**
6:6

**105**
49:7, 49:13, 140:3, 174:16

**105,000**
45:24, 131:13

**106**
6:8

**108**
34:24

**109**
34:24, 35:5, 39:1

**11**
5:7, 6:11, 6:13, 6:14, 6:18, 44:21, 47:24, 71:18, 71:20, 71:23, 139:7, 142:14, 152:13

**112**
40:24

**118**
6:10

**12**
4:20, 5:10, 72:18, 72:20, 72:24, 88:7, 143:1, 148:12, 163:7, 201:1, 201:4, 201:13

**128**
6:12

Transcript of Michael Farah, Designated Representative
September 14, 2022

259

**1294**
17:25, 19:6,
19:11, 19:14
**1295**
19:9, 19:13,
19:23, 20:1
**1296**
19:24, 20:1
**13**
5:12, 34:7,
34:13, 80:3,
80:5, 80:8,
81:23, 189:13,
195:17
**13.3**
191:5
**13.6**
169:23
**13.7**
169:22
**13.9**
148:13
**1303**
25:25, 43:1,
112:22
**131**
6:13
**133**
128:15
**138**
6:15
**14**
1:17, 4:17,
5:12, 5:15, 8:8,
34:23, 35:23,
81:23, 87:4,
87:6, 90:12,
140:5, 160:13,
166:1, 182:25,
185:12, 189:13,
198:20
**14.6**
191:23, 192:9,
192:18
**143**
6:17
**147**
6:20

**15**
3:13, 5:17,
7:3, 10:11,
34:7, 89:3,
89:5, 89:10,
113:23, 181:15,
184:5, 189:5,
189:9, 189:12
**152**
6:22
**16**
5:18, 96:24,
97:2, 97:5,
165:18, 166:1,
168:10, 181:15,
185:12, 189:5,
189:9, 189:12
**16.05**
198:12
**16.3714286**
198:4
**162**
6:24
**169**
7:3
**17**
4:11, 5:17,
5:20, 93:20,
96:25, 97:2,
99:24, 100:1,
143:4, 181:15,
184:8
**17.1**
191:25, 192:7,
192:9
**1750**
3:5
**18**
5:22, 6:9, 7:9,
101:7, 101:10,
118:6, 120:2,
120:17, 121:23,
122:1, 128:6,
160:5, 160:12,
184:5, 185:25,
186:3, 194:16
**18.8**
132:11

**180**
7:4, 7:5, 7:6,
7:7, 7:8
**1800**
3:5
**181**
138:12
**19**
6:3, 6:7,
103:2, 103:4,
103:7, 103:12,
103:14, 103:21,
209:3
**194**
7:10
**199.73**
133:7
**1st**
107:7

---
**2**
---
**2**
206:21, 206:24
**2.5**
132:20, 148:10,
155:25, 156:6,
163:15, 169:6,
170:11
**20**
6:7, 106:16,
106:19, 113:23,
115:25, 184:8,
191:19
**2000**
11:23
**20005**
3:14
**2016**
10:11, 35:8,
62:22, 62:23,
64:2, 64:4,
64:16, 70:11
**2017**
63:4
**2018**
5:12, 5:17,
13:17, 66:18,
89:21, 89:22,

93:5, 93:20
**2019**
4:14, 4:15,
4:23, 5:10,
5:15, 5:18,
5:20, 6:7, 6:9,
6:11, 6:13,
6:14, 6:18,
6:21, 6:23, 7:3,
7:9, 18:8,
20:16, 20:21,
21:4, 21:22,
24:14, 26:3,
26:7, 27:2,
34:17, 34:20,
38:7, 38:16,
38:20, 41:2,
41:10, 41:12,
41:15, 45:2,
45:22, 51:12,
53:18, 55:7,
56:1, 64:15,
64:16, 90:22,
92:25, 93:3,
93:21, 94:24,
95:13, 95:15,
98:9, 106:13,
106:20, 107:5,
107:7, 114:11,
114:15, 118:6,
119:4, 119:22,
120:3, 121:23,
127:9, 130:5,
131:25, 135:15,
140:18, 142:13,
142:14, 150:4,
150:9, 151:14,
152:13, 165:18,
169:18, 181:4,
181:16, 191:24,
192:1, 192:3,
192:9, 193:18,
194:16, 206:9
**202**
5:22
**202.737**
3:15
**2020**
4:10, 4:12,

Transcript of Michael Farah, Designated Representative
September 14, 2022

260

4:17, 4:20, 5:3,
10:11, 22:3,
34:10, 34:14,
34:19, 44:8,
44:21, 47:24,
60:1, 64:2,
64:5, 94:24,
95:15, 101:3,
103:25, 104:16,
104:22, 104:25,
140:20, 185:20,
188:14, 188:17,
191:23, 192:8,
193:18
**2021**
188:13
**2022**
1:17, 8:8,
177:11, 209:3
**209**
1:24
**21**
1:6, 6:9, 8:7,
18:2, 20:4,
118:1, 118:3,
122:4
**22**
5:10, 5:18,
6:11, 62:13,
88:6, 92:19,
127:24, 128:2,
128:14
**22102**
3:6
**23**
4:10, 6:13,
34:14, 34:18,
131:19, 131:21,
131:24
**232**
106:19
**235**
155:17
**236**
153:2
**24**
6:14, 70:11,
138:6, 138:8,

138:12, 143:1,
168:5, 196:22
**244**
162:22
**245**
162:18
**246**
165:2
**247**
165:3
**248**
165:22
**25**
4:12, 5:15,
6:16, 92:16,
93:21, 143:9,
143:11, 143:14,
169:18, 170:16,
171:14
**26**
6:18, 147:16,
147:18, 156:20
**27**
6:21, 26:24,
37:19, 38:19,
56:7, 152:22,
152:25, 163:2,
163:11, 206:9
**28**
4:14, 6:23,
162:10, 162:12,
162:15
**29**
5:20, 7:3,
169:13, 169:15,
174:7
**2x**
137:20

---
**3**
---

**3.1**
196:16
**3.15**
101:23, 196:4
**3.88**
132:13
**30**
7:4, 10:10,

35:7, 56:24,
57:5, 103:25,
104:14, 104:16,
104:22, 104:25,
108:7, 121:17,
142:13, 155:20,
163:7, 165:18,
168:7, 168:8,
180:21, 180:22,
180:24, 181:2,
181:6, 193:11,
200:6, 201:16,
204:25
**300**
173:7
**31**
7:5, 26:7,
56:1, 57:13,
180:21, 180:22,
180:24, 183:12,
187:24
**32**
7:6, 180:21,
180:22, 180:24,
188:6
**33**
7:7, 180:22,
180:25, 189:18
**33.9**
148:12, 188:18
**34**
4:13, 7:8,
180:22, 180:25,
181:2, 182:25,
191:14, 197:8,
205:1
**34.52**
132:16
**35**
7:9, 101:23,
192:13, 194:6,
194:8, 196:22,
197:8, 198:3,
198:10, 205:3
**36**
62:16, 199:6
**37**
4:14, 199:7

**375**
60:17, 60:18
**38**
164:21
**39**
164:22
**3rd**
26:2, 34:17,
52:19, 53:2,
53:16, 53:17,
53:18, 54:7,
54:19, 54:20,
60:1, 112:23
**3x**
18:4, 101:21,
132:21, 133:6,
137:18, 170:3,
170:10, 170:16,
174:11, 174:12,
175:20

---
**4**
---

**4**
163:11
**4,000**
129:7
**4,023**
129:6
**4,023.384**
129:9
**40**
168:7, 191:11
**40.3**
188:14, 188:15,
188:17
**402**
129:8
**402.3182**
129:5
**41**
4:16, 192:13
**42**
184:6, 184:9,
189:23
**4215**
3:6
**43**
4:19, 189:23

**44**
2:3
**45**
133:8
**4531**
2:5, 209:11
**459099**
1:23
**46.3**
188:11
**47**
4:22
**4th**
51:11, 52:25,
114:11, 116:21,
119:4, 119:22,
130:5, 131:11
**4x**
171:25

**5**

**5.2**
26:4
**50**
171:14, 206:21,
206:24
**509**
181:8
**51**
4:24, 156:3
**52**
36:10
**548**
183:25, 184:1
**560**
185:10, 195:10,
195:12
**562**
198:9
**573**
185:9, 195:10,
198:3, 198:7
**59**
5:4
**5th**
44:18, 106:20,
107:5, 114:15,
120:24, 139:9

**6**

**6**
164:21
**60**
168:8, 189:22
**600**
191:18, 191:23,
192:11, 192:18,
192:22
**60601**
2:3
**61**
157:24
**618**
188:9, 188:10,
188:13
**62**
157:24
**624**
189:20, 190:2,
190:3
**630**
184:10
**636**
190:10, 191:3
**637**
190:12
**650**
191:8
**677**
191:17
**6th**
135:15, 139:8

**7**

**7,241.7286**
133:4
**70**
5:6
**700**
3:13, 191:18,
192:22
**703.712**
3:7
**708**
192:25, 193:1
**71**
5:9

**710**
184:11
**716**
143:16
**72**
5:11
**75**
73:8, 171:14
**760**
184:10
**77**
2:2, 8:13
**7th**
120:25, 139:9

**8**

**80**
5:14
**800**
139:17
**804**
139:17, 139:19
**804.6364**
129:22
**820**
143:21
**83**
80:23
**84**
2:5, 103:22,
209:11
**840**
184:11
**87**
5:16
**89**
5:17
**894**
8:7

**9**

**9**
1:18, 8:9
**901**
3:13
**929**
132:5
**94**
18:19, 19:2

**95**
18:20
**963**
97:6
**97**
5:19, 5:21
**9th**
153:10, 156:3,
162:18, 163:3