**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| **PATRICK K. DONNELLY** *Plaintiff,* v. **PROPHARMA GROUP TOPCO, LLC,** *Defendant.* | C.A. No. 21-894-MAK |

**DEFENDANT PROPHARMA GROUP TOPCO, LLC'S
<u>PROPOSED JURY INSTRUCTIONS</u>**

i

**TABLE OF CONTENTS**

1   STATEMENT OF THE CASE .................................................................................................. 1

2   DELAWARE'S LIMITED LIABILITY COMPANY "LLC" ACT.................................. 2

3   PROPHARMA'S LLC AGREEMENT ................................................................................. 3

    3.1   Removal of a ProPharma Board Manager ................................................................... 3

    3.2   Resignation of a Board Member ................................................................................... 4

4   BREACH OF CONTRACT CLAIMS .................................................................................. 5

    4.1   Breach of Contract – Generally .................................................................................... 5

    4.2   Donnelly's Claim for Breach of the Board Offer ......................................................... 6

    4.3   Donnelly's Claim for Breach of the Incentive Equity Agreement ............................. 7

5   AFFIRMATIVE DEFENSES ................................................................................................. 8

    5.1   Waiver Based on Acquiescence ..................................................................................... 8

    5.2   Estoppel .......................................................................................................................... 10

    5.3   Unclean Hands ............................................................................................................... 11

    5.4   Accord and Satisfaction ................................................................................................ 12

6   DAMAGES.............................................................................................................................. 14

    6.1   Damages – In General................................................................................................... 14

    6.2   Board Offer – Damages ................................................................................................ 15

    6.3   Incentive Equity Agreement – Damages .................................................................... 16

**1       STATEMENT OF THE CASE**

In this case, Plaintiff Patrick K. Donnelly ("Mr. Donnelly") claims that Defendant ProPharma Group Topco, LLC ("Defendant" or "ProPharma") owes him additional compensation for his service to the ProPharma Board of Managers (the "Board"). Mr. Donnelly claims ProPharma's attempt to remove him from the ProPharma Board of Managers (the "Board") in 2019 was invalid and, therefore, Mr. Donnelly remained on the Board through September 30, 2020 when ProPharma sold to Odyssey Investment Partners. Because his removal was allegedly invalid, Mr. Donnelly argues that (i) ProPharma breached his Offer to Join the ProPharma Board of Managers ("Board Offer") by failing to pay Mr. Donnelly his base compensation from August 31, 2019 through September 30, 2020; and (ii) ProPharma breached the Management Incentive Unit Agreement ("Incentive Equity Agreement") by failing to pay Mr. Donnelly fair market value for his shares in ProPharma.

ProPharma denies Mr. Donnelly's allegations. In response, ProPharma alleges that Mr. Donnelly's Board service ended as of August 31, 2019 because he was validly removed from the Board and, regardless, resigned. ProPharma also argues that Mr. Donnelly accepted his removal by his subsequent conduct and statements. Accordingly, ProPharma says it has paid Mr. Donnelly all amounts of his base compensation owed pursuant to the Board Offer through August 31, 2019 and the fair market value of his incentive equity shares which had vested under the Incentive Equity Agreement as of August 31, 2019. ProPharma asserts that Mr. Donnelly's claims are barred in whole or in part by one or more of the following affirmative defenses: waiver, unclean hands, estoppel, accord and satisfaction, and/or payment.

I will give you detailed instructions on the law at the end of the case, and those instructions will control your deliberations and decision.

## 2     DELAWARE'S LIMITED LIABILITY COMPANY "LLC" ACT

The State of Delaware gives companies great flexibility to make decisions on how to run their business and allows the companies to dictate how they will be organized and governed. This is the case for Delaware Limited Liability Companies, or "LLCs." Delaware's LLC Act requires an LLC to describe how it will be organized and governed in a central operating agreement. When an LLC wants to remove someone from its board, the Delaware LLC Act specifically states that the procedure will be governed by the company's central operating agreement, and I quote from the Delaware LLC Act:

> "[A] [board] manager shall cease to be a [board] manager **as provided in a limited liability company agreement.**"

Therefore, where a Delaware LLC's operating agreement expressly provides a process for removal of a board member, Delaware courts will not second guess the LLC's chosen procedure or impose additional requirements that are not mentioned in the LLC's operating agreement.

Authority: Del. Code tit. 6 § 18-402 (emphasis added); *DG BF, LLC v. Ray*, No. CV 2020-0459-MTZ, 2021 WL 776742, at *16 (Del. Ch. Mar. 1, 2021) (holding that where an LLC Agreement "already provides for a specific process by which a . . . Manager may be removed[] [t]here is no gap to fill, and an implied term would limit and alter that express process").

## 3      PROPHARMA'S LLC AGREEMENT

### 3.1    Removal of a ProPharma Board Manager

ProPharma is a limited liability company, or "LLC," incorporated in Delaware, so Delaware laws apply here. As required by Delaware's LLC Act, ProPharma has a central operating agreement called the "LLC Agreement." Among other things, the LLC Agreement lists who serves on the ProPharma Board, as well as the specific process for their removal and/or resignation from the Board.

Regarding ProPharma's removal of a board member, the LLC Agreement provides:

> "<u>Term</u>. Each Manager appointed shall serve until a successor is appointed in accordance with the terms hereof or his or her earlier resignation, death or removal. Any Linden Manager or Independent Manager will be **removed** from the Board, with or without cause, **at the written request of the Linden Investors** entitled to appoint such Linden Manager or Independent Manager pursuant to this <u>Section 5.2</u>." (emphasis added throughout unless otherwise indicated).

The LLC Agreement defines the "Linden Investors," as "ProPharma Group Buyer, LLC" and "ProPharma Group Splitter, LP" and "any of their Affiliates and any of their respective Transferees." The LLC Agreement does not require ProPharma to provide notice of removal to a Board Manager that has been removed.

### 3.2 Resignation of a Board Member

Regarding a ProPharma board member's resignation, the LLC Agreement states:

"Manager may resign **at any time upon written notice to Holdings LLC**. Such **resignation shall be effective upon receipt** unless it is specified to be effective at some other time or upon the happening of some other event."

## 4    BREACH OF CONTRACT CLAIMS

### 4.1    Breach of Contract – Generally

Mr. Donnelly claims that ProPharma breached two different contracts. For Mr. Donnelly to prove ProPharma breached any contracts, he must prove that ProPharma failed to perform one or more terms of the contract and, if so, that he suffered damages because of ProPharma's failure to perform. ProPharma has several affirmative defenses that it has asserted, as I will explain to you.

If you find that Mr. Donnelly proved that ProPharma breached a contract with Mr. Donnelly, and if you also find that ProPharma did not prove any of its affirmative defenses, Mr. Donnelly is entitled to damages in an amount that would make him whole, as if the contract had been properly performed. The amount of damages is the loss that Mr. Donnelly actually sustained as a result of ProPharma's breach of contract, if any.

Authority: Del. P.J.I. Civ. §§ 19.20, 22.24 (modified)

**4.2   Donnelly's Claim for Breach of the Board Offer**

Mr. Donnelly claims ProPharma breached the Board Offer by failing to pay Mr. Donnelly his base compensation from August 31, 2019 through September 30, 2020. ProPharma asserts that it had no obligation to pay Mr. Donnelly his base compensation after August 31, 2019 because his service on the ProPharma board had ended.

To prove that ProPharma breached the Board Offer, Mr. Donnelly has the burden to prove each of the following elements by a preponderance of the evidence:

> First: That he remained on the Board after August 31, 2019 and, therefore, ProPharma had a contractual obligation under the Board Offer to pay him his base compensation after August 31, 2019.
>
> Second: ProPharma failed to pay his base compensation following August 31, 2019; and
>
> Third: That, as a result, Mr. Donnelly suffered damages.

If you determine that Mr. Donnelly's service on the Board ended on or before August 31, 2019, you do not need to decide whether ProPharma breached the Board Offer by failing to pay Mr. Donnelly his base compensation after August 31, 2019.

If, however, you determine that Mr. Donnelly's Board service had not ended as of August 31, 2019, you must determine what amount of money (if any) ProPharma owes Mr. Donnelly based on the Board Offer.

Authority: Del. P.J.I. Civ. §§ 19.20, 22.24 (modified); *Interim Healthcare, Inc. v. Spherion Corp.*, 884 A.2d 513, 548 (Del. Super. Ct. 2005), *aff'd*, 886 A.2d 1278 (Del. 2005)("Under Delaware law, the elements of a breach of contract claim are: (1) a contractual obligation; (2) a breach of that obligation; and (3) resulting damages."); *H-M Wexford LLC v. Encorp, Inc.*, 832 A.2d 129, 140 (Del. Ch. 2003) (same); *see also Debakey Corp. v. Raytheon Serv. Co.*, No. 14947, 2000 WL 1273317, at *29 (Del. Ch. Aug. 25, 2000) (entering post-trial judgment on various breach of contract counterclaims "based upon a contract obligation that," the court found, "did not exist" under the written contract).

**4.3   Donnelly's Claim for Breach of the Incentive Equity Agreement**

Mr. Donnelly claims ProPharma breached the Incentive Equity Agreement by failing to pay him the fair market value of his vested shares in the company. ProPharma contends that the company fulfilled its obligations in the Incentive Equity Agreement when it paid Mr. Donnelly $105,227.76 for the 804.6364 shares that had vested as of August 31, 2019.

Whether ProPharma owes Mr. Donnelly additional compensation for his shares depends on whether certain dates or events had occurred as of the date Mr. Donnelly ceased to be a member of the Board. Therefore, in order for you to determine whether ProPharma breached the Incentive Equity Agreement, you must first determine the date on which Mr. Donnelly's board service ended.

If you find that Mr. Donnelly's service on the Board ended as of August 31, 2019, then you must determine whether the $105,227.97 paid to Mr. Donnelly on November 11, 2019 equals the fair market value of the 804.6364 shares that had vested as of 2019. If you find that the fair market value of the 804.6364 shares was more than $105,227.97, then you must consider ProPharma's affirmative defense of accord and satisfaction, which I will explain shortly.

If however you find that Mr. Donnelly's service on the Board did not end as of August 31, 2019, you must determine four things:

First: When Mr. Donnelly's Board service ended.

Second: Whether the "consummation of a Liquidity Event" had occurred as of that date.

Third: How many Time Vesting shares had vested as of that date.

Fourth: What the "fair market" value of his shares was as of that date.

## 5 AFFIRMATIVE DEFENSES

### 5.1 Waiver Based on Acquiescence

ProPharma argues that because Mr. Donnelly's statements and conduct after August 31, 2019 were consistent with his August 31, 2019 removal and, therefore, ProPharma believed that Mr. Donnelly accepted his removal, Mr. Donnelly waived his right to challenge his removal as invalid nearly a year later. Mr. Donnelly argues that ProPharma prevented him from carrying out his duties as a ProPharma board member.

If you find that Mr. Donnelly's removal from the ProPharma Board was invalid, you should consider ProPharma's defense of waiver based on acquiescence. Waiver means voluntarily relinquishing or abandoning a legal right or advantage. A waiver may be expressly made or implied from conduct or other evidence. The party alleged to have waived a right must have known about the right and intended to give it up. Acquiescence, or going along with the removal, applies when the party who possesses a valid challenge to a particular act, having full knowledge of his rights and the material facts, engages in conduct that leads the other party to believe reasonably that the act had been approved.

In this case, you must determine whether Mr. Donnelly waived his right to challenge his removal from the Board, by making statements or engaging in conduct consistent with his removal.

To prove that Mr. Donnelly acquiesced in his removal from the Board – and, thus, waived his right to challenge his removal – ProPharma has the burden to prove the following:

First: Mr. Donnelly had full knowledge of his removal from the Board in August 2019

Second: Mr. Donnelly *either*

    (a) remained inactive for a considerable amount of time; *or*

    (b) freely recognized or acted in a way that amounts to recognition that he was removed from the Board; *or*

8

      (c) his conduct after August 2019 was inconsistent with his current position that he was not removed from the Board, which led ProPharma to believe that he accepted his August 31, 2019 removal.

If you find that Mr. Donnelly acquiesced to his August 31, 2019 removal, you must determine what amount of money, if any, ProPharma owes Mr. Donnelly for the fair market value of his 804.6364 shares which had vested as of August 31, 2019.

If you find that Mr. Donnelly did not acquiesce in his removal, you must consider whether ProPharma's other defenses bar Mr. Donnelly's claims.

Authority: Del. P.J.I. § 19.23 (modified); *Nevins v. Bryan*, 885 A.2d 233, 246 (Del. Ch.), aff'd, 884 A.2d 512 (Del. 2005); *Klaassen v. Allegro Dev. Corp.*, 106 A.3d 1035, 1047 (Del. 2014) ("For the defense of acquiescence to apply, conscious intent to approve the act is not required, nor is a change of position or resulting prejudice."); *Weyerhaeuser Co. v. Domtar Corp.*, 204 F. Supp. 3d 731, 740 (D. Del. 2016), aff'd, 721 F. App'x 186 (3d Cir. 2018) (same).

### 5.2 Estoppel

ProPharma argues that Mr. Donnelly acted consistent with his August 31, 2019 removal for nearly a year and therefore, ProPharma reasonably believed that Mr. Donnelly acknowledged that he had been removed from the Board and relied on this belief. Mr. Donnelly argues that ProPharma prevented him from carrying out his duties as a ProPharma board member following August 31, 2019.

When the conduct of a party intentionally or unintentionally leads another party, in reasonable reliance on that conduct, to change its position, then the original party cannot bring a claim against the party who changed its position in reliance on its conduct. This is a legal principle called "estoppel," which prevents a party, such as Mr. Donnelly, from enforcing his rights if his conduct led ProPharma to change their position to ProPharma's detriment.

To establish that Mr. Donnelly's claims are barred by the doctrine of estoppel, ***ProPharma*** must prove:

1) that ProPharma lacked knowledge or the means of obtaining knowledge of Mr. Donnelly's intent to challenge his removal from the ProPharma Board;

2) that ProPharma reasonably relied on Mr. Donnelly's conduct and believed that Mr. Donnelly did not dispute his removal; and

3) that ProPharma suffered a prejudicial change of position as a result of their reliance on Mr. Donnelly's conduct.

If you find that ProPharma proved its affirmative defense of estoppel, then you must find that Mr. Donnelly's removal from the ProPharma Board was effective August 31, 2019.

If you find that ProPharma did not prove its affirmative defense of estoppel, then you must consider whether any of ProPharma's remaining affirmative defenses bar Mr. Donnelly's claims.

Authority: Del. P.J.I. § 19.24 (modified).

### 5.3   Unclean Hands

There is a legal doctrine called "the doctrine of unclean hands" which prohibits a party who has engaged in inequitable behavior related to the subject matter of that party's claim to be compensated even if he has proven his claims. Generally, ProPharma must prove that Mr. Donnelly engaged in fraudulent, unethical or other bad faith conduct, and that his bad conduct had an immediate and necessary relation to his breach of contract claims.

One basis for unclean hands is if a party breaches its fiduciary duty. For example, it would bar a CEO from recovering compensation from the company that employed him if he violated his fiduciary duty to the company during the same time period for which he seeks compensation. Directors of Delaware corporations are subject to the fiduciary duties of care, loyalty and good faith. ProPharma argues that Mr. Donnelly breached his fiduciary duties to ProPharma in two ways.

ProPharma argues that Mr. Donnelly breached his fiduciary duty of care by failing to perform any board duties, including but not limited to failing to attend board meetings, failing to exercise any oversight over the company or its actions, and failing to provide any support to the executive team.

ProPharma also argues that Mr. Donnelly violated the duty of loyalty by consulting with Summit Partners in connection with their potential acquisition of ProPharma.

If you conclude that Mr. Donnelly was breaching his fiduciary duties to ProPharma during the time in which he is seeking compensation and incentive equity payments from ProPharma, you must find for ProPharma and against Mr. Donnelly on his breach of contract claims.

Authority: *Nakahara v. NS 1991 Am. Tr.*, 718 A.2d 518, 523 (Del. Ch. 1998); *In re Wilbert L.*, No. CIV.A. 1165-VCN, 2010 WL 3565489, at *5 (Del. Ch. Sept. 1, 2010); *Craig v. Graphic Arts Studio, Inc.*, 39 Del. Ch. 447, 452, 166 A.2d 444, 447 (1960) *Emerald Partners v. Berlin*, 787 A.2d 85, 91 (Del. 2001).

**5.4    Accord and Satisfaction**

ProPharma argues that because Mr. Donnelly accepted the payment of $105,227.76 for the 804.6364 incentive equity shares with full knowledge that ProPharma intended the payment to fulfill its obligations to him in full, ProPharma's obligation under the Incentive Equity Agreement was discharged. Mr. Donnelly argues that he never agreed to accept the $105,227.76 payment.

Under certain circumstances, the law does not allow a party to bring a claim for additional compensation where the party has already accepted payment in full satisfaction of the contractual obligations. This doctrine is known as accord and satisfaction.

To establish that Mr. Donnelly's claim for additional compensation under the Incentive Equity Unit is barred by the doctrine of accord and satisfaction, ProPharma must prove each of the following elements:

> First: that when ProPharma wired Mr. Donnelly the payment of $105,227.76, Mr. Donnelly and ProPharma had a genuine dispute concerning the amount owed to him for his 804.6364 vested shares under the Incentive Unit Agreement;
>
> Second: that Mr. Donnelly understood that the payment of $105,227.76 was intended to satisfy ProPharma's obligations under the Incentive Equity Agreement in full; *and*
>
> Third: that by keeping the payment of $105,227.76 and commingling it with other funds, Mr. Donnelly accepted the payment as full satisfaction of ProPharma's obligations under the Incentive Equity Agreement.

If you find that ProPharma proved Mr. Donnelly's claims are barred by accord and satisfaction, then ProPharma has no obligation to pay Mr. Donnelly additional compensation for the 804.6364 shares that had vested as of August 31, 2019.

If you find that ProPharma failed to prove its affirmative defense of accord and satisfaction, then you must determine how much money ProPharma owes Mr. Donnelly (if any) under the Incentive Equity Agreement for his 804.6364 vested shares.

<u>Authority</u>: *Acierno v. Worthy Bros. Pipeline Corp.*, 656 A.2d 1085, 1088 (Del. 1995), *as revised* (Apr. 17, 1995); *see also Ashland Coal & Coke Co. v. Old Ben Coal Corp.*, 187 A. 596, 598 (Del. Super. Ct. 1934) ("The tender and the condition could not be dissevered. The one could not be taken, and the other rejected. The acceptance of the money involved the acceptance of the condition, and the law will not permit any other inference to be drawn from the transaction. Under such circumstances the assent of the creditor to the terms proposed by the debtor will be implied, and no words of protest can affect the legal quality of his act.").

**6    DAMAGES**

**6.1    Damages – In General**

I will next instruct you on damages. The fact that I am instructing you on the law that applies to awarding damages should not be taken as an instruction to find one way or another, or to award money or not. I am simply giving you the law to make those decisions in the event you find in favor of Mr. Donnelly in accordance with the other instructions.


Authority: Del. P.J.I. Civ. § 22.28 (modified).

### 6.2   Board Offer – Damages

To obtain an award of damages under the Board Offer, Mr. Donnelly must prove by a preponderance of the evidence that (i) his Board service had not ended as of August 31, 2019 and (ii) ProPharma failed to pay him his base compensation after August 31, 2019.

Both parties agree that, under the Board Offer, Mr. Donnelly is entitled to $37,500.00 per year, or $9,375.00 per quarter for each quarter Mr. Donnelly served on the ProPharma Board. Therefore, if you find that Mr. Donnelly proved that he remained on the Board following August 31, 2019, you may award Mr. Donnelly $9,375.00 for each quarter you determine ProPharma did not paid him his quarterly base compensation of $9,375.00. However, the total amount of base compensation you may award Mr. Donnelly cannot exceed $46,875.00, or five quarters of payment.

**6.3    Incentive Equity Agreement – Damages**

The amount of damages you can award Mr. Donnelly under the Incentive Equity Agreement depends on the following two factors:

    (i)    The number of incentive equity shares that had vested as of Mr. Donnelly's Termination from the ProPharma Board; ***and***

    (ii)    The fair market value of those shares as of Mr. Donnelly's Termination Date.

Concerning the first factor, both parties agree that Section 4 of the Incentive Equity Agreement dictates when and how many of Mr. Donnelly's "Time Vesting" and "Sale" shares vest. According to the Agreement:

- Mr. Donnelly is only entitled to payment for his 6,034,774 "Sale" shares if he was "continuously employed or providing services to and is still employed by or providing services to the Company. . . through the consummation of a Liquidity Event." A liquidity event is understood as the sale of ProPharma, which did not occur until September 30, 2020.

- Mr. Donnelly is entitled to an additional 402.3182 "Time-Vesting" shares for each year you find he was still employed by or continued providing services to ProPharma on January 18th of that year. However, upon the occurrence of the sale of the company, all of Mr. Donnelly's unvested Time Vesting shares would automatically vest.

Concerning the second factor, both parties agree that Section 6 of the Incentive Equity Agreement dictates how the Company must determine fair market value of Mr. Donnelly's vested shares. It says: "[t]he purchase price for each vested Management Incentive Unit [share] shall be the Fair Market Value thereof as of the Termination Date" and it defines "Fair Market Value" as follows:

- <u>Fair Market Value</u>" means, with respect to any assets or property (including the Management Incentive Units), the fair market value thereof as of the valuation date as determined in good faith by the Board (with it being understood that the Board shall take into account all relevant factors determinative of value, including, without limitation, any other then-existing determinations of fair market value on or about the valuation date).

16

If you find that Mr. Donnelly's Board service ended as of August 31, 2019 and Mr. Donnelly did not accept the $105,227.97 payment from ProPharma, then you need only determine the fair market value of the 804.6364 Time-Vesting shares that had vested as of August 31, 2019.

If you find that Mr. Donnelly's Board service ended on some date between August 31, 2019 and September 30, 2020, but after January 18, 2020, then you need to determine the fair market value of 1,206.955 Time Vesting Shares as of the date Mr. Donnelly's Board service ended.

If, however, you determine that Mr. Donnelly remained on the ProPharma Board up until the sale of ProPharma on September 30, 2020, then all 6,034.774 of Mr. Donnelly's Sale shares and all 2,011.591 of Mr. Donnelly's Time Vesting shares (i.e., 8,046.365 shares in total) would have vested. Moreover, the fair market value of the 8,046.365 shares is determined by the <u>sale price</u> and you do not need to decide fair market value.

Dated: February 24, 2023

/s/ *Katharine L. Mowery*
Susan M. Hannigan (#5342)
Katharine L. Mowery (#5629)
John M. O'Toole (#6448)
Richards, Layton & Finger, P.A.
920 North King Street
Wilmington, DE 19801
(302) 651-7700
Hannigan@rlf.com
Mowery@rlf.com
OToole@rlf.com

OF COUNSEL:

Jonathan E. Missner
Robert B. Gilmore
Philip J. O'Beirne
Kevin L. Attridge
Samantha P. Christensen
Stein Mitchell Beato & Missner, LLP
901 15th Street NW, Suite 700
Washington, DC 20005
(202) 737-7777
jmissner@steinmitchell.com
rgilmore@steinmitchell.com
pobeirne@steinmitchell.com
kattridge@steinmitchell.com
schristensen@steinmitchell.com

*Attorneys for Defendant ProPharma Group Topco, LLC*