IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PATRICK K. DONNELLY<br><br>*Plaintiff,*<br><br>v.<br><br>PROPHARMA GROUP TOPCO, LLC,<br><br>*Defendant*. | C.A. No. 21-894-MAK |

**MEMORANDUM IN SUPPORT OF DEFENDANT PROPHARMA GROUP TOPCO, LLC'S MOTION *IN LIMINE* NO. 2 TO EXCLUDE <u>CERTAIN EXPERT TESTIMONY OF JOSEPH ESTABROOK</u>**

**INTRODUCTION**

Plaintiff Patrick K. Donnelly ("Donnelly") offers the opinions of his retained expert, Joseph Estabrook, regarding the valuation of Donnelly's incentive equity units (IEUs) as of June 2019, September 2019, and September 2020. But Plaintiff's proposed jury instructions and verdict form now make clear that his incentive equity claim is only about whether he should have been paid based on ProPharma's actual September 2020 sales price. Moreover, Estabrook's two 2019 valuations "assume" higher volumes of vested IEUs than those provided by the parties' written agreements. Thus, Estabrook's 2019 valuation opinions are not relevant to Donnelly's remaining contract-based claims. Further, the parties and Estabrook agree that the value of Donnelly's IEUs as of September 2020 (if the jury should conclude that he remained on the Board) is his pro rata share of ProPharma's sale price. That figure is reached through simple arithmetic without any need for expert testimony. Donnelly's attempt to place the imprimatur of an expert witness on formulaic damages calculations would mislead the jury and prejudice ProPharma.

1

For these reasons, the Court should exercise its power under Federal Rules of Evidence 401 and 403 and exclude Estabrook's testimony on his 2019 valuations and his 2020 valuation.

## RELEVANT FACTUAL BACKGROUND

**Donnelly's Incentive Equity Vesting Terms.** The Management Incentive Equity Unit Agreement ("IEA"), dated January 18, 2017, controls the issuance and vesting of Donnelly's IEUs. Under the IEA, 75% of the IEUs issued to Donnelly were comprised of Performance Vesting Units and 25% were comprised of Time Vesting Units. Ex. A, IEA, §4(b) & (c).

The IEA provides that Performance Vesting Units will vest *"if (but only if)* Participant has been continuously employed by or providing services to and is still employed by or providing services to the Company or its Subsidiaries from the date hereof *through the consummation of a Liquidity Event"*. *Id.* § 4(c).[1] The volume of Performance Vesting Units that vests depends on the level of success achieved by Linden through a *"Qualified Sale in connection with a Liquidity Event." Id.* § 4(c)(i).[2] Notably, *"'Liquidity Event" means a Sale of Holdings LLC or a Sale of the Company."* Ex. B, ProPharma Amended & Restated LLC Agreement dated September 30, 2016, at A000040 ("LLC Agreement").[3] Even Estabrook concedes that a Liquidity Event did not occur until Defendant ProPharma Group Topco, LLC's ("ProPharma") sale in September 2020.[4]

---

[1] Emphasis is added throughout unless otherwise indicated.
[2] The agreement further provides subsections addressing scenarios for 2.5x and 3.0x Qualified Sales that are otherwise duplicative of subsection 4(c)(i).
[3] This definition is provided in ProPharma's LLC Agreement, which is relevant because the IEA provides that "[c]apitalized terms used herein and not otherwise defined shall have the meanings ascribed to such terms in the LLC Agreement." Ex. A at PROPHARMA00000474.
[4] Ex. C, Oct. 4, 2022 Estabrook Dep. Tr. at 46:13-20 ("Q. As an expert, you understand that a liquidity event did not occur until ProPharma's sale in September 2020; right? MR. MINSON: Objection; form. A: Based on the wording in the agreement, they sold the company in September. So based on this definition, I'd say that's when it occurred.").

Therefore, under the terms of the IEA, it was impossible for any Performance Vesting Shares to have vested in 2019.

The IEA also provides that 20% of Donnelly's Time Vesting Units will vest on the "Anniversary Date of *this* Agreement". Ex. A § 4(b). Beginning on January 18, 2018 (the first anniversary date of the IEA), and on the four subsequent anniversaries, Time Vesting Units would vest "if (but only if)" Donnelly is "employed . . . or providing services". *Id.* Thus, only 40%, or two-fifths, of Donnelly's Time Vesting Units had vested as of June and September 2019.

**Estabrook's Vesting Assumptions Conflict with the IEA.** On August 19, 2022, Donnelly disclosed Estabrook's opening expert report ("Estabrook Opening Report"). The Opening Report included valuations of Donnelly's purportedly vested IEUs as of three dates: June 30, 2019, September 30, 2019, and September 30, 2020. Ex. D, Report, ¶¶ 20-21, 25. Contrary to the IEA, however, Estabrook assumed that all of Donnelly's Performance Vesting Units were vested as of June and September 2019. *Id.* ¶ 23. And while Estabrook concluded that Linden would have achieved the level of return necessary to trigger the Performance Vesting Units as of the 2019 dates, *id.*, he failed to account for the fact that no Liquidity Event had consummated as of those dates, as required by the IEA. Any buyback of Donnelly's shares, moreover, did not constitute a "Qualified Sale in connection with a Liquidity Event." At his deposition, it was revealed that Estabrook disregarded the IEA's Liquidity Event requirement, and instead misinterpreted the IEA vesting provision as only requiring Donnelly's continued employment or providing of services.[5]

---

[5] Ex. C at 48:4-17 ("Q. Do you see the part of subsection C where it says "if (but only if) participant has been continuously employed by or providing services to and still employed by or providing services to the company or its subsidiaries from the date hereof through the consummation of a liquidity event? A. Yes. **Q. Doesn't that say if but only if there's a consummation of a liquidity event?** MR. MINSON: Objection. **A: I don't know. To me, it's – "but only if" relates to the participant being continuously employed or providing services.**")

3

Estabrook's 2019 calculations are further flawed because he was asked to "assume" that 1,206 Time Vesting Units had vested, which equates to three-fifths of his total time-vesting shares. Ex. D, Schedule B.1 & B.2 (line 21).[6] The two 2019 valuation dates pre-date the third anniversary date of the IEA, so only two-fifths of the Time Vesting Units would have vested. At his deposition, Estabrook conceded that "[i]f my assumption that three fifths of the time vesting units is not correct, then the number of units used on June 30th and September 30th would have to change if they're lower." Ex. C at 54:21-55:2.

**Estabrook Performs Simple Multiplication to "Determine" the Undisputed Valuation of Donnelly's Units as of September 2020.** If the jury should find that Donnelly remained on the Board through ProPharma's sale in September 2020, there is no dispute that his common units would be subject to the vesting terms provided in the IEA and buyout price applied to all other common units. Estabrook agrees. Accordingly, when providing his "determination" of the value of Donnelly's IEUs at ProPharma's sale, Estabrook simply multiplies the common share unit price found in a ProPharma shareholder distribution document by the number of IEUs subject to the vesting provisions in the IEA. Ex. D ¶¶ 22-24 (citing PROPHARMA0000496).[7] This straightforward math requires no expertise.

**Donnelly's Claims Are Limited to Breaches of Contract.** On December 30, 2022, the Court dismissed Plaintiff's claims for breach of the implied covenant of good faith and fair dealing,

---

[6] The "Vesting Schedule" Estabrook created for Donnelly's Incentive Equity Units "[a]ssumes that 3/5 of the Time-Vesting Units are vested as of September 2019." *Id.* Schedule E n.1.; Ex. C at 54:6-14 (Q. So let's say in theory that the offer was made to him on September 4th, 2019. Would that mean that only 40 percent of his shares had vested? A. I don't know. I mean, it's more of a legal issue. **I was asked to assume that they did.** Q. If the assumption is wrong, would your calculations be wrong? A. They'd have to be adjusted, yes.")

[7] Conspicuously, while Estabrook misinterpreted the IEA's "Liquidity Event" requirement for his 2019 calculations, he admits that all Time Vesting Units would vest "upon the occurrence of a liquidity event" for his 2020 calculation. Ex. D at 11 n. 29.

breach of fiduciary duty, and unjust enrichment. D.I. 174 at 1. Now, only Donnelly's breach of contract claims remain. *Id.* Accordingly, given that Donnelly can no longer argue bad faith, the number of shares vested at a given time are determined by—and only determined by—the IEA.

**Donnelly's Proposed Jury Instructions and Verdict Form Make Clear That His Incentive Equity Claim Only Concerns the September 2020 Sale of ProPharma.** Donnelly's pretrial submissions of his proposed jury instructions and verdict form further demonstrate that Estabrook's valuation opinions simply are irrelevant at this point. The jury instructions entirely omit any claim that would require a jury to calculate the value of his incentive equity in 2019. *See generally* D.I. 186, Pl.'s Proposed Jury Instructions. And his proposed jury instructions expressly ask the jury only to answer whether "Defendant, ProPharma failed to honor and abide by the terms of the IEA by failing to compensate Mr. Donnelly for the fully vested value of all of his management incentive units **using the September 30, 2020 sales price of ProPharma**." D.I. 188, Pl.'s Proposed Verdict Form, Plaintiff's Breach of Contract Claim – Management Incentive Unit Agreement (emphasis added).

## ARGUMENT

**I.   The Court Should Exclude Estabrook's Valuation Opinions That Are Not Relevant To Donnelly's Claims.**

Estabrook's valuation opinions for Donnelly's IEUs as of September and June 2019 are not relevant to Donnelly's claims, and should not be presented to the jury. Those 2019 valuation opinions are entirely irrelevant given Plaintiff's limiting of his case to the September 2020 sale of ProPharma as the basis for his claim to additional incentive equity payments. Further, Estabrook's 2019 valuation opinions are premised on a vesting scenario of Plaintiff's incentive equity that contradict the express terms of the IEA.

As this Court has held, when an expert bases his opinions on underlying claims that have been dismissed, his opinions should be excluded as irrelevant and unhelpful to the trier of fact. *See Morello v. Lift*, No. CV 09-4412, 2015 WL 12851393, at *1-2 (E.D. Pa. Nov. 24, 2015) (Kearney, J.) (granting motions *in limine* to preclude experts because testimony was irrelevant to remaining claims).[8] Here, as noted above, Plaintiff intends only to ask the jury to decide whether Defendant breached the contract "by failing to compensate Mr. Donnelly for the fully vested value of all of his management incentive units **using the September 30, 2020 sales price of ProPharma**."

Moreover, an expert opinion should be excluded when "calculations are based on an assumption with no factual foundation" in the relevant contract. *Johnstown Heart & Vascular Ctr., Inc. v. AVR Mgmt., LLC*, No. 3:15-CV-22, 2019 WL 3573663, *8 (W.D. Pa. Aug. 6, 2019) (excluding damages expert after he incorrectly inflated his calculation by incorporating revenue figures that were not subject to the agreement between the parties).

Estabrook's opinions on the *total* value of Donnelly's IEUs erroneously inflates the value of Donnelly's incentive equity by disregarding the vesting terms of the IEA. As explained above, his 2019 calculations are based on an incorrect reading of the IEA and assume that more shares vested than the contract provided. Thus, even if any 2019 valuations were relevant for Donnelly's case at this point—and they are not—Estabrook's 2019 opinions are at odds with the express terms

---

[8] *See also Ins. House, Inc. v. Ins. Data Processing, Inc.*, No. 1:07-CV-0286-BBM, 2009 WL 10670469, at *11 (N.D. Ga. Feb. 12, 2009) (excluding "testimony about [damages expert's] consideration of dismissed tort claims" after summary judgment resulted in only breach of contract claims), *aff'd*, 367 F. App'x 1 (11th Cir. 2010); *Optimum Techs., Inc. v. Henkel Consumer Adhesives, Inc.*, No. 1:04-CV-1082-TWT, 2006 WL 1663357, at *4 (N.D. Ga. June 14, 2006) (excluding expert damages testimony relying on claims dismissed before trial); *Kozak v. Medtronic, Inc.*, No. H-03-4400, 2006 WL 5207231, at *3 (S.D. Tex. Sept. 28, 2006) (refusing to admit expert opinions that supported dismissed breach of fiduciary duty claim as circumstantial evidence in support of remaining contract claims).

of the contract. They therefore should be excluded under Rules 401 and 403 as irrelevant and confusing to the jury.

**II.     The Court Should Exclude Estabrook's September 2020 Valuation Because It Is A Simple Math Exercise Concerning Undisputed Facts.**

Expert testimony should be excluded when it is "simply a mathematical calculation" of testimony that can be "adduced by the Plaintiff's direct testimony." *Johnson v. Garda CL Atl., Inc.*, No. CV 14-1675, 2015 WL 13775350, at *1 (E.D. Pa. Apr. 30, 2015) (Kearney, J.). *Cf. Allscripts Healthcare, LLC v. Andor Health, LLC*, No. CV 21-704-MAK, 2022 WL 3021560, at *5, 19 (D. Del. July 29, 2022) (Kearney, J.) (excluding expert testimony on damages calculations comprised of "reciting the contents of documents" and applying "no complicated extrapolations"). For Estabrook's calculation of Donnelly's IEUs as of September 2020, he simply multiplied the price per common share listed in a ProPharma distribution document by the number of Donnelly's shares that would vest under the IEA. Accordingly, the Court should preclude Estabrook from providing testimony relating to the value of Donnelly's shares as of September 2020. *See Allscripts Healthcare*, 2022 WL 3021560, at *19 ("Our colleagues regularly exclude such testimony because multiplication is not a specialized form of knowledge that a jury lacks or a scientific technique that a jury is incapable of performing." (internal citations and quotations omitted). *See also CareDx, Inc. v. Natera, Inc.*, No. CV 19-662-CFC-CJB, 2021 WL 1840646, at *3 (D. Del. May 7, 2021) (same).

Donnelly, ProPharma, and even Estabrook agree that if the jury decides that Donnelly remained on the Board through ProPharma's sale in September 2020, the damages calculation should be based on Donnelly's pro rata share of the purchase price. In fact, Donnelly's proposed jury instruction for his contract claim relating to the IEA specifies ProPharma's failure to compensate him the "fully vested value of all of his management incentive units **using the**

***September 30, 2020 sales price of ProPharma".*** D.I. 188 at 2. As Estabrook has already demonstrated, the value of Donnelly's pro rata share of the sales price is easily calculated from a ProPharma distribution document that is currently contained on Donnelly's exhibit list. *See* D.I. 182 at 21 (listing PROPHARMA0000496). Because the jury can just as easily utilize the ProPharma distribution document Estabrook relied upon, the Court should not allow Donnelly to proffer expert testimony on the valuation of Donnelly's shares as of September 2020.

## CONCLUSION

Because Plaintiff's expert's valuation opinions are inconsistent with Plaintiff's present case and the express terms of the governing contract, ProPharma respectfully requests that this Court exclude the proffered expert testimony of Joseph Estabrook concerning the valuation of Donnelly's IEUs as of June and September 2019 and any testimony relating to the value of Donnelly's Units as of September 2020.

Dated: March 1, 2023

/s/ *Katharine L. Mowery*
Susan Hannigan Cohen (#5342)
Katharine L. Mowery (#5629)
John M. O'Toole ($6448)
Richards, Layton & Finger, P.A.
920 North King Street
Wilmington, DE 19801
(302) 651-7700
Hannigan@rlf.com
Mowery@rlf.com
OToole@rlf.com

OF COUNSEL:

Jonathan E. Missner
Robert B. Gilmore
Philip J. O'Beirne
Kevin L. Attridge
Samantha P. Christensen
Stein Mitchell Beato & Missner, LLP
901 15th Street NW, Suite 700
Washington, DC 20005

8

(202) 737-7777
jmissner@steinmitchell.com
rgilmore@steinmitchell.com
pobeirne@steinmitchell.com
kattridge@steinmitchell.com
schristensen@steinmitchell.com

*Attorneys for Defendant ProPharma Group Topco, LLC*