## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

PATRICK K. DONNELLY

        *Plaintiff,*

v.

PROPHARMA GROUP TOPCO, LLC

        *Defendant.*

C.A. No. 21-894-MAK

## DEFENDANT PROPHARMA GROUP TOPCO, LLC'S OPENING BRIEF
## IN SUPPORT OF ITS MOTION FOR ATTORNEYS' FEES AND COSTS[1]

---

[1] ProPharma is simultaneously filing a separate motion and supporting brief seeking, in the alternative, its fees and costs from McGuireWoods, counsel for Donnelly, under 28 U.S.C. § 1927. ProPharma's Delaware counsel, Richards Layton & Finger, is unable to assert the Section 1927 argument due to a conflict with respect to McGuireWoods. Therefore, ProPharma is filing its Section 1927 motion and brief through separate Delaware counsel, Christensen & Dougherty LLP, as conflicts counsel.

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

RELEVANT FACTUAL AND PROCEDURAL BACKGROUND ................................. 2

LEGAL STANDARD ......................................................................................................... 6

ARGUMENT ...................................................................................................................... 7

    I. PROPHARMA SHOULD BE AWARDED ITS REASONABLE ATTORNEYS' FEES AND COSTS PURSUANT TO THE IEA ................................................................................ 7

      A. ProPharma Is Entitled To An Award of Reasonable Attorneys' Fees And Costs Under The IEA's Fee-Shifting Provision .......................................................... 7

      B. ProPharma's Requested Fees And Costs Are Reasonable. ................................. 9

        1. The Attorneys' Hourly Rates are Reasonable ....................................... 11

        2. The Attorneys' Hours and ProPharma's Incurred Costs are Reasonable ............. 13

    II. PROPHARMA SHOULD BE AWARDED FEES AND COSTS PURSUANT TO THE COURT'S INHERENT EQUITABLE POWERS. ....................................................... 16

CONCLUSION ................................................................................................................. 19

## <u>TABLE OF AUTHORITIES</u>

Page(s)

<u>Cases</u>

*Albert v. Edward J. DeBartolo Corp.*,
  999 F.2d 539 (6th Cir. 1993) ................................................................ 17, 20

*Aloha Power Co., LLC v. Regenesis Power, LLC*,
  No. CV 12697, 2017 WL 6550429 (Del. Ch. Dec. 22, 2017) .................................. 6

*Alphonso v. Pitney Bowes, Inc.*,
  356 F. Supp. 2d 442 (D.N.J. 2005) ........................................................ 20

*Am. Honda Motor Co. v. Motorcycle Info. Network, Inc.*,
  2008 WL 906739 (M.D. Fla. Apr. 2, 2008) ............................................. 18, 20

*Audubon Eng'g Co. v. Int'l Procurement & Contracting Grp., LLC*,
  2016 WL 1089677 (D. Del. Mar. 21, 2016) ............................................... 10

*Avirgan v. Hull*,
  932 F.2d 1572 (11th Cir. 1991) ............................................................ 17

*Bako Pathology LP v. Bakotic*,
  288 A.3d 252 (Del. 2022) ................................................................. 6

*Barber v. Kimbrell's, Inc.*,
  577 F.2d 216 (4th Cir. 1978) .............................................................. 10

*Boykin v. Bloomsburg Univ. of Pa.*,
  905 F.Supp. 1335 (M.D. Pa. 1995) ....................................................... 18

*Chambers v. NASCO, Inc.*,
  501 U.S. 32, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991) ..................................... 7

*Cumberland Farms, Inc. v. Lexico Enterprises, Inc.*,
  2012 WL 526716 (E.D.N.Y. Feb. 16, 2012) ............................................ 8, 9

*Dow Chem. Canada Inc. v. HRD Corp.*,
  2013 WL 3942052 (D. Del. July 29, 2013) ............................................. 6, 12

*Dunkin' Donuts Inc. v. Guang Chyi Liu*,
  No. CIV.A. 00-3666, 2002 WL 31375509 (E.D. Pa. Oct. 17, 2002) ....................... 6

*Edgewater Growth Cap. Partners L.P. v. H.I.G. Cap., Inc.*,
  2013 WL 1707877 (Del. Ch. Apr. 18, 2013) ..................................................... 14, 15

*EDIX Media Grp., Inc. v. Mahani*,
  No. CIV.A. 2186-N, 2007 WL 417208 (Del. Ch. Jan. 25, 2007) .................................. 1, 15, 16

*Foltz v. Delaware State Univ.*,
  70 F. Supp. 3d 699 (D. Del. 2014) ........................................................................... 11

*Freeman v. Rice*,
  No. 09-20352-CIV, 2012 WL 12948864 (S.D. Fla. Nov. 9, 2012) ............................ 9

*In re ALH Holdings LLC*,
  No. CIV. 04-1339-SLR, 2010 WL 520632 (D. Del. Feb. 12, 2010) .......................... 11, 12

*In re Elonex Phase II Power Mgmt. Litig.*,
  279 F. Supp. 2d 521 (D. Del. 2003) ................................................................... 16, 20

*In re Walker*,
  532 F.3d 1304 (11th Cir. 2008) ......................................................................... 20

*Ivize of Milwaukee v. Compex Litig. Support*,
  2009 WL 1930178 (Del. Ch. June 24, 2009) ..................................................... 10

*Johnston v. Arbitrium (Cayman Islands) Handels AG*,
  720 A.2d 542 (Del.1998) ..................................................................................... 12

*Loftus v. Se. Pa. Transp. Auth.*,
  8 F. Supp. 2d 458 (E.D. Pa. 1998) ...................................................................... 18

*Mahani v. Edix Media Grp., Inc.*,
  935 A.2d 242 (Del. 2007) ......................................................................... 6, 9, 14

*Moon Express, Inc. v. Intuitive Machines, LLC*,
  No. CV 16-344-LPS, 2018 WL 4972220 (D. Del. Oct. 15, 2018) ...................... 6, 10, 11

*Mor ex rel AmerisourceBergen Corp. v. Collis*,
  654 F. App'x 553 (3d Cir. 2016) ........................................................................... 6

*Murphy v. Hous. Auth. And Urb. Redevelopment Agency of City of Atl. City*,
  51 F. App'x 82 (3d Cir. 2002) .............................................................................. 18

*Public Interest Research Group v. Windall*,
  51 F.3d 1179 (3d Cir.1995) ................................................................................. 11

*Rothschild Digital Confirmation LLC v. Comanycam, Inc.*,

C.A. No. 19-1109, 2021 WL 706411, (D. Del. Feb. 23, 2021) ................................... 12

*Shackelford v. Courtesy Ford, Inc.*,
   96 F. Supp. 2d 1140 (D. Colo. 2000) ........................................................................... 19

*Shappley v. Amedica Corporation*,
   2013 WL 12250136 (D. Utah Sept. 5, 2013) ............................................................... 8

*SIGA Techs., Inc. v. PharmAthene, Inc.*,
   67 A.3d 330 (Del. 2013) ............................................................................................. 10

*Sternberg v. Nanticoke Mem'l Hosp., Inc.*,
   62 A.3d 1212 (Del. 2013) ........................................................................................... 14

*W.L. Gore & Assocs., Inc. v. C.R. Bard, Inc.*,
   231 F. Supp. 3d 19 (D. Del. 2017) .............................................................................. 20

*Wise v. Washington Cnty.*,
   No. CIV.A., 10-1677, 2015 WL 1757730 (W.D. Pa. Apr. 17, 2015) .......................... 19

*Xcoal Energy & Res. v. Bluestone Energy Sales Corp.*,
   No. CV 18-819-LPS, 2021 WL 4319224 (D. Del. Sept. 23, 2021) ............................. 7

## INTRODUCTION

This is a case about termination where Plaintiff Patrick K. Donnelly knew in no uncertain terms that he had been terminated and acted and wrote accordingly. Hoping against hope he could convince a jury otherwise, Donnelly continued with his meritless lawsuit despite massive evidence being produced during discovery that proved what he already knew to be true. Donnelly gambled that his fictional claims against ProPharma would reward him with far more money than he was entitled to under the parties' agreements, and that adopting a strategy of litigation misconduct might pay off with a decision on the merits in his favor. Donnelly abandoned his original allegations – and any claim to consistency – in a desperate attempt to reach a jury because, in his view "5 percent of the time you can convince a jury of anything."[2] But as the Delaware Supreme Court has made clear, litigants adopting such a strategy "balance the possibility of [receiving] an eventual judgment on the merits with the chance that he would have to pay for a more expensive trial."[3] Thus, even "[i]f the final damages [at stake] seem disproportionately small in comparison to attorney's fees and costs, it is only because he doubled-down on that bet too many times."[4] Donnelly's unwise bet on his meritless claims caused ProPharma to incur more than $3.6 million defending itself. The jury's swift verdict in ProPharma's favor, and the story of this litigation, demonstrate why Donnelly now must compensate ProPharma those amounts.

First, the fee-shifting provision in the IEA requires that Donnelly reimburse ProPharma for all of the attorneys' fees and costs incurred to defend the enforcement of its rights under the parties' contracts. Indeed, other courts addressing substantially identical provisions easily found that the

---

[2] D.I. 263 at 938:10-12 (Davis discussing phone conversation with Donnelly).
[3] *EDIX Media Grp., Inc. v. Mahani*, No. CIV.A. 2186-N, 2007 WL 417208, at *2 (Del. Ch. Jan. 25, 2007), *aff'd*, 935 A.2d 242 (Del. 2007).
[4] *Id.*

1

prevailing defendant was entitled to all such fees and costs. Second, the Court should find that ProPharma is entitled to its attorney's fees and costs from Donnelly pursuant to this Court's inherent equitable powers. Such an award is justified because of the unreasonable and vexatious manner in which Donnelly conducted this litigation.

## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

The Court is well versed on the facts of this case. Accordingly, ProPharma will refrain from inundating the Court with duplicative information, and instead incorporates by reference the Factual Background section in its Opposition Brief recently filed in response to Donnelly's post-trial motion, along with the Declaration of Philip J. O'Beirne ("O'Beirne Declaration") filed in support of this motion.[5] The following recitation below highlights certain salient points regarding this case's factual and procedural background that are of particular relevance for ProPharma's motion.

**Donnelly filed in the wrong venue and refused to dismiss and re-file his case even after being alerted to the incorrect venue.** Donnelly filed suit in November 2020 in the U.S. District Court for the District of South Carolina. ProPharma's counsel notified counsel for Donnelly that his suit was subject to a mandatory venue provision in the governing contract, ProPharma's Amended and Restated Limited Liability Company Agreement ("LLC Agreement"), requiring it to be filed in Delaware courts.[6] Donnelly refused to dismiss and re-file his case in the proper venue, forcing ProPharma to move to transfer venue. Donnelly opposed this motion by arguing that the venue provision of the ProPharma LLC Agreement should not bind him because he never reviewed the document before he signed the Joinder. Even if true, this was an obviously infirm legal

---

[5] D.I. 266 at 2-7. The O'Beirne Declaration is attached hereto as Exhibit A.
[6] O'Beirne Decl. ¶ 7, Decl. Ex. A-3 at 7 (Dec. 8, 2020 P. O'Beirne email to S. Robinson).

argument based on well settled precedent.[7] Donnelly even claimed that "Mr. Donnelly's alleged status as a party to the LLC Agreement and a Board member of the company are red herrings."[8] The District of South Carolina easily rejected Mr. Donnelly's dubious argument and transferred the case to this Court.[9]

**Donnelly made unfounded factual allegations in his original complaint that could not have had a good faith basis because they are plainly refuted by the record evidence and Donnelly's own testimony.** Given the sworn testimony Donnelly provided at trial, reviewing his original allegations in this case is an alarming exercise. At various points throughout the litigation, Mr. Donnelly made various untrue claims that were easily refuted by his own testimony, let alone the evidentiary record: everything from who raised his conflict of interest in remaining on ProPharma's Board, to when he was first informed of his being removed from the Board, to when a "liquidity event" occurred under the IEA.[10]

**Donnelly ignored multiple communications, including a Rule 11 letter and draft motion, identifying fatal weaknesses in his suit.** As detailed in the O'Beirne Declaration, on multiple occasions, counsel for ProPharma communicated in writing with Donnelly's attorneys identifying evidence that flatly refuted the allegations in the complaint. These included that Donnelly was told that he was being removed from the Board because of a potential business conflict that he himself had acknowledged; that a written board removal document, signed by the Linden Investors that he himself pleaded were the ones required to remove him from ProPharma's Board, existed; that Donnelly had written in an email "I am no longer on the ProPharma Board";

---

[7] O'Beirne Decl. ¶ 10; D.I. 36 (Order).
[8] D.I. 28 at 11.
[9] D.I. 36 (Order).
[10] O'Beirne Decl. ¶¶ 19-20.

that he pleaded and then admitted in his deposition conduct inconsistent with this continued board service (e.g., that he had provided no services to ProPharma after June 2019); that he engaged in repurchase negotiations that featured written repurchase agreements identifying an effective termination date; and that he himself wrote in his resume given to his new employer that his ProPharma Board service had ended in 2019.[11] Yet Donnelly persisted with pursuing his claims.

**Donnelly engaged in discovery abuse.** As the Court already knows, on multiple occasions ProPharma was forced to seek relief due to Donnelly's obstructionism. At his deposition, Donnelly refused to answer questions on the core issues of his claims, which led to the Court granting ProPharma a second deposition of him.[12] Donnelly also caused unnecessary motions practice and delay by failing to run the most obvious search terms during document discovery. When Donnelly finally produced documents from proper search terms in late August 2022, they revealed that Donnelly was working with Summit Partners in 2020, a potential buyer for ProPharma. That again forced ProPharma to engage in motions practice—this time to extend deadlines so that ProPharma could take third-party discovery based on the information in Donnelly's late documents.[13] Donnelly also filed a meritless motion to quash a third-party subpoena. Following briefing from the parties, the Court rejected Donnelly's motion, stating that Donnelly lacked standing.[14]

**Donnelly impermissibly switched arguments at trial—which now serve as the basis for his post-trial motion and appeal.** In anticipation of Donnelly continuing his unreasonable contentions at trial, ProPharma moved to exclude Donnelly from raising new arguments that were at odds with the contract terms and the Court's construction of the agreements, which was

---

[11] O'Beirne Decl. ¶ 8.
[12] *Id.* ¶ 16; D.I. 136 (Order granting second deposition).
[13] D.I. 97 (motion) & 101 (reply) & 107 (order granting ProPharma's motion to extend deadlines).
[14] D.I. 136

granted.[15] Donnelly nonetheless flouted the Court's ruling and argued that an entirely different clause (Section 5.3) required a Board vote for his removal.[16] This last-ditch argument caused ProPharma to file a trial motion to exclude the argument, which the Court properly granted.[17] Not only was the argument untimely, but it lacked any merit given that Linden, and Linden alone, had the authority to appoint and remove Donnelly. Donnelly is now, in part, basing his pending post-judgment motion and appeal on the Court's exclusion of this frivolous argument.

Donnelly also reversed his position on the central damages claims he was advancing factual issues.  For example, Donnelly claimed that he (not ProPharma or Linden) raised that there was a potential conflict with him serving on the Board.[18] Throughout the litigation, including in his deposition, it was his opinion that he was unaware of any conflicts until August 2019.[19] Donnelly also abandoned his claim that he was owed compensation if it was found that he was removed before ProPharma's sale in 2020.[20] The valuation of all of his shares in 2019 was the centerpiece of his expert's report. ProPharma spent an enormous amount in attorney and expert fees rebutting that report, in addition to the other non-expert arguments addressing that issue.[21]

**The jury returned a swift and decisive verdict for ProPharma, which entitles ProPharma to attorneys' fees and costs.** On April 27, 2023, after no more than 30 minutes of deliberations, a unanimous jury returned a verdict in favor of ProPharma and against Donnelly on both breach of contract claims, demonstrating the jury's recognition that Donnelly's claims had

---

[15] D.I. 220.
[16] *See generally* D.I. 266.
[17] D.I. 247.
[18] O'Beirne Decl. ¶ 19.
[19] *Id.*
[20] *Id.* at 20.
[21] *Id.*

no merit.[22] That same day this Court entered judgment in favor of ProPharma and against Donnelly "on all claims."[23] ProPharma's win entitles it to recover its fees and costs from Donnelly for several reasons, as explained below.

## LEGAL STANDARD

**Attorneys' Fees & Costs Pursuant to Contract.** An attorneys' fees award is governed by state rules when subject matter jurisdiction is based on diversity.[24] It is well-established under Delaware law that costs and fees may be shifted by contract.[25] In contract litigation that involves a fee shifting provision, "a trial judge may award the prevailing party ***all*** of the costs it incurred during litigation."[26] Moreover, state law also governs "the method of determining [attorneys'] fees."[27] "Delaware law dictates that, in fee shifting cases, a judge must determine whether the fees requested are reasonable."[28] However, "[t]rial courts have broad discretion in fixing the amount of attorney fees to be awarded and may consider a variety of factors."[29] To assess the reasonableness of fees, Delaware law directs a judge to consider various factors set forth in Rule 1.5(a) of the Delaware Lawyers' Rules of Professional Conduct ("Rule 1.5").[30]

---

[22] D.I. 250.

[23] D.I. 251.

[24] *Mor ex rel AmerisourceBergen Corp. v. Collis*, 654 F. App'x 553, 558 (3d Cir. 2016).

[25] *Bako Pathology LP v. Bakotic*, 288 A.3d 252, 280 (Del. 2022); *see also Aloha Power Co., LLC v. Regenesis Power, LLC*, No. CV 12697, 2017 WL 6550429, at *5 (Del. Ch. Dec. 22, 2017).

[26] *Mahani v. Edix Media Grp., Inc.*, 935 A.2d 242, 245 (Del. 2007). Emphasis is added throughout unless otherwise indicated.

[27] *Dunkin' Donuts Inc. v. Guang Chyi Liu*, No. CIV.A. 00-3666, 2002 WL 31375509, at *2 (E.D. Pa. Oct. 17, 2002).

[28] *Mahani*, 935 A.2d at 245–46.

[29] *Moon Express, Inc. v. Intuitive Machines, LLC*, No. CV 16-344-LPS, 2018 WL 4972220, at *6 (D. Del. Oct. 15, 2018), *aff'd*, 788 F. App'x 117 (3d Cir. 2019) (quoting *Dow Chem. Canada Inc. v. HRD Corp.*, 2013 WL 3942052, at *1 (D. Del. July 29, 2013)).

[30] *Id.*

**Attorneys' Fees & Costs Pursuant to the Court's Inherent Equitable Powers.** "The Court has inherent authority to award attorneys' fees 'when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'"[31]

## ARGUMENT

### I. PROPHARMA SHOULD BE AWARDED ITS REASONABLE ATTORNEYS' FEES AND COSTS PURSUANT TO THE IEA.

The Court should award ProPharma $3,665,288.86 in attorneys' fees and costs to compensate it for the significant time and expense incurred in defense of Donnelly's claims.[32]

#### A. ProPharma Is Entitled To An Award of Reasonable Attorneys' Fees And Costs Under The IEA's Fee-Shifting Provision.

Section 17 of the IEA entitles ProPharma to fees and costs as a result of enforcing its rights in this lawsuit. That Section provides as follows:

> <u>Remedies.</u>  The parties hereto (and the Linden Investors as third-party beneficiaries) shall be entitled to enforce their rights under this Agreement specifically, to recover damages and costs (including attorney's fees) by reason of any breach of any provision of this Agreement and to exercise all other rights existing in their favor.[33]

ProPharma enforced its rights under the IEA and prevailed in Donnelly's action for breach. This provision entitles ProPharma to recover fees and costs of that defense.

Courts routinely enforce fee-shifting provisions like this one. In *Shappley v. Amedica Corporation*, for example, a former executive (and board director) claimed that he was owed additional unpaid compensation after the company allegedly breached their employment

---

[31] *Xcoal Energy & Res. v. Bluestone Energy Sales Corp.*, No. CV 18-819-LPS, 2021 WL 4319224, at *1 (D. Del. Sept. 23, 2021), *aff'd*, No. 21-2926, 2022 WL 2870153 (3d Cir. July 21, 2022) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991)).

[32] The requested fees and costs in this motion are through June 30, 2023. ProPharma reserves the right to submit a supplemental request and supporting information for the fees incurred with preparing the briefs relating to the fee petition.

[33] Trial Ex. 8 at 13.

agreement by improperly terminating him.[34] Following a bench trial and the court's entering of

judgment in favor of the defendant corporation on the plaintiff's breach of contract claim, the

*Shappley* court awarded attorneys' fees to the defendant "for its successful effort to establish that

it terminated [plaintiff]'s employment for cause."[35] In doing so, the court relied on a fee-shifting

provision nearly identical to the one found in the IEA:

> Each of the parties to this Agreement will be entitled to enforce its rights under this
> agreement specifically, to recover damages and costs (including attorney fees)
> caused by any breach of any provision of this Agreement and to exercise all other
> rights existing in its favor.

*Id.* at *14. The court held that the defendant was entitled to recover attorneys' fees "because

[defendant] was successful in ***enforcing its right to terminate Shappley for Cause.***" *Id*. at *14.

The same provision governs fee-shifting between Donnelly and ProPharma here; ProPharma was

"successful in enforcing its right to terminate" Donnelly and thus ProPharma is contractually

entitled to attorneys' fees and costs.

Similarly, in *Cumberland Farms, Inc. v. Lexico Enterprises, Inc.*, the court affirmed a

defendant's entitlement to attorneys' fees pursuant to a provision providing costs incurred by

"enforcing its rights" under the parties' agreement.[36] The plaintiff there argued (as Donnelly might)

that the provision only provided attorneys' fees for a plaintiff.[37] The court rejected this argument

as "unpersuasive" because "[t]he plain terms do not distinguish between a plaintiff and a

defendant," and "the language 'enforcing its rights and remedies' is not confined solely to

affirmative actions of a plaintiff." What ultimately controlled the award was the fact that "***by acting***

***as a defendant against [Plaintiff's] meritless claims, [Defendant] was enforcing its contractual***

---

[34] 2:11-CV-1198, 2013 WL 12250136 (D. Utah Sept. 5, 2013).
[35] *Id.* at *15.
[36] No. 10-CV-4658 ADS AKT, 2012 WL 526716, at *3-4 (E.D.N.Y. Feb. 16, 2012).
[37] *Id.* at *3.

*rights.*"[38] Here, the IEA references "the parties hereto" and even extends its application to certain "third party beneficiaries," namely, the Linden Investors, without differentiating between plaintiffs and defendants. ProPharma enforced its contractual rights by defending against Donelly's meritless claims and the Court should require Donnelly to pay ProPharma's reasonable attorneys' fees and costs incurred enforcing its rights in connection with this litigation.

### B. ProPharma's Requested Fees And Costs Are Reasonable.

**Attorneys' Fees.** ProPharma seeks to recover **$3,110,363.00** for the following reasonable attorneys' rates and fees paid to two law firms:

| Law Firm | Hourly Rate Range[39] | Hours | Fees |
|---|---|---|---|
| Stein Mitchell Beato & Missner, LLP ("Stein Mitchell") | $275-975 | 4,547.4 | $2,907,662.50 |
| Richards, Layton & Finger, PA ("RLF") | $375-1,100 | 273.3 | $202,700.50 |
| **TOTAL** | **$275-1,100** | **4820.4** | **$3,110,363.00** |

**Costs.** ProPharma also seeks to recover **$554,925.86** in costs incurred in connection with this litigation. This includes $153,107.33 in expert costs; $85,490.63 in e-discovery costs; $4,538.13 in copying costs; 36,503.32 in deposition and transcripts costs;; $46,457.89 in legal research costs; $1,924.80 in docket and service costs; $25,201.42 in witness and attorney travel costs; $181,665.00 in trial consultant costs; and $20,037.14 in trial graphics costs. As set forth in the O'Beirne Declaration, these costs were reasonably and necessarily incurred in connection with

---

[38] *Id.* at *3-4. *See also Freeman v. Rice*, No. 09-20352-CIV, 2012 WL 12948864, at *1 (S.D. Fla. Nov. 9, 2012) ("While attorney's fees are not recoverable in any and all litigation relating to a contract with an attorney's fee clause, they are recoverable here. In order to 'enforce' Rice's rights under the Lease Agreement, Rice had to defend Freeman's appeal of the federal suit, and a fee award for the appeal is therefore warranted.")

[39] The rate ranges include the rates for support staff.

this litigation.[40] Courts may award all costs in contractual fee-shifting cases,[41] including expert fees.[42]

To assess the reasonableness of attorneys' fees and costs under Delaware law, courts typically consider the eight factors set forth in Rule 1.5.[43] Several of the Rule 1.5 factors are relevant to measuring the reasonableness of the rate charged: (3) the fee customarily charged in the locality for similar legal services; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent. Other factors are relevant to assessing the number of hours and costs expended: (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; and (4) the amount involved and the results obtained. As set forth below and in the supporting declarations attached hereto,[44] these factors weigh in favor of granting full fees for ProPharma.[45]

---

[40] *See* O'Beirne Decl. ¶ 46-55.

[41] *Mahani*, 935 A.2d at 245.

[42] *See SIGA Techs., Inc. v. PharmAthene, Inc.*, 67 A.3d 330, 353 (Del. 2013); *Ivize of Milwaukee v. Compex Litig. Support*, 2009 WL 1930178, at *2 (Del. Ch. June 24, 2009)

[43] In order to *calculate* its reasonable fees, ProPharma used the same lodestar method often employed by Federal courts by multiplying the reasonable rate by reasonable hours expended.

[44] Attorney declarations are suitable evidence to support reasonableness of attorneys' fees and costs request. *Moon Express*, 2018 WL 4972220, at *7; *Audubon Eng'g Co. v. Int'l Procurement & Contracting Grp., LLC*, 2016 WL 1089677, at *2 (D. Del. Mar. 21, 2016).

[45] ProPharma incurred $202,297.50 in fees (after reductions) based on 300.9 hours expended by Stein Mitchell before this case was transferred. O'Beirne Decl. ¶ 40 n.48. The Fourth Circuit and Local Civil Rule 54.02 (D.S.C.) mandate a twelve-factor analysis in determining the overall reasonableness of a request for attorneys' fees. *See Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 (4th Cir. 1978); *see also* Local Civil Rule 54.02 (D.S.C.). This analysis is identical to Rule 1.5, except for two additional factors: "expectations at the outset of the litigation" and "the undesirability of the case within the legal community in which the suit arose." *Id.* While the Fourth Circuit's "undesirability" factor is irrelevant to the case at hand, the same is not true for the "expectations" factor, which weighs in favor of reasonableness because ProPharma even though it expected to win based on the irrefutable facts, it braced for Donnelly's intransigence already displayed in his lawsuit against Linden. O'Beirne Decl. ¶ 3 n.2.

### 1.   The Attorneys' Hourly Rates are Reasonable

A reasonable hourly rate is determined by the fee customarily charged in the locality for similar legal services and the experience, reputation, and ability of the lawyer or lawyers performing the services.[46] ProPharma's proposed rates are within the reasonable range of market rates in Wilmington, Delaware. The rates both fall within the scope of recent rates found to be appropriate in this district,[47] and are also supported by a declaration from an experienced local practitioner with knowledge of the local legal market.[48] In that declaration, Francis DiGiovanni, a Wilmington-based litigator with nearly 30 years of experience, confirms that the rates charged by ProPharma's counsel are reasonable and consistent with rates prevailing in the market today.[49]

Courts also observe the nature of the fee structure.[50] Here, Counsel charged ProPharma at an hourly rate. Notably, the Third Circuit has endorsed the use of an attorney's usual billing rate as a starting point in the reasonableness inquiry.[51] "These hourly rates represent 'the price that [an attorney's] time normally commands in the marketplace for legal services in which those services are offered.'"[52] The rates proposed by ProPharma are reasonable because they are the standard rates that Counsel charges its clients.[53] Relatedly, where, as here, a sophisticated client retained a law firm and agreed to pay its rates, this Court has stated that, "[a] sophisticated consumer's arms-length purchasing of the services establishes [...] reasonableness, at least in the absence of any

---

[46] Del. Lawyers' Rules of Prof'l Conduct R. 1.5 (3) and (7); *Foltz v. Delaware State Univ.*, 70 F. Supp. 3d 699, 703–04 (D. Del. 2014).

[47] *See*, *e.g.*, *Moon Express*, 2018 WL 4972220, at *5 (awarding attorneys' fees in 2018 at rates of $670 to $1,030 for partners and $400 to $535 for associates).

[48] *See* Ex. C, Decl. of Francis DiGiovanni ("Giovanni Decl.").

[49] *See generally Id.*

[50] Del. Lawyers' Rules of Prof'l Conduct R. 1.5(8) ("whether the fee was fixed or contingent").

[51] *In re ALH Holdings LLC*, No. CIV. 04-1339-SLR, 2010 WL 520632, at *3 (D. Del. Feb. 12, 2010) (citing *Public Interest Research Group v. Windall*, 51 F.3d 1179, 1185 (3d Cir.1995)).

[52] *Id.* at *4.

[53] *See* O'Beirne Decl. at 12 n.46; Ex. B, Decl. of Susan H. Cohen ("Cohen Decl.") ¶ 4.

contrary evidence."[54] There is no contrary evidence here. In fact, RLF is an established Delaware firm and charges higher rates than Stein Mitchell. Stein Mitchell not only served as lead counsel, but also expended the vast majority of hours in this matter. That most of the fees incurred by ProPharma were charged at a rate lower than an established Delaware firm is reflective of their reasonableness.[55]

Finally, the Court should consider the nature and length of the professional relationship with the client.[56] This factor also weighs in favor of awarding ProPharma's full proposed rates because Stein Mitchell's relationship with Linden extends well beyond this litigation. Stein Mitchell has represented Linden and its portfolio companies in connection with various disputes.[57] This includes representation in a lawsuit filed by Donnelly against Linden.[58] Based on these prior representations, Linden valued Stein Mitchell's legal services and its team of litigators as being well-versed in contract disputes similar to the one that was in dispute here. In light of the factors set forth above, ProPharma respectfully submits that the rates requested herein are reasonable.[59]

---

[54] Further, a client's "timely and complete payment of all legal fees further support a finding that plaintiffs' counsel command reasonable hourly rates." *Dow Chem. Canada Inc.*, 2013 WL 3942052, at *3. *See also Rothschild Digital Confirmation LLC v. Comanycam, Inc.*, C.A. No. 19-1109, 2021 WL 706411, (D. Del. Feb. 23, 2021).

[55] *In re ALH Holdings LLC*, No. CIV. 04-1339-SLR, 2010 WL 520632, at *4 (D. Del. Feb. 12, 2010) (citing *Johnston v. Arbitrium (Cayman Islands) Handels AG*, 720 A.2d 542, 547 (Del.1998)).

[56] Del. Lawyers' Rules of Prof'l Conduct R. 1.5(a)(6).

[57] O'Beirne Decl. ¶ 3.

[58] *Id.* Donnelly filed suit against Linden before he filed the Complaint in the instant case. Linden significantly reduced the claims at the summary judgment stage. The parties are currently waiting for a trial date.

[59] In its May 9, 2023 Order setting the post-trial briefing schedule, D.I. 255, the Court suggested that ProPharma submit "comparator fee affidavits for this District and the District of South Carolina" where Donnelly originally filed suit. To that end, ProPharma submits the Declaration of Rutledge Young, counsel in South Carolina. Although Mr. Young's own hourly rates are somewhat lower than those of Stein Mitchell and Richards Layton & Finger, he testifies in his declaration that "[b]ased on [his] experience and knowledge of the Charleston market, those rates are within

### 2.   The Attorneys' Hours and ProPharma's Incurred Costs are Reasonable

ProPharma seeks to recover for 4820.4 hours of attorney time and $554,925.86 in costs, which reflect the attorney hours and costs that ProPharma reasonably incurred to successfully defend ProPharma against Donnelly's claims.[60] As explained below, this figure is reasonable given the demands of this litigation, including the need to rebut Donnelly's many unreasonable arguments. Further demonstrating the reasonableness of ProPharma's request, after carefully reviewing its billing entries, ProPharma eliminated 253.7 hours from its request.[61]

Regarding the Rule 1.5 factors, the Court should weigh the complexity and requisite skill involved in this matter, along with the amount at stake and the results obtained.[62] First, even Donnelly's recent characterization of this lawsuit would support finding that this case presented the complexity and requisite skill to also weigh in favor of attorneys' fees: "[h]ere, the subject matter of this litigation was not simple. Trial lasted five days, involved the testimony of several witnesses, and discussion of dozens of interrelated corporate entities. Moreover, laymen do not typically deal with LLC contractual documents, which were at the heart of this case."[63] In fact, ProPharma incurred similar expenses to the defendant's in *Edgewater Growth Cap. Partners L.P. v. H.I.G. Cap., Inc.*, which ended in a four-day trial that also was centered on contract breach

---

the range of prevailing market rates for comparable work performed in the District of South Carolina (Charleston Division) in cases of this size and legal complexity." Ex. D ¶ 9.

[60] The hours expended are reflected in the time records attached to the declarations supporting this motion for fees.

[61] O'Beirne Decl. ¶ 41; Cohen Decl. ¶ 15. Of those, ProPharma does not seek to recover for hours of time spent by Stein Mitchell and RLF that were attributable to work spent on ProPharma's unsuccessful motion for leave to file an amended answer and hours expended by attorneys and support staff who did not continuously work on this case. ProPharma is also not seeking to recover fees from its former local counsel in South Carolina, which is not counted in the total number of removed hours. O'Beirne Decl. ¶ 2 n.2.

[62] *See* Del. Lawyers' Rules of Prof'l Conduct R. 1.5(a)(1) and (4).

[63] D.I. 259 at 18 (Motion for JMOL).

issues.[64] The court factored in its full $2.6 million fee award (at 2013 rates) that "[defendant]'s legal team had to tackle diverse legal issues involving Illinois and Delaware law and articulate why [plaintiff]'s claims were devoid of factual and legal merit" and observed that defendant's fees incurred were especially reasonable given that at trial the defendant "had to do the hard work of cleaning up the mess from all the pizza [the plaintiff] constantly threw at it." *Id.*

Second, there can be no dispute that by receiving a complete defense verdict after a half-hour of jury deliberation, ProPharma was successful in its defense against Donnelly's claims. In doing so, ProPharma avoided paying the more than $1.5 million Donnelly demanded as supposed damages, and millions more given the parties' two-way fee-shifting provision and the substantial hours expended by the large law firm Donnelly retained for this case.

What is more, "[the Delaware] Supreme Court has repeatedly held that the amount involved and results obtained is *only one* factor to consider in determining if a fee is reasonable, because a contractual fee shifting case 'should be assessed by reference to legal services purchased by those fees, not by reference to the degree of success achieved in the litigation.'"[65] Donnelly's consistent intransigence in this case significantly inflated the time and labor required by ProPharma's attorneys. In *Mahani v. Edix Media Grp., Inc.*, the Delaware Supreme Court affirmed a full award of attorneys' fees and costs six times higher than the damages recovered because "Mahani's refusal to cooperate at every stage of the proceedings outweighed EDIX's limited trial success and heavily contributed to the total number of hours EDIX spent litigating the case."[66]

---

[64] No. CIV.A. 3601-CS, 2013 WL 1707877, at *4, *6 (Del. Ch. Apr. 18, 2013).
[65] *Edgewater Growth*, 2013 WL 1707877, at *4 (emphasis in original) (quoting *Mahani v. EDIX Media Group Inc.*, 935 A.2d 242, 248; *Sternberg v. Nanticoke Mem'l Hosp., Inc.*, 62 A.3d 1212, 1221 (Del. 2013)).
[66] 935 A.2d 242, 248 (Del. 2007).

Indeed, while applying Rule 1.5 a court should give "considerable weight" to "[t]he time and labor required to carry a case to trial" such that "[the non-prevailing party] will not be heard to complain that the time spent preparing for litigation was excessive when he may be blamed for so much of the cost and delay."[67] Similarly, in *Edgewater Growth*, the plaintiff complained how the defendant's multi-million dollar fees request pursuant to the parties' contractual fee-shifting provision exceeded the amount defendant recovered on its breach of contract counterclaim.[68] The court rejected the plaintiffs' argument and awarded full fees, holding that "[Defendant] cannot be blamed for that result, because it was [plaintiff]'s own proliferation of claims […] that caused the litigation to be so time-consuming and expensive."[69]

The defendant's misconduct in *Mahani* mirrors Donnelly's litigation strategy. The Chancery Court found that "[w]ith ample opportunity to minimize the costs of litigation, defendant at every step chose to draw out the conflict."[70] Likewise, Donnelly consistently adopted unreasonable positions throughout this litigation that had both immediate and systemic repercussions that inflated ProPharma's fees: opposing this case's transfer to the District of Delaware; refusing to answer proper deposition questions addressing the core issues in this case; filing additional meritless discovery motions; failing to conduct proper document discovery; and arguing against the plain meaning of the relevant contracts in this case.[71]

The *Mahani* defendant also baselessly disputed authorship of emails central to the parties' breach of contract dispute. Indeed, he presented this allegation throughout the litigation as

---

[67] *EDIX Media Grp., Inc. v. Mahani*, No. CIV.A. 2186-N, 2007 WL 417208, at *2 (Del. Ch. Jan. 25, 2007), *aff'd*, 935 A.2d 242 (Del. 2007).
[68] 2013 WL 1707877, at *3.
[69] *Id.* at *4.
[70] *Mahani*, 2007 WL 417208, at *2.
[71] *See*, *supra*, pp. 2-6; O'Beirne Decl. ¶ 5-17.

"smoking gun" evidence, but failed to provide any support for his claim.[72] This is remarkably similar to Donnelly contesting the authenticity of the June Removal Document. The *Mahani* court found that "[b]ecause defendant required plaintiff to establish, via the production of testimony or documentary evidence, every key issue of fact in the case, he cannot complain of the fees shifted upon him."[73] The same is true here. In fact, the supposed material dispute of fact regarding the June Removal Document was the central issue preventing the Court from fully granting summary judgment in ProPharma's favor.[74] Yet at trial, Donnelly offered no evidence rebutting the authenticity of that document and its confirmatory metadata, which was unrebutted.[75]

Here, as in *Mahani*, Donnelly took a "gamble" that his litigation strategy would achieve judgment on the merits at the risk of someday having to pay for the inflated attorneys' fees he caused ProPharma to incur. *Id.* Donnelly lost his unwise bet, and now has to pay up.

## II. PROPHARMA SHOULD BE AWARDED FEES AND COSTS PURSUANT TO THE COURT'S INHERENT EQUITABLE POWERS.

In addition to being entitled to an award of attorneys' fees and costs under the terms of the IEA, ProPharma is also entitled to recover those fees and costs incurred as the result of Donnelly's bad faith and vexatious conduct during the course of this litigation. Such fees are recoverable against Donnelly pursuant to this Court's inherent equitable authority.[76] Federal courts have inherent power to assess attorney's fees against a party where it "has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'"[77]

---

[72] *Mahani*, 2007 WL 417208, at *2.

[73] *Id.*

[74] D.I. 174 (Order granting in part and denying in part ProPharma's motion for summary judgment)

[75] O'Beirne Decl. at ¶ 10.

[76] A fee and cost award pursuant to the Court's inherent powers may be awarded jointly and severally against counsel and party. *See*, *e.g.*, *In re Elonex Phase II Power Mgmt. Litig.,* 279 F. Supp. 2d 521, 525 (D. Del. 2003).

[77] *In re Elonex*, 279 F. Supp. 2d at 525.

Courts have awarded sanctions pursuant to their inherent powers where parties asserted meritless claims and failed to timely withdraw them. That is what Donnelly did here, and a fees and costs award should be the consequence he faces. The evidence that pre-dates the complaint confirms that Donnelly, ProPharma, and third parties all knew that Donnelly was removed from the Board in 2019. This same evidence was relied upon by ProPharma at trial and led to a swift defense verdict from the jury. But ProPharma put Donnelly on notice that his claims lacked any basis long before trial.[78] Donnelly should have voluntarily dismissed his case at that time because "[w]hen it becomes apparent that discoverable evidence will not bear out the claim, the litigant and his attorney have a duty to discontinue their quest."[79] Therefore, an award of is warranted because "plaintiff maintained a meritless claim after receiving notice that it was without foundation."[80]

And there is ample evidence to conclude that the claims were brought for an improper purpose. Among other indicia, this is the second lawsuit filed by Donnelly that is aimed at ProPharma's former owner, Linden.[81] Donnelly's ulterior motive was also adduced at trial. In particular, Tony Davis detailed a phone conversation that occurred several months before Donnelly filed this lawsuit, in which Donnelly stated, "[y]ou know it's America and we have a jury system and 5 percent of the time you can convince a jury of anything."[82] Therefore, as set forth in the preceding paragraphs, there were multiple indicators that Donnelly filed his claims in bad faith.

"When a claim is advocated despite the fact that it is patently frivolous or *where a litigant*

---

[78] *See supra* p. 3; O'Beirne Decl. ¶ 7.
[79] *Avirgan v. Hull*, 932 F.2d 1572, 1582 (11th Cir. 1991).
[80] *Albert v. Edward J. DeBartolo Corp.*, 999 F.2d 539 (6th Cir. 1993)
[81] O'Beirne Decl. ¶ 3 n.2.
[82] D.I. 263 at 938:10-12.

***continues to pursue a claim in the face of an irrebuttable defense***, bad faith can be implied."[83] There are *at least* two instances where irrefutable evidence surfaced during discovery that entirely undercut Donnelly's claims. The first instance occurred when ProPharma produced the June Removal Document in summer 2022. Donnelly had already disclosed his requirements for the acceptable form and content for his written removal when he previously rejected the September Removal Document.[84] Since the June Removal Document met Donnelly's requirements, he baldly claimed the document was fabricated. That assertion was quickly refuted when Stein Mitchell emailed Donnelly's attorneys confirming that metadata was produced in connection the document, and even attached the native email.[85] But because Donnelly's entire lawsuit depended on his claim that there was no valid document removing him from the Board, Donnelly continued to baselessly assert that it was fabricated through trial.[86]

Another example of irrefutable evidence surfaced during Donnelly's deposition when he conceded that the vast majority of the shares providing the basis for his damages demand had not vested as of Fall 2019 under the terms of the IEA.[87] But all along, Donnelly claimed that a liquidity event could have occurred before ProPharma's sale, which would have been the only argument for him to collect on his performance shares if he was removed before ProPharma's sale. His argument for full vesting in 2019 (the value of which somehow eclipsed the value a year later at ProPharma's

---

[83] *Loftus v. Se. Pa. Transp. Auth.*, 8 F. Supp. 2d 458, 461 (E.D. Pa. 1998), *aff'd*, 187 F.3d 626 (3d Cir. 1999), *cert denied*, 120 S. Ct. 581 (1999). Moreover, "[u]nder § 1927, even if a lawsuit was initially filed in good faith, sanctions may be imposed on an attorney for all costs and fees incurred after the continuation of the suit which is deemed to be in bad faith." *Boykin v. Bloomsburg Univ. of Pa.*, 905 F.Supp. 1335, 1347 (M.D. Pa. 1995). *See also Murphy v. Hous. Auth. And Urb. Redevelopment Agency of City of Atl. City*, 51 F. App'x 82, 83 (3d Cir. 2002).
[84] *See supra* p. 16.
[85] O'Beirne Decl. ¶ 10 Decl. Ex. A-6 (Sept. 14, 2022 R. Gilmore email to McGuireWoods).
[86] O'Beirne Decl. ¶ 10.
[87] O'Beirne Decl. ¶ 11, Decl. Ex. A-7 at 222:9-12237:4-22; 239:5-13 (Excerpts of Dep. Tr.)

sale), moreover, was the reason Donnelly retained an expert (which ProPharma paid enormous attorney and expert fees to rebut).[88] Courts have awarded sanctions when, as here, plaintiffs have failed to withdraw claims following deposition admissions rendering those claims impossible to succeed under the law.[89] Donnelly "should have accepted the facts as they developed and withdrawn the [] claim once he realized that he had no factual support for same."[90] Instead, he forced ProPharma to spend substantial time and money defending against his baseless claims (not to mention forcing the Court, its personnel, and the jury, to waste their time and resources as well). Awarding fees and costs against him is an entirely appropriate and just result for his misconduct.

## **CONCLUSION**

For the reasons stated herein and in the accompanying Motion and Declarations of Philip O'Beirne and Susan Cohen, ProPharma respectfully requests that this Court issue an Order requiring Donnelly to pay ProPharma $3,665,288.86 in attorney's fees and costs.

Dated: July 7, 2023

OF COUNSEL:

Jonathan E. Missner
Robert B. Gilmore
Philip J. O'Beirne
Kevin L. Attridge
Samantha P. Christensen
STEIN MITCHELL BEATO &
MISSNER, LLP
901 15th Street NW, Suite 700
Washington, DC 20005
(202) 737-7777 – Telephone

RICHARDS, LAYTON & FINGER, P.A.

By: */s/ Susan Hannigan Cohen*
Susan Hannigan Cohen (#5342)
Katharine L. Mowery (#5629)
John M. O'Toole (#6448)
920 North King Street
Wilmington, DE 19801
(302) 651-7700 – Telephone
Hannigan@rlf.com
Mowery@rlf.com
OToole@rlf.com

---

[88] *See* O'Beirne Decl ¶ 20.
[89] *See Shackelford v. Courtesy Ford, Inc.*, 96 F. Supp. 2d 1140, 1145 (D. Colo. 2000) (awarding sanctions where plaintiff's wrongful termination claim was rendered baseless by her admission that she had signed contractual disclaimers and that no one promised her continued employment).
[90] *Wise v. Washington Cnty.*, No. CIV.A. 10-1677, 2015 WL 1757730, at *22 (W.D. Pa. Apr. 17, 2015) (internal citations and quotation removed).

jmissner@steinmitchell.com
rgilmore@steinmitchell.com
pobeirne@steinmitchell.com
kattridge@steinmitchell.com
schristensen@steinmitchell.com

*Attorneys for Defendant ProPharma Group
Topco, LLC*