**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

PATRICK K. DONNELLY,

        *Plaintiff,*

    v.

PROPHARMA GROUP TOPCO, LLC,

        *Defendant.*

C.A. 21-cv-00894-MAK

## OPPOSITION TO DEFENDANT PROPHARMA GROUP TOPCO, LLC'S MOTIONS FOR ATTORNEYS' FEES AND COSTS

# TABLE OF CONTENTS

**Page(s)**

INTRODUCTION ................................................................................................................ 1

ARGUMENT ...................................................................................................................... 2

I.    SECTION 17 OF THE IEA IS NOT A "PREVAILING PARTY" PROVISION ............ 2

II.   PROPHARMA HAS FAILED TO PROVIDE ANY OTHER BASIS
      WARRANTING DEVIATION FROM THE "AMERICAN RULE" ............................... 6

      A.    Donnelly's Claims Were Asserted In Good Faith .................................................. 7

      B.    None Of Propharma's Other Arguments Demonstrate Bad  Faith ....................... 10

III.  PROPHARMA'S SECTION 1927 MOTION FAILS BECAUSE
      MCGUIREWOODS DID NOT ENGAGE IN BAD-FAITH MISCONDUCT .............. 12

IV.   PROPHARMA'S COUNSEL FEES AND COSTS ARE UNREASONABLE .............. 16

CONCLUSION ................................................................................................................. 20

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Albert v. Edward DeBartolo Corp.*,
   999 F.2d 539 (6th Cir. 1993) (TABLE) ...................................................................14

*Arbitrium (Cayman Islands) Handels AG v. Johnston*,
   705 A.2d 225 (Del. Ch. 1997).................................................................................6

*Atkins v. Fischer*,
   232 F.R.D. 116 (D.D.C. 2005)...............................................................................10

*Baker Indus. Inc. v. Cerberus Ltd.*,
   764 F.2d 204 (3d Cir. 1984)...................................................................................13

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)...............................................................................................11

*Boykin v. Bloomsburg Univ. of Penn.*,
   905 F. Supp. 1335 (M.D. Pa. 1995) .......................................................................14

*Braga Inv. & Advisory, LLC v. Yenni*,
   2023 WL 3736879 (Del. Ch. May 31, 2023) ...........................................................3

*Campbell v. Royal Bank Supp. Exec. Ret. Plan*,
   2022 WL 17819804 (E.D. Pa. Dec. 20, 2022)........................................................17

*Choike v. Slippery Rock Univ.*,
   2010 WL 4614610 (W.D. Pa. Nov. 5, 2010) ..........................................................18

*Christiansburg Garment Co. v. Equal Emp. Opportunity Comm'n*,
   434 U.S. 412 (1978)...............................................................................................10

*Clemens v. N.Y. Cent. Mut. Fire Ins. Co.*,
   903 F.3d 396 (3d Cir. 2018)..............................................................................17, 20

*Coalition to Save Our Children v. State Bd. of Educ. of State of Del.*,
   901 F. Supp. 824 (D. Del. 1995).......................................................................16, 18

*Condo. Ass'n v. Rehoboth Marina Ventures, LLC*,
   2019 WL 6770045, at *2-4 (Del. Ch. Dec. 2, 2019)..................................................4

*Copeland v. Marshall*,
   641 F.2d 880 (D.C. Cir. 1980) ...............................................................................20

*Cumberland Farms, Inc. v. Lexico Enters., Inc.*,
   2012 WL 526716 (E.D.N.Y. Feb. 16, 2012)............................................................ 5-6

*Deere & Co. v. Exelon Generation Acqs., LLC*,
   2016 WL 6879525 (Del. Super. Nov. 22, 2016).........................................................3

*Donnelly v. ProPharma Grp. Topco LLC*,
   2022 WL 18007351 (D. Del. Dec. 30, 2022)..............................................................8

*E. Bay Chevrolet v. N.L.R.B.*,
   659 F.2d 1006 (9th Cir. 1981) ..................................................................................8

*In re Elonex Phase II Power Mgmt. Litig.*,
   279 F.Supp.2d 521 (D. Del. 2003)...........................................................................14

*Ford v. Temple Hosp.*,
   790 F.2d 342 (3d Cir. 1986).....................................................................................13

*GN Netcom, Inc. v. Plantronics, Inc.*,
   2018 WL 273649 (D. Del. Jan. 3, 2018),............................................................11, 15

*Goodrich v. E.F. Hutton Grp., Inc.*,
   681 A.2d 1039 (Del. 1996) ........................................................................................6

*Grider v. Keystone Health Plan Cent., Inc.*,
   580 F.3d 119 (3d Cir. 2009).....................................................................................12

*Hairston v. Prince George's Cnty.*,
   2012 WL 5995451 (D. Md. Nov. 28, 2012) ..............................................................20

*Hoban v. Unicity Int'l, Inc.*,
   285 P.3d 766 (Utah 2012) ..........................................................................................5

*LaSalle Nat. Bank v. First Conn. Holding Grp., LLC.*,
   287 F.3d 279 (3d Cir. 2002)......................................................................... 12-13, 16

*Lawson v. State*,
   91 A.2d 544 (Del. 2014) .............................................................................................6

*Lewis v. Smith*,
   480 F. App'x 696 (3d Cir. 2012) ..............................................................................13

*Live Face on Web, LLC v. Integrity Sols. Grp., Inc.*,
   2020 WL 1304553 (D. Colo. Mar. 19, 2020) ...........................................................15

*Maldonado v. Houstoun*,
   256 F.3d 181 (3d Cir. 2001)......................................................................................17

*Mary v. Sch. Dist. of Phila.*,
  2009 WL 185426 (E.D. Pa. Jan. 22, 2009) ........................................................................18

*Mattern & Assoc, LLC v. Seidel*,
  678 F. Supp. 2d 256 (D. Del. 2010) ................................................................................16

*Morgan v. Covington Twp.*,
  563 F. App'x 896 (3d Cir. 2014) ......................................................................................7

*Murfey v. WHC Ventures, LLC*,
  2022 WL 214741 (Del. Ch. Jan. 25, 2022) .....................................................................3

*Murphy v. Hous. Auth. & Urban Redev. Agency of City of Atl. City*,
  158 F. Supp. 2d 438 (D.N.J. 2001) ............................................................................ 14-15

*Novartis Pharms. Corp. v. Par Pharm., Inc.*,
  2014 WL 1266320 (D. Del. Mar. 26, 2014) .....................................................................6

*In re: Orthopedic Bone Screw Prods. Liab. Litig.*,
  193 F.3d 781 (3d Cir. 1999) ............................................................................................15

*Pac. Ins. Co. v. Eaton Vance Mgmt.*,
  369 F.3d 584 (1st Cir. 2004) ............................................................................................3

*Packet Intelligence LLC v. NetScout Sys., Inc.*,
  2019 WL 1642714 (E.D. Tex. Apr. 15, 2019) .................................................................11

*Patterson v. Averbeke*,
  2013 WL 6731987 (E.D. Pa. Dec. 20, 2013) ...................................................................10

*In re Prosser*,
  777 F.3d 154 (3d Cir. 2015) ............................................................................................14

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
  278 F.3d 175 (3d Cir. 2002) ...................................................................................... 13-14

*Robinson v. De Niro*,
  614 F. Supp. 3d 73 (S.D.N.Y. 2022) ...............................................................................10

*Rode v. Dellarciprete*,
  892 F.2d 1177 (3d Cir. 1990) ..........................................................................................18

*Schlacher v. Law Offices of Phillip J. Rotche & Assocs., P.C.*,
  574 F.3d 852 (7th Cir. 2009) ...........................................................................................20

*Senior Hous. Cap., LLC v. SHP Senior Hous. Fund, LLC*,
  2013 WL 1955012 (Del. Ch. May 13, 2013) ............................................................... 3-4

iv

*Shappley v. Amedica Corp.*,
  2013 WL 12250136 (D. Utah Sept. 5, 2013) ........................................................................5

*Silverado Modjeska Recreation & Park Dist. v. Cty. of Orange*,
  197 Cal. App. 4th 282 (2011) ............................................................................................4

*Tenafly Eruv Ass'n, Inc. v. Borough of Tenafly*,
  195 Fed. App'x. 93 (3d Cir. 2006)......................................................................................18

*Toy v. Plumbers & Pipefitters Local Union No. 74 Pension Plan*,
  317 Fed.App'x. 169 (3d Cir. 2009)................................................................................9, 13

*Tucker v. City of New York*,
  704 F. Supp. 2d 347 (S.D.N.Y. 2010)................................................................................20

*W.L. Gore & Assocs., Inc. v. C.R. Bard, Inc.*,
  231 F. Supp. 3d 19 (D. Del. 2017).....................................................................................14

*Washington v. Phila. Cnty. Ct. of Common Pls.*,
  89 F.3d 1031 (3d Cir. 1996)......................................................................................... 17-18

*Williams v. Giant Eagle Markets, Inc.*,
  883 F.2d 1184 (3d Cir. 1989).............................................................................................16

*Young v. W. Coast Indus. Relations Ass'n, Inc.*,
  144 F.R.D. 206 (D. Del. 1992) ............................................................................................6

## STATUTES

28 U.S.C. § 1927................................................................................................... passim

35 U.S.C. § 285..............................................................................................................11

UTAH CODE ANN. § 78B-5-826...........................................................................................5

## OTHER AUTHORITIES

Black's Law Dictionary 201 (6th ed. 1990)........................................................................3

Fed. R. Civ. P. 11 ........................................................................................................7, 10

## **INTRODUCTION**

From its inception, this case has been about one issue: whether Defendant ProPharma Group Topco, LLC ("ProPharma") properly removed Plaintiff Patrick Donnelly ("Donnelly") from ProPharma's Board of Managers.  Donnelly filed a complaint alleging in good faith that ProPharma had failed to comply with various procedural requirements relating to his removal.  ProPharma answered that complaint (after amendment) and the case proceeded through discovery.  At the conclusion of discovery, the Court—considering the same evidence that ProPharma now claims establishes Donnelly's bad faith—***denied*** ProPharma's motion for summary judgment in December 2022, and the case proceeded to trial.  And after re-hearing that evidence at trial, the Court ***denied*** ProPharma's motion for a directed verdict.  Each of these rulings required the Court to conclude that Donnelly had presented genuine and triable disputes of material fact.  The jury found in ProPharma's favor, but winning at trial was not enough for ProPharma.  It now seeks to turn the "American Rule" on its head and impose the extreme and rare remedy of forcing Donnelly, and Donnelly's lead counsel, McGuireWoods, to pay more than $3.6 million in attorneys' fees.

ProPharma first seeks its fees from Donnelly.  D.I. 269.  It bases its motion against Donnelly on a strained and erroneous reading of Section 17 of the parties' Incentive Equity Agreement (the "IEA").  D.I. 271 at 7-9.  But Section 17 is not a prevailing party provision.  Rather, its explicit and unambiguous terms permit a party to recover fees only when that party both alleges and proves a breach.  ProPharma did neither.  Aware that the IEA offers no grounds to recoup its fees, ProPharma next requests that the Court exercise its inherent authority to shift fees, alleging bad faith conduct by Donnelly.  But the "evidence" ProPharma relies upon is, at best, conclusory, and mischaracterizes the record to suggest bad faith merely because Donnelly's claims did not prevail.  The purported conduct ProPharma cites is woefully insufficient to justify an award of fees under

Third Circuit law.  Moreover, the Court's denial of ProPharma's dispositive motions—which necessarily rested on a determination, based on the same evidence and allegations ProPharma now impugns, that Donnelly had presented a good faith dispute sufficient to present to the jury—squarely contradicts any finding of bad faith.

ProPharma's motion seeking to foist its fees on McGuireWoods pursuant to 28 U.S.C. § 1927 ("Section 1927") is even more brazen.  D.I. 271.  Section 1927 sanctions against counsel are a rare remedy reserved only for egregious, willfully bad faith conduct.  ProPharma identifies nothing approaching this high standard.  Indeed, in stark contrast to the extreme conduct necessary under Section 1927, the Court thanked counsel for both parties for their professional and "fine" trial arguments and deportment.[1]  ProPharma's invocation of Section 1927 to turn a jury verdict in its favor into a finding of egregious bad faith conduct by counsel abuses the statute and its limited purpose, and should be soundly rejected.  The Court should deny both motions.

## ARGUMENT

## I.    SECTION 17 OF THE IEA IS NOT A "PREVAILING PARTY" PROVISION

Section 17 of the IEA states as follows:

> The parties hereto (and the Linden Investors as third-party beneficiaries) shall be entitled to enforce their rights under this Agreement specifically, to recover damages and costs (including attorney's fees) ***by reason of any breach of any provision of this Agreement*** and to exercise all other rights existing in their favor.

(emphasis added).  The provision contains no reference to a "prevailing party."  Nor does it provide for fees incurred in "defending" against breach claims or arising out of mere "allegations" of a breach.  Rather, Section 17 provides for fee-shifting in the limited circumstance where a party both

---

[1] *See* Trial Tr. 1361:23-1362:7 ("THE COURT: I want to thank you all collectively and your teams for your fine work ….  I'm going to come down and thank each of you personally and wish you well.").

(a) alleges a breach of the IEA *and* (b) successfully proves the breach.  Accordingly, ProPharma's attempt to characterize Section 17 as a two-way "prevailing party" provision is wrong.  *See Braga Inv. & Advisory, LLC v. Yenni*, 2023 WL 3736879, at *18 (Del. Ch. May 31, 2023).[2]

Under Delaware law, "[a]fee-shifting provision must be a ***clear and unequivocal agreement*** triggered by a dispute over a party's failure to fulfill obligations under the contract." *Id.* (internal quotation marks and citation omitted) (emphasis added).  "It must include specific language, ***such as any reference to prevailing parties***, a hallmark term of fee-shifting provisions." *Id.* (emphasis added).  "This requirement is observed with particular obedience in interpreting cost-shifting provisions between litigants, so that first-party cost-shifting does not swallow the American Rule." *Murfey v. WHC Ventures, LLC*, 2022 WL 214741, at *2 (Del. Ch. Jan. 25, 2022) (quotation marks and citations omitted); *see also Deere & Co. v. Exelon Generation Acqs., LLC*, 2016 WL 6879525, at *1 (Del. Super. Nov. 22, 2016) (indemnification provisions must specifically address fee-shifting, to prevent "swallow[ing] the American Rule"); *Senior Hous. Cap., LLC v. SHP Senior Hous. Fund, LLC*, 2013 WL 1955012, at *45 (Del. Ch. May 13, 2013) ("Here, there is no specific language … that covers fee-shifting.  Therefore, I will not interpret the provision in an expansive way that would be inconsistent with the American Rule.").

Section 17 of the IEA is a narrowly drafted one-way provision.  It includes "by reason of" language making clear that fee-shifting may occur only if a "breach" of the Agreement is the ***cause-in-fact*** of the attorneys' fees.  *See Pac. Ins. Co. v. Eaton Vance Mgmt.*, 369 F.3d 584, 589 (1st Cir. 2004) ("[W]e consider the language unambiguous: ***'by reason of' means 'because of,'*** Black's Law Dictionary 201 (6th ed. 1990), and thus necessitates an analysis at least approximating a 'but-for' causation test.").  The only breach that has ever been at issue is

---

[2] The IEA is governed by Delaware law.  IEA § 13.

ProPharma's breach alleged by Donnelly.  That claim ultimately failed at trial.  Neither the jury nor the Court found that any other breach occurred.  Moreover, ProPharma has never claimed (nor could it) that Donnelly's initiation of this lawsuit was, itself, a breach of the IEA.[3]  Absent a finding of a breach, there can be no fee-shifting under Section 17.

Delaware courts have addressed this issue and found that when a fee-shifting provision requires a "breach" as a prerequisite, the breach must be conclusively proven.  In *Marina View Condo. Ass'n v. Rehoboth Marina Ventures, LLC*, the Delaware Court of Chancery, analyzing a contract governed by Delaware law, refused to award fees where the moving party's victory in the underlying litigation was not predicated upon breach of contract, but rather prospective enforcement of contractual restrictions through injunction.  C.A. No. 2017-0217-PWG, 2019 WL 6770045, at *2-4 (Del. Ch. Dec. 2, 2019), *aff'd*, 244 A.3d 1007 (Del. 2020) (Table); *see also id.* at *3 ("[I]t is not reasonable to interpret [the provision at issue] to mean that fee-shifting would occur when there was a [mere] allegation of a breach, ***unless there was also a court determination based upon evidence that a breach had occurred***.") (brackets and emphasis added).  The party seeking fees in that case had brought suit to enforce its rights under the contract, and succeeded in doing so by obtaining injunctive relief.  But without having also proven a prior breach, it was not entitled to fees.  *Id*; *see also Silverado Modjeska Recreation & Park Dist. v. Cty. of Orange,* 197 Cal. App. 4th 282, 312 (2011) ("Because the attorney fee provision … authorized the recovery of fees and costs incurred only as a result of the other party's breach …, the party seeking attorney fees and costs was required to plead and prove the other party's breach of the agreement as a prerequisite to being entitled to recover its attorney fees and costs.").

---

[3] ProPharma's only attempt to introduce a breach claim into the lawsuit was its failed effort to amend its answer to add a material breach affirmative defense.  The Court denied ProPharma's request to add that defense (*see* D.I. 185), and the purported "material breach" was never litigated.

The plain language of Section 17 of the IEA makes clear the same logic applies here. "[T]o recover damages and costs (including attorneys' fees)," those damages and costs must be "by reason of a[] breach" of the agreement. IEA § 17. The Utah and New York cases upon which ProPharma principally relies—*Shappley v. Amedica Corp.*, 2013 WL 12250136, at *10 (D. Utah Sept. 5, 2013), and *Cumberland Farms, Inc. v. Lexico Enters., Inc.*, 2012 WL 526716, at *3 (E.D.N.Y. Feb. 16, 2012)—are not based on Delaware law and are easily distinguished.

In *Shappley*, the plaintiff alleged he was improperly terminated in violation of his employment agreement. The defendant countered the plaintiff's claim by successfully alleging that removal was based on the plaintiff's breach of the contract. *Shappley*, 2013 WL 12250136, at *10 ("Shappley's possession of pornographic material, and a loaded handgun in Amedica's office **constitute material breaches** of the Employment Agreement ....") (emphasis added). Of equal significance, the contract at issue was governed by Utah law, and the court's decision rested, in part, on a Utah statute **permitting** the fees. *Id.* (citing Utah Code Ann. § 78B-5-826). That statute—Utah's "reciprocal attorney's fees statute"—expressly permits a court to "award fees to either party that prevails in a civil action ... based upon a written contract ... when the provisions of the ... contract allow at least one party to recover attorney fees." Utah Code Ann. § 78B-5-826; *see also Hoban v. Unicity Int'l, Inc.*, 285 P.3d 766 (Utah 2012). Delaware has no such statute and *Shappley* is inapplicable.

In *Cumberland Farms*, the parties agreed to an expansive fee-shifting provision: "Lessee shall reimburse Lessor for all reasonable costs ... that Lessor incurs in enforcing its rights and remedies under this Lease." *Cumberland Farms*, 2012 WL 526716, at *3. Unlike Section 17 of the IEA, the relevant provision (governed by New York law) contained no requirement that the fees incurred be caused by a breach of contract. The court held that the litigation "concerned [the

Lessor's] 'right' to reasonably withhold consent to a proposed sale and assignment of the franchise[,]" and that its actions in defending against lawsuits challenging its refusal to consent were attempts to enforce that contractual right. *Id.*, at \*3. The Lessor's rights to recover fees logically followed. Unlike the IEA in this case, the provision in *Cumberland Farms* involved no but-for causation requirement that the fees sought first have been incurred "by reason of" a breach.

Section 17 of the IEA requires that a party both allege and prove a breach. ProPharma did neither. Accordingly, the IEA does not entitle ProPharma to its fees and its motions are meritless.

## II.   PROPHARMA HAS FAILED TO PROVIDE ANY OTHER BASIS WARRANTING DEVIATION FROM THE "AMERICAN RULE"

Lacking a valid contractual basis for a fee award, ProPharma next asks the Court to exercise its inherent authority. While a federal court has such power, using it to impose "sanctions … must be undertaken sparingly." *Novartis Pharms. Corp. v. Par Pharm., Inc.*, 2014 WL 1266320, at \*2 (D. Del. Mar. 26, 2014). "[A] prerequisite for the exercise of the Court's inherent power to sanction is a finding of bad faith conduct." *Young v. W. Coast Indus. Relations Ass'n, Inc.*, 144 F.R.D. 206, 217 (D. Del. 1992), which ProPharma must establish by "clear evidence."[4]

There is nothing about this case that rises to the level of bad faith. Donnelly filed this action expecting that he would prevail—as evidenced by his detailed complaint, his opposition to ProPharma's summary judgment motion, his expert report, and his presentation of evidence at trial. While Donnelly's factual allegations were hotly contested, this Court determined ***twice*** on a

---

[4] Delaware courts follow the "American Rule" that "prevailing litigants are responsible for the payment of their own attorney's fees." *Goodrich v. E.F. Hutton Grp., Inc.,* 681 A.2d 1039, 1044 (Del. 1996). The "bad faith exception" to this rule is a "quite narrow exception … applied in only the most egregious instances of fraud or overreaching." *Arbitrium (Cayman Islands) Handels AG v. Johnston,* 705 A.2d 225, 231 (Del. Ch. 1997), *aff'd,* 720 A.2d 542 (Del. 1998). "[A]nd the party seeking to invoke that exception must demonstrate ***by clear evidence*** that the party from whom fees are sought … acted in ***subjective bad faith***." *Lawson v. State,* 91 A.2d 544, 552 (Del. 2014) (emphasis added).

post-discovery record that they were subject to reasonable dispute.  Although Donnelly ultimately did not prevail at trial, he, like all good-faith litigants, was entitled to his day in court.

Significantly, ProPharma does not identify a bad faith motive or purpose for Donnelly's pursuit of his claims.  Instead, it points to several actions in the course of the litigation that, it argues, amount to bad faith conduct, specifically that: (a) Donnelly refused to dismiss his initial suit in the District of South Carolina; (b) Donnelly made purportedly unfounded allegations in his original Complaint; (c) Donnelly ignored a Rule 11 letter and draft motion sent by ProPharma's counsel; (d) Donnelly purportedly engaged in discovery abuse; (e) Donnelly asserted purportedly baseless claims; (f) Donnelly "switched" arguments at trial; and (g) the jury deliberated only briefly and ruled for ProPharma.  D.I. 271 at 2-5.  None of these, individually or collectively, constitute evidence of bad faith—far from it—and none warrant a fee award.

### A.    Donnelly's claims were asserted in good faith.

ProPharma's primary justification to depart from the American Rule is its contention that Donnelly's claims were baseless.  But the history of this case squarely rebuts that contention.  Moreover, even if the Court were to agree that Donnelly's claims were weak—which the record does not support—ProPharma's motion against Donnelly would still be meritless, because "unsuccessful and even weak claims and arguments on appeal are not the same as frivolous claims or arguments."  *Morgan v. Covington Twp.*, 563 F. App'x 896, 903 (3d Cir. 2014).

ProPharma contends that "evidence that pre-dates the complaint confirms that Donnelly, ProPharma, and third parties all knew that Donnelly was removed from the Board in 2019" (D.I. 271 at 17), but ProPharma presented that ***very same evidence*** to the Court in its motion for summary judgment.  Regardless of how ProPharma now wants to characterize that evidence, at summary judgment the Court saw triable issues of fact requiring credibility determinations:

> Although ProPharma characterizes the second removal document as a "clerical mistake" and an "unnecessary" "redundant document" which is "irrelevant[,]" its existence and the fact it does not identify a June 2019 removal date-but instead identifies an August 31, 2019 removal date [in all repurchase offers made to Mr. Donnelly]—raises questions as to the credibility of the first undated removal document ….

*Donnelly v. ProPharma Grp. Topco LLC*, 2022 WL 18007351, at *3 (D. Del. Dec. 30, 2022).[5]

Indeed, the Court explicitly stated that there were "genuine issues of material fact including when [ProPharma] purported to remove [Donnelly] from the Board; whether [ProPharma] validly removed [Donnelly] from the Board; whether [Donnelly] resigned or acquiesced to a removal from the Board; and whether [Donnelly] accepted payment for all of his vested incentive equity shares." *Id.*, at *1. At trial, the Court held issues of material fact remained when it denied ProPharma's motion for a directed verdict at the conclusion of Donnelly's case-in-chief. These rulings, finding genuine, colorable issues of fact on a full presentation of the evidence, contradict any contention now that Donnelly's claims were ever frivolous, or that he brought them in bad faith.

Donnelly presented multiple good faith, genuine disputes in support of his claims. Among other things, Donnelly presented evidence at trial to show that he had not received notice of either of ProPharma's two attempted removals (a) until **September 23, 2020** for the September 3, 2019 removal letter and (b) until ***several months after that*** for the undated removal letter attached to a June 27, 2019 email. *See* D.I. 259-1, Trial Tr. 353:18-25; 381:15-382:4. The jury also heard evidence from ProPharma admitting that Donnelly could not have received contemporary notice, at least as to the undated removal letter, because in an August 20, 2019 email, ProPharma's chairman, Michael Farah, used forward-looking language to confirm that Donnelly had not been

---

[5] *Cf. E. Bay Chevrolet v. N.L.R.B.*, 659 F.2d 1006, 1011 (9th Cir. 1981) (affirming denial of fee application, holding that a "defense like the one involved in this case, which rests upon a credibility determination, is not frivolous.").

removed from the Board.  *See* D.I. 259-2, Trial Ex. 78.  Moreover, ProPharma's allegation that Donnelly or his counsel maintained at trial that the June 27, 2019 purported removal document was "fabricated" is untrue.  Donnelly merely maintained that there was other evidence indicating that ProPharma did not treat him as having been removed in June 2019, and, given the lack of a date on the document, "we don't know when that alleged June document was created."  Trial Tr. 185:22-23.  In short, Donnelly put ProPharma to its proof.  There were several contested issues of fact and law that necessitated trial.  None of these disputes were frivolous or asserted in bad faith.

ProPharma's characterization of the damages issue is likewise distorted.  ProPharma claims that Donnelly "conceded" that the majority (but not all) of the shares on which he based his damages claim had not vested as of Fall 2019, but also contended "all along, … a liquidity event could have occurred before ProPharma's sale."  D.I. 271 at 18.  ProPharma seems to argue that Donnelly's positions were inconsistent, and that he should have walked away from his damages theory once he "acknowledged" that certain shares had not vested in the fall of 2019.  ProPharma contorts both the import of Donnelly's supposed "concession" and his damages theory.  Contrary to ProPharma's assertions, Donnelly identified his expert and completed discovery ***before*** the Court made its liquidity event ruling.  After that ruling, Donnelly narrowed the focus of his damages.  Moreover, these arguments were unaffected by the immaterial fact that some of the shares were not vested in August 2019, as Donnelly consistently maintained that he was not properly removed in August 2019.  Donnelly presented his arguments in good faith, including by raising the issue of conflicting wording regarding the timing of a liquidity event.  *See* D.I. 168, at 3-4, 17.  That ProPharma disputed Donnelly's claims is the nature and reason for litigation.  At bottom, ProPharma's only evidence of Donnelly's supposed "bad faith" is that it ultimately won at trial.  Donnelly "should not be found culpable for taking a losing position in the litigation."  *Toy*

*v. Plumbers & Pipefitters Local Union No. 74 Pension Plan*, 317 Fed.App'x. 169, 172 (3d Cir. 2009) (quotation marks omitted).

**B.      None of ProPharma's other arguments demonstrate bad faith.**

None of the other actions identified by ProPharma support a finding of bad faith:

- **Refusal to Dismiss the South Carolina Complaint**:  With regard to Donnelly's initial South Carolina filing, ProPharma ignores Donnelly's good-faith arguments challenging the application of the venue provision in the LLC Agreement, including that: (a) it did not apply because his claims were rooted in the ProPharma Offer Letter and the IEA, neither of which contained a venue provision; and (b) even if it did apply, it was permissive and not exclusive, as required under South Carolina law.  D.I. 28 at 2.  Both of these arguments find support under the law.  *See id.* at 1-2.  The South Carolina court ultimately disagreed with Donnelly's position, but that does not render Donnelly's actions bad faith.

- **ProPharma's "Moribund" Rule 11 Letter**:  ProPharma's resort to its prior (and baseless) Rule 11 letter is meaningless, as it never filed a Rule 11 motion.  Rather, it served Donnelly with the letter in response to the initial complaint but, rather than file a motion, elected to answer Donnelly's amended complaint and proceed to discovery.  *See* D.I. 63.  ProPharma's effort to intimidate Donnelly from asserting his claims cannot serve as a basis for sanctions where it lacked the conviction to pursue a motion.  *See, e.g.*, *Atkins v. Fischer*, 232 F.R.D. 116, 140 (D.D.C. 2005) (attempt to resurrect a "moribund" Rule 11 letter was untimely where plaintiff chose to respond to the pleading rather than seek sanctions following the letter); *see also Robinson v. De Niro*, 614 F. Supp. 3d 73, 81 (S.D.N.Y. 2022), *report and recomm. adopted*, 2022 WL 7091518 (S.D.N.Y. Oct. 12, 2022) (denying Rule 11 motion in part as untimely where defendants waited to file motion almost two years after filing of the complaint).

- **Allegations in the Initial Complaint**:  ProPharma ignores Donnelly's amended complaint, *see* D.I. 61, which the Court later characterized as "very well done"[6] and which ProPharma answered.  Even if Donnelly had not amended his complaint or the complaint were not "well done," filing a pleading containing allegations that are not borne out by trial evidence does not make the pleading frivolous or filed in bad faith.  *See, e.g.*, *Christiansburg Garment Co. v. Equal Emp. Opportunity Comm'n*, 434 U.S. 412, 421–22 (1978) ("[I]t is important that a district court resist the understandable temptation to engage in post hoc reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation."); *Patterson v. Averbeke*, 2013 WL 6731987, at *2 (E.D. Pa. Dec. 20, 2013) (denying defendant's Rule 11 motion after jury verdict; determining that, "while inadequate to support a jury verdict" the evidence

---

[6] *See* Trial Tr., 1243:11-12 ("THE COURT: … In fact, very well done in the complaint raised everything else it has raised including the failure of the board to address value ….").

plaintiff presented demonstrated that he "believed" in his claim, the claims were not frivolous, unreasonable, in bad faith, or pursued for the purpose of harassment).

- **Donnelly's "Discovery Abuse"**:  As evidence of "abuse," ProPharma cites (a) the Court's decision granting a second deposition of Donnelly, (b) the parties' dispute over search terms, and (c) an allegedly "meritless" motion to quash a third-party subpoena.  D.I. 271 at 4.  But ProPharma's self-serving characterizations ignore several critical facts.  As to Donnelly's second deposition, ProPharma already requested sanctions, which the Court denied.  D.I. 136 at 3.  Good-faith search term disputes, meanwhile, are typical.  ProPharma's request to compel document production arising from the search term dispute was likewise denied.  D.I. 136 at 2.  And Donnelly's "meritless" motion to quash was ***granted*** in part.  D.I. 136 at 1.  ProPharma's complaint is that the parties took conflicting discovery positions that, at times, required the Court to resolve.  That is typical of litigation, not indicia of bad faith.  *See Packet Intelligence LLC v. NetScout Sys., Inc.*, 2019 WL 1642714, at *3 (E.D. Tex. Apr. 15, 2019) (denying fee application under 35 U.S.C. § 285, explaining that "engaging in discovery disputes," among others, is not exceptional but, rather, typical of litigation.).

- **Donnelly's Trial Conduct**:  ProPharma accuses Donnelly of engaging in "a procedurally improper attempt at trial-by-ambush."  D.I. 271 at 4-5.  ProPharma claims that Donnelly "switch[ed] to new last-ditch alternative arguments at trial" by arguing: (a) that all of the Linden Investors' affiliates were required to sign Donnelly's removal papers; and (b) that board action was required to initiate Donnelly's removal under Section 5.3 of the LLC Agreement.  D.I. 270 at 3.  But Donnelly specifically stated in his amended complaint that not all affiliates or required parties signed the removal document.  ProPharma was always on notice of Donnelly's breach of contract claims, and it always knew that Section 5.2—the critical provision of the LLC Agreement regarding removal of board officers— could not be read in isolation but, rather, would require interpretation of other provisions of the LLC Agreement.  That Donnelly did not explain every factual and legal theory as to why ProPharma's conduct amounted to a breach in his amended complaint does not amount to bad faith.  Federal notice-pleading standards require only that a complaint "give the defendant fair notice of what the … claim is and the grounds upon which it rests."  *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson,* 355 U.S. 41, 47 (1957)).  That ProPharma's counsel apparently missed it does not show that Donnelly or his counsel acted in bad faith.

- **Speed of the Jury Verdict**:  ProPharma does not even try to explain how the actions of the jury can render Donnelly a bad-faith actor.  Rather, ProPharma concludes, without a single case citation in support, that a quick verdict is a sign of meritless and bad faith claims.  This Court has expressly rejected this position.  *See GN Netcom, Inc. v. Plantronics, Inc.,* 2018 WL 273649, at *7 (D. Del. Jan. 3, 2018), *aff'd in part, rev'd in part and remanded on other grounds,* 930 F.3d 76 (3d Cir. 2019) ("The Court does not agree that the length of the jury's deliberations 'demonstrates' the weakness of [the plaintiff's] case, nor the strength of [the defendant's] case.  Instead, the Court believes that this lawsuit raised triable

11

> disputes of fact, that were fairly and effectively tried by both sides, and that a properly and carefully instructed jury, aided by a simple and clear verdict form, efficiently resolved those disputes in a reasonable (though by no means the only reasonable) manner.").[7]

Again, nothing ProPharma relies on reflects bad faith. The Court should deny its motion.

## III.   PROPHARMA'S SECTION 1927 MOTION FAILS BECAUSE MCGUIREWOODS DID NOT ENGAGE IN BAD-FAITH MISCONDUCT

ProPharma's Section 1927 motion likewise fails. Section 1927 provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

Section 1927 fee awards are imposed only where the attorney has: "(1) multiplied proceedings; (2) unreasonably and vexatiously; (3) thereby increasing the cost of the proceedings; (4) with bad faith or with intentional misconduct." *LaSalle Nat. Bank v. First Conn. Holding Grp., LLC.*, 287 F.3d 279, 288 (3d Cir. 2002) (citation omitted). Such circumstances are rare, and the Court will exercise its power to sanction pursuant to Section 1927 "only in instances of a serious and studied disregard for the orderly process of justice." *LaSalle Nat. Bank*, 287 F.3d at 288 (citation omitted). Counsel's conduct must be of an "egregious nature, stamped by bad faith," and not simply a reflection of "misunderstanding, bad judgment, or well-intentioned zeal." *Grider v. Keystone Health Plan Cent., Inc.*, 580 F.3d 119, 142 (3d Cir. 2009) (quotation marks and citations omitted).

As the Third Circuit has repeatedly cautioned, the Court's power to shift fees under Section 1927 "necessarily carries with it the potential for abuse, and therefore the statute should be

---

[7] ProPharma's suggestion that Donnelly pursued his claims in bad faith because he believed that "5 percent of the time you can convince a jury of anything" hardly bears response. Donnelly denies ever making such a statement, but even assuming *arguendo* he held that belief, there is no basis to infer Donnelly would fabricate claims or spend the considerable money necessary to pursue them in bad faith.

construed narrowly and with great caution so as not to stifle the enthusiasm or chill the creativity that is the very lifeblood of the law." *Id.* at 289 (emphasis added); *see also Baker Indus. Inc. v. Cerberus Ltd.*, 764 F.2d 204, 216 n.4 (3d Cir. 1984) (cautioning courts against a broad reading of Section 1927, as aggressive fee awards would "dampen the legitimate zeal of an attorney in representing his client"). Accordingly, a fee award under Section 1927 for bad faith misconduct may be found "only in instances of a serious and studied disregard for the orderly process of justice." *Ford v. Temple Hosp.*, 790 F.2d 342, 347-48 (3d Cir. 1986). "Bad faith should not be lightly inferred, and counsel should be given significant leeway to pursue arguments on a client's behalf." *Lewis v. Smith*, 480 F. App'x 696, 699 (3d Cir. 2012). Counsel "should not be found culpable for taking a losing position in the litigation." *Toy v. Plumbers & Pipefitters Local Union No. 74 Pension Plan*, 317 Fed.App'x. 169, 172 (3d Cir. 2009) (quotation marks omitted).[8]

In support of the extraordinary relief it seeks, ProPharma does not identify any conduct specifically undertaken by McGuireWoods. Instead, it asserts generally that the grounds for awarding attorneys' fees against Donnelly "apply equally to his attorneys." D.I. 270 at 2. As explained above, Donnelly did not engage in bad faith. Neither did his counsel. *Hackman*, 932 F.2d at 243 (bad faith a necessary condition for sanctions under Section 1927). Certainly, ProPharma has identified no conduct demonstrating counsel's "serious and studied disregard for the orderly process of justice." *Ford*, 790 F.2d at 347-48. Far from it. ProPharma has not even attempted to identify an improper purpose or motive on Donnelly's or McGuireWoods' part. *See In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 278 F.3d 175, 188 (3d Cir. 2002)

---

[8] So sparingly is Section 1927 to be invoked that courts may still exercise their discretion to deny a fee award even if bad faith is shown. *Ford*, 790 F.2d at 347 ("a district court may, in its discretion, refuse an award of attorneys' fees even where it finds the existence of bad faith if, in balancing the equities, it nevertheless determines that an award in a particular case would not serve the interests of justice").

(bad faith may be found only where "the claims advanced were meritless, that counsel knew or should have known this, ***and*** that the motive for filing the suit was for an improper purpose such as harassment") (emphasis added).  There was none.[9]

The authorities ProPharma purports to rely upon are inapposite.  In those from the Third Circuit, the court imposed or affirmed fee-shifting only for extreme conduct by counsel, involving willfully unethical and deceptive misconduct.  *See, e.g.*, *In re Prosser*, 777 F.3d 154, 163 (3d Cir. 2015) (counsel made "bribery accusations" that, among other things, "show[ed] a desire to read nefarious motives into a relatively unremarkable event with no proof that the allegedly bribed witness had been influenced at all"); *In re Prudential Ins.*, 278 F.3d 175 (counsel filed numerous baseless emergency motions, as well as affidavits asserting that the court had engaged in *ex parte* communications, solely for purposes of embarrassing the judge); *W.L. Gore & Assocs., Inc. v. C.R. Bard, Inc.*, 231 F. Supp. 3d 19, 21-22 (D. Del. 2017) (counsel alleged "serious charges of misconduct involving an alleged conspiracy by multiple attorneys" and continued pursuing "those accusations even after its receipt and review of [opposing] counsel's unrebutted declarations"); *Boykin v. Bloomsburg Univ. of Penn.*, 905 F. Supp. 1335, 1347 (M.D. Pa. 1995) (counsel pursued defamation claim despite possessing no false or defamatory statements, and did so in a second lawsuit after initial claims were dismissed on the merits and notice from the court that the claims were barred); *In re Elonex Phase II Power Mgmt. Litig.*, 279 F.Supp.2d 521, 525 (D. Del. 2003) (counsel filed "facially meritless" motion after court expressly rejected the same grounds during a

---

[9] ProPharma cites an unpublished Sixth Circuit case, *Albert v. Edward DeBartolo Corp.*, 999 F.2d 539 (6th Cir. 1993) (TABLE), for the proposition that McGuireWoods can be sanctioned for maintaining a purportedly meritless claim after receiving notice of its lack of merit.  D.I. 270 at 3.  But the Sixth Circuit, unlike the Third Circuit, does not impose a requirement of bad faith for sanctions under Section 1927.  *See id.* at *5.  ("We have held that a court may assess fees against an attorney under section 1927 *in the absence of bad faith*.") (emphasis in original).

hearing and warned counsel its client was not acting in good faith). *Murphy v. Hous. Auth. & Urban Redev. Agency of City of Atl. City*, 158 F. Supp. 2d 438, 447 (D.N.J. 2001) (granting summary judgment before trial and awarding fees under Section 1927 due to a "shocking absence of evidence" to support plaintiff's claims).[10]  No such conduct has been or could be alleged here.

As each of the cases ProPharma cites demonstrates, Section 1927 fee-shifting is rightly reserved for conduct of an "egregious nature, stamped by bad faith that is violative of recognized standards in the conduct of litigation." *In re: Orthopedic Bone Screw Prods. Liab. Litig.*, 193 F.3d 781, 795 (3d Cir. 1999) (citation omitted).  McGuireWoods did nothing in any way approaching this high bar, and ProPharma cannot seriously contend otherwise.  Indeed, in a case in which the Court denied ProPharma's post-discovery summary judgment motion and rejected its motion for directed verdict, thus allowing the jury to hear and rule upon the very evidence ProPharma now cites in its motions, it is difficult to conceive how ProPharma could believe its motions are justified.

---

[10] ProPharma's reliance on *Murphy v. Hous. Auth. & Urban Redev. Agency of City of Atl. City*, 158 F. Supp. 2d 438 (D.N.J. 2001), is likewise misplaced.  ProPharma cites *Murphy* seemingly to suggest that the filing of a summary judgment motion puts the other party on notice that its claims might be frivolous.  Unlike in *Murphy*, where the district court **granted** summary judgment, here, the Court largely **denied** ProPharma's motion. *Id.* at 83.  Moreover, to the extent certain claims were dismissed on summary judgment, there is still no basis to find that they were frivolous or brought in bad faith, or that those claims "unreasonably and vexatiously" "multiplied proceedings," as required by Section 1927. *See, e.g.*, *Live Face on Web, LLC v. Integrity Sols. Grp., Inc.*, 2020 WL 1304553, at *4 (D. Colo. Mar. 19, 2020) ("Although the Court rejected several of Integrity's positions throughout this litigation and concluded that some of those positions were objectively unreasonable based on when such positions were raised throughout the litigation, these positions did not multiply the proceedings. That Integrity survived summary judgment illustrates that several of Integrity Counsel's arguments held merit and do not evidence 'serious and studied disregard for the orderly process of justice.'") (citations omitted); *GN Netcom*, 2018 WL 273649, at *7 (explaining defendant "failed to persuade the Court that any aspect of [plaintiff's] handling of its tort claim was 'unreasonable and vexatious and demonstrably exemplifies bad faith'" where plaintiff's tort claim "survived a motion to dismiss in 2013, and withstood [defendant's] challenge on summary judgment in 2017" but was dismissed with consent during trial).

The Court itself applauded counsel for both parties for their professionalism and advocacy. This is not the stuff of a Section 1927 sanctions award.

ProPharma invites this Court to set a precedent that would chill zealous advocacy in the Third Circuit and this district and that would create a "loser's counsel pays" standard. *Williams v. Giant Eagle Markets, Inc.*, 883 F.2d 1184, 1193 (3d Cir. 1989) (imposing sanctions when a lawyer raises a losing theory "would deprive a lawyer of his ethical obligation to represent his client zealously"); *LaSalle*, 287 F.3d at 289. The Court should soundly reject that invitation and deny ProPharma's Section 1927 motion.[11]

## IV.   PROPHARMA'S COUNSEL FEES AND COSTS ARE UNREASONABLE

ProPharma's excessive and facially unreasonable fees and costs are yet another reason why both motions should be denied. The party seeking a fee award has the burden to demonstrate that its claimed fees are reasonable. *See Coalition to Save Our Children v. State Bd. of Educ. of State of Del.*, 901 F. Supp. 824, 829 (D. Del. 1995). ProPharma cannot meet this burden.

ProPharma has calculated its attorney fees by using the lodestar method, under which the court multiplies the reasonable amount of time expended by reasonable hourly rates. *See Mattern & Assoc, LLC v. Seidel*, 678 F. Supp. 2d 256, 272-73 (D. Del. 2010). "The court may exclude from the lodestar calculation unnecessary hours or hours that lack proper documentation." *Id.* (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). While the lodestar method is presumed to be reasonable, the Court has discretion to adjust that amount downward based on the twelve "*Johnson* factors." *Id.*[12] "In calculating the hours reasonably expended, a court should review the

---

[11] Even if the Court somehow determines McGuireWoods took any action in bad faith—which it certainly did not—and that the equities weigh in favor of granting sanctions, any award ***must*** be limited to the costs caused by the specific bad-faith action. *LaSalle*, 287 F.3d at 287.

[12] Those factors are "(1) [t]he time and labor required; (2) [t]he novelty and difficulty of the questions; (3) [t]he skill requisite to perform the legal service properly; (4) [t]he preclusion of other

time charged, decide whether the hours set out were reasonably expended for each of the particular purposes described and then exclude those that are excessive, redundant, or otherwise unnecessary." *Maldonado v. Houstoun,* 256 F.3d 181, 184 (3d Cir. 2001) (cleaned up).

ProPharma seeks reimbursement for 4,547.4 hours of work billed by Stein Mitchell alone (D.I. 271-1 at 13)—the equivalent of more than two-and-a-quarter-years' worth of full-time work for an individual attorney at a large law firm. The total amount of fees ProPharma seeks for Stein Mitchell time is $2,907,662.50—an objectively unreasonable amount given it represents approximately double the maximum value of Plaintiff's lawsuit, were Plaintiff to prevail. Likewise, ProPharma's costs of $554,925.86 are also unreasonable. This alone is sufficient for the Court to exercise its discretion to conclude the fees sought are beyond what would be appropriate for a matter of this type. *See Clemens v. N.Y. Cent. Mut. Fire Ins. Co.,* 903 F.3d 396, 398 (3d Cir. 2018) (explaining "that district courts have the discretion to deny a fee request in its entirety when the requested amount is 'outrageously excessive' under the circumstances.").

Many of ProPharma's attorneys' time entries also reflect that they billed excessively for the tasks performed and/or spent significant time on unnecessary or duplicative work, calling into question the reasonableness and credibility of ProPharma's entire fee petition.[13] *See Washington v. Phila. Cnty. Ct. of Common Pls.*, 89 F.3d 1031, 1038-39 (3d Cir. 1996) (reducing fees in half for overbilling and excessiveness). ProPharma has also failed to offer any explanation as to why

---

employment by the attorney due to acceptance of the case; (5) [t]he customary fee; (6) [w]hether the fee is fixed or contingent; (7) [t]ime limitations imposed by the client or the circumstances; (8) [t]he amount involved and the results obtained; (9) [t]he experience, reputation, and ability of the attorneys; (10) [t]he "undesirability" of the case; (11) [t]he nature and length of the professional relationship with the client; and (12) [a]wards in similar cases." *Campbell v. Royal Bank Supp. Exec. Ret. Plan*, 2022 WL 17819804, at *10 (E.D. Pa. Dec. 20, 2022) (citing *Johnson v. Ga. Hwy. Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974).

[13] *See generally* Decl. of N. SanFilippo at 11.

so many attorneys were needed, what their unique contributions were, or whether their work was duplicative.  Courts routinely flag these kinds of inefficiencies when deciding to reduce awards of attorneys' fees.  *See, e.g.*, *Choike v. Slippery Rock Univ.*, 2010 WL 4614610, at *4 (W.D. Pa. Nov. 5, 2010) (time entries unreasonable and excessive where they did "not indicate that [the attorney] made any meaningful, independent contribution to the [task]"); *Mary v. Sch. Dist. of Phila.,* 2009 WL 185426, at *5 (E.D. Pa. Jan. 22, 2009) ("Reductions for duplicative hours may be made 'if the attorneys are unreasonably doing the same work.'") (quoting *Rode v. Dellarciprete,* 892 F.2d 1177, 1187 (3d Cir. 1990) (italics removed).

ProPharma's attorneys' use of block-billing also renders numerous entries too vague and indeterminate to assess their reasonableness or whether, collectively, ProPharma's attorneys were working efficiently.  The Third Circuit has held that time entries must "be specific enough to allow the district court to determine if the hours claimed are unreasonable for the work performed." *Washington*, 89 F.3d at 1037.  But ProPharma's attorneys' use of block billing prevents the Court from evaluating the reasonableness of the work performed.  *See also, e.g.*, *Tenafly Eruv Ass'n, Inc. v. Borough of Tenafly*, 195 Fed. App'x. 93, 100-101 (3d Cir. 2006) (reducing hours where vague entries, such as "conference calls" and "correspondence" were insufficient to determine nature of task); *Rode*, 892 F.2d at 1183 ("The court also can deduct hours when the fee petition inadequately documents the hours claimed.") (citation omitted).

In addition, numerous entries reflect time that Stein Mitchell spent pursuing unsuccessful claims or arguments.  "The Court may only award attorney's fees for hours spent on successful claims," while "[h]ours spent on unsuccessful claims should be excluded."  *Coalition to Save Our Children v. State Bd. of Educ.*, 901 F. Supp, 824, 829 (D. Del. 1995).  This category includes, among others: (1) hundreds of hours of work on ProPharma's motion for summary judgment,

which was mostly denied; (2) time spent preparing unsuccessful motions *in limine*; and (3) time spent on a proposed amended Answer the Court also denied. *See, e.g.*, D.I. 271-2 at 60.[14]  Counsel also appears to have added hundreds of hours of fees for post-trial work, which all remain pending. Time spent in pursuit of these efforts should be excluded.

Additionally, for purposes of comparison—ProPharma's requested Stein Mitchell fee award (after reductions) is approximately 165% of McGuireWoods' fees from inception of this case through June 30, 2023.[15]  McGuireWoods' attorneys, paralegals and case assistants worked a total of 2,862.8 hours at a blended average rate of approximately $615.33 per hour (rounded to the nearest cent), for a total of $1,761,555.00.  *See* Ex. A, Decl. of N. SanFilippo at par. 12.[16]  For that same time period, ProPharma seeks $2,907,662.50 in Stein Mitchell fees for 4,547.4 worked.  (D.I. 271-1 at 13).  Similarly, the total costs incurred by Plaintiff in this matter through June 30, 2023 were $109,514.78.00, less than 20% of the costs incurred by ProPharma.

There is simply no reason why ProPharma should be awarded fees and expenses in an amount more than double the total value of the lawsuit.  Nor is there any reason why so many lawyers billed simultaneous excessive amounts for many of the same tasks. *See* Decl. of N. SanFilippo at pars. 15-18.  The logical explanation is excessive and redundant staffing and over-lawyering.  "[O]verstaffing cases inefficiently is common, and district courts are therefore encouraged to scrutinize fee petitions for duplicative billing when multiple lawyers seek fees."

---

[14] Although ProPharma has claimed that it removed all time entries related to its failed attempt to amend the answer, some are left remaining, including Samantha Christensen's February 27, 2023 entry, which lists "create amended answer[,]" among the 9.3 hours she billed that day.

[15] June 30, 2023 is the cutoff date chosen by ProPharma in its motions.

[16] For clarity, McGuireWoods cites this number simply for purposes of comparison, not to argue that Plaintiff—if eligible—would be entitled to seek reimbursement for all of those fees. Rather, such fees would necessitate reductions under the *Johnson* factors.

*Schlacher v. Law Offices of Phillip J. Rotche & Assocs., P.C.*, 574 F.3d 852, 858 (7th Cir. 2009). And here, in particular, there is no reason why ProPharma needed to staff eight attorneys for what was a relatively straightforward breach of contract case, where *Plaintiff* had the burden of proof.

Under these circumstances, where a law firm clearly overstaffs and duplicates efforts for cases with uncomplicated issues, courts tend to issue significant downward adjustments to fee awards. *See, e.g.*, *Copeland v. Marshall,* 641 F.2d 880, 891 (D.C. Cir. 1980) (explaining that "where three attorneys are present at a hearing when one would suffice, compensation should be denied for the excess time"); *Hairston v. Prince George's Cnty.,* 2012 WL 5995451, at *4 (D. Md. Nov. 28, 2012) (reducing fees award where, "[d]espite the case's straightforward nature, seventeen individuals show up in the billing records attached to [plaintiff's] fee petition, billing a total of 2,127 hours."); *Tucker v. City of New York,* 704 F. Supp. 2d 347, 355 (S.D.N.Y. 2010) ("[U]sing multiple attorneys in a simple case, which this certainly was, poses the serious potential—fully realized in this instance—for duplication of work or overstaffing.").

Although Plaintiff is confident that the Court will not need to reach the issue of whether ProPharma's fees are reasonable, in the event that it does, the factors outlined above, along with the headline numbers—4,547.4 hours of work for $2,907,662.50—should lead the Court to conclude that Stein Mitchell's total fees are "outrageously excessive." *Clemens*, 903 F.3d at 398. Although the Court can exercise its discretion to deny the requested fee amount entirely, the grossly excessive nature of Stein Mitchell's fees warrants that, at most, ProPharma should recover only 60% of those fees, which is equal to $1,744,597.50, and 60% of its costs, which is equal to $332,955.52. *See* Decl. of N. SanFilippo at paras. 22-23.

## CONCLUSION

For the reasons set forth herein, ProPharma's motions should be denied.

20

**POTTER ANDERSON & CORROON LLP**

OF COUNSEL:

Nicholas D. SanFilippo
Keith J. Minson
Michael A. Brody
Daniel C. Masakayan
McGUIREWOODS LLP
1750 Tysons Boulevard, Suite 1800
Tysons, VA  22102-4215
(703) 712-5000 – Telephone
(703) 712-5220 – Facsimile
nsanfilippo@mcquirewoods.com
kminson@mcguirewoods.com
mbrody@mcguirewoods.com
dmasakayan@mcguirewoods.com

By: */s/ Jesse L. Noa*
    John A. Sensing (#5232)
    Jesse L. Noa (#5973)
    Andrew L. Brown (#6766)
    1313 North Market Street
    Hercules Plaza, 6th Floor
    Wilmington, DE  19801
    (302) 984-6000 – Telephone
    (302) 658-1192 – Facsimile
    jsensing@potteranderson.com
    jnoa@potteranderson.com
    abrown@potteranderson.com

Dated: August 4, 2023                    *Attorneys for Plaintiff Patrick K. Donnelly*