**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| PATRICK K. DONNELLY | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 21-894-MAK |
| | : | |
| PROPHARMA GROUP TOPCO LLC | : | |

## <u>MEMORANDUM</u>

KEARNEY, J.                                                                                  August 8, 2023

An experienced executive alleged a company breached contracts by not paying him for his board service or the correct value of his ownership units. We issued several pre-trial rulings on whether the company breached two contracts detailing the parties' rights. The dispute centered on whether the company removed the executive from the board before he would be entitled to the payments. The executive persuaded us to allow the jury to resolve the genuine issues of material fact concerning his alleged removal after evaluating the credibility of the executive's and the company's witnesses. We heard extensive trial evidence. The executive offered an unplead alternative argument after the close of evidence. We heard extensive oral argument on this new argument before finalizing jury instructions. We found the executive's unpleaded argument could not proceed as a matter of contract interpretation and fair notice. Our jury found the executive did not prove the company breached contractual obligations.

The executive now moves for judgment as a matter of law or a new trial. We deny his motion. His renewed arguments on the law are misplaced or largely mistaken as confirmed by the trial record. The jury decided to believe the company's witnesses and not the executive's testimony on the disputed issues. We have no basis to reverse our detailed contract interpretation as a matter of law or ignore the jury's verdict based on all the trial evidence.

## I.      Background

Patrick Donnelly sued ProPharma Group Topco, LLC for breaching two contracts relating to his service on ProPharma's Board of Managers.[1] Mr. Donnelly alleged under the first contract—the Offer to join ProPharma's Board—ProPharma failed to pay Mr. Donnelly his earned base compensation from April 18, 2019 through September 30, 2020.[2] And Mr. Donnelly alleged under the second contract—the Management Incentive Equity Agreement—ProPharma failed to pay him the fair market value of his management incentive equity units at the end of his Board service.[3] ProPharma claimed it removed Mr. Donnelly from the Board before he would be entitled to the payments.

### *Mr. Donnelly's allegations.*

Mr. Donnelly alleged ProPharma never properly removed him from the Board, resulting in ProPharma failing to make certain payments due under those two contracts.[4] He relied on section 5.2(b) of the Amended and Restated Limited Liability Agreement which governed "[t]he relationship of the parties" where the parties agreed Mr. Donnelly "will be removed from the Board, with or without cause, at the written request of the Linden Investors entitled to appoint such Linden Manager[.]"[5] He alleged "***only*** ProPharma Group Buyer, LLC and ProPharma Group Splitter, LP, acting in concert with any Affiliates and Transferees they may have, had the power to remove Mr. Donnelly from the ProPharma Board of Managers."[6] He alleged these entities did not sign a letter dated September 3, 2019 purporting to remove him from the Board.[7] So he remained a Board member until September 30, 2020, when Odyssey Investment Partners bought ProPharma.[8] Mr. Donnelly never pleaded a claim or supporting facts suggesting ProPharma breached section 5.3 of the LLC Agreement, which generally describes how the Board acts and votes at meetings. He alleged no facts his removal required a Board meeting or vote.

Mr. Donnelly also sued ProPharma for breaching the implied covenant of good faith and fair dealing by preventing him from carrying out his duties as a Board member and for breaching its fiduciary duty by omitting facts about the fair market value of his incentive equity units.[9]

### *We allowed Mr. Donnelly's contract claims to proceed to trial.*

The parties eventually completed discovery. ProPharma then moved for summary judgment arguing: (1) ProPharma does not owe Mr. Donnelly more payments because his ProPharma Board service ended as of August 31, 2019; (2) the doctrine of accord and satisfaction bars claims for more payments; and (3) Mr. Donnelly's claims for breach of the implied covenant of good faith and fair dealing, breach of fiduciary duty, and unjust enrichment fail as a matter of law.[10]

We denied ProPharma's Motion for summary judgment as to the two breach of contract claims.[11] We found genuine issues of material fact as to whether ProPharma validly removed Mr. Donnelly from the Board or whether Mr. Donnelly resigned and/or acquiesced to his removal.[12] Several disputes required credibility determinations, including whether an undated document "signed by the right persons but not dated nor shared until discovery" from June 2019 validly removed Mr. Donnelly from the Board.[13] ProPharma signed a second removal document three months later (without the necessary signatures to validly remove Mr. Donnelly from the Board) with an effective date of August 31, 2019, undermining the credibility of the earlier removal document.[14] We found "[t]he undated removal document is the only one signed by those with the authority to remove Mr. Donnelly from the Board" but "[b]oth parties now try to walk back from admissions made in 2019 through curious dismissals of their admissions" so we could not "credit one over another."[15] We did not address whether Mr. Donnelly's removal required a Board meeting or vote as never raised in the pleadings and neither party raised this issue after discovery.

3

We granted ProPharma's Motion in part. We dismissed Mr. Donnelly's claims for breach of the implied covenant of good faith and fair dealing, breach of fiduciary duty, and unjust enrichment.[16]

### A.  Evidence adduced at trial.

We proceeded to trial on Mr. Donnelly's two breach of contract claims. The trial evidence confirmed Jeff Hargroves founded ProPharma and became its President and Chief Executive Officer in 2001.[17] ProPharma provides regulatory, project management services, and compliance consulting services to customers in the medical and pharmaceutical fields.[18] Linden Capital Partners—a healthcare investment firm—acquired ProPharma in 2016.[19]

#### *Mr. Donnelly joins ProPharma's Board of Managers under an Offer Letter.*

The trial evidence confirmed Linden co-founder and President Anthony Davis and Linden Partner Michael Farah, acting as the "Linden [I]nvestors", decided to offer Patrick Donnelly a seat on ProPharma's Board of Managers because of, among other things, his relevant experience in pharmaceutical services.[20] So Linden President Davis, on behalf of ProPharma, sent Mr. Donnelly an offer to join ProPharma's Board of Managers on October 24, 2016 with a starting date of September 30, 2016.[21] ProPharma, through the Offer, asked Mr. Donnelly to serve for a term of five years.[22] Mr. Donnelly accepted and signed the Offer on October 31, 2016.[23]

#### *The LLC Agreement.*

The trial evidence confirmed Mr. Donnelly also signed ProPharma's Amended and Restated Limited Liability Agreement some time in 2016, which put him on ProPharma's Board and governed his Board service.[24] ProPharma Founder Hargroves signed on behalf of ProPharma Group Topco, LLC as its President and Chief Executive Officer and on behalf of ProPharma Group, Inc. as its President; Linden Partner Farah signed on behalf of ProPharma Group Buyer,

LLC as its Vice President; and Linden President Davis signed on behalf of ProPharma Group Splitter, LP.[25]

The parties agreed, through section 5.2(b) of LLC Agreement, Mr. Donnelly could be removed from the Board "with or without cause, at the written request of the Linden Investors entitled to appoint" Mr. Donnelly to the Board.[26] The "Linden Investors" mean "collectively, Linden Buyer, Linden Splitter and any of their Affiliates and any of their respective Transferees."[27] "Linden Buyer" is defined as ProPharma Group Buyer, LLC and "Linden Splitter" is defined as ProPharma Group Splitter, LP."[28]

Mr. Donnelly swore his understanding of section 5.2(b) meant Linden Buyer, Splitter ***and all*** the affiliates associated with them had to sign a document to remove him from the Board.[29] Linden Partner Farah disagreed all affiliates had to sign a document to remove Mr. Donnelly from the Board.[30] Linden Partner Farah instead swore Linden had 249 affiliates and he "never heard anyone in [his] business career request or demand that all [Linden's] affiliates sign on behalf of any document."[31] But even so, Linden President Davis testified—as the majority owner of Linden—he could sign on behalf of all 249 affiliates.[32]

The parties also defined how the Board could act and vote at meetings in section 5.3 of the LLC Agreement.[33] The parties agreed in section 5.3 "[u]nless another percentage is set forth herein or required by applicable law, any determination or action required to be taken by the Board shall be taken by a majority of the Managers then in office[.]"[34] The parties agreed, among other things, a majority of managers would constitute a quorum sufficient to conduct meetings; at least one Linden Manager must be present at the meeting to constitute a quorum; and the vote of a majority of managers present at a meeting at which a quorum is present would be an act of the Board.[35] The

parties also agreed the Board could act at a meeting or by a written consent by at least one Linden Manager.[36]

### ProPharma agrees to pay Mr. Donnelly for his Board service.

The trial evidence confirmed ProPharma agreed to pay Mr. Donnelly a base compensation of $37,500.00 per year for his service on the Board.[37] ProPharma also agreed to pay Mr. Donnelly management incentive equity units through a Management Incentive Equity Agreement which Mr. Donnelly signed on January 18, 2017.[38] ProPharma, through this Incentive Equity Agreement, gave Mr. Donnelly 8,046.365 incentive equity units (shares) in ProPharma.[39] Twenty-five percent of the incentive units would vest in equal increments over time (the time vesting units) and seventy-five percent of the units would vest only if Mr. Donnelly remained "continuously employed by or providing services to" ProPharma "through the consummation of a Liquidity Event" (the performance vesting units).[40] ProPharma agreed to pay Mr. Donnelly the fair market value for each vested management equity unit upon his termination.[41]

### Mr. Donnelly performs his Board duties.

The trial evidence confirmed Mr. Donnelly began attending Board meetings shortly after ProPharma appointed him to the Board.[42] At these meetings, the Board discussed, among other things, the status of ProPharma, possible acquisitions or opportunities, market strategies, and management succession.[43] Mr. Donnelly attended the Board meetings in December 2016, March 2017, and June 2017.[44]

### Mr. Donnelly recuses himself from Board discussions.

The trial evidence confirmed about a year after joining ProPharma's Board, Mr. Donnelly became the Chief Executive Officer of Advarra—also owned by Linden—which conducts medical-based regulatory and consulting work in November 2017.[45] Advarra's work overlapped

with ProPharma's work on the regulatory and consulting sides of their businesses and the two bid on several of the same contracts.[46] Mr. Donnelly testified he never perceived an initial conflict with his dual roles as a ProPharma Board member and as Advarra's CEO.[47] But the jury also heard Linden President Davis testify he perceived a conflict early on, but felt he could resolve the conflicts between ProPharma and Advarra because he ultimately controlled the two Linden-owned companies.[48]

But the trial evidence confirmed potential conflicts began to arise after Mr. Donnelly attended the March 2018 Board meeting.[49] Around this time, both Advarra and ProPharma wanted to acquire the Weinberg Group.[50] Mr. Donnelly felt it would not be appropriate of him as the Advarra CEO to engage in certain merger and acquisition discussions with ProPharma—such as those relating to the Weinberg Group—because of the conflicting overlap.[51] So he recused himself from discussions involving the Weinberg acquisition.[52] But Mr. Donnelly testified no one suggested he come off the Board in 2018.[53] And he still attended the December 2018, March 2019, and June 2019 Board meetings.[54]

The trial evidence confirmed Linden then sold Advarra to another company in June 2019.[55] Linden President Davis testified he could no longer control or manage Advarra after Linden sold it.[56] And Linden Partner Farah, who at this time acted as the chairman of ProPharma's Board, testified he agreed Mr. Donnelly should come off the Board after Linden sold Advarra.[57] So Linden decided to remove Mr. Donnelly from ProPharma's Board.[58] Mr. Donnelly swore he "did very well in the Advarra transaction" making around $44 Million when it sold which includes the shares in Advarra he received from Linden which he later sold.[59]

### *Mr. Donnelly discusses coming off the Board with ProPharma.*

The trial evidence confirmed Linden President Davis called Mr. Donnelly about a week after the June 2019 Board meeting to discuss Mr. Donnelly's potential removal from the Board because of conflicts with Advarra.[60] Mr. Donnelly testified during the phone call he expressed how his removal from the Board "makes sense" and he would "exit stage left."[61] But he testified Linden President Davis never told him he planned to remove him from the Board.[62] Mr. Donnelly instead believed they would "figure out the economics and then [he] would resign."[63] Linden President Davis testified he told Mr. Donnelly "he was being removed from the [B]oard of ProPharma" during the call and Mr. Donnelly "understood it, he got it."[64]

### *ProPharma drafts the first removal document.*

The trial evidence confirmed the Board never held a Board vote to remove Mr. Donnelly.[65] But Linden President Davis testified after his phone call with Mr. Donnelly the Linden Investors put in writing their decision to remove Mr. Donnelly from the Board.[66] Linden Partner Farah, on behalf of ProPharma Group Buyer, LLC, and Linden President Davis, on behalf of ProPharma Group Splitter, LP, signed an undated document removing Mr. Donnelly from the Board.[67] Linden President Davis and Linden Partner Farah both testified they signed the document on June 27, 2019.[68] And ProPharma Board member and Linden Principal Joshua Reilly testified he prepared the removal document, his assistant gathered Linden President Davis's and Linden Partner Farah's signatures, and he sent the signed document to his corporate counsel.[69] ProPharma Board Member Reilly confirmed the PDF metadata of the signed removal document showed a creation date of June 27, 2019.[70] Mr. Donnelly did not credibly dispute the metadata.

*Mr. Donnelly stops attending meetings or providing Board services.*

The trial evidence confirmed Mr. Donnelly stopped attending ProPharma meetings after the June 2019 Board meeting.[71] Dawn Sherman—who replaced ProPharma Founder Hargroves as ProPharma's CEO in May 2018—testified ProPharma no longer sent invitations to Mr. Donnelly to these meetings "[b]ecause he was no longer on the [B]oard."[72] And Mr. Donnelly never asked CEO Sherman for Board materials or information about the upcoming Board meetings, or why ProPharma did not pay him Board fees after June 2019.[73] Mr. Donnelly also stopped participating in ProPharma Board calls after the June 2019 Board meeting.[74] Mr. Donnelly testified his "service to the company stopped on June of 2019" and he performed no work for the ProPharma Board after June 2019.[75]

Mr. Donnelly emailed Linden Partner Farah's administrative assistant Brianna Loverich on July 1, 2019, telling her he would not be attending the October 2019 Board meeting because "I am no longer on the ProPharma Board[.]"[76] Mr. Donnelly testified he wrote this email to Assistant Loverich in response to her request for his travel plans for the October 2019 Board meeting.[77] Mr. Donnelly testified he expected to be off the Board by October but "wasn't going to go into all the details with an administrative assistant at this juncture."[78] He testified he could have just changed the calendar invitation for the October meeting to "decline" but he wanted "to be nice to Brianna[.]"[79]

*ProPharma drafts a second removal document.*

The trial evidence confirmed Linden Partner Farah signed a second document removing Mr. Donnelly from the Board "effective as of August 31, 2019" on behalf of Linden Capital Partners III LP and Linden Capital Partners III-A LP dated September 3, 2019.[80] Linden President Davis testified this second removal document amounted to a "[c]lerical mistake by a different

9

attorney not knowing there was already one in the file."[81] But Linden President Davis testified this second document "makes it more clear" ProPharma removed Mr. Donnelly from the Board twice.[82]

### *ProPharma sends repurchase agreements to Mr. Donnelly.*

Linden President Davis emailed Mr. Donnelly an agreement to repurchase Mr. Donnelly's incentive equity in ProPharma on September 4, 2019—one day after signing the second removal document.[83] ProPharma, through the repurchase agreement, offered to vest an additional twenty percent of Mr. Donnelly's time vesting units (rounding up to account for the last year even though it had not vested) and two-thirds of his performance vest units (although none had vested because there had not been a Liquidity Event).[84] So by signing the agreement, ProPharma would pay Mr. Donnelly $684,008.19 for his incentive equity units.[85] The repurchase agreement lists August 31, 2019, as the date Mr. Donnelly's "employment with and service to" ProPharma "terminated[.]"[86]

Linden Partner Farah re-sent Mr. Donnelly the repurchase agreement on October 18, 2019, reminding Mr. Donnelly "your incentive equity agreement entitles you to 2/5 of the time vesting shares only, but Linden had elected in good faith to vest an additional portion of your time as well as some performance, as outlined in the agreement . . . [p]lease sign the agreements and send us your wire info ASAP. . . [i]f we don't hear from you, we'll have to proceed with repurchasing your incentive equity under the terms outlined in the incentive equity agreement."[87]

Linden Partner Farah re-sent Mr. Donnelly the repurchase agreement again on November 4, 2019, asking Mr. Donnelly to sign the agreement by November 6, 2019, and if not executed by then ProPharma would revoke its offer and exercise its repurchase option for only the units vested which it would repurchase for $105,227.97.[88] Linden Partner Farah signed the repurchase agreement on behalf of ProPharma.[89]

Mr. Donnelly never signed the repurchase agreement.[90] So ProPharma wired Mr. Donnelly $105,227.97 on November 11, 2019.[91] Mr. Donnelly never directed the bank to send the money back to ProPharma.[92] And he never informed ProPharma he would not accept the money.[93] Mr. Donnelly testified he did not spend any of the money but he "put it in a quote/unquote escrow account as advised by counsel."[94]

Mr. Donnelly disagreed with the value of the shares ProPharma offered him.[95] Mr. Donnelly testified he did not believe Linden valued the units in good faith.[96] He testified he never read the repurchase agreement on any of the three separate times ProPharma sent it because he "was very busy" and "[t]here was no reason for [him]" to read it "until [they] had a valuation understanding."[97] But he testified a dispute about the value of his shares did not affect ProPharma's ability to terminate him from the Board.[98]

### Mr. Donnelly sends his resume to Summit Partners.

Mr. Donnelly sent his resume to Summit Partners, a private equity firm, on July 16, 2020, listing his Board service at ProPharma beginning in 2016 and ending in 2019.[99] He testified he put his Board service as ending in 2019 "because [he] didn't want to get into all of what we're talking about here" and decided to "just cut it off" at 2019.[100]

### Mr. Donnelly receives the September 2019 removal document on September 23, 2020.

Mr. Donnelly swore he received the September 2019 removal document for the first time on September 23, 2020.[101]

### Odyssey buys ProPharma in September 2020.

Odyssey Investment Partners Fund, a private equity firm, purchased ProPharma for $560 million on September 30, 2020.[102] Linden President Davis testified he called Mr. Donnelly around this time after Mr. Donnelly sued ProPharma to ask about his meritless claims against

ProPharma.[103] Linden President Davis swore Mr. Donnelly replied: "You know it's America and we have a jury system and 5 percent of the time you can convince a jury of anything."[104]

### *Mr. Donnelly receives the June 2019 removal document much later.*

Mr. Donnelly testified he received the earlier created June 2019 removal document some time in late 2021 for the first time during discovery in this case.[105]

### B.   The parties move for Rule 50 relief including on unpleaded issues.

ProPharma moved under Rule 50 for judgment as a matter of law at the close of Mr. Donnelly's case-in-chief.[106] ProPharma argued Mr. Donnelly admitted he stopped providing services to ProPharma after June 2019 so ProPharma did not have to pay him.[107] We denied ProPharma's Motion but acknowledged it as "a close call" but giving the nonmovant Mr. Donnelly every fair and reasonable inference we found sufficient conflicting evidence for the case to proceed to the jury.[108]

Mr. Donnelly then moved for judgment as a matter of law after ProPharma closed its case.[109] Mr. Donnelly argued the evidence showed ProPharma breached the two contracts because it did not properly remove him from the Board under the terms of the LLC Agreement.[110] We denied Mr. Donnelly's Motion finding ProPharma presented sufficient evidence it complied with section 5.2(b) of the LLC Agreement to remove Mr. Donnelly from the Board.[111]

ProPharma then moved before closing arguments to preclude Mr. Donnelly from arguing his new theory of the case raised for the first time on the third day of trial: section 5.3 of the LLC Agreement required a majority of the ProPharma Board managers vote to remove Mr. Donnelly from the Board, and ProPharma's failure to comply with section 5.3 invalidates Mr. Donnelly's removal from the Board.[112] ProPharma argued Mr. Donnelly's "previously undisclosed eleventh-hour arguments concerning the central issues in this case is deeply prejudicial to [ProPharma] in

its untimeliness and constitutes trial by ambush."[113] ProPharma asked we instruct the jury the

Board did not need to act to remove Mr. Donnelly under section 5.3.[114] ProPharma argued—even

if we found Mr. Donnelly's last-minute argument did not warrant excluding evidence about section

5.3—we should, as matter of law, find section 5.3 does not apply to Mr. Donnelly's removal from

the Board which is instead governed by section 5.2(b).[115] Mr. Donnelly responded section 5.3 of

the LLC Agreement required the Board vote to remove Mr. Donnelly and the evidence presented

at trial showed ProPharma never held a vote to remove him.[116] Mr. Donnelly argued this theory

"fits well within the confines of what this case has always been about, both as described in the

governing complaint and by the Court in denying Defendant summary judgment."[117]

    We concluded we would not strike evidence already in the record about section 5.3.[118] But

we granted ProPharma's judgment as a matter of law finding "section 5.2's specific direction of

self-actualized removal is not affected by section 5.3's [B]oard process obligations."[119] We found

section 5.2 unambiguously means "any Linden manager or independent manager will be removed

from the [B]oard with or without cause at the written request of Linden investors."[120] We explained

to the parties, as a matter of law, section 5.2 "doesn't require any [B]oard approval, no quorum,

no two out of seven in the majority, none of that will be raised and it's out of the case."[121] And we

noted we never heard Mr. Donnelly's argument about section 5.3 before the third day of trial.[122]

### C.  Jury finds ProPharma did not breach the contracts.

    The jury returned a verdict in favor of ProPharma in less than thirty minutes.[123]

## II.    Analysis

    Mr. Donnelly now moves for a post-trial relief.[124] He moves under Rule 50 for renewed

judgment as a matter of law arguing: (1) ProPharma did not obtain the necessary signatures to

remove him from the Board; and (2) the Board never acted to remove him from the Board.[125] Mr.

Donnelly, alternatively, moves for a new trial under Rule 59 arguing: (1) our rulings led the jury

to hear a "distorted and incomplete view of the facts" and ProPharma's contractual obligations; and (2) the jury's verdict went against the great weight of the evidence.[126]

ProPharma responds Mr. Donnelly is not entitled to judgment as a matter of law because: (1) ProPharma validly removed Mr. Donnelly from the Board by complying with the plain language of the Board removal requirements; (2) section 5.3 is not relevant for removing managers from the Board, but even if it does apply, the Linden Investors satisfied section 5.3; and (3) Mr. Donnelly acquiesced to his Board removal.[127] ProPharma argues Mr. Donnelly is not entitled to a new trial under Rule 59 because: (1) we properly granted judgment as a matter of law to ProPharma on Mr. Donnelly's unpleaded, untimely section 5.3 theory; and (2) the evidence amply supported the jury's verdict.[128]

We deny Mr. Donnelly's post-trial motion in its entirety.

**A.  We deny Mr. Donnelly's motion for judgment as a matter of law.**

A motion for judgment as a matter of law under Rule 50(b) "should be granted only if, viewing the evidence in the light most favorable to the nonmovant and giving it the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury reasonably could find liability."[129] We may grant the motion only if "the record is critically deficient of the minimum quantum of evidence to sustain the verdict."[130] While judgment as a matter of law should be granted sparingly, a "scintilla of evidence" is insufficient to sustain a jury's verdict.[131] "The question is not whether there is literally no evidence supporting the unsuccessful party, but whether there is evidence upon which a reasonable jury could properly have found its verdict."[132] In considering a motion under Rule 50(b), we do not "weig[h] the evidence, determin[e] the credibility of witnesses, or substitut[e] our own version of the facts for that of the jury."[133]

14

1.    **A jury could readily find the Board properly removed Mr. Donnelly under section 5.2(b) of the LLC Agreement.**

Mr. Donnelly first argues a reasonable jury could not find ProPharma properly removed Mr. Donnelly from the Board because ProPharma failed to follow the "strict procedural requirements" of obtaining the signatures of all 249 of its affiliates.[134] So Mr. Donnelly argues we should not have let this issue go to the jury.[135] Mr. Donnelly also argues there is no evidence Mr. Donnelly resigned from the Board.[136]

Mr. Donnelly must adduce evidence to proceed to the jury on his breach of contract claims: (1) the existence of a contract, express or implied; (2) breach of an obligation imposed by the contract; and (3) damages.[137] The interpretation of the language of a contract is a question of law.[138] "Delaware law adheres to the objective theory of contracts, *i.e.*, a contract's construction should be that which would be understood by an objective, reasonable third party."[139] The goal of contract interpretation is to "effectuate the parties' intent."[140] We interpret contracts to "give each provision and term effect" and not render any terms "meaningless or illusory."[141] We must read the contract as a whole, giving meaning to each term and avoiding an interpretation rendering any term "mere surplusage."[142]

ProPharma introduced two documents it contends effectuated Mr. Donnelly's removal— (1) the June 2019 document signed by Linden Partner Farah on behalf of ProPharma Group Buyer, LLC and Linden President Davis on behalf of ProPharma Group Splitter, LP; and (2) the September 3, 2019 document signed by Linden Partner Farah on behalf of Linden Capital Partners III LP and Linden Capital Partners III-A LP.[143] Mr. Donnelly argues neither of these documents removed him from the Board because all 249 affiliates had not signed either document.[144]

We reviewed both removal documents. We evaluated whether they validly removed Mr. Donnelly from the Board, as a matter of law, before trial when considering ProPharma's Motion

for summary judgment.[145] We questioned the credibility of the earlier removal document given the existence of the second removal document. But we found the June 2019 removal document "signed by the right persons" to remove Mr. Donnelly from the Board—Linden Partner Farah on behalf of ProPharma Group Buyer, LLC and Linden President Davis on behalf of ProPharma Group Splitter, LP.[146]

We have no reason to depart from our earlier finding as a matter of law.  The parties agreed, through section 5.2(b) of LLC Agreement, Mr. Donnelly could be removed from the Board "with or without cause, at the written request of the ***Linden Investors entitled to appoint***" Mr. Donnelly to the Board.[147] The "Linden Investors" mean "collectively, Linden Buyer, Linden Splitter and any of their Affiliates and any of their respective Transferees."[148] "Linden Buyer" is defined as ProPharma Group Buyer, LLC and "Linden Splitter" is defined as ProPharma Group Splitter, LP."[149] Linden Partner Farah on behalf of ProPharma Group Buyer, LLC and Linden President Davis on behalf of ProPharma Group Splitter, LP testified they signed the document removing Mr. Donnelly from the Board on June 27, 2019.[150] And these are the same two Linden Investors who appointed Mr. Donnelly to the Board—Linden Partner Farah appointed Mr. Donnelly to the Board on behalf of ProPharma Group Buyer, LLC, and Linden President Davis appointed Mr. Donnelly on behalf of ProPharma Group Splitter, LP.[151]

Mr. Donnelly swore his understanding of section 5.2(b) meant collectively Linden Buyer, Splitter ***and*** all the affiliates associated with them had to remove him from the Board.[152] Linden Partner Farah disagreed with Mr. Donnelly's interpretation all affiliates had to sign a removal document.[153] Linden Partner Farah instead testified Linden has 249 affiliates and he "never heard anyone in [his] business career request or demand that all [Linden's] affiliates sign on behalf of

any document."[154] But even so, Linden President Davis testified—as the majority owner of Linden—it is his understanding he could sign on behalf of all 249 entities.[155]

We "give effect to the plain meaning of the contract's terms and provisions" if a contract is clear and unambiguous.[156] Language is deemed ambiguous "if it is susceptible to more than one ***reasonable*** interpretation."[157] An unreasonable interpretation produces an absurd result or one no reasonable person would have accepted when entering the contract.[158] "The parties' steadfast disagreement over interpretation will not, alone, render the contract ambiguous."[159] Mr. Donnelly's reading of the LLC Agreement as requiring 249 different entities to remove him from the Board—when these entities never even appointed him to the Board—is not a reasonable interpretation of the contract. It would instead produce an absurd result contradicting the rule we should interpret contracts in a way which avoids absurdities.

We deny Mr. Donnelly judgment on his argument ProPharma did not follow the proper procedures under section 5.2(b) of the LLC Agreement as a matter of law.

### 2. We will not disturb the jury's verdict based on section 5.3 of the LLC Agreement.

Mr. Donnelly alternatively argues we should grant judgment as a matter of law because ProPharma failed to follow section 5.3 of the LLC Agreement, which as Mr. Donnelly interprets it, requires a majority vote of the Board managers to remove any Board manager.[160] Mr. Donnelly argues when section 5.2 and section 5.3 of the LLC Agreement are "read in harmony" the ProPharma Board "needed to receive a proper request to remove Mr. Donnelly . . . and then take Board action to institute his removal."[161] ProPharma responds Mr. Donnelly again attempts to relitigate his earlier arguments from trial, which we properly rejected as section 5.3 does not apply to Mr. Donnelly's Board removal.[162] We agree with ProPharma. Mr. Donnelly does not provide a basis for us to overturn the jury's verdict based on its arguments regarding section 5.3.

We read the LLC Agreement as a whole.[163] But "general terms of the contract must yield to more specific terms."[164] The parties agreed in section 5.3 "[u]nless another percentage is set forth herein or required by applicable law, any determination or action required to be taken by the Board shall be taken by a majority of the Managers then in office"[165] The parties agreed, among other things, a majority of managers would constitute a quorum sufficient to conduct meetings; at least one Linden Manager must be present at the meeting to constitute a quorum; and the vote of a majority of managers present at a meeting at which a quorum is present shall be an act of the Board.[166]

The parties unambiguously agreed to specify how Mr. Donnelly would be removed as a Board manager in section 5.2(b) of the LLC Agreement—Mr. Donnelly "***will be*** removed from the Board, with or without cause, ***at the written request*** of the ***Linden Investors*** entitled to appoint such Linden Manager[.]"[167] Mr. Donnelly's removal is self-effectuating once the Linden Investors put into writing their request to remove him from the Board. He agreed in the LLC Agreement the Board does not need to act to effect his removal.

Mr. Donnelly argues our reading would "effectively read[] [s]ection 5.3 out of existence."[168] We disagree. The parties agreed under section 5.3 "any determination or action ***required to be taken by the Board***" require a meeting and vote "by a majority of the Managers then in office" unless another percentage is set forth in the Agreement.[169] But Mr. Donnelly's removal under section 5.2(b) does not require Board action—it only requires the Linden Investors act. We are not reading section 5.3 "out of existence." We instead find, as a matter of law, section 5.3 unambiguously does not apply to Mr. Donnelly's removal. The parties agreed the Linden Investors—not the Board—can appoint managers to the Board and can remove those same managers from the Board.[170] We have no reason to depart from our earlier holding "section 5.2's

specific direction of self-actualized removal is not affected by section 5.3's board process obligations, and there is no basis to interpret the clear terms of sections 5.2 and 5.3 of the Agreement in another manner under the Law[.]"[171]

We deny Mr. Donnelly judgment as a matter of law based on his argument regarding section 5.3 of the LLC Agreement.

### B.  We deny Mr. Donnelly's motion for a new trial.

Mr. Donnelly also moves for a new trial on two grounds: (1) we erred when we granted ProPharma's partial judgment as a matter of law concerning section 5.3 of the LLC Agreement, so the jury heard a "distorted and incomplete view of the facts"; and (2) the verdict went against the great weight of the evidence.[172]

We "may, on motion, grant a new trial on all or some of the issues – and to any party . . . after a jury trial, for any reason for which a new trial has [ ] been granted in an action in federal court."[173] Rule 59 does not provide specific grounds to grant a new trial, leaving the decision to our discretion.[174] Motions for new trial may be granted where there is "substantial error in the admission or exclusion of evidence; error in the court's instructions to the jury; where the jury's verdict [is] inadequate or excessive; or where the verdict [is] against the weight of the evidence."[175] Our Court of Appeals cautions we should grant a motion for new trial "only when 'the great weight of the evidence cuts against the verdict and . . . [ ] a miscarriage of justice would result if the verdict were to stand.'"[176] Our "power to grant a new trial is limited to ensure that [we] do[] not substitute [our] judgment of the facts and the credibility of the witnesses for that of the jury."[177]

### 1.  We properly granted ProPharma's partial judgment on Mr. Donnelly's last-minute section 5.3 argument as a matter of law.

Mr. Donnelly first argues he is entitled to a new trial because we erred when we granted ProPharma's partial judgment as a matter of law concerning section 5.3 of the LLC Agreement.[178]

He contends ProPharma never moved for judgment as a matter of law regarding section 5.3 but only "sought to preclude" Mr. Donnelly from making arguments about section 5.3, so we provided ProPharma with greater relief than it sought.[179] Mr. Donnelly claims his legal argument about section 5.3 "fits well within the confines of what this case has always been about, both as described in the governing complaint and by the Court in denying [ProPharma's] motion for summary judgment."[180] So he concludes we erred in finding ProPharma prejudiced by Mr. Donnelly's section 5.3 argument.[181] And Mr. Donnelly argues section 5.2(b) is ambiguous about what, if anything, "beyond the written request of the Linden Investors is required to remove Mr. Donnelly" from the Board.[182] So, according to Mr. Donnelly, "[t]his ambiguity should have been decided by the jury[.]"[183] ProPharma responds we properly granted judgment as a matter of law in its favor on Mr. Donnelly's unpleaded, untimely section 5.3 theory, and correctly precluded him from arguing section 5.3's effect in closing argument.[184]

Mr. Donnelly's argument in favor for a new trial is misleading. First, Mr. Donnelly contends ProPharma never moved for judgment of law regarding section 5.3 but only "sought to preclude" Mr. Donnelly from making arguments about section 5.3, so we provided ProPharma with greater relief than it sought.[185] Mr. Donnelly is mistaken if not worse. ProPharma argued even if we found Mr. Donnelly's untimeliness did not warrant excluding evidence about section 5.3, we "should still preclude evidence and arguments regarding [s]ection 5.3 . . . *as a matter of law* on the grounds that the provision does not invalidate [Mr. Donnelly's] removal from the Board."[186] We granted ProPharma the relief it requested as a matter of law.

Second, Mr. Donnelly claims his legal argument about section 5.3 "fits well within the confines of what this case has always been about, both as described in the governing complaint and by the Court in denying Defendant's motion for summary judgment."[187] But again Mr.

Donnelly is either mistaken or now attempts to change the record. He did not reference section 5.3 in his pleadings. He only cites section 5.2.[188] And we never discussed section 5.3 in our Memorandum denying in part ProPharma's motion for summary judgment.[189] We referenced section 5.2 as the only issue before us.[190] We found "Michael Farah (on behalf of ProPharma Group Buyer, LLC) and Mr. Davis (on behalf of ProPharma Group Splitter, LP) – ***the two entities needed to remove*** Mr. Donnelly from ProPharma's Board under the LLC Agreement – allegedly signed an undated document removing Mr. Donnelly from the Board 'effective as of the date hereof[.]'"[191]

The Federal Rules of Civil Procedure seek to eliminate the element of "surprise" in litigation.[192] And as Judge Pratter aptly summarized in *Walsh v. East Penn Manufacturing Company, Inc.*: "It should be no surprise that courts do not like surprises. Parties must be up front about their claims, theories, and evidence. If not, there are consequences. There ought to be no trials by ambush in federal civil cases."[193] Mr. Donnelly sprung his theory about section 5.3 requiring the Board vote to validly remove him from the Board for the first time in this almost three-year-old-case mid-trial. Mr. Donnelly did not explain why he did not make it reasonably clear from the start the Board, in his view, needed to hold a meeting and a vote to remove him. And, given our duty to prevent cases from being sidetracked, we have broad powers to, in our "sound discretion," keep the parties focused and moving towards a final resolution.[194] So, we held Mr. Donnelly could not de-rail trial with his last-minute argument about section 5.3 especially given—as we have described at length—section 5.3 as a matter of law does not apply to Mr. Donnelly's Board removal. Mr. Donnelly fails to show we erred, or he should be granted a new trial based on this ruling.

And we properly ruled as a matter of law section 5.2(b) controls Mr. Donnelly's removal from the Board, not section 5.3. The LLC Agreement is not ambiguous. Before trial we ruled Mr. Donnelly could not offer evidence the LLC Agreement contained additional procedural obligations which required ProPharma to: "(1) provide written notice of his removal for his removal to be valid; (2) obtain his consent for his removal from the ProPharma Board to be valid; or (3) provide a written dated document removing Mr. Donnelly from the ProPharma Board of Managers for his removal to be valid."[195] So without these arguments at his disposal, Mr. Donnelly tried to argue for the first time mid-trial ProPharma failed to follow a different procedural obligation we had not ruled upon—it never obtained a vote from the Board as required under section 5.3. But section 5.2(b) of the LLC Agreement, as a matter of law, does not require a vote by the Board to remove Mr. Donnelly.[196]

We have no reason to depart from our pre-trial rulings finding "the contract terms at issue unambiguous as they are not susceptible to more than one reasonable interpretation."[197] Mr. Donnelly fails to show our rulings warrant a new trial.

## 2. The jury's verdict did not run contrary to the weight of the evidence.

Mr. Donnelly argues the jury's verdict went against the great weight of the evidence even without his arguments about section 5.3.[198] He claims the evidence does not show ProPharma validity removed him from the Board, he acquiesced to his removal, or ProPharma's repurchase of his incentive equity units amounted to an accord and satisfaction.[199] Mr. Donnelly claims his arguments for a new trial are largely based on what the jury did not hear so "no reasonable jury could have found [ProPharma] validly removed Mr. Donnelly from the Board, given [ProPharma's] failure to meet the strict contractual requirements of the LLC Agreement, [ProPharma's] failure to communicate any of its attempts to remove Mr. Donnelly until September

of 2020, and the fact that Mr. Donnelly never once testified that he considered himself to have been legally removed from the Board."[200] ProPharma responds the evidence fully supports the jury's verdict on any of the following grounds: ProPharma validly removed Mr. Donnelly from the Board in compliance with section 5.2(b); Mr. Donnelly acquiesced to his removal; Mr. Donnelly did not perform any services for ProPharma after June 2019; and Mr. Donnelly accepted the repayment sufficient for an accord and satisfaction.[201] We agree with ProPharma as to evidence before the jury.

### i.   The evidence supports the jury's finding ProPharma validly removed Mr. Donnelly from the Board.

The jury's verdict is supported by ample trial evidence. ProPharma introduced evidence of two documents purporting to remove Mr. Donnelly from the Board in compliance with section 5.2(b) of the LLC Agreement.[202] The June 2019 document contained the necessary signatures to remove Mr. Donnelly from the Board under section 5.2(b). And although we questioned the credibility of this undated document when ruling on ProPharma's Motion for summary judgment, at trial both Linden President Davis and Linden Partner Farah testified they signed the document on June 27, 2019.[203] And ProPharma Board Member Reilly testified he prepared the June 2019 removal document; his assistant gathered Linden President Davis and Linden Partner Farah's signatures; he sent it to his corporate counsel; and the PDF metadata of the signed removal document showed a creation date of June 27, 2019.[204] The jury heard both sides. It agreed with ProPharma after evaluating the creditability of several witnesses.

Mr. Donnelly points out he never once testified he considered himself to have been legally removed from the Board. But the LLC Agreement did not require ProPharma give Mr. Donnelly written notice of his removal from the Board to be valid, and it did not require Mr. Donnelly consent or agree to his removal to be valid.[205] And Linden President Davis testified he told Mr.

Donnelly "he was being removed from the [B]oard of ProPharma" during their call before signing the June 2019 document, and Mr. Donnelly "understood it, he got it."[206] Mr. Donnelly even testified during the phone call he expressed how his removal from the Board "makes sense" and he would "exit stage left."[207]

The jury heard ample evidence ProPharma complied with section 5.2(b) of the LLC Agreement to remove Mr. Donnelly from the Board.

### ii. The evidence supports a finding Mr. Donnelly acquiesced to his removal.

The evidence also supports the jury finding Mr. Donnelly acquiesced to his removal. Mr. Donnelly is deemed to have acquiesced to a complained of act when he "has full knowledge of his rights and the material facts and (1) remains inactive for a considerable time; or (2) freely does what amounts to recognition of the complained of act; or (3) acts in a manner inconsistent with the subsequent repudiation, which leads the other party to believe the act has been approved."[208] ProPharma needs to only establish one of the bases for acquiescence.[209]

Although Mr. Donnelly disputes having full knowledge of his rights and the material facts because he never received notice of either removal document until September 2020, the jury heard evidence sufficient to find he knew ProPharma removed him from the Board, including:

- Linden President Davis testified he told Mr. Donnelly about his removal during the June 2019 call and Mr. Donnelly "understood it, he got it[;]"[210]

- Mr. Donnelly emailed Assistant Loverich on July 1, 2019 telling her "I am no longer on the ProPharma Board[;]"[211] and,

- Linden President Davis emailed Mr. Donnelly an agreement to repurchase Mr. Donnelly's incentive equity in ProPharma on September 4, 2019, which lists August 31, 2019 as the date Mr. Donnelly's "employment with and service to" ProPharma "terminated[.]"[212]

Having sufficient evidence to find Mr. Donnelly had full knowledge of his rights and the material facts surrounding his removal, the jury also heard evidence Mr. Donnelly remained

inactive for a considerable time and acted in a manner inconsistent with being a Board member. This evidence included:

- Mr. Donnelly stopped attending ProPharma meetings after the June 2019 Board meeting;[213]

- Mr. Donnelly never asked CEO Sherman for Board materials or information about the upcoming Board meetings, or why ProPharma did not pay him Board fees after June 2019;[214]

- Mr. Donnelly testified his "service to the company stopped on June of 2019" and he performed no work for the ProPharma Board after June 2019;[215] and,

- Mr. Donnelly sent his resume to Summit Partners on July 16, 2020 listing his Board service at ProPharma beginning in 2016 and ending in 2019.[216]

Mr. Donnelly is again either mistaken or misrepresents the evidence arguing ProPharma prevented him from getting certain Board information by, for example, not sending him Board meeting invitations.[217] The evidence instead shows Mr. Donnelly never asked for these materials and never questioned why ProPharma did not send them.[218] And he did receive the invitation for the October 2019 Board, but told Assistant Loverich he would not attend because "I am no longer on the ProPharma Board[.]"[219]

Taken together, the jury could readily find Mr. Donnelly acquiesced to his Board removal.

### iii. The evidence supports a finding ProPharma's payment to Mr. Donnelly's amounted to an accord and satisfaction.

The evidence also supports a finding ProPharma's payment of $105,227.97 to Mr. Donnelly for his incentive equity units amounted to an accord and satisfaction. ProPharma has the burden to show: (1) a bona fide dispute existed as to the amount owed based on mutual good faith; (2) ProPharma tendered an amount to Mr. Donnelly with the intent payment would be in total satisfaction of the debt; and (3) Mr. Donnelly agreed to accept the payment in full satisfaction of the debt.[220]

25

The jury heard evidence:

- Mr. Donnelly disputed the value of the incentive equity units ProPharma offered him;[221]

- ProPharma communicated to Mr. Donnelly it paid him in full satisfaction of his debt;[222] and,

- Mr. Donnelly never directed the bank to send the $105,227.97 back to ProPharma or informed ProPharma he would not accept the money, but instead kept it in his bank account and then at some unknown time put it in an unidentified escrow account as advised by counsel.[223]

The jury heard enough evidence to find ProPharma's affirmative defense of accord and satisfaction defeated Mr. Donnelly's breach of contract claims.

The evidence amply supports the jury's verdict in favor of ProPharma based on either ProPharma validly removing Mr. Donnelly from the Board, Mr. Donnelly acquiescing to his removal, or Mr. Donnelly accepting payment for the re-purchase of his incentive equity units which amounted to an accord and satisfaction. There is no miscarriage of justice by allowing the jury's well-reasoned verdict to stand.

We deny Mr. Donnelly's motion for a new trial based on the weight of the evidence.

## III.    Conclusion

Our jury returned a verdict in favor of ProPharma based on ample evidence ProPharma removed Mr. Donnelly from the Board in June 2019. Mr. Donnelly provided us with no reason to overturn the jury's verdict. We deny Mr. Donnelly's Motion for post-trial relief in its entirety.

---

[1] D.I. 61.

[2] *Id*. ¶¶ 129–140.

[3] *Id*. ¶¶ 141–154.

[4] *Id*. ¶¶ 129–154.

---

[5] *Id*. ¶¶ 109, 118 (emphasis omitted).

[6] *Id*. ¶ 120 (emphasis added).

[7] *Id*. ¶¶ 103, 123.

[8] *Id*. ¶¶ 127–128.

[9] *Id*. ¶¶ 155–182.

[10] D.I. 146; D.I. 147.

[11] D.I. 174.

[12] *Id*. at 5–8.

[13] *Id*.

[14] *Id*.

[15] *Id*. at 6–7.

[16] *Id*. at 8–10.

[17] Notes of Testimony ("N.T.") 4/25/2023 at 638:10–11; 643:3–644:1.

[18] *Id*. at 645:17–646:5; N.T. 4/26/2023 at 847:5–19.

[19] N.T. 4/25/2023 at 643:5–7; N.T. 4/26/2023 at 843:9– 844:1.

[20] N.T. 4/26/2023 at 840:20–22; 853:15–17; 1106:7–11; 1099:25–1100:3.

[21] Trial Exhibit 2.

[22] *Id*.

[23] *Id*.; N.T. 4/24/2023 at 275:17–22.

[24] Trial Exhibit 1; N.T. 4/24/2023 at 279:1–5; N.T. 4/25/2023 at 460:22–24; N.T. 4/26/2023 at 860:14–18.

[25] Trial Exhibit 1.

[26] *Id*. at § 5.2(b); N.T. 4/24/2023 at 297:8–16.

[27] Trial Exhibit 1. "Affiliates" is defined as:

> (i) any other person controlling, controlled by or under common control with such particular Person, where "control" means the possession, directly or indirectly, of

the power to direct the management and policies of a Person whether through the ownership of voting securities, by contract or otherwise, and (ii) if such Person is a partnership or limited liability company (other than Holdings LLC or any of its Subsidiaries), any partner or member thereof.

> *Id.*

[28] *Id.* at 6; N.T. 4/24/2023 at 288:23–25.

[29] N.T. 4/24/2023 at 290:19–24.

[30] N.T. 4/26/2023 at 871:1–5.

[31] N.T. 4/26/2023 at 871:1–5.

[32] *Id.* at 871:23–872:3.

[33] Trial Exhibit 1,  § 5.3.

[34] *Id.*

[35] *Id.*

[36] *Id.* The parties agreed:

> Unless another percentage is set forth herein or required by applicable law, any determination or action required to be taken by the Board shall be taken by a majority of the Managers then in office . . . Any action to be taken by the Board may be taken at a meeting of the Board or by a written consent executed by at least one Linden Manager and the Managers having not less than the minimum number of votes that would be necessary to authorize or take such action at a meeting . . . .

> *Id.*

[37] Trial Exhibit 2.

[38] Trial Exhibit 8; N.T. 4/24/2023 at 278:16–19.

[39] Trial Exhibit 8; N.T. 4/24/2018 at 279:16–22.

[40] Trial Exhibit 8; N.T. 4/24/2023 at 282:4–6; 283:4–17. We ruled under the LLC Agreement the phrase "consummation of a Liquidity Event" as used in the Incentive Equity Agreement and defined in the LLC Agreement unambiguously means the September 30, 2020 sale of ProPharma to Odyssey Investment Partners. *See* D.I. 220.

[41] N.T. 4/24/2023 at 284:22–285:17.

[42] *Id.* at 298:14–20.

---

[43] *Id*. at 298:23–299:7.

[44] *Id*. at 298:14–20; 302:9–12; 304:4–6.

[45] *Id*. at 271:3–9.

[46] *Id*. at 272:1–4.

[47] *Id*. at 272:25.

[48] N.T. 4/26/2023 at 889:6–8, 17–20.

[49] Trial Exhibit 29; N.T. 4/24/2023 at 305:1–4; 308:9–18.

[50] N.T. 4/24/2023 at 308:22–309:16; 310:12–13.

[51] *Id*. at 312:17–22; 314:8–9.

[52] *Id*. at 314:2–18.

[53] *Id*. at 316:16–22.

[54] *Id*. at 319:17–19; 341:15–17, 21–23.

[55] N.T. 4/26/2023 at 894:18–21.

[56] *Id*. at 895:13–22.

[57] *Id*. at 1120:17–22; 1121:6–8.

[58] *Id*. at 896:1–2.

[59] N.T. 4/25/2023 at 558:17–559:1; 560:2–5.

[60] N.T. 4/24/2023 at 350:10–351:14; 352:1–12.

[61] *Id*. at 352:8–12.

[62] *Id*. at 352:13–18.

[63] *Id*. at 353:15–17.

[64] N.T. 4/26/2023 at 896:3–16.

[65] *Id*. at 945:14–18.

[66] *Id*. at 899:9–13.

[67] Trial Exhibit 69.

[68] N.T. 4/26/2023 at 903:3–4; 1123:20–23.

[69] *Id*. at 1013:2–4; 1015:1–16.

[70] *Id*. at 1016:9–13.

[71] N.T. 4/24/2023 at 437:20–22.

[72] N.T. 4/25/2023 at 696:12–14; 721:11.

[73] *Id*. at 723:23–724:10.

[74] *Id*. at 550:23–551:2.

[75] *Id*. at 552:17–23.

[76] Trial Exhibit 73; N.T. 4/24/2023 at 369:22–23.

[77] N.T. 4/24/2023 at 370:19–21; N.T. 4/25/2023 at 486:2–7.

[78] N.T. 4/25/2023 at 490:1–3.

[79] *Id*. at 485:10–12.

[80] Trial Exhibit 79.

[81] N.T. 4/26/2023 at 909:20–22.

[82] *Id*. at 910:5–6.

[83] Trial Exhibit 80; N.T. 4/24/2023 at 382:11.

[84] Trial Exhibit 80; N.T. 4/26/2023 at 1136:1–9.

[85] Trial Exhibit 80.

[86] *Id*.

[87] Trial Exhibit 107.

[88] Trial Exhibit 115; N.T. 4/24/2023 at 423:25–424:13.

[89] Trial Exhibit 115; N.T. 4/26/2023 at 1153:22–24.

[90] N.T. 4/24/2023 at 417:24–418:1.

[91] N.T. 4/25/2023 at 576:11–21; 580:12–16.

[92] *Id*. at 581:15–18.

[93] *Id*. at 581:19–22.

[94] *Id*. at 625:14–19.

[95] *Id*. at 475:9–13.

[96] N.T. 4/24/2023 at 418:6–8.

[97] N.T. 4/25/2023 at 497:22–498:18.

[98] *Id*. at 477:14–18.

[99] Trial Exhibit 135; N.T. 4/25/2023 at 582:6–12.

[100] N.T. 4/24/2023 at 437:10–13.

[101] *Id*. at 381:25.

[102] N.T. 4/25/2023 at 697:20–25; N.T. 4/26/2023 at 934:4–5.

[103] N.T. 4/26/2023 at 937:3–15.

[104] *Id*. at 938:10–12.

[105] N.T. 4/24/2023 at 356:10–12.

[106] N.T. 4/25/2023 at 813:3–10.

[107] *Id*. at 813:3–10; 828:9–20.

[108] N.T. 4/26/2023 at 834:14–835:13; D.I. 244.

[109] N.T. 4/26/2023 at 1203:8–10.

[110] *Id*. at 1203:20–24.

[111] N.T. 4/27/2023 at 1230:8–22; D.I. 248.

[112] D.I. 245.

[113] *Id*. at 1.

[114] *Id*. at 3.

[115] *Id*. at 5–9.

[116] D.I. 246.

[117] *Id*. at 3.

[118] N.T. 4/27/2023 at 1232:2–8.

[119] D.I. 247; N.T. 4/27/2023 at 1237:12–22.

[120] N.T. 4/27/2023 at 1244:7–12.

[121] *Id*. at 1244:13–18.

[122] *Id*. at 1233:2–7.

[123] D.I. 250.

[124] D.I. 258.

[125] D.I. 259 at 9–15.

[126] *Id*. at 15–24.

[127] D.I. 266 at 12–21.

[128] *Id*. at 21–24.

[129] *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1166 (3d Cir. 1993).

[130] *Acumed LLC v. Advanced Surgical Servs., Inc.*, 561 F.3d 199, 211 (3d Cir. 2009).

[131] *Lightning Lube, Inc.*, 4 F.3d at 1166.

[132] *Eshelman v. Agere Sys., Inc.*, 554 F.3d 426, 433 (3d Cir. 2009) (citation omitted).

[133] *Id.* (quoting *Marra v. Phila. Housing Auth.*, 497 F.3d 286, 300 (3d Cir. 2007)).

[134] D.I. 259 at 9–13.

[135] *Id*. at 12.

[136] *Id*. at 6–7.

[137] *VLIW Tech., LLC v. Hewlett-Packard Co*., 840 A.2d 606, 612 (Del. 2003).

[138] *Daniel v. Hawkins*, 289 A.3d 631, 645 (Del. 2023).

[139] *Salomone v. Gorman*, 106 A.3d 354, 367–68 (Del. 2014) (quoting *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1159 (Del. 2010)).

[140] *Lorillard Tobacco Co. v. Am. Legacy Foundation*, 903 A.2d 728, 739 (Del. 2006).

[141] *Manti Holdings, LLC v. Authentix Acquisition Co., Inc.*, 261 A.3d 1199, 1208 (Del. 2021) (quoting *Osborn*, 991 A.2d at 1159–60).

---

[142] *Sunline Commercial Carriers, Inc. v. CITGO Petroleum Corp.*, 206 A.3d 836, 846 (Del. 2019).

[143] Trial Exhibits 69, 79.

[144] D.I. 259 at 11–13.

[145] D.I. 174.

[146] *Id.* at 6.

[147] Trial Exhibit 1 (emphasis added).

[148] *Id.*

[149] *Id.*

[150] N.T. 4/26/2023 at 903:3–4; 1123:20–23.

[151] Trial Exhibit 1.

[152] N.T. 4/24/2023 at 290:19–24.

[153] N.T. 4/26/2023 at 871:1–5.

[154] *Id.*

[155] *Id.* at 871:23–872:3.

[156] *Manti*, 261 A.3d at 1208 (quoting *Osborn*, 991 A.2d at 1159–60).

[157] *Id.* (quoting *Osborn*, 991 A.2d at 1160) (emphasis added).

[158] *Osborn*, 991 A.2d at 1160 (Del. 2010) (internal citations omitted).

[159] *Manti*, 261 A.3d at 1208 (quoting *Osborn*, 991 A.2d at 1160).

[160] D.I. 259 at 13–15.

[161] *Id.* at 14 (emphasis omitted).

[162] D.I. 266 at 17.

[163] *Sunline*, 206 A.3d at 846.

[164] *Id.* (citing *DCV Holdings, Inc. v. ConAgra, Inc.*, 889 A.2d 954, 961 (Del. 2005) ("Specific language in a contract controls over general language, and where specific and general provisions conflict, the specific provision ordinarily qualifies the meaning of the general one."); *see also* Restatement (Second) of Contracts § 236(c) ("Where there is an inconsistency between general

provisions and specific provisions, the specific provisions ordinarily qualify the meaning of the general provisions.")).

[165] Trial Exhibit 1.

[166] *Id*.

[167] *Id*. (emphasis added).

[168] D.I. 267 at 8–9.

[169] Trial Exhibit 1 (emphasis added).

[170] *Id*.

[171] D.I. 247.

[172] D.I. 259 at 17–24.

[173] Fed. R. Civ. P. 59(a)(1)(A).

[174] *Blancha v. Raymark Indus.*, 972 F.2d 507, 512 (3d Cir. 1992) ("The decision to grant or deny a new trial is confided almost entirely to the discretion of the district court") (citing *Allied Chem. Corp. v. Daiflon, Inc.* 449 U.S. 33, 36 (1980)).

[175] *Snider v. Sterling Airways, Inc.*, 2017 WL 3873540, at *2 (E.D. Pa. Sept. 5, 2017) (citations omitted).

[176] *Leonard v. Stemtech Int'l Inc.*, 834 F.3d 376, 386 (3d Cir. 2016) (quoting *Springer v. Henry*, 435 F.3d 268, 274 (3d Cir. 2006)).

[177] *Id*.

[178] D.I. 259 at 17–20.

[179] *Id*. at 15–16 (emphasis omitted).

[180] *Id*. at 19.

[181] *Id*. at 19–20.

[182] *Id*. at 20–22.

[183] *Id*. at 21.

[184] D.I. 266.

[185] D.I. 259 at 15–16.

[186] D.I. 245 at 1–2 (emphasis added).

[187] D.I. 259 at 19.

[188] *See* D.I 61 ¶¶ 110, 112, 118.

[189] D.I. 174.

[190] *Id*.

[191] *Id*. at 3 (emphasis added).

[192] *Becton Dickinson & Co. v. Tyco Healthcare Grp. LP*, 2006 WL 890995, at *10 (D. Del. Mar. 31, 2006).

[193] *Walsh v. E. Penn Mfg. Co*., 2021 WL 5448961, at *1 (E.D. Pa. Nov. 22, 2021).

[194] *Id*. at *4 (citing *In re Fine Paper Antitrust Lit.,* 685 F.2d 810, 817 (3d Cir. 1982)).

[195] D.I. 220.

[196] Mr. Donnelly also attempts to argue we did not consider section 5.1 of the LLC Agreement where the parties agreed: "Except for situations in which the approval of one or more of the Members is expressly and specifically required by the express terms of this Agreement, and subject to the provisions of this Section 5.1, (i) the Board shall conduct, direct and exercise full control over all activities of Holdings LLC." D.I. 220 at 20–21.

We read and considered the LLC Agreement as a whole. *Sunline,* 206 A.3d at 846. But "general terms of the contract must yield to more specific terms." *Id.* (internal citations omitted).

[197] D.I. 220.

[198] D.I 259 at 22–24.

[199] *Id*.

[200] *Id*.

[201] D.I. 266 at 23–24.

[202] Trial Exhibits 69, 79.

[203] N.T. 4/26/2023 at 903:3–4; 1123:20–23.

[204] *Id*. at 1015:1–16; 1016:9–13.

[205] We granted ProPharma's Motion *in limine* to exclude Mr. Donnelly from arguing the LLC Agreement required ProPharma give Mr. Donnelly written notice of his removal for his removal to be valid and it required Mr. Donnelly consent or agree to his removal for his removal from the

ProPharma Board to be valid. *See* D.I. 220. None of these procedural obligations appear in the LLC Agreement. We allowed Mr. Donnelly to introduce relevant ***facts*** related to his purported removal including whether he received notice of his removal, whether he ever consented to such removal, or when ProPharma purported to remove him. But the jury did not find Mr. Donnelly's facts credible.

[206] N.T. 4/26/2023 at  896:3–16.

[207] N.T. 4/24/2023 at 352:8–12.

[208] *Klaassen v. Allegro Dev. Corp.*, 2013 WL 5739680, at *20 (Del. Ch. Oct. 11, 2013), *aff'd*, 106 A.3d 1035 (Del. 2014) (internal citations omitted).

[209] *Id.*

[210] N.T. 4/26/2023 at  896:3–16.

[211] Trial Exhibit 73; N.T. 4/24/2023 at 369:22–23.

[212] Trial Exhibit 80.

[213] N.T. 4/24/2023 at 437:20–22.

[214] N.T. 4/25/2023 at 723:23–724:10.

[215] *Id.* at 552:17–23.

[216] Trial Exhibit 135 at 8; N.T. 4/25/2023 at 582:6–12.

[217] D.I. 259 at 23–24.

[218] N.T. 4/25/2023 at 723:23–724:10.

[219] Trial Exhibit 73; N.T. 4/24/2023 at 369:22–23.

[220] *Acierno v. Worthy Bros. Pipeline Corp.*, 693 A.2d 1066, 1068 (Del. 1997) (internal citations omitted).

[221] N.T. 4/25/2023 at 477:14–18.

[222] Trial Exhibit 115.

[223] N.T. 4/25/2023 at 581:15–22; 625:14–19.