**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| **PATRICK K. DONNELLY** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO. 21-894-MAK** |
| | : | |
| **PROPHARMA GROUP TOPCO, LLC** | : | |

# <u>MEMORANDUM</u>

**KEARNEY, J.**                                                                                    **August 28, 2023**

A sophisticated investment and consulting company welcomed an experienced business executive to join its board. The company signed a written agreement promising the executive ownership units over his time of service. The agreement referenced paying fees and costs to the party proving a breach of the agreement. The parties did not otherwise mention fees. The two parted ways before the executive obtained what he later thought to be the full benefit of their agreement. The executive sued the company for breach. The company did not claim breach of contract or seek fees. The parties agreed to continuances often out of a courtesy consistent with Delaware practice. We presided over a jury trial on the executive's pleaded breach of contract theories. The jury quickly found the executive did not prove the company breached the agreement after a four-day trial. The jury seemingly did not believe the executive's version. The executive moved for post-trial relief. The company responded by asking us to order the executive reimburse it for over three and half million dollars in fees and costs it allegedly paid its lawyers. We denied post-trial relief earlier this month. We today find no basis the parties clearly and unequivocally defined the company's right to recover fees. We also lack a basis to find the executive or his counsel acted in bad faith, vexatiously, unreasonably, or for an oppressive purpose. We deny the company's motions to have the executive reimburse fees it invested in its lawyers.

## I.    Facts adduced at trial relating to an award of fees.

Patrick Donnelly is an experienced healthcare executive with specific knowledge of medical device and pharmaceutical development. ProPharma Group Topco, LLC provides regulatory, medical information, and compliance consulting services to the pharmaceutical, biotechnology, and medical device industries. ProPharma offered Mr. Donnelly a position on its Board of Managers for a five-year term in Fall 2016 beginning September 30, 2016. ProPharma agreed to pay Mr. Donnelly for his service on the Board both in quarterly payments and incentive equity units in ProPharma.

### *The parties agree as to when one party may owe the other attorney fees.*

Mr. Donnelly and ProPharma signed a Management Incentive Equity Agreement obligating ProPharma to pay Mr. Donnelly incentive equity units in ProPharma awarded at specific time intervals and vesting based on his continued service on the ProPharma Board. The parties agreed as to their remedies: "The parties … shall be entitled to enforce their rights under this Agreement specifically, to recover damages and costs (including attorney's fees) by reason of any breach of any provision of this Agreement, and to exercise all other rights existing in their favor."

The relationship between Mr. Donnelly and ProPharma soured when Mr. Donnelly became Chief Executive Officer of Advarra, another portfolio company owned by the same owners of ProPharma, a year after joining ProPharma's Board. Mr. Donnelly's position at Advarra caused conflicts of interest leading ProPharma to ultimately terminate him from its Board in June 2019.[1]

### *Mr. Donnelly sues ProPharma resulting in contested litigation and jury verdict.*

Mr. Donnelly sued ProPharma for breach of the Offer and the Management Incentive Equity Agreement in November 2020 in the District of South Carolina.[2] Mr. Donnelly alleged ProPharma breached: (1) the Offer by failing to pay his earned based compensation for his service

on the Board from April 18, 2019 through September 30, 2020; and (2) the Management Incentive Equity Agreement by failing to pay him the fair market value of his management incentive equity units at the end of his Board service. ProPharma claimed it removed Mr. Donnelly from the Board before his entitlement to the payments.[3]

ProPharma moved the District Court in South Carolina for transfer to this Court and asked to stay further proceedings on January 15, 2021.[4] Mr. Donnelly opposed transfer. Judge Dawson transferred the action to this District on June 22, 2021.[5] Pro Pharma then answered the Complaint and subsequently filed amended Answers.[6] It pleaded several affirmative defenses including failure to state a claim. It did not argue the claim is frivolous or in bad faith.[7] It did not ask for fees. Nor did it move for Rule 11 sanctions.

The United States Court of Appeals redesignated this case to us on May 20, 2022. We set the close of fact and expert discovery for August 22, 2022 with dispositive motions filed by September 1, 2022. ProPharma then joined Mr. Donnelly's motion to amend our discovery deadline.[8] We granted ProPharma's and Mr. Donnelly's joint Motion and extended discovery until September 14, 2022 with trial set to begin November 7, 2022.[9] ProPharma moved for an extension of time on September 2, 2022.[10] The parties then agreed to extend the case deadlines to set trial for April 3, 2023 with final pretrial motions due in early January 2023.[11] ProPharma then moved again to extend the trial date on September 29, 2022.[12] Mr. Donnelly did not oppose ProPharma's motion. We granted ProPharma's Motion for yet another extension of the trial date and set the jury trial for April 24, 2023.[13]

ProPharma moved for summary judgment.[14] We granted ProPharma's Motion for partial summary judgment in part as to the claims for breach of implied covenant of good faith and fair dealing, breach of fiduciary duty, and unjust enrichment as a matter of law.[15] But we denied

ProPharma's motion as to breach of contract claims finding genuine issues of material fact including when ProPharma purported to remove Mr. Donnelly from the Board, whether ProPharma validly removed Mr. Donnelly from the Board, whether Mr. Donnelly resigned or acquiesced to removal from the ProPharma Board, and whether Mr. Donnelly accepted payment for all of his vested incentive equity shares.[16] ProPharma then waited over a month to move to amend its Answer to add another defense.[17] We denied ProPharma's Motion as untimely and its delay in proceeding prejudiced the further resolution of the issues.[18]

We proceeded to a jury trial on April 24, 2023. Mr. Donnelly presented evidence. ProPharma presented evidence. ProPharma moved for judgment as a matter of law following the close of Mr. Donnelly's case. We denied ProPharma's Motion finding Mr. Donnelly adduced sufficient evidence on the genuine issues of material fact as detailed in our summary judgment opinion warranting decisions by the fact finder. The question became whether the jury believed Mr. Donnelly. ProPharma then presented witnesses including its senior executive who identified a conversation in which Mr. Donnelly purportedly told him anybody has a five percent chance of winning a jury verdict. Mr. Donnelly's counsel strongly opposed this testimony claiming the statement never occurred. Mr. Donnelly's counsel further attempted to amend his theories to focus on a different section of the parties' agreements not earlier pleaded. We did not strike the evidence but precluded argument on an unplead claim to be presented to the jury in closing arguments and on the verdict slip. We addressed our decision on the record during trial and in our August 8, 2023 Memorandum explaining why we denied Mr. Donnelly's Motion for judgment as a matter of law or for new trial.[19] The jury returned from deliberations in less than thirty minutes. Mr. Donnelly moved for post-trial judgment as a matter of law after appealing the judgment.[20] ProPharma responded to Mr. Donnelly's Motion for judgment as a matter of law.[21] ProPharma then waited a

couple more weeks and moved for attorney's fees and costs against Mr. Donnelly under section 17 of the Incentive Equity Agreement and against Mr. Donnelly's attorneys claiming they acted in bad faith, vexatiously, or in an oppressive manner.[22] We denied Mr. Donnelly's Motion for judgment as a matter of law or new trial last week.[23]

ProPharma now seeks to recover $3,110,363 in attorney's fees and $554,926 in costs incurred in defending against Mr. Donnelly's claims.[24] It asserts Mr. Donnelly and, alternatively, his attorneys at the McGuireWoods law firm are responsible for paying ProPharma's fees and costs. Mr. Donnelly and McGuireWoods oppose the Motions.[25]

## II.    Analysis

ProPharma asks we order Mr. Donnelly to reimburse over $3.6 Million in legal fees and costs invested in its lawyers. It argues entitlement to reimbursement under section 17 of the Incentive Equity Agreement and our inherent equitable power.[26] It essentially argues wh should, as a matter of fairness, graft a fee shifting obligation onto an agreement which defined when a party could obtain fees and costs.[27] ProPharma also seeks its attorney's fees and costs from Mr. Donnelly's attorneys at McGuireWoods as a sanction under 28 U.S.C. § 1927.[28]

Mr. Donnelly responds section 17 of the Incentive Equity Agreement is not a "prevailing party" provision allowing for contractual fee-shifting under Delaware law, he asserted claims in good faith, did not act unreasonably (given the overall tenor of the parties' back and forth), did not act oppressively, and McGuireWoods did not engage in bad faith conduct warranting sanctions under section 1927.  We find no contractual or statutory basis to order Mr. Donnelly or his lawyers to reimburse ProPharma for its multi-million-dollar investment in attorney's fees and costs.

**A.  The parties did not agree to clear and unequivocal fee-shifting.**

The parties agreed to define when one of them may owe the other attorney's fees in section 17 of the Incentive Equity Agreement. They agreed a party is entitled to enforce their rights under the Incentive Equity Agreement to recover damages and costs (including attorney's fees) by reason of the other party's breach of a provision in the Agreement.[29] The parties never included prevailing party language. The plain language requires a party seeking to recover fees must: (1) be seeking to enforce their rights under the Incentive Equity Agreement; (2) able to recover damages and costs; (3) because of the other party's breach of any provision in the Agreement; **and** (4) to exercise all other rights existing in their favor. The parties do not specifically address an obligation to pay for the other party's costs including attorney's fees. The parties did not choose to award costs to the party who prevailed; they instead seemingly recognized some form of fee and costs recovery for a party who proved the other party breached an obligation in the Agreement.

So we are left with no definitive language confirming Mr. Donnelly agreed to being potentially responsible for fee-shifting unless ProPharma sued and won a claim for him breaching an obligation in the Agreement. The Supreme Court instructs our "'basic point of reference' when considering the award of attorney's fees is the bedrock principle known as the 'American Rule': Each litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise."[30]  We will not rewrite contract language when the parties, for whatever reason, chose not to provide reciprocal "prevailing party-like" language.

Under Delaware law, a contractual fee-shifting provision allows a court to award costs incurred during litigation to the prevailing party.[31] There is no "bright-line language" to support an enforceable fee-shifting provision under Delaware law.[32] But a fee-shifting provision must be "a clear and unequivocal agreement triggered by a dispute over a party's failure to fulfill

obligations under the contract."[33] There must be "specific language" such as reference to a "prevailing party," considered by Delaware courts as "a hallmark term of fee-shifting provisions."[34] Specific language is "observed with particular obedience in interpreting cost-shifting provisions between litigants, so that first-party cost-shifting does not swallow the American Rule."[35] Because we require a clear and unequivocal agreement evidencing a fee-shifting provision, "[p]arties should not expect the Court to deviate from the American [R]ule if care has not been taken in drafting a contract's language."[36]

Against these standards, we consider the threshold issue of whether the language chosen by ProPharma in section 17 of the Incentive Equity Agreement evidences a clear and unequivocal fee-shifting agreement. ProPharma assumes section 17 is a fee-shifting provision. It does not explain how section 17 is a clear and unequivocal agreement to shift fees. Mr. Donnelly responds section 17 is not a "prevailing party" provision required by Delaware law. He argues section 17 is not a clear and unequivocal agreement of fee-shifting because it does not use the term "prevailing party"—the hallmark term of fee-shifting provisions. We agree with Mr. Donnelly.

We can find the parties agreed to clear and unequivocal fee-shifting when the term "prevailing party" or "successful party" is used in the parties' contract. "Prevailing party" is common nomenclature for fee shifting under the American Rule. We anticipate experienced commercial lawyers like those representing ProPharma defining the grant of management incentive units would carefully include language to meet their client's agreement terms. We need to rely on their chosen language. Counsel need to use clear and unequivocal language to define when one of them is entitled to fees if the parties agreed to fee-shifting.

For example, our colleagues applying Delaware law find an agreement for fee-shifting based on language like:

- "[i]n the event that any dispute between the parties with respect to this Agreement should result in a legal proceeding, the ***non-prevailing party*** will pay any reasonable attorney's fees and expenses incurred by the ***prevailing party*** in connection with such proceeding."[37]

- "the ***prevailing party*** in any legal proceeding to construe, apply, interpret, enforce or defend any of the Company's rights in this Agreement."[38]

- "In any judicial or arbitration proceeding concerning a dispute relating to or arising out of this Agreement, the ***prevailing party*** is entitled to recover all reasonable expenses associated with such proceeding (including without limitation reasonable costs and fees of attorneys or other professionals) …"[39]

- "In the event of any litigation between [Defendant] and [Plaintiff], the ***unsuccessful party*** as determined by a court of competent jurisdiction shall reimburse the ***successful party*** for all legal fees and expenses incurred by the successful party in prosecuting or defending any such action."[40]

- "In any action or proceeding to enforce rights under this Agreement, ***the prevailing party*** will be entitled to recover costs and attorneys' [sic] fees."[41]

We understand the term "prevailing party" is not a magic word. And we try to avoid form over substance. For example, the Delaware Supreme Court enforced a fee-shifting provision without the term "prevailing party" sixteen years ago in *Mahani v. Edix Media Grp., Inc.*[42] In *Mahani*, an employee appealed from Chancellor Chandler's decision to award his former employer the full amount of attorney's fees and costs incurred when the employer sued the employee to enforce a confidentiality and non-compete agreement.[43] The parties' agreement contained a provision requiring the employee to indemnify and hold harmless his employer for all loss, damage, expense or costs including attorney's fees arising out of enforcement of the agreement:

"[Employee] expressly agrees to indemnify and hold harmless [Employer], its officers, directors, agents and other employees from any and all loss, damage, expense or costs (including attorneys [sic] fees and disbursements attendant thereto) arising out of or in any way connected with the enforcement of this Agreement, the breach of any duty, obligation, representation, warranty and/or covenant herein contained …"[44]

8

Chancellor Chandler concluded the employee breached the parties' contract by misappropriating trade secrets and held the employer is entitled to recover attorney's fees and costs incurred in enforcing the agreement. On appeal, the employee did not challenge the fee-shifting provision itself but the reasonableness of the fees and costs. The Delaware Supreme Court implicitly considered the provision as an enforceable fee-shifting provision.

Our review of Delaware law also confirmed several judges finding the absence of the term "prevailing party" or other specific language in a contract weighs against finding an enforceable fee-shifting provision. For example, the Delaware Superior Court in *Baltimore Pile Driving and Marine Construction, Inc.* found no basis to fee shift arising from contract language: "All legal fees resulting from [Plaintiff's] need to secure legal services for any infraction of the terms and conditions of this Executed Proposal or any Contract/Purchase Order, and any disputes arising from the contract [sic] to be adjudicated in Harford County, Maryland."[45] The Delaware Superior Court concluded the parties' intent is unclear, there is no reference to "prevailing party," and the provisional use of "and" between the two phrases would lead a person to reasonably believe recovery of fees is tied to litigation in a specific forum.[46] The court reasoned the drafters of the provision chose to structure it as a reimbursement for both attorney's fees and disputes adjudicated in a specific forum and "cannot ignore this fact, nor may [the court] choose to read the provision selectively."[47] The court reasoned the sophisticated counsel representing the parties would know how to draft a fee-shifting provision under Delaware law.[48] The court concluded the provision "is poorly drafted and lacks sufficient clarity," is not a clear and unequivocal agreement for fee-shifting, and is unenforceable.[49]

We are also guided by reasoning offered by Chancellor Strine and Vice Chancellor Zurn in reviewing contract language purported to evidence a fee-shifting agreement.[50] For example, in

9

*Senior Housing Capital, LLC v. SHP Senior Housing Fund, LLC*, the parties entered into an LLC Agreement providing in the event of litigation between the parties, "the party 'prevailing' in that litigation shall be entitled to its 'reasonable attorneys' [sic] fees and court costs.'"[51] But other agreements—the "Management Agreements" governing one of the party's compensation if it ceased to manage the investment fund—did not have a fee-shifting provision and instead had an indemnification provision. Under the Management Agreements, one party promised to "indemnify Manager … from, and defend [it] and hold [it] harmless against, any and all Damages arising out of or resulting from … Owner's breach of any of its obligations under this Agreement."[52] Chancellor Strine found he could not construe the indemnification provision as a fee-shifting provision because "there is no specific language in the indemnification provision" covering fee-shifting and refused to "interpret the provision in an expansive way that would be inconsistent with the American Rule."[53]

In *Murfey v. WHC Ventures, LLC*, Vice Chancellor Zurn found the parties did not agree to fee-shifting when reviewing their chosen language: "The Partnership may cause any expenditures, payments or amounts that the General Partner determines are, were or should be made or withheld on behalf of, for the benefit of, or because of circumstances applicable to, fewer than all Partners to be charged to those Partners."[54] Vice Chancellor Zurn concluded the chosen language did not clearly or unambiguously confirm the parties agreed to shift fees in litigation and reading the agreement as a whole did not support the section as a fee-shifting provision. Another section of the agreement contained a fee-shifting provision, shifting to the "prevailing party" in an arbitration—not litigation—supported an interpretation the earlier provision did not encompass fee-shifting in intra-partnership litigation.[55]

We cannot find, and ProPharma did not cite, a case applying Delaware law construing the language of section 17. The parties did not use the term "prevailing party," the "hallmark term" for an enforceable fee agreement. Their language is not like the fee-shifting provision in *Mahani* where, although the parties also did not use the term "prevailing party," the parties provided the employee "expressly agreed to indemnify" his employer for attorney's fees "arising out of or in any way connected with the enforcement of this Agreement …." We find section 17 more like the provision Judge Rennie found did not constitute a sufficiently clear fee-shifting provision in *Baltimore Pile Driving and Marine Construction, Inc.* allowing for reimbursement of "all legal fees resulting from … [the] need to secure legal services for any infraction of the terms and conditions of this … contract …"[56]

Section 17 does not contain specific language sufficient for fee-shifting under Delaware law. Delaware law is clear we are to "observ[e] with particular obedience" language of fee-shifting agreements so as not to "swallow the American Rule."[57] We conclude section 17 is not a clear and unequivocal agreement to shift fees. We will not apply an expansive interpretation inconsistent with the American Rule.

**B.  Section 17 otherwise does not apply when the jury found no breach.**

Mr. Donnelly and ProPharma chose language in section 17 which does not apply to today's issues. No fact finder found a breach of the agreement.  The jury found the opposite. ProPharma did not incur damages including fees and costs by reason of Mr. Donnelly's breach of the Incentive Equity Agreement. It never pleaded a claim for fees consistent with its chosen language in section 17.

"Delaware law adheres to the objective theory of contracts, *i.e.*, a contract's construction should be that which would be understood by an objective, reasonable third party."[58] The goal of

contract interpretation is to "effectuate the parties' intent."[59] We interpret contracts to "give each provision and term effect" and not render any terms "meaningless or illusory."[60] We must read the contract as a whole, giving meaning to each term and avoiding an interpretation rendering any term "mere surplusage."[61]

The first sentence of section 17 provides remedies to the parties to: (1) "enforce their rights under [the Incentive Equity Agreement] specifically"; (2) "recover damages and costs (including attorney's fees) by (3)  reason of any breach of any provision of [the Incentive Equity Agreement]"; **and**, (4) exercise all other rights existing in their favor.

ProPharma argues it enforced its contractual rights by defending against Mr. Donnelly's claims, offering a case from the United States District Court from the District of Utah finding a provision in an employment agreement identical to the provision in this case allowed for an award of attorney's fees.[62] In *Shappley*, an employee sued his employer for termination without cause claiming he is entitled to compensation under the parties' employment agreement. The employment agreement contained the nearly identical provision: "[e]ach of the parties to this Agreement will be entitled to enforce its rights under this agreement specifically, to recover damages and costs (including attorney [sic] fees) caused by any breach of any provision of this Agreement and to exercise all other rights existing in its favor."[63]

After a bench trial, Judge Benson determined the employee failed to show his adequate performance under the employment agreement and failed to establish the employer's breach of the employment agreement but also determined the employer failed to meet its burden of establishing its affirmative defense of resumé fraud.[64] Judge Benson dismissed all of the employee's claims except one count for "other breaches of contract" but not the breach of the employment agreement.[65] Judge Benson ordered the employee to pay his employer's reasonable attorney's fees

and costs incurred in successfully establishing it terminated its employee for good cause, but denied fees based on the employer's unsuccessful effort to prove its affirmative defense based on resumé fraud.[66]

Judge Benson reasoned the employer is entitled to attorney's fees because it successfully enforced its rights to terminate its employee for cause and even if the employer is "deemed not to have been 'enforc[ing] its rights,'" the employee unsuccessfully attempted to "enforce his rights" under the employment agreement. Judge Benson awarded fees to the employer under a Utah statute providing for the award of fees. Judge Benson awarded fees for work incurred with the employer's successful effort to show it terminated employee for cause but Judge Benson did not award fees and costs based on its unsuccessful effort to prove an affirmative defense based on resumé fraud.

ProPharma analogizes *Shappley* to the facts before us; it successfully enforced its rights to terminate Mr. Donnelly from its Board and defended against Mr. Donnelly's claims and is, under *Shappley*, entitled to its fees and costs. But *Shappley* is readily distinguishable because Utah enacted—unlike Delaware—a statute allowing for reciprocal rights to recover attorney's fees. The Utah legislature provides a court "may award costs and attorney fees to either party that prevails in a civil action based upon any … written contract … when the provisions of the … written contract … allow at least one party to recover attorney fees."[67] Utah's statute applies only where: (1) the underlying litigation is based on a contract; and (2) the contract allows at least one party to recover fees.[68] Utah designed its reciprocal attorney fee statute "to create[e] a level playing field for parties to a contractual dispute" and "remed[ies] the unequal allocation of litigation risks built into … contracts of adhesion."[69] An award of fees under the statute is within a Utah court's discretion and "must be exercised in furtherance of the statute's policy of allocating the risk of

paying attorney fees equally between the party protected by the statute and the party protected by the contract."[70]

We could not possibly find Judge Benson's reasoning under Utah law in *Shappley* persuasive. We cannot find, and ProPharma does not provide us, with Delaware authority allowing reciprocal rights to recover attorney's fees.

We similarly conclude *Cumberland Farms, Inc. v. Lexico Enterprises, Inc.* cited by ProPharma is distinguishable. In *Cumberland Farms*, parties to a franchise agreement entered into a lease for a gas station and convenience store in New York.[71] The lessee twice unsuccessfully sued the lessor, including claims for breach of contract. The lessor then sued the lessee to recover its attorney's fees and costs incurred to enforce its rights under the franchise agreement defending the earlier unsuccessful lawsuits. The lease agreement provided the lessee "shall reimburse [lessor] for all reasonable costs (including attorneys' [sic] fees) that [lessor] incurs in enforcing its rights and remedies under this Lease."[72] Judge Spatt concluded the unambiguous language of the lease agreement evidenced a clear intent to indemnify the lessor's costs relating to claims arising from the lease agreement where the lessor "enforces its rights and remedies."[73] Judge Spatt reasoned the language of the provision—"enforcing its rights and remedies"—is "not confined solely to affirmative actions of a plaintiff. Rather, even by acting as a defendant against [lessee's] meritless claims, [lessor] was enforcing its contractual rights."[74] Judge Spatt reasoned the "reimbursement clause" is similar to a "prevailing party" provision because if either party to the contract brings an action to enforce the contract's terms, the non-prevailing party must pay the prevailing party's fees and costs with no significance on whether the party being reimbursed for fees is the plaintiff or defendant.

14

We might be persuaded by *Cumberland Farms* if the contractual language of section 17 is the same and if it applied Delaware law. But the language is not the same and New York law applied. Section 17 vests the parties with remedies: the parties "shall be entitled" (1) "to enforce their rights under this Agreement"; (2) "to recover damages and costs (including attorney's fees) by reason of any breach of any provision of this Agreement"; and (3) "to exercise all other rights existing in their favor."

The first part of section 17 is similar to the reimbursement provision in *Cumberland Farms* with one crucial distinction: the parties' chosen language in section 17 provides the parties "shall be entitled to enforce their rights under this Agreement specifically" without reference to attorney's fees. The reimbursement provision in *Cumberland Farms* specifically stated the lessee "shall reimburse" the lessor for reasonable costs and attorney's fees lessor "incurs in enforcing its rights and remedies under this Lease."[75] The language of section 17 does not include attorney's fees as part of the remedy "to enforce their rights under this Agreement." Section 17 only allows a party "to recover damages and costs" including attorney's fees "***by reason of any breach of any provision of this Agreement***." The reimbursement provision in *Cumberland Farms* did not condition reimbursement of attorney's fees "by reason of any breach" of the parties' lease agreement.

We are persuaded by several judges applying Delaware law there must be a clear and unequivocal agreement to shift fees. The parties in Section 17 did not do so. We may not read in fee-shifting to the first remedy of section 17—"to enforce [a party's] rights under this Agreement"—and we will not read out "by reason of any breach" from the second remedy of Section 17—"to recover damages and costs (including attorney's fees) by reason of any breach of

any provision of this Agreement." Such an interpretation is inconsistent with Delaware's principles of contract construction seeking to give each provision of a contract full effect.[76]

By its clear and unambiguous language of section 17, attorney's fees and costs may be recovered "by reason of any breach of any provision of" the Incentive Equity Agreement. The jury did not find a breach of the Agreement. Section 17 does not apply on its face. We deny ProPharma's motion to recover fees under section 17 of the Agreement.

### C. We will not award attorney's fees and costs against Mr. Donnelly under our inherent equitable powers or against his lawyers under 28 U.S.C. § 1927.

ProPharma also seeks an award of attorney's fees and costs against Mr. Donnelly under our inherent equitable power for bringing his meritless claims, brought for an improper purpose, and continuation of his claims after learning he had no fact basis for his claims. We deny this request. We carefully considered the parties arguments on summary judgment and following the cases-in-chief. We found sufficient basis to allow the jury to determine whether to believe Mr. Donnelly's sworn facts directly contrary to ProPharma's cited facts. The jury presumably did not believe Mr. Donnelly. But the genuine issues of material fact adduced in discovery and continued into trial are not frivolous.

Courts have inherent authority to award attorney's fees and costs "when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons."[77] We must exercise our inherent powers "with restraint and caution" and "should be reserved for those cases in which the conduct of a party or an attorney is egregious and no other basis for sanctions exists."[78]

Congress also allows we may award attorney's fees and costs under 28 U.S.C. § 1927 when an attorney "multiplies the proceedings in any case unreasonably and vexatiously." Our Court of Appeals instructs we find "willful bad faith on the part of the offending attorney" before imposing fees under section 1927.[79] We must find an attorney: "(1) multiplied proceedings; (2) in an

16

unreasonable and vexatious manner; (3) thereby increasing the cost of the proceedings; and (4) doing so in bad faith or by intentional misconduct."[80]

### 1. ProPharma offers no basis to find Mr. Donnelly's conduct warrants sanctions.

ProPharma contends Mr. Donnelly asserted meritless claims and failed to timely withdraw them even though evidence pre-dating his complaint confirmed he knew ProPharma removed him from its Board in 2019 and thus "was on notice" his claims lacked a basis well before trial. ProPharma also contends there is evidence Mr. Donnelly brought his claims for an improper purpose, including a comment he made to Tony Davis during a phone call "[y]ou know it's America and we have a jury system and five percent of the time you can convince a jury of anything"; his claim the "Removal Document" was fabricated; and, his admissions at his deposition.

ProPharma persuaded the jury to find Mr. Donnelly did not meet his burden of proof. But Mr. Donnelly presented his sworn testimony contrary to the ProPharma's evidence. Mr. Donnelly swore he did not think ProPharma removed him as he continued to negotiate the terms of his departure. Mr. Donnelly's counsel denied the "five percent of the time" statement. The jury agreed with ProPharma. But ProPharma is now ignoring we found a genuine issues of material fact requiring trial as detailed in a ten-page opinion. It did not move for reconsideration nor could it based on new law, facts, or manifest injustice. We appreciate ProPharma decided to invest in several lawyers and paralegals to travel to Wilmington to defend the claim. Its lawyers capably presented its case. ProPharma would prefer to recover those fees invested in its defense. But the American Rule presumes it pays its own lawyers and ProPharma did not think to include clear and unequivocal fee-shifting language in its agreements with Mr. Donnelly. Nor did it think to

otherwise make it clear when bringing Mr. Donnelly into the company to confirm it could also seek reciprocal attorney fees.

We have no basis to find Mr. Donnelly acted in bad faith, vexatiously, wantonly, or for oppressive reasons in filing suit and proceeding to the jury verdict. We choose to exercise restraint and avoid the chilling effect of imposing sanctions on parties losing a jury verdict simply because the successful party knew all along it would persuade the jury.

### 2.   ProPharma offers no basis to impose sanctions on Mr. Donnelly's attorneys.

ProPharma contends Mr. Donnelly's conduct also applies to his attorneys at McGuireWoods. It argues McGuireWoods failed to engage in a reasonable inquiry to ensure Mr. Donnelly's allegations had a fact basis. It further argues the attorneys at McGuireWoods knew the baselessness of Mr. Donnelly's claims because of a Rule 11 letter sent by ProPharma's counsel and because counsel at McGuireWoods had "case-killing evidence"—the June 2019 Board Removal Document with Mr. Donnelly's admission he no longer served on the Board and his resume—well before summary judgment, pre- and post-trial motions, and trial. ProPharma argues McGuireWoods further compounded their bad faith by switching to a new "last-ditch" alternative argument at trial. ProPharma requests we sanction the McGuireWoods firm under section 1927 for this conduct.

We find no basis for this request which could be construed as retaliatory. Both sides engaged in aggressive tactics. Mr. Donnelly opposed transfer and amended his allegations following his review of ProPharma's Rule 11 notice.  ProPharma did not issue another Rule 11 notice. We also remind ProPharma of its late unsuccessful attempt to amend its pleadings to add a defense. Both parties filed a flurry of motions. They repeatedly agreed to delay resolution usually out of expected courtesy to each other. But they both also multiplied the proceedings fueled by

well-funded and personally motivated clients.  ProPharma did not move for Rule 11 relief nor did it plead an affirmative defense allowing us to plausibly infer Mr. Donnelly and his lawyers brought this case in bad faith or for oppressive reason.  ProPharma did not plead a claim for fees.  We have no basis to find Mr. Donnelly or his lawyers violated section 1927 or otherwise engaged in the level of conduct allowing us to exercise our inherent powers to sanction parties and lawyers. Mr. Donnelly stretched the envelope on several arguments.  But not to a sanctionable level.

We require counsel to diligently represent their clients. By way of last word from our Court, moving counsel should be mindful of the precedent they wish to set; an attorney could still somehow be forced to pay the opposing counsel's fees absent some form of agreement by the parties if the successful party after four days of trial cites a statute designed by Congress to remedy oppressive litigation. The trial attorney now subject to this challenge responds she believed her client after due diligence, defeated motions for summary judgment and mid-trial Rule 50 judgment, and presented creative (albeit tenuous unpleaded) arguments.  We appreciate ProPharma tried to resolve this claim before investing millions of dollars to defeat a claim it views as contrived. We also appreciate Mr. Donnelly and his former colleagues may not like each other despite all making millions of dollars partially attributable to their joint efforts.  But our lawyers in our Federal Bar, particularly in this District, should carefully consider fueling the back and forth among well-funded clients. We ask the talented trial lawyers to act as counselors in moderating the vitriol.

## III.   Conclusion

We deny ProPharma's motion to recover the funds it chose to invest in several lawyers to defend against Mr. Donnelly's claims. But ProPharma offers no basis to find Mr. Donnelly agreed to fee shifting based on ambiguous language in section 17 of the Incentive Equity Agreement. The language does not apply absent a finding of a breach of the agreement. Its lawyers persuaded the

19

jury Mr. Donnelly did not prove a breach of contract. The jury did not believe Mr. Donnelly.

ProPharma falls much shorter on its stretch to seek reimbursement of its fees by characterizing Mr.

Donnelly's or his lawyer's efforts as brought in bad faith, vexatious, unreasonable, or oppressive.

---

[1] We incorporate the detailed review of the evidence adduced during trial included in our Memorandum describing our reasons for denying Mr. Donnelly's motion for post-trial relief. D.I. 278.

[2] D.I. 61.

[3] Mr. Donnelly also sued ProPharma for breaching the implied covenant of good faith and fair dealing, breach of fiduciary duty, and unjust enrichment. We granted ProPharma's motion for summary judgment on these claims. D.I. 174.

[4] D.I. 24, 25.

[5] D.I. 36.

[6] D.I. 41, 63, 190.

[7] D.I. 41.

[8] D.I. 85. ProPharma agreed after Mr. Donnelly's suffered a death in his family.

[9] D.I. 87.

[10] D.I. 97.

[11] D.I. 107.

[12] D.I. 124.

[13] D.I. 125.

[14] D.I. 146.

[15] D.I. 174.

[16] *Id.*

[17] D.I. 178.

[18] D.I. 185.

---

[19] D.I. 278, 279.

[20] D.I. 256, 258.

[21] D.I. 266.

[22] D.I. 269, 270.  Mr. Donnelly's Delaware trial counsel declined to sign the motion to sanction Mr. Donnelly's lawyers citing a conflict.

[23] D.I. 278, 279.

[24] D.I. 269, 270, 271. ProPharma submitted one brief in support of its Motion for fees against Mr. Donnelly. *See* D.I. 271. ProPharma retained conflicts counsel to move for fees against McGuireWoods who did not file a separate supporting brief.

[25] D.I. 275.

[26] D.I. 269.

[27] D.I. 280.

[28] D.I. 270.

[29] Mr. Donnelly and ProPharma agreed:

> Remedies: The parties … shall be entitled to enforce their rights under this Agreement specifically, to recover damages and costs (including attorney's fees) by reason of any breach of any provision of this Agreement and to exercise all other rights existing in their favor.

[30] *Peter v. Nantkwest, Inc.*, 140 S.Ct. 365, 370, 205 L.Ed.2d 304 (2019) (quoting *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 252–53 (2010)).

[31] *Facchina Const. Litigs.*, 2021 WL 1118115, at *2 (Del. Super. Ct. Mar. 24, 2021) (citing *Mahani v. Edix Media Grp., Inc.*, 935 A.2d 242, 245 (Del. 2007)).

[32] *Baltimore Pile Driving and Marine Constr., Inc. v. Wu Assocs., Inc.*, 2022 WL 3466066, at *2 (Del. Super. Ct. Aug. 18, 2022).

[33] *Facchina Const. Litigs.*, 2021 WL 1118115, at *2 (citing *SARN Energy LLC v. Tatra Defence Vehicle A.S.,* 2019 WL 6525256, at *1 (Del. Super. Ct. Oct. 31, 2019)).

[34] *Braga Invest. & Advisory, LLC v. Yenni*, 2023 WL 3736879, at *18 (Del. Ch. May 31, 2023) (quoting *Murfey v. WHC Ventures, LLC*, 2022 WL 214741, at *2 (Del. Ch. Jan. 25, 2022)).

[35] *Murfey*, 2022 WL 214741 at *2 (citation omitted).

21

---

[36] *Baltimore Pile Driving and Marine Constr., Inc.*, 2022 WL 3466066 at *1 (cleaned up).

[37] *APEX Financial Options, LLC v. Gilbertson*, 2022 WL 9991424, at *2 (D. Del. Oct. 17, 2022) (emphasis added).

[38] *Bako Pathology LP, BPA v. Bakotic*, 288 A.3d 252, 279–82 (Del. 2022) (emphasis added). In *Bako Pathology*, the Delaware Supreme Court examined two fee-shifting provisions contained in two separate contracts. The parties' Employment Agreement provided fee-shifting "to the prevailing party in any legal proceeding to construe, apply, interpret, enforce or defend any of the Company's rights in this Agreement" while the parties' Partnership Agreement provided fee-shifting to the "prevailing party in any dispute between the parties hereto," and defined "prevailing party" as "the party who is determined in the proceeding to have prevailed or who prevails by dismissal, default or otherwise." *Id.* at 280. The court found a difference between the two contracts: the Partnership Agreement speaks of a "prevailing party" in terms of the overall dispute while the Employment Agreement speaks to the "prevailing party" in terms of success on claims involving rights under the Employment Agreement. *Id.* at 281. The court found the difference to be important and held fees should have been awarded under the Employment Agreement but not the Partnership Agreement. In any case, the term "prevailing party" appeared in both contractual provisions.

[39] *Cignex Datamatics, Inc. v. Lam Research Corp.*, 2022 WL 4548630, at *2 (D. Del. Sept. 29, 2022) (emphasis added).

[40] *Navient Solutions, LLC v. BPG Office Partners XIII Iron Hill LLC*, 2023 WL 3120644, at *16–17 (Del. Super. Ct. Apr. 27, 2023) (emphasis added).

[41] *Trust-Ed Solutions, LLS v. Gilbert LLP*, 2022 WL 16641902, at *11 (Del. Super. Ct. Oct. 18, 2022) (emphasis added).

[42] 935 A.2d 242 (Del. 2007).

[43] *Id.* at 243.

[44] *Id.* at 244.

[45] *Baltimore Pile Driving and Marine Construction, Inc.*, 2022 WL 3466066, at * 1.

[46] *Id.* at *3.

[47] *Id.*

[48] *Id.*

[49] *Id.*

[50] *Senior Housing Capital, LLC v. SHP Senior Housing Fund, LLC*, 2013 WL 1955012 (Del. Ch. May 13, 2013).

[51] *Id.* at *44.

[52] *Id.*

[53] *Id.* at *45.

[54] *Murfey,* 2022 WL 214741, at * 2.

[55] *Id.* at *3.

[56] *Baltimore Pile Driving and Marine Constr., Inc.*, 2022 WL 3466066, at *1.

[57] *Murfey*, 2022 WL 214741 at *2.

[58] *Salamone v. Gorman*, 106 A.3d 354, 367–68 (Del. 2014) (quoting *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1159 (Del. 2010)).

[59] *Lorillard Tobacco Co. v. Am. Legacy Foundation*, 903 A.2d 728, 739 (Del. 2006).

[60] *Manti Holdings, LLC v. Authentix Acquisition Co., Inc.*, 261 A.3d 1199, 1208 (Del. 2021) (quoting *Osborn*, 991 A.2d at 1159–60).

[61] *Sunline Commercial Carriers, Inc. v. CITGO Petroleum Corp.*, 206 A.3d 836, 846 (Del. 2019).

[62] *Shappley v. Amedica Corp.*, No. 11-1198, 2013 WL 12250136 (D. Utah Sept. 5, 2013).

[63] *Id.* *14.

[64] *Id.* at *12–15.

[65] *Id.* at *14.

[66] *Id.* at *15.

[67] UTAH CODE ANN. § 7B-5-826 (West 2023).

[68] *Hooban v. Unicity Int'l, Inc.*, 285 P.3d 766, 768 (Utah 2012).

[69] *Federated Capital Corp. v. Haner*, 351 P.3d 816, 819 (Utah Ct. App. 2015).

[70] *Id.* at 819–20.

[71] No. 10-4658, 2012 WL 526716 (E.D.N.Y. Feb. 16, 2012).

---

[72] *Id.*, 2012 WL 526716, at *3.

[73] *Id.* at *3.

[74] *Id.* at *4.

[75] *Id.*

[76] *E.I. du Pont de Nemours & Co. v. Shell Oil Co.*, 498 A.2d 1108, 1113 (Del. 1985).

[77] *Xcoal Energy & Resources v. Bluestone Energy Sales Corp.*, 2021 WL 4319224, at *4 (D.Del. Sept. 23, 2021).

[78] *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 278 F.3d 175, 189 (3d Cir. 2002).

[79] *Id.* at 188.

[80] *Id.*